# EXHIBIT 3
# No. 13-cv-1053-RCL

STEPHEN E. HART – stephen.hart@fhfa.gov
FEDERAL HOUSING FINANCE AGENCY
1700 G Street, NW
Washington, D.C. 20552
(202) 414-3800
Fax: (202) 414-6504

HOWARD N. CAYNE – howard.cayne@aporter.com
ASIM VARMA – asim.varma@aporter.com
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, D.C. 20004
(202) 942-5000
Fax: (202) 942-5999

*Attorneys for Defendants*
FEDERAL HOUSING FINANCE AGENCY and EDWARD DeMARCO

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, *ex rel*. KAMALA D. HARRIS., ATTORNEY GENERAL,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL HOUSING FINANCE AGENCY; EDWARD DeMARCO, in his capacity as Acting Director of FEDERAL HOUSING FINANCE AGENCY; FEDERAL HOME LOAN MORTGAGE CORPORATION; and FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>Defendants.<br><br>-- and related cases -- | Case No. 4:10-CV-03084-CW<br><br>Related Case Nos. :<br><br>4:10-cv-03270-CW<br>4:10-cv-03317-CW<br>4:10-cv-04482-CW<br><br>**DEFENDANTS FHFA'S AND DeMARCO'S CONSENT TO PLAINTIFFS' REQUEST FOR A CASE MANAGEMENT CONFERENCE**<br><br>October 28, 2011 |

i

DEFENDANTS FHFA'S AND DeMARCO'S CONSENT TO
PLAINTIFFS' REQUEST FOR A CASE MANAGEMENT CONFERENCE
(Nos. 4:10-cv-03084-CW / 4:10-cv-03270-CW / 4:10-cv-03317-CW / 4:10-cv-04482-CW)

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii
FACTUAL BACKGROUND ..................................................................................................... 3
ARGUMENT ............................................................................................................................... 5
CONCLUSION .......................................................................................................................... 11

| | | |
|---|---|---|
| 1 | **TABLE OF AUTHORITIES** | |
| | **CASES** | **Page(s)** |

*Arrington v. Daniels*,
  516 F.3d 1106 (9th Cir. 2008) .................................................................................................. 6

*Asarco, Inc. v. U.S. Environmental Protection Agency*,
  616 F.2d 1153 (9th Cir. 1980) .............................................................................. 1, 6, 7, 8

*Bunker Hill Co. v. EPA*,
  572 F.2d 1286 (9th Cir. 1977) ................................................................................................ 10

*Center for Biological Diversity v. Fed. Highway Admin.*,
  No. Civ. 01-1876-JM(POR), 2002 WL 32307826 (S.D. Cal. Nov. 19, 2002) ........................ 7

*Environmental Protection Information Center v. U.S. Forest Serv.*,
  451 F.3d 1005 (9th Cir. 2006) .................................................................................................. 1

*Inland Empire Pub. Lands Council v. U.S. Forest Serv.*,
  88 F.3d 754 (9th Cir. 1992) .............................................................................. 1-2, 8, 10

*Kaiser Foundation Hospitals v. Leavitt*,
  No. C 05-3143, 2006 WL 2982331 (N.D. Cal. Oct. 17, 2006) ................................................ 6

*Lands Council v. McNair*,
  629 F.3d 1070 (9th Cir. 2010) ............................................................................................. 6, 7

*Leon County v. Fed. Housing Fin. Agency*,
  No. 4:10CV436–RH/WCS, 2011 WL 4620866 (N.D. Fla. Sept. 30, 2011) ...................... 2, 8-9

*Love v. Thomas*,
  858 F.2d 1347 (9th Cir. 1988) ................................................................................................ 10

*Midwater Trawlers Co-operative v. Dep't of Commerce*,
  393 F.3d 994 (9th Cir. 2004) .................................................................................................... 9

*Miller v. Pancucci*,
  141 F.R.D. 292 (C.D. Cal. 1992) ............................................................................................. 6

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978) .................................................................................................................. 6

