## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **FAIRHOLME FUNDS, INC.**, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-1053-RCL |
| | ) | |
| **FEDERAL HOUSING FINANCE AGENCY**, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ————————————————————— | ) | |

## DEPARTMENT OF THE TREASURY'S MEMORANDUM IN OPPOSITION TO FAIRHOLME FUNDS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORDS, TO TAKE DISCOVERY, TO SUSPEND THE AGREED BRIEFING <u>SCHEDULE, AND FOR A STATUS CONFERENCE</u>

## TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................................1

Background ........................................................................................................................2

I.      The Collapse of Fannie Mae and Freddie Mac, and Treasury's Extraordinary
        Commitment of Funds to Rescue Those Enterprises ...........................................2

II.     This Litigation .....................................................................................................5

Argument ........................................................................................................................10

I.      The Discovery Motion Should Be Denied Because It Conflicts with the
        Agreed Scheduling Order Entered in These Coordinated Actions ....................10

II.     The Discovery Motion Should Be Denied While the Defendants'
        Jurisdictional Motions Are Pending ...................................................................11

III.    Supplementation of the Record Is Not Required ...............................................16

        A.  Financial Projections .................................................................................18

        B.  Post June-2011 Projections of Earnings and Profits for Freddie Mac .........22

        C.  Material from the Department of Justice .....................................................22

        D.  Privilege Logs ............................................................................................23

IV.     Fairholme Has Not Demonstrated Any Basis for Extra-Record Discovery .....24

V.      The Agreed Briefing Schedule in These Coordinated Actions Should Not
        Be Stayed ..........................................................................................................28

Conclusion .....................................................................................................................28

# TABLE OF AUTHORITIES

**Cases:**                                                                   **Page(s)**

\* *Action for Children's Television v. FCC,*
    564 F.2d 458 (D.C. Cir. 1977) ......................................................................................19

*Air Transp. Ass'n of Am. v. Nat'l Mediation Bd.,*
    663 F.3d 476 (D.C. Cir. 2011) ..............................................................................17, 25

*Amfac Resorts, L.L.C. v. U.S. Dep't of Interior,*
    143 F. Supp. 2d 7 (D.D.C. 2001) ................................................................22, 24, 25, 26

*Animal Legal Def. Fund, Inc. v. Espy,*
    29 F.3d 720 (D.C. Cir. 1994) ......................................................................................15

*Banner Health v. Sebelius,*
    945 F. Supp. 2d 1 (D.D.C. 2013) ................................................................................20

*Blue Ocean Inst. v. Gutierrez,*
    503 F. Supp. 2d 366 (D.D.C. 2007) ........................................................................20, 24

*Camp v. Pitts,*
    411 U.S. 138 (1973) ....................................................................................................17

*Checkosky v. SEC,*
    23 F.3d 452 (D.C. Cir. 1994) ..................................................................................19, 23

*Citizens to Pres. Overton Park, Inc. v. Volpe,*
    401 U.S. 402 (1971) ....................................................................................................17

*Commercial Drapery Contractors v. United States,*
    133 F.3d 1 (D.C. Cir. 1998) ........................................................................................25

*Deukmejian v. Nuclear Regulatory Comm'n,*
    751 F.2d 1287 (D.C. Cir. 1984), *reh'g granted and opinion vacated*, 760 F.2d 1320
    (D.C. Cir. 1985), *and on reh'g*, 789 F.2d 26 (D.C. Cir. 1986) ..........................................18

*Fla. Power & Light Co. v. Lorion,*
    470 U.S. 729 (1985) ....................................................................................................17

\* *Freeman v. FDIC,*
    56 F.3d 1394 (D.C. Cir. 1995) ................................................................................12, 14

\* *Friends of the Earth v. Dep't of Interior,*
    236 F.R.D. 39 (D.D.C. 2006) ..................................................................................25, 26

*Fund for Animals v. Williams,*
   245 F. Supp. 2d 49 (D.D.C. 2003), *vacated as moot,* 428 F.3d 1059
   (D.C. Cir. 2005) ...........................................................................................17

*Gross v. Bell Sav. Bank PaSA,*
   974 F.2d 403 (3d Cir. 1992).............................................................12, 13, 14

* *Kellmer v. Raines,*
   674 F.3d 848 (D.C. Cir. 2012) ..........................................................8, 14, 15

*Marrie v. SEC,*
   374 F.3d 1196 (D.C. Cir. 2004) ...................................................................20

*Megapulse, Inc. v. Lewis,*
   672 F.2d 959 (D.C. Cir. 1982) .......................................................................9

*Nat'l Ass'n of Chain Drug Stores v. Dep't of Health and Human Servs.,*
   631 F. Supp. 2d 23 (D.D.C. 2009) ..........................................................24, 25

* *Nat'l Trust for Historic Preservation v. FDIC,*
   995 F.2d 238 (D.C. Cir. 1993), *aff'd and reinstated on reh'g,* 21 F.3d 469 (D.C.
   Cir. 1994) ....................................................................................................12

*Natural Resources Defense Council, Inc. v. Train,*
   519 F.2d 287 (D.C. Cir. 1975).....................................................................26

* *Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs,*
   448 F. Supp. 2d 1 (D.D.C. 2006) .................................................................17

*Sara Lee Corp. v. Am. Bakers Ass'n,*
   252 F.R.D. 31 (D.D.C. 2008)........................................................................27

*In re Sealed Case,*
   737 F.2d 94 (D.C. Cir. 1984) .......................................................................22

*In re Sealed Case,*
   877 F.2d 976 (D.C. Cir. 1989) .....................................................................23

*Tax Analysts v. IRS,*
   117 F.3d 607 (D.C. Cir. 1997).....................................................................22

* *The Cape Hatteras Access Pres. Alliance v. U.S. Dep't of Interior,*
   667 F. Supp. 2d 111 (D.D.C. 2009) .............................................................18

*Todd v. Campbell,*
   446 F. Supp. 149 (D.D.C. 1978), *aff 'd,* 593 F.2d 1372 (D.C. Cir. 1979).......................20

* *Town of Babylon v. FHFA,*
  699 F.3d 221 (2d Cir. 2012)........................................................................8, 12, 13

*United States v. White,*
  743 F.2d 488 (7th Cir. 1984) ...................................................................16

*Ward v. Resolution Trust Corp.,*
  996 F.2d 99 (5th Cir. 1993) ...................................................................13, 14

*Warth v. Seldin,*
  422 U.S. 490 (1975)...................................................................15

*WildEarth Guardians v. Salazar,*
  670 F. Supp. 2d 1 (D.D.C. 2009) ...................................................................17

## STATUTES

12 U.S.C. § 1719(g)(2) ...................................................................9
12 U.S.C. § 1821(j) ...................................................................12, 13
* 12 U.S.C. § 4617(b)(2) ...................................................................8, 14, 15
* 12 U.S.C. § 4617(f)...................................................................8, 12, 13, 14

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 56(d) ...................................................................6, 7, 10, 11
Fed. R. Evid. 502(a)(2) ...................................................................23

**Introduction**

Fairholme Funds, along with nine other sets of plaintiffs in these coordinated actions, has brought suit to challenge a decision by the Department of the Treasury and the Federal Housing Finance Agency ("FHFA"), acting as conservator of the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac"), to amend Treasury's senior preferred stock purchase agreements with Fannie Mae and Freddie Mac. Treasury has filed a motion to dismiss or, in the alternative, for summary judgment, which showed that this Court lacks jurisdiction over the plaintiffs' claims, as a result of two separate and independent bars on judicial review in the governing statute, the Housing and Economic Recovery Act of 2008 ("HERA"). Treasury also showed that, if this Court were to reach the merits, Fairholme's claims against it under the Administrative Procedure Act ("APA") would fail, as would the claims of all of the plaintiffs.

