# EXHIBIT A

1:13-cv-01053-RCL

1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION


- - - - - - - - - - - - - - - -X
CONTINENTAL WESTERN                :
INSURANCE COMPANY,                 :
                                   :
     Plaintiff,                    :
                                   :
vs.                                :        Case No. 4:14-cv-00042
                                   :
THE FEDERAL HOUSING FINANCE        :
AGENCY, in its capacity as         :
Conservator of the Federal         :
National Mortgage Association      :
and the Federal Home Loan          :
Mortgage Corporation;              :
MELVIN L. WATT, in his             :
official capacity as Director      :
of the Federal Housing Finance     :
Agency, and THE DEPARTMENT OF      :
THE TREASURY,                      :        HEARING TRANSCRIPT
                                   :
     Defendants.                   :
- - - - - - - - - - - - - - - -X


                        Courtroom, Fourth Floor
                        U.S. Courthouse
                        123 East Walnut Street
                        Des Moines, Iowa
                        Thursday, July 10, 2014
                        10:10 a.m.


BEFORE:  THE HONORABLE ROSS A. WALTERS, Magistrate Judge.


                KELLI M. MULCAHY, CSR, RMR, CRR
                    United States Courthouse
                123 East Walnut Street, Room 115
                    Des Moines, Iowa 50309

```
APPEARANCES:

For the Plaintiff:        DAVID H. THOMPSON, ESQ.
                          Cooper & Kirk, PLLC
                          1523 New Hampshire Avenue NW
                          Washington, D.C.  20036

                          MATT M. DUMMERMUTH, ESQ.
                          Whitaker, Hagenow & Gustoff, LLP
                          305 Second Avenue SE, Suite 202
                          Cedar Rapids, Iowa  52401

 (Via Telephone)          VINCENT J. COLATRIANO, ESQ.
                          CHARLES J. COOPER, ESQ.
                          Cooper & Kirk, PLLC
                          1523 New Hampshire Avenue NW
                          Washington, D.C.  20036

For Defendant FHFA:       HOWARD N. CAYNE, ESQ.
                          IAN S. HOFFMAN, ESQ.
                          Arnold & Porter, LLP
                          555 12th Street NW
                          Washington, D.C.  20004-1202

                          STEPHEN H. LOCHER, ESQ.
                          Belin McCormick, P.C.
                          666 Walnut Street, Suite 2000
                          Des Moines, Iowa  50309-3989

 (Via Telephone)          ASIM VARMA, ESQ.
                          Arnold & Porter, LLP
                          555 12th Street NW
                          Washington, D.C.  20004-1202

For the Treasury:         JOEL L. McELVAIN, ESQ.
                          THOMAS DAVID ZIMPLEMAN, ESQ.
                          U.S. Department of Justice
                          Civil Division
                          Federal Programs Branch
                          20 Massachusetts Avenue NW
                          Washington, D.C.  20001

Also Present Via          BRIAN BARNES
Telephone:                MICHAEL JOHNSON
                          MICHAEL SITCO
                          KATIE BRANDES
                          PETER CHAPMAN
```

3

1                    P R O C E E D I N G S

2              (In open court.)

3         THE COURT:  Have a seat, everybody, and good morning

4    to you all.

5              This is Continental Western Insurance Company vs. The

6    Federal Housing Finance Agency; Melvin Watt, its director; and

7    the Department of the Treasury.

8              I have before me the plaintiff's motion to compel

9    production of an administrative record and for a suspension of

10   the briefing schedule, which has been resisted.  Continental

11   Western requested a hearing here today, and I granted that

12   request, which is what we're here to do.

13             There are a number of people with me, both at counsel

14   table and on the phone.  I hope people can hear me on the phone,

15   but I'm not going to go through all those appearances.

16             But it's my understanding that the main speaking parts

17   today will be Mr. Thompson on behalf of Continental Western.  Is

18   that true?

19             MR. THOMPSON:  Yes, Your Honor.  Good morning.

20             THE COURT:  Good morning.

21             And Mr. Cayne for the FHFA, correct?

22             MR. CAYNE:  Yes, Your Honor.  Good morning.

23             THE COURT:  Thank you.  Good morning to you as well.

24             And Mr. McElvain--

25             MR. McELVAIN:  Yes, Your Honor, for the Department of

4

1   Treasury.

2            THE COURT:  --for Treasury.  Thank you very much.

3            I should point out, just so that people know, we took

4   a roll call of people who signed in both on the phone and here,

5   and since that occurred an additional person, a journalist by

6   the name of Peter Chapman from the Beard Group, is listening in

7   as we speak.

8            And, of course, I have a court reporter present with

9   me.  That's for the benefit of those who are not here

10  personally.

11           I have reviewed the motion papers a couple times,

12  actually, so I have that much of a head start, but we are here

13  today, Mr. Thompson, at your invitation, so you can start, and I

14  may have a question or two as we go through.

15           MR. THOMPSON:  Very well.  Thank you, Your Honor.

16           THE COURT:  By the way, all of you, if you are more

17  comfortable, you may remain seated.

18           MR. THOMPSON:  Thank you.  Thank you, Your Honor.

19           May it please the Court.  David Thompson for the

20  plaintiff.

21           Your Honor, as the Court is aware, this is a case

22  about the effective nationalization of Fannie Mae and Freddie

23  Mac.  In August of 2012, the Treasury Department and the FHFA

24  entered into an agreement pursuant to which every penny of

25  profit and eventually net worth of Fannie Mae and Freddie Mac

1   would be transferred into the United States Treasury.  And this

2   replaced a preexisting regime pursuant to which the Treasury was

3   entitled to receive a dividend either in cash at the rate of 10

4   percent or a payment in kind at 12 percent.

5          And there's no dispute among the parties that in the

6   aftermath of this change, in the aftermath of this net worth

7   sweep, the Government has reaped tens of billions of dollars in

8   profits more than it would have received if it had not entered

9   into the net worth sweep.

10          The plaintiff maintains that this is illegal, that it

11   represented a violation of HERA because it was a failure to

12   preserve and conserve assets, because it did not operate the

13   institutions in a safe and solvent manner, because it was done

14   at the direction of Treasury, and it violated a variety of

15   common law rights as well.

