**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| FAIRHOLME FUNDS, INC., et al., | |
| *Plaintiffs*, | Case No. 1:13-cv-1053-RCL |
| v. | |
| THE FEDERAL HOUSING FINANCE AGENCY, et al., | |
| *Defendants.* | |
| ARROWOOD INDEMNITY COMPANY, et al., | |
| *Plaintiffs*, | Case No. 1:13-cv-1439-RCL |
| v. | |
| FEDERAL NATIONAL MORTGAGE ASSOCATION, et al., | |
| *Defendants*. | |
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations | Miscellaneous No. 13-1288-RCL <br> <u>CLASS ACTION</u> |
| This document related to: ALL CASES | |

<u>**PLAINTIFFS' JOINT RESPONSE TO DEFENDANTS' MOTION FOR**
**PARTIAL RECONSIDERATION OF DENIAL OF MOTION**
**TO DISMISS IMPLIED COVENANT CLAIMS**</u>

DENTONS US LLP

Drew W. Marrocco (Bar No. 453205)
1900 K Street, N.W.
Washington, DC 20006
Tel.: (202) 496-7500
Fax: (202) 496-7756
drew.marrocco@dentons.com

*Counsel for Plaintiffs*
*Arrowood Indemnity Company,*

Charles J. Cooper (Bar No. 248070)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601
ccooper@cooperkirk.com

*Counsel for Plaintiffs Fairholme Funds*
*Inc., et al.*

*[Additional Counsel on Inside Cover]*

*Arrowood Surplus Lines Insurance Company, and*
*Financial Structures Limited*

Michael H. Barr (pro hac vice)
Richard M. Zuckerman (pro hac vice)
1221 Avenue of the Americas
New York, New York 10020
Tel.: (212) 768-6700
Fax: (212) 768-6800
michael.barr@dentons.com
richard.zuckerman@dentons.com

*Counsel for Plaintiffs*
*Arrowood Indemnity Company,*
*Arrowood Surplus Lines Insurance Company, and*
*Financial Structures Limited*

David H. Thompson (Bar No. 450503)
Vincent J. Colatriano (Bar No. 429562)
Peter A. Patterson (Bar No. 998668)
Brian W. Barnes (Bar No. 1018419)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601
dthompson@cooperkirk.com
vcolatriano@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com

*Counsel for Plaintiffs Fairholme Funds*
*Inc., et al.*

BOIES SCHILLER FLEXNER LLP
Hamish P.M. Hume (Bar No. 44914)
Stacey K. Grigsby (Bar No. 491197)
James A. Kraehenbuehl (Bar No. 1017809)
1401 New York Avenue NW
Washington, D.C. 20005
Tel: (202) 237-2727
hhume@bsfllp.com
sgrigsby@bsfllp.com
jkraehenbuehl@bsfllp.com

BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP
David R. Stickney (pro hac vice)
David R. Kaplan (pro hac vice)
12481 High Bluff Drive
Suite 300
San Diego, CA 92130
Tel: (858) 793-0070
Fax: (858) 793-0323
davids@blbglaw.com
davidk@blbglaw.com

KESSLER TOPAZ MELTZER &
CHECK LLP
Eric L. Zagar (pro hac vice)
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
ezagar@ktmc.com

GRANT & EISENHOFER, P.A.
Michael J. Barry (pro hac vice)
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
mbarry@gelaw.com

*Interim Co-Lead Class Counsel*

BOTTINI & BOTTINI, INC.
Frank A. Bottini
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA 92037
Telephone: (858) 914-2001

POMERANTZ LLP
Jeremy A. Lieberman
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100

Facsimile: (858) 914-2002
fbottini@bottinilaw.com

GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy
Ex Kano S. Sams II
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
lglancy@glancylaw.com
esams@glancylaw.com

LOWEY DANNENBERG, P.C.
Barbara Hart (pro hac vice)
Thomas M. Skelton
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
bhart@lowey.com

Facsimile: (212) 661-8665
jalieberman@pomlaw.com

Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

FINKELSTEIN THOMPSON LLP
Michael G. McLellan (Bar #489217)
3201 New Mexico Avenue NW, Suite 395
Washington, DC 20016
Telephone: (202) 337-8000
Facsimile: (202) 337-8090
mmclellan@finkelsteinthompson.com

## INTRODUCTION

Defendants' Motion for Partial Reconsideration consists of a misguided attempt to rehash old arguments and relitigate issues that this Court has completely and correctly decided. This will not do. In dismissing the breach of contract claim as barred by the anticipatory breach doctrine, while denying the motion to dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, this Court recognized that the implied covenant claim was not based on an anticipatory breach theory. Because this Court will not grant a motion to reconsider when a party merely files a new motion raising the exact same arguments that party previously raised, the motion for reconsideration should fail on this basis alone.

