**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FAIRHOLME FUNDS, INC., *et al*., | |
| Plaintiffs, | |
| v. | Civil No. 13-1053 (RCL) |
| FEDERAL HOUSING FINANCE AGENCY, *et al.*, | |
| Defendants. | |
| ARROWOOD INDEMNITY COMPANY, *et al.*, | |
| Plaintiffs, | |
| v. | Civil No. 13-1439 (RCL) |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, *et al.*, | |
| Defendants. | |
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations | |
| _____ | Miscellaneous No. 13-1288 (RCL) |
| This document relates to: ALL CASES | <u>CLASS ACTION</u> |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL**
**RECONSIDERATION OF DENIAL OF**
**MOTION TO DISMISS IMPLIED COVENANT CLAIMS**

Plaintiffs' opposition to Defendants' motion for reconsideration confirms that the

implied-covenant counts actually pleaded by Plaintiffs are, in substance, claims for anticipatory

repudiation.  Accordingly, because Plaintiffs do not dispute that Delaware and Virginia law

preclude anticipatory repudiation suits relating to unilateral contracts, Plaintiffs' implied-covenant claims should be dismissed.

Plaintiffs concede that "a breach of implied covenant claim is a 'form of breach of contract claim'" and that they "plead their implied covenant claim as a breach-of-contract claim." Opp. 12, 13 n.6. Plaintiffs also do not dispute that (a) implied-covenant claims *can* sound in anticipatory repudiation; (b) whether a claim is expressly labeled as "anticipatory repudiation" is not controlling; and (c) the Delaware and Virginia common-law bars on anticipatory repudiation suits for unilateral contracts apply equally to express-contract claims and their implied-covenant counterparts. Plaintiffs likewise make no distinction between their implied-covenant claims as they relate to dividends and as they relate to liquidation preferences, or attempt to retract their argument to the D.C. Circuit that "the Third Amendment constitutes an anticipatory repudiation of the contractual provisions governing *both* dividends and liquidation distributions." D.C. Cir. Reply at 13 (emphasis added).

Plaintiffs' only substantive argument in opposition to Defendants' motion is to insist that the particular implied-covenant claims they bring here, whether relating to dividends or liquidation preferences, are not really claims for anticipatory repudiation of those rights. However, Plaintiffs' own analytical framework shows the opposite.

1. Plaintiffs' analysis begins with an articulation of the distinction between an anticipatory breach claim, on the one hand, and "a standard breach of contract claim" permitted regardless of the unilateral nature of the contract, on the other. Opp. 10-11. We agree with that articulation. Far from supporting Plaintiffs, however, it actually shows why their implied-covenant claims assert anticipatory breaches.

Plaintiffs admit that a "standard breach of contract claim" occurs when, for example, "a party fail[s] to deliver goods by a set time or fail[s] to render services as required by the contract." Opp. 11. In contrast, an anticipatory repudiation claim arises when a party "either promises to breach the contract *or engages in 'a voluntary affirmative act which renders the obligor unable . . . to perform.'" Id.* (quoting *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 632 (D.C. Cir. 2017)) (emphasis added). Under the doctrine of anticipatory repudiation, "the law treat[s] . . . the act rendering performance impossible as a breach itself." *Perry Capital*, 864 F.3d at 632-33 (internal quotation marks and brackets omitted); *see* Opp. 11.

Despite accurately stating those legal propositions, the rest of Plaintiffs' opposition brief inexplicably argues that they have the *opposite* implications when applied to this case. For example, Plaintiffs argue that their theory that the Third Amendment "extinguish[ed] the possibility of dividends" somehow connotes "past breach, not anticipatory breach." Opp. 9. But according to Plaintiffs' own description of the law, the D.C. Circuit's decision in *Perry Capital*, and this Court's September 28 opinion, an act that extinguishes the possibility of future performance and receipt of contractual benefits is a quintessential example of an anticipatory repudiation. Opp. 11; *Perry Capital*, 864 F.3d at 632; *id.* at 633 n.26 (equating anticipatory repudiation with "rendering performance impossible"); Mem. Op. at 13 (observing that a claim that defendants "effectively repudiated their contractual obligations . . . by rendering performance impossible" typically "amounts to a claim for anticipatory breach").

Likewise, Plaintiffs repeatedly insist that under their theory, the Third Amendment itself was the breach. Opp. 1, 7, 9, 10, 12. But that label does not indicate that Plaintiffs' implied-covenant counts are anything other than anticipatory breach claims, because as Plaintiffs (once again) admit, it is customary in anticipatory breach cases to refer to the repudiation as a breach.

