**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FAIRHOLME FUNDS, INC., *et al*.,

        Plaintiffs,

    v.

FEDERAL HOUSING FINANCE AGENCY, *et al.*,

        Defendants.

Civil No. 13-1053 (RCL)

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFFS' AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES**

        Defendant Federal Housing Finance Agency ("FHFA"), Director Melvin L. Watt, the Federal National Mortgage Association ("Fannie Mae"), and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively, "Defendants"), by and through their undersigned counsel, hereby provide the following Answer and Affirmative Defenses to the Amended Complaint for Declaratory and Injunctive Relief and Damages, filed by Plaintiffs in the above-captioned action.

        1.      Defendants deny Paragraph 1.

        2.      Defendants deny Paragraph 2.

        3.      Answering Paragraph 3, Defendants state that the allegations of this paragraph constitute legal conclusions to which no response is required.  Defendants further state that the allegations of Paragraph 3 pertaining to Counts I, II, IV, V, and VI pertain to claims that were dismissed by this Court on September 30, 2014, which dismissal was affirmed by the D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and/or by this Court on September 28, 2018, and thus do not require a response.

4.      Answering Paragraph 4, Defendants state that the allegations of this paragraph constitute legal conclusions to which no response is required.

5.      Answering Paragraph 5, Defendants state they lack knowledge or information sufficient to form a belief regarding the allegations in the first, sixth, seventh, and eighth sentences of Paragraph 5 and therefore deny those allegations.  Defendants admit that Fannie Mae and Freddie Mac have issued preferred stock that provides for dividends if declared by the Board of Directors, in its sole discretion, and that such dividends are in preference to dividends on common stock.  Defendants further admit that Fannie Mae and Freddie Mac have issued preferred stock certificates of designation that provide for liquidation preferences under certain circumstances.  Defendants admit the fourth sentence of Paragraph 5.  Defendants deny all allegations of Paragraph 5 not specifically admitted herein.

6.      Answering Paragraph 6, Defendants state they lack knowledge or information sufficient to form a belief regarding the allegations of Paragraph 6 and therefore deny those allegations.

7.      Answering Paragraph 7, Defendants state they lack knowledge or information sufficient to form a belief regarding the allegations of Paragraph 7 and therefore deny those allegations.

8.      Answering Paragraph 8, Defendants state they lack knowledge or information sufficient to form a belief regarding the allegations of Paragraph 8 and therefore deny those allegations.

9.      Answering Paragraph 9, Defendants state they lack knowledge or information sufficient to form a belief regarding the allegations of Paragraph 9 and therefore deny those allegations.

10.     Answering Paragraph 10, Defendants state they lack knowledge or information sufficient to form a belief regarding the allegations of Paragraph 10 and therefore deny those allegations.

11.     Answering Paragraph 11, Defendants state they lack knowledge or information sufficient to form a belief regarding the allegations of Paragraph 11 and therefore deny those allegations.

12.     Answering Paragraph 12, Defendants state they lack knowledge or information sufficient to form a belief regarding the allegations of Paragraph 12 and therefore deny those allegations.

13.     Answering Paragraph 13, Defendants state they lack knowledge or information sufficient to form a belief regarding the allegations of Paragraph 13 and therefore deny those allegations.

14.     Answering Paragraph 14, Defendants state they lack knowledge or information sufficient to form a belief regarding the allegations of Paragraph 14 and therefore deny those allegations.

15.     Answering Paragraph 15, Defendants state they lack knowledge or information sufficient to form a belief regarding the allegations of Paragraph 15 and therefore deny those allegations.

16.     Answering Paragraph 16, Defendants state they lack knowledge or information sufficient to form a belief regarding the allegations in the first, second, and third sentences of Paragraph 16, as well as the allegations concerning Berkley Insurance Company's ownership of shares in the Companies, and therefore deny those allegations.  Defendants deny the remaining allegations of Paragraph 16.

17.     Answering Paragraph 17, Defendants admit that FHFA, when acting in its regulatory capacity, is an independent agency of the United States Government subject to the Administrative Procedure Act.   Defendants deny that FHFA, when acting within its statutory powers as Conservator, is an agency of the United States government subject to the APA. Defendants admit the second and third sentences of Paragraph 17 and further state that FHFA's current zip code is 20219.

18.     Answering Paragraph 18, Defendants state this paragraph pertains to a claim that was dismissed by this Court on September 30, 2014, which dismissal was affirmed by the D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and thus does not require a response.

19.     Answering Paragraph 19, Defendants admit that Fannie Mae is a federally chartered corporation with its principle executive offices located within the District of Columbia. Defendants deny the remaining allegations in Paragraph 19.

20.     Defendants admit Paragraph 20.

21.     Defendants admit Paragraph 21.

22.     Answering Paragraph 22, Defendants state that they lack knowledge or information sufficient to form a belief regarding whether all stockholders of the Companies (other than Treasury) are private, and therefore Defendants deny the first sentence of Paragraph 22.  Defendants admit the remaining allegations of Paragraph 22.

23.     Answering Paragraph 23, Defendants deny that Fannie Mae and Freddie Mac were "forced into conservatorship."  Defendants admit the remaining allegations of Paragraph 23.

24.     Answering Paragraph 24, Defendants state that they lack knowledge or

information sufficient to form a belief regarding the allegations in the second sentence of

Paragraph 24, and therefore deny those allegations.  Defendants deny all other allegations in

Paragraph 24.

25.     Answering Paragraph 25, Defendants admit that during the summer of 2008

Treasury Secretary Henry Paulson and then-OFHEO Director Lockhart made public statements

concerning Fannie Mae and Freddie Mac, and Defendants refer to those statements for their

contents.  Defendants admit that it was reported on July 8, 2008 that then-Director Lockhart

made the statement quoted in the second sentence of Paragraph 25, and Defendants refer to that

statement for its contents.  Defendants further admit that Secretary Paulson testified before the

House Financial Services Committee on July 10, 2008, and Defendants refer to the transcript of

that testimony for its contents.  Defendants further admit that Director Lockhart issued a

statement on July 13, 2008, and Defendants refer to that statement for its contents.  Defendants

further admit the existence of a BlackRock document dated August 25, 2008 concerning Freddie

Mac (entitled "Freddie Mac Confidential Capital Review - Preliminary Results"), and

Defendants refer to that document for its contents.  Defendants deny all allegations of Paragraph

25 not specifically admitted herein.

26.     Answering Paragraph 26, Defendants state that they lack knowledge or

information sufficient to form a belief regarding the allegations in Paragraph 26 and therefore

deny those allegations.

27.     Answering Paragraph 27, Defendants admit that Treasury publicly advocated for

legislation that ultimately became HERA, and that Congress enacted HERA in the summer of

2008.  Defendants further admit that FHFA succeeded to the regulatory authority over Fannie

Mae and Mac Freddie previously held by OFHEO, and that HERA authorized FHFA to place

Fannie Mae and Freddie Mac into conservatorship or receivership. Defendants refer to HERA for its contents. Defendants deny all allegations of Paragraph 27 not specifically admitted herein.

