# ATTACHMENT B

U.S. Department of Justice
Civil Division, Federal Programs Branch

1100 L Street N.W.
Washington, DC 20005

| | |
|---|---|
| Marsha Edney<br>Senior Trial Counsel | Tel.: (202) 514-4520<br>marsha.edney@usdoj.gov |
| R. Charlie Merritt<br>Trial Attorney | Tel.: (202) 616-8098<br>robert.c.merritt@usdoj.gov |

May 10, 2019

**VIA EMAIL**

Vincent J. Colatriano
Cooper & Kirk, PLLC
1523 New Hampshire Ave. NW
Washington, DC 20036
vcolatriano@cooperkirk.com

Re: *Fairholme Funds, Inc., et al v. FHFA, et al.*
Civil Action No. 1:13-cv-1053-RCL (D.D.C.)

Dear Mr. Colatriano:

This letter responds to the subpoena issued in the above-captioned action to the Department of the Treasury ("Treasury"), attaching 37 Requests for Production of Documents ("RFPs"). As Treasury is no longer a party to the lawsuit, the agency considered your request in accordance with its *Touhy* regulations, which dictate the process for obtaining government records or testimony when the agency is not a party. *See* 31 C.F.R. § 1.11 *et seq*; *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

In determining whether to comply with your request, Treasury's regulations require that the agency consider the following factors: (i) whether the request or demand is unduly burdensome; (ii) whether the request would involve the Department in controversial issues unrelated to the Department's mission; (iii) whether the time and money of the United States would be used for private purposes; (iv) the extent to which the time of employees for conducting official business would be compromised; (v) whether the public might misconstrue variances between personal opinions of employees and Department policy; (vi) whether the request demonstrates that the information requested is relevant and material to the action pending, genuinely necessary to the proceeding, unavailable from other sources, and reasonable in its scope; (vii) whether the number of similar requests would have a cumulative effect on the expenditure of agency resources; (viii) whether disclosure otherwise would be inappropriate under the circumstances; and (ix) any other factor that is appropriate. *Id*. §1.11(e)(1). Treasury will not comply with a request when such compliance would, *inter alia*, (i) violate a statute, Executive Order, or regulation; (ii) compromise the integrity of the administrative or deliberative processes of the agency; or (iii) reveal classified or confidential information, agency deliberations, or interfere with ongoing enforcement proceedings. *Id*. § 1.11(e)(2).

Page 2

As an initial matter, and as noted specifically below with respect to individual requests, Treasury has several general objections to the RFPs. First, Treasury objects to the RFPs to the extent that they seek documents created between July 1, 2008 and January 31, 2014. *See* Instruction 11. This broad timeframe is unduly burdensome and disproportionate to the needs of the case given the limited claim remaining, *i.e.*, whether FHFA breached the implied covenant of good faith and fair dealing between it (as conservator for the GSEs) and the plaintiff shareholders. To the extent the agency has agreed to grant your request, a specific timeframe is noted below. Second, Treasury objects to the RFPs to the extent they are not tailored to the sole remaining breach of implied covenant claim. The requests seek information far afield of this limited claim, for example, "communications between Treasury and Justice Department relating to the Net Worth Sweep" (RFP 27) and "documents relating to Treasury's authority to agree to amendments to the terms of the PSPAs after December 31, 2009" (RFP 37). Third, Treasury objects to the RFPs to the extent they seek documents that are available from other sources, including parties to this action, such as FHFA. Fourth, Treasury objects to Instruction 12[1] as vague, unduly burdensome and not proportional to the needs of the case to the extent it contemplates that Treasury will duplicate its search for and review of documents requested in the Court of Federal Claims litigation. Last, Treasury objects to the definitions and instructions contained in the RFPs to the extent they purport to impose requirements beyond those required by the Federal Rules of Civil Procedure. This letter does not in any way waive any of Treasury's objections to any materials covered by this request.

Subject to these objections and based on the above factors, as set forth more fully below, Treasury will grant in part and deny in part your *Touhy* requests. In particular, Treasury will agree to search and produce documents in response to RFP 19, as set forth below. In all other respects, Treasury denies your *Touhy* requests.

**REQUEST NO. 19:** Any and all documents reflecting communications relating to the Periodic Commitment Fee between, on the one hand, Treasury, the Office of Management and Budget, and/or the White House, and, on the other hand, the Federal Reserve Board.

