# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

FAIRHOLME FUNDS, INC., *et al.*,    )
                                    )
        Plaintiffs,                 )
                                    )
            v.                      )        No. 13-cv-1053-RCL
                                    )
FEDERAL HOUSING FINANCE             )
AGENCY, *et al.*,                   )
                                    )
        Defendants.                 )
_____)

## TREASURY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL THIRD-PARTY DISCOVERY

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................... 3

I.      Factual Background ................................................................................................... 3

II.     This Litigation ........................................................................................................... 4

        A.       Prior District Court and D.C. Circuit Proceedings ................................... 4

        B.       Post-Remand Proceedings Following Treasury's Dismissal ................................. 5

III.    Parallel Court of Federal Claims Litigation ............................................................ 6

IV.    Plaintiffs' Subpoena and Treasury's Response ........................................................ 8

LEGAL STANDARD ........................................................................................................... 11

ARGUMENT ........................................................................................................................ 12

I.      Internal Treasury Documents Are Not Relevant to Plaintiffs' Implied Covenant of Good Faith and Fair Dealing Claim ...................................................................... 13

II.     Complying with Plaintiffs' Subpoena Would Impose an Undue Burden on Treasury ................................................................................................................... 17

        A.       Plaintiffs' Requests are Duplicative of the CFC Discovery ................................ 18

        B.       Plaintiffs Seek Information Available From the Parties to the Litigation ........... 19

        C.       Plaintiffs' Overbroad Requests Are Not Proportional to the Needs of the Case ...................................................................................................................... 20

CONCLUSION ..................................................................................................................... 25

i

# TABLE OF AUTHORITIES

## CASES

*Ala. Aircraft Indus., Inc. v. Boeing Co.*,
    2016 WL 9781825 (N.D. Ala. Feb. 25, 2016) ....................................................... 23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................. 22

*Boulden v. Albiorix, Inc.*,
    2013 WL 396254 (Del. Ch. Jan. 31, 2013) ............................................................ 13

*Burns v. Bank of Am.*,
    2007 WL 1589437 (S.D.N.Y. June 4, 2007) .......................................................... 19

*BuzzFeed, Inc. v. U.S. DOJ*,
    318 F. Supp. 3d 347 (D.D.C. 2018) ................................................................. 13, 22

*Collins v. Mnuchin*,
    896 F.3d 640 (5th Cir. 2018), *vacated, pending reh'g en banc*,
    908 F.3d 151 (5th Cir. 2018) ................................................................................... 1

*Dibel v. Jenny Craig, Inc.*,
    2007 WL 2220987 (S.D. Cal. Aug. 1, 2007) .......................................................... 14

*Drics v. Duffy*,
    2014 WL 5323737 (S.D. Ind. Oct. 16, 2014) ......................................................... 20

*Dunlap v. State Farm Fire & Cas. Co.*,
    878 A.2d 434 (Del. 2005) ...................................................................................... 14

*Evans v. GEICO Gen. Ins. Co.*,
    2015 WL 137269 (E.D. Va. Jan. 9, 2015) .............................................................. 13

*Exxon Shopping Co. v. U.S. Dep't of Interior*,
    34 F.3d 774 (9th Cir. 1994) ................................................................................... 12

*Fairholme Funds, Inc. v. FHFA*,
    138 S. Ct. 978 (Feb. 20, 2018) ................................................................................ 5

*Gloucester Holding Corp. v. U.S. Tape & Sticky Prods., LLC*,
    832 A.2d 116 (Del. Ch. 2003) ........................................................................... 16, 17

*In re Denture Cream Prods. Liability Litig.*,
    292 F.R.D. 120 (D.D.C. 2013) .......................................................................... 12-13

*In re First Am. Corp.*,
    184 F.R.D. 234 (S.D.N.Y. 1998) ........................................................................... 24

*In re Micron Tech., Inc. Sec. Litig.*,
  264 F.R.D. 7 (D.D.C. 2010) ................................................................. 12

*In re Motion to Compel Compliance with Subpoena Directed to Dep't of Veterans Affairs*,
  257 F.R.D. 12 (2009) ................................................................. 11, 12

*In re Packaged Seafood Prods. Antitrust Litig.*,
  2018 WL 3629932 (S.D. Cal. July 31, 2018) ........................................ 22

*In re Photochromic Lens Antitrust Litigation*,
  2012 WL 12904391 (M.D. Fla. Dec. 20, 2012) ..................................... 23

*In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*,
  156 F.3d 1279 (D.C. Cir. 1998) ................................................... 16-17

*In re Subpoenas to Folliard*,
  2012 WL 907763 (D.D.C. Mar. 16, 2012) ........................................... 24

*In re Subpoenas to Intel Corp.*,
  2018 WL 1035794 (N.D. Cal. Feb. 23, 2018) ...................................... 23

*Jacobs v. FHFA*,
  908 F.3d 884 (3d Cir. 2018) ............................................................. 1

*Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC*,
  286 F.R.D. 8 (D.D.C. 2012) ...................................................... 11, 20

*Perry Capital LLC v. Lew*,
  70 F. Supp. 3d 208 (D.D.C. 2014) ................................................... 4

*Perry Capital LLC v. Mnuchin*,
  864 F.3d 591 (D.C. Cir. 2017) ................................................. 3, 4, 5

*Premier Election Solutions, Inc. v. Systest Labs, Inc.*,
  2009 WL 3075597 (D. Colo. Sept. 22, 2009) .................................... 11

*Roberts v. FHFA*,
  889 F.3d 397 (7th Cir. 2018) ......................................................... 1

*Robinson v. FHFA*,
  876 F.3d 220 (6th Cir. 2017) ......................................................... 1

*Saxton v. FHFA*,
  901 F.3d 954 (8th Cir. 2018) ......................................................... 1

*Simon v. Taylor*,
  2014 WL 6633917 (D.N.M. Nov. 18, 2014) ...................................... 22

*Swase v. West Valley City*,
  2015 WL 7756094 (D. Utah Dec. 1, 2015)............................................................. 23

*Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*,
  242 F.R.D. 1 (D.D.C. 2007)................................................................................... 13

*The Chemours Co. v. ATI Titanium, LLC*,
  2016 WL 4054936 (Del. July 27, 2016) ................................................................ 16

*United States ex rel. Touhy v. Ragen*,
  340 U.S. 462 (1951)................................................................................................. 9

*Watts v. SEC*,
  482 F.3d 501 (D.C. Cir. 2007) ......................................................... 11, 12, 20, 21

*Wells Fargo Bank, N.A. v. Konover*,
  259 F.R.D. 206 (D. Conn. 2006)........................................................................... 23

