**Exhibit C**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAIRHOLME FUNDS, INC., *et al.*,<br><br>        Plaintiffs,<br><br>      v.<br><br>THE FEDERAL HOUSING FINANCE AGENCY, *et al.*,<br><br>        Defendants. | Civil No. 13-1053 (RCL) |
| ARROWOOD INDEMNITY COMPANY, *et al.*,<br><br>        Plaintiffs,<br><br>      v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCATION, *et al.*,<br><br>        Defendants. | Civil No. 13-1439 (RCL) |
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations<br><br>_____<br><br>This document related to:<br>ALL CASES | Miscellaneous No. 13-1288 (RCL) |

**FAIRHOLME PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO FHFA**

      Pursuant to Rules 26 and 34, the Fairholme Plaintiffs hereby propound upon Defendant Federal Housing Finance Agency the following Requests for Production. FHFA is requested to produce and/or to permit Plaintiffs to inspect and to copy each of the requested documents that might be in FHFA's possession, custody, or control, or those which are in the possession, custody, or control of FHFA's attorneys, agents, or representatives. Document production should be delivered to the offices of Cooper & Kirk, PLLC, 1523 New Hampshire Ave., N.W.,

1

Washington, D.C. 20036, or at any other location to which counsel mutually agree.

## DEFINITIONS

As used herein, the following terms shall have the following meanings:

1.      "Companies" refers to the Federal National Mortgage Association (Fannie Mae) and the Federal Home Loan Mortgage Corporation (Freddie Mac) collectively.

2.      "Defendants" refers to the Federal Housing Finance Agency (FHFA), FHFA Director Melvin L. Watt, and the Companies.

3.      "Communication" means any meeting, conversation (face-to-face, telephonic, or otherwise), discussion, telex message, cable, correspondence, message, electronic mail, voice mail, exchange, provision or relay of a document, or other occurrence whereby thoughts, opinions, data, or other information are transmitted between or among more than one person, or through any photographic, mechanical, electrical or electronic device or devices for receiving, transmitting, or storing data or other information.

4.      "Document(s)" should be construed in the broadest sense permissible, and includes all "writings," "recordings," and "photographs," as those terms are defined in Rule 1001 of the Federal Rules of Evidence, as well as all "communications" as defined above. Accordingly, "document(s)" includes, but is not limited to, all written, printed, recorded or graphic matter, photographic matter, sound reproductions, electronic mail, or other retrievable data (whether recorded, taped, or coded electrostatically, electromagnetically, optically or otherwise on hard drive, diskette, compact disk, primary or backup tape, audio tape or video tape) from whatever source derived and however and by whomever prepared, produced, reproduced, disseminated or made. Without limiting the generality of the foregoing, "document(s)" includes the original and any non-identical copy and also every draft and proposed draft of all correspondence, internal memoranda, notes of meetings, telegrams, telexes,

2

facsimiles, electronic mail, reports, transcripts or notes of telephone conversations, diaries, notebooks, minutes, notes, tests, reports, analyses, studies, testimony, speeches, worksheets, maps, charts, diagrams, computer printouts, and any other writings or materials of any nature whatsoever, whether or not divulged to other parties, together with any attachments thereto and enclosures therewith. In addition, the word "document(s)" encompasses all forms and manifestations of electronically or optically coded, stored, and/or retrievable information, including but not limited to "email," "voice mail," digital images and graphics, digital or analog audiotapes and files, and digital or analog videotapes and files.

5. "Person" means and refers to not only natural persons, but also firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, trusts, groups, and organizations; federal, state, or local government or government agencies, offices, bureaus, departments, entities, including any court (or judge or other officer thereof); other legal, business, or government entities; and all subsidiaries, affiliates, divisions, departments, branches, and other units thereof or any combination thereof. "Person" includes the present and former officers, executives, partners, directors, trustees, employees, attorneys, agents, representatives, and all other persons acting or purporting to act on behalf of the person and also its subsidiaries.

