# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

FAIRHOLME FUNDS, INC., *et al.*,        )
                                         )
    Plaintiffs,                          )
                                         )  Case No. 1:13-cv-1053-RCL
v.                                       )
                                         )
THE FEDERAL HOUSING FINANCE              )
AGENCY, *et al.*,                        )
                                         )
    Defendants.                          )
                                         )

## MEMORANDUM OPINION

In April of 2019, plaintiffs Fairholme Funds, Inc., *et al.* ("Fairholme") subpoenaed thirty-seven requests for production of documents ("RFPs") from the U.S. Department of the Treasury ("Treasury"). Treasury has refused to comply with the subpoena, so Fairholme has filed a Motion to Compel Compliance with Subpoena to the U.S. Treasury for certain RFPs. ECF No. 103. For the reasons set forth below, the Court will grant plaintiff's Motion to Compel and require Treasury to produce RFPs 1-8, 10-14, 15(a)-(d), 16-26, and 29-30.

## BACKGROUND

### I. Underlying Dispute

After the economic crash in 2008, Congress enacted the Housing and Economic Recovery Act of 2008. Pub. L. No. 110-289, 122 Stat. 2654. This statute created the Federal Housing Finance Agency ("FHFA") and empowered it to act as conservator or receiver of the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac"). The statute also authorized Treasury to purchase securities issued by Fannie Mae and Freddie Mac (collectively "the GSEs"). FHFA exercised its statutory

1

authority to place the GSEs into conservatorship around the same time that Treasury entered into Senior Preferred Stock Purchase Agreements ("PSPAs") pursuant to which Treasury invested billions of dollars in the GSEs to keep them from defaulting and to maintain their net worth at a positive level ("Net Worth Sweep"). *See Perry Capital LLC ex rel. Inv. Funds v. Mnuchin*, 864 F.3d 591, 599 (D.C. Cir. 2017). In exchange for this investment, Treasury received senior preferred stock with a liquidation preference, warrants to purchase 79.9% of each enterprise's common stock, commitment fees, and quarterly dividends as a percentage of the liquidation preference of its senior preferred stock. In 2012, Treasury and FHFA entered into the Third Amendment to the PSPAs, thereby replacing the GSEs' obligation to pay Treasury quarterly dividends at a fixed rate with a variable dividend equal to the amount, if any, by which the enterprises' net worth exceeds a capital buffer. The Third Amendment also suspended the periodic commitment fee that each GSE would otherwise owe to the taxpayers for the remaining funding available to the GSEs for as long as the variable dividend remains in effect. Plaintiffs filed their original complaint challenging the Third Amendment in 2013. ECF No. 1. This case is now on remand following a decision from the United States Court of Appeals for the District of Columbia, so only claims against FHFA and the GSEs remain; Treasury is no longer a party to this action. The ultimate issue in this case is whether defendants are liable for breach of the implied covenant of good faith and fair dealing.

## II. Dispute Regarding Subpoena

Plaintiffs served a third-party subpoena on Treasury on April 9, 2019. Pursuant to an agreement between the parties, Treasury responded via letter on May 10, 2019. The subpoena included thirty-seven RFPs seeking information from July 1, 2008 to January 31, 2014. Treasury determined that due to *Toughy* regulations, Treasury and its employees could not produce any

2

documents without prior agency authorization. *See United States ex rel. Toughy v. Ragen*, 340 U.S. 462 (1951). Treasury therefore denied the requests to produce documents in response to thirty-six of the thirty-seven RFPs as unduly burdensome, disproportionate to the needs of the case, and/or seeking documents available from other sources. In July of 2019, plaintiffs filed their Motion to Compel but dropped RFPs 9, 15(e), 27-28, and 31-37. Their motion seeks full compliance with the remainder of their Rule 45 subpoena.

## **LEGAL STANDARD**

The Federal Rules of Civil Procedure ("Fed. R. Civ. P.") govern discovery disputes, including disputes regarding subpoenas. When a party files a motion to compel, the first consideration is whether the discovery sought is relevant to any party's claim or defense. *See* Fed. R. Civ. P. 26(b)(1). Courts generally construe the concept of relevance broadly, as disclosure is favored over nondisclosure. *See In re Denture Cream Prod. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013) ("For purposes of discovery, relevance is liberally construed."); *Zelaya v. UNICCO Serv. Co.*, 682 F. Supp. 2d 28, 32 (D.D.C. 2010). Although the low bar for relevance remains the same for both parties and nonparties alike, courts do attempt to be "generally sensitive to the costs imposed on third parties." *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007).

