# **EXHIBIT R**

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

## Form 10-K

**ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d)
OF THE SECURITIES EXCHANGE ACT OF 1934**

For the fiscal year ended December 31, 2008

Commission File No.: 0-50231

# Federal National Mortgage Association

*(Exact name of registrant as specified in its charter)*

**Fannie Mae**

| | |
|---|---|
| **Federally chartered corporation** | **52-0883107** |
| *(State or other jurisdiction of incorporation or organization)* | *(I.R.S. Employer Identification No.)* |
| **3900 Wisconsin Avenue, NW Washington, DC** | **20016** |
| *(Address of principal executive offices)* | *(Zip Code)* |

Registrant's telephone number, including area code:
**(202) 752-7000**

Securities registered pursuant to Section 12(b) of the Act:

| Title of Each Class | Name of Each Exchange on Which Registered |
|---|---|
| Common Stock, without par value | New York Stock Exchange |
| | Chicago Stock Exchange |
| 8.25% Non-Cumulative Preferred Stock, Series T, stated value $25 per share | New York Stock Exchange |
| 8.75% Non-Cumulative Mandatory Convertible Preferred Stock, Series 2008-1, stated value $50 per share | New York Stock Exchange |
| Fixed-to-Floating Rate Non-Cumulative Preferred Stock, Series S, stated value $25 per share | New York Stock Exchange |
| 7.625% Non-Cumulative Preferred Stock, Series R, stated value $25 per share | New York Stock Exchange |
| 6.75% Non-Cumulative Preferred Stock, Series Q, stated value $25 per share | New York Stock Exchange |
| Variable Rate Non-Cumulative Preferred Stock, Series P, stated value $25 per share | New York Stock Exchange |
| 5.50% Non-Cumulative Preferred Stock, Series N, stated value $50 per share | New York Stock Exchange |
| 4.75% Non-Cumulative Preferred Stock, Series M, stated value $50 per share | New York Stock Exchange |
| 5.125% Non-Cumulative Preferred Stock, Series L, stated value $50 per share | New York Stock Exchange |
| 5.375% Non-Cumulative Preferred Stock, Series I, stated value $50 per share | New York Stock Exchange |
| 5.81% Non-Cumulative Preferred Stock, Series H, stated value $50 per share | New York Stock Exchange |
| Variable Rate Non-Cumulative Preferred Stock, Series G, stated value $50 per share | New York Stock Exchange |
| Variable Rate Non-Cumulative Preferred Stock, Series F, stated value $50 per share | New York Stock Exchange |

Securities registered pursuant to Section 12(g) of the Act:

**Variable Rate Non-Cumulative Preferred Stock, Series O, stated value $50 per share**
*(Title of class)*
**5.375% Non-Cumulative Convertible Series 2004-1 Preferred Stock, stated value $100,000 per share**
*(Title of class)*
**5.10% Non-Cumulative Preferred Stock, Series E, stated value $50 per share**
*(Title of class)*
**5.25% Non-Cumulative Preferred Stock, Series D, stated value $50 per share**
*(Title of class)*

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes o    No ☑

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or 15(d) of the Act. Yes o    No ☑

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☑    No o

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☑

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

| Large accelerated filer ☑ | Accelerated filer o | Non-accelerated filer o (Do not check if a smaller reporting company) | Smaller reporting company o |
|---|---|---|---|

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act). Yes o    No ☑

The aggregate market value of the common stock held by non-affiliates of the registrant computed by reference to the price at which the common stock was last sold on June 30, 2008 (the last business day of the registrant's most recently completed second fiscal quarter) was approximately $20,932 million.

As of January 31, 2009, there were 1,091,230,272 shares of common stock of the registrant outstanding.

**DOCUMENTS INCORPORATED BY REFERENCE:**

None.

