```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
------------------------------X
FAIRHOLME FUNDS, INC., et al.,    Civil Case Nos. 13-1053,
                                     13-1439, and 13-1288
              Plaintiffs,
        v.                        Washington, D.C.
                                  Tuesday, June 15, 2021
FEDERAL HOUSING FINANCE AGENCY,   3:00 p.m.
et al.,
              Defendants.

------------------------------x

             TRANSCRIPT OF VIDEO STATUS CONFERENCE
           BEFORE THE HONORABLE ROYCE C. LAMBERTH
              UNITED STATES DISTRICT JUDGE


APPEARANCES:

For Plaintiff-Fairholme:   Brian W. Barnes, Esquire
                           COOPER & KIRK, PLLC
                           1523 New Hampshire Ave, NW
                           Washington, DC 20036
                           202-220-9600

For Plaintiff-Arrowood:    Richard M. Zuckerman, Esquire
                           DENTONS US LLP
                           1221 Avenue of the Americas
                           New York, NY 10020
                           (212)398-5213

For Plaintiff-Class:       Hamish Hume, Esquire
                           Boies, Schiller Flexner
                           1401 New York Ave, NW
                           Washington, DC 20005
                           (202) 274-1149

                           Richard D Gluck, Esquire
                           Bernstein, Litowitz, Berger & Grossmann
                           1000 Potomac St. N.W. Suite 500
                           Washington, DC 20007
                           (202) 965-7880

For Defendant-FHFA: Asim Varma, Esquire
                    ARNOLD & PORTER LLP
                    601 Massachusetts Ave., NW
                    Washington, DC 20001
                    (202) 942-5180
```

```
APPEARANCES: (cont'd.)


For Defendant-Freddie Mac: Michael Joseph Ciatti, Esq.
                           KING & SPALDING
                           1700 Pennsylvania Avenue, NW, Suite 200
                           Washington, DC 20006
                           (202)661-7828

For Defendant-Fannie Mae:  Meaghan McLaine VerGow, Esquire
                           O'MELVENY & MYERS LLP
                           1625 Eye Street, NW
                           Washington, DC 20006
                           (202) 383-5300
















Court Reporter:     Lisa Walker Griffith, RPR
                    U.S. District Courthouse
                    Room 6507
                    Washington, D.C.  20001
                    (202) 354-3247
```

```
 1                    P R O C E E D I N G S
 2             THE DEPUTY CLERK:  Good afternoon, Your Honor.
 3   We're on the record for related cases 13-1053, 13-1439 and
 4   13-1288.  Essentially, these are consolidated cases on the
 5   Fairholme Funds, Inc. versus the Federal Housing Finance
 6   Agency.
 7             Counsel, please identify yourselves for the
 8   record.
 9             MR. BARNES:  Good afternoon, Your Honor.  This is
10   Brian Barnes for the Fairholme, plaintiff.
11             MR. ZUCKERMAN:  Good afternoon, Your Honor, this
12   is Richard Zuckerman for the Arrowood plaintiffs.
13             MR. HUME:  And, while we're on the plaintiffs,
14   Your Honor, good afternoon.  This is Hamish Hume in case
15   number 13-1288, the class action for the class plaintiffs.
16   Thank you.
17             MR. GLUCK:  Good afternoon, Your Honor, Richard
18   Gluck of Bernstein, Litowitz, Berger & Grossmann on behalf
19   of the class case, for the class plaintiffs in the 13-1288
20   case.
21             THE COURT:  Okay.
22             MS. VARMA:  For our defendants, but this is Asim
23   Varma on behalf of the Federal Housing Finance Agency, which
24   is a defendant in all the cases.
25             THE COURT:  Okay.  Good afternoon.
```

1          MS. VERGOW:  Good afternoon, Your Honor, this is
2  Meaghan VerGow appearing for Fannie Mae in all of the
3  actions.
4          THE COURT:  Okay.
5          MR. CIATTI:  Good afternoon, Your Honor, this is
6  Michael Ciatti from King & Spalding appearing on behalf of
7  Freddie Mac in all of the actions.
8          THE COURT:  Okay.  Who wants to go first?  Fair
9  Housing, are you the ones we're going beat up most or not?
10         MS. VARMA:  This is Asim Varma.  The parties have
11  jointly asked for a continuance of all of the dates.  I'll
12  let plaintiffs speak for their reasons, but --
13         THE COURT:  I'm hoping the Supreme Court is going
14  to put us all out of our misery, but are they?
15         MS. VARMA:  I'm not sure they are.  I'm a little
16  skeptical.  Plaintiffs are more optimistic than I am.  But I
17  understand the need to, and we are willing to accommodate
18  the plaintiffs in extending the dates.
19         THE COURT:  At least on the experts, yeah.
20         MS. VARMA:  Well, I think probably, if the expert
21  dates are extended, the rest of the dates will need to be as
22  well.
23         THE COURT:  Except for trial.
24         MS. VARMA:  Right.
25         THE COURT:  You know trial is never changed.

