**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FAIRHOLME FUNDS, INC., *et al*., | |
| Plaintiffs, | |
| v. | Civil No. 13-1053 (RCL) |
| FEDERAL HOUSING FINANCE AGENCY, *et al.*, | |
| Defendants. | |
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations | |
| _____ | Miscellaneous No. 13-1288 (RCL) |
| This document relates to: ALL CASES | |

**DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE AND TESTIMONY BY PLAINTIFFS' PROPOSED "SUMMARY WITNESS" SUSAN HARTMAN**

Defendants Federal Housing Finance Agency ("FHFA" or "Conservator"), as Conservator for the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac," and together with Fannie Mae, the "Enterprises,"), and Sandra L. Thompson, in her official capacity as Director of FHFA hereby move to exclude evidence and testimony of Plaintiffs' proposed "summary witness" Susan Hartman for the reasons set forth in the Memorandum in Support filed with this motion.  A proposed order granting the relief requested by this motion is also being filed with this motion.

Dated: September 2, 2022

Respectfully submitted,

 /s/ Asim Varma
Asim Varma (D.C. Bar # 426364)
Howard N. Cayne (D.C. Bar # 331306)
David B. Bergman (D.C. Bar # 435392)
Ian S. Hoffman (D.C. Bar # 983419)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave NW
Washington, D.C. 20001
(202) 942-5000
Asim.Varma@arnoldporter.com
Howard.Cayne@arnoldporter.com
David.Bergman@arnoldporter.com
Ian.Hoffman@arnoldporter.com

*Attorneys for Defendant Federal Housing Finance Agency and Director Sandra L. Thompson*

 /s/ Michael J. Ciatti
Michael J. Ciatti (D.C. Bar #467177)
KING & SPALDING LLP
1700 Pennsylvania Ave. N.W.
Washington, DC 20006
Tel: (202) 661-7828
Fax: (202) 626-3737
mciatti@kslaw.com

*Attorney for the Federal Home Loan Mortgage Corp.*

 /s/ Meaghan VerGow
Meaghan VerGow (D.C. Bar # 977165)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
mvergow@omm.com

*Attorney for the Federal National Mortgage Association*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| FAIRHOLME FUNDS, INC., *et al*.,<br><br>          Plaintiffs,<br><br>     v.<br><br>FEDERAL HOUSING FINANCE<br>AGENCY, *et al.*,<br><br>          Defendants. | Civil No. 13-1053 (RCL) |
| In re Fannie Mae/Freddie Mac Senior<br>Preferred Stock Purchase Agreement Class<br>Action Litigations<br><br>_____<br><br>This document relates to:<br>ALL CASES | Miscellaneous No. 13-1288 (RCL) |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO
EXCLUDE EVIDENCE AND TESTIMONY BY PLAINTIFFS' PROPOSED
"SUMMARY WITNESS" SUSAN HARTMAN**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................1

RELEVANT BACKGROUND .....................................................................................................3

ARGUMENT ................................................................................................................................7

I.    Rule 1006 Serves the Specific and Narrow Purpose of Allowing Admission of a
      "Summary" When the Underlying Records Are Too "Voluminous" to Present....................8

II.   Much of Plaintiffs' Proposed "Summary Evidence" Is Improper Under Rule 1006............10

      A.   Rule 1006 Does Not Permit a Non-Percipient Witness to Simply Read Aloud to the
           Jury Plaintiffs' Curated Excerpts of Their Hand-Picked Documents........................... 10

      B.   Many of the Underlying Records Are Not Sufficiently Voluminous To Justify Use of
           Summary Evidence ...................................................................................................... 14

      C.   Ms. Hartman's Proposed Testimony Goes Far Beyond Merely "Summarizing" and
           Contains Improper Synthesis, Analysis, and Inferences............................................... 16

CONCLUSION...........................................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Otis Elevator Co.*,
   No. 11-10200, 2012 WL 5493383 (E.D. Mich. Nov. 13, 2012)....................................9, 15, 19

*Collins v. Yellen*,
   141 S. Ct. 1761 (2021)........................................................................................................12

*DL v. Dist. of Columbia*,
   05-1437, 2015 WL 6446087 (D.D.C. Oct. 23, 2015) ..........................................................11

*Krakauer v. Dish Network L.L.C.*,
   165 F. Supp. 3d 432 (M.D.N.C. 2016) ................................................................................17

*\*United States v. Abou-Khatwa*,
   40 F.4th 666 (D.C. Cir. 2022).................................................................................8, 9, 16, 19

*United States v. Bray*,
   139 F.3d 1104 (6th Cir. 1998) ..................................................................................8, 14, 17

*United States v. Cooper*,
   949 F.3d 744 (D.C. Cir. 2020)..................................................................................9, 10, 16

*\*United States v. Fahnbulleh*,
   752 F.3d 470 (D.C. Cir. 2014)..........................................................................8, 9, 11, 13

*United States v. Grajales-Montoya*,
   117 F.3d 356 (8th Cir. 1997), *cert. denied*, 522 U.S. 983 (1997)...............................9, 19, 21

*\*United States v. Hemphill*,
   514 F.3d 1350 (D.C. Cir. 2008)................................................................................8, 14, 15

*United States v. Honeywell Int'l Inc.*,
   337 F.R.D. 456 (D.D.C. 2020)............................................................................................16

*United States v. Johnson*,
   444 U.S. 964 (1979)............................................................................................................14

*United States v. Johnson*,
   594 F.2d 1253, 1255 (9th Cir. 1979) ..................................................................................14

*United States v. Lemire*,
   720 F.2d 1327 (D.C. Cir. 1983)..........................................................................................9, 10

*United States v. Mitchell*,
    816 F.3d 865 (D.C. Cir. 2016) ................................................................................9

*United States v. Oloyede*,
    933 F.3d 302 (4th Cir. 2019) ................................................................16, 17, 21

*United States v. White*,
    737 F.3d 1121 (7th Cir. 2013) ............................................................................9, 23

**Statutes**

12 U.S.C. § 4617 ......................................................................................................11, 12

**Rules**

Fed R. Evid. 1006 ................................................................................................. *passim*

**Other Authorities**

8 Handbook of Fed. Evid. § 1006:1 .........................................................................8, 15

Senior Preferred Stock Purchase Agreements, https://www.fhfa.gov/senior-
    preferred-stock-purchase-agreements .......................................................................15

Wright & Miller, Fed. Prac. & Proc. § 8043 ................................................................9

## INTRODUCTION

Defendants move to exclude the improper "summary witness" testimony and exhibits that Plaintiffs propose to present to the jury through Susan Hartman, a professional expert witness, because the proposed testimony and exhibits are outside the scope of permissible "summary" evidence under Rule 1006.  Federal Rule of Evidence 1006 serves a specific and narrow purpose: it promotes basic efficiency and convenience by allowing a party to admit a "summary, chart, or calculation" to prove the contents of underlying records that are so "voluminous" that they "cannot be conveniently examined in court."  Fed. R. Evid. 1006.   It does not broadly allow a party to put on its case through a non-percipient witness, or to use a summary witness to present analysis and inferences that should be offered through a qualified expert witness.  Plaintiffs propose to use their summary witness for both those improper purposes.

