# EXHIBIT C

**From:** Michael Barry <mbarry@gelaw.com>
**Sent:** Friday, July 29, 2022 2:11 PM
**To:** Varma, Asim <Asim.Varma@arnoldporter.com>; zzz.External.skaplan@bsfllp.com <skaplan@bsfllp.com>
**Cc:** 'Pete Patterson' <ppatterson@cooperkirk.com>; Hoffman, Ian S. <Ian.Hoffman@arnoldporter.com>; zzz.External.MCiatti@kslaw.com <MCiatti@kslaw.com>; Stern, Jonathan L. <Jonathan.Stern@arnoldporter.com>; 'VerGow, Meaghan' <mvergow@omm.com>; 'FHFA_DDC' <FHFA_DDC@BSFLLP.com>; 'Taylor Lankford' <TLankford@KSLAW.com>; 'David Thompson' <dthompson@cooperkirk.com>; 'Brian Barnes' <BBarnes@cooperkirk.com>; Jones, Stanton <Stanton.Jones@arnoldporter.com>
**Subject:** RE: Plaintiffs' Summary Witness [IWOV-LEGAL.FID81754]

External E-mail

Asim,

Thank you for your email. Below I provide responses to your specific areas of inquiry regarding the substance of Ms. Hartman's summary testimony. In addition, Ms. Hartman may add some facts to the timeline, and if she does we will provide the revised timeline and any additional supporting documents in advance of her deposition.

In terms of the graphics, we do not expect the graphics to be finalized by the end of next week. If defendants believe they will want to depose Ms. Hartman on any graphics she produces (which as stated previously will only depict in graphic form the underlying information we identify), then we would propose holding a single deposition after they are produced. As stated previously, given that we have identified all sources and all information and given that she will not be offering an expert opinion, the purpose of holding a deposition at all is unclear. While we do not expect the graphics will be finalized next week, and assuming defendants do not want to wait until after the pretrial statement to depose Ms. Hartman, we would be willing to produce the graphics by August 12, 2022. The deposition could then occur the following week.

<u>Information to be summarized</u>:

1. The existence of the certificates of designation for each series of preferred shares in Fannie and Freddie, and for the Freddie common stock, ==as well as the existence of certain terms therein==, including the provisions regarding the payment of dividends.

   <span style="color:red">Ms. Hartman will identify the various certificates of designation for each series of preferred</span>

Exhibit 0001

shares of Fannie and Freddie, and of the common shares of Freddie, that are at issue in the litigation, and will offer those certificates into evidence. Ms. Hartman will explain that although each of the various series of shares have different specifics regarding the amounts of dividends to be paid, each of the certificates entitle the holders of the shares to quarterly dividends as may be declared by Fannie or Freddie's board of directors (as applicable). In addition, Ms. Hartman will explain that the certificates establish a level of priority for the payment of dividends to the various series of preferred shares, but all provide that all preferred shares must be paid dividends described in their respective certificates before any dividends are paid to common stockholders.

2. The funds raised by the GSEs through the issuance of the junior preferred shares, as well as the dates of the issuances of the various series of the junior preferred shares. (The same will be done for the common shares in Freddie if that information can be located in time).

3. The date HERA was adopted, the date of the implementation of the Conservatorship, as well as the dates of the PSPA, the First Amendment, the Second Amendment, the Third Amendment, and the Fourth Amendment to the PSPA or the PSPA Stock Certificates, as well as the First and Second Letter Agreements on Capital Reserves. She will also ==summarize the basic terms of the PSPAs and the various amendments.==

   Ms. Hartman will identify the PSPAs that Fannie Mae and Freddie Mac entered into with Treasury on September 8, 2008, and will offer those documents into evidence. TREASDDC00000987 (FNMA); TREASDDC00001021 (FMCC)  Ms. Hartman will explain that under the PSPAs Treasury agreed to provide funding of up to $100 billion each to Fannie Mae and Freddie Mac. In exchange, Treasury received one million shares of non-voting senior preferred stock in each company with a total liquidation preference of $1 billion, which liquidation preference would increase with each draw the companies' made against Treasury's funding commitment. Treasury also received warrants to acquire 79.9 percent of each of Fannie Mae's and Freddie Mac's common stock for a nominal price. Ms. Hartman will explain that the senior preferred stock issued to Treasury carried a fixed dividend of 10% of the total liquidation preference, to be paid by Fannie Mae and Freddie Mac in cash on a quarterly basis. I will also explain that under the PSPAs if Fannie Mae or Freddie Mac determined not to pay the cash dividend to Treasury in any quarter, Treasury's liquidation preference would increase that quarter by 12%. Ms. Hartman will identify and offer into evidence the certificates of designation for Treasury's senior preferred shares.   (Fannie Mae: PLSUM-030510; Freddie Mac: PLSUM-030240).

