# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| BERKLEY INSURANCE CO., et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> THE FEDERAL HOUSING FINANCE AGENCY, et al., <br><br> *Defendants*. | Case No. 1:13-cv-1053-RCL |
| IN RE FANNIE MAE/FREDDIE MAC SENIOR PREFERRED STOCK PURCHASE AGREEMENT CLASS ACTION LITIGATIONS <br><br> ──────────────── <br><br> This document relates to: <br> ALL CASES | Case No. 1:13-mc-1288-RCL |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO AMEND PRETRIAL STATEMENT, SERVE A SUPPLEMENTAL EXPERT REPORT, AND ADJUST THE TRIAL SCHEDULE**

**TABLE OF CONTENTS**

                                                                                                               **Page**

I. INTRODUCTION .................................................................................................... 1

II. DEFENDANTS DO NOT SERIOUSLY CONTEST THAT PLAINTIFFS SHOULD BE PERMITTED TO AMEND THE PRETRIAL STATEMENT TO ADDRESS THE COURT'S SUMMARY JUDGMENT DECISION .................................................. 2

III. PLAINTIFFS' REQUEST FOR RELIANCE DAMAGES IS PROPERLY PRESERVED AND READY FOR TRIAL ................................................................ 3

    A. For Years Defendants Have Known Plaintiffs Would Seek Reliance Damages Based on Their Calculations for Restitution and Expectancy Damages ................. 4

    B. Reliance Damages Are an Appropriate Measure of Damages in this Case ............ 6

IV. THE COURT SHOULD PERMIT PLAINTIFFS TO SERVE A SHORT SUPPLEMENTAL EXPERT REPORT ON "LOST VALUE" DAMAGES ................... 11

V. THE TRIAL SCHEDULE ................................................................................. 13

VI. CONCLUSION ................................................................................................ 14

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Amigo Broad., LP v. Spanish Broad. Sys., Inc.*,
  521 F.3d 472 (5th Cir. 2008) ...................................................................................................6

*Barnes v. District of Columbia*,
  289 F.R.D. 1 (D.D.C. 2012) ...................................................................................................13

*Boyer v. Weyerhaeuser Co.*,
  No. 14-CV-286-WMC, 2016 WL 2593984 (W.D. Wis. May 5, 2016)...................................13

*Capitol Justice LLC v. Wachovia Bank, N.A.*,
  706 F. Supp.2d 34 (D.D.C. 2009) ...........................................................................................13

*Lenox Maclaren Surgical Corp. v. Medtronic, Inc.*,
  No. 10-CV-02139-MSK-NYW, 2015 WL 6735495 (D. Colo. Nov. 4, 2015) ........................13

*Minebea Co. v. Papst*,
  231 F.R.D. 3 (D.D.C. 2005) ...................................................................................................13

*Redfield v. Campbell Cty. Health*,
  No. 19-cv-189-J, 2021 WL 2941993 (D. Wyo. Apr. 22, 2021)...............................................13

*Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*,
  887 F.3d 1003 (10th Cir. 2018) ................................................................................................9

*In re Vitamins Antitrust Class Actions*,
  327 F.3d 1207 (D.C. Cir. 2003)................................................................................................4

*Westfed Holdings, Inc. v. United States*,
  407 F.3d 1352 (Fed. Cir. 2005).................................................................................................6

*Williams v. Johnson*,
  278 F.R.D. 10 (D.D.C. 2011)....................................................................................................3

**Other Authorities**

L. Cv. R. 16.5(a)(2)........................................................................................................................3,4

Restatement (Second) of Contracts § 349 (1981, Oct. 2022 Update) ........................... 6-7, 10

Restatement (Third) of Restitution and Unjust Enrichment § 38 (2011) ......................7, 10

24 Williston on Contracts § 64:1 (4th ed. May 2022 update) ..................................................9

I.      **INTRODUCTION**

Defendants' opposition repeatedly says that Plaintiffs are trying to present "new" damages theories on the eve of trial. That is not correct.

