UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAIRHOLME FUNDS, INC., *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>FEDERAL HOUSING FINANCE AGENCY, *et al.*,<br><br>    *Defendants*. | Case No. 1:13-cv-1053-RCL |
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations | Case No. 1:13-mc-1288-RCL |
| This Memorandum Opinion relates to:<br>ALL CASES | CLASS ACTION<br><br>*** ~~FILED UNDER SEAL~~ ***   *lef 10/19/22* |

# MEMORANDUM OPINION

Trial is fast approaching in this suit growing out of the "Net Worth Sweep," an agreement between the Federal Housing Finance Agency ("FHFA"), as conservator for Fannie Mae and Freddie Mac ("the GSEs"), and the U.S. Department of the Treasury ("Treasury") requiring the GSEs to pay 100 percent of their net profits in excess of a predetermined capital reserve to Treasury as compensation for Treasury's bailout of the GSEs following the 2008 financial crisis. The Court will reserve decision on most of the pending pretrial motions until the upcoming pretrial conference. However, the Court believes prompt disposition of Plaintiffs' Motion for Leave to Amend Their Pretrial Statement, Serve a Supplemental Expert Report, and Adjust the Trial Schedule, *Fairholme* ECF No. 203, Class ECF No. 195, and Plaintiffs' Motion for Clarification

1

and/or Partial Reconsideration, *Fairholme* ECF No. 204, Class ECF No. 196,[1] will help to focus the pretrial conference on the hotly contested evidentiary issues present in the parties' motions *in limine* and will help all parties move ahead expeditiously with trial preparations.

In its summary judgment opinion, the Court held that plaintiffs' primary theory of harm—that the Net Worth Sweep deprived them of dividends that they otherwise would have received—was barred as a matter of law because it relied on the impermissibly speculative assumption that Treasury would have allowed FHFA to pay down Treasury's Liquidation Preference in the GSEs enough that the GSEs would have been able to pay dividends to other shareholders. *See Fairholme Funds, Inc. v. Fed. Housing Finance Agency*, Nos. 13-cv-1053, 13-mc-1288, 2022 WL 4745970, at *9–10 (D.D.C. Oct. 3, 2022). The Court also held that plaintiffs' proposed alternative remedy of rescission and restitution was barred by a provision of the Recovery Act, or "HERA," prohibiting nonmonetary remedies for the FHFA's actions as conservator. *See id.* at *11–12. However, the Court allowed an alternative theory of harm to proceed to trial, one based on the loss in share value that the Net Worth Sweep allegedly caused by effectively eliminating the dividend rights that came with those shares. *See id.* at *11.[2]

In the two motions under consideration in this Memorandum Opinion, filed shortly after the summary judgment decision, plaintiffs seek to resuscitate their primary theory of harm and to introduce two new theories to measure their damages under the theory the Court allowed to proceed to trial. For the reasons that follow, these two motions will be **DENIED**.

---

[1] For purposes of this Memorandum Opinion, "*Fairholme* ECF No." refers to the docket in No. 13-cv-1053, and "Class ECF No." refers to the docket in No. 13-mc-1288.

[2] The Court has set forth the relevant factual and procedural background in multiple prior opinions in this case, most recently in its summary judgment decision. *See Fairholme Funds*, 2022 WL 4745970, at *1–3.

## I. Plaintiffs' Motion for Leave to Amend and to Serve Supplemental Expert Report

In their first post–summary-judgment motion, Plaintiffs seek to serve a supplemental expert report introducing a new model to calculate the version of expectation damages that the Court allowed to proceed and to seek an alternative measure of damages at trial based on their reliance interest. The Court will deny both requests.

