UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FAIRHOLME FUNDS, INC.**, *et al.*,<br><br>    *Plaintiffs,*<br><br>**v.**<br><br>**FEDERAL HOUSING FINANCE AGENCY**, *et al.*,<br><br>    *Defendants.* | **Case No. 1:13-cv-1053-RCL** |
| **In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations** | **Case No. 1:13-mc-1288-RCL** |
| This Memorandum Opinion relates to:<br>ALL CASES | <u>CLASS ACTION</u><br><br>\*\*\* ~~FILED UNDER SEAL~~\*\*\* 10/20/22 |

### MEMORANDUM OPINION

Ten different motions in limine are now pending before the Court, all of which were discussed to some extent in the recent pretrial conference. This Memorandum Opinion sets forth the Court's reasoning for its disposition of those motions in the accompanying Order. Many of the motions in limine raise closely related issues, but in the interest of clarity, the Court will consider them one by one, beginning with plaintiffs' motions, followed by defendants' motions.

I.   **Plaintiffs' Motions**

A.  **Plaintiffs' Motion in Limine to Exclude Certain Opinions and Testimony of Defendants' Expert Mukarram Attari (*Fairholme* ECF No. 161, Classs ECF No. 156)**

Defendants plan to call their expert Dr. Mukarram Attari to testify that it was reasonable for FHFA to agree to the Third Amendment and that it did not harm plaintiffs. Plaintiffs move to exclude two of Dr. Attari's opinions: (1) that, based on an "event study" he conducted of bond

yields following the announcement of the Third Amendment, that announcement caused a tightening of the difference in yield between GSE bonds and Treasury bonds ("Treasury spread"); and (2) that if the periodic commitment fee ("PCF") to which Treasury was entitled prior to the Third Amendment were assessed, it would have been set at the GSEs' net profits. For the reasons that follow, this motion will be **GRANTED** in part and **DENIED** in part.

### 1. The Event Study and Bond Yields

Plaintiffs argue that Dr. Attari's opinion that the Third Amendment caused the decline in the GSE bonds' Treasury spread should be excluded as unreliable under Federal Rule of Evidence 702 because it fails to account for a potentially confounding variable, namely another part of the Third Amendment, separate from the Net Worth Sweep, that required the GSEs to accelerate the winddown of their retained mortgage portfolios. But Dr. Attari never claims that his event study alone isolates the impact of the Net Worth Sweep from the impact of other aspects of the Third Amendment on bond yields. *See* Attari Rep. ¶¶ 80–87, Ex. A to Pls.' Mot, *Fairholme* ECF No. 161-2, Class ECF No. 156-2 (referring only to "the Third Amendment" and not the Net Worth Sweep). Plaintiffs cite a number of cases for the proposition that "[a]n event study that fails to disaggregate the effects of confounding factors must be excluded because it misleadingly suggests to the jury that a sophisticated statistical analysis proves the impact of" the event being studied, *Bricklayers and Trowel Trades Intern. Pension Fund v. Credit Suisse First Boston*, 853 F. Supp. 2d 181, 190 (D. Mass. 2012); *see* Pls.' Reply at 4–5, *Fairholme* ECF No. 174, Class ECF No. 167, but those cases deal with an expert's failure to account for variables that might confound their *actual conclusions*.

The real dispute is thus over whether Dr. Attari's opinion about the entire Third Amendment "will help the trier of fact . . . to determine a fact in issue." Fed. R. Evid. 702(a). And understanding the effect of the entire package of changes included in the Third Amendment—the

Net Worth Sweep and everything else—could conceivably help the jury determine whether shareholders could reasonably have expected FHFA, under the circumstances, to agree to a major part of that package in its role as conservator. Moreover, plaintiffs can always cross-examine Dr. Attari regarding the weight that the jury should give to the market's reaction to the entire package, which also alleviates plaintiffs' concern that his use of the phrase "Third Amendment," which other witnesses will use to refer to the Net Worth Sweep in particular, will be substantially prejudicial.

For these reasons, plaintiffs' motion in limine to preclude Dr. Attari's testimony will be **DENIED** insofar as it seeks to exclude Dr. Attari's testimony about his event study and bond yields.

### 2. The Amount of the PCF

Plaintiffs argue that Dr. Attari's opinion that the PCF would have been set at the GSEs' net profits should be excluded as unreliable under Rule 702 because it relies on essentially no methodology at all. Specifically, Dr. Attari reasons as follows: (1) "The [agreements between FHFA and Treasury] provided that the PCF be set based on the market-determined value of the [Treasury] Commitment," (2) "[a] market participant would typically set the PCF based on the role of the Commitment," (3) "in this case, the role of the Commitment was to provide the GSEs with equity capital," (4) [p]roviders of equity capital typically receive the firm's profits," and therefore (5) "as an initial estimate, a market-determined PCF would be set at the level of the GSEs' profits." Attari Rep. ¶ 105, Ex. A to Pls.' Mot., *Fairholme* ECF No. 161-2, Class ECF No. 156-2.

As plaintiffs note, Dr. Attari so reasons without citation to anything, or any explanation that he is relying on his experience in the field of financial economics. Defendants argue that no citation is necessary, because he is relying on basic financial-economic concepts, and "Rule 702 imposes no minimum citation requirement." *In re Fluidmaster, Inc., Water Connector*

*Components Prod. Liab. Litig.*, No. 14-cv-5696, 2017 WL 1196990, at *7 (N.D. Ill. Mar. 31, 2017). But while there may be no need to cite evidence for basic financial concepts like the principle that providers of equity capital usually receive a firm's profits, the Court is troubled by the lack of citation or explanation for the proposition that "[a] market participant would typically set the PCF based on the role of the Commitment," Attari Rep. ¶ 105, Ex. A to Pls.' Mot., *Fairholme* ECF No. 161-2, Class ECF No. 156-2, and the leap from that proposition to the assumption that the market value of the Commitment would be *100 percent* of what is due to providers of equity capital. In their opposition to this motion, defendants do not explain where that proposition came from, except perhaps to suggest that the *entire* passage from the expert report draws on Dr. Attari's experience as a financial economist and an analogy to bankruptcy financing. *See* Defs.' Opp'n at 16–19, *Fairholme* ECF No. 168, Class ECF No. 161. But Dr. Attari did not claim to be relying on his expertise or experience when he stated, as if it were obvious, how a market participant would typically set the PCF or anything like it. This portion of Dr. Attari's testimony thus does not appear to be supported by reliable methodology, as Rule 702 requires.

