**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FAIRHOLME FUNDS, INC., *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL HOUSING FINANCE AGENCY, *et al.*, <br><br> Defendants. | Civil No. 13-1053 (RCL) |
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations <br><br> _____ <br><br> This document relates to: ALL CASES | Miscellaneous No. 13-1288 (RCL) |

**DEFENDANTS' MOTION IN LIMINE AND MEMORANDUM IN SUPPORT TO**
**PRECLUDE PLAINTIFFS FROM ARGUING DAMAGES UNSUPPORTED BY**
**RECORD EVIDENCE DURING CLOSING ARGUMENTS**

Defendants Federal Housing Finance Agency ("FHFA"), as Conservator for the Federal

National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage

Corporation ("Freddie Mac," and together with Fannie Mae, the "Enterprises"), and the

Enterprises hereby move to preclude Plaintiffs from arguing damages unsupported by record

evidence during closing arguments.

Dated: October 28, 2022

Respectfully submitted,

 /s/ Jonathan Stern
Jonathan Stern (D.C. Bar # 375713)
Asim Varma (D.C. Bar # 426364)
David B. Bergman (D.C. Bar # 435392)
Ian S. Hoffman (D.C. Bar # 983419)
R. Stanton Jones (D.C. Bar # 987088)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave NW
Washington, D.C. 20001
(202) 942-5000
Jonathan.Stern@arnoldporter.com
Asim.Varma@arnoldporter.com
David.Bergman@arnoldporter.com
Ian.Hoffman@arnoldporter.com
Stanton.Jones@arnoldporter.com

*Attorneys for Defendant Federal Housing Finance Agency*

 /s/ Michael J. Ciatti
Michael J. Ciatti (D.C. Bar #467177)
KING &SPALDING LLP
1700 Pennsylvania Ave. N.W.
Washington, DC 20006
Tel: (202) 626-5508
Fax: (202) 626-3737
mciatti@kslaw.com

*Attorney for the Federal Home Loan Mortgage Corp.*

 /s/ Meaghan VerGow
Meaghan VerGow (D.C. Bar # 977165)
O'MELVENY &MYERS LLP
1625 Eye Street, N.W.
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
mvergow@omm.com

*Attorney for the Federal National Mortgage Association*

## INTRODUCTION

There is no factual or legal basis for Plaintiffs to suggest or argue in closing that they have been harmed in any way other than the stock price drop, and in an amount more than $1.6 billion.  Plaintiffs have nevertheless suggested to the jury and to the Court that they are seeking only a small fraction of the harm to shareholders.  If Plaintiffs are permitted to suggest in closing argument that they have been harmed in excess of $1.6 billion, Defendants will suffer unfair prejudice, the jury will be confused, and any damage award will be irreparably tainted by counsel's improper argument.  Accordingly, this Court should preclude Plaintiffs from suggesting to the jury the existence of alternative measures of harm or purported damages that exceed the $1.6 billion under their stock-price-drop theory.

## RELEVANT BACKGROUND

Plaintiffs' lone surviving theory of harm and damages has a $1.6 billion ceiling, and they should not be permitted to unfairly prejudice Defendants' case and confuse the jury with argument about other supposed harms or damages in excess of that amount.

Initially, Plaintiffs sought significantly higher damages based upon a "lost-dividends theory" of harm.  But this Court granted Defendants summary judgment with respect to the lost-dividends theory, agreeing with Defendants that "there is insufficient evidence in the record from which a reasonable factfinder could conclude with reasonable certainty that Treasury and FHFA would have amended the PSPAs to allow [] paydown," a central assumption to the lost-dividends theory.  S.J. Mem. Opinion at 17, 20 (Fairholme ECF No. 194; Class ECF No. 188).  The Court limited Plaintiffs to their "alternative" theory of harm, which, the Court explained, is based on "an event study by one of defendants' experts showing a sharp decline in stock prices after the Third Amendment's announcement . . . ."  *Id.* at 21.  Plaintiffs' damages expert stated that this theory "would appear to yield damages of approximately $1.6B based on the decline in the GSE

