**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FAIRHOLME FUNDS, INC.**, *et al.*, | |
| *Plaintiffs,* | |
| **v.** | Case No. 1:13-cv-1053-RCL |
| **FEDERAL HOUSING FINANCE AGENCY**, *et al.*, | |
| *Defendants.* | |
| **In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations** | Case No. 1:13-mc-1288-RCL |
| This document relates to: ALL CASES | <u>CLASS ACTION</u> |

## <u>FINAL JURY ISTRUCTIONS</u>

You have now heard all of the evidence in the case as well as the final arguments of the lawyers for the parties.

My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room. Likewise, you may not ignore or disregard any portion of these instructions.

You should not, any of you, be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be – or ought to be – it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

1

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence. What I may have said – or what I may say in these instructions – about a fact issue is not evidence. Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the plaintiffs have proven their case.

I also ask you to draw no inference from the fact that upon occasion I may have asked questions of certain witnesses. These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses. You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

As to the facts, you are the exclusive judges. You are to perform the duty of finding the facts without bias or prejudice to any party.

You may consider only the evidence admitted in the case. The evidence consists of the sworn testimony of witnesses, exhibits admitted into evidence, and facts stipulated to by the parties.

Statements and arguments of the lawyers are not evidence. They are intended only to help you to understand the evidence. Similarly, the questions of the lawyers are not evidence.

If anyone describes the evidence you have heard differently from the way you remember it, it is your memory that should control during your deliberations.

You must rely on your own recollection of the testimony and on any notes you may have taken during the trial.

There are two types of evidence which you may properly use in reaching your verdict.

One type of evidence is direct evidence. Direct evidence is when a witness testifies about something they know by virtue of their own senses—something they have seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit where the fact to be proved is its present existence or condition.

The other type of evidence is circumstantial evidence. Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used in this courthouse.

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella which was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence; for, it is a general rule that the law makes no distinction in the weight to be given to either direct evidence or circumstantial evidence. You are to decide how much weight to give any evidence.

The party who makes a claim has the burden of proving it. This burden of proof means that the plaintiffs must prove every element of their claim by a preponderance of the evidence.

To establish an element by a preponderance of the evidence, the party must show evidence that produces in your mind the belief that the thing in question is more likely true than not true. The party need not prove any element beyond a reasonable doubt, the standard of proof in criminal cases, or to an absolute or mathematical certainty.

If you believe that the evidence is more likely true on an issue the plaintiffs had to prove, then your finding on that issue must be for the plaintiffs. If you believe that the evidence is evenly balanced on an issue the plaintiffs had to prove, then your finding on that issue must be for the defendants.

In arriving at your verdict, you should consider only the evidence in this case. That said, in determining whether a party has carried its burden of proof, you are permitted to draw, from the facts that you find have been proven, such reasonable conclusions as you feel are justified in the light of your experience and common sense. You should not rely on speculation or guesswork.

You should consider all the evidence bearing on each claim, regardless of who produced it. A party is entitled to benefit from all evidence that favors that party, whether that party or the adversary produced it. You should not give more or less weight to evidence just because it happened to be produced by one side or the other.

A "stipulation" is an agreement. When there is no dispute about certain facts, the parties may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat it as having been proved here in court.

The parties have presented certain exhibits in the form of charts and summaries, which I will be sending back with you to the jury room. I decided to admit certain charts and summaries

into evidence in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience, because the documents that they represent are so voluminous that they could not conveniently be presented in court one at a time. You should consider those charts and summaries as you would any other evidence. However, to the extent that you heard the summary witness who prepared those charts and summaries testify about them, you should consider her testimony only as an aid in evaluating the evidence, not as proof that the underlying evidence that she summarized is itself reliable.

In addition, the lawyers and witnesses have shown to you other charts and summaries that I have not admitted into evidence. Those charts and summaries are not themselves evidence or proof of any facts; they are used only as a convenience to help you understand the evidence in the case. I will not be sending them back with you to the jury room. If any chart or summary that was not admitted into evidence does not correctly reflect facts or figures shown by the evidence in the case, then you should disregard that chart or summary.

