## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FAIRHOLME FUNDS, INC., ET AL., et al,   Civil Action
   No. 1:13-1053
            Plaintiffs,

     vs.

                       October 31, 2022
FEDERAL HOUSING FINANCE      9:53 a.m.
    AGENCY, et al,         Washington, DC


              Defendants.
_____

In re: FANNIE MAE/FREDDIE MAC   Civil Action
SENIOR PREFERRED STOCK PURCHASE  13-1288
AGREEMENT CLASS ACTION
LITIGATIONS.
_____


TRANSCRIPT OF JURY TRIAL - **MORNING SESSION**
**BEFORE THE HONORABLE ROYCE C. LAMBERTH**
UNITED STATES DISTRICT JUDGE


PLAINTIFFS' APPEARANCES:

**For Plaintiffs:**       **CHARLES COOPER**
                   **DAVID THOMPSON**
                   **VINCENT COLATRIANO**
                   **PETER PATERSON**
                   **BRIAN BARNES**
                    Cooper & Kirk, PLLC
                    1523 New Hampshire Avenue NW
                    Washington, D.C. 20036

**For Class Plaintiffs:**  **ERIC ZAGAR**
                    Kessler Topaz Meltzer & Check, LLP
                    280 King of Prussia Road
                    Radnor, Pennsylvania 19087


                   **HAMISH HUME**
                   **SAMUEL KAPLAN**
                    Boies Schiller Flexner LLP
                    1401 New York Avenue NW
                    Washington, D.C. 20005

APPEARANCES (CONTINUED):

                               **MICHAEL J. BARRY**
                                 Grant & Eisenhofer, P.A.
                                 123 Justison Street
                                 Wilmington, Delaware 19801

                               **ADAM WIERZBOWSKI**
                                 Bernstein Litowitz Berger &
                                 Grossmann LLP
                                 1251 Avenue of the Americas
                                 New York, New York 10020

**For Defendant Federal**
**Housing Finance Agency:**  **ASIM VARMA**
                               **HOWARD CAYNE**
                               **DAVID BERGMAN**
                               **IAN HOFFMAN**
                                 Arnold & Porter Kaye Scholer LLP
                                 601 Massachusetts Avenue NW
                                 Washington, D.C. 20001

**For Federal Home Loan**
**Mortgage Company:**      **MICHAEL CIATTI**
                               King & Spalding LLP
                               1700 Pennsylvania Avenue NW
                               Washington, D.C. 20006

**For Federal National**
**Mortgage Association:**  **MEAGHAN VERGOW**
                               O'Melveny & Myers LLP
                               1625 I Street NW
                               Washington, D.C. 20006

**Reported By:**            **LORRAINE T. HERMAN, RPR, CRC**
                               Official Court Reporter
                               U.S. District & Bankruptcy Cts.
                               333 Constitution Avenue, NW
                               Room 6720
                               Washington, D.C. 20001
                               202-354-3196

*** Proceedings recorded by stenotype shorthand.
*** Transcript produced by computer-aided transcription.

1
<b><u>I N D E X</u></b>

2
**<u>WITNESS</u>**                                                         **<u>PAGE</u>**

3
BALA DHARAN

4
    Cross-Examination by Mr. Bergman                        2380
    Redirect Examination by Mr. Hume                        2391

5

6
ANJAN THAKOR

7
    Direct Examination by Mr. Kaplan                        2395
    Cross-Examination by Mr. Hoffman                        2419

8

9
<b><u>E X H I B I T S</u></b>

10
**<u>EXHIBIT</u>**                                                        **<u>PAGE</u>**

11
Plaintiffs' No. 444 Received into Evidence                  2375
Plaintiffs' No. 445 Received into Evidence                  2376

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **P R O C E E D I N G S**

2          **DEPUTY CLERK:**  Please be seated and come to order.

3          **THE COURT:**  All right.  Where do we stand on your

4     witness, Mr. Hume?

5          **MR. HUME:**  Good morning, Your Honor.  It's Hamish

6     Hume for the plaintiffs.  Professor Dharan is here.

7          **THE COURT:**  Okay.  Let's do these issues about

8     other witnesses first then.

9          **MR. HUME:**  The only other witness that we will

10    call is Professor Thakor.

11         **THE COURT:**  Okay.

12         **MR. HUME:**  On our rebuttal case.

13         **THE COURT:**  Okay.

14         **MR. HUME:**  The only other issue is we wish to

15    offer two exhibits into evidence as part of our rebuttal

16    case.

17         **THE COURT:**  Okay.  And what are they?

18         **MR. HUME:**  They are, Your Honor, two reports by

19    ratings agencies, Moody's and Fitch.  During Dr. Attari's

20    testimony, the defendant's expert, he talked about a certain

21    report from a ratings agency.

22         He was asked about whether ratings agencies, when

23    they are concerned that there may be a change in the rating

24    on a security from AAA to less than that or whatever, they

25    put out a ratings outlook saying negative or positive.  We

1       may be thinking about changing in the next couple of years

2       or a ratings watch which is more serious.

3              These documents simply explain that.  So we -- and

4       we think they are easily established as business records and

5       in rebuttal to some of what Dr. Attari said.

6              **THE COURT:**  Okay.  And then you all are through?

7              **MR. HUME:**  Then we are --

8              We have two other exhibits that are offered

9       without -- the two I just mentioned, I believe there's an

10      objection to.

11             There are two others that are offered without

12      objection and which allowed us not to call Professor Mason.

13      It's two charts from his report.

14             **THE COURT:**  Okay.

15             **MR. HUME:**  Tracking the yield spreads of the GSE

16      debt.

17             **THE COURT:**  Okay.

18             **MR. HUME:**  If we can just do that right now, Your

19      Honor, we'd move into evidence PX-444 and PX-445, both of

20      which, I believe, there are no objections on.

21             **MR. HOFFMAN:**  Your Honor, confirm no objection to

22      those documents but there are to the prior two exhibits.

23             **THE COURT:**  Okay.  They are received.

24          (Plaintiffs' Exhibit 444 was received.)

25          (Plaintiffs' Exhibit 445 was received.)

1          **MR. HUME:**  So other than finishing Professor

2     Dharan, a very short rebuttal testimony by Professor Thakor,

3     there are the two exhibits I mentioned on which there is an

4     objection, and there is this pending motion for judicial

5     notice on this point of clarifying --

6          **THE COURT:**  Right.

7          **MR. HUME:**  -- correcting the testimony of

8     Mr. DeMarco.

9          **THE COURT:**  We can do that with instructions then.

10    Okay.  Let's see if the jury is ready.  Okay.

11         **MR. JONES:**  Your Honor, Stanton Jones for the

12    defendants.  If I may, there was just one other item that we

13    wanted to put on the record quickly this morning before the

14    jury comes in.

15         Defendants are going to be making two filings this

16    morning that we just wanted to alert the Court to so that

17    they didn't come as a surprise.  One is, we're going to file

18    a written Rule 50(a) motion for judgment as a matter of law.

19    We obviously made the motion and argued it orally last week.

20         **THE COURT:**  Right.

21         **MR. JONES:**  We understand the Court's ruling was a

22    denial.  Strictly for appellate preservation purposes, we're

23    going to file it as a written motion.  We defer to

24    plaintiffs and the Court on, for instance, whether an

25    opposition is required at this point.

1          **THE COURT:**  Right.

2          **MR. JONES:**  We're also going to be filing a motion

3    this morning to decertify the classes.  That argument will

4    follow the decertification line of argument that was raised

5    in the context of the Rule 50(a) last week.

6          That motion, we believe, hasn't been formally made

7    yet or ruled upon.

8          **THE COURT:**  Okay.

9          **MR. JONES:**  So I will think it's just in a

10   slightly different category than the Rule 50(a) itself, but

11   we'll be filing both of those documents this morning, Your

12   Honor.

13         **THE COURT:**  Okay.  All right.

14         **MR. JONES:**  And there's also still outstanding

15   defendants' motion regarding the scope of the closing

16   argument, Motion in Limine regarding the closing arguments.

17         **THE COURT:**  We'll do that when we get to

18   instructions because you all are entitled to know the

19   instructions before you argue.

20         **MR. JONES:**  Perfect.  Thank you, Your Honor.

21         **THE COURT:**  Okay.  Let's see if the jury is ready.

22      (Brief pause)

23         **THE COURT:**  I think there is one issue that we

24   might need to resolve because it would be an evidentiary

25   question that could be done out of the presence of the jury,

1    and that is this issue of whether I should take judicial

2    notice of that one sentence.

3            I have never heard of taking judicial notice of a

4    matter of that kind of thing from Congress, but I suppose it

5    is conceivable that the records of Congress could establish

6    that a bill never came out of Committee.  I know that it

7    could be established that a bill never passed.  I suppose

8    it's conceivable that Committee records are sufficient to

9    say that the Committee never reported a bill on a subject

10   matter.

11           I'm not as confident as maybe counsel are that the

12   Committee records are such that that is necessarily the

13   case; that judicial notice could be taken of that.  But in

14   any event, at one point, defendants were willing to agree to

15   judicial notice or stipulate to the one sentence.

16           Then over the weekend, an opposition and then a

17   reply, I guess, was filed last night.  An opposition was

18   filed yesterday and a reply last night on that motion.

19           Tell me -- let me have the defendants tell me more

20   about what they are willing to do on that issue.  I

21   understand I'm -- I would not be getting into what the

22   witness said or didn't say, but in terms of what the Court

23   could take judicial notice of.

24           I'm sure a court can take judicial notice that a

25   bill did or did not pass.  Whether I can take judicial

1      notice what a Committee did or did not do, I don't know if

2      Committee records are sufficient to actually to say that.

3      Maybe they are and I don't know.  At one point, you all were

4      willing to stipulate to the one sentence, I take it.  So you

5      all may know more about that than I do.

6                **MR. JONES:**  Thank you, Your Honor.  Stanton Jones

7      for the defendants.

8                Just to be clear, defendants have never stipulated

9      or agreed to this actual sentence that plaintiffs have

10     proposed as judicial notice.  That sentence is stated in a

11     way that would be unduly prejudicial.  We agree with what

12     Your Honor said.  We've never heard of judicial notice like

13     that one.

14               We do believe that, under Rule 201, Rule 201

15     allows judicial notice of purely objective facts that can be

16     readily determined from sources whose accuracy cannot

17     reasonably be questioned.

18               So here, if we're talking about proposed

19     legislation in Congress, what we had told plaintiffs is that

20     we think that the pure objective facts about the bill

21     histories for a bunch of bills that were in Congress in the

22     relevant time, and Mr. DeMarco testified there were a bunch

23     of bills in Congress in this time period, that it would

24     potentially be appropriate for the Court to take judicial

25     notice of those bill histories.

1          We had not differentiated between what was sort of

2     a floor vote versus a Committee vote if there are pure

3     legislative facts but not the way plaintiffs have framed it.

4          **THE COURT:**  We'll come back to this later while we

5     bring the jury in.

6          (Jury entered the courtroom)

7          **THE COURT:**  Good morning, ladies and gentlemen.

8     You may be seated.

9          All right, Dr. Dharan is going to resume the

10    stand.  If he could come forward.

11         When we recessed on Friday, he had finished his

12    direct examination, and cross-examination will now begin.

13    Good morning, Doctor, you may resume the stand, remove your

14    mask, and you're still under oath.  You may cross-examine.

15                 **CROSS-EXAMINATION OF BALA DHARAN**

16         **MR. BERGMAN:**  Thank you.  David Bergman for

17    defendants.

18    **BY MR. BERGMAN:**

19         **Q.**   Good morning, Dr. Dharan.

20         **A.**   Good morning.

21         **Q.**   Just to sort of reset and make sure we're all back

22    on the same page, on Friday, you testified concerning

23    several different versions of some projections done by Dave

24    Benson of Fannie Mae.  Correct?

25         **A.**   Yes.

1      **Q.**   And the first document that you looked at and that

2    you had primarily testified about on direct was PX-216.  And

3    that's the draft presentation dated as of July 6, 2012; is

4    that correct?

5      **A.**   Yes.

6      **Q.**   And let's --

7          **MR. BERGMAN:**  Mr. Salazar, if you can just pull up

8    the first page of PX-216?

9    **BY MR. BERGMAN:**

10     **Q.**   And then, Dr. Dharan, you testified about PX-218

11   and PX-269 and PX-509, and those were all -- I believe,

12   according to your testimony, those were all the same

13   projections with some minor revisions throughout over the

14   course of a few weeks; is that right?

15     **A.**   Yes.

16     **Q.**   But those are all documents that are the -- what

17   we'll call the Dave Benson projections.  Okay?

18     **A.**   Okay.

19     **Q.**   And the projections that you focused on were

20   derived from this slide presentation, this slide deck that

21   Mr. Benson prepared in connection with the strategic

22   planning session of the Fannie Mae Board of Directors.

23   Correct?

24     **A.**   Yes.  It's one of the slides in this.

25         **MR. BERGMAN:**  And let's go to, Mr. Salazar,

1    please, Page 15 of 28.  This is Mr. Benson's Slide 14.

2    **BY MR. BERGMAN:**

3        **Q.**    And this is the slide that you primarily relied

4    upon.  Correct?

5        **A.**    This is the slide I focused on for the last

6    line --

7        **Q.**    Yes.

8        **A.**     -- in each table.

9        **Q.**    Okay.  You understand that, particularly this

10   Slide 14 and Mr. Benson's projections, were not an official

11   Fannie Mae forecast.  Correct?

12       **A.**    I don't know what that means.

13       **Q.**    Let's pull up Mr. Benson's deposition, Page 178,

14   Line 20 through 179, Line 3.  And you can see that, with

15   respect to this particular slide, Mr. Benson testified this

16   was more of a, call it, an unofficial long-term forecast.

17   Do you see that?

18       **A.**    Yes, I see that.

19       **Q.**    Do you understand it was not usual for Fannie Mae

20   to project out 10 years as Mr. Benson did in these

21   projections?

22       **A.**    Yes.

23       **Q.**    And Mr. Benson's projections on Slide 14 were more

24   of a strategic thought piece rather than an honest

25   assessment of how Fannie expected to perform in the future.

1    Correct?

2         **A.**   Yes.  It was part of a strategic planning slide

3    presentation.

4              **MR. BERGMAN:**  Let's pull up Mr. Benson's

5    deposition testimony, 177, Line 22 through 178, Line 5.

6    **BY MR. BERGMAN:**

7         **Q.**   And Mr. Benson was asked the specific question:

8    "Do these projections reflect Fannie's best and most honest

9    assessment of how it expected to perform in the future?"

10             And his answer was:  "This was intended as a

11   strategic thought piece, as opposed to an audited financial

12   statement."  Do you see that?

13        **A.**   Yes.

14        **Q.**   And do you understand that this was meant as --

15   Mr. Benson meant this Slide 14 as a strategic thought piece

16   rather than an honest assessment of how Fannie expected to

17   perform in the future?

18        **A.**   I don't read the answer the same way you just did.

19   He says it's a strategic thought piece as opposed to an

20   audited financial statement.

21        **Q.**   Do you understand that Mr. Benson's projections

22   were not his best estimate of Fannie's future performance?

23        **A.**   Maybe you can show me the question and answer on

24   that.

25        **Q.**   You don't have that understanding as you sit here?

1      **A.**   As I sit here, I think of that strategic planning

2      slide presentation made to the board.  It was a board

3      presentation.  It was a management document that was shared

4      with FHFA and others.

5      **Q.**   So you treated it as a best estimate of Fannie's

6      future performance?

7      **A.**   I treated it as evidence that I had access to that

8      I wanted to analyze.

9           **MR. BERGMAN:**   Mr. Salazar, let's please pull up

10     Mr. Benson's testimony 178, Lines 16 through 20.

11     **BY MR. BERGMAN:**

12     **Q.**   And Mr. Benson testified -- line 16, please --

13     "You've asked if this was the best estimate.  It wasn't."

14     Do you see that?

15     **A.**   Can I read the whole context of this first

16     sentence?

17     **Q.**   Yes.

18     **A.**   Can you show me it?  I'm not seeing it.

19     **Q.**   So it should be on the screen.

20          **MR. BERGMAN:**   And, Mr. Salazar, if you want to,

21     perhaps we can make it smaller so Dr. Dharan can see the

22     whole passage.

23     **BY MR. BERGMAN:**

24     **Q.**   "You've asked if it was the best estimate.  It

25     wasn't -- the purpose of this wasn't necessarily to go

1   through the kind of rigor that one would typically go

2   through, in terms of the way we would do an official

3   forecast."

4            Do you see that?

5       **A.**   Yes.

6       **Q.**   This was not his best estimate of Fannie's future

7   performance.  Correct?

8       **A.**   He's saying that this was an unofficial long-term

9   forecast.

10      **Q.**   Mr. Benson's Slide 14 also included projections

11  for Freddie Mac.  And you presented those to the jury.

12  Correct?

13      **A.**   Yes.

14      **Q.**   And it is your understanding that Mr. Benson had

15  access to Freddie Mac's internal financial models and other

16  assumptions in connection with this slide.  Correct?

17      **A.**   I remember that they shared the basic model

18  parameters.

19      **Q.**   You testified it was your understanding that

20  Fannie and Freddie shared financial models and other

21  assumptions between them.  Correct?

22      **A.**   That's what I recall.

23      **Q.**   In fact, Mr. Benson did not have access to

24  internal Freddie data or information in connection with the

25  projections on his Slide 14.  Do you know that?

1          **A.**   Can you repeat the question again?

2          **Q.**   Yes.  Mr. Benson did not have access to Freddie's

3     internal data or information in connection with the

4     projections on this Slide 14?

5          **A.**   Yes.  This slide was prepared by Fannie Mae using

6     models, but they had their own data, not Freddie Mac's data.

7          **Q.**   In fact, you know that Mr. Benson did not have

8     access to any of Freddie's internal information.  Correct?

9          **A.**   I don't know what he had access to, but I remember

10    that this was based on the models that they shared, but not

11    the data.

12          **MR. BERGMAN:**  Let's pull up the Benson deposition

13    transcript 176/20 through 177/8.

14    **BY MR. BERGMAN:**

15          **Q.**   Mr. Benson there was asked, "Why was Fannie

16    preparing financial projections for Freddie Mac?"  So

17    that's --

18          **MR. BERGMAN:**  Thank you.

19    **BY MR. BERGMAN:**

20          **Q.**   "Why was Fannie preparing financial projections

21    for Freddie Mac?  Well, this is not -- this wouldn't have

22    been information.  This would come from public information.

23    So it would be information that -- we didn't have Freddie's

24    internal.  So this would have been our attempt to be able to

25    frame, in the same way that we would do for ourselves, to

1    the best we could to try to estimate what their position

2    might be.  And that's what it is."  Correct?

3        **A.**   Yes.

4        **Q.**   You know that Mr. Benson's projections for Freddie

5    Mac extended out 10 years the same as his projections for

6    Fannie Mae.  Right?

7        **A.**   Yes.

8        **Q.**   And Freddie itself did not project out 10 years in

9    its official forecast.  Right?

10       **A.**   Yeah, I haven't seen one.

11       **Q.**   In fact, any projection more than three years

12   would have been highly unusual for Freddie Mac.  Right?

13       **A.**   That's what I recall.  Either did one or two years

14   and sometimes three years.

15       **Q.**   And Mr. Benson's projections did not include a

16   stress scenario.  Correct?

17       **A.**   The one we saw on the slide was base case.

18       **Q.**   There was no stress scenario that Mr. Benson

19   projected.  Correct?

20       **A.**   At least I didn't see one.

21       **Q.**   And you know that the stress scenario was the

22   scenario that Freddie Mac's CEO, Mr. Don Layton, was most

23   concerned about.  Right?

24       **A.**   I don't know.  I think you may have a deposition

25   question on that, but what I know is that they prepared a

1    base case, better case, worst case and a stress case.

2         Q.   And you don't know what concerned Mr. Layton was

3    the stress scenario?

4         A.   I'm sure the stress case was definitely an

5    important input in their decision.  No question.

6         Q.   And Mr. Layton testified that it was the one he

7    was most concerned about.  Correct?

8         A.   I don't recall that but I take your word for it.

9         Q.   Okay.

10        MR. BERGMAN:  Let's pull up Mr. Layton's

11   deposition transcript 117, Line 17 through 118, Line 2.

12   BY MR. BERGMAN:

13        Q.   And Mr. Layton was asked, "You're more concerned

14   with the downside than the median or upside?"  His answer

15   was, "Yes.  You're concerned about all of it, but the one

16   that causes the most problems is clearly the downside."

17        And why is that?  Because that can threaten the

18   viability of a big company.  Right?

19        A.   Yes.  I remember I keep watching it on video as

20   well, as I said, they prepared all scenarios and he says in

21   the answer here, "You're concerned about all of it."

22   Naturally, the worse the case is, the more stress it is, the

23   more you're going to see what the downside is. I mean -- I

24   totally agree with that assessment.

25        Q.   Thank you.  And Freddie's official forecast from

1   2012 included a stress scenario.  Right?

2       **A.**   Yes.

3       **Q.**   And they estimated out three years, the Freddie

4   official forecast from 2012.  Right?

5       **A.**   Yes.

6       **Q.**   And in the stress scenario from Freddie's official

7   forecast from 2012, it shows Freddie continuing to take

8   circular draws and eroding the Treasury commitment.  Right?

9       **A.**   What I remember is that they do take the draw in

10  the stress scenario quite a bit, but they still, at the end

11  of the stress scenario, they're still left with about $32 or

12  $35 billion of the Treasury draw.

13           In other words, the intent of the stress scenario

14  was to show -- was to find out whether, even in the worst

15  case that they could imagine, a 20 percent drop in the

16  housing price, would the draw be sufficient.  And the

17  answer, as I saw it, was that the draw was sufficient and

18  they did not run out of it, and they were left with about

19  $32 billion.  I maybe rounded the number but some

20  approximate large amount of that nature.

21      **Q.**   Freddie Mac projected that, from 2012 through

22  2015, the range of cumulative Treasury draws would go up to

23  $199 billion through 2015.  Correct?

24      **A.**   I think that was the total Treasury draw.  Not

25  just that one year.  That includes the draws in 2008, '09,

1    '10, '11 and '12 as well.

2        Q.   So at the end of 2015, you're right, there would

3    only be $32 billion left available to Freddie Mac out of the

4    Treasury commitment?

5        A.   Absolutely.  And I think that was the purpose of

6    the stress test.  And I answered this also in the earlier

7    question you had, I think in the deposition, that the whole

8    purpose of the stress test was to see if you could survive

9    the stress.

10            And I used the example of an earthquake kind of a

11   stress test for housing.  So you want to know if your house

12   will survive, your foundation will survive an

13   earthquake-type stress and it did.  So that was the purpose

14   and that was how I did the answer on that too.

15       Q.   The Freddie Mac official forecast stress case was

16   showing using about $40 billion per year in Treasury draws

17   for three years.  Correct?

18       A.   Yeah.  Again, the three years included a 20

19   percent drop in the housing price, which is incredibly rare.

20   It only happened previously in The Great Depression.  And in

21   spite of that, the Treasury draw was still available at the

22   end of the scenario to the tune of $32 billion.

23       Q.   Thank you.

24            MR. BERGMAN:  That's all I have, Your Honor.

25                **REDIRECT EXAMINATION OF BALA DHARAN**

1          **MR. HUME:**  Professor Dharan, members of the jury,

2     Hamish Hume for the plaintiffs.

3     **BY MR. HUME:**

4          **Q.**    Professor Dharan, did counsel show you version of

5     the Benson projections that were sent to the Board of

6     Directors of Fannie Mae?

7          **A.**    Yes.

8          **Q.**    Do you recall what the Fannie Mae CEO at the time,

9     Tim Mayopoulos, said about projections that he sent to the

10    board?

11         **A.**    I think he said something about prepared carefully

12    because they were being presented to the board.  I don't

13    remember the exact wordings, but it was an effort to make

14    sure the board got the best information.

15         **Q.**    Do you have a copy of your witness binder?

16         **A.**    I have a binder, yes.

17         **Q.**    Is it defense counsel's binder?  Do you have a

18    copy?

19          **MR. HUME:**  Your Honor, may I approach?

20          **THE COURT:**  Yes.

21          **THE WITNESS:**  Thank you.

22    **BY MR. HUME:**

23         **Q.**    Tab 1 of that binder is excerpts from the

24    designated testimony by Mr. Mayopoulos.  And if you turn

25    to -- excuse me one second -- to the 14th of 16 pages.

1      **A.**    What's the number again?

2      **Q.**    Fourteen.

3      **A.**    One, four?

4      **Q.**    One, four.

5      **A.**    I only have 13.

6      **Q.**    You only have 13.

7          **MR. HUME:**  Are we able to play that Mayopoulos

8      clip?  Yes, 121.

9          This is a portion of the designated testimony.

10         **MR. BERGMAN:**  Your Honor, may I go to the phone

11     with an objection, first, please?

12         (Sidebar discussion)

13         **MR. BERGMAN:**  David Bergman for defendants.

14         Your Honor, this deposition excerpt is not

15     actually related to the particular document that was at

16     issue.  It was a generalized question to Mr. Mayopoulos.

17     Were projections presented to the board generally, done

18     carefully, that sort of thing.

19         It was not specific to this document, which is not

20     an official forecast and has been established by Mr. Benson

21     was the care with which he presented it.  So I think this

22     would be misleading to present Mr. Mayopoulos' testimony

23     about projections that are not these.

24         **MR. HUME:**  Your Honor, this is Mr. Hume.  The

25     Benson projections we are showing to Mr. Mayopoulos later in

1    his deposition in a portion that is not designated.  His

2    testimony is general but this Benson projections were

3    presented to the board.  So his general testimony is still

4    relevant and relevant to rebuttal of what the defendants

5    were trying to show.

6           **MR. BERGMAN:**  Your Honor, David Bergman --

7           **THE COURT:**  Overruled.

8        (Sidebar discussion concluded)

9    **BY MR. HUME:**

10       **Q.**    Professor Dharan, you reviewed the deposition

11   testimony of Mr. Mayopoulos as well as many others in

12   forming your opinions in this case?

13       **A.**    Yes, I did.

14       **Q.**    So I'd like to refresh your recollection with a

15   short clip from Mr. Mayopoulos who was, in 2012, the CEO of

16   Fannie Mae.

17       (Video played)

18           And you reviewed the projections, the Benson

19   projections that were presented to the Fannie Mae board in

20   the summer of 2012?

21       **A.**    Yes.

22       **Q.**    And what did those show with respect to what was

23   projected on the remaining amount of the Treasury commitment

24   for both Fannie Mae and Freddie Mac?

25       **A.**    In the July projection, it showed that about 6.5

1  billion out of the total available Treasury draw was only

2  6.5 billion would be used in 10 years, over a 10-year

3  period.

4      Q.   And are you aware of the fact that -- do you know

5  whether those Benson projections were also shared later in

6  the summer, in August of 2012, with the Treasury Department?

7      A.   Yes.

8      Q.   And what did those ones show?

9      A.   They showed that about 8.7 billion would be used

10  over 10 years out of the total of some 200 billion

11  available.

12      Q.   So did they -- were they consistent with the

13  earlier projections or inconsistent?

14      A.   Very consistent.

15      Q.   And did you see any evidence today that counsel

16  showed you from Mr. Benson's testimony that changes your

17  opinion in any way?

18      A.   No, not at all.

19      Q.   When counsel showed you that deposition clip where

20  Mr. Benson says -- you asked a question, It wasn't, dash

21  dash, was it clear to you exactly what he was saying with,

22  "that it wasn't the way it was shown."  Was it clear or not

23  clear?

24      A.   Well, I had to read the whole question and answer

25  to really understand.

1              So he was essential saying, the way I interpreted

2    it, which is that he is presenting the information to the

3    board in the best way he could.

4              **MR. HUME:**  No further questions.

5              **THE COURT:**  All right.  You may step down.  Next

6    witness.

7              **THE WITNESS:**  Thank you.

8              **MR. KAPLAN:**  Your Honor, plaintiffs call

9    Anjan Thakor to the stand.  And, Your Honor, as I mentioned

10   last week, there's one small part where he may want to step

11   down and sketch something.

12             **THE COURT:**  All right.

13             Dr. Thakor, you can resume the stand.  I remind

14   you you're still under oath.

15             You may proceed, Counsel.

16         **DIRECT EXAMINATION OF ANJAN THAKOR**

17   BY MR. KAPLAN:

18      **Q.**   Welcome back, Professor Thakor.

19      **A.**   Thank you.  Good morning.

20      **Q.**   Good morning.

21             Professor Thakor, you were in court last week when

22   Dr. Attari gave his response to -- testified including his

23   response to your testimony?

24      **A.**   Yes, I was.

25      **Q.**   You've reviewed his deposition and report and, in

1      particular, the parts that address the periodic commitment

2      fee?

3          **A.**   Yes, I have.

4          **Q.**   And just generally -- we'll get more specific in a

5      moment -- do you agree or disagree with his views on the PCF

6      and your work on this case?

7          **A.**   I disagree.  In fact, I couldn't disagree more.  I

8      think he made a lot of mistakes.

9          **Q.**   Let's go through what he said.  He said, in

10     essence -- at 2025 of the trial transcript, he said, "It's

11     $258 billion of Treasury commitment that's available to the

12     enterprises, and saying that it's nothing doesn't make sense

13     economically."  He's referring to your testimony there.

14     What's your response to that?

15         **A.**   Well, I think -- you know, at the heart of my

16     analysis and opinion is this notion of all-in cost.  So you

17     can't just focus on the PCF in isolation as a tub on its own

18     bottom.  You have take into account all of the other

19     elements of cost and sort of say, Well, if the PCF is not

20     substantial on this commitment, then somehow there's

21     something wrong with it.

22              The fact of the matter is you have to look at the

23     10 percent dividend.  You've got to look at the warrants on

24     79.9 percent of the stock.  You have to look at the $1

25     billion fee that was paid upfront.  So you have to look at

1    this from an all-in cost perspective; and that's indicated

2    both by my research and it's industry practice.

3           Dr. Attari makes a mistake when he just focuses on

4    the PCF in isolation.  And that's where I think his analysis

5    goes wrong.

6    **Q.**   Did Dr. Attari refer to the all-in cost concept at

7    all in his testimony, to your recollection?

8    **A.**   No, he did not refer to it either in his report or

9    in his testimony in court on direct.

10   **Q.**   Can you expand or perhaps illustrate for the jury

11   why it is that you're not treating $258 billion as nothing?

12   **A.**   Yes.

13          Your Honor, if I may I can just show you the flip

14   chart.

15          **DEPUTY CLERK:**  Counsel.

16          **MR. KAPLAN:**  I'm sorry.  One moment, Professor

17   Thakor.  You'll need a microphone to put on.

18          **MR. HOFFMAN:**  Your Honor, Ian Hoffman for the

19   defendants.  Your Honor, do you mind if I walk around so I

20   can see what's being written as well?  Thank you, Your

21   Honor.

22          **THE WITNESS:**  So I'm just going to take a simple

23   mortgage example to talk about all-in cost and where

24   Dr. Attari was wrong.

25          So suppose we have a bank.  Let's call it B.  And

1      by the way, you want to borrow $100,000 with this mortgage

2      for a house purchase.

3                And Bank B says, Okay.  We're going to charge you

4      10 percent interest on the mortgage.  Okay?  So you're going

5      to pay, you know, $10,000 per year in mortgage interest.

6      And then they say, All right.  We're also going to take 80

7      percent of the profits on the sale of the house.  So if you

8      make a loss, that's your problem.  But if you make a profit,

9      we get 80 percent of it.

10                Then here, you've got Bank A, which says, We'll

11      charge you 5 percent on the mortgage.  So you're going to

12      pay $5,000 a year, and then they have a fee that they charge

13      you.  Let's call it $500.  Okay?

14                The question is, if Bank B says, you know, Bring

15      me a market-based assessment of what you can borrow at and

16      then we'll set the fee, well, if that happens, and you say,

17      Okay.  Here is market-based assessment.

18                This bank is willing to give me this mortgage at 5

19      percent and charge me a $500 fee.  And what should this Bank

20      B be charging so that these are comparable?  The answer is,

21      nothing, because I'm already paying $10,000 per year in

22      interest, plus they're taking 80 percent of the profits on

23      my house.

24                So to say that I'm just going to focus on the fee

25      that, if you tell me we shouldn't be charging a big fee

1    here, whereas, with this bank, I'm paying a $500 fee, that's

2    not a valid comparison.  You really have to take the all-in

3    cost of each of these packages into account.

4           So you've got to look at the interest rate.

5    You've got to look at the fees.  You've got to look at all

6    of the terms of the contract.

7           So that's the -- it's a very simple concept that

8    is consistent with industry practice and all of the research

9    that I've done on loan commitments that you never look at

10   any one item within the contract in isolation.  You always

11   look at the overall cost of the whole package.  All right?

12          Anyway, that's -- I hope that was helpful.  But

13   it's not that complicated a concept.  It is an important

14   concept.

15   **BY MR. KAPLAN:**

16      **Q.**   Thank you, Professor.

17          So it's fair to say also that Dr. Attari

18   criticized certain of the all-in cost comparisons that you

19   did; is that correct?

20      **A.**   Right.  He doesn't refer to all-in cost, which I

21   find surprising, since I talked about it extensively in my

22   initial report.  And in my rebuttal report, after he

23   submitted his report, I also discussed the notion of all-in

24   cost and the fact that he hadn't discussed it at all to

25   address the points that I had made.  So I was really

1    surprised to see that.

2        **Q.**   Let me rephrase.  He criticized your use of

3    certain comparators; is that correct?

4        **A.**   Yes, he did.

5            **MR. KAPLAN:**  Could we have defendants' Slide 50

6    please -- defendant Attari's Slide 50.

7    **BY MR. KAPLAN:**

8        **Q.**   Can you see this on the screen, Professor?  Do you

9    see it on the screen, Professor?

10       **A.**   Yes, I do.

11       **Q.**   Is it fair to say -- well, in addition to what's

12   on this slide, Dr. Attari said, "Treasury was not lending

13   money to Fannie Mae and Freddie Mac" and instead "was

14   providing them equity capital."

15           He also said that comparing an equity commitment

16   to a loan was apples and oranges.  Do you agree with him on

17   that?

18       **A.**   No, I don't.

19       **Q.**   Why not?

20       **A.**   So he's wrong on a couple of counts.  Number one,

21   you know, Treasury did provide preferred stock investment or

22   equity commitments to a number of institutions, the CPP

23   banks as well as the IGs.  So it's not true that Treasury

24   didn't provide equity assistance to other institutions.

25           But also, his point about my bank loan commitments

1    analysis was that loan commitments are, essentially, loans.

2    They're not equity inputs.  And since a loan is a debt

3    contract, the yield on a debt contract, because it's senior

4    preferred stock, should be lower than the interest rate  or

5    yield on a preferred stock.  So the point was that somehow,

6    in taking the loan commitment data, I was understating the

7    cost of the commitment.

8         The fact of the matter is that there is research

9    in a paper that I cite in my rebuttal report by Bajaj and

10   coauthors.  It's a published paper, peer-reviewed journal,

11   where they point out that actually the yields on

12   corporate-preferred stock are not higher than the yields on

13   corporate debt once you control credit ratings.  They're

14   actually lower.

15        So, if anything, my loan commitment data doesn't

16   understate the cost.  It may, in fact, even overstate the

17   cost.  But to be conservative, we can just take the numbers

18   that I gave you on the loan commitment data, which if you'll

19   recall from my testimony on direct, were a lot, lot lower

20   than what Treasury was charging the GSEs.

21        So that point is wrong based on just the research

22   evidence available on how preferred stock and debt yields

23   compare.  It's also wrong on the notion that somehow AIG did

24   not receive any sort of equity assistance or other banks did

25   not receive equity assistance from Treasury.

1      **Q.**   Did Dr. Attari tell the jury about his research in

2   his direct testimony?

3      **A.**   No, I did not hear him say that.

4      **Q.**   Do you recall what he said about this research --

5   or do you recall if he was asked about this research at his

6   deposition?

7      **A.**   Yes, he was.

8      **Q.**   Do you recall what he said about it?

9      **A.**   He said he had not considered it.

10      **Q.**   Had he ever even heard of it?

11      **A.**   Right.  And I want to make one more point, if I

12   may, you know, the second point on the loan commitments that

13   the New York fed loan commitment to AIG was secured, there,

14   he's trying to argue that the Treasury --

15      **Q.**   I'm sorry, Professor.  I didn't meant to interrupt

16   you.  We will get to AIG, but I just want to make sure that

17   we've addressed this point fully, unless it's important to

18   expand your point.

19      **A.**   Well, I just wanted to mention that -- and we can

20   come back to this later -- that the fact that it was secured

21   doesn't make that much difference.  And there's more

22   research that I cite on that.  But even if you take that

23   into account, you can't get anywhere close to what the GSEs

24   were paying compared to what even AIG paid.

25      **Q.**   Thank you.

1          On strictly the issue of equity commitment to

2     debt, did Dr. Attari cite any empirical research to back up

3     his position on that issue?

4          **A.**   No, he did not.

5          **MR. KAPLAN:**  Could we have Slide 36, please,

6     Kevin?  Thakor's Slide 36.

7     **BY MR. KAPLAN:**

8          **Q.**   Professor, you recognize this as a slide you used

9     in your direct testimony?

10         **A.**   Yes, I do.

11         **Q.**   Is the commitment that it -- the comparison that

12    it shows there is Treasury's assistance to AIG as opposed to

13    the New York fed's assistance to AIG?  Is it accurate that

14    Treasury's assistance to AIG was an equity commitment?

15         **A.**   That's correct.

16         **Q.**   And did Dr. Attari address this slide or the

17    comparison that you drew in his direct testimony?

18         **A.**   No, he did not.  By the way, I should also note

19    that, eventually, the New York fed essentially transferred

20    all of its commitments to Treasury.  So in the end, AIG was

21    only dealing, for the most part, with Treasury.

22         **MR. KAPLAN:**  Could we have defendants' Slide 51,

23    please?  Defendant Attari's Slide 51.

24    **BY MR. KAPLAN:**

25         **Q.**   Do you recognize this slide, Professor?

1        **A.**   Yes, I do.

2        **Q.**   Can you give us your reaction to it?

3        **A.**   I have lots of reactions to it.  So, first, you

4    know, we're comparing here AIG in September of 2008, you

5    know, with the GSEs in September of 2008.  But, really, the

6    comparison we ought to focus on is the GSEs in 2012 at the

7    time of the net worth sweep, because that's when we were

8    talking about setting the PCF as an alternative to the net

9    worth sweep.  And so that's one point.

10        And then he makes the point that the Federal

11    Reserve Bank of New York's commitment to AIG was in the form

12    of secured loans, whereas the GSE's commitment was in the

13    form of preferred equity.

14        Well, as I mentioned in my report, if you look

15    at -- and I cite this research paper.  If you look at the

16    research on the difference in interest rates on unsecured

17    and secured loans, basically, the difference is very small.

18    It can be as small as two business points, two hundredth of

19    a percent.  But even at the maximum end point of that range

20    it's 1.29 percent.

