```
 1                 BEFORE THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
 2

 3    FAIRHOLME FUNDS, INC., et al.,    .
                                        .
 4            Plaintiffs,               .
                                        .  Case Number 13-cv-1053
 5        vs.                           .
                                        .
 6    FEDERAL HOUSING FINANCE AGENCY,   .
      et al.,                           .
 7                                      .
              Defendants.               .
 8    - - - - - - - - - - - - - - - -
      In re FANNIE MAE/FREDDIE MAC      .  Case Number 13-mc-1288
 9    SENIOR PREFERRED STOCK PURCHASE   .
      AGREEMENT CLASS ACTION            .  Washington, D.C.
10    LITIGATIONS.                      .  November 2, 2022
      - - - - - - - - - - - - - - - -   .  10:25 a.m.
11

12                    TRANSCRIPT OF JURY TRIAL
                  BEFORE THE HONORABLE ROYCE C. LAMBERTH
13                   UNITED STATES DISTRICT JUDGE

14    APPEARANCES:

15    For Berkley Plaintiffs:      HOWARD SLOUGH, ESQ.
                                   Cooper & Kirk, PLLC
16                                 1523 New Hampshire Avenue Northwest
                                   Washington, D.C. 20036
17
      For Class Plaintiffs:        LEE RUDY, ESQ.
18                                 ERIC ZAGAR, ESQ.
                                   Kessler Topaz Meltzer & Check, LLP
19                                 280 King of Prussia Road
                                   Radnor, Pennsylvania 19087
20
                                   HAMISH HUME, ESQ.
21                                 SAMUEL KAPLAN, ESQ.
                                   KENYA DAVIS, ESQ.
22                                 Boies Schiller Flexner LLP
                                   1401 New York Avenue Northwest
23                                 Washington, D.C. 20005

24

25                     -- continued --
```

```
1    APPEARANCES (CONTINUED):

2                               MICHAEL J. BARRY, ESQ.
                                Grant & Eisenhofer, P.A.
3                               123 Justison Street
                                Seventh Floor
4                               Wilmington, Delaware 19801

5                               ROBERT KRAVETZ, ESQ.
                                RICHARD GLUCK, ESQ.
6                               Bernstein Litowitz Berger &
                                   Grossmann LLP
7                               1251 Avenue of the Americas
                                New York, New York 10020
8
     For Defendant Federal
9    Housing Finance Agency:    JONATHAN STERN, ESQ.
                                ASIM VARMA, ESQ.
10                              DAVID BERGMAN, ESQ.
                                IAN HOFFMAN, ESQ.
11                              ROBERT JONES, ESQ.
                                Arnold & Porter Kaye Scholer LLP
12                              601 Massachusetts Avenue Northwest
                                Washington, D.C. 20001
13

14

15   Official Court Reporter:   SARA A. WICK, RPR, CRR
                                United States District Court
16                                 for the District of Columbia
                                333 Constitution Avenue Northwest
17                              Room 4704-B
                                Washington, D.C. 20001
18                              202-354-3284

19   Proceedings recorded by stenotype shorthand.
     Transcript produced by computer-aided transcription.
20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2        (Call to order of the court.)

 3        (Jury not present.)

 4        COURTROOM DEPUTY:  Your Honor, we are back on the

 5   record for consolidated and related cases, 13-mc-1288 and

 6   13-cv-1053.

 7        THE COURT:  All right.  I wanted to advise counsel

 8   that my law clerk that has been handling this case advised me at

 9   home that he has tested positive this morning.

10        I have just advised the jury and met with the jury.  I've

11   given them each a COVID test kit and expect them to take the

12   COVID test.  I told them if they were still deliberating on

13   Friday they would need to take another test and I would give

14   them a COVID test on Friday and if they would go home in the

15   meantime and take another test at home.

16        The protocol is if you test negative today, to let me know

17   in the next few days.  If you test positive today, let me know

18   in the next few minutes and that I would deal with them then.

19   If they test negative today, they should under the protocol test

20   again on Friday.

21        My law clerk at any time in dealing with you yesterday had

22   his mask on -- I think at all times when he dealt with you, he

23   had his mask on.  He did exchange papers with you during the

24   session we had on preparation of the financial instructions, and

25   I know he handed you all some papers and walked over there a
```

1    couple of times.

2         I don't think he had any direct exchange with the jurors.

3    He did prepare those jury letters that I gave them last night

4    when they left, but they were given to them by my courtroom

5    deputy, who tested negative this morning.  My other staff has

6    tested negative this morning.

7         I want to advise all of you, though, you should all get

8    tested this morning, those of you who are in close proximity, I

9    think, and if any of you test positive, you should advise the

10   members of your team and the other team as well and let me know.

11   I want to do everything I can to keep everybody safe.

12        And I just wanted to let you all know about that.

13             MR. HUME:  Thank you, Your Honor.

14             MR. STERN:  Thank you, Your Honor.

15             MR. HUME:  And we will act accordingly.

16             MR. STERN:  Your Honor, the jury will continue

17   deliberating?

18             THE COURT:  The jury will continue deliberating.  If I

19   have to excuse anyone, I will let you know, if anyone tests

20   positive.

