```
 1                BEFORE THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
 2

 3   FAIRHOLME FUNDS, INC., et al.,     .
                                        .
 4           Plaintiffs,                .
                                        .  Case Number 13-cv-1053
 5       vs.                            .
                                        .
 6   FEDERAL HOUSING FINANCE AGENCY,    .
     et al.,                            .
 7                                      .
             Defendants.                .
 8   - - - - - - - - - - - - - - - -
     In re FANNIE MAE/FREDDIE MAC       .  Case Number 13-mc-1288
 9   SENIOR PREFERRED STOCK PURCHASE    .
     AGREEMENT CLASS ACTION             .  Washington, D.C.
10   LITIGATIONS.                       .  November 7, 2022
     - - - - - - - - - - - - - - - -      9:44 a.m.
11

12                       TRANSCRIPT OF JURY TRIAL
                  BEFORE THE HONORABLE ROYCE C. LAMBERTH
13                    UNITED STATES DISTRICT JUDGE

14   APPEARANCES:

15   For Class Plaintiffs:         LEE RUDY, ESQ.
                                   ERIC ZAGAR, ESQ.
16                                 Kessler Topaz Meltzer & Check, LLP
                                   280 King of Prussia Road
17                                 Radnor, Pennsylvania 19087

18                                 HAMISH HUME, ESQ.
                                   SAMUEL KAPLAN, ESQ.
19                                 Boies Schiller Flexner LLP
                                   1401 New York Avenue Northwest
20                                 Washington, D.C. 20005

21                                 MICHAEL J. BARRY, ESQ.
                                   Grant & Eisenhofer, P.A.
22                                 123 Justison Street
                                   Seventh Floor
23                                 Wilmington, Delaware 19801

24

25                          -- continued --
```

```
 1     APPEARANCES (CONTINUED):

 2     For Defendant Federal
       Housing Finance Agency:     JONATHAN STERN, ESQ.
 3                                 ASIM VARMA, ESQ.
                                   DAVID BERGMAN, ESQ.
 4                                 IAN HOFFMAN, ESQ.
                                   ROBERT JONES, ESQ.
 5                                 Arnold & Porter Kaye Scholer LLP
                                   601 Massachusetts Avenue Northwest
 6                                 Washington, D.C. 20001

 7     For Federal Home Loan
       Mortgage Company:           MICHAEL CIATTI, ESQ.
 8                                 King & Spalding LLP
                                   1700 Pennsylvania Avenue Northwest
 9                                 Washington, D.C. 20006

10     For Federal National
       Mortgage Association:       MEAGHAN VERGOW, ESQ.
11                                 O'Melveny & Myers LLP
                                   1625 I Street Northwest
12                                 Washington, D.C. 20006

13

14

15     Official Court Reporter:    SARA A. WICK, RPR, CRR
                                   United States District Court
16                                   for the District of Columbia
                                   333 Constitution Avenue Northwest
17                                 Room 4704-B
                                   Washington, D.C. 20001
18                                 202-354-3284

19     Proceedings recorded by stenotype shorthand.
       Transcript produced by computer-aided transcription.
20

21

22

23

24

25
```

PROCEEDINGS

(Call to order of the court.)

(Jury not present.)

COURTROOM DEPUTY: Your Honor, we are back on the record for consolidated cases 13 Miscellaneous Case 1288 and 13 Civil Case 1053, Fairholme Funds, Inc., et al., versus Federal Housing Finance Agency, et al.

THE COURT: All right. Counsel have the note from the jury as the jury was leaving on Friday afternoon, and I assume you've had time to talk about it.

Do y'all have a proposed response?

MR. HUME: Good morning, Judge Lamberth, Ms. Jenkins. Hamish Hume for the Class Plaintiffs.

We have had time, of course, to discuss it both internally at the plaintiffs' side and a few conversations with counsel for the defendants.

