UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FAIRHOLME FUNDS, INC., *et al.*,

    Plaintiffs,

v.

FEDERAL HOUSING FINANCE
AGENCY, *et al.*,

    Defendants.

Civil No. 13-1053 (RCL)

**DEFENDANTS' OPPOSITION TO THE BERKLEY PLAINTIFFS' MOTION
FOR LEAVE TO PRESENT EVIDENCE AND ARGUMENT
CONCERNING RELIANCE DAMAGES AT TRIAL**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

I.    The Berkley Plaintiffs Ignore the Stringent Standard for Seeking Reconsideration .......... 2

II.    The Berkley Plaintiffs Are Not Entitled to Reliance Damages as a Matter of Law ........... 4

    A.    This Court Correctly Held That Plaintiffs Cannot Seek Reliance Damages in Excess of Ascertainable Expectation Damages ................................. 4

    B.    The Berkley Plaintiffs' Reliance Damages Theory Fails for Additional Reasons ........................................................................................ 8

III.    The Berkley Plaintiffs' Request to Inject a New Theory of Damages into the Case Remains Untimely and Threatens to Significantly Prejudice Defendants ........................ 10

CONCLUSION ..................................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AB Stable VIII LLC v. Maps Hotels & Resorts One LLC*,
   No. cv-2020-0310, 2020 WL 7024929 (Del. Ch. Nov. 30, 2020), *aff'd*, 268
   A.3d 198 (Del. 2021) ...................................................................................................................9

*Am. Cap. Corp. v. FDIC*,
   472 F.3d 859 (Fed. Cir. 2006)......................................................................................................7

*Arconic Corp. v. Novelis Inc.*,
   No. CV 17-1434, 2022 WL 17082378 (W.D. Pa. Nov. 18, 2022) ...............................................9

*Bausch & Lomb Inc. v. Bressler*,
   977 F.2d 720 (2d Cir. 1992).........................................................................................................6

*Citizens Fin. Servs., FSB v. United States*,
   57 Fed. Cl. 64 (2003) ...................................................................................................................6

*Commonwealth v. Gavigan*,
   No. 0921-10-3, 2011 WL 976829 (Va. Ct. App. Mar. 22, 2011) .................................................9

*\*Est. of Gaither v. District of Columbia*,
   771 F. Supp. 2d 5 (D.D.C. 2011) .................................................................................................3

*\*Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*,
   No. 1:13-cv-1053-RCL, 2022 WL 11110548 (D.D.C. Oct. 19, 2022) ............................. passim

*Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*,
   No. 1:13-cv-1053-RCL, 2022 WL 4745970 (D.D.C. Oct. 3, 2022) ............................................7

*Father's House Internatl., Inc. v. Kurguz*,
   71 N.E.3d 711 (Ohio Ct. App. 2016)............................................................................................9

*Glendale Fed. Bank, FSB v. United States*,
   378 F.3d 1308 (Fed. Cir. 2004).....................................................................................................7

*In Def. of Animals v. Nat'l Institutes of Health*,
   543 F. Supp. 2d 70 (D.D.C. 2008) ...............................................................................................3

*Lambland, Inc. v. Heartland Biogas, LLC*,
   No. 18-CV-01060, 2021 WL 2981935 (D. Colo. July 15, 2021) .................................................8

*Lederman v. United States*,
   539 F. Supp. 2d 1 (D.D.C. 2008) .................................................................................................2

*Merry Gentleman, LLC v. George & Leona Prods., Inc.*,
    799 F.3d 827 (7th Cir. 2015) ..................................................................................................6

*N.S. v. Hughes*,
    No. 1:20-CV-101, 2020 WL 4260739 (D.D.C. July 24, 2020) .................................................3

*Nature's Plus Nordic A/S v. Nat. Organics, Inc.*,
    98 F. Supp. 3d 600 (E.D.N.Y. 2015) ......................................................................................9

