# EXHIBIT G

```
                  BEFORE THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA


 FAIRHOLME FUNDS, INC., et al.,    .
                                   .
           Plaintiffs,             .
                                   .  Case Number 13-cv-1053
      vs.                          .
                                   .
 FEDERAL HOUSING FINANCE AGENCY,   .
 et al.,                           .
                                   .
           Defendants.             .
 - - - - - - - - - - - - - - - - -
 IN RE FANNIE MAE/FREDDIE MAC      .  Case Number 13-mc-1288
 SENIOR PREFERRED STOCK PURCHASE   .
 AGREEMENT CLASS ACTION            .  Washington, D.C.
 LITIGATIONS.                      .  October 20, 2022
 - - - - - - - - - - - - - - - - -    10:03 a.m.


             TRANSCRIPT OF JURY TRIAL, MORNING SESSION
              BEFORE THE HONORABLE ROYCE C. LAMBERTH
                   UNITED STATES DISTRICT JUDGE

 APPEARANCES:

 For Berkley Plaintiffs:     BRIAN BARNES, ESQ.
                             Cooper & Kirk, PLLC
                             1523 New Hampshire Avenue Northwest
                             Washington, D.C. 20036

 For Class Plaintiffs:       LEE RUDY, ESQ.
                             Kessler Topaz Meltzer & Check, LLP
                             280 King of Prussia Road
                             Radnor, Pennsylvania 19087

                             HAMISH HUME, ESQ.
                             SAMUEL KAPLAN, ESQ.
                             KENYA DAVIS, ESQ.
                             Boies Schiller Flexner LLP
                             1401 New York Avenue Northwest
                             Washington, D.C. 20005


                       -- continued --
```

1  represent the plaintiffs in this case.
2  A.   Good morning, Mr. Hume.
3  Q.   Thank you for appearing today.
4       Now, Mr. DeMarco, you were the acting director of the FHFA
5  in August of 2012; correct?
6  A.   Correct.
7  Q.   And it was your decision to agree to the net worth sweep;
8  correct?
9  A.   Yes.
10 Q.   And am I correct that you made the final decision to agree
11 to the net worth sweep in August of 2012?
12 A.   The final decision, yes.
13 Q.   And am I correct that while you were the final
14 decisionmaker, Mario Ugoletti was the point person on the actual
15 negotiations with the Treasury Department?
16 A.   Yes.
17 Q.   And am I correct, Mr. DeMarco, that the reason you agreed
18 to the net worth sweep was to address the concern that the
19 enterprises were going to have to borrow money from Treasury in
20 order to pay the 10 percent dividend to Treasury, and those
21 borrowings would then reduce the amount of the Treasury
22 commitment?  Is that the reason that you agreed to the net worth
23 sweep?
24 A.   Yes, that was the central concern.
25 Q.   That was the reasoning.  And am I also correct that from

