# EXHIBIT L

Page 1

```
 1          IN THE UNITED STATES COURT OF FEDERAL CLAIMS

 2     - - - - - - - - - - - - - - - X

 3     FAIRHOLME FUNDS, INC., et al., :

 4          Plaintiffs,                :

 5               v.                    :   Case No. 13-465C

 6     THE UNITED STATES,              :

 7          Defendant.                 :

 8     - - - - - - - - - - - - - - - X

 9                          Washington, D.C.

10                          Wednesday, July 1, 2015

11        CONFIDENTIAL - PROTECTED INFORMATION TO BE

12     DISCLOSED ONLY IN ACCORDANCE WITH PROTECTIVE ORDER

13               Deposition of TIMOTHY J. BOWLER, a witness

14     herein, called for examination by counsel for

15     Plaintiffs in the above-entitled matter, pursuant to

16     notice, the witness being duly sworn by MARY GRACE

17     CASTLEBERRY, a Notary Public in and for the District

18     of Columbia, taken at the offices of Cooper & Kirk,

19     1523 New Hampshire Avenue, N.W., Washington, D.C., at

20     9:30 a.m., Wednesday, July 1, 2015, and the

21     proceedings being taken by Stenotype by MARY GRACE

22     CASTLEBERRY, RPR, and transcribed under her direction.
```

Timothy J. Bowler                 CONFIDENTIAL - PROTECTED INFORMATION                    July 1, 2015
                        To Be Disclosed Only in Accordance with Protective Order          Washington, D.C.

Page 2

```
 1    APPEARANCES:

 2

 3        On behalf of the Plaintiffs:

 4             PETE PATTERSON, ESQ.

 5             DAVID H. THOMPSON, ESQ.

 6             HOWARD SLUGH, ESQ.

 7             CHARLES J. COOPER, ESQ.

 8             VINCENT J. COLATRIANO, ESQ.

 9             Cooper & Kirk

10             1523 New Hampshire Avenue, NW

11             Washington, D.C.  20036

12             (202) 220-9600

13

14        On behalf of the U.S. DOJ:

15             GREGG M. SCHWIND, ESQ.

16             RETA BEZAK, ESQ.

17             ELIZABETH M. HOSFORD, ESQ.

18             KENNETH M. DINTZER, ESQ.

19             U.S. Department of Justice

20             1100 L Street, NW

21             Washington, D.C.  20530

22             (202) 353-2345
```

Page 3

```
 1   APPEARANCES: (Continued)

 2

 3        On behalf of the Treasury:

 4              KATHLEEN M. COCHRANE, ESQ.

 5              BRENDAN J. CRIMMINS, ESQ.

 6              KATHERINE BRANDES, ESQ. (Telephonically)

 7              U.S. Department of the Treasury

 8              1500 Pennsylvania Avenue, NW

 9              Washington, D.C.  20220

10              (202) 622-0351

11

12        On behalf of the FHFA:

13              MICHAEL SITCOV, ESQ. (Telephonically)

14              U.S. Department of Justice

15              Civil Division, Federal Programs Branch

16              20 Massachusetts Ave, NW, Room 7108

17              Washington, D.C.  20530

18              (202) 514-4960

19

20

21

22
```

Page 27

1      Q.      And what did they tell you about the job

2   you were doing?

3      A.      That was going to run -- the job they

4   wanted me to take was replacing a gentleman named

5   Matthew Kabaker who ran the office of capital markets

6   at the Treasury Department so the job I would take

7   would be running the office of capital markets as the

8   deputy assistant secretary and would do markets

9   policy-based work.

10     Q.      And was it anticipated that your work

11  would deal with Fannie and Freddie at that point?

12     A.      Yes.  The work was going to involve just

13  the housing finance markets so that was going to be

14  one of the key areas.  However, it was a broad -- I

15  mean, it was a really, really broad job so it covered

16  like implementation of Dodd-Frank work, it covered

17  just working on -- thinking through like strategies

18  for Europe because when I joined in 2011, August of

19  2011, the financial markets got up into a big tizzy

20  again because you had problems with Greece and it was

21  unclear whether Greece was going to default again.

22  And then unfortunately the country was downgraded by

CONFIDENTIAL - PROTECTED INFORMATION
To Be Disclosed Only in Accordance with Protective Order

1       Q.     And did those officials work with

2   officials from any other agencies?

3       A.     Can you be more specific?  Office of

4   Capital Markets officials worked --

5       Q.     Any other agencies outside the Department

6   of Treasury in coming up with options for changing

7   the dividend structure?

8       A.     I don't know.  I don't know.

9       Q.     Did you work with anyone from other

10  agencies?

