**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BERKLEY INSURANCE CO., *et al*., | |
| Plaintiffs, | |
| v. | Case No. 1:13-cv-1053 (RCL) |
| FEDERAL HOUSING FINANCE AGENCY, *et al.*, | |
| Defendants. | |
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations | |
| _____ | Case No. 1:13-mc-1288 (RCL) |
| This document relates to: ALL CASES | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION**
**IN LIMINE FOR ADMISSION OF PX 550, PX 226, PX 562, PX 274, AND PX 279**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

LEGAL STANDARD.............................................................................................................. 2

I.      The Court Correctly Sustained Defendants' Objections to PX 226, PX 274, and
        PX 279 at the First Trial and Should Exclude Them at the Second Trial........................... 3

        A.      PX 226, PX 274, and PX 279 Are or Contain Inadmissible Hearsay .................... 4

                1.      Plaintiffs Are Offering These Documents for Their Truth ............................ 4

                2.      These Documents Are Not Admissible Under Rule 803(3) ......................... 6

                3.      These Documents Are Not Admissible As Public Records........................... 9

        B.      PX 226, PX 274, and PX 279 Are Irrelevant or at Least Overly Confusing,
                Misleading, and Unduly Prejudicial to Defendants .............................................. 11

II.     PX 550 and PX 562 Should Be Excluded for Substantially the Same Reasons .............. 13

        A.      PX 550 and PX 562 Are or Contain Inadmissible Hearsay ................................. 14

        B.      PX 550 and PX 562 Should Be Excluded Under Rule 403 Because They
                Are Overly Confusing, Misleading, and Unduly Prejudicial to Defendants ........ 16

CONCLUSION.................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. F.B.I.*,
  198 F.R.D. 306 (D.D.C. 2000)..........................................................................................15, 16

*Amco Ukrservice v. Am. Meter Co.*,
  CIVIL ACTION No. 00-2638, 2005 WL 8176384 (E.D. Pa. July 11, 2005).........................16

*Brown v. ASD Computing Ctr.*,
  519 F. Supp. 1096 (S.D. Ohio 1981) ......................................................................................10

*Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*,
  Nos. 1:13-cv-1053, 13-mc-1288, 2022 WL 13937460 (D.D.C. Oct. 21, 2022)............1, 10, 12

*Hackley v. Roudebush*,
  520 F.2d 108 (D.C. Cir. 1975) ................................................................................................11

*Idaho v. Wright*,
  497 U.S. 805 (1990).................................................................................................................15

*LaShawn A. v. Barry*,
  87 F.3d 1389 (D.C. Cir. 1996) ..................................................................................................3

*New York v. Microsoft Corp.*,
  No. CIV A. 98-1233(CKK), 2002 WL 649951 (D.D.C. Apr. 12, 2002)...................................8

*Nolan v. Memphis City Schs.*,
  No. 04-3047, 2007 WL 9719022 (W.D. Tenn. May 23, 2007) .................................................8

*Shepard v. United States*,
  290 U.S. 96 (1933)....................................................................................................................6

*\*Smith v. Isuzu Motors Ltd.*,
  137 F.3d 859 (5th Cir. 1998) ..................................................................................................10

*United States v. Akers*,
  702 F.2d 1145 (D.C. Cir. 1983) ................................................................................................3

*United States v. Cohen*,
  631 F.2d 1223 (5th Cir. 1980) ..................................................................................................7

*United States v. Emmert*,
  829 F.2d 805 (9th Cir. 1987) ....................................................................................................7

*United States v. Hsia,*
    87 F. Supp. 2d 10 (D.D.C. 2000) ..........................................................................15

*\*United States v. Mackey,*
    117 F.3d 24 (1st Cir. 1997) ..................................................................................10

*United States v. Mahar,*
    801 F.2d 1477 (6th Cir. 1986) ...............................................................................5

*United States v. Sanders,*
    485 F.3d 654 (D.C. Cir. 2007) ...............................................................................3

*United States v. Slatten,*
    395 F. Supp. 3d 45 (D.D.C. 2019) .......................................................................6, 9

*United States v. Soriano,*
    No. 1:20-cr-00007, 2021 WL 2744644 (D. N. Mar. I. July 2, 2021) .................9, 15

*Wye Oak Tech., Inc. v. Republic of Iraq,*
    24 F.4th 686 (D.C. Cir. 2022) ................................................................................2

**Rules**

Fed. R. Evid. 402 ............................................................................................................12

Fed. R. Evid. 403 ...................................................................................................... *passim*

Fed. R. Evid. 803(3) .................................................................................................. *passim*

Fed. R. Evid. 803(8)(A)(i) ..........................................................................................9, 10

Fed. R. Evid. 805 .........................................................................................................8, 10

Fed. R. Evid. 807(a) ........................................................................................................16

**Other Authorities**

5 Weinstein's Fed. Evid. § 806.03[3] (2023)...................................................................16

30B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §
    6883 (2023 ed.) ...................................................................................................10

