**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| BERKLEY INSURANCE CO., et al.,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>THE FEDERAL HOUSING FINANCE<br>AGENCY, et al.,<br><br>    *Defendants.* | Case No. 1:13-cv-1053-RCL |
| IN RE FANNIE MAE/FREDDIE MAC<br>SENIOR PREFERRED STOCK<br>PURCHASE AGREEMENT CLASS<br>ACTION LITIGATIONS<br>_____<br><br>This document relates to:<br>ALL CASES | Case No. 1:13-mc-1288-RCL |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF**
**PLAINTIFFS' OMNIBUS MOTION IN LIMINE**

# <u>TABLE OF CONTENTS</u>

**Page**

LEGAL STANDARD........................................................................................................ 1

I.    Reply In Support Of MIL No. 1: To Exclude Analyst Reports Under
Rules 802 And 703....................................................................................... 3

    A.    Defendants Concede That DX412 And DX529 Lack The Foundation
Necessary To Preadmit Them ................................................................ 3

    B.    The Analyst Reports Are Inadmissible Under Rule 703 ....................... 3

II.    Reply In Support Of MIL No. 2:  To Preclude Defendants From Presenting
Testimony From Former Employees Concerning Their Reactions To The
Net Worth Sweep ....................................................................................... 5

III.    Reply In Support Of MIL No. 3:  To Clarify That This Court's Order Regarding
The Admissibility Of Evidence Of Shareholder Expectations Should Be
Interpreted As Defendants Argued It Should Be During The First Trial ........................... 8

    A.    The Proffered Testimony Is Admissible Under The Court's Prior Order
And Defendants' Proposed Examples ................................................... 9

        1.    Testimony That The Class Representatives Brought The Lawsuit
Because Their "Dividend Rights Were Extinguished" .............................. 9

        2.    Testimony That Defendants Said They "Would Conserve Assets,
And They Didn't Keep [Their] Word" ..................................................... 11

        3.    Testimony That Defendants "Told Lies About Circular Draws
And Erosion" ........................................................................................ 12

    B.    The Proffered Testimony Is Admissible To Rebut Defendants' Arguments
At The First Trial ................................................................................ 12

    C.    The Jury Instructions Make Clear That Whether Defendants Violated
The Implied Covenant Is An Objective Standard ................................... 14

IV.    Reply In Support Of MIL No. 4: To Exclude Layton's Deposition Testimony
Regarding Hearsay Statements Allegedly Made By Credit Suisse ................. 14

    A.    The Credit Suisse Testimony Is Hearsay ............................................. 15

    B.    The Hearsay Statements Are Irrelevant And Unfairly Prejudicial ....................... 15

V.    Reply In Support Of MIL No. 5:  To Exclude News Articles Quoting McFarland
And McFarland's Deposition Testimony About Them ................................... 17

VI.    Reply In Support Of MIL No. 6: To Exclude Improper Use Of SEC Filings .................. 20

    A.    The Hearsay Statements Are Not Subject To The Business
        Records Exception. ................................................................................................ 20

    B.    The Hearsay Statements Are Not Admissible Under the Residual
        Exception ............................................................................................................... 23

    C.    Defendants' Attempt To Bolster The Reliability Of SEC Filings Should
        Not Be Permitted................................................................................................... 24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Asetek Danmark A/S v. CMI USA, Inc.*,
    No. 13-cv-00457-JST, 2014 WL 12644295, at *2 (N.D. Cal. Nov. 19, 2014).......................18

*Boyd v. City of Oakland*,
    458 F. Supp. 2d 1015 (N.D. Cal. 2006) ...............................................................................19

*Factory Mut. Ins. Co. v. Alon USA L.P.*,
    705 F.3d 518 (5th Cir. 2013) ..................................................................................................4

*Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*,
    1:13-cv-1053-RCL, 2022 WL 4745970 (D.D.C. Oct. 3, 2022)..............................................10

*Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*,
    Case No. 1:13-cv-1053-RCL, 2022 WL 13937460 (D.D.C. Oct. 21, 2022) ............. 1-2, 13, 16

*Gilmore v. Palestinian Interim Self-Gov't Auth.*,
    53 F. Supp. 3d 191 (D.D.C. 2014), *aff'd*, 843 F.3d 958 (D.C. Cir. 2016)..............................19

*Grae v. Corrections Corp. of America*,
    Case No. 3:16-cv-2267, 2021 WL 1100431 (M.D. Tenn. Mar. 17, 2021) .......................... 4-5

*Grant v. Lockett*,
    No. 19-469, 2021 WL 5816245 (2d Cir. Dec. 8, 2021)...................................................21, 22

*Howard Univ. v. Roberts-Williams*,
    37 A.3d 896 (D.C. Ct. App. 2012)..........................................................................................1

*Jones v. United States*,
    934 F. Supp. 2d 284 (D.D.C. 2013) ......................................................................................18

*Rivera v. Inc. Vill. of Farmingdale*,
    29 F. Supp. 3d 121 (E.D.N.Y. 2013) ...............................................................................18, 19

*Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*,
    72 F. Supp. 3d 131 (D.D.C. 2014) ........................................................................................19

*SEC v. e-Smart Techs., Inc.*,
    31 F. Supp. 3d 69 (D.D.C. 2014) ..........................................................................................25

*SEC v. Jasper*,
    678 F.3d 1116 (9th Cir. 2012) ........................................................................................21-22

*Tracinda Corp. v. DaimlerChrysler AG*,
   362 F. Supp. 2d 487 (D. Del. 2005) ................................................................... 19

*United States Securities and Exchange Commission v. Ustian*,
   No. 16 C 3885, 2020 WL 416289 (N.D. Ill. Jan. 26, 2020) ....................................... 4

*United States v. Akers*,
   702 F.2d 1145 (D.C. Cir. 1983) ......................................................................... 1

*United States v. Eiland*,
   Criminal No. 04-379(RCL), 2006 WL 2844921 (D.D.C. Oct. 2, 2006) ...................... 8

*United States v. Giovannetti*,
   919 F.2d 1223 (7th Cir. 1990) ...................................................................... 7-8

*United States v. Moore*,
   Criminal No. 18-198 (JEB), 2021 WL 1966570 (D.D.C. May 17, 2021) ................... 18

*United States v. Morton*,
   391 F.3d 274 (D.C. Cir. 2004) .......................................................................... 7

*United States v. Slatten*,
   395 F. Supp. 3d 45 (D.D.C. 2019) ..................................................................... 8

*United States v. Washington*,
   106 F.3d 983 (D.C. Cir. 1997) .................................................................... 23, 24

*United States v. Williams*,
   212 F.3d 1305 (D.C. Cir. 2000), *cert. denied*, 531 U.S. 1056 (2000) ..................... 7

*Weinhoffer v. Davie Shoring, Inc.*,
   23 F.4th 579 (5th Cir. 2022) ........................................................................... 23

*In re WorldCom, Inc. Sec. Litig.*,
   No. 02 Civ. 3288 DLC, 2005 WL 375313 (S.D.N.Y. Feb. 17, 2005) ...................... 22

