**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| BERKLEY INSURANCE CO., et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>THE FEDERAL HOUSING FINANCE AGENCY, et al.,<br><br>*Defendants.* | Case No. 1:13-cv-1053-RCL |
| IN RE FANNIE MAE/FREDDIE MAC SENIOR PREFERRED STOCK PURCHASE AGREEMENT CLASS ACTION LITIGATIONS<br>_____<br><br>This document relates to:<br>ALL CASES | Case No. 1:13-mc-1288-RCL |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION IN LIMINE FOR ADMISSION OF PX-0550, PX-0226, PX-0562, PX-0274, AND PX-0279**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 4

    I.     PX-0550 And PX-0562 Should Be Admitted. ....................................................... 4

           A.     Both PX-0550 And PX-0562 Are Admissible Under FRE 803(8). ............ 4

           B.     PX-0550 Is Also Admissible Under FRE 803(3). ................................... 6

           C.     PX-0562 Is Also Admissible For A Non-Hearsay Purpose. ....................... 8

           D.     Defendants' FRE 403 Argument Is Meritless. ........................................... 8

    II.    PX-0226, PX-0274, And PX-0279 Should Be Admitted. ..................................... 9

           A.     Plaintiffs Have Provided Additional Factual Support For The Documents' Reliability, To Which Defendants Have Failed To Respond. ................... 9

           B.     The Statements Plaintiffs Seek To Admit In PX-0226, PX-0274, And PX-0279 Are Not Barred By The Rule Against Hearsay. ............................... 11

                  1.     The Statements Are Not Offered for Their Truth. ........................ 11

                  2.     The Statements Satisfy FRE 803(3). ............................................. 11

                  3.     Defendants' Other Hearsay Concerns Are Without Merit. ............ 13

           C.     Defendants' FRE 402 And 403 Arguments Fail. ....................................... 14

CONCLUSION ................................................................................................................... 15

ADDENDUM A ................................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Clark v. United States*,
    412 A.2d 21 (D.C. 1980) ............................................................................................. 7, 12

*In re 3M Combat Arms Earplug Products Liability Litigation*,
    2021 U.S. Dist. LEXIS 61902 (N.D. Fla. Mar. 25, 2021) ...................................................... 6

*Mut. Life Ins. Co. of New York v. Hillmon*,
    145 U.S. 285 (1892).................................................................................................... 7

*United States v. Akers*,
    702 F.2d 1145(D.C. Cir. 1983) ....................................................................................... 1

*United States v. Best*,
    219 F.3d 192 2d Cir. 2000)........................................................................................... 12

*United States v. Bishop*,
    291 F.3d 1100 (9th Cir. 2002) ...................................................................................... 12

*United States v. Lentz*,
    282 F. Supp. 2d 399 (E.D. Va. 2002) ............................................................................... 7

*United States v. Sanders*,
    485 F.3d 654 (D.C. Cir. 2007) ................................................................................... 1, 2, 3

**Rules**

Fed. R. Evid. 803(8)(A)(i) ..................................................................................... passim

**Treatises**

Fed. Prac. & Proc. Evid. § 6835 (2023 ed.) ..................................................................... 7, 11

MCCORMICK ON EVIDENCE § 294, at 844 (3d ed. 1984)...................................................... 12

Plaintiffs, by and through their undersigned counsel, respectfully submit this reply memorandum in further support of their Motion In Limine for Admission of PX 550, PX 226, PX 562, PX 274, and PX 279 ("Plaintiffs' Motion" or "Pls.' Mot.").[1]

## **INTRODUCTION**

Defendants invoke the law of the case doctrine, but the doctrine does not bar Plaintiffs' motion. Two of the five documents addressed in the motion (PX 550 and 562) were not the subject of prior rulings, so the doctrine is obviously irrelevant as to them. As to the other three, the D.C. Circuit has squarely held that where, as here, a second trial follows a mistrial, the "law of the case" doctrine is not applicable to issues governing admissibility of evidence at the second trial. *See United States v. Akers*, 702 F.2d 1145, 1147-48 (D.C. Cir. 1983). Rather, "the previous trial is a nullity" and "the Court in the new trial tries the case as if it were being tried for the first time." *Id.*[2] Further, these three exhibits were addressed in mid-trial evidentiary rulings. As set forth in Plaintiffs' Motion and as Defendants acknowledge, "for mid-trial evidentiary rulings, a new trial will result in different factual and evidentiary circumstances occasioning a new exercise of the district court's discretion." *United States v. Sanders*, 485 F.3d 654, 657 (D.C. Cir. 2007).

