# EXHIBIT A

```
                    BEFORE THE UNITED STATES DISTRICT COURT
                         FOR THE DISTRICT OF COLUMBIA


 FAIRHOLME FUNDS, INC., et al.,     .
                                    .
         Plaintiffs,                .
                                    .
      vs.                           .  Case Number 13-cv-1053
                                    .
 FEDERAL HOUSING FINANCE AGENCY,    .
 et al.,                            .
                                    .
         Defendants.                .
 - - - - - - - - - - - - - - - - -
 In re FANNIE MAE/FREDDIE MAC       .  Case Number 13-mc-1288
 SENIOR PREFERRED STOCK PURCHASE    .
 AGREEMENT CLASS ACTION             .  Washington, D.C.
 LITIGATIONS.                       .  October 18, 2022
 - - - - - - - - - - - - - - - - -     2:19 p.m.


             TRANSCRIPT OF JURY TRIAL, AFTERNOON SESSION
                 BEFORE THE HONORABLE ROYCE C. LAMBERTH
                     UNITED STATES DISTRICT JUDGE


 APPEARANCES:

 For Berkley Plaintiffs:     BRIAN BARNES, ESQ.
                             Cooper & Kirk, PLLC
                             1523 New Hampshire Avenue Northwest
                             Washington, D.C. 20036

 For Class Plaintiffs:       LEE RUDY, ESQ.
                             Kessler Topaz Meltzer & Check, LLP
                             280 King of Prussia Road
                             Radnor, Pennsylvania 19087

                             HAMISH HUME, ESQ.
                             SAMUEL KAPLAN, ESQ.
                             KENYA DAVIS, ESQ.
                             Boies Schiller Flexner LLP
                             1401 New York Avenue Northwest
                             Washington, D.C. 20005


                            -- continued --
```

1   FHFA was taking action to protect the United States economy.
2   And FHFA was taking action to protect the American public.
3          And you're going to learn that FHFA had an obligation to
4   act in the public interest.  And the evidence will show you that
5   when FHFA put the public interest first, when FHFA agreed to the
6   Third Amendment and the net worth sweep ahead of the interests
7   of private shareholders to save the economy, that action was
8   completely reasonable.
9          And that, members of the jury, is going to be the key to
10  this case, because the evidence will show you that any
11  reasonable shareholder would have known that FHFA was going to
12  act in the public interest, even if that meant private
13  shareholders might lose money or dividends.
14         And you will learn that when FHFA acted as conservator and
15  agreed to the Third Amendment and the net worth sweep, that
16  action in the public interest was completely in line with
17  shareholders' reasonable expectations.
18         You are going to learn that reasonable shareholders knew
19  that they shouldn't expect dividends, because not a single
20  shareholder, not one, not a single shareholder of Fannie and
21  Freddie had received a penny of dividends for years before the
22  Third Amendment went into effect.  Shareholders knew that FHFA
23  as conservator could make decisions in the public interest, even
24  at shareholder expense.
25         Now, Mr. Hume talked to you about Mr. DeMarco, and I'm

1  whether he could afford to take any risk with the fate of the
2  economy hanging in the balance.
3      The evidence will show you, there's no dispute, that the
4  circular draws were eroding the Treasury commitment.  And
5  there's no dispute that that erosion put the economy at risk.
6  The evidence is going to show you, members of the jury, that by
7  agreeing to the Third Amendment and the net worth sweep,
8  Mr. DeMarco and FHFA, acting as conservator, completely
9  eliminated that risk.  They took it down to zero.
10     Mr. DeMarco is going to explain that he understood and
11 understood deeply that FHFA was given the responsibility to act
12 in the public interest first and foremost.  He's going to tell
13 you that that meant that he had to figure out a way to eliminate
14 the circular draws and the problem of erosion.
15     So how did the Third Amendment work?  How did the Third
16 Amendment and the net worth sweep eliminate that risk of
17 circular draws?  Well, the key to the Third Amendment is that it
18 changed the way that Fannie and Freddie made dividend payments
19 to Treasury.  The Third Amendment eliminated the risk of
20 circular draws and eliminated that risk completely, because the
21 real problem had been the fixed dividend.  You remember that the
22 evidence will show that the fixed dividend required payments
23 from Fannie and Freddie of 10 percent, even in quarters when
24 they couldn't cover those payments on their own and then had to
25 draw on the Treasury commitment to pay the dividend.

```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF COLUMBIA

FAIRHOLME FUNDS, INC., ET AL., et al,   Civil Action
                                        No. 1:13-1053
           Plaintiffs,

      vs.
                                        October 20, 2022
FEDERAL HOUSING FINANCE                 1:40 p.m.
     AGENCY, et al,                     Washington, DC



              Defendants.
_____

In re: FANNIE MAE/FREDDIE MAC           Civil Action
SENIOR PREFERRED STOCK PURCHASE         13-1288
AGREEMENT CLASS ACTION
LITIGATIONS.

_____


        TRANSCRIPT OF JURY TRIAL - AFTERNOON SESSION
          BEFORE THE HONORABLE ROYCE C. LAMBERTH
              UNITED STATES DISTRICT JUDGE


PLAINTIFFS' APPEARANCES:

For Plaintiffs:         CHARLES COOPER
                        DAVID THOMPSON
                        VINCENT COLATRIANO
                        PETER PATERSON
                        BRIAN BARNES
                          Cooper & Kirk, PLLC
                          1523 New Hampshire Avenue NW
                          Washington, D.C. 20036

For Class Plaintiffs:   ERIC ZAGAR
                          Kessler Topaz Meltzer & Check, LLP
                          280 King of Prussia Road
                          Radnor, Pennsylvania 19087

                        HAMISH HUME
                        SAMUEL KAPLAN
                          Boies Schiller Flexner LLP
                          1401 New York Avenue NW
                          Washington, D.C. 20005
```

