**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BERKLEY INSURANCE, Co., *et al.*,<br><br>            Plaintiffs,<br><br>      v.<br><br>FEDERAL HOUSING FINANCE<br>AGENCY, *et al.*,<br><br>            Defendants. | Case No. 1:13-cv-1053 (RCL) |
| In re Fannie Mae/Freddie Mac Senior<br>Preferred Stock Purchase Agreement Class<br>Action Litigations<br><br>_____<br><br>This document relates to:<br>ALL CASES | Case No. 1:13-mc-1288 (RCL) |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION IN LIMINE NO. 5:**
**TO EXCLUDE EVIDENCE FEATURING POST HOC STATEMENTS**
**BY FORMER FHFA DIRECTORS MELVIN WATT AND MARK CALABRIA**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 5

I.     The Former Directors' Statements from 2015 to 2020 Are Irrelevant .............................. 5

     A.     Plaintiffs Incorrectly Assert That Defendants "Took This Case into the Future" .. 5

     B.     Plaintiffs' Other Theories of Relevance Are Meritless........................................... 8

II.     The Former Directors' Statements from 2015 to 2020 Should Be Excluded
Under Federal Rule of Evidence 403 .............................................................................. 11

III.     Some of the Proposed Exhibits Are Inadmissible for Additional Reasons ..................... 15

CONCLUSION ............................................................................................................... 16

## INTRODUCTION

In their opposition, Plaintiffs explain that they intend to use the "Watt/Calabria Exhibits," which they added to their exhibit list on June 29, 2023, to support an entirely new theory of the case. Specifically, Plaintiffs now theorize that FHFA itself eventually came to the view that the Third Amendment "actually and foreseeably *harmed* the public interest," as purportedly demonstrated by statements by Mr. DeMarco's successors between 2015 and 2020. Opp. at 1. Plaintiffs argue that Defendants' arguments at the first trial made these *post hoc* statements relevant, and that Defendants' expert should have considered the statements. These arguments are meritless. Defendants did not say anything during the first trial to put the after-the-fact opinions of Mr. Watt or Dr. Calabria at issue. Plaintiffs' last-minute effort to inject a new theory into the case should be rejected for numerous reasons.

To begin, none of Mr. Watt's or Dr. Calabria's statements say that the Third Amendment harmed the public interest. And importantly, Plaintiffs' new theory that the Third Amendment harmed the public interest is at odds with the Supreme Court's unanimous decision in *Collins*, which found that "FHFA chose a path of rehabilitation that was designed to *serve public interests* by ensuring Fannie Mae's and Freddie Mac's continued support of the secondary mortgage market." *Collins v. Yellen*, 141 S. Ct. 1761, 1776 (2021) (emphasis added); *see also id.* at 1777 ("Whether or not this new arrangement [*i.e.*, the Third Amendment] was in the best interests of the companies or their shareholders, the FHFA could have reasonably concluded that it *was in the best interests of members of the public* who rely on a stable secondary mortgage market." (emphasis added)).

Moreover, context makes clear that the selected speeches and testimony by Mr. Watt and Dr. Calabria, years after the Third Amendment, are irrelevant and omit other key statements. For instance, while Plaintiffs seek to introduce Dr. Calabria's 2019 and 2020 statements that attribute

the Enterprises' inability to build capital to the Net Worth Sweep, *see* Opp. at 6 (citing PX-0588, PX-0590, PX-0591), Plaintiffs ignore that Dr. Calabria expressed concern at the time of the Third Amendment that, based on their past financial performance, the Enterprises would not have earned enough to pay the fixed 10% dividend.  Specifically, on August 17, 2012, Dr. Calabria, then affiliated with the Cato Institute, wrote in a blog post that the Net Worth Sweep "definitely mean[t] the taxpayer's potential recoupment" would be "lower," that the Enterprises "ha[d] never had a year where their profits would have covered the [fixed 10%] dividend payments," and that it was uncertain "if the taxpayer will recover *anything* from the GSEs" under the Net Worth Sweep.[1]  Dr. Calabria's concern that the Enterprises would not be able to pay the 10% fixed dividend was one that FHFA shared and supported FHFA's decision to enter into the Third Amendment.  And his August 17, 2012 blog post makes no mention of any concern about a capital buffer.  Dr. Calabria's statements years later, in 2019 and 2020, under dramatically different economic circumstances, are irrelevant and likely to invite hindsight bias and mislead the jury.

