# EXHIBIT D

```
 1                 BEFORE THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA
 2

 3   FAIRHOLME FUNDS, INC., et al.,   .
                                      .
 4          Plaintiffs,                .
                                      .  Case Number 13-cv-1053
 5       vs.                          .
                                      .
 6   FEDERAL HOUSING FINANCE AGENCY,  .
     et al.,                          .
 7                                    .
            Defendants.               .
 8   - - - - - - - - - - - - - - - -
     In re FANNIE MAE/FREDDIE MAC     .  Case Number 13-mc-1288
 9   SENIOR PREFERRED STOCK PURCHASE  .
     AGREEMENT CLASS ACTION           .  Washington, D.C.
10   LITIGATIONS.                     .  October 26, 2022
     - - - - - - - - - - - - - - - -    1:54 p.m.
11

12              TRANSCRIPT OF JURY TRIAL, AFTERNOON SESSION
                  BEFORE THE HONORABLE ROYCE C. LAMBERTH
13                    UNITED STATES DISTRICT JUDGE

14   APPEARANCES:

15   For Berkley Plaintiffs:       BRIAN BARNES, ESQ.
                                   Cooper & Kirk, PLLC
16                                 1523 New Hampshire Avenue Northwest
                                   Washington, D.C. 20036
17
     For Class Plaintiffs:         LEE RUDY, ESQ.
18                                 ERIC ZAGAR, ESQ.
                                   Kessler Topaz Meltzer & Check, LLP
19                                 280 King of Prussia Road
                                   Radnor, Pennsylvania 19087
20
                                   HAMISH HUME, ESQ.
21                                 SAMUEL KAPLAN, ESQ.
                                   KENYA DAVIS, ESQ.
22                                 Boies Schiller Flexner LLP
                                   1401 New York Avenue Northwest
23                                 Washington, D.C. 20005

24

25                        -- continued --
```

1  Q.   And you referred a couple of times already to ensuring the
2  accuracy of financial statements.
3  A.   Uh-huh.
4  Q.   I take it that that was your -- part of your responsibility
5  as well?  You were responsible for ensuring the accuracy of
6  Freddie Mac's financial statements?
7  A.   I was responsible for managing the process that was focused
8  on ensuring the accuracy of the financial statements.
9  Q.   And when you talk about financial statements, are you
10 talking about 10-Ks and 10-Qs and things like that?
11 A.   10-Ks and 10-Qs are the primary regulatory financial
12 statements.  It's also earnings releases, you know, various
13 forms of reporting to the board, forms of reporting to the
14 regulator.
15 Q.   Mr. Kari, you've been handed a document marked PX-101.
16 It's the minutes of a Freddie Mac board of directors meeting
17 dated June 3, 2011.  There's a Bates number, which is a number
18 at the lower right-hand corner, FHLMC 00000610 through 6122.
19 I'm just going to ask you a few questions about this.
20      The third paragraph on the first page, it indicates you
21 were in attendance at that meeting; correct?
22 A.   Yes.
23 Q.   Near the bottom of that bottom paragraph,
24 "he" -- there's a discussion, "he," which I think is referring
25 to you, and this is the very last line on that page.

1  would have seen when you were at Freddie Mac?
2  A.   I would have seen this document while I was at Freddie Mac.
3  Q.   And I think you testified earlier that you were responsible
4  for ensuring the accuracy of financial statements; is that
5  correct?
6  A.   That's right, through the work of all the -- the work of
7  all of the staff that report to me.
8  Q.   Exactly. Okay.
9       If you could turn to page 10, please, and just look under
10 where the paragraph -- the paragraph that's headed "long-term
11 financial sustainability."  I will read it into the record.
12      "There is significant uncertainty as to our long-term
13 financial sustainability.  The acting director of FHFA stated on
14 September 19 that" -- I'm sorry.  I will just do the second
15 paragraph.
16      "We expect to request additional draws under the purchase
17 agreement in future periods.  Over time, our dividend obligation
18 to Treasury will increasingly drive future draws.  Although we
19 may experience period-to-period variability in earnings and
20 comprehensive income, it is unlikely that we will generate net
21 income or comprehensive income in excess of our annual dividends
22 payable to Treasury over the long term."
23      Was that -- to your knowledge, was that accurate at the
24 time?
25 A.   To my knowledge, that was accurate at the time.

1  Q.  Okay.  Let's turn now to page 92, which is only a couple
2  pages behind that.
3      Under "capital resources," the second paragraph says, "We
4  expect to request additional draws under the purchase agreement
5  in future periods.  Over time, our dividend obligation to
6  Treasury on the senior preferred stock will increasingly drive
7  future draws.  Although we may experience period-to-period
8  variability in earnings and comprehensive income, it is unlikely
9  that we will generate net income or comprehensive income in
10 excess of our annual dividends payable to Treasury over the long
11 term.  In addition, we are required under the purchase agreement
12 to pay a quarterly commitment fee to Treasury, which could
13 contribute to future draws if Treasury does not" waive -- "does
14 not continue to waive the fee."
15     Was that an accurate statement?
16 A.  Yes.
17 Q.  Okay.  Thank you.  I have no more questions on this
18 document.
19     Now, if you wouldn't mind turning to Defendants'
20 Exhibit 369 of the exhibits that you were already handed today,
21 if you can dig it out.  I would like to draw your attention on
22 page 9 to the third paragraph from the bottom that starts "we
23 expect."  And what I'm going to read is going to be similar to
24 what I read before.
25     "We expect to request additional draws under the purchase

1  agreement in future periods.  Over time, our dividend obligation
2  to Treasury will increasingly drive future draws.  Although we
3  may experience period-to-period variability in the earnings and
4  comprehensive income, it is unlikely that we will generate net
5  income or comprehensive income in excess of our annual dividends
6  payable to Treasury over the long term.  In addition, we are
7  required under the purchase agreement to pay a quarterly
8  commitment fee to Treasury, which could contribute to future
9  draws if the fee is not waived.  Treasury waived the fee for all
10 quarters of 2011 and the first quarter of 2012, but it has
11 indicated that it remains committed to protecting taxpayers and
12 ensuring that our future positive earnings are returned to
13 taxpayers as compensation for their investment.  The amount of
14 the quarterly commitment fee has not yet been established and
15 could be substantial."
16      Was that your understanding at the time?
17 A.   That's correct.
18 Q.   Now, if we could turn to Defendants' Exhibit 527.
19 A.   Okay.
20 Q.   I would just like to -- and the date on this document is
21 draft, August 14th, 2012.  I think we established that already.
22      If you wouldn't mind turning back to page 2, and if you
23 look at the fourth bullet point on the right-hand side.
24 A.   Uh-huh.
25 Q.   It states, "Over the long term, it is likely that our