**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BERKLEY INSURANCE, Co., *et al.,* | |
| Plaintiffs, | |
| v. | Case No. 1:13-cv-1053 (RCL) |
| FEDERAL HOUSING FINANCE AGENCY, *et al.,* | |
| Defendants. | |
| In Re Fannie Mae / Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations | Case No. 1:13-mc-01288 (RCL) |
| This document relates to: *ALL CASES* | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE***
**TO ADMIT ENTERPRISE SEC FILINGS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 5

I.      DEFENDANTS' RULE 902(11) DECLARATION IS UNTIMELY AND
        IMPROPER................................................................................................................ 5

II.     MR. SATRIANO IS NOT A "QUALIFIED WITNESS" AND CANNOT
        SATISFY THE REQUIREMENTS OF RULE 803(6). ....................................... 8

        A.      Mr. Satriano's Prior Testimony Demonstrates That He Cannot Lay The
                Foundation Necessary To Admit The SEC Filings As "Business Records." ......... 9

        B.      Defendants' Rule 902(11) Declaration Does Not Lay The Foundation
                Necessary To Admit The SEC Filings As "Business Records." .......................... 15

III.    DEFENDANTS SHOULD NOT BE PERMITTED TO DISCUSS AND/OR
        DISPLAY THE SEC FILINGS DURING THEIR OPENING STATEMENT................ 17

CONCLUSION.................................................................................................................. 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CFTC v. Dizona*,
  594 F.3d 408 (5th Cir. 2010) ..............................................................................................11

*Huddleston v. Herman & MacLean*,
  640 F.2d 534 (5th Cir. 1981), *aff'd in part and rev'd in part on other grounds*,
  459 U.S. 375 (1983)..............................................................................................................15

*Kolmes v. World Fibers Corp.*,
  107 F.3d 1534 (Fed. Cir. 1997)...........................................................................................11

*U.S. Bank Tr., N.A. ex rel. LSF9 Master Participation Tr. v. Jones*,
  925 F.3d 534 (1st Cir. 2019)................................................................................................12

*In re Lyman Good Dietary Supplements Litig.*,
  2020 U.S. Dist. LEXIS 109318 (S.D.N.Y. June 22, 2020)........................................................9

*Paddack v. Dave Christensen, Inc.*,
  745 F.2d 1254 (9th Cir. 1984) ............................................................................................15

*Rambus, Inc. v. Infineon Techs. AG*,
  348 F. Supp. 2d 698 (E.D. Va. 2004) ..................................................................................11

*SEC v. Jasper*,
  678 F.3d 1116 (9th Cir. 2012) ............................................................................................15

*Seoul Semiconductor Co., Ltd. v. Bath*,
  2022 U.S. Dist. LEXIS 215768 (C.D. Cal. Aug. 23, 2022)........................................................9

*Smith v. Union Ins. Co.*,
  2017 WL 5171855 (N.D. Miss. June 15, 2017)....................................................................17

*United States v. Ging-Hwang Tsoa*,
  2013 WL 5837649 (E.D. Va. Oct. 29, 2013).........................................................................18

*United States v. Kahre*,
  610 F. Supp. 2d 1261 (D. Nev. 2009)..................................................................................18

*United States v. Lizon-Barias*,
  252 F. App'x 976 (11th Cir. 2007) ......................................................................................17

*Wye Oak Technology, Inc. v. Republic of Iraq*,
  2019 WL 1746326 (D.D.C. Apr. 18, 2019) (Lamberth, J.) ...........................................14, 15

**INTRODUCTION**

Defendants concede that "all the statements in the GSEs' SEC filings are hearsay unless some exception applies." Class ECF No. 336 at 17.  In response to Plaintiffs' motion in limine to exclude the SEC filings, Defendants argued that the SEC filings should be admitted as "business records" under Federal Rule of Evidence 803(6).  The Court "reserve[d] ruling on the admissibility of the SEC filings until it is clear what, if any, testimony defendants may offer by a qualified witness familiar with the GSEs' recordkeeping practices." Class ECF No. 336 at 20. In deciding to "reserve ruling," the Court rejected Defendants' contention that "Nicholas Satriano, FHFA's chief accountant," had laid the necessary foundation, explaining that "Satriano did not specifically testify that he was personally familiar with the GSEs' recordkeeping procedures, nor do defendants point to any other witness who did." *Id.*

