**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| BERKLEY INSURANCE CO., et al.,<br><br>      *Plaintiffs*,<br><br>v.<br><br>THE FEDERAL HOUSING FINANCE AGENCY, et al.,<br><br>      *Defendants.* | Case No. 1:13-cv-1053-RCL |
| IN RE FANNIE MAE/FREDDIE MAC SENIOR PREFERRED STOCK PURCHASE AGREEMENT CLASS ACTION LITIGATIONS<br>_____<br><br>This document relates to:<br>ALL CASES | Case No. 1:13-mc-1288-RCL |

**PLAINTIFFS' MOTION REQUESTING AN ORDER OVERRULING
DEFENDANTS' IMPROPER OBJECTIONS CONCERNING
<u>DR. JOSEPH MASON'S TESTIMONY ON JULY 27, 2023</u>**

I.     **Introduction**

Plaintiffs file this Motion to address (1) a pending objection to Plaintiffs' re-direct examination of their damages expert, Dr. Joseph Mason, and (2) an objection that the Court sustained during that re-direct examination that was lodged in violation of an explicit agreement between the parties.

**First**, in the pending objection, Defendants seek to prevent Plaintiffs from following up on questions that Defendants raised in cross-examination on the basis that the testimony was not affirmatively included in Dr. Mason's expert reports. The rule Defendants would propose is that Defendants may ask about areas beyond the scope of an expert's report, but then the expert should not be allowed to explain those answers on re-direct if he did not affirmatively include them in the report. This rule finds no support in the law. Plaintiffs should be allowed to ask a limited series of questions to respond to the questions Defendants asked on cross-examination.

**Second**, in the prior (sustained) objection, Defendants flagrantly violated the terms of a carefully negotiated agreement about the relevance of post-Net Worth Sweep price movements in Fannie Mae and Freddie Mac stock. The agreement barred certain lines of questioning and left others specifically on the table. The question that Plaintiffs' counsel asked Dr. Mason was drawn almost verbatim from the parties' agreement, which was memorialized via email and included in Plaintiffs' Pretrial Statement lodged with the Court. Defendants' objection to the question violated the agreement. Meanwhile, on cross-examination, Defendants compounded their violation by displaying two stock price charts showing the GSEs' post-Net Worth Sweep stock price movements, and asking Dr. Mason to confirm no less than six times within ten transcript pages whether the Net Worth Sweep happened "eleven years ago." Plaintiffs submit that the Court should give a curative instruction to the effect that post-Net Worth Sweep movements in the GSEs'

stock price are not relevant to damages. Defendants should be hard-pressed to oppose such an instruction, since the parties' agreement sought to memorialize this very point.

## II. The Court Should Overrule Defendants' Improper Objection To Plaintiffs' Re-Examination Of Dr. Mason On Issues Raised In Defendants' Cross-Examination And Covered In Plaintiffs' Re-Direct At The Last Trial

Yesterday, during re-direct examination, Defendants improperly objected and sought to block Plaintiffs from re-examining their damages expert, Dr. Joseph Mason, Ph.D., on whether he considered an alternative cause of the August 17, 2012 stock drop. Defendants had just cross-examined Dr. Mason on whether the accelerated reduction of Fannie Mae and Freddie Mac's retained mortgage portfolio, which was also announced on August 17, 2012, might have been a cause of the GSEs' stock price declines. When Plaintiffs sought to ask Dr. Mason on re-direct examination why he believed that the Net Worth Sweep, rather than the accelerated reduction of the mortgage portfolio, was the true cause of the stock price drop, Defendants objected on the ground that Dr. Mason's answer to the question was not contained within his expert reports.

Plaintiffs should be allowed to ask Dr. Mason to explain his answer, elicited on cross-examination, that it was the Net Worth Sweep, rather than the accelerated reduction of the retained portfolio, that caused the GSEs' stock price declines. Defendants know what Dr. Mason's answer to the question will be, because he gave this exact testimony on re-direct examination in the last trial, with no objection by Defendants. The evidentiary rule that Defendants urge on this Court, meanwhile, would allow a party to ask an expert anything they wish, regardless of whether the opinions are found within the expert's report, but then bar the expert from elaborating on those same answers when being re-directed. Defendants' pending objection should be overruled. Plaintiffs will then only ask a short series of questions on this topic, which will amount to no more than five minutes of testimony.

