UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| BERKLEY INSURANCE CO., et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> THE FEDERAL HOUSING FINANCE AGENCY, et al., <br><br> *Defendants*. | Case No. 1:13-cv-1053-RCL |
| IN RE FANNIE MAE/FREDDIE MAC SENIOR PREFERRED STOCK PURCHASE AGREEMENT CLASS ACTION LITIGATIONS <br> _____ <br><br> This document relates to: <br> ALL CASES | Case No. 1:13-mc-1288-RCL |

**MOTION FOR CLARIFICATION REGARDING THE COURT'S JULY 21, 2023 DECISION REGARDING THE ADMISSIBILITY OF DR. ATTARI'S TESTIMONY**

With this motion, Plaintiffs seek clarification as to the scope of permissible testimony concerning Dr. Attari's Bond Event Study. The Court's July 21, 2023 memorandum opinion held that Dr. Attari will be permitted to testify that the Bond Event Study shows that the Third Amendment caused the decline in yield spreads. Plaintiffs do not seek reconsideration of this decision. Instead, Plaintiffs ask the Court to preclude Dr. Attari from offering the opinion that the Bond Event Study shows that the decline in yield spreads was attributable to bond investors' (or any investors') increased confidence in the GSEs' creditworthiness. He should not be permitted to offer that opinion because he cannot reliably exclude an alternative and much more likely explanation that is reflected in FHFA's internal documents that the decline in yield spreads was

attributable to an expectation of future declining supply of GSE bonds.[1]  The documentation at the time shows that market observers believed that both the Net Worth Sweep and the accelerated reduction of the retained portfolio signaled to the bond market that GSE bonds would be substantially declining in supply, thus triggering more buying of GSE bonds, an increase in price, and a reduction in yield spread.

In short, Dr. Attari's Bond Event Study shows only that yield spreads declined in response to the announcement of the Third Amendment; it cannot distinguish between the investor confidence rationale and the declining supply rationale or explain the reason why bond yield spreads declined in response to the Third Amendment.  Accordingly, while Dr. Attari can offer the opinion that the Third Amendment caused GSE bond yield spreads to change, he should not be permitted to testify that the change in yield spreads indicates an increase in bond investor confidence in the GSEs' creditworthiness, as opposed to a perception that the supply of GSE bonds would be substantially declining.[2]

---

[1] The Court separately held that Defendants and Dr. Attari may not claim that mortgage-backed securities investors were reassured about the GSEs' creditworthiness.  *See* Class ECF No. 336 at 3-5.  This ruling necessarily precludes him also from stating that a broader undifferentiated group of "investors" or "the market" were reassured as well.

[2] Defendants have attempted through cross-examination of Dr. Mason to criticize Dr. Mason's use of the ***Equity*** Event Study with Plaintiffs' criticism of Dr. Attari's use of his ***Bond*** Event Study.  As we have shown previously, *see* Class ECF No. 315 at 9 and note 7, there is a distinct and material difference between the two.  The law requires an expert to account for potentially confounding causes of an event only when there is an "obvious alternative explanation."  *Cain v. Harris Teeter, Inc.*, 954 F.Supp.2d 17, 21 (D.D.C. 2013) (quoting *Miller v. United States*, 287 Fed. Appx. 982, 984 (3d Cir. 2008)); *Packgen v. Berry Plastics Corporation*, 847 F.3d 80, 87 (1st Cir. 2017) (quoting Fed. R. Evid. 702 Advisory Comm. Note).  With respect to the 50% drop in stock prices, the only plausible cause is the Third Amendment's Net Worth Sweep, which gave 100% of all future profits and net worth to the Treasury, guaranteeing that private shareholders could never receive anything.  The existence of the Net Worth Sweep makes it completely irrelevant whether the GSEs were going to accelerate the reduction of their retained mortgage portfolio (or do anything else with the portfolio).  Further, there is ***zero*** evidence from the time suggesting that anyone thought the stock drop related to the change from a 10% reduction in the portfolio to a 15%

**ARGUMENT**

In its July 21 opinion, the Court held that Dr. Attari may testify that his Bond Event Study shows the Third Amendment caused a decline in yield spreads in the small set of long-term bonds he examined. The Court concluded that this testimony is relevant to whether shareholders could "reasonably have expected FHFA, under the circumstances, to agree to a major part of" the Third Amendment is its role as conservator.

