**UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA**

| | |
|---|---|
| BERKLEY INSURANCE CO., et al., *Plaintiffs*, v. THE FEDERAL HOUSING FINANCE AGENCY, et al., *Defendants*. | Case No. 1:13-cv-1053-RCL |
| IN RE FANNIE MAE/FREDDIE MAC SENIOR PREFERRED STOCK PURCHASE AGREEMENT CLASS ACTION LITIGATIONS _____ This document relates to: ALL CASES | Case No. 1:13-mc-1288-RCL |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR A CURATIVE INSTRUCTION REGARDING PLAINTIFFS' STATEMENT TO THE JURY THAT A DOCUMENT "WAS NEVER PRODUCED IN THIS CASE"**

**INTRODUCTION**

Mr. Satriano either misunderstood the question or made a mistake during cross-examination when he testified that he had "prepared and presented" a written "presentation" that analyzed "what would happen *in the event of a net worth sweep*." Tr. 35:1-12.[1] The presentation Mr. Satriano turned out to be referring to was a PowerPoint presentation prepared several months *after* the Net Worth Sweep, as he later acknowledged during re-cross examination. Tr. 113:10-17. But Mr. Satriano's mistaken testimony nonetheless prompted a reasonable series of questions about the whereabouts of the pre-Net Worth Sweep presentation he initially claimed to have prepared, as no such document was produced during discovery. Ultimately, after Mr. Satriano acknowledged his mistake during re-cross examination, the jury clearly understood that there had not been any discovery violation. Defendants thus suffered no prejudice from Plaintiffs' counsel's questions about why the non-existent pre-Net Worth Sweep presentation was never produced.

Defendants' request for a curative instruction (the "Motion") should be denied because there is no error that needs curing.

**ARGUMENT**

**Mr. Satriano's Cross-Examination**

On cross-examination, Plaintiffs' counsel asked Mr. Satriano to confirm that he had never done any written analysis relating to the Third Amendment. Tr. 16:5-22. Plaintiffs' counsel then turned to whether Mr. Satriano had done any written analysis of the potential effects of re-recording Fannie Mae and Freddie Mac's deferred tax assets "in the event of a net worth sweep":

> Q. When I was asking you a moment ago whether there was any analysis done by FHFA about the DTA write-ups, nobody at FHFA wrote any sort of analysis of what might happen if these DTAs that they're sitting on, this $100 billion of assets were written back up, ***nobody at FHFA wrote any sort of a memo analyzing the effect of***

---

[1] All emphasis is added.

1

> *what would happen in the event of a net worth sweep. Is that your testimony?*
> *A. What we did at FHFA --*
> *Q. I asked you if there was a memo. Is that a yes-or-no question?*
> *A. **There's a presentation that I prepared and presented to many people within the agency.***

Tr. 35:1-12.  Although Defendants seem unwilling to acknowledge this fact, Mr. Satriano was wrong.  Plaintiffs' counsel was not asking Mr. Satriano about analyses he may have done *after* the Net Worth Sweep.  Plaintiffs' counsel's question was clearly directed to whether "FHFA wrote any sort of analysis of what might happen" if the DTAs were reversed "in the event of a net worth sweep," *i.e.*, *before* August 17, 2012.  Mr. Satriano's affirmative answer to Plaintiffs' counsel's question is what caused the confusion of which Defendants now complain.  Defendants' Motion ignores the above passage, as their selective quotation starts six lines later.  *See* Motion at 2 (quoting Tr. 35:21-36:16).  Only by ignoring the above passage can Defendants argue that "the document is precisely as Mr. Satriano described it – a PowerPoint presentation from early 2013 concerning a possible DTA write-up by Fannie Mae."

     Mr. Satriano's testimony quoted above reasonably prompted Plaintiffs' counsel to inquire where the purported pre-Net Worth Sweep PowerPoint presentation was.  Tr. 36:13-19.  Defendants objected, and the Court properly overruled the objection.[2]  After a sidebar conversation, Plaintiff's counsel resumed his questioning, and Mr. Satriano *again* testified that he had prepared a PowerPoint presentation "analyzing what would happen ***in the event of … a net worth sweep***," which had been "turned over" in "discovery":

> Q. Okay. When is the last time you saw this PowerPoint?
> A. In the last year.
> Q. Where?
> A. On my computer.

---

[2] Defendants incorrectly told the Court when seeking a curative instruction that the Court had "sustained the objection."  Tr. 113:24-114:7.

>       Q. And did you give a copy of it to your lawyers to turn over in this case?
>       A. You would have to ask my lawyers.
>       Q. I am asking you.
>       A. I believe this was turned over, yes, as part of the discovery in the multiple cases.
>       Q. Okay.
>       So let's talk about it. ***So you're saying that there's a PowerPoint analyzing what would happen in the event of a DTA write-up in the event of a net worth sweep?***
>       A. ***Yes***, I believe that's what we tried to highlight for stakeholders at the FHFA.