*Public Power Council v. Johnson*,
  674 F.2d 791 (9th Cir. 1982) .................................................................................................... 9

*Soto v. City of Concord*,
  162 F.R.D. 603 (N.D. Cal. 1995) ............................................................................................. 6

*Southwest Center for Biological Diversity v. U.S. Forest Serv.*,
  100 F.3d 1443 (9th Cir. 1996) ........................................................................................... 6, 10

iii

DEFENDANTS FHFA'S AND DEMARCO'S CONSENT TO
PLAINTIFFS' REQUEST FOR A CASE MANAGEMENT CONFERENCE
(Nos. 4:10-cv-03084-CW / 4:10-cv-03270-CW / 4:10-cv-03317-CW / 4:10-cv-04482-CW)

**DEFENDANTS FHFA'S AND DeMARCO'S CONSENT
TO PLAINTIFFS' REQUEST FOR A CASE MANAGEMENT CONFERENCE**

Defendants the Federal Housing Finance Agency ("FHFA") and Edward DeMarco (together, "Defendants") respectfully consent to Plaintiffs' request for a further case management conference. Defendants believe that a conference would be useful to the parties and the Court, because the parties differ sharply on the issue of whether Defendants are entitled to responses to their outstanding discovery requests. Defendants are entitled to the information they have requested, because that information is highly relevant to the issue before the Court — whether FHFA acted arbitrarily and capriciously, as those Plaintiffs whose claims under the Administrative Procedure Act remain pending (the "APA Plaintiffs") contend.[1] Defendants respectfully request that the parties and the Court convene a case management conference to set a schedule by which the APA Plaintiffs will respond to Defendants' outstanding discovery, and by which subsequent proceedings in these actions will be governed.

As the Ninth Circuit explained in *Inland Empire Public Lands Council v. U.S. Forest Service*, 88 F.3d 754 (9th Cir. 1992), "[i]t will often be impossible, especially when highly technical matters are involved, for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not.'" *Id.* at 760 n.5 (quoting *Asarco, Inc. v. U.S. Environmental Protection Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980))[2]. Accordingly, courts "will consider" evidence outside the administrative record to determine whether the relevant agency "overlooked factors relevant to a proper . . . analysis." *Inland Empire*, 88 F.3d at 760

---

[1] Plaintiff Sierra Club's APA claims having been dismissed, the APA Plaintiffs are California, Sonoma County, Placer County, and Palm Desert.

[2] *Inland Empire* involved allegations that the agency had violated the National Forest Management Act ("NFMA"). Agency decisions that allegedly violate the NFMA are reviewed under the APA's "arbitrary and capricious" standard. *See, e.g.*, *Environmental Protection Information Center v. U.S. Forest Serv.*, 451 F.3d 1005, 1008-09 (9th Cir. 2006).

n.5. In this case, discovery is necessary to develop just such evidence.

Defendants' outstanding Requests for Production, Interrogatories, Requests for Admission, and Rule 30(b)(6) deposition notices seek information relating to one of the APA Plaintiffs' central contentions — that "contrary to FHFA's assertion in its July 6, 2010 Statement, the risk to Fannie Mae and Freddie Mac" associated with first-lien PACE programs "is miniscule." California's First Amended Complaint ("Cal. Am. Compl.") ¶ 41. The APA Plaintiffs' conclusion as to this complex and technical issue of finance is not self-evident, and indeed another district court described one of their major premises as "a proposition that defies common sense." *Leon County v. Fed. Housing Fin. Agency*, No. 4:10CV436–RH/WCS, __ F.Supp.2d __, 2011 WL 4620866, at *2 (N.D. Fla. Sept. 30, 2011).