Instead of filing an opposition brief that would address the substance of Treasury's arguments for dismissal, Fairholme instead has chosen the tactic of filing a premature motion for supplementation of the administrative records and for discovery. Its motion is improper for both procedural and substantive reasons. First, Fairholme's discovery motion is inconsistent with the agreed scheduling order in these coordinated actions, which calls for all of the plaintiffs to file their oppositions to the defendants' dispositive motions by a date certain, and to present any arguments concerning any asserted need for supplementation of the record with those opposition briefs, not in a separate line of briefing. Second, the discovery motion ignores the fact that Treasury has asserted several meritorious grounds to dismiss these actions for lack of jurisdiction. Treasury's jurisdictional motion raises only questions of law, and those questions should be considered first, before any issues of discovery are broached. Third, Fairholme fails to

make a case for anything approaching the extraordinary circumstances that would justify supplementation of the administrative record. To the contrary, the record is entitled to a presumption of correctness, and is not subject to Fairholme's speculative second-guessing. Fourth, for similar reasons, Fairholme is not entitled to discovery. Discovery in an APA action is an exceptional undertaking, and Fairholme has provided no justification to proceed beyond the administrative record. Last, although Fairholme also asks this Court to enter an indefinite stay in the agreed briefing schedule, there is no good reason to do so. This case should instead proceed under the briefing schedule that was agreed to by all of the parties to these coordinated actions and entered by Judge Wilkins. Upon the completion of briefing, judgment should be entered for the defendants.

## Background

### I.   The Collapse of Fannie Mae and Freddie Mac, and Treasury's Extraordinary Commitment of Funds to Rescue Those Enterprises

Fairholme's lawsuit, like the nine related cases with which it is being coordinated for briefing purposes, concerns the extraordinary efforts by the Treasury Department to prevent Fannie Mae and Freddie Mac from becoming insolvent. Fannie Mae and Freddie Mac are government sponsored enterprises ("GSEs") that, for decades, have performed an important function for the national housing market by purchasing home loans from lenders. *See* Department of Treasury and Department of Housing and Urban Development, Reforming America's Housing Finance Market: A Report to Congress at 8 (Feb. 2011) (AR 213).[1]  In 2008,

---

[1] "AR" citations are to the Treasury Department's Administrative Record filed in this action. Administrative Record of the Department of the Treasury, ECF 23 (Dec. 17, 2013). The Treasury Department has filed the same administrative record in each of the cases that are being coordinated in this court for briefing purposes; for ease of reference, this brief refers to the docket entries in the Fairholme case, except where otherwise noted.

however, Fannie Mae and Freddie Mac experienced overwhelming losses, and, by the late summer of 2008, the enterprises were at the brink of insolvency.  The default of those enterprises would have had devastating effects on the national economy.  *See id.* at 7 (AR 212).

Accordingly, on September 6, 2008, the Director of the Federal Housing Finance Agency ("FHFA") exercised the power that Congress had granted to him in the Housing and Economic Recovery Act of 2008 ("HERA") to place Fannie Mae and Freddie Mac into conservatorship.  *See* Press Release, Statement of FHFA Director James B. Lockhart at 5 (Sept. 7, 2008) (AR 89).  FHFA, as the conservator, then entered into Senior Preferred Stock Purchase Agreements (the "PSPAs") with Treasury, in which Treasury agreed to commit a massive amount of taxpayer funds to the GSEs – ultimately providing more than $187 billion – in exchange for senior preferred stock in the enterprises and additional economic rights, which were designed to compensate Treasury and taxpayers for the value of their commitment to the enterprises.  Fannie Mae PSPA (AR 17); Freddie Mac PSPA (AR 51).

The PSPAs were intended to provide confidence to the market that the GSEs would remain in operation.  Under the PSPAs, Treasury committed to provide funds to each GSE for each calendar quarter in which the GSE's liabilities exceeded its assets, so as to maintain the solvency (*i.e.*, the positive net worth) of that enterprise and avoid mandatory receivership.  In return for these funds, Treasury received valuable rights, including senior preferred stock in the GSEs, and the GSEs agreed to pay a dividend to Treasury equal to 10 percent per year of the total amount of funds that Treasury had provided (plus $1 billion for each GSE).  *See* Fannie Mae PSPA § 2.1, 2.2 (AR 20), Freddie Mac PSPA §§ 2.1, 2.2 (AR 54).

By 2012, however, the amount of funds that Treasury had provided to the enterprises had grown so large that it was unlikely that the GSEs would earn enough net income – even in years

when they were otherwise profitable – to be able to pay Treasury the 10% dividends without taking further draws from Treasury.  *See* FHFA, A Strategic Plan for Enterprise Conservatorships: The Next Chapter in a Story that Needs an Ending at 9 (Feb. 21, 2012) (AR 2378).  Because the amount of Treasury's commitment of funds would become fixed at the end of 2012, the amount of these dividend payments threatened to diminish the limited fixed draw capacity remaining and, ultimately, threaten the solvency and viability of Fannie Mae and Freddie Mac.  *See* Moody's: Plan to Raise Fannie Mae and Freddie Mac Guarantee Fees Raises Question of Support at 2 (Sept. 26, 2011) (AR 1894).  Treasury anticipated that the financial markets would pay close attention to this threat to the GSEs' solvency and viability.  *See* Action Memorandum: Third Amendments to the Senior Preferred Stock Purchase Agreements with Fannie Mae and Freddie Mac (Aug. 15, 2012) (AR 4332).

FHFA and Treasury accordingly entered into a Third Amendment to the PSPAs to address this problem.  Third Amendment to Amended and Restated Fannie Mae PSPA (Aug. 17, 2012) (AR 4334); Third Amendment to Amended and Restated Freddie Mac PSPA (Aug. 17, 2012) (AR 4342).  (The first two amendments had each increased the amount of funds Treasury committed, after it had become apparent that the amount of funds available under the original PSPAs would likely be insufficient to maintain the GSEs' financial health, given the enterprises' ongoing losses.)  Under the Third Amendment, the agreements' dividend structure was replaced with a formula under which the GSEs would pay dividends to Treasury only when the enterprises have positive net worth, in an amount equal to the enterprises' positive net worth above a specified reserve amount, and the GSEs would draw funds from Treasury only when the enterprises have negative net worth.  Third Amendment to Amended and Restated Fannie Mae PSPA, § 3 (AR 4337); Third Amendment to Amended and Restated Freddie Mac PSPA, § 3 (AR

4345).  This amendment ended the practice of the GSEs' drawing funds from Treasury to pay

dividends to Treasury, removed the threat of the GSEs' potential insolvency as a result of the

exhaustion of the draw capacity of Treasury's commitment, and improved market confidence in

those enterprises.  *See* GSE Preferred Stock Purchase Agreements Summary Review and Key

Considerations, Presentation to the Office of Management and Budget at 18, 27-28 (May 23,

2012) (AR 3792, 3801-3802).

## II.    This Litigation

On July 7, 2013, Perry Capital, LLC, filed suit in this Court, raising an APA challenge to

the Third Amendment to the PSPAs.  Compl., *Perry Capital, LLC v. Jacob J. Lew, et al.*, No.