16          The defendants, in their motions to dismiss, tell a

17   different factual story.  They claim that Fannie and Freddie

18   owed a close to $19 billion a year cash dividend and they

19   claimed that if it wasn't paid then Fannie and Freddie would

20   have to draw down on their available line of credit.  And FHFA

21   called this on page 17 of their motion, quote, a very real

22   problem, closed quote.  And the Department of Treasury has

23   called this--has used similar language on page 3 of its brief.

24          This is a factual assertion.  When they say this was a

25   very real problem, that is a statement of fact, and it is

1    contradicted by the complaint in at least two respects.

2           First of all, there was no requirement to pay a penny

3    of cash at any time to the Department of Treasury; therefore,

4    there was no requirement to ever draw down on the line of credit

5    that was available to Fannie and Freddie because the

6    institutions had the ability to do a payment in kind, to simply

7    increase the liquidation preference, the amount of preferred

8    stock, if you will, and pay a 12 percent rate of return.

9           And second of all, the complaint alleges that Fannie

10   and Freddie had turned the corner and were set to generate

11   enormous profits and that this was apparent to everybody.

12          And these allegations, these factual allegations that

13   this was a very real problem that was averted by the net worth

14   sweep, go to the heart of Defendants' jurisdictional statement,

15   but they cite to no case where a defendant comes in, tells a

16   counter-narrative, makes factual statements that are

17   contradicted by the complaint, and then is allowed to have its

18   motion to dismiss granted.

19          And there are two consequences to the defendants'

20   decision to make this factual counter-narrative.  First of all,

21   we're entitled to an administrative record, and, second of all,

22   we're entitled to discovery, although we're not here today to

23   ask for discovery for reasons I'll explain in a moment.  Not

24   yet, anyway.

25          THE COURT:  Don't they say that even if you take your

1   narrative as true there is no jurisdiction under 4617(f)?

2                MR. THOMPSON:  Well--

3                THE COURT:  That's what they say.

4                MR. THOMPSON:  That's what they say.  But that's after

5   they've told a very different story.  But we certainly dispute

6   that.  We say if you take our complaint as true and if you look

7   and you see did taking--entering into the net worth sweep and

8   taking every penny of profit and shipping it to the Government

9   preserve and conserve the assets--this has been over $100

10  billion that has been taken out of these entities that are in

11  conservatorship and sent to the U.S. Treasury--and if we look

12  and we see at the other HERA command that these institutions be

13  operated by the conservator in a safe and solvent manner, this

14  is the opposite of that.

15               When you have institutions, financial institutions in

16  this country, capital is the bedrock way we keep these

17  institutions safe, and they have stripped these entities of

18  every dollar of capital.  They have no capital under the net

19  worth sweep and they will never be able to have capital.

20               So we, under our narrative, Your Honor, we think it's

21  very clear that the jurisdictional bar isn't a problem, that

22  they have exceeded the scope of their authority.

23               We also allege that this was done--

24               THE COURT:  Well, why can't that be determined on the

25  face of your complaint?  Your basic allegation is that, as I

1  understand it, the FHFA acted ultra vires of its authority as a

2  conservator in entering into this deal with the Treasury, which

3  you contend Treasury sort of put in place, but aren't the facts

4  about what happened known and set out in your complaint and

5  don't we have to take those as true?

6          MR. THOMPSON:  Well, that last point, Your Honor, is

7  the key one.  Yes, they're supposed to be taken as true, but

8  they have not done that.  When they say in their papers that

9  there was a very real problem that the net worth sweep was,

10  quote, designed to or sought to deal with, they're making a

11  factual statement that goes to the heart of what this case is

12  about of, you know, what was the effect, what was the intent

13  behind this net worth sweep.

14          And they are telling--  We're saying it was a naked

15  expropriation and that it was unsafe and didn't conserve assets,

16  and they tell a very different factual story.  They made that

17  choice.

18          And this has come up, Your Honor, just so the Court is

19  aware, this came up in the Court of Federal Claims.  The

20  plaintiff in this case has also sued for a taking in the Court

21  of Federal Claims, which is the only court where a taking claim

22  can be brought if it's more than $10,000, and in that court the

23  Department of Justice made the exact same move in its motion to

24  dismiss.

25          It told this different story, they called it a death

1   spiral, that they wouldn't be able to pay the cash dividend, and

2   we went in and we went to the court, just as we did here, and we

3   said we're entitled, not there to an administrative record

4   because it's a takings claim, but to discovery.

5           And the Department of Justice made all the same

6   arguments they're making here; "Well, just ignore our

7   statements," or, "We have purely legal grounds in the

8   alternative."  And the Court of Federal Claims has said, no, the

9   plaintiff is entitled to discovery on jurisdiction, and that

10  discovery is ongoing now.

11          And that's the reason, one of the reasons, we haven't

12  asked for discovery in this case is because that discovery is

13  going on.  And one of the questions that the Court of Federal

14  Claims has identified is whether FHFA was acting at, quote, the

15  direct behest of Treasury; in other words, was Treasury

16  masterminding that whole thing.  And we're in the midst of

17  discovery on that very question and we're hoping not to have to

18  replicate those efforts here, and that's one of the reasons we

19  haven't asked for discovery yet.

20          THE COURT:  Well, let me ask you a question about

21  what's happening now.  I saw references in the motion papers to

22  the multiple actions in the District of Columbia.  I think

23  that's what people have told me.  Now, you've got a claim in the

24  Court of Claims--

25          MR. THOMPSON:  Yes, Your Honor.

1    THE COURT:  --as you just told me.  Are there other

2   lawsuits pending in the district court in the District of

3   Columbia?

4    MR. THOMPSON:  Yes, Your Honor.  So there, just to

5   give you, if I may, a sense of the legal terrain, there are

6   basically three areas or forums in which this fight is being

7   fought.  This court, number one.  Number two, in the District of

8   Columbia, there are approximately ten different lawsuits that

9   have been filed.  They are not identical.  At one point one of

10   the defendants calls them, I think the Department of Treasury

11   calls it, identical.  They're not.  This case is not identical

12   for reasons I'll come back to in a moment.