What is more, Defendants' arguments are wrong as a matter of law and on the facts of this case. Defendants breached the implied covenant of good faith and fair dealing the instant that they agreed to the Net Worth Sweep—signing away Plaintiffs' contractual rights without any corresponding benefit to the Plaintiffs or the Companies. Plaintiffs' implied covenant claim thus rests on a breach that took place on August 17, 2012, the date Defendants agreed to the Net Worth Sweep, and does not rely on the possibility of a *future* (anticipatory) breach. Because this Court got it right the first time when it rejected Defendants' arguments, it should deny Defendants' Motion for Partial Reconsideration based on the same flawed arguments.

## PROCEDURAL HISTORY

Plaintiffs, who own preferred shares of Fannie and Freddie stock and common shares of Freddie stock that rank in preference behind the Treasury's Government Stock, filed these related actions between July and November 2013, challenging the Net Worth Sweep on a number of grounds. After this Court dismissed all of Plaintiffs' claims, *Perry Capital LLC v. Lew*, 70 F. Supp. 3d 208 (D.D.C. 2014), the D.C. Circuit affirmed in part and reversed in part, *Perry Capital LLC*

*v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017). Most notably, the D.C. Circuit revived two of Plaintiffs' claims: (1) the claim that the Net Worth Sweep breached Plaintiffs' contractual right to a liquidation preference, and (2) the claim that the Net Worth Sweep violated the implied covenant of good faith and fair dealing by eliminating Plaintiffs' dividend and liquidation preference rights.

As to the first claim, the D.C. Circuit noted that Plaintiffs had argued that the Federal Housing Finance Agency ("FHFA") had breached its contractual obligation entitling Plaintiffs "to a share of the Companies' assets upon liquidation because [the Net Worth Sweep] ensured there would be no assets to distribute." *Id.* at 632. The D.C. Circuit held that the claims "for breach of contract with respect to liquidation preferences are better understood as claims for anticipatory breach, so there is no prudential reason to defer their resolution." *Id.* at 633. The D.C. Circuit then remanded this claim to this Court to consider the sufficiency of the breach of contract claim in the first instance.

As to the second claim, the D.C. Circuit took up Plaintiffs' argument that Defendants had breached the implied covenant of good faith and fair dealing, which Plaintiffs "contend required the Companies—and, therefore, their conservator—to act reasonably and not to deprive them of the fruits of their bargain, namely the opportunity to receive dividends." *Id.* at 630.[1] The D.C. Circuit explained that "the stock certificates upon which the class plaintiffs rely provide for dividends 'if declared by the Board of Directors, in its sole discretion,' " and, under Delaware and Virginia law, "[a] party to a contract providing for such discretion violates the implied covenant if it act[s] arbitrarily or unreasonably." *Id.* at 631 (second alteration in original) (quotation marks omitted). The D.C. Circuit remanded this claim to this Court to evaluate "under the correct legal

---

[1] *See also id.* at 630 (describing this claim as follows: "that the implied covenant prohibited the FHFA from depriving them of the opportunity to receive dividends").

standard, namely, whether the Third Amendment violated the reasonable expectations of the parties" as an arbitrary or unreasonable exercise of Defendants' discretion. *Id*. It did the same for the implied covenant claim with respect to the liquidation preference, failing to see "any prudential obstacle to adjudicating the . . . claim that repudiating the guarantee of liquidation preferences constitutes a breach of the implied covenant." *Id*. at 633.

This Court granted leave for Plaintiffs to amend their complaints. Plaintiffs again pleaded claims for breach of contract and breach of the implied covenant of good faith and fair dealing. With respect to the latter, Plaintiffs explained that "[a]s holders of Preferred Stock in Fannie and Freddie, Plaintiffs have certain contractual rights" and "[i]n particular, Plaintiffs are entitled to a contractually specified, non-cumulative dividend from the Companies and to a contractually specified liquidation preference." Amended Complaint for Declaratory and Injunctive Relief and Damages ¶ 127, *Fairholme Funds, Inc. v FHFA*, No. 13-cv-1053-RCL (Feb. 1, 2018), Doc. 75 ("Fairholme Compl.").[2] This count emphasized the arbitrary and unreasonable nature of Defendants' decision to enter into the Net Worth Sweep.