Opp. 11.  "[T]he law treat[s] . . . the act rendering performance impossible as a breach itself."
*Perry Capital*, 864 F.3d at 632-33; *accord Glenn v. Fay*, 281 F. Supp. 3d 130, 139 (D.D.C.
2017) (repudiation is "treat[ed] . . . as a present breach of the contract").[1]

Thus, Plaintiffs' own arguments underscore that their claims, in substance, seek to
recover for a past act that allegedly extinguished the possibility of receiving future dividends and
liquidation preferences.  This is consistent with how Plaintiffs plead the implied-covenant claims
in their complaints.  Class Plaintiffs allege that they possess express contractual rights consisting
of "dividends 'if declared by the Board of Directors, in its sole discretion'" and "contractually-
specified liquidation preferences," and that the Third Amendment "deprive[s] Plaintiffs . . . of
the fruits of their bargain" by eliminating "any possibility of receiving dividends or a liquidation
preference."  Class SAC ¶¶ 148, 150, 155, 157, 162, 164.[2]  The Fairholme and Arrowood
Plaintiffs similarly allege that the Third Amendment "prevent[s] [them] from receiving the fruits
of the bargain," which they too identify as "a contractually specified, non-cumulative dividend
from the Companies" and "a contractually specified liquidation preference."  Fairholme FAC ¶¶
146, 147; Arrowood FAC ¶¶ 140, 141.  In other words, the Third Amendment "*repudiates* . . .
the scope, purpose, and terms of the contracts governing the relationships between Fannie and
Freddie and their preferred shareholders" and providing for those future potential benefits.
Fairholme FAC ¶ 131; Arrowood FAC ¶ 145 (emphasis added).

---

[1]  For the same reason, Plaintiffs are wrong to suggest (Opp. 9-10) that this Court's use of the
past tense when discussing the alleged breach of the implied covenant in its September 28, 2018
Opinion is inconsistent with construing the implied-covenant counts as anticipatory repudiation
in substance.

[2]  This reply uses the same abbreviations for Plaintiffs' amended pleadings as are used in
Defendants' motion and in the Court's September 28, 2018 Opinion.

In contrast, Plaintiffs' implied-covenant claims have nothing in common with a past "fail[ure] to deliver goods by a set time" or failure "to render services as required by the contract"—Plaintiffs' paradigmatic examples of *non*-anticipatory breach claims. Opp. 11. Here, the analogue to goods delivered or services rendered is dividends and liquidation preferences—the things Plaintiffs' implied-covenant counts identify as "the fruits of the bargain" of which they anticipate being deprived. Fairholme FAC ¶¶ 146, 147; Arrowood FAC ¶¶ 140, 141; Class SAC ¶¶ 148, 150, 155, 157, 162, 164. And it is undisputed that the "set time" for delivery of those fruits is the indefinite future. No Plaintiff takes the position that it has *already* been denied any dividend or liquidation preference that it would have received but for the Third Amendment. This case is the opposite of a "standard" or "routine" (Opp. 11) past breach claim.

2. Plaintiffs try to avoid the inevitable legal consequences of how they pleaded their implied-covenant counts by positing that "a party breaches the implied covenant the moment that it fails to act in good faith—in other words, the moment it violates the parties' reasonable expectations." Opp. 11. According to Plaintiffs, Defendants have an ongoing, nonspecific "implied duty to act in a way that comports with Plaintiffs' reasonable expectations as holders of preferred stock," Opp. 12, and not to engage in transactions "in exchange for no meaningful value," Opp. 10. Contradicting their own complaints, Plaintiffs go so far as to suggest that their alleged expectations regarding dividends and the Enterprises' determinations about whether to declare dividends are altogether irrelevant to their implied-covenant claims. Opp. at 14-15.