28.     Answering Paragraph 28, Defendants state that the allegations of Paragraph 28 constitute legal conclusions to which no response is required. Defendants admit that Congress enacted the FDIA and HERA, and Defendants refer to those statutes for their contents. Defendants further state that the third sentence of Paragraph 28 pertains to claims that were dismissed by this Court on September 30, 2014, which dismissal was affirmed by the D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and also by this Court's opinion on September 28, 2018, and thus does not require a response. To the extent any response is required, Defendants deny the third sentence of Paragraph 28,and deny all other allegations of Paragraph 28 not specifically admitted herein.

29.     Answering Paragraph 29, Defendants admit that FHFA issued a Report to Congress dated May 25, 2010, and a Strategic Plan dated February 21, 2012, and Defendants refer to those documents for their contents. Defendants further admit that Mr. Ugoletti gave deposition testimony, and Defendants refer to the transcript of that testimony for its contents. Defendants further admit the existence of documents that contain the portions of text quoted in the second textual sentence of Paragraph 29, and Defendants refer to those documents for their contents, but Defendants deny that those documents were jointly "prepared by FHFA and Treasury." Defendants deny all allegations of Paragraph 29 not specifically admitted herein.

30.     Answering Paragraph 30, Defendants state that allegations of Paragraph 30 constitute legal conclusions to which no response is required. To the extent a response is required, Defendants admit that then-Acting Director DeMarco sent a letter to Congress dated

February 2, 2010, Defendants refer to that letter for its contents, and Defendants otherwise deny Paragraph 30.

31.     Answering Paragraph 31, Defendants state that allegations of Paragraph 31 constitute legal conclusions to which no response is required.  To the extent any response is required, Defendants admit that FHFA promulgated a regulation appearing at 12 C.F.R. § 1237.3, and FHFA addressed that regulation in the Federal Register (76 Fed. Reg. at 35730), and Defendants refer to those documents for their contents.  Defendants further admit the existence of an FHFA document entitled "Federal Housing Finance Agency - ABS East," dated October 20, 2008 (FHFA00047705), and an FHFA document "Financial Crisis: Update on Housing Finance & Regulations," dated November 19, 2008 (FHFA00047675), and Defendants refer to those documents for their contents.

32.     Answering Paragraph 32, Defendants admit that the Companies' boards consented to conservatorship, and that FHFA was prepared to place the Companies in conservatorships, if necessary, absent the boards' consent.  Defendants deny the remaining allegations of Paragraph 32.

33.     Answering Paragraph 33, Defendants deny the first sentence of Paragraph 33. Defendants admit that FHFA issued a "Fact Sheet" on or around September 7, 2008, and Defendants refer to that document for its contents.  Defendants further admit that then-Director Lockhart testified before Congress on September 25, 2008, and Defendants refer to the transcript of that testimony for its contents.

34.     Answering Paragraph 34, Defendants admit that FHFA issued a "Fact Sheet" on or around September 7, 2008, and Defendants refer to that document for its contents.  Defendants further state that the allegations in the second sentence of Paragraph 34 constitute legal

conclusions to which no response is required.

35.     Defendants deny Paragraph 35.

36.     Answering Paragraph 36, Defendants admit the first sentence of Paragraph 36. The remaining allegations of Paragraph 36 constitute characterizations of the PSPAs to which no response is required.  To the extent any response is required, Defendants refer to the PSPAs for their contents.

37.     Answering Paragraph 37, Defendants state that the first sentence of Paragraph 37 purports to characterize the Third Amendment, and Defendants refer to that amendment for its contents.  Defendants deny the second sentence of Paragraph 37.

38.     Answering Paragraph 38, Defendants admit that Treasury and FHFA as Conservator executed the PSPAs, and refer to the PSPAs for their contents.  Defendants further admit the existence of an Action Memorandum for Secretary Paulson dated September 7, 2008, and Defendants refer to that document for its contents.

39.     Answering Paragraph 39, Defendants admit that Treasury and FHFA as Conservator executed the PSPAs, and refer to the PSPAs for their contents.

40.     Answering Paragraph 40, Defendants state that the allegations of Paragraph 40 constitute legal conclusions to which no response is required.  To the extent any response is required, Defendants admit that, pursuant to the PSPAs, Treasury purchased senior preferred stock from Fannie Mae and Freddie Mac (referred to herein as the "senior preferred stock"), and Defendants refer to the PSPAs and senior preferred stock certificates of designation for their contents.  Defendants deny all allegations of Paragraph 40 not specifically admitted herein.

41.     Answering Paragraph 41, Defendants deny the first sentence of Paragraph 41. Defendants admit the existence of a document attached to a September 16, 2008 e-mail between

FHFA officials that contains the words "paid in-kind," and Defendants refer to that document for its contents.  Defendants further admit the existence of an FHFA document that includes the phrase quoted in the third sentence of Paragraph 41, and Defendants refer to that document for its contents.  Defendants admit the fourth sentence of Paragraph 41.  Defendants state that they lack knowledge or information sufficient to form a belief regarding the allegations in the fifth sentence of Paragraph 41, and therefore deny those allegations.  Defendants admit that Mr. Ugoletti sent an e-mail on August 17, 2012, that included the words "in kind," and Defendants refer to that document for its contents.  Defendants deny all allegations of Paragraph 41 not specifically admitted herein.

42.     Answering Paragraph 42, Defendants state that they lack knowledge or information sufficient to form a belief regarding the allegations in the first sentence (which begins with "Treasury likewise understood…") and sixth sentence (which begins with "And in 2012...") of Paragraph 42, and therefore deny those allegations.  Defendants admit that Treasury issued a fact sheet dated September 7, 2008, and Defendants refer to that document for its contents.  Defendants further admit the existence of an October 2008 e-mail from a Grant Thornton employee to Treasury and FHFA officials that includes the text quoted in the fourth sentence of Paragraph 42 (which begins with "In an October 2008 e-mail..."), and Defendants refer to that document for its contents.  Defendants admit the fifth sentence of Paragraph 42 (which begins with "An internal Treasury document says...").  Defendants further admit the existence of a Treasury presentation to the SEC dated June 13, 2012, and Defendants refer to that document for its contents.  Defendants deny all allegations of Paragraph 42 not specifically admitted herein.

43.     Answering Paragraph 43, Defendants admit that certain employees of the

Companies understood that, under the senior preferred stock certificates of designation, the Companies would accrue a 12% dividend in the event the Companies failed to pay the 10% dividend in cash.  Defendants admit that the Fannie Mae's former CFO Susan McFarland and Freddie Mac's former CFO Ross Kari have given deposition testimony, and Defendants refer to the transcripts of their testimony for their contents.  Defendants further admit the existence of documents that contain the text quoted in the third and fourth sentences of Paragraph 43, and Defendants refer to those documents for their contents.