**Objection:** Treasury objects to this request as overly broad and burdensome to the extent it seeks "any and all documents." Treasury further objects to the request for documents reflecting communications from the Office of Management and Budget and/or the White House to the extent it seeks documents that are not in Treasury's possession, custody, or control; documents that are not relevant to the remaining breach of implied covenant claim; and documents protected by the deliberative process privilege or executive privileges. For this specific request, Treasury will limit its search to documents created between September 1, 2008 and August 31, 2012, which have not already been produced in the Court of Federal Claims litigation. Subject to and without waiving any objections, Treasury will search for and produce non-privileged responsive documents at a time to be mutually agreed upon by the parties.

\* \* \*

---

[1] Instruction 12 provides: "Requests for Production 1 through 16 seek only documents that counsel for the United States and/or FHFA did not review as part of discovery in *Fairholme Funds, Inc. v. United States*, No. 13-465 (Fed. Cl.)."

Treasury will not produce documents in response to the remaining RFPs. As you are aware, significant discovery has already taken place in parallel litigation in the Court of Federal Claims ("CFC Litigation"). In particular, that court broadly ordered discovery on the following topics: the "future profitability" of Fannie Mae and Freddie Mac (the "GSEs"); "when, and how, the conservatorship will end"; "whether the FHFA acted at the direct behest of the Treasury"; the GSEs' "solvency and the reasonableness of expectations about their future profitability"; and "why the government allowed the preexisting capital structure and stockholders to remain in place, and whether this decision was based on the partial expectation that [the GSEs] would be profitable again in the future." *Fairholme Funds, Inc. v. United States*, No 13-465 (Fed. Cl. Feb. 26, 2014), ECF No. 32. By contrast, the only issue remaining in this case, and thus the only appropriate subject of discovery, is whether the defendants (*i.e.*, FHFA, Fannie Mae, and Freddie Mac) violated the "implied covenant of good faith and fair dealing" arising out of the contract between GSE shareholders and FHFA, as conservator for the GSEs. *See* Mem. Op. at 15, ECF No. 82 ("MTD Opinion"). Although discovery in the Court of Federal Claims was ultimately limited to two distinct time periods – April 1, 2008 through December 31, 2008; and June 1, 2011 through September 30, 2012 – that was based on the timing of the events relevant to both that litigation and this litigation (*i.e.*, FHFA's placement of the GSEs' into conservatorship; execution of the Third Amendment); the court's desire to "balance the parties' competing needs," *Fairholme Funds, Inc.*, No 13-465 (Fed. Cl. July 16, 2014), ECF No. 72; and, ultimately, the agreement of the parties.[2] The need to strike a balance between the needs of the plaintiffs and Treasury's discovery burden is even more compelling here given that (1) Treasury is not a party to this action, and (2) the plaintiffs' lone surviving claim is much more limited than their claims against the government in the CFC Litigation.

Many of the RFPs here relate to that earlier discovery; as a result, Treasury grouped its objections to the RFPs into several distinct categories in order to fully address this background:

**Category 1: RFPs 1(a), 1(b), 2-8, 11 (except as it relates to "termination of the conservatorship"), 13, 14, 15(a)-15(d) (except as they relate to communications involving the Office of Management and Budget ("OMB") and the White House), and 16.**

These RFPs that are the same as (or materially indistinguishable from) the RFPs that were previously served on the government in the related case before the CFC and also the same as (or materially indistinguishable from) the December 5, 2018 RFPs plaintiffs served on FHFA in the above-captioned litigation ("FHFA RFPs"). Treasury objects to responding to these requests as unduly burdensome, disproportionate to the needs of the case, and seeking documents that are available from other sources.[3] *See* 31 C.F.R. §1.11(e)(1)(i)(vi); *see also* Fed. R. Civ. P. 45(d). Plaintiffs have already obtained discovery in response to these RFPs in the CFC litigation and/or will obtain these documents from FHFA, and thus, there is no basis to also seek such

---

[2] As you know, the government ultimately produced approximately 52,000 documents during that litigation, approximately 32,000 of which were Treasury documents.

[3] Treasury further objects to RFPs 5 and 6 because they are not relevant to the limited issue remaining in the case and to the extent the requests seek documents protected by the deliberative process privilege.

documents from non-party Treasury. Rather, plaintiffs should wait until FHFA produces its documents and also determine if the requested documents are available from other sources. *See* 31 C.F.R. §1.11(e)(2).