*Whitt v. Stephens Cty.*,
  2007 WL 9754677 (N.D. Tex. Apr. 27, 2007) ...................................................... 19

**STATUTES**

12 U.S.C. § 4617 ............................................................................................................ 5

Housing and Economic Recovery Act of 2008,
  Pub. L. No. 110-289, 122 Stat. 2654 ...................................................................... 3

**RULES**

Fed. R. Civ. P. 26.............................................................................................. 11, 12, 18

Fed. R. Civ. P. 45....................................................................................................11, 23

**REGULATIONS**

31 C.F.R. §§ 1.11 *et seq.*............................................................................................... 9

## INTRODUCTION

In July 2013, Plaintiffs, shareholders in the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively, the "GSEs" or "enterprises"), set out to overturn an amendment (the "Third Amendment") to preferred stock purchase agreements between the U.S. Department of Treasury ("Treasury") and the Federal Housing Finance Agency ("FHFA"), acting as conservator for the GSEs.  The initial agreements, entered into when the enterprises were on the brink of insolvency in September 2008, infused the enterprises with a vital capital commitment and entitled Treasury to certain rights in return, including dividend payments.  The Third Amendment, among other things, modified the dividend to vary based on the enterprises' net worth.  All of Plaintiffs' claims against Treasury have been dismissed by this Court and the D.C. Circuit.  And other GSE shareholders have had no more success:  to date the Third, Sixth, Seventh, and Eighth Circuits, as well as a Fifth Circuit panel in a now-vacated decision pending rehearing en banc, have similarly rejected direct challenges to the Third Amendment.[1]

Despite all of these lawsuits, Plaintiffs have had only one single claim, asserted solely against FHFA and the GSEs, survive a motion to dismiss.  On that slim reed, they issued to Treasury a broad third-party subpoena seeking documents responsive to more than 25 requests for production encompassing a five-and-a-half-year time period and now seek to compel compliance with that subpoena.  Plaintiffs' motion should be denied because it ignores the D.C. Circuit's

---

[1] *See Robinson v. FHFA*, 876 F.3d 220 (6th Cir. 2017); *Roberts v. FHFA*, 889 F.3d 397 (7th Cir. 2018); *Saxton v. FHFA*, 901 F.3d 954 (8th Cir. 2018); *Jacobs v. FHFA*, 908 F.3d 884 (3d Cir. 2018); *see also Collins v. Mnuchin*, 896 F.3d 640, 652-53 (5th Cir. 2018) (per curiam), *vacated, pending reh'g en banc* 908 F.3d 151 (5th Cir. 2018).

decision dismissing Treasury from this action and violates Rule 45 of the Federal Rules of Civil Procedure.

Rule 45 requires that parties who serve third-party subpoenas "take reasonable steps to avoid imposing undue burden or expense on" the non-party subject to the subpoena.  Plaintiffs have taken *no* steps to mitigate or even acknowledge the obvious burden their discovery requests impose on Treasury.  To the contrary, Plaintiffs seek documents related to subject matter, primarily the execution of the Third Amendment and the GSEs' entry into conservatorship, about which they have already received extensive discovery, including more than 32,000 Treasury documents, in parallel litigation in the Court of Federal Claims.  They do not, however, tailor their requests to specific time periods, topics, custodians, or offices that this prior discovery did not address. Moreover, Plaintiffs seek information readily available from other sources, including the parties to this litigation.  And they seek internal Treasury documents, never shared with FHFA or the GSEs, that have no conceivable relevance to the claim that FHFA and the GSEs violated the implied covenant of good faith and fair dealing arising from the GSEs' contracts with Plaintiffs. Plaintiffs impose all of these burdens without even attempting to account for the discovery they have already received in litigation in the Court of Federal Claims, and will receive from the current defendants in this action.

Because Plaintiffs are unwilling to tailor their document requests to account for the facts of this case and their alleged actual need for information from Treasury, their overbroad subpoena imposes an undue burden that is out of proportion with the needs of this matter.  The subpoena is thus improper under Rules 45 and 26.  The Court should reject Plaintiffs' attempt to continue to treat Treasury as a defendant and drag it into Plaintiffs' contractual dispute with FHFA and the GSEs.  The motion to compel should be denied.

2

# BACKGROUND

## I.    Factual Background

The Court is familiar with the events underlying this litigation, so Treasury will provide only a brief summary here of the facts relevant to the present motion.  In 2008, the "United States economy fell into a severe recession."  *Perry Capital LLC v. Mnuchin* ("*Perry Capital II*"), 864 F.3d 591, 599 (D.C. Cir. 2017).  This was due in "large part" to a "sharp decline in the national housing market," which ultimately pushed the GSEs "to the brink of default."  *Id*.  Seeking to avert the catastrophic impact that the GSEs' collapse would have had on the housing market, Congress enacted the Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110-289, 122 Stat. 2654, which created the FHFA, empowered it to act as conservator or receiver of the GSEs, and authorized Treasury to purchase securities issued by the GSEs.

FHFA exercised its statutory authority to place the GSEs into conservatorship on September 6, 2008.  Am. Compl. ¶ 33, ECF No. 74.  At around the same time, Treasury entered into Senior Preferred Stock Purchase Agreements ("PSPAs") with each enterprise, through their conservator FHFA, pursuant to which "Treasury committed to promptly invest billions of dollars in Fannie and Freddie to keep them from defaulting."  *Perry Capital II*, 864 F.3d at 601.  In exchange for this significant capital commitment and ongoing infusions, which, as the D.C. Circuit has recognized, "saved the [GSEs]," *id*., 864 F.3d at 613, Treasury received senior preferred stock with a liquidation preference, warrants to purchase 79.9 percent of each enterprise's common stock, commitment fees, and quarterly dividends as a percentage of the liquidation preference of its senior preferred stock.  Am Comp. ¶¶ 37-41.

On August 17, 2012, Treasury and FHFA, acting as conservator for the GSEs, entered into the Third Amendment to the PSPAs.  Am. Compl. ¶ 68.  The amendment replaced the GSEs'

obligation to pay Treasury quarterly dividends at a fixed rate with a variable dividend equal to the amount, if any, by which the enterprises' net worth exceeds a capital buffer.   The Third Amendment also suspended the periodic commitment fee that each GSE would otherwise owe to the taxpayers for the remaining funding available to the GSEs for as long as the variable dividend remains in effect.  *Id*.  As described below, the Third Amendment is the subject of this litigation.