6. "PSPAs" refers to the Senior Preferred Stock Purchase Agreements under which the U.S. Department of the Treasury (Treasury) agreed to provide the Companies with funding in exchange for, *inter alia*, Government Stock and warrants to purchase 79.9% of the Companies' common stock.

7. "Government Stock" refers to the Senior Preferred Stock that Treasury received from the Companies pursuant to the PSPAs.

8. "Net Worth Sweep" refers to the provision of the Third Amendment to the

PSPAs that requires the Companies to pay to Treasury each quarter their entire net worth, less a small capital reserve.

9. "Models" refers to any and all models, assumptions, data, and analyses.

10. "Profitability" refers to any and all information relating to the Companies' financial performance, prospects, income, and liabilities, including both their profits and losses.

11. "Projections" refers to any and all financial projections, stress tests, forecasts, and any other evaluations of the Companies' financial condition and/or profitability.

12. The word "including" shall have its ordinary meaning and shall mean "including but not limited to" and shall not indicate limitation to the examples or items mentioned.

13. The words or phrases "reflect," "refer," or "relate to"—or any tense or combination of those words or phrases—mean reflecting, referring to, relating to, regarding, discussing, concerning, constituting, mentioning, pertaining to, alluding to, or associated with.

14. The singular of each word shall be construed to include its plural and vice versa, and the root word and all derivations (*i.e.*, "ing," "ed," etc.) shall be construed to include each other.

15. The words "and" as well as "or" shall be construed both conjunctively as well as disjunctively.

16. The word "each" shall be construed to include "every" and vice versa.

17. The word "any" shall be construed to include "all" and vice versa.

18. The present tense shall be construed to include the past tense and vice versa.

19. The "knowledge," "information," "possession," "custody," and "control" of a person shall be construed to include such person's agents, representatives, and attorneys.

## INSTRUCTIONS

1. Pursuant to Rule 26(e)(1), these Requests are continuing in nature and FHFA shall provide supplemental answers and documents, which will augment or modify any answers contained in its responses.

2. Each Request herein constitutes a request for each document referred to or a true, complete, and legible copy thereof.

3. Each Request seeks documents that are in any way in FHFA's possession, custody, or control from any source, wherever situated, including, but not limited to, the files, records, and documents to which FHFA has access, including all documents in the possession, custody, or control of contractors, experts, or consultants.

4. A document is deemed to be in FHFA's "control" if FHFA or its attorneys have the right to secure the document or a copy thereof from another person or entity having actual possession of the document.

5. If a requested document was, but no longer is, in FHFA's possession, custody, or control, FHFA shall identify the document, its current location, and the person who has possession, custody, or control of the document. If such information is unavailable, FHFA shall identify the last known location and person who had possession, custody, or control of the document and explain the reason for and circumstances under which the document left FHFA's possession, custody, or control.

6. If any of the documents requested herein has been destroyed, FHFA shall furnish a list identifying each such document, its author and addressee, each person to whom copies of the documents were furnished or to whom the contents thereof were communicated, a summary of the substance of the document, the date (or approximate date) upon which it was destroyed, and the reason it was destroyed.

7. If FHFA does not answer any Request or part thereof, on the basis of privilege, it shall provide with respect to each such document the following:

   a. The date of the document;

   b. The number of pages comprising the document and a description of any identifying marks or designations (*e.g.*, Bates numbers) if any, on the document;

   c. The nature of the document (letter, memorandum, spreadsheet, presentation, report, etc.);

   d. A description of the subject matter of the document;

   e. A list of all attachments or enclosures to the document;

   f. The name(s) of the author(s) and of any recipient(s) of the document;

   g. The name and address of any person who is not included in response to subpart (f) with respect to such document and who has access to or has seen, read, or heard any portion of the material in the document; and

   h. The nature of the privilege asserted.

8. For each Request or part of a Request that FHFA refuses to answer on grounds of burdensomeness, FHFA shall explain in as much detail as possible the basis for its contention.