If the materials sought are relevant, the Court must then determine whether the subpoena would place "an undue burden" on the person or entity from whom discovery is sought. *Watts*, 482 F.3d at 508. In assessing whether a discovery request imposes an undue burden, the Court must analyze whether the request is "unreasonably cumulative or duplicative," whether it "can be obtained from some other source that is more convenient, less burdensome, or less expensive,"

3

and "whether it is proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 26(b)(2)(C). The person or entity "resisting discovery" has the "burden . . . to show that the documents requested are . . . unduly burdensome[.]" *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010); *see also Buzzfeed, Inc. v. U.S. Dep't of Justice*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018). Vague and conclusory assertions are not sufficient; rather, a showing of undue burden "must be specific" and concrete. *See, e.g., Flatow v. Islamic Republic of Iran*, 196 F.R.D. 203, 207 (D.D.C. 2000). Assertions of an undue burden without "specific estimates of staff hours needed to comply" should be "categorically rejected." *Association of Am. Physicians & Surgeons v. Clinton*, 837 F. Supp. 454, 458 n.2 (D.D.C. 1993).

Even if the entity objecting to the subpoena proves that there is some burden, that burden must be balanced against other factors before it can truly be considered undue. Fed. R. Civ. P. 26(b)(1) states that the proportionality inquiry considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Therefore, the undue burden test essentially considers the totality of the circumstances rather than focusing on any one particular factor.

## ANALYSIS

As explained in this Section of the Memorandum Opinion, the Court finds that the materials sought do meet the low threshold for relevance. The Court also finds that Treasury has not demonstrated with the requisite specificity how granting Fairholme's Motion to Compel would constitute an undue burden. The Court will therefore grant the Motion to Compel.

## I. Plaintiffs' Requested Materials are Relevant to this Case.

The materials that Fairholme subpoenaed are relevant to this case. The underlying claim requires determining whether the Net Worth Sweep violated the parties' reasonable expectations. This involves considering whether the contracting party acted unreasonably. Even though Treasury is no longer a party to this case, the information that it possesses may still be relevant to Fairholme's overarching claim. Some of the relevant questions that Fairholme has identified in connection with their RFPs are:

- What should the Companies' private shareholders have reasonably expected in 2008 when the Housing and Economic Recovery Act was enacted and the Companies were forced into conservatorship?
- Did the Companies receive value in exchange for providing Treasury with enhanced disbursement rights through the Net Worth Sweep? If so, to what extent?
- When the Net Worth Sweep was imposed, did the Companies, FHFA, and Treasury understand that the Companies were about to achieve sustained profitability?
- When the Net Worth Sweep was imposed, did the FHFA know that the Company's profitability would permit them to pay the 10% dividend under the original PSPAs without the necessity of drawing from Treasury?
- Did the Net Worth Sweep permit Treasury to reap enormous benefits in exchange for no new investment?
- Could plaintiffs have reasonably expected that the Companies would give away all of plaintiffs' residual rights to dividends and liquidation surplus in exchange for no investment and no meaningful consideration at a time when the Companies were highly profitable?

- How did the events surrounding the placement of the Companies into conservatorship affect the reasonable expectations of the parties?

- Did defendants exercise their discretion arbitrarily or unreasonably in a way that frustrated plaintiffs' expectations under the contract?

- Was the threat of a downward spiral of circular dividend payments used as mere pretext to justify the Net Worth Sweep?

- Did the Companies need to draw on Treasury's funds to pay dividends and could the Companies have repaid Treasury for its investment under the pre-Third Amendment dividend structure?

- Did private shareholders in 2008 reasonably expect the conservatorships to be temporary?

Fairholme has specifically identified which RFPs correspond to which of these questions. The Court therefore finds that Fairholme has met the low bar for relevance. In addition to explaining why the RFPs are relevant to the breach of implied covenant claim, Fairholme also explains how the requested documents may be relevant to potential defenses that FHFA and the GSEs could raise. Fairholme also points out that Treasury may have information relevant to damages, which would be critical if plaintiffs were to prevail on the merits of their claim. Although Treasury is correct that it is no longer a party to this case, that does not change the fundamental definition of relevance. Relevance is not a particularly high bar, and that bar is met here. Despite being a nonparty, Treasury has been inextricably linked to the underlying facts of this lawsuit from the beginning. Essentially, because there is a likelihood that Treasury has information relevant to some claim or defense, the Court finds that the requested information is relevant for the purposes of discovery.