**FANNIE MAE**
**(In conservatorship)**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)**

is depleted at which time dividends will be recorded as an increase to accumulated deficit. As of December 31, 2008, the aggregate liquidation preference of the senior preferred stock was $1.0 billion. The Director of FHFA has submitted a request for $15.2 billion from Treasury on our behalf under the terms of the senior preferred stock purchase agreement. Upon receipt of these funds, the aggregate liquidation preference of the senior preferred stock will increase to $16.2 billion. The consideration exchanged for Treasury's commitment has been recorded as a reduction to APIC on the date of issuance.

2. **Summary of Significant Accounting Policies**

*Basis of Presentation*

The accompanying consolidated financial statements have been prepared in accordance with accounting principles generally accepted in the United States of America ("GAAP").

We are currently in conservatorship, with FHFA acting as our conservator. As conservator, FHFA succeeded to all rights, titles, powers and privileges of the company and of any shareholder, officer or directors of the company with respect to the company and its assets. As a result, we are currently under the control of our conservator. FHFA, in its role as conservator, has overall management authority over our business.

We receive, directly and indirectly, substantial support from various agencies of the United States Government, including the Federal Reserve, U.S. Treasury Department, and FHFA, as our conservator and regulator. The Company is dependent upon the continued support of the U.S. Government and these agencies in order to maintain a positive net worth, avoid being placed into receivership, and continue to access the debt markets. Based on consideration of all the relevant conditions and events affecting our operations, including our dependence on the U.S. Government, we continue to operate as a going concern and in accordance with our delegation of authority.

The conservatorship has no specified termination date and the future structure of our business following termination of the conservatorship is uncertain. We do not know when or how the conservatorship will be terminated or what changes to our business structure will be made during or following the termination of the conservatorship. We do not know whether we will exist in the same or a similar form or continue to conduct our business as we did before the conservatorship, or whether the conservatorship will end in receivership. Under the Regulatory Reform Act, FHFA must place us into receivership if the Director of FHFA makes a written determination that our assets are less than our obligations or if we have not been paying our debts, in either case, for a period of 60 days. In addition, we could be put in receivership at the discretion of the Director of FHFA at any time for other reasons, including conditions that FHFA has already asserted existed at the time the Director of FHFA placed us into conservatorship. Placement into receivership would have a material adverse effect on holders of our common stock, preferred stock, debt securities and Fannie Mae MBS. Should we be placed in receivership, different assumptions would be required to determine the carrying value of our assets, which could lead to substantially different financial results.

During the second half of 2008, we began to experience significant deterioration in our access to the unsecured debt markets, particularly for long-term and callable debt, and in the yields on our debt as compared with relevant market benchmarks. These conditions, which became especially pronounced in October and November 2008, have had, and are continuing to have, adverse effects on our business and results of operations. Several factors contributed to the reduced demand for our debt securities, including continued severe market disruptions, market concerns about our capital position and the future of our business (including its future profitability, future structure, regulatory actions and agency status) and the extent of U.S. government support for our business.

On November 25, 2008, the Federal Reserve announced that it would purchase up to $100 billion in direct obligations of the GSEs and up to $500 billion in fixed-rate MBS guaranteed by any of the GSEs by the end

F-11

**CERTIFICATION**

In connection with the Annual Report on Form 10-K of Fannie Mae (formally, the Federal National Mortgage Association) for the year ended December 31, 2008, as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, David M. Johnson, Executive Vice President and Chief Financial Officer of Fannie Mae, certify, pursuant to 18 U.S.C. Section 1350, that to my knowledge:

1. The Report fully complies with the requirements of Section 13(a) or 15(d), as applicable, of the Securities Exchange Act of 1934; and

2. The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of Fannie Mae.

/s/  David M. Johnson
David M. Johnson
Executive Vice President and
Chief Financial Officer

Dated: February 26, 2009

The foregoing certification is being furnished solely pursuant to 18 U.S.C. Section 1350 and is not being filed as part of the Report or as a separate disclosure document.