1   Judge Gesell taught me long ago.  Once you give a trial
2   date, unless somebody dies, you never change it.  Unless
3   somebody dies, the trial date is going to stick.
4            MS. VARMA:  Well, it may be difficult to meet
5   depending on what the Supreme Court does.
6            THE COURT:  All right.  Anyway, that is a start.
7   Who wants to start?
8            MR. HUME:  Judge Lamberth, this is Hamish Hume for
9   the class plaintiffs.
10           THE COURT:  Okay.
11           MR. HUME:  And thank you.  I think there's a
12  fortunate consensus on the plaintiff side that I can speak
13  for most to some degree.  And thank you very much for
14  convening this status conference, Judge Lamberth.  We are
15  very mindful of what you said in the March 29th order and
16  what you just said about not moving the trial date.  We
17  are -- at the same time, there is a consensus amongst the
18  parties that the decision in the Collins case could have a
19  very significant impact on this case and it is --
20           THE COURT:  We hope.
21           MR. HUME:  Well, yes, I'm sure we are all hoping
22  for slightly different things.  Maybe the one thing we're,
23  the overlap in the venn diagram is that we all hope for
24  expeditious resolution, just in different ways.  It is
25  possible that the decision will have very little impact from

1  our perspective if the plaintiff appellants in Collins lose
2  on all of their claims.  But if they prevail at all on any
3  of the claims, it could have a big impact.
4           And we really do want to acknowledge and apologize
5  for not, both for not explaining well why and to what extent
6  that was in our prior motion.  Also, to be honest, as I
7  reviewed everything and tried to prepare for this, we were a
8  little slow in raising it as an issue that impacts or could
9  impact the schedule in this case.
10          There is a reason for that.  Part of it was that
11 we were hoping they might come down with the decision in the
12 spring, February, March, April, something like that.  It was
13 argued in early December, and we do want to move quickly.
14 But speaking at least for the plaintiffs, the expert damages
15 analysis in particular could be substantially impacted or
16 changed such that we would have spent a lot of money doing
17 one analysis that would then potentially become irrelevant
18 if the plaintiffs prevail in invalidating the net worth
19 sweep.
20          If they do prevail, either on a constitutional --
21 in the plaintiffs in Collins, either on their constitutional
22 structure claim or on their APA claim, then the big question
23 will be, well what does that mean if the net worth sweep is
24 invalidated.  One thing it will mean is there will be no net
25 worth sweep going forward.

1       But what will it mean about what's happened in the
2  last nine years under the net worth sweep during which time,
3  and I don't mean to get into the merits, but it's pretty
4  much undisputed that the dividends under the net worth sweep
5  have exceeded what they would have been under the original
6  deal, the 10 percent dividend, by about $125 billion.
7       So, does invalidating it mean the Treasury gives
8  that money back to the enterprises, which I'm sure they
9  won't want to do?  Does it mean that that money is treated
10 as a redemption of the Treasury senior preferred stock?  And
11 if it is, by our calculations there would still be in excess
12 of 25 billion held by Treasury even after the redemption.
13 So what would happen to that?
14      And the Supreme Court probably is not going to
15 address that.  Although the brief before the Fifth Circuit
16 did say that the plaintiffs had said what they think should
17 happen, which is that the excess dividends should be treated
18 as a redemption and the 25 billion kind of treated as a
19 floating tax credit for liabilities to Treasury.  And the
20 Treasury in the FHFA think that relief is not available
21 under the APA.  So I assume they're going to say the relief
22 would be only prospective.
23      But there will be a lot to grapple with on the
24 damages analysis in this case.  And the thing that we were
25 eager to avoid doing that we didn't do a good job of

1   avoiding and explaining, is the huge damages analysis that
2   then has to be changed.  While we've been working very hard
3   with our experts to prepare that in case this Friday's
4   deadline holds and stays, we really think it would be
5   preferable and more efficient if we could extend that
6   deadline, at least for the experts, to allow us to see what
7   the Supreme Court does and then revisit what the correct
8   analysis is.
9           Now, we have worked with the defendants to try to
10  get an agreement on what the change would look like.  And
11  while it may be presumptuous to do so because the Court may
12  decide no changes was going to happen, there are sort of
13  three alternate proposals of how we could deal with this,
14  all of which I think all three parties agree on.  Then of
15  course there are lots of other ways to go about it.
16          The first would be, the first and most minimal
17  would simply be to -- and I give, credit defendants for this
18  working this out -- to extend the June 18th deadlines to a
19  date that is 21 days after the Collins decision is released.
20  It will be released either a week from yesterday or two
21  weeks from yesterday.
22          And then that 21-day extension, we would then make
23  very minor adjustments to other deadlines later in the
24  schedule in order to keep that May 2022 trial date that you
25  set, which we would prefer to keep all other things being

1   equal too.  So there's that proposal that would do that.