Ms. Hartman is a seasoned expert witness employed by the same expert consulting firm that Plaintiffs' damages expert is affiliated with.  Before Plaintiffs contacted her six months ago about serving as their summary witness, Ms. Hartman had never heard of the Third Amendment.  She agreed to take on the role of Plaintiffs' summary witness, at a rate of $850 per hour, though she agreed that "anyone who can read English" could supply most of the testimony she plans to offer at trial.

That appears to be true for much of the testimony Plaintiffs propose that Ms. Hartman present to the jury:  she says she will offer documents into evidence; read excerpts of certain documents into the record; describe for the jury the terms of the Housing and Economic Recovery Act of 2008 ("HERA" or "Recovery Act") and certain provisions of the Senior Preferred Stock Purchase Agreements ("PSPAs") and their amendments, based on descriptions written by Plaintiffs' counsel; and paraphrase the shareholder contracts based on descriptions written by Plaintiffs' counsel.  But none of that is proper summary witness testimony under Rule

1006.  The documents at issue are not voluminous enough to require a summary witness at all.

Moreover, Defendants are willing to stipulate to the underlying facts that Plaintiffs propose that

the summary witness present to the jury. Plaintiffs do not require a summary witness to present

them, and using an experienced expert to deliver Plaintiffs' one-sided narrative falsely and

prejudicially implies to the jury that she endorses that narrative, when in fact she knows nothing

about the facts or the case.

Other aspects of the proposed testimony are equally improper, for different reasons.  For

example, Ms. Hartman proposes to compare Fannie Mae's and Freddie Mac's financial

performance in the two quarters before the Third Amendment was executed with their financial

performance for the same quarters in 2011.   This sort of testimony veers into expert territory; in

fact, Plaintiffs' expert Dr. Bala Dharan prepared the very same analysis.  This is not a neutral

summation that a witness may properly deliver under Rule 1006.  It is not permissible under

Rule 1006 for a summary witness to provide testimony that involves synthesis, analysis, and

conclusions to encourage the jury to draw inferences in Plaintiffs' favor.

Defendants appreciate that offering a factual narrative developed by counsel through a

"witness" with impeccable credentials lends an imprimatur of authority and plausibility.  It

enables Plaintiffs to deliver their narrative through a credible voice who has significant testifying

experience, while excluding from the narrative the content in the documents unfavorable to

Plaintiffs' construction.  Indeed, Plaintiffs' counsel appears to take the position that Ms. Hartman

cannot be questioned about certain contract provisions that were omitted by counsel from the

summaries she proposes to recite to the jury.  But that only confirms that Plaintiffs' misuse of the

Rule would be prejudicial as well as improper.

2

Rule 1006 does not allow a party to hire a professional expert witness with a Wharton MBA to read counsel's construction of the documents into the record, and this Court should not be the first to hold otherwise.

## RELEVANT BACKGROUND

In May 2022, Plaintiffs disclosed that they intend to present evidence at trial through a "summary witness," Susan Hartman. Ms. Hartman is a partner at BVA Group, the same expert consulting firm through which Plaintiffs retained their damages expert Dr. Joseph Mason. Ms. Hartman has an MBA in Finance from the Wharton School of the University of Pennsylvania, and she is a Certified Public Accountant (CPA) and Certified Fraud Examiner. *See* Susan Hartman CV (attached as Exhibit A). For over a decade, she has worked as a professional expert witness in numerous lawsuits, testifying as an expert in roughly 20 depositions and 20 trials. Deposition of Susan Hartman at 9:11-10:9; 11:3-19 (Aug. 23, 2022) ("Hartman Dep.") (excerpts attached as Exhibit B). She has never previously testified as a "summary witness" or in any capacity other than an expert. *Id.* at 11:20-12:3. Ms. Hartman has not done any prior work involving Fannie Mae, Freddie Mac, or FHFA. *Id.* at 22:7-11. Until Plaintiffs contacted her six months ago, she had never heard of the Third Amendment to the PSPAs. *Id.* at 16:19-17:6; 22:7-11.

Like their damages expert Dr. Mason, BVA Group is charging Plaintiffs $850 per hour for Ms. Hartman's work on this case, and she has a team of associates supporting her work, for whom BVA Group is charging Plaintiffs $300 to $650 per hour. *Id.* at 29:5-8; 32:4-8. Ms. Hartman did not prepare any expert report in this case, and she testified that she is not relying on any of her training or expertise in connection with her role as a "summary witness." *Id.* at 20:18-20; 22:3-6.

3

Beginning in May and continuing through August, Plaintiffs have disclosed the expansive scope of Ms. Hartman's proposed "summary witness" testimony.  Specifically, Ms. Hartman plans to present certain calculations that she and her team prepared, including: (1) the funds raised by Fannie through issuance of junior preferred shares and by Freddie through junior preferred shares and common shares; (2) the dividends paid by Fannie and Freddie to private shareholders prior to September 2008; (3) the amounts and timing of Fannie and Freddie's draws from the Treasury commitments; and (4) the dividends paid by Fannie and Freddie to Treasury from September 2008 to the present.[1]  *See* Hartman Dep. Exhibit 1 (Email from M. Barry to A. Varma, July 29, 2022) (attached as Exhibit C).  Plaintiffs have provided the "summary exhibits" that Ms. Hartman prepared with these calculations (Hartman Dep. Exhibit 5, attached here as Exhibit D) as well as "graphics" she intends to use in presenting them to the jury (Hartman Dep. Exhibit 3, attached here as Exhibit E).