   Ms. Hartman will also explain that, commencing March 31, 2010, the PSPAs provided for the payment to Treasury a "Periodic Commitment Fee" to compensate Treasury for its outstanding commitment, which fee was required to have been set no later than December 31, 2009, by mutual agreement between the parties, based on market value, and in consultation with the Chairman of the Federal Reserve. Under the PSPAs, Treasury could waive payment of any Periodic Commitment Fee on an annual basis. Ms. Hartman will explain that Treasury did, in fact, waive the Periodic Commitment Fee for 2010, 2011 and 2012, and that neither Fannie nor Freddie had paid any Periodic Commitment Fee as of

FHFA and Treasury's agreement to the Net Worth Sweep in the Third Amendment.

Ms. Hartman will explain that Treasury and FHFA agreed to amend the terms of the PSPAs on May 6, 2009 (the "First Amendment") Fannie Mae: FHFA-DDC-0113465; Freddie Mac: FHFA-DDC-0135966)  pursuant to which Treasury agreed to increase its funding commitment to each of Fannie Mae and Freddie Mac to $200 billion.  Ms. Hartman will offer those amendments into evidence.

Ms. Hartman will explain that Treasury and FHFA agreed to amend the terms of the PSPAs on December 24, 2009 (the "Second Amendment") (Fannie Mae:  FHFA00107221; Freddie Mac: PLSUM FHFA00107227; FHFA-DDC-0317707).  Ms. Hartman will explain that under the Second Amendment, Treasury committed to provide as much funding as Fannie Mae and Freddie Mac needed to prevent insolvency through 2012, with a cap for later years.  Ms. Hartman will offer the Second Amendments into evidence.

Ms. Hartman will explain that Treasury and FHFA agreed to amend the terms of the PSPAs on August 17, 2012 (the "Third Amendment") (Fannie Mae: FHFA-DDC-0113465; FHFA-DDC-0135938).  Ms. Hartman will explain that the Third Amendment amended the PSPAs by replacing the fixed 10% dividend with a variable dividend equal the positive net worth, if any, of Fannie Mae and Freddie Mac, exceeding a specified buffer amount, which was originally set at $3 billion but would decline by $600 million in each year until reaching zero in 2018.  She will explain that this aspect of the Third Amendment is known as the "Net Worth Sweep."   Ms. Hartman will offer the Third Amendments into evidence.

Ms. Hartman will explain that on December 21, 2017, FHFA and Treasury entered into a letter agreement regarding capital reserves (the "First Letter Agreement") (Fannie Mae: PLSUM-013857; Freddie Mac: PLSUM-011629), pursuant to which Treasury and each of Fannie Mae and Freddie Mac agreed that each company could retain capital reserves of up to $3 billion, quarterly, and that each company would pay Treasury quarterly dividends equal to the amount that their positive net worth exceeded $3 billion.  Ms. Hartman will offer the First Letter Agreement into evidence.

Ms. Hartman will explain that on September 27, 2019, FHFA and Treasury entered into a second letter agreement regarding capital reserves (the "Second Letter Agreement) (Fannie Mae: PLSUM-028084; Freddie Mac: PLSUM-020938), pursuant  to which Treasury agreed that Fannie Mae and Freddie Mac would be permitted to maintain capital reserves of $25 billion and $20 billion, respectively.

Ms. Hartman will explain that on January 14, 2021, Treasury and FHFA agreed to amend the terms of the PSPAs (the "Fourth Amendment").  (Fannie Mae: PLSUM-007083; Freddie Mac: PLSUM-009693).   Ms. Hartman will explain that under the Fourth Amendment, Treasury and FHFA agreed to suspend the cash dividend through the Net Worth Sweep to allow Fannie Mae and Freddie Mac to retain earnings in order to build up capital reserves established by the FHFA in December 2020.  Ms. Hartman will explain that while the payment of cash dividends is suspended, Treasury's liquidation preference at the GSEs will

>   be increased by the amount of earnings retained, and that the cash Net Worth Sweep would resume when the GSEs achieved their required capital reserves.