The reliance damage measure was disclosed over four years ago, and requires no expert testimony to meet Plaintiffs' affirmative burden. All it requires is a factual presentation of how much shareholders invested in reliance on the contracts that Plaintiffs allege were breached. That information *could* be provided by Plaintiffs' expert Dr. Mason, since he has already performed those calculations for his restitution analysis. But it could also be presented to the jury by Plaintiffs' summary witness, or potentially even by stipulation, as there appears to be no real dispute about the numbers. Indeed, Defendants have proposed a stipulation containing the amounts invested by the preferred shareholders. The need for experts on the reliance measure would arise only in connection with Defendants' right to reduce those reliance damages by any amounts they can prove with reasonable certainty would have been lost even "but for" the breach, and Plaintiffs' effort to resist that rebuttal. On that issue, both parties have already had experts present reports that include relevant economic analyses. While reliance and expectancy damages differ in who bears the burden of establishing with reasonable certainty what would have happened in the "but for" world, the key economic questions are the same. Accordingly, nothing new is needed.

The "lost value" theory of damages is also not new. As this Court found, Dr. Mason discussed the ability to prove damages by looking at the drop in share price, though he concluded this was a substantially understated way to measure damages. This theory was explored by Defendants' own experts and was referenced by Dr. Mason as an alternative. All Plaintiffs are saying is that it is in the interests of justice to allow Dr. Mason to do a short supplemental report clarifying the scope of his prior opinion that the $1.6 billion lost share value understated damages

in light of the Court's conclusions that the discounted cash flow analysis may no longer be presented as the better measure of damages. This will clarify the scope of the prior opinion and thus eliminate any confusion and dispute about the scope of the analysis as to the alternate theory in our expert's work that this Court found could go forward. In light of all the facts and circumstances, and given both the magnitude of the interests at stake and the public implications of this case, there is good cause for allowing Plaintiffs the relief they seek, and it is in the interests of justice to do so.

Defendants also seek to disparage the legal viability of the reliance and "lost value" measures of damages. Defendants' arguments are without merit. Further, they are not a basis for denying Plaintiffs the opportunity to present those measures, subject to Defendants presenting their opposing views and expert opinions at trial.

## II. DEFENDANTS DO NOT SERIOUSLY CONTEST THAT PLAINTIFFS SHOULD BE PERMITTED TO AMEND THE PRETRIAL STATEMENT TO ADDRESS THE COURT'S SUMMARY JUDGMENT DECISION

While Defendants oppose allowing Plaintiffs to say or do anything regarding the measures of damages that still remain in this case, they do not dispute that the parties both have a right to amend the pretrial statement and jury instructions to reflect the Court's summary judgment ruling and the implications of that ruling. They do not respond to the case law cited by Plaintiffs showing that courts routinely allow parties to amend pretrial statements and jury instructions in response to intervening rulings by the court. *Compare* Plaintiffs' Motion for Leave to Amend the Pretrial Statement at 10 (Class ECF No. 195, Fairholme ECF No. 201)[1] (citing *Williams v. Johnson*, 278 F.R.D. 10, 11 (D.D.C. 2011) ("Following the Court's resolution of the parties' dispositive motions

---

[1] "Class ECF No." refers to Case No. 1:13-mc-1288-RCL and "Fairholme ECF No." refers to Case No. 1:13-cv-1053-RCL.

and motions in limine, the Court ordered the parties to file 'an updated and revised Joint Pretrial Statement' . . . ."); *Sibert-Dean v. Washington Metro Transit Authority*, 826 F. Supp.2d 266, 269-70 (D.D.C. 2011) (ordering parties to file a supplemental pretrial statement with jury instructions "to clarify portions of the [Joint Pretrial Statement]")) *with* Opp. 1-17 (Class ECF No. 207, Fairholme ECF No. 210) (not responding to *Williams v. Johnson* or *Sibert*, or to the request to amend the pretrial statement and jury instructions).