### A. Plaintiffs May Not Serve a Supplemental Expert Report

Plaintiffs ask the Court to reopen expert discovery and allow them to serve new a supplemental report by their existing expert, Dr. Joseph Mason, explaining his opinion that the Net Worth Sweep deprived plaintiffs' shares of 100 percent of their pre–Net-Worth-Sweep value. Dr. Mason previously opined that a measure of expectation damages based on lost share value would total approximately $1.6 billion based on a 50 to 60 percent decline in value estimated by one of defendants' experts, although he cautioned that that measure "understates damages . . . because it does not fully encompass the shares' fundamental value." *See* Mason Reply Rep. ¶ 88, Ex. A to Pls.' Mot., *Fairholme* ECF No. 203-1, Class ECF No. 195-1. Plaintiffs do not give a total estimate of their new proposed measure of expectation damages. Plaintiffs estimate that serving a supplemental expert report detailing Dr. Mason's new calculations and allowing defendants to serve a rebuttal report would delay the trial by at least seven weeks or require its bifurcation into one trial on liability and another on damages. Even so, they argue that it would not significantly disrupt the trial schedule or prejudice defendants, and thus that under the circumstances, the Court should reopen expert discovery for that limited purpose. That argument is unpersuasive.

"Courts do not allow supplemental or amended [expert] reports simply at the whim of a party;" in general, "they are permitted: '(1) upon court order; (2) when the party learns that the earlier information is inaccurate or incomplete; or (3) when answers to discovery requests are inaccurate or incomplete.'" *Barnes v. District of Columbia*, 289 F.R.D. 1, 6–7 (D.D.C. 2012)

3

(quoting *Minebea Co., Ltd. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005)). When a request to serve such a report comes shortly before the beginning of trial, the Court has discretion to consider whether there is good reason for the request's untimeliness and whether granting the request would be substantially disruptive to the trial schedule or would result in significant prejudice the defendant. *See Via Vadis, LLC v. Amazon.com, Inc.*, No. 13-cv-00813, 2022 WL 1667560, at *2 (W.D. Tex. May 24, 2022); *Ford Motor Co. v. Versata Software, Inc.*, No. 15-cv-10628, 2018 WL 4282740, at *6 (E.D. Mich. Sept. 7, 2018). If undue disruption or prejudice would result, the Court need not grant the request, even if it came as a result of the Court's own exclusion of other evidence. *See Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, No. 15-cv-03424, 2020 WL 127612, at *13–14 (N.D. Cal. Jan. 10, 2020).

Here, the Court finds that the serving of a supplemental expert report would substantially disrupt the trial schedule and that plaintiffs have no adequate excuse for their failure to develop the proposed testimony earlier. The case is nearly a decade old, and trial is scheduled to commence in less than a week. With the litigation finally nearing its long-awaited conclusion, plaintiffs now propose to delay that conclusion further, by seven weeks or more. And they propose to do so by developing expert testimony that they were perfectly capable of developing before the close of expert discovery, even if they did not anticipate the Court's ruling on summary judgment. Although Dr. Mason opined in his reply report that the $1.6 billion figure was an underestimate, he did not elaborate on the proper measure of the shares' decline in value, which he now offers, for the first time, to clarify in a supplemental report that he believes to be 100 percent of their price on the day before the Net Worth Sweep. Plaintiffs offer no explanation as to why they could not have asked Dr. Mason for that further elaboration in that same report.

4

For these reasons, the Court will not reopen expert discovery and allow plaintiffs to serve a supplemental expert report.

### B. Plaintiffs May Not Seek Reliance Damages

Plaintiffs also move for leave to amend their pretrial statement to so that they may seek reliance damages at trial "equal [to] the original price of Plaintiffs' shares, plus prejudgment interest including at a minimum interest running from the time of the last dividend received." Pls.' Mem. at 5, *Fairholme* ECF No. 203, Class ECF No. 195 (quoting Pls.' Init. Disclosures, Ex. B to Pls.' Mot., *Fairholme* ECF No. 203-2, Class ECF No. 195-2). Based on existing expert testimony regarding the monetary component of rescission and restitution, an alternative remedy that the Court held is barred in this case as a matter of law, it appears that plaintiffs' claimed reliance damages would total approximately $48 billion. *See* Defs.' Opp'n at 13, *Fairholme* ECF No. 210, Class ECF No. 207; Mason Rep. ¶ 95, Ex. C to Pls.' Mot., *Fairholme* ECF No. 203-3, Class ECF No. 195-3. Plaintiffs argue that reliance damages are a standard contract remedy that does not suffer from any of the defects identified in the summary judgment opinion, that plaintiffs have reserved the right to rely on that remedy all along, and that doing so would not require any new expert testimony. The Court is unpersuaded for two reasons.