For these reasons, plaintiffs' motion in limine to exclude Dr. Attari's testimony will be **GRANTED** insofar as it seeks to exclude under Rule 702 Dr. Attari's testimony that the PCF would have been set at 100 percent of the GSEs' net profits.

### B. Plaintiffs' Motion in Limine to Exclude Opinions of Defendants' Expert S.P. Kothari (*Fairholme* ECF No. 162, Class ECF No. 157)

Defendants plan to call their expert Professor S.P. Kothari to testify that it was reasonable for FHFA to run the GSEs in a manner that did not benefit shareholders and that given the circumstances, shareholders did not reasonably expect to be paid dividends before the Third Amendment took effect. Plaintiffs move to exclude Professor Kothari's testimony on grounds that it is (1) irrelevant, because it is premised on an incorrect legal standard; (2) partially just a summary

of evidence rather than expert opinion; and (3) unreliable and unduly confusing to the extent that it is expert opinion.

Plaintiffs argue that Professor Kothari's testimony regarding shareholders' reasonable expectations is irrelevant because defendants instructed him to consider only publicly available information, and under the correct standard, even nonpublic information is relevant to the implied covenant claim. That argument is unpersuasive. To be sure, plaintiffs are correct to a certain extent about the relevant standard. Defendants cite no authority for the proposition that nonpublic information can never be relevant to reasonable expectations for purposes of an implied covenant claim. As emphasized in the summary judgment opinion, whether defendants acted arbitrarily or unreasonably and thereby breached the implied covenant is determined in reference to plaintiffs' reasonable expectations. *Fairholme Funds, Inc. v. Fed. Housing Finance Agency* ("*Fairholme II*"), Nos. 13-cv-1053, 13-mc-1288, 2022 WL 4745970, at *6 (D.D.C. Oct. 3, 2022). And here, plaintiffs could logically argue that shareholders would have reasonably expected at the time of contracting that FHFA as conservator would act in good faith on whatever information *it* had at the time of the alleged breach. Moreover, the Court's 2018 opinion on defendants' motion to dismiss plaintiffs' amended complaint cited nonpublic information, including that "Treasury understood that the GSEs were about to achieve sustained profitability," as possible evidence that plaintiffs could not reasonably have expected FHFA to agree to the Net Worth Sweep. *Fairholme Funds, Inc. v. FHFA* ("*Fairholme I*"), 2018 WL 4680197, at *11 (D.D.C. Sept. 28, 2018). But just because nonpublic information *might* be relevant, that does not mean that an expert opinion based only on public information is *irrelevant*. Information publicly available in the months leading up to the enactment of the Third Amendment could simply be *part* of why shareholders reasonably could or could not have expected FHFA to agree to the Net Worth Sweep.

Plaintiffs also argue that a large portion of Professor Kothari's testimony is not helpful expert testimony under Rule 702 because it merely provides a summary of publicly available information and then draws conclusions from that information that the jury itself could draw. *See* Kothari Rep. ¶¶ 78–141, *Fairholme* ECF No. 162-2, Class ECF No. 157-2. Defendants respond that given how complex the economic issues are in this case, Professor Kothari's testimony will be helpful to the jury because he, as an expert on accounting and finance, can provide "specialized context for understanding how to connect the dots, to utilize" the publicly available information regarding the GSEs' financial state and shareholder expectations that would otherwise be "foreign to the jury." *SCCI Hosps. Of Am., LLC v. Home-Owners Ins. Co.*, 571 F. Supp. 3d 942, 950 (N.D. Ind. 2021). The Court finds defendants' argument more persuasive. "An expert's opinion may overlap with the jurors' own experiences or cover matters that are within the average juror's comprehension, so long as the expert uses some kind of specialized knowledge to place the litigated events into context." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 484 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 2877 (2021) (internal quotation marks, citations, and brackets omitted). Professor Kothari will do just that, and more—his testimony concerns matters that are arguably beyond the average juror's comprehension.

Finally, plaintiffs argue that a portion of Professor Kothari's testimony offering an empirical analysis of why shareholders reasonably could have expected an outcome similar to the Net Worth Sweep should be excluded under Rule 702 as unreliable and confusing. *See* Kothari Rep. ¶¶ 142–53, *Fairholme* ECF No. 162-2, Class ECF No. 157-2. As the Court understands it, this part of plaintiffs' motion is now moot, as the portion of Professor Kothari's testimony it concerns relies heavily on the discounted cash flow ("DCF") analysis of plaintiffs' expert witness Dr. Joseph Mason, and defendants represented at the pretrial conference that they no longer wish

to call Professor Kothari to discuss Dr. Mason's DCF analysis in light of the Court's summary judgment decision.

For these reasons, plaintiffs' motion in limine to exclude Professor Kothari's testimony will be **DENIED**.[1]

### C. Plaintiffs' Motion in Limine to Admit Evidence Pursuant to Rules 801 and 803 (*Fairholme* ECF No. 176, Class ECF No. 169)

Plaintiffs move for a ruling that 22 different documents largely prepared by officials at Treasury (which is not a party to the case) are admissible as nonhearsay or falling under a hearsay exception. Specifically, plaintiffs argue that all of those documents are admissible as coconspirator statements under Federal Rule of Evidence 801(d)(2)(E) or as public records setting out an agency's activities under Federal Rule of Evidence 803(8)(A)(i).