share price." Reply Report of Joseph R. Mason (Mar. 1, 2022) at ¶ 88 (Fairholme ECF No. 145-42; Class ECF No. 143-42). Plaintiffs later "argued at the pretrial conference that [a] $2.9 billion figure, which did not appear in any report or deposition, was 'implicit' in [the] $1.6 billion figure." MIL Mem. Op. at 17 (Fairholme ECF No. 221; Class ECF No. 222). The Court rejected this argument, labeling it "pure sophistry that ignores the role that disclosure of expert testimony during discovery plays in allowing one's opponent a fair opportunity to prepare for trial." *Id.* From that point on, it was abundantly clear that Plaintiffs would and should be limited at trial to a damages theory capped at $1.6 billion.

## LEGAL STANDARD

"The D.C. Circuit 'has long made clear . . . that statements made in opening and closing arguments to the jury [must be] supported by evidence introduced at trial." *Democracy Partners, LLC v. Project Veritas Action Fund*, No. cv-17-1047, 2022 WL 3334689, at *3 (D.D.C. Aug. 12, 2022) (quoting *United States v. Watson*, 171 F.3d 695, 702 (D.C. Cir. 1999)); *see also United States v. Mejia*, 597 F.3d 1329, 1341 (D.C. Cir. 2010) (holding a party "errs in closing argument by making a statement unsupported by evidence, misstating evidence or misquoting testimony").

Such argument is barred for the obvious reason that it is unsupported by the record. *See id.* But it also is irrelevant and risks unfairly prejudicing or confusing the jury. *See Democracy Partners*, 2022 WL 3334689, at *3 ("[i]rrelevant evidence is not admissible. Fed. R. Evid. 402. The proponent of admitting an item of evidence has the initial burden of establishing relevance . . . . . Further, Rule 403 of the Federal Rules of Evidence provides that a court may 'exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'") (cleaned up).

**ARGUMENT**

Plaintiffs should not be permitted to suggest to the jury during closing arguments that Plaintiffs only request a small fraction of the impact of the Net Worth Sweep in damages. Plaintiffs' request for $1.6 billion in damages is in fact a request for the maximum damages under their lone theory of harm.  Any rhetoric during closing from Plaintiffs suggesting otherwise would not only be unsupported by the record, but would unfairly prejudice Defendants by planting the idea in the minds of the jurors that Plaintiffs are seeking less than they otherwise could be entitled as a matter of law.  Or it would confuse the jury into thinking the evidence showed something it did not show.  The record does not support the notion that Plaintiffs are making a "discounted" damages request, and this Court should preclude Plaintiffs from suggesting as much to the jury.

The need for this Court's intervention before closing arguments is apparent for two reasons.

*First*, Plaintiffs have already injected into the evidence at trial their theory, unsupported by the record, that their damages "would be a fraction of the amount of money that the preferred shareholders invested and never got back."  Tr. of Jury Trial at 313:18-20; *see also id.* at 272:21–273:3 ("So the math would say these people stranded 18.6 [billion] . . . [b]ut [Plaintiffs] want to say now, we aren't asking for those numbers as damages.  We're asking for a small fraction of that").  In fact, Plaintiffs concluded their opening statement by asking the jury to "remember the classes [] invested $33.2 billion and only got $5 billion back," *id.* at 314:25-315:1, immediately preceding their request "for a judgment of $1.6 billion."  *Id.* at 315:12.  These statements improperly suggest Plaintiffs are seeking less than they are entitled as a matter of law, and they also misleadingly omit the key fact that the Enterprises exhausted all of the capital contributed by the Plaintiffs well in advance of the institution of the Net Worth Sweep.