A deposition is the testimony of a person taken before trial. The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions. A court reporter is present and records the questions and answers. During the trial, you heard deposition testimony that was read from the deposition transcript or presented by videotape. You should give deposition testimony the same fair and impartial consideration you give any other testimony. You should not give more weight or less weight to deposition testimony just because the witness did not testify in court.

During this trial, you heard excerpts of depositions taken of various witnesses in the case. These excerpts were played via video or read to you by actors. You should know that the portions of such depositions consisted both of sections that were designated by the plaintiffs and of sections that were designated by the defendants, and they were presented together, all at once, to avoid presenting pieces of each deposition more than once.

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. If I sustained an objection to a question or a document, then you should ignore that question or document. If I overruled an objection to a question or a document, you should treat the witness's answer or the document as evidence like any other.

Counsel also have the right and duty to ask the court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. The purpose of such conferences is not to keep important information from you. They are necessary for me to fulfill my responsibility to ensure that evidence was presented to you properly under the law.

You should not show any prejudice against an attorney or his or her client because the attorney objected to the admissibility of evidence or asked for a conference out of the hearing of the jury or asked the court for a ruling on the law.

As I already indicated, my rulings on the admissibility of evidence do not, unless expressly stated by me, indicate any opinion as to the weight or effect of such evidence. You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

In deciding what the facts are, you must weigh the testimony of all the witnesses who have appeared before you. You are the sole judges of the credibility of the witnesses. In other words, you alone determine whether to believe any witness and to what extent any witness should be believed. Judging a witness's credibility means evaluating whether the witness has testified truthfully and also whether the witness accurately observed, recalled, and described the matters about which the witness testified.

You may consider anything that in your judgment affects the credibility of any witness. For example, you may consider the witness's demeanor, capacity to observe and recollect facts, and any other facts and circumstances bearing on credibility. You may consider whether the witness has any motive for not telling the truth, any interest in the outcome of this case, or any friendship or animosity toward other persons involved in this case. In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection which the witness may have toward one of the parties. You may consider the plausibility or implausibility of the testimony of a witness. You may also consider whether the witness's testimony has been contradicted or supported by other evidence.

You must avoid bias, conscious or unconscious, based on the witness's race, color, religious beliefs, national origin, sexual orientation, gender identity, or gender in your determination of credibility.

Ultimately, you should give the testimony of each witness as much weight as in your judgment it is fairly entitled to receive.

You have heard the testimony of current and former government employees. The fact that a witness is or was employed as a government employee does not mean that his or her testimony necessarily deserves more or less consideration or greater or lesser weight than that of any other witness. You must decide, after reviewing all the evidence, whether you believe the testimony of the government employee and how much weight, if any, it deserves.

You have heard evidence that a witness previously made statements and that these statements may be inconsistent with the witness' testimony here at trial. It is for you to decide whether any of these prior statements was made and, if one or more was made, whether it is inconsistent with the witness' testimony during this trial. If you find that any prior statement is inconsistent with the witness' testimony here in court, you may consider this inconsistency in judging the credibility of the witness.

In one respect, the law treats prior statements that are inconsistent with court testimony differently depending on whether or not the prior statement was made under oath. If the prior inconsistent statement was made under oath, you may consider the statement as evidence that what the witness originally said was true. If the prior inconsistent statement was not under oath, you may not consider it as evidence that what the witness said in the earlier

5

unsworn statement was true. Whether or not the prior inconsistent statement was under oath, you may consider the inconsistency in judging the witness' credibility.

If a witness testifies that a prior inconsistent statement is the truth, then you may consider the prior statement both to evaluate the witness's credibility and as evidence of the truth of any fact contained in that statement.

The relative weight of the evidence on a particular issue is not determined by the number of witnesses testifying for either side or the number of exhibits on either side—it depends on the quality, and not the quantity, of the evidence. Presenting a greater number of witnesses or exhibits does not necessarily prove a point. Indeed, the testimony of a single witness, which you believe to be the truth, is enough to prove any fact.

In this case, you heard opinion testimony from Professors Bala Dharan, Joseph Mason, Anjan Thakor, and Mukarram Attari, who have been identified by the parties as expert witnesses, on various economic issues. The law allows opinion testimony on such matters if the witness possesses sufficient knowledge, experience, training, or education.