21        So you can add the 1.29 percent to the 3.43

22    percent in August of 2012 that I indicated AIG would have

23    paid if it were in the program of August of 2012, you still

24    get to, like, 4.6, 4.7 percent.  You don't get to 10

25    percent.

1           So to make this a key distinguishing point, really

2     does nothing to alter my opinion that the terms that the

3     GSEs received were just significantly more onerous than the

4     terms that AIG received.

5           And then there's the issue of debt versus equity

6     that we talked about.  Preferred stock yields are actually

7     lower, not higher, than debt yields.  So that's another

8     place where I think what he points out in the slide doesn't

9     really affect my opinion.

10           The third thing is he talks about the term.  Now,

11     it's true that it was two years when they first negotiated

12     it.  But as he admitted on cross, within six weeks, the

13     terms were changed and this facility length was increased to

14     five years.  Then you've got the commitment amount.  You've

15     got the common equity that's valued at $23 billion.  Well,

16     this was book value and from an accounting standpoint.

17           As I indicated in September of 2008, AIG was in

18     such deep trouble.  They were so close to complete collapse

19     that book values, whether it's book value of equity, you

20     know, equity over total assets, all of those book values

21     were really meaningless because everybody knew, based on

22     market data, that, absent very significant help from the

23     Federal Reserve bank of New York and later Treasury, they

24     were going to collapse.  I mean, there was no question about

25     it.

1      **Q.**    Professor, you alluded to some research on secured

2    loans versus unsecured loans.  Did you talk about that

3    research in your rebuttal report?

4      **A.**    I did.  Yes, I cited the paper.  I mentioned the

5    magnitudes that I just did.

6      **Q.**    Do you recall whether Dr. Attari addressed that

7    research in his direct testimony?

8      **A.**    No, he did not.

9      **Q.**    Do you recall if he was asked about it at his

10    deposition?

11     **A.**    Yes, I do recall.

12     **Q.**    What did he say about it?

13     **A.**    Again, I think he said he had not considered it.

14     **Q.**    Was he even familiar with it?

15     **A.**    I'm sorry?

16     **Q.**    Do you recall if he said he was even familiar with

17    it?

18          **MR. HOFFMAN:**  Objection.  Objection.  Objection,

19    Your Honor.  His deposition testimony is not in evidence.

20          **THE COURT:**  Overruled.

21          **THE WITNESS:**  Yeah, I don't think he was aware of

22    it.

23    **BY MR. KAPLAN:**

24     **Q.**    And based on your -- and, Professor, you also

25    alluded to the comparison between AIG in 2008 and the GSEs

1   at the time of the net worth sweep or whenever a PCF would

2   have been set after that, assuming it would have been set.

3          Based on your understanding, how did AIG's

4   financial condition in 2008 compare with where the GSEs were

5   at, at the time of the net worth sweep or thereafter?

6      **A.**   Right.   There's no comparison.

7          In 2008, September of 2008, you have to

8   understand, in one day -- I think it was September 15th,

9   remember I told you that AIG was basically a seller of

10   insurance against default on bonds, on mortgage-backed

11   securities and as credit default swapped contracts?

12          They had to keep collateral as a seller of that

13   insurance, mostly in the form of cash because if I write you

14   an insurance policy, you want to know that I've got enough

15   money to cover it if you need to -- if you need me to pay

16   you.

17          In one day, because their credit rating declined,

18   that collateral went from a little over $8 billion to $32

19   billion.   They had, in their life insurance SLB, the

20   security's lending business, where the securities were

21   mortgage-backed securities.   And in one day, they had to

22   raise over $5 billion in cash there.

23          So they were under severe stress during the

24   financial crisis.   The prices of CDS contracts on their debt

25   increased by a factor of 400 percent in a very short time.

1    So, you know, their condition was incredibly precarious.

2    And they would have collapsed if the government had not

3    helped them.

4           By comparison, if you look at the GSEs in August

5    of 2012, you know, they had small but positive book equity

6    ratios.  The outlook for --

7           **MR. HOFFMAN:**  Objection, Your Honor.  Objection,

8    Your Honor.  This is outside the scope of his opinion,

9    undisclosed and also outside the scope of -- it's not proper

10   rebuttal testimony.  Dr. Attari --

11          **THE COURT:**  Sustained.

12   **BY MR. KAPLAN:**

13      **Q.**   Let's move on to the capital purchase program --

14      **A.**   Okay.

15      **Q.**   -- Professor Thakor.  On the capital purchase

16   program, Professor Attari said, under that, meaning the

17   capital purchase program, banks received some amount of

18   equity capital.  But these were banks that had significant

19   amounts of their own equity capital, and this was just to

20   top things off so that the market would have more

21   confidence.

22          Can you -- first of all, have you written --

23   you've written on the capital purchase program; is that

24   correct?

25      **A.**   Yes.

1      Q.   Can you give us your reaction to that discussion?

2      A.   All right.  So these banks had capital in terms of

3  book capital.  But let's understand also that the terms that

4  they got were far more attractive than what the GSEs got.

5           There was 5 percent dividend.  They didn't have

6  the big upfront fee or a PCF.  They had -- they could redeem

7  their preferred stock.  Okay?  Initially, when the program

8  was put together, there was like a three-year restriction.

9  They changed it the next year.  So they could redeem that.

10  There was a small warrant equal to 15 percent of the amount

11  invested by Treasury, but they could redeem that as well.

12           And the strike price of that was based on the

13  stock price prior to the application.  So it wasn't the

14  warrant that Treasury got from the GSEs, where you could

15  essentially buy 80 percent of the stock for next to nothing.

16           The comment about topping off just doesn't make

17  any sense to me.  No, these banks were in serious trouble.

18  Treasury didn't step in to top off capital to these banks.

19  Treasury stepped in to save the financial system from

20  complete collapse.

21           There were 705 banks in the system, including some

22  of the largest banks, like Citi Group, that, absent this

23  government support, would have collapsed.  And it would have

24  been really bad for the financial system.  Everybody agreed

25  with that.

1            And that's why Congress authorized $700 billion

2     under TARP and then Treasury invested $205 billion under the

3     CPP program.  So I completely disagree with that that it was

4     just topping off capital in banks that somehow it was

5     something that was nice to do.  No, it was essential.

6            And then you also have to remember that the GSEs

7     earned over $100 billion in profit over and above the 10

8     percent dividend that they paid to Treasury.  And if, in

9     fact, they had been allowed, if the net worth sweep had not

10    occurred, that --

11           **MR. HOFFMAN:**  Objection, Your Honor.  Outside the

12    scope of his report and also improper rebuttal testimony.

13    This is far afield from anything Dr. Attari testified to.

14           **THE COURT:**  Sustained.

15           **MR. KAPLAN:**  We can move on to the FDIC analysis.

16           **MR. HOFFMAN:**  The judge sustained the objection.

17           **THE COURT:**  It was sustained.

18    **BY MR. KAPLAN:**

19       **Q.**   But your basic point here is that the topping off

20    that Dr. Attari was talking about, that the capital purchase

21    program was far more than topping off and addressed dire

22    capital problems for these banks; is that correct,

23    Professor?

24       **A.**   That's correct.  It was necessary to save the

25    financial system.  And, you know, and the banks were in

1    danger of failing.

2        **Q.**   Let's move on to Dr. Attari's criticism of your

3    FDIC analysis.  But before I do, Professor, what about

4    Dr. Attari's criticism that it wasn't realistic to think

5    that the GSEs would have just paid a zero PCF in light of,

6    say, Treasury correspondence indicating a desire to use it

7    to increase compensation paid to them?

8            **MR. HOFFMAN:**  Objection, Your Honor, outside the

9    scope of his opinion.

10           **MR. KAPLAN:**  Outside the scope -- I'm sorry.  I

11   interrupted you, Counsel.  Go ahead.

12           **MR. HOFFMAN:**  I can be heard on this Your Honor

13   over the phones.

14           **THE COURT:**  All right.

15       (Sidebar discussion)

16           **MR. HOFFMAN:**  Your Honor, Ian Hoffman on behalf of

17   the defendants.

18           I'm looking at Professor Thakor's deposition

19   testimony, and he very clearly testifies that he is not

20   offering an opinion as to what Treasury would have concluded

21   the PCF should have been in the actual world.  He says,

22   "This is not part of the scope of my analysis as to, you

23   know, what Treasury would have done."

24           Rather his opinion is that, in the abstract, he

25   believes that an appropriate fee would be zero.  But he was

1    very clear in his deposition that he is not opining on what

2    Treasury would have done and would have set in the actual

3    world.  And that was the precise question that Mr. Kaplan

4    just asked him.

5          **MR. KAPLAN:**  That was not the precise question

6    that I asked him.  I asked him his reaction to the

7    testimony.  And he was not going to -- he is not going to

8    opine on what Treasury would have done.  That's not what

9    he's going to talk about.

10         **MR. HOFFMAN:**  Your Honor, I'm looking at the

11   question.  It's "What about Dr. Attari's criticism that it

12   wasn't realistic to think that the GSEs would have just paid

13   zero PCF in light of, say, Treasury correspondence

14   indicating a desire to use it to increase compensation paid

15   to them?"

16         If Dr. Thakor wanted to rebut Dr. Attari's opinion

17   on this, he could have done so in expert discovery.

18   Instead, in his second late last deposition, he stated,

19   again, that he has no opinion on what Treasury would have

20   concluded, that, in the real world, that it would have been

21   zero.

22         **MR. KAPLAN:**  Your Honor, Mr. Hoffman is completely

23   wrong about Professor Thakor is going to be responding

24   directly to what Dr. Attari said.  It is not going to be

25   about Treasury.  It's not going to be outside the scope of

1    his prior opinion.

2              They use the Treasury correspondence.  They

3    alluded to the Treasury correspondence.  And the point is

4    going to be that the -- the point is not going to be about

5    what Treasury would have done.  The point is going to be

6    about explaining that he also offered testimony as to what

7    the maximum reasonable PCF that could even possibly have

8    been justified would have been.  That is well within the

9    scope of his testimony and that is what he is going to say.

10            **MR. HOFFMAN:**  Your Honor, it was simply

11   undisclosed in discovery and disclaimed.

12            **MR. KAPLAN:**  Undisclosed?  His 45 basis point FDIC

13   analysis, which is what he's about to talk about, was

14   precisely in his report, in his rebuttal report, and it's

15   what he testified to on direct.  He's just addressing

16   Dr. Attari's criticisms of the FDIC analysis.  That's where

17   he's going to go.

18            **THE COURT:**  The objection is overruled.

19       (Sidebar discussion concluded)

20   **BY MR. KAPLAN:**

21       **Q.**   Let me rephrase the question, Professor Thakor.

22   What was the point of the second part of your analysis

23   involving the FDIC?

24       **A.**   The point of the second part of my analysis was

25   that, if you want to put aside -- you know, from an all-in

1    cost basis, I opined on what the PCF should be.  But if you

2    just wanted to focus narrowly on the PCF in isolation, as

3    the price of the promise that Treasury was making to the

4    GSEs, that a good analogy, a good comparison would be with

5    FDIC deposit insurance because, just like Treasury gave a

6    promise to the GSEs to let them take down the undrawn

7    portion of the commitment when they needed the funds, the

8    FDIC makes a promise to banks that, if they need to come to

9    the FDIC to meet a shortfall in their ability to meet

10   deposit withdrawals, the FDIC stands ready to help them out.

11   So that's a promise as well.

12        And based on that analysis, I showed that a

13   maximum 45 business point PCF would be justified if you --

14   for whatever -- you know, for legal or other reasons, a

15   positive PCF was needed.  So that was the point of the

16   analysis that I did with the FDIC in terms of comparing the

17   promised part of the FDIC, which is to ensure a certain

18   amount of deposits of a bank and the promise of Treasury to

19   let these GSEs take down this undrawn portion of the

20   commitment.

21     Q.   So is it fair to say, Professor, that the 45 basis

22   point number is the maximum fee that you, in your opinion,

23   could reasonably have been justified assuming a PCF was

24   either required or that it just is unrealistic to expect

25   that a zero one would have been charged?

1        **A.**   Correct.  I actually looked at the data.  I took

2    this additional step beyond just looking at what's posted on

3    the FDIC website.  And I said, Let's look at the nine

4    largest most complex banking organizations in the country.

5        **Q.**   Professor, I'm sorry.  I just want to focus this

6    on what Dr. Attari said.  And so is it fair to say he

7    disagreed with your FDIC analysis?

8        **A.**   Yeah.  He -- I think he made a mistake in

9    interpreting my FDIC analysis.  And what he presented here

10   on direct in terms of using the FDIC analysis to infer PCF,

11   I completely disagree with.

12       **Q.**   Okay.  So what do you disagree with about his

13   response to your analysis?

14       **A.**   Well, so he said, look, the FDIC's assessment base

15   is total assets minus tangible equity.  So it's the total

16   liabilities of the corporation.  Then he applies the 45

17   business points to those total liabilities.  That's wrong on

18   two counts.  Okay?

19           Number one, I never said that Treasury's ensuring

20   all of the liabilities of the GSEs.  That's just wrong.

21   They're not.  They were just promising that they could take

22   down the undrawn portion of the commitment.

23           But more importantly or just as importantly, the

24   FDIC has a whole series of adjustments that they apply that

25   he did not talk about that I mention in my rebuttal report.

1       And then you get down to whatever it is that they assess as

2       the premium.

3               So what I did was something very simple.  I just

4       went to these nine largest most complex institutions.  I

5       looked at what they paid or they would have paid in 2012

6       as -- what they paid in 2012 as a deposit insurance premium

7       in that time period.

8               And then I looked at what were the insured

9       deposits.  If I paid a dollar in premium and I had $100 in

10      insured deposits, then the premium was 1 percent of insured

11      deposits.

12              That analysis tells us that the ranges between 13

13      and 43 business points.  So it's even less than 45 business

14      points and the average is 23 business points.  So that was a

15      very simple extra step that I took to make the analysis

16      comparable to what I was doing with the GSEs.

17      **Q.**   So even though the FDIC calculates fees using a

18      base of total liabilities, you determined what, in practice,

19      banks end up paying as a percentage of their insured

20      deposits; is that correct?

21      **A.**   Exactly.  Exactly.  That was the easiest way to

22      get to a valid comparison between the deposit insurance

23      premium paid by these large institutions and, for my

24      purposes, what that implied about the PCF that Treasury

25      would charge the GSEs if they were pricing the promise in a

1   similar way.

2       Q.   Did he address -- did Dr. Attari address that

3   aspect of your analysis at all, Professor?

4       A.   No, he did not.

5       Q.   Do you recall Mr. Kravetz asking him about it on

6   cross-examination?

7       A.   Yes, I do.

8       Q.   What did he say in response?

9       A.   He said, I do not understand the question.

10          MR. KAPLAN:   Could we please have Professor

11  Thakor's Slide 44, Kevin?  Sorry.  One before that.  Yes.

12  BY MR. KAPLAN:

13      Q.   Am I correct, Professor, that, in your direct, you

14  also talked about a comparator of the federal government's

15  standing commitment to the FDIC?

16      A.   That's correct.

17      Q.   Did Dr. Attari address that at all in his direct

18  examination or his cross?

19      A.   Not that I can recall.

20      Q.   Professor Thakor, amidst the criticisms that

21  Dr. Attari leveled, did hear him put forth his own

22  calculation of what a "substantial fee" would be?

23      A.   No, he did not.

24      Q.   In your review of the record, did anyone at the

25  GSEs Treasury or FHFA conduct such an analysis?

1        **A.**   No, they did not.

2        **Q.**   Did Dr. Attari suggest any market comparators you

3    should have looked at but did not?

4        **A.**   No, he did not.

5        **Q.**   Professor Thakor, who is the only person in this

6    case that you know of who has conducted a market-based fee

7    analysis?

8        **A.**   I have.

9        **Q.**   Based on your decades of experience in the field

10   studying financial compensation, your prolific scholarship,

11   your expertise in the financial crisis, what is your

12   bottom-line opinion as to the maximum PCF that could

13   conceivably have been justified assuming one was imposed?

14       **A.**   It should be 45 business points, as I indicated in

15   my report and testimony.

16           **MR. KAPLAN:**  Can we have Thakor Slides 46 and 47,

17   please?

18   **BY MR. KAPLAN:**

19       **Q.**   How did that compare to what was taken in the net

20   worth sweep?

21       **A.**   Right.  So if you just look at 2013 and in excess

22   of the 10 percent preferred stock dividend that the GSEs

23   paid --

24           **MR. HOFFMAN:**  Your Honor, if I may object.  This

25   is beyond the scope of his disclosed opinion and also beyond

1    the scope of Dr. Attari's direct.

2              **THE COURT:**  Sustained.

3              **MR. KAPLAN:**  Thank you, Professor.  I don't have

4    any further questions.

5              **THE WITNESS:**  Thank you.

6              **CROSS-EXAMINATION OF ANJAN THAKOR**

7    **BY MR. HOFFMAN:**

8         **Q.**   Good morning, Professor Thakor.

9         **A.**   Good morning.

10        **Q.**   I'm not going to ask you questions about your

11   primary opinion, which is that the PCF would have been zero

12   dollars and zero cents.  That's your primary opinion.

13   Right?

14        **A.**   Well, that's part of my opinions.  But as I

15   indicated in my testimony, that's if you look at everything

16   on an all-in cost basis.  But if you want to focus solely on

17   the PCF, then it's 45 business points.

18        **Q.**   Okay.  So your first opinion is that it should be

19   zero dollars and zero cents; yes or no?

20        **A.**   If you look -- as I indicated, if you look at this

21   on an all-in cost basis, then Treasury was fully compensated

22   without a PCF.  But if you -- if a positive PCF has to be

23   calculated, then it's 45 business points.

24        **Q.**   And you heard Dr. Attari testify, and he has

25   various disagreements with both your zero PCF opinion as

1   well as your 45 basis points opinion; is that right?

2       **A.**   Yes.

3       **Q.**   Okay.  So let's talk about your 45 basis points

4   opinion?

5       **A.**   Uh-huh.

6       **Q.**   And so let's --

7            **MR. HOFFMAN:**   Mr. Salazar, pull up the first slide

8   here.

9   **BY MR. HOFFMAN:**

10      **Q.**   So this is the calculation that's pulled from your

11  presentation that you displayed on your direct testimony.

12  Right?

13      **A.**   Correct.

14      **Q.**   And so your calculation is that an appropriate

15  periodic commitment fee would be 45 basis points, and that's

16  the first little number here on the far left.  Right?

17      **A.**   Correct.

18      **Q.**   Multiplied against the total amount of the undrawn

19  commitment for both GSEs, and you've calculated that here at

20  258.  Right?

21      **A.**   That's correct.

22      **Q.**   And you multiply those together.  You get 1.16

23  billion?

24      **A.**   Correct.

25      **Q.**   That's per year.  Right?

1      A.   That's correct.

2      Q.   For both GSEs combined?

3      A.   Yes.

4      Q.   Okay.  And, again, I'm going to avoid the various

5  disagreements here about what the appropriate base is.  But

6  you understand that Dr. Attari and you have a disagreement

7  as to whether the appropriate basis, the amount of the

8  undrawn commitment for the GSEs as opposed to the total

9  liabilities for the GSEs.  Right?

10     A.   Treasury is not insuring the total liabilities.

11     Q.   I'm just asking if -- I'm just asking if that's

12 your point of disagreement?

13     A.   Yeah.  Because he ignores all of the adjustments

14 as I mentioned earlier.  So that's a mistake in the way that

15 he did the analysis.

16          MR. HOFFMAN:   Okay.  So let's go to the next

17 slide, Mr. Salazar.

18 BY MR. HOFFMAN:

19     Q.   This is also from your direct presentation.

20 Right?  So in your opinion, it would be 11.6 billion over 10

21 years for the GSEs, this PCF fee.  Right?

22     A.   Correct.

23     Q.   Okay.  Now, do you know how the PCF breaks down

24 between Fannie and Freddie, this 11.6 billion?

25     A.   I have to go back and check.  Fannie had about

1    114, 115 billion undrawn commitment at the time.  I think

2    Freddie had maybe 140.  So, you know, we can do the

3    proportional math.

4         **Q.**   Well, I'll try to help you out here.

5              **MR. HOFFMAN:**  Mr. Salazar, you can go to the next

6    slide.

7    **BY MR. HOFFMAN:**

8         **Q.**   Professor Thakor, you tell me if this is right or

9    not.  I've broken it down here as to what the amount of

10   undrawn commitment remaining for each.  So I think you were

11   pretty close, actually.

12             So the second bar here is 117.6 billion.  It was

13   the undrawn commitment for Fannie Mae starting in 2013; is

14   that right?

15        **A.**   That seems right, yes.

16        **Q.**   And so for Freddie Mac, the undrawn commitment

17   starting in 2013 was 140.5 billion; is that right?

18        **A.**   Correct.

19        **Q.**   So the way that 1.16 billion breaks down per year

20   Fannie Mae, in your opinion, the PCF would be charged 530

21   million per year, and Freddie Mac the PCF would be charged

22   at 630 million per year; is that right?

23        **A.**   You know, I haven't done the math so, with the

24   qualification that the math is right, I'll take your word

25   for it.

1          Q.   Okay.  And over 10 years, that would mean 5.3

2     billion would be paid to Treasury from Fannie Mae for the

3     PCF; is that right?

4          A.   I think that's right, yes.

5          Q.   Assuming my calculations are right?

6          A.   I think I can multiply by 10, yes.

7          Q.   I think I can do that much as well.  And the same

8     for Freddie Mac, Professor Thakor.  It would be 6.3 billion

9     over 10 years for the PCF, under your calculations, for

10    Freddie Mac; is that right?

11         A.   Yes.

12         Q.   Now, you've been in court for much of this case.

13    Right?

14         A.   Not all throughout.  I was here last week and then

15    I was here for a couple of days the week before.

16         Q.   You've seen the various iterations of the Dave

17    Benson Fannie Mae projections.  Right?

18         A.   Yes.

19         MR. KAPLAN:  Objection, Your Honor.  The Benson

20    projections are far beyond the scope of Professor Thakor's

21    testimony.

22         THE COURT:  Overruled.

23         MR. HOFFMAN:  So let's take a look, Mr. Salazar,

24    at the next slide.

25

2424

1    BY MR. HOFFMAN:

2        Q.    So these are the -- do you recognize these as the

3    Dave Benson projections, right, that we've been looking at,

4    one iteration of them at least?

5        A.    I don't recall.  I mean, I looked at a lot of

6    documents.

7        Q.    Okay.  So I'll represent to you that these are

8    the -- this is PX-218, which is the final version that went

9    to the board of directors from the Dave Benson projections.

10        Now you see the, for Fannie Mae -- Fannie Mae is

11    on top, right, and Freddie Mac is on the bottom?

12        A.    Yes.

13        Q.    And for Fannie Mae, Fannie Mae's Dave Benson

14    projections were projecting that by 2022, as a result of the

15    10 percent dividend alone, Fannie Mae would have zero

16    residual equity.  Do you see that?  It's on the far right.

17    It's in that little red circle on the top.

18        A.    You're looking at Fannie.

19        Q.    That's right.

20        A.    Yeah.

21        Q.    So even without a PCF, they would have -- Fannie

22    Mae was projecting zero net worth by 2022.  Right?

23        A.    Okay.

24        Q.    And if the PCF would have been set in 2013 under

25    your calculations, it would have cost Fannie Mae an

1      additional 5.3 billion over this same time period.  Right?

2          **A.**   Well, but these are -- these are projections --

3      when were these projections made?

4          **Q.**   July of 2012.  And my question is, for Fannie

5      Mae -- I mean, we can go back on the slides.  But your

6      testimony is that, for Fannie Mae, over ten years the PCF in

7      your opinion would be imposed and it would be imposed at

8      $5.3 billion over the 10 years.  Right?

9          **A.**   Right.  No, the reason why I asked when the

10     projections were made is that, of course, with the passage

11     of time these projections changed.  Right?  The housing

12     market was getting stronger throughout 2012.  And the

13     forward-looking projections of what would happen in 2013,

14     '14, '15, and '16, those things were being rapidly revised.

15     And we know what happened in 2013.

16          **MR. KAPLAN:**  Your Honor, may we be heard on the

17     phone briefly?

18          **THE COURT:**  Yes.

19          (Sidebar discussion)

20          **MR. KAPLAN:**   Your Honor, Sam Kaplan for the

21     plaintiffs.  This is completely inappropriate in

22     cross-examination.  This was not -- Dr. Thakor has never

23     addressed the Benson projections.  His opinion in this case

24     has always been about what an appropriate PCF would have

25     been.

1          This is the type of argument that they can make in

2     closing argument.  It is not appropriate on cross when all

3     he's doing is responding to Dr. Attari and doing something

4     even more narrow than he did on his -- in his original

5     direct testimony.

6          **MR. HOFFMAN:**  Your Honor, Ian Hoffman on behalf of

7     the defendants.

8          As the slide indicates, Your Honor, I am simply

9     applying Dr. Thakor's calculation, which he just testified

10    about this morning, 45 basis points, to show how it compares

11    to this evidence that has been shown to the jury many times.

12    The impact of his PCF calculations is highly relevant and is

13    within the scope here.

14         **MR. KAPLAN:**  His testimony is not about the impact

15    of the PCF.  Again, they can argue that in closing.  They

16    could have tried it with Dr. Dharan if they warranted to.

17    But it has nothing to do with Dr. Thakor's opinion.  And

18    you've heard him already.  He doesn't know anything about

19    this document.  He doesn't know about the Benson

20    projections.  It's beyond the scope.

21         **THE COURT:**  The objection is sustained.

22         (Sidebar discussion concluded)

23    **BY MR. HOFFMAN:**

24    **Q.**   Professor Thakor, I appreciate you bearing with my

25    calculations.

1          MR. HOFFMAN:  And I have no further questions.

2          THE WITNESS:  Thank you.

3          THE COURT:  All right.  Any other witnesses for

4    the plaintiffs?

5          THE WITNESS:  Sorry.

6          MR. KAPLAN:  It's okay, Anjan.  You can step down.

7          THE COURT:  You can step down.

8          MR. KAPLAN:  You can step down, Anjan.  Yes,

9    thanks.

10          MR. HUME:  Your Honor, Hamish Hume for the

11   plaintiffs.

12          The only remaining matters for the plaintiffs'

13   rebuttal case are two exhibits which were offered into

14   evidence subject to an objection, and the other judicial

15   notice point which we already submitted.

16          THE COURT:  All right.  We'll take a short recess

17   for the jury, and I'll deal with some legal matters here.

18          MR. HUME:  Sure.

19       (Jury exited the courtroom)

20          THE COURT:  You all may be seated.

21          All right.  What do we have beyond the judicial

22   notice question?

23          MR. HUME:  I believe just these two exhibits that

24   we are offering into evidence, the Moody's and Fitch reports

25   that talk about how ratings --

1          **THE COURT:**  What numbers are they?

2          **MR. HUME:**  515 and 516.  I have copies for the

3     Court and counsel.

4          **THE COURT:**  515 and 516?

5          **MR. HUME:**  Five one five and five one six.

6          I can hand a copy up, Your Honor.

7          **THE COURT:**  No, that's okay.  Let me see if there

8     are objections.

9          **MR. HOFFMAN:**  We have objections, Your Honor.

10         **THE COURT:**  Okay.

11         **MR. HUME:**  I'll make a brief proffer, Your Honor,

12    and then we can hear the objection.

13         **THE COURT:**  Okay.  What's the objection?

14         **MR. HOFFMAN:**  Good morning, Your Honor.  Ian

15    Hoffman on behalf of the defendants.

16         Your Honor, I can -- well, you have these handy.

17    I was going to offer to put them on the ELMO.

18         These are two documents which we received, I

19    believe, yesterday or within the last few days from

20    plaintiffs.  And there is no foundation laid for these

21    documents, no explanation as to what they are and what they

22    mean and their relevance to this case and they are

23    irrelevant and confusing.

24         And let me explain, Your Honor.  These appear to

25    be -- so the Moody's document, Your Honor, I'll point out is

1   dated October 3rd of 2022.  So this document is literally a

2   few weeks old.

3            There is going to be no evidence or testimony

4   explaining what this document is, what it means, where it

5   came from.  I frankly don't know where it came from.  It was

6   not produced in discovery.  There is no Bates.  I presume it

7   was pulled off the internet.

8            There will be no expert testimony to explain the

9   point that, I believe, Mr. Hume was trying to proffer that

10  there's a distinction between the types of credit ratings

11  outlooks that Moody's and Fitch give.

12           And Dr. Attari disclosed in his report that in

13  2011 Moody's had issued a newsletter or report saying that,

14  if the circular dividend problem wasn't solved, it could

15  lead to a credit rating downgrade.

16           I presume that this is trying to be offered to

17  rebut that; however, Your Honor, they never offered these --

18  no expert from plaintiffs ever offered these in expert

19  discovery, and there was no explanation as to anything, I

20  think, that Mr. Hume has been explaining as to the relevance

21  of these.  It's just never been addressed before.

22           And, again, Your Honor, these documents themselves

23  are irrelevant.  The Fitch document, in the bottom of the

24  first page indicates that it was produced in March of 2022.

25  There is no evidence that these documents -- well, there is

1    evidence that these documents did not exist a decade ago.

2    And there's not going to be any evidence that any documents

3    like this existed a decade ago or what they said or whether

4    they were the same or different.

5            You know, these are 40-page -- 40-plus-page

6    documents explaining in painstaking detail as to how each of

7    these credit ratings agencies does its assessments and

8    there's Q scores and liquidity ratings.  It could be,

9    theoretically, the subject of expert testimony, but there

10   was no expert testimony on this.

11           And so they're both irrelevant because there's no

12   apparent connection to the evidence in the case, including

13   the evidence at the time in 2011 and 2012.  And there's no

14   expert testimony to explain them.

15           And I presume that Mr. Hume is just going to

16   attempt to get up in closing and say that these documents,

17   which the jury has never seen before, disprove anything

18   about Dr. Attari's testimony.  So we'd object on foundation

19   and relevance grounds and prejudice.

20           **THE COURT:**  Okay.

21           **MR. HUME:**  Judge Lamberth, Hamish Hume for the

22   plaintiffs.

23           I do understand the timeline on this point, but

24   the relevance point is pretty clear and it's not that

25   controversial.  Professor Attari did testify about ratings

1      agencies and what they do and how ratings outlooks watch.

2              I'm being shown, for example, a slide that we

3      presented in cross-examination and his testimony.  This is

4      at page -- from Page 2098 to 99, from the October 27th trial

5      transcript.

6              He was asked about ratings watches, ratings

7      outlooks, how they work.  He gave testimony about it.  These

8      things have not changed over time.  This simple point, which

9      is on -- I can tell the Court the exact pages.  This is Page

10     29 of the Moody's document.  The simple point is that a

11     ratings outlook is an opinion regarding a likely rating

12     downgrade.  That's all they are offered for.

13             It's a simple point that, when a debt instrument,

14     a bond, is potentially going to have its credit rating

15     changed -- it's not just -- here's the simple point.  You

16     don't just go along with one rating, AAA, AAA, AAA, oops!  B

17     or whatever.  They watch, they look, and they give an

18     outlook change, and they say, looking like positive, looking

19     like negative, might be a change or stable.  That's it.

20             There's evidence in this case that defendants are

21     relying on about what these rating agencies were and were

22     not saying about the debt, the GSE debt.  Their whole case

23     is that the reason they did the net worth sweep is because

24     they were worried about the bondholders and the

25     mortgage-backed security investors having a panic.

1          And they've cherry-picked a few analyst reports

2     and one little thing by a ratings agency without addressing

3     the simple fact that there was never, ever a single change

4     to the rating, the AAA rating, of the GSEs that was based in

5     any way on the Treasury commitment.

6          You might remember, historically, in August of

7     2011, the S&P made a ratings outlook change on the U.S.

8     government debt, a stunning development in world history,

9     especially stunning because, despite that, because it sent

10    uncertainty in the marketplace the price of U.S. debt, U.S.

11    Treasury bonds went up.

12         GSE bonds were shared.  They moved and the rating

13    agencies of outlook on them moved only with U.S. sovereign

14    debt.  It was never, ever a rating agency outlook change,

15    even a potential change, even a sort of storm-clouds warning

16    of any kind.  All these documents do is show, in one or two

17    sentences, that these -- there is a process here that these

18    rating agencies go through.

19         **THE COURT:**  Well, my difficulty is these are 2022

20    documents that are irrelevant.  The objection is sustained

21    to these.

22         **MR. HUME:**  I understand that, Your Honor.  Thank

23    you.

24         **THE COURT:**  All right.  Then the only other

25    question is the judicial notice.  And I decline the request

1    to take judicial notice.  I'm not confident that it's a

2    proper thing for the Court to do as a matter of judicial

3    notice.  So if you have no other evidence, then that's the

4    rebuttal case is concluded.

5                MR. KAPLAN:  May I?

6                THE COURT:  Yes.

7                MR. KAPLAN:  Your Honor, I respect, of course,

8    that Your Honor has ruled, but may I just at lease address

9    for the record what Mr. Hume has said?

10               THE COURT:  Sure.

11               MR. KAPLAN:  I would note, Your Honor, that no

12   one, that in their opposition or a motion for judicial

13   notice, the concern of Your Honor was not in there about

14   that there's any doubt about the accuracy of the statement

15   and that there's any doubt about the records --

16               THE COURT:  I understand.  Lawyers might not have

17   the same doubts the courts have.

18               MR. KAPLAN:  Fair enough, Your Honor.

19               THE COURT:  I thought about whether or not -- I

20   have -- I think the courts can take, I think, a bill -- I

21   just don't think -- taking judicial notice of a committee

22   report is one thing, but not having a committee report or

23   not having something out of committee, I've just never heard

24   of.

25                       I'm not confident that committee records and so on

1    are adequate to -- for a court to take judicial notice that

2    a bill never got reported.  And I just -- I just don't -- I

3    don't have any confidence in committee records like that.

4           **MR. KAPLAN:**  I hear you, Your Honor.

5           **THE COURT:**  For a Court to take judicial notice of

6    those kind of things.

7           **MR. KAPLAN:**  I hear you.

8           **THE COURT:**  I really am not confident of those

9    kind of records.

10          **MR. KAPLAN:**  I understand.

11          **THE COURT:**  It's one thing to go get a statement

12   of the committee or something, but I don't know about taking

13   judicial notice of records like that.  I've seen some wild

14   things in committee records.  I will put it that way.

15          **MR. KAPLAN:**  Fair enough.

16          **THE COURT:**  I know it's down the street but

17   still --

18          **MR. KAPLAN:**  Fair enough.  I will just note

19   that --

20          **THE COURT:**  I agree and the other side argued the

21   point to me that struck me the most immediate problem for

22   what the judiciary should do with Senate and House records.

23          **MR. KAPLAN:**  Understood.  Thank you, Your Honor.

24          **THE COURT:**  All right.  With that, the plaintiffs

25   have rested their rebuttal case.  So we're ready to take

1   motions.

2            **MR. HUME:**  Yes, Your Honor.  May I just as a point

3   of order?

4            **THE COURT:**  Yes.

5            **MR. HUME:**  Hamish Hume for the plaintiffs.  We

6   rest our rebuttal case.

7            I request the Court's indulgence for a short break

8   before the closings begin?

9            **THE COURT:**  Okay.

10           **MR. HUME:**  Thank you.

11           **MR. JONES:**  Your Honor, Stanton Jones for the

12   defendants.  Defendants' Motion in Limine regarding the

13   plaintiffs' closing argument is also still pending.  So we

14   would of course seek a ruling on that before the closings

15   begin.

16           **THE COURT:**  Let's do that.

17           **MR. JONES:**  Would you like to hear argument on it?

18           **THE COURT:**  Yes.

19           **MR. JONES:**  Okay.  Great.

20           **THE COURT:**  Any you want to make?

21           **MR. JONES:**  Yeah.  So we moved in limine to

22   preclude plaintiffs in their closing argument from drawing

23   comparisons that suggest, essentially, that $1.6 billion in

24   claimed damages is some sort of bargain or pennies on the

25   dollar, as plaintiffs put it, because $1.6 billion is less

1    than other much larger numbers that the jury has heard, like

2    $33.2 billion that the enterprise shareholders paid in at

3    the time of issuance of the shares, years or decades ago.

4    Or $150 billion is larger than $1.6 billion and 150 is

5    something like the additional amount that the enterprises

6    paid in dividends under the net worth sweep.

7            Your Honor, that sort of comparison is

8    inappropriate because there is no evidence in the record

9    establishing that those other larger numbers reflect any

10   sort of harm to shareholders.

11           And of course the point of the comparison and the

12   reason that plaintiffs want to present it is to suggest

13   that -- well, shareholders were actually harmed in some much

14   larger amount, 33 billion, 150 billion.  And they

15   characterize it in their motion as essentially arguing that

16   $1.6 billion is pennies on the dollar, some sort of bargain

17   for the jury to award.

18           It's simply not supported by the evidence.  And in

19   fact, other theories of harm that would lead to a larger

20   damages award have, in fact, been excluded as a matter of

21   law of course from the summary judgment ruling.

22           **THE COURT:**  All right.

23           **MR. JONES:**  So that's the argument on -- oh, and

24   lastly, I would say the case law, including the case law

25   that plaintiffs cited in their opposition brief, and

1        especially the *Vectura* case from the federal circuit says,

2        pointblank, that this kind of pennies-on-the-dollar

3        comparison is improper in a closing argument.

4                    **THE COURT:**  All right.

5                    **MR. JONES:**  So that's the argument on that motion,

6        Your Honor.

7                    We also have objections to several of the

8        demonstrative slides or the slides that we've received just

9        this morning from the plaintiffs.  The parties agreed to

10       exchange those closing slides just this morning.  So if

11       you'd like, I could identify those as well now and then --

12                   **THE COURT:**  We can do that.

13                   **MR. JONES:**  Great.  Okay.  So I'm going off of

14       notes having just seen these for the first time within the

15       last half hour or so.

16                   Slide 161 of the plaintiffs' slides -- and they

17       are not numbered.  It's titled ownership interest and it

18       incorrectly states what the liquidation preference is about.

19       In addition, this slide, we believe, would fall under the

20       Motion in Limine that I just described in that it is

21       suggesting a comparison, suggesting that there's some harm

22       to shareholders and an inference that there should be some

23       higher damages above 1.6.

24                   Okay.  So Slide 2 purports to offer a statement of

25       the question that the jury is to decide, which we don't

1    believe is a correct statement of the question that the jury

2    is to decide for purposes of plaintiffs' implied covenant

3    claim as set forth in our proposed jury instructions.  We

4    believe that the standard is whether that conduct was

5    arbitrary or unreasonable in violation of shareholders'

6    reasonable expectations at the time of contracting.

7         Slide 24 contains a statement that a finding on

8    any one of these true facts means that plaintiffs must win.

9    We don't believe that that's a correct statement of the law.

10   There are three facts listed there.  We don't believe it is,

11   in fact, an accurate statement of the law that, if the jury

12   accepts any one of those three facts, that plaintiffs must

13   win.  That is not what we believe the jury instructions will

14   convey.