21             MR. STERN:  Does the Court have any idea what time the

22   Court will be excusing the jurors for lunch, just so we know

23   when we're --

24             THE COURT:  At 12:30.

25             MR. STERN:  Thank you, Your Honor.

1          THE COURT:  But they're having lunch brought in.

2     We're providing their lunch.  So they will just continue

3     deliberating if they want to.  Deliberating jurors, I can

4     provide their lunch.

5          MR. STERN:  I'm just trying to figure out -- anyway,

6     thank you, Your Honor.

7          THE COURT:  Thanks very much, Counsel.

8        (Recess taken from 10:26 a.m. to 1:44 p.m.)

9          COURTROOM DEPUTY:  Your Honor, we are back on the

10    record in consolidated cases 13-mc-1288 and 13-cv-1053.

11         THE COURT:  All right.  The note I've had from the

12    jury I've provided to counsel.  The juror foreperson is juror

13    number 8, who signed the note.

14      The Court's initial response is, I will give you a copy of

15    civil jury instruction from the standard instruction 3.06, which

16    is what we would normally do.  It's called the *Winters*

17    instruction in civil cases.  There's a similar instruction in

18    criminal.  My clerk will give you a copy of the standard *Winters*

19    instruction when we get a note like this.

20      They haven't actually said they're hung, but it's close.

21      So you can look at this *Winters* instruction, and then I

22    will see if you all have some other suggestion about what we do

23    at this stage.

24         MR. STERN:  Your Honor, it's my understanding that the

25    standard instruction is the instruction approved in *Thomas* that

1    Your Honor has actually cited as the precise anti --

2              THE COURT:  Which one?

3              MR. STERN:  *Thomas*, Your Honor.

4         And Your Honor in *Stover* -- Court's indulgence.  Sorry.

5    I'm trying to find the page.

6              MR. HUME:  Your Honor, Hamish Hume.

7              MR. STERN:  Your Honor, if I may, in *Stover*, which is

8    Your Honor's case, 576 F.Supp. 134, I'm quoting Your Honor from

9    the opinion.  "The precise anti-deadlock charge has" -- let me

10   back up.

11        "The petitioner's final jury instruction contention is that

12   the Court gave an incorrect anti-deadlock charge."  This was

13   Your Honor reviewing another court in a post-conviction

14   challenge.  And I will start again from page 142, going to

15   page 143.

16        "The petitioner's final jury instruction contention is that

17   the Court gave an incorrect anti-deadlock charge.  The precise

18   anti-deadlock charge used has been approved by the Court of

19   Appeals."  And the Court there cites the *Thomas* case at 449 F.2d

20   1177 at page 1184, Note 46.  And there are other cases, Your

21   Honor, that refer to the *Thomas* instruction as the approved

22   instruction.

23        I'm familiar with the *Winters* charge, Your Honor.  I just

24   wanted to bring to your attention that this law is out there.

25              THE COURT:  Okay.

1          MR. HUME:  Your Honor, Hamish Hume for the plaintiffs.

2     We are looking at the case ourselves right now, but I'm

3 told by my colleagues that's a criminal case.  It's

4 post-conviction.  It seems like it might be -- it has to be a

5 little different, given the standard of proof is different.  So

6 we are just looking at that case now.

7          THE COURT:  Wasn't *Stover* criminal?

8          MR. STERN:  It was, Your Honor, but my understanding

9 is that -- and I'm not objecting to the *Winters* instruction,

10 Your Honor, which as, of course, the Court knows *Winters* itself

11 was a criminal case originally.

12          THE COURT:  Right.

13          MR. STERN:  I'm not objecting to the *Winters* charge.

14 I just wanted to bring to the Court's attention --

15          THE COURT:  Okay.  Do you all have the standardized

16 D.C. civil instructions there?

17          MR. HUME:  Yes.

18          THE COURT:  And the commentary?  Because they both

19 talk about *Winters* being criminal.  They don't talk about

20 *Stover*.

21          MR. STERN:  If I may, Your Honor, the Red Book

22 citation for the *Thomas* charge is 2.601 --

23          THE COURT:  I know.  But that's all in criminal.  So

24 in the civil standardized instructions, their suggestion is 3.6.

25          MR. STERN:  And that's fine, Your Honor.  We're not

1    objecting to that.

2              THE COURT:  Okay.  Well, then --

3              MR. STERN:  The genesis of that one is also, as the

4    Court knows, a criminal case.

5              THE COURT:  Right.  Okay.  You all both look at the

6    standardized 3.06 from the civil instructions and see if there's

7    an objection to doing that.

8              MR. GLUCK:  Your Honor, Richard Gluck for the

9    plaintiffs.

10         I think with all respect to the other side, we think the

11   instruction you handed out is the right one in the civil case

12   because it reminds the jury of the burden of proof in a civil

13   case, which is different.

14         And so we would encourage the judge -- the Court to give

15   this standard instruction 3.06 instead of the --

16             THE COURT:  Is that what was on the bench when I came

17   in?

18             MR. GLUCK:  This was what was handed out to us.

19             THE COURT:  3.06?

20             MR. GLUCK:  3.06, that's the one we believe should be

21   given, Your Honor.

22             MR. STERN:  Your Honor, we take no position on whether

23   an instruction should be given, and we take no position on, if

24   an instruction is given, whether it's *Winters* or *Thomas*.