Your Honor, our view on the plaintiffs' side is that we've now -- given that we've now received three notes saying that the jury is deeply divided, beginning by telling us they were 50/50 divided, underlining that people on both sides feel very strongly, and then in a note on November 4th saying there were deep divisions and still divided, both underlined, and then the afternoon on Friday reiterating the same thing and that despite extensive discussions and votes, there's -- the discussions showed no change in anyone's positions, for all those reasons,

1   we renew our motion for -- to declare a mistrial.
2        We, obviously, regret that, and we appreciate how much
3   effort the Court has put into this case.  But we just continue
4   to have a serious concern that at this point, if they're this
5   divided, they may be under the impression that they have to
6   reach a verdict and that we may be in a situation where one side
7   or the other just gives up to get out and to reach completion in
8   some sort of war of attrition or who gives up first.  We don't
9   think that's how the case should be decided.
10            THE COURT:  Okay.
11            MR. HUME:  So that's our position.  I will let
12  defendants speak, and then if the motion is not granted, I would
13  like to be heard, if I could, on what happens next.
14       Thank you, Your Honor.
15            MR. STERN:  Thank you.  Good morning, Your Honor.
16       Your Honor, we endorse and agree with Mr. Hume's
17  characterization of the current state of play.  We take no
18  position on the motion for mistrial.
19            THE COURT:  I'm sorry.  I didn't hear the last part.
20            MR. STERN:  As to our formal position, we take no
21  position on the motion for a mistrial.
22            THE COURT:  The motion for mistrial is denied.  It
23  seems to me that the 3.6 instruction adequately makes clear to
24  the jury that they're not required to reach a verdict, with that
25  addition that the district court would add to the 3.6 that they

1    still -- each juror has to agree to the verdict.  And so -- but
2    it says there's no reason to think that any other jury would be
3    more likely to reach a verdict or know any better than this
4    jury, and if they can possibly come to a verdict -- they haven't
5    ever said that they're hung or that they could never reach a
6    verdict.  And so I think that 3.06 is an instruction that the
7    Court would propose to give them.
8         And if y'all object to that, you can object, but I would
9    propose to give them the 3.06 with the extra paragraphs that the
10   civil jury instructions in this district proposes district
11   judges add.
12             MR. HUME:  Thank you, Your Honor.  Hamish Hume again
13   for the Class Plaintiffs.
14        If the Court is going to give an instruction, our proposal,
15   and I believe the law in the D.C. Circuit would be it should be
16   what comes from the Red Book instruction.  A 2021 D.C. Circuit
17   case called *United States v. Driscoll* quotes it.  And it's
18   substantially more succinct and, in our view, more balanced than
19   what we saw in 3.06.
20        I cannot fully account for why they're different, but --
21   and *Driscoll* is a criminal case.  However, the governing case
22   here is the *Thomas* case, which says in Footnote 68 that the same
23   charge should apply in both criminal and civil cases.  So we did
24   spend some time looking at this in case the Court were to deny
25   our motion.  I have copies of the *Driscoll* case and could hand

1   it up.  Footnote 3 in the *Driscoll* case is the instruction we
2   believe should be given if the Court is going to provide one.
3           THE COURT:  Okay.
4           MR. HUME:  Thank you, Your Honor.  I've provided the
5   copies, and Footnote 3 is actually on the back page of the copy
6   I provided, which gives a full quotation of what the *Thomas*
7   charge should be.  So it's our proposal that that language
8   should be given, and I think our proposal is also that it should
9   be given in writing rather than orally.
10          That's the plaintiffs' position.  Thank you, Your Honor.
11          THE COURT:  I didn't hear your last line.
12          MR. HUME:  Simply that plaintiffs' position, given our
13  motion having been denied, is that the precise text given in
14  Footnote 3 of *Driscoll* is what should be given and that it
15  should be given in writing, in our view, rather than orally.
16          Thank you, Your Honor.
17          MR. STERN:  Your Honor, Jonathan Stern for the
18  defendants.
19          Your Honor, the defendants agree that the appropriate
20  anti-deadlock instruction is, in fact, what is referred to as
21  the *Thomas* instruction.  As Your Honor observed in the *Stover*
22  case that we previously discussed, the Court has recognized that
23  that is the approved anti-deadlock instruction and that the
24  circuit has warned against straying from that approved
25  instruction, which as Mr. Hume notes comes from the *Thomas* case.