*Prairie Multimedia, Inc. v. Seidl*,
    No. 96 C 3090, 1999 WL 58545 (N.D. Ill. Feb. 3, 1999) ........................................................8

*Pueschel v. Nat'l Air Traffic Controllers' Ass'n*,
    606 F. Supp. 2d 82 (D.D.C. 2009) .........................................................................................2

*SEC v. Bilzerian*,
    729 F. Supp. 2d 9 (D.D.C. 2010) ...........................................................................................3

*Singh v. George Washington Univ.*,
    383 F. Supp. 2d 99 (D.D.C. 2005) .........................................................................................2

*Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv. II, LLC*,
    No. 14-cv-00134, 2016 WL 1170105 (D. Colo. Mar. 24, 2016) .............................................8

*Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*,
    887 F.3d 1003 (10th Cir. 2018) .............................................................................................4

*United States v. Slough*,
    61 F. Supp. 3d 103 (D.D.C. 2014) .....................................................................................2, 3

*VICI Racing, LLC v. TMobile USA, Inc.*,
    763 F.3d 273 (3d Cir. 2014) ...................................................................................................9

*Westfed Holdings, Inc. v. United States*,
    407 F.3d 1352 (Fed. Cir. 2005) ..............................................................................................7

**Other Authorities**

3 Farnsworth, *Farnsworth on Contracts* § 12.16 (2nd ed. 1990) ......................................................6

24 Richard A. Lord, *Williston on Contracts* § 64:2 (4th ed. 2002) .................................................9

Hunter, *Modern Law of Contracts*, Section 14:4 (2013) ...............................................................10

RESTATEMENT (SECOND) OF CONTRACTS § 344 ...............................................................................9

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 37 (2011) ...........................5

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 38 (2011) .......................5, 8

**INTRODUCTION**

Immediately after the Court rejected Plaintiffs' lost-dividends and restitution theories in its summary judgment opinion prior to the first trial, *all* Plaintiffs—the Class Plaintiffs *and* the Berkley Plaintiffs—filed a motion seeking leave to pursue "reliance" damages of approximately $48 billion. *Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*, No. 1:13-cv-1053-RCL, 2022 WL 11110548, at *3 (D.D.C. Oct. 19, 2022) ("*Fairholme Reliance Ruling I*"). This Court denied Plaintiffs' motion because (1) their untimely request to pursue reliance damages at trial would substantially prejudice Defendants; and (2) Plaintiffs' claimed reliance damages are unavailable as a matter of law. *Id.* at *3–4.

Now, six months after the conclusion of the first trial, the Berkley Plaintiffs—but not the Class Plaintiffs—ask the Court to reconsider its prior ruling and allow the Berkley Plaintiffs to pursue reliance damages at the upcoming retrial. In the alternative, the Berkley Plaintiffs ask the Court to reconsider its timeliness/prejudice rationale and clarify that the sole basis for foreclosing the Berkley Plaintiffs from pursuing reliance damages is that reliance damages are unavailable as a matter of law. The Court should deny the Berkley Plaintiffs' motion in full.

*First*, despite this Court's admonition prior to the first trial, the Berkley Plaintiffs' motion does "not even recite, much less apply, the stringent standard for reconsideration of a court's prior order." *Id.* at *6. Instead, the Berkley Plaintiffs parrot arguments that they previously made and that the Court previously rejected. This is not a valid basis for reconsideration, and the Berkley Plaintiffs' motion should be denied for this reason alone.

*Second*, reliance damages are unavailable as a matter of law. In denying Plaintiffs' prior motion to pursue reliance damages, this Court correctly held that a party may not pursue reliance damages in excess of ascertainable expectation damages, and that Plaintiffs' claimed reliance

1

damages of $48 billion vastly exceed the $1.6 billion measure of expectation damages that this Court allowed to proceed to trial. In addition, the Berkley Plaintiffs' reliance damages theory is legally deficient for multiple other reasons, including (1) reliance damages are unavailable altogether where, as here, the court has concluded that the plaintiff identified an ascertainable measure of expectation damages; (2) the Berkley Plaintiffs' reliance damages theory would constitute an improper windfall; and (3) their reliance damages theory is an attempt to circumvent this Court's summary judgment ruling and resurrect Plaintiffs' rejected "lost-dividends" theory.