1  your perspective, the net worth sweep was not agreed to in order
2  to demonstrate a wind-down of the enterprises; is that correct?
3  A.   No, it's not to demonstrate that.  It was to do what we
4  said in the previous question.  It was to assure the stability
5  of the companies through the remaining Treasury commitment.
6  Q.   So it was not done for a wind-down?  It was not done to
7  demonstrate or begin a wind-down; correct?
8  A.   I was aware that wind-down was something that both the
9  Treasury Department, the administration, and members of Congress
10 were actively advocating for and was one of the risks that I was
11 considering in the context of this decision.
12 Q.   But am I correct that you did not agree to the net worth
13 sweep in order to demonstrate wind-down?
14 A.   It was not to demonstrate wind-down, whatever that means.
15 Q.   I just want to make sure that the record is clear.  Can
16 you -- you can look at tab 1 of your binder.  It should be the
17 deposition from 2015.
18       Actually, we can just play a clip.  Can you play the 2015
19 deposition clip?
20            COURTROOM DEPUTY:  Exhibit number?
21            MR. HUME:  It's a deposition.  It's not an exhibit.
22 Are we permitted to play the deposition?
23            THE COURT:  If there's no objection.
24            MR. STERN:  No objection, Your Honor.
25       (Video played.)

```
                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - x
FAIRHOLME FUNDS, INC., et al.,
                                     CA No: 1:13-cv-01053-RCL
            Plaintiffs,
                                     Washington, D.C.
                                     Friday, October 21, 2022
vs.                                  2:15 p.m.

FEDERAL HOUSING FINANCE AGENCY,
et al.,

            Defendants.
- - - - - - - - - - - - - - - - x
IN RE: FANNIE MAE/FREDDIE MAC        Case Number 1:13-cv-1288
SENIOR PREFERRED STOCK PURCHASE
AGREEMENT CLASS ACTION
LITIGATIONS
_____

           TRANSCRIPT OF JURY TRIAL - MORNING SESSION
       HELD BEFORE THE HONORABLE ROYCE C. LAMBERTH
                  UNITED STATES DISTRICT JUDGE
_____

APPEARANCES:

For the Berkley Plaintiffs:   BRIAN BARNES, ESQ.
                              COOPER & KIRK, PLLC
                              1523 New Hampshire Avenue, NW
                              Washington, D.C. 20036

For Class Plaintiffs:         LEE D. RUDY  ESQ.
                              KESSLER TOPAZ MELTZER & CHECK
                              280 King of Prussia Road
                              Radnor, Pennsylvania 19087

                              HAMISH HUME, ESQ.
                              KENYA DAVIS, ESQ.
                              SAMUEL KAPLAN, ESQ.
                              BOIES SCHILLER FLEXNER LLP
                              1401 New York Avenue Northwest
                              Washington, D.C. 20005

(CONTINUED ON NEXT PAGE)
```

1  and I've been talking directly to my senior staff.  And at
2  the end of the day, you know, when Treasury was ready to
3  move, there was very little time at that point to move to
4  get it done.
5  Q.  Now, let's -- and one other thing on process.  You say
6  that you didn't ask for recommendations from Fannie or
7  Freddie.  Why not?
8  A.  All the negotiations and amendments over the stock
9  purchase agreements from the original one, the First
10 Amendment, Second Amendment, Third Amendment, were all done
11 between FHA as conservator and the Treasury Department, and
12 I felt like that was our responsibility.
13         But there's a couple of other things here.
14         I am meeting weekly or every other week with the
15 CEOs of these companies, and so I am having exchanges with
16 them in which I am hearing from them what their concerns
17 are.  And I have -- I may be able to take account of what
18 they're looking at and the things that they're looking at,
19 and I'm able to ask some questions that help inform me as
20 I'm making judgments, not just about this, but across an
21 array of conservatorship responsibilities, so I have -- I
22 have that input as well.
23         Oh, and I'm sorry, one other thing, Mr. Stern,
24 with regard to this is that there is -- there are issues
25 about sort of disclosures and leaks.  We've talked about

```
                    BEFORE THE UNITED STATES DISTRICT COURT
                           FOR THE DISTRICT OF COLUMBIA


 FAIRHOLME FUNDS, INC., et al.,    .
                                   .
         Plaintiffs,               .
                                   .  Case Number 13-cv-1053
      vs.                          .
                                   .
 FEDERAL HOUSING FINANCE AGENCY,   .
 et al.,                           .
                                   .
         Defendants.               .
 - - - - - - - - - - - - - - - - -
 In re FANNIE MAE/FREDDIE MAC      .  Case Number 13-mc-1288
 SENIOR PREFERRED STOCK PURCHASE   .
 AGREEMENT CLASS ACTION            .  Washington, D.C.
 LITIGATIONS.                      .  October 21, 2022
 - - - - - - - - - - - - - - - - -    1:38 p.m.


              TRANSCRIPT OF JURY TRIAL, AFTERNOON SESSION
                 BEFORE THE HONORABLE ROYCE C. LAMBERTH
                      UNITED STATES DISTRICT JUDGE

 APPEARANCES:

 For Berkley Plaintiffs:      BRIAN BARNES, ESQ.
                              Cooper & Kirk, PLLC
                              1523 New Hampshire Avenue Northwest
                              Washington, D.C. 20036

 For Class Plaintiffs:        LEE RUDY, ESQ.
                              ERIC ZAGAR, ESQ.
                              Kessler Topaz Meltzer & Check LLP
                              280 King of Prussia Road
                              Radnor, Pennsylvania 19087

                              HAMISH HUME, ESQ.
                              SAMUEL KAPLAN, ESQ.
                              KENYA DAVIS, ESQ.
                              Boies Schiller Flexner LLP
                              1401 New York Avenue Northwest
                              Washington, D.C. 20005


                              -- continued --
```