11      A.     So I just want to be clear.  We negotiated

12  with FHFA the changes to the preferred stock purchase

13  agreements that were made in August of 2012.  That

14  was the only party that we negotiated with in regard

15  to modifying those agreements.  They were the only

16  party at the table.

17      Q.     But before the negotiation phase, was FHFA

18  involved at all in Treasury's effort to come up with

19  options for addressing the dividend structure?

20      A.     I can't remember.

21              (Bowler Exhibit No. 5 was

22              marked for identification.)

Page 152

```
 1    PSPA covenant something different?

 2         A.    I guess I would want to see the underlying

 3    document so I can't respond to that.  But in general,

 4    covenants were section 5.

 5         Q.    And who were Brian Deese and Jim Parrott?

 6         A.    Who were they?

 7         Q.    Yes.

 8         A.    I mean, they still are alive.

 9         Q.    Who are they?

10         A.    Sorry.

11         Q.    At this time, what was their role?

12         A.    Brian Deese worked at the National

13    Economic Council and Jim Parrott worked at the

14    National Economic Council, and both of them were

15    involved in housing policy for the Administration.

16         Q.    And to what extent were they involved in

17    the process of amending the PSPAs?

18         A.    As Treasury staff negotiated with FHFA

19    staff, the Treasury staff, we, broadly working on

20    this, would propose the National Economic Council as

21    to developments and the two people that we proposed

22    would be Brian Deese and Jim Parrott.
```

Page 153

1      Q.    And was the net worth sweep proposal shown

2    to Brian Deese and Jim Parrott?

3      A.    I don't know.

4      Q.    Do you know whether they had any input

5    into the net worth sweep proposal?

6      A.    Into the switching --

7      Q.    Into the switching from a fixed dividend

8    to a variable dividend?

9      A.    I don't remember having a specific

10   conversation with Brian Deese about that.  I remember

11   Jim Parrott saying that he was comfortable with

12   moving to a variable dividend relative to the fixed

13   10 percent dividend.

14     Q.    And was --

15           MR. SCHWIND:  May I have one minute here?

16           MR. PATTERSON:  Yes.

17           (Witness confers with counsel.)

18           THE WITNESS:  Sorry.

19   BY MR. PATTERSON:

20     Q.    Was Gene Sperling at all involved in the

21   process of amending the dividend structure of the

22   PSPAs?

Page 234

1    December 31st, 2012.

2        Q.    And you'll recall a document we looked at

3    earlier which said that the amendment could happen in

4    late May or some time in the May 2012 time frame.  Do

5    you recall that?

6        A.    That's correct.

7        Q.    What happened that caused it not to be

8    implemented at that time but rather in August?

9        A.    Why?  It was just the negotiations with

10   FHFA around the third amendment took longer than I

11   expected.

12       Q.    Was there anything in particular that was

13   holding things up?

14       A.    We had to figure out how the formula for

15   the dividend was going to work, we had to figure out

16   covenants associated with the improvements of the

17   covenant package that was in the document that would

18   lead to, you know, in our hope, better risk

19   management at the GSEs and a reduction in potential

20   future losses of the GSEs.  And that just took far

21   longer than I expected, and for that matter, I think

22   Treasury staff expected, that was working on the

Page 236

 1              Was Treasury responsible for initially

 2   drafting the documents?

 3       A.     May I talk to my lawyer for just a second?

 4              (Witness confers with counsel.)

 5              THE WITNESS:  Yes.

 6   BY MR. PATTERSON:

 7       Q.     And who at Treasury was responsible for

 8   that?

 9       A.     May I talk to my counsel again?

10       Q.     Okay.

11              MR. SCHWIND:  You can answer.

12              THE WITNESS:  Can I --

13              (Witness confers with counsel.)

14              THE WITNESS:  The general counsel's

15   office.

16   BY MR. PATTERSON:

17       Q.     And after the general counsel's office

18   drafted the documents, did any nonlawyers outside of

19   Treasury review that draft?

20       A.     Nonlawyers out --

21       Q.     Nonlawyers within Treasury, I'm sorry.

22       A.     I'm sorry, I'm confused.  Can you tell me

Page 237

 1   exactly what that means?

 2        Q.    Who at Treasury reviewed it after the

 3   general counsel's office drafted the documents?

 4        A.    Oh, the policy team working on the third

 5   amendment.

 6        Q.    And who was that?

 7        A.    I can't recall everybody but it was me,

 8   most likely Jeff Foster and most likely Michael

 9   Stegman.

10        Q.    And when was the draft shared with FHFA?

11        A.    And I believe Mary Miller saw the

12   documents as well.

13        Q.    And when was the draft shared with FHFA?

14        A.    I can't remember what day but at some

15   point in time in early August.