## INTRODUCTION

Over the past year, Plaintiffs have repeatedly attempted to admit an assortment of documents produced by the Treasury Department consisting of inadmissible hearsay—often in multiple layers—by Treasury employees, White House employees, and private citizens.  In their quest, Plaintiffs have made sweeping arguments that these Treasury documents satisfy numerous hearsay exceptions and exemptions, including the co-conspirator exception and an all-encompassing interpretation of the public records exception.  With the exception of a few documents that the Court admitted at the first trial as public records (over Defendants' objections), the Court has refused to admit these Treasury documents.  *See, e.g.*, *Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency* ("*MIL Ruling*"), Nos. 1:13-cv-1053, 13-mc-1288, 2022 WL 13937460, at *3-4 (D.D.C. Oct. 21, 2022); Trial Tr. 1574:20-1575:24 (PX 226), 1805:16-1807:6 (PX 270), 1807:8-1810:14 (PX 271), 1810:25-1815:19 (PX 274 and PX 279).[1]

Undeterred, Plaintiffs now ask the Court to admit five Treasury documents,[2] including three that the Court has already ruled are inadmissible.  But the law precludes Plaintiffs' effort to shift the focus of the upcoming retrial to out-of-court statements by third-party declarants who will not be subject to cross-examination or any general assessment of demeanor.  Plaintiffs' motion should be denied in full.

<u>First</u>, the Court correctly refused to admit PX 226, PX 274, and PX 279 into evidence at the first trial, and nothing has changed that warrants a different outcome now.  These documents

---

[1]     The trial transcripts from the first trial are docketed at ECF Nos. 263-289 on the *Berkley* docket, No. 1:13-cv-1053-RCL; the transcripts are not docketed on the Class docket.  In this brief, Defendants cite to the page–line numbers in the transcripts themselves.

[2]     The five documents subject to Plaintiffs' motion are docketed at ECF Nos. 294-1 to -5 on the Class docket, No. 1:13-1288-RCL, and ECF Nos. 308-1 to -5 on the *Berkley* docket, No. 1:13-cv-1053-RCL.  In this brief, Defendants cite the documents by their PX number on the exhibit list that Plaintiffs served on April 28, 2023.

include (1) a mid-level Treasury official's short remark in an internal email to his colleagues, (2) an email chain regarding a Wall Street Journal writer's quote of a DC thinktank fellow's out-of-court comment to a Bloomberg reporter about what the thinktank fellow interpreted Treasury to be doing with the Third Amendment, and (3) a White House employee's out-of-court statement reacting to the thinktank employee's purported comment.  As Defendants explained in their prior objections, these documents are or contain inadmissible hearsay, and they are irrelevant or at a minimum overly confusing, misleading, and prejudicial to Defendants.

<u>Second</u>, PX 550 and PX 562, which Plaintiffs have not sought to admit previously, should be excluded for largely the same reasons.  On their face, these documents, which involve Treasury's public messaging plans in advance of announcing the Third Amendment, are or contain inadmissible hearsay, and they are overly confusing, misleading, and prejudicial to Defendants.

## LEGAL STANDARD

As this Court recently explained, "the law of the case doctrine . . . 'refers to a family of rules embodying the general concept that a court involved in later phases of a lawsuit should not re-open questions decided . . . by that court or a higher one in earlier phases.'"  Mem. Op. at 6 (June 2, 2023) (Class ECF No. 298, Berkley ECF No. 310) (quoting *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 697 (D.C. Cir. 2022)).  The doctrine "ensures that the same issue presented a second time in the same case in the same court should lead to the same result."  *Wye Oak*, 24 F.4th at 697 (quotation marks and citation omitted).  This Court recently applied the law of the case doctrine in denying the Berkley Plaintiffs' motion seeking reliance damages, noting that the Berkley Plaintiffs made "no effort to explain why the Court should depart from that doctrine here, except to rehash the same arguments they made before."  Mem. Op. at 11 (June 2,

2023) (Class ECF No. 298, Berkley ECF No. 310).

To be sure, the D.C. Circuit has held that a district court is not *required* to admit the same evidence in a subsequent trial that it admitted in the first trial. *United States v. Akers*, 702 F.2d 1145, 1148 (D.C. Cir. 1983) ("[T]he fact that the photographs were admitted in first trial *does not compel* their admission in the new trial." (emphasis added)). But the D.C. Circuit has also held that a court should revisit its prior evidentiary rulings only when "different factual and evidentiary circumstances occasion[] a new exercise of the district court's discretion." *United States v. Sanders*, 485 F.3d 654, 657 (D.C. Cir. 2007). Where the issue has "not change[d] between trials," a court "is constrained by the principle that 'the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*.'" *Id.* (quoting *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc)).