*In re Xerox Corp. Securities Litigation*,
   Civil Action No. 3:99CV02374(AWT), 2009 WL 8556135 (D. Conn. Apr. 22,
   2009) ....................................................................................................... 4

**Rules & Other Authorities**

8A Fed. Prac. & Proc. Civ. § 2143 (3d ed.) ............................................................ 19

Fed. R. Civ. P. 32(a) ............................................................................... 18, 19

Fed. R. Evid. 701 ........................................................................................... 7

Fed. R. Evid. 703 ........................................................................................ 3, 5

Fed. R. Evid. 803 ................................................................................20, 21, 23

Wright & Miller, 29 *Federal Practice & Procedure* § 6273 (2d ed.) ..............................................5

## LEGAL STANDARD

Defendants misunderstand and misapply the legal standard applicable to Plaintiffs' Omnibus Motion in Limine (Class ECF No. 292; *Berkley* ECF No. 307, the "Motion"), each portion of which relates to mid-trial rulings and which now benefit from a full trial record. In wrongly arguing that a reconsideration standard applies, Defendants ignore D.C. Circuit precedent that mid-trial evidentiary rulings are *not* law of the case in a retrial.

Where a case is retried, "the court in the new trial tries 'the case as if it were being tried for the first time . . . , as if there had been no prior trial.'" *United States v. Akers*, 702 F.2d 1145, 1147-48 (D.C. Cir. 1983) (citations omitted) (alterations in original). Accordingly, evidentiary rulings made in the first trial do not control in a retrial. *See id.* This is because "the judge's exercise of his broad discretion on an evidentiary ruling (which ultimately pertains to relevancy) must turn upon the evidence as developed in the particular trial." *Id.* Moreover, rulings on motions *in limine* are provisional and, thus, not subject to the same reconsideration standard that accompanies other rulings. *Howard Univ. v. Roberts-Williams*, 37 A.3d 896, 910 (D.C. Ct. App. 2012) ("rulings on motions *in limine* normally are considered provisional, in the sense that the trial court may revisit its pre[-]trial evidentiary rulings in the context of the presentation of the evidence in the case." (citation omitted)). Specifically, Defendants incorrectly claim that three types of evidence are controlled by prior mid-trial evidentiary rulings.[1]

First, Plaintiffs move to exclude analyst report evidence under Rules 802 and 703. Defendants are correct that there is a controlling pre-trial ruling on this issue—the Court's ruling that the reports **are hearsay**. *Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*, Case No. 1:13-

---

[1] Defendants do not dispute that Plaintiffs' motions regarding the inadmissibility of portions of SEC filings and testimony regarding the reactions of executives who were not involved in the Net Worth Sweep were not raised at the first trial and are thus not subject to a reconsideration standard.

cv-1053-RCL, 2022 WL 13937460, at *6 (D.D.C. Oct. 21, 2022).  The Court held that "a generic reasonable shareholder would only believe the reports if there were reason to believe they were accurate, and defendants cite no evidence that FHFA actually relied on any of the specific securities analyst reports they plan to offer. Accordingly, the second motion in plaintiffs' omnibus motion in limine will be **GRANTED** insofar as defendants may not offer the securities analyst reports unless they can show that any specific report factored into FHFA's decisionmaking process or a hearsay exception applies." *Id*.  Defendants' mid-trial introduction of two analyst reports did not comport with the Court's ruling because they failed to lay an adequate foundation that "any ***specific report factored into FHFA's decisionmaking process***." *Id*.  With the benefit of Dr. Attari's full testimony and defense counsel's closing argument to the jury, it is now clear that Defendants cannot meet their burden under Rule 703.

Second, Plaintiffs move to exclude testimony from Donald Layton regarding statements made by Credit Suisse, as well as news articles quoting Susan McFarland and her deposition testimony about the articles.  Defendants argue that this evidence is controlled by the Court's prior rulings on deposition designation objections, but those evidentiary rulings made in the context of the prior trial do not control here.  The factual and evidentiary circumstances have changed since the original trial—the parties have made new designations, new submissions of evidence and witnesses, and new motions on retrial—and, accordingly, the law of the case doctrine does not apply.

Third, Defendants argue that Plaintiffs' Motion in Limine No. 3 is controlled by a previous ruling, even as Plaintiffs seek not to change the Court's prior ruling but to clarify what their class representatives can say under that ruling in light of defense cross-examination and argument at trial.  A reconsideration standard thus does not apply.

## I.     Reply In Support Of MIL No. 1: To Exclude Analyst Reports Under Rules 802 And 703

### A.     Defendants Concede That DX412 And DX529 Lack The Foundation Necessary To Preadmit Them

Defendants concede that the Court does not have "the evidentiary foundation" necessary to preadmit DX412 or DX529 and ask the Court to "defer ruling on the actual admissibility of these two exhibits until Defendants move to admit them at the retrial." Defs.' Opp'n to Pls.' Mot. in Limine, Class ECF No. 309, Berkley ECF. No. 320 ("Opp."), at 5 n.5.   Defendants thus acknowledge that live testimony is necessary to lay the foundation needed to admit these exhibits. Because Mr. Ugoletti is not testifying live at trial, neither DX412 nor DX 529 can be admitted unless Mr. DeMarco testifies during the second trial that he *actually considered these analyst reports* in deciding to enact the Net Worth Sweep.  Evidence that Mr. DeMarco received the reports is insufficient, and Defendants' contention that the documents "[o]n their face . . . reflect that FHFA decision-makers considered them in connection with the Third Amendment," Opp. at 4, is false.   Defendants cite no evidence or testimony to suggest that any FHFA decision maker considered either report in deciding to enact the Third Amendment.  Indeed, DX529 is dated August 15, 2012, *after* DeMarco decided to enter into the Net Worth Sweep, so he could not possibly have considered it in making his decision.

### B.     The Analyst Reports Are Inadmissible Under Rule 703

Rule 703 contemplates disclosure of inadmissible evidence *solely* for the narrow purpose of "helping the jury to evaluate the [expert's] opinion." Fed. R. Evid. 703.  Defendants' use of the analyst reports during the first trial vastly exceeded this narrow purpose, and they should not be permitted to do the same in the retrial.

During the first trial, Dr. Attari devoted more than 20% of his slideshow to reading analyst reports into the record. These slides do not, as Defendants argue, contain *any* "analysis of the

analyst reports" by Dr. Attari, Opp. at 6, as each slide includes only a screenshot of the first page of the report and enlarged screenshots of cherry-picked quotes from the report. Motion, Ex. 1-B at 24-36.  Likewise, Defendants' counsel spent much of Dr. Attari's direct examination reading quotes from analyst reports rather than asking about, or even allowing Dr. Attari to testify to, *his* analysis. Motion Ex. 1-A_at 1917:17-1970:3. This blatant misuse of the analyst reports has Dr. Attari "become the mouthpiece of the [securities analysts] on whose statements or opinions [he] purports to base his opinion"—exactly the result that "Rule 703 was not intended … to allow." *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013); *see* Motion at 5.