In addition, the Court's prior decision was at least in part based on Plaintiffs' failure to provide a proper understanding of the roles of Messrs. Bowler and Parrott. Pls.' Mot. Ex. G (Trial Tr.) at 1574:25-1575:17 (referring to Mr. Bowler's involvement in the Third Amendment negotiations). Plaintiffs have provided substantial additional evidence that was not presented to

---

[1] Class ECF No. 294 (1:13-mc-01288-RCL); *Berkley* ECF No. 308 (1:13-cv-01053-RCL). Unless otherwise specified, exhibits referred to herein refer to exhibits attached to Plaintiffs' Motion. PX 550, PX 226, PX 562, PX 274, and PX 279 are attached to Plaintiffs' Motion as Exhibits A-E.

[2] Further, as the Court is aware, the Parties specifically negotiated for a pre-trial schedule that contemplated the ability to re-visit evidentiary rulings from Trial 1 for that very reason. *See* Stipulated Order, ECF No. 282, 1:13-mc-01288-RCL.

the Court in connection with the prior rulings, and that demonstrates the central roles played by both Bowler and Parrott.  Defendants do not even attempt to rebut that evidence.  Instead, they devote the bulk of their opposition to hearsay arguments this Court did not address in its prior decisions on PX 226, 274, and 279.  Those arguments have no merit, as shown below.

Further, Plaintiffs have pointed to significantly "different factual and evidentiary circumstances" that justify a fresh analysis of these documents.  *Sanders*, 485 F.3d at 657.  First, Plaintiffs have put forward a new exhibit, not used in the prior trial, demonstrating that FHFA Acting Director DeMarco reviewed and provided edits on the Treasury press release for the Third Amendment – providing further evidence of the essential connection between Treasury's intent to use the Net Worth Sweep to demonstrate a "wind down" and FHFA's own knowledge and understanding before it executed the amendment.  Pls.' Mot. at Ex. E (PX-0562).  The press release DeMarco reviewed before executing the Third Amendment (like the final release admitted at trial) stated that the Third Amendment "will help expedite the wind down of Fannie Mae and Freddie Mac;" it will "make sure that every dollar of earnings each firm generates is used to benefit taxpayers;" and "the GSEs will be wound down and **will not be allowed to retain profits, rebuild capital, and return to the market in their prior form**."  *Id*. (emphasis added).  These purposes set forth a rationale for the Third Amendment that is inconsistent with (a) the 2008 FHFA statements as to the purposes of the conservatorship, (b) the 2013 sworn declaration of Mario Ugoletti as to the reasons for the Net Worth Sweep, and (c) DeMarco's trial testimony.  Plaintiffs are entitled to have this evidence admitted to confront DeMarco with how he reconciled his stated intentions for agreeing to the Net Worth Sweep with those of Treasury.

Second, Plaintiffs' motion presented other documents that were admitted at the prior trial but that were not discussed in support of showing the admissibility of the exhibits addressed in

this motion.  Those documents further confirm that FHFA and Treasury had "common goals" to "provide the public with a clear plan to wind down the GSEs."  Pls.' Mot. at Ex. U (PX-0144); Pls.' Mot. at 7-9.  They include an email sent by FHFA accountant Griffin shortly after a meeting with DeMarco in which he tells his boss Nicholas Satriano that the Third Amendment was to "demonstrate wind down."  Pls.' Mot. at Ex. W (PX-0259).

Third, PX-0259 connects to another new point that creates "different factual and evidentiary circumstances" surrounding the admissibility of the documents at issue here.  *Sanders*, 485 F.3d at 657.  During Defendants' case, after the Court had rejected the admissibility of PX-0226, PX-0274, and PX-0279, Mr. Satriano testified that he understood the words "demonstrate wind down" to refer exclusively to the accelerated shrinkage of the GSEs' retained portfolio, and ***not*** to the Net Worth Sweep.  Pls.' Mot. at 16; Pls.' Mot. at Ex. G (Tr. 2235:11-2236:16).  The documents addressed in this motion are relevant in showing that the other officials involved in the Third Amendment had a different – and far more plausible and common sense – understanding, and understood that the Net Worth Sweep was central to demonstrating a wind down – since it ensures the GSEs "**will not be allowed to retain profits, rebuild capital, and return to the market in their prior form**."  PX-0562 (emphasis added); *see also* PX-0274 & PX-0279.  Plaintiffs' Motion discussed this evidence in detail, and discussed the relevance of this evidence to rebutting Satriano's testimony.  *See* Pls.' Mot. at 2, 15-16, 18, 25-26, 28.  Defendants do not address the point at all.  Their response does not mention Satriano.