1           **THE COURT:** When you phrased the question, you

2    left out common.

3           **MR. STERN:** Sure.

4    **BY MR. STERN:**

5       **Q.** Does this tell you anything about the public

6    interest strategy after conservatorship?

7       **A.** Well, the next two bullets go to what it is they

8    are trying to do.

9       **Q.** And do those next two bullets relate to the public

10   interest or do they relate to something else?

11          **MR. HUME:** Objection, Your Honor. He is asking

12   for a lay opinion and it's irrelevant.

13          **MR. STERN:** It's not a lay opinion, Your Honor.

14   This is the heart of his job.

15          **THE COURT:** Overruled.

16          **MR. STERN:** I'm sorry?

17          **THE COURT:** I said overruled.

18   **BY MR. STERN:**

19      **Q.** How do those relate to the public interest, if at

20   all?

21      **A.** Because it's indicating that they are focused on

22   profitability if it does not adversely affect their ability

23   to do other things as directed by their conservator. It's

24   making clear that the conservator has a responsibility to

25   indicate what it is the companies are managing for.

1   shareholders of contracting or shrinking Fannie or Freddie?

2   **A.**   Well, by contracting them, we're going to be
3   reducing their revenue over time.  We're de-risking them,
4   but the total profits, if you're trying to shrink a company,
5   are likely to be less than what they were if you were not
6   shrinking them.

7   **Q.**   Did you believe that taking those steps, even
8   though it might lower the revenues, was something that was
9   in the public interest?

10   **A.**   Yes, I did.

11   **Q.**   In what way?

12   **A.**   In two ways.  One is that it was reducing the risk
13   exposure of the Treasury.  So the Treasury's got this
14   commitment we've been talking about, you know, non-stop.
15   All right?  If I can reduce the risk of these companies,
16   then there's less exposure to that Treasury commitment.

17              And the other thing is, by taking the steps I was
18   doing, I was fulfilling a mandate that -- part of the
19   mission of Fannie and Freddie which is to make the private
20   market work better.  And so I believed it was in the public
21   interest to figure out ways to expand capital in this
22   industry and to expand the potential for more competition
23   and more credit here.  So by shrinking them, I actually was
24   building for a future, more stable, more competitive
25   marketplace.

```
                  IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - -x
FAIRHOLME FUNDS, INC., et al.,
                                      CA No: 1:13-cv-01053-RCL
            Plaintiffs,
                                      Washington, D.C.
                                      Friday, October 21, 2022
vs.                                   2:15 p.m.

FEDERAL HOUSING FINANCE AGENCY,
et al.,

            Defendants.
- - - - - - - - - - - - - - - -x
IN RE: FANNIE MAE/FREDDIE MAC         Case Number 1:13-cv-1288
SENIOR PREFERRED STOCK PURCHASE
AGREEMENT CLASS ACTION
LITIGATIONS
```

---

TRANSCRIPT OF JURY TRIAL - MORNING SESSION
HELD BEFORE THE HONORABLE ROYCE C. LAMBERTH
UNITED STATES DISTRICT JUDGE

---

APPEARANCES:

| | |
|---|---|
| For the Berkley Plaintiffs: | **BRIAN BARNES, ESQ.**<br>**COOPER & KIRK, PLLC**<br>1523 New Hampshire Avenue, NW<br>Washington, D.C. 20036 |
| For Class Plaintiffs: | **LEE D. RUDY  ESQ.**<br>**KESSLER TOPAZ MELTZER & CHECK**<br>280 King of Prussia Road<br>Radnor, Pennsylvania 19087 |
| | **HAMISH HUME, ESQ.**<br>**KENYA DAVIS, ESQ.**<br>**SAMUEL KAPLAN, ESQ.**<br>**BOIES SCHILLER FLEXNER LLP**<br>1401 New York Avenue Northwest<br>Washington, D.C. 20005 |