Similarly, Plaintiffs want to introduce Mr. Watt's 2015 to 2017 statements about the "risk" or "challenge" posed by the Enterprises' inability to build capital under the Net Worth Sweep.  *See* Opp. at 4.  But they ignore that, shortly after Mr. Watt began his tenure as FHFA Director, he noted that the Third Amendment was "an arrangement that [he was] comfortable operating under,"[2] and he "thank[ed] Ed DeMarco" for "help[ing] prevent an extremely bad

---

[1]     Mark A. Calabria, *Geithner Favors Fannie Mae Debtholders over Taxpayers . . . Again*, Cato Inst. Cato at Liberty Blog (Aug. 17, 2012, 12:30 PM), https://www.cato.org/blog/geithner-favors-fannie-mae-debtholders-over-taxpayers-again (hereinafter Calabria 3A Blog Post).

[2]     Nick Timiraos, *FHFA's Watt 'Comfortable' with U.S. Sweep of Fannie, Freddie Profits*, Wall St. J. (May 16, 2014, 3:42 PM), https://www.wsj.com/articles/BL-MBB-21324.

situation from getting much worse. . . . by stabilizing Fannie Mae and Freddie Mac."[3]

Plaintiffs' one-sided presentation of out-of-context statements from Mr. Watt and Dr. Calabria also ignores that, under both of their leadership, FHFA vigorously defended lawsuits brought by shareholders challenging the Third Amendment (such as this case and *Collins*), including on the ground that the Third Amendment furthered the public's interest in a stable secondary mortgage market.[4]  Plaintiffs also omit other statements by the Directors to the effect that they, consistent with the Supreme Court's later holding in *Collins*, were not required to and did not exercise FHFA's authority as Conservator for the benefit of the Enterprises' private shareholders.  *See* Timiraos, *supra* note 2 (reporting that Mr. Watt stated in 2014 that he does not "lay awake at night worrying about what's fair to the shareholders"); *The End of Affordable Housing? A Review of the Trump Administration's Plans to Change Housing Finance in America: Hearing Before the H. Comm. on Fin. Servs.*, 116th Cong. 24 (2019) (Mr. Calabria stating to Congress in 2019 that the government "should have . . . wiped out the shareholders" during the 2008 housing and financial crisis, and that "[i]f the circumstances present themselves to where [FHFA] ha[s] to wipe out the shareholders, [he] will") (excerpt attached as **Exhibit A**).[5]

---

[3]     *Prepared Remarks of Melvin L. Watt at the Brookings Institution Forum on the Future of Fannie Mae and Freddie Mac*, Fed. Hous. Fin. Agency (May 13, 2014), https://www.fhfa.gov/Media/PublicAffairs/Pages/Watt-Brookings-Keynote-5132014.aspx.

[4]     *See, e.g.*, Final Brief of Appellees Fed. Hous. Fin. Agency, Melvin L. Watt, Fannie Mae, and Freddie Mac at 5-6, *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017) (No. 14-5243), 2016 WL 878828, at *5-6; Brief for the Fed. Parties at 41, *Collins v. Yellen*, 141 S. Ct. 1761 (2021) (Nos. 19-422, 19-563), 2020 WL 5020365, at *41.

[5]     Plaintiffs assert that Defendants cannot introduce other statements by Mr. Watt and Dr. Calabria (other than those necessary for completeness and fairness under Rule 106) because they would be inadmissible hearsay.  Opp. at 15 n.8.  Defendants reserve the right to seek admission of other statements made by the Directors under various hearsay exceptions and exemptions. But Plaintiffs' preemptive attempt to limit Defendants' response to the Watt/Calabria Exhibits

The examples above barely scratch the surface in terms of correcting a distortion that Mr. Watt and Dr. Calabria believed that the Third Amendment "actually and foreseeably *harmed* the public interest."  Opp. at 1.  Moreover, Plaintiffs' extremely late disclosure of the Watt/Calabria Exhibits—and the new theory that they intend to proffer based on them—severely hamstrings Defendants' ability to prepare and present a response at the trial that starts in one week.  If the Watt/Calabria Exhibits are admitted, Defendants may: (1) move to provide the jury with a more accurate picture of the Directors' views on the Third Amendment, including through evidence such as the *Collins* decision and the legal briefs filed on behalf of the Directors; and/or (2) request a limiting instruction explaining the Supreme Court's recognition in *Collins* that the Third Amendment was within FHFA's statutory power because FHFA could have reasonably concluded that agreeing to the Third Amendment would serve the public interest.[6]