Then, on the eve of trial, Defendants notified Plaintiffs that they intend to attempt to lay the necessary foundation via a certification by Mr. Satriano (the "Certification") under Federal Rule of Evidence 902(11). Defendants did not make this "certification available for inspection" Fed. R. Evid. 902(11) until 7:36 p.m. on July 23—giving Plaintiffs mere hours to challenge the Certification, and thereby depriving Plaintiffs a "fair opportunity" to do so.  Fed. R. Evid. 902(11). Not only is the Certification prejudicially untimely, it also reveals fatal deficiencies in Mr. Satriano's ability to lay the necessary foundation under Rule 803(6)(D).  Accordingly, the Court should reject the Certification, deny Defendants' motion to admit the SEC filings, and exclude the SEC filings, including any discussion and/or display thereof in Defendants' opening statement, because Defendants have failed to comply with Rule 803(6)(D).

**BACKGROUND**

On July 22, 2023, at 9:54 p.m., Defendants informed Plaintiffs, for the very first time, that they "intend to submit a certification from Mr. Satriano under Rule[] 902(11) that will establish

the admissibility of the SEC filings under Rule 803(6)." Ex. A (July 22, 2023, Email from I. Hoffman). Defendants did not send the Certification until 7:36 p.m. on July 23. Ex. B (July 23, 2023, Email from I. Hoffman). The events leading up to Defendants' belated notice and service of the Certification lay bare that Defendants' delay is inexcusable and egregiously prejudicial to Plaintiffs.

*First*, on April 28, 2023, Plaintiffs served their objections to Defendants' exhibit list, which included numerous Fannie Mae and Freddie Mac SEC filings.  In their April 28, 2023 objections disclosure, Plaintiffs lodged a "reservation of rights for specific passages / uses" regarding some SEC filings, and for others explicitly stated "contains hearsay." Ex. C (Objections to DX).

*Second*, on May 12, 2023, the parties held a day-long meet-and-confer during which Plaintiffs previewed for Defendants their objections to the SEC filings and the specific motions in limine Plaintiffs intended to pursue.  During that meet and confer, Plaintiffs informed Defendants that Plaintiffs planned to file a motion in limine to preclude admission of risk disclosure statements contained in Fannie Mae's and Freddie Mac's SEC filings – specifically, statements regarding expectations as to future profitability and future Treasury draws – premised on a hearsay objection. Plaintiffs explained during the meet and confer that Plaintiffs' position was that there is a qualitative difference between the financial results reported in SEC filings, which are subject to Generally Accepted Accounting Principles (GAAP), and forward-looking statements and risk disclosures, which are less reliable and subject to significant uncertainty.

*Third*, on May 26, 2023, Plaintiffs filed their Omnibus Motion in Limine, which moved to preclude Defendants from admitting risk disclosures from Fannie Mae's and Freddie Mac's SEC filings for the truth of the matter asserted, as occurred at the first trial. Class ECF No. 292 (Pls.' Omnibus MIL) at 30-32.

*Fourth*, Defendants opposed Plaintiffs' Omnibus Motion on June 14, 2023.  Defendants did not contest that the risk disclosures in the GSE's SEC reports were hearsay.  Instead, in their opposition, Defendants' primary argument regarding the admissibility of the SEC reports was that they qualified as business records under Rule 803(6). Class ECF No.  320 (Defs.' Opp'n to Pls.' Omnibus MIL) at 41-45. Defendants even cited Rule 902(11)'s certification requirement in their opposition, *id.* at 41, but did not provide Plaintiffs with such a certification nor indicate that they had any intention of relying on a Rule 902(11) certification to lay the necessary foundation under Rule 803(6).