2

### A. Relevant Law: Parties Are Permitted To Re-Direct On Any Issues Raised In Cross-Examination

It is well-established that redirect examination is essential to "repl[y] to [a] new matter adduced on cross-examination" and, moreover, the ability to redirect is "deemed a matter of right." *See, e.g.,* 1 Kenneth S. Broun *et. al.*, 1 McCormick on Evidence § 32 (7th ed. 2013). Re-direct examination can be necessary in many situations to cure prejudice, including attacks on credibility, resulting from defendants' cross-examination questions. *Dobson v. United States*, 426 A.2d 361, 365 (D.C. 1981) ("[R]edirect examination is limited to matters which were first raised on cross-examination, to which the opposing party is merely responding on redirect.") (quoting *Singletary v. United States*, 383 A.2d 1064, 1073 (D.C.1978)); *Hilton v. United States*, 435 A.2d 383, 389 (D.C.1981); *Copes v. U.S.*, 345 F.2d 723, 725 (D.C. Cir. 1964) ("[I]t was proper on redirect to explain and complete her testimony on cross-examination."); *Lust v. Sealy, Inc.*, 383 F.3d 580, 587 (7th Cir. 2004) (collecting cases); *see also Josephs v. Harris Corp.*, 677 F.2d 985, 989–90 (3d Cir. 1982) (finding district court committed abuse of discretion by restricting plaintiffs' ability to conduct redirect examination to correct impression after cross-examination that plaintiffs' expert lacked support for opinion); *United States v. Marzano*, 160 F.3d 399, 402 (7th Cir. 1998) (finding that, when cross-examination revealed that witness had omitted mention of misdemeanor, it was error for district court to disallow explanation of that omitted misdemeanor on redirect; stating that if the witness had "been allowed to explain the nature of his conviction, the credibility of his testimony that he had forgotten it when he filled out the form would have been enhanced. We cannot think of any reason why he was not permitted to explain.").

### B. At The Last Trial, Dr. Mason Testified On Both Cross-Examination And Re-Direct Examination About The Impact Of The Accelerated Reduction Of The Mortgage Portfolio On The Enterprises' Stock Prices

At the last trial, Defendants' cross-examination of Dr. Mason focused heavily on whether the event study conducted by their expert (Dr. Attari) failed to account for the impact of the accelerated mortgage portfolio reduction. Defendants' questions on this topic span eight (8) of the twelve (12) pages of Mason's cross-examination from the Trial 1 transcript.[1] Dr. Mason told Defense counsel that the portfolio reduction acceleration was not the cause of the Enterprises' stock price declines. For example, in response to Defendants' question about whether "the event study" analyzed "the impact of the net worth sweep on the stock prices and any impact of the acceleration of the reduction of the retained mortgage portfolios," Dr. Mason testified that it was "not a potential cause of the decline."[2] Moreover, Dr. Mason confirmed that he *did* consider this exact issue, testifying for example that he "looked at other news" on the "day of the announcement of the Third Amendment."[3]

On re-direct of Dr. Mason, Plaintiffs addressed the same issue. In response, Defendants did not raise a single objection, acknowledging that Plaintiff was entitled to explore this issue on re-direct. There, Dr. Mason testified that the acceleration of the portfolio reduction was already known to the market—and thus could not have caused the stock price declines—and re-confirmed his opinion that it was the "net worth sweep" that "caused the GSE shares to lose half value in August of 2012."[4]

---

[1] Trial 1 Tr. 1526:17-1534:23.

[2] *Id*. at 1529:15-22.

[3] *Id*. at 1531:7-17.

[4] *See Id*. at 1538:3-1539:14.

4

Defendants also raised the mortgage portfolio reduction issue again in their examination of Dr. Mason during his April 26, 2023 deposition.[5]

### C. At This Trial, Defendants Again Asked Dr. Mason About The Accelerated Reduction During Cross-Examination

At this trial, anticipating (correctly) that Defendants would yet again cross-examine on this same issue, Plaintiffs specifically asked Dr. Mason whether there is "any reason to believe that anything besides the net worth sweep could have caused the huge decline in stock price on August 17, 2012"—to which Dr. Mason testified "No."[6] Plaintiffs also asked Dr. Mason whether the portfolio reduction acceleration "caused the stock price declines" on August 17, 2012—to which Dr. Mason also testified "No."[7]

As expected, Defendants' cross-examination of Dr. Mason again focused on the purported impact of the acceleration in the portfolio reduction. For example, Defendants asked whether the event study tried "to analyze how much of the $1.6 billion stock price drop may have been caused by the net worth sweep and how much of that drop may have been caused by this other acceleration of the reduction of the retained mortgage portfolios"—to which Dr. Mason replied "That's right … Defendants' event study does not do that."[8]

On re-direct, given Defendants' cross-examination on this issue, Plaintiffs sought to conduct re-direct examination of Dr. Mason on the purported impact of the portfolio reduction acceleration. Unlike the last trial, however, Defendants objected and sought to block to Plaintiffs'

---

[5] Dep. Tr. of Dr. Joseph Mason (Apr. 26, 2023) at 235:1-237:14.
[6] Trial 2 Tr. (July 27, 2023, Afternoon Session) at 70:8-11.
[7] *Id.* at 70:12-20.
[8] *Id.* at 95:19-24.

efforts to fully and fairly re-direct Dr. Mason.[9]  Defendants' objection was improper and should be overruled.