This motion does not seek reconsideration of that ruling. Instead, Plaintiffs submit this motion to clarify one specific but important issue as to the scope of Dr. Attari's permissible testimony on the Bond Event Study—namely, whether Dr. Attari may testify (and whether Defendants may argue) that the decline in yield spreads documented in the Bond Event Study specifically demonstrates that the Third Amendment increased bond investors' confidence in the GSEs' creditworthiness.

There is no basis for any such opinion or argument. In the prior trial, Dr. Attari did not merely testify that the Bond Event Study showed that the Third Amendment caused the decline in yield spreads (which the Court has permitted him to do again at this trial). Instead, he went beyond that testimony to assert that the Third Amendment caused the decline in yield spreads ***because it reassured investors about the GSEs' creditworthiness***. For example, he testified:

> **Q.** And so the way you've described it here, those bond prices changed in a favorable way in direct response to the announcement of the Third Amendment?
>
> **A.** Yes.

---

reduction – whereas there is ample contemporaneous evidence attributing the stock drop to the Net Worth Sweep. By contrast, with respect to the small change in bond yields that occurred after the Third Amendment, there is substantial contemporaneous evidence showing that the change was caused by the perception that the supply of GSE bonds would be reduced, as shown above. Thus, Dr. Attari's failure to conduct a reliable analysis of how to disaggregate confounding causes is wholly unlike what Defendants are trying to argue about Dr. Mason's use of the stock drop study.

3

> **Q.** So the bonds that were getting traded around in a secondary market, the prices *improved in a way that indicated they were safer*?
>
> **A.** Yes.
>
> **Q.** And you mentioned here *"increased investor confidence in Fannie and Freddie."* What does that refer to?
>
> **A.** *Well, that refers to the fact that the bond prices, the increase in bond prices, is kind of telling us that investors are now more confident.* Because if they become less confident, prices would have gone down. If there had been no change in confidence, prices would have been unchanged.

Trial Tr. 1968:11-1969:1 (emphasis added).

Dr. Attari should not be permitted to offer that opinion because, as Plaintiffs have shown, there is a well-documented alternative explanation for the change in bond prices that Dr. Attari offers no reliable methodology for excluding—namely, that the Third Amendment created an expectation that there would be declining supply in the number of GSE bonds issued. FHFA itself explained that the "rationale" for the observed decline in yield spreads "is that as the Enterprises wind down there will be less longer-term debt issued, leaving investors to fight over existing supply." *See* Ex. A (PX-282) at 2. FHFA further explained in a separate report that "GSE debt spreads should stay tight given diminished forward supply on faster wind-down plans" and that "the prospect of fewer years of new issues remaining served as a 'last call' of sorts, particularly for longer maturities that may not be tapped again." *See* Ex. B (FHFA-DDC-0320333) (emphasis added). The same document stated that "GSE debt had its biggest one-day tightening since 2008 after the Treasury Department announced plans to accelerate the wind-down of Fannie Mae and Freddie Mac, instantaneously making outstanding issues more valuable *given the prospect of less forward looking supply*." *See id*. (emphasis added). *See also* Class ECF No. 290 at 6-8 (discussing

4

other documents identifying an expectation of declining supply as the reason why yield spreads declined).

Further, FHFA attributed this perception of an impending reduction in supply of GSE bonds to both the Net Worth Sweep and the accelerated reduction in the retained portfolio. *See* Ex. A at 2 (attributing the decline in yield spreads to the "Treasury Department's announcement earlier today regarding *changes* to the Preferred Stock Purchase Agreements (PSPAs)"); Ex. B at 1 (the "Treasury Department announced plans to accelerate the wind-down of Fannie Mae and Freddie Mac"); *see id*. ("GSE debt spreads gapped tighter after Treasury Department announcement sparked buying").