Tr. 37:10-38:1.

This testimony again makes clear that Mr. Satriano mistakenly believed he had "turned over" a PowerPoint "analyzing what would happen in the event of a DTA write-up *in the event of a net worth sweep.*"[3]  And again, to state the obvious, the question did not seek information about PowerPoint presentations created *after* the Net Worth Sweep.  Plaintiffs' counsel's questions seeking to identify this alleged PowerPoint were clearly reasonable.  In their Motion, Defendants again misleadingly truncate the above passage just before the last question and answer, which make clear that Mr. Satriano was either mistaken or confused.  *See* Motion at 4-5 (quoting Tr. 37:10-21).

## Mr. Satriano's Re-Direct Examination

On re-direct examination, Defendants' counsel showed Mr. Satriano a PowerPoint presentation from March 2013.  Tr. 103:6-24.  Defendants then asked Mr. Satriano whether this

---

[3] Defendants appear to be correct that Mr. Satriano did not say he "turned [] over" the PowerPoint "a year ago."  Motion at 4-5.  But the *date* the presentation was supposedly "turned over" is not the relevant point.  Rather, Mr. Satriano twice told the jury he had created a PowerPoint "analyzing the effect of what would happen in the event of a net worth sweep," Tr. 35:1-12; 37:10-38:1, which purportedly was "turned over" to his counsel.  As discussed, this testimony left the clear, but inaccurate, impression that he had turned over to counsel a PowerPoint that was created before the Net Worth Sweep.

3

presentation was an "example[] of the types of presentation that you testified about in response to Mr. Rudy's question," and Mr. Satriano replied, "Yes these were what I had in mind." Tr. 106:22-107:1.

### Mr. Satriano's Re-Cross Examination

Plaintiffs' counsel asked the Court for permission to conduct a brief re-cross examination. Plaintiffs' counsel explained that Defendants' counsel's vague questions during re-direct examination left unclear whether Mr. Satriano actually did, or did not, do any written analysis of a potential DTA writeup *prior* to the Net Worth Sweep. Plaintiffs' counsel was granted permission to ask these questions, and Mr. Satriano gave direct answers to simple questions that made clear that **Mr. Satriano** – not Plaintiffs' counsel – had been confused during the cross-examination:

> Q. [T]he questions that I was asking you before, though, were did you do any sort of written analysis *before* the net worth sweep. Right?
> A. That's right.
> Q. These PowerPoints were *after* the net worth sweep?
> A. That's correct.
> Q. Thank you.
> A. Yeah, you're welcome.

Tr. 113:10-17. Notably, Mr. Satriano did not contest that *he understood* that Plaintiffs' counsel's earlier questions had been directed to whether Mr. Satriano did "any sort of written analysis *before* the net worth sweep." Defendants' argument that this re-cross examination somehow "worsened the prejudice," Motion at 3, ignores that Mr. Satriano admitted during this testimony that his earlier answers had been mistaken. *Id.*

### CONCLUSION

Defendants' Motion ignores the actual record, and seeks to blame Plaintiffs' counsel for Mr. Satriano's admitted error. There is no reason to revisit this issue now with a curative instruction days after the events in question. Mr. Satriano's testimony on re-cross examination

4

made clear that Defendants' counsel had not violated any discovery protocols or failed to turn over documents, and that the entire incident was a misunderstanding caused by Mr. Satriano's mistaken answers during cross-examination. Plaintiffs' counsel "just cleaned it up for him with [his] recross," Tr. 115:1-2, and no more need be said.

Defendant's Motion should be denied.

Dated: August 6, 2023

Respectfully submitted,

/s/ Charles J. Cooper
Charles J. Cooper (Bar No. 24870)
David H. Thompson (Bar No. 450503)
Vincent J. Colatriano (Bar No. 429562)
Peter A. Patterson (Bar No. 998668)
Brian W. Barnes (*Pro Hac Vice*)
**COOPER & KIRK, PLLC**
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Counsel for Berkley Plaintiffs, et al.*

/s/ Eric L. Zagar
Eric L. Zagar (*Pro Hac Vice*)
**KESSLER TOPAZ
  MELTZER & CHECK, LLP**
280 King of Prussia Rd.
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
ezagar@ktmc.com

Hamish P.M. Hume (Bar No. 449914)
Samuel C. Kaplan (Bar No. 463350)
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave. NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
hhume@bsfllp.com
skaplan@bsfllp.com

Michael J. Barry (*Pro Hac Vice*)
**GRANT & EISENHOFER, P.A.**
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
mbarry@gelaw.com


Adam Wierzbowski (*Pro Hac Vice*)
**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
1251 Avenue of the Americas

5

New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
adam@blbglaw.com

*Co-Lead Counsel for the Class*