The APA Plaintiffs put the materiality of the financial risk associated with PACE into issue, and the APA Plaintiffs concede that they have potentially relevant information in their possession, custody, and control. Plaintiff California specifically alleges that "lessons learned from operating PACE programs (such as Sonoma County's . . . Energy Independence Program)" suggest that "FHFA's statements cannot reasonably be supported." *Id*. at ¶ 40. FHFA expects discovery to show that the information and "lessons learned" to which Plaintiffs refer are irrelevant to the materiality of the financial risks associated with PACE, and therefore will lend no support to Plaintiffs' claim that FHFA acted arbitrarily or capriciously by overlooking relevant factors. Defendants, in all fairness, should have opportunity to take discovery concerning the data, assumptions, and analytical framework that purportedly support the APA Plaintiffs' financial analysis, so that the degree of relevance the APA Plaintiffs' conclusions carry, if any, can be established.

Defendants made a good faith effort to resolve this dispute without the need for the Court's involvement. Defendants reduced the number of outstanding discovery requests by more

than half, then met and conferred with Plaintiffs.³ The APA Plaintiffs have taken the position that "discovery against Plaintiffs is not warranted," and that "none of th[e] discovery [Defendants have propounded] is relevant." Pls.' Joint. Req. for Further Case Mgmt. Conf. (Dkt. No. 138). Accordingly, Defendants agree that a case management conference would be useful to determine the course of further proceedings.

**FACTUAL BACKGROUND**

On July 6, 2010, FHFA released a statement called "FHFA Statement on Certain Energy Retrofit Loan Programs" (hereinafter, "FHFA July 6, 2010 Statement"), in which the agency announced its determination that "certain energy retrofit lending programs present significant safety and soundness concerns" and "present significant risk to lenders and secondary market entities." Thereafter, Plaintiffs brought suit, claiming *inter alia* that the July 6, 2010 Statement was arbitrary, capricious, and an abuse of discretion within the meaning of the Administrative Procedure Act ("APA"). *See* Cal. Am. Compl., Third Cause of Action. In support of their claim, Plaintiffs specifically point to California's PACE programs as evidence of "successful" operating programs. *See, e.g.*, *id.* ¶ 31 ("The summary factual assertions contained in the FHFA's July 6, 2010 letter are not supported by analysis or citation to authority or evidence. On information and belief, California alleges that the FHFA made its decision without considering data related to successful, operating programs such as Sonoma County's Independence Program, and thus without considering whether the hypothetical risks it had identified were borne out in practice."). Plaintiffs also allege that FHFA's July 6, 2010 Statement "cannot reasonably be supported" because "PACE in California presents no significant risk to lenders or secondary markets." *Id.* at ¶ 40.

For example, the State of California's First Amended Complaint alleges that "PACE

---

³ Copies of the requests, as narrowed, are attached as Exhibit E.

1   improvements increase property value and lower homeowners' energy bills from the first day

2   they are installed.  PACE thus reduces the risk of default by making it more likely that that [sic]

3   the homeowner will stay current with the mortgage." *Id.*  The State of California also provides a

4   detailed "mortgage foreclosure scenario" purporting to illustrate that the risks to Freddie Mac

5   and Fannie Mae that FHFA articulated in the July 6, 2010 Statement are "miniscule." *Id.* at ¶ 41.

6   In sum, Plaintiffs based their claim that FHFA's July 6, 2010 Statement is arbitrary and

7   capricious on their allegation that they have information purporting to show that PACE programs

8   in California do not present significant risks to first-lien mortgage holders. [4]

9         On September 9, 2011, Defendants propounded requests for documents, interrogatories,

10  and requests for admission, and on October 12, 2011, provided Plaintiffs with notices of

11  deposition.  Despite the fact that Plaintiffs themselves had alleged that the purported success and

12  operation of their PACE programs supported their claim that FHFA had acted arbitrarily and

13  capriciously, Plaintiffs objected wholesale to Defendants' written discovery requests and

14  deposition notices.  *See* Letter from D. Alderson to A. Varma, dated Oct. 12, 2011 (copy

15  attached as Ex. A).  Defendants offered to narrow the scope of the discovery requests.  *See* Letter

16  from A. Varma to D. Alderson (Oct. 14, 2011) (copy attached as Ex. B).  Plaintiffs, however,

17  responded categorically that the "discovery served by FHFA is not allowed."  Letter from D.