1:13-cv-1025 (D.D.C. filed July 7, 2013).  Nine additional complaints, including the complaint

in this action, raising challenges to the Third Amendment were subsequently filed in this Court.[2]

The ten lawsuits were designated as related cases, and each case was assigned to Judge Wilkins.

Judge Wilkins stayed each of the cases pending his initial review of the case files.

Minute Order of September 10, 2013.  Judge Wilkins then directed the parties to meet and

confer, and to provide him with a joint status report that would assist him in determining which

procedures "should be employed to manage these cases efficiently and fairly going forward."

---

[2]  Compl., *Fairholme Funds, Inc. v. FHFA, et al.*, No. 1:13-cv-01053 (D.D.C. filed July 10, 2013); Compl., *Mary Meiya Liao v. Jacob J. Lew, et al.*, No. 1:13-cv-01094 (D.D.C. filed July 16, 2013); Compl., *Joseph Cacciapalle, et al. v. FNMA, et al.*, No. 1:13-cv-01149 (D.D.C. filed July 29, 2013); Compl., *Am. European Ins. Co. v. FNMA, et al.*, No. 1:13-cv-01169 (D.D.C. filed July 30, 2013); Compl., *John Cane v. FHFA, et al.*, No. 1:13-cv-01184 (D.D.C. filed Aug. 1, 2013); Compl., *Francis J. Dennis v. FHFA, et al.*, No. 1:13-cv-01208 (D.D.C. filed Aug. 5, 2013); Compl., *Marneu Holdings Co., et al. v. FHFA, et al.*, No. 1:13-cv-01421 (D.D.C. filed Sept. 18, 2013); Compl., *Arrowood Indem. Co., et al. v. FNMA, et al.*, No. 1:13-cv-01439 (D.D.C. filed Sept. 20, 2013); Compl., *Barry P. Borodkin, et al. v. FNMA, et al.*, No. 1:13-cv-01443 (D.D.C. filed Sept. 20, 2013).

Preliminary Case Management Order No. 1 in the Fannie Mae/Freddie Mac Senior Preferred

Stock Purchase Agreement Litigations at 6, ECF 19 (Oct. 9, 2013).

In response to Judge Wilkins' clear instructions, the parties arrived at a joint proposal for

the coordination of the related cases.  The parties agreed that consolidation was appropriate for

the seven cases styled as putative class actions (*Liao*, *Cacciapalle*, *American European*

*Insurance Co.*, *Cane*, *Dennis*, *Marneu Holdings Co.*, and *Borodkin*), and agreed that the

plaintiffs in these cases would file a consolidated putative class action complaint.[3]  Joint Status

Report in Response to Preliminary Case Management Order No. 1 in the Fannie Mae/Freddie

Mac Senior Preferred Stock Purchase Agreement Litigations at 1-2, ECF 20 (Nov. 6, 2013).  The

parties also agreed to coordinate the remaining cases with the consolidated class complaint for

briefing purposes.  *Id.* at 2.

In the joint status report, the parties represented to Judge Wilkins that "[a]ll parties agree

that initial motions with respect to all claims in all cases should be briefed and argued on the

same schedule."  *Id.* at 3; *see also id.* at 6.  The parties accordingly proposed a schedule that

called for the defendants to file their administrative records by December 17, 2013, a full month

before briefing in the cases commenced; the defendants to file their dispositive motions by

January 17, 2014; the plaintiffs to file oppositions to the defendants' motions and cross-motions

by February 19, 2014; and reply briefs to follow.  *Id.* at 3-4.  The parties jointly recited that

"[t]his schedule is without prejudice to parties' rights to oppose any summary judgment motions

under Federal Rule of Civil Procedure 56(d), in whole or in part, on the ground that further

factual development is needed."  *Id.* at 4.

---

[3]  The putative class plaintiffs filed a consolidated complaint on December 3, 2013.  Consol. Am.
Class Action and Deriv. Compl., *In re Fannie Mae/Freddie Mac Senior Preferred Stock
Purchase Agreement Class Action Litigations*, No. 1:13-mc-01288 (D.D.C. filed Dec. 3, 2013).

After holding a status conference in which all parties in each of the related cases participated, Judge Wilkins entered an order setting a schedule for the coordinated briefing of these cases.  Order Regarding Briefing Schedule in All Cases, ECF 21 (Nov. 18, 2013).  The order adopted the schedule that the parties had jointly proposed for the filing of motions and oppositions, and recited, as the parties had in their status report, that "[t]his schedule is without prejudice to the parties' rights to oppose any summary judgment motions under Federal Rule of Civil Procedure 56(d), in whole or in part, on the ground that further factual development is needed."  *Id.* at 2.  Judge Wilkins also announced his desire to "receive one set of papers pertaining to the non-consolidated actions, if at all possible," and accordingly instructed the parties in the three non-consolidated actions to confer to establish a protocol for joint briefing in these cases.  *Id.* at 3.

The parties to these three actions, including the Fairholme plaintiffs, filed a joint status report proposing to set a collective page limitation for the defendants' briefs in support of their dispositive motions, and a collective page limitation for the non-consolidated plaintiffs' responsive briefs.  Joint Status Report in Response to Order Regarding Briefing Schedule in Three Cases at 2-3, ECF 22 (Dec. 6, 2013).  Judge Wilkins adopted the parties' suggestion, and entered an order granting leave to the plaintiffs in the three non-consolidated action to file briefing, collectively totaling 150 pages, in opposition to the defendants' dispositive motions and in support of any cross-motions for summary judgment; the order directed that this page limitation would be inclusive of any supplemental briefs.  Minute Order of January 6, 2014.

Pursuant to the case management schedule, the defendants timely filed their administrative records.  Administrative Record of the Department of the Treasury, ECF 23 (Dec. 17, 2013); Notice of Filing Document Compilation Regarding Third Amendment to Preferred

Stock Purchase Agreements, ECF 24 (Dec. 17, 2013).   The defendants also have timely filed

their dispositive motions under the agreed schedule.  Motion to Dismiss or, in the Alternative, for

Summary Judgment by Department of the Treasury, ECF 27 (Jan. 17, 2014); Motion to Dismiss

All Claims and, in the Alternative, for Summary Judgment as to Plaintiffs' Arbitrary and

Capricious Claims by FHFA, *et al.*, ECF 28 (Jan. 17, 2014).

In its dispositive motion, the Department of the Treasury argued that two independent

statutory barriers deprived this Court of jurisdiction over the plaintiffs' claims.  First, HERA

prohibits relief that would restrain the powers that FHFA exercises as conservator of the GSEs,

such as FHFA's decision to enter into the Third Amendment.  12 U.S.C. § 4617(f); *see, e.g.*,

*Town of Babylon v. FHFA*, 699 F.3d 221, 228 (2d Cir. 2012).   Second, HERA prohibits any

suits that are based on the plaintiffs' status as shareholders in the GSEs; as the conservator of the

enterprises, FHFA has succeeded to all of the rights of the shareholders in those institutions.  12

U.S.C. § 4617(b)(2)(A)(i), (b)(2)(B)(i); *see, e.g.*, *Kellmer v. Raines*, 674 F.3d 848, 850 (D.C. Cir.