13    And then there's the Court of Federal Claims, which is

14   the takings, and there are, I believe, seven takings suits, six

15   of which focus on the net worth sweep in 2012 and one of which

16   says the imposition of the conservatorship in 2008 was a taking.

17    So that's the basic legal terrain.  In the Court of

18   Federal Claims where we are is the other six cases have been

19   stayed pending the discovery that the plaintiff here and the

20   other plaintiffs in that case are engaged in.

21    THE COURT:  Which court ordered the production of the

22   administrative record?

23    MR. THOMPSON:  So in the District of Columbia, D.D.C.,

24   the U.S. District Court for the District of Columbia, an

25   administrative record was produced.  They didn't fight producing

1  it.  I don't believe there was a court order, Your Honor.  They

2  gave us an administrative record.

3       We filed a motion saying it was inadequate because the

4  FHFA provided 43 pages of internal documents, that was it, on a

5  decision worth tens of billions of dollars, and we said that's

6  inadequate on its face.  There were a number of indicia that it

7  wasn't complete.  They say it was complete.  And we fully

8  briefed that in front of Judge Lamberth and we're awaiting his

9  opinion on that question.

10       THE COURT:  So he's not ruled yet on that?

11       MR. THOMPSON:  That's correct, Your Honor, he's not

12  ruled.  So that's in the D.D.C.  We got an administrative

13  record.  We didn't think it was complete.

14       I would add, because this case is different than the

15  actions in the D.D.C., that even if that record were adequate,

16  it wouldn't address here.  Here, in this case, the plaintiff is

17  complaining about conduct by Treasury in 2009, '10--excuse

18  me--2010, '11 and '12, where it continued to buy additional

19  preferred stock after the time of the expiration of its

20  authority to do so.  That's not a claim that any party in any

21  other case has made.

22       So we're entitled to an administrative record on that

23  issue and we're also, in this case and this case alone, it's the

24  only one where there's been a challenge to the failure to

25  utilize the payment-in-kind provision, we're challenging FHFA's

12

1   failure to use that payment-in-kind provision.  We don't have

2   any administrative record from any court on that question.

3          So those are two issues where, at the very least, we'd

4   be entitled to administrative record on that, and, as I said,

5   we're hoping that in this court they'll produce a genuine and

6   complete administrative record.

7          THE COURT:  If you are required to respond to the

8   pending motions to dismiss without the administrative record, or

9   I guess you could use the part that you do have from D.C., how

10  does that hobble you in responding to the motion?

11         MR. THOMPSON:  Well, it hobbles us in the sense of,

12  first of all, if we had to respond to that motion that contains

13  all these extraneous factual statements that are not in the

14  complaint and are contradicted by the complaint, we're in a--

15         THE COURT:  Well, under the usual standard can the

16  Court--  Well, if your complaint has well-pleaded facts and they

17  simply contradict it, I mean, can the Court consider--doesn't

18  the Court have to take your facts?  And I think they argued that

19  your facts don't make a difference.

20         MR. THOMPSON:  Well, the Court could--

21         THE COURT:  I mean, the Court either will agree with

22  that or not, but if the Court thinks your facts make a

23  difference, your motion's probably going to be--or the motion to

24  dismiss will probably be overruled, wouldn't it?

25         MR. THOMPSON:  Well, Your Honor, certainly that will

1  be one path that could be taken.  The Court of Federal Claims

2  looked at this exact same issue and decided, well, no, it makes

3  more sense to let them, on these jurisdictional issues, take the

4  discovery and really have a complete understanding that, given

5  that they made this decision, this choice to make factual

6  statements like, "This is a very real problem that we sought to

7  address," that we were entitled to probe that and that they had

8  to live with the consequences of their decision to go beyond the

9  complaint.

10            THE COURT:  Thank you.

11            MR. THOMPSON:  May I just make a couple of other

12  points?

13            THE COURT:  Sure.

14            MR. THOMPSON:  Okay.  Yes.

15            THE COURT:  My interruption does not mean you're done.

16  Go ahead.

17            MR. THOMPSON:  Okay.  Thank you, Your Honor.

18            So just quickly, on the discovery, I have averred to

19  the fact that we haven't asked for it yet here for two reasons.

20  One, we've got the ongoing discovery in the Court of Federal

21  Claims, and we'd hoped not to have to reinvent the wheel here

22  and the contours of discovery could be affected by what comes

23  out of that process; and, second of all, we don't have the

24  administrative record, and we thought it was premature to start

25  complaining about it before we actually had it.  And so we

14

1  thought it was logical to first receive the administrative

2  record, as we did in the D.D.C., and then analyze its

3  sufficiency.

4          Finally, Your Honor, there's been a suggestion that

5  this case should be transferred back to the District of

6  Columbia.  We don't think that makes sense for a variety of

7  reasons.  Number one, the cases aren't the same, but, number

8  two, for this Court to make the determination that it was going

9  to transfer, it would have to first conclude that it had subject

10 matter jurisdiction, i.e., that the jurisdictional bar does not

11 apply.

12         And once the Court has figured that question out,

13 really, all the intellectual heavy lifting has been done, at

14 least on the APA claims, because the question under subject

15 matter jurisdiction is did the defendant exceed its authority.

16 If the answer is yes, then we're entitled to an injunction under

17 the APA, so there would not be any efficiency to transferring

18 this case.

19         They also have sort of a host of other types of legal

20 objections.  They say, well, even if we did go beyond the

21 complaint, this case isn't ripe, but all of our rights have been

22 stripped from us.  Every penny is going to go to the Treasury.

23 That's clear here and now.

24         They say we don't have prudential standing, but that

25 only applies to derivative claims, and this is direct because

1   the plaintiff has been directly injured and will stand to

2   benefit from any ruling.

3           And they say there's no standing because the plaintiff

4   didn't own the securities at the time of the net worth sweep,

5   but that's irrelevant for purposes of the APA, and under

6   Delaware law the claims, the common law claims, inhere in the

7   security and would follow the security.