Defendants moved to dismiss the amended complaint—making a number of arguments on both of these counts. *See* Motion to Dismiss Amended Complaint on Remand (Jan. 10, 2018), Doc. 68. Notably, Defendants argued that Plaintiffs' breach of contract claim sounded only in anticipatory breach, which Defendants alleged was not a viable theory on the facts of this case. *Id*. at 15–

---

[2] *See also* First Amended Complaint for Declaratory and Injunctive Relief and Damages ¶ 110, *Arrowood Indemnity Company v. Fed. Nat'l Mortgage Ass'n*, 13-cv-1439-RCL (Nov. 9, 2018), Doc. 73-1; Second Amended Consolidated Class Action and Derivative Complaint ¶¶ 148–50, *In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litig.*, 13-mc-1288-RCL (Nov. 1, 2017), Doc. 62-2 ("Class Compl.") ("By entering into the Third Amendment," Fannie Mae breached the implied covenant of good faith and fair dealing.); *see also id.* ¶¶ 155–57, 162–64 (stating the same with respect to Freddie Mac preferred and common shareholders).

18. Defendants made a number of other arguments—but not an anticipatory breach argument—in response to Plaintiffs' breach of implied covenant claim. *See id.* at 18–31.

After Plaintiffs filed their response, *see* Plaintiffs' Response to Defendants' Motion to Dismiss the Amended Complaints, 1:13-cv-01053-RCL (Feb. 16, 2018), Doc. 76 ("Fairholme Resp."); Opposition to Defendants' Motion to Dismiss, 1:13-mc-01288-RCL (Feb. 16, 2018), Doc. 72, Defendants took a new tack in their reply brief, arguing that "Plaintiffs' contract *and implied covenant counts* fail to state viable claims under the state law governing anticipatory repudiation." Reply Memorandum in Support of Motion to Dismiss Amended Complaints on Remand at 1 (Mar. 23, 2018), Doc. 78 (emphasis added). Defendants now applied their anticipatory-breach theory to *both* the breach of contract and implied covenant counts. Because anticipatory breach does not apply to unilateral contracts for future money payments, Defendants asserted, the Court must dismiss both counts. Defendants made this argument repeatedly in their Reply.[3]

After considering all of these arguments, this Court dismissed Plaintiffs' breach of contract claim but ordered the breach of implied covenant claim to go forward. The Court found that Plaintiffs' breach of contract claim was based solely on an anticipatory breach theory. Memorandum Opinion at 13 (Sept. 28, 2018), Doc. 82 ("Opinion") ("Plaintiffs' claims for breach of contract with respect to liquidation preferences sound in anticipatory breach."). What is more, the Court concluded that Plaintiffs' breach of contract claim was premised solely on Plaintiffs' future and

---

[3] *See id.* at 3 ("The Limits on the Anticipatory Breach Doctrine Bar All of Plaintiffs' Contract-Related Claims."); *id.* at 3–4 ("Plaintiffs fail to state claims for breach of contractual or implied covenant obligations to pay them liquidation preferences or dividends for a multitude of reasons . . . . But there is a threshold issue that is dispositive of all of these claims: Because they all rest on the notion that the Enterprises have made it impossible for themselves to perform alleged obligations that would not come due, if at all, until some point in the future, they all sound in anticipatory repudiation."); *id.* at 4 n.1 ("[I]t is manifest that Plaintiffs' claims for breach of the implied covenant also must be treated as anticipatory repudiation claims.").

contingent right to receive a liquidation preference—*if* and *when* liquidation ever occurred. *See id.* at 10, 13–14. But the anticipatory breach theory "traditionally does not apply to unilateral contracts," the Court found, "especially when the only remaining performance is the payment of money." *Id.* at 11. Applying this legal framework to Plaintiffs' right to receive a liquidation preference, the Court found that this count involved a unilateral contract in which "the only remaining performance is payment of the preference by Fannie Mae or Freddie Mac upon liquidation (if it ever occurs)." *Id.* at 14. This Court held that, under those circumstances, Plaintiffs " 'can't declare a breach and sue for immediate payment just because [they have] reason (even compelling reason) to doubt that the other party will pay when due.' " *Id.* at 12 (quoting *Central States, Se. & Sw. Areas Pension Fund v. Basic American Indus.*, Inc., 252 F.3d 911, 915 (7th Cir. 2001)). Plaintiffs thus could not make a claim out for anticipatory breach of contract, the Court concluded, and dismissed that count.