In this regard, Plaintiffs recently disclosed in discovery that they intend to seek, as damages for the alleged breach of the implied covenant, the full purchase price that each and every common and preferred shareholder paid for his or her shares, without regard to the prospect of future dividends or liquidation preferences. *See* Ex. A, at 5-6 (*Fairholme* Plaintiffs'

initial disclosures); Ex. B, at 5-8 (*Arrowood* Plaintiffs' initial disclosures); Ex. C, at 6-8 (Class Plaintiffs' initial disclosures).  If Plaintiffs were permitted to morph their implied-covenant claims into an unpleaded, sweeping theory that a finding that the Third Amendment was unreasonable would entitle them to an immediate total refund of their share purchase prices, there is little doubt that such astronomical liability would "restrain or affect the exercise of powers or functions of [FHFA] as a conservator," causing the claims to be barred by 12 U.S.C. § 4617(f).  *See Jacobs v. FHFA*, No. 17-3794, 2018 WL 5931515, at *8-9 (3d Cir. Nov. 14, 2018) (holding that "monetary relief" that would "unravel the Third Amendment" or "prevent or at least deter the Agency from implementing it further" is barred by § 4617(f)).[3]

This Court, however, need not presently reach these issues because Plaintiffs' newly evolved, vastly expanded conception of their implied-covenant claims is inconsistent both with the governing state law, and with Plaintiffs' own claims as pleaded in their complaints and understood by the D.C. Circuit when it remanded those claims for this Court to determine in the first instance whether Plaintiffs "stated claims for . . . breach of the implied covenant." *Perry Capital*, 864 F.3d at 633.

No principle regarding the implied covenant is more ingrained than that it is a "limited and extraordinary" remedy, *Nemec v. Schrader*, 991 A.2d 1120, 1128 (Del. 2010), not a "free-floating duty" to act in accordance with subjective notions of good faith, unmoored from specific contractual obligations, *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009).

---

[3]  The D.C. Circuit's decision in *Perry Capital* does not suggest otherwise.  The Circuit held that Enterprise shareholders' injunctive and declaratory claims were barred by § 4617(f), and assumed *sub silentio* that the damages claims were not, but did not address whether damages claims that rise to the level of restraining or affecting the exercise of powers or functions of FHFA as Conservator might be barred.  As discussed below, the D.C. Circuit could not have understood the implied-covenant claims before it to have the vast, open-ended scope and magnitude of potential damages Plaintiffs now ascribe to them.

The implied covenant is a modest doctrine "by which Delaware law cautiously supplies terms to fill gaps in the express provisions of a specific agreement." *Dieckman v. Regency GP LP*, 2018 WL 1006558, at \*3 (Del. Ch. Feb. 20, 2018) (quoting *Allen v. El Paso Pipeline GP Co., L.L.C.*, 113 A.3d 167, 182 (Del. Ch. 2014)); *see Gerber v. Enter. Prod. Holdings, LLC*, 67 A.3d 400, 419 (Del. 2013) (implied covenant merely fills "residual nooks and crannies" in the written agreement), *overruled on other grounds by Winshall v. Viacom Int'l., Inc.*, 76 A.3d 808 (Del. 2013).  The implied covenant is similarly circumscribed in Virginia:  it "does not create affirmative obligations, but rather is simply a manifestation of *conditions inherent in expressed promises*." *Cagle v. CitiMortgage, Inc.*, 2015 WL 2063990, at \*8 (E.D. Va. May 1, 2015) (internal quotation marks omitted) (emphasis added).

Indeed, when the D.C. Circuit addressed Plaintiffs' implied-covenant claims in Perry Capital, it understood those claims not as calling for a free-floating reasonableness test, but as closely tied to the express provisions of the shareholder contract that "provide for dividends 'if declared by the Board of Directors, in its sole discretion.'"  864 F.3d at 631 (quoting stock certificates).  The governing principle is that "'*[w]hen exercising a discretionary right*, a party to the contract must exercise its discretion reasonably.'"  *Id.* (quoting *Gerber*, 67 A.3d at 419) (emphasis added); *see also Historic Green Springs, Inc. v. Brandy Farm, Ltd.*, 32 Va. Cir. 98, 1993 WL 13029827, at \*3 (Va. Cir. Ct. 1993) ("where discretion is lodged in one of two parties to a contract . . . *such discretion* must, of course, be exercised in good faith") (emphasis added). The D.C. Circuit's understanding of Plaintiffs' implied covenant claims as sounding in anticipatory repudiation was essential to its reasoning in remanding those claims. *See Perry Capital*, 864 F.3d at 633 ("Nor do we see any prudential obstacle to adjudicating the class

plaintiffs' claim that *repudiating* the guarantee of liquidation preferences constitutes a breach of the implied covenant") (emphasis added).