44.     Answering Paragraph 44, Defendants state that the allegations in the first sentence and third sentence (which starts with "In other words...") of Paragraph 44 constitute legal conclusions to which no response is required.  Defendants further state that certain allegations in Paragraph 44 purport to characterize the PSPAs, and Defendants refer to the PSPAs for their contents.  Defendants admit the existence of a Congressional Research Service document dated August 10, 2012, and Defendants refer to that document for its contents.  Defendants deny all allegations of Paragraph 44 not specifically admitted herein.

45.     Answering Paragraph 45, Defendants admit that the PSPAs contain the text quoted in the first sentence of Paragraph 45, and Defendants refer to the PSPAs for their contents.  Defendants further state that the manner in which the Periodic Commitment Fee is to be set is described in the PSPAs, and Defendants refer to the PSPAs for their contents. Defendants admit that Treasury waived the Periodic Commitment Fee on multiple occasions, but Defendants state that they lack knowledge or information sufficient to form a belief regarding the remaining allegations of the third sentence of Paragraph 45 and therefore deny those allegations. Defendants further state that the allegations in the fourth sentence of Paragraph 45 contain legal conclusions to which no response is required, and also contain allegations for which Defendants

lack knowledge or information sufficient to form a belief and therefore deny.  Defendants admit

Section 3.2(c) of the PSPAs addresses the Periodic Commitment Fee and Defendants refer to the

PSPAs for their contents.  Defendants deny all allegations of Paragraph 45 not specifically

admitted herein.

46.    Answering Paragraph 46, Defendants admit the existence of an Action

Memorandum for Secretary Paulson dated September 7, 2008, and Defendants refer to that

document for its contents.  Defendants further state that the allegations of the second and third

sentences of Paragraph 46 purport to characterize the PSPAs and senior preferred stock

certificate of designation, and Defendants refer to those documents for their contents.

Defendants deny all allegations of Paragraph 46 not specifically admitted herein.

47.    Defendants admit that FHFA as Conservator and Treasury amended the PSPAs on

May 6, 2009, and December 24, 2009, and Defendants refer to those documents for their

contents.  Defendants deny all allegations of Paragraph 47 not specifically admitted herein.

48.    Defendants deny Paragraph 48.

49.    Answering Paragraph 49, Defendants admit that the Companies recorded in their

respective consolidated balance sheets deferred tax asset valuation allowances after the

appointment of the Conservator, which caused a reduction in the Companies' net worth.

Defendants further admit the second, third, and fourth sentences of Paragraph 49.  Defendants

deny the remaining allegations of Paragraph 49.

50.    Answering Paragraph 50, Defendants admit the second sentence of Paragraph 50.

Defendants lack knowledge or information sufficient to form a belief regarding the accuracy of

the chart included in Paragraph 50 and therefore deny the fourth sentence of Paragraph 50.

Defendants deny the fifth sentence of Paragraph 50 and deny all allegations of Paragraph 50 not

specifically admitted herein.

51.     Answering Paragraph 51, Defendants state that they lack knowledge or information sufficient to form a belief regarding the allegations in Paragraph 51, and therefore deny those allegations.

52.     Answering Paragraph 52, Defendants deny the first sentence of Paragraph 52. Defendants admit the existence of an e-mail exchange between FHFA officials in June 2011 that contains the language quoted in the second sentence of Paragraph 52 (FHFA00081220), and Defendants refer to that document for its contents.  Defendants further admit the existence of November 2011 document from Grant Thornton that contains the text quoted in the last sentence of Paragraph 52, and Defendants refer to that document for its contents.  Defendants deny all allegations of Paragraph 52 not specifically admitted herein.

53.     Answering Paragraph 53, Defendants state that they lack knowledge or information sufficient to form a belief about the allegations of the third and fourth sentences of Paragraph 53 (which start with "Approximately $26 billion..." and "(In other words..."), and therefore deny those allegations.  Defendants state that the allegations in the fifth sentence of Paragraph 53 (which starts with "Had the dividends...") constitute legal conclusions to which no response is required.  Defendants deny all remaining allegations of Paragraph 53.

54.     Answering Paragraph 54, Defendants deny the first sentence of Paragraph 54 and admit the second sentence of Paragraph 54.  Defendants admit that FHFA periodically publishes a House Price Index and Defendants refer to those indices for their contents.  Defendants admit that FHFA's Monthly House Price Index for U.S. (Purchase-Only, Seasonally Adjusted Index) reached its lowest point (between 2006 and the present) in or around 2011.

55.     Answering Paragraph 55, Defendants admit that, in and around 2012,

underwriting standards at the Companies were stricter than they had been at certain times in the past.  Defendants admit that loans originated after 2008, excluding relief refinance loans, generally had lower delinquency rates than loans originated in or around 2005 to 2008. Defendants admit the existence of an e-mail from a Treasury official containing the text quoted in the third sentence of Paragraph 55 and Defendants refer to that document for its contents. Defendants further admit the existence of a Treasury document that contains the text quoted in the fourth sentence of Paragraph 55 and Defendants refer to that document for its contents. Defendants deny all allegations of Paragraph 55 not specifically admitted herein.

56.     Answering Paragraph 56, Defendants deny the first sentence of Paragraph 56. Defendants admit the existence of a presentation in Treasury's possession that contains the text quoted in the second sentence of Paragraph 56, and Defendants refer to that document for its contents.  Defendants admit that Fannie Mae's and Freddie Mac's financial performance generally improved from the first quarter of 2012 to the second quarter of 2012.  Defendants admit that an e-mail was circulated among FHFA officials that contained the text quoted in the fourth sentence of Paragraph 56, and Defendants refer to that document for its contents. Defendants admit the existence of a report that was sent to certain FHFA officials that contained the text quoted in the fifth sentence of Paragraph 56, and Defendants refer to that document for its contents.  Defendants admit that Treasury officials wrote e-mails containing the text quoted in the sixth and seventh sentences of Paragraph 56, and Defendants refer to those documents for their contents.  Defendants deny all allegations of Paragraph 56 not specifically admitted herein.

57.     Answering Paragraph 57, Defendants admit the first sentence of Paragraph 57. Defendants further admit that Fannie Mae created a presentation for the August 9, 2012 meeting that included a page entitled "Annual Detail of Cumulative Dividends and SPSA Draws," and

Defendants refer to that presentation for its contents.  Defendants deny the third sentence of Paragraph 57.  Defendants deny all allegations of Paragraph 57 not specifically admitted herein.