Plaintiffs' counsel's summary assertion that the previously obtained discovery from Treasury is not sufficient because the discovery in the related CFC case was limited to discrete topics and time periods does not change Treasury's analysis. *See* Decl. of Vincent J. Colatriano ("Colatriano Decl.") ¶ 8. As noted above, the discovery orders in the CFC litigation were expansive, authorizing discovery that is at least as broad, if not broader, than the scope of discovery authorized in this case (even under plaintiffs' conception). *See Fairholme Funds*, No. 13-465 (Fed. Cl.), ECF Nos. 32 and 72. Similarly, counsel's assertion that these RFPs are "proportionate to the needs of the case" merely because, if plaintiffs prevail, their ultimate damages award "could reduce the future dividend payments Treasury receives from the [GSEs]," Colatriano Decl. ¶ 9, misses the point. Regardless of how much money is ultimately at stake, plaintiffs must show that the burden they seek to impose on a third party is justified given the claims actually at issue. And here, plaintiffs fail to take into account that the current litigation is limited to only one claim, and that analysis of that claim is limited to inquiry into what a contracting party "reasonably expects of her co-contracting party" – *i.e.*, FHFA – *not* "on what a party reasonably expects of the government." MTD Opinion at 24; *see also id.* at 15-16 (noting that the implied covenant exists only to "infer contractual terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated," which can only occur when a plaintiff proves that its co-contracting party "acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected" (citations omitted)). In addition, the Court found that, here, the relevant "time of contracting" for purposes of evaluating such a claim is the "the most recent change in contract" – *i.e.*, the "time of the Third Amendment in August 2012." *Id.* at 16-19. Given these standards, any documents that Treasury may possess are of limited, if any, relevance to determining whether FHFA violated its contractual duty of good faith and fair dealing to GSE shareholders. In any case, because Treasury is not a party, its burden to produce documents certainly should not be greater than it was when the government was a party to the related litigation.

## Category 2: RFPs 1(c), 17, 18, and 20-26.

These RFPs are the same as (or materially indistinguishable from) the FHFA RFPs. Treasury objects to responding to these RFPs as unduly burdensome, disproportionate to the needs of the case, and seeking documents that are available from other sources. *See* 31 C.F.R. §1.11(e)(1)(i)(vi); *see also* Fed. R. Civ. P. 45(d). FHFA has responded to these discovery requests and has indicated that it will search for and produce responsive, non-privileged documents. Given that the requested documents are likely available from a party to the litigation, Treasury should not be unnecessarily burdened with also searching for documents responsive to these requests. In addition, these requests are not relevant at this time because the case before the district court is narrower than the scope of the dispute in the CFC Litigation, and limited to the issue of whether FHFA violated its contractual duty of good faith and fair dealing to GSE shareholders. As described above, internal Treasury documents are not, as a general matter, relevant to that inquiry. As such, any effort by Treasury to search for and produce such

documents would be unduly burdensome and disproportionate to the needs of the case. A number of these RFPs are also objectionable because they seek documents protected by the deliberative process privilege.

Treasury also notes that several of these requests (specifically 17, 18, 20, 21, and 22) were submitted to the government in the CFC Litigation. Per the agreement of the parties, the government did not search for those records,[4] and Treasury's burden to produce documents here should not be greater than it was when the government was a party to the related litigation.

Treasury will not produce documents in response to the RFPs in Category 2. Rather, plaintiffs should wait until FHFA produces its documents and also determine if the requested documents are available from other sources. *See* 31 C.F.R. §1.11(e)(2).

**Category 3**: **RFPs 10, 11 (to the extent it relates to the "termination of the conservatorship"), 12, and 29-32.**

These RFPs are new and specific to Treasury but, by their plain terms, seek documents that are available from parties to the litigation. These RFPs seek communications between Treasury and FHFA (*see* RFPs 10, 11, 31, 32), communications with plaintiff shareholders (*see* RFPs 29 and 30), and documents related to the GSEs' payment of dividends, which payment was made by the GSEs, not Treasury (*see* RFP 12). Treasury will not search for or produce documents that are available from the parties. *See* 31 C.F.R. §1.11(e)(1)(vi). Plaintiffs should wait until FHFA produces its documents and also determine if the requested documents are available from other sources. *See* 31 C.F.R. §1.11(e)(2).

**Category 4**: **RFPs 9, 15(e), 27, 28, and 33-37.**

These RFPs that are new and specific to Treasury but are otherwise objectionable for reasons set forth below. A common objection to all nine RFPs is their lack of relevance to the only remaining claim of breach of the implied covenant between Plaintiffs and FHFA. *See* 31 C.F.R. §1.11(e)(1)(vi) (requiring consideration of whether request is "relevant and material" or "genuinely necessary" to the litigation). It is undisputed that Treasury has no contractual relationship with the plaintiffs. Therefore any documents it may have that are responsive to these RFPs – and that are not otherwise available from the defendants in this case – do not bear on the question of whether plaintiffs "could reasonably expect that the GSEs themselves—through the FHFA—would give away all of Plaintiffs' residual rights to dividends and liquidation surplus in exchange for no investment and no meaningful consideration at a time when the GSEs were highly profitable." MTD Opinion at 25. Thus, Treasury will not respond to any of these nine RFPs, as described below.