## II.     This Litigation

### A.     Prior District Court and D.C. Circuit Proceedings

Plaintiffs filed their original complaint challenging the Third Amendment on July 10, 2013. ECF No. 1.  Their action was then consolidated with three other lawsuits, including a putative class action, asserting "overlapping, though not identical, claims."  *Perry Capital LLC v. Lew* ("*Perry Capital I*"), 70 F. Supp. 3d 208, 214 (D.D.C. 2014).  Plaintiffs here and in the other individual lawsuits asserted APA claims against Treasury, contending that (1) the Third Amendment exceeded Treasury's statutory authority and (2) that Treasury's conduct in executing the Third Amendment was arbitrary and capricious.  *See,* Compl. ¶¶ 100-120, ECF No. 1.  The class action, on the other hand, alleged that Treasury breached its fiduciary duty and violated the Takings Clause.  Class Action Compl. ¶¶ 175-192, No. 13-mc-1288 (RCL), ECF No. 4.

In *Perry Capital I*, this Court disagreed with plaintiffs and dismissed, in their entirety, all of the complaints in the consolidated actions.  On appeal, the D.C. Circuit generally agreed with this Court's conclusions, affirming dismissal of all claims against Treasury[2] and several claims against FHFA, while remanding for the case to proceed on an isolated set of contract-based common law claims against FHFA and the GSEs.  *See generally Perry Capital II*, 864 F.3d 591.

---

[2] The Court ruled that the class plaintiffs failed to state a Takings Clause claim against Treasury. *See Perry Capital I*, 70 F. Supp. 3d at 239-45.  The class plaintiffs did not challenge that ruling on appeal.  *See Perry Capital II*, 864 F.3d at 603 n.6.

In particular, the court concluded that HERA's anti-injunction provision, 12 U.S.C. § 4617(f), barred challenges to Treasury's conduct in agreeing to the Third Amendment under both HERA and the APA. *Perry Capital II*, 864 F.3d at 615-16. The court dismissed the class plaintiffs' common law breach of fiduciary duty claim against Treasury for the same reason. *Id*. at 621. After dismissing a number of statutory and common law claims against FHFA, the court remanded for further proceedings solely on the class plaintiffs' breach of contract and breach of implied covenant claims against FHFA and the GSEs. *Id*. at 633-34. The Supreme Court denied Plaintiffs' petition for a writ of *certiorari* from the D.C. Circuit's decision. *Fairholme Funds, Inc. v. FHFA*, 138 S. Ct. 978 (Feb. 20, 2018).

###    B.    Post-Remand Proceedings Following Treasury's Dismissal

Following the D.C. Circuit's remand, Plaintiffs in these consolidated actions filed amended complaints. Although these complaints asserted certain claims against Treasury that the D.C. Circuit had rejected, Plaintiffs subsequently made clear that these claims were raised "solely to preserve Plaintiffs' rights in the event" that the Supreme Court granted their request for *certiorari* following *Perry Capital II* (as noted above, this request was denied). *See* Stipulation at 2, ECF No. 67. Plaintiffs withdrew their amended complaints "as to Treasury and the Secretary" and emphasized that the now-operative complaints "do not name Treasury or the Secretary as defendants." *Id*.

FHFA and the GSEs, the remaining defendants in this action (hereinafter "Defendants"), moved to dismiss the amended complaints, and the Court generally did so. It dismissed Plaintiffs' breach of contract claims, Memo. Op. at 10-14, ECF No. 82 ("MTD Op."), their claims for breaches of fiduciary duties, *id*. at 30-33, their claims that the Third Amendment dividend violates Virginia and Delaware statutory law, *id*. at 33-35, and all of the "APA claims" and other "requests

seeking injunctive or declaratory relief," *id*. at 35.  In all, the Court dismissed 19 of the 24 claims asserted in the amended complaints.  *Id*.  The lone exception was with respect to Plaintiffs' claims that Defendants, by agreeing to the Third Amendment, violated the implied covenant of good faith and fair dealing.  The Court allowed these claims to survive, determining Plaintiffs had plausibly alleged that, at the relevant time of contracting, they could not have reasonably expected that their co-contracting parties, "the GSEs themselves—through the FHFA—would give away all of Plaintiffs' residual rights to dividends and liquidation surplus in exchange for no investment and no meaningful consideration at a time when the GSEs were highly profitable."  *Id*. at 25.  It is undisputed that no contractual relationship exists between Plaintiffs and Treasury.

## III.  Parallel Court of Federal Claims Litigation

As noted above, this is not the only suit brought by GSE shareholders, including the Plaintiffs here, challenging the Third Amendment.  As it relates to the current motion, the most relevant of these is Plaintiffs' currently pending lawsuit in the Court of Federal Claims ("CFC litigation").  *See Fairholme Funds v. United States*, 1:13-cv-465 ("*Fairholme*").  There, the plaintiff shareholders alleged that the Third Amendment effectuated an unlawful taking of their property, in violation of the Fifth Amendment.  The heart of that argument was that the Third Amendment "destroyed Plaintiffs' reasonable, investment-backed expectations" with respect to their "contractual rights as preferred stockholders, including their liquidation preferences and their rights to dividends." Compl. ¶¶ 77, 84-86, *Fairholme*, ECF No. 1.  If these allegations sound familiar, it is because the crux of Plaintiffs' implied covenant claim here is that FHFA's agreement to the Third Amendment "arbitrarily and unreasonably prevented" Plaintiffs from receiving the

"fruits of their bargain," including "a contractually specified, non-cumulative dividend" and "a contractually specified liquidation preference."  Am. Compl. ¶¶ 147-148.[3]

After the government moved to dismiss, the court granted Plaintiffs' motion for discovery. And contrary to Plaintiffs' contention that this discovery was "limited to certain discrete topics and specific time periods," Pls.' Mem. in Support of Mot. to Compel ("MTC") at 8 n.2, ECF No. 103-1, the court concluded that discovery was appropriate not only to establish the court's jurisdiction, but also to enable plaintiffs to defend against defendants' rule 12(b)(6) arguments, which plaintiffs asserted "challenge[d] many of the allegations of [plaintiffs'] complaint."  *See* Order at 1, *Fairholme*, ECF No. 32 ("CFC Discovery Order").  Accordingly, the court ordered discovery into the following broad range of topics: the "future profitability" of the GSEs; "when, and how, the conservatorship will end"; "whether the FHFA acted at the direct behest of the Treasury"; the GSEs' "solvency and the reasonableness of expectations about their future profitability"; and "why the government allowed the preexisting capital structure and stockholders to remain in place, and whether this decision was based on the partial expectation that [the GSEs] would be profitable again in the future."  *Id*. at 3-4.