9. If FHFA objects to any Request, or a portion of any Request, it must produce all documents covered by the Request, or portion of the Request, not subject to the objection. Similarly, if FHFA objects to production of a document, it must produce the parts of the document that are not subject to objection, redacting and clearly indicating the parts of the document that are subject to the objection.

10. FHFA shall produce all documents as they are kept in the usual course of

business and label them to correspond to the categories in the request.

11. These document requests are limited to documents created between July 1, 2008 and January 31, 2014.

12. Requests for Production 1 through 16 seek only documents that counsel for the United States and/or FHFA did not review as part of discovery in *Fairholme Funds, Inc. v. United States*, No. 13-465 (Fed. Cl.).

13. These document requests do not seek documents produced to the plaintiffs as part of discovery in *Fairholme Funds, Inc. v. United States*, No. 13-465 (Fed. Cl.).

14. The limitations in paragraphs 13 and 14 are conditioned on the parties reaching an agreement that documents produced in the Court of Federal Claims litigation may be used to the same extent as if they had been produced in this litigation.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:** Any and all projections and the assumptions, data, and analyses relating to those projections—

a. Produced, reviewed, or provided to FHFA in connection with the Companies' conservatorships;

b. Prepared by Moody's, Grant Thornton, or the Companies; or

c. Relating to the expected profitability of the Companies.

**RESPONSE:**

**REQUEST NO. 2:** Any and all documents relating to scenarios in which Treasury would have received more in some quarters or other time periods under the Net Worth Sweep than it would have received under the original terms of the PSPAs.

**RESPONSE:**

7

**REQUEST NO. 3:** Any and all documents relating to any valuations of Treasury's warrants to purchase the Companies' common stock.

**RESPONSE:**

**REQUEST NO. 4:** Any and all documents relating to the decision to leave the Companies' existing capital structure in place during conservatorship.

**RESPONSE:**

**REQUEST NO. 5:** Any and all documents relating to the standards or factors for determining when, whether, or how to terminate the conservatorships of the Companies.

**RESPONSE**:

**REQUEST NO 6:** Any and all documents relating to Treasury's authority to prevent termination of the conservatorships by withholding consent to termination of the conservatorships.

**RESPONSE:**

**REQUEST NO. 7:** Any and all documents relating to the commitment or intent of FHFA and Treasury to ensure that existing equity holders will not have access to positive earnings from the GSEs, including the development of this policy and actions taken pursuant to this policy.

**RESPONSE:**

**REQUEST NO. 8:** Any and all documents relating to policies or intent to reduce the Companies' role in the mortgage market or to wind the Companies down, including development of those policies and actions taken pursuant to those policies.

**RESPONSE:**

**REQUEST NO. 9:** Any and all documents reflecting communications between FHFA and/or Treasury, on the one hand, and the Companies' board members and executives, on the other hand, relating to termination of the conservatorships.

**RESPONSE:**

**REQUEST NO. 10:** Any and all documents relating to expectations that the Companies will not continue as they existed before the conservatorships.

**RESPONSE:**

**REQUEST NO. 11:** Any and all documents reflecting communications between FHFA and Treasury relating to the following subjects: the decision to place the Companies in conservatorship, the terms of the PSPAs, amendments to the PSPAs, the practice of making draws on Treasury's funding commitment to fund dividends on Government Stock, the Periodic Commitment Fees authorized by the PSPAs, FHFA's strategic plan for the conservatorships released in February 2012.

**RESPONSE:**

**REQUEST NO. 12:** Any and all documents relating to FHFA's determination that it is obligated to maximize Treasury's return on its investment in the Companies or otherwise prioritize the interests of taxpayers.

**RESPONSE:**

**REQUEST NO. 13:** Any and all documents relating to FHFA's and/or Treasury's decision to enter into the Net Worth Sweep.

**RESPONSE:**

**REQUEST NO. 14:** Any and all documents relating to the factors or considerations FHFA and Treasury took into account when they imposed the Net Worth Sweep or the purposes

of the Net Worth Sweep, such as but not limited to:

    a. Helping to ensure the Companies' financial stability;

    b. Fully capturing benefits for taxpayers;

    c. Acting upon the commitment that the Companies will be wound down and not allowed to return to the market in their prior form; and

    d. Eliminating the need for the Companies to continue to make draws on Treasury's funding commitment to pay cash dividends on the Government Stock.