**II. Plaintiffs' Discovery Request Will Not Impose an Undue Burden on Treasury.**

Treasury has not convinced this Court that granting Fairholme's Motion to Compel would unduly burden the agency. Quite simply, Treasury has not met its "heavy burden to show that the subpoena should not be enforced." *Millennium TGA, Inc. v. Comcast Cable Communs. LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012) (citing *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984)). As stated above, explanations that are cursory or vague are insufficient, and Treasury's arguments are not specific enough to warrant a finding of an undue burden. Fairholme correctly points out that Treasury has not provided any details regarding the resources and effort required to produce the requested materials. Treasury makes only vague assertions, such as, "[S]everal of the requests implicate documents that are likely to be subject to various privilege assertions, which will require both Treasury and Justice Department attorneys to spend significant hours conducting a document-by-document review for responsiveness and privilege and creating a privilege log." ECF No. 106 at 21. Similarly, Treasury broadly asserts that complying with plaintiffs' subpoena "would take hundreds of hours," but Treasury fails to specify how many hundreds of hours. Will it be 100? Will it be 900? How many attorneys will be required? To be frank, Treasury's Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion to Compel Third-Party Discovery (ECF No. 106) leaves the Court with more questions than answers. Courts rarely find that relevant requests would constitute an undue burden, and Treasury has not adequately explained why the Court should find otherwise here.

Even if Treasury had given more specific details about the production process, establishing that production would be burdensome is still not enough—production must be *unduly* burdensome. Such a determination requires balancing the burden against other factors. Here, the stakes are clearly quite high, as plaintiffs seek hundreds of billions of dollars in

7

damages. Treasury also has the resources to complete the requested production, and the Court will not entertain the preposterous notion that an agency as large as Treasury lacks the manpower to complete this request. Other government agencies have not claimed undue burden throughout the discovery process, and Treasury apparently had no difficulty meeting the discovery demands in the Court of Federal Claims ("CFC") litigation. The Court is in no way trying to trivialize the fact that complying with Fairholme's subpoena will require both time and money; however, the Court also believes that Treasury is more than capable of utilizing the vast resources at its disposal to produce the requested documents.

Additionally, plaintiffs accurately note that Treasury is far from a disinterested bystander. Although this Court does not agree with Fairholme's characterization of Treasury as a third party "in name only," (ECF No. 103-1 at 17) Treasury has been involved with the underlying factual issues in this case from the beginning. When a nonparty "actually has an interest in the outcome of the case," that interest is accounted for when analyzing the totality of the circumstances. *Linder v. Calero-Portocarrero*, 180 F.R.D. 168, 177 (D.D.C. 1998). Disclosure is also favored when the nonparty "was substantially involved in the underlying transaction and could have anticipated that such transaction could potentially spawn litigation or discovery." *Wells Fargo Bank, N.A. v. Konover*, 259 F.R.D. 206, 207 (D. Conn. 2009). Treasury played an important role in implementing the Net Worth Sweep and has been heavily involved with the PSPAs. Because Treasury "was involved in the litigation arising out of the same facts or was substantially involved in the underlying transaction," it is inherently "interested in the outcome of the litigation," so concerns about the burden placed on the nonparty are not as great as they would be if Treasury truly had no interest in or involvement with the underlying lawsuit. *In re Folliard*, 2012 WL 907763, at *3 (D.D.C. March 6, 2012). Furthermore, Treasury is incorrect in arguing

that the materials it turned over during discovery in the CFC litigation are necessarily sufficient to meet plaintiffs' needs in this case. It is true that the rules of discovery attempt to limit cumulative production, but the CFC litigation was more limited than this case. Therefore, relevant information that was not included in the CFC disclosures could very well be found in the materials plaintiffs seek here.

Finally, it is worth noting that plaintiffs offered to cut numerous RFPs from their request. Indeed, plaintiffs' Motion to Compel seeks an order from this Court only for the following RFPs: 1-8, 10-14, 15(a)-(d), 16-26, and 29-30. This Court commends Fairholme's efforts to compromise and believes that compromise should be rewarded whenever permitted by law. Fairholme's willingness to remove certain RFPs from its initial request also undermines Treasury's undue burden argument, as Fairholme removed many of the RFPs that would have potentially been duplicative or cumulative. For these reasons, the Court finds that the RFPs are relevant and that complying with the subpoena will not unduly burden Treasury.

## CONCLUSION

Based on the foregoing, the Court will **GRANT** plaintiffs' Motion to Compel Compliance with Subpoena to the U.S. Treasury.

The Court will **ORDER** that the U.S. Treasury must timely produce all non-privileged documents that are responsive to the following requests for production attached to the subpoena that is the subject of the foregoing Motion to Compel: RFPs 1-8, 10-14, 15(a)-(d), 16-26, and 29-30.

The Court will **FURTHER ORDER** that the U.S. Treasury must also produce a privilege log identifying documents that are responsive to the foregoing requests for production that the U.S. Treasury has withheld on the basis of its assertion of applicable privileges.

A separate Order accompanies this Memorandum Opinion.

Date: November 8, 2019

Royce C. Lamberth
United States District Court Judge