2          The second proposal, which we would prefer because
3   it would be to extend the deadline for expert reports 45
4   days until after the Collins decision is issued.  That is
5   our preference.  But if we do that, I think at least the
6   defendants and we tend to agree with them think we won't be
7   able to hold the trial date, which we know you want to hold.
8   But we would push it either to July or to the first
9   available time on the Court's calendar after the summer next
10  year.

11         The third possibility, which I think is actually
12  our biggest preference but maybe least appetizing to the
13  Court, is to either set no schedule or simply adjourn the
14  June 18th deadline and convene a status, require the parties
15  to submit a status report within a week or 10 days of the
16  Collins decision and have a status conference then to
17  address what should happen in light of what the Court and
18  the Supreme Court has decided.

19         We think that's best because there are a lot of
20  moving parts, including in our view, the defendants
21  disagree, the possibility and the quite real possibility
22  that, if the Supreme Court says the Anti-Injunction Act does
23  not prevent the injunctive relief sought in Collins and the
24  succession clause doesn't prevent derivative claims, the
25  holding in the Supreme Court case could have the effect of

1  in our view reviving some of our derivative claims which
2  would impact our expert reports as well.  The defendants
3  will disagree with that, which is why we can't plan for it.
4  We'd have to see what they say and then probably submit
5  briefing to you to decide.
6          So those are the three proposals on which we
7  agree.  I'm happy to get into other questions about how
8  Collins fit into that case, but I've sort of identified the
9  two biggest.  One is the damages analysis.  The second is
10 the potential for reviving claims.
11         Because I heard Your Honor's view on the
12 importance of trial dates, and we certainly hope there will
13 be no deaths that will cause anything to change, with some
14 trepidation let me just mention a fourth idea that I have
15 not had a chance to discuss with defendants.  And therefore,
16 I think they would want a chance to think about it before it
17 was considered too seriously.
18         There is a possibility of holding the May trial
19 date for liability, which is less likely to cause, the
20 Collins decision is less likely to cause a huge delay.  If
21 anything, it is going to eliminate or vastly simplify what
22 our experts on liability need to say if the Court holds that
23 this was completely unlawful and unexpected of the
24 (inaudible) but then to postpone the damages because it's on
25 damages that the complexity really arises depending on how

1     the defendants react to the potential invalidation of the
2     net worth sweep.
3               So, with apologies to defendants for throwing that
4     out, I did want to just offer that for consideration as a
5     fourth possibility.
6               THE COURT:  Refresh my memory on the two things.
7     One is, did we talk about length of trial originally?
8               MR. HUME:  I don't believe so.  No, I don't
9     believe so.
10              THE COURT:  What were we expecting would be the
11    length of trial?
12              MR. HUME:  I think we can give you our view.  I
13    don't think we've discussed it with the other parties.  I
14    think the liability phase would, I think could be done in a
15    week.  It's a few witnesses and a few experts, and I think
16    it could be done in a week.  It may even be susceptible to
17    summary judgment.  Then I think damages could be done in a
18    week.  So I think the whole trial is a two-week trial.
19              THE COURT:  Is it my recollection this is not jury
20    demandable or am I wrong?
21              MR. HUME:  Good question.  We haven't discussed
22    amongst the parties.  I think we actually did make a jury
23    demand, and it is an implied covenant claim, but we would
24    be, I think the class would be willing to agree to a bench
25    trial in order to accommodate scheduling.

1              THE COURT: Okay. Who else wants to speak to
2     those issues?
3              MS. VARMA: May I?
4              THE COURT: Yes.
5              MS. VARMA: As he stated, we do have a
6     disagreement about what the likelihood of Collins affecting
7     the case. And we will oppose any attempt to expand the case
8     by whatever the Supreme Court might say, including anything
9     so-called revival of claims. I think it is best, given what
10    plaintiffs are suggesting in terms of the case being
11    expanded and being able to litigate those kinds of issues,
12    that we vacate the current schedule and wait to see what
13    happens in the Collins case.
14             Then I think we will be able to agree among the
15    parties on a revised schedule once we see whether there
16    really needs to be a lot of motion practice before we even
17    get to a trial and expert reports about what the scope of
18    the claims are in the case given the Collins decision. So I
19    continue to think that we will probably need to extend the
20    trial date if there is going to be a lot of motion practice
21    on legal issues about what the Supreme Court ruling means
22    for the case.
23             But we are willing, as we mentioned to plaintiffs,
24    to agree to a 45-day extension from Collins of all the
25    dates, including the trial date, to whatever the Court is