In addition, Plaintiffs have stated that Ms. Hartman will testify about multiple other topics that do not involve any data or calculations, including:

- *Terms of Fannie and Freddie Certificates of Designation*:  She "will identify the various certificates of designation for each series of preferred shares of Fannie and Freddie, and of the common shares of Freddie, that are at issue in the litigation, and will offer those certificates into evidence.  Ms. Hartman will explain that although each of the various series of shares have different specifics regarding the amounts of dividends to be paid, each of the certificates entitle the holders of the shares to quarterly dividends as may be declared by Fannie or Freddie's board of directors (as

---

[1]     Plaintiffs previously stated that Ms. Hartman would testify at trial about Fannie's and Freddie's deferred tax assets (DTAs), but Ms. Hartman testified at deposition that she will not be offering any testimony at trial about DTAs or any accounting issues.  Hartman Dep. 53:10-55:10.

applicable).  In addition, Ms. Hartman will explain that the certificates establish a

level of priority for the payment of dividends to the various series of preferred shares,

but all provide that all preferred shares must be paid dividends described in their

respective certificates before any dividends are paid to common stockholders."

Exhibit C (July 29 Email from M. Barry to A. Varma).

- *Terms of the PSPAs and Amendments Thereto*:  "[S]he will … summarize the basic

  terms of the PSPAs and the various amendments," including certain terms of the

  First, Second, Third, and Fourth Amendments as well as certain letter agreements.  *Id.*

  In particular, Ms. Hartman testified in her deposition that she plans to paraphrase

  select provisions of the PSPAs and various amendments, based on a lengthy script

  written by Plaintiffs' counsel.  Hartman Dep. 116:13-117:4.

- *Provisions of HERA*:  Ms. Hartman will explain that "the Housing and Economic

  Recovery Act of 2008 ('HERA') was adopted on July 30, 2008"; she "will explain

  that HERA created the Federal Housing Finance Agency ('FHFA'), with regulatory

  authority over Fannie Mae and Freddie Mac;" and she "will offer into evidence 12

  U.S.C. § 4617 and will read into the record the following subsections of that statute:

  (a)(1) and (2), and (b)(1), (2)(A)-(D), (G) and (H)."  Ex. C (July 29 Email from M.

  Barry to A. Varma).

- *Public Statements By Government Officials*:  Ms. Hartman "will offer into evidence"

  and "will read into the record" certain portions of certain "public statements made by

  government officials during the week that the conservatorships were imposed

  regarding the purpose of the conservatorship," including a public statement by

  FHFA's then-Director.  *Id.*

- *Fannie and Freddie Financials*:  Ms. Hartman "will offer into evidence the Form 8K filed by Freddie Mac on September 11, 2008, and will read certain portions into the record."  *Id.*  She also will "summarize, and read into the record evidence about the GSE's financial performance in the first and second quarters of 2012.  Specifically, Ms. Hartman will explain that in the first quarter of 2012, Fannie Mae recorded earnings (comprehensive income) of $3.1 billion, compared to a comprehensive loss of $6.3 billion in the first quarter of 2011.  Ms. Hartman will also explain that in the second quarter of 2012, Fannie Mae recorded record earnings (comprehensive income) of $5.4 billion, compared to a comprehensive loss and net loss of $2.9 billion for the second quarter of 2011.  Ms. Hartman will offer into evidence the Form 10Qs filed by Fannie Mae for the first and second quarters of 2012.  Ms. Hartman will explain that in the first quarter of 2012, Freddie Mac recorded comprehensive income of $1.8 billion.  Ms. Hartman will also explain that in the second quarter of 2012, Freddie Mac recorded earnings (comprehensive income) of $2.9 billion, compared to a comprehensive loss of $1.1 billion for the second quarter of 2011.  Ms. Hartman will offer into evidence the Form 10Qs filed by Freddie Mac for the first and second quarters of 2012."  *Id.* (citations omitted).  "Ms. Hartman will offer into evidence Minutes of a Meeting of the Board of Directors of Fannie Mae dated July 20, 2012, and will read certain provisions of those minutes into evidence."  *Id.*  And "Ms. Hartman will offer into evidence the Agenda and Summary Materials distributed to the Fannie Mae Board of Directors in connection with the July 20, 2012 meeting, and will read certain portions of those materials into the record."  *Id.*

- *Timeline of Events*:  Ms. Hartman intends to present a timeline that lists: "[t]he date HERA was adopted, the date of the implementation of the Conservatorship, as well as the dates of the PSPA, the First Amendment, the Second Amendment, the Third Amendment, and the Fourth Amendment to the PSPA or the PSPA Stock Certificates, as well as the First and Second Letter Agreements on Capital Reserves."  *Id.*

- *Housing Statistics*:  She "will introduce into evidence publicly available housing statistics, specifically the S&P/Case-Shiller U.S. National Home Price index."  *Id.*

Pursuant to the parties' agreement regarding trial witnesses not previously deposed, Defendants' counsel deposed Ms. Hartman on August 23.

## ARGUMENT

Much of Ms. Hartman's proposed testimony clearly fails to meet the basic requirements of Rule 1006, and it would constitute a serious misuse of the rule to improperly have a professional expert witness present significant factual portions of their case.  As an initial matter, the vast majority of Ms. Hartman's proposed testimony is not a "summary" at all, but rather a one-sided presentation of document excerpts curated by Plaintiffs' counsel to be read by Ms. Hartman to the jury.  The records from which Plaintiffs draw those excerpts are not "voluminous" and can readily be presented in court in full.  Moreover, several aspects of Ms. Hartman's proposed testimony involve analysis and inferences that favor Plaintiffs and would be delivered to the jury as "facts" by a witness who is functioning as a paid expert.  Such testimony is not proper under Rule 1006 and should be excluded.