4. The dividends paid by the GSEs to private shareholders prior to September 2008 (and that none of have been paid since 2008). (The current data set reflects dividends paid since 1996 but we should soon have a more complete data set that we should be able to provide you next week).

5. The amounts of the GSE draws from the Treasury commitments, and the time of such draws.

6. The dividends paid by the GSEs to Treasury from September 2008 to the present, itemized by year (and perhaps by quarter), including the amount of such dividends paid before the Third Amendment became effective and the amounts paid after it became effective. This will include a breakdown as between (a) cash dividends, and (b) dividends paid by the increase in Treasury's liquidation preference.

7. The dates the GSEs each wrote down their deferred tax assets ("DTA"), and the dates the GSEs reversed those DTA write-offs in 2013, and the amounts thereof.

Additionally, ==she will read into the record the provisions of HERA that describe the purpose of the conservatorship, and public statements made by government officials during the week that the conservatorships were imposed regarding the purpose of the conservatorship.==

>   Ms. Hartman will explain that the Housing and Economic Recovery Act of 2008 ("HERA") was adopted on July 30, 2008. Ms. Hartman will explain that HERA created the Federal Housing Finance Agency ("FHFA"), with regulatory authority over Fannie Mae and Freddie Mac. She will offer into evidence 12 U.S.C. § 4617 and will read into the record the following subsections of that statute: (a)(1) and (2), and (b)(1), (2)(A)-(D), (G) and (H).
>
>   Ms. Hartman will explain that on September 6, 2008, FHFA caused both Fannie Mae and Freddie Mac to be placed into conservatorship. Ms. Hartman will offer into evidence and will read into the record portions of the Statement of FHFA Director James B. Lockhart dated September 7, 2008. [FHFA-DDC-0090674]
>
>   Ms. Hartman will offer into evidence the Federal Housing Finance Agency Fact Sheet, titled "Questions and Answers on Conservatorship" (FHFA 0026) [FHFA-DDC--0017202], and will read certain portions into the record.
>
>   Ms. Hartman will offer into evidence the document titled ABS East, dated October 20, 2008, authored by the FHFA, and will read certain portions of that document into the record. [FHFA00047705]
>
>   Ms. Hartman will offer into evidence the Form 8K filed by Freddie Mac on September 11, 2008, and will read certain portions into the record.

<span style="color:red">Ms. Hartman summarize, and read into the record evidence about the GSE's financial performance in the first and second quarters of 2012. Specifically, Ms. Hartman will explain that in the first quarter of 2012, Fannie Mae recorded earnings (comprehensive income) of $3.1 billion, compared to a comprehensive loss of $6.3 billion in the first quarter of 2011. Ms. Hartman will also explain that in the second quarter of 2012, Fannie Mae recorded record earnings (comprehensive income) of $5.4 billion, compared to a comprehensive loss and net loss of $2.9 billion for the second quarter of 2011. Ms. Hartman will offer into evidence the Form 10Qs filed by Fannie Mae for the first and second quarters of 2012. (Q1: PLSUM-015890; Q2: PLSUM-011994). Ms. Hartman will explain that in the first quarter of 2012, Freddie Mac recorded comprehensive income of $1.8 billion. Ms. Hartman will also explain that in the second quarter of 2012, Freddie Mac recorded earnings (comprehensive income) of $2.9 billion, compared to a comprehensive loss of $1.1 billion for the second quarter of 2011. Ms. Hartman will offer into evidence the Form 10Qs filed by Freddie Mac for the first and second quarters of 2012 (Q1: PLSUM-018296; Q2: PLSUM- 019657).</span>

<span style="color:red">Ms. Hartman will offer into evidence Minutes of a Meeting of the Board of Directors of Fannie Mae dated July 20, 2012, and will read certain provisions of those minutes into evidence. FM_Fairholme_CFC-00003142</span>

<span style="color:red">Ms. Hartman will offer into evidence the Agenda and Summary Materials distributed to the Fannie Mae Board of Directors in connection with the July 20, 2012 meeting, and will read certain portions of those materials into the record. FM_Fairholme_CFC-00000255</span>