### III.  PLAINTIFFS' REQUEST FOR RELIANCE DAMAGES IS PROPERLY PRESERVED AND READY FOR TRIAL

Plaintiffs are prepared to seek reliance damages at trial and request leave to amend the pretrial statement, jury instructions, and verdict form so they may do so. *See, e.g.*, L. Cv. R. 16.5(a)(2). As Plaintiffs explained in their motion, this amendment would neither require additional expert testimony nor require delaying the trial. *See* Mot. 8-9. In addition (as Plaintiffs also explained in their motion), Plaintiffs did not initially include a request for reliance damages given the substantial overlap of calculations required for both Plaintiffs' restitution theory of damages and their reliance damages.  If Plaintiffs had been permitted to seek restitution at trial, the alternative presentation of reliance damages would have required the jury to consider an unnecessary issue and would have caused confusion for the jury. Mot. 7-8. Once it became clear that Plaintiffs could not seek restitution at trial, they filed this motion just days later. Lastly, Defendants suffer no prejudice as a result of this amendment because they have been on notice *for years* that Plaintiffs intend to seek reliance damages based on the calculations in the expert testimony supporting Plaintiffs' theories of expectancy damages and restitution. Defendants' opposition misconstrues Plaintiffs' motion, conflates distinct principles of black letter law, and completely ignores the legal framework for reliance damages.

### A. For Years Defendants Have Known Plaintiffs Would Seek Reliance Damages Based on Their Calculations for Restitution and Expectancy Damages

Defendants argue that Plaintiffs' request for reliance damages is "untimely" for several reasons, but all of them are meritless. As an initial matter, Defendants do not engage *at all* with the relevant legal standard for when a party is permitted to amend a pretrial statement. *See* L. Cv. R. 16.5(a)(2). Indeed, they do not even cite the rule. Under Local Civil Rule 16.5, "[a]mendments to a party's Pretrial Statement shall be permitted for excusable neglect until entry by the Court . . . of a final Pretrial Order." And as explained in Plaintiffs' motion, Plaintiffs amply satisfy this standard because their amendment would cause no prejudice, they sought to amend within days of the Court's summary judgment ruling that made the amendment necessary, the amendment will cause no delay in the judicial proceedings, and Plaintiffs have acted in good faith. *See In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C. Cir. 2003) (highlighting the relevant factors). Defendants' total failure to argue why Plaintiffs do not satisfy this standard is enough to grant Plaintiffs' motion. Moreover, Defendants' bizarre insistence that Plaintiffs should not be permitted to amend their pretrial statement to conform to the Court's summary judgment ruling makes no sense. Defendants fail to explain why Plaintiffs should be forced to proceed to trial using an outdated pretrial statement that was due *before* the Court decided which issues would actually proceed to trial. And no good reason exists.

Next, Defendants repeatedly assert that Plaintiffs "acknowledge" that proceeding on a theory of reliance damages "would require re-opening expert discovery to allow new expert reports and depositions, and altering the trial schedule." Opp. 1; *see also* Opp. 4-5 & n.2. Those assertions are flatly contradicted by Plaintiffs' motion, which states clearly that "Plaintiffs *do not* expect that reliance would require *any* supplementation of the analysis encompassed within Plaintiffs' expert opinions." Mot. 8 (emphasis added); *see also* Mot. 1-2 ("This change to the pretrial statement, as

well as the substitution of an appropriate reliance damages instruction, will *not require any additional analysis* beyond that already encompassed within Plaintiffs' expert reports[.]" (emphasis added)). To dispel any (inexplicable) lingering doubt, Plaintiffs reiterate the point: they are ready to seek reliance damages on the current record when trial begins on October 17.

Defendants also contend that Plaintiffs suggested Defendants would be "entitled" to supplement their expert reports to address reliance damages. Opp. 5. But that contention is likewise flatly contradicted by Plaintiffs' motion, which merely stated that Plaintiffs acknowledged Defendants "*may wish* to supplement their expert reports" and that Plaintiffs would not oppose that request. Mot. 2 n.2 (emphasis added). To acknowledge that a party may *request* relief is clearly not the same as suggesting a party is *entitled* to it. And there is nothing that would entitle Defendants to supplement their expert reports to address a damages theory that has been in the case for years.

Defendants next contend that Plaintiffs' request for reliance damages is "untimely" because Dr. Mason's report analyzed expectation damages and restitution. But Plaintiffs' initial disclosures made clear that *all along* Plaintiffs intended to use their expert calculations for restitution to determine reliance damages and to use their expert calculations for expectancy damages to rebut Defendants' attempt to reduce those reliance damages. Part III.A of Plaintiffs' initial disclosures outlined their restitution theory. Part III.B outlined their expectancy damages theory. And Part III.C—which outlines their reliance damages theory—stated the following: "[t]he documents relevant to this computation are discussed above in Part III.A" (the restitution section), and "Plaintiffs also intend to rely on expert analysis discussed in Part III.B" (the expectancy damages section) "to show that Defendants cannot meet their burden to prove that Plaintiffs' shares would have lost value absent Defendants' breach[.]" *See* Mot. Ex. B at 8 (Class ECF No. 195-3,