First, plaintiffs' request comes on the eve of the trial. While plaintiffs stated in their initial disclosures in 2018 that they might seek reliance damages, they apparently made no subsequent effort in the four years thereafter to develop that theory. Plaintiffs urge that their request to seek reliance damages would not require the Court to reopen expert discovery, because they could repurpose evidence already in the record of Dr. Mason's calculations of the monetary component of an award of rescission and restitution. However, reliance damages and the monetary component of rescission and restation, while similar, differ in one important regard: Reliance damages can be

reduced if the breaching party can prove that the nonbreaching party would have lost money if the contract had been performed. *See* Restatement (Second) of Contracts § 349. In this case, it is unclear whether defendants could prove their desired offset without supplemental expert testimony of their own. And even aside from the question of taking additional expert discovery, it is within the Court's trial-management discretion to decide whether a plaintiff may introduce a new measure of damages on the eve of trial, depending on whether doing so would result in significant delay or prejudice to defendants. *See ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 522–23 (Fed. Cir. 2012); *cf. Agence France Presse v. Morel*, 293 F.R.D. 682, 683–84 (S.D.N.Y. 2013). In this case, defendants heretofore have had little reason to develop a trial argument as to why any reliance damages should be offset. The Court declines either to further postpone the trial of a decade-old case or to leave defendants scrambling over the course of a few days to fight a case on damages that was alluded to once four years ago and never developed during discovery.

Second, the reliance damages claimed are many multiples higher than a measure of expectation damages that the Court allowed to proceed to trial, one based on the lost-value theory of harm. In contract cases, expectation damages are preferred, with reliance damages considered as an alternative or proxy if expectation damages are not readily ascertainable. *See* Restatement (Second) of Contracts § 349 comm. (a); Restatement (Third) of Restitution and Unjust Enrichment § 38 comm. (a). Accordingly, courts across several jurisdictions have held that plaintiffs may not "pursue—let alone recover—reliance damages in excess of ascertainable expectation damages." *Spring Creek Exploration & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1026–27 (10th Cir. 2018); *see also, e.g., Merry Gentleman, LLC v. George and Leona Prods., Inc.*, 799 F.3d 827, 832 (7th Cir. 2015); *Old Stone Corp. v. United States*, 450 F.3d 1360, 1378 (Fed. Cir. 2006). The courts of Delaware and Virginia, whose laws apply in this case, apparently have not

addressed that issue directly, but they have often repeated the bedrock principle that expectation damages are the standard remedy in contract cases and are "measured by the amount of money that would put the promisee in the same position as if the promisor had performed the contract." *Duncan v. Theratx, Inc.*, 775 A.2d 1019, 1022 (Del. 2001); *see also Estate of Taylor v. Flair Property Assocs.*, 248 Va. 410, 414 (1994). The Court can therefore predict that if the question came before them, the courts of those states would likewise hold that plaintiffs asserting contract claims cannot recover reliance damages so far in excess of ascertainable expectation damages that they would necessarily place those plaintiffs in a better position than they would have been in had the contract been performed.