Plaintiffs argue that all of Treasury's communications about the Net Worth Sweep leading up to the enactment of the Third Amendment are admissible as coconspirator statements under Rule 801(d)(2)(E) because they are statements by FHFA's joint venturer made in furtherance of a joint venture—implementing the Net Worth Sweep. That argument is unpersuasive. The D.C. Circuit, unlike some other circuits, has "extend[ed] the [coconspirator] exception" of Rule 801(d)(2)(E) beyond criminal conspiracies, "to joint venturers' statements during and in furtherance of the joint venture." *Miller v. Holzmann*, 563 F. Supp. 2d 54, 85 n.28 (D.D.C. 2008). However, the lawful-joint-venture cases plaintiffs cite involve parties on the same side of an enterprise or business relationship, not counterparties to a contract. *See United States v. Gewin*, 471 F.3d 197, 200 (D.C. Cir. 2006) ("common enterprise of stock promotion"); *United States v. Brockenborrugh*, 575 F.3d 726, 730–32 (relationship between defendant and his real estate agent).

---

[1] The Court will **GRANT** defendants' motion for leave to file a supplemental brief addressing the effects of the summary judgment decision on this motion, which the Court has also considered.

The Circuit has explained that its extension of the coconspirator exception to lawful joint ventures is "based on concepts of agency and partnership law." *Gewin*, 471 F.3d at 201. Agreeing to a contract is not the same thing as entering an agency or partnership relationship, and it would make little sense to extend the rule further, to any statements made by a party's contractual counterparty made in furtherance of negotiating a contract between them.[2]

Plaintiffs also argue that the same documents are independently admissible as public records setting out an agency's activities under Rule 803(8)(A)(i) because they document meetings, deliberations, presentations, and the like performed as part of agency activities. Defendants argue that none of the documents "set out" Treasury's "activities" because every one of them records either preliminary agency deliberations or the agency's description of another agency's activities—FHFA's. This is a closer issue.

Defendants are right that many of the documents are records of internal Treasury deliberations about whether, when, and how to pursue the Net Worth Sweep. *See, e.g.*, Mem. from Jeffrey Goldstein to Sec. Geithner, Ex. A-1 to Pls.' Mot., *Fairholme* ECF No. 176-2, Class ECF No. 169-2. While the D.C. Circuit has not addressed the question, at least one other Circuit has held that "preliminary or interim evaluative opinions of agency staff members" do not fall under this particular branch of the public records exception, which typically is invoked to admit retrospective records of agency operations. *Smith v. Isuzu Motors Ltd.*, 137 F.3d 859, 851 (5th Cir. 1998).[3] And if Rule 803(8)(A)(i)'s exception for records setting out agency activities covered virtually all records relevant to the agency's business, then Rule 803(8)(A)(iii)'s exception for

---

[2] Plaintiffs even suggested at the pretrial conference that the coconspirator exception should extend to statements made by attorneys in the course of working cooperatively toward pretrial evidentiary agreements. Surely that reading stretches the word "coconspirator," even interpreted to mean "joint venturer," to its breaking point.

[3] The Fifth Circuit in *Smith* was interpreting an older version of the public records exception, former Rule 803(8)(A), but the operative words on which the court relied "set forth" and "activities"—remain the same.

"factual findings from a legally authorized investigation" would be superfluous. The Court is therefore reluctant to admit all 22 of the documents at issue in this motion simply because they are *some form* of Treasury document *related* to Treasury business. But other documents actually memorialize Treasury activities as they ostensibly occurred—for example, a memorandum summarizing a meeting between Treasury Secretary Geithner and FHFA Acting Director DeMarco in June 2012. *See* Mem. from M. Stegman to M. Miller (June 25, 2012), Ex. A-6 to Pls.' Mot., *Fairholme* ECF No. 176-7, Class ECF No. 169-7. Defendants offer no persuasive explanation as to why that document or others like it would not be a record setting out an agency's activities within the meaning of Rule 803(8)(A)(i).

Defendants' argument about many of the records setting out *another* agency or party's activities is less persuasive. Courts have held Rule 803(8)(A)(i) inapplicable to documents describing the activities of an entity besides the agency that prepared them, *see, e.g.*, *United States v. El-Mezain*, 664 F.3d 467, 499 (5th Cir. 2011), but that does not mean that any Treasury document otherwise admissible as a public record—for example, the aforementioned memo regarding the meeting between Secretary Geithner and Acting Director DeMarco—is inadmissible simply because its description of Treasury business *also* includes information about FHFA.

At any rate, the admissibility of these documents, which vary in form and content, does not lend itself well to a sweeping motion in limine covering 22 exhibits. Accordingly, plaintiffs' motion in limine to admit these documents pursuant to Rules 801 and 803 will be **DENIED**. Should plaintiffs offer these documents at trial, they should be mindful that (1) the Court will not admit any of them under the coconspirator exception and (2) the Court will admit them under the "activities" branch of the public records exception only to the extent that they memorialize or record agency business.

D.  **Plaintiffs' Omnibus Motion in Limine (*Fairholme* ECF No. 182, Class ECF No. 176)**

Plaintiffs' "omnibus motion in limine" includes six different motions in limine.

1.  **Motion in Limine to Preclude Evidence and Arguments Inconsistent with the Court's 2018 Opinion**

First, plaintiffs move to preclude arguments and evidence they see as inconsistent with the Court's 2018 motion to dismiss opinion: those implying that the "time of contracting" was in August 2012, just days before the Third Amendment's announcement, and those implying that only publicly available information is relevant to shareholders' reasonable expectations. This motion will be **GRANTED** in part.