Most recently, during oral arguments on Defendants' Rule 50(a) motion, Plaintiffs referred to "$1.6 billion as a *minimal* measure of harm that was inflicted on the shares" and claimed "there is plenty of evidence in this record to support [the fact that] . . . the delta caused by the net worth sweep would therefore be way higher" than $1.6 billion.  Tr. of Jury Trial at 1829:16-23 (emphasis added).  Both points are unsupported by the evidentiary record.  The $1.6 billion is not a minimal measure of harm.  Rather, it is the *only* measure of harm that a jury could possibly find supported by evidence, as it is the *only* measure of harm that Plaintiffs' damages expert has offered at trial.  Further, there is no evidence in the record to support Plaintiffs' conclusory assertion that the "delta caused by the net worth sweep would therefore be way higher" than the $1.6 billion.  *Id.*  This is the exact argument that this Court rejected as "pure sophistry" in its pre-trial ruling.  MIL Mem. Op. at 17.  As a result of that ruling, Plaintiffs have not presented any evidence at trial suggesting an alternative "delta" caused by the Net Worth Sweep—any attempt to have done so would have run afoul of this Court's earlier ruling. Ultimately, Plaintiffs' labeling of the $1.6 billion measure of damages as "minimal" is a mischaracterization intended to frame their damages request as something that it is not—a discount—in order to warm the jury up to the reasonableness of Plaintiffs' actual damages request, the maximum amount available under the law of the case.

*Second*, a ruling is needed now because any limiting instruction will not un-ring the bell or adequately ameliorate the risk of prejudice.  *See Watson*, 171 F.3d at 702 (holding that unsupported argument made to the jury during closing could not be cured by instruction where "error affected a central issue").  There is a substantial risk that a jury told that $1.6 billion is a fraction of the loss will award damages closer to that amount than a lower amount, even if this

4

Court later explicitly instructs the jury that $1.6 billion is the maximum supported by the record and that closing arguments are not themselves evidence.

This Court should not permit Plaintiffs to frame their damages request in closing arguments as a fraction of the harm suffered, by way of statements such as: (1) the damages sought are a fraction of Plaintiffs' investments (which is not only irrelevant but also contrary to the Court's ruling that the Plaintiffs could not present a "reliance" measure of damages); or (2) the damages sought are a fraction of what Treasury was paid in dividends pursuant to the Third Amendment (which is also not relevant to the reduction in share price on August 17, 2012 because it was unknown on that day).  These statements would create an inference—that there are larger measures of damages that Plaintiffs are not pursuing—unsupported by the evidentiary record.  No limiting instruction could cure the prejudice that these statements would cause to Defendants' case.  Plaintiffs are seeking the maximum amount available to them.  Plaintiffs should not be permitted to suggest otherwise to the jury.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion to preclude Plaintiffs from suggesting the existence of alternative measures of damages unsupported by record evidence during closing arguments.

Dated: October 28, 2022

Respectfully submitted,

_/s/ Jonathan Stern_____
Jonathan Stern (D.C. Bar # 375713)
Asim Varma (D.C. Bar # 426364)
David B. Bergman (D.C. Bar # 435392)
Ian S. Hoffman (D.C. Bar # 983419)
R. Stanton Jones (D.C. Bar # 987088)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave NW
Washington, D.C. 20001
(202) 942-5000
Jonathan.Stern@arnoldporter.com
Asim.Varma@arnoldporter.com
David.Bergman@arnoldporter.com
Ian.Hoffman@arnoldporter.com
Stanton.Jones@arnoldporter.com

*Attorneys for Defendant Federal Housing Finance Agency*

_/s/ Michael J. Ciatti_____
Michael J. Ciatti (D.C. Bar #467177)
KING &SPALDING LLP
1700 Pennsylvania Ave. N.W.
Washington, DC 20006
Tel: (202) 626-5508
Fax: (202) 626-3737
mciatti@kslaw.com

*Attorney for the Federal Home Loan Mortgage Corp.*

_/s/ Meaghan VerGow_____
Meaghan VerGow (D.C. Bar # 977165)
O'MELVENY &MYERS LLP
1625 Eye Street, N.W.
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
mvergow@omm.com

*Attorney for the Federal National Mortgage Association*