You are not bound to accept these witnesses' opinions. If you find that any opinions are not based on sufficient knowledge, experience, training, or education, or that the reasons supporting the opinion are not sound, or that the opinion is outweighed by other evidence, you may completely or partially disregard the opinion.

Opinion testimony should be judged just as any other evidence. You should consider opinion evidence with all the other evidence in the case and give it as much weight as you think it fairly deserves.

You have heard conflicting testimony from expert witnesses in this case. The way you resolve the conflict between these witnesses is the same way that you decide other fact questions and the same way you decide whether to believe ordinary witnesses. In addition, because they gave their opinions, you should consider the soundness of each opinion, the reasons for the opinion, and the witness's motive, if any, for testifying.

You may give the testimony of each of these witnesses such weight, if any, that you think it deserves in the light of all the evidence. You should not permit a witness's opinion testimony to be a substitute for your own reason, judgment, and common sense.

You may reject the testimony of any opinion witness in whole or in part, if you conclude the reasons given in support of an opinion are unsound or, if you, for other reasons, do not believe the witness. The determination of the facts in this case rests solely with you.

A class action is a lawsuit that has been brought by one or more plaintiffs on behalf of a larger group of people who have the same legal claims. All of these people together are called a "class." Class Action Plaintiffs Joseph Cacciapalle, Michelle M. Miller, Timothy J. Cassell and Barry P. Borodkin bring this action as the class representatives on behalf of three classes of Fannie Mae and Freddie Mac shareholders. The Court allowed these four individuals to be

named as class representatives because it determined that their claims are typical of the claims of class members and that they would adequately represent their respective classes.

In this case, the classes consistent of the following:

All current holders of junior preferred stock in Fannie Mae ("the Fannie Preferred Class");

All current holders of junior preferred stock in Freddie Mac ("the Freddie Preferred Class"); and

All current holders of common stock in Freddie Mac ("the Freddie Common Class").

There is no class consisting of holders of Fannie Mae common stock.

The W.R. Berkley Plaintiffs brought their case separately as individuals, but their claims are the same as those of the Class Action Plaintiffs.

You may assume that the evidence at this trial applies to all class members and all of the W.R. Berkley Plaintiffs unless I tell you otherwise. All members of the class and all of the W.R. Berkley Plaintiffs will be bound by the result of this trial.

In this case, two of the defendants are government sponsored entities and the other is a government agency. The mere fact that some of the parties are government sponsored entities or a government agency does not mean they are entitled to any greater or lesser consideration by you. All litigants are equal before the law and are entitled to the same fair consideration as you would give any other individual party.

The FHFA is a federal government agency that also acts as conservator for Fannie Mae and Freddie Mac. When FHFA acts as conservator for Fannie Mae and Freddie Mac, it steps into the shoes of the GSEs. Because the FHFA's adoption of the Net Worth Sweep was taken on behalf of the GSEs as conservator, FHFA's conduct in entering into the Net Worth Sweep is deemed to be the conduct of the GSEs.

Thus, if you find that FHFA's entering into the Net Worth Sweep on behalf of Fannie Mae breached the implied covenant of good faith and fair dealing, then FHFA and Fannie Mae are both liable for that breach.

Similarly, if you find that FHFA's entering into the Net Worth Sweep on behalf of Freddie Mac breached the implied covenant of good faith and fair dealing, then FHFA and Freddie Mac are both liable for that breach.

In addition, two of the defendants in this case—Fannie Mae and Freddie Mac—are corporations. A corporation can act only through individuals as its agents or employees. In general, if any agent or employee of a corporation acts or makes statements while acting within

the scope of his or her authority as an agent, or within the scope of his or her duties as an employee, then under the law those acts and statements are of the corporation.

In general, under the law, shareholders, including plaintiffs, are deemed to have contracts with the companies whose stock they own. Those shareholder contracts differ from other kinds of contracts in several ways.

First, the types of shareholder contracts at issue in this case are not negotiated between the parties in the traditional sense. Rather, by purchasing the company's stock, shareholders agree to the terms of the contracts as those terms exist and as they may change over time.

Second, unlike other kinds of contracts, shareholder contracts are not contained in a single document. A shareholder's contract with the corporation includes not only documents such as the stock certificate, certificate of designations, the corporate charter and bylaws, but also the corporate law under which the corporation is formed and regulated.