15        And then lastly, Slides 144 through 149, those

16   would all be covered by our written Motion in Limine seeking

17   to preclude the sorts of comparisons between the $1.6

18   billion and substantially larger dollar amounts for the

19   reasons that I explained.

20        **THE COURT:**  Okay.  All right.

21        **MR. JONES:**  Thank you, Your Honor.

22        **MR. HUME:**  Your Honor, Hamish Hume for the

23   plaintiffs.  To the extent any detailed argument is needed

24   on the motion on precluding us for arguing for more damages,

25   I'm suggesting that my colleague, Mr. Zagar, can address

1  that.

2          Let me just say very clearly, since I'll be doing

3  the closing.  We are not going to argue for more than 1.6

4  billion.  We are not going to suggest that 1.6 billion is a

5  bargain because we suffered so much more harm.

6          But it is relevant evidence and it's come into

7  evidence already.  They're now trying to kick stuff out of

8  evidence that's come in that, for context and for

9  shareholder expectations, which we are absolutely going to

10  talk about and we agree is part of the standard, that the

11  context, it's relevant that the shareholders invested a lot

12  of money to help the GSEs perform their public mission

13  before the conservatorship and then we are going to agree.

14          The conservatorship gave FHFA the job to act in

15  the public interest but it's context.  It's relevant

16  context.  It goes to expectations.  They invested.  There

17  was a history of dividends.  That's what happened.  Then

18  this bad thing happened.

19          They have some right, we argue, to expect that, if

20  things go well, and if they are restored, they have a right

21  to potential dividends and that's what the case is about.

22  So these are relevant points.  So on damages, that's my

23  brief summary on the first motion.

24          On the slides, I'm happy for us to just pull them

25  up and look at them with you one by one.

1          **THE COURT:**  I guess my thought is, first, the

2     appeal is -- I take it that any appeal is going to go to the

3     federal circuit here.

4          **MR. HUME:**  No, I think the appeal will go to the

5     D.C. Circuit.

6          **THE COURT:**  To the D.C. Circuit?

7          **MR. HUME:**  Yes.

8          **THE COURT:**  Okay.  Because the federal circuit

9     probably is -- they don't -- they appear to not like this

10    all pennies on the dollar argument.

11         **MR. HUME:**  I don't think there's --

12         **THE COURT:**  They're a little further out than

13    probably I am in the D.C. Circuit.

14         I think you're within the bounds of what -- as

15    long as you stick in the bounds of what you're representing.

16    So I will deny the Motion in Limine.  I think you're right

17    on the line but I don't think it's a basis for a Motion in

18    Limine.

19         **MR. HUME:**  I am actually planning to explicitly

20    tell them this is not what we're asking for in damages.

21         **THE COURT:**  Right.

22         **MR. HUME:**  I'm not showing this to you for that

23    reason.

24         **THE COURT:**  Right.

25         **MR. HUME:**  I'm showing it to you for context and

1    for expectations.

2         **THE COURT:**  Yeah.  If this was going to the

3    federal circuit, I'd be a little more worried there how they

4    would look at that.

5         **MR. HUME:**  No, Your Honor.

6         **THE COURT:**  I mean, you can't make addendum

7    arguments.  I mean, they're different things.  Different

8    courts have what you can argue, but I would be less worried

9    about this.  Okay.

10        **MR. HUME:**  I don't think there's any dispute

11   this -- any appeal would go to the D.C. Circuit as it did

12   last time.  There was that little Tucker Act claim that

13   would have taken it, but then when that was dropped it went

14   to the D.C. Circuit.

15        **THE COURT:**  Okay.  On the 24 about saying you

16   necessarily win, that would be a problem, I think.

17        **MR. HUME:**  Well, we can change the title.  We can

18   jump to 24 right now.

19        **THE COURT:**  Let me look at 24 then.

20        **MR. HUME:**  Oh, you did?  You've looked at it?

21        **THE COURT:**  I said, Let me look at it.

22        **MR. HUME:**  Yes, sorry.  We're putting it up.

23        If we can just animate it to show -- our point,

24   Your Honor, is there are three things we are arguing about

25   what happened here, a grossly inadequate process that makes

1    the decision arbitrary or unreasonable; the reason they gave

2    for why they did it, to preserve the commitment and appease

3    bondholders.

4             **THE COURT:**  All right.  That's fair to argue.

5    This is argument.  This is summary you're going to use in

6    argument?

7             **MR. HUME:**  Yes.  Can I address the other slides

8    quickly.  Can we go to Slide 2?

9             **THE COURT:**  Let's hear your motion now.  Did you

10   want to argue the Motion for Judgment?

11            **MR. JONES:**  No, Your Honor.  Our view is that we

12   already argued the Rule 58 motion orally the other day.

13            **THE COURT:**  All right.  Then it's denied.

14            **MR. JONES:**  Your Honor, then --

15            **THE COURT:**  All right.  Then we're ready to go to

16   instructions and what I have for the Court's version of the

17   instructions as of Friday night before I got all of this

18   stuff you all did this weekend, I'm going to distribute it

19   to you all now and take a short recess.  And then we can

20   come back and you can make comments on what I had from

21   Friday night and whatever comments you had now and finalize

22   them before you present the closings to the jury.

23            **MR. JONES:**  Very good, Your Honor.

24            Very briefly.  Stanton Jones for the plaintiffs.

25   On the plaintiffs' closing Slide 24, the one we were just

1    looking at, I heard Mr. Hume say that they would agree to

2    change the title?  The title that says that a finding on any

3    one of these facts means plaintiffs true facts means

4    plaintiffs must win.  Just seeking clarification.  Is Your

5    Honor's understanding that that title should change?

6              **THE COURT:**  Should win.  They can argue should

7    win.

8              **MR. JONES:**  Should win.

9              **MR. KAPLAN:**  Your Honor, I'm sorry.  I want to

10   alert the Court that we have objections to a few of their

11   slides and a motion to strike.

12             **THE COURT:**  Oh, sure.  You have some?

13             **MR. KAPLAN:**  Yeah.

14             **THE COURT:**  Let's do it now.

15             **MR. KAPLAN:**  Do it now?

16             **THE COURT:**  Yeah.

17             **MR. KAPLAN:**  Okay.  They all relate to the analyst

18   report issue in one way or the other.

19             **THE COURT:**  Okay.

20             **MR. KAPLAN:**  Two of the slides, in our view,

21   violate the scope of Your Honor's prior order.  One will

22   require Your Honor to revisit a prior decision, and I'll

23   explain why I believe that's appropriate.

24             Two of them are Slides 47 and 48, which are --

25   which are blow-ups of two analyst reports that Your Honor

1    permitted Dr. Attari to talk about for Rule 703 purposes but

2    that have not been admitted into evidence and it is not

3    appropriate to display them to the jury in a way that they

4    are planning to do.  They're not admitted for the truth of

5    the matter asserted.

6              That strikes as a straightforward.  The

7    less-straightforward one, because this is the one that will

8    require Your Honor to revisit a prior ruling, Your Honor may

9    recall that I argued a little earlier in the case against

10   certain deposition designations, one clip from Mr. Layton's

11   testimony that addressed a meeting that Credit Suisse

12   purportedly had with him with mortgage securities dealers or

13   something like that reporting what they said at the meeting.

14             This testimony, we think it is now clear now that

15   the evidence has come in, that unlike, say, if this meeting

16   had happened with Mr. DeMarco, it makes no difference that

17   it happened with Mr. Layton.  There is zero evidence that he

18   communicated what these folks told him to anyone else.

19             And it's -- and it's highly prejudicial, and we

20   think that testimony should be struck and, at a minimum,

21   they should be prevented from presenting this slide to the

22   jury.

23             **THE COURT:**  Okay.  Where are these?

24             **MR. KAPLAN:**  I'll pass it up to you, Your Honor.

25             **THE COURT:**  So these are slides that are --

1          **MR. KAPLAN:**  In the defendants' closing deck.

2          **THE COURT:**  In their --

3          **MR. KAPLAN:**  In the defendants' closing deck that

4    they disclosed to us this morning.

5          **THE COURT:**  Okay.  All right.

6          Okay.  Who wants to address that?

7          **MR. JONES:**  Thank you, Your Honor.  Stanton Jones

8    for the defendants.

9          Slide 32 in the deck is the Don Layton testimony.

10   Your Honor, as Mr. Kaplan acknowledged, I believe all of

11   this testimony was already admitted.  This was already

12   played for the jury, every word on here.

13         And so what they are asking for is, essentially,

14   for the Court to revisit the allowance or admission of this

15   testimony and to somehow strike it from the record.  It's

16   currently in the record now.  The jury has heard it as

17   part --

18         **THE COURT:**  Okay.  So that objection is overruled.

19   They can argue that's what the testimony is worth, but if

20   the testimony was read to the jury and in evidence, then you

21   can argue what you think it's worth.

22         **MR. JONES:**  Very good.

23         **THE COURT:**  What's the next one, 47?

24         **MR. JONES:**  Okay.  The other, the only

25   remaining -- 47 and 48, these are two of the analyst

1    reports.  And just to step back really quickly, there are a

2    couple of other analyst reports, not these ones, that's DX,

3    Defense Exhibit 412 and DX-529.

4            Those are analyst reports that are in evidence

5    already.  That's not these ones though.  These are, on

6    Slides 47 and 48, two additional analyst reports that, while

7    not in evidence, they were already displayed to the jury on

8    the screen.  That was done during Dr. Attari's direct

9    examination in order to explain to the jury how these

10   analyst reports informed Dr. Attari's expert opinions.

11           So they've already been displayed to the jury

12   pursuant to Rule 703, and that was done over the plaintiffs'

13   objection to displaying those to the jury.  So I believe

14   that this one as well, similar to the last one, is also

15   effectively a motion to reconsider Your Honor's prior ruling

16   that allowed these analyst reports to be displayed to the

17   jury.

18           **THE COURT:**  These are both relied on by Dr. Attari

19   in reaching his opinions.

20           **MR. JONES:**  Correct.  That was the testimony, Your

21   Honor, and that was the purpose for us displaying them.

22           **THE COURT:**  So the objections to those will be

23   overruled as well.

24           **MR. JONES:**  Thank you.

25           **THE COURT:**  Okay.

1          **MR. GLUCK:**  Your Honor, Richard Gluck for the

2     plaintiffs.

3          In light of the Court's ruling, we submitted last

4     night a proposed instruction on -- a limiting instruction

5     for the use of the analyst reports that it is consistent

6     with what the Court decided --

7          **THE COURT:**  Right.  Okay.  I'll take those when I

8     come back.

9          **MR. GLUCK:**  We do also have one that the parties

10    have agreed should also be given.

11         **THE COURT:**  Okay.  All right.  I'll make a quick

12    copy of Friday night's thing to let you all look at it

13    before I come back then.  Are you all still on track for two

14    hours each for closings?

15         **MR. HUME:**  Your Honor, we spoke this morning --

16    Hamish Hume for the plaintiffs.  We spoke this morning.  We

17    have -- I can't be certain how long it will be, but it's

18    going to be at least two hours, I think.  So it's going to

19    be --

20         **MR. STERN:**  May I have the Court's indulgence --

21         **MR. HUME:**  All of it together, yes.  I am

22    including my rebuttal.  I think we shoot for that --

23         **THE COURT:**  Okay.  So likely, what I'm trying to

24    think of is the jury has informed me they definitely want to

25    leave by 5 for trick or treating with their kids.  So likely

1    then the -- I may want to let the jury go to lunch early and

2    the instructions will have to be tomorrow morning because we

3    will likely not -- that way we could still get through

4    closings today.  The other option would be to -- well, we'll

5    see.

6            **MR. STERN:**  Your Honor --

7            **THE COURT:**  Part of it depends on how long you all

8    are going to take to get through the objections to the

9    closing -- instructions.

10           **MR. STERN:**  Your Honor, my only concern is that,

11   if we start today, we end today.

12           **THE COURT:**  Right.

13           **MR. STERN:**  What I'd like to avoid -- I'm sure the

14   Court knows this but just for the record, I don't care where

15   lunch falls in all of this, but I would like to avoid a

16   scenario where Mr. Hume gives his opening and closing, I

17   give my closing and then the jury goes home.  The only thing

18   they hear tomorrow is the rebuttal closing.  I think that

19   would be unfair.

20           **THE COURT:**  I agree.  I agree.

21           Well, let's see how much time we need on

22   instructions.

23           **MR. STERN:**  To confirm, Your Honor, I apologize.

24   I think I'll be in the range of two hours also.

25           **DEPUTY CLERK:**  All rise.  This court will stand in

1     brief recess.

2          (Recess)

3          **THE COURT:**  All right.  First, I would like to

4     state some reasons for my denying the defendants' motions

5     for judgment as a matter of law and for denying the motion

6     for decertification of the class.

7          Defendants' motions for judgment as a matter of

8     law and decertification of the classes are denied.  As

9     plaintiffs' argued and as I indicated on the record, I agree

10    that the plaintiffs' -- both of these motions misunderstand

11    the theory of harm that I allowed to proceed to trial in the

12    summary judgment opinion under the lost value theory of harm

13    that plaintiffs have taken to trial.

14         The drop in the stock price is not itself the

15    alleged injury.  The alleged injury is that the net worth

16    sweep effectively eliminated the dividend rights that came

17    with the shares as they were originally issued.

18         In other words, when someone buys a share in a

19    company, they're purchasing a bundle of rights.  And

20    plaintiffs are arguing here that the net worth sweep removed

21    one of the most valuable sticks from that bundle.  That's a

22    type of claim that travels with the shares, so there's not a

23    proof problem that would justify a judgment as a matter of

24    law.  And there's no reason to decertify the class.

25         The drop in stock prices is just a measure of

1    damages if plaintiffs have developed the expert testimony on

2    an alternate measure before the close of discovery, they

3    might have been permitted to seek a measure other than the

4    drop in the stock prices.  But as it turns out, that's what

5    developed at the trial is the measure of damages, and

6    they'll be allowed to proceed to the trial on that theory.

7            The Court has distributed to counsel a summary of

8    the Court's changes to the proposed jury instructions it had

9    received as of Friday and the Court's final draft

10   instructions as of Friday night.

11           The Court has some other changes its received in

12   the meantime, two received from plaintiffs this morning.

13   And I think there are some others as well.  I know there's

14   one on the prejudgment interest from the defendants that

15   looked to me that it was in more detail than is necessary.

16   If you look at what I have in the instructions on the

17   prejudgment interests, it looked adequate as I had it.

18           But any other objections, I've distributed to you

19   all what I had on final instructions.  And any other

20   objections you all want to put on the record now to the

21   instructions or any additional instructions, I am certainly

22   happy to consider.

23           As to the two on deposition excerpts and analyst

24   reports that the plaintiffs submitted this morning, was

25   there any objection to either of those from defendants?

1          **MR. JONES:**  Your Honor, the instruction about the

2     deposition videos, there's no objection to that one.  That

3     was agreed upon by the parties already.

4          Defendants do object to the instruction about the

5     analyst reports, Your Honor.  If you'd like, I can present

6     argument on that.

7          **THE COURT:**  Okay.  You can argue that.

8          **MR. JONES:**  Sure.  So as I recall, the first

9     sentence of that instruction states that the jury could only

10    consider the two analyst reports that were admitted into

11    evidence.  That's DX-412 and 529.  It states that the jury

12    could only consider those for a limited purpose.  But, Your

13    Honor, those exhibits were already admitted into evidence

14    without qualification over plaintiffs' objection to them.

15    And so there was no limiting factor.

16         In the Motion in Limine decision, the Court ruled

17    that the defendants could put in analyst reports if there

18    was evidence supporting that FHFA received and considered

19    them as a part of the decision-making process leading to the

20    Third Amendment.  And that was the case for both of those

21    documents.

22         I believe DX-412 begins with an email from

23    Mr. Ugoletti to Mr. DeMarco attaching the relevant analyst

24    report so, obviously, the evidence that he received it.  And

25    the second document of DX-529 similarly has a cover meeting

1   that's a meeting agenda that shows that that analyst report

2   was discussed at a meeting that on the face of the meeting

3   notes Mr. DeMarco and Mr. Ugoletti attended.

4          So there is evidence, we believe direct evidence

5   in the record, but at least circumstantial, that those two

6   analyst reports, DX-412 and 529, were received and

7   considered by the relevant FHFA decision makers leading to

8   the Third Amendment.

9          The other piece of the plaintiffs' proposed

10  instruction, Your Honor, the second sentence pertains to

11  other analyst reports that were not admitted into evidence

12  and that will not be going back to the jury room because

13  they aren't in evidence.  We don't believe that there is any

14  need or basis for the Court to instruct the jury about those

15  at all.

16         They were displayed for the jury pursuant to Rule

17  703, again, over plaintiffs' objection.  They're not in

18  evidence.  The jury will not have them in the jury room so

19  we believe there isn't any basis for instructing the jury

20  about them.

21         **MR. GLUCK:**  Your Honor, Richard Gluck for the

22  plaintiffs.

23         Two points.  The Court allowed -- we filed a

24  Motion in Limine, as the Court's aware, on analyst reports.

25  And the Court allowed them to come in and said they weren't

1    hearsay to the extent that they were used and considered by

2    the defendants in making their decision, and therefore the

3    purpose for which they would be admitted was the effect on

4    the reader.

5            This instruction -- but we understood the Court

6    not to be saying that they could be admitted for any other

7    purpose, including for the truth of what was stated in

8    those.

9            This instruction is completely consistent with the

10   Court's ruling on the Motion in Limine by telling the jury

11   they can't consider it for the truth and they can only

12   consider it if they find that somebody at FHFA actually

13   relied on it or considered it in making their decision.

14           Similarly, with the analyst reports that were only

15   shown as demonstratives because Dr. Attari had relied on

16   them, again, all we are asking the Court to do is to

17   instruct the jury that they can't consider those analyst

18   reports for the truth of what's in them but only for the

19   fact that Dr. Attari relied on them and considered them in

20   forming his opinion.

21           So we think this is a very fair limited

22   instruction given the limited purpose for which the analyst

23   reports were admitted under the Court's rulings.

24           **MR. JONES:**  Your Honor, just very briefly.

25           On the first two exhibits, DX-412 and 529, again,

1    those are in evidence without qualification.  I have the

2    Court's Motion in Limine ruling here.  And what the Court

3    ruled in response to the Motion in Limine was those analyst

4    reports were being offered into evidence for the truth of

5    the matter asserted and that that would only be permitted if

6    defendants established that those items were received and

7    considered by the FHFA decision-makers; and that is what we

8    proved.

9         On the other two that are not in evidence, the

10   ones that were considered by Dr. Attari, again, we don't

11   believe that an instruction is necessary because they are

12   not in evidence.  And in the closing argument they would be

13   presented, consistent with the closing slides that we just

14   looked at to demonstrate that those were analyst reports

15   that were considered as part of Dr. Attari's opinion.

16        **THE COURT:**  All right.

17        **MR. GLUCK:**  May I just speak briefly?

18        **THE COURT:**  The Court will not give the analyst

19   instruction -- request.  I'll insert the deposition request.

20        All right.  What other instruction requests are

21   there?

22        **MR. GLUCK:**  Thank you, Your Honor.  Mr. Gluck for

23   the plaintiffs.

24        We have a couple of points we'd like to make about

25   the Court's instructions.  First, the Court's instruction

1    about the plaintiffs' shareholder contracts.  We don't

2    object to an instruction being given on plaintiffs'

3    shareholder contracts, but we believe that the Court's

4    proposed instruction is inconsistent with the description of

5    the plaintiffs' shareholder contracts that the Court gave

6    the jury in the preliminary statement.

7             In particular, it took out the language -- which

8    the corporation -- it talks about the bylaws and changes in

9    law being used to amend or inform the shareholders'

10   contracts; that is what the jury was already instructed.

11   And this version changes that.

12            So we actually prepared a -- we took the

13   defendants' proposed instruction, and we conformed it to the

14   language that is consistent with what the Court instructed

15   in the preliminary statement at the outset of the case.  And

16   I'd be happy to hand up that version --

17            **THE COURT:**  Okay.

18            **MR. GLUCK:**   -- and I can give the defendants a

19   copy.

20            **THE COURT:**  Okay.

21            **MR. GLUCK:**  We would ask the Court to review that

22   and give that alternative version of the defendants'

23   instruction, rather than the one that is reflected in the

24   Court's current plan.  I'd be happy to hand this up to your

25   clerk.

1          **THE COURT:**  Okay.

2          **MR. GLUCK:**  Also, Your Honor --

3          **THE COURT:**  Wait just a minute.

4          **MR. GLUCK:**  I'm sorry.

5          **THE COURT:**  Okay.  Go ahead.

6          This would go where in the -- what paragraph would

7   this be?

8          **MR. GLUCK:**  Your Honor, what we would propose is

9   replacing -- it's Instruction 23 in the Court's handout.

10          **THE COURT:**  Right.

11          **MR. GLUCK:**  Replacing that with what I've handed

12   up.

13          **THE COURT:**  Okay.

14          **MR. GLUCK:**  Again, you'll notice it follows the

15   same format as the Court's 23.  It just changes some of the

16   wording to be completely consistent with the prior

17   instruction that the Court has given.

18          **THE COURT:**  Okay.  And then you want to change 24.

19          **MR. GLUCK:**  I'm sorry?

20          **THE COURT:**  Then you want to change 24?

21          **MR. GLUCK:**  Yes, but only in one sense.

22          **THE COURT:**  Okay.

23          **MR. GLUCK:**  As the Court knows, and might recall,

24   the defendants' counsel during opening statement repeatedly

25   emphasized to the jury that HERA granted the FHFA with broad

1    authority to act in the best interest of itself, the GSE or

2    the public, and essentially didn't have to consider the

3    shareholder interest.  And this is a theme, an argument,

4    that the defendants' been making for about nine years now.

5            And this Court has written extensively on that and

6    has made very plain, most recently in its summary judgment

7    ruling, that just because HERA permits the conservator to

8    act in its own best interest, the FHFA -- doesn't mean they

9    can do whatever it wants and plaintiff could expect

10   otherwise.

11           And the Court had said on two occasions, both in

12   its Motion to Dismiss, Opinion and in summary judgment that

13   the question is whether defendants exercised their

14   discretion arbitrarily or unreasonably in a way that

15   frustrated plaintiffs' expectations under the contract.

16           We think that is a very important principle that

17   needs to be articulated clearly for this jury, because we

18   expect, as he did in his opening, that counsel for the

19   defendants is going to stand before this jury and

20   essentially tell the jury in sum and substance because of

21   HERA, FHFA could do whatever the heck it wanted, and

22   plaintiffs can't complain about it.

23           So we think that is of critical importance that

24   that sentence and principle be added to the instruction.

25           **THE COURT:**  So what's your proposal?

1          **MR. GLUCK:**  I'd be -- in our proposed instruction,

2     Your Honor, which was Instruction 31, we had a -- in the

3     second page, the second-to-last paragraph, we had a sentence

4     that read similarly, While the Housing and Economic Recovery

5     Act, authorized the FHFA to act in the best interest of the

6     GSEs, the FHFA or the public, the FHFA's exercise of that

7     statutory authority, violated the implied covenant of good

8     faith and fair dealing, if it arbitrarily or reasonably

9     deprived plaintiffs of the possibility of receiving future

10    dividends, thereby frustrating the fruits of the bargain

11    that the plaintiffs reasonably expected.  And that's at ECF

12    224-2.

13         So we would request, Your Honor, that the Court

14    give some -- either that statement itself or some version of

15    that, which would be entirely consistent with this Court's

16    prior rulings at both Motion to Dismiss and most recently in

17    its summary judgment order.

18         And then we just had a couple of, I think,

19    agreed-upon changes.

20          **THE COURT:**  Okay.

21          **MR. GLUCK:**  One is -- I'm looking for the number.

22    But in the Paragraph 18 or Instruction 18 about expert

23    witnesses, it right now identifies Dr. Attari as someone who

24    testified.  And as the Court will recall, Dr. Attari ended

25    up not testifying.  So we -- I think the defendants join in

1    requesting that that language -- or that identification of

2    Dr. Attari be removed.

3         And then one other point that I think we have

4    agreement with defendants, is that under damages, I think

5    both sides have agreed to have the paragraph about nominal

6    damages removed.  And that would affect both the instruction

7    itself and also the verdict form.  And again that, I

8    believe, is an agreed-upon change.

9         And I believe, Your Honor, with that, I think that

10   is -- if I can make sure I haven't forgotten anything.  See

11   if any of my colleagues are giving me dirty looks.

12        I think, Your Honor, those are the only objections

13   or proposed modifications that the plaintiffs would offer at

14   this point.

15             **THE COURT:**  All right.

16             **MR. JONES:**  Your Honor, Stanton Jones for the --

17             **THE COURT:**  Give me just a moment.

18             **MR. JONES:**  Sure.  Just let me know what you are

19   ready.

20        (Brief pause)

21             **THE COURT:**  Okay.  Go ahead

22             **MR. JONES:**  Thank you, Your Honor.

23        A couple of quick ones.  So on instruction number

24   18, this is the one about the experts.  We also agree

25   Dr. Attari did not testify.  So his name should be removed

1   as one of the identified experts that the jury heard from.

2            **THE COURT:**  All right.

3            **MR. JONES:**  Likewise, on instruction number 26

4   regarding damages, we do agree with striking the reference

5   to nominal damages.

6            **THE COURT:**  Okay.

7            **MR. JONES:**  So those are two changes that the

8   plaintiffs mentioned that the defendants are in agreement

9   on.

10           **THE COURT:**  Okay.

11           **MR. JONES:**  For others, we are in disagreement,

12  and have a couple points of our own.

13           So starting with no 23, this is the instruction

14  about the plaintiffs shareholder contracts with Fannie and

15  Freddie.

16           **THE COURT:**  Right.

17           **MR. JONES:**  I think we would be okay with the

18  revision that the plaintiffs have made here with one -- if

19  we could put back one sentence or concept that was in Your

20  Honor's original.

21           And this is really focusing on the final paragraph

22  of this instruction that begins third.  And that last

23  sentence says, For instance, changes to the law that affect

24  the governance of the GSEs and their relationships with

25  shareholders amend or inform the shareholder contracts.

1              **THE COURT:**  I'm sorry.  Where are you reading

2     from?

3              **MR. JONES:**  The very last sentence of the -- of

4     plaintiffs' new proposed instruction number 23, which they

5     just handed up to you.

6              **THE COURT:**  Right.  Okay.

7              **MR. JONES:**  That last sentence ends with, those

8     changes to the law amend or inform the shareholder

9     contracts; that was a slight adjustment the plaintiffs want

10    from the version Your Honor had.

11             **THE COURT:**  Right.

12             **MR. JONES:**  That would be acceptable to us if the

13    Court would add the Housing and Economic Recovery Act, HERA,

14    is one such law that amended and informed the plaintiffs'

15    shareholder contracts here, which is a concept that was in

16    the prior version.

17        (Brief pause)

18             **THE COURT:**  If that change were made, would

19    plaintiffs be satisfied with 23?

20             **MR. KAPLAN:**  I was discussing one change with

21    Mr. Jones that I will now talk about with my colleagues

22    briefly.

23             **THE COURT:**  I'm sorry?

24             **MR. KAPLAN:**  I was just discussing one change with

25    Mr. Jones that I will now discuss with my colleagues.

1        **MR. GLUCK:**  Your Honor, I -- that change is

2   acceptable with us with one minor exception, which I think

3   the defendants have agreed to.  Instead of saying, "amended

4   and informed," it would be, "amended or informed."

5        **THE COURT:**  I couldn't hear you.

6        **MR. GLUCK:**  I'm sorry, Your Honor.

7        We are okay with the added sentence about HERA, if

8   it would read that HERA is one such law that amended or

9   informed, rather than amended and informed.

10        **THE COURT:**  Amended and informed?

11        **MR. GLUCK:**  I'm sorry.  It would be amended or

12   informed the plaintiffs' shareholder contracts.

13        **THE COURT:**  Okay.

14        **MR. GLUCK:**  But with that change, we're okay with

15   that added sentence.

16        **THE COURT:**  And that would substitute for what I

17   had as 23?

18        **MR. GLUCK:**  That's correct, Your Honor.

19        **THE COURT:**  All right.  And then in 24, what's the

20   defendants' position regarding what the plaintiffs want

21   instead to 24?

22        **MR. JONES:**  So the defendants' position is what

23   the plaintiffs have proposed adding there, is inappropriate

24   and we, in fact, propose something different.

25        **THE COURT:**  Okay.

1        **MR. JONES:**  So I'm focused now on the

2   second-to-last paragraph --

3        **THE COURT:**  Right.

4        **MR. JONES:**   -- of instruction number 24, which

5   begins with, "in assessing reasonable expectations were

6   under the contracts in this case."

7        **THE COURT:**  Right.

8        **MR. JONES:**  It correctly states now that HERA, the

9   terms of HERA, are effectively part of what can be

10  considered, because they amend or inform the shareholder

11  contracts, as we just discussed.

12       **THE COURT:**  Right.

13       **MR. JONES:**  What this doesn't say, and what we

14  believe needs to be added, in order to state the law to the

15  jury here, is that under HERA, FHFA may take actions that

16  are in the best interests of the agency.  And what that

17  means is that FHFA may take actions that are in the best

18  interest of the public.

19            And we know that that is the law of HERA, because

20  that's what the United States Supreme Court held in *Collins*.

21  And I can read just a couple sentences.  We had proposed

22  language on this issue from defendants' proposed instruction

23  number 33.  But I'll just read some of the language directly

24  from *Collins*.  It says, When the FHFA acts as a conservator,

25  it may aim to rehabilitate the regulated entity in a way

1    that while not in the best interest of the regulated

2    entity -- that is Fannie or Freddie -- is beneficial to the

3    agency and by extension the public it serves.  It says it

4    again.

5             And then it goes on to say whether or not this new

6    arrangement, Third Amendment, was in the best interest of

7    the companies or their shareholders, the FHFA could have

8    reasonably concluded that it was in the best interest of

9    members of the public.

10            And what we believe it's important to instruct the

11    jury on is that as a matter of law the FHFA acted within the

12    scope of its conservatorship powers, because it could have

13    reasonably concluded that the Third Amendment was in the

14    best interest of the public.  And *Collins* describes that

15    several different times.

16            We are not going to argue that that issue disposes

17    of the question before the jury.  Of course we fully

18    understand the Court's ruling that the inquiry here under

19    the implied covenant is different than the issue under the

20    reasonableness inquiry under the statute.

21            Nevertheless, we believe that in order to avoid

22    creating a misimpression with the jury, it's important for

23    them to understand that the statute authorizes the agency to

24    act in the best interests of the public; and that the agency

25    acted within the scope of its statutory powers because it

2465

1     was found that the Third Amendment was within -- was in the

2     public interest.

3           **MR. GLUCK:**  Your Honor, with all due respect to my

4     colleague, he's essentially rearguing his Summary Judgment

5     Motion.  And you said in a heading in your order, *Collins*

6     does not govern plaintiffs' claims.  Now they want to come

7     in here and essentially tell the jury that *Collins* decided

8     their case.  They may not use those precise words, but it is

9     clearly the implication they want the jury to draw.

10          I think, Your Honor, our instruction we proposed,

11    and the sentence that I had read to the Court, I think

12    accomplishes exactly what is the appropriate balance.  It

13    tells the jury that they had the authority to act in the

14    best interest of themselves, the public and the GSEs.  But

15    that doesn't mean they could do whatever they want.  And

16    that if they exercise that authority and that discretion

17    arbitrarily on unreasonably in a way that frustrates or

18    contracts expectations, that violates the implied covenant

19    of good faith and fair dealing.

20          I believe our instruction is the most faithful to

21    the Court's prior rulings and to the law.

22          **THE COURT:**  Okay.

23          All right.  I will work on that sentence.

24          With that, then, there are no other objections?

25    Okay.  There is one here.

2466

1          **MR. JONES:**  Sorry.  Stanton Jones for the

2     defendants.  Two other quick issues.

3          **THE COURT:**  All right.

4          **MR. JONES:**  On the instruction -- the Court's

5     instruction number 27, regarding prejudgment interest.  We

6     are generally -- we are good with what is here, but we

7     believe that it is missing one important piece of the legal

8     standard, which is that in deciding whether to -- whether or

9     not to award prejudgment interest, in Virginia the law is

10    that the jury must consider whether there was a bonafide

11    legal dispute.  Of course if the -- the idea being if the

12    jury finds this was a bonafide legal dispute, it would be a

13    basis to not award prejudgment interest.

14         And so the current instruction states what we

15    believe is half of a standard, that is the prejudgment

16    interest is designed to compensate plaintiffs for

17    essentially not having the money and it's necessary to make

18    the plaintiffs whole.  But it's missing the other part of

19    the Virginia standard, which is if there was a bonafide

20    legal dispute between the parties that would be a proper

21    basis for the jury to deny prejudgment interest.

22         **THE COURT:**  All right.

23         **MR. JONES:**  And that language is in -- the

24    language about bonafide legal dispute, as well as a

25    parenthetical explaining what bonafide legal dispute means

1     to the jury, is in the defendants' proposed instruction on

2     prejudgment interest.

3                    **THE COURT:**  All right.

4                    **MR. JONES:**  So we would ask that that language be

5     added.

6                    **MR. JONES:**  Then lastly, Your Honor, just a couple

7     of small issues on the verdict form.

8                    **THE COURT:**  Okay.

9                    **MR. JONES:**  So this first one, I believe, is one

10    that the parties will agree on.  This is in question number

11    3 on the verdict form.  This is the question regarding

12    damages.

13                   **THE COURT:**  Right.

14                   **MR. JONES:**  In the italicized portion, after the

15    question and the space for the jury's answer it says, If you

16    award actual as opposed to --

17                   **THE COURT:**  I'll take out nominal.

18                   **MR. JONES:**  Take out nominal.  Exactly.

19                   **THE COURT:**  All right.

20                   **MR. JONES:**  Then lastly, for questions 4 and 5,

21    about prejudgment interest --

22                   **THE COURT:**  Right.

23                   **MR. JONES:**  -- we would propose just a couple of

24    very modest changes.  A change to question number 4, to

25    avoid -- we believe that as stated, this question implies

1    that the jury has awarded or should award some damages to

2    Fannie Mae and Freddie -- or sorry -- to Fannie Mae

3    shareholders.

4           We would propose it to say, Do you award

5    prejudgment interest on any damages you awarded to Freddie

6    Mac common and junior preferred, rather than do you award

7    prejudgment interest on the amount of damages, which

8    again --

9           THE COURT:  Right.

10          MR. JONES:  -- implies they have awarded some

11   damages, which hasn't happened yet.

12          THE COURT:  All right.

13          MR. JONES:  And then on question number 5, we

14   would just propose to strike the reference to 6 percent per

15   year.  The statutory rate does not make any difference to

16   the jury's role in addressing prejudgment interest under

17   Virginia law.  And we want to avoid a situation where the

18   jury is led to believe they need to do some math, which we

19   think could be confusing.

20          THE COURT:  All right.

21          MR. GLUCK:  Your Honor, if I may just be heard

22   briefly, first on prejudgment interest.  There's a Fourth

23   Circuit case that is still the law that governs certainly

24   and has decided this issue on this bonafide dispute

25   exception.  The Court very clearly held there is no such

1    exception; that's in the *Gill versus Rollins Protective*

2    *Services*, it's 836 F2d 194.  It's a Fourth Circuit case.

3           So we think the Court's instruction on prejudgment

4    interest is fully reflective of the standard under Virginia

5    law.  And the instruction we proposed comes right out of,

6    you know, cases that have given that very instruction.

7           **THE COURT:**  Okay.

8           **MR. GLUCK:**  So we would object to the insertion of

9    the defendants' additional sentence.

10          And then on the verdict form, I don't think

11   question 4, with all due respect to my colleague, is

12   confusing because at the end -- right after question 3 it

13   instructs the jury they only answer question 4, if they've

14   awarded damages.

15          And so I don't see how a jury could get to 4 and

16   be confused by asking him whether they award prejudgment

17   interest on damages they just found in question 3.  So we

18   don't think that change makes any sense.

19          And then on question 5, I think the jury is

20   entitled to know that it is 6 percent.  And so we would -- I

21   don't think it's misleading.  I think it's an accurate

22   statement of law.  I don't think it in any way suggests we

23   are asking them to calculate, because the form doesn't ask

24   them to fill in a blank with a number.  So we would propose

25   that the Court give the verdict form as worded on that

1    point.

2                **THE COURT:**  All right.

3                **MR. GLUCK:**  Thank you, Your Honor.

4                **THE COURT:**  All right.

5                I'll work on one of the sentence so you know

6    before you start your arguments what it would be.

7                **MR. BARNES:**  One other --

8                **THE COURT:**  My problem is that -- oh, are there

9    any other comments on the instructions?

10               **MR. BARNES:**  Yes, Your Honor.  This is Brian

11   Barnes for the Berkley plaintiffs.  Just very quickly on the

12   verdict form.  As the Court knows, the Berkley plaintiffs

13   opted out of the class.  They are not members of the class.

14               **THE COURT:**  Right.

15               **MR. BARNES:**  I just note that the verdict form --

16   it's just a little bit inconsistent in how it refers to our

17   side.

18               So if the Court looks, I guess, first at question

19   number 4, which I think is the preferrable way to refer to

20   the plaintiffs at large.  It refers to Freddie Mac common

21   and junior preferred shareholders.  But then if the Court

22   looks back at questions 2 and 3, our side is referred to as

23   Fannie and Freddie the preferred and common class.

24               **THE COURT:**  Right.

25               **MR. BARNES:**  I think it would be better and less

1    confusing for the jury if the Court just replaced class in

2    these various spots in Questions 2 and 3 with a reference to

3    shareholders, just to avoid confusion about whether or not

4    the Berkley plaintiffs are members of the class, because

5    they opted out.

6         **THE COURT:**  Now go back over that.  Where are you

7    talking about?

8         **MR. BARNES:**  Sure.

9         So if the Court looks at Question 2 on the

10   proposed verdict form.

11        **THE COURT:**  Yeah.

12        **MR. BARNES:**  Did the plaintiffs prove by a

13   preponderance of the evidence that members of the Fannie Mae

14   preferred class, the Freddie Mac preferred class and/or the

15   Freddie Mac common class sustained harm.

16        My submission to the Court is that it would be

17   better there to make reference, instead, to the Fannie Mae

18   preferred shareholders, the Freddie Mac preferred

19   shareholders and/or the Freddie Mac common shareholders.

20        And then further down, where the jury is asked to

21   check yes or no, instead of saying Fannie Mae junior

22   preferred class, I would say shareholders there and each of

23   the subsequent places.

24        That would conform Question 2.  And I would make a

25   similar edit to Question 3; that would conform Questions 2

1    and 3 to the way our side is referred to in Question 4,

2    which makes reference to the Freddie Mac common and junior

3    preferred shareholders.

4              **THE COURT:**  So read me the wording for Question 2.

5              **MR. BARNES:**  Sure.