25             THE COURT:  Okay.  And plaintiffs' position on that as

1  to whether an instruction -- I have to respond to the note.  So

2  the question is whether to delay further giving them this

3  instruction and say something else in the meantime or whether to

4  go ahead and give them this.

5       MR. GLUCK:  Your Honor, our position is that the Court

6  ought to instruct them using the Blue Book 3.06.

7       THE COURT:  Okay.  All right.

8    In light of their note and the fact that they've now had a

9  full day and say they're still split 50/50 with people on both

10  sides feeling very strongly, I think instruction 3.06 is

11  appropriate.  So I will give them that.  So we will bring in the

12  jury.

13    They did, by the way, all test negative.

14    All right.  Ask the marshal if he will bring the jury.

15       COURTROOM DEPUTY:  Yes, Your Honor.

16       THE COURT:  I see from the commentary, your point, I

17  guess, was that additional paragraph about it has to represent

18  the considered judgment of each juror, although made in the

19  criminal context would still apply here.  So maybe that's

20  required in a civil case, too.

21       MR. STERN:  Your Honor, I didn't want to belabor this

22  given that we're taking no position.  But *Thomas* itself says

23  that the rule applies equally in criminal and civil cases.

24       THE COURT:  The commentary says that.

25       MR. STERN:  Yeah.

1              THE COURT:  Mr. Barnes, y'all object or not?

2              MR. HUME:  This is Hamish Hume.  It would be helpful

3      to see what the instruction would look like?

4              THE COURT:  I would just add that to this.

5              MR. HUME:  I'm not sure what "that" is.

6              THE COURT:  The commentary, the note in the commentary

7      here.  It has proposed language there in the commentary.  It

8      says in the District court.  It's suggesting it might be

9      necessary to add that.

10             MR. STERN:  Again, Your Honor, we take no position as

11     to which instruction should be given.

12             MR. HUME:  We would suggest perhaps the Court simply

13     ask them to keep deliberating and that we will have a further

14     instruction shortly.

15         It's a little unsettling to us to have something plucked

16     from a criminal case.  Obviously, the sensitivity here is

17     precisely what they're told and which way it moves the needle

18     and whether it appears to.

19             MR. RUDY:  Your Honor, Lee Rudy.

20         I apologize for all the consternation and deliberation.  I

21     think for plaintiffs, especially as we continue to do research

22     and deliberate, perhaps -- and they didn't use the

23     word "deadlock" in their note.  It seems like perhaps it's

24     heading in that direction, but perhaps the intermediate course

25     might be to just say --

1          THE COURT:  I'm sorry.  I can't hear you.

2          MR. RUDY:  Perhaps it might be okay to say or better

3   to say to the jurors, "I've received your note.  I understand

4   this is difficult.  I ask that you continue to deliberate,"

5   period.

6      And then if they persist in similar notes, we could then

7   get on the same page with defendants and give an instruction

8   similar to what you proposed.

9          THE COURT:  All right.  Do defendants object to that?

10         MR. STERN:  We take no position, Your Honor.

11         THE COURT:  All right.  Go ahead and bring the jury

12   in.

13     (Jury entered courtroom.)

14         THE COURT:  Members of the jury, I was relieved to

15   know that all of you tested negative for the results of the test

16   today.

17     I've received your note.  We're pleased that you're making

18   progress and that you continue in your deliberations, and we

19   will wait until we hear another report from you.  In the

20   meantime, I ask you to continue talking with each other and

21   continue your deliberations.  I will wait until I hear from you

22   again.  Please continue your deliberations today.

23     With that, we will be in recess.

24     (Jury exited courtroom.)

25         THE COURT:  All right.  We will deal with the next

1    note when it comes.

2        We will be in recess in this case.  I have a sealed matter

3    to take in a January 6th case next.

4        (Recess taken from 2:03 p.m. to 3:27 p.m.)

5            THE COURT:  All right.  Counsel?

6            MR. HUME:  Thank you, Your Honor.  Hamish Hume for the

7    plaintiffs.

8        Judge Lamberth, thank you and Ms. Jenkins for being willing

9    to see us at our request.  I know how busy the Court is, and I

10   really appreciate that.  And more generally, we are incredibly

11   grateful for how hard the Court has worked on this case and very

12   mindful of what a burden it is.

13       So it is with some regret that I feel I come here to tell

14   you that plaintiffs are moving the Court to declare a hung jury

15   and a mistrial, and I would like to provide the reasons for

16   that.

17       In a sense, the overarching reason is the jury is split 4/4

18   with very strong feelings, and they have given it extensive

19   deliberation.

20       But also, there is an instruction not -- that they were not

21   to reveal the split if they had a question.  And

22   unfortunately -- and it's very understandable how it could

23   happen -- they did reveal the split.

24       And we then, as we've said we would, we've gone back and

25   looked at the law on this and what you do in these sorts of

1   situations.  And unfortunately, there's some D.C. Circuit law

2   that it can taint a verdict if you have a revealed split and

3   they're sent back to deliberate.

4       We weren't aware of that law, but there is some law out

5   there.  We wouldn't want to risk a tainted verdict.  It can be

6   viewed that -- more generally, I think the last thing anyone

7   should want is that people feel that they have -- they might

8   fold their tent just so they can get out of this.