1    In the *Thomas* case, the text just says that we endorse and
2 approve the ABA instruction; the instruction itself is in
3 Footnote 46 of the *Thomas* case.  And for the record, that's
4 449 F.2d 1177.
5    And then as Mr. Hume correctly pointed out, the circuit
6 picked that up in the *Driscoll* case, 984 F.3d 103, and the
7 instruction itself is set out in Footnote 3.
8    We also agree that under the *Thomas* footnote, what *Thomas*
9 says about criminal cases applies equally to civil cases.
10    I understand, Your Honor, that the Court has just observed
11 that these notes are not, to use the vernacular, Your Honor,
12 hung notes.  We would join Mr. Hume's characterization of those
13 notes as being certainly the functional equivalent of hung
14 notes.  They're sending the message that they cannot agree.  And
15 while they didn't use that precise form of words, we would
16 respectfully submit that's the import of the notes.
17    I say all that, Your Honor, because I understand that there
18 is a distinction in the jurisprudence on this between
19 circumstances under which an actual anti-deadlock instruction is
20 required and circumstances where they are not.  I would
21 respectfully submit that this is a circumstances where the
22 anti-deadlock instruction would be required.
23         THE COURT:  All right.  I've got to start this other
24 motions hearing.  My murder trial starts Thursday.  I've got to
25 start the motions hearing at 10:00.

1       Can you give me the final wording -- I take it you all are
2  now agreeing.  So can you give me the final wording of what I
3  would send to the jury, and I will send it as soon as I -- I
4  will have my clerk work from the final wording.  I will use my
5  other clerk to do that, and I will go ahead and start my motions
6  hearing in this criminal case.
7           MR. HUME:  Yes, Your Honor.  We will provide it by
8  e-mail to Ms. Jenkins.
9           THE COURT:  That's perfect.  And I will take a short
10  break in this motions hearing I'm going to do.  I have several
11  motions in this criminal case I've got to hear because I start
12  jury selection on Thursday in the murder trial.
13      All right.  We will be in recess here.  I will send that in
14  writing to the jury as soon as I get it signed, and I will let
15  you know when I hear something from the jury.
16      Thanks very much, Counsel, for coming in early.
17      (Recess taken from 9:53 a.m. to 11:34 a.m.)
18           COURTROOM DEPUTY:  Your Honor, we're back on the
19  record with consolidated and related cases 13 Miscellaneous Case
20  1288 and 13 Civil Case 1053, Fairholme Funds, Inc., et al., v.
21  Federal Housing Finance Agency.
22           THE COURT:  Counsel have the new note from the jury.
23  I will entertain your motions.
24           MR. STERN:  Yes, we do, Your Honor.
25           MR. HUME:  Judge Lamberth, Hamish Hume for the Class

Plaintiffs.

We are in receipt of the note from the jury at 11:07 a.m. saying deliberations have come to a halt, explaining they've reviewed the evidence with open minds and discussed the jury instructions at length but also saying there are one or more members with deeply held convictions on either side, so they are at an impasse and cannot come to a verdict.

In light of this note, Your Honor, we would renew our motion to declare a hung jury and a mistrial.

THE COURT: Okay.

MR. STERN: Once again, Your Honor, we take no position on the motion.

THE COURT: Okay. The motion for mistrial is denied. I will bring the jury in and advise them they're discharged.

MR. STERN: The Court said the motion is denied or granted?

THE COURT: Granted. I'm sorry. I'm so used to denying it. It's granted. I will bring the jury in and advise them and thank them for their service.

Ordinarily -- our local rules provide you cannot speak to jurors without the permission of the judge. Ordinarily, I do not give permission. I have found that there are occasions when there is a hung jury that it will assist attorneys in the possibility of retrial or assists them in settlement. In a case like this where settlement is unlikely, I don't know if it would

1   serve that purpose or not.