*Third*, the Berkley Plaintiffs' request to inject their reliance damages theory at this late stage of the case is untimely and would substantially prejudice Defendants.

As detailed further below, this Court should deny the Berkley Plaintiffs' motion in full.

## ARGUMENT

**I.     The Berkley Plaintiffs Ignore the Stringent Standard for Seeking Reconsideration**

"A motion for reconsideration is governed by Rule 54(b) of the Federal Rules of Civil Procedure." *Pueschel v. Nat'l Air Traffic Controllers' Ass'n*, 606 F. Supp. 2d 82, 84 (D.D.C. 2009). "[I]n order to promote finality, predictability and economy of judicial resources, 'as a rule [a] court should be loath to [revisit its own prior decisions] in the absence of extraordinary circumstances.'" *Id.* at 85 (alterations in original) (quoting *Lederman v. United States*, 539 F. Supp. 2d 1, 2 (D.D.C. 2008)). Accordingly, a court should grant reconsideration only where it "patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court." *United States v. Slough*, 61 F. Supp. 3d 103, 108 (D.D.C. 2014) (Lamberth, J.) (alteration in original) (quoting *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101

(D.D.C. 2005)). "'Furthermore, the party moving to reconsider carries the burden of proving that some harm would accompany a denial of the motion to the reconsider.'" *Id.* (quoting *In Def. of Animals v. Nat'l Institutes of Health*, 543 F. Supp. 2d 70, 76 (D.D.C. 2008)).

The Berkley Plaintiffs fail to even cite, let alone apply, the stringent reconsideration standard. This is especially remarkable given that this Court admonished Plaintiffs in ruling on a prior reconsideration motion for failing to cite or apply the reconsideration standard. *See Fairholme Reliance Ruling I*, 2022 WL 11110548, at *6 (denying motion for reconsideration and stating that Plaintiffs "do not even recite, much less apply, the stringent standard for reconsideration of a court's prior order"). This alone merits denial of their motion.[1]

The Berkley Plaintiffs also ignore the settled principle that a party cannot "use a motion for reconsideration to reargue facts or theories on which a court has already ruled," or "to present theories or arguments that could have been raised earlier." *N.S. v. Hughes*, No. 1:20-CV-101, 2020 WL 4260739, at *1 n.1 (D.D.C. July 24, 2020) (Lamberth, J.); *see also Est. of Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011) ("In this Circuit, it is well-established that 'motions for reconsideration,' whatever their procedural basis, cannot be used as 'an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier.'" (quoting *SEC v. Bilzerian*, 729 F. Supp. 2d 9, 14 (D.D.C. 2010))). Yet that is exactly what the Berkley Plaintiffs do, repeating the same legal arguments that Plaintiffs made in their prior motion seeking reliance damages before the first trial. *Compare* Pls.' Reply in Supp. of Reliance Motion at 6–7

---

[1] Although the Berkley Plaintiffs entitle their motion as one for "Leave to Present Evidence and Argument Concerning Reliance Damages at Trial," Mot. at 1, there is no question this is a motion for reconsideration. The opening line of the Berkley Plaintiffs' motion states "[t]his motion respectfully asks the Court to *reconsider its prior ruling* precluding the Berkley Plaintiffs from seeking reliance damages in this case . . . ." *Id.* at 2 (emphasis added).

3

(Fairholme ECF No. 216), *with* Mot. at 5–6, 7 (asserting materially identical arguments in favor of Plaintiffs' claimed reliance damages).

Because the Berkley Plaintiffs do not even recite, let alone argue that they meet, the applicable and stringent legal standard for reconsideration, their motion should be denied.