1       Do you remember that?
2  A.   Yes.
3  Q.   "PSPA alert," do you see that, subject?
4  A.   Yes.
5  Q.   And just highlight the date, 8/9/2012.
6       So this is eight days before the net worth sweep is
7  announced; correct?
8  A.   Yes.
9  Q.   It was announced on August 17th, 2012. Do you remember
10 whether you signed it on the 17th or the 16th?
11 A.   I do not recall.
12 Q.   Okay. The first sentence says -- Mr. Ugoletti writing to
13 you and others at the FHFA, says, "As a heads-up, there appears
14 to be a renewed push to move forward on PSPA amendments."
15      Do you see that?
16 A.   I do.
17 Q.   Mr. Stern went through the rest of the paragraph with you.
18 I just wanted to ask you this question: Was it your
19 understanding when you received this that that renewed push came
20 from Treasury?
21 A.   Yes.
22 Q.   Okay. I would like to show you PX -- oh, one other
23 question about this. August 9th, 2012, can we show the date
24 again? That would have been two days or -- one or two days
25 after Fannie Mae and Freddie Mac publicly released their second

```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF COLUMBIA

FAIRHOLME FUNDS, INC., ET AL., et al,   Civil Action
                                        No. 1:13-1053
            Plaintiffs,

     vs.
                                        October 25, 2022
FEDERAL HOUSING FINANCE                 1:44 p.m.
     AGENCY, et al,                     Washington, DC


            Defendants.
_____

In re: FANNIE MAE/FREDDIE MAC           Civil Action
SENIOR PREFERRED STOCK PURCHASE         13-1288
AGREEMENT CLASS ACTION
LITIGATIONS.

_____


        TRANSCRIPT OF JURY TRIAL - AFTERNOON SESSION
          BEFORE THE HONORABLE ROYCE C. LAMBERTH
              UNITED STATES DISTRICT JUDGE


PLAINTIFFS' APPEARANCES:

For Plaintiffs:        CHARLES COOPER
                       DAVID THOMPSON
                       VINCENT COLATRIANO
                       PETER PATERSON
                       BRIAN BARNES
                         Cooper & Kirk, PLLC
                         1523 New Hampshire Avenue NW
                         Washington, D.C. 20036

For Class Plaintiffs:  ERIC ZAGAR
                         Kessler Topaz Meltzer & Check, LLP
                         280 King of Prussia Road
                         Radnor, Pennsylvania 19087

                       HAMISH HUME
                       SAMUEL KAPLAN
                         Boies Schiller Flexner LLP
                         1401 New York Avenue NW
                         Washington, D.C. 20005
```

1  terms, the return on the investment has to be on an
2  investment that has already been made, and that's the amount
3  of the commitment that's been drawn down by the GSEs.
4      **Q.**  And that's the 10 percent dividend?
5      **A.**  That's the 10 percent dividends, the warrants, and
6  so on.  Yes.
7      **Q.**  So, Professor, do you have a slide that just
8  summarizes the implication of the contractual language, the
9  use of market value, the absence of internal analysis that
10 you've been discussing?  Is that the next slide?
11     **A.**  Yes, please, if we could advance.
12         **THE COURT:**  We'll do that at 10:00 tomorrow.
13         **MR. KAPLAN:**  Your Honor?
14         **THE COURT:**  We'll do that at 10:00 tomorrow.
15         **MR. KAPLAN:**  Thank you.
16         **THE COURT:**  Don't talk about the case.  Don't let
17 anyone talk to you about the case.  I will see you all at
18 10:00 tomorrow.
19         (Jury exited the courtroom)
20         **THE COURT:**  One other thing I'll do on the record
21 before I take you off the bench about our scheduling, since
22 the issue on the Plaintiffs' Exhibit 226 has been fully
23 briefed now, the Plaintiffs' Motion to Exhibit Plaintiffs'
24 226 is denied.
25         While I said in my Motion in Limine opinion that