16             MR. SCHWIND:  Objection, vague.  Do you

17   mean, yes, at this time frame in August or --

18             MR. PATTERSON:  Yes, at this time frame in

19   August.

20             MR. SCHWIND:  Okay.

21             MR. PATTERSON:  Where he says "I've not

22   seen the proposed documents yet."

Page 240

```
 1   National Economic Council, is that correct?

 2        A.    Uh-huh.

 3        Q.    And how about Dana Hyde?

 4        A.    I believe she was an employee at the time

 5   at the Office of Management and Budget.

 6        Q.    And did you brief them on the PSPA

 7   changes?

 8        A.    I recall going over there that afternoon

 9   and walking them through the discussions we were

10   having with FHFA around changes to the preferred

11   stock purchase agreement.

12        Q.    And did they have any response to those

13   changes?

14             MR. SCHWIND:  May I have a second to

15   confer with my client about the potential application

16   of privilege?

17             MR. PATTERSON:  Sure.

18             (Witness confers with counsel.)

19             MR. SCHWIND:  Reask the question, please.

20   BY MR. PATTERSON:

21        Q.    Yes.  Did they have any response to the

22   proposed changes to the PSPAs?
```

Page 247

1        A.     Yes.

2        Q.     Did you send any of those Q&As over to the

3   White House?

4        A.     I don't know if I did or didn't.

5        Q.     Did you discuss the third amendment with

6   anyone at the White House?

7        A.     May I talk to my counsel again real quick?

8        Q.     Yes.

9               (Witness confers with counsel.)

10              THE WITNESS:  So I told Jim Parrott at the

11  National Economic Council that we were continuing to

12  plan to move forward with executing the third

13  amendment that week assuming that there were no

14  surprises or anything came up, and that we were

15  preparing Q&As in case we were asked questions

16  around -- by outside stakeholders as to what is the

17  third amendment.

18  BY MR. PATTERSON:

19       Q.     And was there anyone else at the White

20  House that you communicated with about the third

21  amendment during this time frame?

22       A.     Not that I can recall or not that I can

Page 248

1    remember.  My primary point of contact was Jim

2    Parrott, National Economic Council.

3                    (Bowler Exhibit No. 32 was

4                    marked for identification.)

5    BY MR. PATTERSON:

6        Q.    You've been handed an exhibit marked

7    Bowler 32.  It says in the bottom right-hand corner

8    UST00005739.  It's an email from the

9    ExecSecProcessUnit to some folks including yourself;

10   you're cc'd on this.  Subject is "Notice of TFG

11   signed action" and it says third amendments to the

12   senior preferred stock purchase agreements with

13   Fannie Mae and Freddie Mac approved.

14                  So if you turn the page, you'll see this

15   is the action memorandum of Secretary Geithner in

16   which he approved the third amendment, is that

17   correct?

18       A.    I believe that to be the case but let

19   me --

20       Q.    Sure.

21       A.    Yes, I believe this to be the action memo

22   the Secretary approved to execute the third

Page 259

1      Q.    It says the primary objective is, "To meet

2   with the CEOs of Fannie Mae and Freddie Mac, as well

3   as FHFA Acting Director Ed DeMarco, to introduce and

4   review the changes to the senior preferred stock

5   purchase agreements (PSPAs) that Treasury and FHFA

6   intend to execute on Friday."

7            Who from the government spoke at this

8   meeting?

9      A.    Secretary Geithner very briefly and then I

10  walked through the term sheet and Mary Miller made

11  some comments.

12     Q.    And did anyone from FHFA address Fannie

13  and Freddie in this meeting?

14     A.    I don't remember if Acting Director

15  DeMarco addressed Fannie or Freddie.  He was in the

16  meeting.

17     Q.    And how did Fannie and Freddie respond to

18  being told about the third amendment?

19     A.    I remember two things clearly.  One, Don

20  Layton saying I'm going to walk through the

21  adjustment from the fixed dividend to the variable

22  dividend.  He said that solved the dividend issue.

Page 308

```
 1                    CERTIFICATE OF REPORTER

 2   UNITED STATES OF AMERICA ) ss.:

 3   DISTRICT OF COLUMBIA      )

 4        I, MARY GRACE CASTLEBERRY, RPR, the officer

 5   before whom the foregoing deposition was taken, do

 6   hereby certify that the witness whose testimony

 7   appears in the foregoing deposition was duly sworn by

 8   me; that the testimony of said witness was taken by

 9   me to the best of my ability and thereafter reduced

10   to typewriting under my direction; that I am neither

11   counsel for, related to, nor employed by any of the

12   parties for the action in which this deposition was

13   taken, and further that I am not a relative or

14   employee of any attorney or counsel employed by the

15   parties thereto, nor financially or otherwise

16   interested in the outcome of the action.

17

18                    -----------------------------

19                              Notary Public in and for

20                              The District of Columbia

21

22   My commission expires: 07/14/2016
```