## ARGUMENT

### I.    The Court Correctly Sustained Defendants' Objections to PX 226, PX 274, and PX 279 at the First Trial and Should Exclude Them at the Second Trial

At the first trial, this Court sustained Defendants' objections to three of the five documents at issue here—PX 226, PX 274, and PX 279. In urging the Court to admit these documents at the upcoming retrial, Plaintiffs are presenting the same issue in the same case in the same court, without any changed circumstance since the Court's exclusion of these documents at the first trial. As the Court noted previously, "[s]ome parties just won't take no for an answer." Mem. Op. at 1 (June 2, 2023) (Class ECF No. 298, Berkley ECF No. 310). The law of the case doctrine thus favors reaching the same result here—Plaintiffs' motion should be denied, and the Treasury documents at issue should be excluded. Under any standard, the Court should exclude these documents at the second trial because each document either is or contains

inadmissible hearsay, and is either irrelevant or should be excluded under Federal Rule of Evidence 403.

### A.    PX 226, PX 274, and PX 279 Are or Contain Inadmissible Hearsay

#### 1.    Plaintiffs Are Offering These Documents for Their Truth

As an initial matter, Plaintiffs assert that they "are not seeking to admit [the Treasury documents at issue] for the truth of any matter asserted." Mot. 26. But Plaintiffs made the same argument in seeking to admit these three documents at the first trial,[3] and it remains readily apparent now as then that Plaintiffs are, in fact, offering these documents for their truth.

For context, PX 274 and PX 279 center on an August 17, 2012 email from a White House official to Treasury officials, forwarding a Wall Street Journal reporter's quote of what a fellow at the American Enterprise Institute ("AEI") thinktank told a Bloomberg News reporter about what "the Treasury Department seems to be doing here" with the Third Amendment, and the White House official's subsequent email to the AEI fellow, praising the statement he gave to Bloomberg. PX 226 features a mid-level Treasury official's short remark in an email responding to a message from another Treasury official discussing the Enterprises' financial reports.

While Plaintiffs now claim they seek the admission of PX 226, PX 274, and PX 279 solely to "demonstrate that the statements were made by Treasury and White House officials in discussions regarding the Net Worth Sweep," Mot. 26-27, Plaintiffs' own descriptions of these documents in their motion reinforce that Plaintiffs are seeking to use them for their truth. Plaintiffs contend that these documents "*show*[] *this shared goal* of winding down the GSEs was a principal reason for the Net Worth Sweep." *Id.* at 8 (emphasis added); *see also id.* at 5

---

[3]    Pls.' Mot. to Admit PX-0226 at 3 (Class ECF No. 235, Berkley ECF No. 231); Trial Tr. 1815:9-13.

(asserting that PX 274 and PX 279 "*show* that Treasury and the White House *were motivated* by the desire to ensure that the GSEs would not be permitted to build capital" (emphases added)). The out-of-court statements in these documents could only "show" Treasury's and/or the White House's "goal" or "motive" for entering into the Third Amendment if those out-of-court statements were considered for their truth.  Indeed, the only way these statements by Treasury and White House officials could even arguably be relevant is if they are being offered for their truth.

The fact that Plaintiffs previously sought to admit these exact documents for their truth only reinforces that Plaintiffs intend for the jury to consider them for that purpose.  In a pretrial motion seeking to admit 22 Treasury documents before the first trial, Plaintiffs argued that PX 226, PX 274, and PX 279 (labeled in the motion as Exs. A-16, A-21, and A-22) were admissible pursuant to the coconspirator exception under Rule 801(d)(2)(E) and the public records exception under Rule 803(8) so that the jury could accept the out-of-court statements for their truth.  *See* Corrected Ex. A of Pls.' Mot. in Lim. to Admit Evid. Pursuant to F.R.E. 801 and 803, at 1 (Class ECF No. 170-1).  In *United States v. Mahar*, 801 F.2d 1477 (6th Cir. 1986), the Sixth Circuit rejected a litigant's argument that a document containing out-of-court statements was "not offered to prove the truth of the matters asserted," in part because that litigant had previously sought to offer the document for its truth under the coconspirator exception.  *Id.* at 1491-92.  The Sixth Circuit explained that the litigant's subsequent assertion of a purported non-hearsay purpose for the document was "an after-the-fact justification for the admission of the [exhibit]."  *Id.* at 1492 (footnote omitted).  The same logic applies here: Plaintiffs' prior attempt to admit PX 226, PX 274, and PX 279 for their truth undermines their current assertion of a supposed non-hearsay purpose.

Because it is clear that Plaintiffs are offering these documents for their truth (indeed, they need to in order for the documents to be even arguably relevant), the documents are inadmissible unless they satisfy a hearsay exception or exemption, which they do not.

### 2. These Documents Are Not Admissible Under Rule 803(3)

Plaintiffs assert that the out-of-court statements in PX 226, PX 274, and PX 279 "are admissible under Fed. R. Evid. 803(3) to show the Executive Branch declarants' 'then-existing state of mind (such as motive, intent, or plan)' regarding the Net Worth Sweep." Mot. 27 (citation omitted).[4] Plaintiffs previously presented this argument to the Court during the first trial,[5] and it is still incorrect.