Defendants have not demonstrated and cannot demonstrate that the probative value of disclosing the reports substantially outweighs the prejudicial effect Plaintiffs' Motion outlines in detail. Motion at 2-5.  As the evidence demonstrates, Dr. Attari used no specialized knowledge to pick four analyst reports out of hundreds to support his preordained conclusions—he simply picked those that were favorable to Defendants and read them into the record verbatim.

Defendants' cited cases are completely inapposite.  In *In re Xerox Corp. Securities Litigation*, Civil Action No. 3:99CV02374(AWT), 2009 WL 8556135, at *3 (D. Conn. Apr. 22, 2009), an expert testified about the release of public information because it was independently relevant to whether information had already been disclosed to the market.  Similarly, in *United States Securities and Exchange Commission v. Ustian*, No. 16 C 3885, 2020 WL 416289, at *3-6 (N.D. Ill. Jan. 26, 2020), the expert was permitted to survey information that was already in the market at the time of an alleged false and misleading statement because such information, even if not true, was relevant to the materiality of the challenged statements.  In *Grae v. Corrections Corp. of America*, Case No. 3:16-cv-2267, 2021 WL 1100431, at *3-4 (M.D. Tenn. Mar. 17, 2021), the expert's consideration of analyst reports related to loss causation, *i.e.*, the extent to which the

company's stock price moved in relation to the disclosure of new information.  These cases do not support Defendants' use of Dr. Attari as a bootstrap to display inadmissible analyst reports to the jury.

When an expert relies on evidence that is "made inadmissible by rules grounded in policies extrinsic to reliability … concerns," Rule 703 forbids offering that evidence for its prohibited purpose "to show that the expert's opinion has a sound basis." Wright & Miller, 29 *Federal Practice & Procedure* § 6273 (2d ed.).  Rule 703 thus does not permit Dr. Attari to "help[] the jury evaluate [his] opinion" that there were market concerns by disclosing the analyst reports to prove that there were in fact market concerns.  Furthermore, Defendants have no response to Plaintiffs' argument that Rule 703 does not permit defense counsel to redisplay otherwise inadmissible analyst reports in closing argument, which the Court should prohibit at the retrial.

## II.    Reply In Support Of MIL No. 2:  To Preclude Defendants From Presenting Testimony From Former Employees Concerning Their Reactions To The Net Worth Sweep

Plaintiffs moved in limine to preclude Defendants from presenting testimony from current and former employees of Fannie Mae, Freddie Mac, and the FHFA (Timothy Mayopoulos, Ross Kari, and Naa Awaa Tagoe, respectively) about their reactions to and opinions of the Net Worth Sweep after FHFA Acting Director DeMarco agreed to it.  This motion is consistent with Plaintiffs' position throughout their pre-trial motion practice that such reaction evidence is irrelevant and speculative, and thus should be excluded.  Plaintiffs have accordingly urged the Court to adopt an all-or-nothing approach to the reactions of former Fannie Mae, Freddie Mac, and FHFA employees who were not involved in the decision to enter into the Net Worth Sweep.  *See* Pls.' Opp. to Defs.' Omnibus Mot. in Limine (Class ECF No. 304, Berkley ECF No. 316) at 1 ("Neither party should be permitted to offer testimony about Defendants' decision to enter into the Third Amendment from any witness who did not participate in decision-making, including the Former Employees

and Ms. McFarland."); 3 ("Plaintiffs do not oppose Defendants' Motion *in Limine* #1, provided that the Court also excludes the testimony identified in Plaintiffs' Motions. . . . Alternatively, if the Court denies Plaintiffs' Motions, then Defendants' Motion *in Limine* #1 also should be denied.").  If the Court agrees with Defendants' position that the reaction testimony of Mr. Mayopoulos, Mr. Kari, and Ms. Tagoe is admissible, then the reaction testimony of Ms. McFarland (which is the subject of Defendants' Motion in Limine #1) should likewise be admitted.  *See id.* at 2 (showing similarity of McFarland and Tagoe testimony).  But Plaintiffs' primary argument is that all such testimony should be excluded.

Defendants do not claim that any of the employees at issue participated in any planning or discussions regarding the Third Amendment or Net Worth Sweep prior to the public announcement of the Third Amendment.[2]  Neither Mr. Mayopoulos, Mr. Kari, nor Ms. Tagoe had any role in the decision to adopt the Third Amendment, nor can they provide any relevant, first-hand testimony about what they perceived from the discussions about it or decision to adopt it because they were not involved in those matters.  Therefore, there is nothing admissible that they could say about the decision.

In an attempt to manufacture some relevance to these employees' opinion testimony, Defendants argue that the employees' post hoc reactions to the already-adopted Third Amendment and their descriptions of their state of mind at that time somehow bear on the reasonableness of the previously-made decision to adopt the Third Amendment.  That argument makes no sense.  It is up to the jury to determine whether the decision to adopt the Third Amendment was reasonable.

---

[2] Defendants contend that Mr. Mayopoulos "regularly met with Mr. DeMarco" (Opp. at 12), but Defendants do not challenge that Mr. Mayopoulos never participated in the actual decision to adopt the Third Amendment nor provided Mr. DeMarco with any advice about whether to adopt it. Motion, Ex. 2-B.

The *post hoc* opinions of lay witnesses who had no involvement in, nor even any knowledge of, the Third Amendment until after it had been agreed to will not assist the jury in deciding this case. Defendants' contention that the employees have knowledge about the Government Sponsored Entities' ("GSEs") projections and financial condition is likewise irrelevant because their challenged testimony is not about those topics. Rather, their testimony constitutes speculation about the reasons for the Third Amendment and/or how it might affect the GSEs in the future, which is not admissible.

As lay witnesses, the employees are not permitted to tell the jury their inferences or opinions drawn from the facts. Federal Rule of Evidence 701 provides, in pertinent part, that a non-expert's testimony in the form of opinions or inferences is limited to those opinions or inferences which are "(a) rationally based on the witness's perception; [and] (b) helpful to clearly understanding the witness's testimony or determining a fact in issue. . . ." *See also United States v. Williams*, 212 F.3d 1305, 1309 n.6 (D.C. Cir. 2000), *cert. denied*, 531 U.S. 1056 (2000) (explaining Fed. R. Evid. 701). These witnesses cannot satisfy Rule 701, as they have no perceptions bearing on the reasonableness of the decision to adopt the Third Amendment because they had no personal knowledge of the decision until after it was made, and their *post hoc* reactions are not helpful to the jury.