At the last trial, Defendants repeatedly resisted admission of PX-0226, PX-0274, and PX-279 by arguing there was "no evidence" that the statement of purpose and intent found in these

Treasury and White House emails were shared with or by FHFA.[3]  Plaintiffs have now shown that to be false.  The Court should rule the documents admissible to show the intent of Treasury and the Administration, and to allow Plaintiffs to ask the jury if it believes that DeMarco, Satriano, and Ugoletti truly had a completely different intent and understanding regarding the Net Worth Sweep.

## ARGUMENT

### I.  PX-0550 And PX-0562 Should Be Admitted.

Defendants offer no compelling reason why PX-0550 and PX-0562, which Plaintiffs did not offer in the first trial, should not be admitted in the retrial.  Rather, Defendants misleadingly characterize Mr. Bowler as unimportant, or deflect by focusing on portions of the documents that are transparently extraneous to Plaintiffs' purposes.  PX-0550 and PX-0562 should be admitted.

#### A.  Both PX-0550 And PX-0562 Are Admissible Under FRE 803(8).

Both PX-0550 and PX-0562 are admissible as public records under FRE 803(8).  As the Court is aware, an out of court statement is admissible under FRE 803(8) where it is a "record or statement of a public office" that "sets out … the office's activities."  Fed. R. Evid. 803(8)(A)(i).

PX-0550 is an email from Mr. Bowler attaching a "PSPA Covenant and Timing Proposal" setting forth that the "Treasury housing team recommends finalizing the PSPA agreement changes next Friday" and sets forth the "key elements of the plan" and the rationales therefor.  This memorandum sets forth the Treasury housing team's real-time recommendations and the reasoning behind them, and is therefore a public record that "memorialize[s] Treasury's activities as they

---

[3]  Class ECF No. 236; *Berkley* ECF No. 232 (Defs.' Opp'n to Pls.' Mot. to Admit PX-0226) at 2-3 ("Even if it could be established that someone at Treasury thought that it made sense to push for the Third Amendment, there is no indication on the face of the document that either the document itself or the thrust of its contents was ever shared with FHFA."); Class ECF No. 178; *Berkley* ECF No. 184 (Defs.' Mot. in Limine to Exclude Evidence of Motive and Intent of Treasury and White House Not Communicated to FHFA) at 5-9.

ostensibly occurred."[4]   Indeed, PX-0550 is substantially similar to PX-0227, another Treasury

document that was admitted in the first trial.[5]  Like PX-0550, PX-0227 is a Treasury memorandum

from Bowler setting forth recommended changes to the PSPAs and rationale for the changes and

timing thereof.  PX-0550 contains nearly identical language as PX-0227, and should therefore be

treated likewise and admitted under Rule 803(8)(A)(i).  PX-0550 is not cumulative of PX-0227

because it offers additional context regarding the timing of Treasury's push to finalize the PSPA

amendments, confirmed by DeMarco's testimony that the push came from Treasury and the email

communications from Ugoletti concerning that push.  *See* Plaintiffs' Motion at 12-14.

PX-0562 memorializes Treasury Department officials' finalization of a public press release

announcing the Third Amendment.  The draft press release was in its final form during the evening

of August 16, 2012, before Treasury released it publicly the next morning, and no changes were

made between the version that appears in PX-0562 and the as-issued release.[6]  The document

demonstrates that Mr. DeMarco provided "final edits" to the press release the evening before it

was released.  This is evidence that Mr. DeMarco was aware, before the Net Worth Sweep was

executed, that Treasury's motive in pushing the Net Worth Sweep was to expedite the wind down

of the GSEs, as the release specifically states that (1) the Third Amendment "will help expedite

the wind down of Fannie Mae and Freddie Mac," (2) it will "make sure that every dollar of earnings

each firm generates is used to benefit taxpayers;" and (3) "the GSEs will be wound down and will

---

[4] *Fairholme Funds, Inc.*, 2022 WL 13937460, at *4 ("But other documents actually memorialize Treasury activities as they ostensibly occurred . . . Defendants offer no persuasive explanation as to why that document or others like it would not be a record setting out an agency's activities within the meaning of Rule 803(8)(A)(i).").