(CONTINUED ON NEXT PAGE)

1    policymakers contemplate the future of Fannie Mae and
2    Freddie Mac."
3           So breaking that down, the first sentence is
4    saying that Fannie Mae and Freddie Mac themselves, including
5    their senior executives, look, we've removed this concern
6    that you've been talking about about the potential erosion
7    of the commitment.  We're also informing market
8    participants, which would include the investors in their
9    debt securities and MBS, that the concern that we've been
10   hearing about, could this commitment erode, we've taken care
11   of that, and that's going to give the stability to allow
12   Fannie and Freddie to continue to meet their mission of
13   liquidity and stability of the market.
14          The second sentence is going to what's going on in
15   the policy arena, which is Congress is developing
16   legislation to wind down Fannie Mae and Freddie Mac,
17   recognizing that the Treasury Department's already sent a
18   report to Congress calling for the wind-down of Fannie Mae
19   and Freddie Mac.  And I'm saying that as they contemplate
20   this future, as they contemplate housing finance reform and
21   winding down the companies, these steps are going to be
22   important to allowing that kind of transition to take place
23   without a disruption to the housing finance system.
24   Q.  And I have just a few more questions sort of about
25   concept, but before I get to those, just a question about

1    fundamental part of safety and soundness is having enough
2    sufficient capital.  That's why I did not want to erode the
3    remaining Treasury Commitment because that Treasury
4    Commitment was the capital that was allowing Fannie Mae and
5    Freddie Mac to operate.
6    Q.  The jury has heard a lot about the public interest.  Can
7    you please just summarize for us how the operation -- the
8    mechanics and the effect of the Third Amendment -- serves
9    the public interest, if it did?
10   A.  It did by providing this sense of stability to how the
11   market -- that is, the investors in debt and mortgage-backed
12   securities of Fannie Mae and Freddie Mac should understand
13   the resiliency of this Treasury Commitment going forward.
14   Q.  Mr. DeMarco, I'm near the end now, so I want to ask you
15   to examine your life.
16            Looking back now, knowing how history has played
17   out, what is your thinking about the way FHFA operated
18   Fannie and Freddie in conservatorship during your years at
19   FHFA?
20   A.  I think what FHFA accomplished during my four and a half
21   years of being acting director was substantial.  It's
22   something I'm very proud of.  I'm very proud of the people
23   at FHFA for what they got done.
24            We took over as conservator of Fannie Mae and
25   Freddie Mac during one of the darkest periods of time in our

```
              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA

FAIRHOLME FUNDS, INC., ET AL., et al,    Civil Action
                                         No. 1:13-1053
              Plaintiffs,

      vs.
                                         October 27, 2022
FEDERAL HOUSING FINANCE                  9:39 a.m.
     AGENCY, et al,                      Washington, DC


              Defendants.
_____

In re: FANNIE MAE/FREDDIE MAC            Civil Action
SENIOR PREFERRED STOCK PURCHASE          13-1288
AGREEMENT CLASS ACTION
LITIGATIONS.

_____


          TRANSCRIPT OF JURY TRIAL - MORNING SESSION
            BEFORE THE HONORABLE ROYCE C. LAMBERTH
               UNITED STATES DISTRICT JUDGE


PLAINTIFFS' APPEARANCES:

For Plaintiffs:        CHARLES COOPER
                       DAVID THOMPSON
                       VINCENT COLATRIANO
                       PETER PATERSON
                       BRIAN BARNES
                          Cooper & Kirk, PLLC
                          1523 New Hampshire Avenue NW
                          Washington, D.C. 20036

For Class Plaintiffs:  ERIC ZAGAR
                          Kessler Topaz Meltzer & Check, LLP
                          280 King of Prussia Road
                          Radnor, Pennsylvania 19087

                       HAMISH HUME
                       SAMUEL KAPLAN
                          Boies Schiller Flexner LLP
                          1401 New York Avenue NW
                          Washington, D.C. 20005
```

1  know, investors became more confident.  In kind of over the

2  same timeline, bond prices went up.  The two things kind of

3  line up and are consistent.