The proper remedy is to exclude this Watt/Calabria sideshow altogether and avoid a litany of evidentiary disputes that would follow the admission of a manipulated sample of these Directors' statements years after the Third Amendment.  As explained below and in Defendants' opening Motion, the Watt/Calabria Exhibits are irrelevant to the implied covenant inquiry, and

---

illustrates how Plaintiffs' late addition of those exhibits on the eve of trial prejudices Defendants and impedes their ability to prepare a response for a trial that begins just next week.

[6]     Plaintiffs previously moved to preclude Defendants from presenting evidence or argument relating to any court decision in any related case.  *See* Pls.' Trial 1 Omnibus Mot. in Lim. at 18-19 (Class ECF No. 176, Berkley ECF No. 182).  In response, Defendants represented that they did not intend to present evidence or argument regarding any case except *Collins*. Defs.' Mem. in Opp'n to Pls.' Trial 1 Omnibus Mot. in Lim. at 30-31 (Class ECF No. 184, Berkley ECF No. 190).  This Court denied Plaintiffs' motion, noting that neither party "fully explained the specific purposes for which defendants might reference *Collins*."  *Fairholme Funds, Inc. v. FHFA*, Nos. 13-cv-1053, 13-mc-1288, 2022 WL 13937460, at *6 (D.D.C. Oct. 21, 2022).  By introducing the Watt/Calabria Exhibits and arguing that these Directors believed that the Third Amendment harmed the public interest, Plaintiffs would open the door to admission of evidence regarding *Collins* and the litigation positions that the Directors took in numerous cases during their tenures.

even if the Directors' after-the-fact statements had some conceivable probative value, it is substantially outweighed by the dangers of confusing the issues and unfair prejudice to Defendants, especially given the disclosure of these exhibits on the eve of trial without a fair and adequate opportunity for Defendants to prepare a response.

## ARGUMENT

**I.     The Former Directors' Statements from 2015 to 2020 Are Irrelevant**

Defendants' Motion established that Mr. Watt's and Dr. Calabria's statements from 2015 to 2020 are irrelevant because—consistent with Plaintiffs' own position in another motion—the Directors "had no involvement in, nor even any knowledge of, the Third Amendment until after it had been agreed to."  Pls.' Omnibus Reply at 7 (Class ECF No. 313, Berkley ECF No. 324). Plaintiffs' opposition fails to demonstrate the relevance of the Directors' statements.  Rather, Plaintiffs incorrectly contend that Defendants "deliberately took this case into the 'future'" based on a handful of out-of-context excerpts from the first trial that Plaintiffs mischaracterize.  Opp. at 7-8.  Relatedly, Plaintiffs argue that Defendants' expert should have reviewed statements that their own expert did not even consider.  *Id.* at 2.  Plaintiffs' arguments about the relevance of the Watt/Calabria Exhibits are meritless.

### A.     Plaintiffs Incorrectly Assert That Defendants "Took This Case into the Future"

Plaintiffs' arguments about the purported relevance of Mr. Watt's and Dr. Calabria's statements made years after the imposition of the Third Amendment rely heavily on the assertion that, at the first trial that ended eight months ago, Defendants "took this case into the future" and "cannot now fairly argue that examination of the actual effects" of the Third Amendment, including Mr. Watt's and Dr. Calabria's statements years later, should be excluded.  Opp. at 9-10 (emphasis removed).  This mischaracterizes what transpired at the first trial.