*Fifth*, in Plaintiffs' reply in support of Omnibus Motion in Limine, filed on June 23, 2023, Plaintiffs explained that Defendants had failed to lay a proper foundation for the business records exception, had failed to satisfy Rule 803(6)(D), and argued that Mr. Satriano was neither a "custodian" of the GSEs' SEC filings nor or "qualified witness" regarding the GSEs' record-keeping systems. Class ECF No. 313 (Pls.' Reply ISO Omnibus MIL) at 22-23.

On July 18 and 19, 2023, the Court held the Pre-Trial conference in this Action, during which the parties presented argument concerning Plaintiffs' hearsay objections to the SEC filings.

On July 21, 2023, the Court issued a Memorandum Opinion ruling on the pre-trial motions. The Court noted that Defendants were relying on Mr. Satriano as a "qualified witness" under Rule 803(6), and stated "To be sure, Satriano did not specifically testify that he was personally familiar with the GSEs' recordkeeping procedures, nor do defendants point to any other witness who did. But that is not to say defendants will be unable to elicit such testimony." Class ECF No. 336 (Mem. Op. re MILs) at 19-20.  Accordingly, the Court "reserve[d] ruling on the admissibility of the SEC filings until it is clear what, if any, testimony defendants may offer by a qualified witness familiar with the GSEs' recordkeeping practices." *Id*. at 20.

Also on July 21, 2023, after reviewing the Court's Memorandum Opinion, Plaintiffs'

counsel emailed counsel for Defendants the following:

> [G]iven the Court's ruling on the SEC reports, it is our position that Defendants should not be permitted to refer to the SEC reports in their opening statement. We request that you let us know no later than tomorrow if Defendants agree or if Defendants intend or reserve the right to refer to SEC reports in opening statement. If Defendants intend to do so, we further request that you include a proffer of how you intend to lay the foundation for the admissibility of the reports.

Ex. D (Sam Kaplan email sent 2:18pm on July 21, 2023).

On July 22, 2023, two days before trial, Defendants notified Plaintiffs, for the first time,

that they would submit a Rule 902(11) certification, stating,

> In response to your question below about SEC filings, Defendants disagree with Plaintiffs' position and intend to discuss and display SEC filings in Defendants' opening statement. As for laying the foundation for admissibility, Defendants intend to submit a certification from Mr. Satriano under Rules 803(6)(D) and 902(11) that will establish the admissibility of the SEC filings under Rule 803(6). That certification is being finalized and we intend to share a copy with you tomorrow (Sunday).

Ex. A (Defs.' Email on July 22, 2023).

Defendants did not send the Rule 902(11) certification until 7:36 p.m. on July 23, 2023.

Ex. B (July 23, 2023, Email from I. Hoffman). In the email accompanying the certification,

Defendants asked that Plaintiffs,

> let us know as soon as possible (a) whether Plaintiffs will continue to object to the admissibility of the SEC filings in light of Mr. Satriano's declaration, and (b) whether Plaintiffs will object to Defendants discussing and displaying SEC filings in their opening statement.

> Absent Plaintiffs' agreement, Defendants will file a motion to admit the SEC filings, potentially as soon as tomorrow (Monday) morning.

*Id.* In other words, Defendants' email provided Plaintiffs with only a "potential[]" timeline as to

when Defendants planned to file their motion, with the ***earliest*** potential time giving Plaintiffs less

than a day before opening statements to oppose the motion.

Defendants filed their motion at 9:27 this morning, just prior to the commencement of jury selection. Class ECF No. 329.

## ARGUMENT

### I.      The Certification Is Prejudicially Untimely

To admit a document as a business record, Rule 803(6)(D) requires either "the testimony of the custodian or another qualified witness" or "a certification that complies with Rule 902(11)…." Fed. R. Evid. 803(6)(D). Rule 902(11), in turn, requires that "[b]efore the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record—and must make the record and certification available for inspection—so that the party has a fair opportunity to challenge them." Fed. R. Evid. 902(11). The Certification plainly fails to comply with Rule 902(11) because Defendants gave Plaintiffs neither reasonable written notice nor a fair opportunity to challenge the Certification.