### D. Just Like Last Trial, Plaintiffs Should Be Permitted To Re-Direct On The Impact Of The Accelerated Reduction On Re-Direct

The law is clear.  Because Defendants cross-examined Dr. Mason concerning the impact of the portfolio reduction acceleration on the Enterprises' stock prices, Plaintiffs are entitled to fully re-examine Dr. Mason on the same issue.  *See, e.g., U.S. v. Smith*, 822 F.3d 755 (5th Cir. 2016) (finding that the district court properly allowed prosecutor's redirect examination of witness that was within scope of matters raised in cross-examination of witness); *U.S. v. Bright*, 630 F.2d 804 (5th Cir. 1980) (finding that where defense counsel implied in cross-examination that FBI was responsible for informant's death, state could redirect to ask witness about cause of informant's death); *U.S. v. Lehr*, 562 F. Supp. 366 (E.D. Pa. 1983), *aff'd*, 727 F.2d 1101 (3d Cir. 1984) (finding that defendant undermined motive on cross-examination, so prosecution could show on redirect that witness worked for government due to defendant's death threat); *U.S. v. Kroh*, 915 F.2d 326 (8th Cir. 1990); *Polk v. Yellow Freight System, Inc.*, 876 F.2d 527 (6th Cir. 1989) (holding that cross-examination hypothetical opened door to area of questioning in redirect examination); *U.S. v. Gutierrez*, 576 F.2d 269 (10th Cir. 1978) (finding that government agent was cross-examined about organizational structure of drug enforcement agency so redirect question eliciting description of drug rings was proper, although testimony would have been prejudicial in absence of cross).

---

[9] *Id*. at 106:12-18 (Q. So what is your opinion about whether it was the net worth sweep or what we've just been talking about, this accelerated reduction, that actually caused Fannie and Freddie's preferred and common stock to fall by 50 percent on one day?  MR. JONES: Objection, Your Honor.  Could we be heard on this briefly?).

The decision in *C.P. Interests Inc. v. California Pools Inc.*, is instructive. 238 F.3d 690, 699 (5th Cir. 2001). There, the court confronted a situation where an expert witness had been cross-examined on issues beyond the scope of that expert's report. In light of the cross-examination, the court held that the expert was no longer confined to the scope of the report in redirect.

To be sure, this is what happened at the last trial—with no objection by Defendants. The same approach should be taken here—and Defendants have provided no basis for the Court to reverse course.

### E. Plaintiffs Will Be Prejudiced if Precluded From Re-Examining On This Issue

If not permitted to re-direct, Plaintiffs will be prejudiced in at least two important ways. *First*, Plaintiffs will be deprived of their right to fully and fairly re-examine Dr. Mason on the same issues that Defendants chose to raise in their cross-examination. This is inherently prejudicial. *Second*, the jury will be left with the mistaken impression that Dr. Mason did not consider the impact of the portfolio reduction acceleration on the Enterprises' stock prices. This is incorrect given Dr. Mason's testimony in Trial 1—and Defendants know it. Moreover, it would be especially prejudicial to block Plaintiffs from re-examination on this issue (as Defendants have sought to do) given that Dr. Mason's testimony is Plaintiffs' only source of evidence regarding damages in this case.

In sum, Plaintiffs respectfully submit that Defendants' objection should be overruled.

Dated: July 27 ,2023

Respectfully submitted,

*/s/ Charles J. Cooper*
Charles J. Cooper (Bar No. 24870)
David H. Thompson (Bar No. 450503)
Vincent J. Colatriano (Bar No. 429562)
Peter A. Patterson (Bar No. 998668)
Brian W. Barnes (*Pro Hac Vice*)
**COOPER & KIRK, PLLC**
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Counsel for Berkley Plaintiffs, et al.*

*/s/ Eric L. Zagar*
Eric L. Zagar (*Pro Hac Vice*)
**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
280 King of Prussia Rd.
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
ezagar@ktmc.com

Hamish P.M. Hume (Bar No. 449914)
Samuel C. Kaplan (Bar No. 463350)
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave. NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
hhume@bsfllp.com
skaplan@bsfllp.com

Michael J. Barry (*Pro Hac Vice*)
**GRANT & EISENHOFER, P.A.**
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
mbarry@gelaw.com

Adam Wierzbowski (*Pro Hac Vice*)
**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
adam@blbglaw.com

*Co-Lead Counsel for the Class*