The key issue for this motion is therefore not Dr. Attari's inability to distinguish between which aspect of the Third Amendment caused the decline in yield spreads. Instead, it is Dr. Attari's inability to determine whether the cause of the change in bond yield spreads in response to the Third Amendment resulted from (1) an increase in investors' confidence in the GSEs' creditworthiness or (2) the perceived impending reduction in supply of GSE bonds, as FHFA's own documents reflect.

Defendants and Dr. Attari offer the jury no reliable basis for adopting the investor confidence explanation in lieu of the declining supply rationale. Because he has no reliable basis for doing so, Fed. R. Evid. 703 and 403 establish that he should not be permitted to argue that the Bond Event Study shows that there was an increase in bond investors' confidence in the GSEs' creditworthiness.

In the prior briefing, Defendants attempted in passing to assert that the Bond Event Study was confined to long-term bonds, and thus that the change in yield spreads could not be explained by the accelerated decline in the retained portfolio. That assertion fails for two reasons. First, as

5

shown above, the announcement of the Net Worth Sweep provision of the Third Amendment also triggered a perception that the supply of GSE bonds would decline – indeed, it is the principal signal of a "wind down." It is therefore beside the point whether the accelerated decline alone could have caused it. Second, as FHFA itself explained, the decline in spreads was *more pronounced* for longer term bonds, not less so, as Defendants' argument would have the Court believe. *See* Ex. A at 2 ("While spreads across the curve are tighter, *the farther out the maturity, the tighter the spread*.") (emphasis added); Ex. B (stating that the "prospect of fewer years of new issues remaining served as a 'last call' of sorts, *particularly for longer maturities that may not be tapped again*") (emphasis added).

While this issue was raised in our prior motion as another basis to exclude Dr. Attari's testimony about his event study in its entirety, Class ECF No. 290 at 8-10, 15-16; Class ECF No. 315 at 8-9, it was not resolved by the Court's July 21 ruling. For purposes of evaluating the Bond Event Study's admissibility, the Court held that it did not matter that Dr. Attari's methodology could not distinguish the impact of one aspect of the Third Amendment from the other.[3] By contrast, for purposes of evaluating whether Dr. Attari should be permitted to testify that the decline in yield spreads was due to increased investor confidence, it is relevant whether Dr. Attari can reliably assert the investor confidence rationale over the declining supply rationale as the explanation for the decline in yield spreads. Because he offers no reliable way to do so, Dr. Attari should not be permitted to opine that the Bond Event Study shows that bond investors were reassured about the GSEs' creditworthiness.

---

[3] *See* Class ECF No. 336 at 2 ("Specifically, plaintiffs argue that the event study does not isolate the NWS from other parts of the Third Amendment not at issue in this case, rendering it both unreliable and confusing to the jury.").

## CONCLUSION

For the foregoing reasons, Dr. Attari should be precluded from offering the opinion, and Defendants should be precluded from arguing, that the Bond Event Study shows that the Third Amendment or Net Worth Sweep increased bond investors' (or any investors') confidence in the GSEs' creditworthiness.

Dated: July 28, 2023

/s/ Charles J. Cooper
Charles J. Cooper (Bar No. 24870)
David H. Thompson (Bar No. 450503)
Vincent J. Colatriano (Bar No. 429562)
Peter A. Patterson (Bar No. 998668)
Brian W. Barnes (*Pro Hac Vice*)
**COOPER & KIRK, PLLC**
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Counsel for Berkley Plaintiffs, et al.*

Respectfully Submitted,

/s/ Hamish Hume
Hamish P.M. Hume (Bar No. 449914)
Samuel C. Kaplan (Bar No. 463350)
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave. NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
hhume@bsfllp.com
skaplan@bsfllp.com

Eric L. Zagar (*Pro Hac Vice*)
**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
280 King of Prussia Rd.
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
ezagar@ktmc.com

Michael J. Barry (*Pro Hac Vice*)
John Kairis *(Pro Hac Vice)*
Rebecca Musarra *(Pro Hac Vice)*
**GRANT & EISENHOFER, P.A.**
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
mbarry@gelaw.com
jkairis@gelaw.com
rmusarra@gelaw.com

Adam Wierzbowski (*Pro Hac Vice)*
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
adam@blbglaw.com

*Co-Lead Counsel for the Class*