18  Alderson to A. Varma (Oct. 19, 2011) (copy attached as Ex. C).

---

[4] The other APA Plaintiffs offer allegations similar to California's. *See*, *e.g.*, Placer Compl. at ¶ 32 ("the imposition of the mPOWER senior lien contractual assessment will not have a significant diminishment of any pre-existing mortgage"); Palm Desert Compl. at ¶ 54(e) ("a PACE improvement underwritten in accordance with Palm Desert's guidelines . . . adds an equal amount of value to the property as the principal amount of the PACE assessment"); Sonoma County Compl. at ¶ 34 ("It is expected that the improvements result in utility savings equal to or exceeding the annual amount of the assessment.".  Similarly, in briefing its motion for preliminary injunction, Sonoma County also argued that "Had the agency examined the data available from Sonoma County's program (which the County would have submitted if the agency had given notice and an opportunity to comment), it would have been apparent that the agency's assertions of risk are not borne out in well-designed programs such as the County's." Sonoma Motion for Prelim. Inj. at 20.

4

DEFENDANTS FHFA'S AND DEMARCO'S CONSENT TO
PLAINTIFFS' REQUEST FOR A CASE MANAGEMENT CONFERENCE
(Nos. 4:10-cv-03084-CW / 4:10-cv-03270-CW / 4:10-cv-03317-CW / 4:10-cv-04482-CW)

1   On October 21, 2011, Defendants responded, explaining that discovery was appropriate

2   "in the unusual circumstances presented here, where FHFA did not utilize APA notice-and-

3   comment procedures or compile a formal administrative record in real time because the agency

4   believed (and still believes) that it was not engaged in APA rulemaking, yet plaintiffs' claim that

5   the agency acted arbitrarily and capriciously in issuing a substantive rule will apparently be

6   heard by the Court," and serving the narrowed requests.[5]  Letter from A. Varma to D. Alderson

7   (Oct. 21, 2011) (copy attached as Ex. D).  Defendants have withdrawn their discovery as to

8   Sierra Club, whose APA claims have been dismissed.

9   On October 26, 2011, Plaintiffs filed with the Court a request for the case management

10  conference, in which they asserted that "the fact and expert discovery deadlines and procedures

11  agreed to by the parties and ordered by the Court are no longer applicable," that "discovery

12  against Plaintiffs is not warranted," and  that "none of th[e] discovery [Defendants have

13  propounded] is relevant."  Pls.' Joint. Req. for Further Case Mgmt. Conf. (Dkt. No. 138).

14  Because the APA Plaintiffs placed their refusal to respond to Defendant's discovery

15  requests before the Court in the Request for a Case Management Conference and set forth their

16  position on the issue, Defendants explain below their opposing position that discovery is

17  necessary and proper.

18  **ARGUMENT**

19  Under Rule 26(b) of the Federal Rules of Civil Procedure, a party may obtain discovery

20  regarding any "nonprivileged matter that is relevant to any party's claim or defense."

21  Information is relevant for purposes of discovery if it "appears reasonably calculated to lead to

22

---

[5] As to Plaintiff California, for example, Defendants narrowed the Requests for Production from 30 to 12, the number of Interrogatories from 13 to nine, the number of Rule 30(b)(6) topics from 16 to ten, and the number of Requests for Admissions from 30 to 12, retaining only those requests seeking information relating to the materiality of the financial risks that first-lien PACE programs pose to investors in mortgage assets.  *See* Ex. E.

1  the discovery of admissible evidence." *Id.* A relevant matter is "any matter that bears on, or that

2  reasonably could lead to other matters that could bear on, any issue that is or may be in the case."