2012).  (Treasury also noted two additional barriers to any suit premised on the plaintiffs' status

as shareholders; under the shareholder standing doctrine, the plaintiffs lacked prudential standing

to sue for alleged injuries to the GSEs, and, further, any shareholder claims concerning a right to

a liquidation preference would not be ripe for judicial review.)

Treasury also demonstrated that the plaintiffs' APA claims failed on the merits.

Fairholme and the other plaintiffs have alleged that, by entering into the Third Amendment,

Treasury had exceeded its authority for the purchase of securities under HERA.  Treasury

established, however, that it did not purchase any new securities when it entered into the Third

Amendment, and that the Third Amendment instead was an exercise of rights under the original

purchase agreements, which HERA expressly permitted Treasury to do at any time.  *See* 12 U.S.C. § 1719(g)(2)(A), (g)(2)(D).

Fairholme and other plaintiffs also have alleged that Treasury violated the APA by failing to consider whether it owed fiduciary duties to minority shareholders in the GSEs.   Treasury showed that any such claim sounded in an alleged contractual relationship between the shareholders and Treasury, and that the Tucker Act thus deprived this Court of jurisdiction over such a claim, even if the plaintiffs attempted to plead their claim as an APA claim.  *See Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967-68 (D.C. Cir. 1982).  Treasury further demonstrated that any fiduciary duty claim failed as a matter of law, because Treasury did not have any obligation to consider policies embodied in sources of law other than HERA, the federal statute under which Treasury operated; because any fiduciary duty of the sort that the plaintiffs had asserted would conflict with HERA's statutory scheme; and because, as a matter of law, Treasury does not owe any state-law fiduciary duties to the plaintiffs.[4]

Treasury's administrative record also proved that the Third Amendment was the product of reasoned decision-making.  As noted above, by 2012, the GSEs' dividend obligations had grown so large – about $19 billion a year – that it was doubtful that either Fannie Mae or Fannie Mac could earn enough income to pay those dividends without taking further draws from Treasury.  These dividend obligations threatened the solvency and viability of the GSEs.  By entering into the Third Amendment, Treasury and FHFA ended the practice of the GSEs'

---

[4]  The putative class plaintiffs have also asserted claims for breach of fiduciary duty and for compensation under the Takings Clause against Treasury.  Treasury has demonstrated in its dispositive motion that this Court lacks jurisdiction over those claims, and that the claims in any event fails as a matter of law.  Fairholme, however, has only asserted an APA claim with respect to Treasury, and has only asserted a need for supplementation of the record or for discovery as to Treasury in furtherance of that claim.  This memorandum accordingly is limited to a discussion of the claim asserted by Fairholme against Treasury.

drawing funds from Treasury to pay dividends to Treasury, and removed this threat to the GSEs'

solvency.

Under the agreed briefing schedule, the plaintiffs' opposition to the defendants'

dispositive motions, and any cross-motions for summary judgment, were due to be filed by

February 19, 2014.  Shortly before that deadline, however, on February 12, 2014, Fairholme

instead filed the present motion for supplementation of the administrative records and for

discovery.

**Argument**

## I.     The Discovery Motion Should Be Denied Because It Conflicts with the Agreed Scheduling Order Entered in These Coordinated Actions

As an initial matter, Fairholme's motion should be denied because it is in conflict with

the agreed scheduling order entered in these actions.   The parties have agreed to a single briefing

schedule for these coordinated actions, in which the defendants would file dispositive motions

and the plaintiffs would file oppositions to those dispositive motions on an established schedule.

If Fairholme believes that it has a basis to oppose the defendants' dispositive motions on the

ground that discovery is needed, it should make that argument in its opposition brief – not in a

separate round of briefing.  Fairholme is entitled to one, and only one, opposition.  This motion

is Fairholme's effort to have two.

When the parties submitted their joint proposal for a briefing schedule, they called for the

plaintiffs to file their opposition briefs to the defendants' dispositive motions by a date certain,

and recited that "[t]his schedule is without prejudice to parties' rights to oppose any summary

judgment motions under Federal Rule of Civil Procedure 56(d), in whole or in part, on the

ground that further factual development is needed."  Joint Status Report in Response to

Preliminary Case Management Order No. 1 in the Fannie Mae/Freddie Mac Senior Preferred

10

Stock Purchase Agreement Litigations at 4, ECF 20 (Nov. 6, 2013).  Judge Wilkins repeated the

same proviso in entering the agreed scheduling order.  Order Regarding Briefing Schedule in All

Cases at 2, ECF 21 (Nov. 18, 2013).  The joint status report, and the order, recognized the

principle that one of the grounds that a non-movant may assert to oppose summary judgment is

that "for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ.

P. 56(d).

By filing the present discovery motion, Fairholme seeks "to oppose any summary

judgment motions under Federal Rule of Civil Procedures 56(d)" without going to the trouble of

actually filing a brief in opposition to the defendants' dispositive motions.  This is improper

under the agreed scheduling order.  Fairholme should instead present any arguments that it

believes it may make under Rule 56(d) in its opposition brief (which, as discussed above, is

subject to a collective page limitation, inclusive of any plaintiffs' supplemental briefs, *see*

Minute Order of January 6, 2014).

## II.    The Discovery Motion Should Be Denied While the Defendants' Jurisdictional Motions Are Pending

As Treasury has demonstrated in its motion to dismiss, this Court lacks jurisdiction over

Fairholme's challenge to the Third Amendment.  Fairholme's claims, like those of the other

plaintiffs in these coordinated cases, run afoul of two separate, and independent, barriers to

judicial review over such claims that Congress erected when it enacted HERA.   HERA prohibits

relief that would restrain the powers that FHFA exercises as conservator of the GSEs, such as the

decision to enter into the Third Amendment.  In addition, HERA prohibits suits, such as those

brought by the plaintiffs here, based on the plaintiffs' status as shareholders in the GSEs; under

HERA, the conservator (FHFA) has succeeded to all of the rights of the shareholders in those

institutions.

11

First, these cases are subject to dismissal because of a statutory bar against injunctive or other relief restraining FHFA's powers as conservator of the GSEs. Specifically, 12 U.S.C. § 4617(f) states that: "Except as provided in this section or at the request of the Director, no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver." By its terms, this provision "excludes judicial review of 'the exercise of powers or functions' given to the FHFA as conservator." *Town of Babylon v. FHFA*, 699 F.3d 221, 228 (2d Cir. 2012). Where, as here, acts taken by FHFA as conservator are challenged, "[a] conclusion that the challenged acts were directed to an institution in conservatorship and with the powers given to the conservator ends the inquiry." *Id.*

Section 4617(f) does not permit judicial review of FHFA's actions as conservator or receiver. Indeed, courts interpreting a nearly identical provision – barring judicial review of actions by the Resolution Trust Corporation (and its successor, the Federal Deposit Insurance Corporation) as conservator or receiver of failed banking institutions[5] – have held that the provision permitted review only "where the [agency] is acting clearly outside its statutory powers." *Gross v. Bell Sav. Bank PaSA*, 974 F.2d 403, 407 (3d Cir. 1992). By contrast, "where the [agency] performs functions assigned it under the statute, injunctive relief will be denied even where the [agency] acts in violation of other statutory schemes." *Id.*; *see also Freeman v. FDIC*, 56 F.3d 1394, 1399 (D.C. Cir. 1995) ("Section 1821(j) does indeed effect a sweeping ouster of the court's power to grant equitable remedies"); *Nat'l Trust for Historic Pres. v. FDIC*,

---

[5] *Compare* 12 U.S.C. § 1821(j) ("Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver.") *with* 12 U.S.C. § 4617(f) ("Except as provided in this section or at the request of the Director, no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver.").