8           So that's just to say that we don't--we think this

9   Court should follow what the Court of Federal Claims did and,

10  rather than accepting their invitation to decide this on a

11  piecemeal basis, should allow us to get an administrative record

12  as a first step, Your Honor.

13          THE COURT:  You know, if the Court were to agree with

14  you, it's not too wildly unpredictable to think that, first of

15  all, we'll be back and forth on what the administrative record

16  is.  You might well not be satisfied again with what they

17  produce.  And then you go through all that and then you get to

18  the briefing, you're going to be around here for a long time, it

19  seems to me, before this motion ever comes to issue, won't you?

20          MR. THOMPSON:  Well, and certainly, Your Honor, we

21  don't welcome that possibility of being around for a long time,

22  but we think it's important that we get the materials to which

23  we're entitled, and we're willing, if that means there's some

24  delay, we think that's more important than rushing through the

25  process.

16

1          THE COURT:  Let me just ask this question:  In the

2     Court of Claims, was the same jurisdictional issue presented as

3     it relates to the anti-injunction statute?

4          MR. THOMPSON:  No, Your Honor, it was not.  It was the

5     same factual--  The trigger to get the discovery was the same

6     factual counter-narrative that has been told here where they

7     said you're going into a death spiral, and we said that's not in

8     the complaint, in fact, the complaint contradicts that, and the

9     court agreed.

10          And with the Court's permission, we would be happy to

11     lodge the Court of Federal Claims decision, and I apologize for

12     not doing this sooner, if it would be helpful.  It's only four

13     pages.  But we'd be happy to lodge that by the end of the day

14     with the Court.

15          THE COURT:  Well, I don't think I need to see it, but

16     just answer this question for me:  I take it, then, there wasn't

17     a jurisdictional hurdle there.  You do have the merits or you're

18     going to get to the merits in the Court of Claims?

19          MR. THOMPSON:  Yes.  Well, there are many

20     jurisdictional defenses that they have raised in the Court of

21     Federal Claims, but they did not raise this one.  They--

22          THE COURT:  All right.

23          MR. THOMPSON:  --raised the 4617(f) in the D.D.C. but

24     not in the Court of Federal Claims.

25          THE COURT:  All right.

1          MR. THOMPSON:  Primarily because we're seeking money

2     damages in the Court of Federal Claims.

3          THE COURT:  Okay.  Thank you.

4          MR. THOMPSON:  Thank you.

5          THE COURT:  Well, should we go in order of the

6     pleadings?  Unless you two have decided between you who wants to

7     go first.

8          MR. CAYNE:  May it please the Court.

9          THE COURT:  Mr. Cayne.

10         MR. CAYNE:  Howard Cayne for Defendant Federal Housing

11    Finance Agency.

12         THE COURT:  And you can stand or sit, as you're most

13    comfortable.

14         MR. CAYNE:  Thank you, Your Honor.

15         I listened aptly to my good friend, Mr. Thompson's,

16    passionate statement, most of which went to merits of this case,

17    and to the extent I can, Your Honor, I will attempt to avoid

18    delving into the merits because the issue before this honorable

19    court today is very simple.

20         And let me state it clearly now if there is any doubt,

21    because Mr. Thompson indicates a lot of doubt, but I don't think

22    there is fair doubt.  For purposes of both defendants, and my

23    colleague will speak for the Department of Treasury, but for

24    purposes of Defendants' motions to dismiss, we accept, for that

25    purpose only, the truthful--the correctness of every factual

1   allegation.

2          This is, from this perspective, Your Honor, a plain

3   vanilla motion to dismiss based on every--taking as true for

4   purposes of our motion every single fact alleged.  Our position

5   is on our papers, and I will restate it today for the benefit of

6   opposing counsel and the Court.  We take those allegations as

7   true for purposes of our motion, and based on those allegations,

8   looking through the prism of the jurisdictional withdrawal

9   statute and the other defenses we raise, this complaint cannot

10  survive, Your Honor.  This case is ready to be resolved.

11          The Court asks some questions about what is going on

12  in the D.D.C.  Well, interestingly, Your Honor, prior to even

13  filing their complaint in this case Plaintiff filed a motion to

14  supplement the administrative record filed by the defendants.

15  That paper, if I'm remembering correctly, and I'm sure my

16  colleague will correct me if I'm not, was filed prior to the

17  filing of the complaint in this case.  To this date, Your Honor,

18  that remains unresolved.

19          But also counsel did not advise the Court there is a

20  significant difference between the status of this case, Your

21  Honor, and the D.D.C.  In D.D.C., the FHFA filed a motion to

22  dismiss and in the alternative a motion for summary judgment.

23  My colleague from Justice will address what they filed, but they

24  also filed a motion for summary judgment.

25          It was in that context, Your Honor, that my client

1  agreed to provide a compilation of documents.  They did not

2  provide administrative record, Your Honor, because the decisions

3  made by the FHFA were not and are not subject to the APA.  They

4  were made in a conservatorship setting, a setting in which no

5  court has jurisdiction to interfere.

6           So Plaintiff, as the Court indicated, can refer to

7  whatever they'd like to refer with respect to what has been

8  produced in D.D.C., but it is, with all respect, Your Honor, to

9  my colleague, it is utterly irrelevant today.

10           We have not filed a motion for summary judgment.  As I

11 said once, this is a plain vanilla motion to dismiss.  Their

12 remedy, if the judge determines that the facts are--something's

13 not accepted or something's relevant, it will get denied, and

14 then the case will proceed.  That is the remedy.  But the remedy

15 is not stopping the progress of this case.

16           Your Honor, Plaintiff, again, in the D.D.C., tried the

17 same approach.  When Plaintiff asked for supplementation of the

18 administrative record in that case, they attempted to shut down

19 briefing.  I don't know that--I don't recall, Your Honor, that

20 an order was ever issued, but the motion wasn't granted and

21 briefing was completed.

22           The motions to dismiss and in the alternative for

23 summary judgment in that case have been briefed, and at this

24 point they did not succeed in their effort to stop briefing.