But the Court permitted Plaintiffs' breach of implied covenant claim to go forward with respect to both dividends and liquidation rights. The Court applied the legal standards that the D.C. Circuit had instructed it to apply, asking "whether the Third Amendment *violated* the reasonable expectations of the parties." *Id.* at 15 (emphasis added). The Court found that Plaintiffs had stated a breach of implied covenant claim because they plausibly alleged that Defendants' decision to enter into the Net Worth Sweep was arbitrary or unreasonable. *Id.* at 22. The Court found that Plaintiffs plausibly alleged that Defendants *had already breached the implied covenant* by "permit[ing] the Treasury to reap enormous benefits in exchange for no new investment" and "guarantee[ing] that Plaintiffs would never receive dividends or liquidation distributions." *Id.* at 23. Thus, Plaintiffs' allegation of breach of the implied covenant is not merely an allegation that Plaintiffs "[have] reason . . . to doubt that the other party will pay when due." *Id.* at 12. It is, instead, an

5

allegation that a breach has already taken place. On this basis, the Court denied Defendants' motion to dismiss the implied covenant count.

Defendants now have moved for partial reconsideration. Defendants' Motion for Partial Reconsideration of Denial of Motion to Dismiss Implied Covenant Claims (Oct. 15, 2018), Doc. 87 ("Motion for Partial Reconsideration"). In the motion, Defendants press the same argument that they raised in their Reply: that the same limitation on anticipatory repudiation that the Court found bars Plaintiffs' breach of contract claim also bars the breach of implied covenant claim. *Id.* at 9. The Fairholme, Arrowood, and Class Plaintiffs submit this joint response in opposition to Defendants' motion.

## STANDARD OF REVIEW

As the parties moving for reconsideration, Defendants bear the burden of showing that reconsideration is warranted. *See Peck v. SELEX Sys. Integration, Inc.*, 270 F. Supp. 3d 107, 117 (D.D.C. 2017), *aff'd*, 895 F.3d 813 (D.C. Cir. 2018). And although Federal Rule of Civil Procedure 54(b) permits a district court to revise an interlocutory order (such as the Court's order at issue in this motion), a court will only revise orders "as justice requires." *Reed v. Islamic Republic of Iran*, 242 F.R.D. 125, 129 (D.D.C. 2007) (quotation marks omitted). "Courts in this district interpret that abstract phrase narrowly," *Kelleher v. Dream Catcher, L.L.C.*, 263 F. Supp. 3d 253, 254 (D.D.C. 2017), and will decline to "revisit [a] prior decision absent extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice," *Hall & Assocs. v. United States Envtl. Prot. Agency*, 210 F. Supp. 3d 13, 18 (D.D.C. 2016), *aff'd*, 2018 WL 1896493 (D.C. Cir. Apr. 9, 2018) (quotation marks omitted); *see Labow v. U.S. Dep't of Justice*, 278 F. Supp. 3d 431, 438 (D.D.C. 2017) (Lamberth, J.) (citing the manifest injustice standard); *Pueschel v. National Air Traffic Controllers' Ass'n*, 606 F. Supp. 2d 82, 85

6

(D.D.C. 2009) (same).

Under this standard, "it is well-established that motions for reconsideration cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled." *Wesberry v. United States*, 304 F. Supp. 3d 30, 41 (D.D.C. 2018). Courts in this district routinely deny motions for reconsideration on this basis. *See, e.g.*, *Robinson v. District of Columbia*, 296 F. Supp. 3d 189, 192–93 (D.D.C. 2018) (rejecting a motion for consideration where the motion was "premised on what appears to be a refinement of [a] prior argument"); *Fox v. District of Columbia*, 923 F. Supp. 2d 302, 310 (D.D.C. 2013) (denying a motion for reconsideration "because it reasserts arguments the Court has previously considered and rejected"). In sum, "once [the parties have] battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Singh v. George Washington Univ.*, 383 F. Supp.2d 99, 101 (D.D.C. 2005) (Lamberth, J.).

## **ARGUMENT**

Defendants' Motion for Partial Reconsideration is a last-ditch attempt to relitigate a theory that this Court already considered and rejected. Defendants miss the mark in two fundamental ways. First, Defendants fail to apprehend that this Court already considered—and rejected—the contention that Plaintiffs' implied covenant claim is premised on an anticipatory repudiation theory. And second, the Court was correct when it rejected Defendants' claim; Plaintiffs' implied covenant claim is premised on a breach that *already occurred*. This Court should thus deny the motion for reconsideration because it consists solely of arguments that "the court ha[s] . . . already rejected on the merits," *Hardin v. Dadlani*, 161 F. Supp. 3d 106, 109 (D.D.C. 2015) (quotation marks omitted), and because the Court "did [not] err in reasoning," in the first place, *Labow*, 278 F. Supp. 3d at 438.