There is no way to breach an obligation to act reasonably in connection with the performance of a specific discretionary function before the time to perform that function has arrived. Thus, the only way to understand Plaintiffs' implied-covenant claims consistent with *Perry Capital* and the state-law boundaries of such claims is that the Third Amendment made it impossible for the Enterprises to reasonably exercise discretion in connection with future dividend determinations and liquidation preferences—*i.e.*, anticipatory repudiation. Conversely, the only way for Plaintiffs to avoid that understanding is to decouple their implied-covenant claims from the contractual "fruits" and express contractual provisions on which those claims were predicated: dividends and liquidation preferences that Plaintiffs hoped to receive in the future. But that is a decoupling that neither applicable state law, Plaintiffs' own pleadings, nor the law-of-the-case will countenance. It is not for nothing that the words "dividends" and "liquidation preferences" appear no fewer than 26 times in Plaintiffs' collective implied-covenant counts.

3. Plaintiffs have no answer to Defendants' observation (Mot. 11-12) that granting an immediate right to sue under implied covenants associated with unilateral contracts would eviscerate the longstanding prohibition on unilateral-contract anticipatory repudiation suits. Every contract is deemed to include the implied covenant, and virtually any repudiation or rendering impossible of future contractual obligations could be characterized by the disappointed promisee as "unreasonable" or not in "good faith." Thus, if Plaintiffs were correct, plaintiffs typically would have little difficulty recasting a precluded unilateral-contract anticipatory repudiation suit as an implied-covenant claim.

For example, a lawyer cannot instantly sue his co-counsel for disavowing a promise to share a contingency fee if a judgment is ever collected, but rather must wait to see if the judgment is collected and the promise is actually broken. *Glenn v. Fay*, 281 F. Supp. 3d 130, 138-41 (D.D.C. 2017). But under Plaintiffs' view of the law, that lawyer could plead that the repudiation was "arbitrary" and thereby seek to recover immediately for breach of the implied covenant. Yet it is well-established that an indemnitee cannot immediately sue an indemnitor who unreasonably advises he does "not intend to perform under [an] indemnity agreement," but rather must wait until the "sum becomes due" under the agreement. *Parker v. Moitzfield*, 733 F. Supp. 1023, 1025-26 (E.D. Va. 1990). If Plaintiffs were right, the indemnitee could always just bring an implied-covenant claim seeking the same relief—eviscerating the foregoing core contract principle. There is no reason to assume that Delaware and Virginia would allow a gap-filling mechanism designed for application only "rarely," "cautiously," and in "narrow circumstances," *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 252 F. Supp. 3d 537, 548 (E.D. Va. 2017), to upend longstanding common-law limitations on contract remedies in this way.

Plaintiffs do not dispute that *if* their implied-covenant claims are, in substance, claims for anticipatory repudiation tethered to future dividend and liquidation-preference rights, those claims are subject to the same analysis the Court applied to their breach-of-contract claims in its September 28 Opinion. Thus, for the reasons above and in Defendants' motion, the Court should reconsider its September 28 Opinion to the extent it denied dismissal of Plaintiffs' implied covenant claims, and should now dismiss those claims and the case with prejudice.[4]

---

[4] Plaintiffs complain in a footnote that Defendants first linked this bar to Plaintiffs' implied-covenant claims in their motion-to-dismiss reply brief. Opp. 8 n.4. However, Plaintiffs "undercut this concern by volunteering a response in the form of a surreply." *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 36 (D.D.C. 2010).

Dated:  November 19, 2018

Respectfully submitted,

/s/ Howard N. Cayne
Howard N. Cayne (D.C. Bar # 331306)
Asim Varma (D.C. Bar # 426364)
David B. Bergman (D.C. Bar # 435392)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave NW
Washington, D.C. 20001
(202) 942-5000
Howard.Cayne@arnoldporter.com
Asim.Varma@arnoldporter.com
David.Bergman@arnoldporter.com

*Attorneys for Defendant Federal Housing*
*Finance Agency and Director Melvin L. Watt*

s/ Michael J. Ciatti
Michael J. Ciatti  (D.C. Bar # 467177)
KING & SPALDING LLP
1700 Pennsylvania Ave. N.W.
Washington, DC 20006
Tel: (202) 626-5508
Fax: (202) 626-3737
mciatti@kslaw.com

*Attorney for the Federal Home Loan*
*Mortgage Corp.*

s/ Meaghan VerGow
Meaghan VerGow  (D.C. Bar # 977165)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
mvergow@omm.com

*Attorney for the Federal National Mortgage*
*Association*