58.     Answering Paragraph 58, Defendants admit that Fannie Mae and Freddie Mac have generated profits in certain quarters since 2012 and Defendants refer to Fannie Mae and Freddie Mac's SEC filings for a description of their respective earnings.  Defendants deny the second sentence of Paragraph 58.  Defendants admit that, for the first two quarters of 2012, Fannie Mae reported total net income of $7.8 billion, and Freddie Mac reported total net income of $3.6 billion.

59.     Defendants deny Paragraph 59.

60.     Answering Paragraph 60, Defendants lack knowledge or information sufficient to form a belief about Treasury's "awareness" regarding loan loss reserves and therefore deny the first sentence.  Defendants admit that, in general, the Companies' loan loss reserves exceeded their actual losses.  Defendants further admit that, in general, loan loss reserves reduce net worth and their reversal increases net worth.  Defendants admit the existence of a Fannie Mae presentation to FHFA that contains the text quoted in the third sentence of Paragraph 60, and Defendants refer to that document for its contents.  Defendants admit the existence of a May 2012 Freddie Mac loan loss presentation shared with FHFA officials that contains the text quoted in the fourth sentence of Paragraph 60, and Defendants refer to that document for its contents.  Defendants admit the existence of an e-mail from a Treasury official that contains the text quoted the fifth sentence of Paragraph 60, and Defendants refer to that document for its contents.  Defendants admit the existence of a July 2012 FHFA presentation on the Companies' financial performance, which may be the document referenced in the sixth sentence of Paragraph 60, and Defendants refer to that document for its contents.  Defendants admit the existence of a Treasury

document that contains the text quoted in the seventh sentence of Paragraph 60, and Defendants refer to that document for its contents.  Defendants deny all allegations of Paragraph 60 not specifically admitted herein.

61.     Answering Paragraph 61, Defendants deny the first sentence of Paragraph 61. Defendants admit the second sentence of Paragraph 61.  Defendants further admit that by mid-2012 Fannie Mae and Freddie Mac's combined deferred tax asset valuation allowances were approximately $90 to $100 billion.  Defendants deny the fourth sentence of Paragraph 61, and Defendants deny all allegations of Paragraph 61 not specifically admitted herein.

62.     Answering Paragraph 62, Defendants deny the first sentence of Paragraph 62. Defendants admit that, on July 13, 2012, Bradford Martin sent a document containing financial projections to other FHFA officials, and Defendants refer to that document for its contents. Defendants deny all allegations of Paragraph 62 not specifically admitted herein.

63.     Answering Paragraph 63, Defendants admit that, on July 13, 2012, Bradford Martin sent a document containing financial projections to other FHFA officials, and Defendants refer to that document for its contents.  Defendants further admit that Susan McFarland gave deposition testimony and Defendants refer to the transcript of that testimony for its contents. Defendants further admit the fifth sentence of Paragraph 63.  Defendants deny all allegations of Paragraph 63 not specifically admitted herein.

64.     Answering Paragraph 64, Defendants lack knowledge or information sufficient to form a belief regarding the allegations in the first sentence of Paragraph 64, and therefore deny those allegations.  Defendants admit the existence of a May 2012 meeting agenda that includes the text quoted in the second sentence of Paragraph 64, and Defendants refer to that document for its contents.  Defendants admit the existence of a Grant Thornton document (GT005322) that

contains handwritten text, and Defendants refer to that document for its contents.  Defendants further state that they lack knowledge or information sufficient to form a belief regarding the allegations in the fourth, fifth, and sixth sentences of Paragraph 64, and therefore deny those allegations.  Defendants deny all allegations of Paragraph 64 not specifically admitted herein.

65.     Answering Paragraph 65, Defendants lack knowledge or information sufficient to form a belief regarding the allegations in the first, second, and fifth sentences of Paragraph 65, and therefore deny those allegations.  Defendants admit that Susan McFarland gave deposition testimony that described an August 9, 2012 meeting with Treasury, and Defendants refer to that deposition transcript for its contents.  Defendants deny all allegations of Paragraph 65 not specifically admitted herein.

66.     Answering Paragraph 66, Defendants admit that FHFA as Conservator brought several suits alleging securities law violations and fraud in connection with the sale of private-label securities to Fannie and Freddie.  Defendants admit the second sentence of Paragraph 66.  Defendants deny the third sentence of Paragraph 66, and deny all other allegations of Paragraph 66 not specifically admitted herein.

67.     Answering Paragraph 67, Defendants admit that FHFA as Conservator and Treasury executed the Third Amendment on August 17, 2012, and Defendants refer to that amendment for its contents.  Defendants further state that, on December 21, 2017, the Conservator and Treasury agreed to reinstate a $3 billion capital reserve amount under the PSPAs for each Enterprise beginning in the fourth quarter of 2017.  Defendants deny all allegations of Paragraph 67 not specifically admitted herein.

68.     Answering Paragraph 68, Defendants admit the existence of a Treasury memo dated June 25, 2012 that purports to describe a meeting between then-Secretary Geithner and

then-Acting Director DeMarco and contains the text quoted in Paragraph 68, and Defendants refer to that memo for its contents.  Defendants deny all remaining allegations of Paragraph 68.

69.     Answering Paragraph 69, Defendants deny the first sentence of Paragraph 69. Defendants lack knowledge or information sufficient to form a belief as to the identity of the documents referenced in the second sentence of Paragraph 69, and therefore Defendants deny the allegations in that sentence.  Defendants admit the existence of Treasury documents that contain the text quoted in the third and fourth sentences of Paragraph 69, and Defendants refer to those documents for their contents.  Defendants further admit the existence of a July 20, 2012 e-mail from a Treasury official that contains the text quoted in the fifth sentence of Paragraph 69, and Defendants refer to that documents for its contents.  Defendants deny all allegations of Paragraph 69 not specifically admitted herein.

70.     Answering Paragraph 70, Defendants lack knowledge or information sufficient to form a belief regarding the first three sentences of Paragraph 70.  Defendants admit that FHFA has publicly stated that Congress will determine the future of Fannie Mae and Freddie Mac and the housing finance market.  Defendants admit the existence of Treasury documents containing the text quoted in the fourth, fifth, and sixth sentences of Paragraph 70, and refer to those documents for their contents.  Defendants further admit the existence of an email from an FHFA official dated August 9, 2012 that contains the text quoted in the seventh sentence of Paragraph 70, and Defendants refer to that document for its contents.  Defendants deny all allegations of Paragraph 70 not specifically admitted herein.

71.     Answering Paragraph 71, Defendants deny the first sentence of Paragraph 71. Defendants lack knowledge or information sufficient to form a belief regarding the allegations of the second sentence of Paragraph 71, and therefore deny those allegations.  Defendants admit the

existence of an e-mail from Mr. Parrott to Treasury officials containing the text quoted in the third sentence of Paragraph 71, and Defendants refer to that e-mail for its contents.  Defendants deny the fourth sentence of Paragraph 71.