**REQUEST NO. 9:** Any and all documents relating to the wind up and/or wind down of the Companies.

---

[4] Although it is our understanding that many documents responsive to those requests were ultimately produced in the CFC Litigation.

**Objection:** Treasury objects to this request as overly broad and burdensome to the extent it seeks "any and all documents." Treasury further objects to this request as vague because the terms "wind up" and "wind down" are not defined. Treasury also objects because this request seeks information irrelevant to the remaining issue in the case, *i.e.*, whether FHFA acted arbitrarily or unreasonably in agreeing to the Third Amendment in a way that frustrated plaintiffs' expectations.

**REQUEST NOS. 15 AND 15(e):** Any and all documents reflecting communications relating to the Net Worth Sweep between FHFA, Treasury, the Office of Management and Budget, and/or the White House and:
e. Anyone who at the time of the communication was not employed by the federal government, including but not limited to Peter Wallison, Alex Pollock, and Edward Pinto.

**Objection:** This RFP is similar to an RFP in the CFC Litigation and to FHFA in this litigation, except it also seeks documents reflecting communications from OMB and/or the White House, and those in subcategory (e). Treasury's objection to RFP 15 (a)-(d) is set forth above. Treasury also objects to RFP 15 to the extent it now seeks communications from OMB and/or the White House that are not in Treasury's possession, custody, or control, are not relevant to the remaining breach of implied covenant claim, and are protected by the deliberative process privilege or executive privileges. Additionally, subsection (e) of RFP 15 is vague, overly broad, burdensome and not proportionate to the needs of the case to the extent it requires Treasury to search for its communications with "anyone" not employed by the federal government. *See* 31 C.F.R. §1.11(e)(1)(i),(vi),(viii), and (e)(2)(iv).

**REQUEST NO. 27:** Any and all documents reflecting communications between Treasury and the Justice Department relating to the Net Worth Sweep.

**Objection:** Treasury objects to this request as vague, overly broad and burdensome in seeking "any and all documents," and also because it refers to the Department of Justice but does not specify a component(s) or person(s). Treasury further objects to the extent this request seeks documents that are subject to the deliberative process privilege and attorney-client privilege. *See* Fed. R. Civ. P. 45(d)(3)(iii) (providing that a court must quash or modify a third-party subpoena that, in general, "requires disclosure of privileged or other protected matter"). Treasury also objects to this request because it does not seek documents relevant to the breach of implied covenant claim; any responsive documents would be internal Treasury-Department of Justice documents that would not shed light on the alleged breach of an implied covenant between FHFA and GSE shareholders. 31 C.F.R. §1.11(e)(1)(i),(vi),(viii), and (e)(2)(iv).[5]

**REQUEST NOS. 28, 33-37:** Treasury objects to all six requests as overly broad and burdensome in seeking "any and all documents," and to RFP 33 because it seeks

---

[5] Again, however, it is our understanding that many documents responsive to this request were ultimately produced in the CFC Litigation.

Page 7

communications with "anyone else outside the federal government."[6]

Treasury further objects to these six requests because they are not relevant or material to the remaining breach of implied covenant claim, and thus, responding would be burdensome and disproportionate to the needs of the case. 31 C.F.R. §1.11(e)(1)(i) and (vi). None of these requests relate to the reasonable expectations of the parties at the time of the Third Amendment or request documents that would show that FHFA acted arbitrarily or unreasonably in agreeing to the Third Amendment in a way that frustrated plaintiffs' expectations. MTD Opinion at 24 ("For implied covenant claims, the focus is not what a party reasonably expects of the government, but what she reasonably expects of her co-contracting party."). Thus, requests for documents related to the initial decision to place the Companies into conservatorship, the negotiation of the original PSPAs, Treasury's authority to agree to amendments, or whether proposals to alter the dividend structure of government stock would constitute a compromise of claim are simply not relevant to the reasonableness of the actions of FHFA (vis-à-vis its shareholders) in agreeing to the Third Amendment.

The foregoing objections are not exclusive, and Treasury reserves the right to assert further objections in response to the requests as appropriate. We remain open to working with you to clarify and narrow the scope of your requests to address the concerns set forth above. Please feel free to contact us if you wish to discuss these possibilities.

Sincerely,

/s/

Marsha Edney
R. Charlie Merritt

---

[6] Treasury also objects to RFP 33 because the phrase "anyone else outside the federal government" is vague.