The court ordered that the government produce documents from two distinct time periods: April 1, 2008 through December 31, 2008 (*i.e.*, the time period surrounding the GSEs' placement

---

[3] The difference, as this Court has recognized, is that Plaintiffs' allegations here focus on the expectations of GSE shareholders with respect to their co-contracting parties, whereas the CFC plaintiffs' Taking Clause allegations focus on the government's conduct.  *See, e.g.*, MTD Op. at 24 ("For implied covenant claims, the focus is not on what a party reasonably expects of the government, but what she reasonably expects of her co-contracting party.").  Nonetheless, as explained below, the allegations are similar enough that the government's prior document productions weigh heavily against any argument that Plaintiffs need not submit more tailored requests in this action, explaining the need for any request for additional documents.

into conservatorship) and June 1, 2011 through August 17, 2012[4] (*i.e.*, the period surrounding the Third Amendment).  Order at 3, *Fairholme*, ECF No. 72.  Plaintiffs then served on the government 19 requests for production of documents.  *See* Pls.' CFC Requests for Production (attached as Exhibit A).  In response to those requests, the government produced over 32,000 Treasury documents.  *See* Declaration of Michelle Dickerman ¶ 7 ("Dickerman Decl.") (attached as Exhibit B).  Plaintiffs reprise essentially all of those requests here, in materially identical terms, making no effort to tailor their current requests to account for the discovery already received.

IV.     **Plaintiffs' Subpoena and Treasury's Response**

        Following this Court's decision on Defendants' motions to dismiss, the parties proposed, on October 29, 2018, a schedule for discovery pursuant to which the parties would make initial disclosures on November 5, 2018, and fact discovery would close on July 15, 2019.  ECF No. 89.  More than five months later, before receiving any discovery from Defendants, Plaintiffs served a third-party subpoena on Treasury on April 9, 2019.  Pursuant to an agreement between the parties, Treasury responded by letter dated May 10, 2019.  *See* ECF No. 103-3.

        The subpoena included 37 requests for production of documents ("RFPs"),[5] seeking an exceedingly broad array of information over a period of five and a half years between July 1, 2008 and January 31, 2014.  Several of these RFPs, on their face, seek information available from the parties to the litigation.  *See* RFP 10 ("communications between FHFA and/or Treasury . . . and the Companies' board members and executives"); RFPs 11 & 26 ("communications between FHFA and Treasury"); RFPs 29 & 30 ("communications with the Companies' private

---

[4] In addition, the court ordered the government to respond to discovery requests "regarding topics other than the future profitability of the enterprises or whether and when the conservatorships might end" from August 18, 2012 through September 30, 2012.  Order at 4, *Fairholme*, ECF No. 72.

[5] Included in Attachment A to Plaintiffs' motion to compel, ECF No. 103-2.

shareholders"); RFP 12 (seeking information about the GSEs' payment of dividends, which payment was made by the GSEs, not Treasury).  The remaining 21 requests for which Plaintiffs seek to compel production were submitted, in materially identical terms, to defendant FHFA.  *See* Pls.' Requests for Production to FHFA (attached as Exhibit C).  Thus, all of the requests for which Plaintiffs seek to compel production either were submitted to FHFA or seek, on their face, information that is available from the parties.  Additionally, and importantly, 20 of the requests duplicate Plaintiffs' CFC discovery requests.  *See* RFPs 1-8, 11, 13-18, 20-23, 27.

Because Treasury is no longer a party to this action, it determined that the subpoena was governed by its *Touhy* regulations, according to which Treasury and its employees may not produce documents without prior agency authorization.  *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951); *see also* 31 C.F.R. §§ 1.11 *et seq.* (Treasury *Touhy* regulations).  Pursuant to these regulations, Treasury denied the requests to produce documents in response to 36 of the 37 RFPs as unduly burdensome, disproportionate to the needs of the case, and/or seeking documents available from other sources.[6]  *See* ECF No. 103-3.  Treasury explained that Plaintiffs' subpoena, which attempted to seek discovery from Treasury to the same extent as Plaintiffs seek discovery from Defendants, failed to demonstrate the requisite need for additional Treasury documents, beyond what Plaintiffs will receive from the parties to this case and have already received in the parallel CFC litigation.  *Id.*

---

[6] As noted in its letter, Treasury did agree to search for and produce non-privileged documents responsive to RFP 19.  ECF No. 103-3 at 3.  Treasury conducted a reasonable search and did not locate any responsive documents.  ECF No. 103-7 at 3.  In response to a request from Plaintiffs' counsel, *see* MTC at 9 n.4 (reserving right to file "an appropriate motion should Treasury not provide information demonstrating that it conducted an adequate search"), Treasury will be providing Plaintiffs, through counsel, information about that search.

In response to those objections, Plaintiffs remained fundamentally unwilling to tailor their requests in any respect to account for the fact that Treasury is no longer a party to this action or to acknowledge that, to the extent that any Treasury documents are relevant, Plaintiffs have already received over 32,000 Treasury documents from the time frames that relate to the allegations in their amended complaint.  In fact, in an email memorializing a telephone conference following Treasury's initial response letter, Plaintiffs' counsel confirmed their position that FHFA and Treasury are "very similarly situated for purposes of discovery."  ECF No. 103-4 at 2.  Rather than submit a discovery proposal specific to Treasury, Plaintiffs' counsel merely attached its "correspondence with FHFA," and proposed that Treasury "take an approach that is similar to the one that FHFA agreed to."  *Id*.  Indeed, counsel referred to Treasury's dismissal from the case as merely a "technical[]" matter.  *Id*.

Because Plaintiffs did not respond to the substantive concerns outlined in undersigned counsel's opening letter, and expressed no willingness to limit their requests to particular topics or time frames unaccounted for by the discovery Plaintiffs already have obtained or will obtain through the less burdensome process of party discovery, Treasury reiterated that it would not produce documents in response to the remaining RFPs.  ECF No. 103-7.  Even narrowed to remove ten of the original 37 requests, and a subsection of one other, the requests still impose an undue burden disproportionate to the needs of the case in seeking cumulative documents unlikely to have any relevance to Plaintiffs' lone surviving claim.  *Id*.

On July 12, Plaintiffs filed their motion to compel, dropping RFPs 9, 15(e), 27-28, and 31-37, but otherwise seeking full compliance with their Rule 45 subpoena.  *See* MTC at 5, 11 n.7.  The motion is premised on the contention that Treasury is "a 'third party' in name only," *id*. at 21, and that its discovery burden "should not meaningfully deviate" from that imposed upon party

defendant FHFA, *id.* at 23.  As set forth below, that assertion is wrong, and the Court should deny Plaintiffs' motion.