**RESPONSE:**

**REQUEST NO. 15:** Any and all documents reflecting communications relating to the Net Worth Sweep between FHFA and/or Treasury, and:

    a. Fannie and Freddie Boards of Directors and Executives;

    b. The Companies' lawyers;

    c. The Companies' auditors; or

    d. Rating agencies or other market analysts.

**RESPONSE**:

**REQUEST NO. 16:** Any and all documents reflecting communications between members of the Federal Housing Finance Oversight Board (FHFA Director, Treasury Secretary, HUD Secretary, and SEC Chair) or their staffs, or any other person acting act their direction, relating to the imposition of the Net Worth Sweep.

**RESPONSE:**

**REQUEST NO. 17**: Any and all projections relating to the second amendment to PSPAs.

**RESPONSE:**

**REQUEST NO. 18:** Any and all models relating to projections produced in discovery in *Fairholme Funds, Inc. v. United States*, No. 13-465 (Fed. Cl.) or in response to document requests in this case.

**RESPONSE:**

**REQUEST NO. 19:** Any and all documents relating to the impact that guarantee fee increases would have on the Companies' revenues.

**RESPONSE:**

**REQUEST NO. 20:** Any and all documents relating to the Periodic Commitment Fee authorized by the PSPAs, including without limitation the decision about whether to charge the Periodic Commitment Fee and the costs the Companies were expected to incur in paying the Periodic Commitment Fee.

**RESPONSE:**

**REQUEST NO. 21:** Any and all documents relating to significant sources of revenue for the Companies.

**RESPONSE:**

**REQUEST NO. 22:** Any and all documents relating to the Companies' deferred tax assets, the Companies' loan loss reserves, and proceeds from private label securities lawsuits filed by FHFA or the Companies.

**REQUEST NO. 23:** Any and all documents relating to the decision to compensate Treasury for its financial commitment by awarding it warrants to purchase 79.9% of the Companies' common stock.

**RESPONSE:**

**REQUEST NO. 24:** Any and all documents relating to Government Stock dividends, including without limitation: the circular practice of requesting draws on Treasury's funding commitment to pay cash dividends to Treasury, requests to make draws on Treasury's funding commitment, the provisions of the PSPAs that permit the Companies to add Government Stock dividends to Treasury's liquidation preference rather than paying those dividends in cash, and authorizations to declare dividends during the conservatorships pursuant to 12 C.F.R. § 1237.12.

**REQUEST NO. 25:** Any and all documents relating to whether and under what circumstances the Companies could buy back the Government Stock or otherwise reduce the size of the Government Stock's liquidation preference.

**RESPONSE:**

**REQUEST NO. 26:** Any and all documents prepared in anticipation of or otherwise relating to meetings between FHFA and Treasury concerning amendments to the PSPAs.

**RESPONSE:**


**REQUEST NO. 27:** Any and all documents Defendants may introduce into evidence or otherwise reply upon in their summary judgment briefing or at trial.

**RESPONSE:**

**REQUEST NO. 28:** Any and all documents relating to the effect of the Net Worth Sweep on the Companies' profitability.

**RESPONSE:**

**REQUEST NO. 29:** Any and all documents reflecting communications between FHFA and Treasury relating to the Companies' loan loss reserves and accounting treatment of the Companies' loan loss reserves, and the Companies' deferred tax assets and accounting treatment

of the Companies' deferred tax assets.

**RESPONSE:**

Date:   December 5, 2018

Respectfully submitted,

s/ Charles J. Cooper
Charles J. Cooper
*Counsel of Record for Plaintiffs*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
ccooper@cooperkirk.com

*Of Counsel:*
David H. Thompson
Vincent J. Colatriano
Peter A. Patterson
Brian W. Barnes
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)