1  available for trial.  If the trial date does not change, we
2  believe we can tweak out a revised schedule that has a
3  21-day extension for plaintiffs and tweaks the other dates
4  so that we get to May 16th.  But I don't think that schedule
5  will work if it truly is what plaintiffs hope, which is
6  further litigation, motion practice on what this case is
7  about.
8              THE COURT:  Right.
9              Somebody from Freddie Mac want to say anything?
10             MR. CIATTI:  Nothing further on behalf of Freddie
11 Mac, Your Honor.
12             MS. VERGOW:  No, Your Honor.
13             THE COURT:  Okay.  Well, I really don't have a
14 good feel.  I have done more than my share of Capitol riot
15 cases, so I can't tell.  I think a lot of them are going to
16 plead, but I really don't know.  I just got six more
17 yesterday.  So I keep getting these cases.  I'm assuming
18 most of them are going to plead guilty but you never know
19 because some of them want to litigate.  So it's difficult to
20 tell about my schedule.
21             I do expect to go to Texas again to do trials in
22 the winter time.  I didn't go this year, because we weren't
23 doing trials, but I do expect to be back in Texas in the
24 winter time. So those Capitol cases that don't get finished
25 before February 1st would be tried here.  That could have

1    some effect on the trial schedule here.

2            This obviously will be my oldest trial pending.
3    It's my oldest case of pending trials.  So I have an anxiety
4    about, may have to report to Congress any trial that we have
5    that is pending more than, cases pending more than three
6    years obviously.  These are ancient by our standards.  So,
7    I'll explain to Congress why a judge can't wrap it up and
8    that you are not playing golf every day is why you haven't
9    wrapped it up is sometimes difficult on its surface.  All of
10   you would attest to the facts, but my raw numbers won't help
11   me with these 7-year-old cases, 8-year-old, 9-year-old then.

12           In any event, I guess if the government isn't
13   opposed to the 45 days, I don't have any real reason to
14   object.  If we're talking about a possible bench trial in
15   two weeks, I think that's something that is more workable,
16   and I can work around that.  I was a little worried about
17   what length of time we're talking about.  Two weeks I think
18   is something I understand I can schedule around.

19           Most of these riot cases are not going to be very
20   lengthy.  All the ones I've seen so far, the government's
21   got overwhelming evidence.  They've got the videos.  They've
22   got the evidence.  They're not going to take long.  It's
23   just a matter of a jury doing it.  Nobody's going to waive a
24   jury trial if they don't plea.

25           The other trials I have pending are all going away

1    pretty rapidly.  So I think I could deal with the, if we're
2    talking the two-week range, I think I can deal with living
3    with the 45-day suggestion.
4            MS. VARMA:  This is Asim Varma.  I did not address
5    the length of trial.
6            THE COURT:  Right.  You think two weeks might be
7    optimistic?
8            MS. VARMA:  I think it is optimistic, but on the
9    other hand, I don't know what the scope of the trial is
10   going to be at this point.
11           THE COURT:  Right.
12           MS. VARMA:  But we anticipated that the class
13   might be seeking a jury trial.  So this is the first we're
14   hearing that they're not.
15           THE COURT:  Right.
16           MS. VARMA:  So I haven't quite thought through
17   what a consolidated trial would look like, if that's what's
18   being anticipated by the plaintiffs, and whether that would
19   be something that the defendants would agree to.  But just
20   on an immediate reaction, I think two weeks is a little
21   optimistic.
22           THE COURT:  Okay.  Anybody else want to say
23   anything?
24           Okay.  Mr. Hume, if you want to submit a proposed
25   order, I'll sign it.

1          MR. HUME:  Thank you, Your Honor.  I have great
2  respect for that and great gratitude.  Thank you very much.
3  We'll have something sent over this afternoon.  I'm going to
4  be traveling, but we'll make sure it's submitted by someone.
5          THE COURT:  Okay.  Keep at it.  I appreciate.  I
6  know you all are working hard to try to do this.  I'm
7  looking forward to seeing what the Supreme Court says.
8  Hopefully, they can educate all of us.  Thank you.
9          (Whereupon, the status conference was concluded at
10  2:31 p.m.)

CERTIFICATE OF REPORTER

        I, Lisa Walker Griffith, certify that the foregoing is a correct transcript from the record of the remotely reported proceedings in the above-entitled matter.

        Please Note: This hearing was held in compliance with the COVID-19 pandemic and the standing orders of this court, and is therefore subject to the technological limitations of court reporting remotely, including static, signal interference and other restrictions.

_____  4-18-2022
Lisa Walker Griffith, RPR                        Date