Regardless of whether certain of Ms. Hartman's data and calculations could qualify as proper summary evidence under Rule 1006, there is no justification for Plaintiffs to call Ms. Hartman to present that information.  The approach is especially inappropriate and prejudicial

when Defendants are willing to stipulate to data and calculations, including:   (1) the amount of

the funds raised by Fannie through issuance of junior preferred shares and by Freddie through

junior preferred shares and common shares; (2) the amount of dividends paid by Fannie and

Freddie to private shareholders prior to September 2008; (3) the amount and timing of Fannie

and Freddie's draws from the Treasury commitments; (4) the amount of the cash dividends paid

by Fannie and Freddie to Treasury from September 2008 to the present; and (5) the amount of

the Fannie and Freddie's liquidation preference from September 2008 to the present.[2]

**I.**   **Rule 1006 Serves the Specific and Narrow Purpose of Allowing Admission of a "Summary" When the Underlying Records Are Too "Voluminous" to Present**

Federal Rule of Evidence 1006, titled "Summaries to Prove Content," permits the

admission of a "summary, chart, or calculation to prove the content of voluminous writings,

recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006.

On its face, this rule serves a specific and narrow purpose, with safeguards limiting its use.

The evidence itself must be a "summary, chart, or calculation," and the underlying

records must be "so voluminous that comprehension would be 'difficult' and 'inconvenient,'"

thereby justifying the use of a "summary." *United States v. Hemphill*, 514 F.3d 1350, 1358

(D.C. Cir. 2008) (quoting *United States v. Bray*, 139 F.3d 1104, 1109–10 (6th Cir. 1998)).  As

the Advisory Committee Notes to Rule 1006 explain, summary evidence is appropriate when it

"offers the only practicable means of making [the] contents [of voluminous records] available to

judge and jury."  Fed. R. Evid. 1006 Adv. Comm. Notes; *see also* 8 Handbook of Fed. Evid.

§ 1006:1 (summary evidence is appropriate when it is "the only method of intelligible

---

[2]   There were some immaterial computational errors in the calculations done by Ms. Hartman's team and Defendants will identify the corrections to Plaintiffs.  Because the manner in which some of the data is presented potentially conveys opinion testimony, Defendants are agreeable only to stipulating to the underlying data.

presentation"). In addition, the underlying voluminous records must be admissible and "reasonably available for inspection and copying," *United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014), and the summary of those voluminous records must be "accurate and nonprejudicial." *United States v. Abou-Khatwa*, 40 F.4th 666, 685 (D.C. Cir. 2022) (quoting *United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983)). Unlike demonstrative evidence permitted under Rule 611(a), a "summary" admitted under Rule 1006 is substantive evidence such that the underlying records themselves need not be admitted. *United States v. White*, 737 F.3d 1121, 1135–36 (7th Cir. 2013).

Rule 1006 contemplates that the individual who prepared the summary must be the testifying witness at trial. *Fahnbulleh*, 752 F.3d at 479 ("For a summary of documents to be admissible . . . *the witness who prepared the summary should introduce it*."). Similarly, the summary must "have been prepared by a witness available for cross-examination, not by the lawyers trying the case," and more specifically, bars a summary that "is a written argument." *United States v. Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir. 1997), *cert. denied*, 522 U.S. 983 (1997); *see also Anderson v. Otis Elevator Co.*, No. 11-10200, 2012 WL 5493383, at \*5 (E.D. Mich. Nov. 13, 2012) (excluding summary that was "not summarizing one piece of particularly voluminous evidence, but rather attempting to compile various pieces of evidence, some of which are not voluminous at all, into a summary that demonstrates Plaintiffs' particular view of the evidence.").

Consistent with the rule's plain text and narrow purpose, courts must impose "appropriate safeguards" on the use of summary evidence. Fed. R. Evid. 1006 Adv. Comm. Notes. Importantly, a court must ensure that summary evidence does not "usurp the jury's fact-finding function by summarizing or describing not only what is in evidence but also what inferences

should be drawn from that evidence." *Abou-Khatwa*, 40 F.4th at 685 (quoting *United States v. Cooper*, 949 F.3d 744, 750 (D.C. Cir. 2020)). Accordingly, a summary witness "should not draw controversial inferences or pronounce judgment." *Id.* (quoting *United States v. Mitchell*, 816 F.3d 865, 877 (D.C. Cir. 2016)); *see also* Wright & Miller, Fed. Prac. & Proc. § 8043 (cautioning that "there is a difference between mere summary and complex synthesis" and that summary evidence must not veer into expert opinion). "Another danger to be guarded against is that the jury will treat summary testimony 'as additional evidence or as corroborative of the truth,'" rather than just a compilation of underlying voluminous records into a manageable format. *Cooper*, 949 F.3d at 750 (quoting *Lemire*, 720 F.2d at 1348). If testimony veers beyond merely summarizing, Rule 1006 does not allow its admission.

## II.   Much of Plaintiffs' Proposed "Summary Evidence" Is Improper Under Rule 1006

### A.   Rule 1006 Does Not Permit a Non-Percipient Witness to Simply Read Aloud to the Jury Plaintiffs' Curated Excerpts of Their Hand-Picked Documents

One of Plaintiffs' primary intended uses for Ms. Hartman is to have her "offer" certain documents into evidence as if she were a sponsoring witness, and then have her read Plaintiffs' hand-selected excerpts of those documents verbatim into the record. These documents include:

- Statement of FHFA Director James B. Lockhart dated September 7, 2008, attached as Exhibit F;

- Federal Housing Finance Agency Fact Sheet, titled "Questions and Answers on Conservatorship," dated September 7, 2008 (FHFA-DDC--0017202), attached as Exhibit G;

- October 20, 2008 presentation by FHFA (FHFA00047705), attached as Exhibit H;

- Form 8K filed by Freddie Mac on September 11, 2008, attached as Exhibit I;

- Minutes of a Meeting of the Board of Directors of Fannie Mae dated July 20, 2012 (FM_Fairholme_CFC-00003142), attached as Exhibit J;

- Agenda and Summary Materials distributed to the Fannie Mae Board of Directors in connection with the July 20, 2012 meeting (FM_Fairholme_CFC-00000255), attached as Exhibit K;

- July 13, 2012 Email from Bradford Martin to others at FHFA containing meeting minutes from Fannie Mae Executive Management Meeting (FHFA00047889), attached as Exhibit L; and

- 12 U.S.C. § 4617, attached as Exhibit M.[3]

Ms. Hartman testified at her deposition that she played no role in selecting these particular documents, that she provided no input on which excerpts she would read into the record, and that she was not told (and did not ask) why Plaintiffs had chosen these documents and excerpts. Hartman Dep. at 65:1-19; 67:2-11.  She also testified that she has no intention of summarizing or providing any additional testimony beyond simply reading the specified portions verbatim.  *Id.* at 67:21-68:17.  Indeed, she agreed that "*anyone who can read English*" could perform this task, *id.*, and when asked if she had any idea why Plaintiffs were paying her $850 per hour to "just read documents out loud at trial," she responded, "I don't have an understanding of that."  *Id.* at 68:18-69:1.  She had not even read many of the documents at the time of her deposition.  *See, e.g., id.* at 127:6-22 (had not read Freddie Mac Form 8-K from Sept. 11, 2008).  Putting aside the many ways that this proposed technique is improper, Ms. Hartman's admission that she had nothing to do with the selection of these excerpts is a standalone reason to exclude the testimony.