<span style="color:red">The witness also will introduce into evidence publicly available housing statistics, specifically the S&P/Case-Shiller U.S. National Home Price index.
 [https://fred.stlouisfed.org/series/CSUSHPISA](https://fred.stlouisfed.org/series/CSUSHPISA)</span>

---

**From:** Varma, Asim <Asim.Varma@arnoldporter.com>
**Sent:** Wednesday, July 27, 2022 5:21 PM
**To:** Michael Barry <mbarry@gelaw.com>; skaplan@bsfllp.com
**Cc:** 'Pete Patterson' <ppatterson@cooperkirk.com>; Hoffman, Ian S. <Ian.Hoffman@arnoldporter.com>; MCiatti@kslaw.com; Stern, Jonathan L. <Jonathan.Stern@arnoldporter.com>; 'VerGow, Meaghan' <mvergow@omm.com>; 'FHFA_DDC' <FHFA_DDC@BSFLLP.com>; 'Taylor Lankford' <TLankford@KSLAW.com>; 'David Thompson' <dthompson@cooperkirk.com>; 'Brian Barnes' <BBarnes@cooperkirk.com>; Jones, Stanton <Stanton.Jones@arnoldporter.com>
**Subject:** RE: Plaintiffs' Summary Witness [IWOV-LEGAL.FID81754]

Mike,

Thank you for the update below regarding the materials/information regarding the PSPAs and amendments thereto, provisions of HERA, and public statements by government officials.  We will look out for those materials from you this week.  I note that your July 8 email also mentioned, as a topic that Dr. Hartman would address, "the existence of certain terms" in "the certificates of designation for each series of preferred shares in Fannie and Freddie."  If you intend for Dr. Hartman to address that topic, please identify the specific terms at issue and provide any summary of them that you plan to present.

To the extent Dr. Hartman plans to present "graphics of information" to the jury, we are also entitled to receive those graphics before her deposition, rather than with the pretrial statement which will not occur until after the dates we have proposed for the deposition.  As you know, a chart or table presented as summary evidence pursuant to FRE 1006 is potentially admissible as  substantive evidence.  We are therefore entitled to depose Dr. Hartman regarding the full battery of FRE 1006 summary evidence that she plans to present to the jury, notwithstanding your representation that materials we have not seen "will not contain any information not previously produced."  If we do not receive the graphics before the deposition, we may be forced to hold the deposition open and potentially continue it once you produce the graphics.

Please provide us the preferred date and location for Dr. Hartman's deposition.

Thanks, Asim

---

**From:** Michael Barry <mbarry@gelaw.com>
**Sent:** Saturday, July 23, 2022 12:46 PM
**To:** Varma, Asim <Asim.Varma@arnoldporter.com>; zzz.External.skaplan@bsfllp.com <skaplan@bsfllp.com>
**Cc:** 'Pete Patterson' <ppatterson@cooperkirk.com>; Hoffman, Ian S. <Ian.Hoffman@arnoldporter.com>; zzz.External.MCiatti@kslaw.com <MCiatti@kslaw.com>; Stern, Jonathan L. <Jonathan.Stern@arnoldporter.com>; 'VerGow, Meaghan' <mvergow@omm.com>; 'FHFA_DDC' <FHFA_DDC@BSFLLP.com>; 'Taylor Lankford' <TLankford@KSLAW.com>; 'David Thompson' <dthompson@cooperkirk.com>; 'Brian Barnes' <BBarnes@cooperkirk.com>
**Subject:** RE: Plaintiffs' Summary Witness [IWOV-LEGAL.FID81754]

External E-mail

Asim,

We intend next week to identify any provisions of HERA and public statements re the conservatorship that Dr. Hartman will be able to identify, and also will provide any contractual terms.   As stated previously, any graphics of information to be produced will be produced with the pretrial statement and will not contain any information not previously produced.   We are checking with Dr. Hartman as to her availability on the proposed deposition dates, but also as discussed

previously, the purpose of a deposition is entirely unclear here given that you have the full information she will be presenting, the information is purely factual, readily verifiable and summary, and you have every source on which she will be relying.