Fairholme ECF No. 201-2). Thus, for nearly *four years*, Defendants have been on notice that Plaintiffs intended to use the expert analysis for restitution and expectancy damages to prove reliance damages. The fact that Dr. Mason did not use the magic word "reliance" is thus irrelevant because, as Plaintiffs' initial disclosures makes clear, the calculations for reliance damages are entirely subsumed in the calculations Dr. Mason completed for restitution. Defendants have no basis for claiming surprise when Plaintiffs seek to do precisely what they said they would do from the outset.

In any event, even if Defendants were correct that Dr. Mason's expert disclosures fail to provide adequate notice that Plaintiffs might rely on his opinions to support a reliance damages theory, that is at most a reason to exclude Dr. Mason's testimony on reliance damages; it would not provide a basis for stopping Plaintiffs from presenting reliance damages to the jury through other witnesses and documents. Whether Dr. Mason testifies or not, Plaintiffs will have no difficulty establishing at trial how much shareholders originally paid to Fannie and Freddie for the junior preferred stock. At that point, the burden shifts to Defendants to show with reasonable certainty how much shareholders received back from the Companies in dividends and how much shareholders would have lost even absent a breach of the implied covenant. *See, e.g.*, *Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 486 (5th Cir. 2008); *Westfed Holdings, Inc. v. United States*, 407 F.3d 1352, 1369-70 (Fed. Cir. 2005). Plaintiffs do not need Dr. Mason's testimony to put on a case for reliance damages, and a request for a particular type of damages is not "untimely" simply because one expert report does not address it.

**B.    Reliance Damages Are an Appropriate Measure of Damages in this Case**

Given the Court's conclusion that Plaintiffs' expectancy damages theory was uncertain, this case is a prime candidate for reliance damages. As the Restatement (Second) of Contracts explains, a party may seek reliance damages "if he cannot prove his profit with reasonable

certainty." RESTATEMENT (SECOND) OF CONTRACTS § 349, cmt. a (1981, Oct. 2022 Update); *see also* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 38 (2011) (describing reliance damages as "a remedial alternative in cases where the plaintiff cannot establish expectancy damages" due to "difficulties of proof"). The Court's summary judgment ruling held that Plaintiffs' expectancy damages theory, as articulated in Dr. Mason's discounted cash flow analysis, was too speculative as a matter of law. Accordingly, it is black letter law that Plaintiffs may seek reliance damages, since the Court determined they "cannot prove [their] profit with reasonable certainty" for purposes of expectancy damages. *See* RESTATEMENT (SECOND) OF CONTRACTS § 349, cmt. a. And as Plaintiffs explained in their motion, reliance damages are measured by Plaintiffs' expenditures made in reliance on the contract subject to any benefit retained or "loss the defendant can prove with reasonable certainty the plaintiff would have suffered had the contract been performed." See Mot. 5-6 (quoting RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 38(2)(a)); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 349 (stating that "the injured party has a right to damages based on his reliance interest . . . less any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed").

Defendants' contrary arguments rest largely on a misunderstanding of the straightforward legal framework for reliance damages. For example, Defendants say that reliance damages would result in a "windfall" to Plaintiffs. But as just explained, the analysis for reliance damages permits Defendants to *prevent* any alleged windfall by proving with reasonable certainty that Plaintiffs' expenditures should be reduced by any benefit they have retained and the amount they would have lost even absent Defendants' breach. Under this framework, any "windfall" is entirely eliminated. Thus, Defendants are mistaken when they suggest that reliance damages necessarily entitle

Plaintiffs to "the same monetary damages" as their restitution theory "but without returning their shares." Opp. 12-13. While it is true that Plaintiffs' request for reliance damages does not involve returning shares or unwinding the shareholder contracts like restitution would have required, Defendants may *reduce* the "monetary damages" by the amount of any benefit that Defendants can prove with reasonable certainty that Plaintiffs have retained and by the amount that Plaintiffs would have lost even absent the breach. In sum, by definition, there can be no "windfall" under the burden-shifting framework for reliance damages.