Plaintiffs argue that this is just the sort of case in which reliance damages should be available as a matter of law, because the Court did not allow their preferred measure of expectation damages, a much larger one based on forgone future dividends, to proceed to trial. But plaintiffs confuse the *fact* of harm with the *measure* of damages. *See Fairholme Funds*, 2022 WL 4745970, at *7. The Court held in its summary judgment opinion that plaintiffs' preferred theory of the *fact* of harm—that the Net Worth Sweep deprived them of future dividends that they otherwise were reasonably certain to have received—was impermissibly speculative as a matter of law. *Id.* at *7–10. Now only one theory as to how the Net Worth Sweep harmed plaintiffs remains: that the Net Worth Sweep deprived plaintiffs' shares of much of their value by effectively extinguishing the dividend rights that came with those shares. In other words, plaintiffs may argue to the jury that they thought they were buying shares that came with dividend rights, and as a result of defendants' actions, they ended up with less-valuable shares that effectively did not come with dividend rights. Expectation damages are one way of measuring that alleged harm. Plaintiffs initially estimated expectation damages under that theory at $1.6 billion, and as explained above, they now wish to

pursue a new measure of damages under the same theory of harm based on a decline in share value of 100 percent rather than 50 or 60 percent. Again, plaintiffs do not give a new total estimate for their claimed lost-value expectation damages. But assuming that figure is around $3.2 billion, or roughly double the original $1.6 billion figure, their claimed reliance figure of $48 billion is a full 15 times higher than even the highest sum of expectation damages that plaintiffs now put forward as a measure of expectation damages on the one theory of the fact of harm that remains. With respect to plaintiffs' share value, the claimed reliance damages would put plaintiffs in a far better position than they would have been had the alleged breach never occurred and therefore would not be an appropriate contract remedy as a matter of law.

For these reasons, plaintiffs may not seek reliance damages at trial, and the Court will not grant them leave to amend their pretrial statement to include testimony on such damages.

## II. Plaintiffs' Motion for Clarification and/or Partial Reconsideration

In their second post–summary-judgment motion, plaintiffs ask the Court to clarify whether its summary judgment decision allows plaintiffs to prove that they would have received dividends but for the Net Worth Sweep based on an alternative theory alluded to in their summary judgment brief, or, in the alternative, for reconsideration of the portion of that decision holding their primary lost-dividends theory of harm impermissibly speculative. The request for clarification is as confusing as it is unpersuasive; the request for partial reconsideration is frivolous.

Plaintiffs request clarification in reference to a single paragraph from their brief in opposition to defendants' motion for summary judgment:

> In addition, while Plaintiffs and Defendants dispute whether Treasury would have allowed a redemption in the "but for" world, Treasury still has the over $123 billion in excess cash dividends it received and has given no indication it will be returned if Plaintiffs win this case by showing that the Net Worth Sweep violated the implied covenant of good faith in their shareholder contracts. Thus, it is only fair that any analysis of the "but for" world should also treat Treasury as keeping that money. And in the "but for" world, there are only two ways Treasury could get that money: the first would be as

> a redemption, which is consistent with Dr. Mason's discounted cash flow model showing damages of over $27 billion; the second would be by exercising its common stock warrants, and authorizing the GSEs to pay out dividends on that common stock, which in turn would have triggered an obligation to pay dividends on the junior preferred stock held by private shareholders, as well as to the 20% of common stock held by private shareholders. Dr. Mason has measured the amount of dividends that would have been paid to private shareholders under the second scenario, and they translate to approximately $19.9 billion . . . . Plaintiffs should be entitled to show the amounts they would have received in any world where (a) the Net Worth Sweep is held to be an unlawful breach, but (b) Treasury keeps the windfall profits it received under that Sweep.

Pls.' Opp'n to Defs.' Mot. for S.J. at 36–37, *Fairholme* ECF No. 151, Class ECF No. 147 (citation omitted). Specifically, plaintiffs note that the Court "did not address the second scenario," and ask the Court to clarify "whether the Court's Order bars Plaintiffs from seeking damages based on the amount of dividends that would have been paid to private shareholders had Treasury, in the 'but for' world, sought to obtain as much as possible of the excess dividends it currently has through the exercise of the stock warrants, rather than by allowing a redemption of the senior preferred stock." Pls.' Mot. at 2–3, *Fairholme* ECF No. 204, Class ECF No. 196.