*(i)  Information in existence as of the date of the Third Amendment*

Plaintiffs move to preclude defendants from offering evidence or arguments defining shareholders' reasonable expectations in reference to information publicly available on the eve of the Third Amendment rather than the beginning of the Conservatorship or the enactment of the Second Amendment. Although plaintiffs' argument on this point has some merit, resolving it in their favor will not quite have the effect they likely expect.

The Court has never precisely defined the "date of contracting" for purposes of the implied covenant claim in this case. The 2018 motion to dismiss opinion explained that "the time of contracting for the purposes of the implied covenant inquiry must be the time of the most recent change in contract—whether by amendment or change in law," including changes to federal law "affecting the governance of the GSEs and their relationships with their shareholders," such as the beginning of the conservatorship in 2008. *Fairholme I*, 2018 WL 4680197, at *9. Two subsequent opinions gave slightly different characterizations of that holding, with the class certification opinion stating that "the Court set the date of the Recovery Act's enactment and the FHFA's appointment as conservator as the barometer to evaluate the parties' reasonable expectations," *In*

*re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litig.*, No. 13-mc-1288, 2021 WL 5799379, at *8 (D.D.C. Dec. 7, 2021), and the summary judgment opinion stating in a footnote that "[t]he Court has previously held that the relevant time of 'contracting' for purposes evaluating plaintiffs' implied covenant claim is the time immediately before the enactment of the Third Amendment," *Fairholme II*, 2022 WL 4745970, at *13 n.9.[4] The Court now believes it would facilitate trial preparations to settle the matter definitively.

Plaintiffs argue that the relevant time of contracting is either the beginning of the conservatorship in 2008 or, at the latest, the enactment of the Second Amendment in 2009. Defendants argue that it is just days before the enactment of the Third Amendment in August 2012, with the implementation of an obscure federal regulation tangentially related to shareholder dividends, *see* 77 Fed. Reg. 33950–64 (June 8, 2012) (eff. Aug. 7, 2012). Plaintiffs have the better of this argument. It appears "the most recent change in contract," *Fairholme I*, 2018 WL 4680197, at *9, that arguably had any significant impact on shareholders' reasonable expectations was the Second Amendment. Defendants make no meaningful argument as to precisely in what way the 2012 regulation they cite should have informed shareholders' reasonable expectations. Accordingly, the Court now clarifies, consistent with its 2018 motion to dismiss opinion, that the "date of contracting" for purposes of plaintiffs' implied covenant claim is no later than December 24, 2009, the date that the Second Amendment took effect.

However, the Court cautions that in a very important sense, the debate over when to fix that date is largely academic, because that date will not necessarily serve as an evidentiary cutoff point. Even with a "date of contracting" in 2009, since the shareholder contracts incorporated

---

[4] The latter statement was not essential to the Court's holding and was made merely to emphasize that the "time of contracting" was after the beginning of the conservatorship, rather than at the issuance of the shares.

HERA and the PSPAs, one factor that might influence shareholders' reasonable expectations would be HERA's authorization of FHFA, as conservator, to act "in the best interests of the regulated entity or the Agency." 12 U.S.C. § 4617(b)(2)(J)(ii). And while information that became available after December 24, 2009 might not *itself* inform shareholders' reasonable expectations for implied covenant purposes, that same information might be relevant to the *circumstances* surrounding the adoption of the Third Amendment, and whether FHFA, in its role as conservator, reacted to those circumstances in a manner that shareholders reasonably could have expected given the most recent, meaningful change in the contract.

Accordingly, this part of the first motion in plaintiffs' omnibus motion in limine will be **GRANTED** insofar as defendants are precluded from arguing that the "date of contracting" for purposes of plaintiffs' implied covenant claim is any later than December 24, 2009. However, the Court emphasizes once again that this ruling does not preclude the introduction of all evidence of events that occurred after that date.

### *(ii) Publicly available information in general*

Plaintiffs also move to preclude defendants from arguing that nonpublic information is irrelevant to shareholders' reasonable expectations. As explained above with respect to Professor Kothari's testimony, *see supra* Part I.B, plaintiffs are correct that such information is relevant to whether FHFA acted in a manner consistent with shareholders' reasonable expectations. Moreover, defendants' opposition to this part of plaintiffs' motion relies largely on a theory rejected in the Court's summary judgment opinion, that an "implied covenant claim involves a two-pronged inquiry." *Fairholme II*, 2022 WL 4745970, at *6. Accordingly, this part of the first motion in plaintiffs' omnibus motion in limine will be **GRANTED**, and defendants will be

precluded from arguing that only publicly available information is relevant to whether FHFA's actions violated shareholders' reasonable expectations.

### 2.  Motion in Limine to Preclude Securities Analyst Reports

Second, plaintiffs move to preclude defendants from offering securities analyst reports about the state of the GSEs' finances leading up to the Third Amendment, arguing that those reports are both hearsay and improper lay opinion testimony that defendants have never offered as expert testimony. The Court agrees that defendants apparently seek to offer these reports for hearsay purposes—that is, for "the truth of the matter asserted," Fed. R. Evid. 801—and thus need not reach the lay opinion issue. Defendants argue that they will offer the reports not to prove that they accurately reflected the GSEs' financial states, but for their effect on shareholders' reasonable expectations and FHFA's decisionmaking process about amending the PSPAs. But a generic reasonable shareholder would only believe the reports if there were reason to believe they were accurate, and defendants cite no evidence that FHFA actually relied on any of the specific securities analyst reports they plan to offer. Accordingly, the second motion in plaintiffs' omnibus motion in limine will be **GRANTED** insofar as defendants may not offer the securities analyst reports unless they can show that any specific report factored into FHFA's decisionmaking process or a hearsay exception applies.