Third, the terms of shareholder contracts may change over time without a specific agreement by the parties to those contracts. For instance, changes to the law that affect the governance of the GSEs and their relationships with shareholders, such as the Housing and Economic Recovery Act or "HERA," amend or inform the shareholder contracts.

All contracts, including plaintiffs' shareholder contracts, contain an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is not spelled out in the express terms of the contract, and it does not add any new terms to the contract. Rather, it is an obligation to be faithful to the meaning and purpose of the parties' agreement.

A party to a contract violates the implied covenant of good faith and fair dealing if it acts arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected. In general, arbitrary actions or decisions are those taken or made without appropriate consideration of or regard for the existing facts and circumstances, or that are not supported by fair, solid, and substantial cause in light of all the facts and circumstances; while unreasonable actions or decisions are those that are not guided by reason, that are beyond what can be expected or beyond the limits of acceptability or fairness, or that are lacking justification in fact or circumstance. Where plaintiffs allege a violation of the implied covenant of good faith and fair dealing, the finder of fact must assess what is arbitrary or unreasonable based on the parties' objectively reasonable expectations under the contract. In addition, a plaintiff alleging a violation of the implied covenant must show that the alleged breach caused them financial harm.

In this case, plaintiffs allege that FHFA, in agreeing to the Net Worth Sweep as a part of the Third Amendment to the PSPAs with Treasury, breached the implied covenant of good faith and fair dealing by eliminating any possibility that shareholders other than Treasury would receive dividends in the future, thereby depriving plaintiffs' shares of much of their value.

To establish a breach of the implied covenant of good faith and fair dealing in this case, each class of plaintiffs must prove by a preponderance of the evidence that (1) FHFA's actions in agreeing to the Net Worth Sweep arbitrarily or unreasonably violated shareholders' objectively reasonable expectations under the shareholder contracts and (2) as a result, plaintiffs' shares became less valuable.

In assessing what plaintiffs' reasonable expectations were under the contracts in this case, you may consider the text of the certificates of designation that came with plaintiffs' shares, as well as the terms of the Housing and Economic Recovery Act or "HERA," the Senior Preferred Stock Purchase Agreements or "PSPAs" between Treasury and FHFA and the first two amendments to those agreements, the nature of Fannie Mae and Freddie Mac as government-sponsored entities or "GSEs," and public statements by FHFA explaining the beginning of the conservatorship in 2008. While HERA authorized FHFA to act in the best interests of the GSEs, the FHFA, or the public, FHFA's exercise of that statutory authority can still have violated the implied covenant of good faith and fair dealing if it exercised that authority in a way that arbitrarily or unreasonably violated plaintiffs' reasonable expectations under the contract. In addition, you should keep in mind that the question is not what any actual shareholder, including any of the plaintiffs in this case, subjectively expected. Instead, the question is what an imaginary or hypothetical "reasonable" shareholder would have expected, based on information known or available to that hypothetical reasonable shareholder.

To the extent that the parties offered evidence of statements made or information that became available after the effective date of the Second Amendment to the PSPAs on December 24, 2009, you may not consider that as evidence of what shareholders' reasonable expectations were under the contract, but you may consider it as evidence of whether FHFA acted arbitrarily or unreasonably with regard to those expectations.

A verdict for or against the Class Action Plaintiffs will also be a verdict for or against the W.R. Berkley Plaintiffs.

If you award damages to the Class Action Plaintiffs, the amount of damages awarded to the W.R. Berkley Plaintiffs will be determined automatically based on their holdings of Fannie Mae preferred shares, Freddie Mac preferred shares, and Freddie Mac common shares as a percentage of the number of shares in each Class.

As I mentioned before, a plaintiff alleging a breach of the implied covenant of good faith and fair dealing must prove that the alleged breach caused them financial harm. In this case, plaintiffs argue that FHFA breached the implied covenant by agreeing to the Net Worth Sweep, and they argue that the Net Worth Sweep harmed them by effectively eliminating the dividend rights that came with their shares, thereby eliminating some of the value that those shares held before the Net Worth Sweep. If you find by a preponderance of the evidence that the alleged breach occurred and it caused the alleged financial harm, you must decide what amount of damages to award to compensate plaintiffs for that harm. You must make that determination separately with respect to each class of plaintiffs.