6              I would say, Did the plaintiffs prove by a

7    preponderance of the evidence that members of the Fannie --

8    I'm sorry.  That -- let me start over.

9              Did the plaintiffs prove by a preponderance of the

10   evidence that the Fannie Mae preferred shareholders, the

11   Freddie Mac preferred shareholders and/or --

12             **THE COURT:**  Wait.  Wait.  Wait a minute.  Freddie

13   Mac preferred shareholders...

14             **MR. BARNES:**  My friends on the other side are

15   suggesting rather than saying shareholders to say

16   shareholders, they would prefer junior preferred

17   shareholders.  We would be fine with making that.

18             **THE COURT:**  Freddie Mac junior preferred

19   shareholders?

20             **MR. BARNES:**  Right.  As opposed to just

21   shareholders, to clarify that we are not talking about the

22   Treasury Department.

23             **THE COURT:**  Those are -- that's the common --

24             **MR. BARNES:**  Yeah.  So let me try again, if I

25   could, with the defendants' suggested amendment.

1          Did the plaintiffs prove by a preponderance of the

2     evidence that members of -- or I'm sorry.  Did the

3     plaintiffs prove by a preponderance of the evidence that the

4     Fannie Mae junior preferred shareholders, the Freddie Mac

5     junior preferred shareholders and/or the Freddie Mac common

6     shareholders sustained harm as a result of the Third

7     Amendment?

8          **THE COURT:**  I'm sorry.  Fannie Mae junior

9     preferred shareholder, Freddie Mac junior preferred

10    shareholders and the Fannie Mae --

11         **MR. BARNES:**  Common shareholders.  I'm sorry.

12    Freddie Mac common shareholders.

13         **THE COURT:**  Common shareholders.

14         **MR. BARNES:**  Right.

15         And the three bullets below that, I would strike

16    the word class and replace it with shareholders.

17         **THE COURT:**  Shareholders rather than class.

18         **MR. BARNES:**  That's correct, Your Honor.

19         **THE COURT:**  Question 1 we are going to leave the

20    way it is?

21         **MR. BARNES:**  I think we can leave Question 1 the

22    way it is.  I don't believe it makes reference to class.

23         **THE COURT:**  All right.  And then 3 we are going to

24    do like 2?

25         **MR. BARNES:**  That's correct.  And in 3, I think

1    it's, first of all, a matter of, again, the three bullets

2    there I would strike the word class each time and replace it

3    with shareholders.

4            **THE COURT:**  Right.

5            **MR. BARNES:**  And then in the italics language at

6    the bottom of 3, I again would replace class with

7    shareholders.

8            **THE COURT:**  Right.  Okay.  And defendants agree?

9            **MR. BARNES:**  I'll let them speak for themselves

10   but that's my inference from what Mr. Jones just told me.

11           **MR. JONES:**  Thank you, Your Honor.

12           Yes.  So on Question 2, the defendants are

13   Mr. Barnes' changes.

14           In Question 3, the defendants are also fine with

15   changing in the three bullets, changing the word class to

16   shareholders, with one proviso which is, if that word class

17   is changed to shareholders, we believe that the final

18   sentence of the question itself, the one that is in

19   parentheses, should be deleted because that sentence read,

20   You need not determine a separate amount of damages for the

21   WR Berkley plaintiffs.  And that sentence was appropriate

22   because the bullets referred to the class.  But if the

23   bullets are just going to refer to all shareholders, there's

24   no need for that sentence.

25           **MR. BARNES:**  That's fine.

1          **THE COURT:**  Then we could eliminate that sentence.

2          **MR. BARNES:**  That would be fine with Berkley, Your

3   Honor.

4          **MR. GLUCK:**  And, Your Honor, just one last point.

5   I'm happy to report.  Good news.  I've consulted with my

6   colleagues.  Upon further reflection, we are fine taking out

7   the 6 percent reference in Question 5.

8          **THE COURT:**  Okay.  All right.

9          Now, in light of the hour, there's no way we are

10   going to get four hours in.  So I think what we are going to

11   have to do is get through the plaintiffs' initial

12   presentation, which is going to be like an hour and a half.

13   And you are going to reserve 30?

14          Then if the defendants want to split it and do an

15   hour today and an hour tomorrow or just start tomorrow.  I

16   leave it to you.  Because I told the jury we are definitely

17   going to break by 5.  We can break earlier, if you don't

18   want to split your presentation.  And we will come back at

19   1:45, if you all can have a quick lunch and start.

20          You don't have to decide now, but if you want to

21   decide now, you can tell me if you want to split your

22   argument.

23          **MR. STERN:**  Your Honor, there is a third option,

24   that I loathe to suggest, which is to do everything

25   tomorrow.  I'd like to think about it, Your Honor.

 1          **THE COURT:**  I don't want to do everything tomorrow

 2    because we will be more pressed for time on the jury

 3    deliberating.  They are going to want to reach a verdict

 4    probably.

 5          I would want to use some time today, at least, so

 6    the jury's not as hard pressed about having less time to

 7    deliberate.

 8          **MR. STERN:**  Understood, Your Honor.  I will report

 9    back on which of those two options we would ask for.

10          **THE COURT:**  Okay.  So we at least will get the

11    plaintiffs' initial opening through and save the rebuttal.

12    So they are not only hearing one side.  But if you want to

13    start today, so they don't only hear one side today, you can

14    start today.

15          **MR. STERN:**  Obviously -- well, perhaps not

16    obviously, Your Honor.  I would request -- now I forget

17    which option is which.  If we go with the defense splitting,

18    that the Court would tell the jury before everything started

19    that that was the actual plan.

20          **THE COURT:**  Yeah.  Yeah.  That's why I would want

21    to know before we start what the plan is so I can explain to

22    the jury to keep an open mind until they hear everything.

23          **MR. STERN:**  Understood, Your Honor.  Thank you.

24          **THE COURT:**  Okay.  I will see you all at 1:45.

25          (Proceedings concluded at 1:02 p.m.)

1                      **C E R T I F I C A T E**

2

3          I, **Lorraine T. Herman, Official Court Reporter,**

4     certify that the foregoing is a true and correct transcript

5     of the record of proceedings in the above-entitled matter.

6

7

8

9          ____October 31, 2022___          __/s/_____
10               Date                          Lorraine T. Herman

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**BY MR. BERGMAN:**
**[9]** 2380/18 2381/9
2382/2 2383/6 2384/11
2384/23 2386/14
2386/19 2388/12
**BY MR. HOFFMAN:**
**[6]** 2419/7 2420/9
2421/18 2422/7
2423/25 2426/23
**BY MR. HUME: [3]**
2391/3 2391/22 2393/9
**BY MR. KAPLAN: [11]**
2395/17 2399/15
2400/7 2403/7 2403/24
2406/23 2408/12
2410/18 2413/20
2417/12 2418/18
**DEPUTY CLERK: [3]**
2374/2 2397/15
2448/25
**MR. BARNES: [19]**
2470/7 2470/10
2470/15 2470/25
2471/8 2471/17 2472/5
2472/14 2472/20
2472/24 2473/11
2473/14 2473/18
2473/21 2473/25
2474/5 2474/9 2474/25
2475/2
**MR. BERGMAN: [13]**
2380/16 2381/7
2381/25 2383/4 2384/9
2384/20 2386/12
2386/18 2388/10
2390/24 2392/10
2392/13 2393/6
**MR. GLUCK: [27]**
2447/1 2447/9 2452/21
2454/17 2454/22
2455/18 2455/21
2456/2 2456/4 2456/8
2456/11 2456/14
2456/19 2456/21
2456/23 2458/1
2458/21 2462/1 2462/6
2462/11 2462/14
2462/18 2465/3
2468/21 2469/8 2470/3
2475/4
**MR. HOFFMAN: [20]**
2375/21 2397/18
2406/18 2408/7

2410/11 2410/16
2411/8 2411/12
2411/16 2412/10
2413/10 2418/24
2420/7 2421/16 2422/5
2423/23 2426/6 2427/1
2428/9 2428/14
**MR. HUME: [41]**
2374/5 2374/9 2374/12
2374/14 2374/18
2375/7 2375/15
2375/18 2376/1 2376/7
2391/1 2391/19 2392/7
2392/24 2395/4
2427/10 2427/18
2427/23 2428/2 2428/5
2428/11 2430/21
2432/22 2435/2 2435/5
2435/10 2438/22
2440/4 2440/7 2440/11
2440/19 2440/22
2440/25 2441/5
2441/10 2441/17
2441/20 2441/22
2442/7 2447/15
2447/21
**MR. JONES: [55]**
2376/11 2376/21
2377/2 2377/9 2377/14
2377/20 2379/6
2435/11 2435/17
2435/19 2435/22
2436/23 2437/5
2437/13 2438/21
2442/11 2442/14
2442/23 2443/8 2445/7
2445/22 2445/24
2446/20 2446/24
2451/1 2451/8 2453/24
2459/16 2459/18
2459/22 2460/3 2460/7
2460/11 2460/17
2461/3 2461/7 2461/12
2462/22 2463/1 2463/4
2463/8 2463/13 2466/1
2466/4 2466/23 2467/4
2467/6 2467/9 2467/14
2467/18 2467/20
2467/23 2468/10
2468/13 2474/11
**MR. KAPLAN: [39]**
2395/8 2397/16 2400/5
2403/5 2403/22
2410/15 2411/10

2412/5 2412/22
2413/12 2417/10
2418/16 2419/3
2423/19 2425/16
2425/20 2426/14
2427/6 2427/8 2433/5
2433/7 2433/11
2433/18 2434/4 2434/7
2434/10 2434/15
2434/18 2434/23
2443/9 2443/13
2443/15 2443/17
2443/20 2444/24
2445/1 2445/3 2461/20
2461/24
**MR. STERN: [9]**
2447/20 2448/6
2448/10 2448/13
2448/23 2475/23
2476/8 2476/15
2476/23
**THE COURT: [174]**
**THE WITNESS: [7]**
2391/21 2395/7
2397/22 2406/21
2419/5 2427/2 2427/5

**$**

**$1 [1]** 2396/24
**$1.6 [5]** 2435/23
2435/25 2436/4
2436/16 2438/17
**$10,000 [2]** 2398/5
2398/21
**$100 [2]** 2410/7 2416/9
**$100,000 [1]** 2398/1
**$150 [1]** 2436/4
**$199 [1]** 2389/23
**$205 [1]** 2410/2
**$23 [1]** 2405/15
**$258 [2]** 2396/11
2397/11
**$32 [5]** 2389/11
2389/19 2390/3
2390/22 2407/18
**$33.2 [1]** 2436/2
**$35 [1]** 2389/12
**$40 [1]** 2390/16
**$5 [1]** 2407/22
**$5,000 [1]** 2398/12
**$5.3 [1]** 2425/8
**$500 [3]** 2398/13
2398/19 2399/1
**$700 [1]** 2410/1

**$8 [1]** 2407/18

**'**

**'09 [1]** 2389/25
**'10 [1]** 2390/1
**'11 [1]** 2390/1
**'12 [1]** 2390/1
**'14 [1]** 2425/14
**'15 [1]** 2425/14
**'16 [1]** 2425/14

**/**

**/s [1]** 2477/9

**1**

**1.16 [2]** 2420/22
2422/19
**1.29 [2]** 2404/20
2404/21
**1.6 [3]** 2437/23 2439/3
2439/4
**10 [16]** 2382/20 2387/5
2387/8 2394/2 2394/10
2396/23 2398/4
2404/24 2410/7
2418/22 2421/20
2423/1 2423/6 2423/9
2424/15 2425/8
**10-year [1]** 2394/2
**10020 [1]** 2372/6
**1053 [1]** 2371/3
**11.6 [2]** 2421/20
2421/24
**114 [1]** 2422/1
**115 [1]** 2422/1
**117 [1]** 2388/11
**117.6 [1]** 2422/12
**118 [1]** 2388/11
**121 [1]** 2392/8
**123 [1]** 2372/3
**1251 [1]** 2372/6
**1288 [1]** 2371/9
**13 [3]** 2392/5 2392/6
2416/12
**13-1288 [1]** 2371/9
**14 [7]** 2382/1 2382/10
2382/23 2383/15
2385/10 2385/25
2386/4
**140 [1]** 2422/2
**140.5 [1]** 2422/17
**1401 [1]** 2371/24
**144 [1]** 2438/15
**149 [1]** 2438/15
**14th [1]** 2391/25

**1**

**15 [2]**  2382/1 2409/10
**150 [2]**  2436/4 2436/14
**1523 [1]**  2371/19
**15th [1]**  2407/8
**16 [3]**  2384/10 2384/12
2391/25
**161 [1]**  2437/16
**1625 [1]**  2372/16
**17 [1]**  2388/11
**1700 [1]**  2372/13
**176/20 [1]**  2386/13
**177 [1]**  2383/5
**177/8 [1]**  2386/13
**178 [3]**  2382/13 2383/5
2384/10
**179 [1]**  2382/14
**18 [3]**  2458/22 2458/22
2459/24
**19087 [1]**  2371/22
**194 [1]**  2469/2
**19801 [1]**  2372/3
**1:02 p.m [1]**  2476/25
**1:13-1053 [1]**  2371/3
**1:45 [2]**  2475/19
2476/24

**2**

**20 [5]**  2382/14 2384/10
2386/13 2389/15
2390/18
**200 [1]**  2394/10
**20001 [2]**  2372/11
2372/22
**20005 [1]**  2371/25
**20006 [2]**  2372/14
2372/17
**20036 [1]**  2371/19
**2008 [8]**  2389/25
2404/4 2404/5 2405/17
2406/25 2407/4 2407/7
2407/7
**201 [2]**  2379/14
2379/14
**2011 [3]**  2429/13
2430/13 2432/7
**2012 [17]**  2381/3
2389/1 2389/4 2389/7
2389/21 2393/15
2393/20 2394/6 2404/6
2404/22 2404/23
2408/5 2416/5 2416/6
2425/4 2425/12
2430/13

**2013 [6]**  2419/24
2422/13 2422/17
2424/24 2425/13
2425/15
**2015 [3]**  2389/22
2389/23 2390/2
**202-354-3196 [1]**
2372/23
**2022 [7]**  2371/5
2424/14 2424/22
2429/1 2429/24
2432/19 2477/9
**2025 [1]**  2396/10
**2098 [1]**  2431/4
**216 [2]**  2381/2 2381/8
**218 [2]**  2381/10 2424/8
**22 [1]**  2383/5
**224-2 [1]**  2458/12
**23 [7]**  2416/14 2456/9
2456/15 2460/13
2461/4 2461/19
2462/17
**24 [10]**  2438/7 2441/15
2441/18 2441/19
2442/25 2456/18
2456/20 2462/19
2462/21 2463/4
**258 [1]**  2420/20
**26 [1]**  2460/3
**269 [1]**  2381/11
**27 [1]**  2466/5
**27th [1]**  2431/4
**28 [1]**  2382/1
**280 [1]**  2371/21
**29 [1]**  2431/10

**3**

**3.43 [1]**  2404/21
**30 [1]**  2475/13
**31 [3]**  2371/5 2458/2
2477/9
**3196 [1]**  2372/23
**32 [1]**  2445/9
**33 [2]**  2436/14 2463/23
**333 [1]**  2372/21
**36 [2]**  2403/5 2403/6
**3rd [1]**  2429/1

**4**

**4.6 [1]**  2404/24
**4.7 [1]**  2404/24
**40-page [1]**  2430/5
**40-plus-page [1]**
2430/5

**400 [1]**  2407/25
**412 [5]**  2446/3 2451/11
2451/22 2452/6
2453/25
**43 [1]**  2416/13
**44 [1]**  2417/11
**444 [2]**  2375/19
2375/24
**445 [2]**  2375/19
2375/25
**45 [12]**  2413/12
2414/13 2414/21
2415/16 2416/13
2418/14 2419/17
2419/23 2420/1 2420/3
2420/15 2426/10
**46 [1]**  2418/16
**47 [5]**  2418/16 2443/24
2445/23 2445/25
2446/6
**48 [3]**  2443/24 2445/25
2446/6

**5**

**5.3 [2]**  2423/1 2425/1
**50 [5]**  2376/18 2377/5
2377/10 2400/5 2400/6
**509 [1]**  2381/11
**51 [2]**  2403/22 2403/23
**515 [2]**  2428/2 2428/4
**516 [2]**  2428/2 2428/4
**529 [5]**  2446/3 2451/11
2451/25 2452/6
2453/25
**530 [1]**  2422/20
**58 [1]**  2442/12

**6**

**6.3 [1]**  2423/8
**6.5 [2]**  2393/25 2394/2
**601 [1]**  2372/10
**630 [1]**  2422/22
**6720 [1]**  2372/22

**7**

**703 [3]**  2444/1 2446/12
2452/17
**705 [1]**  2409/21
**79.9 [1]**  2396/24

**8**

**8.7 [1]**  2394/9
**80 [4]**  2398/6 2398/9
2398/22 2409/15
**836 [1]**  2469/2

**9**

**99 [1]**  2431/4
**9:53 [1]**  2371/5

**A**

**a.m [1]**  2371/5
**AAA [5]**  2374/24
2431/16 2431/16
2431/16 2432/4
**ability [1]**  2414/9
**able [2]**  2386/24
2392/7
**about [103]**  2374/7
2374/20 2374/22
2375/1 2378/20 2379/5
2379/18 2379/20
2381/2 2381/10
2387/23 2388/7
2388/15 2388/21
2389/11 2389/18
2390/16 2391/9
2391/11 2392/23
2393/25 2394/9
2397/23 2399/21
2400/25 2402/1 2402/4
2402/5 2402/8 2404/8
2405/6 2405/10
2405/24 2406/2 2406/9
2406/12 2409/16
2410/20 2411/3 2412/9
2412/11 2412/23
2412/25 2413/4 2413/6
2413/13 2413/13
2415/12 2415/25
2416/24 2417/5
2417/14 2419/10
2420/3 2421/5 2421/25
2425/24 2426/10
2426/14 2426/18
2426/19 2427/25
2430/18 2430/25
2431/6 2431/7 2431/21
2431/22 2431/24
2433/13 2433/14
2433/15 2433/19
2434/12 2437/18
2439/10 2439/21
2441/9 2441/15
2441/24 2444/1 2451/1
2451/4 2452/14
2452/20 2454/24
2455/1 2455/8 2457/4
2457/22 2458/22
2459/5 2459/24

**A**

**about... [10]** 2460/14 2461/21 2462/7 2466/24 2467/21 2471/3 2471/7 2472/21 2475/25 2476/6
**above [3]** 2410/7 2437/23 2477/5
**above-entitled [1]** 2477/5
**absent [2]** 2405/22 2409/22
**absolutely [2]** 2390/5 2439/9
**abstract [1]** 2411/24
**acceptable [2]** 2461/12 2462/2
**accepts [1]** 2438/12
**access [6]** 2384/7 2385/15 2385/23 2386/2 2386/8 2386/9
**accomplishes [1]** 2465/12
**according [1]** 2381/12
**account [3]** 2396/18 2399/3 2402/23
**accounting [1]** 2405/16
**accuracy [2]** 2379/16 2433/14
**accurate [3]** 2403/9 2438/11 2469/21
**acknowledged [1]** 2445/10
**act [9]** 2439/14 2441/12 2457/1 2457/8 2458/5 2458/5 2461/13 2464/24 2465/13
**acted [2]** 2464/11 2464/25
**Action [3]** 2371/2 2371/9 2371/10
**actions [2]** 2463/15 2463/17
**acts [1]** 2463/24
**actual [5]** 2379/9 2411/21 2412/2 2467/16 2476/19
**actually [11]** 2379/2 2392/15 2401/11 2401/14 2405/6 2415/1 2422/11 2436/13 2440/19 2453/12 2455/12

**ADAM [1]** 2372/21
**add [2]** 2404/21 2461/13
**added [5]** 2457/24 2462/7 2462/15 2463/14 2467/5
**addendum [1]** 2441/6
**adding [1]** 2462/23
**addition [2]** 2400/11 2437/19
**additional [6]** 2415/2 2425/1 2436/5 2446/6 2450/21 2469/9
**address [10]** 2396/1 2399/25 2403/16 2417/2 2417/2 2417/17 2433/8 2438/25 2442/7 2445/6
**addressed [6]** 2402/17 2406/6 2410/21 2425/23 2429/21 2444/11
**addressing [3]** 2413/15 2432/2 2468/16
**adequate [2]** 2434/1 2450/17
**adjustment [1]** 2461/9
**adjustments [2]** 2415/24 2421/13
**admission [1]** 2445/14
**admitted [10]** 2405/12 2444/2 2444/4 2445/11 2451/10 2451/13 2452/11 2453/3 2453/6 2453/23
**affect [3]** 2405/9 2459/6 2460/23
**afield [1]** 2410/13
**after [4]** 2399/22 2407/2 2467/14 2469/12
**again [19]** 2386/1 2390/18 2392/1 2406/13 2412/19 2421/4 2426/15 2429/22 2452/17 2453/16 2453/25 2454/10 2456/14 2459/7 2464/4 2468/8 2472/24 2474/1 2474/6
**against [3]** 2407/10 2420/18 2444/9
**agencies [7]** 2374/19

2431/21 2432/13 2432/18
**agency [9]** 2371/6 2372/8 2374/21 2432/2 2432/14 2463/16 2464/3 2464/23 2464/24
**agenda [1]** 2452/1
**ago [3]** 2430/1 2430/3 2436/3
**agree [16]** 2378/14 2379/11 2388/24 2396/5 2400/16 2434/20 2439/10 2439/13 2443/1 2448/20 2448/20 2449/9 2459/24 2460/4 2467/10 2474/8
**agreed [9]** 2379/9 2409/24 2437/9 2447/10 2451/2 2458/19 2459/5 2459/8 2462/3
**agreed-upon [2]** 2458/19 2459/8
**agreement [3]** 2371/10 2459/4 2460/8
**ahead [3]** 2411/11 2456/5 2459/21
**aided [1]** 2372/25
**AIG [15]** 2401/23 2402/13 2402/16 2402/24 2403/12 2403/13 2403/14 2403/20 2404/4 2404/11 2404/22 2405/4 2405/17 2406/25 2407/9
**AIG's [1]** 2407/3
**aim [1]** 2463/25
**al [3]** 2371/2 2371/2 2371/6
**alert [2]** 2376/16 2443/10
**all [103]** 2374/3 2375/6 2377/13 2377/18 2379/3 2379/5 2380/9 2380/21 2381/11 2381/12 2381/16 2388/15 2388/20 2388/21 2390/24 2394/18 2395/5 2395/12 2396/16

2397/6
**all** 2397/1 2397/6 2397/7 2397/23 2398/6 2399/2 2399/5 2399/8 2399/11 2399/18 2399/20 2399/23 2399/24 2403/20 2405/20 2408/22 2409/2 2411/14 2413/25 2415/20 2417/3 2417/17 2419/16 2419/21 2421/13 2423/14 2426/2 2427/3 2427/16 2427/20 2427/21 2431/12 2432/16 2432/24 2434/24 2436/22 2437/4 2438/16 2438/20 2440/10 2442/4 2442/13 2442/15 2442/17 2442/18 2442/19 2443/17 2445/5 2445/10 2447/11 2447/12 2447/13 2447/21 2448/7 2448/15 2448/25 2449/3 2450/19 2450/20 2452/15 2453/16 2454/16 2454/20 2459/15 2460/2 2462/19 2465/3 2465/23 2466/3 2466/22 2467/3 2467/19 2468/12 2468/20 2469/11 2470/2 2470/4 2473/23 2474/1 2474/23 2475/8 2475/19 2476/24
**all-in [11]** 2396/16 2397/1 2397/6 2397/23 2399/2 2399/18 2399/20 2399/23 2413/25 2419/16 2419/21
**alleged [2]** 2449/15 2449/15
**allowance [1]** 2445/14
**allowed [7]** 2375/12 2410/9 2446/16 2449/11 2450/6 2452/23 2452/25
**allows [1]** 2379/15
**alluded [3]** 2406/1

**A**

alluded... **[2]** 2406/25 2413/3
alone **[1]** 2424/15
along **[1]** 2431/16
already **[13]** 2398/21 2426/18 2427/15 2439/7 2442/12 2445/11 2445/11 2446/5 2446/7 2446/11 2451/3 2451/13 2455/10
also **[31]** 2377/2 2377/14 2385/10 2390/6 2394/5 2398/6 2399/17 2399/23 2400/15 2400/25 2401/23 2403/18 2406/24 2408/9 2409/3 2410/6 2410/12 2413/6 2417/14 2418/25 2421/19 2435/13 2437/7 2446/14 2447/9 2447/10 2448/24 2456/2 2459/7 2459/24 2474/14
alter **[1]** 2405/2
alternate **[1]** 2450/2
alternative **[2]** 2404/8 2455/22
always **[2]** 2399/10 2425/24
am **[7]** 2417/13 2426/8 2434/8 2440/13 2440/19 2447/21 2450/21
amend **[4]** 2455/9 2460/25 2461/8 2463/10
amended **[7]** 2461/14 2462/3 2462/4 2462/8 2462/9 2462/10 2462/11
amendment **[7]** 2451/20 2452/8 2464/6 2464/13 2465/1 2472/25 2473/7
Americas **[1]** 2372/6
amidst **[1]** 2417/20
amount **[13]** 2389/20 2393/23 2405/14 2408/17 2409/10 2414/18 2420/18 2421/7 2422/9 2436/5

2436/14 2468/7 2474/20
amounts **[2]** 2408/19 2438/18
analogy **[1]** 2414/4
analysis **[22]** 2396/16 2397/4 2401/1 2410/15 2411/3 2411/22 2413/13 2413/16 2413/22 2413/24 2414/12 2414/16 2415/7 2415/9 2415/10 2415/13 2416/12 2416/15 2417/3 2417/25 2418/7 2421/15
analyst **[25]** 2432/1 2443/17 2443/25 2445/25 2446/2 2446/4 2446/6 2446/10 2446/16 2447/5 2450/23 2451/5 2451/10 2451/17 2451/23 2452/1 2452/6 2452/11 2452/24 2453/14 2453/17 2453/22 2454/3 2454/14 2454/18
analyze **[1]** 2384/8
animate **[1]** 2441/23
Anjan **[5]** 2395/9 2395/16 2419/6 2427/6 2427/8
Anjan Thakor **[1]** 2395/9
another **[1]** 2405/7
answer **[11]** 2383/10 2383/18 2383/23 2388/14 2388/21 2389/17 2390/14 2394/24 2398/20 2467/15 2469/13
answered **[1]** 2390/6
any **[41]** 2378/14 2386/8 2387/11 2394/15 2394/17 2399/10 2401/24 2403/2 2409/17 2418/2 2419/4 2427/3 2430/2 2430/2 2432/5 2432/16 2433/14 2433/15 2434/3 2435/20 2436/9 2438/8 2438/12 2438/23 2440/2

2443/2 2450/18 2450/19 2450/21 2450/25 2452/13 2452/19 2453/6 2459/11 2468/5 2468/15 2469/18 2469/22 2470/9
anyone **[2]** 2417/24 2444/18
anything **[6]** 2401/15 2410/13 2426/18 2429/19 2430/17 2459/10
Anyway **[1]** 2399/12
anywhere **[1]** 2402/23
apologize **[1]** 2448/23
apparent **[1]** 2430/12
appeal **[4]** 2440/2 2440/2 2440/4 2441/11
appear **[2]** 2428/24 2440/9
APPEARANCES **[2]** 2371/15 2371/25
appease **[1]** 2442/2
appellate **[1]** 2376/22
apples **[1]** 2400/16
application **[1]** 2409/13
applies **[1]** 2415/16
apply **[1]** 2415/24
applying **[1]** 2426/9
appreciate **[1]** 2426/24
approach **[1]** 2391/19
appropriate **[11]** 2379/24 2411/25 2420/14 2421/5 2421/7 2425/24 2426/2 2443/23 2444/3 2465/12 2474/21
approximate **[1]** 2389/20
arbitrarily **[3]** 2457/14 2458/8 2465/17
arbitrary **[2]** 2438/5 2442/1
are **[121]**
aren't **[1]** 2452/13
argue **[13]** 2377/19 2402/14 2426/15 2439/3 2439/19 2441/8 2442/4 2442/10 2443/6 2445/19 2445/21 2451/7 2464/16

argued **[5]** 2376/19 2434/20 2442/12 2444/9 2449/9
arguing **[4]** 2436/15 2438/24 2441/24 2449/20
argument **[19]** 2377/3 2377/4 2377/16 2426/1 2426/2 2435/13 2435/17 2435/22 2436/23 2437/3 2437/5 2438/23 2440/10 2442/5 2442/6 2451/6 2454/12 2457/3 2475/22
arguments **[3]** 2377/16 2441/7 2470/6
Arnold **[1]** 2372/8
around **[1]** 2397/19
arrangement **[1]** 2464/6
articulated **[1]** 2457/17
as **[124]**
aside **[1]** 2413/25
ASIM **[1]** 2372/8
ask **[5]** 2419/10 2455/21 2467/4 2469/23 2476/9
asked **[15]** 2374/22 2383/7 2384/13 2384/24 2386/15 2388/13 2394/20 2402/5 2406/9 2412/4 2412/6 2412/6 2425/9 2431/6 2471/20
asking **[8]** 2417/5 2421/11 2421/11 2440/20 2445/13 2453/16 2469/16 2469/23
aspect **[1]** 2417/3
asserted **[2]** 2444/5 2454/5
assess **[1]** 2416/1
assessing **[1]** 2463/5
assessment **[7]** 2382/25 2383/9 2383/16 2388/24 2398/15 2398/17 2415/14
assessments **[1]** 2430/7
assets **[2]** 2405/20 2415/15

**A**

**assistance [6]**
2400/24 2401/24
2401/25 2403/12
2403/13 2403/14
**Association [1]**
2372/15
**assuming [4]** 2407/2
2414/23 2418/13
2423/5
**assumptions [2]**
2385/16 2385/21
**attaching [1]** 2451/23
**Attari [35]** 2375/5
2395/22 2397/3 2397/6
2397/24 2399/17
2400/12 2402/1 2403/2
2403/16 2406/6
2408/10 2408/16
2410/13 2410/20
2412/24 2415/6 2417/2
2417/17 2417/21
2418/2 2419/24 2421/6
2426/3 2429/12
2430/25 2444/1
2446/18 2453/15
2453/19 2454/10
2458/23 2458/24
2459/2 2459/25
**Attari's [13]** 2374/19
2400/6 2403/23 2411/2
2411/4 2412/11
2412/16 2413/16
2419/1 2430/18 2446/8
2446/10 2454/15
**attempt [2]** 2386/24
2430/16
**attended [1]** 2452/15
**attractive [1]** 2409/4
**audited [2]** 2383/11
2383/20
**August [5]** 2394/6
2404/22 2404/23
2408/4 2432/6
**authority [4]** 2457/1
2458/7 2465/13
2465/16
**authorized [2]** 2410/1
2458/5
**authorizes [1]** 2464/23
**available [6]** 2390/3
2390/21 2394/1
2394/11 2396/11
2401/22

Avenue [6] 2371/19
2371/24 2372/6
2372/10 2372/13
2372/21
**average [1]** 2416/14
**avoid [7]** 2421/4
2448/13 2448/15
2464/21 2467/25
2468/17 2471/3
**award [9]** 2436/17
2436/20 2466/9
2466/13 2467/16
2468/1 2468/4 2468/6
2469/16
**awarded [4]** 2468/1
2468/5 2468/10
2469/14
**aware [3]** 2394/4
2406/21 2452/24

**B**

**back [17]** 2380/4
2380/21 2395/18
2402/20 2403/2
2421/25 2425/5
2442/20 2446/1 2447/8
2447/13 2452/12
2460/19 2470/22
2471/6 2475/18 2476/9
**backed [3]** 2407/10
2407/21 2431/25
**bad [2]** 2409/24
2439/18
**Bajaj [1]** 2401/9
**BALA [3]** 2373/3
2380/15 2390/25
**balance [1]** 2465/12
**bank [11]** 2397/25
2398/3 2398/10
2398/14 2398/18
2398/19 2399/1
2400/25 2404/11
2405/23 2414/18
**banking [1]** 2415/4
**Bankruptcy [1]**
2372/21
**banks [14]** 2400/23
2401/24 2408/17
2408/18 2409/2
2409/17 2409/18
2409/21 2409/22
2410/4 2410/22
2410/25 2414/8
2416/19

bar [1] 2422/12
**bargain [4]** 2435/24
2436/16 2439/5
2458/10
**BARNES [2]** 2371/18
2470/11
**Barnes' [1]** 2474/13
**BARRY [1]** 2372/2
**base [5]** 2387/17
2388/1 2415/14
2416/18 2421/5
**based [12]** 2386/10
2398/15 2398/17
2401/21 2405/21
2406/24 2407/3
2409/12 2414/12
2418/6 2418/9 2432/4
**basic [2]** 2385/17
2410/19
**basically [2]** 2404/17
2407/9
**basis [15]** 2413/12
2414/1 2414/21
2419/16 2419/21
2420/1 2420/3 2420/15
2421/7 2426/10
2440/17 2452/14
2452/19 2466/13
2466/21
**Bates [1]** 2429/6
**be [120]**
**bearing [1]** 2426/24
**because [39]** 2377/18
2377/24 2388/17
2391/12 2398/21
2401/3 2404/7 2405/21
2407/13 2407/17
2414/5 2421/13
2430/11 2431/23
2432/9 2432/9 2435/25
2436/8 2439/5 2440/8
2444/7 2448/2 2452/12
2453/15 2454/11
2457/7 2457/17
2457/20 2463/10
2463/19 2464/12
2464/25 2469/12
2469/23 2471/4
2474/19 2474/22
2475/16 2476/2
**been [30]** 2377/6
2386/22 2386/24
2387/12 2392/20
2407/2 2407/2 2409/24

2410/21 2411/21
2412/20 2413/8 2413/8
2414/23 2414/25
2418/13 2419/11
2423/12 2424/3
2424/24 2425/24
2425/25 2426/11
2429/20 2429/21
2436/20 2444/2
2446/11 2450/3 2457/4
**before [20]** 2371/13
2376/13 2377/19
2411/3 2417/11
2423/15 2429/21
2430/17 2435/8
2435/14 2439/13
2442/17 2442/22
2447/13 2450/2
2457/19 2464/17
2470/6 2476/18
2476/21
**begin [3]** 2380/12
2435/8 2435/15
**begins [3]** 2451/22
2460/22 2463/5
**behalf [3]** 2411/16
2426/6 2428/15
**being [8]** 2391/12
2397/20 2425/14
2431/2 2454/4 2455/2
2455/9 2466/11
**believe [36]** 2375/9
2375/20 2377/6
2379/14 2381/11
2427/23 2428/19
2429/9 2437/19 2438/1
2438/4 2438/9 2438/10
2438/13 2443/23
2445/10 2446/13
2451/22 2452/4
2452/13 2452/19
2454/11 2455/3 2459/8
2459/9 2463/14
2464/10 2464/21
2465/20 2466/7
2466/15 2467/9
2467/25 2468/18
2473/22 2474/17
**believes [1]** 2411/25
**below [1]** 2473/15
**beneficial [1]** 2464/2
**Benson [29]** 2380/24
2381/17 2381/21
2382/15 2382/20

**B**

**Benson... [24]** 2383/7 2383/15 2384/12 2385/14 2385/23 2386/2 2386/7 2386/12 2386/15 2387/18 2391/5 2392/20 2392/25 2393/2 2393/18 2394/5 2394/20 2423/17 2423/19 2424/3 2424/9 2424/13 2425/23 2426/19
**Benson's [11]** 2382/1 2382/10 2382/13 2382/23 2383/4 2383/21 2384/10 2385/10 2387/4 2387/15 2394/16
**Berger [1]** 2372/5
**BERGMAN [5]** 2372/9 2373/4 2380/16 2392/13 2393/6
**Berkley [5]** 2470/11 2470/12 2471/4 2474/21 2475/2
**Bernstein [1]** 2372/5
**best [20]** 2383/8 2383/22 2384/5 2384/13 2384/24 2385/6 2387/1 2391/14 2395/3 2457/1 2457/8 2458/5 2463/16 2463/17 2464/1 2464/6 2464/8 2464/14 2464/24 2465/14
**better [3]** 2388/1 2470/25 2471/17
**between [9]** 2380/1 2385/21 2406/25 2416/12 2416/22 2421/24 2429/10 2438/17 2466/20
**beyond [6]** 2415/2 2418/25 2418/25 2423/20 2426/20 2427/21
**big [3]** 2388/18 2398/25 2409/6
**bill [8]** 2378/6 2378/7 2378/9 2378/25 2379/20 2379/25 2433/20 2434/2
**billion [42]** 2389/12

2389/19 2389/20 2390/3 2390/16 2390/22 2394/1 2394/2 2394/9 2394/10 2396/11 2396/25 2397/11 2405/15 2407/18 2407/19 2407/22 2410/1 2410/2 2410/7 2420/23 2421/20 2421/24 2422/1 2422/12 2422/17 2422/19 2423/2 2423/8 2425/1 2425/8 2435/23 2435/25 2436/2 2436/4 2436/4 2436/14 2436/14 2436/16 2438/18 2439/4 2439/4
**bills [2]** 2379/21 2379/23
**binder [4]** 2391/15 2391/16 2391/17 2391/23
**bit [2]** 2389/10 2470/16
**blank [1]** 2469/24
**blow [1]** 2443/25
**blow-ups [1]** 2443/25
**board [12]** 2381/22 2384/2 2384/2 2391/5 2391/10 2391/12 2391/14 2392/17 2393/3 2393/19 2395/3 2424/9
**Boies [1]** 2371/24
**bonafide [6]** 2466/10 2466/12 2466/19 2466/24 2466/25 2468/24
**bond [1]** 2431/14
**bondholders [2]** 2431/24 2442/3
**bonds [3]** 2407/10 2432/11 2432/12
**book [6]** 2405/16 2405/19 2405/19 2405/20 2408/5 2409/3
**borrow [2]** 2398/1 2398/15
**both [15]** 2375/19 2377/11 2393/24 2397/2 2419/25 2420/19 2421/2 2430/11 2446/18

2449/10 2451/20 2457/11 2458/16 2459/5 2459/6
**bottom [5]** 2396/18 2418/12 2424/11 2429/23 2474/6
**bottom-line [1]** 2418/12
**bounds [2]** 2440/14 2440/15
**break [3]** 2435/7 2475/17 2475/17
**breaks [2]** 2421/23 2422/19
**BRIAN [2]** 2371/18 2470/10
**brief [7]** 2377/22 2428/11 2436/25 2439/23 2449/1 2459/20 2461/17
**briefly [6]** 2425/17 2442/24 2453/24 2454/17 2461/22 2468/22
**bring [2]** 2380/5 2398/14
**broad [1]** 2456/25
**broken [1]** 2422/9
**bullets [5]** 2473/15 2474/1 2474/15 2474/22 2474/23
**bunch [2]** 2379/21 2379/22
**bundle [2]** 2449/19 2449/21
**business [11]** 2375/4 2404/18 2407/20 2414/13 2415/17 2416/13 2416/13 2416/14 2418/14 2419/17 2419/23
**buy [1]** 2409/15
**buys [1]** 2449/18
**bylaws [1]** 2455/8