9       And for a combination of all those reasons, but the biggest

10   one, I think, is the sense that there could be a tainted verdict

11   no matter what, we move for a mistrial.

12       And we've, of course, discussed this with defendants, and

13   they will speak for themselves.

14       Thank you, Your Honor.

15           THE COURT:  All right.

16           MR. STERN:  Your Honor, Jonathan Stern for the

17   defendants.

18       We have spoken with counsel for the plaintiffs.  And I'm

19   familiar with those revealed split cases, Your Honor, and we

20   take no position on their motion.

21           THE COURT:  Okay.

22           MR. SLOUGH:  Howard Slough here for the Berkley

23   plaintiffs.  May I have two minutes to call my client, please?

24           THE COURT:  Sure.

25           MR. SLOUGH:  Thank you.

1          THE COURT:  While he's doing that, since I'm not

2   familiar with any of that case law, if you could give me some of

3   that case law, my clerk can be looking at that case law before I

4   come back, if you could give me some cites.

5          MR. SLOUGH:  Thank you for your patience.  We're

6   joining the motion.

7          THE COURT:  Okay.  Let me see if the defendants have

8   any additional citations.

9          MR. HUME:  Hamish Hume for the plaintiffs again.

10      We've handed up the citations to some of the cases we've

11   become aware of.  We will see if defendants have any additions.

12      I'm not, given how recently we've looked at it, clear that

13   it's an absolute clear-cut thing as opposed to creating an issue

14   and a risk.

15      We also did want to say, and this perhaps goes without

16   saying, we would want to profoundly thank --

17          THE COURT:  I'm sorry?

18          MR. HUME:  We would want to make sure the jurors were

19   thanked for their public service during this trial.

20          THE COURT:  Sure.

21          MR. HUME:  The other mild factor, we would also not

22   want anyone's concerns over COVID to have impacted their desire

23   to get out of here faster than otherwise.  So that weighed in --

24   not tremendously into our thinking but was also discussed.

25      Thank you, Your Honor.

1          THE COURT:  Did the defendant have any other citations

2     of cases?

3          MR. HUME:  Your Honor, this is Hamish Hume.

4       There's one other case that we think may be important to

5     bring to your attention.  We apologize for the delay.  We will

6     be as prompt as we can.

7          MR. STERN:  Your Honor, to the extent the Court is

8     waiting for the defendants, we are aware of the citations the

9     plaintiffs have provided to the Court, and we have nothing to

10    add to that.

11         THE COURT:  All right.  I will take the question under

12    advisement at this time and let you know.

13         MR. HUME:  Thank you, Your Honor.

14         THE COURT:  On the COVID question, the jurors

15    expressed no concern this morning other than I think more than

16    one juror, when I first informed them of it, expressed great

17    concern for my own welfare.  I assured them that I would myself

18    be tested.  I was tested, and I am negative.  And I have not

19    told the jury that, but at some point, it would be appropriate

20    to tell the jury that.

21       But they all came out negative.  They were more concerned

22    about me than themselves, I assume because of my age.

23       (Recess taken from 3:42 p.m. to 3:54 p.m.)

24         THE COURT:  All right.  The plaintiffs' motion is

25    denied.  Jury coercion can be sufficient to require a mistrial.

1  However, I find there is no risk of undue coercion here because

2  the jury split was equal, according to their own note.

3  Consequently, there's no risk that jurors will be induced in a

4  minority position to feel coerced because there is no minority

5  position, according to their own note.

6      In the meantime, I have another note from the jury which

7  the Court has just received and I will pass out to the counsel.

8      In this note, they say, "We need Post-it notes or other

9  ways to mark pages for reference," which obviously we will

10  provide.

11      "The temperature needs to be warmed up a few degrees as

12  many of us have been cold today."  We can adjust the temperature

13  tomorrow.  By the time we get it adjusted today, it will be time

14  to go.

15      And then they have a comment, "The document or exhibit

16  number that contains a table showing the purposes and goals

17  before/after the conservatorship, we can't find the document

18  that contains how Fannie and Freddie would be managed after

19  going into conservatorship, i.e. being managed to maximize

20  shareholder value versus not being managed to maximize

21  shareholder value."

22      So that's the note.  So counsel can determine how you

23  propose I respond to that last part of the note.  Obviously, the

24  first part I will respond by saying that we will provide them

25  with Post-it notes, and we will adjust the temperature.

1    But as to the document and how I should respond to the
2  document, y'all can caucus among yourselves and decide how I
3  should respond to that.

4       MR. STERN:  Your Honor, if I may, Jonathan Stern for
5  the defendants.

6    Your Honor, this is a circumstance where fortunately the
7  jury is referring to an actual document.  They are recalling its
8  contents correctly.

9    So I think that we would submit that the appropriate thing
10  to do is to identify that document, which we can do by exhibit
11  number.  I believe it was the 2008 10-Ks, one from Fannie and
12  one from Freddie.  And we will be able to find that document
13  number.

14    Under these circumstances, Your Honor, we believe it's
15  appropriate to identify the document for them.

16       THE COURT:  Okay.

17       MR. STERN:  This isn't a situation where it's a vague
18  reference where we would have to guess.  We know exactly which
19  one this is.