2       If y'all want to talk to them, I will entertain a request
3   to speak to the jury.  I would only do it with those jurors who
4   are willing to speak and only in the jury room now.  I would not
5   want to subject the jurors to being bombarded at home with
6   visits or even by phone, but if you all wanted to speak to
7   jurors in the jury room.

8       But I'm not sure there's any purpose to be served if it's
9   not really going to lead to settlement, because the only reason
10  I ever thought that jurors should have to speak about their
11  deliberations afterwards is if it would possibly lead to
12  settlement.  Otherwise, jurors should not have to face
13  questioning about why they didn't reach a verdict.  But I will
14  entertain whatever y'all want to say about that.

15      I would not be present.  I would let counsel be present.  I
16  would have my law clerk sit in to make sure nothing improper was
17  happening with the questioning.  And I would not require jurors
18  to stay, but I would tell the jurors if they wanted to stay they
19  could.

20          MR. STERN:  Your Honor, our request would have been
21  one that you have anticipated, but I will make it anyway.
22  Our -- Jonathan Stern for the defendants.

23      Our request would have been that the Court advise the
24  jurors that they may be contacted after the trial by
25  representatives of one side or another.  In our case, Your

1  Honor, it may be our jury consultant instead of one of the trial
2  team lawyers.  There are reasons why we think that's sometimes
3  the better way to go.
4      So our request would have been that the jurors be advised
5  that they may be contacted after the trial by representatives of
6  one side or the other, they are free not to speak with them,
7  they are free to speak with them as they see fit.
8      That would have been our request.  I need to confer whether
9  we would want to have a jury room consultation, but our request
10 would be what I just outlined.
11         MR. RUDY:  Lee Rudy for plaintiffs.
12     If Your Honor were to consider something along the lines of
13 what Mr. Stern would have proposed, that would be amenable and
14 perhaps helpful from the perspective of plaintiffs as well.  If
15 you would prefer that they not receive those types of contacts
16 from representatives of the parties, we would confer with
17 defendants.
18     My concern would be I don't want to overwhelm them, and I
19 don't want any sort of a volatile kind of contentious
20 conversation that leaves them feeling anything but proud and
21 pleased of the efforts that they put in as jurors, which
22 sometimes in this situation I could imagine could be the case.
23 For that reason, my thought was perhaps giving a day or two of
24 time might actually be helpful and more constructive to the
25 parties.

1    But Your Honor, we rely on your judgment and appreciate
2    whatever opportunity you would give us.
3            THE COURT:  I think I will take under advisement the
4    request to speak at a later time and consult with you all later
5    about that and not do anything now and say to the jury that if
6    counsel -- if there's to be any communication, it will be after
7    counsel consult with the Court about whether there should be any
8    communication.
9            MR. HUME:  Your Honor, Hamish Hume.
10           THE COURT:  So there will be no communication now.
11           MR. HUME:  Just to avoid any misunderstanding, if
12   after the jury is discharged and lawyers are in the hallway, if
13   the jurors approach the lawyers --
14           THE COURT:  I will tell the jurors that the lawyers
15   cannot speak to them without my permission, that that will
16   continue, and if I give permission, they will be advised.  I'm
17   sending them almost daily letters now.  So I know how to
18   communicate with them.  And I had sent them a letter on Friday
19   as they requested saying they would serve through tomorrow.  So
20   they're prepared to receive letters from me.
21       All right.  I will tell them that I will leave the bench to
22   thank each of them individually for their service after I
23   dismiss the jury.  But other than that, we will bring the jury
24   in.  Sometimes comments will be volunteered to me in the jury
25   room, and if you all stay here, I will come back and tell you