## II. The Berkley Plaintiffs Are Not Entitled to Reliance Damages as a Matter of Law

### A. This Court Correctly Held That Plaintiffs Cannot Seek Reliance Damages in Excess of Ascertainable Expectation Damages

In its prior order, this Court explained that, under Delaware and Virginia law, "plaintiffs asserting contract claims cannot recover reliance damages so far in excess of ascertainable expectation damages that they would necessarily place those plaintiffs in a better position than they would have been in had the contract been performed." *Fairholme Reliance Ruling I*, 2022 WL 11110548, at *4. The Court then correctly held that because Plaintiffs' "claimed reliance figure of $48 billion" far exceeds their "estimated expectation damages" of $1.6 billion, reliance damages "would not be an appropriate contract remedy as a matter of law." *Id*. This forecloses the Berkley Plaintiffs' renewed request for reliance damages.

The Berkley Plaintiffs do not dispute the settled legal principle, already applied by this Court, that a plaintiff cannot seek reliance damages in excess of ascertainable expectation damages. They "have not cited a single case in which a plaintiff was allowed to pursue—let alone recover—reliance damages in excess of ascertainable expectation damages." *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1027 (10th Cir. 2018). And they do not contest the extensive caselaw previously cited by the Court and Defendants establishing this point. *See Fairholme Reliance Ruling I*, 2022 WL 11110548, at *4; Defs.' Opp. to Pls.' Reliance Motion at 11 ("Defs.' Opp.") (Fairholme ECF No. 210) (collecting cases). Indeed, the Restatement (Third) of Restitution and Unjust Enrichment,

4

which the Berkley Plaintiffs cite, recognizes the blackletter law that "reliance damages *may not exceed the plaintiff's contractual expectation*." RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 37 (2011) (emphasis added); *see also id.* § 38 (reliance damages are "subject to provable expectation *as a cap*" (emphasis added)).

The Berkley Plaintiffs argue that "[b]ecause the Court has concluded that the Berkley Plaintiffs' expectancy damages cannot be proven with reasonable certainty, the Berkley Plaintiffs' reliance interest is a proper measure of damages." Mot. at 5. But this Court already rejected that argument. As the Court explained, Plaintiffs' prior motion seeking reliance damages "argue[d] that this is just the sort of case in which reliance damages should be available as a matter of law, because the Court did not allow their *preferred* measure of expectation damages, a much larger one based on forgone future dividends, to proceed to trial." *Fairholme Reliance Ruling I*, 2022 WL 11110548, at *4 (emphasis added). In rejecting this argument, the Court explained that the Plaintiffs "confuse the *fact* of harm with the *measure* of damages." *Id*. And the Court recognized that the "measure of expectation damages" that remained in the case under the "lost-value" theory was $1.6 billion. *Id*.; *see also id*. ("Plaintiffs initially estimated *expectation damages* under that [lost-value] theory at $1.6 billion." (emphasis added)). As such, the Court correctly held that "the claimed reliance damages would put plaintiffs in a far better position than they would have been had the alleged breach never occurred and therefore would not be an appropriate contract remedy as a matter of law." *Id*.

The Berkley Plaintiffs' motion fails to acknowledge the Court's holding that they have identified an ascertainable measure of expectation damages based on the one-day stock-price drop following the announcement of the Third Amendment. In its prior order, this Court recognized that Plaintiffs had "estimated *expectation damages* under th[eir lost-value] theory at

5

$1.6 billion." *Id*. (emphasis added). This Court also noted Plaintiffs' damages expert, Dr. Mason, "previously opined that a measure of *expectation damages* based on lost share value would total approximately $1.6 billion." *Id.* at *2 (emphasis added). And at the first trial, Dr. Mason testified that the one-day stock-price drop "was a directly observable measure of damages" that yielded $1.61 billion in damages. Trial Tr. 1516:1–7. During closing arguments, Plaintiffs' counsel reiterated Dr. Mason's opinion that the stock-price drop was a "directly observable measure of damages," *id*. at 2574:9–10, and emphasized that "the amount of that stock drop [wa]s stipulated." *Id*. at 2573:6–9. The Court then instructed the jury that "[a] party that is harmed by a breach of the implied covenant of good faith and fair dealing is entitled to damages calculated in the amount that would place it in the same position it would have been in had the breach not occurred, *sometimes called expectation damage*." *Id.* at 2750:7–11 (emphasis added). The ascertainability of expectation damages based on the lost-value theory precludes any recovery of reliance damages in excess of those alleged expectation damages.[2]