1    it was conceivable that evidence of Treasury's negotiating
2    position could provide -- you all can be seated -- could
3    provide some insight into whether FHFA, in fact, negotiated
4    the Third Amendment in accordance with shareholders'
5    reasonable expectations, there is no reason to believe that
6    this Deputy Assistant Secretary's brief remark in an email
7    would actually reflect on the Treasury's negotiating
8    position or that his individual position would ever have
9    even been communicated to the FHFA in the course of the
10   negotiations.
11            It's not like a statement from the Secretary or
12   someone who we know was actively involved in the
13   negotiations.  Even if the email were of some limited
14   relevance to FHFA's motive, I find that relevance is
15   substantially outweighed by risk of jury confusion because
16   the jury might not understand the relationship between a
17   mid-level Treasury official's beliefs and FHFA's motives.
18            And by risk of wasting time and needlessly
19   presenting cumulative evidence, there's plenty of evidence
20   of Treasury's overall position in the record.  So
21   Plaintiffs' 236 will not be admitted.  If defendants had
22   persisted in trying to present Bowler's deposition, I might
23   have a different reaction, but plaintiff having withdrawn
24   that, it's my final ruling.
25            Off the record.  Then I'll talk to counsel about

```
                      BEFORE THE UNITED STATES DISTRICT COURT
                          FOR THE DISTRICT OF COLUMBIA


   FAIRHOLME FUNDS, INC., et al.,    .
                                     .
            Plaintiffs,              .
                                     . Case Number 13-cv-1053
        vs.                          .
                                     .
   FEDERAL HOUSING FINANCE AGENCY,   .
   et al.,                           .
                                     .
            Defendants.              .
   - - - - - - - - - - - - - - - -
   In re FANNIE MAE/FREDDIE MAC      . Case Number 13-mc-1288
   SENIOR PREFERRED STOCK PURCHASE   .
   AGREEMENT CLASS ACTION            . Washington, D.C.
   LITIGATIONS.                      . October 26, 2022
   - - - - - - - - - - - - - - - -    1:54 p.m.


              TRANSCRIPT OF JURY TRIAL, AFTERNOON SESSION
                 BEFORE THE HONORABLE ROYCE C. LAMBERTH
                      UNITED STATES DISTRICT JUDGE

   APPEARANCES:

   For Berkley Plaintiffs:     BRIAN BARNES, ESQ.
                               Cooper & Kirk, PLLC
                               1523 New Hampshire Avenue Northwest
                               Washington, D.C. 20036

   For Class Plaintiffs:       LEE RUDY, ESQ.
                               ERIC ZAGAR, ESQ.
                               Kessler Topaz Meltzer & Check, LLP
                               280 King of Prussia Road
                               Radnor, Pennsylvania 19087

                               HAMISH HUME, ESQ.
                               SAMUEL KAPLAN, ESQ.
                               KENYA DAVIS, ESQ.
                               Boies Schiller Flexner LLP
                               1401 New York Avenue Northwest
                               Washington, D.C. 20005


                            -- continued --
```

1   documents that we thought were important, and we tried to get
2   them all in in one motion.  And the reason we did it was because
3   if we needed a witness, we have to go through the Touhy process.
4   So we tried to do it en masse and without a whole lot of nuance,
5   as Your Honor noted, document by document.
6         It is not inconsistent with that to say, you know what,
7   many of these documents actually come in as state of mind.
8   There's nothing inconsistent about that.  This is state of mind.
9         Two points on this very well described series of chains in
10  the link of communication.  This could be completely fabricated.
11  It could be made up by a fairy monster.  It doesn't matter.
12  What matters is that Mr. Parrot says "exactly right on substance
13  and intent."
14        Now, lest it be confusing --
15              THE COURT:  If Mr. Parrot was at Treasury, it might
16  have some more impact.
17        I will sustain the objection.  He's thinking he knows what
18  Treasury thinks.  Somebody at Treasury needs to tell me what
19  they think, not Mr. Parrot.
20              MR. HUME:  We would submit he's Treasury's boss, but
21  we respectfully --
22              THE COURT:  He's not Treasury's boss.  He's a flunky
23  at the White House.  I know he might not like me saying it that
24  way, but he works at the White House.  The secretary works --
25              MR. HUME:  Understood, Your Honor.