By its terms, Rule 803(3) does not apply to "a statement of memory or belief to prove the fact remembered or believed." Fed. R. Evid. 803(3). If statements of memory were admissible under Rule 803(3) to prove the facts remembered, parties could offer hearsay to establish almost any past fact, which would mark "the virtual destruction of the hearsay rule." Fed. R. Evid. 803(3) advisory committee's note (citing *Shepard v. United States*, 290 U.S. 96 (1933)). Additionally, Rule 803(3) "does not permit the declarant to relate what caused the state of mind." *United States v. Slatten*, 395 F. Supp. 3d 45, 87 (D.D.C. 2019) (Lamberth, J.). "If the reservation in the text of the rule is to have any effect, it must be understood to narrowly limit those admissible statements to declarations of condition—'I'm scared'—and not belief—'I'm scared

---

[4]     Rule 803(3), titled "Then-Existing Mental, Emotional, or Physical Condition," states that the following is not excluded by the rule against hearsay: "A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will."

[5]     *See* Pls.' Mot. to Admit PX-0226 at 5-6 (Class ECF No. 235, Berkley ECF No. 231); Trial Tr. 1812:14-16.

because [someone] threatened me.'"  *United States v. Emmert*, 829 F.2d 805, 810 (9th Cir. 1987)

(emphasis removed) (quoting *United States v. Cohen*, 631 F.2d 1223, 1225 (5th Cir. 1980)).

Applying these settled principles, none of the three documents at issue satisfies the state-of-mind exception.  The documents are full of out-of-court statements by third-party declarants, including statements of memory or belief, that do not meet Rule 803(3)'s parameters.  For example, the documents contain the following out-of-court statements made by Treasury officials, a White House employee, journalists, and a thinktank fellow:

- "My understanding is much of this is from reserve releases based on lower severity realizations on foreclosed properties.  Importantly, I believe that Fannie used experiences from the last 3 months, whereas Freddie used for the last 6 months (there chief accountant mentioned this in passing after a npl meeting). I think this is what may have driven a higher NI number for Fannie, though it's book is bigger anyways as well and has more . . . ."  PX 226 at 1.

- "But based on the discussions I had this morning with other experts in the field, the consensus is that this essentially removes any pressure points to do something eventually with them and puts it well after 16."  PX 274 at 3.

- "[Y]our preference would be to continue to have them pay a dividend that in any given month either requires them to eat into their headroom under the caps (after next year), scaring the hell out of the market, or pays less than their profits in that quarter, allowing them to recapitalize?"  PX 274 at 3.

- "'The most significant issue here is whether Fannie and Freddie will come back to life because their profits will enable them to re-capitalize themselves and then it will look as though it is feasible for them to return as private companies backed by the government.'"  PX 274 at 1.

- "'What the Treasury Department seems to be doing here, and I think it's a really good idea, is to deprive them of all their capital so that doesn't happen.'"  PX 274 at 1.

- "I saw the Treasury press release, and responded to a call from Bloomberg, but did not have an opportunity to discuss my views with friends on the Hill."  PX 279 at 2.

- "Incidentally, Jim, as the portfolios are wound down on an accelerated basis, are profits from that also paid to the Treasury as dividends?"  PX 279 at 1.

As shown above, Plaintiffs purport to apply the state-of-mind exception to, among other things, recaps of prior discussions, questions, and speculation about third parties.  None of these out-of-court statements meet Rule 803(3)'s requirement that the statement capture "the declarant's then-existing state of mind" such as motive, intent, or plan.

Plaintiffs' admissibility theory stretches this hearsay exception beyond recognition.  For example, without individually addressing each hearsay statement in PX 274 and PX 279, Plaintiffs broadly assert that those documents "evidence Parrott's state of mind."  Mot. 28.  But a hearsay exception must be applied on a statement-by-statement basis, not wholesale.  *See* Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."); *Nolan v. Memphis City Schs.*, No. 04-3047, 2007 WL 9719022, at *1 (W.D. Tenn. May 23, 2007) (holding that "there must be an applicable hearsay exception or exemption for each hearsay problem" when "several parts of the document qualify as 'hearsay within hearsay'").

Plaintiffs also err in contending that Rule 803(3) applies to Mr. Bowler's statement that it "[r]eally makes sense to push the net worth sweep this quarter."  Mot. 27-28 (quoting PX 226).  The "then-existing . . . condition" exception permits the use of a "statement of the declarant's then-existing state of mind," but it does not allow including "a statement of memory or belief to prove the fact remembered or believed."  Fed. R. Evid. 803(3).[6]  As discussed above, Plaintiffs'

---

[6]     *See New York v. Microsoft Corp.*, No. CIV A. 98-1233(CKK), 2002 WL 649951, at *3 (D.D.C. Apr. 12, 2002) ("[A]s the entire purpose of Mr. Richards' line of testimony is to establish certain actions and intentions by Defendant Microsoft, it is clear that the ultimate purpose for which Pinnacle Systems' belief is being offered, is to establish the truth of that belief.  As a result, Rule 803(3) does not render the statement admissible."); Fed. R. Evid. 803(3) advisory committee's note ("The exclusion of 'statements of memory or belief to prove the fact remembered or believed' is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind.").

motion and their previous attempts to admit PX 226 show that Plaintiffs are seeking to admit Mr.