The witnesses in the cases Defendants cite were in completely different situations. In *United States v. Morton*, 391 F.3d 274, 277 (D.C. Cir. 2004), a police officer testified about his "reason for not having arrested" a passenger in an automobile for illegal possession of a gun. The officer's testimony that "he believed the passenger did not know the gun was in the vehicle" was not opinion testimony because he was testifying about his belief at the time of the arrest he made. *Id.* In *United States v. Giovannetti*, 919 F.2d 1223, 1226 (7th Cir. 1990), the witness could testify

about his personal knowledge because that was a key issue in the case (whether the facts known to the witness supported a conclusion that illegal activity was being conducted on a premises).  In *United States v. Eiland*, Criminal No. 04-379(RCL), 2006 WL 2844921, at *4-5 (D.D.C. Oct. 2, 2006), a narcotics officer was permitted to testify about his interpretation of certain drug trafficking jargon and code words used by the defendants because the officer provided his interpretation of words he heard at the time the words were uttered.  Similarly, in *United States v. Slatten*, 395 F. Supp. 3d 45, 75 (D.D.C. 2019), the witness provided his opinion about "sounds he personally perceived."  In contrast, Defendants seek to have the employees testify not about their personal knowledge of the decision to adopt the Third Amendment, of which they have none, but rather their *post hoc* reactions to the decision in which they played no part.

Defendants' argument that Plaintiffs' "suggest[ion] that Mr. DeMarco should have consulted these individuals about the Third Amendment" somehow "put[s] at issue the views that these individuals held about the Third Amendment," Opp. at 13, is absurd.  While DeMarco may well have benefitted from hearing the views of the employees before he agreed to the Third Amendment, the jury will not benefit from hearing their opinions formed after DeMarco agreed to the Third Amendment without consulting them.  The employees' *post hoc* opinion testimony is inadmissible and the Court should exclude it.

III.    **Reply In Support Of MIL No. 3:  To Clarify That This Court's Order Regarding The Admissibility Of Evidence Of Shareholder Expectations Should Be Interpreted As Defendants Argued It Should Be During The First Trial**

Defendants trumpet the first part of the Court's *in limine* ruling from the first trial that Plaintiffs "may not offer evidence of individual shareholders' subjective expectations."  Opp. at 17.  But they largely ignore the portion of the Court's ruling that the class representatives can testify as to "why they brought this lawsuit."  Motion at 10-11.  These two threads are, of course, related: the class representatives would not have sued if Defendants had not violated their

subjective expectations.  But Defendants have resolved any potential tension in the Court's order by *agreeing* in open court about the testimony the class representatives could offer.  Defendants offered their interpretation of the Court's order only after the close of evidence in the first trial, and in response to an objection to a portion of their closing.  Motion, Ex. 3- at2691:14-2693:24).  Now, with retrial looming, Defendants seek to walk back what they told this Court and Plaintiffs last year.  Plaintiffs seek to hold Defendants to their word.

### A.    The Proffered Testimony Is Admissible Under The Court's Prior Order And Defendants' Proposed Examples

At the very end of the first trial, after all of the evidence had already been submitted to the jury, Defendants told this Court what they believed the class representatives could have testified to in explaining "why they brought this lawsuit."  *Id.* at  2693:10-21.  Defendants told this Court that the class representatives could have testified that they brought this lawsuit, "for example," because (i) their "dividend rights were extinguished;" (ii) Defendants said they "would conserve assets, and they didn't keep [their] word;" and/or (iii) Defendants "told lies about circular draws and erosion."  *Id.*  Plaintiffs agree that each of these explanations for "filing this lawsuit" would be proper testimony under the Court's order.

### 1.    Testimony That The Class Representatives Brought The Lawsuit Because Their "Dividend Rights Were Extinguished"

Despite Defendants' concession that the class representatives are free to testify that they "brought this lawsuit," in part, because their "dividend rights were extinguished," Defendants have now lodged objections to that exact testimony being elicited in the retrial.

<u>First</u>, Defendants object to testimony from Mr. Cacciapalle that he was "harmed by the third amendment" because "the amendment has pretty much taken all [his dividends] away."  Motion, Ex. 3-B at 92:11-21).  Defendants hang their objection to this testimony on the fact that Mr. Cacciapalle's answer was "subjective" because it included the words "expected" and "was

expecting."  Defendants' question, of course, specifically ***solicited*** a subjective answer by asking

Mr. Cacciapalle what he "believe[d]."  But to obviate this issue, Plaintiffs would be willing to

redact Mr. Cacciapalle's testimony to remove the offending sentence:

> Q. What do you believe is the harm you have suffered?
>
> A. I bought a security from someone who was receiving an A-plus percent dividend. ~~And I expected to — I was expecting the same treatment, getting the same thing.~~ And it appears that the amendment has pretty much taken all that away.

This testimony, as edited, falls squarely within what Defendants told this Court was admissible as

to why the class representatives "brought this lawsuit."

Second, Defendants objected during the first trial when class representative Michelle

Miller testified that she was "harmed" because "there were no more dividends, and the price had

kind of remained stagnant."  Motion, Ex. 3-A at 582:10-15.  Defendants argued that "the lost

dividends theory is out of the case."  *Id.* at 23-583:4.[3]  Contrary to Defendants' argument, the

Court did not "str[ike] the testimony."  *Contra* Opp. 18, 20.  Rather, the Court said Plaintiffs could

"persist on the question," but the Court would then "instruct the jury that they can't consider" Ms.

Miller's testimony about lost dividends when they evaluate damages.  Ex. 3-E (attached hereto)

at583:17-19.  Rather than draw that limiting instruction, Plaintiffs agreed to rephrase the question.

*Id.* at 20-24.  On cross-examination, Defendants then sought to convert the Court's shield into a

sword.  Defendants confronted Ms. Miller with Freddie Mac's common stock certificate to make

the point that shareholders had no absolute right to receive dividends.  *Id.* at  587:1-18.  When

Plaintiffs complained that Defendants had now opened the door to Ms. Miller's testimony about

---

[3] In fact, Ms. Miller's answer neatly tracks the "theory of harm" that the Court has specifically allowed Plaintiffs to pursue at trial: "that the Third Amendment, by eliminating any possibility of future dividends for non-Treasury shareholders, deprived plaintiffs' shares of much of their value . . . ."  *Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*, 1:13-cv-1053-RCL, 2022 WL 4745970, at *11 (D.D.C. Oct. 3, 2022).

her lost dividends, the Court agreed and offered Plaintiffs the opportunity to redirect Ms. Miller about her loss of dividends, "[i]f the plaintiffs want," but cautioned that the Court would then "instruct [the jury] that dividends are not part of damages." Tr. at 588:3-590:8.  In an abundance of caution, Plaintiffs seek clarification that in the retrial, Ms. Miller will be allowed to testify that, among other reasons, she brought this lawsuit because her "dividend rights were extinguished."