[5] *See* Trial Tr. at 1802:7–1805:12 (trial transcripts are docketed as ECF Nos. 263-289 on the *Berkley* docket, No. 1:13-cv-1053-RCL).  PX-0227 is attached to Plaintiffs' Motion as Exhibit R.

[6] The as-issued press release was admitted at trial at PX-0278.  *See* Trial Tr. at 1810:19-24.

not be allowed to retain profits, rebuild capital, and return to the market in their prior form." PX-562 at 2-3.

PX-0562 is admissible as a public record because gathering input from FHFA and finalizing a Treasury press release concerning the PSPAs is an activity of the Treasury Department, and PX-0562 memorializes that activity as it occurred.[7] Defendants' complaint that PX-0562 contains embedded hearsay statements by other Treasury employees, *see* Opposition at 15, is nonsense. First, the final as-issued press release is a verbatim copy of the final draft contained in PX-0562 and it was admitted without objection. Accordingly, Defendants cannot seriously argue the draft release is itself hearsay.[8] Second, statements other than the one confirming that Mr. DeMarco provided input are not relevant to the purpose for which Plaintiff seeks to admit PX-0562, and will not cause any juror confusion.[9]

## B. PX-0550 Is Also Admissible Under FRE 803(3).

PX-0550 is also admissible pursuant to FRE 803(3) as setting forth Mr. Bowler's (and the Treasury housing team's) then existing "motive, intent, and plan" to modify the PSPAs in the future. Statements of intent to perform a future act are admissible "state of mind" testimony under

---

[7] *Fairholme Funds, Inc.*, 2022 WL 13937460, at *4. *See also In re 3M Combat Arms Earplug Products Liability Litigation,* No. 3:19-md-2885, 2021 U.S. Dist. LEXIS 61902 (N.D. Fla. Mar. 25, 2021) (admitting email communications under FRE 803(8) discussing a wide array of topics relating to the agency's activities). Additionally, the fact that the email touches on DeMarco's involvement in those activities does not vitiate its status as a public record of Treasury. *See id.* (explaining that FHFA involvement "does not mean that any Treasury document otherwise admissible as a public record . . . is inadmissible simply because its description of Treasury business *also* includes information about FHFA.").

[8] Trial Tr. at 1810:19-24.

[9] The supposedly offending statements merely note that the release would go live the next morning, and the hyperlinks at the bottom would be finalized at that time. Defendants cannot seriously contend that such immaterial statements render an otherwise admissible public record unreliable. Regardless, the top two emails in the thread can be redacted to appease Defendants' concerns, if necessary.

Rule 803(3).  *See Clark v. United States*, 412 A.2d 21, 26 (D.C. 1980).  PX-0550 sets forth Bowler's and the Treasury housing team's intention to amend the PSPAs imminently, and it includes messaging regarding the motivation for the desire to do so.  PX-0550, therefore, is a document that conveys an intent to perform an act in the future, which is admissible under FRE 803(3).  *Id.*

Defendants recharacterize these statements of "motive, intent and plan" as "statements of…belief to prove the fact…..believed," in an effort to disqualify the statements from admission under FRE 803(3)'s exceptions.  Opposition at 14-15.  This is wrong.  The statements in PX-0550 evidence a plan to perform an act, not a statement of belief of a fact.  The only facts are the motive, plan, and intent themselves.   If parties were permitted to recharacterize a statement of motive into a statement of belief in the fact of the motive, no statement of motive, intent, or plan could ever be admitted.  That is not the role of the exception in FRE 803(3).  *See* 30B Fed. Prac. & Proc. Evid. § 6835 (2023 ed.) ("Rule 803(3)'s use of the word "belief" . . . was intended to prohibit the admission of backwards-looking statements that express the declarant's conjecture about past facts. . . . This symmetry of purpose between the roles of 'memory' and 'belief' in Rule 803 (3)'s text illuminates the proper interpretation of the latter term. It is only when the out-of-court statement relates a "past act" remembered or believed that the caveat is triggered.").[10]  PX-0550 contains no backward-looking statement of "belief" as to any past fact.  Rather, it reflects the Treasury housing team's then-existing plans and intent to amend the PSPAs.