4      **Q.**   So let's go to the next slide and just I want to

5  get your sort of bottom-line conclusion with respect to the

6  reasonableness of FHFA's decision to enter into the Third

7  Amendment.  Can you explain your bottom-line conclusion as

8  you've laid it out here?

9      **A.**   Sure.  So I start with the goals of the PSPAs.

10 And these are the stated goals that we looked at very early

11 on in the day.  And that was to increase mortgage-backed

12 security and bond-investor confidence.

13         Now, by the time you get to 2012, there's concern.

14 Investors are expressing concern.  That's kind of causing a

15 little bit of reduced confidence.  And that concern is that

16 these circular dividends are going forward.

17         And those circular dividends, which is because

18 profits are not large enough to cover dividends, will erode

19 the commitment.  And there might not be money left in the

20 pot to, you know, if you have a downturn, for example.

21         And the solution is that the Third Amendment makes

22 those dividends equal to profits.  Now you've eliminated the

23 possibility that you have a situation where dividends are

24 more than profits.  And the investors, the market

25 participants who write reports basically make that point.

1           You know, people put their money where their mouth
2   is, as it were, and bond prices go up.  And so the decision
3   and the action achieved the goal.  So that's why I think
4   it's reasonable.
5           **MR. HOFFMAN:**  Your Honor, I have one more short
6   section to continue, and I'm happy to proceed unless you
7   think it's a good time for a break.
8           **THE COURT:**  Let's do it at 1:30.
9           **MR. HOFFMAN:**  Okay.  Thank you, Your Honor.
10          **THE COURT:**  Don't talk about the case.  Don't let
11  anyone talk to you about the case.  I'll see you all back at
12  1:30.
13      (Jury exited the courtroom)
14          **THE COURT:**  I need counsel to wait in the
15  courtroom for a moment.
16          One of the jurors gave me a note that I needed to
17  discuss with you.  I need to talk with the juror first.
18          **MR. HOFFMAN:**  Absolutely, Your Honor.
19     (The Judge exited the bench to speak with the juror)
20          **THE COURT:**  Be seated.
21          Actually, we can do this on the phone.  It doesn't
22  need to be public record at this stage until we decide what
23  we're going to do.  I just got another note too.
24       This is going to be a sealed conference with counsel
25  only.

```
                    BEFORE THE UNITED STATES DISTRICT COURT
                         FOR THE DISTRICT OF COLUMBIA


   FAIRHOLME FUNDS, INC., et al.,    .
                                     .
           Plaintiffs,               .
                                     .  Case Number 13-cv-1053
       vs.                           .
                                     .
   FEDERAL HOUSING FINANCE AGENCY,   .
   et al.,                           .
                                     .
           Defendants.               .
   - - - - - - - - - - - - - - - -
   In re FANNIE MAE/FREDDIE MAC      .  Case Number 13-mc-1288
   SENIOR PREFERRED STOCK PURCHASE   .
   AGREEMENT CLASS ACTION            .  Washington, D.C.
   LITIGATIONS.                      .  October 31, 2022
   - - - - - - - - - - - - - - - -     1:49 p.m.


              TRANSCRIPT OF JURY TRIAL, AFTERNOON SESSION
                 BEFORE THE HONORABLE ROYCE C. LAMBERTH
                      UNITED STATES DISTRICT JUDGE

   APPEARANCES:

   For Berkley Plaintiffs:      BRIAN BARNES, ESQ.
                                Cooper & Kirk, PLLC
                                1523 New Hampshire Avenue Northwest
                                Washington, D.C. 20036

   For Class Plaintiffs:        LEE RUDY, ESQ.
                                ERIC ZAGAR, ESQ.
                                Kessler Topaz Meltzer & Check, LLP
                                280 King of Prussia Road
                                Radnor, Pennsylvania 19087

                                HAMISH HUME, ESQ.
                                SAMUEL KAPLAN, ESQ.
                                KENYA DAVIS, ESQ.
                                Boies Schiller Flexner LLP
                                1401 New York Avenue Northwest
                                Washington, D.C. 20005


                            -- continued --
```

1       action was not only reasonable, it was crucial.

2            And the evidence showed that any shareholder would

3       reasonably expect Mr. DeMarco and FHFA to do exactly what they

4       did.  A reasonable shareholder would know and knew that their

5       equity, their investment in these companies, had been virtually

6       wiped out years before.  They knew that the only reason the

7       companies hadn't gone out of business was that the Treasury

8       Department had stepped in with billions of dollars of taxpayer

9       money.

10           Those shareholders knew that under their shareholder

11      contracts, they did not have any guaranteed right to dividends.

12      They knew that their dividends had been eliminated as of 2012

13      years ago, in September of 2008.