First, Plaintiffs argue that Defendants opened the door to the Watt/Calabria Exhibits by asserting that the "Net Worth Sweep actually 'achieved the goal' of protecting the public interest 'if you have a downturn.'"  Opp. at 10 (quoting Trial Tr. 1970-71[7]).  This assertion is misleading and is based on splicing together two separate statements by Defendants' expert Dr. Attari and adding the term "public interest," which does not actually appear in the relevant segment of the trial transcript.  *See* Trial Tr. 1970:17-1971:4.[8]  During the exchange highlighted by Plaintiffs, Dr. Attari explained his conclusion that the Net Worth Sweep eliminated the possibility of circular draws, thereby preserving the Treasury Commitment and, in his opinion, achieving the goal of increasing investor confidence in the Enterprises.  *Id.* at 1970:21-1971:3.  As support, Dr. Attari explained how Enterprise long-term bond prices reacted favorably *on the day of the Third Amendment*.  *Id.* at 1971:2; *see also id.* at 2117:5-11.  Contrary to Plaintiffs' position, Dr. Attari's analysis of bond prices on August 17, 2012, in no way opens the door to the presentation of statements made *years later* by individuals who had no involvement in the negotiation or execution of the Third Amendment.

Second, Plaintiffs misquote Mr. DeMarco, asserting that he testified that he "helped Fannie and Freddie 'build[] for a better future,'" and contend that this opened the door to statements made by his successors as much as *eight years* after the Third Amendment.  Opp. at 8

---

[7]     Plaintiffs cite to page 932 of the trial transcript, but the quoted testimony is actually found on pages 1970 and 1971.  *See* Pls.' Opp. Ex. A.

[8]     The trial transcripts from the first trial are docketed at ECF Nos. 263-289 on the *Berkley* docket, No. 1:13-cv-1053-RCL; the transcripts are not docketed on the Class docket.  In this brief, Defendants cite to the page–line numbers in the transcripts themselves.

(citing Trial Tr. 855).[9]  But in this part of the first trial, Mr. DeMarco was asked about what he "believe[d]" at the time of the Third Amendment when he was "de-risking" and "shrinking" the Enterprises.  Trial Tr. 855:2-9.  It is undisputed that Mr. DeMarco's views *in 2012* are relevant to the implied covenant inquiry, and his testimony about the public interest focused on what he "believed [] was in the public interest" at the time he was taking those actions.  *Id.* at 855:20-25.  Such testimony by Mr. DeMarco by no means opens the door to Mr. Watt's and Dr. Calabria's opinions *years later*.

Third, Plaintiffs assert that Defendants opened the door to Mr. Watt's and Dr. Calabria's 2015 to 2020 statements by asking Mr. DeMarco whether he believed the "mechanics and [the] effect[]" of the Third Amendment "serve[d] the public interest."  Opp. at 10 (quoting Trial Tr. 932).[10]  But Mr. DeMarco was the decisionmaker who exercised the authority as Conservator to enter into the Third Amendment, and his views about how the Third Amendment served the public interest at the time of the Third Amendment do not put at issue the views of his successors years after the fact under very different economic circumstances and policy perspectives.

 In sum, nothing Defendants did at the first trial opens the door to Mr. Watt's and Dr. Calabria's statements about their evolving views of the Third Amendment years after the fact. Defendants have consistently affirmed that: (1) the relevant question is whether FHFA's decision to enter into the Third Amendment *in August 2012* arbitrarily or unreasonably violated shareholders' objectively reasonable expectations under the shareholder contracts; and (2) the

---

[9]     The word "better" does not appear in the quoted passage on trial transcript page 855.  Mr. DeMarco testified that he "was building for a future, more stable, more competitive marketplace."  Trial Tr. 855:23-25.

[10]     Plaintiffs cite to page 1970 of the trial transcript, but the quoted testimony is found on page 932 of the trial transcript.  *See* Pls.' Opp. Ex. A.

inquiry into the reasonableness of FHFA's decision is made with reference to the "existing facts and circumstances" at the time of the Third Amendment. *See* Final Jury Instructions at 8 (Class ECF No. 250, Berkley ECF No. 240). The Watt/Calabria Exhibits, setting forth views of Mr. DeMarco's successors years later, facing different policy changes under very different economic circumstances, are irrelevant.

### B.    Plaintiffs' Other Theories of Relevance Are Meritless

Aside from their broad theory that Defendants opened the door to the Watt/Calabria Exhibits by taking the case into the future, Plaintiffs advance three other theories that they argue support the relevance of the exhibits. None of them establish relevance.