Defendants first notified Plaintiffs that they would submit the Certification nearly a week after the pretrial conference and *less than two days* before the start of jury selection. Ex. A (Defs.' Email on July 22, 2023). At that time, Defendants indicated that the "certification is being finalized," *id.,* and they did not send Plaintiffs the Certification until 7:36 p.m. on Sunday, July 23—*less than 15 hours* before the start of jury selection. Ex. A (Defs.' Email on July 22, 2023). Although there is no bright-line rule as to how much time is necessary to provide "reasonable written notice" that affords "a fair opportunity to challenge" a certification, 15 hours before the start of trial surely does not make the cut.[1]

---

[1] *See, e.g.*, *Seoul Semiconductor Co., Ltd. v. Bath*, 2022 U.S. Dist. LEXIS 215768 (C.D. Cal. Aug. 23, 2022) (no "reasonable written notice" under Fed. R. Evid. 902(11) where party "did not make the certification available for inspection until . . . 17 days before the pretrial conference and a month before trial"); *In re Lyman Good Dietary Supplements Litig.*, 2020 U.S. Dist. LEXIS 109318 (S.D.N.Y. June 22, 2020) (excluding purported business records because, among other reasons, the certification was served "long after the close of discovery [and] Defendants had no

Indeed, this Court has expressly disapproved of tactics that seek "to turn back the clock on the orderly process of litigation in order to avoid its consequences," Class ECF No. 298 (Mem. Op. re Supp. Expert Rpts.) at 1,[2] which is exactly what Defendants now seek to do.  In essence, Defendants "ask[] to modify the discovery deadlines contained in a scheduling order," which would require a showing of "good cause" that Defendants cannot make. *Id.*  Defendants have been on notice for months that Plaintiffs intended to challenge the admissibility of the SEC filings, yet Defendants waited until mere hours before the start of trial to provide the Certification.  Defendants "had no excuse for failing to develop" a plan to lay the foundation necessary to admit the SEC filings, *id.* at 5, which Defendants concede are hearsay absent an applicable exception.  *See* Class ECF No. 336 (Mem. Op. re MILs) at 17.

The prejudice to Plaintiffs caused by Defendants' providing the Certification on the literal eve of trial can hardly be overstated.  Plaintiffs have not only been denied "a *fair* opportunity to challenge" the Certification—they have been denied *any* opportunity to do so.  Had Defendants provided the Certification in a timely manner, Plaintiffs could have deposed Mr. Satriano to test the *bona fides* of his Certification.  Needless to say, Defendants have made that impossible, as jury selection has begun and opening statements are less than a day away.

---

opportunity to challenge the certification or to depose [the witness]"). Defendants thus have not provided "reasonable written notice" of the certification under Rule 902(11).

[2] The Court issued this ruling after Plaintiffs sought to introduce supplemental expert reports of Drs. Dharan and Mason. In connection with the supplemental reports, Plaintiffs gave Defendants months of notice to avoid any timeliness prejudice, and, to further mitigate any potential prejudice Defendants might face, allowed Defendants to depose Drs. Dharan and Mason while the application was pending. Here, by contrast, Defendants have taken ***no precautions whatsoever*** to mitigate prejudice to Plaintiffs, even though they knew (or, at minimum, should have known based on the plain language of Rule 803(6)) that the Court could require them to lay additional foundation before admitting the SEC filings into evidence.

Under the circumstances, Defendants' touting that their providing the Certification "a mere two days after the Court's ruling inviting supportive testimony" was "prompt", Def. Mot. at 2, defies credulity.  The Federal Rules of Evidence do not countenance such ambush tactics, nor should this Court.  Accordingly, the Court should reject the Certification out of hand as untimely.

**II.      Mr. Satriano Is Not A "Qualified Witness" And Cannot Satisfy The Requirements Of Rule 803(6)**

In addition to being untimely, the Certification fails for the independent reason that it is fatally deficient in substance. Pursuant to Rule 803(6), a "qualified witness" must be able to "explain the record keeping system of the organization **and** vouch that the requirements of Rule 803(6) are met." *CFTC v. Dizona*, 594 F.3d 408, 415 (5th Cir. 2010) (emphasis added) (quoting *U.S. v. Brown*, 553 F.3d 768, 792 (5th Cir. 2008)).  *See also Rambus, Inc. v. Infineon Techs. AG*, 348 F. Supp. 2d 698, 701 (E.D. Va. 2004) ("Rule 902(11) contains the same requirements, and almost the same wording, as Rule 803(6)"); Class ECF No. 336 at 20 (indicating that a "custodian or other qualified witness" must be "familiar with the record-keeping procedures of the organization." (citations and internal quotation marks omitted).