3  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "[T]he question of relevancy

4  should be construed 'liberally and with common sense' and discovery should be allowed unless

5  the information sought has no conceivable bearing on the case." *Soto v. City of Concord*, 162

6  F.R.D. 603, 610 (N.D. Cal. 1995) (quoting *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal.

7  1992)). Hence, "[t]he scope of discovery under the Federal Rules is extremely broad." *Soto*, 162

8  F.R.D. at 610.

9      That said, discovery admittedly is not the norm in APA cases, which are often decided on

10  an "administrative record." Nevertheless, in the unusual circumstances presented here, the

11  narrowly tailored discovery Defendants seek — information about the risks the PACE programs

12  in California pose to mortgage lenders — is appropriate.

13      The Ninth Circuit recognizes that discovery may be permitted and extra-record evidence

14  allowed in APA cases if, *inter alia*, either (1) it is "necessary to determine whether the agency

15  has considered all relevant factors and has explained its decision;" or (2) "when supplementing

16  the record is necessary to explain technical terms or complex subject matters." *Southwest Center*

17  *for Biological Diversity v. United States Forest Service*, 100 F.3d 1443, 1450 (9th Cir. 1996)

18  (emphasis added); *see also Kaiser Foundation Hospitals v. Leavitt*, No. C 05-3143, 2006 WL

19  2982331, at *9 (N.D. Cal. Oct. 17, 2006) (Wilken, J.) (observing that the Ninth Circuit permits

20  judicial review of "additional material to explain the basis of the agency's actions and the factors

21  the agency considered").

22      Substantively, under Ninth Circuit law, "[a]gency action is valid" and an APA arbitrary-

23  and-capricious claim fails "if the agency 'considered the relevant factors and articulated a

24  rational connection between the facts found and the choices made.'" *Lands Council v. McNair*,

25  629 F.3d 1070, 1074 (9th Cir. 2010) (quoting *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th

1   Cir. 2008)).  By contrast, an agency's decision is arbitrary and capricious "only if the agency

2   relied on factors Congress did not intend it to consider, entirely failed to consider an important

3   aspect of the problem, or offered an explanation that runs counter to the evidence before the

4   agency or is so implausible that it could not be ascribed to a difference in view or the product of

5   agency expertise." *Id.* (internal citation omitted)).  Hence, in the Ninth Circuit, it is appropriate

6   in APA cases for courts to consider evidence "outside the administrative record . . . for the

7   limited purposes of ascertaining whether the agency considered all the relevant factors." *Asarco*,

8   616 F.2d at 1160.[6]  Discovery is especially appropriate for that purpose here, where FHFA did

9   not compile a formal administrative record in real time because it did not believe it was required

10  to utilize APA procedures.

11      The APA Plaintiffs appear to base their "arbitrary and capricious" claim on either or both

12  of two prongs of the *Lands Council* test.  Their allegations may be intended to support an

13  argument that FHFA failed to consider an important aspect of the problem — the purported

14  "lessons learned from operating PACE programs (such as Sonoma County's . . . Energy

15  Independence Program)." Cal. Am. Compl. ¶¶ 40-41.  In that regard, California specifically

16  alleges that "FHFA made its decision without considering data related to successful, operating

17  programs such as Sonoma County's Independence Program, and thus without considering

18  whether the hypothetical risks it had identified were borne out in practice." *Id*. at ¶ 31.  The APA

19  Plaintiffs' allegations may also be intended to support an argument that FHFA's explanation for

20  its actions — that first-lien PACE programs present significant safety and soundness concerns

21  and significant risk to lenders and secondary market entities — runs counter to the evidence

22  before the agency or is implausible.  In that regard, California specifically alleges that "FHFA's

---

[6]  Moreover, "Ninth Circuit courts have implied without holding that the test for whether discovery should be allowed is identical to the test of whether supplementation of the administrative record should be allowed." *Center for Biological Diversity v. Fed. Highway Admin.*, No. Civ. 01-1876-JM(POR), 2002 WL 32307826, at *2 (S.D. Cal. Nov. 19, 2002).