995 F.2d 238, 240 (D.C. Cir. 1993), *aff'd and reinstated on eh'g*, 21 F.3d 469 (D.C. Cir. 1994); *accord Ward v. Resolution Trust Corp.*, 996 F.2d 99, 103 (5th Cir. 1993) (because "disposing of assets of the failed thrift when acting as its conservator or receiver is a quintessential statutory power of the RTC," injunctive relief is unavailable even if the RTC is "improperly or even unlawfully exercising" that power).

Whether these cases should be dismissed in light of this explicit statutory limitation is a legal question that the Court must answer before entertaining any arguments on the merits. *See Nat'l Trust for Historic Pres. v. FDIC*, 21 F.3d 469, 470 (D.C. Cir. 1994) (affirming district court opinion dismissing suit for equitable relief as barred by 12 U.S.C. § 1821(j)). Fairholme, however, argues that the Court should permit discovery notwithstanding the statutory bar to relief because "[t]here is obvious and substantial overlap between this 'jurisdictional' argument and Defendants' merits arguments defending the Net Worth Sweep," Fairholme Mot. at 35, and because "[b]oth sets of Defendants concede that section 4617(f) does not bar relief when the FHFA is acting in excess of its statutory powers," *id.* at 34. Fairholme misapprehends the nature of the defendants' arguments, none of which require discovery to resolve.

As to the latter point, Fairholme apparently means to refer to Treasury's quotation from the Third Circuit's opinion in *Gross*, although Fairholme's summation omitted the critical phrase "*clearly outside* its statutory powers." *Gross*, 974 F.2d at 407. Nor does the Third Circuit's reference to actions "clearly outside [a conservator's] statutory powers" turn every threshold argument into a merits argument, as Fairholme would have it. Rather, as the Second Circuit has held, it is sufficient for the Court to determine that "the challenged acts were directed to an institution in conservatorship" and were taken with "the powers given to the conservator," *Town of Babylon*, 699 F.3d at 228. So, for example, if FHFA were attempting to conduct foreign

policy, or to issue tax regulations on behalf of the Department of Treasury, or take some other step that is not directed at an entity in conservatorship or with the powers of a conservator, then Section 4617(f) would not serve as a bar to relief.  However, where the challenged actions were directed at Fannie Mae and Freddie Mac, and relate to a statutory power of a conservator, then relief is barred.  *See* Treasury Mot. to Dismiss at 22-29.  Nor does it matter whether or not the Court agrees that the challenged actions are a prudent or proper exercise of the conservatorship powers.  Relief is barred even if the conservator is "improperly or even unlawfully exercising" the conservatorship power.  *Ward*, 996 F.2d at 103; *see also Freeman v. FDIC*, 56 F.3d at 1399 ("The exercise of these powers may not be restrained by any court, *regardless of the claimant's likelihood of success on the merits of his underlying claims*.") (emphasis added).  Rather than making a defense on the merits, in moving to dismiss under Section 4617(f), Treasury and FHFA were explaining why Fairholme and the other plaintiffs had not pled allegations that traversed the anti-injunction provision of HERA.  That question can be resolved without any discovery at all.

Further, Treasury has argued that the complaints must be dismissed because, in addition to barring challenges to the actions of FHFA as conservator, HERA bars suits brought by shareholders for the duration of the conservatorship.  Treasury Mot. to Dismiss at 29-33, 34-36.  Upon its appointment as conservator of the GSEs, FHFA succeeded to all of the "rights, titles, powers, and privileges" of the GSEs and "of any stockholder, officer, or director" of the GSEs.  12 U.S.C. § 4617(b)(2)(A)(i).  HERA further empowered FHFA to "take over the assets of and operate [the GSEs] with all the powers of [the GSEs'] shareholders, . . . directors, and . . . officers," and to "conduct all business of [the GSEs]."  *Id.* § 4617(b)(2)(B)(i).  The Court of Appeals has held that Section 4617(b) "plainly transfers shareholders' ability to bring derivative suits – a 'right[], title[], power[], [or] privilege[]' – to FHFA."  *Kellmer v. Raines*, 674 F.3d 848,

850 (D.C. Cir. 2012) (alterations in original).  While *Kellmer* addressed derivative claims, its logic would deprive Fairholme and the other plaintiffs of standing whether their claims are characterized as "derivative" or "direct."  The ability to bring a cause of action as a shareholder of the GSEs is obviously a "right[], title[], power[], [or] privilege[]" of being a shareholder, and thus that ability was transferred to FHFA by operation of law upon its appointment as conservator.  *See* 12 U.S.C. § 4617(b)(2)(A)(i).  Fairholme's discovery motion did not address this second, independent jurisdictional barrier at all, other than to make a generalized assertion that "considerations of efficiency and judicial economy," Fairholme Mot. at 35, should allow them to proceed to merits discovery notwithstanding the threshold defenses of the defendants.  If HERA deprives Fairholme and the other plaintiffs of their ability to bring a claim in the first instance, however, then the cases should be dismissed on these purely legal grounds without any discovery at all.  *See Kellmer*, 674 F.3d at 850 ("to resolve this issue, we need only heed Professor Frankfurter's timeless advice: '(1) Read the statute; (2) read the statute; (3) read the statute!'").

Moreover, because the purported injury in this suit is an injury to the value of their stockholdings, the plaintiffs lacks prudential standing under the shareholder standing rule. Treasury Mot. to Dismiss at 34-36.  Because the standing inquiry relates to whether the Court has subject-matter jurisdiction over the case, the prudential standing issue should be addressed first, before any merits arguments.  *See Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.  This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."); *Animal Legal Def. Fund, Inc. v. Espy*, 29 F.3d 720, 723 n.2 (D.C. Cir. 1994) ("Standing, whether constitutional or

15

prudential, is a jurisdictional issue . . ."); *see also United States v. White*, 743 F.2d 488, 492 (7th Cir. 1984) ("no matter how interesting and no matter how important this case may be . . . we cannot address it unless we have jurisdiction.").[6]

## III.   Supplementation of the Record Is Not Required

Fairholme seeks to add four categories of documents to the record: (1) materials from the accounting firm Grant Thornton underlying Treasury's 2012 financial protections; (2) any post-June 2012 projections concerning Freddie Mac's earnings and profitability; (3) a memorandum from the Department of Justice concerning the proposed Third Amendment; and (4) privilege logs for any material withheld from the record on the basis of privilege.  Fairholme Mot. at 17-21.  Fairholme has not demonstrated that any of this material is properly part of the record, and its motion should be denied.