25 They did not succeed, it's still pending, in their effort to

20

1  supplement.

2         I, frankly, and the Court can come to his own

3  conclusions, frankly, have never understood why we are here

4  today in light of the fact that this plaintiff is in the CFC,

5  this plaintiff's parent is in the D.D.C., and we're here arguing

6  the same arguments.

7         The complaint in this case, Your Honor, was filed a

8  mere three weeks after our opposition--after our motion to

9  dismiss was filed in D.D.C., and, again, the Court can draw any

10  conclusions that it would like.

11         But getting back to the underlying point, and if I

12  just may detour for one more second because--

13         THE COURT:  Let me detour before you detour.

14         MR. CAYNE:  Yes.

15         THE COURT:  Am I to understand from what you're

16  telling me that the motion to dismiss, alternatively for summary

17  judgment, that you filed in the D.D.C. has been fully briefed?

18  It's in the can, so to speak?

19         MR. CAYNE:  That's correct, Your Honor.

20         THE COURT:  Has there been an argument on it yet?

21         MR. CAYNE:  There has not been an argument, Your

22  Honor.

23         THE COURT:  I don't know how the D.D.C. operates.  Do

24  they usually set arguments on motions for summary judgment or is

25  it like here, all over the lot?

21

1            MR. CAYNE:  I would submit, Your Honor, it's all over

2    the lot, even with respect to specific judges.  Perhaps my

3    colleagues have other insight.  My insight is I don't know

4    whether or not there will be an argument.

5            There had been an earlier judge in the case.  That

6    judge was elevated to the D.C. Circuit, Your Honor.  That judge

7    had set an argument for June 23rd.  The new judge, Judge

8    Lamberth, several weeks ago canceled that argument without

9    stating what comes next.

10           So but it is fully briefed, Your Honor.  And, again,

11   just to circle to the end before I go through a few points, if I

12   might, that's what needs to happen here.

13           There is no reason Plaintiff cannot today respond to

14   our motion, to brief the motion to dismiss.  We can quickly

15   reply, and then it will be all set for Judge Pratt to decide

16   whether or not we are correct that the motion to dismiss should

17   be granted.

18           And delay won't help.  Discovery here would be hugely

19   inefficient on many grounds, including that we are more than

20   hopeful that Judge Pratt will agree with the merits of our

21   motion, and particularly whereas, in this case, you have an

22   underlying statute where Congress has expressed very clearly its

23   concern that conservators of institutions in statutory default

24   not waste their time on pointless litigation, particularly when

25   Congress has said a court cannot affect the decisions made.

1          And what Plaintiff has done is Plaintiff has conflated

2   the arguments on the merits arguments on the motion to dismiss,

3   Your Honor, with what's going on in discovery.  There is a

4   statement in their brief that says in those words almost, Your

5   Honor, that--I forget if it was "ironically" or there was some

6   predicate--the issues presented on this discovery dispute are

7   virtually the same as the issues, the merit issues, before Judge

8   Pratt.

9          Well, Your Honor, the only issue, with all respect,

10  before this Court today is whether Defendants are challenging,

11  for purpose of their motion to dismiss, facts.  We are not.  The

12  other issues are properly decided by Judge Pratt when he has the

13  fully briefed motions to dismiss.

14         But on the discovery, Your Honor, Plaintiff cannot do

15  any better by delaying this a month, a year, four years, who

16  knows.  We all have been through discovery battles, particularly

17  Your Honor.  They can go on forever and it would be totally

18  needless and it would be an enormous burden and expense for the

19  conservator, a burden and expense Congress intended that be

20  avoided here.

21         But, again, there is no--  The Court asked what's the

22  harm to Plaintiff, Your Honor, if discovery is not granted.

23  There is no harm because even if there are a thousand documents

24  out there supporting their factual allegations, it changes

25  nothing.  Our position remains we're entitled to dismissal

23

1   because, for again, we've accepted the allegations.

2          At bottom, the plaintiff's allegations boil down to

3   assertions that either the conservator had a bad motive, a bad

4   intent, is doing a bad job, somehow improperly conspired with

5   another federal agency to amend the agreement.  Again, for

6   purposes of the motion, those, again, on the merits we think are

7   all absurd, but we don't think we need to get to the merits

8   because they don't affect the bottom-line conclusion that the

9   conservator was exercising powers granted it by Congress when it

10  entered into the original agreement, when it entered into the

11  amendment.

12          We cite in our papers at least two or three, Your

13  Honor, Eighth Circuit cases analyzing the precise identical

14  language in the FDIC analog, and they are fully supportive with

15  and, frankly, compel the position we advance that discovery here

16  is pointless because as long as the Court determines--and here

17  now I'm referring to Judge Pratt on the motion to dismiss--as

18  long as it is determined that in exercising, in agreeing to the

19  agreement and later amending the agreement with Treasury, that

20  the conservator was exercising a power delegated by Congress,

21  even if it didn't negotiate a good deal, even if it was a

22  foolish agreement--  Put any label on or qualification on

23  whether Plaintiff or the Court thought it was a good agreement

24  or a bad agreement.  None of that's relevant.  All the Courts of

25  Appeals, including this circuit, say if it was a power granted,

1   that is the end of the inquiry.

2          So at the end of the day, there are really two simple

3   inquiries before this Court; on discovery, are we really

4   disputing facts for purposes of our motion to dismiss, and, on

5   our motion to dismiss, with respect to jurisdiction, was there

6   power to enter into an agreement to provide for capitalization

7   of these enterprises.

8          Plaintiff makes all these claims that Treasury is

9   essentially stealing money, swiping money away.  If we were

10  forced to get to the merits, Your Honor, and just a very quick

11  detour, if we were forced to get to the merits, we would explain

12  that in 2008 when Treasury started infusing what ended up to be

13  just under $200 billion, both of these--neither of these

14  institutions had any net worth.  Both of these institutions

15  would have been subject to mandatory receivership.  No plaintiff

16  would have received anything.  The only reason these entities

17  are in business is because of the massive, massive infusions by

18  the Department of Treasury pursuant to the agreement.