I.      **This Court Has Fully Considered and Rejected Defendants' Contention That Plaintiffs' Implied Covenant Claim Is Premised on an Anticipatory Breach Theory.**

Before the Court ruled on the Motion to Dismiss, Defendants had fully laid out their argument that the implied covenant claim cannot proceed because it is based on an anticipatory repudiation theory. *See, e.g.*, Reply at 1; *see also supra* at 4 & n.3 (collecting examples from Defendants' reply brief, where it was raised for the first time). [4] In their Motion for Partial Reconsideration, Defendants even go so far as to highlight the fact that they had previously raised this argument. *See, e.g.*, Motion for Partial Reconsideration at 2–3 ("Defendants' reply applied the argument [that the common-law limitation on anticipatory repudiation barred recovery] across the board to all of Plaintiffs' contract-based claims.").

Despite all this, Defendants assert that "the Court may not have apprehended that Defendants sought dismissal of *all* of Plaintiffs' contract-based claims, including Plaintiffs' implied covenant claims, based on Delaware and Virginia's limitations on anticipatory-breach suits." *Id.* at 8. Defendants seem to think that because the Court did not explicitly "address Defendants' . . . argument that Plaintiffs' implied covenant claims are barred by the . . . limitation on anticipatory repudiation," the Court did not contemplate or "consider" that argument at all. *Id.* at 2, 8.

But it is clear from this Court's opinion that it found that Plaintiffs' breach of contract claim was premised on an anticipatory breach theory, while the implied covenant claim was not.[5]

---

[4] Defendants' failure to raise the sole argument of their motion for reconsideration until their reply brief in the initial briefing is sufficient alone to reject the argument as waived. "[S]ubstantive arguments made for the first time in a reply brief are considered waived." *District Hosp. Partners, L.P. v. Sebelius*, No. 11-116 (ESH), 2013 WL 12313880, at *5 n.2 (Sept. 10, 2013 D.D.C.). *See also In re Asemani*, 455 F.3d 296, 300 (D.C. Cir. 2006) ("Asemani's first argument . . . is waived because it was made for the first time in his reply brief."); *Lindsey v. District of Columbia*, 879 F. Supp. 2d 87, 95–96 (D.D.C. 2012) ("[B]ecause the District raised this argument for the first time in its reply brief, it is waived.").

[5] Plaintiffs, of course, reserve their appellate rights with respect to the Court's dismissal of their breach of contract claims.

The Court explicitly noted time and again that the breach of contract claim was an anticipatory breach claim. *See, e.g.*, Opinion at 13 ("Plaintiffs' claims for breach of contract with respect to liquidation preferences sound in anticipatory breach."); *id.* at 11 ("Plaintiffs fail to state a claim for anticipatory breach of their contractual rights to receive a liquidation preference."); *id.* at 13 ("[T]he viability of Plaintiffs' breach of contract claims depends on whether or not the [anticipatory breach] limitation applies.").

In sharp contrast, the Court understood Plaintiffs' breach of implied covenant claim to rely on a breach that *already occurred*—i.e., that the Net Worth Sweep "*breached* the implied covenant of good faith and fair dealing." *Id.* at 14 (emphasis added); *see also id.* at 20 ("Plaintiffs Plead Sufficient Facts to Support a Finding that their Reasonable Expectations *were Violated* by the Third Amendment") (emphasis added). The Court sustained the implied covenant claim because it was grounded in an allegation that Plaintiffs' reasonable expectations *had already been violated* by the Net Worth Sweep; Plaintiffs "could not expect the GSEs to extinguish the possibility of dividends arbitrarily or unreasonably." *Id.* at 22. Defendants had already "extinguish[ed] the possibility of dividends"—which meant that Plaintiffs' claim sounded in past breach, not anticipatory breach. *Id.* Similarly, the Court credited Plaintiffs' argument that they could not reasonably expect that Fannie and Freddie "would give away all of Plaintiffs' residual rights to dividends and liquidation surplus in exchange for no investment and no meaningful consideration at a time when the GSEs were highly profitable." *Id.* at 25. Again, the Court correctly read the implied covenant claim to allege that the Net Worth Sweep effected a breach the moment Defendants adopted it—thereby arbitrarily eliminating Plaintiffs' dividend and liquidation rights in exchange for no new investment from Treasury. By finding that the implied covenant claim was based on a past breach—that "Plaintiffs plausibly allege that they could not have reasonably expected their rights to dividends

and liquidation preferences *to be extinguished* by the Third Amendment," *id.* at 29–30 (emphasis added)—the Court rejected Defendants' argument that the implied covenant claim alleged merely an anticipatory breach.