72.     Answering Paragraph 72, Defendants deny the first sentence of Paragraph 72. Defendants admit the existence of an e-mail from Mr. Parrott to Alex Pollock, Peter Wallison, and Edward Pinto containing the text quoted in the second sentence of Paragraph 72, and Defendants refer to that document for its contents.  Defendants admit the existence of a 2011 policy paper authored by Wallison, Pollock, and Pitino, and Defendants refer to that document for its contents.  Defendants further admit the existence of a Huffington Post article dated August 23, 2012 purporting to quote a statement attributed to Peter Wallison by a Bloomberg article, and Defendants refer to that document for its contents.  Defendants further admit the existence of an e-mail from Mr. Parrott that contains the text quoted in the last sentence of Paragraph 72, and Defendants refer to that document for its contents.  Defendants deny all allegations of Paragraph 72 not specifically admitted herein.

73.     Answering Paragraph 73, Defendants admit the existence of an e-mail from Mr. Parrott that contains the text quoted in Paragraph 73, and Defendants refer to that document for its contents.  Defendants deny all allegations of Paragraph 73 not specifically admitted herein.

74.     Answering Paragraph 74, Defendants admit the existence of an e-mail from Mr. Parrott containing the text quoted in Paragraph 74, and Defendants refer to that document for its contents.  Defendants deny all allegations of Paragraph 74 not specifically admitted herein.

75.     Answering Paragraph 75, Defendants deny the first sentence of Paragraph 75. Defendants admit that Ms. McFarland gave deposition testimony, and Defendants refer to the transcript of that testimony for its contents.  Defendants further admit the existence of an e-mail

from Mr. Ugoletti dated August 17, 2012 that contains the text quoted in the last sentence of Paragraph 75, and Defendants refer to that document for its contents. Defendants deny all allegations of Paragraph 75 not specifically denied herein.

76.     Answering Paragraph 76, Defendants admit that Treasury issued a press release on August 17, 2012 that contains the text quoted in the first sentence of Paragraph 76, and Defendants refer to that document for its contents. Defendants deny the second textual sentence of Paragraph 76. Defendants admit that Mr. Ugoletti gave deposition testimony, and Defendants refer to the transcript of that testimony for its contents. Defendants deny all allegations of Paragraph 76 not specifically admitted herein.

77.     Answering Paragraph 77, Defendants admit the existence of a draft document prepared by Treasury that contains the text quoted in the last sentence of Paragraph 77, and refer to that document for its contents. Defendants deny all remaining allegations of Paragraph 77.

78.     Answering Paragraph 78, Defendants deny the first sentence of Paragraph 78. Defendants further state that the allegations of the second and third sentences of Paragraph 78 purport to characterize the PSPAs and senior preferred stock certificates of designation, and Defendants refer to those documents (including the December 2017 letter agreement) for their contents.

79.     Answering Paragraph 79, Defendants deny the first sentence of Paragraph 79. Defendants admit that former Director DeMarco gave deposition testimony in which he answered questions about the GSEs' cost of borrowing, and Defendants refer to the transcript of that deposition for its contents.

80.     Answering Paragraph 80, Defendants deny the first sentence of Paragraph 80. Defendants further state that they lack knowledge or information sufficient to form a belief

regarding the allegations in the second sentence of Paragraph 80 and therefore deny those allegations.  Defendants further admit that, under the Third Amendment, the Companies pay a quarterly dividend to Treasury based on the Companies' net worth, minus a capital buffer established in December 2017.  Defendants further admit that Director Watt made statements that contain the text quoted in the fifth sentence of Paragraph 80 (before the establishment of the capital buffer in December 2017), and Defendants refer to those statements for their contents.

81.     Answering Paragraph 81, Defendants state that they lack knowledge or information sufficient to form a belief regarding the allegations of Paragraph 81, and therefore deny those allegations.

82.     Answering Paragraph 82, Defendants deny the first sentence of Paragraph 82. Defendants admit that Director DeMarco gave deposition testimony in this case that included the text quoted in the second sentence of Paragraph 82, and Defendants refer to the transcript of that deposition for its contents.  Defendants deny all allegations of Paragraph 82 not specifically admitted herein.

83.     Answering Paragraph 83, Defendants state that the first sentence of Paragraph 83 purports to characterize the Third Amendment and PSPAs, and Defendants refer to those documents for their contents.  Defendants admit that Treasury waived the periodic commitment fee before the Third Amendment, and that the manner in which the amount of the Periodic Commitment Fee was to be set is described in the PSPAs, to which Defendants refer for their contents.  Defendants deny the third sentence of Paragraph 83.  Defendants admit the existence of a Freddie Mac presentation that contains the text quoted in the fourth sentence of Paragraph 83, and Defendants refer to that document for its contents.  Defendants deny the fifth sentence of Paragraph 83.  Defendants lack knowledge or information sufficient to form a belief regarding

the allegations of the sixth sentence of Paragraph 83 because Defendants lack knowledge or information regarding what Plaintiffs mean by the "early draft of the PSPAs" referred to in this sentence.  Defendants thus deny the sixth sentence of Paragraph 83.  Defendants deny all allegations of Paragraph 83 not specifically admitted herein.

84.     Answering Paragraph 84, Defendants refer to the PSPAs for their contents, and otherwise deny the remaining allegations of Paragraph 84.

85.     The Complaint skips Paragraph 85 and contains no allegations designated as Paragraph 85.  Therefore no response is required.

86.     Answering Paragraph 86, Defendants deny the first sentence of Paragraph 86. Defendants lack knowledge or information sufficient to form a belief regarding the allegations in the second sentence of Paragraph 86, and therefore deny those allegations.  Defendants admit that Mr. Parrott gave deposition testimony, and Defendants refer to the transcript of that testimony for its contents.  Defendants admit the fourth sentence of Paragraph 86.  Defendants lack knowledge or information sufficient to form a belief regarding the allegations in the fifth sentence of Paragraph 86, and therefore deny those allegations.  Defendants admit the existence of the Proposed Findings of Fact cited in Paragraph 86, and Defendants refer to that document for its contents.  Defendants deny all allegations of Paragraph 86 not specifically admitted herein.

87.     Answering Paragraph 87, Defendants admit that, in light of its historic commitment of funds to the Companies, Treasury bargained for and received significant rights under the PSPAs, which have been in place since the beginning of the conservatorship. Defendants otherwise deny the first sentence of Paragraph 87.  Defendants admit the existence of a Deloitte & Touche document that contains the text quoted in the second sentence of Paragraph

87, and Defendants refer to that document for its contents.  Defendants further admit the existence of Henry Paulson's book entitled "On the Brink," and Defendants refer to that book for its contents.  Defendants admit that Deborah Lucas provided testimony to a Congressional committee on or around June 2, 2011, and Defendants refer to the transcript of that testimony for its contents.  Defendants lack knowledge or information sufficient to form a belief regarding the allegations in the last sentence of Paragraph 87, and therefore deny those allegations.  Defendants deny all allegations of Paragraph 87 not specifically admitted herein.