## **LEGAL STANDARD**

"Federal Rule of Civil Procedure 45 authorizes court-issued subpoenas to obtain discovery from third parties."  *Watts v. SEC*, 482 F.3d 501, 507 (D.C. Cir. 2007).  Although Rule 26's general standard allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), courts have made clear that *third-party* discovery "in particular must . . . be closely regulated." *Premier Election Solutions, Inc. v. Systest Labs, Inc.*, 2009 WL 3075597, at *3 (D. Colo. Sept. 22, 2009).  By its terms, Rule 45 requires that a party responsible for issuing a third-party subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).  Because the rule makes "quite clear that parties and attorneys who issue subpoenas have an affirmative duty to prevent undue burden or expense to the persons subject to the subpoena," the D.C. Circuit "has admonished district courts to be generally sensitive to the costs imposed on third parties when considering a motion to compel . . . pursuant to Rule 45." *Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012) (citation omitted); *see also Watts*, 482 F.3d at 509 ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs in Rule 45 inquiry" (citation omitted)).

Indeed, a court's obligation is "particularly acute" when a third-party subpoena is directed towards the United States.  *In re Motion to Compel Compliance with Subpoena Directed to Dep't of Veterans Affairs* ("*In re Veterans Affairs*"), 257 F.R.D. 12, 18 (2009).  Any discovery "must properly accommodate 'the government's serious and legitimate concern that its employee

resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations.'" *Watts*, 482 F.3d at 509 (quoting *Exxon Shopping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994)).  A district court must always consider factors such as whether the discovery sought is "unreasonably cumulative or duplicative"; whether it is "obtainable from some other source that is more convenient, less burdensome, or less expensive"; and whether "the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.* (quoting Fed. R. Civ. P. 26(b)(1)-(2)).  In the context of "third-party subpoenas to government agencies or employees," courts must be all the more careful to "adequately protect . . . the government's interest in not being used as a speakers' bureau for private litigants."  *Id.* (citation omitted).

"When a motion to compel is filed, [Rule 45] requires that district courts quash subpoenas that call for privileged matter or would cause an undue burden."  *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 8-9 (D.D.C. 2010) (citation omitted).

## ARGUMENT

Fundamentally, Plaintiffs have not complied with Rule 45's requirement that a party issuing a subpoena against a third party must take "reasonable steps" to avoid imposing "undue burden or expense."  Instead, they insist that Treasury should be subject to the same discovery burdens as the remaining Defendants in this case.  This is inconsistent with both the text of Rule 45 and the D.C. Circuit's clear guidance that courts be "generally sensitive to the costs imposed on third parties."  *Watts*, 482 F.3d at 509.  Thus, while the general standards articulated in Rule 26(b) apply to requests for third-party discovery, these standards must be applied with special sensitivity to ensure that third parties are not subjected to undue burden.  *See, e.g.*, *In re Veterans Affairs*, 257 F.R.D. at 18-19; *see also In re Denture Cream Prods. Liability Litig.*, 292 F.R.D. 120,

123-24 (D.D.C. 2013) (recognizing that courts have "discretion to limit discovery to prevent undue expenses to third parties, even if the discovery sought is within the permissible scope of the Federal Rules" (citation omitted)).  Viewing this case a whole, including the discovery the Plaintiffs have already received from Treasury in the CFC litigation and will receive from the parties in this case, and the lack of relevance of further Treasury documents to their contractual dispute with Defendants, the relevant factors establish that Plaintiffs' subpoena imposes an undue burden. Their motion should be denied.

## I.    Internal Treasury Documents Are Not Relevant to Plaintiffs' Implied Covenant of Good Faith and Fair Dealing Claim

With any third-party subpoena issued pursuant to Rule 45 the court "first must consider whether the discovery sought is relevant to a party's claim or defense in the underlying litigation." *BuzzFeed, Inc. v. U.S. DOJ*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018).  The party seeking third-party discovery bears the burden of demonstrating its relevance.  *Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*, 242 F.R.D. 1, 9 (D.D.C. 2007).  Plaintiffs do not carry that burden here.

As this Court has recognized, the implied covenant of good faith and fair dealing is a creature of contract.  *See* MTD Op. at 15 (noting that, in Delaware and Virginia, "every contract contains an implied covenant of good faith and fair dealing").  Because "only contracting parties in the performance of an existing agreement owe a duty of good faith," the absence of a contractual relationship between two parties necessarily defeats any claim for breach of the implied covenant. *Evans v. GEICO Gen. Ins. Co.*, 2015 WL 137269, at *7 (E.D. Va. Jan. 9, 2015) (citation omitted); *see also Boulden v. Albiorix, Inc.*, 2013 WL 396254, at * 15 (Del. Ch. Jan. 31, 2013) ("[T]here can be no breach of the implied covenant of good faith and fair dealing if there is no contract giving rise to an implied obligation independent of the express terms of the contract.").

Because Treasury is not a party to the contract between Plaintiffs and the GSEs, and therefore has no contractual duty to Plaintiffs, Treasury's conduct is inherently irrelevant to Plaintiffs' claim.  "Stated in its most general terms, the implied covenant requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain."  *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (citation omitted).  As both the Court and Plaintiffs have acknowledged, this test focuses on the conduct and expectations of the contracting parties.  *See, e.g.*, MTD Op. at 16 (noting that "the implied covenant asks what *the parties* would have agreed to themselves had they considered the issue in their original bargaining positions at the time of contracting," and that the relevant analysis "hinges on *the parties'* reasonable expectations at the time of contracting" (citations omitted, emphasis added)); MTC at 11 (stating that the "overarching question" for Plaintiffs' claim going forward is whether the Third Amendment "violated the reasonable expectations of the *parties*" and that answering that question involves analysis of "whether *the contracting party* acted arbitrarily or unreasonably" (citation omitted, emphasis added)).  Critically, this requires an analysis of what a party "reasonably expects of her co-contracting party" – *not* of "what a party reasonably expects of the government."  MTD Op. at 24.

Given these standards, it is difficult to imagine how Treasury documents would show that Defendants violated Plaintiffs' reasonable expectations regarding their contractual rights.[7] Plaintiffs' argument to the contrary consists largely of selective quotations from various aspects

---

[7] To the extent Treasury shared documents with FHFA, the GSEs, or shareholders, Plaintiffs either already have them or will receive them from the parties as part of the ongoing discovery process. *See, e.g.*, *Dibel v. Jenny Craig, Inc.*, 2007 WL 2220987, at *2 (S.D. Cal. Aug. 1, 2007) (quashing Rule 45 subpoena as "duplicative and overly burdensome" where the "requested documents are readily obtainable from Defendants").

of the Court's opinion and the assertion, without any analysis, that all of Plaintiffs' requests to Treasury "correlate directly or indirectly" to the "factual issues" that Plaintiffs claim the Court has identified.  *See* MTC at 12-16.  But Plaintiffs' reading of this Court's opinion is overstated.  The Court made clear, as discussed above, that an implied covenant claim is dependent upon the conduct and expectations of the contracting parties, focusing specifically on the conduct of the allegedly breaching party and the expectations of both parties at the time of contracting.  Applying that framework, it found that Plaintiffs had stated a claim because they had plausibly alleged that the "Defendants exercised their discretion arbitrarily or unreasonably in a way that frustrated Plaintiffs' expectations under the contract," based on, generally, allegations about what "FHFA and the GSEs knew" at the time of the Third Amendment."  MTD Op. at 27; *see also id*. at 29 (noting that FHFA statements were "important" to understanding what Plaintiffs expected of their co-contracting party).