---

[3] All attached copies of these documents, which Plaintiffs' counsel produced to Defendants on August 22, contain highlighting that shows the portions that Plaintiffs' counsel will ask Ms. Hartman to read aloud and/or summarize.

*See, e.g., United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014) ("For a summary of documents to be admissible, the documents must be so voluminous as to make comprehension by the jury difficult and inconvenient . . . and *the witness who prepared the summary should introduce it*."); *accord DL v. Dist. of Columbia*, 05-1437, 2015 WL 6446087, at *5 (D.D.C. Oct. 23, 2015) (Lamberth, J.) ("requir[ing] the lawyer who prepared [the Rule 1006 summary] to testify to the facts surrounding its creation"). Plaintiffs have provided no basis for Ms. Hartman to serve as the sponsoring witness for the introduction of these documents, such as an internal FHFA email or Fannie Mae board meeting materials. She did not prepare these documents and she did not rely on these documents as the basis for any of the proposed summaries she did not write.

Moreover, the most blatant violation of Rule 1006 relates to the last item listed above: 12 U.S.C. § 4617. Plaintiffs propose that Ms. Hartman read cherry-picked subsections from HERA, selectively skipping over parts of the law that Plaintiffs apparently deem unhelpful. For example, Plaintiffs have represented that she will read into the record § 4617(a)(1) and (2), and (b)(1), and (b)(2)(A), (B), (C), (D), (G), and (H). For subsection (b)(2), Ms. Hartman would stop reading before she got to (b)(2)(J)(ii), which states that "[t]he Agency may, as conservator or receiver . . . take any action authorized by this section, which the Agency determines is in the best interests of the regulated entity or the Agency." 12 U.S.C. § 4617(b)(2)(J)(ii) (Exhibit M at p. 9). This provision of HERA, known as the "best interests" clause, is vital to the case and it is telling that Plaintiffs want Ms. Hartman to exclude it from her recitation. *See, e.g.*, Defs.' Mot. for Summ. J. at 3, 12–14 (Mar. 21, 2022) (ECF No. 143) (No. 1:13-mc-01288-RCL) (discussing the "best interests" clause at 12 U.S.C. § 4617(b)(2)(J)(ii)); *Collins v. Yellen*, 141 S. Ct. 1761, 1776–78, 1785 (2021) (same). Furthermore, Ms. Hartman testified at deposition that she has no

legal training, did not know what "12 U.S.C. § 4617" is, or even what the acronym "U.S.C." stands for (she incorrectly guessed "Supreme Court").  Hartman Dep. 213:11-14.  It would be an extreme distortion of Rule 1006 to allow a summary witness simply to recite a statute word for word into the record; and would be worse still for that witness to omit, at counsel's discretion, the parts of the statute that Plaintiffs would prefer that the jury not hear.  And in any event, it is the place of the judge, not a "summary witness," to interpret a statute and to instruct the jury on which parts of the statute are relevant to the case.

In addition to reading the hand-picked excerpts aloud, Plaintiffs intend to have Ms. Hartman "introduce into evidence publicly available housing statistics, specifically the S&P/Case-Shiller U.S. National Home Price index."  Ex. C.  When questioned at her deposition it became clear that the proposed testimony is not a summary at all.  Rather, she proposes to present to the jury a graphic (Exhibit E at 12–13) which she and her team did not prepare, but rather "pulled the graphic directly from the Case-Schiller website." Hartman Dep. 279:15-280:10.  Indeed, Ms. Hartman and her team had never heard of the S&P/Case-Schiller index before this project.  *Id.* at 282:6-19.  They simply "put in a date range" and the "website then produced this graphic," which Ms. Hartman's team embedded into her proposed summary exhibits.  *Id.* at 281:3-17.  The date range and any other parameters that Ms. Hartman's team plugged into the Case-Schiller website were solely determined by Plaintiffs' counsel.  *Id.* at 284:6-11.  Ms. Hartman did not prepare the summary if its parameters were directed by Plaintiffs' counsel.  This is improper; she cannot testify about a graphic, which even if it is was a summary under Rule 1006, she did not prepare.  *See Fahnbulleh*, 752 F.3d at 479 (holding that the person who prepared the Rule 1006 summary must be the one to testify about it).

If Rule 1006 could be applied in this manner, there would be nothing stopping litigants from routinely hiring well-credentialed professional testifiers (who have not satisfied the requirements for being an expert witness) to simply sit before the jury and read out loud, one by one, all of the documents that the party considered to be its best evidence into the record, without any effort whatsoever to summarize or compile the contents. The rule itself is titled "Summaries to Prove Content"—yet, Plaintiffs do not offer even a feigned attempt to summarize the documents at issue. Thus, Plaintiffs fail to meet the basic requirement of Rule 1006 and this proposed testimony should be excluded. And to the extent that Plaintiffs intend to use the same tactic with any other documents beyond those on the above list (such as the PSPAs and various amendments and shareholder certificate of designations), testimony reciting excerpts of those documents should similarly be excluded.

### B.    Many of the Underlying Records Are Not Sufficiently Voluminous To Justify Use of Summary Evidence

A key requirement of Rule 1006 is that a party may admit a summary only when the underlying records are so "voluminous" that they "cannot be conveniently examined in court." Fed. R. Evid. 1006. As noted above, the records must be "so voluminous that comprehension would be 'difficult' and 'inconvenient.'" *Hemphill*, 514 F.3d at 1358 (quoting *Bray*, 139 F.3d at 1109–10). "The purpose of Rule 1006 is to allow the use of summaries when the volume of documents being summarized is so large as to make their use impractical or impossible." *U.S. v. Johnson*, 594 F.2d 1253, 1255 (9th Cir. 1979), *cert. denied*, 444 U.S. 964 (1979). Where the underlying records are not sufficiently voluminous, there is no valid basis for admitting a "summary" and Rule 1006 does not apply at all.