- Mike

---

**From:** Varma, Asim <Asim.Varma@arnoldporter.com>
**Sent:** Friday, July 22, 2022 1:55 PM
**To:** Michael Barry <mbarry@gelaw.com>; skaplan@bsfllp.com
**Cc:** 'Pete Patterson' <ppatterson@cooperkirk.com>; Hoffman, Ian S. <Ian.Hoffman@arnoldporter.com>; MCiatti@kslaw.com; Stern, Jonathan L. <Jonathan.Stern@arnoldporter.com>; 'VerGow, Meaghan' <mvergow@omm.com>; 'FHFA_DDC' <FHFA_DDC@BSFLLP.com>; 'Taylor Lankford' <TLankford@KSLAW.com>; 'David Thompson' <dthompson@cooperkirk.com>; 'Brian Barnes' <BBarnes@cooperkirk.com>
**Subject:** RE: Plaintiffs' Summary Witness [IWOV-LEGAL.FID81754]

Good afternoon,

Defendants are available to depose Ms. Hartman on August 5, 8, or 9.  We will be taking her deposition in person.  Please let us know her location for the deposition and we will send a deposition notice.

Also, please respond to my message of Tuesday (below) and tell us when plaintiffs will complete the disclosure of Ms. Hartman's proposed testimony.   In particular, as noted not all the items identified on your list of July 8 have been produced nor has the "graphic format" in which Ms.  Hartman will be presenting the data.

Thanks, Asim

---

**From:** Varma, Asim
**Sent:** Tuesday, July 19, 2022 3:30 PM
**To:** 'Michael Barry' <mbarry@gelaw.com>; zzz.External.skaplan@bsfllp.com <skaplan@bsfllp.com>
**Cc:** 'Pete Patterson' <ppatterson@cooperkirk.com>; Hoffman, Ian S. <Ian.Hoffman@arnoldporter.com>; zzz.External.MCiatti@kslaw.com <MCiatti@kslaw.com>; Stern, Jonathan L. <Jonathan.Stern@arnoldporter.com>; 'VerGow, Meaghan' <mvergow@omm.com>; FHFA_DDC <FHFA_DDC@BSFLLP.com>; 'Taylor Lankford' <TLankford@KSLAW.com>; 'David Thompson' <dthompson@cooperkirk.com>; 'Brian Barnes' <BBarnes@cooperkirk.com>
**Subject:** RE: Plaintiffs' Summary Witness [IWOV-LEGAL.FID81754]

Thanks, Mike.

I saw the three spreadsheets with the data.  But below I have highlighted your July 8 e-mail which refers to summarizes we did not find in the productions.  Could you direct us to where these summaries of documents, contracts or statute, were produced or if they have not yet produced

when they will be?  Also we would like to see what you referred to as "the graphic format" she may present the information reflected in the exhibits being produced on July 18 as possible and before her deposition.

I will get back to you shortly about potential dates for her deposition the weeks of August 1 or August 8.

Quoting from your July 8 e-mail:

Information to be summarized:

1. The existence of the certificates of designation for each series of preferred shares in Fannie and Freddie, and for the Freddie common stock, as well as the existence of certain terms therein, including the provisions regarding the payment of dividends.

2. The funds raised by the GSEs through the issuance of the junior preferred shares, as well as the dates of the issuances of the various series of the junior preferred shares.  (The same will be done for the common shares in Freddie if that information can be located in time).

3. The date HERA was adopted, the date of the implementation of the Conservatorship, as well as the dates of the PSPA, the First Amendment, the Second Amendment, the Third Amendment, and the Fourth Amendment to the PSPA or the PSPA Stock Certificates, as well as the First and Second Letter Agreements on Capital Reserves.  She will also summarize the basic terms of the PSPAs and the various amendments.

4. The dividends paid by the GSEs to private shareholders prior to September 2008 (and that none of have been paid since 2008).  (The current data set reflects dividends paid since 1996 but we should soon have a more complete data set that we should be able to provide you next week).

5. The amounts of the GSE draws from the Treasury commitments, and the time of such draws.

6. The dividends paid by the GSEs to Treasury from September 2008 to the present, itemized by year (and perhaps by quarter), including the amount of such dividends paid before the Third Amendment became effective and the amounts paid after it became effective.  This will include a breakdown as between (a) cash dividends, and (b) dividends paid by the increase in Treasury's liquidation preference.

7. The dates the GSEs each wrote down their deferred tax assets ("DTA"), and the dates the GSEs reversed those DTA write-offs in 2013, and the amounts thereof.

Additionally, she will read into the record the provisions of HERA that describe the purpose of the conservatorship, and public statements made by government officials during the week that the conservatorships were imposed regarding the purpose of the conservatorship.