Next, Defendants say that Plaintiffs are "transparently attempting" to "re-insert into the case the 'lost-dividends' theory this Court just rejected." Opp. 13. But again, this misunderstands the analysis for reliance damages. As Plaintiffs explained not only in their motion but also in their initial disclosures, Dr. Mason's discounted cash flow analysis is relevant to *rebut* Defendants' attempt to show with "reasonable certainty" that Plaintiffs would have lost their investment entirely even absent the breach. *See* Mot. 9; Mot. Ex. B at 8. And that is true *even if* Dr. Mason's predicted outcome was not "reasonably certain" to occur. For example, if Dr. Mason's predicted outcome was within the range of reasonable possibilities or had a significant chance of occurring (even if it was not *certain* to occur), then his analysis could rebut Defendants' attempt to show that *their* predicted outcome was "reasonably certain" to occur. Thus, even if Dr. Mason's discounted cash flows analysis cannot be used to establish expectancy damages, it is still relevant to rebutting Defendants' attempt to reduce reliance damages.

Defendants also contend that Plaintiffs' reliance damages are somehow capped by the $1.6 billion drop in the stock price when the Net Worth Sweep was announced. *See* Opp. 10-12. First, Defendants assert that reliance damages are "unavailable as a matter of law" because "the Court has held that Plaintiffs' 'lost-value' expectation damages theory" based on the drop in stock price

-8-

"*is* sufficiently certain to proceed to trial." Opp. 10. But this argument conflates the *fact* of damages or "harm" (which the Court addressed in its summary judgment ruling) with the *amount* or "measure" of damages (which the Court did not address). The Court accurately distinguished between the two concepts in its opinion when it explained that Delaware and Virginia law "distinguish" between the "*measure* of damages" and the "finding of *harm* for purposes of liability[.]" SJ Op. 14 (Class ECF No. 198, Fairholme ECF No. 206). (emphasis in original). And with respect to the lost-value theory, the Court was clear that its holding was merely with respect to "harm." The Court summed up its holding succinctly: "[t]he Court agrees that on the lost-value theory, disputed issues of material fact preclude summary judgment *as to the fact of harm.*" SJ Op. 21 (emphasis added). At no point did the Court suggest that this conclusion *also* decided the "measure" or "amount" of damages. Indeed, the Court expressly stated it "ha[d] no occasion to consider th[e] separate question" of "the amount of damages resulting from that alleged harm." SJ Op. 22. Thus, the Court's conclusion that there is a genuine issue of material fact as to the fact of *harm* did not establish a cap on *the amount* of Plaintiffs' reliance damages.

Defendants make a similar error when they argue that Plaintiffs seek reliance damages in excess of their "claimed" expectation damages. In support, Defendants cite cases setting forth the elementary proposition that reliance damages may not exceed party's *claimed* expectation damages. *See* Opp. 11-12; *see also, e.g.*, *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1026 (10th Cir. 2018) ("Plaintiffs' *claimed* reliance damages are peculiar in that they far outpace their *claimed* expectation damages." (emphasis added)). These cases illustrate the basic principle of contract damages that a party may not be put in a *better* position than he would have been in had the contract been performed. *See* 24 WILLISTON ON CONTRACTS § 64:1 (4th ed. May 2022 update) (the goal is "to place the plaintiff-promisee in as

good a position as he or she would have occupied had the defendant-promisor not breached the contract."). But Plaintiffs do not "claim" expectation damages of only $1.6 billion—far from it. The preferred shareholders' *full* expectation interest—i.e., the position they would have occupied absent the breach—would be the par value of their shares. Separately, Plaintiffs' expert, Dr. Mason, made a number of conservative assumptions to arrive at expectation damages of $27.2 billion. *See* Mason MIL Opp. 8-9, 18 n.8 (Class ECF No. 163, Fairholme ECF No. 170). But the Court held that, even relying on Dr. Mason's conservative analysis, Plaintiffs still "cannot prove [their] profit with reasonable certainty." RESTATEMENT (SECOND) OF CONTRACTS § 349, cmt. a. Thus, the $1.6 billion drop in share price is a *fraction* of Plaintiffs' claimed expectation damages— but it is a fraction that Plaintiffs reserve the right to prove at trial.