"Although no Federal Rule of Civil Procedure specifically governs 'motions for clarification,' these motions are generally recognized and allowed by federal courts . . . . 'The general purpose of' a classic 'motion for clarification is to explain or clarify something ambiguous or vague [.]'" *Barnes*, 289 F.R.D. at 13 n.6 (brackets in original) (citing *United States v. Philip Morris USA Inc.*, 793 F.Supp.2d 164, 168–69 (D.D.C.2011) and quoting *Resolution Trust Corp. v. KPMG Peat Marwick*, No. 92-cv-1373, 1993 WL 211555, at *2 (E.D. Pa. June 8, 1993)). Ironically, in this case, plaintiffs' request for clarification is itself more ambiguous than the portion of the summary judgment decision it concerns.

To the extent plaintiffs now propose to show that they would have received dividends but for the Net Worth Sweep by proving that Treasury *would have* exercised its stock warrants and authorized a payment of dividends on common stock, that argument was not apparent in the

summary judgment papers. "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). And even if the Court were to consider an argument so obliquely raised, that argument would be to no avail. The lost-dividends theory based on the exercise of stock warrants is even more speculative than the one based on a paydown of Treasury's Liquidation Preference. When asked about the warrants theory at his deposition, Dr. Mason himself conceded that it was "not [his] opinion that would occur," and that he did not "think that scenario [was] reasonable." Mason Depo. 90:8, 97:13–14, Ex. A to Defs.' Opp'n, *Fairholme* ECF No. 208-1, Class ECF No. 205-1. And plaintiffs offer no other evidence that Treasury would have exercised its warrants and allowed a distribution but for the Net Worth Sweep. Thus, even more so than with respect to the theory based on a paydown of Treasury's Liquidation Preference, this argument would "require[] the jury simply to *guess* how Treasury and FHFA would have balanced their obligations to different stakeholders and responded to financial and political incentives in a counterfactual world," an exercise that however concluded could not establish the fact of harm with the reasonable certainty required under Delaware and Virginia law. *Fairholme Funds*, 2022 WL 4745970, at *9 (emphasis in original).

To the extent plaintiffs propose to show that the Net Worth Sweep harmed them by proving that Treasury received excess dividends under the Net Worth Sweep that it otherwise would not have received and then to measure that harm based on any other scenario in which Treasury could have obtained that money, their argument simply does not logically follow. Plaintiffs offered no explanation in their summary judgment brief, nor do they now, as to why every single excess dollar paid to Treasury under the Net Worth Sweep is a dollar that otherwise necessarily would have been paid to non-Treasury shareholders.

For these reasons, plaintiffs have not shown that they are entitled to a clarification of the summary judgment decision approving their alternate lost-dividends theory of harm based on the possibility that Treasury could have exercised its stock warrants in a world without the Net Worth Sweep.

Finally, plaintiffs' request for partial reconsideration, which is only two sentences long, is perfunctory and wholly deficient. Plaintiffs do not even recite, much less apply, the stringent standard for reconsideration of a court's prior order. *See Pueschel v. Nat'l Air Traffic Controllers' Ass'n*, 606 F. Supp. 2d 82, 85 (D.D.C. 2009) ("Reconsideration may be warranted where there was a patent misunderstanding of the parties, where a decision was made that exceeded the issues presented, where a court failed to consider controlling law, or where a significant change in the law occurred after the decision was rendered.").

### III. Conclusion

For the foregoing reasons, the Court will **DENY** Plaintiffs' Motion for Leave to Amend Their Pretrial Statement, Serve a Supplemental Expert Report, and Adjust the Trial Schedule, *Fairholme* ECF No. 203, Class ECF No. 195, and Plaintiffs' Motion for Clarification and/or Partial Reconsideration, *Fairlhome* ECF No. 204, Class ECF No. 196. A separate Order consistent with this Opinion shall issue this date.

Date: October 11, 2022

/s/ Royce C. Lamberth
Royce C. Lamberth
United States District Judge