### 3.  Motion in Limine to Preclude Evidence or Arguments About Dismissed Claims or Other Cases

Third, plaintiffs move to preclude defendants from referencing (a) claims dismissed in this case, (b) other similar cases, and (c) the Supreme Court's decision in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), arguing that such references would be substantially more prejudicial than probative and thus excludable under Federal Rule of Evidence 403. The first two points are moot, because defendants represent that they will not reference the earlier claims in this case or other, non-*Collins*

cases. *See* Defs.' Opp'n at 30–31, *Fairholme* ECF No. 190, Class ECF No. 184. As for references to *Collins*, it is possible that certain references to portions of the Supreme Court's opinion in that case could be prejudicial to plaintiffs or confusing to the jury, because it held that "FHFA could have reasonably concluded that [the Net Worth Sweep] was in the best interests of members of the public who rely on a stable secondary mortgage market," and "[t]he Recovery Act therefore authorized the Agency to choose this option." *Collins*, 141 S. Ct. at 1177. For reasons explained in the summary judgment opinion, *Collins* involved a different standard than this case, but used somewhat similar terminology. Still, neither plaintiffs nor defendants have fully explained the specific purposes for which defendants might reference *Collins*, and thus this issue does not lend itself to resolution at the motion in limine stage. Accordingly, the third motion in plaintiffs' omnibus motion in limine will be **DENIED**. Plaintiffs are free, however, to object to specific references to *Collins* at trial if and when they occur.

### 4.–6.    Motions in Limine to Preclude "Windfall" Evidence or Arguments, Testimony of Bruce Berkowitz, and Evidence or Arguments About Plaintiffs' Wealth and Sophistication

The last three motions in plaintiffs' omnibus motion in limine are closely related, and the Court considers them together. Plaintiffs move to preclude defendants from offering evidence or arguments that certain class members who purchased their stock after the Net Worth Sweep went into effect (many of them as an investment in this litigation) and thus might receive a "windfall" if they won a judgment; the deposition testimony of Bruce Berkowitz, the owner of a former individual plaintiff entity who is now a class member; and any evidence or arguments about plaintiffs' wealth or sophistication.

Defendants represent that they do not intend to offer any such evidence or arguments, or Berkowitz's testimony, unless plaintiffs offer the testimony of the class representatives and the representative of another one of the individual plaintiffs. As explained below, *see infra* Part II.C,

the Court will not preclude those plaintiffs' testimony in full, but it will limit their testimony to their background and the basic facts allegedly giving rise to their claims, such as their stock ownership and loss of dividend rights, rather than their subjective expectations regarding FHFA's conduct. In other words, plaintiffs will be allowed to show the jury who the class representatives and one of the individual plaintiffs are and why they are suing. It is unclear how Berkowitz's deposition testimony could similarly be relevant to explaining who the class representatives or individual plaintiffs are or helping to disprove any part of plaintiffs' case, given that he is now simply an unnamed class member, so the Court will **GRANT** the motion in limine to exclude that testimony. Because "the contractual rights [plaintiffs] seek to enforce . . . inhere in the security, traveling to each subsequent acquirer," *Fairholme I*, 2018 WL 4680197, at *8, the time that any plaintiff purchased GSE shares is irrelevant, and thus the Court will **GRANT** the motion to preclude evidence or arguments on that point. However, as explained below, *see infra* Part II.C, the Court will not allow plaintiffs to elicit similar testimony from their witnesses. Finally, the Court will **GRANT** the motion to preclude any evidence or argument regarding shareholders' wealth or sophistication. Such evidence is completely irrelevant to the claims in this case and would be substantially more prejudicial than probative, and thus excludable under Rule 403, even if it were of some marginal relevance. It is unclear whether defendants even intend to offer such evidence or arguments, but it is hard to imagine them being offered for any purpose other than to make plaintiffs seem less sympathetic to the jury.

## II.    Defendants' Motions

### A. Defendants' Motion in Limine to Exclude Testimony of Plaintiffs' Expert Bala Dharan (*Fairholme* ECF No. 159, Class ECF No. 154)

Plaintiffs plan to call their expert Dr. Bala Dharan to testify that the Net Worth Sweep was not reasonably necessary. Defendants argue that Dr. Dharan's testimony should be excluded as

irrelevant because whether the Net Worth Sweep was "necessary" is not relevant under the legal standard for whether there has been a breach of the implied covenant of good faith and fair dealing. That argument is unpersuasive. True, the relevant inquiry is "the parties' reasonable expectations at the time of contracting." *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010). But the effect of a particular action on the GSEs' solvency is potentially relevant to whether shareholders could reasonably FHFA, as conservator, to take that action.

Defendants also argue that Dr. Dharan's testimony should be excluded insofar as it relies on nonpublic information, because plaintiffs' "reasonable expectations" could have been informed only by what they knew. That argument fails for the reasons stated above. *See supra* Parts I.B, I.D.1.ii,

Accordingly, defendants' motion in limine to exclude Dr. Dharan's testimony will be **DENIED**.

### B. Defendants' Motion in Limine to Exclude Testimony of Plaintiffs' Expert Joseph Mason (*Fairholme* ECF No. 160, Class ECF No. 155)

Throughout much of this litigation, plaintiffs have planned to call Dr. Joseph Mason as their primary expert witness on damages. Defendants moved to exclude his testimony because the vast majority of it, including his DCF analysis, relies on impermissibly speculative assumptions, and another portion proposes rescission and restitution, a remedy unavailable in this case as a matter of law. After this motion was fully briefed, the Court largely rendered it moot by holding that Dr. Mason's DCF analysis did not create a genuine dispute as to whether the Net Worth Sweep deprived plaintiffs of dividends they otherwise were reasonably certain to have received and that HERA indeed barred his proposed alternative remedy of rescission and restitution. *See Fairholme II*, 2022 WL 4745970, at *7–12; Mem. Op. at 8–11, *Fairholme* ECF No. 217, Class ECF No. 217.