A party that is harmed by a breach of the implied covenant of good faith and fair dealing is entitled to damages calculated in an amount that would place it in the same position it would have been in had the breach not occurred, sometimes called "expectation damages." In this case, plaintiffs allege that they purchased shares that were supposed to come with dividend rights, and that as a result of the Net Worth Sweep, they ended up with shares that effectively did not come with dividend rights and thus were less valuable. Thus, if you find that defendants breached the implied covenant, then plaintiffs are entitled to recover damages equal to the loss in the value of their shares that they prove was caused by the Net Worth Sweep. Plaintiffs bear the burden of proving that measure of damages with reasonable certainty. That means although plaintiffs do not need to prove the amount of damages with mathematical certainty, they also may not rely on mere speculation, and they must prove that the damages they seek are a reasonable estimate of any actual damages they suffered.

You may not award any punitive damages in this case. That means that you may not base any monetary award on a desire to punish defendants, to prevent their conduct from being repeated in the future, or to warn others not to engage in such conduct. Any monetary award that you make in this case must be calculated solely to provide fair compensation to plaintiffs for any actual injuries that you find they sustained, and on no other basis.

The fact that I have instructed you about the proper measure of damages should not be considered as my suggesting which party is entitled to your verdict in this case, or that any of plaintiffs are entitled to any damages award at all. Instructions about the measure of damages are given for your guidance only if you find that a damages award is in order.

Under Virginia law, which applies to the claims of the Freddie Mac common and junior preferred shareholders, if you decide to award damages to those plaintiffs in any amount, you may award prejudgment interest at the rate of 6% per year and fix a date from which interest is to begin. Prejudgment interest is permitted by statute and is designed to compensate the plaintiffs for the loss sustained by not having the value they were entitled to have at the time they were entitled to have it. If you decide that an award of prejudgment interest is necessary to make the Freddie Mac junior preferred and common shareholders whole, it is within your discretion to choose the date from which that interest should begin, at any point from the date that the injury (if any) to the Freddie Mac junior preferred and common shareholders occurred to the date of the trial.

You are not being asked to determine any award of prejudgment interest for junior preferred shareholders of Fannie Mae because such interest (if any) will be assessed by the Court as a matter of Delaware law on any damages you may award.

Before I excuse you to deliberate, I want to discuss a few final matters with you. During your deliberations, you must consider the instructions as a whole. All of the instructions are

important. You must not ignore or treat any single instruction or part of an instruction differently than the other instructions.

When you return to the jury room, you should first select a foreperson to preside over your deliberations and to be your spokesperson here in court.  Consider selecting a foreperson who will encourage civility and mutual respect, who will invite each juror to speak up regarding her views about the evidence, and who will promote full and fair consideration of the evidence.

The verdict must represent the considered judgment of each juror.  In order to return a verdict, your verdict must be unanimous—that is, each juror must agree to the verdict.

Each of you has a duty to consult with other jurors in an attempt to reach a unanimous verdict. You should seriously consider the views of your fellow jurors, just as you expect them seriously to consider your views, and you should not hesitate to change an opinion if you are convinced by other jurors. However, you must decide the case for yourself, and you should not surrender your honest beliefs about the effect or weight of evidence merely to return a verdict or solely because of other jurors' opinions.

Remember that you are not advocates but neutral judges of the facts.  You will make an important contribution to the cause of justice if you arrive at a just verdict in this case. Therefore, during your deliberations, your purpose should not be to support your own opinion but to determine the facts.

If it becomes necessary during your deliberations to communicate with me, you may send a note, signed by your foreperson or by one or more members of the jury.  If you have a note, the foreperson should knock on the courtroom door, and the clerk will get the note and give it to me. If you are divided on any matter, you should not reveal in any note or otherwise how the jury is divided. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom.

When you have reached your verdict, the foreperson should fill out and sign the verdict form, which the Court will provide to you when you retire for deliberations. Send me a note— signed by the foreperson—telling me you have reached your verdict. Do not tell me in the note what your verdict is. I will then call you into the courtroom and ask the foreperson for the verdict form and for your verdict.

Date: November ___, 2022

Royce C. Lamberth
United States District Judge