**C**

**calculate [1]** 2469/23
**calculated [2]** 2419/23 2420/19
**calculates [1]** 2416/17
**calculation [4]** 2417/22 2420/10 2420/14 2426/9
**calculations [5]**

2426/12 2426/25
**call [7]** 2374/10 2375/12 2381/17 2382/16 2395/8 2397/25 2398/13
**came [4]** 2378/6 2429/5 2429/5 2449/16
**can [73]** 2375/18 2376/9 2378/24 2378/25 2379/15 2381/7 2382/14 2383/23 2384/15 2384/18 2384/21 2384/21 2386/1 2388/17 2395/13 2397/10 2397/13 2397/20 2398/15 2400/8 2401/17 2402/19 2404/2 2404/18 2404/21 2408/22 2409/1 2410/15 2411/12 2417/19 2418/16 2422/2 2422/5 2423/6 2423/7 2425/5 2426/1 2426/15 2427/6 2427/7 2427/8 2428/6 2428/12 2428/16 2431/9 2433/20 2437/12 2438/25 2441/8 2441/17 2441/17 2441/23 2442/7 2442/8 2442/19 2442/20 2443/6 2445/19 2445/21 2451/5 2451/7 2453/11 2455/18 2457/9 2459/10 2463/9 2463/21 2473/21 2475/17 2475/19 2475/24 2476/13 2476/21
**can't [7]** 2396/17 2402/23 2441/6 2447/17 2453/11 2453/17 2457/22
**cannot [1]** 2379/16
**capital [13]** 2400/14 2408/13 2408/15 2408/17 2408/18 2408/19 2408/23 2409/2 2409/3 2409/18 2410/4 2410/20 2410/22

**care [2]** 2392/21 2448/14
**carefully [2]** 2391/11 2392/18
**case [36]** 2374/12 2374/16 2378/13 2387/17 2388/1 2388/1 2388/1 2388/1 2388/4 2388/22 2389/15 2390/15 2393/12 2396/6 2418/6 2423/12 2425/23 2427/13 2428/22 2430/12 2431/20 2431/22 2433/4 2434/25 2435/6 2436/24 2436/24 2437/1 2439/21 2444/9 2451/20 2455/15 2463/6 2465/8 2468/23 2469/2
**cases [1]** 2469/6
**cash [2]** 2407/13 2407/22
**category [1]** 2377/10
**causes [1]** 2388/16
**CAYNE [1]** 2372/8
**CDS [1]** 2407/24
**cents [2]** 2419/12 2419/19
**CEO [3]** 2387/22 2391/8 2393/15
**certain [6]** 2374/20 2399/18 2400/3 2414/17 2444/10 2447/17
**certainly [2]** 2450/21 2468/23
**certify [1]** 2477/4
**change [20]** 2374/23 2431/18 2431/19 2432/3 2432/7 2432/14 2432/15 2441/17 2443/2 2443/5 2456/18 2456/20 2459/8 2461/18 2461/20 2461/24 2462/1 2462/14 2467/24 2469/18
**changed [6]** 2405/13 2409/9 2425/11 2431/8 2431/15 2474/17
**changes [12]** 2394/16 2450/8 2450/11 2455/8

2455/11 2456/15 2458/19 2460/7 2460/23 2461/8 2467/24 2474/13
**changing [2]** 2375/1 2474/15 2474/15
**characterize [1]** 2436/15
**charge [5]** 2398/3 2398/11 2398/12 2398/19 2416/25
**charged [3]** 2414/25 2422/20 2422/21
**charging [3]** 2398/20 2398/25 2401/20
**CHARLES [1]** 2371/16
**chart [1]** 2397/14
**charts [1]** 2375/13
**check [3]** 2371/21 2421/25 2471/21
**cherry [1]** 2432/1
**cherry-picked [1]** 2432/1
**CIATTI [1]** 2372/12
**circle [1]** 2424/17
**circuit [11]** 2437/1 2440/3 2440/5 2440/6 2440/8 2440/13 2441/3 2441/11 2441/14 2468/23 2469/2
**circular [2]** 2389/8 2429/14
**circumstantial [1]** 2452/5
**cite [4]** 2401/9 2402/22 2403/2 2404/15
**cited [2]** 2406/4 2436/25
**Citi [1]** 2409/22
**Civil [2]** 2371/2 2371/9
**claim [3]** 2438/3 2441/12 2449/22
**claimed [1]** 2435/24
**claims [1]** 2465/6
**clarification [1]** 2443/4
**clarify [1]** 2472/21
**clarifying [1]** 2376/5
**class [21]** 2371/10 2371/20 2449/6 2449/24 2470/13 2470/13 2470/23 2471/1 2471/4 2471/14 2471/14 2471/15 2471/22 2473/16

2474/2 2474/6 2474/15 2474/16 2474/22
**classes [2]** 2377/3 2449/8
**clear [7]** 2379/8 2394/21 2394/22 2394/23 2412/1 2430/24 2444/14
**clearly [6]** 2388/16 2411/19 2439/2 2457/17 2465/9 2468/25
**clerk [1]** 2455/25
**clip [4]** 2392/8 2393/15 2394/19 2444/10
**close [4]** 2402/23 2405/18 2422/11 2450/2
**closing [19]** 2377/15 2377/16 2426/2 2426/15 2430/16 2435/13 2435/22 2437/3 2437/10 2439/3 2442/25 2445/1 2445/3 2448/9 2448/16 2448/17 2448/18 2454/12 2454/13
**closings [5]** 2435/8 2435/14 2442/22 2447/14 2448/4
**clouds [1]** 2432/15
**coauthors [1]** 2401/10
**COLATRIANO [1]** 2371/17
**collapse [3]** 2405/18 2405/24 2409/20
**collapsed [2]** 2408/2 2409/23
**collateral [2]** 2407/12 2407/18
**colleague [3]** 2438/25 2465/4 2469/11
**colleagues [4]** 2459/11 2461/21 2461/25 2475/6
**Collins [5]** 2463/20 2463/24 2464/14 2465/5 2465/7
**COLUMBIA [1]** 2371/1
**combined [1]** 2421/2
**come [16]** 2374/2 2376/17 2380/4 2380/10 2386/22

2414/8 2439/6 2439/8 2442/20 2444/15 2447/8 2447/13 2452/25 2465/6 2475/18
**comes [2]** 2376/14 2469/5
**comment [1]** 2409/16
**comments [3]** 2442/20 2442/21 2470/9
**commitment [31]** 2389/8 2390/4 2393/23 2396/1 2396/11 2396/20 2400/15 2401/6 2401/7 2401/15 2401/18 2402/13 2403/1 2403/11 2403/14 2404/11 2404/12 2405/14 2414/7 2414/20 2415/22 2417/15 2420/15 2420/19 2421/8 2422/1 2422/10 2422/13 2422/16 2432/5 2442/2
**commitments [6]** 2399/9 2400/22 2400/25 2401/1 2402/12 2403/20
**committee [14]** 2378/6 2378/8 2378/9 2378/12 2379/1 2379/2 2380/2 2433/21 2433/22 2433/23 2433/25 2434/3 2434/12 2434/14
**common [12]** 2405/15 2468/6 2470/20 2470/23 2471/15 2471/19 2472/2 2472/23 2473/5 2473/11 2473/12 2473/13
**communicated [1]** 2444/18
**companies [1]** 2464/7
**company [3]** 2372/12 2388/18 2449/19
**comparable [2]** 2398/20 2416/16
**comparator [1]** 2417/14
**comparators [2]** 2400/3 2418/2

**compare [3]** 2401/23 2407/4 2418/19
**compared [1]** 2402/24
**compares [1]** 2426/10
**comparing [3]** 2400/15 2404/4 2414/16
**comparison [13]** 2399/2 2403/11 2403/17 2404/6 2406/25 2407/6 2408/4 2414/4 2416/22 2436/7 2436/11 2437/3 2437/21
**comparisons [3]** 2399/18 2435/23 2438/17
**compensate [1]** 2466/16
**compensated [1]** 2419/21
**compensation [3]** 2411/7 2412/14 2418/10
**complain [1]** 2457/22
**complete [2]** 2405/18 2409/20
**completely [6]** 2410/3 2412/22 2415/11 2425/21 2453/9 2456/16
**complex [2]** 2415/4 2416/4
**complicated [1]** 2399/13
**computer [1]** 2372/25
**computer-aided [1]** 2372/25
**conceivable [2]** 2378/5 2378/8
**conceivably [1]** 2418/13
**concept [6]** 2397/6 2399/7 2399/13 2399/14 2460/19 2461/15
**concern [2]** 2433/13 2448/10
**concerned [7]** 2374/23 2387/23 2388/2 2388/7 2388/13 2388/15 2388/21
**concerning [1]**

**concluded [9]** 2393/8 2411/20 2412/20 2413/19 2426/22 2433/4 2464/8 2464/13 2476/25
**condition [2]** 2407/4 2408/1
**conduct [2]** 2417/25 2438/4
**conducted [1]** 2418/6
**confidence [2]** 2408/21 2434/3
**confident [4]** 2378/11 2433/1 2433/25 2434/8
**confirm [2]** 2375/21 2448/23
**conform [2]** 2471/24 2471/25
**conformed [1]** 2455/13
**confused [1]** 2469/16
**confusing [4]** 2428/23 2468/19 2469/12 2471/1
**confusion [1]** 2471/3
**Congress [6]** 2378/4 2378/5 2379/19 2379/21 2379/23 2410/1
**connection [5]** 2381/21 2385/16 2385/24 2386/3 2430/12
**conservative [1]** 2401/17
**conservator [2]** 2457/7 2463/24
**conservatorship [3]** 2439/13 2439/14 2464/12
**consider [8]** 2450/22 2451/10 2451/12 2453/11 2453/12 2453/17 2457/2 2466/10
**considered [11]** 2402/9 2406/13 2451/18 2452/7 2453/1 2453/13 2453/19 2454/7 2454/10 2454/15 2463/10
**consistent [9]** 2394/12 2394/14 2399/8 2447/5

2455/14 2456/16 2458/15
**Constitution [1]** 2372/21
**consulted [1]** 2475/5
**contains [1]** 2438/7
**context [7]** 2377/5 2384/15 2439/8 2439/11 2439/15 2439/16 2440/25
**CONTINUED [1]** 2372/1
**continuing [1]** 2389/7
**contract [5]** 2399/6 2399/10 2401/3 2401/3 2457/15
**contracting [1]** 2438/6
**contracts [14]** 2407/11 2407/24 2455/1 2455/3 2455/5 2455/10 2460/14 2460/25 2461/9 2461/15 2462/12 2463/6 2463/11 2465/18
**control [1]** 2401/13
**controversial [1]** 2430/25
**convey [1]** 2438/14
**COOPER [2]** 2371/16 2371/18
**copies [1]** 2428/2
**copy [5]** 2391/15 2391/18 2428/6 2447/12 2455/19
**corporate [2]** 2401/12 2401/13
**corporate-preferred [1]** 2401/12
**corporation [2]** 2415/16 2455/8
**correct [41]** 2380/24 2381/4 2381/23 2382/4 2382/11 2383/1 2385/7 2385/12 2385/16 2385/21 2386/8 2387/2 2387/16 2387/19 2388/7 2389/23 2390/17 2399/19 2400/3 2403/15 2408/24 2410/22 2410/24 2415/1 2416/20 2417/13 2417/16 2420/13

2420/24 2421/1 2421/22 2422/18 2438/1 2438/9 2446/20 2462/18 2473/18 2473/25 2477/4
**correcting [1]** 2376/7
**correctly [1]** 2463/8
**correspondence [4]** 2411/6 2412/13 2413/2 2413/3
**cost [17]** 2396/16 2396/19 2397/1 2397/6 2397/23 2399/3 2399/11 2399/18 2399/20 2399/24 2401/7 2401/16 2401/17 2414/1 2419/16 2419/21 2424/25
**could [42]** 2377/25 2378/5 2378/7 2378/13 2378/23 2380/10 2387/1 2389/15 2390/8 2395/3 2400/5 2403/5 2403/22 2409/6 2409/9 2409/11 2409/14 2412/17 2413/7 2414/23 2415/21 2417/10 2418/12 2426/16 2429/14 2430/8 2437/11 2448/3 2451/9 2451/12 2451/17 2453/6 2457/9 2457/21 2460/19 2464/7 2464/12 2465/15 2468/19 2469/15 2472/25 2475/1
**couldn't [2]** 2396/7 2462/5
**counsel [11]** 2378/11 2391/4 2394/15 2394/19 2395/15 2397/15 2411/11 2428/3 2450/7 2456/24 2457/18
**counsel's [1]** 2391/17
**country [1]** 2415/4
**counts [2]** 2400/20 2415/18
**couple [11]** 2375/1 2400/20 2423/15 2446/2 2454/24

**C**

**couple... [6]** 2458/18
2459/23 2460/12
2463/21 2467/6
2467/23
**course [8]** 2381/14
2425/10 2433/7
2435/14 2436/11
2436/21 2464/17
2466/11
**court [52]** 2371/1
2372/20 2376/16
2376/24 2378/22
2378/24 2379/24
2395/21 2397/9
2423/12 2428/3 2431/9
2433/2 2434/1 2434/5
2443/10 2445/14
2447/6 2448/14
2448/25 2450/7
2450/11 2451/16
2452/14 2452/23
2452/25 2453/5
2453/16 2454/2
2454/18 2455/5
2455/14 2455/21
2456/17 2456/23
2457/5 2457/11
2458/13 2458/24
2461/13 2463/20
2465/11 2468/25
2469/25 2470/12
2470/18 2470/21
2471/1 2471/9 2471/16
2476/18 2477/3
**Court's [22]** 2376/21
2435/7 2442/16 2447/3
2447/20 2450/8 2450/9
2452/24 2453/10
2453/23 2454/2
2454/25 2454/25
2455/3 2455/24 2456/9
2456/15 2458/15
2464/18 2465/21
2466/4 2469/3
**courtroom [2]** 2380/6
2427/19
**courts [3]** 2433/17
2433/20 2441/8
**covenant [4]** 2438/2
2458/7 2464/19
2465/18
**cover [2]** 2407/15
2451/25

**covered [1]** 2438/18
**CPP [2]** 2400/22
2410/3
**CRC [1]** 2372/20
**creating [1]** 2464/22
**credit [8]** 2401/13
2407/11 2407/17
2429/10 2429/15
2430/7 2431/14
2444/11
**crisis [2]** 2407/24
2418/11
**critical [1]** 2457/23
**criticism [3]** 2411/2
2411/4 2412/11
**criticisms [2]** 2413/16
2417/20
**criticized [2]** 2399/18
2400/2
**cross [12]** 2373/4
2373/7 2380/12
2380/14 2380/15
2405/12 2417/6
2417/18 2419/6
2425/22 2426/2 2431/3
**cross-examination [8]**
2373/4 2373/7 2380/12
2380/15 2417/6 2419/6
2425/22 2431/3
**cross-examine [1]**
2380/14
**Cts [1]** 2372/21
**cumulative [1]**
2389/22
**current [2]** 2455/24
2466/14
**currently [1]** 2445/16

**D**

**D.C [11]** 2371/19
2371/25 2372/11
2372/14 2372/17
2372/22 2440/5 2440/6
2440/13 2441/11
2441/14
**damages [20]** 2435/24
2436/20 2437/23
2438/24 2439/22
2440/20 2450/1 2450/5
2459/4 2459/6 2460/4
2460/5 2467/12 2468/1
2468/5 2468/7 2468/11
2469/14 2469/17
2474/20

**danger [1]** 2441/1
**dash [2]** 2394/20
2394/21
**data [10]** 2385/24
2386/3 2386/6 2386/6
2386/11 2401/6
2401/15 2401/18
2405/22 2415/1
**Date [1]** 2477/9
**dated [2]** 2381/3
2429/1
**Dave [6]** 2380/23
2381/17 2423/16
2424/3 2424/9 2424/13
**DAVID [5]** 2371/16
2372/9 2380/16
2392/13 2393/6
**day [4]** 2407/8 2407/17
2407/21 2442/12
**days [2]** 2423/15
2428/19
**DC [1]** 2371/6
**deal [1]** 2427/17
**dealers [1]** 2444/12
**dealing [3]** 2403/21
2458/8 2465/19
**debt [15]** 2375/16
2401/2 2401/3 2401/13
2401/22 2403/2 2405/5
2405/7 2407/24
2431/13 2431/22
2431/22 2432/8
2432/10 2432/14
**decade [2]** 2430/1
2430/3
**decades [2]** 2418/9
2436/3
**decertification [3]**
2377/4 2449/6 2449/8
**decertify [2]** 2377/3
2449/24
**decide [4]** 2437/25
2438/2 2475/20
2475/21
**decided [3]** 2447/6
2465/7 2468/24
**deciding [1]** 2466/8
**decision [9]** 2388/5
2442/1 2443/22
2451/16 2451/19
2452/7 2453/2 2453/13
2454/7
**decision-makers [1]**
2454/7

**decision-making [1]**
2451/19
**deck [4]** 2381/20
2445/1 2445/3 2445/9
**decline [1]** 2432/25
**declined [1]** 2407/17
**deep [1]** 2405/18
**default [2]** 2407/10
2407/11
**defendant [3]** 2372/7
2400/6 2403/23
**defendant's [1]**
2374/20
**defendants [35]**
2371/7 2376/12
2376/15 2378/14
2378/19 2379/7 2379/8
2380/17 2392/13
2393/4 2397/19
2411/17 2426/7
2428/15 2431/20
2435/12 2445/20
2450/14 2450/25
2451/4 2451/17 2453/2
2454/6 2455/18
2457/13 2457/19
2458/25 2459/4 2460/8
2462/3 2466/2 2474/8
2474/12 2474/14
2475/14
**defendants' [18]**
2377/15 2400/5
2403/22 2435/12
2445/1 2445/3 2449/4
2449/7 2455/13
2455/22 2456/24
2457/4 2462/20
2462/22 2463/22
2467/1 2469/9 2472/25
**defense [3]** 2391/17
2446/3 2476/17
**defer [1]** 2376/23
**definitely [3]** 2388/4
2447/24 2475/16
**Delaware [1]** 2372/3
**deleted [1]** 2474/19
**deliberate [1]** 2476/7
**deliberating [1]**
2476/3
**DeMarco [5]** 2376/8
2379/22 2444/16
2451/23 2452/3
**demonstrate [1]**
2454/14

demonstrative [1] 2437/8
demonstratives [1] 2453/15
denial [1] 2376/22
denied [2] 2442/13 2449/8
deny [2] 2440/16 2466/21
denying [2] 2449/4 2449/5
Department [2] 2394/6 2472/22
depends [1] 2448/7
deposit [4] 2414/5 2414/10 2416/6 2416/22
deposition [21] 2382/13 2383/5 2386/12 2387/24 2388/11 2390/7 2392/14 2393/1 2393/10 2394/19 2395/25 2402/6 2406/10 2406/19 2411/18 2412/1 2412/18 2444/10 2450/23 2451/2 2454/19
deposits [5] 2414/18 2416/9 2416/10 2416/11 2416/20
Depression [1] 2390/20
deprived [1] 2458/9
derived [1] 2381/20
described [1] 2437/20
describes [1] 2464/14
description [1] 2455/4
designated [3] 2391/24 2392/9 2393/1
designations [1] 2444/10
designed [1] 2466/16
desire [2] 2411/6 2412/14
despite [1] 2432/9
detail [2] 2430/6 2450/15
detailed [1] 2438/23
determine [1] 2474/20
determined [2] 2379/16 2416/18

developed [2] 2450/23 2450/5
development [1] 2432/8
DHARAN [13] 2373/3 2374/6 2376/2 2380/3 2380/15 2380/19 2381/10 2384/21 2390/25 2391/1 2391/4 2393/10 2426/16
did [73] 2378/25 2378/25 2379/1 2379/1 2382/20 2383/18 2385/23 2386/2 2386/7 2387/8 2387/13 2387/15 2389/18 2390/15 2390/14 2391/4 2393/13 2393/22 2394/8 2394/12 2394/15 2397/6 2397/8 2399/19 2400/4 2400/21 2401/23 2401/24 2402/1 2402/3 2403/2 2403/4 2403/16 2403/18 2406/2 2406/4 2406/5 2406/8 2406/12 2407/3 2414/16 2415/25 2416/3 2417/2 2417/2 2417/4 2417/8 2417/17 2417/21 2417/23 2417/24 2418/1 2418/2 2418/3 2418/4 2418/19 2421/15 2426/4 2430/1 2430/25 2431/23 2441/11 2441/20 2442/2 2442/9 2442/18 2457/18 2459/25 2471/12 2472/6 2472/9 2473/1 2473/2
didn't [9] 2376/17 2378/22 2386/23 2387/20 2400/24 2402/15 2409/5 2409/18 2457/2
difference [5] 2402/21 2404/16 2404/17 2444/16 2468/15
different [8] 2377/10 2380/23 2430/4 2441/7 2441/7 2462/24 2464/15 2464/19
differentiated [1]

difficulty [1] 2432/19
dire [1] 2410/21
direct [20] 2373/7 2380/12 2381/2 2395/16 2397/9 2401/19 2402/2 2403/9 2403/17 2406/7 2413/15 2415/10 2417/13 2417/17 2419/1 2420/11 2421/19 2426/5 2446/8 2452/4
directly [2] 2412/24 2463/23
directors [3] 2381/22 2391/6 2424/9
dirty [1] 2459/11
disagree [6] 2396/5 2396/7 2396/7 2410/3 2415/11 2415/12
disagreed [1] 2415/7
disagreement [3] 2421/6 2421/12 2460/11
disagreements [2] 2419/25 2421/5
disclaimed [1] 2413/11
disclosed [3] 2418/25 2429/12 2445/4
discovery [5] 2412/17 2413/11 2429/6 2429/19 2450/2
discretion [2] 2457/14 2465/16
discuss [1] 2461/25
discussed [4] 2399/23 2399/24 2452/2 2463/11
discussing [2] 2461/20 2461/24
discussion [7] 2392/12 2393/8 2409/1 2411/15 2413/19 2425/19 2426/22
Dismiss [2] 2457/12 2458/16
display [1] 2444/3
displayed [5] 2420/11 2446/7 2446/11 2446/16 2452/16
displaying [2] 2446/13 2446/21

disposes [1] 2464/16
disprove [1] 2430/17
dispute [7] 2441/10 2466/11 2466/12 2466/20 2466/24 2466/25 2468/24
distinction [1] 2429/10
distinguishing [1] 2405/1
distribute [1] 2442/18
distributed [2] 2450/7 2450/18
DISTRICT [4] 2371/1 2371/1 2371/13 2372/21
dividend [7] 2396/23 2409/5 2410/8 2418/22 2424/15 2429/14 2449/16
dividends [4] 2436/6 2439/17 2439/21 2458/10
do [78] 2374/3 2374/7 2375/18 2376/9 2377/17 2378/20 2379/1 2379/5 2379/14 2382/17 2382/19 2383/8 2383/12 2383/14 2383/21 2384/14 2385/2 2385/4 2385/25 2386/25 2389/9 2391/8 2391/15 2391/17 2394/4 2396/3 2397/19 2400/8 2400/16 2402/4 2402/5 2402/8 2403/10 2403/25 2404/1 2406/6 2406/9 2406/11 2406/16 2410/5 2411/3 2415/12 2417/5 2417/7 2417/9 2421/23 2422/2 2423/7 2424/2 2424/16 2426/17 2427/21 2430/23 2431/1 2432/16 2433/2 2434/22 2435/16 2437/12 2443/14 2443/15 2444/4 2447/9 2451/4 2453/16 2457/9 2457/21 2460/4 2465/15 2468/4 2468/6 2468/18 2473/24

# D

do... [4] 2475/11
2475/14 2475/24
2476/1
Doctor [1] 2380/13
document [11] 2381/1
2384/3 2392/15
2392/19 2426/19
2428/25 2429/1 2429/4
2429/23 2431/10
2451/25
documents [16]
2375/3 2375/22
2377/11 2381/16
2424/6 2428/18
2428/21 2429/22
2429/25 2430/1 2430/2
2430/6 2430/16
2432/16 2432/20
2451/21
does [4] 2405/2
2430/7 2465/6 2468/15
doesn't [12] 2396/12
2399/20 2401/15
2402/21 2405/8
2409/16 2426/18
2426/19 2457/8
2463/13 2465/15
2469/23
doing [4] 2416/16
2426/3 2426/3 2439/2
dollar [6] 2416/9
2435/25 2436/16
2437/2 2438/18
2440/10
dollars [2] 2419/12
2419/19
Don [2] 2387/22
2445/9
don't [42] 2379/1
2379/3 2382/12
2383/18 2383/25
2386/9 2387/24 2388/2
2388/8 2391/12
2400/18 2404/24
2406/21 2419/3 2424/5
2429/5 2431/16
2433/21 2434/2 2434/3
2434/12 2437/25
2438/9 2438/10 2440/9
2440/11 2440/17
2441/10 2448/14
2452/13 2454/10
2455/1 2469/10

2469/15 2469/18
2469/21 2469/22
2473/22 2475/17
2475/20 2476/1
2476/13
done [12] 2377/25
2380/23 2392/17
2399/9 2411/23 2412/2
2412/8 2412/17 2413/5
2422/23 2446/8
2446/12
doubt [2] 2433/14
2433/15
doubts [1] 2433/17
down [14] 2395/5
2395/11 2414/6
2414/19 2415/22
2416/1 2421/23 2422/9
2422/19 2427/6 2427/7
2427/8 2434/16
2471/20
downgrade [2]
2429/15 2431/12
downside [3] 2388/14
2388/16 2388/23
Dr [8] 2380/19 2381/10
2395/13 2408/10
2412/16 2425/22
2426/9 2426/17
Dr. [46] 2374/19
2375/5 2380/9 2384/21
2395/22 2397/3 2397/6
2397/24 2399/17
2400/12 2402/1 2403/2
2403/16 2406/6
2410/13 2410/20
2411/2 2411/4 2412/11
2412/16 2412/24
2413/16 2415/6 2417/2
2417/17 2417/21
2418/2 2419/1 2419/24
2421/6 2426/3 2426/16
2429/12 2430/18
2444/1 2446/8 2446/10
2446/18 2453/15
2453/19 2454/10
2454/15 2458/23
2458/24 2459/2
2459/25
Dr. Attari [32] 2375/5
2395/22 2397/3 2397/6
2397/24 2399/17
2400/12 2402/1 2403/2
2403/16 2406/6

2410/13 2410/20
2412/24 2415/6 2417/2
2417/17 2417/21
2418/2 2419/24 2421/6
2426/3 2429/12 2444/1
2446/18 2453/15
2453/19 2454/10
2458/23 2458/24
2459/2 2459/25
Dr. Attari's [11]
2374/19 2411/2 2411/4
2412/11 2412/16
2413/16 2419/1
2430/18 2446/8
2446/10 2454/15
Dr. Dharan [3] 2380/9
2384/21 2426/16
draft [2] 2381/3 2450/9
draw [8] 2389/9
2389/12 2389/16
2389/17 2389/24
2390/21 2394/1 2465/9
drawing [1] 2435/22
draws [4] 2389/8
2389/22 2389/25
2390/16
drew [1] 2403/17
drop [5] 2389/15
2390/19 2449/14
2449/25 2450/4
dropped [1] 2441/13
due [2] 2465/3
2469/11
during [4] 2374/19
2407/23 2446/8
2456/24
DX [7] 2446/2 2446/3
2451/11 2451/22
2451/25 2452/6
2453/25
DX-412 [4] 2451/11
2451/22 2452/6
2453/25
DX-529 [2] 2446/3
2451/25

# E

each [7] 2382/8 2399/3
2422/10 2430/6
2447/14 2471/22
2474/2
earlier [5] 2390/6
2394/13 2421/14
2444/9 2475/17

2448/1
early [1] 2448/1
earned [1] 2410/7
earthquake [2]
2390/10 2390/13
earthquake-type [1]
2390/13
easiest [1] 2416/21
easily [1] 2375/4
ECF [1] 2458/11
Economic [2] 2458/4
2461/13
economically [1]
2396/13
edit [1] 2471/25
effect [1] 2453/3
effectively [2] 2446/15
2449/16 2463/9
effort [1] 2391/13
Eisenhofer [1] 2372/2
either [5] 2387/13
2397/8 2414/24
2450/25 2458/14
elements [1] 2396/19
eliminate [1] 2475/1
eliminated [1] 2449/16
ELMO [1] 2428/17
else [1] 2444/18
email [1] 2451/22
emphasized [1]
2456/25
empirical [1] 2403/2
end [8] 2389/10
2390/2 2390/22
2403/20 2404/19
2416/19 2448/11
2469/12
ended [1] 2458/24
ends [1] 2461/7
enough [4] 2407/14
2433/18 2434/15
2434/18
ensure [1] 2414/17
ensuring [1] 2415/19
entered [1] 2380/6
enterprise [1] 2436/2
enterprises [2]
2396/12 2436/5
entirely [1] 2458/15
entitled [3] 2377/18
2469/20 2477/5
entity [2] 2463/25
2464/2
equal [1] 2409/10
equity [19] 2400/14

**E**

**equity... [18]** 2400/15
2400/22 2400/24
2401/2 2401/24
2401/25 2403/1
2403/14 2404/13
2405/5 2405/15
2405/19 2405/20
2408/5 2408/18
2408/19 2415/15
2424/16
**ERIC [1]** 2371/20
**eroding [1]** 2389/8
**especially [2]** 2432/9
2437/1
**essence [1]** 2396/10
**essential [2]** 2395/1
2410/5
**essentially [11]**
2401/1 2403/19
2409/15 2435/23
2436/15 2445/13
2457/2 2457/20 2465/4
2465/7 2466/17
**establish [1]** 2378/5
**established [4]** 2375/4
2378/7 2392/20 2454/6
**establishing [1]**
2436/9
**estimate [6]** 2383/22
2384/5 2384/13
2384/24 2385/6 2387/1
**estimated [1]** 2389/3
**et [3]** 2371/2 2371/2
2371/6
**even [15]** 2389/14
2401/16 2402/10
2402/22 2402/24
2404/19 2406/14
2406/16 2413/7
2416/13 2416/17
2424/21 2426/4
2432/15 2432/15
**event [1]** 2378/14
**eventually [1]** 2403/19
**ever [4]** 2402/10
2429/18 2432/3
2432/14
**every [1]** 2445/12
**everybody [2]** 2405/21
2409/24
**everything [5]** 2419/15
2475/24 2476/1
2476/18 2476/22

**evidence [48]** 2373/11
2373/11 2374/15
2375/19 2384/7
2394/15 2401/22
2406/19 2426/11
2427/14 2427/24
2429/3 2429/25 2430/1
2430/2 2430/12
2430/13 2431/20
2433/3 2436/8 2436/18
2439/6 2439/7 2439/8
2444/2 2444/15
2444/17 2445/20
2446/4 2446/7 2451/11
2451/13 2451/18
2451/24 2452/4 2452/4
2452/11 2452/13
2452/18 2454/1 2454/4
2454/9 2454/12
2471/13 2472/7
2472/10 2473/2 2473/3
**evidentiary [1]**
2377/24
**exact [2]** 2391/13
2431/9
**exactly [5]** 2394/21
2416/21 2416/21
2465/12 2467/18
**examination [15]**
2373/4 2373/4 2373/7
2373/7 2380/12
2380/12 2380/15
2390/25 2395/16
2417/6 2417/18 2419/6
2425/22 2431/3 2446/9
**examine [1]** 2380/14
**example [3]** 2390/10
2397/23 2431/2
**exception [3]** 2462/2
2468/25 2469/1
**excerpt [1]** 2392/14
**excerpts [2]** 2391/23
2450/23
**excess [1]** 2418/21
**exchange [1]** 2437/10
**excluded [1]** 2436/20
**excuse [1]** 2391/25
**exercise [2]** 2458/1
2465/16
**exercised [1]** 2457/13
**EXHIBIT [4]** 2373/10
2375/24 2375/25
2446/3
**exhibits [8]** 2374/15

2375/8 2375/22 2376/3
2427/13 2427/23
2451/13 2453/25
**exist [1]** 2430/1
**existed [1]** 2430/3
**exited [1]** 2427/19
**expand [2]** 2397/10
2402/18
**expect [4]** 2414/24
2439/19 2457/9
2457/18
**expectations [7]**
2438/6 2439/9 2439/16
2441/1 2457/15 2463/5
2465/18
**expected [4]** 2382/25
2383/9 2383/16
2458/11
**experience [1]** 2418/9
**expert [11]** 2374/20
2412/17 2429/8
2429/18 2429/18
2430/9 2430/10
2430/14 2446/10
2450/1 2458/22
**expertise [1]** 2418/11
**experts [2]** 2459/24
2460/1
**explain [7]** 2375/3
2428/24 2429/8
2430/14 2443/23
2446/9 2476/21
**explained [1]** 2438/19
**explaining [5]** 2413/6
2429/4 2429/20 2430/6
2466/25
**explanation [2]**
2428/21 2429/19
**explicitly [1]** 2440/19
**extended [1]** 2387/5
**extension [1]** 2464/3
**extensively [2]**
2399/21 2457/5
**extent [2]** 2438/23
2453/1
**extra [1]** 2416/15

**F**

**F2d [1]** 2469/2
**face [1]** 2452/2
**facility [1]** 2405/13
**fact [17]** 2385/23
2386/7 2387/11 2394/4
2396/7 2396/22

2399/24 2401/8
2401/16 2402/20
2410/9 2432/3 2436/19
2436/20 2438/11
2453/19 2462/24
**factor [2]** 2407/25
2451/15
**facts [8]** 2379/15
2379/20 2380/3 2438/8
2438/10 2438/12
2443/3 2443/3
**failing [1]** 2411/1
**fair [11]** 2399/17
2400/11 2414/21
2415/6 2433/18
2434/15 2434/18
2442/4 2453/21 2458/8
2465/19
**FAIRHOLME [1]**
2371/2
**faith [2]** 2458/8
2465/19
**faithful [1]** 2465/20
**fall [1]** 2437/19
**falls [1]** 2448/15
**familiar [2]** 2406/14
2406/16
**FANNIE [47]** 2371/9
2380/24 2381/22
2382/11 2382/19
2382/25 2383/16
2385/20 2386/5
2386/15 2386/20
2387/6 2391/6 2391/8
2393/16 2393/19
2393/24 2400/13
2421/24 2421/25
2422/13 2422/20
2423/2 2423/17
2424/10 2424/10
2424/13 2424/13
2424/15 2424/18
2424/21 2424/25
2425/4 2425/6 2460/14
2464/2 2468/2 2468/2
2470/23 2471/13
2471/17 2471/21
2472/7 2472/10 2473/4
2473/8 2473/10
**Fannie's [4]** 2383/8
2383/22 2384/5 2385/6
**far [6]** 2409/4 2410/13
2410/21 2420/16
2423/20 2424/16

# F

**FDIC [18]** 2410/15
2411/3 2413/12
2413/16 2413/23
2414/5 2414/8 2414/9
2414/10 2414/16
2414/17 2415/3 2415/7
2415/9 2415/10
2415/24 2416/17
2417/15
**FDIC's [1]** 2415/14
**fed [2]** 2402/13
2403/19
**fed's [1]** 2403/13
**federal [11]** 2371/5
2372/7 2372/12
2372/15 2404/10
2405/23 2417/14
2437/1 2440/3 2440/8
2441/3
**fee [15]** 2396/2
2396/25 2398/12
2398/16 2398/19
2398/24 2398/25
2399/1 2409/6 2411/25
2414/22 2417/22
2418/6 2420/15
2421/21
**fees [2]** 2399/5
2416/17
**few [5]** 2381/14
2428/19 2429/2 2432/1
2443/10
**FHFA [17]** 2384/4
2417/25 2439/14
2451/18 2452/7
2453/12 2454/7
2456/25 2457/8
2457/21 2458/5 2458/6
2463/15 2463/17
2463/24 2464/7
2464/11
**FHFA's [1]** 2458/6
**field [1]** 2418/9
**file [2]** 2376/17
2376/23
**filed [3]** 2378/17
2378/18 2452/23
**filing [2]** 2377/2
2377/11
**filings [1]** 2376/15
**fill [1]** 2469/24
**final [5]** 2424/8 2450/9
2450/19 2460/21

**finalize [1]** 2442/21
**FINANCE [2]** 2371/5
2372/8
**financial [13]** 2383/11
2383/20 2385/15
2385/20 2386/16
2386/20 2407/4
2407/24 2409/19
2409/24 2410/25
2418/10 2418/11
**find [3]** 2389/14
2399/21 2453/12
**finding [2]** 2438/7
2443/2
**finds [1]** 2466/12
**fine [5]** 2472/17
2474/14 2474/25
2475/2 2475/6
**finished [1]** 2380/11
**finishing [1]** 2376/1
**first [23]** 2374/8
2381/1 2381/8 2384/15
2392/11 2404/3
2405/11 2408/22
2419/18 2420/7
2420/16 2429/24
2437/14 2439/23
2440/1 2449/3 2451/8
2453/25 2454/25
2467/9 2468/22
2470/18 2474/1
**Fitch [4]** 2374/19
2427/24 2429/11
2429/23
**five [4]** 2405/14 2428/5
2428/5 2428/5
**Flexner [1]** 2371/24
**flip [1]** 2397/13
**floor [1]** 2380/2
**focus [6]** 2396/17
2398/24 2404/6 2414/2
2415/5 2419/16
**focused [3]** 2381/19
2382/5 2463/1
**focuses [1]** 2397/3
**focusing [1]** 2460/21
**folks [1]** 2444/18
**follow [1]** 2377/4
**follows [1]** 2456/14
**forecast [10]** 2382/11
2382/16 2385/3 2385/9
2387/9 2388/25 2389/4
2389/7 2390/15

**foregoing [1]** 2477/4
**forget [1]** 2476/16
**forgotten [1]** 2459/10
**form [12]** 2404/11
2404/13 2407/13
2459/7 2467/7 2467/11
2469/10 2469/23
2469/25 2470/12
2470/15 2471/10
**formally [1]** 2377/6
**format [1]** 2456/15
**forming [2]** 2393/12
2453/20
**forth [2]** 2417/21
2438/3
**forward [2]** 2380/10
2425/13
**forward-looking [1]**
2425/13
**found [2]** 2465/1
2469/17
**foundation [3]**
2390/12 2428/20
2430/18
**four [3]** 2392/3 2392/4
2475/10
**Fourteen [1]** 2392/2
**Fourth [2]** 2468/22
2469/2
**frame [1]** 2386/25
**framed [1]** 2380/3
**frankly [1]** 2429/5
**FREDDIE [44]** 2371/9
2385/11 2385/15
2385/20 2385/24
2386/6 2386/16
2386/21 2387/4 2387/8
2387/12 2387/22
2389/3 2389/7 2389/21
2390/3 2390/15
2393/24 2400/13
2421/24 2422/2
2422/16 2422/21
2423/8 2423/10
2424/11 2460/15
2464/2 2468/2 2468/5
2470/20 2470/23
2471/14 2471/15
2471/18 2471/19
2472/2 2472/11
2472/12 2472/18
2473/4 2473/5 2473/9
2473/12