20       MR. RUDY:  Lee Rudy for plaintiffs.

21    With due respect, I think the question begs a little bit
22  more nuance, and there are other documents potentially that are
23  directly responsive to the request.

24       THE COURT:  If you want to give me the numbers of the
25  documents, I will look at all of them and see before answering

1    the question.

2            MR. HUME:  Two of them would be -- this is Hamish Hume

3    for the plaintiffs -- Plaintiffs' Exhibit 2-C and, I believe,

4    Plaintiffs' Exhibit 2-E, but let me check.

5            MR. STERN:  Your Honor, I think I know what Mr. Hume

6    is talking about.  But this is asking for a very specific

7    document, "the document that contains a table showing the

8    purposes and goals before/after conservatorship."  They then go

9    on to nearly quote from the two headings, "would be managed

10   after going into conservatorship, i.e. being managed to maximize

11   shareholder value," et cetera.

12       They're not asking generally for documents about the goals

13   of the conservatorship.  They're asking for a very specific

14   document that we can identify --

15           THE COURT:  That contains a table.

16           MR. STERN:  Right.  It's not the ones -- Mr. Hume, I

17   believe, is identifying documents that refer more generally to

18   the goals of the conservatorship.  They're asking for this very

19   specific document with a table, which we can come up with in

20   short order.

21           THE COURT:  Give me what the number is of the one you

22   think it is.

23           MR. HUME:  Your Honor, I don't know what the jury

24   meant by "table," but the DeMarco -- Exhibit 2-E has a table,

25   and 2-C is a question and answer about the purpose and goals of

1   the conservatorship.

2       So I don't see how the jury could ask this question and not

3   be given that document, in addition to whatever other document

4   that may be given.

5       If the jury has this question, they should see the

6   documents that are responsive to the question, even if it's more

7   than one.

8           MR. STERN:  Your Honor, they didn't ask a question

9   about --

10          THE COURT:  All I want is the numbers of the documents

11  you want me to look at.  I don't really care about all the

12  commentary.

13          MR. STERN:  No commentary, Your Honor, just a

14  citation.  DX-136 at page 27 and DX-137 at page 25.

15      Just to be clear, Your Honor, those are the pages of the

16  exhibit, not of the document itself.  So for some documents, as

17  the Court knows, the page number on the document is different

18  from the page number of the exhibit.  The page cites that I gave

19  are the page of the exhibit, not of the document.

20      So for PX-136, it's page 27 of 500, and DX-137, it's page

21  25 of 350.

22          THE COURT:  Okay.  Now, in order for me to look at

23  that, your technical people are not here?

24          MR. STERN:  Your Honor, we may have hard copies.

25          MR. RUDY:  Your Honor, if it's okay, we would just

1    like a couple of minutes to look at that document.

2           THE COURT:  Sure.

3           MR. RUDY:  The question asking for a table is a little

4    confusing.  We just want to make sure what documents actually

5    have a table.

6        Thank you.

7           THE COURT:  And then if there are documents you want

8    me to look at, hopefully, I can look at them, 2 or 3 or whatever

9    they are, 2-C and 2-E.

10          MR. STERN:  Your Honor, may I have the Court's

11    indulgence so I can show these to plaintiffs' counsel?

12          THE COURT:  Sure.

13          MR. RUDY:  Your Honor, Lee Rudy for the plaintiffs.

14      We've received a copy to look at of the two documents

15    defendants believe are responsive to the note.  And

16    unfortunately, we don't think they are responsive to the note.

17    And I will explain why that is.

18      The note asks for -- I'm being approached here.

19      The note as Your Honor has in front of you says that they

20    want -- it "contains a table showing the purposes and goals

21    before and after conservatorship."

22      So the document that we were given does have a table in it,

23    but the description of the document is that this document is

24    summarizing the business both before and after the

25    conservatorship.

1    So it says, "The table below presents a summary comparison

2    of various features of our business immediately before we were

3    placed into conservatorship and as of February 26, 2009."

4    So it does have a table, but the table is not responsive to

5    the question, because the question deals with "purposes and

6    goals."

7    So respectfully, Your Honor, I think the appropriate

8    solution -- so we have documents that explain purposes and

9    goals.  That's what Mr. Hume was just referring to.  2-C and 2-E

10   are the questions-and-answers document that was shown to the

11   jury several times, and 2-E is the DeMarco slides to the

12   conference where he talked about the purpose and goals of the

13   conservatorship.

14   So I agree this has a table.  I just don't think this --

15   this table answers their question, and it would be misleading to

16   give the jury this document and the related one for Freddie Mac

17   which doesn't answer the question but it does have a table.

18   So respectfully, plaintiffs' suggestion is you should tell

19   the jury there isn't such a document that specifically addresses

20   the question.

21   Alternatively, we can come up with a list of other

22   documents that aren't in necessarily table form but are

23   answering the question that's actually being asked by the jury.

24   Let me just confer with my colleagues to see if they have

25   anything to add to my comments.

1          (Defense counsel conferred.)

2               MR. RUDY:  If the sentence wasn't perfectly clear

3     before, there's nothing in this table that refers to purposes or

4     goals.  It's just not there.