1     any comments that are volunteered.  I shouldn't say sometimes.
2     Frequently, comments are volunteered.
3             (Jury entered courtroom.)
4             THE COURT:  Members of the jury, you may be seated.
5         I have your note, and I have consulted with counsel, and
6     it's my duty to declare a mistrial.
7         I appreciate your conscientious deliberations.  Each of you
8     must decide for yourselves what to do, and I accept your
9     decision, and I accept you're unable to reach a unanimous
10    decision.  So I've declared a mistrial in this case.
11        On behalf of the court and the community, I thank you very
12    much for your service.  We could not fairly and impartially
13    administer justice in our community without the assistance of
14    citizens like you.  You have performed your highest duties as
15    good citizens.
16        If you would wait in the jury room just a minute, I would
17    like to come in and shake each of your hands and thank you
18    personally for each of your service in this case before you
19    leave.
20        Under the rules of the Court, the lawyers in the case
21    cannot talk to you about your service unless I give them
22    permission.  There may be circumstances where I would give
23    permission.  I have not yet done so.  So do not feel like you
24    have to answer to anyone for your service in this case except
25    me, and for that, I give you my very deep appreciation for you

1  having gone through this process that turned out longer than I
2  originally expected.
3      But thank you very much for your services.  You're excused
4  at this time.
5          (Jury exited courtroom.)
6          (Recess taken from 11:50 a.m. to 12:09 p.m.)
7           THE COURT:  I had a very nice conversation with the
8  jurors.  None of them really volunteered any substantive
9  comments.  I described to them the discussion I had with you
10 about the possibility of jury consultants or someone else
11 contacting them and told them that I had to give permission for
12 them to contact them.
13     They were unanimous of the view that for at least two to
14 three days they don't want to have any contact with anyone or
15 have any discussion with anyone.  I told them that I would tell
16 you all that I would give permission for there to be some
17 contact made, that it was voluntary on their part.
18     And I will give you the jury numbers of those that said
19 they were willing to have the possibility of entertaining
20 discussion.  Let me get you the numbers here.  All except juror
21 number 6 --
22           MR. RUDY:  Those are out of the original 10, when you
23 say 6?
24           THE COURT:  No, at the end.
25     I said it would likely be a consultant or someone like

1    that, but the communication would be after 72 hours and that it
2    would be informal and it was totally voluntary whether they
3    talked to them or not and they would not be -- that it might be
4    helpful to the lawyers to discuss how they saw the case and what
5    they saw as the problems in the case that led to what the
6    differences were.
7         They did not volunteer what the differences had been.  I
8    did not ask.  So I have nothing to report about what they saw as
9    the differences.  So I can't help you any further there, but I
10   think that will give you some ideas.
11        Let's talk off the record, then, at the bench about where
12   we are going from here.
13             MR. STERN:  Before we go off the record, does the
14   Court still have under advisement the request that we be able to
15   contact them with the parameters that the Court just described,
16   or do we have permission after 72 hours?
17             THE COURT:  You have permission to do that now along
18   the lines I just described.  If you want to do more than that, I
19   can entertain it by motion.
20             MR. STERN:  Your Honor, I don't have any further
21   application for the defendants.  Jonathan Stern.
22             THE COURT:  Okay.
23             MR. RUDY:  Plaintiffs have no further application.
24   Thank you for entertaining the request.
25             THE COURT:  Okay.

1        (Discussion off the record.)
2            THE COURT:  We'll set a prompt status to try to set a
3    date for retrial, and counsel will be authorized along the lines
4    I suggested to talk to jurors other than juror, what did I say,
5    7?  Other than 6, the other jurors are willing to engage in some
6    minimal discussion with counsel about the issues in the jury
7    trial.
8        The Court will be in recess in this case.  Thank you very
9    much, Counsel, for a job well tried.  Unfortunately, a
10   controversial case.
11       (Proceedings concluded at 12:17 p.m.)

```
1              CERTIFICATE OF OFFICIAL COURT REPORTER
2
3         I, Sara A. Wick, certify that the foregoing is a
4    correct transcript from the record of proceedings in the
5    above-entitled matter.
6
7
8    /s/ Sara A. Wick                    November 8, 2022
9    SIGNATURE OF COURT REPORTER         DATE
```