The Berkley Plaintiffs assert that "Defendants may not artificially limit the Berkley Plaintiffs' reliance damages by pointing to the Court's previous holding that the Berkley Plaintiffs can prove only part of their *claimed* expectation damages with reasonable certainty." Mot. at 7. But this Court did not hold that Berkley Plaintiffs' $1.6 billion damages estimate is "*only part* of their claimed expectation damages." *Id.* Rather, this Court rejected the Berkley

---

[2]   *See, e.g.*, *Merry Gentleman, LLC v. George & Leona Prods., Inc.*, 799 F.3d 827, 832 (7th Cir. 2015) ("Courts will not knowingly put the plaintiff [receiving a reliance recovery] in a better position than he would have occupied had the contract been fully performed.") (alteration in original) (internal quotation omitted); *Citizens Fin. Servs., FSB v. United States*, 57 Fed. Cl. 64, 70 n.5, *clarified on denial of recons.*, 59 Fed. Cl. 27 (2003) ("[R]eliance damages should not exceed plaintiff's expectancy interest."); *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 729 (2d Cir. 1992) (quoting 3 Farnsworth, *Farnsworth on Contracts* § 12.16, at 265 (2nd ed. 1990)) ("[T]he alternative reliance 'measure of damages rests on the premise that the injured party's reliance interest is no greater than the party's expectation interest.'").

6

Plaintiffs' other expectation damages estimates—based on the "lost-dividends" theory of harm—as impermissibly speculative. *See Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency* ("*Fairholme MSJ Ruling*"), No. 1:13-cv-1053-RCL, 2022 WL 4745970, at *9–10 (D.D.C. Oct. 3, 2022). The exclusion of the Berkley Plaintiffs' larger expectation damages estimates does not render the sole remaining lost-value estimate "only part" of the Berkley Plaintiffs' claimed damages. And as stated above, the Court has recognized the $1.6 billion stock-price drop as an ascertainable measure of expectation damages.

      The *Winstar* cases cited by the Berkley Plaintiffs are inapposite. In *Glendale Federal Bank*, there was *no* ascertainable measure of expectations damages to serve as a cap on reliance damages: the trial court concluded that the plaintiff's "model for expectancy damages in the form of lost profits was implausible," and the Federal Circuit agreed that "*any* award premised on expectancy damages would be too speculative to uphold." *Glendale Fed. Bank, FSB v. United States*, 378 F.3d 1308, 1310 (Fed. Cir. 2004) (emphasis added). And neither *American Capital Corp.* nor *Westfed Holdings* involved a plaintiff pursuing reliance damages in excess of ascertainable expectations damages. *See Am. Cap. Corp. v. FDIC*, 472 F.3d 859 (Fed. Cir. 2006); *Westfed Holdings, Inc. v. United States*, 407 F.3d 1352 (Fed. Cir. 2005). Here, the Court has found an ascertainable measure of expectation damages—$1.6 billion based on Plaintiffs' lost-value theory—and the Berkley Plaintiffs' claimed reliance damages greatly exceed that measure.

      In sum, the Berkley Plaintiffs' request for reconsideration should be denied because the Court correctly held that, as a matter of law, they cannot seek reliance damages vastly exceeding their alleged expectation damages based on the lost-value theory.