1    THE COURT: I'm sorry I called him a flunky. He's
2 just a staff member at the White House. He's nobody's boss.
3    MR. HUME: Understood.
4    Your Honor, that concludes the issues on the exhibits.
5 There's one other loose end on plaintiffs' case-in-chief, which
6 is during -- and I don't think we need to resolve it now but
7 just to identify it.
8    During Mr. DeMarco's testimony, I asked him if he had
9 plans; the plans involved legislation. I asked him, Did you
10 really think it could pass in 2012, President Obama in the White
11 House and Republicans in the House? And he quite definitely
12 said there was legislation that passed, and he said it passed
13 the Senate Banking Committee.
14    And the question was about 2012. We think it was an error,
15 and we checked. There is no legislation that passed in 2012.
16    We ask defendants to correct the record.
17    THE COURT: I thought maybe he meant out of committee.
18    MR. HUME: What he was talking about was something
19 that happened in 2014. There's no dispute. Defendants have
20 said that was what he was referring to. But the testimony came
21 in as 2012.
22    I think the solution may be that we seek judicial notice
23 that nothing came out of committee in '12, in 2012. My
24 colleague, Mr. Kaplan, has been dealing with this. And I think
25 we're trying to work something out cooperatively.

```
                    BEFORE THE UNITED STATES DISTRICT COURT
                         FOR THE DISTRICT OF COLUMBIA


   FAIRHOLME FUNDS, INC., et al.,    .
                                     .
          Plaintiffs,                .
                                     .  Case Number 13-cv-1053
       vs.                           .
                                     .
   FEDERAL HOUSING FINANCE AGENCY,   .
   et al.,                           .
                                     .
          Defendants.                .
   - - - - - - - - - - - - - - - - -
   In re FANNIE MAE/FREDDIE MAC      .  Case Number 13-mc-1288
   SENIOR PREFERRED STOCK PURCHASE   .
   AGREEMENT CLASS ACTION            .  Washington, D.C.
   LITIGATIONS.                      .  October 28, 2022
   - - - - - - - - - - - - - - - -     10:09 a.m.


                 TRANSCRIPT OF JURY TRIAL, MORNING SESSION
                   BEFORE THE HONORABLE ROYCE C. LAMBERTH
                        UNITED STATES DISTRICT JUDGE

   APPEARANCES:

   For Berkley Plaintiffs:       BRIAN BARNES, ESQ.
                                 Cooper & Kirk, PLLC
                                 1523 New Hampshire Avenue Northwest
                                 Washington, D.C. 20036

   For Class Plaintiffs:         LEE RUDY, ESQ.
                                 ERIC ZAGAR, ESQ.
                                 Kessler Topaz Meltzer & Check, LLP
                                 280 King of Prussia Road
                                 Radnor, Pennsylvania 19087

                                 HAMISH HUME, ESQ.
                                 SAMUEL KAPLAN, ESQ.
                                 KENYA DAVIS, ESQ.
                                 Boies Schiller Flexner LLP
                                 1401 New York Avenue Northwest
                                 Washington, D.C. 20005


                              -- continued --
```

1    we can understand all of what we're talking about.
2           Thank you, Your Honor.  Court's indulgence for just a
3    moment.
4           Just to orient the Court, Your Honor, this is a document
5    that's already in evidence, and this is a document that
6    plaintiffs have highlighted several times.  And it's an e-mail
7    chain back and forth three days before the Third Amendment was
8    signed, and the sender of the original e-mail is Mr. Jim Griffin
9    and recipient is the witness, Mr. Satriano.  Mr. Griffin, as
10   Mr. Satriano just testified, was one of his deputies, and it's a
11   back and forth between them.
12          So the top-most e-mail is the one we were talking about at
13   the last objection.  Mr. Satriano has already testified as to
14   his understanding of the first few sentences of this e-mail.
15   And the point where there was an objection before we took the
16   break, Your Honor, is about three or four lines down in the
17   first e-mail.  I'm going to ask Mr. Salazar to highlight it just
18   so we can see what we're talking about, Your Honor.
19          And so, Your Honor, the sentence that we're talking about
20   is the one that's being highlighted now.  "I do not think that
21   makes sense, given the amendments are designed to demonstrate
22   wind-down."
23          The question I asked the witness is, What did you
24   understand Mr. Griffin to mean by that?  And I believe the
25   objection was that it called for speculation.