Bowler's statement of his belief that it "[r]eally makes sense to push the net worth sweep this

quarter" to prove that the declarant believed his statement that the push made sense for the

Treasury Department.  But that is not permissible under Rule 803(3).

Finally, even if Rule 803(3) applied to some of the statements in some of the documents

(and it does not), the Court nonetheless should exclude them for two reasons.  First, even if a

third-party declarant's statement in one of the documents satisfied Rule 803(3), and none of them

do, that would have no bearing whatsoever on whether other hearsay statements in the same

document met the parameters of hearsay exceptions or exemptions.  And a proponent seeking the

admission of hearsay "must separate out the individual hearsay statements and identify a Rule

801(d) exception or a Rule 803, 804, or 807 exemption that applies to each [hearsay] statement."

*United States v. Soriano*, No. 1:20-cr-00007, 2021 WL 2744644, at *3 (D. N. Mar. I. July 2,

2021).  Second, many of the documents also purport to "relate what caused the state of mind,"

which Rule 803(3) "does not permit.  *Slatten*, 395 F. Supp. 3d at 87 (Lamberth, J.); *see, e.g.*, PX

226 (featuring third-party statements from then-Treasury official Jeff Foster as the supposed

trigger of Mr. Bowler's purported "state of mind").

### 3.    These Documents Are Not Admissible As Public Records

Plaintiffs assert in a single sentence that PX 226, PX 274, and PX 279 are admissible

"under FRE 803(8)[(A)(i)] as a public record setting forth Treasury's activities."  Mot. 28.[7]  The

Court did not admit these documents on this basis before and should decline to do so now.

As the Court has explained, Plaintiffs have sought to introduce various "records of

---

[7]      Rule 803(8)(A)(i) states that the following is not excluded by the rule against hearsay: "A
record or statement of a public office if: (A) it sets out: (i) the office's activities . . . ."

9

internal Treasury deliberations about whether, when, and how to pursue the Net Worth Sweep." *MIL Ruling* at \*4.  And as the Court noted, "at least one other Circuit has held that 'preliminary or interim evaluative opinions of agency staff members' do not fall under [the 803(8)(A)(i)] branch of the public records exception, which typically is invoked to admit retrospective records of agency operations."  *Id.* (quoting *Smith v. Isuzu Motors Ltd.*, 137 F.3d 859, 861 (5th Cir. 1998)).  The Fifth Circuit's decision holding that Rule 803(8)(A)(i)'s public records exception does not cover preliminary or interim evaluative opinions is correct, because the application of this exception to these types of statements would "render section (A)(ii) and A(iii) of the rule superfluous."  30B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6883 (2023 ed.); *see also Brown v. ASD Computing Ctr.*, 519 F. Supp. 1096, 1105 n.2 (S.D. Ohio 1981) (noting that the "office activities" subsection of Rule 803(8)(A) should "not serve as a general 'catch-all' exemption for all government records not covered under [the other two subsections]").  In other words, an expansive interpretation of 803(8)(A)(i) that applies to every email from every government employee would render the carefully crafted limitations of the other two subsections within Rule 803(8)(A) nullities.

Finally, even if some or all three documents qualified as public records (and they do not), the Court should nevertheless exclude the documents because the public records exception does not cure the additional layers of inadmissible hearsay within each document.  It is well settled that Rule 803(8)'s public records exception covers only the first layer of hearsay, not additional layers in a public record; it is not a multi-layer hearsay exception or a carveout from Rule 805's requirement that each layer of hearsay must be subject to an exception.  *See, e.g.*, *United States v. Mackey*, 117 F.3d 24, 28-29 (1st Cir. 1997) ("In line with the advisory committee note to Rule 803(8), decisions in this and other circuits squarely hold that hearsay statements by third persons

. . . are not admissible under this exception merely because they appear within public records."); *see also generally* Defs.' Mot. to Revisit the Ct.'s Evidentiary Ruling Admitting Pls.' Ex. 205 (the Stegman Memo) into Evid. over Defs.' Hearsay Obj. (Class ECF No. 291, Berkley ECF No. 304).[8]  The D.C. Circuit acknowledged as much in *Hackley v. Roudebush*, explaining that there "will often be a double or triple hearsay problem . . . even though the [document at issue] itself may be admissible under Rule 803(6) or (8)."  520 F.2d 108, 157 n.195 (D.C. Cir. 1975).