Third, Defendants object to proffered testimony from Mr. Cacciapalle that he was "surprised" that Defendants had "take[n] all future profits" from Fannie and Freddie, "leav[ing] the existing hold[ers] of common and preferred with no chance to ever receive any of the profits." Motion, Ex. 3-B  at 83:3-11.  Defendants complain that Mr. Cacciapalle used the word "surprised" in his answer, which they say renders the testimony inadmissibly "subjective."  Opp. 21-22.  But Defendants again ignore that *their question* to Mr. Cacciapalle was "[w]hat about the third amendment surprised you?"  Again, to remove the offending language, Plaintiffs would propose that Mr. Cacciapalle's testimony be redacted as follows:

> Q. [W]hat about the third amendment surprised you?
>
> A. ~~I guess what surprised me is the~~ [Q]uite frankly the gusto. I mean, to go and take all future profits from a company and they don't know what the future holds and leave the existing holds of common and preferred with no chance to ever receive any of the profits~~, it just sounded too totalitarian to me~~.

This testimony is admissible to explain that Mr. Cacciapalle "brought this lawsuit" because his "dividend rights were extinguished," as Defendants conceded would be proper testimony at trial.

### 2.  Testimony That Defendants Said They "Would Conserve Assets, And They Didn't Keep [Their] Word"

Defendants told this Court and Plaintiffs that they also interpreted the Court's order to allow the class representatives to testify that Defendants said they "would conserve assets, and they didn't keep [their] word."  Motion, Ex. 3-A at 2693:17-21.  Plaintiffs agree such testimony

would be admissible to explain why they "brought this lawsuit."  As an example, in the first trial

Mr. Linekin testified, without objection, as follows:

> Q. Mr. Linekin, can you please explain to the jury why Berkeley filed this lawsuit.
>
> A. The FHFA didn't do what they said they were going to do.  I mean, in essence, just as that paragraph indicated, their goal was to preserve and – or I should say what they said they were going to do was conserve and preserve the assets and nurture Fannie and Freddie back to a safe and solvent condition. It did not do that.
>
> As a matter of fact, they went in the opposite direction, and they took every dollar of cash flow, every dollar of profits from 2012 into perpetuity, or 2013, January 1, 2013, into perpetuity. And that's – that's not consistent with what the FHFA said to us.

Ex. 3-E at 609:9-21.  Plaintiffs anticipate that Mr. Linekin, and perhaps other class representatives,

will give similar testimony during the retrial, and seek to clarify that such testimony would be

admissible.

### 3. Testimony That Defendants "Told Lies About Circular Draws And Erosion"

Plaintiffs agree with Defendants that the class representatives should be allowed to offer

testimony that they "brought this lawsuit" in part because Defendants "told lies about circular

draws and erosion," and seek to clarify that they may offer such testimony at the retrial.[4]

### B. The Proffered Testimony Is Admissible To Rebut Defendants' Arguments At The First Trial

The class representatives should be able to offer factual, non-subjective evidence to rebut

factually incorrect arguments made by Defendants.  At the first trial, for example, Defendants

argued that shareholders' "dividends had been eliminated … in September of 2008."  Motion, Ex.

3-A at 2580:12-13.  This is false.  The class representatives should be allowed to offer factual,

---

[4] Upon consideration of Defendants' Opposition, Plaintiffs agree that Mr. Cacciapalle's testimony referenced at pages 13-14 of their Motion (Dep. Tr. 61:17-62:22) does not really address "lies about circular draws and erosion," and therefore Plaintiffs withdraw it.

non-subjective testimony that while their dividends were **suspended** in 2008 during the life of the conservatorship, they had not been permanently "eliminated."  *See, e.g.*, Motion, Ex. 3-D (DX103) at 38; Motion, Ex. 3-C (DX102) at 39.  This testimony is also admissible evidence of "the contents of the shareholder contract."  *Fairholme Funds*, 2022 WL 13937460, at *9.

As part of testifying why they "brought this lawsuit," the class representatives also intend to testify that they **did not** bring the lawsuit to challenge FHFA's decision in 2008 to place Fannie and Freddie into conservatorship.  While Defendants now purport to object to such testimony, Opp. 23, Ms. Miller testified **without objection** at the first trial that she was **not** "suing about anything that happened in 2008, '9, '10, or '11." Ex. 3-E at 584:15-17.   This testimony falls well within the Court's order and is a fair response to what Defendants argued to the jury in the first trial.  Mr. Cacciapalle should also be allowed to offer similar testimony, Motion, Ex. 3-B at 51:4-16:

> Q. You say when the conservator was appointed you understood why.  Do you have any views as to whether it was appropriate to appoint the conservator to Fannie Mae and Freddie Mac?
>
> A. I can understand. The world was -- it affected the whole world.  I could understand the government wanted something to keep people assured and quiet people down.  I kind of understood that.  And there would be some losses.  I understood that.  But it didn't seem to work out that they should be losing forever.

This testimony, until the last sentence, rebuts Defendants' false arguments, helps explain why Mr. Cacciapalle "brought this lawsuit," and is indistinguishable from Ms. Miller's admissible testimony cited above.  The last sentence, meanwhile, is admissible evidence that Mr. Cacciapalle "brought this lawsuit" because his "dividend rights were extinguished."

Finally, if the Court does not allow Plaintiffs to offer testimony to rebut Defendants' false arguments, Defendants should be precluded from making them.

C.     **The Jury Instructions Make Clear That Whether Defendants Violated The Implied Covenant Is An Objective Standard**

As noted above, the proffered testimony is admissible under the Court's prior order, under Defendants' interpretation of that order, and to rebut Defendants' incorrect factual arguments. The testimony is also unlikely to cause jury confusion or other possible undue prejudice to defendants, because the Court's jury instructions will make clear that what any particular shareholder "subjectively expected" is not relevant:

> [Y]ou should keep in mind that the question is not what any actual shareholder, including any of the plaintiffs in this case, subjectively expected. Instead, the question if what an imaginary or hypothetical "reasonable" shareholder would have expected, based on information known or available to that hypothetical reasonable shareholder.

Final Jury Instructions at 9, Class ECF No. 250, Berkley ECF No. 240. Indeed, the jury instructions repeat twice more that "the parties' objectively reasonable expectations under the contract" control whether Defendants violated the implied covenant of good faith and fair dealing." *Id.* at 8, 9.

IV.    **Reply In Support Of MIL No. 4: To Exclude Layton's Deposition Testimony Regarding Hearsay Statements Allegedly Made By Credit Suisse**

Deposition testimony of former Freddie Mac CEO Donald Layton regarding an alleged meeting with Credit Suisse is hearsay that in the first trial Defendants offered for its truth. Defendants say this hearsay is admissible because it is merely demonstrating the "effect" the meeting had on Layton's state of mind. *See* Opp. at 25. But Defendants fail to show that Layton actually conveyed this information to FHFA, the critical link to render the statements potentially admissible for non-hearsay purposes, and have no valid response to Plaintiffs' argument that any speculative relevance of the statements is overwhelmed by the undue prejudice that would result from Defendants' use of the testimony.