---

[10] *See also, e.g.*, *United States v. Lentz*, 282 F. Supp. 2d 399, 411 (E.D. Va. 2002), *aff'd*, 58 F. App'x 961 (4th Cir. 2003) ("a statement is admissible whenever the declarant's intention itself is a distinct and material fact in the chain of circumstances"); *Mut. Life Ins. Co. of New York v. Hillmon*, 145 U.S. 285, 295 (1892) ("But whenever the intention is of itself a distinct and material fact in a chain of circumstances, it may be proved by contemporaneous oral or written declarations of the party.")

### C.      PX-0562 Is Also Admissible For A Non-Hearsay Purpose.

PX-0562 shows that prior to his execution of the Third Amendment, DeMarco was aware of Treasury's intent for the Net Worth Sweep to be a measure that would "expedite wind down" of the GSEs, and actively edited the document (without making any adjustments to the part about wind-down).  As stated in Plaintiffs' Motion:  "the fact that Mr. DeMarco received and edited the Treasury press release is also relevant regardless of the truth of the press release, as it shows the close coordination between the agencies and is relevant to show the manner in which FHFA negotiated and rolled out the Third Amendment with Treasury."  *See* Pls.' Mot. at 29 (citing *Hillie*, 39 F.4th at 692-93; *Churn*, 800 F.3d at 776).  Defendants fail to respond to this independent ground for admission of PX-0562.

Instead, Defendants try to distract from the relevance of PX-0562 by contending that Mr. DeMarco did not "adopt" Treasury's statements in the press release, that it is unclear which edits were DeMarco's, and that the release may have been amended after those edits.  Opposition at 16-18.  These assertions are both incorrect and irrelevant.  The email plainly states it is the "final PSPA press release" and "reflects edits from Acting FHFA Director DeMarco," and, thus, there can be no dispute that Mr. DeMarco saw the release, including the statements highlighted above, before the release was issued.  That is the essential point:  Mr. DeMarco cannot deny that he knew what Treasury's intent was.  At the first trial, the Court excluded Treasury documents based on the strenuous arguments of Defendants that there was no evidence showing FHFA knew what Treasury thought.  PX-0562 disproves that.  It must be admitted, and it helps show why the other documents addressed in this motion must also be admitted.

### D.      Defendants' FRE 403 Argument Is Meritless.

Defendants suggest that statements in Executive Branch documents are inherently unreliable because "a multitude of complex considerations—including political and partisan

considerations—may drive the Executive Branch's public messaging," and the "documents threaten to blur the critical distinction between how a government agency decides to craft public messaging around an action and what motivated the government agency to take that action." Opposition at 17.  Defendants offer no evidence that PX-0550 or PX-0562 are unreliable or in any way fail to reflect the Treasury's actual motive and intent in pursuing the Third Amendment.  To the contrary, the written record overwhelmingly shows that these documents accurately reflect the intent behind the Net Worth Sweep.  It is Plaintiffs and the interests of justice that will be prejudiced if these documents are excluded.

## II.      PX-0226, PX-0274, And PX-0279 Should Be Admitted.

Each of PX-0226, PX-0274, and PX-0279 should be admitted because they are relevant to and probative of the central issue in this trial: whether FHFA's actions in agreeing to the Net Worth Sweep were inconsistent with the reasonable contractual expectations of shareholders.

### A.      Plaintiffs Have Provided Additional Factual Support For The Documents' Reliability, To Which Defendants Have Failed To Respond.

As explained in Plaintiffs' Motion, Treasury's purpose and intent for pushing the Net Worth Sweep in August 2012 are relevant to Plaintiffs' claims because Treasury pushed the timing, and FHFA acquiesced.  Further, Plaintiffs' Motion has put forward a more fulsome record than previously presented showing that Treasury and FHFA shared a common intent to "wind down" the GSEs and "will not be allowed to retain profits, rebuild capital, and return to the market in their prior form."  PX-0562; *see also* Pls.' Mot. at 7-9 and Ex. U (PX-0144) ("FHFA and Treasury share common goals to … provide the public and financial markets with a clear plan to wind down the GSEs.").  PX-0226, PX-0274, and PX-0279 confirm that the purpose of the Net Worth Sweep was to fulfill this common plan.