14           And they knew that under HERA, that Housing Economic

15      Recovery Act, they knew that FHFA was authorized to take action

16      in the public interest, even if that action was not in the

17      interest of the shareholders.  And they knew that under

18      conservatorship, the companies were being managed to protect

19      that public interest, not to maximize returns for shareholders.

20           And because shareholders knew all of those things, it's

21      crystal clear that a reasonable shareholder would have

22      reasonably expected FHFA to act in the public interest by

23      ensuring the stability and safety of Fannie and Freddie, to

24      ensure the stability and safety of the United States housing

25      market and the entire United States economy.

1          "The agency may as conservator take any action authorized
2     by this section which the agency determines is in the best
3     interests of the regulated entity or the agency."
4          And the judge's instructions will make clear to you -- and
5     this is not in dispute -- that what that means is the FHFA, when
6     it is acting as the conservator, has the authority to act in the
7     best interests of the public.
8          And we understand and agree that the question for you is
9     whether that authority was exercised reasonably.  But we start
10    from the proposition that that is a part of FHFA's job and a
11    part of the responsibility that Congress gave it, the
12    responsibility to protect the public interest.
13         And Mr. DeMarco knew that FHFA had that authority and had
14    that responsibility.  He knew that FHFA had the authority to put
15    the best interests of the public ahead of the financial
16    interests of the shareholders.  And you heard him testify that
17    he understood that on top of the public mission that Fannie and
18    Freddie had always had, HERA gave the conservator that
19    additional authority and that additional responsibility.
20         And that, members of the jury, is what lies at the very
21    heart of this case:  Mr. DeMarco's authority and his
22    responsibility to act in the public interest and to put that
23    public interest ahead of the interests of private shareholders.
24         Well, what else did HERA say?  In addition to giving
25    HERA -- FHFA the authority to act in the public interest, it

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FAIRHOLME FUNDS, INC., et al, | Civil Action No. 1:13-1053 |
| Plaintiffs, | |
| vs. | November 1, 2022 |
| FEDERAL HOUSING FINANCE AGENCY, et al, | 10:22 a.m. Washington, DC |
| Defendants. | |
| _____ | |
| In re: FANNIE MAE/FREDDIE MAC SENIOR PREFERRED STOCK PURCHASE AGREEMENT CLASS ACTION LITIGATIONS. | Civil Action 13-1288 |
| _____ | |

TRANSCRIPT OF JURY TRIAL - **MORNING SESSION**
**BEFORE THE HONORABLE ROYCE C. LAMBERTH**
UNITED STATES DISTRICT JUDGE

PLAINTIFFS' APPEARANCES:

**For Plaintiffs:**        **CHARLES COOPER**
                           **DAVID THOMPSON**
                           **VINCENT COLATRIANO**
                           **PETER PATERSON**
                           **BRIAN BARNES**
                              Cooper & Kirk, PLLC
                              1523 New Hampshire Avenue NW
                              Washington, D.C. 20036

**For Class Plaintiffs:**  **ERIC ZAGAR**
                              Kessler Topaz Meltzer & Check, LLP
                              280 King of Prussia Road
                              Radnor, Pennsylvania 19087

                           **HAMISH HUME**
                           **SAMUEL KAPLAN**
                              Boies Schiller Flexner LLP
                              1401 New York Avenue NW
                              Washington, D.C. 20005

1                 And he doesn't have the luxury of time.  He
2      doesn't have a crystal ball.  He doesn't have hindsight.
3      The cap is going to be imposed in less than 150 days.  And
4      once that cap hit, it couldn't be changed by any amendment.
5                 So it boiled down to this:  The risk to the GSEs,
6      to the housing market and the economy, from the potential
7      erosion of the commitment, was so great.  It was so -- the
8      future was so uncertain.  Mr. DeMarco decided that he needed
9      to eliminate that risk entirely.  He needed to take it down
10     to zero.  And that's exactly what the Third Amendment did
11     and the net worth sweep accomplished.
12                And to be very clear, members of the jury, this
13     isn't all upside for the Treasury Department.  The American
14     taxpayers were taking a tremendous risk because, yes, if the
15     income exceeded the 10 percent under the net worth sweep,
16     Treasury would get that excess.  There's no debate about
17     that.  There's also no debate that the plaintiffs are not
18     claiming as damages that number.  They are claiming as
19     damages something completely different based on the stock
20     price drop.
21                But it's certainly true that the upside went to
22     Treasury.  But it's also true that the downside risk also
23     went to Treasury and the American taxpayer.  So in a year
24     where $11.7 billion was the amount that Fannie would owe on
25     a dividend.  If Fannie had $100, that's all they had to pay.