First, Plaintiffs assert that Mr. Watt's and Dr. Calabria's statements "are relevant because they make it less probable that the Net Worth Sweep was actually in the 'public interest,'" which Plaintiffs argue was the "cornerstone of the defense in this case." Opp. at 3-4. But the relevant question here is whether FHFA acted arbitrarily or unreasonably in 2012 based on the "existing facts and circumstances" at the time of the Third Amendment. Final Jury Instructions at 8 (Class ECF No. 250, Berkley ECF No. 240). And consistent with that inquiry, Defendants argued that FHFA's decision to enter into the Third Amendment was in the public interest based on the existing facts and circumstances in 2012. *Supra* § I.A. By contrast, an *ex post* question of whether the Third Amendment actually served the public interest in hindsight when circumstances had changed years after the challenged decision is antithetical to the implied covenant inquiry. And that irrelevant *ex post* question is the only question for which Mr. Watt's and Dr. Calabria's statements could possibly have any probative value. Critically, none of the Directors' 2015 to 2020 statements purport to speak to what either Director would have done under the circumstances that Mr. DeMarco faced *in 2012*. If anything, Dr. Calabria's contemporaneous reaction to the Third Amendment indicates that he did not believe the

Enterprises would have been able to build capital under the 10% fixed dividend, because the Enterprises "ha[d] never had a year where their profits would have covered the [fixed 10%] dividend payments." Calabria 3A Blog Post, *supra* note 1. Mr. Watt's and Dr. Calabria's statements years later are not probative of whether Mr. DeMarco's decision in August 2012 could reasonably have furthered the public interest. Indeed, the Supreme Court has held that "FHFA could have reasonably concluded that it was in the best interests of members of the public who rely on a stable secondary mortgage market." *Collins*, 141 S. Ct. at 1777.

Second, Plaintiffs assert that some of the after-the-fact statements "make it less probable that Defendants' true motive for agreeing to the Net Worth Sweep was, as Defendants claim, to protect the Treasury commitment against erosion." Opp. at 5. But the Directors' statements from 2015 to 2020 say nothing at all about FHFA's "motive" for agreeing to the Net Worth Sweep in August 2012—namely, to eliminate the risk that additional circular draws could erode the Commitment and undermine market confidence in the stability of the secondary mortgage market. At that time, the Enterprises had repeatedly taken substantial circular draws and had never had a year where their profits were sufficient to pay the 10% fixed dividend, as Dr. Calabria himself emphasized in August 2012 when he was not associated with FHFA. *See* Calabria 3A Blog Post, *supra* note 1. Moreover, in the face of an uncertain economic future in August 2012, FHFA reasonably considered preserving the Commitment for the event of a worst case scenario, by eliminating the risk of eroding the Commitment due to circular draws, to be in the public interest. Based on those existing facts and circumstances, as Dr. Calabria himself concluded in August 2012, the possibility of future circular draws was obvious, and the Net Worth Sweep by definition eliminated any possibility of circular draws. That successor Directors of FHFA assessed the public interest from different policy perspectives, years later and

under different economic conditions, in no way rebuts FHFA's motivation in August 2012 to eliminate circular draws, a concept entirely unaddressed by the Watt/Calabria Exhibits.

Third, Plaintiffs argue that the "Watt/Calabria Exhibits are relevant to cross-examine Dr. Attari regarding his opinions as to the reasonableness of the Net Worth Sweep." Opp. at 6. In particular, Plaintiffs claim that "Dr. Attari's failure to consider [the Watt/Calabria Exhibits] makes his opinion less credible." *Id.* at 7. This argument rings hollow when Plaintiffs' own expert, Dr. Dharan, likewise did not consider the Watt/Calabria Exhibits, which Plaintiffs added to their exhibit list barely two weeks ago. *See* Expert Rep. of B. Dharan (Aug. 12, 2021) at 91-94 (Class ECF No. 164-1, Berkley ECF No. 171-1); Rebuttal Expert Rep. of B. Dharan (Mar. 1, 2022) at 31-32 (Class ECF No. 164-3, Berkley ECF No. 171-3). In fact, as Defendants highlighted in their opening Motion, Dr. Dharan "restricted" his own analysis of whether the Net Worth Sweep was "something reasonable shareholders could expect" to "information that [FHFA and the Enterprises] had at the time of the Third Amendment," "putting [him]self essentially in the same place that [the decisionmakers] were in at the time." Trial Tr. 1097:10-1098:8. That Dr. Attari did not consider these *post hoc* statements has no bearing whatsoever on Dr. Attari's analysis and conclusions regarding whether FHFA's August 2012 decision to agree to the Third Amendment was reasonable.