As to the familiarity requirement, a witness must be able to "testify concerning the record-keeping process related to" the type of record that is at issue. *Kolmes v. World Fibers Corp.*, 107 F.3d 1534, 1543 (Fed. Cir. 1997).  *See also Rambus*, 348 F. Supp. 2d at 703 ("the custodian or qualified witness must not only be familiar with the maintenance of the records, but also with how they are created"); 5 Weinstein's Federal Evidence § 803.08[8][a] (2023) (The witness must have "enough familiarity with the record-keeping system of the entity in question to **explain how the record came into existence** in the course of a regularly conducted activity of the entity."). The ability of "qualified witness" to "explain" the organization's record-keeping process is essential because the opposing party must be afforded the opportunity to "cross-examine[ the witness]

concerning the manner in which the records are made and kept." *U.S. Bank Tr., N.A. ex rel. LSF9 Master Participation Tr. v. Jones*, 925 F.3d 534, 538 (1st Cir. 2019). Accordingly, "the typical witness is someone with an ***intimate familiarity*** with the organization's record keeping." 30B Wright & Miller, *Fed. Prac. & Proc. Evid.* § 6863 (2023 ed.).

As this Court has observed, during the first trial Mr. Satriano "did not specifically testify that he was familiar with the GSEs' recordkeeping procedures." Class ECF No. 336 at 20. On the contrary, his prior testimony confirms that Mr. Satriano is ***not*** familiar with the GSEs' recordkeeping practices. For example, when asked about content included in the GSEs' "draft 10-K," Mr. Satriano acknowledged that he was not able to speak to the process by which the draft 10-K was prepared, testifying "So in the preparation -- well, ***I have to infer into management, in the preparation*** of the first draft or an early draft -- I don't know if it was the first draft of the 10-K -- management had reaffirmed its decision not to reverse the DTA as of Q4 2012." *See* Ex. E (Satriano Dep.) at 91:17-92:9.

Likewise, Mr. Satriano's Certification reveals his ***lack*** of familiarity with Fannie and Freddie's recordkeeping procedures. In paragraph 4 of the Certification, Mr. Satriano claims to have "detailed personal knowledge of the record-keeping procedures with respect to [the GSEs'] SEC filings, including how, when, and under what circumstances these filings are prepared, maintained, and submitted to the SEC." Certification, ¶ 4. The remainder of the Certification, however, does not bear out his claim, particularly with regard to "how, when, and under what circumstances these filings are prepared." *Id*.

Pursuant to Rule 803(6)(D), to establish the necessary foundation to admit a document as a business record, a certification must "compl[y] with Rule 902(11)" and must "show[]" "all [the] conditions" specified in subsections (A)-(C) of Rule 803(6). Fed. R. Evid. 803(6)(D). The

requisite "conditions" set forth in subsection (A) are that "the record was made at or near the time by — or from information transmitted by — someone with knowledge."  By its terms, subsection (A) focuses on the process or procedure by which "the record was made," *i.e.*, created.

According to its heading, Section B of the Certification, comprising paragraphs 9-19, purports to be a "summary of Fannie Mae's and Freddie Mac's record-keeping procedures for the creation, distribution, and submission of their SEC filings based on [Satriano's] personal knowledge."  Certification, Heading B.  The heading, however, does not accurately describe the contents of that section, which in fact provide ***no information*** regarding the "creation" of Fannie and Freddie's SEC filings in general, much less any information regarding the "creation" of the forward-looking risk disclosures in particular.