1  statements cannot reasonably be supported." *Id.* at ¶ 41.[7]

2  In either event, a threshold issue is whether (or under what circumstances) the financial analysis underlying the APA Plaintiffs' "lessons learned" conclusion — that "the risk to Fannie Mae and Freddie Mac" associated with first-lien PACE programs "is miniscule" — is sound. *See id.* If the APA Plaintiffs' financial analysis is sound (which FHFA questions), then their conclusion that PACE poses only "miniscule" risk could be potentially relevant; accordingly, the Court would have to determine whether FHFA properly considered their analysis and conclusion. But if the APA Plaintiffs' financial analysis is flawed, then their "miniscule risk" conclusion is invalid, the "lessons [purportedly] learned" are irrelevant, and FHFA could not have acted arbitrarily or capriciously regardless of how, if at all, FHFA addressed their analysis and conclusions.

It would make no sense to attempt to evaluate the relevance of information the APA Plaintiffs contend FHFA did not consider against a formal administrative record that FHFA did not compile in real time, and the Ninth Circuit has made it clear that the parties and the court need not undertake to do so. The Ninth Circuit's admonition in *Inland Empire* — that,"[i]t will often be impossible, especially when highly technical matters are involved, for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not," and that courts "will consider" evidence outside the administrative record to determine whether the relevant agency "overlooked factors relevant to a proper . . . analysis" — applies here and fully warrants the discovery FHFA seeks. *See Inland Empire*, 88 F.3d at 760 n.5 (quoting *Asarco*, 616 F.2d at 1160). Such discovery is particularly appropriate here because the APA Plaintiffs' "miniscule risk" conclusion is facially implausible. Indeed, the Northern District of Florida

---

7  As noted *supra*, the other APA Plaintiffs all offer similar allegations and arguments. *See supra* fn. 2.

recently suggested in another PACE case that its major premise is incorrect. That court noted that "[u]nless a PACE improvement always increases the [property's value] enough to cover the corresponding PACE lien—*a proposition that defies common sense*—the mortgagee's recovery may be less than it would have been without the PACE improvement and lien." *Leon County*, 2011 WL 4620866, at *2 (emphasis added).

As noted *supra*, the posture of this case is unusual — most APA cases may not involve discovery beyond the administrative record, and those that do typically involve plaintiffs seeking to take discovery of the agency, not *vice versa*. While we have not identified any decision addressing an agency's motion to compel in such circumstances, decisions in related contexts allowing agencies to supplement the administrative record are instructive in that they demonstrate that agencies need not be held to a fixed administrative record when additional material would allow a Court to better determine whether the agency properly addressed all important aspects of the problem (as we believe the evidence will show).

For example, in *Midwater Trawlers Co-operative v. Department of Commerce*, 393 F.3d 994, 1007-08 (9th Cir. 2004), the Ninth Circuit upheld the district court's decision to allow the agency to supplement the record with materials that would more completely set forth the scientific basis of an agency's action and aid the court in determining whether the agency had considered all relevant factors. The Ninth Circuit explained that "supplementation is permitted if necessary to determine whether the agency has considered all relevant factors and has explained its decision" and concluded that the "district court did not abuse its discretion by permitting the Fisheries Service to supplement the record." *Id.* at 1008.[8] Here, likewise, FHFA should be permitted to explain fully why its analysis of the financial risk associated with first-lien PACE

---

[8] *See also Public Power Council v. Johnson*, 674 F.2d 791, 793-94 (9th Cir. 1982) (where the record does not permit "effective judicial review," the court may "obtain from the agency, either through affidavits or testimony, such additional explanations of the reasons for the agency decision as may prove necessary").

programs is correct and to establish whether the APA Plaintiffs' corresponding analysis is flawed and irrelevant. Hence, the APA Plaintiffs should be compelled to answer Defendants' discovery requests concerning financial risks, as those answers will supply and contextualize the data, assumptions, and analytical framework underlying Plaintiffs' analysis and conclusions — which is the only way to establish their relevance or irrelevance.