Fairholme correctly acknowledges that supplementation of the record is ordinarily not granted.  Fairholme Mot. at 14.  Indeed, Fairholme's motion is essentially an argument for the Court to grant an exception to the strong presumption of regularity of the administrative record, for which there is no basis.  Under the Administrative Procedure Act, "the focal point for judicial

---

[6] Fairholme has also brought suit against the United States in the Court of Federal Claims, alleging that is entitled to compensation under the Takings Clause as a result of the Third Amendment.  Fairholme also moved for leave to take discovery in that court.  On February 26, 2014, that court granted Fairholme leave to take discovery with respect to the ripeness of its takings claim; whether FHFA is the United States for purposes of that court's Tucker Act jurisdiction; and, with respect to the merits of the takings claim, the effect of the GSEs' solvency (or lack thereof) on the reasonableness of investment-backed expectations about their future profitability.  Order, *Fairholme Funds, Inc. v. United States*, 1:13-cv-00465-MMS (Fed. Cl. entered Feb. 26, 2014).  None of those issues are implicated in Fairholme's discovery motion in this Court.  Moreover, as noted above, Fairholme's claims in this Court are subject to additional threshold defenses, and those defenses were not addressed by the Court of Federal Claims in its order.  These threshold defenses do not require discovery to resolve.  Nor, as explained below, is there any basis for discovery with respect to the merits of the APA claim that Fairholme presents here, if this Court were to reach the merits.

review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam).  The agency supplies the court with the record of the materials that were before the agency at the time of the challenged action.  *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (explaining that the APA provides for review "based on the record the agency presents to the reviewing court" (citing *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971))).

The case law in this Circuit weighs decidedly against granting requests like Fairholme's. "[A]bsent clear evidence to the contrary, an agency is entitled to a strong presumption of regularity, that it properly designated the administrative record.  Once an agency presents a certified copy of the complete administrative record to the court, the court presumes that the record is properly designated.  Common sense dictates that the agency determines what constitutes the 'whole' administrative record because '[i]t is the agency that did the "considering," and that therefore is in a position to indicate initially which of the materials were "before" it—namely, were "directly or indirectly considered.""'" *Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) (second alteration in original) (citations omitted); *see also Fund for Animals v. Williams*, 245 F. Supp. 2d 49, 56, 58 (D.D.C. 2003) (denying a motion to compel an agency to produce a "complete" administrative record because the motion "ignore[d] the fact that the record is presumed properly designated"), *vacated as moot*, *Fund for Animals v. Hogan*, 428 F.3d 1059 (D.C. Cir. 2005).

Plaintiffs seeking to challenge an administrative record "must put forth concrete evidence to show that the record was not properly designated." *Pac. Shores Subdivision Cal Water Dist.*, 448 F. Supp. 2d at 6; *see also Air Transp. Ass'n of Am. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487-88 (D.C. Cir. 2011); *WildEarth Guardians v. Salazar*, 670 F. Supp. 2d 1, 5 (D.D.C. 2009).

Supplementation of the record – the remedy that Fairholme seeks here – is "an exceptional occurrence." *The Cape Hatteras Access Pres. Alliance v. U.S. Dep't of Interior*, 667 F. Supp. 2d 111, 113 (D.D.C. 2009) (Lamberth, J.). "In order for a Court to order supplementation, the plaintiff must overcome [the] strong presumption of regularity by putting forth concrete evidence that the documents it seeks to 'add' to the record were actually before the decisionmakers." *Id.* at 114; *see also Deukmejian v. Nuclear Regulatory Comm'n*, 751 F.2d 1287, 1329 (D.C. Cir. 1984), *reh'g granted and opinion vacated sub nom. San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 760 F.2d 1320 (D.C. Cir. 1985), *and on reh'g sub nom. San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 789 F.2d 26 (D.C. Cir. 1986) ("In addition to the burden on appellate tribunals, over-eagerness by courts to review documents in camera and to supplement the administratively-created record fails to respect the autonomy of administrative agencies and the "strong presumption" that "when administrative officials purport to decide weighty issues within their domain they have conscientiously considered the issues."). Fairholme offers only supposition and conjecture for its argument that the record submitted by Treasury is inadequate, and such speculation does not provide a basis on which to order supplementation.

    A. *Financial Projections*

    The first category of documents that Fairholme seeks to add to the record consists of financial projections and associated records prepared by the accounting firm Grant Thornton and Treasury's "scenarios" used to develop the analyses in the administrative record. Fairholme Mot. at 17. Notably, these materials were already incorporated in the material contained within the administrative record. *See, e.g.*, GSE Preferred Stock Purchase Agreements Summary Review and Key Considerations, Presentation to the Office of Management and Budget (May 23,

2012) (AR 3775-3802); Illustrative Financial Forecasts – Fannie Mae Base Case & Stress Scenarios (July 2012) (AR 3883-3894).  Evidently dissatisfied with seeing the projections that were used in Treasury's decision-making process, Fairholme seeks access to the underlying data itself.

The plaintiffs' suggestion that they are entitled to access to a much greater volume of data than already provided in the administrative record, as well as all available information about how the data was compiled, is at odds with binding precedent and disconnected from any practical reality.  Agency internal studies and data generally are not included in administrative records.  Under the governing case law, the administrative record filed by Treasury includes the most critical data the agency used in the disputed actions, and nothing more is needed.  The D.C. Circuit has long recognized that it is unnecessary and impractical for an administrative record to contain detailed documentation of the agency's internal deliberations.

In *Action for Children's Television v. FCC*, 564 F.2d 458 (D.C. Cir. 1977), the D.C. Circuit explained that an agency "may draw upon its own expertise in interpreting the facts or upon broader policy considerations not present in the record."  *Id.* at 471.  It elaborated on this statement by citing cases holding that an agency "may 'act on the basis of *dat[a] contained in its own files* or on its own views or opinions'" and that "it may be 'sufficient that [an action is] supported by *evidence in the [agency's] files*, or even by its experience."  *Id.* at 471 n.22 (emphasis added).  The court rejected the notion that an administrative record must "reflect every informational input that may have entered into the decisionmaker's deliberative process."  *Id.* at 477.  The Court observed that such an all-encompassing standard would render judicial review practically impossible.  "The problem is obviously a matter of degree, and the appropriate line must be drawn somewhere."  *Id.; see also Checkosky v. SEC*, 23 F.3d 452, 489 (D.C. Cir. 1994)

("In passing on final agency action, we . . . have refused to consider transcripts of closed agency meetings or intra-agency memoranda and documents recording the deliberative process leading to the agency's decision.") (citations and quotations omitted), *superseded on other grounds as recognized by Marrie v. SEC*, 374 F.3d 1196 (D.C. Cir. 2004)*; Blue Ocean Inst. v. Gutierrez*, 503 F. Supp. 2d 366, 370-72 (D.D.C. 2007) (holding that the administrative record was complete even though the record did not include "raw data, such as raw computer data or individual logbook reports" sought by the plaintiff); *Todd v. Campbell*, 446 F. Supp. 149, 152 (D.D.C. 1978) ("[T]he Court does not need to examine the raw data in order to determine whether or not the [agency] decision was arbitrary and capricious or otherwise not in accordance with law. . . . There is no general requirement that the agency include in the record the data underlying each factor . . . ."), *aff'd*, 593 F.2d 1372 (D.C. Cir. 1979).

　　　As to Fairholme's demand that Treasury go beyond the results of the financial analyses and supplement the record with a consultant's raw data, "[p]laintiffs' desire to replicate each calculation contained within the agency's analysis—without more—will not suffice." *Banner Health v. Sebelius*, 945 F. Supp. 2d 1, 28 (D.D.C. 2013).   "Indeed, requiring an agency to produce source data upon source data so that its analysis can be replicated in minute detail would appear, in most instances, to exceed the bounds of arbitrary and capricious review." *Id.*

　　　Fairholme professes a need for supplementation of the record, because Treasury prepared two analyses that arrived at different projections for Fannie Mae's future income.  Fairholme Mot. at 17-18.  Both of the analyses cited by Fairholme arrived at a range of potential results for Fannie Mae's future projected income, providing both "base case," and "downside case" or "stress case," scenarios for the GSE's future financial health.  *See* GSE Preferred Stock Purchase Agreements (PSPA) Overview and Key Considerations (June 13, 2012) (AR 3833-3862);

Illustrative Financial Forecasts - Fannie Mae Base Case & Stress Scenarios (July 2012) (AR 3884-3903).