19         Plaintiff also made--  And it's not relevant to the

20  argument, Your Honor, but I have to respond to it because he

21  said we agree.  Plaintiff said all the parties agree that as a

22  result of the third amendment to the agreement executed in

23  September 2008 tens, if not hundreds, of billions of dollars

24  have been swept to Treasury more than would have otherwise been

25  swept.

1          Your Honor, there is no agreement on that.  Your

2     Honor, Plaintiff, in their papers, indicates that there was no

3     consideration, for example, given on the third amendment.

4     Again, it goes to the merits, but they made the point, and if I

5     might just have ten seconds to respond to it.

6          They ignore the fact that under the original agreement

7     there is something called a periodic commitment fee, which in

8     other litigation has been quantified as incalculable that it was

9     so large.  For the duration of the sweep, the Treasury has given

10     up its right to receive that fee, so the notion in these papers

11     there's no consideration, this is some kind of land grab, asset

12     grab, it is absurd, Your Honor.

13          But back to the point that there are no facts

14     disputed.  And, if I might, totally apart from even if Plaintiff

15     was right, Your Honor, which they're not, that we are disputing

16     facts on the jurisdictional issue, we have a wealth of other

17     defenses, and the lead one is there is no standing here.

18          There is a statute--  And Plaintiff says in their

19     reply, I think it's, Your Honor, page 8, 9 and 10, the Court

20     should ignore this other issue because it's merely secondary, we

21     don't really mean it, maybe we only gave a footnote to it.  Your

22     Honor, again, that is just absurd.  We fully briefed this issue.

23          The plaintiff's position seems to be because

24     jurisdiction went first in our papers that's the only argument

25     we really mean.  No, Your Honor.  Jurisdiction went first

26

1   because, at least in my law school in the Midwest, I learned

2   that that's the first thing that you typically challenge is

3   jurisdiction.

4           But right after jurisdiction we point out that another

5   provision of the very same statute says on the instant

6   conservators were appointed for Fannie and Freddie every right,

7   power, attribute of the shares held by Plaintiffs for the full

8   duration of the conservatorship are vested in the conservator.

9           Plaintiffs don't have any rights to stand on today.

10  Plaintiffs have no rights to enforce, Your Honor, and Plaintiffs

11  do not contend that there are some factual issues that the

12  Government disputes that would prevent the Court from

13  adjudicating that defense or that they need discovery on.

14          They simply say, "Oh, that's just a secondary claim,

15  Court.  You don't have to bifurcate it.  Just consolidate it

16  all."  No, Your Honor, it's not secondary.  It's at the

17  forefront.  They have nothing.  We cite a host of cases.

18          All Plaintiff came back with is they cited a couple,

19  one was First Hartford, Your Honor, cases involving

20  receiverships where courts have allowed shareholders to attack

21  an action of a receiver.  But there's a huge difference, Your

22  Honor, which is in receiver, when a receiver is appointed

23  following a conservator, all the rights are then, all the

24  shareholder rights are then, transferred to the receiver with

25  one huge exception; a specific statute gives all claimants,

1   including shareholders, rights to prosecute claims relating to

2   their shares or to their contract, whatever.  In

3   conservatorship, there is nothing given to claimants such as

4   shareholders to prosecute.

5           We today are in conservatorship.  Under the statute

6   the conservatorship is temporary but indefinite.  I could not

7   tell the Court is the conservatorship going to end tomorrow, is

8   it going to end next year.  I don't know when it's going to end.

9           But the statute's clear, Your Honor, the cases are

10  clear for the full duration of the conservatorship every right

11  Plaintiff claims is held by the conservator.  Upon the

12  transformation of a conservatorship into receivership, any due

13  process concerns are addressed because at that point and that

14  point only the statute says all rights of shareholders are

15  extinguished, other than the right to prosecute claims relating

16  to the other shares, first administratively and then through the

17  federal district courts.  We are in conservatorship today, Your

18  Honor.

19          And just one--  May I have just one moment, Your

20  Honor?

21          The last thing I would like to address, Your Honor, is

22  I said that the only issue, because Plaintiff spent a lot of

23  time on the merits, as to whether or not the jurisdictional

24  withdrawal applies is did the conservator exercise a power or

25  function granted by Congress.

1          There are several that were issued, exercised here,

2    Your Honor.  The conservator exercised the power to carry on the

3    business of the enterprises in conservatorship.  The conservator

4    exercised the expressly granted power to transfer any enterprise

5    asset without the consent or authorization of any party or

6    court.  Your Honor, the conservator exercised its power to take

7    actions it deemed in the best interest of both the

8    conservatorship and the agency.  The interest of the agency and

9    the conservator itself are interests referenced in the statute,

10   Your Honor, explicitly.

11         And here what happened, Your Honor, is, as I

12   mentioned, in 2008, and I'm sure this Court remembers, the

13   United States was facing an economic meltdown, and these

14   enterprises were placed in conservatorship, and as conservator

15   it was determined that for these enterprises to continue to

16   operate financing and capital was needed, and an agreement was

17   entered into with Treasury, an agreement that Congress had

18   authorized expressly, and that agreement provided for the $200

19   billion that has kept these enterprises in business since that

20   date.

21         And whether or not Plaintiff thinks the conservator

22   executed a good deal, a bad deal, even a stupid deal, Your

23   Honor, it doesn't matter.  It was a power granted to the

24   conservator by Congress that it should.  And we will submit to

25   Judge Pratt, if Plaintiffs are required to file their opposition

1  and we get to reply, that is the end of the inquiry on

2  jurisdiction, the end of the inquiry of standing as they have no

3  rights to prosecute anyway.

4        And, Your Honor, with that I will respond to any

5  questions or turn the floor over to my colleague.

6        THE COURT:  I have a couple questions for you or at

7  least a statement and ask you to respond to it.  I certainly

8  understand that Continental Western claims that these were bad

9  decisions that were made, but as I understand their argument,

10  the guts of it is that the anti-injunction statute does not

11  apply because the FHFA was acting outside of its proper function

12  as a conservator when it approved the net worth sweep and, as

13  described by the Plaintiff, ended up essentially nationalizing

14  Fannie Mae and Freddie Mac.

15        I think that's the focus of their argument.  Now, if

16  that is their argument, can that still be decided on the face of

17  the pleadings?