And the mere fact that the Court's decision did not explicitly discuss Defendants' dual application of the anticipatory breach limitation does not change the analysis. As discussed above, it is clear on the face of the Court's opinion that the Court considered and rejected this argument. What is more, the Court *necessarily* rejected this argument; had the Court found Defendants' argument persuasive, it presumably would have dismissed the implied covenant claim. Defendants thus "ha[ve] not demonstrated a manifest injustice here" because "[i]n its earlier decision, the district court neither misunderstood [their] arguments . . . [n]or did it err in reasoning or apprehension." *Labow*, 278 F. Supp. 3d at 438.

## II. The Court Correctly Rejected Defendants' Anticipatory Breach Argument Because Plaintiffs Premised the Implied Covenant Claim on a Breach That Already Occurred.

This Court's determination that the implied covenant claim is *not* based on anticipatory breach is correct as a matter of law and on the facts of this case. A claim for anticipatory breach is different from a standard breach of contract claim, because it allows a plaintiff to sue based on a defendant's intention to breach *in the future*. That is not the basis of Plaintiffs' implied covenant claim. Instead, Defendants breached the implied covenant the moment that they entered into the Net Worth Sweep—in exchange for no meaningful value to the Companies or Plaintiffs. This means that Defendants already have breached the implied covenant, and none of Defendants' arguments to the contrary have merit.

### A. A Claim for Anticipatory Breach Differs from a Standard Breach of Contract Claim.

A claim brought under the doctrine of anticipatory breach is distinct from a standard breach of contract claim. As the D.C. Circuit explained, a party can bring a claim for anticipatory breach

when the other party either promises to breach the contract or engages in "a voluntary affirmative act which renders the obligor unable . . . to perform." *Perry Capital*, 864 F.3d at 632 (quotation marks omitted). The doctrine of anticipatory breach "gives the plaintiff the option to have the law treat the promise to breach . . . as a breach itself," allowing the plaintiff to bring a claim "prior to the time for performance." *Id.* at 632–33 (quotation marks omitted).

In contrast, a standard breach of contract claim relies on a breach that has already occurred; for example, a party failed to deliver goods by a set time or failed to render services as required by the contract. Such a claim is brought *after* the time for the performance, which means that the breach has already occurred—and is not merely anticipated. *See Visual Edge Sys., Inc. v. Take-fman*, 2000 WL 193107, at *2 n.9 (Del. Ch. Jan. 31, 2000) (differentiating between a claim for anticipatory breach and a routine claim for a breach of contract that has already occurred).

### B.   On the Facts of This Case, the Court Properly Found That Plaintiffs' Implied Covenant Claim Rests on a Breach That Already Occurred.

As laid out by the D.C. Circuit, a party to a contract breaches the implied covenant of good faith and fair dealing if it violates "the reasonable expectations of the parties." *Perry Capital*, 864 F.3d at 631. And a party breaches the implied covenant the moment that it fails to act in good faith—in other words, the moment it violates the parties' reasonable expectations. *See Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) ("[P]arties are liable for breaching the covenant when their conduct frustrates the overarching purpose of the contract by taking advantage of their position to control implementation of the agreement's terms." (quotation marks omitted)); *Historic Green Springs, Inc. v. Brandy Farm, Ltd.*, 32 Va. Cir. 98, 4 (Va. Cir. Ct. 1993) (finding that the "bad-faith assignment amounts to a material breach" of the covenant of good faith and fair dealing inherent in the contract). This is clear from the D.C. Circuit's description of the implied covenant claims: with respect to dividends, the court framed the inquiry on remand as "whether

11

the Third Amendment *violated* the reasonable expectations of the parties"; with respect to the liquidation preference, the court similarly framed the inquiry as whether "repudiating the guarantee of liquidation preferences *constitutes a breach* of the implied covenant." *Perry Capital*, 864 F.3d at 631, 633 (emphases added). The D.C. Circuit therefore clearly described the inquiry as a backward-looking one to determine whether a breach already had occurred.

Plaintiffs' implied covenant claim accordingly rests on a breach that already occurred—and thus the implied covenant claim is not in any way premised on an anticipatory breach. Plaintiffs' factual theory of breach is straightforward: Defendants have an implied duty to act in a way that comports with Plaintiffs' reasonable expectations as holders of preferred stock.