88.      Answering Paragraph 88, Defendants lack knowledge or information sufficient to form a belief regarding the first, second, and third sentences of Paragraph 88, and therefore deny those allegations.  Defendants admit the existence of a Treasury document that contains the text quoted in the second sentence of Paragraph 88, and Defendants refer that document for its contents.  Defendants deny the fourth sentence of Paragraph 88, and deny all allegations of Paragraph 88 not specifically admitted herein.

89.      Answering Paragraph 89, Defendants state that this paragraph pertains to claims that were dismissed by this Court on September 30, 2014, which dismissal was affirmed by the D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and thus does not require a response.  To the extent any response is required, Defendants state that the allegations in the first sentence of Paragraph 89 constitute legal conclusions to which no response is required.  Defendants further state that the second sentence purports to quote from HERA, and Defendants refer to HERA for its contents.  Defendants admit that certain Treasury officials gave deposition testimony concerning the Third Amendment, and Defendants refer to the transcripts of that testimony for their contents.  Defendants deny all allegations of Paragraph 89 not specifically admitted herein.

90.     Answering Paragraph 90, Defendants state that this paragraph pertains to claims that were dismissed by this Court on September 30, 2014, which dismissal was affirmed by the D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and thus does not require a response.  Defendants further state that the allegations in the first sentence of Paragraph 90 constitute legal conclusions to which no response is required.  To the extent any response is required, Defendants deny the first sentence of Paragraph 90.  Defendants admit that former Acting Director DeMarco and Mario Ugoletti gave deposition testimony concerning the Third Amendment, and Defendants refer to the transcripts of those depositions for their contents. Defendants further state that the allegations in the fourth sentence of Paragraph 90 constitute legal conclusions to which no response is required.  To the extent any response is required, Defendants deny the fourth sentence of Paragraph 90.  Defendants deny the fifth sentence of Paragraph 90.  Defendants admit the existence of the February 2, 2010 letter from then-Acting Director DeMarco, and Defendants refer to that document for its contents.  Defendants deny all allegations of Paragraph 90 not specifically admitted herein.

91.     Answering Paragraph 91, Defendants state that this paragraph pertains to claims that were dismissed by this Court on September 30, 2014, which dismissal was affirmed by the D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and thus does not require a response.  Defendants further state that the allegations in the first sentence of Paragraph 91 constitute legal conclusions to which no response is required.  To the extent any response is required, Defendants deny the first sentence of Paragraph 91.  Defendants admit that Treasury issued a press release on August 17, 2012 that contains the text quoted in the second and third sentences of Paragraph 91, and Defendants refer to that document for its contents.  Defendants deny all allegations of Paragraph 91 not specifically admitted herein.

92.     Answering Paragraph 92, Defendants state that this paragraph pertains to claims that were dismissed by this Court on September 30, 2014, which dismissal was affirmed by the D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and thus does not require a response.  To the extent any response is required, Defendants state they lack knowledge or information sufficient to form a belief regarding the allegations in the first through fourth sentences of Paragraph 92, and therefore deny those allegations.  Defendants admit the existence of an Action Memorandum for Secretary Geithner dated December 20, 2010, and Defendants refer to that document for its contents.  Defendants admit the existence of an Information Memorandum for Secretary Geithner dated January 4, 2011, and Defendants refer to that document for its contents.  Defendants deny the fifth sentence of Paragraph 92.

93.     Answering Paragraph 93, Defendants state that this paragraph pertains to claims that were dismissed by this Court on September 30, 2014, which dismissal was affirmed by the D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and thus does not require a response.  To the extent any response is required, Defendants admit that then Acting Director DeMarco testified before a Senate Committee on April 18, 2013, and Defendants refer to the transcript of that testimony for its contents.  Defendants further admit that FHFA provided a 2012 report to Congress, and Defendants refer to that document for its contents.  Defendants state that the allegations of the fourth textual sentence of Paragraph 93 constitute legal conclusions that do not require a response.  To the extent any response is required, Defendants deny the fourth textual sentence of Paragraph 93.

94.     Answering Paragraph 94, Defendants deny the allegations in the first and second sentences of Paragraph 94.  Defendants admit the existence of FHFA's Strategic Plan dated February 21, 2012, and Defendants refer to that document for its contents.  Defendants state that

the other allegations of the third sentence of Paragraph 94 constitute legal conclusions to which no response is required.  Defendants further admit that it was reported by the Wall Street Journal that Director Watt made the statements quoted in the last sentence of Paragraph 94.  Defendants deny all allegations of Paragraph 94 not specifically admitted herein.

95.      Answering Paragraph 95, Defendants admit that Fannie Mae publicly stated in its 2014 Form 10-K that its board of directors is "not obligated to consider the interests of the company, [or] the holders of our equity or debt securities . . . unless specifically directed to do so by the conservator."  Defendants further admit that it was reported by Forbes that Timothy Mayopoulos made the statements quoted in the second sentence of Paragraph 95, and Defendants refer to the Forbes report for its contents.  Defendants deny all allegations of Paragraph 94 not specifically admitted herein.

96.      Answering Paragraph 96 Defendants state they lack knowledge or information sufficient to form a belief regarding the allegations in the first sentence of Paragraph 96 and therefore deny those allegations.  Defendants deny the second sentence of Paragraph 96.

97.      Answering Paragraph 97, Defendants admit the first sentence of Paragraph 97. Defendants further admit that a declaration of Mario Ugoletti was part of the Document Compilation, and Defendants refer to that document for its contents.  Defendants deny the fifth textual sentence of Paragraph 97 (which starts with "This statement—").  Defendants admit that e-mails among FHFA officials before the execution of the Third Amendment were produced in the CFC, and Defendants refer to those documents for their contents.  Defendants further admit that Ms. McFarland and Mr. Ugoletti gave deposition testimony, and Defendants refer to the transcripts of those depositions for their contents.

98.      Answering Paragraph 98, Defendants admit the existence of the Ugoletti

declaration, and Defendants refer to that declaration for its contents.  Defendants further admit

the existence of a Treasury document that contains the text quoted in the second sentence of

Paragraph 98, and Defendants refer to that document for its contents.  Defendants admit that that

Treasury memorandum was not included in FHFA's Document Compilation.  Defendants deny

all allegations of Paragraph 98 not specifically admitted herein.

99.     Answering Paragraph 99, Defendants admit the existence of the Ugoletti

declaration, and Defendants refer to that declaration for its contents.  Defendants further admit

that Mr. Ugoletti and Mr. DeMarco gave deposition testimony, and Defendants refer to the

transcripts of those depositions for their contents.

100.    Answering Paragraph 100, Defendants lack knowledge or information sufficient

to form a belief regarding the allegations of the first sentence of Paragraph 100, and therefore

deny those allegations.  Defendants admit the second sentence of Paragraph 100.  Defendants

admit that Treasury submitted an administrative record, and Defendants refer to that record for

its contents.