Plaintiffs' contention that "information in Treasury's possession" is relevant to the factual issues identified by the Court, MTC at 12, merely assumes its own conclusion and fails to draw a connection between any Treasury documents and their allegations that "Defendants' discretion was not reasonable."  MTD Op. at 22.  And, of course, the assertion that Treasury produced "important internal documents" in the CFC litigation, MTC at 25, where the government was a party and the plaintiffs were asserting different claims against it, does not demonstrate that Treasury possesses relevant documents pertaining to whether Defendants violated their contractual duties to Plaintiffs.

Nonetheless, Plaintiffs emphasize that Treasury "was a party to the PSPAs, and was a key player in the adoption of the Third Amendment."  MTC at 18.  This fact is of no moment to the implied covenant analysis.  The fact that A contracts with B says nothing, on its own, about

whether B "us[ed] underhanded tactics to deny [C] the fruits of the parties' [separate] bargain." *Gloucester Holding Corp. v. U.S. Tape & Sticky Prods., LLC*, 832 A.2d 116, 128 (Del. Ch. 2003). Still, Plaintiffs argue, internal Treasury documents "relating to whether the imposition of the [Third Amendment] amounted to arbitrary or unreasonable action" could be "pertinent" because the implied covenant claim entails an "objective inquiry." MTC at 18. But the objectiveness of the relevant test should cabin, not expand, the scope of discovery. What matters is whether FHFA's behavior in agreeing to the Third Amendment was, based on the information available to the parties, *i.e.*, Plaintiffs and FHFA/the GSEs, reasonable in light of the bargain struck between the contracting parties at the time of their contract. *See, e.g.*, *The Chemours Co. TT, LLC v. ATI Titanium LLC*, 2016 WL 4054936, at *9 (Del. July 27, 2016) (analysis of what is "arbitrary or unreasonable," for purposes of implied covenant claim, "depends on the parties' original contractual obligations and reasonable expectations at the time of contracting" (citation omitted)).

Defendants' conduct was either reasonable or it was not, but that determination must be made on the basis of information known to the Defendants at the time they are alleged to have acted unreasonably. Plaintiffs can get that information (and indeed have requested it) from Defendants, and internal Treasury documents reflecting Treasury's subjective views on the matter (to the extent such documents exist) that were not shared with FHFA do not help to answer the relevant question.[8] *Cf. In re Subpoena Duces Tecum Served on the Office of the Comptroller of*

---

[8] Plaintiffs also suggest that because Treasury has "access to much of the same non-public information about the [GSEs] that was available to FHFA," its "documents assessing such information" are relevant to the implied covenant claim. MTC at 18. But even if this argument did suggest that some internal Treasury documents could be relevant, which it does not for the reasons discussed above, it just demonstrates the overbreadth of Plaintiffs' requests, which all seek "any and all documents," not just those related to Treasury's "assessment" of such "non-public information." *See generally* RFPs.

*the Currency*, 156 F.3d 1279, 1280 (D.C. Cir. 1998) (in assessing whether an agency's actions were reasonable, subjective motivations of decisionmakers immaterial as a matter of law).

Finally, Plaintiffs argue that Treasury documents are relevant to defenses that Plaintiffs expect FHFA to raise and the damages calculation if Plaintiffs ultimately prove successful on their claims. *See* MTC at 16-18.  But by Plaintiffs' own accounting, only a handful of the RFPs seek such information, *id.*, so even if true, Plaintiffs' arguments do not demonstrate that their subpoena is justified in its current overbroad form.  But more importantly, Plaintiffs have (i) submitted to Treasury the same requests sent to FHFA, (ii) have already received significant discovery in the CFC litigation related to these topics, and (iii) fail to explain why they need more Treasury documents addressing the same topics.

At bottom, Treasury was not a party to the contract whose "spirit," *Gloucester Holding*, 832 A.2d at 128, is alleged to have been violated, and is not alleged to have engaged in any wrongdoing on its own part.  In these circumstances, Plaintiffs cannot simply assert that Treasury documents are relevant to the same extent as documents in Defendants' possession.  Plaintiffs have not carried their burden of showing the relevance of the internal Treasury documents they seek.

## II.     Complying with Plaintiffs' Subpoena Would Impose an Undue Burden on Treasury

Even if the document requests submitted with Plaintiffs' subpoena had some relevance to their lone remaining claim, this Court should still deny the motion to compel because responding to Plaintiffs' overbroad and untailored subpoena would impose an undue burden on Treasury. Parties issuing third-party subpoenas have an affirmative obligation to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," Fed. R. Civ. P. 45, and as discussed above, a court may deem a subpoena unduly burdensome if it is "unreasonably cumulative or duplicative"; if the documents sought can be "obtained from some other source that

is more convenient, less burdensome, or less expensive"; or if "the burden or expense of the proposed discovery outweighs its likely benefit" in view of the "needs of the case." Fed. R. Civ. P. 26(b)(1)-(2). Here, these factors favor denying Plaintiffs' motion to compel.

> **A.      Plaintiffs' Requests are Duplicative of the CFC Discovery**

As noted above, significant discovery relating to Plaintiffs' claims has already taken place in the CFC litigation, an action (unlike this one) in which the United States is a named defendant. Plaintiffs respond with the extraordinary understatement that the prior discovery was "limited to certain topics and time frames." MTC at 24. While technically true, the "topics" were the same ones on which Plaintiffs seek discovery here—*e.g.*, "the reasonableness of expectations about" the GSEs' future profitability, CFC Discovery Order at 4—and the "time frames" were those relevant to the determination of that question—*i.e.*, the original placement of the GSEs into conservatorship and the time period surrounding the Third Amendment. At the time, the agreement on topics and time periods represented a reasonable accommodation to the competing interests of the parties to the litigation. The discovery that was conducted, however, was broad indeed and imposed a significant burden on Treasury resources. *See* Dickerman Decl. ¶¶ 7-9 (noting that Treasury produced "over 32,000 [Treasury] documents," and that Treasury and Justice Department attorneys prepared a privilege log, which included thousands of entries, and devoted "hundreds of hours" to "reviewing documents and their corresponding entries on the privilege log"). Treasury's position is simply that it should not be subject to an even greater burden here, given the availability of this prior production and, more importantly, its status as a non-party to this litigation.