Many of the records that Plaintiffs propose to "summarize" via Ms. Hartman's testimony are nowhere near sufficiently voluminous to justify the use of a "summary" under Rule 1006.

14

Rather, the underlying records can be "conveniently examined in court" without any need for a "summary."

*First*, neither § 4617 as a whole nor the specific subsections that Plaintiffs want Ms. Hartman to read to the jury are "voluminous." Plaintiffs' printed version of § 4617 is only 59 pages, and the specified subsections fit on three printed pages. *See* Exhibit M. Indeed, Plaintiffs have said that they intend for Ms. Hartman to "offer" all of § 4617 into evidence, and yet Ms. Hartman made clear that she is only going to read the discrete subsections chosen by Plaintiffs. This statute is demonstrably not "voluminous," and Ms. Hartman is not attempting to summarize it in any event.

*Second*, the PSPAs and various amendments—perhaps the most important documents in this litigation—are likewise manageable without any resort to a "summary." The PSPAs are 15 pages each, one for Fannie Mae and one for Freddie Mac. The four amendments are even shorter—5 pages, 6 pages, 8 pages, and 11 pages. The two letter agreements are shorter still— 3 pages and 5 pages. Thus, a full set of the PSPA plus amendments and letter agreements for Fannie would be 53 pages, and the full set for Freddie is likewise 53 pages (because there is virtually complete duplication between the Fannie and Freddie sets).[4] In complex litigation like this, critically important records totaling 53 pages (or even 106 pages)—pages that contain the key information at the heart of this breach of contract case—cannot be considered so "voluminous" that they "cannot be conveniently examined in court." Fed. R. Evid. 1006; *see, e.g., Hemphill*, 514 F.3d at 1358 (underlying records must be "so voluminous that comprehension would be 'difficult' and 'inconvenient'"); Fed. R. Evid. 1006 Adv. Comm. Notes

---

[4] *See* Senior Preferred Stock Purchase Agreements (accessed Aug. 27, 2022), https://www.fhfa.gov/senior-preferred-stock-purchase-agreements (containing links to PSPAs, amendments, and letter agreements).

(summary evidence is appropriate when it "offers the only practicable means of making [the] contents [of voluminous records] available to judge and jury"); 8 Handbook of Fed. Evid. § 1006:1 (summary evidence is appropriate when it is "the only method of intelligible presentation").  Rule 1006 therefore does not authorize admission of a "summary" of them. Here, Plaintiffs are attempting to cut and paste a presentation to jurors that misrepresents documents and data that will already be in evidence or can be stipulated to by the parties.  This is improper under Rule 1006.  *See, e.g., Anderson v. Otis Elevator Co.*, No. 11-10200, 2012 WL 5493383 (E.D. Mich. Nov. 13, 2012) (excluding summary evidence when the summary was "not summarizing one piece of particularly voluminous evidence, but rather attempting to compile various pieces of evidence, some of which are not voluminous at all, into a summary that demonstrates Plaintiffs' particular view of the evidence.")

### C.   Ms. Hartman's Proposed Testimony Goes Far Beyond Merely "Summarizing" and Contains Improper Synthesis, Analysis, and Inferences

Much of Ms. Hartman's proposed "summary" testimony suffers from another critical flaw—it goes far beyond a mere summary and instead is riddled with synthesis, characterizations, and inferences that favor Plaintiffs.  This testimony is not permitted under Rule 1006 and should be excluded.

Summary testimony must not "usurp the jury's fact-finding function by summarizing or describing not only what is in evidence but also what inferences should be drawn from that evidence."  *Abou-Khatwa*, 40 F.4th at 685 (quoting *Cooper*, 949 F.3d at 750) (finding that part of the proposed summary testimony "crossed the line by making impermissible inferences from the documentary evidence" and "went too far" because the summary witness was "no longer summarizing the voluminous records reviewed but instead was adding her own inference . . . In other words, she went beyond summarizing and started opining.").  If summary evidence veers

into conclusions or opinions, it cannot be admitted under Rule 1006 and should instead be treated as expert testimony subject to Rules 702 and 703, triggering the rules for timely expert disclosures during discovery.  *See, e.g.*, *United States v. Honeywell Int'l Inc*., 337 F.R.D. 456 (D.D.C. 2020) (excluding evidence in which the summary witness described information from expert reports, offered his own conclusion, and offered a rationale for an absence of certain evidence).  In *United States v. Oloyede*, 933 F.3d 302 (4th Cir. 2019), the Fourth Circuit held that the district court had improperly admitted a proffered summary under Rule 1006 because it was "seeking to help the jury understand how various related records demonstrated a pattern of suspicious activity engaged in by the defendants," rather than simply compiling voluminous records.  *Id.* at 311.  The court noted that Rule 1006 may not be used to present "a skewed selection of *some* of the [underlying] documents to further the proponent's theory of the case." *Id.* (emphasis in original); *see also Krakauer v. Dish Network L.L.C.*, 165 F. Supp. 3d 432, 439 (M.D.N.C. 2016) ("[T]o be admissible under Rule 1006, a summary document . . . cannot be presented in a misleading manner or be 'embellished by or annotated with the conclusions of or inferences drawn by the proponent.'" (quoting *Bray*, 139 F.3d at 1110)).

Here, some of the proposed testimony of Plaintiffs' summary witness Ms. Hartman veers far beyond neutral summary into inferences, conclusions, and opinions.

*First*, Plaintiffs propose that Ms. Hartman will:

 "summarize, and read into the record evidence about the GSE's financial performance in the first and second quarters of 2012.  Specifically, Ms. Hartman will explain that in the first quarter of 2012, Fannie Mae recorded earnings (comprehensive income) of $3.1 billion, compared to a comprehensive loss of $6.3 billion in the first quarter of 2011.  Ms. Hartman will also explain that in the second quarter of 2012, Fannie Mae recorded record earnings (comprehensive income) of $5.4 billion, compared to a comprehensive loss and net loss of $2.9 billion for the second quarter of 2011.  Ms. Hartman will offer into evidence the Form 10Qs filed by Fannie Mae for the first and second quarters of 2012."