**From:** Michael Barry <mbarry@gelaw.com>
**Sent:** Monday, July 18, 2022 10:07 PM
**To:** zzz.External.skaplan@bsfllp.com <skaplan@bsfllp.com>; Varma, Asim <Asim.Varma@arnoldporter.com>
**Cc:** 'Pete Patterson' <ppatterson@cooperkirk.com>; Hoffman, Ian S. <Ian.Hoffman@arnoldporter.com>; zzz.External.MCiatti@kslaw.com <MCiatti@kslaw.com>; Stern, Jonathan L. <Jonathan.Stern@arnoldporter.com>; 'VerGow, Meaghan' <mvergow@omm.com>; FHFA_DDC <FHFA_DDC@BSFLLP.com>; 'Taylor Lankford' <TLankford@KSLAW.com>; 'David Thompson' <dthompson@cooperkirk.com>; 'Brian Barnes' <BBarnes@cooperkirk.com>
**Subject:** RE: Plaintiffs' Summary Witness [IWOV-LEGAL.FID81754]

External E-mail

Asim –

The attached production includes data obtained from Bloomberg reflecting dividend payments by the GSEs dating to 1977, and an Excel file containing exhibits that have been prepared by the Summary Witness that summarize data included in the materials we have produced. We are also producing FNMA's 2008 10K, which was inadvertently omitted from the last production. In addition, the Summary Witness may determine to present the information reflected in the exhibits being produced today in a graphic format, which graphics will be provided to you with the pretrial statement.

Today's production has been uploaded to ShareFile: https://gelaw.sharefile.com/d-s7617546021964277b630e69cb96af473

The zip file password is:  cE2,wL6%pL

PLSUM-002:  PLSUM-030519 – PLSUM-030936  (4 Docs, 418 Pages)

Thank you.

- Mike.

---

**From:** Samuel Kaplan <skaplan@bsfllp.com>
**Sent:** Monday, July 18, 2022 4:47 PM
**To:** Varma, Asim <Asim.Varma@arnoldporter.com>; Michael Barry <mbarry@gelaw.com>

**Cc:** 'Pete Patterson' <ppatterson@cooperkirk.com>; Hoffman, Ian S. <Ian.Hoffman@arnoldporter.com>; MCiatti@kslaw.com; Stern, Jonathan L. <Jonathan.Stern@arnoldporter.com>; 'VerGow, Meaghan' <mvergow@omm.com>; FHFA_DDC <FHFA_DDC@BSFLLP.com>; 'Taylor Lankford' <TLankford@KSLAW.com>; 'David Thompson' <dthompson@cooperkirk.com>; 'Brian Barnes' <BBarnes@cooperkirk.com>
**Subject:** RE: Plaintiffs' Summary Witness [IWOV-LEGAL.FID81754]

Hi Asim,

Per your email below, we expect to produce later tonight exhibits prepared by the Summary Witness that summarize data referred to below and included in the materials we have produced.  Best,

Sam

**Samuel C. Kaplan**
Partner

**BOIES SCHILLER FLEXNER LLP**

1401 New York Avenue, N.W.
Washington, DC 20005
(t)   +1 202 274-1163
skaplan@bsfllp.com

---

**From:** Varma, Asim <Asim.Varma@arnoldporter.com>
**Sent:** Saturday, July 16, 2022 12:51 PM
**To:** Michael Barry <mbarry@gelaw.com>
**Cc:** 'Pete Patterson' <ppatterson@cooperkirk.com>; Hoffman, Ian S. <Ian.Hoffman@arnoldporter.com>; MCiatti@kslaw.com; Stern, Jonathan L. <Jonathan.Stern@arnoldporter.com>; 'VerGow, Meaghan' <mvergow@omm.com>; FHFA_DDC <FHFA_DDC@BSFLLP.com>; 'Taylor Lankford' <TLankford@KSLAW.com>; 'David Thompson' <dthompson@cooperkirk.com>; 'Brian Barnes' <BBarnes@cooperkirk.com>
**Subject:** RE: Plaintiffs' Summary Witness [IWOV-LEGAL.FID81754]

**CAUTION:** External email. Please do not respond to or click on links/attachments unless you recognize the sender.

---

Mike and Sam,

When will Ms. Hartman's summaries and the exhibits she proposes to present to the jury be produced to Defendants?   I was expecting their production on Friday, July 15 as indicated by the attached July 5, 2022 e-mail from Sam.