That Plaintiffs are unable to prove the *full* measure of their expectation damages, however, does not limit their ability to seek the full measure of their reliance damages. To the contrary, this is precisely the posture in which reliance damages are appropriate because they "offer[] a remedial alternative in cases where the plaintiff cannot establish expectation damages—either because of difficulties of proof, or because contractual expectancy is provable but negative." RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 38, cmt. a. Given the Court's holding that Plaintiffs are unable to prove their claimed expectation damages with reasonable certainty, Plaintiffs thus may seek reliance damages of up to the par value of their shares. And Defendants will have the opportunity to reduce those damages to the extent Defendants can prove with reasonable certainty that Plaintiffs would have ended up with something less absent the breach. For example, if Defendants believe that Plaintiffs would have obtained only $1.6 billion in value absent the breach, they may introduce that theory, prove it with reasonable certainty, and have Plaintiffs' reliance damages reduced to that amount—but it is *their burden* to do so. Defendants

cannot short-circuit the reliance damages analysis by using a fraction of Plaintiffs' claimed expectancy damages as a cap without proving that result with reasonable certainty.

**IV.     THE COURT SHOULD PERMIT PLAINTIFFS TO SERVE A SHORT SUPPLEMENTAL EXPERT REPORT ON "LOST VALUE" DAMAGES**

As shown in Plaintiffs' opening brief, Dr. Mason's expert report in this case contained the opinion that the stock price event study of Defendants' expert, Dr. Attari, indisputably established the existence of harm of at least $1.6 billion across all of the series of shares at issue in this litigation. Plaintiffs further explained that Dr. Mason opined that this measure was substantially "understated." While one obvious reason for that opinion was that Dr. Mason had concluded that his discounted cash flow analysis was the most appropriate measure of the harm caused by the Net Worth Sweep, Dr. Mason is now presumptively precluded from giving that opinion. An additional reason why the $1.6 billion measure of damages is understated is relatively obvious. While the $1.6 billion amount reflects the drop in share prices on the day after the Net Worth Sweep was announced, the only way in which the share prices after the Net Worth Sweep could have *any* positive value is based on the market's speculation (or conviction) that something as drastic as the Net Worth Sweep could not possibly stay in effect. This must be the case, because so long as the Net Worth Sweep remains in effect, it is literally *impossible* for any money to be distributed to private shareholders, either in dividends or as liquidation proceeds. It's impossible – period. Thus, any positive value that Plaintiffs' shares have after the Net Worth Sweep reflects (a) the market's judgment about whether the Net Worth Sweep will remain in effect, or instead will be invalidated by litigation or otherwise (or trigger compensation of some kind, such as through this lawsuit), plus (b) the market's assessment of the value the shares would have if the Net Worth Sweep did go away (discounted by the probability of that not happening).

Given that the market price for the GSE shares after the Net Worth Sweep reflects the market's judgment about the likelihood of the Net Worth Sweep being overturned through litigation or otherwise, that price cannot be used to reduce the damages that seek to measure the harm inflicted by the Net Worth Sweep. Rather, if share prices are to be the only way that damages may be measured, a better use of them would be to measure the market capitalization reflecting share price on August 16, 2012 – the day before the Net Worth Sweep was announced – and to treat that as the measurement of the expected future dividends to the various classes as of that date. Plaintiffs believe the market capitalization based on share price grossly understates that value, but it is at least a minimum measure. The Net Worth Sweep eliminated the ability of Plaintiffs to ever receive those dividends, and thus the August 16 market price represents a minimum valuation of the harm caused by the Net Worth Sweep.

The foregoing analysis is an important part of any "lost value" analysis that is based on share prices. It will naturally be a part of Dr. Mason's testimony on the "lost value" measure of damages, which he discussed in his report and which he concluded would understate the measure of harm. Plaintiffs simply ask that Dr. Mason be permitted the right to serve a short rebuttal report that clarifies the scope of this analysis. That will avoid any disputes about the scope of his testimony at trial. It will ensure that the record reflects that Defendants were given full and fair notice of the scope of the "lost value" theory that is being presented at trial, an opportunity to depose Dr. Mason on that measure of damages, and to submit their own supplemental report if they wish.