At the pretrial conference, the parties only disputed whether Dr. Mason's testimony should be limited to the statement in his reply report that one of Dr. Attari's event studies established lost-dividends expectation damages of approximately $1.6 billion, or whether he should be permitted to testify that a better estimate would be $2.9 billion, based on his belief that shares actually lost 100 percent of their value as a result of the Net Worth Sweep. The Court believed it had put that issue to rest in its most recent Memorandum Opinion denying plaintiffs an opportunity to serve a supplemental expert report expounding on that theory, *see id.* at 3–5, but plaintiffs argued at the pretrial conference that the $2.9 billion figure, which did not appear in any report or deposition, was "implicit" in $1.6 billion figure. That is pure sophistry that ignores the role that disclosure of expert testimony during discovery plays in allowing one's opponent a fair opportunity to prepare for trial.

Accordingly, defendants' motion in limine to exclude Dr. Mason's testimony will be **GRANTED** insofar as Dr. Mason may not testify about his DCF analysis, his rescission calculations, or his newly stated opinion that the appropriate measure of lost share value is 100 percent of that value on the day before the Net Worth Sweep.

### C. Defendants' Motion in Limine to Exclude Evidence of Plaintiffs' Subjective Expectations (*Fairholme* ECF No. 183, Class ECF No. 177)

Plaintiffs plan to call some of the class representatives and a representative of one of the individual plaintiffs, Berkeley Insurance Company, to testify, and to offer the deposition testimony of another class representative, regarding those witnesses' backgrounds, their purchases of GSE stock, and whether the Net Worth Sweep was consistent with their expectations. Defendants move to exclude that testimony as irrelevant and prejudicial, arguing that plaintiffs' subjective expectations are not relevant under the objective standard that applies in this case and that these witnesses provide a skewed sample of the class that will confuse the jury as to its makeup.

Defendants are correct that, as the Court recognized in the opinion on class certification, "whether the Third Amendment violated the reasonable expectations of the parties" is "an objective inquiry." *In re Fannie Mae/Freddie Mac*, 2021 WL 5799379, at *8. Thus, it is hard to see how plaintiffs' subjective expectations could be relevant to that inquiry. Plaintiffs claim that the weight of authority holds that "regardless of the 'objective' nature of the pertinent legal standard, plaintiffs are permitted to testify about their own 'subjective' perceptions and beliefs," Pls.' Mot. at 7, *Fairholme* ECF No. 183, Class ECF No. 177, but many of the cases they cite are completely inapposite. One is a personal injury case in which the court allowed testimony regarding the victim's *injuries*, where the objective reasonable-person standard was for *liability*. *See Rockwell v. State Farm Mut. Auto. Ins. Co.*, No. 18-cv-722, 2022 WL 343665, at *2 (D. N.M. Feb. 4, 2022). The others all concern a single California consumer-protection statute with an objective "substantial impairment" standard. While some federal courts hearing claims brought under that statute have allowed some testimony on consumers' subjective expectations, *see, e.g.*, *Zomordian v. BMW of N. Am., LLC*, No. 17-cv-5061, 2018 WL 10087304, at *5 (C.D. Cal. Aug. 7, 2018), others have not, *see, e.g.*, *Gilfenbain v. Jaguar Land Rover N. Am., LLC*, No. 19-cv-10027, 2022 WL 2232226, at *2 (C.D. Cal. Mar. 28, 2022). Here, any individual shareholder's subjective expectations are totally irrelevant to the objective inquiry of whether the Net Worth Sweep violated a generic, reasonable shareholder's expectations.

Likewise, the fact of *when* plaintiffs purchased their shares is irrelevant, and likely to be substantially confusing to the jury, since, as explained in the 2018 motion to dismiss opinion, plaintiffs' implied covenant rights "inhere in the security, traveling to each subsequent acquirer." *Fairholme I*, 2018 WL 4680197, at *8. And any marginal relevance that the fact of when these

plaintiffs purchased their shares might have is substantially outweighed by the risk of jury confusion as to whether that matters, so that evidence is excludable under Rule 403.

However, that does not mean that these witnesses have no admissible testimony to offer. The Court is unaware of any case in which a court has prevented the plaintiffs who brought that case from giving *any* testimony whatsoever. In this case, there is no reason to preclude the class representatives or Berkeley's representative from testifying, for example, that they own GSE stock, that their dividend rights were extinguished as a result of the Net Worth Sweep, and why they brought this lawsuit. Nor is there any reason to preclude them from testifying to the contents of the shareholder contract.

For these reasons, defendants' motion in limine to exclude the class representatives' and Berkeley representative's testimony will be **GRANTED** insofar as those witnesses may not testify as to whether the Net Worth Sweep violated their subjective expectations or when they purchased their shares and **DENIED** in all other respects.

### D. Defendants' Motion in Limine to Exclude Evidence of White House and Treasury Motive or Intent Not Communicated to FHFA (*Fairholme* ECF No. 184, Class ECF No. 178)

Defendants move to exclude 19 documents that they characterize as evidence of Treasury's or the White House's intent regarding the Net Worth Sweep that was not communicated to FHFA. Most of these documents are also discussed in plaintiffs' motion in limine to admit documents pursuant to Rules 801 and 803. *See supra* Part I.C. In their own motion, defendants argue that because the relevant inquiry is whether *FHFA* violated shareholders' reasonable expectations, the motives of FHFA's contractual counterparty in negotiations over the Third Amendment are irrelevant and substantially more prejudicial than probative. That argument is unpersuasive. First, some of the documents memorialize conversations between FHFA and Treasury. *See, e.g.*, Memo from Mary Miller to Michael Stegman, *Fairholme* ECF No.184-10, Class ECF No. 178-10

(describing meeting between Treasury Secretary and FHFA Acting Director). Moreover, it is conceivable that evidence of Treasury's negotiating position or pressures from the White House could provide some insight into whether FHFA in fact negotiated the Third Amendment in accordance with shareholders' reasonable expectations. For example, after offering a document suggesting that Treasury intended to wind down the GSEs, plaintiffs might ask an FHFA witness if he was aware of and shared that intent. Accordingly, defendants' motion in limine to exclude evidence of Treasury's and the White House's intent will be **DENIED**. However, defendants are free to raise any hearsay objections to the same documents at trial.