**Freddie's [5]** 2386/2
2386/8 2386/23
2388/25 2389/6
**Friday [7]** 2380/11
2380/22 2442/17
2442/21 2447/12
2450/9 2450/10
**friends [1]** 2472/14
**fruits [1]** 2458/10
**frustrated [1]** 2457/15
**frustrates [1]** 2465/17
**frustrating [1]** 2458/10
**fully [4]** 2402/17
2419/21 2464/17
2469/4
**funds [2]** 2371/2
2414/7
**further [6]** 2395/4
2419/4 2427/1 2440/12
2471/20 2475/6
**future [7]** 2382/25
2383/9 2383/17
2383/22 2384/6 2385/6
2385/9

# G

**gave [7]** 2395/22
2401/18 2414/5 2431/7
2439/14 2442/1 2455/5
**general [2]** 2393/2
2393/3
**generalized [1]**
2392/16
**generally [3]** 2392/17
2396/4 2466/6
**gentlemen [1]** 2380/7
**get [18]** 2377/17
2396/4 2398/9 2402/16
2402/23 2404/24
2404/24 2416/1
2416/22 2420/22
2430/16 2434/11
2448/3 2448/8 2469/15
2475/10 2475/11
2476/10
**getting [2]** 2378/21
2425/12
**Gill [1]** 2469/1
**give [12]** 2398/18
2404/2 2409/1 2429/11
2431/17 2448/17
2454/18 2455/18
2455/22 2458/14
2459/17 2469/25

**G**

given [5] 2447/10
2453/22 2455/2
2456/17 2469/6
gives [1] 2448/16
giving [1] 2459/11
Gluck [3] 2447/1
2452/21 2454/22
go [27] 2381/25
2384/25 2385/1
2389/22 2392/10
2396/9 2411/11
2413/17 2421/16
2421/25 2422/5 2425/5
2431/16 2432/18
2434/11 2439/20
2440/2 2440/4 2441/11
2442/8 2442/15 2448/1
2456/5 2456/6 2459/21
2471/6 2476/17
goes [4] 2397/5
2439/16 2448/17
2464/5
going [55] 2376/15
2376/17 2376/23
2377/2 2380/9 2388/23
2397/22 2398/3 2398/4
2398/6 2398/11
2398/24 2405/24
2412/7 2412/7 2412/9
2412/23 2412/24
2412/25 2413/4 2413/4
2413/5 2413/9 2413/17
2419/10 2421/4
2428/17 2429/3 2430/2
2430/15 2431/14
2437/13 2439/3 2439/4
2439/9 2439/13 2440/2
2441/2 2442/5 2442/18
2447/18 2447/18
2448/8 2452/12
2457/19 2464/16
2473/19 2473/23
2474/23 2475/10
2475/10 2475/12
2475/13 2475/17
2476/3
good [18] 2374/5
2380/7 2380/13
2380/19 2380/20
2395/19 2395/20
2414/4 2414/4 2419/8
2419/9 2428/14
2442/23 2445/22

got [14] 2391/14
2396/23 2398/10
2399/4 2399/5 2399/5
2405/14 2405/15
2407/14 2409/4 2409/4
2409/14 2434/2
2442/17
govern [1] 2465/6
governance [1]
2460/24
government [3]
2408/2 2409/23 2432/8
government's [1]
2417/14
governs [1] 2468/23
Grant [1] 2372/2
granted [1] 2456/25
Great [3] 2390/20
2435/19 2437/13
grossly [1] 2441/25
Grossmann [1] 2372/5
grounds [1] 2430/19
Group [1] 2409/22
GSE [4] 2375/15
2431/22 2432/12
2457/1
GSE's [1] 2404/12
GSEs [31] 2401/20
2402/23 2404/5 2404/6
2405/3 2406/25 2407/4
2408/4 2409/4 2409/14
2410/6 2411/5 2412/12
2414/4 2414/6 2414/19
2415/20 2416/16
2416/25 2417/25
2418/22 2420/19
2421/2 2421/8 2421/9
2421/21 2432/4
2439/12 2458/6
2460/24 2465/14
guess [3] 2378/17
2440/1 2470/18

**H**

had [45] 2379/19
2380/1 2380/11 2381/2
2384/7 2385/14 2386/6
2386/9 2390/7 2394/24
2399/25 2402/9
2402/10 2406/13
2407/12 2407/19
2407/21 2408/2 2408/5

2458/7 2465/19 2466/6
2475/5
half [3] 2437/15
2466/15 2475/12
HAMISH [8] 2371/23
2374/5 2391/2 2427/10
2430/21 2435/5
2438/22 2447/16
Hampshire [1]
2371/19
hand [3] 2428/6
2455/16 2455/24
handed [2] 2456/11
2461/5
handout [1] 2456/9
handy [1] 2428/16
happen [1] 2425/13
happened [8] 2390/20
2425/15 2439/17
2439/18 2441/25
2444/16 2444/17
2468/11
happens [1] 2398/16
happy [5] 2439/24
2450/22 2455/16
2455/24 2475/5
hard [1] 2476/6
harm [8] 2436/10
2436/19 2437/21
2439/5 2449/11
2449/12 2471/15
2473/6
harmed [1] 2436/13
has [26] 2392/20
2412/19 2415/24
2418/6 2419/22
2419/24 2425/22
2425/24 2426/11
2426/17 2429/20
2430/17 2433/8 2433/9
2436/1 2444/15
2445/16 2447/24
2450/7 2450/11

2410/9 2410/9 2416/9
2421/25 2422/2
2429/13 2442/20
2442/21 2444/12
2444/16 2450/8
2450/17 2450/19
2453/15 2457/11
2458/2 2458/3 2458/18
2461/10 2462/17
2463/21 2465/11
2465/13
hadn't [1] 2399/24

245 1/25 2456/17
2457/5 2457/6 2468/1
2468/24
hasn't [2] 2377/6
2468/11
have [126]
haven't [3] 2387/10
2422/23 2459/10
having [6] 2431/25
2433/22 2433/23
2437/14 2466/17
2476/6
he [89] 2374/20
2374/22 2380/10
2380/11 2383/19
2386/9 2388/6 2388/20
2391/9 2391/11
2392/21 2394/21
2395/1 2395/2 2395/3
2395/10 2396/8 2396/9
2396/9 2396/10 2397/3
2397/8 2399/20
2399/22 2399/24
2400/2 2400/4 2400/15
2402/4 2402/5 2402/7
2402/8 2402/9 2402/9
2402/10 2403/4
2403/18 2404/10
2405/8 2405/10
2405/12 2406/8 2406/9
2406/12 2406/13
2406/13 2406/14
2406/16 2406/16
2406/21 2411/19
2411/19 2411/21
2411/24 2411/25
2412/1 2412/7 2412/7
2412/17 2412/18
2412/19 2413/6 2413/9
2413/15 2415/6 2415/8
2415/8 2415/9 2415/14
2415/16 2415/25
2417/2 2417/4 2417/8
2417/9 2417/23 2418/4
2419/24 2421/13
2421/15 2426/4 2426/9
2426/18 2426/19
2431/6 2431/7 2444/17
2451/24 2457/18
he's [10] 2385/8
2396/13 2400/20
2402/14 2412/9
2413/13 2413/15
2413/17 2426/3 2465/4

# H

**heading [1]** 2465/5
**hear [11]** 2402/3 2417/21 2428/12 2434/4 2434/7 2435/17 2442/9 2448/18 2462/5 2476/13 2476/22
**heard [13]** 2378/3 2379/12 2402/10 2411/12 2419/24 2425/16 2426/18 2433/23 2436/1 2443/1 2445/16 2460/1 2468/21
**hearing [1]** 2476/12
**hearsay [1]** 2453/1
**heart [1]** 2396/15
**heck [1]** 2457/21
**held [2]** 2463/20 2468/25
**help [4]** 2405/22 2414/10 2422/4 2439/12
**helped [1]** 2408/3
**helpful [1]** 2399/12
**HERA [10]** 2456/25 2457/7 2457/21 2461/13 2462/7 2462/8 2463/8 2463/9 2463/15 2463/19
**here [35]** 2374/6 2379/18 2383/25 2384/1 2388/21 2398/10 2398/17 2399/1 2404/4 2410/19 2415/9 2420/8 2420/16 2420/19 2421/5 2422/4 2422/9 2422/12 2423/14 2423/15 2426/13 2427/17 2432/17 2440/3 2441/25 2445/12 2449/20 2454/2 2460/18 2461/15 2463/15 2464/18 2465/7 2465/25 2466/6
**here's [1]** 2431/15
**HERMAN [3]** 2372/20 2477/3 2477/9
**higher [3]** 2401/12 2405/7 2437/23
**highly [3]** 2387/12 2426/12 2444/19
**him [11]** 2400/16

**his [59]** 2375/13 2380/11 2383/10 2383/22 2385/6 2385/25 2387/5 2388/14 2393/1 2393/1 2393/3 2395/22 2395/22 2395/25 2396/5 2397/4 2397/7 2397/8 2397/9 2399/23 2400/25 2402/1 2402/2 2402/5 2403/3 2403/17 2406/7 2406/9 2406/19 2408/8 2410/12 2411/9 2411/24 2412/1 2412/6 2412/18 2413/1 2413/9 2413/12 2413/14 2413/14 2415/12 2417/17 2417/18 2417/21 2418/25 2425/23 2426/4 2426/4 2426/12 2426/14 2429/12 2431/3 2446/19 2448/16 2453/20 2457/18 2459/25 2465/4
**historically [1]** 2432/6
**histories [2]** 2379/21 2379/25
**history [2]** 2432/8 2439/17
**HOFFMAN [7]** 2372/9 2373/7 2397/18 2411/16 2412/22 2426/6 2428/15
**home [2]** 2372/12 2448/17
**honest [3]** 2382/24 2383/8 2383/16
**Honor [114]**
**Honor's [4]** 2443/5 2443/21 2446/15 2460/20
**HONORABLE [1]** 2371/13
**hope [1]** 2399/12
**hour [5]** 2437/15 2475/9 2475/12 2475/15 2475/15
**hours [4]** 2447/14 2447/18 2448/24

**house [5]** 2390/11 2398/2 2398/7 2398/23 2434/22
**housing [8]** 2371/5 2372/8 2389/16 2390/11 2390/19 2425/11 2458/4 2461/13
**how [20]** 2382/25 2383/9 2383/16 2390/14 2401/22 2407/3 2418/19 2421/23 2426/10 2427/25 2430/6 2431/1 2431/7 2441/3 2446/9 2447/17 2448/7 2448/21 2469/15 2470/16
**HOWARD [1]** 2372/8
**however [1]** 2429/17
**huh [1]** 2420/5
**HUME [17]** 2371/23 2373/4 2374/4 2374/6 2391/2 2392/24 2427/10 2429/9 2429/20 2430/15 2430/21 2433/9 2435/5 2438/22 2443/1 2447/16 2448/16
**hundredth [1]** 2404/18

# I

**I'd [7]** 2393/14 2441/3 2448/13 2455/16 2455/24 2458/1 2475/25
**I'll [17]** 2422/4 2422/24 2424/7 2427/17 2428/11 2428/25 2439/2 2443/22 2444/24 2447/7 2447/11 2448/24 2454/19 2463/23 2467/17 2470/5 2474/9
**I'm [45]** 2378/11 2378/21 2378/24 2384/18 2388/4 2397/16 2397/22 2398/21 2398/24 2399/1 2402/15 2406/15 2411/10 2411/18 2412/10 2415/5 2419/10 2421/4

2431/2 2433/1 2433/25 2437/13 2438/25 2439/24 2440/22 2440/25 2442/18 2443/9 2447/23 2448/13 2456/4 2456/19 2458/21 2461/1 2461/23 2462/6 2462/11 2463/1 2472/8 2473/2 2473/8 2473/11 2475/5
**I've [8]** 2399/9 2407/14 2422/9 2433/23 2434/13 2450/18 2456/11 2475/5
**IAN [5]** 2372/9 2397/18 2411/16 2426/6 2428/14
**idea [1]** 2466/11
**identification [1]** 2459/1
**identified [1]** 2460/1
**identifies [1]** 2458/23
**identify [1]** 2437/11
**ignores [1]** 2421/13
**IGs [1]** 2400/23
**illustrate [1]** 2397/10
**imagine [1]** 2389/15
**immediate [1]** 2434/21
**impact [2]** 2426/12 2426/14
**implication [1]** 2465/9
**implied [5]** 2416/24 2438/2 2458/7 2464/19 2465/18
**implies [2]** 2467/25 2468/10
**importance [1]** 2457/23
**important [7]** 2388/5 2399/13 2402/17 2457/16 2464/10 2464/22 2466/7
**importantly [2]** 2415/23 2415/23
**imposed [3]** 2418/13 2425/7 2425/7
**improper [2]** 2410/12 2437/3
**inadequate [1]** 2441/25
**inappropriate [3]** 2425/21 2436/8

**I**

**inappropriate... [1]** 2462/23
**INC [1]** 2371/2
**include [1]** 2387/15
**included [3]** 2385/10 2389/1 2390/18
**includes [1]** 2389/25
**including [6]** 2395/22 2409/21 2430/12 2436/24 2447/22 2453/7
**inconsistent [3]** 2394/13 2455/4 2470/16
**incorrectly [1]** 2437/18
**increase [2]** 2411/7 2412/14
**increased [2]** 2405/13 2407/25
**incredibly [2]** 2390/19 2408/1
**indicated [7]** 2397/1 2404/22 2405/17 2418/14 2419/15 2419/20 2449/9
**indicates [2]** 2426/8 2429/24
**indicating [2]** 2411/6 2412/14
**indulgence [2]** 2435/7 2447/20
**industry [2]** 2397/2 2399/8
**infer [1]** 2415/10
**inference [2]** 2437/22 2474/10
**inform [4]** 2455/9 2460/25 2461/8 2463/10
**information [8]** 2385/24 2386/3 2386/8 2386/22 2386/22 2386/23 2391/14 2395/2
**informed [9]** 2446/10 2447/24 2461/14 2462/4 2462/4 2462/9 2462/9 2462/10 2462/12
**initial [3]** 2399/22 2475/11 2476/11
**Initially [1]** 2409/7

**injury [2]** 2449/15 2449/15
**input [1]** 2388/5
**inputs [1]** 2401/2
**inquiry [2]** 2464/18 2464/20
**insert [1]** 2454/19
**insertion [1]** 2469/8
**instance [2]** 2376/24 2460/23
**instead [6]** 2400/13 2412/18 2462/3 2462/21 2471/17 2471/21
**institutions [4]** 2400/22 2400/24 2416/4 2416/23
**instruct [3]** 2452/14 2453/17 2464/10
**instructed [2]** 2455/10 2455/14
**instructing [1]** 2452/19
**instruction [40]** 2447/4 2447/4 2451/1 2451/2 2451/9 2452/10 2453/5 2453/9 2453/22 2454/11 2454/19 2454/20 2454/25 2455/2 2455/4 2455/13 2455/23 2456/9 2456/17 2457/24 2458/1 2458/2 2458/22 2459/6 2459/23 2460/3 2460/13 2460/22 2461/4 2463/4 2463/22 2465/10 2465/20 2466/4 2466/5 2466/14 2467/1 2469/3 2469/5 2469/6
**instructions [18]** 2376/9 2377/18 2377/19 2438/3 2438/13 2442/16 2442/17 2448/2 2448/9 2448/22 2450/8 2450/10 2450/16 2450/19 2450/21 2450/21 2454/25 2470/9
**instructs [1]** 2469/9
**instrument [1]** 2431/13
**insurance [7]** 2407/10

2407/13 2407/14 2407/19 2414/5 2416/6 2416/22
**insured [4]** 2416/8 2416/10 2416/10 2416/19
**insuring [1]** 2421/10
**intended [1]** 2383/10
**intent [1]** 2389/13
**interest [33]** 2398/4 2398/5 2398/22 2399/4 2401/4 2404/16 2437/17 2439/15 2450/14 2457/1 2457/3 2457/8 2458/5 2463/18 2464/1 2464/6 2464/8 2464/14 2465/2 2465/14 2466/5 2466/9 2466/13 2466/16 2466/21 2467/2 2467/21 2468/5 2468/7 2468/16 2468/22 2469/4 2469/17
**interests [3]** 2450/17 2463/16 2464/24
**internal [5]** 2385/15 2385/24 2386/3 2386/8 2386/24
**internet [1]** 2429/7
**interpreted [1]** 2395/1
**interpreting [1]** 2415/9
**interrupt [1]** 2402/15
**interrupted [1]** 2411/11
**invested [4]** 2409/11 2410/2 2439/11 2439/16
**investment [1]** 2400/21
**investors [1]** 2431/25
**involving [1]** 2413/23
**irrelevant [4]** 2428/23 2429/23 2430/11 2432/20
**is [289]**
**isn't [1]** 2452/19
**isolation [4]** 2396/17 2397/4 2399/10 2414/2
**issuance [1]** 2436/3
**issue [13]** 2374/14 2377/23 2378/1 2378/20 2392/16 2403/1 2403/3 2405/5 2443/18 2463/22

2464/16 2464/19 2468/24
**issued [2]** 2429/13 2449/17
**issues [3]** 2374/7 2466/2 2467/7
**it [221]**
**it's [64]** 2374/5 2375/13 2377/9 2378/8 2381/24 2383/19 2396/10 2396/12 2397/2 2399/7 2399/13 2399/17 2400/23 2401/3 2401/10 2401/23 2402/17 2404/20 2405/11 2405/19 2408/9 2412/11 2412/25 2413/14 2415/15 2416/13 2419/17 2419/23 2424/16 2424/17 2426/20 2427/6 2429/21 2430/24 2431/13 2431/15 2433/1 2434/11 2434/16 2436/18 2437/17 2439/6 2439/11 2439/15 2439/15 2440/17 2442/13 2444/19 2444/19 2445/15 2445/21 2447/17 2447/18 2456/9 2464/10 2464/22 2466/17 2466/18 2469/2 2469/2 2469/21 2469/21 2470/16 2474/1
**italicized [1]** 2467/14
**italics [1]** 2474/5
**item [2]** 2376/12 2399/10
**items [1]** 2454/6
**iteration [1]** 2424/4
**iterations [1]** 2423/16
**its [12]** 2387/9 2396/17 2403/20 2430/7 2431/14 2450/11 2457/6 2457/8 2457/12 2458/17 2464/12 2464/25
**itself [7]** 2377/10 2387/8 2449/14 2457/1 2458/14 2459/7

**I**

itself... [1] 2474/18

**J**

job [1] 2439/14
join [1] 2458/25
Jones [10] 2376/11
 2379/6 2435/11
 2442/24 2445/7
 2459/16 2461/21
 2461/25 2466/1
 2474/10
journal [1] 2401/10
judge [3] 2371/13
 2410/16 2430/21
judgment [11] 2376/18
 2436/21 2442/10
 2449/5 2449/7 2449/12
 2449/23 2457/6
 2457/12 2458/17
 2465/4
judicial [22] 2376/4
 2378/1 2378/3 2378/13
 2378/15 2378/23
 2378/24 2378/25
 2379/10 2379/12
 2379/15 2379/24
 2427/14 2427/21
 2432/25 2433/1 2433/2
 2433/12 2433/21
 2434/1 2434/5 2434/13
judiciary [1] 2434/22
July [3] 2381/3
 2393/25 2425/4
jump [1] 2441/18
junior [10] 2468/6
 2470/21 2471/21
 2472/2 2472/16
 2472/18 2473/4 2473/5
 2473/8 2473/9
jury [76] 2371/12
 2376/10 2376/14
 2377/21 2377/25
 2380/5 2380/6 2385/11
 2391/1 2397/10 2402/1
 2426/11 2427/17
 2427/19 2430/17
 2436/1 2436/17
 2437/25 2438/1 2438/3
 2438/11 2438/13
 2442/22 2444/3
 2444/22 2445/12
 2445/16 2445/20
 2446/7 2446/9 2446/11

 2446/13 2446/17
 2447/24 2448/1
 2448/17 2450/8 2451/9
 2451/11 2452/12
 2452/14 2452/16
 2452/18 2452/18
 2452/19 2453/10
 2453/17 2455/6
 2455/10 2456/25
 2457/17 2457/19
 2457/20 2460/1
 2463/15 2464/11
 2464/17 2464/22
 2465/7 2465/9 2465/13
 2466/10 2466/12
 2466/21 2467/1 2468/1
 2468/18 2469/13
 2469/15 2469/19
 2471/1 2471/20
 2475/16 2476/2
 2476/18 2476/22
jury's [3] 2467/15
 2468/16 2476/6
just [95] 2375/9
 2375/18 2376/12
 2376/16 2377/9 2379/8
 2380/21 2381/7
 2383/18 2389/25
 2396/4 2396/17 2397/3
 2397/13 2397/22
 2398/24 2401/17
 2401/21 2402/16
 2402/19 2405/3 2406/5
 2408/19 2409/16
 2410/4 2411/5 2412/4
 2412/12 2413/15
 2414/2 2414/5 2414/24
 2415/2 2415/5 2415/20
 2415/21 2415/23
 2416/3 2418/21
 2421/11 2421/11
 2426/9 2427/23
 2429/21 2430/15
 2431/15 2431/16
 2433/8 2433/21
 2433/23 2434/2 2434/2
 2434/18 2435/2 2437/8
 2437/10 2437/14
 2437/20 2439/2
 2439/24 2441/23
 2442/25 2443/4 2446/1
 2448/14 2449/25
 2453/24 2454/13
 2454/17 2456/3

 2456/15 2457/7
 2458/18 2459/17
 2459/18 2461/5
 2461/24 2463/11
 2463/21 2463/23
 2467/6 2467/23
 2468/14 2468/21
 2469/17 2470/11
 2470/15 2470/16
 2471/1 2471/3 2472/20
 2474/10 2474/23
 2475/4 2475/15
justified [4] 2413/8
 2414/13 2414/23
 2418/13
justify [1] 2449/23
Justison [1] 2372/3

**K**

KAPLAN [5] 2371/23
 2373/7 2412/3 2425/20
 2445/10
Kaye [1] 2372/10
keep [3] 2388/19
 2407/12 2476/22
Kessler [1] 2371/21
Kevin [2] 2403/6
 2417/11
key [1] 2405/1
kick [1] 2439/7
kids [1] 2447/25
kind [7] 2378/4 2385/1
 2390/10 2432/16
 2434/6 2434/9 2437/2
King [2] 2371/21
 2372/13
Kirk [1] 2371/18
knew [1] 2405/21
know [49] 2377/18
 2378/6 2379/1 2379/3
 2379/5 2382/12
 2385/25 2386/7 2386/9
 2387/4 2387/21
 2387/24 2387/25
 2388/2 2390/11 2394/4
 2396/15 2398/5
 2398/14 2400/21
 2402/12 2404/4 2404/5
 2405/20 2407/14
 2408/1 2408/5 2410/25
 2411/23 2413/25
 2414/14 2418/6
 2421/23 2422/2
 2422/23 2425/15

 2426/19
 2429/5 2430/5 2434/12
 2434/16 2450/13
 2459/18 2463/19
 2469/6 2469/20 2470/5
 2476/21
knows [3] 2448/14
 2456/23 2470/12
Kravetz [1] 2417/5

**L**

ladies [1] 2380/7
laid [1] 2428/20
LAMBERTH [2]
 2371/13 2430/21
language [2] 2455/7
 2455/14 2459/1
 2463/22 2463/23
 2466/23 2466/24
 2467/4 2474/5
large [3] 2389/20
 2416/23 2470/20
larger [6] 2436/1
 2436/4 2436/9 2436/14
 2436/19 2438/18
largest [3] 2409/22
 2415/4 2416/4
last [20] 2376/19
 2377/5 2378/17
 2378/18 2382/5
 2395/10 2395/21
 2412/18 2423/14
 2428/19 2437/15
 2441/12 2446/14
 2447/3 2458/3 2460/22
 2461/3 2461/7 2463/2
 2475/4
lastly [4] 2436/24
 2438/15 2467/6
 2467/20
late [1] 2412/18
later [5] 2380/4
 2392/15 2394/5
 2402/20 2405/23
law [23] 2376/18
 2436/21 2436/24
 2436/24 2438/9
 2438/11 2449/5 2449/8
 2449/24 2455/9
 2460/23 2461/8
 2461/14 2462/8
 2463/14 2463/19
 2464/11 2465/21
 2466/9 2468/17

**L**

law... **[3]** 2468/23 2469/5 2469/22
**Lawyers [1]** 2433/16
**Layton [6]** 2387/22 2388/2 2388/6 2388/13 2444/17 2445/9
**Layton's [2]** 2388/10 2444/10
**lead [2]** 2429/15 2436/19
**leading [2]** 2451/19 2452/7
**lease [1]** 2433/8
**least [6]** 2387/20 2424/4 2447/18 2452/5 2476/5 2476/10
**leave [4]** 2447/25 2473/19 2473/21 2475/16
**led [1]** 2468/18
**left [4]** 2389/11 2389/18 2390/3 2420/16
**legal [8]** 2414/14 2427/17 2466/7 2466/11 2466/12 2466/20 2466/24 2466/25
**legislation [1]** 2379/19
**legislative [1]** 2380/3
**lending [2]** 2400/12 2407/20
**length [1]** 2405/13
**less [7]** 2374/24 2416/13 2435/25 2441/8 2444/7 2470/25 2476/6
**less-straightforward [1]** 2444/7
**let [16]** 2378/19 2400/2 2413/21 2414/6 2414/19 2428/7 2428/24 2439/2 2441/19 2441/21 2447/12 2448/1 2459/18 2472/8 2472/24 2474/9
**let's [25]** 2374/7 2376/10 2377/21 2381/6 2381/25 2382/13 2383/4 2384/9 2386/12 2388/10 2396/9 2397/25

2398/13 2408/16 2409/3 2411/2 2415/3 2420/3 2420/6 2421/16 2423/23 2435/16 2442/9 2443/14 2448/21
**leveled [1]** 2417/21
**liabilities [6]** 2415/16 2415/17 2415/20 2416/18 2421/9 2421/10
**life [1]** 2407/19
**light [4]** 2411/5 2412/13 2447/3 2475/9
**like [25]** 2379/12 2393/14 2404/24 2409/8 2409/22 2414/5 2430/3 2431/18 2431/19 2434/3 2434/13 2435/17 2436/1 2436/5 2437/11 2440/9 2444/13 2448/13 2448/15 2449/3 2451/5 2454/24 2473/24 2475/12 2475/25
**likely [4]** 2431/11 2447/23 2447/25 2448/3
**Likewise [1]** 2460/3
**limine [12]** 2377/16 2435/12 2435/21 2437/20 2438/16 2440/16 2440/18 2451/16 2452/24 2453/10 2454/2 2454/3
**limited [3]** 2451/12 2453/21 2453/22
**limiting [2]** 2447/4 2451/15
**line [11]** 2377/4 2382/6 2382/14 2382/14 2383/5 2383/5 2384/12 2388/11 2388/11 2418/12 2440/17
**Lines [1]** 2384/10
**liquidation [1]** 2437/18
**liquidity [1]** 2430/8
**listed [1]** 2438/10
**literally [1]** 2429/1
**LITIGATIONS [1]** 2371/10
**Litowitz [1]** 2372/5

**little [9]** 2407/18 2420/16 2424/17 2432/2 2440/12 2441/3 2441/12 2444/9 2470/16
**LLP [6]** 2371/21 2371/24 2372/5 2372/10 2372/13 2372/16
**loan [11]** 2372/12 2399/9 2400/16 2400/25 2401/1 2401/2 2401/6 2401/15 2401/18 2402/12 2402/13
**loans [5]** 2401/1 2404/12 2404/17 2406/2 2406/2
**loathe [1]** 2475/24
**long [5]** 2382/16 2385/8 2440/15 2447/17 2448/7
**long-term [2]** 2382/16 2385/8
**look [26]** 2396/22 2396/23 2396/24 2396/25 2399/4 2399/5 2399/5 2399/9 2399/11 2404/14 2404/15 2408/4 2415/3 2415/14 2418/21 2419/15 2419/20 2419/20 2423/23 2431/17 2439/25 2441/4 2441/19 2441/21 2447/12 2450/16
**looked [10]** 2381/1 2415/1 2416/5 2416/8 2418/3 2424/5 2441/20 2450/15 2450/17 2454/14
**looking [10]** 2411/18 2412/10 2415/2 2424/3 2424/18 2425/13 2431/18 2431/18 2443/1 2458/21
**looks [4]** 2459/11 2470/18 2470/22 2471/9
**LORRAINE [3]** 2372/20 2477/3 2477/9
**loss [1]** 2398/8
**lost [1]** 2449/12
**lot [5]** 2396/8 2401/19

2424/5 2439/11
**lots [1]** 2404/3
**lower [4]** 2401/4 2401/14 2401/19 2405/7
**lunch [3]** 2448/1 2448/15 2475/19

**M**

**MAC [30]** 2371/9 2385/11 2386/16 2386/21 2387/5 2387/12 2389/21 2390/3 2390/15 2393/24 2400/13 2422/16 2422/21 2423/8 2423/10 2424/11 2468/6 2470/20 2471/14 2471/15 2471/18 2471/19 2472/2 2472/11 2472/13 2472/18 2473/4 2473/5 2473/9 2473/12
**Mac's [3]** 2385/15 2386/6 2387/22
**made [12]** 2376/19 2377/6 2384/2 2396/8 2399/25 2415/8 2425/3 2425/10 2432/7 2457/6 2460/18 2461/18
**MAE [34]** 2371/9 2380/24 2381/22 2382/11 2382/12 2386/5 2387/6 2391/6 2391/8 2393/16 2393/19 2393/24 2400/13 2422/13 2422/20 2423/2 2423/17 2424/10 2424/10 2424/13 2424/15 2424/22 2424/25 2425/5 2425/6 2468/2 2468/2 2471/13 2471/17 2471/21 2472/10 2473/4 2473/8 2473/10
**Mae's [1]** 2424/13
**MAE/FREDDIE [1]** 2371/9
**magnitudes [1]** 2406/5
**make [24]** 2380/21 2384/21 2391/13

**make... [21]** 2396/12 2398/8 2398/8 2402/11 2402/16 2402/21 2405/1 2409/16 2416/15 2426/1 2428/11 2435/20 2441/6 2442/20 2447/11 2454/24 2459/10 2466/17 2468/15 2471/17 2471/24

**makers [2]** 2452/7 2454/7

**makes [8]** 2397/3 2404/10 2414/8 2441/25 2444/16 2469/18 2472/2 2473/22

**making [7]** 2376/15 2414/3 2451/19 2453/2 2453/13 2457/4 2472/17

**management [1]** 2384/3

**many [2]** 2393/11 2426/11

**March [1]** 2429/24

**market [7]** 2398/15 2398/17 2405/22 2408/20 2418/2 2418/6 2425/12

**market-based [3]** 2398/15 2398/17 2418/6

**marketplace [1]** 2432/10

**mask [1]** 2380/14

**Mason [1]** 2375/12

**Massachusetts [1]** 2372/10

**math [4]** 2422/3 2422/23 2422/24 2468/18

**matter [15]** 2376/18 2378/4 2378/10 2396/22 2401/8 2433/2 2436/20 2444/5 2449/5 2449/7 2449/23 2454/5 2464/11 2474/1 2477/5

**matters [2]** 2427/12 2427/17

**maximum [5]** 2404/19 2413/7 2414/13

**may [31]** 2374/23 2375/1 2376/12 2379/5 2380/8 2380/13 2380/14 2387/24 2391/19 2392/10 2395/5 2395/10 2395/15 2397/13 2401/16 2402/12 2418/24 2425/16 2427/20 2433/5 2433/8 2435/2 2444/8 2447/20 2448/1 2454/17 2463/15 2463/17 2463/25 2465/8 2468/21

**maybe [5]** 2378/11 2379/3 2383/23 2389/19 2422/2

**Mayopoulos [7]** 2391/9 2391/24 2392/7 2392/16 2392/25 2393/11 2393/15

**Mayopoulos' [1]** 2392/22

**me [32]** 2378/19 2378/19 2378/19 2383/23 2384/18 2391/25 2398/15 2398/18 2398/19 2398/25 2400/2 2407/15 2409/17 2413/21 2422/8 2428/7 2428/24 2434/21 2434/21 2439/2 2441/19 2441/21 2447/24 2450/15 2459/11 2459/17 2459/18 2472/4 2472/8 2472/24 2474/10 2475/21

**MEAGHAN [1]** 2372/15

**mean [10]** 2388/23 2405/24 2423/1 2424/5 2425/5 2428/22 2441/6 2441/7 2457/8 2465/15

**meaning [1]** 2408/16

**meaningless [1]** 2405/21

**means [7]** 2382/12 2429/4 2438/8 2443/3 2443/3 2463/17 2466/25

**meant [3]** 2383/14 2383/15 2402/15

**meantime [1]** 2450/12

**measure [4]** 2449/25 2450/2 2450/3 2450/5

**median [1]** 2388/14

**meet [2]** 2414/9 2414/9

**meeting [7]** 2444/11 2444/13 2444/15 2451/25 2452/1 2452/2 2452/2

**Meltzer [1]** 2371/21

**members [7]** 2391/1 2464/9 2470/13 2471/4 2471/13 2472/7 2473/2

**mention [2]** 2402/19 2415/25

**mentioned [7]** 2375/9 2376/3 2395/9 2404/14 2406/4 2421/14 2460/8

**MICHAEL [2]** 2372/2 2372/12

**microphone [1]** 2397/17

**might [7]** 2377/24 2387/2 2431/19 2432/6 2433/16 2450/3 2456/23

**million [2]** 2422/21 2422/22

**mind [2]** 2397/19 2476/22

**minimum [1]** 2444/20

**minor [2]** 2381/13 2462/2

**minus [1]** 2415/15

**minute [2]** 2456/3 2472/12

**misimpression [1]** 2464/22

**misleading [2]** 2392/22 2469/21

**missing [2]** 2466/7 2466/18

**mission [1]** 2439/12

**mistake [3]** 2397/3 2415/8 2421/14

**mistakes [1]** 2396/8

**misunderstand [1]** 2449/10

**model [1]** 2385/17

**models [4]** 2385/15 2385/20 2386/6

**modest [1]** 2467/24

**modifications [1]** 2459/13

**moment [3]** 2396/5 2397/16 2459/17

**money [4]** 2400/13 2407/15 2439/12 2466/17

**Moody's [6]** 2374/19 2427/24 2428/25 2429/11 2429/13 2431/10

**more [25]** 2375/2 2378/19 2379/5 2382/16 2382/23 2387/11 2388/13 2388/22 2388/23 2396/4 2396/7 2402/11 2402/21 2405/3 2408/20 2409/4 2410/21 2415/23 2426/4 2438/24 2439/3 2439/5 2441/3 2450/15 2476/2

**morning [24]** 2371/12 2374/5 2376/13 2376/16 2377/3 2377/11 2380/7 2380/13 2380/19 2380/20 2395/19 2395/20 2419/8 2419/9 2426/10 2428/14 2437/9 2437/10 2445/4 2447/15 2447/16 2448/2 2450/12 2450/24

**mortgage [12]** 2372/12 2372/15 2397/23 2398/1 2398/4 2398/5 2398/11 2398/18 2407/10 2407/21 2431/25 2444/12

**mortgage-backed [3]** 2407/10 2407/21 2431/25

**most [12]** 2383/8 2387/22 2388/7 2388/16 2403/21 2415/4 2416/4 2434/21 2449/21 2457/6 2458/16 2465/20

**mostly [1]** 2407/13

M

**motion [33]** 2376/4
2376/18 2376/19
2376/23 2377/2 2377/6
2377/15 2377/16
2378/18 2433/12
2435/12 2436/15
2437/5 2437/20
2438/16 2438/24
2439/23 2440/16
2440/17 2442/9
2442/10 2442/12
2443/11 2446/15
2449/5 2451/16
2452/24 2453/10
2454/2 2454/3 2457/12
2458/16 2465/5
**motions [4]** 2435/1
2449/4 2449/7 2449/10
**move [4]** 2375/19
2408/13 2410/15
2411/2
**moved [3]** 2432/12
2432/13 2435/21
**Mr [13]** 2373/4 2373/4
2373/7 2373/7 2383/15
2384/10 2384/20
2387/22 2388/13
2433/9 2438/25 2443/1
2461/25
**Mr. [62]** 2374/4 2376/8
2379/22 2381/7
2381/21 2381/25
2382/1 2382/10
2382/13 2382/15
2382/20 2382/23
2383/4 2383/7 2383/21
2384/9 2384/12
2385/10 2385/14
2385/23 2386/2 2386/7
2386/15 2387/4
2387/15 2387/18
2388/2 2388/6 2388/10
2391/24 2392/16
2392/20 2392/22
2392/24 2392/25
2393/11 2393/15
2394/16 2394/20
2412/3 2412/22 2417/5
2420/7 2421/17 2422/5
2423/23 2429/9
2429/20 2430/15
2444/10 2444/16
2444/17 2445/10

2448/16 2451/23
2451/23 2452/3 2452/3
2454/22 2461/21
2474/10 2474/13
**Mr. Barnes' [1]**
2474/13
**Mr. Benson [13]**
2381/21 2382/15
2382/20 2383/7
2384/12 2385/14
2385/23 2386/2 2386/7
2386/15 2387/18
2392/20 2394/20
**Mr. Benson's [10]**
2382/1 2382/10
2382/13 2382/23
2383/4 2383/21
2385/10 2387/4
2387/15 2394/16
**Mr. DeMarco [5]**
2376/8 2379/22
2444/16 2451/23
2452/3
**Mr. Gluck [1]** 2454/22
**Mr. Hoffman [1]**
2412/22
**Mr. Hume [6]** 2374/4
2392/24 2429/9
2429/20 2430/15
2448/16
**Mr. Jones [2]** 2461/21
2474/10
**Mr. Kaplan [2]** 2412/3
2445/10
**Mr. Kravetz [1]** 2417/5
**Mr. Layton [3]** 2388/2
2388/6 2444/17
**Mr. Layton's [2]**
2388/10 2444/10
**Mr. Mayopoulos [5]**
2391/24 2392/16
2392/25 2393/11
2393/15
**Mr. Mayopoulos' [1]**
2392/22
**Mr. Salazar [7]** 2381/7
2381/25 2384/9 2420/7
2421/17 2422/5
2423/23
**Mr. Ugoletti [2]**
2451/23 2452/3
**much [7]** 2402/21
2423/7 2423/12 2436/1
2436/13 2439/5

2448/21 2451/23
**Multiplied [1]** 2420/18
**multiply [2]** 2420/22
2423/6
**must [4]** 2438/8
2438/12 2443/4
2466/10
**my [41]** 2396/15
2397/2 2398/23
2399/21 2399/22
2400/25 2401/9
2401/15 2401/19
2404/14 2405/2 2405/9
2411/22 2413/24
2415/9 2415/25
2416/23 2418/15
2419/14 2419/15
2423/5 2425/4 2426/24
2432/19 2438/25
2439/22 2440/1
2447/22 2448/10
2448/17 2449/4
2459/11 2461/21
2461/25 2465/3
2469/11 2470/8
2471/16 2472/14
2474/10 2475/5
**Myers [1]** 2372/16