5               MR. STERN:  Your Honor, I think this may be easier for

6     the Court if the Court can actually look at the documents, which

7     is what I thought that the Court had in mind to do.  Let me --

8     I'm going to hand this up to the Court, Your Honor.

9          They clearly have a very specific document in mind, and

10    this is it, if I may.  You will see at the bottom, Your Honor,

11    there is a table, and they are clearly focused on -- they say --

12    they refer to a table.  They're clearly only referring to one

13    document.

14         So they say we're looking for the document "that contains a

15    table showing the purposes and goals before/after

16    conservatorship."  They're not purporting to quote at that

17    point.

18         So then they go on to describe the document more

19    specifically.  "We can't find the document that contains how

20    Fannie and Freddie would be managed after going into

21    conservatorship, i.e. being managed to maximize shareholder

22    value versus not being managed to maximize shareholder value."

23         That's exactly what that document is about.  I believe it

24    may say "during conservatorship," Your Honor, and they use

25    "after."  But as I said in my closing, in context, during

conservatorship means after imposition of the conservatorship.

They have a specific document in mind.  That's the one they have in mind.  That's the one we respectfully submit they should be provided, or the two documents, one for Fannie and one for Freddie.

And we would ask, Your Honor, that in addition to providing the citations to the document, that the Court also provide the page citation, whatever it is, 25 of 500 or whatever it is, because those are voluminous documents, and to just tell them it's DX-136 or whatever the number is and have them try to fish through it, we believe, is not adequately responsive to their question.

So in sum, Your Honor, we believe that those two documents are exactly what the jury is referring to, and we would ask that they be provided with the citation to the documents as well as the page number.

THE COURT:  I agree with the defendants.  Those are the exact documents that I think their note is referring to.

So the plaintiffs' objection's overruled.

MR. RUDY:  Your Honor, may I -- I'm not going to disagree with your ruling.  Because the words "purposes and goals" aren't in the actual table but they appear on the page prior where it actually explains what the table is, I would just ask, if you're going to give them some sort of indication of where to look in the document, that on page 20, it says -- right

1    before the table on the document that I'm looking at, it says

2    that the conservatorship has no specified termination date,

3    there can be no assurance -- I don't know if you're seeing this

4    language, Your Honor.

5              MR. STERN:  Mr. Rudy, I apologize.  Page 20 of which

6    document?

7              MR. RUDY:  It's DX-136, page 26 of 500.  It's page 20

8    in the actual SEC filing.

9         And the paragraph I'm referring to is the first paragraph

10   under the word "conservatorship."  And the last sentence of that

11   paragraph says, "The conservatorship is a statutory process

12   designed to preserve and conserve our assets and property and

13   put the company in a sound and solvent condition."

14        So --

15             THE COURT:  Well, they asked for the document that

16   contains the table.  So I'll tell them the document that

17   contains the table is DX-136 and DX-137.  One is Fannie Mae and

18   one is Freddie Mac; right?

19             MR. RUDY:  If that's Your Honor's ruling.

20             THE COURT:  That's what they ask for, the document

21   that contains the table or exhibit number that contains the

22   table showing that.

23             MR. RUDY:  It does contain the table --

24             THE COURT:  And the table that they're asking for are

25   these two tables.  So that will give them the exhibit number

1    that will have whatever they want with the exhibit number and

2    the tables.  That's what they've actually asked for.

3          MR. RUDY:  Your Honor, so we would note our objection

4    for the record to giving them the documents.

5        But also, we don't think there should be a reference to a

6    page citation with the table --

7          THE COURT:  To a?

8          MR. RUDY:  To a page citation as defendants have asked

9    for.  I don't think Your Honor should tell them here's what page

10   the table is on, because I think that they would potentially

11   look too narrowly at the text of the table and not the prefatory

12   language in the paragraph right before it.

13       So if you're going to give them those documents --

14         THE COURT:  That's overruled.  They asked about this

15   specific table, and I will tell them the table is at the page

16   numbers that are shown here.

17         MR. RUDY:  So then my only --

18         THE COURT:  I like to specifically answer a question

19   that can be answered.  So I will do it.

20         MR. RUDY:  Your Honor, I understand you're answering

21   their question.

22       I think it would be misleading to tell them just the table

23   when the language that they're quoting is not in the table but

24   it is right before that.  So I think if you give them page

25   numbers, I don't think it should just have them myopically

1    focusing on a table that's explained the page before the table

2    with language that answers the actual question in their note.

3                THE COURT:  Okay.  That's overruled.

4                MR. STERN:  Your Honor, just to be clear, the Court is

5    going to give the two respective page numbers within each --

6                THE COURT:  Yes.

7                MR. STERN:  Understood, Your Honor.  Thank you.

8                THE COURT:  And I will repeat -- I will send a note.

9    I will show you all the note before I send it.

10        I will repeat my note about if you're divided don't reveal

11   in the note or otherwise how they're divided, including to me,

12   court staff, or anyone else.  I will repeat so hopefully they

13   will get it to not make the same mistake again.

14        So I will go type up the note and show it to you all before

15   I send it.

16            (Recess taken from 4:16 p.m. to 4:23 p.m.)

17                MR. STERN:  I'm embarrassed, Your Honor.  I apologize.

18        The document that -- the documents we provided the Court

19   are in evidence, but they are -- we would submit for reasons

20   that the Court will see in just a moment, they're not as

21   directly responsive as the ones I'm about to show the Court,

22   which at the top say "before conservatorship" and "during

23   conservatorship," as opposed to what the Court has, which I

24   think has a February 29, '09, date, which is not the date of the

25   imposition of the conservatorship.  That's number 1.