### B. The Berkley Plaintiffs' Reliance Damages Theory Fails for Additional Reasons

Beyond the inability to seek reliance damages in excess of their claimed expectancy interest, the Berkley Plaintiffs' renewed request for reliance damages is legally deficient for multiple other reasons.[3]

*First*, regardless of whether reliance damages exceed expectation damages, it is axiomatic that reliance damages are available *only* as a fallback where a plaintiff "cannot prove expectation damages—because a benefit of the bargain cannot be established with sufficient certainty." RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 38 (2011). "[J]urisdictions that follow the Restatement generally limit recovery of reliance damages to circumstances where expectation damages are difficult or impossible to prove with certainty." *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv. II, LLC*, No. 14-cv-00134, 2016 WL 1170105, at *4 (D. Colo. Mar. 24, 2016); *see also, e.g.*, *Prairie Multimedia, Inc. v. Seidl*, No. 96 C 3090, 1999 WL 58545, at *2 (N.D. Ill. Feb. 3, 1999) ("Reliance damages are inappropriate in th[e] case" absent "any evidence that lost profits were not possible to ascertain."); *Lambland, Inc. v. Heartland Biogas, LLC*, No. 18-CV-01060, 2021 WL 2981935, at *2 (D. Colo. July 15, 2021) (precluding expert testimony that plaintiff claimed would constitute reliance damages when "[p]laintiff assert[ed] elsewhere that it can prove its expectation damages to a reasonable certainty"). Because the Berkley Plaintiffs have set forth an ascertainable measure of expectation damages—$1.6 billion in lost share value, as discussed above—reliance damages are unavailable as a matter of law.

---

[3] Defendants detailed these flaws in their opposition to Plaintiffs' prior motion to pursue reliance damages at the first trial. *See* Defs.' Opp. at 10, 12–14 (Fairholme ECF No. 210). Yet the Berkley Plaintiffs' Motion fails to address them.

*Second*, reliance damages are inappropriate where, as here, such an award would result in a windfall to the non-breaching party. Courts consistently affirm the principle that an award of reliance damages should not confer a windfall.[4] Awarding the Berkley Plaintiffs the issuance price for the shares they continue to hold would bestow such an impermissible windfall because the Berkley Plaintiffs would *both* get back the issuance price *and* keep the shares. For similar reasons, the relief the Berkley Plaintiffs seek is not even appropriately characterized as a "reliance" measure of damages. It is well settled that reliance damages are meant to place the non-breaching party "back in the position in which he would have been *had the contract not been made*." *AB Stable VIII LLC v. Maps Hotels & Resorts One LLC*, No. cv-2020-0310, 2020 WL 7024929, at *101 (Del. Ch. Nov. 30, 2020), *aff'd*, 268 A.3d 198 (Del. 2021) (emphasis added) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 344 cmt. a); *see also Commonwealth v. Gavigan,* No. 0921-10-3, 2011 WL 976829, at *5 (Va. Ct. App. Mar. 22, 2011) (quoting 24 Richard A. Lord, *Williston on Contracts* § 64:2, at 21 (4th ed. 2002)) (defining a party's reliance interest as that which puts the party "'in as good a position as he would have been in had the contract not been made"). Thus, "[e]xpectation damages and reliance damages are fundamentally different: '[t]he expectancy recovery affirms the existence of a contract; the reliance recovery tries to deny it.'" *Father's House Internatl., Inc. v. Kurguz*, 71 N.E.3d 711,

---

[4] *See, e.g.*, *VICI Racing, LLC v. TMobile USA, Inc.*, 763 F.3d 273, 303 (3d Cir. 2014) ("Delaware courts use the term 'windfall' to describe any damage amount in excess of a party's expectation interest."); *Arconic Corp. v. Novelis Inc.*, No. CV 17-1434, 2022 WL 17082378, at *6 (W.D. Pa. Nov. 18, 2022) ("The purpose of reliance damages is to place injured parties in the same position as they were prior to the execution of the contract," and "[t]he 'no windfall' principle is equally applicable to reliance and restitution damage awards."); *Nature's Plus Nordic A/S v. Nat. Organics, Inc.*, 98 F. Supp. 3d 600, 605 (E.D.N.Y. 2015) ("[R]eliance damages are about restoration and strive to place injured parties in the same position as they were prior to the execution of the contract, not to bestow a 'windfall' on injured parties." (cleaned up)).