1           I'm not asking the witness to speculate as to what
2   Mr. Griffin meant.  I'm asking the witness what his
3   understanding was at the time as the recipient of this e-mail.
4           Again, this is a document that plaintiffs have shown to the
5   jury over and over again and have characterized that this means
6   Mr. Satriano was the recipient of this e-mail, and Mr. Griffin's
7   boss at the time, and the jury is obviously entitled to know
8   what Mr. Satriano understood this to mean at the time.
9                THE COURT:  I understand.  Just rephrase your question
10  that way.
11               MR. HOFFMAN:  I will, Your Honor, as to what
12  Mr. Satriano understood this to mean at the time.
13               THE COURT:  That's fine.
14               MR. HOFFMAN:  Thank you, Your Honor.
15          (End of bench conference.)
16               THE COURT:  The jury is on its way.
17          (Jury entered courtroom.)
18               THE COURT:  You may be seated.
19          Counsel, you may proceed.
20               MR. HOFFMAN:  Thank you, Your Honor.
21               BY MR. HOFFMAN:
22  Q.   If I could ask Mr. Salazar to display Plaintiff's Exhibit
23  259, which again is in evidence, and this is the document we
24  were looking at before we took a break.
25          Okay.  So just to reorient us, Mr. Satriano, you recall I

1    was asking you some questions about this e-mail exchange.  And
2    this was a back and forth between you and Mr. Griffin; right?
3    A.    Yes.
4    Q.    And Mr. Griffin worked for you at the time or worked under
5    you?
6    A.    Yes.
7    Q.    And this e-mail back and forth happened on August 14th,
8    2012, and that was three days before the Third Amendment was
9    signed?
10   A.    Yes.
11   Q.    So in this top-most e-mail, I already asked you some
12   questions about the first few sentences.  Before we took the
13   break, I asked you to focus on the sentence that we have
14   highlighted here where Mr. Griffin says, "I do not think that
15   makes sense, given the amendments are designed to demonstrate
16   wind-down."
17         What did you understand this to mean at the time?
18   A.    At the time I understood this to mean -- well, he thought
19   there were two things that weren't consistent.  And one of the
20   features of the Third Amendment that will be disclosed shortly,
21   right, so Jim knew, a lot of other people, Fannie Mae did not
22   know yet, was that one of the components of it was to accelerate
23   the wind-down of their asset portfolio, alternatively known as
24   retained portfolio or mortgage portfolio.
25         Indirectly, if you have a smaller portfolio, smaller

```
 1    earnings, most likely lower profitability.  That is what I
 2    understood him to be meaning when he said it doesn't make sense.
 3    Q.   So the Third Amendment had a net worth sweep component, and
 4    it also had this component that talked about an accelerated
 5    reduction in the retained portfolio; is that correct?
 6    A.   Yes.
 7    Q.   And so what you were just testifying about a moment ago was
 8    the accelerated reduction part of the Third Amendment?
 9    A.   Yes.
10    Q.   And the wind-down of those assets?
11    A.   Right.
12    Q.   And you didn't understand this sentence to mean at the time
13    shutting the companies altogether; right?
14    A.   Not at all.  The purpose of the Third Amendment was to put
15    them into preserve and conserve assets and put them in a safe
16    and sound position to meet their mission.
17    Q.   And to preserve and conserve the Treasury commitment?
18    A.   Yes.
19    Q.   Now, you can take that down, Mr. Salazar.
20         Now, the Third Amendment was signed a few days later on
21    August 17th, 2012; right?
22    A.   Yes.
23    Q.   And in the weeks that followed, did you discuss anything
24    about Fannie Mae's deferred tax assets with Susan McFarland?
25    A.   Yes, I did.
```