The three documents previously excluded by this Court run multiple layers of hearsay deep.  PX 226 features an internal Treasury email embedding another internal Treasury email. PX 274 features an email thread containing (i) a message relaying a press release from the Office of Representative Scott Garrett incorporating a statement from Representative Garrett; and (ii) another message relaying a Bloomberg News article excerpt incorporating a statement from an AEI fellow regarding his view on "[w]hat the Treasury Department seems to be doing" with the Third Amendment.  And PX 279 contains an email from a Treasury employee to a White House employee embedding prior email correspondence between the AEI fellow and the White House employee.  Neither Rule 803(8)'s public records exception, nor any other exception or exemption, applies to these additional layers of hearsay.

### B.    PX 226, PX 274, and PX 279 Are Irrelevant or at Least Overly Confusing, Misleading, and Unduly Prejudicial to Defendants

Hearsay aside, the Court should exclude PX 226, PX 274, and PX 279 under Federal

---

[8]      Defendants have separately filed a motion requesting the Court to revisit its prior ruling that Plaintiffs' Exhibit 205 (the "Stegman Memo") is admissible and to exclude the document as inadmissible hearsay.  *See* Defs.' Mot. to Revisit the Ct.'s Evidentiary Ruling Admitting Pls.' Ex. 205 (the Stegman Memo) into Evid. over Defs.' Hearsay Obj. (Class ECF No. 291, Berkley ECF No. 304).  This Court previously found that the Stegman Memo itself satisfies the public records hearsay exception, but the Court did not address the second layer of hearsay embedded in the Memo.  *Id*. at 5-6.

Rules of Evidence 402 and 403.  Notwithstanding the Court's prior ruling that "evidence of Treasury's negotiating position or pressures from the White House could" "conceivabl[y]" be relevant, *MIL Ruling* at *9, these three documents are not probative with respect to either issue. PX 226 contains a mid-level Treasury employee's reaction to FHFA financials, and PX 274 and PX 279 feature after-the-fact commentary from a White House employee on his perspective regarding the execution of the Third Amendment.  The documents do not speak to Treasury's negotiating position with FHFA, nor are they suggestive of White House pressure on FHFA. Rather, these documents contain third-party conversations unknown to FHFA.  And there is no reason to believe these conversations involving brief remarks over email by mid-level Treasury and White House employees actually reflect the "position" of the Treasury Department or the White House.  *See* Trial Tr. 1575:5-8 (with respect to PX 226: "[T]here is no reason to believe that this Deputy Assistant Secretary's brief remark in an email would actually reflect on the Treasury's negotiating position . . . .").  Thus, the Court should exclude all three documents under Federal Rule of Evidence 402 as irrelevant.

Even if the documents had some relevance (and they do not), they should nonetheless be excluded under Rule 403 because any probative value is substantially outweighed by the dangers of confusing the issues, misleading the jury, and needlessly presenting cumulative evidence.  As noted above, this Court previously excluded PX 226 in part because "[e]ven if the email were of some limited relevance to FHFA's motive, . . . [the] relevance is substantially outweighed by risk of jury confusion because the jury might not understand the relationship between a mid-level Treasury official's beliefs and FHFA's motives," and the introduction of the document would also risk "wasting time and needlessly presenting cumulative evidence."  *Id.* at 1575:13-20.  The Court correctly balanced PX 226's potential relevance against the Rule 403 dangers, and nothing

Plaintiffs have identified in their motion meaningfully impacts that balancing.  PX 274 and PX 279 warrant exclusion under Rule 403 for similar reasons: they are at most marginally relevant, and their introduction would likely confuse the jury and needlessly waste time.  In addition, a jury would likely be confused as to whether a White House employee's beliefs were of relevance to FHFA's motive for executing the contractual amendments with Treasury.  And as this Court previously explained when it sustained Defendants' objections to PX 274 and PX 279, a White House employee was "thinking he knows what Treasury thinks," and "[s]omebody at Treasury needs to tell [the jury] what they think."  Trial Tr. 1815:17-19.

## II.      PX 550 and PX 562 Should Be Excluded for Substantially the Same Reasons

The Court should deny Plaintiffs' motion with respect to PX 550 and PX 562 for largely the same reasons set forth above.  Both documents are or contain hearsay, and even if they had some relevance, they should be excluded under Rule 403 as overly confusing, misleading, and prejudicial to Defendants.

PX 550 contains an email from a mid-level Treasury official attaching a set of draft talking points prepared by the Treasury Department to publicly explain why Treasury executed the Third Amendment.  The proposed talking points include statements such as "[c]hanges will be beneficial to the financial markets as uncertainty will be removed" and "Treasury will use the wind down of the portfolios as an opportunity to encourage the GSEs to more effectively manage troubled assets."  PX 550 at 2.  PX 562 similarly contains an internal Treasury email responding to two prior Treasury emails and attaching a press release, which concerns Treasury's decision to execute the Third Amendment and contains an embedded out-of-court statement from then-Treasury official Michael Stegman.  In seeking to admit these documents into evidence, Plaintiffs effectively contend that the federal government's public messaging discussions should

be shared with the public even though no one will "explain then how th[e] [communications documents] w[ere] prepared and done."  Trial Tr. 1809:20-1810:2; *see also id.* at 1810:9-14 (sustaining Defendants' objection to PX 271 and noting that the admission of the Treasury communications document without any explanation of its origins would impede the government's "ability to function").