### A.    The Credit Suisse Testimony Is Hearsay

Defendants assert they do not offer the alleged Credit Suisse statements for the truth of the matter asserted, but Defendants' presentation at the first trial belies their real purpose.  During Defendants' closing, counsel recounted the Credit Suisse statements and said "this is *the investors themselves* saying that summer they had a concern" that the Treasury Commitment would erode due to the GSEs' upcoming borrowing cap.  Motion, Ex. 4-A at 2666:5-6 (emphasis added). And Defendants' counsel made clear he wanted the jury to take Credit Suisse's word for it: "That's how you know, members of the jury, that the circular draw and the problem of erosion is not just a plot by Mr. DeMarco or a figment of his imagination. This is Mr. Layton. *This is Credit Suisse. This is the entire market expressing these concerns*." *Id.* at 2666:13-17 (emphasis added). That is classic hearsay evidence, explicitly offered for its truth

### B.    The Hearsay Statements Are Irrelevant And Unfairly Prejudicial

Even if Defendants were offering the Credit Suisse statements for their "effect" on Mr. Layton, which they plainly are not, that "effect" is entirely irrelevant. The Court admitted the statements because "there's some evidence" that Layton "relayed that information to FHFA; and it's relevant to the question of whether FHFA acted in good faith on the information it had at the time, which in turn, is relevant to whether FHFA violated its shareholders' reasonable expectations." *Id.* at 228:17-229:2.  As the Court recognized, the Credit Suisse statements could be relevant *only* to the extent they were relayed to Mr. DeMarco and FHFA, but Defendants failed to offer a shred of evidence demonstrating that Mr. DeMarco or anyone else at FHFA was even aware of the Credit Suisse statements, let alone that they informed FHFA's decisionmaking.  *See* Motion at 18-19.  Now, Defendants ask this Court to simply *assume* that Mr. Layton relayed the Credit Suisse statements to FHFA—arguing that "[t]here is *no doubt* that Mr. Layton expressed his concerns to FHFA." Opp. at 27 (emphasis added).  But Defendants' conclusory confidence is

not evidence, and the evidence they *do* offer does *not* support the conclusion Defendants ask this Court to adopt.

First, Defendants cite a June 2012 agenda that contained "talking points" Layton allegedly conveyed to DeMarco, Opp. at 28, but these talking points say nothing at all about Layton's alleged meeting with Credit Suisse. Second, Defendants argue that because Layton met "once a week" with DeMarco while he was FHFA Acting Director, it should be *assumed* that at some point Layton *must have* discussed the alleged issues raised in the Credit Suisse meeting, *id.*, but provide no evidence to support their conclusory assumption. Third, Defendants refer to DeMarco's trial testimony regarding "concerns" he was "hearing in the marketplace" and leap to the conclusion that Layton must have told DeMarco what Credit Suisse had said, but again offer no evidence to support that logical leap. *Id.* at 29. In sum, Defendants have identified no evidence that Layton conveyed the Credit Suisse statements to DeMarco or anyone else at FHFA. Consequently, even if the Credit Suisse statements were being offered solely for their effect on Layton's state of mind, which is clearly not the case, Defendants cannot demonstrate why Layton's state of mind has any relevance to the issue the jury will decide—whether DeMarco's decision to enter into the Net Worth Sweep was reasonable.

Also meritless is Defendants' argument that "Layton's meeting with Credit Suisse . . . has much greater relevance than" the excluded securities analyst reports. Opp. at 29. At the first trial, the Court rejected admission of the analyst reports because Defendants produced no evidence that the reports were considered by FHFA. *See Fairholme Funds*, 2022 WL 13937460, at *6. Defendants attempt to distinguish those excluded reports from the Credit Suisse statements by arguing that the "reports were not prepared by or shared with any party involved with the Third Amendment," Opp. at 30, but that is equally true of the Credit Suisse statements—there is no

evidence that the Credit Suisse statements were "shared with" anyone but Layton, who was *not* "involved with the Third Amendment."

Even if the Credit Suisse statements had any probative value, which they do not, the undue prejudice of admitting them would require their exclusion.  As demonstrated in the first trial, Defendants' use of these hearsay statements is likely to mislead the jury into considering them for their truth, which Defendants do not meaningfully contest. Thus, the risk of prejudice far outweighs any probative value of the testimony, and it should be excluded under Rule 403.

## V.      Reply In Support Of MIL No. 5:  To Exclude News Articles Quoting McFarland And McFarland's Deposition Testimony About Them

Plaintiffs moved in limine to preclude Defendants from admitting news articles containing purported statements made by Susan McFarland, Defendant Fannie Mae's former CFO, and Ms. McFarland's testimony about them.  In their Opposition, Defendants fail to show that this material is admissible pursuant to any hearsay exception or is otherwise relevant to this case.

First, Defendants concede, as they must, that the newspaper articles themselves are hearsay.  Opp. at 31 (claiming that the articles are not being offered for their truth).  Defendants assert that the articles are admissible to provide "context" to Ms. McFarland's testimony.  There is no context-based exception to the hearsay rule under the circumstances of this case, however, where the explicit purpose for offering the articles is to validate the truth of the hearsay statements contained therein.[5]  The fact that Ms. McFarland made the statements is relevant, if at all, *only* to their truth.  The embedded statements are undeniably hearsay, and the articles are nothing more than a vehicle carrying those inadmissible statements.   Hence, the articles are likewise inadmissible.

---

[5] Indeed, Defendants do not even attempt to provide a proper purpose for the portions of the articles that do not include purported quotations from Ms. McFarland.

In arguing for the admissibility of the articles, Defendants ignore the purpose for which they would be offered and rely on cases that are wholly inapposite.  For example, in *United States v. Moore*, Criminal No. 18-198 (JEB), 2021 WL 1966570, at *5 (D.D.C. May 17, 2021), the court held that outgoing text messages sent by a party opponent were not hearsay, and that additional incoming text messages received by the defendants about conducting surveillance to kidnap a man for ransom payments were admissible only "to explain [the defendant's] intent, motive, and state of mind" as permitted under Rule 404(b).  In *Jones v. United States*, 934 F. Supp. 2d 284, 290 (D.D.C. 2013), the court permitted introduction of a police report for the limited purpose of showing its "effect on the listener," and not, as Defendants seek here, to show that the declarant adopted as true the statements recounted in the report.  In *Asetek Danmark A/S v. CMI USA, Inc.*, a patent infringement case, the court admitted articles because they were relevant to the non-hearsay purpose of demonstrating obviousness.  Case No. 13-cv-00457-JST, 2014 WL 12644295, at *2 (N.D. Cal. Nov. 19, 2014) ("Laudatory statements by third parties regarding an invention are relevant to the question of obviousness.").  In *Rivera v. Inc. Vill. of Farmingdale*, 29 F. Supp. 3d 121, 129 (E.D.N.Y. 2013), the court admitted articles for the purpose of demonstrating evidence of historical discrimination against Hispanic members of the community as relevant not for their truth, but rather to show discriminatory intent.

None of these cases has any relevance here, where Defendants acknowledge that they are offering the articles only because "Ms. McFarland *confirmed the accuracy of certain statements* she made to media outlets," *see, e.g.*, Opp. at 31, *i.e.*, for the truth of the hearsay statements in the articles. Admitting the articles would be impermissible bootstrapping, not providing "context."