At the first trial, in declining to admit these documents, the Court's rulings included references to the authors of the documents not being sufficiently central to the negotiation process to render their statements trustworthy reflections of the Administration's positions. *See* Pls.' Mot. at 22-23. Through the Motion, Plaintiffs hope to have done a much better and more complete job of specifically identifying the facts in the record to alleviate the Court's concern regarding the pertinent speakers in these exhibits. *See* Pls.' Mot. at 9-12, 22-24. In their Opposition, Defendants completely fail to address, dispute, or rebut what Plaintiffs set forth in this regard regarding the central roles of Messrs. Bowler and Parrott in connection with the Third Amendment.

Indeed, as if to distract from the improved presentation Plaintiffs have put forward, Defendants effectively refuse to acknowledge Mr. Bowler or Mr. Parrott's identities at all, consistently referring to them merely as "mid-level Treasury and White House employees," despite the important role each played, as demonstrated in Plaintiff's Motion. *E.g.*, Opposition at 12. This ostrich-like approach fails to acknowledge that Mario Ugoletti, FHFA's own primary Third Amendment negotiator, specifically identified Mr. Bowler as his direct counterpart and Treasury's primary negotiator in Third Amendment discussions. Pls.' Mot. at 10. Mr. Bowler thus routinely spoke to FHFA *on behalf of Treasury* during Third Amendment negotiations. Likewise, Mr. Parrott was Mr. Bowler's "primary point of contact" at the White House and was the primary official at the National Economic Council to whom Treasury proposed the specifics of the Third Amendment. Pls.' Mot. at 11-12. These facts, which are uncontested, demonstrate that each of Messrs. Bowler and Parrott were central figures in negotiations over the Third Amendment, and thus their statements in PX-0226, PX-0274, and PX-0279 are reliable evidence of Treasury's and the White House's positions in authorizing and executing the Third Amendment.

**B.**    **The Statements Plaintiffs Seek To Admit In PX-0226, PX-0274, And PX-0279 Are Not Barred By The Rule Against Hearsay.**

      **1.**    **The Statements Are Not Offered for Their Truth.**

In their Opposition, Defendants seek to characterize Plaintiffs' non-hearsay purpose as an about-face from the first trial, Opposition at 4-5, but Defendants are wrong.  Plaintiffs' argument that their only purpose for admitting the documents is a non-hearsay purpose has not changed from the first trial.[11]  Plaintiffs have always sought to admit these documents to establish the motivation and intent of the White House and Treasury in pursuing, authorizing, and executing the Third Amendment.  *See* Pls.' Mot. at 15-16.

      **2.**    **The Statements Satisfy FRE 803(3).**

PX-0226, PX-0274, and PX-0279 are probative of Treasury and the White House's "motive, plan, and intent" in pursuing, authorizing, and executing the Third Amendment.  That means they plainly fall within FRE 803(3) and are inadmissible.  Defendants try to resist this with their excessively expansive use of the exception to 803(3) for "statements of memory or belief to prove the fact remembered or believed."  This argument is baseless.

As shown above in Section I(B), the exception at the end of FRE 803(3) "was intended to prohibit the admission of backwards-looking statements that express the declarant's conjecture about past facts." 30B Fed. Prac. & Proc. Evid. § 6835 (2023 ed.) ("It is only when the out-of-court statement relates a 'past act' remembered or believed that the caveat is triggered.").

The statements Plaintiffs seek to admit have nothing to do with statements of belief about past facts.  Rather, they are statements conveying a *present intent* to perform an act in the *future*,

---

[11] *See* Plaintiffs' Motion in Limine to Admit Evidence Pursuant to F.R.E. 801 and 803, at 23, and Plaintiffs' Reply in Support of Motion in Limine to Admit Evidence Pursuant to F.R.E. 801 and 803, at 13 (alleging a non-hearsay purpose with respect to PX-0226, referred to as Exhibit A-16).