Finally, Plaintiffs fail to reconcile their attempt to admit the Watt/Calabria Exhibits with their arguments in other pending motions to exclude the "reaction" testimony of witnesses who worked at FHFA or the Enterprises at the time of the Third Amendment. Attempting to distinguish their arguments to exclude such "reaction" testimony, Plaintiffs assert that some of Mr. Watt's and Dr. Calabria's statements are "not opinions" but rather "facts that existed as of the date of the Third Amendment's execution." Opp. at 7. To the extent that the Watt/Calabria

Exhibits merely describe the factual mechanics of the Net Worth Sweep, they should be excluded as needlessly cumulative; other evidence, including the terms of the Third Amendment itself, illustrates its mechanics.  More importantly, however, the Watt/Calabria Exhibits plainly contain many opinions about the impact of the Net Worth Sweep, including some that Plaintiffs incorrectly characterize as statements of fact.  *See* Opp. at 7 (mischaracterizing opinions about how the Enterprises lacked the capital to withstand an economic downturn as statements of fact); *see also* Mot. at 7-9 (highlighting the Directors' opinions about what they believed were "significant challenges" or the "most serious risk").  And Plaintiffs do not meaningfully engage with their prior assertion that the *post hoc* opinions of lay witnesses who had no involvement in, or even knowledge of, the Third Amendment until after it was publicly announced "will not assist the jury in deciding this case."  Pls.' Omnibus Reply at 7 (Class ECF No. 313, Berkley ECF No. 324).  Plaintiffs do not offer a persuasive answer because there is none.

## II.    The Former Directors' Statements from 2015 to 2020 Should Be Excluded Under Federal Rule of Evidence 403

Defendants' motion also established that, to the extent the Watt/Calabria Exhibits have any conceivable probative value (and they do not), it is minimal at best and substantially outweighed by the risks of confusing the issues and unfair prejudice to Defendants.  This is particularly true given that Plaintiffs' addition of these documents to their exhibit list barely two weeks ago severely impedes Defendants' ability to prepare and present a response at the trial starting in seven days.

As an initial matter, Plaintiffs miscast the Rule 403 standard by asserting that "[t]he bar" for exclusion "is even higher where the challenged evidence is offered solely or primarily to rebut a defense."  Opp. at 8-9 (citing *United States v. Christensen*, 624 F. App'x 466, 484 (9th Cir. 2015); *Goodloe v. Daphne Utils.*, Civil Action No. 13-0605, 2015 WL 2165806, at *1 (S.D.

Ala. May 7, 2015)).  Neither *Christensen* nor *Goodloe* supports a proposition that the Rule 403 balancing test is heightened under the circumstances that Plaintiffs suggest.

In any event, under any formulation of the Rule 403 balancing test, the Watt/Calabria Exhibits should be excluded.

First, contrary to Plaintiffs' assertion, Mr. Watt's and Dr. Calabria's statements years after the fact are likely to confuse the issues before the jury for multiple reasons.  The jury instructions make clear that the question of whether FHFA acted arbitrarily or unreasonably must be made with reference to the "existing facts and circumstances" at the time FHFA agreed to the Third Amendment.  Final Jury Instructions at 8 (Class ECF No. 250, Berkley ECF No. 240). The Directors' statements spanning 2015 to 2020 do not address the facts and circumstances that Mr. DeMarco faced in 2012; they were made under very different economic circumstances and with the benefit of years of hindsight.  The Directors' statements thus risk tempting the jury to evaluate the implied covenant claim based on hindsight, contrary to their instructions.

Plaintiffs incorrectly claim that the exhibits do not invite the jury to judge FHFA's decision in August 2012 through the lens of hindsight.  Opp. at 9.  But the Directors' statements are undeniably imbued with hindsight bias.  As stated above, at the time of the Third Amendment, Dr. Calabria expressed essentially the opposite view to what he said in 2019 and 2020—namely, he criticized the Third Amendment on the ground that Treasury would receive smaller dividend payments (or even no dividends) under the Net Worth Sweep than it might have received under the 10% fixed dividend.  *See* Calabria 3A Blog Post, *supra* note 1.  Dr. Calabria also indicated that he did not expect that the Enterprises could have built capital under the prior fixed-dividend structure.  *See id.*  Dr. Calabria's later views that Plaintiffs wish to introduce were demonstrably shaped by the changed circumstances in 2019 and 2020 with the benefit of years of

hindsight.  The same can be said of the proffered statements made by Mr. Watt when he was

Director years after the Third Amendment.