Paragraph 9 appears to be intended to show the condition specified in subsection (C) of Rule 803(6), not subsection (A), and provides no information regarding the creation of the filings. Paragraph 10 purports to describe how each of the GSEs "prepares for the submission of an upcoming SEC filing," but likewise fails to elucidate whether "the record was made at or near the time by — or from information transmitted by — someone with knowledge," as Rule 803(6)(A) requires.  Similarly, paragraph 11 states only that "[e]ach Enterprise prepares and reviews the current period financial information in the SEC filing," but provides none of the information specified in Rule 803(6)(A), *e.g.*, how or by whom "the record was made."  Paragraphs 12 through 18 each purport to describe how the GSEs' draft SEC filings are reviewed and approved by various internal bodies, specifically, their respective Disclosure Committee and Audit Committee, and external bodies, specifically, the FHFA's Office of Chief Accountant and each company's respective external auditor, but again provide no information regarding whether "the record was made at or near the time by — or from information transmitted by — someone with knowledge."

Finally, paragraph 19 appears to be intended to show the condition specified in subsection (B) of Rule 803(6), not subsection (A), and thus provides no information regarding the creation of the filings.

In short, nothing in Section B of the Certification, nor indeed in any section or paragraph of the Certification, even addresses, let alone establishes, whether the GSEs' SEC filings were "made at or near the time by — or from information transmitted by — someone with knowledge." Consequently, the Certification does not remotely satisfy the requirements of Rules 803(6)(A) or (D).

Defendants' citation to *Wye Oak Technology, Inc. v. Republic of Iraq,* 2019 WL 1746326 (D.D.C. Apr. 18, 2019) (Lamberth, J.), is unavailing. There, the "experience" that led the Court to conclude that the witness had "developed a familiarity with the record-keeping systems of the[ relevant] offices" included that, in managing the offices' foreign litigation, (i) she was personally "responsible for managing the production of documents, including managing the search and retrieval of documents maintained in the files of the [offices]," and (ii) she had personally "searched for and produced files from the [offices] on more than fifty occasions." *Id.* at *3. Accordingly, even though the witness was not an employee of the relevant organization, she was "familiar[] with the [organization's] record-keeping system" based on her firsthand experience personally accessing the organization's record-keeping system and retrieving records from that system. *Id.*

Here, by contrast, the Certification establishes that Mr. Satriano was only "personally involved in FHFA's review" of the GSEs' draft SEC filings. Ex. F (Decl. of N. Satriano) ¶ 8. Mr. Satriano's reviewing draft SEC filings the GSEs prepared without FHFA's involvement bears no

resemblance to the extensive experience the witness in *Wye Oak* demonstrated, and falls far short

of satisfying Rule 803(6).

### III.  Mr. Satriano Cannot Lay The Foundation For The Portions Of The SEC Filings Defendants Seek To Introduce

The GSEs' SEC filings are several-hundred-page documents that contain a plethora of

information on a wide range of topics.  For the most part, however, Defendants seek to introduce

only a small portion of the SEC filings, specifically, certain forward-looking risk disclosures

regarding Fannie and Freddie's future ability to pay dividends on Treasury's Senior Preferred

Stock, which appear in the Management's Discussion and Analysis (MD&A) portion of the SEC

filings. To the extent Mr. Satriano has any knowledge of the GSEs' record-keeping practices in

connection with SEC filings, that knowledge is relevant only to the financial statements and

financial information within the SEC filings, and thus cannot serve as a basis to admit the forward-

looking risk disclosures.

Numerous courts across the country have recognized as salient the distinctions among

various portions of SEC filings.  As one court observed, while "portions" of an SEC filing "may

be admissible … as business records if a proper foundation is laid," "[i]t may be difficult or

impossible to establish that the report in toto is admissible…." *Huddleston v. Herman & MacLean*,

640 F.2d 534, 553 (5th Cir. 1981), *aff'd in part and rev'd in part on other grounds*, 459 U.S. 375

(1983).  *See also SEC v. Jasper*, 678 F.3d 1116, 1123 (9th Cir. 2012) (admitting a portion of a 10-

K filing on the basis that it "was a paradigmatic 'financial statement audit'"); *Paddack v. Dave*

*Christensen, Inc.*, 745 F.2d 1254, 1257 n.3 (9th Cir. 1984) (discussing the admissibility of the

portion of an SEC filing that disclosed "a financial statement audit . . . under Fed. R. Evid.