Furthermore, discovery is necessary because this case involves "technical terms or complex subject matter." *Southwest Center*, 100 F.3d at 1450 (third exception). For example, in *Inland Empire*, the Ninth Circuit allowed the district court to supplement the record with a declaration submitted by the plaintiffs. "Although the general rule prevents consideration of evidence outside the administrative record, 'the court may consider, particularly in highly technical areas, substantive evidence going to the merits of the agency's action where such evidence is necessary as background to determine the sufficiency of the agency's consideration.'" *Inland Empire*, 88 F.3d at 760 n.5 (quoting *Love v. Thomas*, 858 F.2d 1347, 1356 (9th Cir. 1988), *cert. denied sub nom. AFL-CIO v. Love*, 490 U.S. 1035 (1989)).[9]

Here, while the APA Plaintiffs' "mortgage foreclosure scenario," *see* Cal. Am. Compl. ¶ 41, presents the risk analysis as deceptively simple and straightforward, the economics of allowing PACE programs that have priority over first-lien mortgages in the current fragile housing market are more complex and require the consideration of many more competing factors than the APA Plaintiffs suggest. FHFA should be permitted to take discovery to establish that the APA Plaintiffs' simplistic hypothetical does not address the full complexities of the technical subject it incorrectly purports to address.

---

[9] *See also Bunker Hill Co. v. EPA*, 572 F.2d 1286 (9th Cir. 1977) ("the courts are not straightjacketed to the original record in trying to make sense of complex technical testimony, which is often presented in administrative proceedings without ultimate review by nonexpert judges in mind.").

## CONCLUSION

FHFA did not utilize APA notice-and-comment procedures or compile a formal administrative record in real time because the agency believed that it was not engaged in APA rulemaking, yet the APA Plaintiffs' claim that the agency acted arbitrarily and capriciously in issuing a substantive rule is before the Court. In these unusual circumstances, discovery is necessary to establish whether the analysis and conclusions the APA Plaintiffs claim FHFA failed to consider are "relevant" or "important."

The APA Plaintiffs' own allegations as to why FHFA's actions relating to PACE was arbitrary and capricious are what necessitate the discovery that FHFA seeks. The APA Plaintiffs base their claim on FHFA's alleged failure to consider that PACE programs in California present "no significant risk" or only "miniscule" risk to Fannie Mae and Freddie Mac. Cal. Am. Compl. ¶¶ 40, 41. But the APA Plaintiffs' analysis of that risk "defies common sense," as another district court recently explained. Hence, unless the APA Plaintiffs' analysis is more firmly grounded than their bare conclusions suggest, it would have been entirely reasonable, not arbitrary and capricious, for FHFA to ignore it — flawed analysis and unfounded conclusions simply do not constitute a "relevant factor" or "an important aspect of the problem" that the APA requires FHFA to consider.

The Ninth Circuit recognizes that review is not limited to the "administrative record" where a plaintiff alleges (as the APA Plaintiffs allege here) that an agency failed to consider all relevant factors and the subject involves complexity and technical expertise. By refusing to respond to Defendants' discovery requests, the APA Plaintiffs would hamstring Defendants' ability to show that FHFA did consider all relevant factors in this complex and technical area of finance, and thereby to demonstrate that FHFA's actions concerning PACE were not arbitrary and capricious.

For the above-stated reasons, Defendants respectfully submit that the parties and the

1  Court convene a case management conference to set a schedule by which the APA Plaintiffs will

2  respond to Defendants' outstanding discovery, and by which subsequent proceedings in these

3  actions will be governed.

Stephen E. Hart
FEDERAL HOUSING FINANCE AGENCY

Howard N. Cayne
Asim Varma
ARNOLD & PORTER LLP


By: _____/s/_____
Asim Varma

*Attorneys for Defendants Federal Housing Finance Agency and Edward DeMarco*

# CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2011, I electronically filed the **DEFENDANTS FHFA'S AND DeMARCO'S CONSENT TO PLAINTIFFS' REQUEST FOR A CASE MANAGEMENT CONFERENCE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses of all registered parties.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: October 28, 2011

By: **/S/**
_____

ASIM VARMA
Attorney for Defendants Federal Housing Finance Agency and Edward DeMarco