Each analysis employed a different set of assumptions.  The June 2012 analysis assumed an increase in single-family guarantee fees over time, and a 10 percent decline in the retained portfolio balance, when calculating Fannie Mae's net comprehensive income.  *See* GSE Preferred Stock Purchase Agreements (PSPA) Overview and Key Considerations at 9 (June 13, 2012) (AR 3841).  The page of the July analysis cited by Fairholme did not assume an increase in single-family guarantee fees (as noted in the title of the slide), and it assumed a 15 percent decline in the retained portfolio balance, when calculating Fannie Mae's net comprehensive income.  *See* Illustrative Financial Forecasts - Fannie Mae Base Case & Stress Scenarios at 4, 6 (July 2012) (AR 3887, 3889).  In addition, the data in the June presentation is presented by fiscal year, *see* AR 3847 (labeling "FY2012," "FY2013," etc.), and was developed for Treasury's Agency Financial Report for Fiscal Year 2011 using information as of October 2011, *see* AR 3843.  The data in the July presentation is by calendar year, not fiscal year, and incorporated data from Fannie Mae's subsequent financial statements.  *See* AR 3889 (labeling by calendar year).

Under either analysis, however – and under any of the "base case," "downside case," or "stress case" scenarios employed in the analyses – the result was the same.  Before the Third Amendment, the GSEs' payment of dividends to Treasury led to further draws of funds from Treasury; that practice, if left unaddressed, would lead to the exhaustion of the GSEs' remaining draw capacity and threaten the future solvency of the GSEs.  That different analyses, employing a variety of different assumptions, arrived at the same conclusion is a sign of the strength of Treasury's decision-making process, not its weakness.  And in any event, it provides no basis for Fairholme's claim for supplementation of the record or for extra-record discovery.

B.  *Post June-2012 Projections of Earnings and Profits for Freddie Mac*

Fairholme also seeks "documents [that] were prepared after June 2012 that analyzed Freddie's profitability and that were considered by Defendants in entering into" the Third Amendment.  Fairholme Mot. at 18.  As Fairholme acknowledges, *id.* at 18 n.6, counsel for Treasury has already informed them that Treasury's decision-making process did not include any additional projections concerning Freddie Mac after June 2012.

C.  *Material from the Department of Justice*

Fairholme also seeks an order that would compel access to "DOJ documents," including documents produced by the Department of Justice for the Department of Treasury, or alternatively would require that Treasury "explain why they are entitled to exclude such documents from the administrative record."  Fairholme Mot. at 19.  As the Court has held, however, material that is "privileged [] need not be included in the record."  *Amfac Resorts, L.L.C. v. U.S. Dep't of Interior*, 143 F. Supp. 2d 7, 13 (D.D.C. 2001) (Lamberth, J.).

The material at issue here involves communications to and from "the Justice Department's Commercial Litigation Branch" because the proposed Third Amendment "relates to vested contract rights of the government."  Action Memo for Secretary Geithner at 3 (Aug. 15, 2012) (AR 4332).  That reference to these communications in the action memo suffices to demonstrate that they are covered by the attorney-client privilege as well as the deliberative process privilege.  *See Checkosky*, 23 F.3d at 489 (stating that a Court should not consider "documents recording the deliberative process leading to the agency's decision.").

"The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services."  *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) (citing *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984)).

Moreover, despite Fairholme's speculation to the contrary, Fairholme Mot. at 19 n.7, Treasury

has not waived the attorney-client privilege with respect to these communications.  The action

memo stated only that "[t]he Justice Department approved Treasury's request for authority to

modify its dividend rights under the PSPAs with the GSEs.  The Justice Department agreed that

the proposed modification is fiscally prudent and in the best interest of the United States."

Action Memo for Secretary Geithner at 3 (Aug. 15, 2012) (AR 4332).  Nothing in this two-

sentence summary of the communications between Treasury staff and the Commercial Litigation

Branch conveyed the particular issues on which legal advice was sought or the specific legal

advice provided by the Department of Justice.  As such, there is no argument that "the disclosed

and undisclosed communications or information concern the same subject matter," such that a

waiver applies. Fed. R. Evid. 502(a)(2).  This recitation of the conclusions reached by the

Department of Justice *apart from* the specific legal advice sought does not constitute a waiver of

the attorney-client privilege with respect to the subject matter of the advice.  *See also In re*

*Sealed Case*, 877 F.2d 976, 981 (D.C. Cir. 1989) (stating that "determinations [with respect to

waiver] properly depend heavily on the factual context in which the privilege is asserted" and

that "the 'subject matter' of the waiver could, nevertheless, be defined in a number of different

ways").

  D.  *Privilege Logs*

    Finally, Fairholme seeks to compel the production of a privilege log of any documents

withheld from the record on the basis of a claim of privilege.  Fairholme Mot. at 19-20.

Although Treasury is not sure exactly which documents Fairholme wishes it to log, Treasury

assume that Fairholme seek a log of all internal communications, drafts, notes, and similar

materials that were generated during Treasury's decision-making process regarding the Third

Amendment.  Such documents, however, are not part of the administrative record that forms the basis of this Court's review.  Because they are not part of the record, Defendants have no obligation to log those documents.

Privileged materials "are not a part of the administrative record when an agency decision is challenged as arbitrary and capricious."  *Blue Ocean*, 503 F. Supp. 2d at 372; *see also Amfac Resorts*, 143 F. Supp. 2d at 13 ("Deliberative intra-agency memoranda and other such records are ordinarily privileged, and need not be included in the record.").   Because such materials are not properly part of the record to begin with, "Defendants need not, therefore, file a privilege log pertaining to the withheld documents."  *Nat'l Ass'n of Chain Drug Stores v. Dep't of Health and Human Servs.*, 631 F. Supp. 2d 23, 28 (D.D.C. 2009) (internal citations and quotations omitted) (Lamberth, J.).  As this Court held in *National Association of Chain Drug Stores*, the presumption that an agency has properly designated the record can be overcome only with "a 'significant showing' that the agency has acted in bad faith."  *Id.*  Fairholme has made no such showing here.  In arguing in support of its request for a privilege log, Fairholme simply cited to the language of the certification, which attests that the record contains "the non-privileged information considered by Treasury."  *See* Fairholme Mot. at 20.  Agencies are permitted to hold privileged material from the record, however, and alluding to the existence of privileged material is not evidence of bad faith sufficient to overcome "the standard presumption that the agency properly designated the administrative record."  *Amfac Resorts*, 143 F. Supp. 2d at 12.