18        MR. CAYNE:  Yes, Your Honor.  I also understand that

19  to be their argument, and in accepting, for purposes of our

20  motion, those factual allegations, we believe that those factual

21  allegations do not change the legal conclusions here.

22        Because if they're arguing that the conservator did

23  not have the right or was exercising a power it did not possess

24  in agreeing to amend this four-year-old agreement, that is a

25  classic, Your Honor, question of law, and we, for what it's

30

1  worth, have no doubt that the right answer to that question is

2  the conservator, in agreeing to the agreement that allowed these

3  enterprises to remain in business, the conservator, in agreeing

4  to a third amendment to that agreement, was doing the same

5  thing, and all of those decisions, smart or stupid, were

6  authorized.

7         And Plaintiff's contention, again, accepting that

8  fact, it's a legal question; does that allegation somehow, if

9  accepted, take the conservator out of its statutory authority to

10  operate the conservatorships as it deems best.  And, Your Honor,

11  I respectfully suggest the answer to that is no.

12         And even accepting those allegations, which we do,

13  which we have to do, we understand the rules, it doesn't change

14  the applicability of the withdrawal, Your Honor.

15         THE COURT:  One other thing.  On your alternative

16  transfer motion, which Mr. Thompson argues that the Court must

17  determine the jurisdictional issue before transfer, and, you

18  know, I hadn't thought of that before I saw that in the

19  briefing, and, I honestly don't know, is that accurate?  I mean,

20  does the same--  Let me make sure I understand.

21         It's combined or there's a motion for summary judgment

22  and a motion to dismiss pending, but the motion to dismiss out

23  in the D.D.C. is also based on the anti-injunction statute; is

24  that true?

25         MR. CAYNE:  It includes that, Your Honor.  It also

1   includes the other argument I stated with respect to all the

2   rights being transferred to the conservator.

3           THE COURT:  But can--

4           MR. CAYNE:  Both of those defenses.

5           THE COURT:  --a district court transfer a case in

6   which a motion is pending, a jurisdictional motion is pending,

7   to another court where the same jurisdictional issue is pending

8   without first in the transferor court--without first having the

9   transferor court decide the jurisdictional issue?

10          MR. CAYNE:  Your Honor, that is what they call in law

11  school a nice question.  I'll turn to my colleague from the

12  Department to respond to that.  But I would simply say that,

13  frankly, there is no reason that the Court should not proceed,

14  and now I'm talking about Judge Pratt, that Judge Pratt should

15  not now direct that our motion be responded to and decided

16  because it's all briefed.  It's briefed as well here as it is in

17  the District of Columbia.

18          Plaintiff can decide where they want to bring a suit.

19  They decided to bring a suit here, Your Honor, and we're ready

20  to submit to the jurisdiction of this court and have this case

21  decided.  We have dispositive motions pending.  There is no

22  reason whatsoever either to mandate discovery or to delay the

23  resolution of those motions to dismiss, Your Honor.

24          And--  I'm sorry.

25          THE COURT:  I know that's what you want.  The argument

32

1   triggered my interest, and I am not sure it's critical to the

2   current motion, but that's why I asked it.

3            And you just made a statement, I think, we are happy

4   to submit to the jurisdiction of this court.  I think you mean

5   you're happy to submit to the jurisdiction of this court for the

6   Court to determine the jurisdiction of the court.

7            MR. CAYNE:  Your Honor, my colleague just punched me

8   in the leg for saying that, and I'm glad you picked it up.  That

9   is absolutely right, Your Honor.

10           And the last thing, what's going on in the Court of

11  Federal Claims has no relevance here.  My client, to whom this

12  statute attaches, is not a defendant in that action.  There are

13  many issues going on in that case on which I am not expert, but

14  it's a different case in a different court.

15           If you want to look at similarities, the similarity is

16  to D.D.C., the only real difference being in your court, Your

17  Honor, we have not moved on summary judgment, and that's why,

18  rather than this case presenting a more compelling reason for a

19  record, this case presents zero reason for the production of a

20  record by either defendant, Your Honor.

21           THE COURT:  Thank you.

22           I'll turn things over, then, to Mr. McElvain.

23           MR. CAYNE:  Thank you, Your Honor.

24           MR. McELVAIN:  Thank you, Your Honor, and may it

25  please the Court.

1          I don't have--

2          THE COURT:  McElvain; is that right?

3          MR. McELVAIN:  Mr. McElvain, yes.

4          THE COURT:  I'm sorry.  I--

5          MR. McELVAIN:  That's quite fine.  Everybody gets it

6     wrong.

7          THE COURT:  I can't read my law clerk's writing, but

8     that's no sin because--  Well, she can read mine, but I can't

9     read hers sometimes.  I apologize for mispronouncing your name.

10         MR. McELVAIN:  That's perfectly fine.

11         I don't wish to spend a great deal of time belaboring

12    the points that have already been made, and ably so, by my

13    co-counsel, but I do wish to underscore a few points that I

14    believe are dispositive of the pending motion to compel.

15         In our motions to dismiss, both defendants have raised

16    purely legal arguments on multiple grounds as to why the

17    complaint should be dismissed.  Each of those grounds can be

18    decided purely on the four corners of the complaint and should

19    be decided on the four corners of the complaint.  And, in fact,

20    the plaintiff has only disputed whether legal or factual grounds

21    are presented as to only one of the grounds that have been

22    presented.

23         First, as to Section 4617(f), that is the

24    anti-injunction bar which prohibits the Court from taking any

25    action to restrain or affect the conservator's exercise of its

1   powers.  We have presented a purely legal argument.  You can

2   take the allegations of the complaint as perfectly true, and

3   nonetheless the conclusion is still compelled that what the

4   plaintiff seeks here is an order that would restrain or affect

5   the conservator's exercise of its powers to enter into the third

6   amendment to the PSPAs.