Plaintiffs allege that when Defendants entered into the Net Worth Sweep—and thus deprived Plaintiffs of any possibility of a dividend or liquidation payment in exchange for no new investment from Treasury—they acted in an arbitrary and unreasonable way, violating Plaintiffs' reasonable expectations. *See* Fairholme Compl. ¶ 126–31; Class Compl. ¶¶ 148–50. In other words, Defendants breached the implied covenant of good faith and fair dealing *the moment they entered into the Net Worth Sweep* because that was the moment that they violated Plaintiffs' reasonable expectations.

There is nothing anticipatory about this theory of breach.

### C.    Defendants' Remaining Arguments Fail.

Defendants' remaining arguments do nothing to help their case. As an initial matter, it is true but inconsequential that a breach of implied covenant claim is a "form of breach of contract" claim. Motion for Partial Reconsideration at 10. Plaintiffs have pleaded a "breach of the implied covenant of good faith and fair dealing" claim because they have alleged the requisite elements: "[1] a specific implied contractual obligation, [2] a breach of that obligation by the defendant, and [3] resulting damage to the plaintiff." *N.K.S. Distribs., Inc. v. Tigani*, 2010 WL 2178520,

at *7 (Del. Ch. May 28, 2010) (quotation marks omitted).[6] As discussed extensively above, Plaintiffs have alleged that (1) Defendants had an implied contractual obligation to not arbitrarily and unreasonably eliminate Plaintiffs' dividend and liquidation rights, and (2) Defendants breached that obligation by entering into the Net Worth Sweep. And Plaintiffs have also (3) properly alleged that they have suffered damages as a result: Plaintiffs have been "deprived of their investments" because the Companies no longer have "residual equity value." Fairholme Resp. at 21; *see* Fairholme Compl. ¶ 128 ("The Net Worth Sweep thus strips the Companies of their *ability to generate and retain funds* to distribute as dividends to holders of Preferred Stock." (emphasis added)); *see also* Class Compl. ¶¶ 149–50, 157–58, 164–65. Left with stocks that are devoid of residual value and holding an interest in companies unable to generate or retain funds, Plaintiffs have *already* suffered damages as a result of Defendants' breach of the implied covenant—and thus have stated a claim for breach of the implied covenant.

---

[6] *See also Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009) ("In Virginia, the elements of a claim for breach of an implied covenant of good faith and fair dealing are (1) a contractual relationship between the parties, and (2) a breach of the implied covenant.") (citing *Charles E. Brauer Co., Inc. v. NationsBank of Virginia, N.A.*, 251 Va. 28 (1996)). Defendants overstate the two cases they cite for the proposition that Virginia courts "do not recognize" implied covenant claims "as independent standalone counts." Motion for Partial Reconsideration at 10. Neither case holds that implied covenant claims cannot be brought as separate claims, and *Enomoto* shows that plaintiffs can plead them this way. *Id.* at 449–51. Instead, as evidenced by their citation to *Charles E. Brauer*, both cases stand only for the proposition that implied duty claims do not sound in tort but are a form of a breach of contact. *See Frank Brunkhorst CO., LLC v. Coastal Atlantic, Inc.*, 542 F. Supp. 2d 452, 462 (E.D. Va. 2008) (quoting *Charles E. Brauer*, 251 Va. at 33, for the proposition that " 'the failure to act in good faith . . . *does not amount to an independent tort*' and 'the breach of the implied duty . . . gives rise only to a cause of action for breach of contract' ") (emphasis added); *Carr v. Federal National Mortgage Assoc.*, 92 Va. Cir. 472, 2013 WL 12237855, at *4 (Oct. 8, 2013) (citing *Charles E. Brauer* for the proposition that implied covenant claims are not a "cause of action for breach of the implied warranty of good faith and fair dealing" but "a breach of contract claim"). This principle is no obstacle to Plaintiffs' claims here because Plaintiffs plead their implied covenant claim as a breach of contract claim.

Defendants also argue that the implied covenant claim is anticipatory when it comes to liquidation preferences, primarily because this Court found the breach of contract claim to be anticipatory. Motion for Partial Reconsideration at 9–12. This argument is flawed. As discussed previously, the Court found that the breach of contract claim was premised solely on Plaintiffs' future and contingent right to receive a liquidation preference—*if* liquidation ever occurred. *See* Opinion at 10, 13–14. But the implied covenant claim involves the liquidation preferences in a different way: by giving away Plaintiffs' liquidation preferences in exchange for no meaningful consideration, Defendants breached the implied covenant.