101.    Answering Paragraph 101, Defendants admit that Treasury submitted an

administrative record, and Defendants refer to that record for its contents.  Defendants lack

knowledge or information sufficient to form a belief regarding the remaining allegations in

Paragraph 101 and therefore deny those allegations.

102.    Answering Paragraph 102, Defendants deny the first sentence of Paragraph 102.

Defendants admit that Jeff Foster gave deposition testimony, and Defendants refer to the

transcript of that deposition for its contents.  Defendants lack knowledge or information

sufficient to form a belief regarding the allegations in the third sentence of Paragraph 102

because Defendants are unable to identify the "notes" referred to in this sentence, and

Defendants therefore deny those allegations.  Defendants admit the existence of an e-mail to Mr. Ugoletti that contains the text quoted in the fourth sentence of Paragraph 102, and Defendants refer to that document for its contents.  Defendants admit the existence of an internal Treasury document that contains the text quoted in the fifth sentence of Paragraph 102, and Defendants refer to that document for its contents.  Defendants admit the existence of draft Treasury documents that contain the text quoted in the sixth and seventh sentences of Paragraph 102, and Defendants refer to those documents for their contents.  Defendants deny all allegations of Paragraph 102 not specifically admitted herein.

103.    Answering Paragraph 103, Defendants deny the first sentence of Paragraph 103. Defendants admit that the table included in Paragraph 103 accurately lists the approximate amount of dividends Fannie Mae and Freddie Mac paid from January 1, 2013 through the second quarter of 2017.  Answering Footnote 1, Defendants admit that the row for 2017 in the table included in Paragraph 103 accurately lists the dividends Fannie Mae and Freddie Mac paid for the first two quarters of 2017.  Defendants deny the remainder of Footnote 1.

104.    Answering Paragraph 104, Defendants admit that the Companies have paid Treasury over $215 billion (combined) in dividends under the Third Amendment.  Defendants state that the second and third sentences of Paragraph 104 and the chart included in Paragraph 104 contain hypothetical facts to which no response is required.  Defendants deny all allegations of Paragraph 104 not specifically admitted herein.

105.    Defendants deny Paragraph 105.

106.    Answering Paragraph 106, Defendants admit that Fannie Mae's 2013 net income included the release of Fannie Mae's deferred tax assets valuation allowance.  Defendants otherwise lack knowledge or information sufficient to form a belief regarding the remaining

allegations of Paragraph 106 pertaining to Treasury, and therefore deny those allegations. Defendants admit that the release of Fannie's valuation allowance indicated a belief that it was more likely than not that Fannie Mae would generate taxable income going forward. Defendants admit the third sentence of Paragraph 106. Defendants deny all allegations of Paragraph 106 not specifically admitted herein.

107.     Defendants deny Paragraph 107.

108.     Answering Paragraph 108, Defendants admit the second sentence of Paragraph 108. Defendants admit that no dividends were declared by Fannie Mae and Freddie Mac for payment to holders of preferred stock junior to the senior preferred stock held by Treasury. Defendants state that the third and fourth sentences of Paragraph 108 contain hypothetical facts to which no response is required. Defendants deny all allegations of Paragraph 108 not specifically admitted herein.

109.     Answering Paragraph 109, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 28, 2018, and thus does not require a response. To the extent any response is required, Defendants deny Paragraph 109.

110.     Answering Paragraph 110, Defendants incorporate by reference the responses of all preceding paragraphs.

111.     Answering Paragraph 111, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 30, 2014, which dismissal was affirmed by the D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and thus does not require a response.

112.     Answering Paragraph 112, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 30, 2014, which dismissal was affirmed by the

D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and thus does not require a response.

113.   Answering Paragraph 113, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 30, 2014, which dismissal was affirmed by the D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and thus does not require a response.

114.   Answering Paragraph 114, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 30, 2014, which dismissal was affirmed by the D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and thus does not require a response.

115.   Answering Paragraph 115, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 30, 2014, which dismissal was affirmed by the D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and thus does not require a response.

116.   Answering Paragraph 116, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 30, 2014, which dismissal was affirmed by the D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and thus does not require a response.

117.   Answering Paragraph 117, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 30, 2014, which dismissal was affirmed by the D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and thus does not require a response.

118.   Answering Paragraph 118, Defendants incorporate by reference the responses of

all preceding paragraphs.

119.    Answering Paragraph 119, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 28, 2018, and thus does not require a response.

120.    Answering Paragraph 120, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 28, 2018, and thus does not require a response.

121.    Answering Paragraph 121, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 28, 2018, and thus does not require a response.

122.    Answering Paragraph 122, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 28, 2018, and thus does not require a response.

123.    Answering Paragraph 123, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 28, 2018, and thus does not require a response.

124.    Answering Paragraph 124, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 28, 2018, and thus does not require a response.

125.    Answering Paragraph 125, Defendants incorporate by reference the responses of all preceding paragraphs.

126.    Answering Paragraph 126, Defendants state that the allegations of this paragraph constitute legal conclusions to which no response is required.

127.    Answering Paragraph 127, Defendants state that the allegations of this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants admit the first sentence of Paragraph 126 and further state that the Conservator has succeeded to all rights of the stockholders of Fannie Mae and Freddie Mac.  To the extent a response is required, Defendants also admit that Plaintiffs' preferred stock certificates of designation generally provide for dividends "if declared by the Board of Directors,

in its sole discretion," and provide for liquidation preferences under certain circumstances.

128.    Answering Paragraph 128, Defendants state that the allegations of this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the first and third sentences of Paragraph 128, admit that the Third Amendment (among other things) replaced a fixed 10% dividend with a variable dividend based on net worth, and Defendants refer to the Third Amendment for its contents.  Defendants otherwise deny all allegations of Paragraph 128 not specifically admitted herein.

129.    Answering Paragraph 129, Defendants state that the allegations of this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny Paragraph 129.

130.    Answering Paragraph 130, Defendants state that the allegations of this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny Paragraph 130.

131.    Answering Paragraph 131, Defendants state that the allegations of this paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny Paragraph 131.

132.    Answering Paragraph 132, Defendants incorporate by reference the responses of all preceding paragraphs.

133.    Answering Paragraph 133, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 30, 2014, which dismissal was affirmed by the D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and also by this Court's opinion on September 28, 2018, and thus does not require a response.

134.    Answering Paragraph 134, Defendants state that this paragraph pertains to a claim

that was dismissed by this Court on September 30, 2014, which dismissal was affirmed by the D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and also by this Court's opinion on September 28, 2018, and thus does not require a response.

135.    Answering Paragraph 135, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 30, 2014, which dismissal was affirmed by the D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and also by this Court's opinion on September 28, 2018, and thus does not require a response.