Plaintiffs do not grapple with any of these facts, and instead seek to compel Treasury to produce documents in response to multiple RFPs that are copied, nearly verbatim, from the RFPs submitted to the government in the CFC litigation. *See supra* p. 8-9; *see also* MTC at 8

(acknowledging that Plaintiffs' RFPs are "similar" to the ones they had served in the CFC litigation).  Given that Plaintiffs received over 32,000 Treasury documents from two specific (and relevant) time periods in the CFC litigation, and thus are familiar with the types of documents Treasury creates and maintains, Plaintiffs' insistence on seeking "any and all documents," from the entire period of time between 2008 and 2014, for each and every one of their RFPs, is patently unreasonable.  Treasury's argument is not that the CFC discovery is Plaintiffs' "only opportunity for any discovery from Treasury."  MTC at 24.  Rather, it is that any further discovery against Treasury in a case where Plaintiffs have failed to state any claim against Treasury must, consistent with Plaintiffs' obligation to avoid imposing undue burdens on non-parties, account for this prior discovery.  Plaintiffs have not done so, however, and their efforts to duplicate prior CFC discovery is another factor pointing to the unreasonableness of that position.  *See Whitt v. Stephens Cty.*, 2007 WL 9754677, at *2 (N.D. Tex. Apr. 27, 2007) (absent indication that party possesses additional documents responsive to discovery requests, it is "unreasonably cumulative and duplicative" to require a party to "produce that which has already been produced").

### B.     Plaintiffs Seek Information Available From the Parties to the Litigation

As noted above, *supra* p. 8-9, several of Plaintiffs' RFPs seek information, such as communications between Treasury and FHFA, that is plainly available from the parties to the litigation.  This is a sufficient basis on its own for the Court to deny Plaintiffs' motion to compel the same information from Treasury.  *See, e.g.*, *Burns v. Bank of Am.*, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) ("[S]ubpoenas under Rule 45 are clearly not meant to provide an end-run around the regular discovery process . . . . [I]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness [pursuant to Rule 45]." (citation omitted)).  Many of Plaintiffs' other requests

are materially identical to RFPs submitted to FHFA.  These too are unreasonably cumulative and duplicative.  Not only would documents produced by Defendants much more likely be relevant to Plaintiffs' claims than Treasury documents, but production by Defendants would have the added benefit of allowing Plaintiffs to identify any discrete category of Treasury documents that are truly unavailable from the parties for a given time period.  *See Drics v. Duffy*, 2014 WL 5323737, at *6 (S.D. Ind. Oct. 16, 2014) (where plaintiff  failed to engage in "party discovery that might narrow his requests" to the third party, his Rule 45 subpoena did not comply with the requirement to "take reasonable steps to avoid imposing undue burden or expense on the non-party" (citation omitted)).

Plaintiffs apparently view it as a helpful factor that they have submitted similar discovery requests to Treasury and FHFA and that, if their motion is granted, Treasury's "production efforts . . . should not meaningfully deviate from discovery that [FHFA] has agreed to undertake."  MTC at 23.  But this concedes that, in Plaintiffs' view, non-party Treasury should be treated the same as Defendant FHFA for purposes of discovery.  As noted above, Rule 45 and the D.C. Circuit require otherwise.  *See Watts*, 482 F.3d at 509 ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs in Rule 45 inquiry" (citation omitted)); *see also Millennium TGA*, 286 F.R.D. at 11 ("parties and attorneys who issue subpoenas have an affirmative duty to prevent undue burden or expense to the persons subject to the subpoena").  Plaintiffs' complete failure to account for Treasury's third-party status is a reason to deny, not grant, the motion to compel.

### C.    Plaintiffs' Overbroad Requests Are Not Proportional to the Needs of the Case

Plaintiffs' failure to tailor their document requests to the facts of this case, or to take any reasonable steps to avoid imposing undue burden on Treasury, is reason enough to deny Plaintiffs' motion.  But even putting that aside, complying with Plaintiffs' subpoena would, despite Plaintiffs'

assertions to the contrary, *see* MTC at 23 (referring to the apparently unlimited "resources at [Treasury's] disposal"), be extremely burdensome for Treasury. *See generally* Dickerman Decl.

First, the timeframe specified in Plaintiffs' requests is unduly burdensome. Plaintiffs seek documents dating back to 2008, and for a period of time that spans more than five and a half years. Moreover, Plaintiffs seek documents created up until January 2014 even though the Third Amendment was agreed to in August 2012, and for the full multi-year period of time between the GSEs' entry into conservatorship in fall 2008 and the Third Amendment. Responding to these requests would impose an undue burden on Treasury. Dickerman Decl. ¶ 5.

Additionally, several of the requests implicate documents that are likely to be subject to various privilege assertions, which will require both Treasury and Justice Department attorneys to spend significant hours conducting a document-by-document review for responsiveness and privilege and creating a privilege log. *Id.* ¶¶ 9-10. Given Plaintiffs' unwillingness to tailor their requests in any meaningful way to documents that might actually be relevant and otherwise unavailable, Treasury has not yet undertaken a search for responsive documents.[9] Based on its experience with the parallel CFC litigation, it can reasonably estimate that "review[ing] Treasury records for responsive material" would take hundreds of hours, given the breadth of the requests and the expansive time frame at issue, which would require Treasury to expend "significant resources at the expense of other important Treasury functions." *Id.* ¶ 10; *see also Watts*, 482 F.3d at 509 (emphasizing that Rules 26 and 45 "must properly accommodate the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations" (citation omitted)). This would be particularly burdensome in light of the fact that Treasury has already devoted

---

[9] As noted above, Treasury has conducted a search for documents responsive to RFP 19.

significant resources to collecting, reviewing, and producing Treasury documents in the CFC during the time periods relevant to this litigation. *See id.* ¶¶ 7-9.[10]

Plaintiffs' arguments regarding Treasury's burden boil down to their belief that this case is so important that the Court should refuse to treat Treasury as a "non-party" to this litigation. MTC at 21. Such an approach flies in the face of not only Rule 45, but the Federal Rules more generally, which require the presence of a plausible claim against a defendant as a necessary precondition to seeking discovery. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."). "[A]lmost all of the efficiencies gained—both by the court and the parties—from dismissing parties at the motion to dismiss stage would be lost if the remaining parties to a case could use all of the traditional discovery devices to obtain information from the dismissed parties." *Simon v. Taylor*, 2014 WL 6633917, at *21 (D.N.M. Nov. 18, 2014). Treasury is a non-party to this action not because of a technicality, but because the D.C. Circuit affirmed dismissal of all of Plaintiffs' claims against it. Thus, Rule 45 governs and protects Treasury from the undue burden imposed by Plaintiffs' overbroad and untailored discovery requests.