17

Exhibit C.  Plaintiffs also propose that Ms. Hartman will perform the same analysis for

Freddie Mac, and will offer into evidence the Form 10-Qs filed by Freddie Mac for those same

periods.  Ms. Hartman testified that this testimony would be accompanied by a chart

demonstrating the year-over-year comparison. This analysis is an improper use of Rule 1006.  As

an initial matter, it is skewed and misleading—Plaintiffs propose that Ms. Hartman compare the

first two quarters of 2011 with the first two quarters of 2012, without the context of any other

quarters at all, an analysis that is highly suggestive and supportive of Plaintiffs' theory of the

case—that the Enterprises' financial condition was on an irreversible upward trajectory.  The

decision to focus on those particular quarters, to the exclusion of all surrounding periods, is a

lawyer-driven decision and, if anything, would be more appropriate for an expert witness, not for

the jury to hear from Plaintiffs' designated summary witness (who did not provide any input into

this analysis).  *See* Hartman Dep. 251:20-252:9 (Ms. Hartman testifying that she did not know

why Plaintiffs' counsel asked her to compare the year-over-year comprehensive income for

Fannie and Freddie for only the first and second quarters of 2011 and 2012, and she did not

inquire further).  Plaintiffs cannot simply hire an "off-duty" testifying expert witness under the

guise of a fact witness to advance their own arguments for which they do not intend to offer

another sufficient percipient witness.  Indeed, this analysis actually *was* performed by one of

Plaintiffs' experts—Dr. Bala Dharan—and Plaintiffs could easily have Dr. Dharan testify as to

this comparison, rather than presenting it to the jury characterized as "just the facts."  *See* Expert

Report of Bala Dharan, Ph.D (Aug. 12, 2021) (ECF No. 164-1) (No. 1:13-mc-01288-RCL).

Moreover, Plaintiffs have taken the remarkable position that even if Ms. Hartman is permitted to

offer these SEC filings into evidence, in their entirety, Defendants cannot ask questions about the

extensive filings beyond the very limited and hand-selected portions that Plaintiffs have

highlighted.  *See* Hartman Dep. at 258:11-15 (objecting "because this exceeds her scope of her testimony as a summary witness. We didn't designate this for her to read … into the record."). This is wholly improper.

*Second*, although Plaintiffs provided descriptions of Ms. Hartman's proposed "summaries" of the PSPAs and their amendments and letter agreements, those descriptions are filled with improper synthesis and analysis under Rule 1006.[5]  This set of non-voluminous documents is central to Plaintiffs' sole claim at trial that the Third Amendment, an 8-page document, breached the implied covenant of good faith and fair dealing in Fannie's and Freddie's shareholder contracts.  It is wholly inappropriate for Plaintiffs to have a summary witness "explain" or "paraphrase" the Third Amendment—apparently based on descriptions drafted by Plaintiffs' counsel—and then offer it into evidence.  The same is true for the original PSPAs and the other amendments and letter agreements.  Ms. Hartman testified that she did not plan to read aloud any portions of the relatively short PSPAs, but would rather "call out specifically certain provisions that the plaintiffs' counsel identified to [her]" and then "paraphrase those provisions," and that paraphrasing "will be consistent with" what Plaintiffs' counsel wrote in their July 29 email, without her input.  Hartman Dep. 121:2-10.  This is plainly improper.  Courts have found that Rule 1006 contemplates that the summary "will have been prepared by a witness available for cross-examination, *not by the lawyers trying the case*," and more specifically, bars a summary that "is a written argument." *United States v. Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir. 1997), *cert. denied*, 522 U.S. 983 (1997) (emphasis added); *see also Anderson*, 2012 WL 5493383 at *5 (excluding summary evidence when the

---

[5] Ms. Hartman testified that she did not provide any input into the drafting of these descriptions, and that although she would not be memorizing them or reading them verbatim, her anticipated summaries will be "consistent with" Plaintiffs' descriptions.  Hartman Dep. 121:2-10.

summary was "not summarizing one piece of particularly voluminous evidence, but rather attempting to compile various pieces of evidence, some of which are not voluminous at all, into a summary that demonstrates Plaintiffs' particular view of the evidence.").

Ms. Hartman's testimony (which will plainly be directed by Plaintiffs' counsel) will inherently be filled with inferences that "usurp the jury's fact-finding function" and go "beyond summarizing and start[] opining." *Abou-Khatwa*, 40 F.4th at 685.   She is a lay witness with no experience in legal contracts.  She will have no input on what terms are "paraphrased," why and how they were chosen, and whether the "paraphrased" terms are biased and cross over into opinion testimony beyond that of a summary witness.  Nothing prevents Plaintiffs from introducing the PSPAs and their amendments and letter agreements, in full, through actual fact witnesses, and Plaintiffs can then make their own arguments about the significance of certain provisions in these documents.  What Plaintiffs cannot do is call Ms. Hartman to the stand to testify as to interpretations, characterizations, and inferences about these agreements (indeed, interpretation of the contract is ultimately within the province of the Court, not the jury).

*Third*, Ms. Hartman's proposed testimony regarding the Fannie and Freddie certificates of designation suffers the same flaw.  In addition to the mere "existence of the certificates of designation," Plaintiffs have stated that Ms. Hartman "will explain that although each of the various series of shares have different specifics regarding the amounts of dividends to be paid, each of the certificates entitle the holders of the shares to quarterly dividends as may be declared by Fannie or Freddie's board of directors (as applicable)," and she "will explain that the certificates establish a level of priority for the payment of dividends to the various series of preferred shares, but all provide that all preferred shares must be paid dividends described in their respective certificates before any dividends are paid to common stockholders."  Ex. C.