Thanks, Asim

**From:** Michael Barry <mbarry@gelaw.com>
**Sent:** Friday, July 8, 2022 8:09 PM
**To:** Varma, Asim <Asim.Varma@arnoldporter.com>
**Cc:** 'Pete Patterson' <ppatterson@cooperkirk.com>; Hoffman, Ian S. <Ian.Hoffman@arnoldporter.com>; zzz.External.MCiatti@kslaw.com <MCiatti@kslaw.com>; Stern, Jonathan L. <Jonathan.Stern@arnoldporter.com>; 'VerGow, Meaghan' <mvergow@omm.com>; FHFA_DDC <FHFA_DDC@BSFLLP.com>; 'Taylor Lankford' <TLankford@KSLAW.com>; 'David Thompson' <dthompson@cooperkirk.com>; 'Brian Barnes' <BBarnes@cooperkirk.com>
**Subject:** Plaintiffs' Summary Witness [IWOV-LEGAL.FID81754]

External E-mail

Asim –

As Sam discussed, we are providing you with the documents that will be used by Susan Hartman, of BVA Group, who will testify on behalf of Plaintiffs as a Summary Witness pursuant to Federal Rule of Evidence 1006.

Today's production has been uploaded to ShareFile:  https://gelaw.sharefile.com/d-s52f9c0acfa334b3aa029c1f5c2b68106

The zip file password is:  Lqp%e*MVzu

The information we have asked Ms. Hartman to summarize from the documents consists of the following, but please know that there is a chance we could request a summary of a small number of additional items, which of course we would disclose to you in advance.  Likewise, we will produce to you the actual summaries Ms. Hartman has performed for each of the items so that you can check it and confirm its accuracy.  We will also provide you the exhibits that would be used to present these summaries to the jury.

<u>Information to be summarized</u>:

1. The existence of the certificates of designation for each series of preferred shares in Fannie and Freddie, and for the Freddie common stock, as well as the existence of certain terms therein, including the provisions regarding the payment of dividends.

2. The funds raised by the GSEs through the issuance of the junior preferred shares, as well as the dates of the issuances of the various series of the junior preferred shares.  (The same will be done for the common shares in Freddie if that information can be located in time).

3. The date HERA was adopted, the date of the implementation of the Conservatorship, as well as the dates of the PSPA, the First Amendment, the Second Amendment, the Third

Amendment, and the Fourth Amendment to the PSPA or the PSPA Stock Certificates, as well as the First and Second Letter Agreements on Capital Reserves.  She will also summarize the basic terms of the PSPAs and the various amendments.

4. The dividends paid by the GSEs to private shareholders prior to September 2008 (and that none of have been paid since 2008).  (The current data set reflects dividends paid since 1996 but we should soon have a more complete data set that we should be able to provide you next week).

5. The amounts of the GSE draws from the Treasury commitments, and the time of such draws.

6. The dividends paid by the GSEs to Treasury from September 2008 to the present, itemized by year (and perhaps by quarter), including the amount of such dividends paid before the Third Amendment became effective and the amounts paid after it became effective.  This will include a breakdown as between (a) cash dividends, and (b) dividends paid by the increase in Treasury's liquidation preference.

7. The dates the GSEs each wrote down their deferred tax assets ("DTA"), and the dates the GSEs reversed those DTA write-offs in 2013, and the amounts thereof.

Additionally, she will read into the record the provisions of HERA that describe the purpose of the conservatorship, and public statements made by government officials during the week that the conservatorships were imposed regarding the purpose of the conservatorship.

Again, it is possible there may be some additional summaries we request of this summary witness. However, in order to move this process along and address your request, this represents the current summaries being prepared.

Please let us know if you wish to discuss.


Michael J. Barry
Grant & Eisenhofer, P.A.
123 Justison St.
Wilmington, DE 19801
Tel: (302) 622-7065
Cell: (267) 872-5726
Fax: (302) 622-7100
[mbarry@gelaw.com](mbarry@gelaw.com)

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter, click here:
http://www.arnoldporter.com

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1 08201831BSF]

---

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.
_____
For more information about Arnold & Porter, click here:
http://www.arnoldporter.com

---

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.
_____
For more information about Arnold & Porter, click here:
http://www.arnoldporter.com