The cases Defendants cite all deal with situations where a party seeks leave to have an expert do a brand new analysis after an adverse court ruling. That is not this case. The Court held that the "lost value" theory discussed in Dr. Mason's report may be presented at trial. All Plaintiffs

seek is the ability to clarify the scope of Dr. Mason's opinions about the lost value damages measure, why he believes it is understated, and what he believes is the better way to use share prices to provide a minimum reasonable measure of damages. There is case law to support granting Plaintiffs leave under these circumstances.[2]

Further, given the magnitude of the case and the interests at stake, it is in the interests of justice for the Court to grant Plaintiffs' request.

## V.     THE TRIAL SCHEDULE

Plaintiffs are prepared to proceed to trial on October 17, 2022 or at the Court's earliest convenience, as the Scheduling Order provides. If necessary, Dr. Mason could serve his supplemental report this week, and present testimony at the end of Plaintiffs' case – either at the end of the first week of trial, or the beginning of the following week.

However, as Plaintiffs demonstrated in their opening brief, if the Court grants leave for Dr. Mason to serve a supplemental report, it would likely be better for both parties if the Court either

---

[2] *See Barnes v. District of Columbia*, 289 F.R.D. 1, 17 (D.D.C. 2012) (denying defendant's motion to strike plaintiffs' supplemental expert report and allowing defendants to depose the expert because a deposition mitigated any prejudice to defendants); *Capitol Justice LLC v. Wachovia Bank, N.A.*, 706 F. Supp.2d 34, 39 (D.D.C. 2009) (permitting supplemental expert report where an expert "used the same methodology in his revised report as in his initial report" to "produce a[] more complete and accurate report"); *Minebea Co. v. Papst*, 231 F.R.D. 3, 7 (D.D.C. 2005) (allowing plaintiffs to file a supplemental expert report after trial had already begun to correct an inaccuracy in the report); *Redfield v. Campbell Cty. Health*, No. 19-cv-189-J, 2021 WL 2941993 (D. Wyo. Apr. 22, 2021) (after striking one of plaintiff's two expert reports, court granted motion to supplement surviving expert report because any prejudice to defendants or disruption of trial schedule were insignificant and could be mitigated and plaintiff acted in good faith); *Boyer v. Weyerhaeuser Co.*, No. 14-CV-286-WMC, 2016 WL 2593984, at *6 (W.D. Wis. May 5, 2016) (granting the defendant's motion to file a supplemental expert report "on the eve of trial" because the plaintiff was not prejudiced); *Lenox Maclaren Surgical Corp. v. Medtronic, Inc.*, No. 10-CV-02139-MSK-NYW, 2015 WL 6735495, at *4 (D. Colo. Nov. 4, 2015) (granting plaintiff leave to supplement its expert report months after discovery had closed because the supplement did not substantially harm defendants, and any harm could be ameliorated through an additional deposition).

ordered a continuance of the current trial date or a bifurcation of the trial between a liability phase (which could proceed as scheduled) and a damages phase (which could be scheduled for a later date, assuming Plaintiffs obtain a liability verdict in their favor).

## VI.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and permit Plaintiffs to amend the pretrial statement to address reliance damages and the lost share value measure of damages, to serve a supplemental expert report addressing the lost share value measure, and to adjust the trial schedule as practical and appropriate in light of the other relief that is granted.

Dated: October 10, 2022

Respectfully submitted,

*/s/ Charles J. Cooper*
Charles J. Cooper (Bar No. 24870)
David H. Thompson (Bar No. 450503)
Vincent J. Colatriano (Bar No. 429562)
Peter A. Patterson (Bar No. 998668)
Brian W. Barnes (*Pro Hac Vice*)
**COOPER & KIRK, PLLC**
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Counsel for Berkley Plaintiffs*

*/s/ Eric L. Zagar*
Eric L. Zagar (*Pro Hac Vice*)
**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
280 King of Prussia Rd.
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
ezagar@ktmc.com

Hamish P.M. Hume (Bar No. 449914)
Samuel C. Kaplan (Bar No. 463350)
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave. NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
hhume@bsfllp.com
skaplan@bsfllp.com

Michael J. Barry (*Pro Hac Vice*)
**GRANT & EISENHOFER, P.A.**
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100

mbarry@gelaw.com

Adam Wierzbowski (*Pro Hac Vice*)
**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
adam@blbglaw.com

*Co-Lead Counsel for the Class*