### E. Defendants' Motion in Limine to Exclude Testimony of Plaintiffs' Summary Witness Susan Hartman (*Fairholme* ECF No. 187, Class ECF No. 181)

Plaintiffs plan to call a retained accountant, Susan Hartman, as a lay witness to offer summary evidence, present demonstratives, and read otherwise admissible documents into the record. Defendants move to exclude Hartman's testimony. Defendants' objections fall into six general categories, which the Court will consider in turn.

#### 1. Reading Documents Into the Record

Defendants argue that Hartman should be precluded from reading otherwise-admissible documents into the record because they are not sufficiently voluminous to warrant summarization under Federal Rule of Evidence 1006.[5] That argument is unpersuasive.

To be admissible under Rule 1006, summary evidence "must summarize documents so voluminous as to make comprehension difficult and inconvenient, although not necessarily literally impossible." *United States v. Hemphill*, 514 F.3d 1350, 1358 (D.C. Cir. 2008) (internal quotation marks, ellipsis, and citation omitted). As plaintiffs note, Hartman indeed proposes to

---

[5] Defendants also argued that Hartman should be precluded from reading portions of HERA into the record, but plaintiffs represented at the pretrial conference that they no longer plan to have her do so.

summarize *some* voluminous records, including over 55,000 pages of the GSEs' public financial filings. But as defendants point out, many documents she proposes to summarize are not voluminous at all, such as the PSPAs and their amendments, which together total 53 pages, and certain provisions from the GSEs' Q1 and Q2 2012 SEC Form 10Qs.

The real dispute with respect to the non-voluminous documents Hartman proposes to read into the record is whether a witness called to offer summary evidence under Rule 1006 can *also* read into the record non-summary evidence that is otherwise admissible. Retaining a summary witness to also read documents into the record as anyone else could is admittedly an unusual procedure. But defendants cite no authority holding that a summary witness cannot *also* read admissible non-summary evidence into the record. Plaintiffs, on the other hand, cite some authority suggesting the opposite, at least in criminal cases, *see United States v. Baker*, 923 F.3d 390, 397 (5th Cir. 2019), and the Court sees no reason why a civil case should be any different. If defendants want to pay Hartman to do work that otherwise could be done by a paralegal or any other witness, that is their choice. And to the extent defendants challenge the *selection* of documents Hartman will read into the record, such as the particular quarters for the Form 10Qs, they cite no authority for the proposition that a witness reading documents into the record as a part of non-summary testimony must also read documents, or portions thereof, that shed a more favorable light on the opposing party. If defendants think the non-summary portions of Hartman's testimony omit key documents, they are free to offer those documents into evidence themselves.

### 2. S&P/Case-Schiller National Home Price Index

Defendants argue that a chart of home prices that Hartman compiled using data from the S&P/Case-Schiller National Home Price Index site—data that defendants do not dispute are admissible—is inadmissible under Rule 1006. Plaintiffs counter that the chart is admissible as a demonstrative or pedagogical aide under Federal Rule of Evidence 611(a). While Rule 611(a) itself

merely governs the "reasonable control" a "court should exercise . . . over the mode and order of examining witnesses and presenting evidence," Fed. R. Evid. 611(a), courts have interpreted it to allow parties to offer summary charts and other pedagogical aides that are not themselves evidence but aid the jury's understanding of the evidence in a complex case. *See Atlanta Channel, Inc. v. Solomon*, 583 F. Supp. 3d 174, 212 (D.D.C. 2022). This is indeed a complex case in which demonstratives could be helpful. However, since demonstratives themselves are not evidence, and plaintiffs do not argue that the home price index data are sufficiently voluminous to warrant summarization under Rule 1006, the Court will not allow Hartman to present her charts summarizing those data unless the data are first offered into evidence. But if plaintiffs were to offer the data into the record first, as they suggested at the pretrial they would be willing to do, the Court sees no reason why Hartman's chart could not come in as a demonstrative.

### 3. Timeline

Defendants next argue that a timeline Hartman created showing events between the adoption of HERA and the most recent amendments to the PSPAs is inadmissible under Rule 1006. Again, plaintiffs respond that they intend to offer that timeline as a demonstrative under Rule 611(a). Here, there is no issue with the information contained in the demonstrative not already being in evidence. For the same reason the Court sees no problem with allowing a summary witness to present non-summary evidence, it sees no problem with allowing a summary witness to present non-summary demonstratives of evidence already in the record.

### 4. "Summaries" of the PSPAs and Amendments

Defendants argue that Hartman should be precluded from paraphrasing portions of the PSPAs and their amendments because those documents are not sufficiently voluminous to warrant summarization under Rule 1006. Plaintiffs again counter that she is merely presenting a pedagogical aide allowable under Rule 611(a). The nature of this portion of Hartman's testimony

is presently somewhat unclear, but based on the description in plaintiffs' opposition, *see* Pls.' Opp'n at 25–27, *Fairholme* ECF No. 193, Class ECF No. 187, it appears that she proposes to offer a chronology of the PSPAs and how the amendments changed them. Assuming the documents themselves are first offered into evidence, the Court sees no reason why it should treat an oral chronology of their key provisions, based on stipulations to which both parties have agreed about what those provisions said, any differently from a visual timeline that ordinarily would be allowable as a demonstrative. Accordingly, the Court will not exclude the "summaries" of the PSPAs and their amendments. That being said, if at any point Hartman's testimony begins to veer into the territory of argument or analysis, defendants are free to object under another Rule of Evidence, such as Rule 702.