N

**name [1]** 2459/25
**narrow [1]** 2426/4
**narrowly [1]** 2414/2
**National [1]** 2372/15
**Naturally [1]** 2388/22
**nature [1]** 2389/20
**necessarily [3]**
2378/12 2384/25
2441/16
**necessary [4]** 2410/24
2450/15 2454/11
2466/17
**need [10]** 2377/24
2397/17 2407/15
2407/15 2414/8
2448/21 2452/14
2468/18 2474/20
2474/24
**needed [3]** 2414/7
2414/15 2438/23
**needs [2]** 2457/17
2463/14
**negative [2]** 2374/25
2431/19

**negotiated [1]** 2405/11
**net [11]** 2404/7 2404/8
2407/1 2407/5 2410/9
2418/19 2424/22
2431/23 2436/6
2449/15 2449/20
**never [16]** 2378/3
2378/6 2378/7 2378/9
2379/8 2379/12 2399/9
2415/19 2425/22
2429/17 2429/21
2430/17 2432/3
2432/14 2433/23
2434/2
**Nevertheless [1]**
2464/21
**new [11]** 2371/19
2371/24 2372/6 2372/6
2402/13 2403/13
2403/19 2404/11
2405/23 2461/4 2464/5
**news [1]** 2475/5
**newsletter [1]** 2429/13
**next [8]** 2375/1 2395/5
2409/9 2409/15
2421/16 2422/5
2423/24 2445/23
**nice [1]** 2410/5
**night [6]** 2378/17
2378/18 2442/17
2442/21 2447/4
2450/10
**night's [1]** 2447/12
**nine [3]** 2415/3 2416/4
2457/4
**no [53]** 2371/3
2375/20 2375/21
2387/18 2388/5
2394/18 2395/4 2397/8
2400/18 2402/3 2403/4
2403/18 2405/24
2406/8 2407/6 2409/17
2410/5 2412/19 2417/4
2417/23 2418/1 2418/4
2419/19 2425/9 2427/1
2428/7 2428/20
2428/21 2429/3 2429/6
2429/8 2429/18
2429/19 2429/25
2430/10 2430/11
2430/13 2433/3
2433/11 2436/8 2440/4
2441/5 2442/11
2444/16 2449/24

**N**

no... **[8]** 2451/2
2451/15 2460/13
2465/24 2468/25
2471/21 2474/24
2475/9
**nominal [4]** 2459/5
2460/5 2467/17
2467/18
**not [136]**
**note [4]** 2403/18
2433/11 2434/18
2470/15
**notes [2]** 2437/14
2452/3
**nothing [6]** 2396/12
2397/11 2398/21
2405/2 2409/15
2426/17
**notice [23]** 2376/5
2378/2 2378/3 2378/13
2378/15 2378/23
2378/24 2379/1
2379/10 2379/12
2379/15 2379/25
2427/15 2427/22
2432/25 2433/1 2433/3
2433/13 2433/21
2434/1 2434/5 2434/13
2456/14
**notion [3]** 2396/16
2399/23 2401/23
**now [30]** 2375/18
2380/12 2405/10
2421/23 2423/12
2424/10 2437/11
2439/7 2441/18 2442/9
2442/19 2442/21
2443/14 2443/15
2444/14 2444/14
2445/16 2450/20
2457/4 2458/23
2461/21 2461/25
2463/1 2463/8 2465/6
2471/6 2475/9 2475/20
2475/21 2476/16
**number [19]** 2389/19
2392/1 2400/20
2400/22 2414/22
2415/19 2420/16
2458/21 2459/23
2460/3 2461/4 2463/4
2463/23 2466/5
2467/10 2467/24

2468/13 2469/24
2470/19
**numbered [1]** 2437/17
**numbers [4]** 2401/17
2428/1 2436/1 2436/9
**NW [6]** 2371/19
2371/24 2372/10
2372/13 2372/16
2372/21

**O**

**O'Melveny [1]** 2372/16
**oath [2]** 2380/14
2395/14
**object [5]** 2418/24
2430/18 2451/4 2455/2
2469/8
**objection [26]** 2375/10
2375/12 2375/21
2376/4 2392/11
2406/18 2406/18
2406/18 2408/7 2408/7
2410/11 2410/16
2411/8 2413/18
2423/19 2426/21
2427/14 2428/12
2428/13 2432/20
2445/18 2446/13
2451/14 2452/17
**objections [11]**
2375/20 2428/8 2428/9
2437/7 2443/10
2446/22 2448/8
2450/18 2450/20
2459/12 2465/24
**objective [2]** 2379/15
2379/20
**obviously [4]** 2376/19
2451/24 2476/15
2476/16
**occasions [1]** 2457/11
**occurred [1]** 2410/10
**October [4]** 2371/5
2429/1 2431/4 2477/9
**off [8]** 2408/20
2409/16 2409/18
2410/4 2410/19
2410/21 2429/7
2437/13
**offer [4]** 2374/15
2428/17 2437/24
2459/13
**offered [9]** 2375/8

2376/11 2417/6
2427/13 2429/16
2429/17 2429/18
2431/12 2454/4
**offering [2]** 2411/20
2427/24
**official [10]** 2372/20
2382/10 2385/2 2387/9
2388/25 2389/4 2389/6
2390/15 2392/20
2477/3
**oh [4]** 2436/23
2441/20 2443/12
2470/8
**okay [83]** 2374/7
2374/11 2374/13
2374/17 2375/6
2375/14 2375/17
2375/23 2376/10
2376/10 2377/8
2377/13 2377/21
2381/17 2381/18
2382/9 2388/9 2398/3
2398/4 2398/13
2398/17 2408/14
2409/7 2415/12
2415/18 2419/18
2420/3 2421/4 2421/16
2421/23 2423/1 2424/7
2424/23 2427/6 2428/7
2428/10 2428/13
2430/20 2435/9
2435/19 2437/13
2437/24 2438/20
2440/8 2441/9 2441/15
2443/17 2443/19
2444/23 2445/5 2445/6
2445/18 2445/24
2446/25 2447/7
2447/11 2447/23
2451/7 2455/17
2455/20 2456/1 2456/5
2456/13 2456/18
2456/22 2458/20
2459/21 2460/6
2460/10 2460/17
2461/6 2462/7 2462/13
2462/14 2462/25
2465/22 2465/25
2467/8 2469/7 2474/8
2475/8 2476/10
2476/24
**old [1]** 2429/2
**once [1]** 2401/13

**one [85]** 2376/12
2376/17 2377/23
2378/2 2378/14
2378/15 2379/3 2379/4
2379/13 2381/24
2385/1 2387/10
2387/13 2387/17
2387/20 2388/6
2388/15 2389/25
2391/25 2392/3 2392/4
2395/10 2397/16
2399/10 2400/20
2402/11 2404/9 2407/8
2407/17 2407/21
2414/25 2415/19
2417/11 2418/12
2424/4 2428/5 2428/5
2431/16 2432/2
2432/16 2433/12
2433/22 2434/11
2438/8 2438/12
2439/25 2439/25
2442/25 2443/3
2443/18 2443/21
2444/7 2444/7 2444/10
2445/23 2446/14
2446/14 2447/9
2449/21 2450/14
2451/2 2455/23
2456/21 2458/21
2459/3 2459/24 2460/1
2460/18 2460/19
2461/14 2461/20
2461/24 2462/2 2462/8
2465/25 2466/7 2467/9
2467/9 2470/5 2470/7
2474/16 2474/18
2475/4 2476/12
2476/13
**onerous [1]** 2405/3
**ones [5]** 2394/8
2446/2 2446/5 2454/10
2459/23
**only [26]** 2374/9
2374/14 2390/3
2390/20 2392/5 2392/6
2394/1 2403/21 2418/5
2427/12 2432/13
2432/24 2445/24
2448/10 2448/17
2451/9 2451/12
2453/11 2453/14
2453/18 2454/5
2456/21 2459/12

2499

**O**

only... **[3]** 2469/13 2476/12 2476/13
oops **[1]** 2431/16
open **[1]** 2476/22
opening **[4]** 2448/16 2456/24 2457/17 2476/11
opine **[1]** 2412/8
opined **[1]** 2414/1
opining **[1]** 2412/1
opinion **[30]** 2394/17 2396/16 2405/2 2405/9 2408/8 2411/9 2411/20 2411/24 2412/16 2412/19 2413/1 2414/22 2418/12 2418/25 2419/11 2419/12 2419/18 2419/25 2420/1 2420/4 2421/20 2422/20 2425/7 2425/23 2426/17 2431/11 2449/12 2453/20 2454/15 2457/12
opinions **[4]** 2393/12 2419/14 2446/10 2446/19
opposed **[6]** 2383/11 2383/19 2403/12 2421/8 2467/16 2472/20
opposition **[5]** 2376/25 2378/16 2378/17 2433/12 2436/25
opted **[2]** 2470/13 2471/5
option **[3]** 2448/4 2475/23 2476/17
options **[1]** 2476/9
orally **[2]** 2376/19 2442/12
oranges **[1]** 2400/16
order **[8]** 2374/2 2435/3 2443/21 2446/9 2458/17 2463/14 2464/21 2465/5
organizations **[1]** 2415/4
original **[2]** 2426/4 2460/20
originally **[1]** 2449/17
other **[44]** 2374/8

2374/9 2374/14 2375/8 2376/1 2376/12 2385/15 2385/20 2389/13 2396/18 2400/24 2401/24 2414/14 2427/3 2427/14 2432/24 2433/3 2434/20 2436/1 2436/9 2436/19 2442/7 2442/12 2443/18 2445/24 2446/2 2448/4 2449/18 2450/3 2450/11 2450/18 2450/19 2452/9 2452/11 2453/6 2454/9 2454/20 2459/3 2465/24 2466/2 2466/18 2470/7 2470/9 2472/14
others **[5]** 2375/11 2384/4 2393/11 2450/13 2460/11
otherwise **[1]** 2457/10
ought **[1]** 2404/6
our **[16]** 2374/12 2374/15 2386/24 2435/6 2438/3 2438/16 2441/23 2442/11 2443/20 2458/1 2460/12 2465/10 2465/20 2470/16 2470/22 2472/1
ourselves **[1]** 2386/25
out **[28]** 2374/25 2377/25 2378/6 2382/20 2387/5 2387/8 2389/3 2389/14 2389/18 2390/3 2394/1 2394/10 2401/11 2405/8 2414/10 2422/4 2428/25 2433/23 2439/7 2440/12 2450/4 2455/7 2467/17 2467/18 2469/5 2470/13 2471/5 2475/6
outlook **[7]** 2374/25 2408/6 2431/11 2431/18 2432/7 2432/13 2432/14
outlooks **[3]** 2429/11 2431/1 2431/7
outset **[1]** 2455/15
outside **[6]** 2408/8 2408/9 2410/11 2411/8

outstanding **[1]** 2377/14
over **[22]** 2378/16 2381/13 2394/2 2394/10 2405/20 2407/18 2407/22 2410/7 2410/7 2411/13 2421/20 2423/1 2423/9 2425/1 2425/6 2425/8 2431/8 2446/12 2451/14 2452/17 2471/6 2472/8
overall **[1]** 2399/11
overruled **[6]** 2393/7 2406/20 2413/18 2423/22 2445/18 2446/23
overstate **[1]** 2401/16
own **[6]** 2386/6 2396/17 2408/19 2417/21 2457/8 2460/12
ownership **[1]** 2437/17

**P**

P.A **[1]** 2372/2
p.m **[1]** 2476/25
package **[1]** 2399/11
packages **[1]** 2399/3
page **[13]** 2373/2 2373/10 2380/22 2381/8 2382/1 2382/13 2429/24 2430/5 2430/5 2431/4 2431/4 2431/9 2458/3
pages **[2]** 2391/25 2431/9
paid **[17]** 2396/25 2402/24 2404/23 2410/8 2411/5 2411/7 2412/12 2412/14 2416/5 2416/5 2416/6 2416/9 2416/23 2418/23 2423/2 2436/2 2436/6
painstaking **[1]** 2430/6
panic **[1]** 2431/25
paper **[4]** 2401/9 2401/10 2404/15 2406/4
paragraph **[6]** 2456/6 2458/3 2458/22 2459/5 2460/21 2463/2

parameters **[1]** 2385/18
parentheses **[1]** 2474/19
parenthetical **[1]** 2466/25
part **[16]** 2374/15 2383/2 2395/10 2403/21 2411/22 2413/22 2413/24 2414/17 2419/14 2439/10 2445/17 2448/7 2451/19 2454/15 2463/9 2466/18
particular **[4]** 2382/15 2392/15 2396/1 2455/7
particularly **[1]** 2382/9
parties **[5]** 2437/9 2447/19 2451/3 2466/20 2467/10
parts **[1]** 2396/1
pass **[2]** 2378/25 2444/24
passage **[2]** 2384/22 2425/10
passed **[1]** 2378/7
PATERSON **[1]** 2371/17
pause **[3]** 2377/22 2459/20 2461/17
pay **[3]** 2398/5 2398/12 2407/15
paying **[4]** 2398/21 2399/1 2402/24 2416/19
PCF **[36]** 2396/5 2396/17 2396/19 2397/4 2404/8 2407/1 2409/6 2411/5 2411/21 2412/13 2413/7 2414/1 2414/2 2414/13 2414/15 2414/23 2415/10 2416/24 2418/12 2419/11 2419/17 2419/22 2419/22 2419/25 2421/21 2421/23 2422/20 2422/21 2423/3 2423/9 2424/21 2424/24 2425/6 2425/24 2426/12 2426/15
peer **[1]** 2401/10

**peer-reviewed [1]** 2401/10

**pending [2]** 2376/4 2435/13

**pennies [4]** 2435/24 2436/16 2437/2 2440/10

**Pennsylvania [2]** 2371/22 2372/13

**per [8]** 2390/16 2398/5 2398/21 2420/25 2422/19 2422/21 2422/22 2468/14

**percent [27]** 2389/15 2390/19 2396/23 2396/24 2398/4 2398/7 2398/9 2398/11 2398/19 2398/22 2404/19 2404/20 2404/21 2404/22 2404/24 2404/25 2407/25 2409/5 2409/10 2409/15 2410/8 2416/10 2418/22 2424/15 2468/14 2469/20 2475/7

**percentage [1]** 2416/19

**Perfect [1]** 2377/20

**perform [4]** 2382/25 2383/9 2383/17 2439/12

**performance [3]** 2383/22 2384/6 2385/7

**perhaps [3]** 2384/21 2397/10 2476/15

**period [4]** 2379/23 2394/3 2416/7 2425/1

**periodic [2]** 2396/1 2420/15

**permits [1]** 2457/7

**permitted [3]** 2444/1 2450/3 2454/5

**person [1]** 2418/5

**perspective [1]** 2397/1

**pertains [1]** 2452/10

**PETER [1]** 2371/17

**phone [2]** 2392/10 2425/17

**phones [1]** 2411/13

**picked [1]** 2432/1

**piece [6]** 2382/24

2383/11 2383/15 2383/19 2452/9 2466/7

**place [1]** 2405/8

**places [1]** 2471/23

**plain [1]** 2457/6

**plaintiff [1]** 2457/9

**plaintiffs [61]** 2371/3 2371/16 2371/20 2374/6 2376/24 2379/9 2379/19 2380/3 2391/2 2395/8 2425/21 2427/4 2427/11 2428/20 2429/18 2430/22 2434/24 2435/5 2435/22 2435/25 2436/12 2436/25 2437/9 2438/8 2438/12 2438/23 2442/24 2443/3 2443/4 2447/2 2447/16 2449/13 2449/20 2450/1 2450/12 2450/24 2452/22 2454/23 2457/22 2458/9 2458/11 2459/13 2460/8 2460/14 2460/18 2461/9 2461/19 2462/20 2462/23 2466/16 2466/18 2470/11 2470/12 2470/20 2471/4 2471/12 2472/6 2472/9 2473/1 2473/3 2474/21

**plaintiffs' [24]** 2371/15 2375/24 2375/25 2427/12 2435/13 2437/16 2438/2 2442/25 2446/12 2449/9 2449/10 2451/14 2452/9 2452/17 2455/1 2455/2 2455/5 2457/15 2461/4 2461/14 2462/12 2465/6 2475/11 2476/11

**plan [3]** 2455/24 2476/19 2476/21

**planning [5]** 2381/22 2383/2 2384/1 2440/19 2444/4

**play [1]** 2392/7

**played [2]** 2393/17 2445/12

**please [10]** 2374/2 2382/1 2384/9 2384/12 2392/11 2400/6 2403/5 2403/23 2417/10 2418/17

**PLLC [1]** 2371/18

**plus [2]** 2398/22 2430/5

**point [44]** 2376/5 2376/25 2378/14 2379/3 2400/25 2401/5 2401/11 2401/21 2402/11 2402/12 2402/17 2402/18 2404/9 2404/10 2404/19 2405/1 2410/19 2413/3 2413/4 2413/5 2413/12 2413/22 2413/24 2414/13 2414/15 2414/22 2421/12 2427/15 2428/25 2429/9 2430/23 2430/24 2431/8 2431/10 2431/13 2431/15 2434/21 2435/2 2436/11 2441/23 2459/3 2459/14 2470/1 2475/4

**pointblank [1]** 2437/2

**points [18]** 2399/25 2404/18 2405/8 2415/17 2416/13 2416/14 2416/14 2418/14 2419/17 2419/23 2420/1 2420/3 2420/15 2426/10 2439/22 2452/23 2454/24 2460/12

**policy [1]** 2407/14

**Porter [1]** 2372/10

**portion [6]** 2392/9 2393/1 2414/7 2414/19 2415/22 2467/14

**position [4]** 2387/1 2403/2 2462/20 2462/22

**positive [5]** 2374/25 2408/5 2414/15 2419/22 2431/18

**possibility [1]** 2458/9

**possibly [1]** 2413/7

**posted [1]** 2415/2

**potential [2]** 2432/15

**potentially [2]** 2379/24 2431/14

**powers [2]** 2464/12 2464/25

**practice [3]** 2397/2 2399/8 2416/18

**precarious [1]** 2408/1

**precise [3]** 2412/3 2412/5 2465/8

**precisely [1]** 2413/14

**preclude [2]** 2435/22 2438/17

**precluding [1]** 2438/24

**prefer [1]** 2472/16

**preference [1]** 2437/18

**preferrable [1]** 2470/19

**preferred [28]** 2371/9 2400/21 2401/4 2401/5 2401/12 2401/22 2404/13 2405/6 2409/7 2418/22 2468/6 2470/21 2470/23 2471/14 2471/14 2471/18 2471/18 2471/22 2472/3 2472/10 2472/11 2472/13 2472/16 2472/18 2473/4 2473/5 2473/9 2473/9

**prejudgment [15]** 2450/14 2450/17 2466/5 2466/9 2466/13 2466/15 2466/21 2467/2 2467/21 2468/5 2468/7 2468/16 2468/22 2469/3 2469/16

**prejudice [1]** 2430/19

**prejudicial [2]** 2379/11 2444/19

**preliminary [2]** 2455/6 2455/15

**premium [5]** 2416/2 2416/6 2416/9 2416/10 2416/23

**prepared [6]** 2381/21 2386/5 2387/25 2388/20 2391/11 2455/12

**preparing [2]** 2386/16

**preparing... [1]**
2386/20
**preponderance [5]**
2471/13 2472/7 2472/9
2473/1 2473/3
**presence [1]** 2377/25
**present [4]** 2392/22
2436/12 2442/22
2451/5
**presentation [9]**
2381/3 2381/20 2383/3
2384/2 2384/3 2420/11
2421/19 2475/12
2475/18
**presented [9]** 2385/11
2391/12 2392/17
2392/21 2393/3
2393/19 2415/9 2431/3
2454/13
**presenting [2]** 2395/2
2444/21
**preservation [1]**
2376/22
**preserve [1]** 2442/2
**pressed [2]** 2476/2
2476/6
**presume [3]** 2429/6
2429/16 2430/15
**pretty [2]** 2422/11
2430/24
**prevented [1]** 2444/21
**previously [1]** 2390/20
**price [7]** 2389/16
2390/19 2409/12
2409/13 2414/3
2432/10 2449/14
**prices [3]** 2407/24
2449/25 2450/4
**pricing [1]** 2416/25
**primarily [2]** 2381/2
2382/3
**primary [2]** 2419/11
2419/12
**principle [2]** 2457/16
2457/24
**prior [11]** 2375/22
2409/13 2413/1
2443/21 2443/22
2444/8 2446/15
2456/16 2458/16
2461/16 2465/21
**probably [3]** 2440/9
2440/13 2476/4

**problem [6]** 2398/8
2429/14 2434/21
2441/16 2449/23
2470/8
**problems [2]** 2388/16
2410/22
**proceed [3]** 2395/15
2449/11 2450/6
**proceedings [3]**
2372/25 2476/25
2477/5
**process [3]** 2432/17
2441/25 2451/19
**produced [3]** 2372/25
2429/6 2429/24
**Professor [40]** 2374/6
2374/10 2375/12
2376/1 2376/2 2391/1
2391/4 2393/10
2395/18 2395/21
2397/16 2399/16
2400/8 2400/9 2402/15
2403/8 2403/25 2406/1
2406/24 2408/15
2408/16 2410/23
2411/3 2411/18
2412/23 2413/21
2414/21 2415/5 2417/3
2417/10 2417/13
2417/20 2418/5 2419/3
2419/8 2422/8 2423/8
2423/20 2426/24
2430/25
**Professor Attari [1]**
2430/25
**proffer [2]** 2428/11
2429/9
**profit [2]** 2398/8
2410/7
**profits [2]** 2398/7
2398/22
**program [8]** 2404/23
2408/13 2408/16
2408/17 2408/23
2409/7 2410/3 2410/21
**project [2]** 2382/20
2387/8
**projected [3]** 2387/19
2389/21 2393/23
**projecting [2]** 2424/14
2424/22
**projection [2]** 2387/11
2393/25
**projections [39]**

2381/17 2381/19
2382/10 2382/21
2382/23 2383/8
2383/21 2385/10
2385/25 2386/4
2386/16 2386/20
2387/4 2387/5 2387/15
2391/5 2391/9 2392/17
2392/23 2392/25
2393/2 2393/18
2393/19 2394/5
2394/13 2423/17
2423/20 2424/3 2424/9
2424/14 2425/2 2425/3
2425/10 2425/11
2425/13 2425/23
2426/20
**prolific [1]** 2418/10
**promise [6]** 2414/3
2414/6 2414/8 2414/11
2414/18 2416/25
**promised [1]** 2414/17
**promising [1]** 2415/21
**proof [1]** 2449/23
**proper [3]** 2408/9
2433/2 2466/20
**proportional [1]**
2422/3
**proposal [1]** 2457/25
**propose [6]** 2456/8
2462/24 2467/23
2468/4 2468/14
2469/24
**proposed [18]**
2379/10 2379/18
2438/3 2447/4 2450/8
2452/9 2455/4 2455/13
2458/1 2459/13 2461/4
2462/23 2463/21
2463/22 2465/10
2467/1 2469/5 2471/10
**Protective [1]** 2469/1
**prove [5]** 2471/12
2472/6 2472/9 2473/1
2473/3
**proved [1]** 2454/8
**provide [2]** 2400/21
2400/24
**providing [1]** 2400/14
**proviso [1]** 2474/16
**Prussia [1]** 2371/21
**public [12]** 2386/22
2439/12 2439/15

2464/3 2464/9 2464/14
2464/24 2465/2
2465/14
**published [1]** 2401/10
**pull [8]** 2381/7
2382/13 2383/4 2384/9
2386/12 2388/10
2420/7 2439/24
**pulled [2]** 2420/10
2429/7
**purchase [7]** 2371/9
2398/2 2408/13
2408/15 2408/17
2408/23 2410/20
**purchasing [1]**
2449/19
**pure [2]** 2379/20
2380/2
**purely [1]** 2379/15
**purportedly [1]**
2444/12
**purports [1]** 2437/24
**purpose [9]** 2384/25
2390/5 2390/8 2390/13
2446/21 2451/12
2453/3 2453/7 2453/22
**purposes [4]** 2376/22
2416/24 2438/2 2444/1
**pursuant [2]** 2446/12
2452/16
**put [12]** 2374/25
2376/13 2397/17
2409/8 2413/25
2417/21 2428/17
2434/14 2435/25
2450/20 2451/17
2460/19
**putting [1]** 2441/22
**PX [8]** 2375/19
2375/19 2381/2 2381/8
2381/10 2381/11
2381/11 2424/8
**PX-216 [2]** 2381/2
2381/8
**PX-218 [2]** 2381/10
2424/8
**PX-269 [1]** 2381/11
**PX-444 [1]** 2375/19
**PX-445 [1]** 2375/19
**PX-509 [1]** 2381/11

**Q**

**qualification [3]**

# Q

qualification... [3]
2422/24 2451/14
2454/1
question [47] 2377/25
2383/7 2383/23 2386/1
2387/25 2388/5 2390/7
2392/16 2394/20
2394/24 2398/14
2405/24 2412/3 2412/5
2412/11 2413/21
2417/9 2425/4 2427/22
2432/25 2437/25
2438/1 2457/13
2464/17 2467/10
2467/11 2467/15
2467/24 2467/25
2468/13 2469/11
2469/12 2469/13
2469/17 2469/19
2470/18 2471/9
2471/24 2471/25
2472/1 2472/4 2473/19
2473/21 2474/12
2474/14 2474/18
2475/7
questioned [1]
2379/17
questions [8] 2395/4
2419/4 2419/10 2427/1
2467/20 2470/22
2471/2 2471/25
quick [4] 2447/11
2459/23 2466/2
2475/19
quickly [4] 2376/13
2442/8 2446/1 2470/11
quite [1] 2389/10

# R

Radnor [1] 2371/22
raise [1] 2407/22
raised [1] 2377/4
range [3] 2389/22
2404/19 2448/24
ranges [1] 2416/12
rapidly [1] 2425/14
rare [1] 2390/19
rate [3] 2399/4 2401/4
2468/15
rates [1] 2404/16
rather [8] 2382/24
2383/16 2411/24
2455/23 2462/9 2468/6

rating [12] 2374/23
2407/17 2429/15
2431/11 2431/14
2431/16 2431/21
2432/4 2432/4 2432/12
2432/14 2432/18
ratings [17] 2374/19
2374/21 2374/22
2374/25 2375/2
2401/13 2427/25
2429/10 2430/7 2430/8
2430/25 2431/1 2431/6
2431/6 2431/11 2432/2
2432/7
ratios [1] 2408/6
re [1] 2371/9
reach [1] 2476/3
reaching [1] 2446/19
reaction [3] 2404/2
2409/1 2412/6
reactions [1] 2404/3
read [11] 2383/18
2384/15 2394/24
2445/20 2458/4 2462/8
2463/21 2463/23
2465/11 2472/4
2474/19
reader [1] 2453/4
readily [1] 2379/16
reading [1] 2461/1
ready [6] 2376/10
2377/21 2414/10
2434/25 2442/15
2459/19
real [1] 2412/20
realistic [2] 2411/4
2412/12
really [11] 2394/25
2399/2 2399/25 2404/5
2405/1 2405/9 2405/21
2409/24 2434/8 2446/1
2460/21
rearguing [1] 2465/4
reason [6] 2425/9
2431/23 2436/12
2440/23 2442/1
2449/24
reasonable [3] 2413/7
2438/6 2463/5
reasonableness [1]
2464/20
reasonably [6]
2379/17 2414/23

2458/3 2458/11 2460/8
2464/13
reasons [3] 2414/14
2438/19 2449/4
rebut [2] 2412/16
2429/17
rebuttal [19] 2374/12
2374/15 2375/5 2376/2
2393/4 2399/22 2401/9
2406/3 2408/10
2410/12 2413/14
2415/25 2427/13
2433/4 2434/25 2435/6
2447/22 2448/18
2476/11
recall [19] 2385/22
2387/13 2388/8 2391/8
2401/19 2402/4 2402/5
2402/8 2406/6 2406/9
2406/11 2406/16
2417/5 2417/19 2424/5
2444/9 2451/8 2456/23
2458/24
receive [2] 2401/24
2401/25
received [17] 2373/11
2373/11 2375/23
2375/24 2375/25
2405/3 2405/4 2408/17
2428/18 2437/8 2450/9
2450/11 2450/12
2451/18 2451/24
2452/6 2454/6
receiving [1] 2458/9
recently [2] 2457/6
2458/16
recess [4] 2427/16
2442/19 2449/1 2449/2
recessed [1] 2380/11
recognize [3] 2403/8
2403/25 2424/2
recollection [2]
2393/14 2397/7
reconsider [1]
2446/15
record [11] 2376/13
2417/24 2433/9 2436/8
2445/15 2445/16
2448/14 2449/9
2450/20 2452/5 2477/5
recorded [1] 2372/25
records [12] 2375/4
2378/5 2378/8 2378/12
2379/2 2433/15

2458/18 2460/4
2439/25 2434/3 2434/9
2434/13 2434/14
2434/22
Recovery [2] 2458/4
2461/13
red [1] 2424/17
redeem [3] 2409/6
2409/9 2409/11
Redirect [2] 2373/4
2390/25
refer [5] 2397/6 2397/8
2399/20 2470/19
2474/23
reference [7] 2460/4
2468/14 2471/2
2471/17 2472/2
2473/22 2475/7
referred [3] 2470/22
2472/1 2474/22
referring [1] 2396/13
refers [2] 2470/16
2470/20
reflect [2] 2383/8
2436/9
reflected [1] 2455/23
reflection [1] 2475/6
reflective [1] 2469/4
refresh [1] 2393/14
regarding [8] 2377/15
2377/16 2431/11
2435/12 2460/4
2462/20 2466/5
2467/11
regulated [2] 2463/25
2464/1
rehabilitate [1]
2463/25
relate [1] 2443/17
related [1] 2392/15
relationships [1]
2460/24
relevance [4] 2428/22
2429/20 2430/19
2430/24
relevant [10] 2379/22
2393/4 2393/4 2426/12
2439/6 2439/11
2439/15 2439/22
2451/23 2452/7
relied [5] 2382/3
2446/18 2453/13
2453/15 2453/19
relying [1] 2431/21
remaining [4] 2393/23

**R**

**remaining... [3]**
2422/10 2427/12
2445/25
**remember [8]** 2385/17
2386/9 2388/19 2389/9
2391/13 2407/9 2410/6
2432/6
**remind [1]** 2395/13
**remove [1]** 2380/13
**removed [4]** 2449/20
2459/2 2459/6 2459/25
**repeat [1]** 2386/1
**repeatedly [1]** 2456/24
**rephrase [2]** 2400/2
2413/21
**replace [3]** 2473/16
2474/2 2474/6
**replaced [1]** 2471/1
**replacing [2]** 2456/9
2456/11
**reply [2]** 2378/17
2378/18
**report [24]** 2374/21
2375/13 2395/25
2397/8 2399/22
2399/22 2399/23
2401/9 2404/14 2406/3
2410/12 2413/14
2413/14 2415/25
2418/15 2429/12
2429/13 2433/22
2433/22 2443/18
2451/24 2452/1 2475/5
2476/8
**reported [3]** 2372/20
2378/9 2434/2
**Reporter [2]** 2372/20
2477/3
**reporting [1]** 2444/13
**reports [23]** 2374/18
2427/24 2432/1
2443/25 2446/1 2446/2
2446/4 2446/6 2446/10
2446/16 2447/5
2450/24 2451/5
2451/10 2451/17
2452/6 2452/11
2452/24 2453/14
2453/18 2453/23
2454/4 2454/14
**represent [1]** 2424/7
**representing [1]**
2440/15

**request [6]** 2432/25
2435/7 2454/19
2454/19 2458/13
2476/16
**requesting [1]** 2459/1
**requests [1]** 2454/20
**require [2]** 2443/22
2444/8
**required [2]** 2376/25
2414/24
**research [14]** 2397/2
2399/8 2401/8 2401/21
2402/1 2402/4 2402/5
2402/22 2403/2
2404/15 2404/16
2406/1 2406/3 2406/7
**reserve [3]** 2404/11
2405/23 2475/13
**reset [1]** 2380/21
**residual [1]** 2424/16
**resolve [1]** 2377/24
**respect [5]** 2382/15
2393/22 2433/7 2465/3
2469/11
**responding [2]**
2412/23 2426/3
**response [6]** 2395/22
2395/23 2396/14
2415/13 2417/8 2454/3
**rest [1]** 2435/6
**rested [1]** 2434/25
**restored [1]** 2439/20
**restriction [1]** 2409/8
**result [2]** 2424/14
2473/6
**resume [3]** 2380/9
2380/13 2395/13
**review [2]** 2417/24
2455/21
**reviewed [4]** 2393/10
2393/18 2395/25
2401/10
**revised [1]** 2425/14
**revision [1]** 2460/18
**revisions [1]** 2381/13
**revisit [3]** 2443/22
2444/8 2445/14
**Richard [2]** 2447/1
2452/21
**Richard Gluck [2]**
2447/1 2452/21
**right [114]**
**rights [2]** 2449/16
2449/19

**rigor [1]** 2385/4
**rise [1]** 2448/25
**Road [1]** 2371/21
**role [1]** 2468/16
**Rollins [1]** 2469/1
**room [3]** 2372/22
2452/12 2452/18
**rounded [1]** 2389/19
**ROYCE [1]** 2371/13
**RPR [1]** 2372/20
**Rule [9]** 2376/18
2377/5 2377/10
2379/14 2379/14
2442/12 2444/1
2446/12 2452/16
**ruled [4]** 2377/7
2433/8 2451/16 2454/3
**ruling [10]** 2376/21
2435/14 2436/21
2444/8 2446/15 2447/3
2453/10 2454/2 2457/7
2464/18
**rulings [3]** 2453/23
2458/16 2465/21
**run [1]** 2389/18

**S**

**said [30]** 2375/5
2378/22 2379/12
2388/20 2391/9
2391/11 2396/9 2396/9
2396/10 2400/12
2400/15 2402/4 2402/8
2402/9 2406/13
2406/16 2408/16
2412/24 2415/3 2415/6
2415/14 2415/19
2417/9 2430/3 2433/9
2441/21 2444/13
2452/25 2457/11
2465/5
**Salazar [8]** 2381/7
2381/25 2384/9
2384/20 2420/7
2421/17 2422/5
2423/23
**sale [1]** 2398/7
**Sam [1]** 2425/20
**same [10]** 2380/22
2381/12 2383/18
2386/25 2387/5 2423/7
2425/1 2430/4 2433/17
2456/15
**SAMUEL [1]** 2371/23

**satisfied [1]** 2461/19
**save [3]** 2409/19
2410/24 2476/11
**saw [2]** 2387/17
2389/17
**say [29]** 2378/9
2378/22 2379/2
2396/19 2398/6
2398/16 2398/24
2399/17 2400/11
2402/3 2406/12 2411/6
2412/13 2413/9
2414/21 2415/6 2417/8
2430/16 2431/18
2436/24 2439/2 2443/1
2444/15 2463/13
2464/5 2468/24 2471/22
2472/6 2472/15
**saying [12]** 2374/25
2385/8 2394/21 2395/1
2396/12 2429/13
2431/22 2441/15
2453/6 2462/3 2471/21
2472/15
**says [13]** 2383/19
2388/20 2394/20
2398/3 2398/10
2398/14 2411/21
2437/1 2443/2 2460/23
2463/24 2464/3
2467/15
**scenario [12]** 2387/16
2387/18 2387/21
2387/22 2388/3 2389/1
2389/6 2389/10
2389/11 2389/13
2390/22 2448/16
**scenarios [1]** 2388/20
**Schiller [1]** 2371/24
**scholarship [1]**
2418/10
**Scholer [1]** 2372/10
**scope [17]** 2377/15
2408/8 2408/9 2410/12
2411/9 2411/10
2411/22 2412/25
2413/9 2418/25 2419/1
2423/20 2426/13
2426/20 2443/21
2464/12 2464/25
**scores [1]** 2430/8
**screen [4]** 2384/19
2400/8 2400/9 2446/8
**seated [3]** 2374/2

**seated...** [2] 2380/8 2427/20
**second** [11] 2391/25 2402/12 2412/18 2413/22 2413/24 2422/12 2451/25 2452/10 2458/3 2458/3 2463/2
**secured** [5] 2402/13 2402/20 2404/12 2404/17 2406/1
**securities** [4] 2407/11 2407/20 2407/21 2444/12
**security** [2] 2374/24 2431/25
**security's** [1] 2407/20
**see** [25] 2376/10 2377/21 2382/14 2382/17 2382/18 2383/12 2384/14 2384/21 2385/4 2387/20 2388/23 2390/8 2394/15 2397/20 2400/1 2400/8 2400/9 2424/10 2424/16 2428/7 2448/5 2448/21 2459/10 2469/15 2476/24
**seeing** [1] 2384/18
**seek** [2] 2435/14 2450/3
**seeking** [2] 2438/16 2443/4
**seems** [1] 2422/15
**seen** [5] 2387/10 2423/16 2430/17 2434/13 2437/14
**seller** [2] 2407/9 2407/12
**Senate** [1] 2434/22
**senior** [2] 2371/9 2401/3
**sense** [4] 2396/12 2409/17 2456/21 2469/18
**sent** [3] 2391/5 2391/9 2432/9
**sentence** [25] 2378/2 2378/15 2379/4 2379/9 2379/10 2384/16 2451/9 2452/10 2457/24 2458/3

2460/19 2460/23 2461/3 2461/7 2462/7 2462/15 2465/11 2465/23 2469/9 2470/5 2474/18 2474/19 2474/21 2474/24 2475/1
**sentences** [2] 2432/17 2463/21
**separate** [1] 2474/20
**September** [5] 2404/4 2404/5 2405/17 2407/7 2407/8
**series** [1] 2415/24
**serious** [2] 2375/2 2409/17
**serves** [1] 2464/3
**Services** [1] 2469/2
**session** [2] 2371/12 2381/22
**set** [6] 2398/16 2407/2 2407/2 2412/2 2424/24 2438/3
**setting** [1] 2404/8
**several** [3] 2380/23 2437/7 2464/15
**severe** [1] 2407/23
**share** [1] 2449/18
**shared** [6] 2384/3 2385/17 2385/20 2386/10 2394/5 2432/12
**shareholder** [12] 2439/9 2455/1 2455/3 2455/5 2457/3 2460/14 2460/25 2461/8 2461/15 2462/12 2463/10 2473/9
**shareholders** [37] 2436/2 2436/10 2436/13 2437/22 2439/11 2460/25 2464/7 2468/3 2470/21 2471/3 2471/18 2471/19 2471/19 2471/22 2472/3 2472/10 2472/11 2472/13 2472/15 2472/16 2472/17 2472/19 2472/21 2473/4 2473/5 2473/6 2473/10 2473/11 2473/12 2473/13 2473/16 2473/17