1       And number 2, the documents I'm about to hand up to the

2  Court were the ones that were displayed in closing.

3       So I know that the other ones are in evidence, but I think

4  the Court will see that the ones that I'm about to hand up are

5  more directly and precisely responsive to the request.

6          THE COURT:  Okay.

7          MR. STERN:  I'm also handing up a document, Your

8  Honor, where I've scrawled in my handwriting the page citations,

9  but the Court will also have the documents.

10         MR. RUDY:  Your Honor, Lee Rudy.

11      We're just trying to keep up with the documents that are

12  being swapped, and I have not had a chance to be able to compare

13  the ones that you were told were correct and now the ones that

14  you're being told are correct.

15       So if Your Honor would give us a moment, I would appreciate

16  it.

17          THE COURT:  Okay.

18         MR. STERN:  Your Honor, now that the Court has all of

19  the documents in front of it, I believe the first ones we gave

20  the Court said "before conservatorship" and then had that

21  February '09 date, which is not the imposition.

22       The note refers to before and after the conservatorship.

23  So if we interpret after conservatorship to mean after

24  imposition of conservatorship, that would line up better with

25  the "during conservatorship" document, which is also the one

1       that I highlighted in closing.

2               MR. RUDY:  Your Honor, respectfully, this

3       illustrates -- what's happening right now illustrates the point,

4       I think, Your Honor, that the note says the table -- they want

5       the document that contains a table showing the purposes and

6       goals before and after conservatorship.

7               The table does show before and after conservatorship, but

8       it does not show the purposes and goals.  And now the document

9       is being swapped for a different document that again the table

10      does not say -- does not show the purposes and goals before and

11      after conservatorship.

12              So we're going to -- if Your Honor would give us another

13      minute, we're going through to compare them and see what the

14      difference is and why the defendants -- I don't understand why

15      the defendants gave you two documents they said were the

16      documents and now are giving you two documents that they now say

17      are the right two documents.  But we are going to get to the

18      bottom of that.

19              In the meantime, I must repeat, these documents don't

20      answer the question that the jury is asking, and it would be

21      improper to give them documents that don't specifically answer

22      it, which could give them a misleading impression of -- at a

23      moment when they've been deliberating for nine hours.

24              MR. STERN:  Your Honor, I can explain why we handed

25      the Court the first documents.  It's my fault, Your Honor.  I

did not read the top where it referred to September of 2009.  I

thought that I had in my hand the document that compared before

conservatorship with during conservatorship, and instead, I had

before conservatorship and the date.

That's the only difference.  The operative language that's

quoted in the note about Fannie and Freddie would be managed to

maximize shareholder value versus not being managed to maximize

shareholder value is the same on both.

The second documents, Your Honor, are more responsive to

the note because they refer to before and during

conservatorship, not before conservatorship and some date in

February of 2009 when the jurors were clearly focused on the

difference between before conservatorship and after

conservatorship, which as the Court knows from the evidence was

September of 2008.

So we respectfully submit that the second ones that I

handed up were different.  I apologize for the mistake.  I did

not read the headings.  I was focused on the language in the

table itself.

MR. HUME:  Very briefly.  Hamish Hume for the

plaintiffs.

We are just checking to make sure there aren't other

differences in the wording, because the version that was first

identified for you said the directors were being -- board of

directors were directed to manage the companies to maintain

positive net worth.  That is obviously relevant context.  And if
that language is not in these new versions, then that's very
relevant to our objection.

I am being told it is not.  So now we have a version that
was first identified that includes the context of also having as
a goal or a purpose or something the board is being told managed
to a positive net worth, which obviously the net worth sweep
eradicated.  And the version they're now wanting to give the
jury doesn't contain that bullet point.

So we object.

THE COURT:  Okay.

MR. HUME:  We're still looking at it.

THE COURT:  Okay.

MR. STERN:  The problem with the version I handed up
first, Your Honor, is that date, which is not the date that the
conservatorship was imposed, and that's what they're asking for.

Your Honor, I apologize.  Now I can't remember if I said
this already.

The jury did not see 136 and 137.  They're in evidence, but
they didn't see them.  So if they're referring to a document, it
has to be 102 and 103, because those are the ones I showed.

THE COURT:  But 102 and 103, those pages are in
evidence?

MR. STERN:  Yes.  The entire documents are in
evidence, Your Honor, and I highlighted those two pages in my

1    closing.  The Court may recall I specifically addressed the

2    during conservatorship means the same thing as after

3    conservatorship.

4              THE COURT:  Right.

5              MR. RUDY:  Your Honor, if I may.  Lee Rudy again for

6    plaintiffs.

7         I'm sorry.  I didn't know if you were just handed another

8    note.

9              THE COURT:  Go ahead.

10             MR. RUDY:  Okay.  Your Honor, so we've had a little

11   bit of time to look at the comparison between the 10-Q and the

12   10-K.  The tables appear to be similar, but I haven't been able

13   to go word for word.  But the tables appear to be similar.  But

14   the language which addresses again their request for the table

15   showing the purposes and goals, the 10-K that is -- that was

16   previously offered to Your Honor had that language in it, which

17   is, I would say, if responsive -- if it's going to be responsive

18   to the question, it's closer to responsive to give them the 10-K

19   than to give them the 10-Q that omits that prefatory language

20   and just gives them the table that doesn't answer their actual

21   question about purposes and goals.