718–19 (Ohio Ct. App. 2016) (quoting Hunter, *Modern Law of Contracts*, Section 14:4 (2013)). Under the Berkley Plaintiffs' purported reliance damages theory, however, they would keep their shares and the shareholder contracts would remain in force. This is not a legally cognizable form of reliance damages; it is an impermissible windfall.

*Third*, the Berkley Plaintiffs' reliance theory impermissibly seeks to reintroduce the "lost-dividends" theory that this Court rejected as impermissibly speculative in its summary judgment opinion. In their prior request to pursue reliance damages before the first trial, Plaintiffs argued that if Defendants attempted to offset reliance damages on the basis that the shareholder contract was somehow a losing contract, they would seek to rebut those arguments by using "the opinions offered in connection with Dr. Mason's discounted cash flow ('DCF') model." Pls.' Reliance Motion at 9 (Fairholme ECF No. 203). The Berkley Plaintiffs echo the same argument here, stating that "the calculation for th[eir] reliance damages would be derived from the [prior expert] analysis *for expectation damages* and restitution," which includes Dr. Mason's DCF model that this Court rejected. Mot. at 8 (emphasis added); *see also id*. at 3 (arguing that "the same analysis used to calculate expectancy damages" can be repurposed for Berkley Plaintiffs' reliance damages arguments). This would be an improper end-run around the Court's summary judgment ruling rejecting Plaintiffs' lost-dividends theory as impermissibly speculative.

For each of the foregoing reasons, the Court should reject the Berkley Plaintiffs' request to seek reliance damages at the second trial.

### III. The Berkley Plaintiffs' Request to Inject a New Theory of Damages into the Case Remains Untimely and Threatens to Significantly Prejudice Defendants

If the Berkley Plaintiffs wanted to pursue reliance damages, they could have—and should have—asserted the reliance damages theory in expert discovery and in their summary judgment briefs. None of their damage expert's reports so much as mention "reliance" damages—not

once.  The reliance damages theory that the Berkley Plaintiffs now want to present was fully available to them before the Court's summary judgment decision rejecting their "preferred" damages theories.  There is no reason the Berkley Plaintiffs could not have asserted reliance damages sooner, even if in the alternative to their other primary theories.  Expert discovery has been closed for quite some time.  And as explained in Defendants' opposition to Plaintiffs' prior attempt to pursue reliance damages before the first trial, courts have held that it is improper for a party to introduce new damages theories seriatim after their preferred damages theories are rejected or put in peril.  *See* Defs.' Opp. at 6–7 (Fairholme ECF 210).

In denying Plaintiffs' prior request to seek reliance damages, this Court correctly found that the request came "on the eve of trial" and would "leave defendants scrambling," as "defendants heretofore have had little reason to develop a trial argument as to why any reliance damages should be offset."  *Fairholme Reliance Ruling I*, 2022 WL 11110548, at *3.  The same is true here.  The Court thus should deny the Berkley Plaintiffs' request to reconsider or clarify the timeliness and prejudice component of its prior order.

That the Berkley Plaintiffs filed the instant motion 83 days before the second trial, as compared to 19 days before the first trial, does not make their request to pursue reliance damages timely.  The Berkley Plaintiffs waited until *six months* after the conclusion of the first trial to file the instant motion for reconsideration.  Now, pursuant to the scheduling order entered by the Court, the parties are immersed in various pretrial disclosures and motions practice.