### A.    PX 550 and PX 562 Are or Contain Inadmissible Hearsay

For similar reasons to those noted above with respect to the three documents the Court excluded at the first trial, the rule against hearsay also bars the admission of PX 550 and PX 562.

First, Plaintiffs do not in fact seek to admit these documents for a non-hearsay purpose. Plaintiffs' arguments as to the potential relevancy of the two documents reveal that Plaintiffs seek to lure the jury to accept the out-of-court statements for their truth.  Plaintiffs assert PX 550 should be admitted because it reflects Treasury's state of mind, Mot. 27-28, including Treasury's motive to "finalize the Net Worth Sweep before the GSEs started posting further profits and retaining capital."  *Id.* at 19.  However, as explained above, simply revealing what Treasury and White House employees were saying is not probative of either party's state of mind or intent. The unspoken link in Plaintiffs' argument is that the statements are probative of motive because the statements are true.  Moreover, Plaintiffs assert PX 562 "shows the close coordination between the agencies," *id.* at 29, but that could only possibly be true if the jury were to accept the statement that the Treasury press release "reflects final edits from Acting FHFA Director DeMarco" for its truth, PX 562 at 1.

Second, the state-of-mind-exception does not apply to PX 550.  As an initial matter, Plaintiffs appear to argue that the state-of-mind exception applies to only a particular section of this document discussing the rationale for how to time announcing the changes to the PSPAs. *See* Mot. 28.  Even if this portion of the Treasury document contained statements that are

admissible under FRE 803(3), the document remains inadmissible unless Plaintiffs identify

hearsay exceptions that would apply to the statements in the rest of the document.  *See Soriano*,

2021 WL 2744644, at *3.  But even the specific statements identified by Plaintiffs do not meet

the parameters of Rule 803(3), because they are statements of belief that Plaintiffs are

impermissibly seeking to admit to prove the fact believed.  *See supra* Section I.A.2.

Third, the public records exception does not apply to PX 550 and PX 562.  As "the party

seeking to introduce hearsay evidence," Plaintiffs "ha[ve] the burden of proving each element of

the exceptions [they] assert[]."  *United States v. Hsia*, 87 F. Supp. 2d 10, 13 (D.D.C. 2000)

(citing *Idaho v. Wright*, 497 U.S. 805, 816 (1990)).  However, as noted above, Plaintiffs merely

assert in a single conclusory sentence that the two documents "are admissible under FRE 803(8)

as a public record setting forth Treasury's activities."  Mot. 28.  This barebones argument is

insufficient to meet their burden.  In any event, Plaintiffs' conclusory assertion lacks merit as to

PX 550, because that document reflects preliminary deliberations among Treasury employees,

and as to PX 562, because it contains embedded inadmissible hearsay (*e.g.*, out-of-court

statements by Treasury employees in the email chain and press release).

Fourth, the residual exception does not apply to the sentence in PX 562 about Treasury

purportedly receiving edits on its press release from Mr. DeMarco.  Once again, this Court can

and should reject Plaintiffs' conclusory assertion that the residual hearsay exception applies.

Mot. 29.[9]  Further, the argument fails on the merits, because Plaintiffs have not demonstrated

---

[9]      Plaintiffs do not explain how the statement meets the requirements of the residual
exception.  Mot. 29.  Rather, they merely cite this Court's decision in *Alexander v. FBI* as an
example of this Court "applying [the] residual exception to conversation between an attorney and
the White House Counsel's office."  *Id.* (citing *Alexander v. F.B.I.*, 198 F.R.D. 306, 320 (D.D.C.
2000)).  But Plaintiffs mischaracterize this Court's decision.  In *Alexander*, the Court applied the
residual exception to a conversation between in-house counsel for Northrop Grumman and one
of Northrop's outside counsel.  198 F.R.D. at 320.  While the conversation involved discussion

that the hearsay statement at issue "is supported by sufficient guarantees of trustworthiness" or "is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a). Instead of seeking the admission of this Treasury email thread that indicates Mr. DeMarco provided edits on the Treasury press release, Plaintiffs could simply confront Mr. DeMarco at trial with the as-published press release and ask him whether he provided any input on it and whether any such input was accepted.