Second, Defendants fail to recognize that they cannot introduce otherwise-hearsay testimony of their own former CFO as an adoptive admission.  Federal Rule of Civil Procedure

32(a)(4) permits testimony of an unavailable witness, but such testimony must otherwise satisfy the Rules of Evidence.  Fed. R. Civ. P. 32(a)(1)(B); *see also* 8A Fed. Prac. & Proc. Civ. § 2143 (3d ed.); *Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*, 72 F. Supp. 3d 131, 146 (D.D.C. 2014) (finding that testimony otherwise subject to Rule 32(a)(4) was inadmissible under Fed. R. Evid. 602 because the declarant lacked personal knowledge).  Defendants seek to introduce an adoptive admission from their own agent, *i.e.*, that Ms. McFarland "confirmed the accuracy" of the statements attributed to her in the newspaper articles, but Rule 801(d)(2) applies only to testimony offered by an *opposing party.*  Ms. McFarland, Defendant Fannie Mae's former CFO, is not an opposing party, and her testimony about her hearsay statements is otherwise inadmissible. Indeed, Defendants' own authority holds as much.  *See, e.g.*, *Rivera*, 29 F. Supp. 3d 121 at 130-31 (drawing distinction between the admission of certain statements in a newspaper article that contained quotes from a party opponent and statements not made by a party opponent); *see also Boyd v. City of Oakland*, 458 F. Supp. 2d 1015, 1050 (N.D. Cal. 2006) (holding that a police chief's statements, as quoted in an article, were "admissible as evidence" from a party opponent under Rule 801(d)(2), since the opposing police chief, during his deposition, "replied that he did" make the statements); *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 495 (D. Del. 2005) (admitting only statements in a newspaper article that a party opponent admitted during his deposition, but excluding all other statements and the article itself).  Simply put, out-of-court testimony affirming the accuracy of hearsay is itself inadmissible hearsay.  *See, e.g.*, *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 53 F. Supp. 3d 191, 211 n.21 (D.D.C. 2014), *aff'd*, 843 F.3d 958 (D.C. Cir. 2016) (witness's own out-of-court statement inadmissible if offered for its truth).

    <u>Finally</u>, in addition to their inadmissibility on hearsay grounds, the statements quoted in the articles are irrelevant.  Ms. McFarland's "personal knowledge" of information about Fannie

Mae's financial condition is wholly irrelevant to DeMarco's decision to enter into the Net Worth Sweep.  Mr. DeMarco did not discuss with Ms. McFarland his decision to execute the Net Worth Sweep, and Defendants have otherwise sought to exclude evidence of Ms. McFarland's negative reaction to the Net Worth Sweep.  Ms. McFarland's statements are likewise irrelevant to the Benson projections, Opp. at 34, which are statements of a party opponent that employees of Defendant Fannie Mae provided *directly* to FHFA and Treasury.

For the reasons articulated in Plaintiffs' Omnibus Motion in Limine No. 5 at 24-25, the Court should exclude the newspaper articles and Ms. McFarland's testimony about them because the jury is likely to consider them for their truth, with significant resulting prejudice to Plaintiffs. Indeed, Defendants' Opposition has made it even clearer that Defendants intend to offer these statements for their truth—that is, to supposedly "confirm[] the accuracy" of statements that "described her thinking at the time."  Opp. at 31, 32.  The danger of unfair prejudice resulting from this impermissible use of the articles outweighs any minimal probative value the inadmissible evidence may otherwise have.

## VI.    Reply In Support Of MIL No. 6: To Exclude Improper Use Of SEC Filings

Defendants argue that they should be permitted to introduce admittedly hearsay statements contained in SEC filings because the filings qualify as "business records" under Fed. R. Evid. 803(6).  Defendants also maintain that they should be permitted to argue to the jury that the statements must be reliable because of the potential consequences of misstatements in SEC filings. They are wrong on both fronts.

### A.    The Hearsay Statements Are Not Subject To The Business Records Exception.

Defendants do not contest that the challenged forward-looking statements in the GSEs' SEC filings are hearsay.  Opp. at 41 (referring to exceptions to the prohibition against admission

of hearsay).  They contend that the statements should nevertheless be admitted pursuant to the "business records" exception to the hearsay rule.  Defendants, however, have not remotely established that the forward-looking statements qualify for the business record exception.  Hence, they remain inadmissible hearsay.

The business records exception is designed to allow the admission of "hearsay documents that result from 'recording observable information' . . ." *Grant v. Lockett*, No. 19-469, 2021 WL 5816245, at *2 (2d Cir. Dec. 8, 2021) (quoting *Abascal v. Fleckenstein*, 820 F.3d 561, 565 (2d Cir. 2016)).  It requires, *inter alia*, that the proponent of the evidence establish, among other things, that the record was made "at or near the time by—or from information transmitted by—someone with knowledge[.]" Fed. R. Evid. 803(6)(A).

The hearsay statements Defendants seek to admit plainly do not qualify for the business records exception.  These types of forward-looking statements do not have the indicia of reliability on which the business records exception is based.  After all, the GSEs repeatedly warned shareholders that these statements are *not* references to "historical facts" and that "[a]ctual outcomes may differ materially from those reflected in our forward-looking statements . . . ." *See* Motion, Ex. 6-D (DX367) at 7.  *See also Id.* at 61 (listing among the "forward-looking statements," a reference to the GSE's "expectation that we will not earn profits in excess of our annual dividend to Treasury for the indefinite future"); Motion, Ex. 6-B at 1 (cautioning that "[t]his report contains forward-looking statements that are based on management's current expectations and are subject to significant uncertainties and changes in circumstances.").

Defendants' cases, relating to financial statements prepared under GAAP accounting rules, are inapposite.  *See, e.g.*, *SEC v. Jasper*, 678 F.3d 1116, 1123 (9th Cir. 2012) (upholding decision to admit 10-K filing, noting that "the financial statements in the 2006 10-K had to comply with

GAAP"); *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 DLC, 2005 WL 375313, at *6 (S.D.N.Y. Feb. 17, 2005) (admitting evidence of a financial misstatement in SEC filings where such filings related to historical GAAP accounting, not forward-looking assessments of expectations). Conversely here, none of the statements at issue were subject to historical reporting of revenues or other measurable metrics under GAAP, nor did any of the cases upon which Defendants rely specifically address forward-looking statements within SEC filings.

Nor have Defendants even attempted to lay a proper foundation to demonstrate that statements about the GSEs' purported expectations regarding possible future events are records of "observable information" made "by—or from information transmitted by—someone with knowledge." *See Grant*, 2021 WL 5816245, at *2 (citations omitted); *see also id.* (rejecting admission of findings of a city's "citizen review board" because they involved the subjective interpretation of source data). Indeed, the testimony Defendants rely upon, from Nicholas Satriano, merely states that "as a part of the preparation of *a quarterly financial statement*—in this case we're talking about Fannie Mae or Freddie Mac's management—has the obligation to update and have a basis for all of *the numbers* they put in their financial statements." Opp. at 43 (quoting Trial Tr. 2214:2-9) (emphasis added). Mr. Satriano's testimony about the *numbers* in a *financial statement* do not support admission of the forward-looking statements because his testimony relates to entirely different statements within the SEC filings, to wit, the historical financial statements.