which are clearly admissible.  *See Clark v. United States*, 412 A.2d 21, 26 (D.C. 1980) ("A third type of statement admissible under the state-of-mind exception conveys the intent of the declarant to perform an act in the future, where there is an issue as to whether in fact the act later was performed.  Thus, if the 'intention is of itself a distinct and material fact in a chain of circumstances, it may be proved by contemporaneous oral or written declarations of the party.'") (citations omitted); *United States v. Best*, 219 F.3d 192, 198 (2d Cir. 2000) ("A declarant's out-of-court statement as to his intent to perform a certain act in the future is not excludable on hearsay grounds."); *United States v. Bishop*, 291 F.3d 1100, 1110 (9th Cir. 2002) ("Statements of intent to perform a future act are admissible 'state of mind' testimony under Rule 803(3)"); *see also* MCCORMICK ON EVIDENCE § 294, at 844 (3d ed. 1984) (special assurance of reliability rests on spontaneity and probable sincerity of statement).

Bowler's statement in PX-0226, for example, is admissible under FRE 803(3) because it evidences Bowler's intent and state of mind as of July 31, 2012, *i.e.*, his thought that it "really makes sense to push the net worth sweep this quarter" minutes after he received news of the GSEs' positive earnings.  *Clark*, 412 A.2d at 25 ("the state of mind exception to the hearsay rule allows the admission of extra-judicial statements to show the state of mind of the declarant.").  That statement demonstrates his intent to push the Net Worth Sweep that quarter, which he in fact did just days later, as set forth in Plaintiffs' Motion.  *See* Pls.' Mot. at 13-14 (explaining that Bowler began the push a week later on August 8, 2012).  Contrary to Defendants' Opposition, nothing in Bowler's statement that it "really makes sense to push the net worth sweep this quarter" describes "what caused the state of mind."  The statement is merely an admissible statement of his then-present intention to push the Net Worth Sweep.

Similarly, Parrott's statements in PX-0274 and PX-0279 are not statements of memory or belief.  In the statements, Parrott explicitly confirms the "intent" of the Third Amendment from his perspective as the only White House liaison to Treasury involved in Third Amendment negotiations.  Parrott confirms the "intent" was "exactly" as described in Mr. Wallison's quote in Bloomberg: to deprive the GSEs of their ability to recapitalize themselves through earnings.  *See* Pls.' Mot. at 14-15, 28.  Parrott's statements are therefore quintessential statements of motive and intent, which are admissible under Rule 803(3).

### 3.   Defendants' Other Hearsay Concerns Are Without Merit.

Finally, Defendants' Opposition points to a litany of statements within PX-0226, PX-0274, and PX-0279 that Plaintiffs are obviously not seeking to admit or use, making the argument that a hearsay exception must be found for each of those statements to admit any portion of the documents.  *See* Opposition at 7-9.  Again, Defendants are wrong.  Plaintiffs do not seek to admit those ancillary statements for *any* purpose, much less a hearsay purpose.  Nonetheless, to dispense with any hearsay concerns, Plaintiffs are willing to redact the allegedly hearsay statements identified by Defendants and listed in Addendum A.

In PX-0226, Plaintiffs are seeking to admit only Bowler's 10:52 AM email stating that it "really makes sense to push the net worth sweep this quarter" in response to the bottom email from FHFA (which was admitted at the first trial) concerning Fannie Mae's and Freddie Mac's earnings.

In PX-0274, Plaintiffs seek to admit only the 5:32 PM email containing the statement:

> what wallison told bloomberg
>
> "The most significant issue here is whether Fannie and Freddie will come back to life because their profits will enable them to re-capitalize themselves and then it will look as though it is feasible for them to return as private companies backed by the government," Wallison said in a telephone interview. "What the Treasury Department seems to be doing here, and I

think it's a really good idea, is to deprive them of all their capital so that doesn't happen."

And in PX-0279, Plaintiffs seek to admit only the bottom email and 6:01 PM email from Parrott to Peter Wallison where Parrot confirmed Wallison's understanding of the intent of the Third Amendment, stating "Good comment in Bloomberg – you are exactly right on substance and intent."