The introduction of the Directors' cherry-picked statements, wholly divorced from

necessary context, would also raise the strong possibility that the jury would adopt numerous

improper and incorrect inferences:

- The jury could improperly infer without any evidentiary basis that the Directors disagreed with the decision that Mr. DeMarco made *in August 2012*, when the exhibits prove no such thing.  The evidence demonstrates that the Directors would have liked to amend the agreements, and they in fact did so.  But the evidence does not involve the Directors' consideration of the Third Amendment from Mr. DeMarco's perspective in 2012, which involved substantial economic uncertainty and market concerns.

- The jury could incorrectly infer that to the extent Mr. Watt and Dr. Calabria were critical of the Net Worth Sweep, they would have favored some alternative that would have been more advantageous for private shareholders.  But, as noted above, neither Director was considering the interests of private shareholders.  *See* Timiraos, *supra* note 2; *The End of Affordable Housing? A Review of the Trump Administration's Plans to Change Housing Finance in America: Hearing Before the H. Comm. on Fin. Servs.*, 116th Cong. 24 (2019) (Ex. A).

- The jury could incorrectly infer from Dr. Calabria's statements regarding how the Conservatorship was at "odds with the statute" that the Third Amendment violated HERA (despite the fact that the Supreme Court has unequivocally held it does not) and could consider that as a factor in determining whether FHFA acted arbitrarily or unreasonably.

If the jury hears Plaintiffs' skewed sample of statements by the Directors and is left with critical

gaps in information, there is a high likelihood that the jury will draw improper inferences like

these.

Furthermore, the jury is likely to be confused by Mr. Watt's and Dr. Calabria's evolving

and differing policy perspectives, which were informed by circumstances unknown to FHFA at

the time of the Third Amendment.  Plaintiffs contend that the concern about evolving policy

preferences is misplaced given that HERA has not been amended since its enactment in 2008 and

that it is "not reasonable to conclude that Congress 'intended to delegate' to the FHFA the 'sweeping and consequential authority' to singlehandedly define the 'public interest'—let alone to leave the determination of [the] issue . . . to each individual Director's policy preferences." Opp. at 10-11 n.4 (citations omitted). But the Supreme Court in *Collins* held that HERA authorizes FHFA to "act in what *it* determines . . . is beneficial to the Agency and, by extension, the public it serves." *Collins*, 141 S. Ct. at 1776 (emphasis added); *see also Bhatti v. FHFA*, 15 F.4th 848, 854-55 (8th Cir. 2021) (holding HERA did not run afoul of the nondelegation doctrine). And, despite Plaintiffs' suggestion that it is not reasonable to conclude Congress intended to delegate to FHFA the authority to define the public interest, Plaintiffs themselves are seeking to admit the Director's statements to make a case that in the view of the Directors the Third Amendment "foreseeably harmed the public interest." Opp. at 1 (emphasis removed).

Second, the introduction of the Watt/Calabria Exhibits would unfairly prejudice Defendants. Plaintiffs err in asserting that Defendants "do not explain how or why any particular statement [in the exhibits] would 'draw the jury's ire.'" Opp. at 12. Defendants clearly explained that the contested exhibits contain statements that improperly suggest the "Third Amendment somehow contributed to increased taxes and limited the response to the [COVID] pandemic," two polarizing suggestions that bear no relation to what FHFA knew and the circumstances it faced in August 2012. Mot. at 14. Plaintiffs latch onto Defendants' description of a declarant's tone in one of the contested video recordings (Opp. at 12-13) and ignore the readily apparent fact that the declarant makes the polarizing and irrelevant suggestion that the Third Amendment somehow contributed to homeowners paying higher taxes. Plaintiffs' opposition also ignores Defendants' concern about how one of the exhibits suggests that the Third Amendment somehow limited the Enterprises' response to the COVID-19 pandemic,

which could prompt an emotional reaction and induce the jury to render a decision on an improper basis.