803(6)").

Moreover, the SEC itself identifies "MD&A" as a completely separate "topic" from "financial statements" and "pro forma financial information." Division of Corporation Finance, *Financial Reporting Manual*, at 3-10, available at https://www.sec.gov/files/cf-frm.pdf.  MD&A "is a 'principles-based' disclosure requirement.  It is intended to provide management with flexibility to describe the financial matters impacting the registrant." *Id.* § 9110.2.  *See also id.* § 9110.1 (emphasis added) ("objectives of MD&A" include "provid[ing] a narrative explanation of a company's financial statements that enables investors to see the company ***through the eyes of management***" and "provid[ing] context within which financial information should be analyzed"). Similarly, in an investor bulletin on "How to Read a 10-K," the SEC describes MD&A as "allow[ing] ***company management to tell its story in its own words***," including "discuss[ing] the risks that the company faces" relating to non-financial topics such as "competition," "brand[ing]," and "compliance with laws."[3] The MD&A is a narrative analysis that discloses, among other things, management's perspective on qualitative topics, including forward-looking risks, and thus, differs significantly from the accounting-focused disclosures in the financial statements.

Neither his Certification nor his testimony provides any basis to conclude that Mr. Satriano has the requisite knowledge to serve as a "qualified witness" with regard to the GSEs' MD&A disclosures.  Indeed, Mr. Satriano's trial testimony confirms the limited scope of his role as FHFA's Chief Accountant:

> The primary areas where we spend most of our time in the accounting office is looking at ***accounting policy***, how management records and decides how to ***record transactions***.

---

[3] SEC Office of Investor Education & Advocacy, *Investor Bulletin: How to Read a 10-K*, at 2-3 (emphasis added), available at https://www.sec.gov/files/reada10k.pdf. *Compare id.* at 2 (MD&A provides "the company's perspective on the business results of the past financial year"), *with id.* at 3-4 (financial statements disclose "the company's audited financial statements," which must be presented "according to a set of accounting standards known as . . . GAAP").

> We also look at ***financial disclosures***.  I will assume you've heard a lot about the SEC filings the last week.  So that's the things -- those are the kinds of documents we spent a lot of time reviewing and commenting on to ensure completeness and transparency.

Ex. G (Trial Tr.) 2206:17-25 (emphasis added).  Tellingly, in his deposition Mr. Satriano testified that he did not even know about the executive-level recordkeeping practices of FHFA, ***his own employer*** of "nearly 20 years." Certification, ¶ 2; Ex. E (Satriano Dep.) at 236:18-237:4 ("I don't know what records the [FHFA] directors or the front office would maintain.").  That the Certification provides no information regarding the creation of the MD&A disclosures in the GSEs' SEC filings is unsurprising, as there is no evidence that Mr. Satriano has any knowledge whatsoever of Fannie and Freddie's recordkeeping procedures in that area.  Consequently, Mr. Satriano cannot lay the necessary foundation to admit the MD&A disclosures under Rule 803(6).[4]

## IV.    The Court Should Preclude Defendants From Discussing And/Or Displaying SEC Filings In Their Opening Statement

Defendants "intend to discuss and display SEC filings in [their] opening statement." Ex. A (Defs.' Email on July 22, 2023). Opening statements, however, are an "opportunity to state what evidence ***will be presented*** in order to make it easier for the jurors to understand what is to follow," so evidence "that is even of ***questionable*** admissibility" should be omitted.  *United States v. Lizon-Barias*, 252 F. App'x 976, 978 (11th Cir. 2007) (citing *United States v. Adams*, 74 F.3d 1093, 1097 (11th Cir. 1996)) (emphasis added).  *See also Smith v. Union Ins. Co.*, 2017 WL 5171855, at *4 (N.D. Miss. June 15, 2017) ("counsel bears a duty to refrain from referencing 'evidence of questionable admissibility during opening statements'").