## IV.     Fairholme Has Not Demonstrated Any Basis for Extra-Record Discovery

Fairholme also asks the Court to authorize "limited discovery into the completeness of the record," Fairholme Mot. at 20, although apart from the use of the adjective "limited," Fairholme does not specify the scope or type of discovery that it wants.  "In this circuit,

discovery is normally unavailable in an APA case, 'except when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review.'" *Friends of the Earth v. Dep't of Interior*, 236 F.R.D. 39, 42 (D.D.C. 2006) (quoting *Commercial Drapery Contractors v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998)) (Lamberth, J.); *see also Air Transp. Ass'n of Am.*, 663 F.3d at 487-88.  Fairholme has not even attempted to make this showing.  Their motion states that "[m]any of the same considerations that support Plaintiffs' request for limited supplementation of the materials produced by the Treasury Defendants and FHFA Defendants" also entitle them to discovery.  Fairholme Mot. at 20.  As discussed in Section III, however, Fairholme has not demonstrated that supplementation of the record is appropriate in any form, let alone that such supplementation provides grounds for discovery.  *See Amfac Resorts*, 143 F. Supp. 2d at 13 ("The declaration seems to suggest that, just because several non-record documents 'support [their] position,' discovery is therefore merited.  But this is not the showing necessary to gain discovery; the mere fact that certain information is not in the record does not alone suggest that the record is incomplete.  As explained above, large categories of information are routinely excluded from the record.").

Fairholme's motion then goes on to cite several reasons why extra-record discovery is supposedly appropriate, none of which makes the substantial showing required.  With respect to Treasury, Fairholme argues first that Treasury has not provided "details regarding the procedures they used to compile the materials they have submitted to the Court."  Fairholme Mot. at 22. Fairholme cites no case law setting forth such a requirement, and it is flatly contrary to the APA requirements in this Court.  *See, e.g.*, *Nat'l Ass'n of Chain Drug Stores*, 631 F. Supp. 2d at 28 ("[T]he argument that a plaintiff and the Court should be permitted to participate in an agency's record compilation as a matter of course contravenes 'the standard presumption that the agency

properly designated the Administrative Record.'") (quoting *Amfac Resorts*, 143 F. Supp. 2d at

12).  This is not a case, such as *Natural Resources Defense Council, Inc. v. Train*, 519 F.2d 287,

291 (D.C. Cir. 1975), in which the plaintiff has made a "substantial showing" that documents

directly considered by the agency decision maker were omitted from the record.  *See id.*  In

*Train*, the dispute concerned an 80-page "briefing book" reviewed by the administrator of the

EPA prior to publishing a list of toxic pollutants.  The agency conceded on appeal that the

material was properly part of the record.  *Id.* at 291-92.  While in *Train* the Court of Appeals

allowed limited discovery under those circumstances, here Fairholme has not demonstrated that

any material was improperly omitted from the record, nor made the showing of bad faith or

improper behavior, nor demonstrated that the "record is so bare that it prevents effective judicial

review."  *Friends of the Earth*, 236 F.R.D. at 42.

Next, Fairholme claims that Treasury used "*ad hoc* standards for deciding what to

include" in the administrative record, Fairholme Mot. at 22, although by way of example they

offer only the supposed exclusion of the Grant Thornton material and financial analysis data

(which are discussed above), despite the inclusion of a financial projection prepared by Moody's.

*Id.*  The difference between those documents is obvious: The Moody's report was a document

considered by Treasury officials during the decision-making process, and thus is itself a part of

the administrative record; the Grant Thornton material and the financial analysis data were

internal proprietary Treasury material, and their results were reflected in the administrative

record in Treasury's financial presentations.

This is very closely related to an ostensibly separate reason offered later in the brief, that

"there are specific documents that Defendants appear to have considered but that were not

included in Defendants' productions."  Fairholme Mot. at 25.  Those documents were addressed

above, and insofar as Fairholme predicates their argument for discovery on their argument for

supplementation, it fails for the same reasons.. Merely alleging that certain additional documents

should be in the record is not evidence of bad faith entitling a plaintiff to discovery.

A similar error plagues their claim that "something is almost certainly amiss" because

Treasury's record does not discuss the treatment of the GSEs' deferred tax assets. Fairholme

Mot. at 25. As of August 2012, when Treasury, FHFA, and the GSEs entered into the Third

Amendment, the companies had not proposed changing their accounting treatment of deferred

tax assets. *See* Compl., ¶ 73 (referring to *March 2013* document discussing issue of recognition

of deferred tax assets). The absence of documents relating to one of Fairholme's merits

arguments is not evidence of an incomplete record, particularly where the plaintiffs' arguments

concern an issue that arose only after the agency completed its decision-making process. *See*

*Sara Lee Corp. v. Am. Bakers Ass'n*, 252 F.R.D. 31, 35-36 (D.D.C. 2008) ("In fact, plaintiff's

approach to 'discovery' in this APA case is fundamentally flawed. As plaintiff would have it,

deficiencies in the PBGC's reasoning . . . justify discovery. While if true they may justify

remand to the agency for reconsideration, they not do have anything to do with the fundamental

question of whether record is to be limited to the administrative record that has been filed and on

which the PBGC's determination will rise or fall."). The same is true of documents concerning

"Defendants' consideration of alternatives to the net worth sweep." Fairholme Mot. at 25.

Treasury has already explained that the alternatives proposed by the plaintiffs failed to address

the threat to the GSEs' solvency that Treasury and FHFA sought to resolve by entering into the

Third Amendment, and that, in any event, the APA imposes no requirement that an agency

consider every conceivable alternative. *See* Treasury Mot. to Dismiss at 54-55. The absence of

documents on that issue does not indicate an incomplete record.

**V.     The Agreed Briefing Schedule in These Coordinated Actions Should Not Be Stayed**

For the reasons stated above, Fairholme's motion for discovery and for supplementation of the record should be denied.  There is, accordingly, no reason to delay the briefing and disposition of the defendants' dispositive motions, pursuant to the agreed scheduling order entered by Judge Wilkins.

Fairholme filed its discovery motion on February 12, 2014 – more than eight weeks after the defendants filed their administrative records in these actions, almost four weeks after the defendants filed their dispositive motions, and merely one week before its opposition to those dispositive motions would be due.  Treasury recognized that Fairholme's late filing, which did not have the concurrence of all of the plaintiffs, had created considerable uncertainty for the agreed briefing schedule.  Accordingly, to promote an orderly resolution of the complications created by Fairholme's late filing, Treasury agreed to a stipulation extending the plaintiffs' deadline for their opposition briefs by 30 days, to March 21, 2014.  Joint Stipulation Regarding Briefing Schedule in All Cases, ECF 35, *Perry Capital LLC v. Lew*, No. 1:13-cv-1025 (D.D.C. filed Feb. 14, 2014).  There is no justification for further extensions of the briefing schedule, however (and Treasury would oppose any motions for further extensions).  These cases should proceed on the agreed briefing schedule, which already provided ample time to the plaintiffs to file their substantive briefs, and the Court, upon review of a completed set of briefing with respect to the defendants' dispositive motions, should dismiss these cases.

<u>Conclusion</u>

For the foregoing reasons, the Department of the Treasury respectfully requests that the Court deny Fairholme's motion to supplement the administrative record, to take discovery, to suspend the agreed briefing schedule, and for a status conference.

Dated: March 4, 2014                    Respectfully submitted,

                                        STUART F. DELERY
                                        Assistant Attorney General

                                        RONALD C. MACHEN, JR.
                                        United States Attorney

                                        DIANE KELLEHER
                                        Assistant Branch Director

                                          /s/ Joel McElvain
                                        JOEL McELVAIN
                                        THOMAS D. ZIMPLEMAN
                                        U.S. Department of Justice
                                        Civil Division, Federal Programs Branch
                                        20 Massachusetts Avenue, NW
                                        Washington, D.C. 20530
                                        (202) 514-2988
                                        Joel.McElvain@usdoj.gov

                                        *Counsel for the Treasury Defendants*