7           There is no factual dispute.  You can take the

8   allegations of the complaint as true, and we still contend we

9   should prevail under 4617(f).  But, again, that's only one of

10  the multiple grounds that the parties have submitted.

11          Under 4617(b), as Mr. Cayne has already recounted,

12  FHFA has succeeded to all rights of any shareholders in the

13  enterprises, including the shareholder plaintiff here today.

14  One of those rights would be the right to bring an action like

15  this one.  That, again, presents a purely legal question that we

16  would like to present to Judge Pratt, and we should prevail once

17  we have briefing completed on that.

18          In addition, there are questions of ripeness, of

19  shareholder standing, of the failure of the plaintiff to allege

20  that it even owned shares at the time of the actions that are

21  challenged here.  Each of those, again, are purely legal

22  questions.  There are no facts that need to be resolved for any

23  of those grounds to be presented to Judge Pratt.

24          Now, the plaintiff, as I understand it, disputes our

25  view of the law in each of those points.  It says that, well, we

1   contend that the 4617(f) bar wouldn't extend to circumstances

2   where FHFA acted improperly or failed to keep the GSEs in what

3   they viewed as sound and solvent condition.

4           The legal argument we want to present to Judge Pratt

5   is that that simply does not matter.  Now, they have a different

6   view of the law and they're entitled to argue that different

7   view of the law to Judge Pratt, but that, again, will be a

8   purely legal question that both sides will present to the Court.

9   There are no facts that need to be resolved for that issue to be

10  teed up for a decision by the district court.

11          And the same goes with each of those additional

12  points; there are simply no factual disputes that need to be

13  resolved for this issue to be taken up to the district court.

14          I'd like to refer also to the alternative motion to

15  transfer or stay.  And there's simply no allegation whatsoever,

16  nor could there be, that any discovery is needed to decide

17  whether a case should be transferred or certainly to be stayed.

18  A stay would be perfectly within the district court's discretion

19  without any resolution of any factual issues.

20          The one point that the plaintiff has raised is, well,

21  you have to litigate fully the question of jurisdiction before

22  you can even get to the question of whether the case should be

23  transferred, but that's not right, and this turns on case law

24  that hasn't been briefed to this Court because it only came up

25  on the reply brief on the motion to compel.  So this is an issue

36

1    that we would like to spell out further in briefing before Judge

2    Pratt on the main motion to dismiss or in the alternative to

3    transfer.

4            But there is more recent Supreme Court authority that

5    says that there is no necessary sequencing that requires a court

6    to decide jurisdictional issues before deciding transfer issues.

7    The case I'm referring to is Sinochem International Company vs.

8    Malaysia International Shipping Corp.  The cite for that is 549

9    U.S. 422, 2007.

10           The issue in that case was--the holding in that case

11   was that the Supreme Court held that a motion to dismiss for

12   forum non conveniens could be considered before questions of

13   jurisdiction could be considered.  Forum non conveniens is

14   somewhat different from the transfer motion here but I think not

15   different in any relevant way.

16           So what we would like to present in briefing to Judge

17   Pratt, if briefing is permitted to go forward, is that under

18   that case law it would be up to Judge Pratt's discretion whether

19   to consider the transfer or stay motion first or the

20   jurisdictional motion first.

21           We think probably the easiest--  Well, I won't use the

22   word "easiest," but perhaps the cleanest result would be simply

23   to dismiss for lack of jurisdiction because we think our legal

24   arguments are so clear, but, again, it would be a matter for

25   Judge Pratt's discretion which of those two alternatives he

1    would wish to address first.

2          THE COURT:  Thank you.

3          Mr. Thompson, I'll let you have the final word.

4          MR. THOMPSON:  Okay.  I'll be succinct, Your Honor.

5    Just a couple of quick things.

6          First, on the D.D.C., the motion that we filed to

7    suspend the briefing--excuse me, Your Honor--was never ruled

8    upon, so we went ahead and filed our briefs there, and we fully

9    expect to put in supplemental briefs after we've got a proper

10   administrative record and discovery has taken place there.

11         Second of all, there was a number of references to the

12   fact that the defendants have now assumed all the rights of

13   shareholders, including the right to sue themselves.  It's sort

14   of like the Coke Zero ad, you know; maybe we should sue

15   ourselves.  And not surprisingly, the courts have unanimously

16   said that the fox is not going to be allowed to guard the

17   henhouse and that there is a conflict of interest exception to

18   that statute.  And they don't cite to any contrary authority.

19         And then finally, Your Honor, the one thing that was

20   not disputed in any of their remarks is that they have, in fact,

21   in their motions to dismiss, they have made a number of factual

22   statements that are contained in our briefing here.  I cited a

23   few of them, and those are hotly contested, and they can't deny

24   the fact that we dispute whether there was a very real problem,

25   the centerpiece of their defense of jurisdiction on the

38

1  jurisdictional bar.

2          Thank you, Your Honor.

3          THE COURT:  Thank you.

4          Thank you all.  And this argument has been quite

5  helpful to me.  I realize that you need a ruling on the current

6  motion straight away.  I'll get on it, and it won't be long

7  before you have a ruling from me, and then you can go forth

8  whither that leads in this court.

9          But thank you all for coming today, and I do

10  appreciate the arguments you've made.  Thank you.

11          (Proceedings concluded at 11:04 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

39

<u>C E R T I F I C A T E</u>

1

2          I, Kelli M. Mulcahy, a Certified Shorthand Reporter of

3   the State of Iowa and Federal Official Realtime Court Reporter

4   in and for the United States District Court for the Southern

5   District of Iowa, do hereby certify, pursuant to Title 28,

6   United States Code, Section 753, that the foregoing is a true

7   and correct transcript of the stenographically reported

8   proceedings held in the above-entitled matter and that the

9   transcript page format is in conformance with the regulations of

10  the Judicial Conference of the United States.

11          Dated at Des Moines, Iowa, this 14th day of July,

12  2014.

13

14

15                          /s/ Kelli M. Mulcahy
                            Kelli M. Mulcahy, CSR No. 941, RMR, CRR
16                          Federal Official Court Reporter

17

18

19

20

21

22

23

24

25