Defendants also assert that the implied covenant claim is anticipatory when it comes to dividends because "Plaintiffs are not suing for alleged past failure to pay dividends but for anticipated future failure to exercise discretion in determining whether to issue dividends." Motion for Partial Reconsideration at 12. Again, this argument is misguided. This Court correctly found that Plaintiffs stated a claim that Defendants had "extinguish[ed] the possibility of dividends arbitrarily or unreasonably" for no new investment by entering into the Net Worth Sweep. Opinion at 22. The Net Worth Sweep was the violation, which again means that the claim regarding dividends is not anticipatory. Plaintiffs need not prove that they would have received a dividend absent the Net Worth Sweep (as Defendants suggest, *see* Motion for Partial Reconsideration at 13). As this Court explained, even absent issuance of dividends and separate and apart from the elimination of the right to them, Plaintiffs had a reasonable expectation that "available cash on hand would not simply be handed out to Treasury" but would go to "increase the value of Plaintiffs' underlying securities either by way of reinvestment into the company or reduction of debt." Opinion at 29. Plaintiffs' implied-covenant claim thus requires proving only that (1) the decision to cut off any possibility of dividends for no new investment and no meaningful consideration at a time when the Companies

were highly profitable was arbitrary or unreasonable, and (2) they have suffered damages, which

Plaintiffs have properly alleged.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for partial reconsideration should be denied.

Dated: November 5, 2018

DENTONS US LLP

By: s/ Drew W. Marrocco
Drew W. Marrocco (Bar No. 453205)
1900 K Street, N.W.
Washington, DC 20006
Tel.: (202) 496-7500
Fax: (202) 496-7756
drew.marrocco@dentons.com

Michael H. Barr (pro hac vice)
Richard M. Zuckerman (pro hac vice)
1221 Avenue of the Americas
New York, New York 10020
Tel.: (212) 768-6700
Fax: (212) 768-6800
michael.barr@dentons.com
richard.zuckerman@dentons.com

*Counsel for Plaintiffs*
*Arrowood Indemnity Company,*
*Arrowood Surplus Lines Insurance Company, and*
*Financial Structures Limited*

Respectfully submitted,

By: s/ Charles J. Cooper
Charles J. Cooper (Bar No. 248070)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601
ccooper@cooperkirk.com

David H. Thompson (Bar No. 450503)
Vincent J. Colatriano (Bar No. 429562)
Peter A. Patterson (Bar No. 998668)
Brian W. Barnes (Bar No. 1018419)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601
dthompson@cooperkirk.com
vcolatriano@cooperkirk.com
ppatterson@cooperkirk.com
bbarnes@cooperkirk.com

*Counsel for Plaintiffs Fairholme Funds*
*Inc., et al.*

By: /s/ Hamish P.M. Hume
BOIES SCHILLER FLEXNER LLP
Hamish P.M. Hume (Bar No. 449914)
Stacey K. Grigsby (Bar No. 491197)
James A. Kraehenbuehl (Bar No. 1017809)
1401 New York Avenue NW
Washington, D.C. 20005
Tel: (202) 237-2727

KESSLER TOPAZ METLZER &
CHECK LLP
Eric L. Zagar (pro hac vice)
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
ezagar@ktmc.com

GRANT & EISENHOFER, P.A.
Michael J. Barry (*pro hac vice*)
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
mbarry@gelaw.com

hhume@bsfllp.com
sgrigsby@bsfllp.com
jkraehenbuehl@bsfllp.com

BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP
David R. Stickney (*pro hac vice*)
David R. Kaplan (*pro hac vice*)
12481 High Bluff Drive
Suite 300
San Diego, CA 92130
Tel: (858) 793-0070
Fax: (858) 793-0323
davids@blbglaw.com
davidk@blbglaw.com

*Interim Co-Lead Class Counsel*

BOTTINI & BOTTINI, INC.
Frank A. Bottini
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA 92037
Telephone: (858) 914-2001
Facsimile: (858) 914-2002
fbottini@bottinilaw.com

POMERANTZ LLP
Jeremy A. Lieberman
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com

GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy
Ex Kano S. Sams II
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
lglancy@glancylaw.com
esams@glancylaw.com

Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

LOWEY DANNENBERG, P.C.
Barbara Hart (pro hac vice)
Thomas M. Skelton
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
bhart@lowey.com

FINKELSTEIN THOMPSON LLP
Michael G. McLellan (Bar #489217)
3201 New Mexico Avenue NW, Suite 395
Washington, DC 20016
Telephone: (202) 337-8000
Facsimile: (202) 337-8090
mmclellan@finkelsteinthompson.com

16