136.    Answering Paragraph 136, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 30, 2014, which dismissal was affirmed by the D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and also by this Court's opinion on September 28, 2018, and thus does not require a response.

137.    Answering Paragraph 137, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 30, 2014, which dismissal was affirmed by the D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and also by this Court's opinion on September 28, 2018, and thus does not require a response.

138.    Answering Paragraph 138, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 30, 2014, which dismissal was affirmed by the D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and also by this Court's opinion on September 28, 2018, and thus does not require a response.

139.    Answering Paragraph 139, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 30, 2014, which dismissal was affirmed by the D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and also by this Court's opinion on September 28, 2018, and thus does not require a response.

140.     Answering Paragraph 140, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 30, 2014, which dismissal was affirmed by the D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and also by this Court's opinion on September 28, 2018, and thus does not require a response.

141.     Answering Paragraph 141, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 30, 2014, which dismissal was affirmed by the D.C. Circuit on February 21, 2017 (with an opinion reissued on July 17, 2017), and also by this Court's opinion on September 28, 2018, and thus does not require a response.

142.     Answering Paragraph 142, Defendants incorporate by reference the responses of all preceding paragraphs.

143.     Answering Paragraph 143, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 28, 2018, and thus does not require a response.

144.     Answering Paragraph 144, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 28, 2018, and thus does not require a response.

145.     Answering Paragraph 145, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 28, 2018, and thus does not require a response.

146.     Answering Paragraph 146, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 28, 2018, and thus does not require a response.

147.     Answering Paragraph 147, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 28, 2018, and thus does not require a response.

148.     Answering Paragraph 148, Defendants incorporate by reference the responses of all preceding paragraphs.

149.     Answering Paragraph 149, Defendants state that this paragraph pertains to a claim

that was dismissed by this Court on September 28, 2018, and thus does not require a response.

150.   Answering Paragraph 150, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 28, 2018, and thus does not require a response.

151.   Answering Paragraph 151, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 28, 2018, and thus does not require a response.

152.   Answering Paragraph 152, Defendants state that this paragraph pertains to a claim that was dismissed by this Court on September 28, 2018, and thus does not require a response.

153.   Answering Paragraph 153, Defendants deny each and every allegation contained in Paragraph 153 and deny that Plaintiffs are entitled to any relief whatsoever.

Defendants deny each and every allegation of the Complaint not specifically admitted in Defendants' responses to Paragraphs 1-153.

Further, the Complaint contains section headings that do not require a response. To the extent any response is required, Defendants deny all allegations in all section headings.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses without admitting any of the allegations in the Complaint that have previously been denied, without assuming any burden of proof that Defendants would not otherwise bear, and reserving the right to amend or supplement these affirmative defenses and raise counterclaims as additional facts become available or apparent in this action:

### First Affirmative Defense

Some or all of Plaintiffs' claims fail to state a claim upon which relief can be granted.

### Second Affirmative Defense

Some or all of Plaintiffs' claims (including claims for money damages) are barred because they seek relief that would "restrain or affect the exercise of powers or functions of the [Federal Housing Finance] Agency as a conservator" within the meaning of 12 U.S.C. § 4617(f).

### Third Affirmative Defense

Some or all of Plaintiffs' claims are preempted and/or barred in whole or in part by federal law.

### Fourth Affirmative Defense

Plaintiffs' claims are barred in whole or in part because they seek to recover for alleged anticipatory repudiation of implied covenant obligations attendant to a unilateral contract.

### Fifth Affirmative Defense

Plaintiffs' claims are barred in whole or in part because Defendants performed all duties owed under the implied covenant of good faith and fair dealing and therefore never breached the implied covenant.

<u>Sixth Affirmative Defense</u>

Plaintiffs' claims fail in whole or in part to the extent Plaintiffs purchased their stock after the alleged wrongdoing occurred.

<u>Seventh Affirmative Defense</u>

Plaintiffs' claims are barred in whole or in part because Plaintiffs suffered no actual injury.

<u>Eighth Affirmative Defense</u>

Plaintiffs' claims are barred in whole or in part because Plaintiffs were not harmed by, or have no recoverable damages caused by, any alleged actions or omissions by Defendants.

<u>Ninth Affirmative Defense</u>

Plaintiffs' claims fail in whole in part because at least a portion of Plaintiffs' alleged damages are based on intervening or supervening causes.

<u>Tenth Affirmative Defense</u>

Plaintiffs' claims are barred in whole or in part by the doctrine of estoppel.

<u>Eleventh Affirmative Defense</u>

Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

<u>Twelfth Affirmative Defense</u>

Plaintiffs' claims are barred in whole or in part by the doctrine of laches.

<u>Thirteenth Affirmative Defense</u>

Plaintiffs' claims are barred in whole or in part by the doctrine of assumption of risk.

<u>Fourteenth Affirmative Defense</u>

Plaintiffs' claims are barred in whole or in part by failure to mitigate damages.

Reservation of Defenses

Defendants presently have insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses available. Defendants reserve the right to assert additional defenses in this action in the event that discovery or other developments indicate that they would be appropriate.

## PRAYER

Having fully answered the Complaint, Defendants respectfully pray as follows:

1. That the Complaint be dismissed with prejudice in its entirety;

2. That judgment be entered in favor of Defendants and against Plaintiffs on the Complaint as a whole;

3. That Defendants be awarded attorneys' fees, costs, and disbursements in this action;

4. That the Court award Defendants such other and further relief as the Court may deem appropriate.

Dated:  December 17, 2018                    Respectfully submitted,

                                             /s/ Howard N. Cayne
                                             Howard N. Cayne (D.C. Bar # 331306)
                                             Asim Varma (D.C. Bar # 426364)
                                             David B. Bergman (D.C. Bar # 435392)
                                             ARNOLD & PORTER KAYE SCHOLER LLP
                                             601 Massachusetts Ave NW
                                             Washington, D.C. 20001
                                             (202) 942-5000
                                             Howard.Cayne@arnoldporter.com
                                             Asim.Varma@arnoldporter.com
                                             David.Bergman@arnoldporter.com

                                             *Attorneys for Defendant Federal Housing Finance Agency and Director Melvin L. Watt*


s/ Michael J. Ciatti                         s/ Meaghan VerGow
Michael J. Ciatti  (D.C. Bar # 467177)       Meaghan VerGow  (D.C. Bar # 977165)
KING & SPALDING LLP                          O'MELVENY & MYERS LLP
1700 Pennsylvania Ave. N.W.                  1625 Eye Street, N.W.
Washington, DC 20006                         Washington, DC 20006
Tel: (202) 626-5508                          Tel: (202) 383-5300
Fax: (202) 626-3737                          Fax: (202) 383-5414
mciatti@kslaw.com                            mvergow@omm.com

*Attorney for the Federal Home Loan Mortgage Corp.*          *Attorney for the Federal National Mortgage Association*