---

[10] Plaintiffs acknowledge that Treasury "devoted significant time and resources" to producing documents in the CFC, but argue that engaging in a "similar discovery effort" here would cause no undue burden. MTC at 23. Of course, Plaintiffs ignore that the United States is a party to the CFC litigation, and thus not subject to the protections that Rule 45 provides Treasury here. *See In re Packaged Seafood Prods. Antitrust Litig.*, 2018 WL 3629932, at *2 (S.D. Cal. July 31, 2018) (Rule 45 "imposes particular protections upon non-parties subject to discovery requests which are not present for parties."). And the fact that Plaintiffs do not seek documents that were previously produced or reviewed does nothing to alleviate that burden, which, as explained in the Dickerman Declaration, was significant the last time around in ways that can be expected to repeat themselves here. *See* Dickerman Decl. ¶¶ 7-10. Indeed, it highlights the fact that Plaintiffs have made no effort to reduce Treasury's burden by, for example, tailoring their requests to particular time periods or topics not covered by the CFC litigation. *Cf. BuzzFeed*, 318 F. Supp. 3d at 355 (compelling compliance with third-party discovery requests after the plaintiff "substantially narrow[ed] its initial requests" and sought only a "sworn affidavit" answering "three discrete questions").

In arguing to the contrary, Plaintiffs rely almost exclusively on cases[11] addressing the distinct question of apportioning the costs of compliance with a third-party subpoena *after* a court has ordered such compliance, *see* Fed. R. Civ. P. 45(d)(2)(B)(ii), where courts consider whether the circumstances of the case justify abandoning the normal presumption that "the producing party bears the costs of complying with a discovery request," *Ala. Aircraft Indus., Inc. v. Boeing Co.*, 2016 WL 9781825, at *4 (N.D. Ala. Feb. 25, 2016) (citation omitted).  Here, on the other hand, the question before the Court is whether to compel compliance in the first place, an inquiry that is governed by whether the subpoena seeks relevant information and whether it imposes an undue burden.  Because Plaintiffs have not complied with the requirements of Rule 45, Defendants are entitled to refuse to search for and produce documents in response to Plaintiffs' overbroad requests, and the question of how to apportion any costs of compliance is not relevant.  *See Swase v. West Valley City*, 2015 WL 7756094, at *2 (D. Utah Dec. 1, 2015) (noting that, where the court had not yet ruled on pending motions to compel or quash, the "cost-shifting provisions of Rule 45 are not yet applicable" and rejecting argument that cases apportioning cost were relevant to the former inquiry); *In re Subpoenas to Intel Corp.*, 2018 WL 1035794, at *6 (N.D. Cal. Feb. 23, 2018) (considering whether to shift the cost of producing party's compliance after denying in part motion to quash).[12]

---

[11] *See* MTC at 21-22 (citing ten cases apportioning costs, following compliance, under Rule 45's cost-shifting provisions).

[12] In any event, Treasury's interest in this litigation can be distinguished from the type of financial interest involved in cases like, *e.g.*, *Wells Fargo Bank, N.A. v. Konover*, 259 F.R.D. 206, 207 (D. Conn. 2006) (*see* MTC at 21) (denying non-party's motion for recovery of costs expended in complying with Rule 45 subpoena where it shared a partnership relationship with the defendants in the case) and *In re Photochromic Lens Antitrust Litig.*, 2012 WL 12904391, at *3 (M.D. Fla. Dec. 20, 2012) (*see* MTC at 22) (compelling parent company to comply with subpoena in action where its subsidiary was party defendant).

The Court should also reject Plaintiffs' contention that Treasury's participation in other litigation challenging the Third Amendment—litigation from which Treasury has generally been dismissed, *see supra* p. 1,—justifies that Treasury "bear a moderate marginal discovery burden" here.  MTC at 22.  As demonstrated above, requiring that Treasury participate in discovery to the same extent as Defendants is not a "moderate" burden; nor is it "marginal," given that Plaintiffs insist on seeking documents—that are not relevant to Plaintiffs' contract-based dispute with Defendants—from a five-and-a-half-year period, with no accounting for Treasury's prior document productions.[13]

In the end, Plaintiffs wish this case existed as it did before this Court and the D.C. Circuit dismissed all of their claims against Treasury and nearly all of its claims against FHFA and the GSEs (and before the Supreme Court denied Plaintiffs' petition for *certiorari*).  That is not the case.  Treasury has been dismissed as a party, and all Plaintiffs have left is a single contract-based claim against FHFA and the GSEs.  This solitary claim necessarily informs the scope of what is discoverable from the non-party.  So too does the fact that Plaintiffs have already received significant discovery, related directly to the events they claim breached the implied covenant here, from Treasury in parallel litigation.  Plaintiffs' failure to acknowledge these circumstances and insistence on seeking discovery that is not proportional to the needs of this case violates Rule 45 and imposes an undue burden on Treasury.

---

[13] This is in contrast to the cases Plaintiffs cite for this proposition.  *See In re Subpoenas to Folliard*, 2012 WL 907763 (D.D.C. Mar. 16, 2012) (adjudicating motion to shift costs by "non-party" that had affirmatively filed a separate action, ultimately dismissed, against the defendant based on the same transaction at issue in the underling litigation); *In re First Am. Corp.*, 184 F.R.D. 234 (S.D.N.Y. 1998) (adjudicating motion to shift costs from third-party that had served as the auditor for the party defendant and had already been compelled to produce certain documents).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' motion to compel.


Dated: August 2, 2019                    Respectfully submitted

                                         JOSEPH H. HUNT
                                         Assistant Attorney General

                                         DIANE KELLEHER
                                         Assistant Branch Director

                                         */s/ R. Charlie Merritt*
                                         MARSHA S. EDNEY
                                         Senior Trial Counsel
                                         R. CHARLIE MERRITT (VA Bar # 89400)
                                         Trial Attorney
                                         U.S. Department of Justice
                                         Civil Division, Federal Programs Branch
                                         919 East Main Street, Suite 1900
                                         Richmond, VA 23219
                                         Tel: (202) 616-8098
                                         Fax: (804) 819-7417
                                         Email: robert.c.merritt@usdoj.gov

25