Plaintiffs are infusing this testimony regarding the certificates of designation with their own preferred interpretation of which terms should be called out as most important.  It unclear whether Plaintiffs intend Ms. Hartman to actually provide testimony in the form of a summary, or if she will also be reading pre-designated portions of the certificates into the record.  *See* Hartman Dep. at 83:16-84:19.  Regardless, she will be following the script that Plaintiffs have written for her.  *Id.* at 86:2-19 ("Q: …[Y]ou are effectively going to read or recite what the plaintiffs' counsel have written here about certain terms of the certificates, right? A. Yes, I'm going to discuss certain terms of the certificates. Q. Okay. And you're going to explain those terms of the certificates, which the plaintiffs' counsel identified, and you're going to explain them in the manner in which they are described here in the July 29th e-mail, right? A: Yes.").  This is a plainly improper use of a summary witness.  *See Grajales-Montoya*, 117 F.3d at 361 (excluding summary witness testimony that is essentially a "written argument" by counsel).   The judgment of Plaintiffs' counsel regarding which terms are relevant to the case and in what context, as well as which are not relevant, is necessarily intended to prod the jury to make inferences favorable to the plaintiffs.  Such testimony falls well outside the narrowly defined parameters of Rule 1006.

 *Fourth*, Plaintiffs propose that Ms. Hartman "will read into the record the provisions of HERA that describe the purpose of the conservatorship, and public statements made by government officials during the week that the conservatorships were imposed regarding the purpose of the conservatorship."  Exhibit C.  As described above, such testimony should be excluded because it is not a "summary" and also plainly does not fit the requirement of being "so voluminous that it cannot be conveniently examined in court."  *See* Section II.B.  Further, in response to Defendants' request for a description of this proposed testimony, Plaintiffs provided

a list of excerpts from HERA, public statements, cherry-picked record evidence, a Form 8-K for Freddie Mac from 2008, and materials from a 2012 Fannie Mae board meeting.  *See* Exhibit C. This haphazard, scattershot approach to summary testimony would be a wholly improper use of Rule 1006.  Ms. Hartman's proposed testimony is plainly geared toward suggesting that the jury make certain inferences as to how these carefully curated documents are related and the conclusions that should be drawn as to "the purpose of the conservatorship."  *See United States v. Oloyede*, 933 F.3d 302 (4th Cir. 2019) (rejecting Rule 1006 summary because it was "seeking to help the jury understand how various related records demonstrated a pattern of suspicious activity engaged in by the defendants," rather than simply compiling voluminous records and noting that Rule 1006 evidence may not be used to present "a skewed selection of *some* of the [underlying] documents to further the proponent's theory of the case.").  Indeed, Plaintiffs seem to be trying to utilize a Rule 1006 witness to present their case as to the purpose of the conservatorship, document by document, with barely any pretense of a summary of voluminous records.  The Court should reject this.

*Finally*, the "Timeline" Plaintiffs propose Ms. Hartman represent to the jury goes far beyond simply stating key dates.  It adds improper synthesis, omits key information that would provide necessary context, and involves application of judgment.  *See* Exhibit D (proposed summary exhibits); Exhibit E (proposed graphics).  For example, the Timeline lists the following events: "May 6, 2009: First Amendment to the PSPA"; "Dec 24, 2009: Second Amendment to the PSPA"; "Aug 17, 2012: Third Amendment executed"; and "Jan 1, 2013: Third Amendment's Net Worth Sweep takes effect." Exhibit E at 22.  When asked at her deposition, Ms. Hartman noted that she did not have any input into the phrasing of these events, or why the Third

Amendment is described differently than the First and Second.  Hartman Dep. 110:16-19.  The timeline includes three additional "events":

- "Dec 2017: GSE reserve set at $3B each, and Treasury Liquidation Preference increased by $3B per GSE ($6B total)

- Q3 2019: GSEs stop paying net worth as a cash sweep dividend; Treasury Liquidation Preference increased by net worth increase each quarter

- Q2 2022:  Current total cash dividends + net worth LP increases sent to Treasury: $385.3B"

Exhibit E at 22.  Ms. Hartman testified that she did not know the significance of these dates or figures, did not personally assemble this timeline, and agreed that it was not even a summary other than "just a chronological timeline of events that were selected by the plaintiffs' counsel without any input from [Ms. Hartman]."  Hartman Dep. at 108:4-19; *see also id.* at 110:11-18 ("You and your staff just didn't have any input at all on what particular events either are or are not included on this timeline, right? These events were just given to you and you found their dates and included them, right? A. Correct.").   The timeline also omits key dates and information.  A more complete timeline might note, for example, that January 1, 2013, when the Third Amendment became effective, was also the date on which the Treasury Commitment was capped again under the terms of the Second Amendment.  But such information is excluded from Ms. Hartman's proposed exhibit.  Indeed, such a timeline might be more appropriate as a Rule 611(a) demonstrative, which is "meant to facilitate the presentation of evidence already in the record." *United States v. White*, 737 F.3d 1121, 1135–36 (7th Cir. 2013).  Such demonstratives "are not substantive evidence—instead, the summaries are meant to aid the jury in its understanding of evidence that has already been admitted." *Id.*  Thus, when parties use

demonstratives, the jury must be instructed "that such summaries are not evidence and are meant only to aid the jury in its evaluation of other evidence." *Id.* In contrast, summary evidence admitted under Rule 1006 is substantive evidence and therefore must be firmly rooted in some identifiable underlying source that is both voluminous and admissible in its own right. That is not the case with Ms. Hartman's "Timeline."

## CONCLUSION

For the foregoing reasons, this Court should exclude Ms. Hartman's improper proposed testimony.

Dated: September 2, 2022

Respectfully submitted,

 /s/ Asim Varma
Asim Varma (D.C. Bar # 426364)
Howard N. Cayne (D.C. Bar # 331306)
David B. Bergman (D.C. Bar # 435392)
Ian S. Hoffman (D.C. Bar # 983419)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave NW
Washington, D.C. 20001
(202) 942-5000
Asim.Varma@arnoldporter.com
Howard.Cayne@arnoldporter.com
David.Bergman@arnoldporter.com
Ian.Hoffman@arnoldporter.com

*Attorneys for Defendant Federal Housing Finance Agency and Director Sandra L. Thompson*

 /s/ Michael J. Ciatti
Michael J. Ciatti (D.C. Bar #467177)
KING & SPALDING LLP
1700 Pennsylvania Ave. N.W.
Washington, DC 20006
Tel: (202) 661-7828
Fax: (202) 626-3737
mciatti@kslaw.com

*Attorney for the Federal Home Loan Mortgage Corp.*

 /s/ Meaghan VerGow
Meaghan VerGow (D.C. Bar # 977165)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
mvergow@omm.com

*Attorney for the Federal National Mortgage Association*