### 5. Certificates of Designation

Defendants argue that Hartman should not be permitted to summarize the presence of certain provisions in the GSEs' certificates of designation—which they appear to concede are admissible and voluminous for Rule 1006 purposes—because she will only highlight portions of the certificates that plaintiffs think significant. But parties "call witnesses, including summary witnesses, to prove their case." *United States v. Cooper*, 949 F.3d 744, 750 (D.C. Cir. 2020). Just because summary testimony is helpful to the party who offers it does not mean it is inadmissible under Rule 1006 or excludable under Rule 403. And defendants do not identify any specific omissions that make the proposed summary of the certificates misleading or prejudicial.

### 6. Calculations

Finally, defendants argue that certain calculations summarizing the amount of funds the GSEs raised through stock issuances, as well as dividends and draws, are improper summary

evidence under Rule 1006.[6] Their only argument on that point, however, is that they are willing to stipulate to those numbers, and thus there is no *need* to summarize the underlying financial records. Defendants cite no authority for the proposition that a party may not offer evidence of facts to which its opponent is willing to stipulate.

*   *   *

For these reasons, the Court will **GRANT** plaintiffs' motion in limine to exclude Hartman's testimony only insofar as she proposes to present demonstratives of non-voluminous records that are not themselves offered into evidence and **DENY** that motion in all other respects.

### F. Motion in Limine to Compel One Appearance of Defendants' Fact Witness Edward DeMarco (*Fairholme* ECF No. 209, Class ECF No. 206)

As explained at the pretrial conference, this motion was filed long after the deadline for pretrial motions with no excuse, defendants having known about its impetus since May of this year. Accordingly, the motion in limine will be **DENIED** as untimely. However, the Court reserves decision on whether to approve any alternative procedure for DeMarco's testimony until trial, especially if the parties are able to reach an agreement.

### III.   Conclusion

For the foregoing reasons:

Defendants' Motion in Limine to Exclude the Testimony of Dr. Balan Dharan (*Fairholme* ECF No. 159, Class ECF No. 154) will be **DENIED**.

---

[6] It is unclear at this point whether all of the specific charts to which this portion of defendants' motion refers are summaries of voluminous records or demonstratives collecting data from documents already offered into evidence. But defendants' objection apparently is not that the records containing the data are insufficiently voluminous or that they are being offered as evidence themselves rather than Rule 611(a) demonstratives. Defendants are free to raise such an objection at trial if needed.

Defendants' Motion in Limine to Exclude the Testimony of Dr. Joseph Mason (*Fairholme* ECF No. 160, Class ECF No. 155) will be **GRANTED** insofar as Dr. Mason may not testify about his DCF analysis, his rescission calculations, or his newly stated opinion that the appropriate measure of lost share value is 100 percent of that value on the day before the Net Worth Sweep.

Plaintiffs' Motion in Limine to Exclude the Testimony of Dr. Mukarram Attari (*Fairholme* ECF No. 161, Class ECF No. 156) will be **DENIED** with respect to the bond yield event study and **GRANTED** with respect to the hypothetical setting of the PCF.

Plaintiffs' Motion in Limine to Exclude the Testimony of Professor S.P. Kothari (*Fairholme* ECF No. 162, Class ECF No. 156) will be **DENIED**.

Plaintiffs' Motion in Limine to Admit Evidence Pursuant to Federal Rules of Evidence 801 and 803 (*Fairholme* ECF No. 176, Class ECF No. 157) will be **DENIED**.

Plaintiffs' Omnibus Motion in Limine (*Fairholme* ECF No. 182, Class ECF No. 176) will be **GRANTED** in part and **DENIED** in part as follows:

1) Defendants will be precluded from arguing that the "date of contracting" was any date after December 24, 2009, or that only publicly available information is relevant to shareholders' reasonable expectations.

2) Defendants' securities analyst reports will be excluded as hearsay unless defendants can show that any specific report factored into FHFA's decisionmaking process or a hearsay exception applies.

3) Defendants will not be precluded at this stage from making any reference to *Collins v. Yellen*.

4) The deposition testimony of Bruce Berkowitz will be excluded.

5) Defendants will be precluded from offering evidence or arguments regarding when plaintiffs purchased their shares, with the understanding that the same ruling applies to plaintiffs.

6) Defendants will be precluded from offering evidence or arguments regarding plaintiffs' wealth or sophistication.

Defendants' Motion in Limine to Exclude Evidence of Plaintiffs' Subjective Expectations (*Fairholme* ECF No. 183, Class ECF No. 177) will be **GRANTED** insofar as plaintiffs may not offer evidence of individual shareholders' subjective expectations or when they purchased their shares and **DENIED** in all other respects.

Defendants' Motion in Limine to Exclude Evidence of Treasury or White House Intent Not Communicated to FHFA (*Fairholme* ECF No. 184, Class ECF No. 178) will be **DENIED**.

Defendants' Motion in Limine to Exclude the Testimony of Susan Hartman (*Fairholme* ECF No. 187, Class ECF No. 181) will be **GRANTED** insofar as she proposes to present demonstratives of non-voluminous records that are not themselves offered into evidence and **DENIED** in all other respects.

Defendants' Motion in Limine to Compel One Appearance of Defendants' Fact Witness Edward DeMarco (*Fairholme* ECF No. 209, Class ECF No. 206) will be **DENIED** as untimely.

Defendants' Motion for Leave to File a Supplemental Memorandum Regarding Professor Kothari's Testimony (*Fairholme* ECF No. 213, Class ECF No. 212) will be **GRANTED**.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Date: October 13, 2022

/s/ Royce C. Lamberth
Royce C. Lamberth
United States District Judge