2474/3 2474/7 2474/16 2474/17 2474/23
**shareholders'** [2] 2438/5 2455/9
**shares** [3] 2436/3 2449/17 2449/22
**shoot** [1] 2447/22
**short** [6] 2376/2 2393/15 2407/25 2427/16 2435/7 2442/19
**shortfall** [1] 2414/9
**shorthand** [1] 2372/25
**should** [22] 2378/1 2384/19 2398/19 2401/4 2403/19 2411/21 2414/1 2418/3 2418/14 2419/18 2434/22 2437/22 2443/5 2443/6 2443/6 2443/8 2444/20 2444/21 2447/10 2459/25 2468/1 2474/19
**shouldn't** [1] 2398/25
**show** [11] 2383/23 2384/18 2389/14 2391/4 2393/5 2393/22 2394/8 2397/13 2426/10 2432/16 2441/23
**showed** [5] 2393/25 2394/9 2394/16 2394/19 2414/12
**showing** [4] 2390/16 2392/25 2440/22 2440/25
**shown** [4] 2394/22 2426/11 2431/2 2453/15
**shows** [3] 2389/7 2403/12 2452/1
**side** [7] 2434/20 2470/17 2470/22 2472/1 2472/14 2476/12 2476/13
**Sidebar** [6] 2392/12 2393/8 2411/15 2413/19 2425/19 2426/22
**sides** [1] 2459/5
**significant** [2] 2405/22 2408/18
**significantly** [1]

**similar** [3] 2417/1 2446/14 2471/25
**similarly** [3] 2451/25 2453/14 2458/4
**simple** [9] 2397/22 2399/7 2416/3 2416/15 2431/8 2431/10 2431/13 2431/15 2432/3
**simply** [4] 2375/3 2413/10 2426/8 2436/18
**since** [3] 2399/21 2401/2 2439/2
**single** [1] 2432/3
**sit** [2] 2383/25 2384/1
**situation** [1] 2468/17
**six** [2] 2405/12 2428/5
**sketch** [1] 2395/11
**SLB** [1] 2407/19
**slide** [43] 2381/20 2381/20 2382/1 2382/3 2382/5 2382/10 2382/15 2382/23 2383/2 2383/15 2384/2 2385/10 2385/16 2385/25 2386/4 2386/5 2387/17 2400/5 2400/6 2400/12 2403/5 2403/6 2403/8 2403/16 2403/22 2403/23 2403/25 2405/8 2417/11 2420/7 2421/17 2422/6 2423/24 2426/8 2431/2 2437/16 2437/19 2437/24 2438/7 2442/8 2442/25 2444/21 2445/9
**slides** [16] 2381/24 2418/16 2425/5 2437/8 2437/8 2437/10 2437/16 2438/15 2439/24 2442/7 2443/11 2443/20 2443/24 2444/25 2446/6 2454/13
**slight** [1] 2461/9
**slightly** [1] 2377/10
**small** [6] 2395/10 2404/17 2404/18 2408/5 2409/10 2467/7
**smaller** [1] 2384/21

**so [151]**

**solely [1]** 2419/16
**solved [1]** 2429/14
**some [28]** 2375/5
2380/23 2381/13
2389/19 2394/10
2406/1 2408/17
2409/21 2427/17
2434/13 2435/24
2436/13 2436/16
2437/21 2437/22
2439/19 2443/12
2449/4 2450/11
2450/13 2456/15
2458/14 2458/14
2463/23 2468/1
2468/10 2468/18
2476/5
**somebody [1]** 2453/12
**somehow [5]** 2396/20
2401/5 2401/23 2410/4
2445/15
**someone [2]** 2449/18
2458/23
**something [11]**
2391/11 2395/11
2396/21 2410/5 2416/3
2426/3 2433/23
2434/12 2436/5
2444/13 2462/24
**sometimes [1]**
2387/14
**sorry [21]** 2397/16
2402/15 2406/15
2411/10 2415/5
2417/11 2427/5
2441/22 2443/9 2456/4
2456/19 2461/1
2461/23 2462/6
2462/11 2466/1 2468/2
2472/8 2473/2 2473/8
2473/11
**sort [10]** 2380/1
2380/21 2392/18
2396/19 2401/24
2432/15 2435/24
2436/7 2436/10
2436/16
**sorts [1]** 2438/17
**sources [1]** 2379/16
**sovereign [1]** 2432/13
**space [1]** 2467/15
**Spalding [1]** 2372/13

**speak [2]** 2454/17
2474/9
**specific [3]** 2383/7
2392/19 2396/4
**spite [1]** 2390/21
**split [3]** 2475/14
2475/18 2475/21
**splitting [1]** 2476/17
**spoke [2]** 2447/15
2447/16
**spots [1]** 2471/2
**spreads [1]** 2375/15
**stable [1]** 2431/19
**stand [7]** 2374/3
2380/10 2380/13
2395/9 2395/13
2448/25 2457/19
**standard [6]** 2438/4
2439/10 2466/8
2466/15 2466/19
2469/4
**standing [1]** 2417/15
**standpoint [1]**
2405/16
**stands [1]** 2414/10
**Stanton [7]** 2376/11
2379/6 2435/11
2442/24 2445/7
2459/16 2466/1
**start [8]** 2448/11
2470/6 2472/8 2475/15
2475/19 2476/13
2476/14 2476/21
**started [1]** 2476/18
**starting [3]** 2422/13
2422/17 2460/13
**state [2]** 2449/4
2463/14
**stated [4]** 2379/10
2412/18 2453/7
2467/25
**statement [14]**
2383/12 2383/20
2433/14 2434/11
2437/24 2438/1 2438/7
2438/9 2438/11 2455/6
2455/15 2456/24
2458/14 2469/22
**states [8]** 2371/1
2371/13 2437/18
2451/9 2451/11 2463/8
2463/20 2466/14
**statute [2]** 2464/20
2464/23

**statutory [3]** 2458/7
2464/25 2468/15
**stenotype [1]** 2372/25
**step [9]** 2395/5
2395/10 2409/18
2415/2 2416/15 2427/6
2427/7 2427/8 2446/1
**stepped [1]** 2409/19
**stick [1]** 2440/15
**sticks [1]** 2449/21
**still [13]** 2377/14
2380/14 2389/10
2389/11 2390/21
2393/3 2395/14
2404/23 2434/17
2435/13 2447/13
2448/3 2468/23
**stipulate [2]** 2378/15
2379/4
**stipulated [1]** 2379/8
**stock [15]** 2371/9
2396/24 2400/21
2401/4 2401/5 2401/12
2401/22 2405/6 2409/7
2409/13 2409/15
2418/22 2449/14
2449/25 2450/4
**storm [1]** 2432/15
**storm-clouds [1]**
2432/15
**straightforward [2]**
2444/6 2444/7
**strategic [7]** 2381/21
2382/24 2383/2
2383/11 2383/15
2383/19 2384/1
**street [3]** 2372/3
2372/16 2434/16
**stress [19]** 2387/16
2387/18 2387/21
2388/1 2388/3 2388/4
2388/22 2389/1 2389/6
2389/10 2389/11
2389/11 2390/6 2390/8
2390/9 2390/11
2390/13 2390/15
2407/23
**strictly [2]** 2376/22
2403/1
**strike [6]** 2409/12
2443/11 2445/15
2468/14 2473/15
2474/2
**strikes [1]** 2444/6

**striking [1]** 2460/4
**stronger [1]** 2425/12
**struck [2]** 2434/21
2444/20
**studying [1]** 2418/10
**stuff [2]** 2439/7
2442/18
**stunning [2]** 2432/8
2432/9
**subject [3]** 2378/9
2427/14 2430/9
**submission [1]**
2471/16
**submitted [4]** 2399/23
2427/15 2447/3
2450/24
**subsequent [1]**
2471/23
**substance [1]** 2457/20
**substantial [2]**
2396/20 2417/22
**substantially [1]**
2438/18
**substitute [1]** 2462/16
**such [6]** 2378/12
2405/18 2417/25
2461/14 2462/8
2468/25
**suffered [1]** 2439/5
**sufficient [4]** 2378/8
2379/2 2389/16
2389/17
**suggest [5]** 2418/2
2435/23 2436/12
2439/4 2475/24
**suggested [1]** 2472/25
**suggesting [4]**
2437/21 2437/21
2438/25 2472/15
**suggests [1]** 2469/22
**Suisse [1]** 2444/11
**sum [1]** 2457/20
**summary [9]** 2436/21
2439/23 2442/5
2449/12 2450/7 2457/6
2457/12 2458/17
2465/4
**summer [2]** 2393/20
2394/6
**support [1]** 2409/23
**supported [1]** 2436/18
**supporting [1]**
2451/18
**suppose [3]** 2378/4

**S**

suppose... [2]  2378/7
 2397/25
Supreme [1]  2463/20
sure [14]  2378/24
 2380/21 2388/4
 2391/14 2402/16
 2427/18 2433/10
 2443/12 2448/13
 2451/8 2459/10
 2459/18 2471/8 2472/5
surprise [1]  2376/17
surprised [1]  2400/1
surprising [1]  2399/21
survive [3]  2390/8
 2390/12 2390/12
sustained [9]  2408/11
 2410/14 2410/16
 2410/17 2419/2
 2426/21 2432/20
 2471/15 2473/6
swapped [1]  2407/11
sweep [10]  2404/7
 2404/9 2407/1 2407/5
 2410/9 2418/20
 2431/23 2436/6
 2449/16 2449/20
system [4]  2409/19
 2409/21 2409/24
 2410/25

**T**

Tab [1]  2391/23
table [1]  2382/8
take [34]  2378/1
 2378/23 2378/24
 2378/25 2379/4
 2379/24 2388/8 2389/7
 2389/9 2396/18
 2397/22 2398/6 2399/2
 2401/17 2402/22
 2414/6 2414/19
 2415/21 2422/24
 2423/23 2427/16
 2433/1 2433/20 2434/1
 2434/5 2434/25 2440/2
 2442/19 2447/7 2448/8
 2463/15 2463/17
 2467/17 2467/18
taken [4]  2378/13
 2418/19 2441/13
 2449/13
taking [6]  2378/3
 2398/22 2401/6

2439/21 2454/12
 2475/6
talk [10]  2397/23
 2406/22 2412/9 2413/13
 2415/25 2420/3
 2427/25 2439/10
 2444/1 2461/21
talked [4]  2374/20
 2399/21 2405/6
 2417/14
talking [5]  2379/18
 2404/8 2410/20 2471/7
 2472/21
talks [2]  2405/10
 2455/8
tangible [1]  2415/15
TARP [1]  2410/2
tell [11]  2378/19
 2378/19 2398/25
 2402/1 2422/8 2431/9
 2440/20 2457/20
 2465/7 2475/21
 2476/18
telling [1]  2453/10
tells [2]  2416/12
 2465/13
ten [1]  2425/6
term [3]  2382/16
 2385/8 2405/10
terms [11]  2378/22
 2385/2 2399/6 2405/2
 2405/4 2405/13 2409/2
 2409/3 2414/16
 2415/10 2463/9
test [3]  2390/6 2390/8
 2390/11
testified [13]  2379/22
 2380/22 2381/2
 2381/10 2382/15
 2384/12 2385/19
 2388/6 2395/22
 2410/13 2413/15
 2426/9 2458/24
testifies [1]  2411/19
testify [3]  2419/24
 2430/25 2459/25
testifying [1]  2458/25
testimony [54]
 2374/20 2376/2 2376/7
 2381/12 2383/5
 2384/10 2391/24
 2392/9 2392/22 2393/2
 2393/3 2393/11
 2394/16 2395/23

2396/13 2397/7 2397/9
 2401/19 2402/2 2403/9
 2403/17 2406/7
 2406/19 2408/10
 2410/12 2411/19
 2412/7 2413/6 2413/9
 2418/15 2419/15
 2420/11 2423/21
 2425/6 2426/5 2426/14
 2429/3 2429/8 2430/9
 2430/10 2430/14
 2430/18 2431/3 2431/7
 2444/11 2444/14
 2444/20 2445/9
 2445/11 2445/15
 2445/19 2445/20
 2446/20 2450/1
Thakor [21]  2374/10
 2376/2 2395/9 2395/13
 2395/16 2395/18
 2395/21 2397/17
 2408/15 2412/16
 2412/23 2413/21
 2417/20 2418/5
 2418/16 2419/6 2419/8
 2422/8 2423/8 2425/22
 2426/24
Thakor's [6]  2403/6
 2411/18 2417/11
 2423/20 2426/9
 2426/17
than [29]  2374/24
 2376/1 2377/10 2379/5
 2382/24 2383/16
 2387/11 2388/14
 2401/4 2401/12
 2401/20 2405/3 2405/7
 2409/4 2410/21
 2416/13 2426/4 2436/1
 2436/4 2439/3 2440/12
 2450/3 2450/15
 2455/23 2462/9
 2464/19 2468/6
 2472/15 2473/17
Thank [26]  2377/20
 2379/6 2380/16
 2386/18 2388/25
 2390/23 2391/21
 2395/7 2395/19
 2397/20 2399/16
 2402/25 2419/3 2419/5
 2427/2 2432/22
 2434/23 2435/10
 2438/21 2445/7

2446/6 2454/22
 2459/22 2470/3
 2474/11 2476/23
thanks [1]  2427/9
that [621]
that's [68]  2381/3
 2385/22 2386/17
 2387/2 2387/13
 2390/24 2396/11
 2397/1 2397/4 2398/8
 2399/1 2399/7 2399/12
 2403/15 2404/7 2404/9
 2405/7 2405/15 2410/1
 2410/24 2412/18
 2413/16 2414/11
 2415/17 2415/20
 2417/16 2419/12
 2419/14 2419/15
 2420/10 2420/15
 2420/21 2420/25
 2421/1 2421/11
 2421/14 2423/4
 2424/19 2428/7
 2431/12 2431/19
 2433/3 2436/23 2437/5
 2438/9 2439/8 2439/17
 2439/21 2439/22
 2442/4 2443/23
 2445/19 2446/2 2446/5
 2449/21 2450/4
 2451/11 2452/1
 2458/11 2462/18
 2463/20 2469/1
 2472/23 2473/18
 2473/25 2474/10
 2474/25 2476/20
their [28]  2386/6
 2387/1 2388/5 2407/17
 2407/19 2407/24
 2408/1 2408/19 2409/7
 2414/9 2416/19
 2428/22 2431/22
 2433/12 2434/25
 2435/2 2436/15
 2436/25 2439/12
 2443/10 2445/2
 2447/25 2453/2
 2453/13 2457/13
 2460/24 2464/7 2465/8
them [31]  2385/21
 2400/14 2408/3 2411/7
 2412/15 2414/6
 2414/10 2424/4
 2428/17 2430/14

**T**

**them... [21]** 2432/13
2439/24 2439/25
2440/20 2442/22
2443/24 2444/3
2446/21 2451/14
2451/19 2452/18
2452/20 2452/25
2453/16 2453/18
2453/19 2453/19
2464/23 2469/23
2469/24 2474/9
**theme [1]** 2457/3
**themselves [3]**
2429/22 2465/14
2474/9
**then [60]** 2374/8
2375/6 2375/7 2376/9
2378/16 2378/16
2381/10 2396/20
2398/6 2398/10
2398/12 2398/16
2404/10 2405/5
2405/14 2410/2 2410/6
2415/16 2416/1 2416/8
2416/10 2419/17
2419/21 2419/23
2423/14 2428/12
2432/24 2433/3
2437/11 2438/15
2439/13 2439/17
2441/13 2441/19
2442/13 2442/14
2442/15 2442/19
2445/20 2447/13
2448/1 2448/17
2456/18 2456/20
2458/18 2459/3
2462/19 2464/5
2465/24 2467/6
2467/20 2468/13
2469/10 2469/19
2470/21 2471/20
2473/23 2474/5 2475/1
2475/14
**theoretically [1]**
2430/9
**theories [1]** 2436/14
**theory [3]** 2449/11
2449/12 2450/6
**there [65]** 2374/23
2375/11 2375/20
2375/22 2376/3 2376/3
2376/4 2376/12

2377/23 2379/22
2380/2 2386/15
2387/18 2390/2
2396/13 2401/8
2402/13 2403/12
2405/24 2407/22
2409/5 2409/8 2409/10
2409/21 2428/7
2428/20 2429/3 2429/6
2429/8 2429/19
2429/25 2429/25
2430/9 2432/3 2432/17
2433/13 2436/8
2437/22 2438/10
2438/10 2439/16
2441/3 2441/12
2441/24 2444/17
2446/1 2450/13
2450/25 2451/15
2451/17 2452/4
2452/13 2452/19
2454/21 2462/23
2465/24 2465/25
2466/10 2466/19
2468/25 2470/8
2471/17 2471/22
2474/2 2475/23
**there's [25]** 2375/9
2377/14 2395/10
2396/20 2402/21
2405/5 2407/6 2429/10
2430/2 2430/8 2430/11
2430/13 2431/20
2433/14 2433/15
2437/21 2440/11
2441/10 2449/22
2449/24 2450/13
2451/2 2468/22
2474/23 2475/9
**thereafter [1]** 2407/5
**thereby [1]** 2458/10
**therefore [1]** 2453/2
**these [59]** 2374/7
2375/3 2382/20 2383/8
2392/23 2398/20
2399/3 2408/18 2409/2
2409/17 2409/18
2410/2 2414/19
2416/4 2416/23 2424/2
2424/2 2424/7 2425/2
2425/2 2425/3 2425/11
2427/23 2428/16
2428/18 2428/20
2428/24 2429/17

2429/22 2429/25
2430/1 2430/5 2430/7
2430/16 2431/7
2431/21 2432/16
2432/17 2432/17
2432/19 2432/21
2437/14 2438/8
2439/22 2443/3
2444/18 2444/23
2444/25 2445/25
2446/2 2446/5 2446/5
2446/9 2446/16
2446/18 2449/10
2471/2
**they [140]**
**they'll [1]** 2450/6
**they're [12]** 2389/11
2398/22 2401/2
2401/13 2415/21
2430/11 2439/7
2440/12 2441/7 2444/4
2449/19 2452/17
**they've [3]** 2432/1
2446/11 2469/13
**thing [10]** 2378/4
2392/18 2405/10
2432/2 2433/2 2433/22
2434/11 2439/18
2447/12 2448/17
**things [8]** 2408/20
2425/14 2431/8 2434/6
2434/14 2439/20
2441/7 2441/24
**think [73]** 2375/4
2377/9 2377/23
2379/20 2384/1
2387/24 2389/24
2390/5 2390/7 2391/11
2392/21 2396/8
2396/15 2397/4 2405/8
2406/13 2406/21
2407/8 2411/4 2412/12
2415/8 2422/1 2422/10
2423/4 2423/6 2423/7
2429/20 2433/20
2433/20 2433/21
2440/4 2440/11
2440/14 2440/16
2440/17 2441/10
2441/16 2444/14
2444/20 2445/21
2447/18 2447/22
2447/24 2448/18

2448/24 2450/13
2453/21 2457/16
2457/23 2458/18
2458/25 2459/3 2459/4
2459/9 2459/12
2460/17 2462/2
2465/10 2465/11
2468/19 2469/3
2469/10 2469/18
2469/19 2469/21
2469/21 2469/22
2470/19 2470/25
2473/21 2473/25
2475/10 2475/25
**thinking [1]** 2375/1
**third [9]** 2405/10
2451/20 2452/8
2460/22 2464/6
2464/13 2465/1 2473/6
2475/23
**this [165]**
**THOMPSON [1]**
2371/16
**those [43]** 2375/22
2377/11 2379/25
2381/11 2381/12
2381/16 2385/11
2393/22 2394/5 2394/8
2405/20 2415/17
2420/22 2425/14
2434/6 2434/8 2436/9
2437/10 2437/11
2438/12 2438/15
2446/4 2446/13
2446/22 2447/7
2450/25 2451/12
2451/13 2451/20
2452/5 2452/14 2453/8
2453/17 2454/1 2454/3
2454/6 2454/14
2459/12 2460/7 2461/7
2465/8 2472/23 2476/9
**though [2]** 2416/17
2446/5
**thought [6]** 2382/24
2383/11 2383/15
2383/19 2433/19
2440/1
**threaten [1]** 2388/17
**three [12]** 2387/11
2387/14 2389/3
2390/17 2390/18
2409/8 2438/10
2438/12 2441/24

# T

**three... [3]** 2473/15 2474/1 2474/15
**three-year [1]** 2409/8
**through [17]** 2375/6 2382/14 2383/5 2384/10 2385/1 2385/2 2386/13 2388/11 2389/21 2389/23 2396/9 2432/18 2438/15 2448/3 2448/8 2475/11 2476/11
**throughout [3]** 2381/13 2423/14 2425/12
**Tim [1]** 2391/9
**time [22]** 2379/22 2379/23 2391/8 2404/7 2407/1 2407/5 2407/25 2416/7 2422/1 2425/1 2425/11 2430/13 2431/8 2436/3 2437/14 2438/6 2441/12 2448/21 2474/2 2476/2 2476/5 2476/6
**timeline [1]** 2430/23
**times [2]** 2426/11 2464/15
**title [4]** 2441/17 2443/2 2443/2 2443/5
**titled [1]** 2437/17
**today [9]** 2394/15 2448/4 2448/11 2448/11 2475/15 2476/5 2476/13 2476/13 2476/14
**together [3]** 2409/8 2420/22 2447/21
**told [5]** 2379/19 2407/9 2444/18 2474/10 2475/16
**tomorrow [6]** 2448/2 2448/18 2475/15 2475/15 2475/25 2476/1
**too [1]** 2390/14
**took [4]** 2415/1 2416/15 2455/7 2455/12
**top [4]** 2408/20 2409/18 2424/11 2424/17
**Topaz [1]** 2371/21
**topping [4]** 2409/16

2410/4 2410/10 2410/21
**total [11]** 2389/24 2394/1 2394/10 2405/20 2415/15 2415/15 2415/17 2416/18 2420/18 2421/8 2421/10
**totally [1]** 2388/24
**track [1]** 2447/13
**Tracking [1]** 2375/15
**transcript [7]** 2371/12 2372/25 2386/13 2388/11 2396/10 2431/5 2477/4
**transcription [1]** 2372/25
**transferred [1]** 2403/19
**travels [1]** 2449/22
**Treasury [48]** 2389/8 2389/12 2389/22 2389/24 2390/4 2390/16 2390/21 2393/23 2394/1 2394/6 2396/11 2400/12 2400/21 2400/23 2401/20 2401/25 2402/14 2403/20 2403/21 2405/23 2409/11 2409/14 2409/18 2409/19 2410/2 2410/8 2411/6 2411/20 2411/23 2412/2 2412/8 2412/13 2412/19 2412/25 2413/2 2413/3 2413/5 2414/3 2414/5 2414/18 2416/24 2417/25 2419/21 2421/10 2423/2 2432/5 2432/11 2472/22
**Treasury's [3]** 2403/12 2403/14 2415/19
**treated [2]** 2384/5 2384/7
**treating [2]** 2397/11 2447/25
**trial [7]** 2371/12 2396/10 2431/4 2449/11 2449/13 2450/5 2450/6
**trick [1]** 2447/25
**tried [1]** 2426/16

2409/17
**true [5]** 2400/23 2405/11 2438/8 2443/3 2477/4
**truth [5]** 2444/4 2453/7 2453/11 2453/18 2454/4
**try [3]** 2387/1 2422/4 2472/24
**trying [6]** 2393/5 2402/14 2429/9 2429/16 2439/7 2447/23
**tub [1]** 2396/17
**Tucker [1]** 2441/12
**tune [1]** 2390/22
**turn [1]** 2391/24
**turns [1]** 2450/4
**two [37]** 2374/15 2374/18 2375/8 2375/9 2375/11 2375/13 2375/22 2376/3 2376/15 2387/13 2404/18 2404/18 2405/11 2415/18 2427/13 2427/23 2428/18 2432/16 2443/20 2443/24 2443/25 2445/25 2446/6 2447/13 2447/18 2448/24 2450/12 2450/23 2451/10 2452/5 2452/23 2453/25 2454/9 2457/11 2460/7 2466/2 2476/9
**type [3]** 2390/13 2426/1 2449/22
**types [1]** 2429/10
**typically [1]** 2385/1

# U

**U.S [5]** 2372/21 2432/7 2432/10 2432/10 2432/13
**Ugoletti [2]** 2451/23 2452/3
**Uh [1]** 2420/5
**Uh-huh [1]** 2420/5
**uncertainty [1]** 2432/10
**under [22]** 2379/14 2380/14 2395/14

2407/24 2408/16 2410/2 2410/2 2423/9 2424/24 2436/6 2437/19 2449/12 2453/23 2457/15 2459/4 2463/6 2463/15 2464/18 2464/19 2464/20 2468/16 2469/4
**understand [17]** 2376/21 2378/21 2382/9 2382/19 2383/14 2383/21 2394/25 2407/8 2409/3 2417/9 2421/6 2430/23 2432/22 2433/16 2434/10 2464/18 2464/23
**understanding [5]** 2383/25 2385/14 2385/19 2407/3 2443/5
**understate [1]** 2401/16
**understating [1]** 2401/6
**understood [4]** 2434/23 2453/5 2476/8 2476/23
**undisclosed [3]** 2408/9 2413/11 2413/12
**undrawn [9]** 2414/6 2414/19 2415/22 2420/18 2421/8 2422/1 2422/10 2422/13 2422/16
**unduly [1]** 2379/11
**unfair [1]** 2448/19
**UNITED [3]** 2371/1 2371/13 2463/20
**unless [1]** 2402/17
**unlike [1]** 2444/15
**unofficial [2]** 2382/16 2385/8
**unrealistic [1]** 2414/24
**unreasonable [2]** 2438/5 2442/1
**unreasonably [2]** 2457/14 2465/17
**unsecured [2]** 2404/16 2406/2
**until [1]** 2476/22
**unusual [1]** 2387/12
**up [21]** 2381/7

**U**

up... **[20]** 2382/13
2383/4 2384/9 2386/12
2388/10 2389/22
2403/2 2416/19 2420/7
2428/6 2430/16
2432/11 2439/25
2441/22 2444/24
2455/16 2455/24
2456/12 2458/25
2461/5
**upfront [2]** 2396/25
2409/6
**upon [6]** 2377/7
2382/4 2451/3 2458/19
2459/8 2475/6
**ups [1]** 2443/25
**upside [1]** 2388/14
**us [10]** 2375/12 2404/2
2409/1 2416/12
2438/24 2439/24
2445/4 2446/21
2461/12 2462/2
**use [8]** 2400/2 2411/6
2412/14 2413/2 2442/5
2447/5 2465/8 2476/5
**used [6]** 2390/10
2394/2 2394/9 2403/8
2453/1 2455/9
**using [4]** 2386/5
2390/16 2415/10
2416/17
**usual [1]** 2382/19

**V**

**valid [2]** 2399/2
2416/22
**valuable [1]** 2449/21
**value [3]** 2405/16
2405/19 2449/12
**valued [1]** 2405/15
**values [2]** 2405/19
2405/20
**various [4]** 2419/25
2421/4 2423/16 2471/2
**VARMA [1]** 2372/8
**Vectura [1]** 2437/1
**verdict [9]** 2459/7
2467/7 2467/11
2469/10 2469/25
2470/12 2470/15
2471/10 2476/3
**VERGOW [1]** 2372/15
**version [9]** 2391/4

2424/8 2442/16
2455/11 2455/16
2455/22 2458/14
2461/10 2461/16
**versions [1]** 2380/23
**versus [4]** 2380/2
2405/5 2406/2 2469/1
**very [23]** 2376/2
2394/14 2399/7
2404/17 2405/22
2407/25 2411/19
2412/1 2416/3 2416/15
2439/2 2442/23
2442/24 2445/22
2453/21 2453/24
2457/6 2457/16 2461/3
2467/24 2468/25
2469/6 2470/11
**viability [1]** 2388/18
**video [2]** 2388/19
2393/17
**videos [1]** 2451/2
**view [2]** 2442/11
2443/20
**views [1]** 2396/5
**VINCENT [1]** 2371/17
**violate [1]** 2443/21
**violated [1]** 2458/7
**violates [1]** 2465/18
**violation [1]** 2438/5
**Virginia [4]** 2466/9
2466/19 2468/17
2469/4
**vote [2]** 2380/2 2380/2
**vs [1]** 2371/4

**W**

**Wait [4]** 2456/3
2472/12 2472/12
2472/12
**walk [1]** 2397/19
**want [34]** 2384/20
2390/11 2395/10
2398/1 2402/11
2402/16 2407/14
2413/25 2415/5
2419/16 2435/20
2436/12 2442/10
2443/9 2447/24 2448/1
2450/20 2456/18
2456/20 2461/9
2462/20 2465/6 2465/9
2465/15 2468/17
2475/14 2475/18

2476/20 2475/21
2476/1 2476/3 2476/5
2476/12 2476/20
**wanted [7]** 2376/13
2376/16 2384/8
2402/19 2412/16
2414/2 2457/21
**wants [2]** 2445/6
2457/9
**warning [1]** 2432/15
**warrant [2]** 2409/10
2409/14
**warranted [1]** 2426/16
**warrants [1]** 2396/23
**was [189]**
**Washington [7]**
2371/6 2371/19
2371/25 2372/11
2372/14 2372/17
2372/22
**wasn't [9]** 2384/13
2384/25 2384/25
2394/20 2394/22
2409/13 2411/4
2412/12 2429/14
**watch [3]** 2375/2
2431/1 2431/17
**watches [1]** 2431/6
**watching [1]** 2388/19
**way [29]** 2379/11
2380/3 2383/18 2385/2
2386/25 2394/17
2394/22 2395/1 2395/3
2398/1 2403/18
2416/21 2417/1
2421/14 2422/19
2432/5 2434/14
2443/18 2444/3 2448/3
2457/14 2463/25
2465/17 2469/22
2470/19 2472/1
2473/20 2473/22
2475/9
**we [178]**
**we'd [3]** 2375/19
2430/18 2454/24
**we'll [9]** 2377/11
2377/17 2380/4
2381/17 2396/4
2398/10 2398/16
2427/16 2448/4
**we're [13]** 2376/17
2376/22 2377/2
2379/18 2380/21

2399/13 2398/6 2404/4
2434/25 2440/20
2441/22 2442/15
2462/14
**we've [4]** 2379/12
2402/17 2424/3 2437/8
**website [1]** 2415/3
**week [6]** 2376/19
2377/5 2395/10
2395/21 2423/14
2423/15
**weekend [2]** 2378/16
2442/18
**weeks [3]** 2381/14
2405/12 2429/2
**Welcome [1]** 2395/18
**well [37]** 2386/21
2388/20 2390/1
2393/11 2394/24
2396/15 2396/19
2397/20 2398/16
2400/11 2400/23
2402/19 2404/14
2405/15 2409/11
2413/8 2414/11
2415/14 2419/14
2420/1 2422/4 2423/7
2425/2 2428/16
2429/25 2432/19
2436/13 2437/11
2439/20 2441/17
2446/14 2446/23
2448/4 2448/21
2450/13 2466/24
2476/15
**went [5]** 2407/18
2416/4 2424/8 2432/11
2441/13
**were [70]** 2378/14
2379/3 2379/21
2379/22 2381/11
2381/12 2381/19
2382/10 2382/23
2383/2 2389/18
2391/5 2391/12
2392/17 2393/2 2393/5
2393/19 2394/5
2394/12 2395/21
2401/19 2402/24
2404/7 2404/23 2405/3
2405/13 2405/18
2405/21 2405/24
2407/4 2407/20
2407/23 2408/18

# W

**were...** [37] 2409/4 2409/17 2409/21 2410/25 2415/21 2416/8 2416/25 2422/10 2424/14 2425/3 2425/10 2425/14 2427/13 2430/4 2431/21 2431/21 2431/24 2432/12 2436/13 2442/25 2446/7 2449/17 2451/10 2451/13 2452/6 2452/11 2452/16 2453/1 2453/14 2453/23 2454/4 2454/6 2454/10 2454/14 2454/15 2461/18 2463/5

**weren't** [1] 2452/25

**what** [132]

**what's** [10] 2392/1 2396/14 2397/20 2400/11 2415/2 2428/13 2445/23 2453/18 2457/25 2462/19

**whatever** [8] 2374/24 2414/14 2416/1 2431/17 2442/21 2457/9 2457/21 2465/15

**when** [18] 2374/22 2377/17 2380/11 2394/19 2395/21 2397/3 2404/7 2405/11 2409/7 2414/7 2425/3 2425/9 2426/2 2431/13 2441/13 2447/7 2449/18 2463/24

**whenever** [1] 2407/1

**where** [21] 2374/3 2394/19 2395/10 2397/4 2397/23 2401/11 2405/8 2407/4 2407/20 2409/14 2413/16 2429/4 2429/5 2444/23 2448/14 2448/16 2456/6 2461/1 2468/17 2471/6 2471/20

**whereas** [2] 2399/1 2404/12

**whether** [19] 2374/22 2376/24 2378/1 2378/25 2389/14 2394/5 2405/19 2406/6 2421/7 2430/3 2433/19 2438/4 2457/13 2464/5 2466/8 2466/8 2466/10 2469/16 2471/3

**which** [47] 2375/2 2375/12 2375/20 2376/3 2390/19 2392/19 2392/21 2395/2 2398/10 2399/20 2401/18 2413/13 2414/17 2419/11 2424/8 2426/9 2427/13 2427/15 2428/18 2430/17 2431/8 2437/25 2439/9 2443/24 2443/25 2453/3 2453/22 2455/7 2458/2 2458/15 2461/4 2461/15 2462/2 2463/4 2466/8 2466/19 2468/7 2468/11 2468/18 2470/19 2472/2 2474/16 2475/12 2475/24 2476/9 2476/17 2476/17

**while** [4] 2380/4 2446/6 2458/4 2464/1

**who** [5] 2393/15 2418/5 2418/6 2445/6 2458/23

**whole** [8] 2384/15 2384/22 2390/7 2394/24 2399/11 2415/24 2431/22 2466/18

**whose** [1] 2379/16

**why** [10] 2386/15 2386/20 2388/17 2397/11 2400/19 2410/2 2425/9 2442/2 2443/23 2476/20

**WIERZBOWSKI** [1] 2372/4

**wild** [1] 2434/13

**will** [33] 2374/9 2377/3 2377/9 2380/12 2390/12 2390/12 2402/16 2429/8 2434/14 2434/18 2438/13 2440/4

2440/16 2444/21 2444/7 2446/22 2447/17 2448/2 2448/3 2448/25 2452/12 2452/18 2454/18 2458/24 2461/21 2461/25 2465/23 2467/10 2475/18 2476/2 2476/8 2476/10 2476/24

**willing** [4] 2378/14 2378/20 2379/4 2398/18

**Wilmington** [1] 2372/3

**win** [7] 2438/8 2438/13 2441/16 2443/4 2443/6 2443/7 2443/8

**wish** [1] 2374/14

**withdrawals** [1] 2414/10

**within** [10] 2399/10 2405/12 2413/8 2426/13 2428/19 2437/14 2440/14 2464/11 2464/25 2465/1

**without** [7] 2375/9 2375/11 2419/22 2424/21 2432/2 2451/14 2454/1

**witness** [6] 2373/2 2374/4 2374/9 2378/22 2391/15 2395/6

**witnesses** [3] 2374/8 2427/3 2458/23

**word** [7] 2388/8 2422/24 2445/12 2473/16 2474/2 2474/15 2474/16

**worded** [1] 2469/25

**wording** [2] 2456/16 2472/4

**wordings** [1] 2391/13

**words** [3] 2389/13 2449/18 2465/8

**work** [4] 2396/6 2431/7 2465/23 2470/5

**world** [4] 2411/21 2412/3 2412/20 2432/8

**worried** [3] 2431/24 2441/3 2441/8

**worse** [1] 2388/22

**worst** [2] 2388/1 2389/14

**worth** [1] 2404/7 2404/9 2407/1 2407/5 2410/9 2418/20 2424/22 2431/23 2436/6 2445/19 2445/21 2449/15 2449/20

**would** [123]

**wouldn't** [1] 2386/21

**WR** [1] 2474/21

**write** [1] 2407/13

**written** [7] 2376/18 2376/23 2397/20 2408/22 2408/23 2438/16 2457/5

**wrong** [9] 2396/21 2397/5 2397/24 2400/20 2401/21 2401/23 2412/23 2415/17 2415/20

# Y

**Yeah** [14] 2387/10 2390/18 2406/21 2415/8 2421/13 2424/20 2435/21 2441/2 2443/13 2443/16 2471/11 2472/24 2476/20 2476/20

**year** [13] 2389/25 2390/16 2394/2 2398/5 2398/12 2398/21 2409/8 2409/9 2420/25 2422/19 2422/21 2422/22 2468/15

**years** [21] 2375/1 2382/20 2387/5 2387/8 2387/11 2387/13 2387/14 2389/3 2390/17 2390/18 2394/2 2394/10 2405/11 2405/14 2421/21 2423/1 2423/9 2425/6 2425/8 2436/3 2457/4

**yes** [63] 2380/25 2381/5 2381/15 2381/24 2382/7 2382/18 2382/22 2383/2 2383/13 2384/17 2385/5 2385/13 2386/2 2386/5 2387/3 2387/7 2388/15

2511

# Y

**yes... [46]** 2388/19
2389/2 2389/5 2391/7
2391/16 2391/20
2392/8 2393/13
2393/21 2394/7
2395/24 2396/3
2397/12 2400/4
2400/10 2402/7
2403/10 2404/1 2406/4
2406/11 2408/25
2417/7 2417/11
2419/19 2420/2 2421/3
2422/15 2423/4 2423/6
2423/11 2423/18
2424/12 2425/18
2427/8 2433/6 2435/2
2435/4 2435/18 2440/7
2441/22 2442/7
2447/21 2456/21
2470/10 2471/21
2474/12
**yesterday [2]** 2378/18
2428/19
**yet [2]** 2377/7 2468/11
**yield [3]** 2375/15
2401/3 2401/5
**yields [5]** 2401/11
2401/12 2401/22
2405/6 2405/7
**York [7]** 2371/24
2372/6 2372/6 2402/13
2403/13 2403/19
2405/23
**York's [1]** 2404/11
**you [267]**
**you'd [2]** 2437/11
2451/5
**you'll [3]** 2397/17
2401/18 2456/14
**you're [15]** 2380/14
2388/13 2388/15
2388/21 2388/23
2390/2 2395/14
2397/11 2398/4
2398/11 2424/18
2440/14 2440/15
2440/16 2442/5
**you've [16]** 2384/13
2384/24 2395/25
2396/23 2398/10
2399/4 2399/5 2399/5
2405/14 2405/14
2408/23 2420/19

2425/12 2425/16
2426/18 2441/20
**your [182]**

# Z

**ZAGAR [2]** 2371/20
2438/25
**zero [13]** 2411/5
2411/25 2412/13
2412/21 2414/25
2419/11 2419/12
2419/19 2419/19
2419/25 2424/15
2424/22 2444/17