22        So, Your Honor, I understand Mr. Stern's point that he

23   showed a specific document, but what appears to have happened is

24   when I highlighted for Your Honor that there's this language

25   that I wanted their attention drawn to, they then are swapping

1   in a new document that doesn't have that language.  And I think

2   all are in evidence.

3       My position is clearly none should be given, because none

4   are directly responsive to the note, which is again a table

5   showing the purposes and goals before and after conservatorship.

6       But if Your Honor wants to give them the 10-Q that is now

7   being swapped in for the 10-K, I would suggest that more is

8   better than less.

9           MR. STERN:  Your Honor, I know the Court doesn't like

10  this tit for tat, but for the record, I have to say this:  To

11  the extent there was just an implication that we swapped

12  documents because of an argument the plaintiff had made, that's

13  entirely -- that's not true, Your Honor.  We swapped documents

14  because I noticed after the fact the difference between the

15  September 29th -- the September 2009 heading, which is not the

16  date of the imposition of the conservatorship, and the reference

17  in 102 and 103 to during conservatorship.  And I was reminded

18  that it was 102 and 103 that I showed in closing and not 136 and

19  137.

20      So the swap had nothing to do with the argument that the

21  plaintiffs made.

22          MR. RUDY:  Your Honor, I have great respect for

23  Mr. Stern and meant no disrespect to him in my last comment.

24      My point is that we're a little bit flailing around trying

25  to sort of address a jury question which I don't think we're --

1    I think we're imperfectly doing so.

2        The heading in the 10-Q that was just referenced

3    says "supervision of our business under the Regulatory Reform

4    Act and during conservatorship."  It doesn't -- it's not about

5    purposes and goals.

6        I continue to object to these documents being given to the

7    jury.

8            THE COURT:  All right.  Do you want to hand these to

9    counsel.

10       That's my suggested response, and you can make your

11   objections on the record, then, to the --

12           MR. STERN:  Your Honor, this is fine.  I don't have

13   the documents in front of me.  I just want to make sure that --

14   I think they may have been transposed.  I don't know this for

15   sure, Your Honor.  But I just wanted to confirm.  I think

16   Exhibit 102 may be page 9 and Exhibit 103 may be page 11.  If I

17   have that wrong, Your Honor, I apologize.

18       It's looking like I probably have it wrong.  I apologize,

19   Your Honor.  I apologize to your law clerk.  We have no

20   objection.

21           MR. RUDY:  Thank you, Your Honor.

22       I'm receiving a lot of input from a team that's very

23   focused on this question.

24       Your Honor, I don't want to belabor my objection, which

25   does stand for the record.  If you are inclined to give this

1    document to the jury, first of all, the page numbers should be

2    correct.  And I think that in DX-102 the table is at pages 10

3    through 11, I am informed.

4        My request would be that if you do give this document to

5    the jury, which again we object to, that you include language

6    that says, instead of "the document," it should be "a document,"

7    first of all.

8        So first, I would suggest that it should say "a document,"

9    not "the document," because I do continue to think this is not

10   the definitive answer to their question.

11       But second, I would ask that you add language to the effect

12   of "the table does not refer to the purposes and goals of the

13   conservatorship."  So you could say, "A document that you've

14   requested with a table is this.  The table is at these pages.

15   The tables does not refer to the purposes and goals of the

16   conservatorship."

17       I would ask that you add that language to the note.  That's

18   on the first part of your proposed note.

19       On the not revealing divisions, which we do understand why

20   you want to give that instruction and we approve it, but I think

21   it should be slightly reworded.  If Your Honor is okay, I could

22   hand up our proposed revision to the Court.

23       I'm informed by defense counsel that at least this part of

24   the revision is acceptable to them.  They can speak if

25   otherwise.

```
 1              THE COURT:  All right.  Without objection, I will

 2   revise that paragraph the way you've suggested, that the number

 3   of jurors on either side of any split replace how the jury is

 4   divided and that you may, however, ask questions or inform me

 5   that you remain divided.

 6              MR. STERN:  Your Honor, if I could be heard very

 7   briefly on the other aspect of the plaintiffs' request --

 8              THE COURT:  You don't need to.  Their objection is

 9   overruled.

10              MR. STERN:  I'm sorry, Your Honor.  So the Court is

11   going to give --

12              THE COURT:  I'm going to give what I proposed.

13              MR. STERN:  Without the -- with the reference to the

14   document and without the commentary on the evidence?

15              THE COURT:  Yes.

16              MR. STERN:  Thank you, Your Honor.

17              THE COURT:  That's what they asked for.

18         All right.  Court will be in recess.

19         (Proceedings adjourned at 4:44 p.m.)

20

21

22

23

24

25
```

CERTIFICATE OF OFFICIAL COURT REPORTER


        I, Sara A. Wick, certify that the foregoing is a

correct transcript from the record of proceedings in the

above-entitled matter.



/s/ Sara A. Wick_____         November 2, 2022_____

SIGNATURE OF COURT REPORTER        DATE