Once again echoing Plaintiffs' prior motion seeking reliance damages, the Berkley Plaintiffs argue that Defendants have been on notice about the Berkley Plaintiffs' intention to pursue reliance damages since the Berkley Plaintiffs served their initial disclosures in 2018.  *Compare* Mot. at 8, *with* Pls.' Reliance Mot. at 9–10 (Fairholme ECF No. 203), *and* Reply in

11

Support of Pls.' Reliance Mot. at 3 (Fairholme ECF No. 216). The Court did not accept this argument last time and should not do so now. As the Court explained, Plaintiffs "apparently made no subsequent effort in the four years" after serving their initial disclosures to develop a reliance damages theory, and "defendants heretofore have had little reason to develop a trial argument as to why any reliance damages should be offset." *Fairholme Reliance Ruling I*, 2022 WL 11110548, at *3. The Court further explained that it was "unclear whether defendants could prove their desired offset [of reliance damages] without supplemental expert testimony of their own." *Id*.

If anything, Defendants have even less reason to be able to address reliance damages now than they did at the time Plaintiffs filed their previous motion, because this Court ruled over six months ago that reliance damages are unavailable here as a matter of law. If the Court were to allow the Berkley Plaintiffs to pursue reliance damages, Defendants would be entitled to an opportunity to respond, including through appropriate new expert disclosures, *Daubert* motions, and summary judgment motions—likely a months-long endeavor. Indeed, in their prior motion seeking reliance damages, Plaintiffs explicitly acknowledged that Defendants "may wish to supplement their expert reports to address reliance damages, which Plaintiffs would not oppose" "as long as Plaintiffs' expert is afforded an appropriate opportunity to respond." Pls.' Reliance Mot. at 2 n.2, 9–10 (Fairholme ECF No. 203); *see also Fairholme Reliance Ruling I*, 2022 WL 11110548, at *3 ("[I]t is unclear whether defendants could prove their desired offset [to Plaintiffs' claimed reliance damages] without supplemental expert testimony of their own.").

Ultimately, the Berkley Plaintiffs rely on the fact that their renewed request to pursue reliance damages comes 83 days before the upcoming retrial as compared to 19 days before the first trial. But the Berkley Plaintiffs overstate the significance of this time differential, and they

12

fail to confront their failure to timely pursue a theory "that was alluded to once four years ago and never developed during discovery." *Fairholme Reliance Ruling I*, 2022 WL 11110548, at *3. Their request for reconsideration or clarification of the Court's timeliness/prejudice rationale should be denied.

## CONCLUSION

For the foregoing reasons, the Berkley Plaintiffs' Motion for Leave to Present Evidence and Argument Concerning Reliance Damages at Trial should be denied.

Dated: May 16, 2023  Respectfully submitted,

 /s/ Asim Varma
Asim Varma (D.C. Bar # 426364)
Jonathan L. Stern (D.C. Bar # 375713)
David B. Bergman (D.C. Bar # 435392)
Ian S. Hoffman (D.C. Bar # 983419)
R. Stanton Jones (D.C. Bar # 987088)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave NW
Washington, D.C. 20001
(202) 942-5000
Asim.Varma@arnoldporter.com
Jonathan.Stern@arnoldporter.com
David.Bergman@arnoldporter.com
Ian.Hoffman@arnoldporter.com
Stanton.Jones@arnoldporter.com

*Attorneys for Defendant Federal Housing Finance Agency*

| | |
|---|---|
| /s/ Michael J. Ciatti | /s/ Meaghan VerGow |
| Michael J. Ciatti (D.C. Bar #467177) | Meaghan VerGow (D.C. Bar # 977165) |
| KING & SPALDING LLP | O'MELVENY & MYERS LLP |
| 1700 Pennsylvania Ave. N.W. | 1625 Eye Street, N.W. |
| Washington, DC 20006 | Washington, DC 20006 |
| Tel: (202) 661-7828 | Tel: (202) 383-5300 |
| Fax: (202) 626-3737 | Fax: (202) 383-5414 |
| mciatti@kslaw.com | mvergow@omm.com |
| | |
| *Attorney for the Federal Home Loan Mortgage Corp.* | *Attorney for the Federal National Mortgage Association* |