Finally, contrary to Plaintiffs' assertion, the statements in *Treasury's* press release in PX 562 are not admissible to impeach Mr. DeMarco's trial testimony. "Rule 806 permits impeachment *only of the declarant . . . .*" *Amco Ukrservice v. Am. Meter Co.*, CIVIL ACTION No. 00-2638, 2005 WL 8176384, at *3 (E.D. Pa. July 11, 2005) (emphasis added); *see also* 5 Weinstein's Fed. Evid. § 806.03[3] (2023) (similar). And Plaintiffs have not asserted that Mr. DeMarco adopted Treasury's statement in the press release about winddown. Nor could they. As Plaintiffs admit, PX 562 "does not show what [Mr. DeMarco's] edits were." Mot. 4. Moreover, the document provides no context regarding Treasury's ask for comments from Mr. DeMarco, meaning it is entirely possible that Treasury further revised the press release *after* receiving Mr. DeMarco's edits.

### B.    PX 550 and PX 562 Should Be Excluded Under Rule 403 Because They Are Overly Confusing, Misleading, and Unduly Prejudicial to Defendants

Beyond the hearsay problem, PX 550 and PX 562 should be excluded under Federal Rule of Evidence 403. Plaintiffs wish to use documents concerning the Executive Branch's public messaging to establish a purported motive for Treasury's execution of the Third Amendment.

---

of a separate conversation with the White House Counsel's Office, the Court applied the residual hearsay exception to *the conversation between the Northrop Grumman lawyers* because "the context of an ongoing professional relationship between in-house counsel for Northrop Grumman and outside counsel" served as "strong indicia of reliability and trustworthiness." *Id.*

But a multitude of complex considerations—including political and partisan considerations—may drive the Executive Branch's public messaging, including the preparation of talking points and the issuance of a press release about a particular action of substantial import to the national economy.  The jury will learn nothing about how the Executive Branch prepares public messaging on such matters or the plethora of considerations that impact such messaging.  The introduction of these public messaging documents without any witness to provide context about how or why they were prepared poses substantial risks of confusing and misleading the jury and unduly prejudicing Defendants.  These documents threaten to blur the critical distinction between how a government agency decides to craft public messaging around an action and what motivated the government agency to take that action.

Plaintiffs' proposed use of PX 550—to show that Treasury and the White House "were motivated to finalize the Net Worth Sweep before the GSEs started posting further profits and retaining capital" (Mot. 19)—illustrates how such a document is ripe for confusing and misleading the jury.  The draft talking points list multiple messages regarding the Third Amendment, not just the one about winddown that Plaintiffs selectively highlight, including "protect[ing] tax payer interests," "benefi[ting] the financial markets as uncertainty will be removed," and "encourag[ing] the GSEs to more effectively manage troubled assets."  PX 550 at 2.  Without any Treasury witness to explain which of the multitude of public messages (if any) served as Treasury's motivation for entering into the Third Amendment, the jury likely will be confused regarding how to weigh the competing messages and how to evaluate the political and partisan pressures that may have impacted the messaging.

Plaintiffs' proposed use of PX 562—to show "the close coordination between the agencies" and "the manner in which FHFA negotiated and rolled out the Third Amendment with

Treasury" (Mot. 29) —likewise should be excluded under Rule 403.  To begin with, a brief statement from a Treasury employee following the execution of the Third Amendment that Mr. DeMarco purportedly provided edits for a Treasury press release is in no way probative of the manner in which FHFA negotiated and rolled out the Third Amendment.  Further, it is at most minimally probative of whether there was "close coordination between the agencies."  *Id.*  And any probative value is substantially outweighed by the danger of confusing the jury by stating Mr. DeMarco provided input on the press release without identifying Mr. DeMarco's specific input and without providing context around how Treasury developed public messaging in advance of the announcement of the Third Amendment.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion to admit PX 550, PX 226, PX 562, PX 274, and PX 279.

Dated: June 14, 2023

Respectfully submitted,

 /s/ Asim Varma
Asim Varma (D.C. Bar # 426364)
Jonathan L. Stern (D.C. Bar # 375713)
David B. Bergman (D.C. Bar # 435392)
Ian S. Hoffman (D.C. Bar # 983419)
R. Stanton Jones (D.C. Bar # 987088)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave NW
Washington, D.C. 20001
(202) 942-5000
Asim.Varma@arnoldporter.com
Jonathan.Stern@arnoldporter.com
David.Bergman@arnoldporter.com
Ian.Hoffman@arnoldporter.com
Stanton.Jones@arnoldporter.com

*Attorneys for Defendant Federal Housing
Finance Agency*

 /s/ Michael J. Ciatti
Michael J. Ciatti (D.C. Bar # 467177)
KING & SPALDING LLP
1700 Pennsylvania Ave. N.W.
Washington, DC 20006
Tel: (202) 661-7828
Fax: (202) 626-3737
mciatti@kslaw.com

*Attorney for the Federal Home Loan
Mortgage Corp.*

 /s/ Meaghan VerGow
Meaghan VerGow (D.C. Bar # 977165)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
mvergow@omm.com

*Attorney for the Federal National Mortgage
Association*

19