Defendants also do not demonstrate that the forward-looking statements constitute a record based on someone knowledgeable about the subject. Defendants reference testimony from Mr. Satriano that the GSEs "ha[d] to file a quarterly report" after "get[ting] the go-ahead" from FHFA, which "systematically review[s] the [GSE's] draft filings," Opp. at 43 (quoting Trial Tr. 2243:10-

23), but this testimony does not establish that the specific statements about what the GSEs *expected* or *believed* about their futures was made by "someone with knowledge" at or near the time. Indeed, the admission that FHFA "systematically review[ed]" the draft filings highlights that Defendants have failed to establish that the challenged statements were made by *anyone* at the GSEs, much less anyone with the requisite knowledge, rather than by FHFA.

Finally, Defendants cannot satisfy Rule 803(6)(D) because they do not have the "testimony of the custodian or another qualified witness" to establish the "conditions" required by Rule 803(6)(A)-(C). Mr. Satriano is not the "custodian" of the GSEs' SEC filings, nor is he a "qualified witness" because there is no evidence that he has anything more than vague, generalized knowledge of the GSEs' record-keeping systems. *See, e.g.*, *Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 583 (5th Cir. 2022) (a "qualified witness is one who can explain the record keeping system of the organization and vouch that the requirements of Rule 803(6) are met." (citation omitted)). Mr. Satriano did not testify how the forward-looking statements came to be included in the GSEs' SEC filings, what information they were based on, who drafted them, nor what knowledge that person or persons had. There is no indication that Mr. Satriano has any personal knowledge of those "conditions", and therefore he is not "qualified" to provide the testimony Rule 803(6)(D) requires. Accordingly, the statements are not admissible as business records.

### B.     The Hearsay Statements Are Not Admissible Under the Residual Exception

Having failed to establish that their hearsay statements are admissible as business records, Defendants next lean on the catchall residual exception under Rule 807. This exception to the hearsay rule is "extremely narrow" and requires the evidence at issue "to be 'very important and very reliable.'" *United States v. Washington*, 106 F.3d 983, 1001 (D.C. Cir. 1997) (quoting *United States v. Kim*, 595 F.2d 755, 766 (D.C. Cir. 1979)). "Thus, the proponent of the statement bears a

heavy burden to come forward with indicia of both trustworthiness and probative force, . . ." *Id.* at 1001-02.

Defendants have not met their "heavy burden" here.  Tellingly, Defendants fail to cite a single case in which a court has admitted evidence of forward-looking risk disclosures under the residual exception.  *See* Opp. at 44 (citing *SEC v. Pattison*, No. C-08-4238 EMC, 2011 WL 2313267 (N.D. Cal. June 9, 2011)) (noting that the defendant waived argument regarding the residual exception and that the specific evidence otherwise related to a rigorous special investigation and separate audit that resulted in a restatement of a company's *financial statements*).  Indeed, Defendants have repeatedly emphasized to shareholders that the forward-looking statements are *not* necessarily accurate and that "actual outcomes" could "differ materially" from the statements the GSEs made with respect to what they expected in the future.  *See* Motion, Ex. 6-D at 7.  Moreover, given the highly unusual circumstances in which the GSEs were operating at the time—under a government-imposed conservatorship, with SEC filings subject to an interested federal agency's sign-off—Defendants have not established that the "totality of the circumstances" guarantee the "trustworthiness" of the forward-looking statements.

## C. Defendants' Attempt To Bolster The Reliability Of SEC Filings Should Not Be Permitted

The Court should reject Defendants' effort to argue that SEC filings are inherently reliable because of potential consequences of misstatements.  In their motion, Plaintiffs referenced several instances in which Defendants told the jury that the SEC filings should be believed because of potential civil or criminal liability.  In the opening argument, Defendants' counsel argued that "if what they say in that [SEC filing] is wrong and they knew it was wrong, they can go to jail."  Motion, Ex. 6-A at 349:1-11.  Similarly, in closing argument, Defendants' counsel told the jury

that they had "learned that there were civil penalties and criminal penalties if those filings were not in good order." *Id.* at 2595:20-24.

Defendants respond that their arguments were proper because forward-looking statements can be the basis for civil enforcement actions by the SEC or criminal prosecutions by the U.S. Department of Justice. Opp. at 36. Defendants miss, however, that forward-looking statements *cannot* be the basis of any civil or criminal government enforcement actions arising from the forward-looking statements in the absence of scienter. Scienter is a necessary element of any securities fraud claim or count, including those brought by the government. *SEC v. e-Smart Techs., Inc.*, 31 F. Supp. 3d 69, 80 (D.D.C. 2014). Defendants therefore cannot properly argue to the jury that "there were civil penalties and criminal penalties" merely if the SEC filings "were not in good order."

Defendants' forward-looking statements should also be excluded pursuant to Rule 403. It would be unduly prejudicial, and mislead the jury, to suggest that the jury must believe the GSE's *expectations* about *what might happen in the future* simply because of the speculative threat that the government might base an enforcement action on such forward-looking statements. Moreover, the fact that Defendants devoted over five pages of their Opposition to a lengthy recitation of the safe harbor provision proves Plaintiffs' point: Defendants' argument about the potential consequences of civil and criminal liability will require Plaintiffs to respond in kind, thus delving into unnecessary testimony on a confusing collateral issue that will waste the jury's time and require the Court to explain to the jury the intricacies of irrelevant and complex legal issues. Thus, the argument should be precluded.

Dated: June 23, 2023                          Respectfully Submitted,

*/s/ Charles J. Cooper*                        */s/ Eric L. Zagar*
Charles J. Cooper (Bar No. 24870)              Eric L. Zagar (*Pro Hac Vice*)

David H. Thompson (Bar No. 450503)
Vincent J. Colatriano (Bar No. 429562)
Peter A. Patterson (Bar No. 998668)
Brian W. Barnes (*Pro Hac Vice*)
**COOPER & KIRK, PLLC**
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Counsel for Berkley Plaintiffs, et al.*

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
280 King of Prussia Rd.
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
ezagar@ktmc.com

Hamish P.M. Hume (Bar No. 449914)
Samuel C. Kaplan (Bar No. 463350)
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave. NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
hhume@bsfllp.com
skaplan@bsfllp.com

Michael J. Barry (*Pro Hac Vice*)
John Kairis *(Pro Hac Vice)*
Rebecca Musarra *(Pro Hac Vice)*
**GRANT & EISENHOFER, P.A.**
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
mbarry@gelaw.com
jkairis@gelaw.com
rmusarra@gelaw.com

Adam Wierzbowski (*Pro Hac Vice*)
**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
adam@blbglaw.com

*Co-Lead Counsel for the Class*