### C.    Defendants' FRE 402 And 403 Arguments Fail.

Defendants argue that, hearsay issues aside, PX-0226, PX-0274, and PX-0279 should be excluded on FRE 402 and 403 grounds.  Opposition at 11-13.  Much of Defendants' argument relies on the false premise that the statements at issue were made by an unimportant "mid-level Treasury employee" and thus purportedly "do not speak to Treasury's negotiating position with FHFA," "pressure on FHFA," or "reflect the position of the Treasury Department or the White House."  But as discussed above, Plaintiffs have addressed this concern by offering detailed facts concerning the central role in negotiations played by both Messrs. Bowler and Parrott, which Defendants have not disputed in any way.  For example, as the primary negotiator for Treasury, Mr. Bowler was in a better position than anyone else to "speak to Treasury's negotiating position with FHFA" (*see* Opposition at 12), and PX-0240 and PX-0247 confirm that Bowler in fact followed through on the "push" with Ugoletti only days later.[12]   Contrary to Defendants' mischaracterizations, Plaintiffs have demonstrated Bowler and Parrott's direct roles in the Third Amendment, making their statements highly relevant.

---

[12] PX-0240 is attached to Plaintiffs' Motion as Exhibit T; PX-0247 is attached to Plaintiffs' Motion as Exhibit F.

## CONCLUSION

For the foregoing reasons, the documents marked as PX-0226, PX-0274, PX-0279, PX-0562, and PX-0550 should be ruled admissible at trial.

Dated: June 23, 2023                    Respectfully submitted,

*/s/ Charles J. Cooper*                    */s/ Hamish P.M. Hume*
Charles J. Cooper (Bar No. 24870)          Eric L. Zagar (*Pro Hac Vice*)
David H. Thompson (Bar No. 450503)         **KESSLER TOPAZ**
Vincent J. Colatriano (Bar No. 429562)       **MELTZER & CHECK, LLP**
Peter A. Patterson (Bar No. 998668)        280 King of Prussia Rd.
Brian W. Barnes (*Pro Hac Vice*)           Radnor, PA 19087
**COOPER & KIRK, PLLC**                    Tel: (610) 667-7706
1523 New Hampshire Avenue, N.W.            Fax: (610) 667-7056
Washington, DC 20036                       ezagar@ktmc.com
Tel: (202) 220-9600
Fax: (202) 220-9601                        Hamish P.M. Hume (Bar No. 449914)
ccooper@cooperkirk.com                     Samuel C. Kaplan (Bar No. 463350)
                                           **BOIES SCHILLER FLEXNER LLP**
*Counsel for Berkley Plaintiffs, et al.*   1401 New York Ave. NW
                                           Washington, DC 20005
                                           Tel: (202) 237-2727
                                           Fax: (202) 237-6131
                                           hhume@bsfllp.com
                                           skaplan@bsfllp.com

                                           Michael J. Barry (*Pro Hac Vice*)
                                           **GRANT & EISENHOFER, P.A.**
                                           123 Justison Street
                                           Wilmington, DE 19801
                                           Tel: (302) 622-7000
                                           Fax: (302) 622-7100
                                           mbarry@gelaw.com

                                           Adam Wierzbowski (*Pro Hac Vice*)
                                           **BERNSTEIN LITOWITZ BERGER**
                                             **& GROSSMANN LLP**
                                           1251 Avenue of the Americas
                                           New York, NY 10020
                                           Tel: (212) 554-1400
                                           Fax: (212) 554-1444
                                           adam@blbglaw.com

                                           *Co-Lead Counsel for the Class*

-15-

## ADDENDUM A

## STATEMENTS IDENTIFIED BY DEFENDANTS PLAINTIFFS AGREE TO REDACT

- "My understanding is much of this is from reserve releases based on lower severity realizations on foreclosed properties. Importantly, I believe that Fannie used experiences from the last 3 months, whereas Freddie used for the last 6 months (there [sic] chief accountant mentioned this in passing after a npl meeting). I think this is what may have driven a higher NI number for Fannie, though it's book is bigger anyways as well and has more . . . ."  PX 226 at 1.

- "But based on the discussions I had this morning with other experts in the field, the consensus is that this essentially removes any pressure points to do something eventually with them and puts it well after 16."  PX 274 at 3.

- "[Y]our preference would be to continue to have them pay a dividend that in any given month either requires them to eat into their headroom under the caps (after next year), scaring the hell out of the market, or pays less than their profits in that quarter, allowing them to recapitalize?"  PX 274 at 3.

- "I saw the Treasury press release, and responded to a call from Bloomberg, but did not have an opportunity to discuss my views with friends on the Hill."  PX 279 at 2.

- "Incidentally, Jim, as the portfolios are wound down on an accelerated basis, are profits from that also paid to the Treasury as dividends?"  PX 279 at 1.