Finally, the introduction of these exhibits would involve the presentation of needlessly cumulative evidence.  Plaintiffs admit that much of the evidence they seek to introduce amounts to "statements of fact about the inherent characteristics of the Net Worth Sweep."  Opp. at 7. Because that is the case, the statements made years after the fact by individuals who had no involvement in the negotiation or execution of the Third Amendment are unnecessary and cumulative.  The Third Amendment speaks for itself with respect to its terms, including with respect to its impact on the Enterprises' ability to build a capital buffer.

## III.    Some of the Proposed Exhibits Are Inadmissible for Additional Reasons

Defendants' Motion established that some of the Watt/Calabria Exhibits should be excluded for additional reasons.  *See* Mot. at 15-17.  In their opposition, Plaintiffs agree not to introduce the Directors' statements regarding post-Third Amendment dividends paid to Treasury, and they present only a meager defense of the statements that Defendants identified as improper lay opinion.  *See* Opp. at 16.

In response to Defendants' challenge to two of the exhibits (PX-0585 and PX-0586) on the basis that they contain statements about dividends or value transferred to Treasury after the Third Amendment, Plaintiffs "informed Defendants that they will not seek to introduce such evidence" through either exhibit.  Opp. at 16.  While Defendants contend that these two exhibits should be excluded in their entirety under Rules 402 and 403, Plaintiffs' concession at a minimum requires redaction of the parts of the statements regarding post-Third Amendment dividends.  *See* Mot. at 16 & n.8.

In response to Defendants' argument that three exhibits (PX-0588, PX-0589, and PX-

0589-A) contain Dr. Calabria's improper legal opinions, Plaintiffs engage with only a single piece of one of the three statements at issue.  They ignore Dr. Calabria's assertions that HERA "contemplates an end to the conservatorships" (PX-0588) and that the length of the conservatorship was "at odds with what is contemplated in the statute" (PX-0589; *see also* PX-0589-A).  Plaintiffs, therefore, should be deemed to have conceded that these statements should be excluded.  *See Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded." (citation omitted)); *Burns v. Levy*, Civil Action No. 13-898 (CKK), 2019 WL 6465142, at *7 (D.D.C. Dec. 2, 2019) (holding that the plaintiff conceded arguments raised in a motion in limine where the plaintiff responded "only summarily").  And contrary to Plaintiffs' contention, *see* Opp. at 16, the one statement by Dr. Calabria that Plaintiffs summarily addressed bears no similarity to Mr. DeMarco's testimony relating two points in a Freddie Mac SEC filing to the public interest.  Trial Tr. 818:9-819:3.  Dr. Calabria's legal opinions about the scope of the Conservator's authority under HERA should be excluded under Rule 701.

## CONCLUSION

For the foregoing reasons, the Court should exclude the Watt/Calabria Exhibits from evidence for the second trial.

Dated: July 17, 2023

Respectfully submitted,

*/s/ Asim Varma*

Asim Varma (D.C. Bar # 426364)
Jonathan L. Stern (D.C. Bar # 375713)
David B. Bergman (D.C. Bar # 435392)
Ian S. Hoffman (D.C. Bar # 983419)
R. Stanton Jones (D.C. Bar # 987088)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
(202) 942-5000
Asim.Varma@arnoldporter.com
Jonathan.Stern@arnoldporter.com
David.Bergman@arnoldporter.com
Ian.Hoffman@arnoldporter.com
Stanton.Jones@arnoldporter.com

*Attorneys for Defendant Federal Housing Finance Agency*

*/s/ Michael J. Ciatti*

Michael J. Ciatti (D.C. Bar # 467177)
KING & SPALDING LLP
1700 Pennsylvania Ave. NW
Washington, DC 20006
Tel.: (202) 661-7828
Fax: (202) 626-3737
mciatti@kslaw.com

*Attorney for the Federal Home Loan Mortgage Corp.*

*/s/ Meaghan VerGow*

Meaghan VerGow (D.C. Bar # 977165)
O'MELVENY & MYERS LLP
1625 Eye St. NW
Washington, DC 20006
Tel.: (202) 383-5300
Fax: (202) 383-5414
mvergow@omm.com

*Attorney for the Federal National Mortgage Association*