---

[4] Defendants reiterate their argument that the "SEC filings are also independently admissible under the residual exception," Class ECF No. 329 at 8, but for that argument fails for the reasons set forth in the Plts' Omnibus MIL, Class ECF No. 292 at 30-32; Plts' Reply ISO MIL Class ECF No. 313 at 22-23.

The GSEs' SEC filings are, at best, "of questionable admissibility."  As discussed herein,

the Certification is procedurally and substantively deficient, fails to comply with Rules 803(6) and

902(11), and therefore provides no basis upon which to admit the SEC filings.  Accordingly, even

if the Court defers ruling on the admissibility of the SEC reports and allows Defendants to attempt

to lay the necessary foundation through witness testimony, which it should not,[5] at a minimum the

Court should preclude Defendants from discussing and/or displaying the SEC filings during their

opening statement.

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that this Court (i) deny

Defendants' motion to admit the SEC filings, (ii) exclude the SEC filings, and (iii) preclude

Defendants from discussing and/or displaying SEC filings during their opening statement.

---

[5] For the avoidance of doubt, Plaintiffs submit that in choosing to attempt to lay the necessary foundation via a Rule 902(11) certification, Defendants have waived the opportunity "to elicit such testimony," Class ECF No. 336 at 20, during trial. This position finds support in ample authority confirming that Rule 902(11) is an ***alternative*** to laying the foundation for purported business records through live testimony. *See, e.g.*, *United States v. Ging-Hwang Tsoa*, 2013 WL 5837649, at *1 (E.D. Va. Oct. 29, 2013) (describing Rule 902(11) as setting forth a procedure to be used "in lieu of live testimony"); *United States v. Kahre*, 610 F. Supp. 2d 1261, 1263 (D. Nev. 2009) (emphasis added). ("The Rule was amended in 2000 to add that, ***in lieu of live testimony***, the foundation for admissibility of a business record may be established by a certification that complies with Rule 902(11)."  Having elected the certification alternative, Defendants should not also be afforded an opportunity to elicit live foundational testimony should the Court reject the Certification.

Dated:                                                 Respectfully submitted,

/s/ Charles J. Cooper                                  /s/ Eric L. Zagar
Charles J. Cooper (Bar No. 24870)                      Eric L. Zagar (*Pro Hac Vice*)
David H. Thompson (Bar No. 450503)                     **KESSLER TOPAZ MELTZER**
Vincent J. Colatriano (Bar No. 429562)                 **& CHECK, LLP**
Peter A. Patterson (Bar No. 998668)                    280 King of Prussia Rd.
Brian W. Barnes (*Pro Hac Vice*)                       Radnor, PA 19087
**COOPER & KIRK, PLLC**                                Tel: (610) 667-7706
1523 New Hampshire Avenue, N.W.                        Fax: (610) 667-7056
Washington, DC 20036                                   ezagar@ktmc.com
Tel: (202) 220-9600
Fax: (202) 220-9601                                    Hamish P.M. Hume (Bar No. 449914)
ccooper@cooperkirk.com                                 Samuel C. Kaplan (Bar No. 463350)
                                                       **BOIES SCHILLER FLEXNER LLP**
*Counsel for Berkley Plaintiffs, et al.*               1401 New York Ave. NW
                                                       Washington, DC 20005
                                                       Tel: (202) 237-2727
                                                       Fax: (202) 237-6131
                                                       hhume@bsfllp.com
                                                       skaplan@bsfllp.com

                                                       Michael J. Barry (*Pro Hac Vice*)
                                                       **GRANT & EISENHOFER P.A.**
                                                       123 Justison Street
                                                       Wilmington, DE 19801
                                                       Tel: (302) 622-7000
                                                       Fax: (302) 622-7100
                                                       mbarry@gelaw.com

                                                       Adam Wierzbowski (*Pro Hac Vice*)
                                                       **BERNSTEIN LITOWITZ BERGER**
                                                       **& GROSSMANN LLP**
                                                       1251 Avenue of the Americas
                                                       New York, NY 10020
                                                       Tel: (212) 554-1400
                                                       Fax: (212) 554-1444
                                                       adam@blbglaw.com

                                                       *Co-Lead Counsel for the Class*