1          UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF COLUMBIA
2

3    * * * * * * * * * * * * * * *    )
     FAIRHOLME FUNDS, INC., et al.,   )    Civil Action
4                                     )    No. 13-1053
               Plaintiffs,            )
5                                     )
        vs.                           )
6                                     )
     FEDERAL HOUSING FINANCE AGENCY,  )    Washington, D.C.
7    et al.,                          )    August 11, 2023
                                      )    10:02 a.m.
8              Defendants.            )
                                      )
9    * * * * * * * * * * * * * * *    )

10   IN RE:  FANNIE MAE/FREDDIE MAC   )
     SENIOR PREFERRED STOCK PURCHASE  )    MC Case No. 13-1288
11   AGREEMENT CLASS ACTION LITIGATION )

12                TRANSCRIPT OF JURY TRIAL
13                      **DAY 14**
           BEFORE THE HONORABLE ROYCE C. LAMBERTH,
14           UNITED STATES SENIOR DISTRICT JUDGE

15

16   APPEARANCES:

17   FOR THE BERKLEY          VINCENT COLATRIANO, ESQ.
     PLAINTIFFS:              COOPER & KIRK, PLLC
18                            1523 New Hampshire Avenue, Northwest
                              Washington, D.C. 20036
19
     FOR THE CLASS            HAMISH P.M. HUME, ESQ.
20   PLAINTIFFS:              KENYA KHALELAH DAVIS, ESQ.
                              SAMUEL KAPLAN, ESQ.
21                            JESSICA MUGLER, ESQ.
                              BOIES, SCHILLER & FLEXNER, LLP
22                            1401 New York Avenue, Northwest
                              Washington, D.C. 20005
23
                              LEE D. RUDY, ESQ.
24                            GRANT GOODHART, ESQ.
                              KESSLER, TOPAZ, MELTZER & CHECK, LLP
25                            280 King of Prussia Road
                              Radnor, Pennsylvania 19087

```
 1      APPEARANCES, CONT'D:

 2      FOR THE CLASS          ROBERT F. KRAVETZ, ESQ.
        PLAINTIFFS:            ADAM H. WIERZBOWSKI, ESQ.
 3                             CAITLIN BOZMAN, ESQ.
                               BERNSTEIN, LITOWITZ, BERGER &
 4                               GROSSMAN, LLP
                               1251 Avenue of the Americas
 5                             New York, New York 10020

 6      FOR THE DEFENDANTS     ASIM VARMA, ESQ.
        FHFA, FANNIE MAE &     IAN HOFFMAN, ESQ.
 7      FREDDIE MAC:           DAVID BERGMAN, ESQ.
                               JONATHAN LOUIS STERN, ESQ.
 8                             STANTON JONES, ESQ.
                               ARNOLD & PORTER KAYE SCHOLER
 9                             601 Massachusetts Avenue, Northwest
                               Washington, D.C. 20001
10
        REPORTED BY:          LISA EDWARDS, RDR, CRR
11                            Official Court Reporter
                              United States District Court for the
12                              District of Columbia
                              333 Constitution Avenue, Northwest
13                            Room 6706
                              Washington, D.C. 20001
14                            (202) 354-3269

15

16

17

18

19

20

21

22

23

24

25
```

I N D E X

The Court's Instructions to the Jury                    Page 2997

```
 1              THE COURTROOM DEPUTY:  This is Civil Action

 2    13-1053, with related Miscellaneous Case 13-1288, In Re:

 3    Fannie Mae/Freddie Mac Senior Preferred Stock Purchase

 4    Agreement Class Action Litigations.

 5              THE COURT:  You can get the jury.

 6              THE COURTROOM DEPUTY:  Jury panel.

 7              (Whereupon, the jury entered the courtroom at

 8    10:02 a.m. and the following proceedings were had:)

 9              THE COURT:  You may be seated.

10              Good morning, ladies and gentlemen.

11              THE JURY:   Good morning.

12              THE COURT:  You've now heard all of the evidence

13    in the case as well as the final arguments of the lawyers

14    for the parties.

15              My duty at this point is to instruct you as to the

16    law.  It's your duty to accept these instructions of law and

17    apply them to the facts as you determine them, just as it

18    has been my duty to preside over the trial and decide what

19    testimony and evidence is relevant under the law for your

20    consideration.

21              On these legal matters, you must take the law as I

22    give it to you.  If any attorney has stated a legal

23    principle different from what I state in these instructions,

24    then it's my instructions that you must follow.

25              You should not single out any instruction as alone
```

The Court's Instructions to the Jury

1    stating the law, but you should consider my instructions as

2    a whole when you retire to deliberate in the jury room.

3    Likewise, you may not ignore or disregard any portion of

4    these instructions.

5          You should not, any of you, be concerned about the

6    wisdom of any rule that I state.  Regardless of any opinion

7    that you may have as to what the law may be or ought to be,

8    it would violate your sworn duty to base a verdict upon any

9    other view of the law than that which I give you.

10         As members of the jury, you are the sole and

11   exclusive judges of the facts.  You pass upon the evidence.

12   You determine the credibility of the witnesses.  You resolve

13   such conflicts as there may be in the testimony.  You draw

14   whatever reasonable inferences you decide to draw from the

15   facts as you have determined them, and you determine the

16   weight of the evidence.

17         In determining these issues, no one may invade

18   your province or functions as jurors.  In order for you to

19   determine the facts, you must rely upon your own

20   recollection of the evidence.  What I may have said or what

21   I may say in these instructions about a fact issue is not

22   evidence.

23         Since you are the sole and exclusive judges of the

24   facts, I do not mean to indicate any opinion as to the facts

25   or what your verdict should be.  The rulings I have made

The Court's Instructions to the Jury

1   during the trial are not any indication of my views of what

2   your decision should be as to whether or not the Plaintiffs

3   have proven their case.

4         You should not infer or conclude from any comment

5   I make during the trial or during the examination of a

6   witness that I have any opinion on the merits of the case

7   favoring one side or the other.  I do not favor one side or

8   the other, and my opinion would not be relevant.

9         I also instruct you to draw no inference from the

10   fact that upon occasion I may have asked questions of

11   certain witnesses.  Those questions were only intended for

12   clarification or to expedite matters and certainly were not

13   intended to suggest any opinions on my part as to the

14   verdict you should render or whether any of the witnesses

15   may have been more credible than any other witnesses.

16         Nothing I say or do should influence or suggest to

17   you that I favor any party in this case.  I did not mean to

18   express or suggest any opinion about which witnesses should

19   be believed or which facts are established, including with

20   respect to the causes of the housing and financial crisis.

21   You are expressly to understand that the Court has no

22   opinion as to the verdict you should render in this case.

23         As to the facts, you are the exclusive judges.

24   You are to perform the duty of finding the facts without

25   bias or prejudice to any party.

1          You may consider only the evidence admitted in the

2     case.  The evidence consists of the sworn testimony of

3     witnesses, exhibits admitted into evidence and facts

4     stipulated to by the parties.

5          Statements and arguments of the lawyers are not

6     evidence.  They are only intended to help you understand the

7     evidence.  Similarly, the questions of the lawyers are not

8     evidence.

9          If anyone describes the evidence you have heard

10    differently from the way you remember it, it's your memory

11    that should control during your deliberations.

12         You must rely on your own recollection of the

13    testimony and on any notes you have taken during the trial.

14         There are two types of evidence which you may

15    properly use in reaching your verdict.  One type of evidence

16    is direct evidence.  Direct evidence is when a testimony --

17    when a witness testifies about something they know by virtue

18    of their own senses; something they have seen, felt, touched

19    or heard.  Direct evidence may also be in the form of an

20    exhibit where the fact to be proved is its present existence

21    or condition.

22         The other type of evidence is circumstantial

23    evidence.  Circumstantial evidence is evidence which tends

24    to prove a disputed fact by proof of other facts.  There is

25    a simple example of circumstantial evidence which is often

1    used in this courthouse.

2            Assume you came into the courthouse this morning;

3    the sun was shining and it was a nice day.  Assume the

4    courthouse -- courtroom blinds were drawn and you could not

5    look outside.

6            As you were sitting here, someone walked in with

7    an umbrella which was dripping wet.  Then a few minutes

8    later, another person also entered with a wet umbrella.

9    Now, you cannot look outside the courtroom.  You cannot see

10   whether or not it's raining.  So you have no direct evidence

11   of that fact.  But on the combination of facts which I have

12   asked you to assume, it would be reasonable and logical for

13   you to conclude that it had been raining.

14           That's all there is to circumstantial evidence.

15   You can infer on the basis of reason and experience and

16   common sense from one established fact the existence or

17   nonexistence of some other fact.

18           Circumstantial evidence is of no less value than

19   direct evidence, for it is a general rule that the law makes

20   no distinction in the weight to be given to either direct

21   evidence or circumstantial evidence.  You are to decide how

22   much weight to give to any evidence.

23           The party who makes a claim has the burden of

24   proving it.  This burden of proof means that the Plaintiffs

25   must prove every element of their claim by a preponderance

1    of the evidence.

2          To establish an element by a preponderance of the

3    evidence, the party must show evidence that produces in your

4    mind the belief that the thing in question is more likely

5    true than not true.  The party need not prove any element

6    beyond a reasonable doubt, the standard of proof in criminal

7    cases, or to an absolute or mathematical certainty.

8          If you believe that the evidence is more than

9    likely true on an issue the Plaintiffs had to prove, then

10   your finding on that issue must be for the Plaintiffs.  If

11   you believe that the evidence is evenly balanced on an issue

12   that Plaintiffs had to prove, then your finding on that

13   issue must be for the Defendants.

14         In arriving at your verdict, you should consider

15   only the evidence in this case.  That said, in determining

16   whether a party has carried its burden of proof, you are

17   permitted to draw from the facts that you find have been

18   proven such reasonable conclusions as you feel are justified

19   in the light of your experience and common sense.  You

20   should not rely on speculation or guesswork.

21         You should consider all the evidence bearing on

22   each claim, regardless of who produced it.  A party is

23   entitled to benefit from all evidence that favors that

24   party, whether that party or the adversary produced it.  You

25   should not give more or less weight to evidence just because

1    it happened to be produced by one side or the other.

2         A stipulation is an agreement.  When there is no

3    dispute about certain facts, the parties may agree or

4    stipulate to those facts.  You must accept a stipulated fact

5    as evidence and treat it as having been proved here in

6    court.

7         The parties have presented certain exhibits in the

8    form of charts and summaries, which I will be sending back

9    with you to the jury room.  I decided to admit certain

10   charts and summaries into evidence in place of the

11   underlying documents that they represent in order to save

12   time and avoid unnecessary inconvenience, because the

13   documents that they represent are so voluminous that they

14   could not conveniently be presented in court one at a time.

15        You should consider those charts and summaries as

16   you would any other evidence.  However, to the extent that

17   you heard the summary witness who prepared those charts and

18   summaries testify about them, you should consider her

19   testimony only as an aid in evaluating the evidence, not as

20   proof that the underlying evidence that she summarized is

21   itself reliable.

22        In addition, the lawyers and witnesses have shown

23   to you other charts and summaries that I have not admitted

24   into evidence.  Those charts and summaries are not

25   themselves evidence or proof of any facts; they are only

The Court's Instructions to the Jury

1    used as a convenience to help you understand the evidence in

2    the case.  I will not be sending them back with you to the

3    jury room.  If any chart or summary that was not admitted

4    into evidence does not correctly reflect facts or figures

5    shown by the evidence in the case, then you should disregard

6    that chart or summary.

7            A deposition is the testimony of a person taken

8    before trial.  The witness is placed under oath and swears

9    to tell the truth, and lawyers for each party may ask

10   questions.  A court reporter is present and records the

11   questions and answers.

12           During the trial, you heard deposition testimony

13   that was read from the deposition transcript or presented by

14   videotape.  You should give deposition testimony the same

15   fair and impartial consideration you give any other

16   testimony.  You should not give more weight or less weight

17   to deposition testimony just because the witness did not

18   testify here in court.

19           During this trial, you heard excerpts of

20   depositions taken of various witnesses in the case.  These

21   excerpts were played via video or read to you by actors.

22   You should know that the portions of such depositions

23   consisted both of sections that were designated by the

24   Plaintiffs and of sections that were designated by the

25   Defendants, and they were presented together, all at once,

1    to avoid presenting pieces of each deposition more than

2    once.

3         It is the duty of the attorney on each side of a

4    case to object when the other side offers testimony or other

5    evidence that the attorney believes is not properly

6    admissible.  If I sustained an objection to a question or a

7    document, then you should ignore that question or document.

8    If I overruled an objection to a question or a document, you

9    should treat the witness's answer or the document as

10   evidence like any other.

11        Counsel also have the right and duty to ask the

12   Court to make rulings of law and to request conferences at

13   the sidebar.  Here, our sidebars have been on this little

14   telephone that we rigged up in light of COVID since we have

15   this plastic area here.  But the sidebar is out of the

16   hearing of the jury.

17        The purposes of such sidebar conferences is not to

18   keep important information from you.  They are necessary for

19   me to fulfill my responsibility to ensure that evidence was

20   presented to you properly under the law.

21        You should not show any prejudice against any

22   attorney or his or her client because the attorney objected

23   to the admissibility of evidence or asked for a conference

24   out of the hearing of the jury or asked the Court for a

25   ruling on the law.

1          During the cross-examination of Mr. Satriano, the

2     chief accountant of FHFA, there was a statement suggesting

3     that a PowerPoint presentation related to the deferred tax

4     asset, or DTA, issue was never produced in this case.

5          That statement was inaccurate.  As became apparent

6     during the redirect and recross-examination of Mr. Satriano,

7     the presentation in question was, in fact, turned over

8     during the pretrial discovery process.  So you should

9     disregard the suggestion that any party did not produce

10    documents in this case as required.

11         As I already indicated, my rulings on the

12    admissibility of evidence do not, unless expressly stated by

13    me, indicate my opinion as to the weight or effect of such

14    evidence.  You are the sole judges of the credibility of all

15    witnesses and the weight and effect of all evidence.

16         In deciding what the facts are, you must weigh the

17    testimony of all the witnesses who have appeared before you.

18    You are the sole judges of the credibility of the witnesses.

19    In other words, you alone determine whether to believe any

20    witness and to what extent any witness should be believed.

21    Judging a witness's credibility means evaluating whether the

22    witness has testified truthfully and also whether the

23    witness accurately observed, recalled and described the

24    matters about which the witness testified.

25         You may consider anything that in your judgment

1    affects the credibility of any witness.  For example, you

2    may consider the witness's demeanor here on the witness

3    stand, the witness's capacity to observe and recollect facts

4    and any other facts and circumstances bearing on

5    credibility.  You may consider whether the witness has any

6    motive for not telling the truth, any interest in the

7    outcome of the case or any friendship or animosity towards

8    other persons involved in the case.

9         In deciding whether to believe a witness, you

10   should specifically note any evidence of hostility or

11   affection which the witness may have toward one of the

12   parties.  You may consider the plausibility or

13   implausibility of the testimony of a witness.  You may also

14   consider whether the witness's testimony has been

15   contradicted or supported by other evidence.

16        You must avoid bias, conscious or unconscious,

17   based on the witness's race, color, religious beliefs,

18   national origin, sexual orientation, gender identity or

19   gender in your determination of credibility.

20        Ultimately, you should give the testimony of each

21   witness as much weight as in your judgment it's fairly

22   entitled to receive.

23        You have heard the testimony of current and former

24   government employees.  The fact that a witness is or was

25   employed as a government employee does not mean that his or

1    her testimony necessarily deserves more or less

2    consideration or greater or lesser weight than that of any

3    other witness.  You must decide, after reviewing all of the

4    evidence, whether you believe the testimony of the

5    government employee and how much weight, if any, it

6    deserves.

7          You have heard evidence that a witness previously

8    made statements and that these statements may be

9    inconsistent with the witness's testimony here at trial.

10   It's for you to decide whether any of these prior statements

11   was made and, if one or more was made, whether it was

12   inconsistent with the witness's testimony during this trial.

13         If you find that any prior statement is

14   inconsistent with the witness's testimony here in court, you

15   may consider this inconsistency in judging the credibility

16   of the witness.

17         In one respect, the law treats prior statements

18   that are inconsistent with court testimony differently

19   depending on whether or not the prior statement was made

20   under oath.  If the prior inconsistent statement was made

21   under oath, then you may consider the statement as evidence

22   that what the witness originally said was true.

23         If the prior inconsistent statement was not under

24   oath, you may consider -- you may not consider it as

25   evidence that what the witness said in the earlier unsworn

The Court's Instructions to the Jury

1     statement was true.

2              Whether or not the prior inconsistent statement

3     was under oath, you may consider the inconsistency in

4     judging the witness's credibility.

5              If a witness testifies that a prior inconsistent

6     statement is the truth, then you may consider the prior

7     statement both to evaluate the witness's credibility and as

8     evidence of the truth of any fact contained in that

9     statement.

10             The relative weight of the evidence on a

11    particular issue is not determined by the number of

12    witnesses testifying for either side or the number of

13    exhibits on either side; it depends on the quality, and not

14    the quantity, of the evidence.  Presenting a greater number

15    of witnesses or exhibits does not necessarily prove a point.

16    Indeed, the testimony of a single witness which you believe

17    to be the truth is enough to prove any fact.

18             In this case, you have heard opinion testimony

19    from Professors Bala Dharan, Joseph Mason, Anjan Thakor and

20    Mukarram Attari, who have been identified by the parties as

21    expert witnesses on various economic issues.  The law allows

22    opinion testimony on such matters if the witnesses possess

23    significant knowledge, training, experience or education.

24             You're not bound to accept those witnesses'

25    opinions.  If you find that any opinions are not based on

1    sufficient evidence, experience, training or education or

2    that the reasons supporting the opinions are not sound or

3    that the opinion is outweighed by other evidence, you may

4    completely or partially disregard the opinion.

5              Opinion testimony should be judged just as any

6    other evidence.  You should consider opinion evidence with

7    all the other evidence in the case and give it as much

8    weight as you think it fairly deserves.

9              You have heard conflicting testimony from expert

10   witnesses in this case.  The way you resolve the conflict

11   between these witnesses is the same way that you decide

12   other fact questions and the same way you decide whether to

13   believe ordinary witnesses.  In addition, because they gave

14   their opinions, you should consider the soundness of each

15   opinion, the reasons for the opinion and the witness's

16   motive, if any, for testifying.

17             You may give the testimony of each of these

18   witnesses such weight, if any, that you think it deserves in

19   light of all the evidence.  You should not permit a

20   witness's opinion testimony to be a substitute for your own

21   reason, judgment and common sense.

22             You may reject the testimony of any opinion

23   witness in whole or in part if you conclude the reasons

24   given in support of an opinion are unsound or if you for

25   other reasons do not believe the witness.  The determination

1     of the facts in this case rests solely with you.

2              A class action is a lawsuit that has been brought

3     by one or more Plaintiffs on behalf of a larger group of

4     people who have the same legal claims.  All of those people

5     together are called a class.  Class action Plaintiffs Joseph

6     Cacciapalle, Michelle Miller, Timothy J. Cassell and Barry

7     B. Borodkin bring this action as class representatives on

8     behalf of three classes of Fannie Mae and Freddie Mac

9     shareholders.

10             The Court allowed these four individuals to be

11    named as class representatives because it determined that

12    their claims are typical of the claims of class members and

13    that they would adequately represent their respective

14    classes.

15             In this case, the classes consist of the

16    following:  all current shareholders of junior preferred

17    stock in Fannie Mae -- that's called the Fannie preferred

18    class; all current holders of junior preferred stock in

19    Freddie Mac -- that's called the Freddie preferred class;

20    and all current holders of common stock in Freddie Mac,

21    called the Freddie common class.

22             There is no class consisting of holders of Fannie

23    Mae common stock.

24             The WR Berkley Plaintiffs brought their case

25    separately as individuals, but their claims are the same as

1      those of the class action Plaintiffs.

2              You may assume that the evidence at this trial

3      applies to all class members and all of the WR Berkley

4      Plaintiffs unless I tell you otherwise.  All members of the

5      class and all of the WR Berkley Plaintiffs will be bound by

6      the results of this trial.

7              In this case, two of the Defendants are

8      government-sponsored entities and the other is a government

9      agency.  The mere fact that some of the parties are

10     government-sponsored entities or a government agency does

11     not mean they are entitled to any greater or lesser

12     consideration by you.  All litigants are equal before the

13     law and are entitled to the same fair consideration as you

14     would give any other individual party.

15             The FHFA is a government agency -- federal

16     government agency that also acts as conservator for Fannie

17     Mae and Freddie Mac.

18             When FHFA acts as conservator for Fannie Mae and

19     Freddie Mac, it steps into the role -- into the shoes, that

20     is -- of the GSEs.  Because FHFA's adoption of the net worth

21     sweep was taken on behalf of the GSEs as conservator, FHFA's

22     conduct in entering into the net worth sweep is deemed to be

23     the conduct of the GSEs.

24             Thus, if you find that FHFA's entering into the

25     net worth sweep on behalf of Fannie Mae breached the implied

1    covenant of good faith and fair dealing, then FHFA and

2    Fannie Mae are both liable for that breach.  Similarly, if

3    you find that FHFA's entering into the net worth sweep on

4    behalf of Freddie Mac breached the implied covenant of good

5    faith and fair dealing, then FHFA and Freddie Mac are both

6    liable for that breach.

7              In addition, two of the Defendants in this case,

8    Fannie Mae and Freddie Mac, are corporations.  A corporation

9    can act only through individuals as its agents or employees.

10   In general, if any agent or employee of a corporation acts

11   or makes statements while acting within the scope of his or

12   her authority as an agent or within the scope of his or her

13   duties as an employee, then under the law those acts and

14   statements are of the corporation.

15             In general, under the law, shareholders, including

16   Plaintiffs, are deemed to have contracts with the companies

17   whose stock they own.  Those shareholder contracts differ

18   from other kind of contracts in several ways.

19             First, the types of shareholder contracts at issue

20   in this case are not negotiated between the parties in the

21   traditional sense.  Rather, by purchasing the company's

22   stock, shareholders agree to the terms of the contracts as

23   those terms exist and as they may change over time.

24             Second, unlike other kinds of contracts,

25   shareholder contracts are not contained in a single

1      document.  A shareholder's contract with the corporation

2      includes not only documents, such as the stock certificate,

3      certificate of designations, the corporate charter and

4      bylaws, but also the corporate law under which the

5      corporation is formed and regulated.

6           Third, the terms of shareholder contracts may

7      change over time without a specific agreement by the parties

8      to those contracts.  For example, changes to the law that

9      affect the governance of the GSEs and their relationships

10     with the shareholders, such as the Housing and Economic

11     Recovery Act, or HERA, H-E-R-A, amend or inform the

12     shareholder contracts.

13          All contracts, including Plaintiffs' shareholder

14     contracts, contain an implied covenant of good faith and

15     fair dealing.  The implied covenant of good faith and fair

16     dealing is not spelled out in the express terms of the

17     contract and it does not add any new tenets to the

18     contracts.  Rather, it is an obligation to be faithful to

19     the meaning and purpose of the parties' agreement.

20          A party to a contract violates the implied

21     covenant of good faith and fair dealing if it acts

22     arbitrarily or unreasonably, thereby frustrating the fruits

23     of the bargain that the asserting party reasonably expected.

24          In general, arbitrary actions or decisions are

25     those taken or made without appropriate consideration of or

1     regard for the existing facts and circumstances or that are

2     not supported by fair, solid and substantial cause in light

3     of all the facts and circumstances, while unreasonable

4     actions or decisions are those that are not guided by

5     reason, that are beyond what can be expected or that are

6     lacking justification in fact and circumstance.

7          That's at the bottom of Page 8 and the top of Page

8     9, the actual distinction there.

9          Where Plaintiffs allege a violation of the implied

10    covenant of good faith and fair dealing, the finder of fact

11    must assess what is arbitrary or unreasonable based on the

12    parties' objectively reasonable expectations under the

13    contract.

14         In evaluating whether a decision was reasonable

15    based on the parties' objectively reasonable expectations

16    under the contract, you may consider whether the

17    decision-maker responded to its objectives, obligations, and

18    the facts and circumstances at the time the action was taken

19    in a manner that the other party reasonably could have

20    expected at the time of contracting.

21         You should also keep in mind that, in some cases,

22    there may be more than one option that could reasonably be

23    expected under the circumstances.

24         In addition, a plaintiff alleging a violation of

25    the implied covenant must show that the alleged breach

1   caused them financial harm.

2          In this case, Plaintiffs allege that FHFA, in

3   agreeing to the net worth sweep as a part of the third

4   amendment to the PSPAs with Treasury, breached the implied

5   covenant of good faith and fair dealing by eliminating any

6   possibility that shareholders other than Treasury would

7   receive dividends in the future, thereby depriving

8   Plaintiffs' shares of much of their value.

9          Defendants respond that the net worth sweep was

10  reasonable based on the parties' expectations at the time of

11  contracting, because in agreeing to it, FHFA was responding

12  to the facts and circumstances known to FHFA in August 2012

13  in a manner that private shareholders reasonably could have

14  expected by December 24, 2009.

15         To establish a breach of the implied covenant of

16  good faith and fair dealing in this case, each class of

17  Plaintiffs must prove by a preponderance of the evidence

18  that, one, FHFA's actions in agreeing to the net worth sweep

19  arbitrarily or unreasonably violated shareholders'

20  objectively reasonable expectations under the shareholder

21  contracts; and, two, as a result, Plaintiffs' shares became

22  less valuable.

23         Your assessment of Plaintiffs' reasonable

24  expectations under the contracts in this case must be based

25  on their reasonable expectations as of December 24th, 2009.

The Court's Instructions to the Jury

1          That's again on Page 9.

2          In making that assessment, you must -- you may

3     consider the text of the certificates of designation that

4     came with Plaintiffs' shares as well as the terms of the

5     Housing and Economic Recovery Act, or HERA; the senior

6     preferred stock purchase agreements, or PSPAs, between

7     Treasury and FHFA and the first two amendments to those

8     agreements; the nature of Fannie Mae and Freddie Mac as

9     government-sponsored entities, or GSEs; and public

10    statements made by FHFA explaining the beginning of the

11    conservatorship in 2008.

12         While HERA authorized FHFA to act in the best

13    interests of the GSEs, the FHFA or the public, FHFA's

14    exercise of that statutory authority can still have violated

15    the implied covenant of good faith and fair dealing if it

16    exercised that authority in a way that arbitrarily or

17    unreasonably violated Plaintiffs' reasonable expectations

18    under the contract.

19         In addition, you should keep in mind that the

20    question is not what any actual shareholder, including any

21    of the Plaintiffs in this case, subjectively expected.

22    Instead, the question is what an imaginary or hypothetical

23    reasonable shareholder would have expected based on

24    information known or available to that hypothetical

25    reasonable shareholder as of December 24, 2009.

The Court's Instructions to the Jury

1      To the extent that the parties offered evidence of

2   statements made or information that became available after

3   the effective date of the second amendment to the PSPAs on

4   December 24th, 2009, you may not consider that as evidence

5   of what the shareholders' reasonable expectations were under

6   the contract, but you may consider it as evidence of whether

7   FHFA acted arbitrarily or unreasonably with regard to those

8   expectations.

9      A verdict for or against the class action

10  Plaintiffs will also be a verdict for or against the WR

11  Berkley Plaintiffs.

12     If you award damages to the class action

13  Plaintiffs, the amount of damages awarded to the WR Berkley

14  Plaintiffs will be automatically based on their holdings of

15  Fannie Mae preferred shares, Freddie Mac preferred shares

16  and Freddie Mac common shares as a percentage of the numbers

17  of shares in each class.

18     As I mentioned before, a Plaintiff alleging a

19  breach of the implied covenant of good faith and fair

20  dealing must prove that the alleged breach caused them

21  financial harm.

22     In this case, Plaintiffs argue that FHFA breached

23  the implied covenant by agreeing to the net worth sweep, and

24  they argue that the net worth sweep harmed them by

25  effectively eliminating the dividend rights that came with

1    their shares, thereby eliminating some of the value that

2    those shares held before the net worth sweep.

3            If you find by a preponderance of the evidence

4    that the alleged breach occurred and that it caused the

5    alleged financial harm, you must decide what amount of

6    damages to award to compensate Plaintiffs for that harm.

7    You must make that determination separately with respect to

8    each class of Plaintiffs.

9            A party that is harmed by a breach of the implied

10   covenant of good faith and fair dealing is entitled to

11   damages calculated in an amount that would place it in the

12   same position it would have been in had the breach not

13   occurred, sometimes called expectation damages.

14           In this case, Plaintiffs allege that they

15   purchased shares that were supposed to come with dividend

16   rights and that as a result of the net worth sweep they

17   ended up with shares that effectively did not come with

18   dividend rights and thus were less valuable.

19           Thus, if you find that Defendants breached the

20   implied covenant, then Plaintiffs are entitled to recover

21   damages equal to the loss in the value of their shares that

22   they prove was caused by the net worth sweep.

23           Plaintiffs bear the burden of proving that measure

24   of damages with reasonable certainty.  That means although

25   Plaintiffs do not need to prove the amount of damages with

1    mathematical certainty, they also may not rely on mere

2    speculation and they must prove the damages they seek are a

3    reasonable estimate of any actual damaged they suffered.

4              During this trial, you heard evidence regarding

5    the value that the enterprises transferred to Treasury after

6    the third amendment in the form of cash dividends under the

7    net worth sweep and increases to Treasury's liquidation

8    preference under the 2017, 2019, and 2021 letter agreements

9    that further amended the PSPAs.

10             You may not consider this value transferred to

11   Treasury after the third amendment as a way to determine the

12   damages being claimed by the shareholders.

13             You may not award any punitive damages in this

14   case.  That means you may not base any monetary award on a

15   desire to punish Defendants or prevent their conduct from

16   being repeated in the future or to warn others not to engage

17   in such conduct.

18             Any monetary award that you make in this case must

19   be calculated solely to provide fair compensation to

20   Plaintiffs for any actual injuries that you find they

21   sustained, and on no other basis.

22             The fact that I have instructed you about the

23   proper measure of damages should not be considered as my

24   suggesting which party is entitled to your verdict in this

25   case or that any of the Plaintiffs are entitled to any

1    damages award at all.  Instructions about the measure of

2    damages are given for your guidance only if you find that a

3    damages award is in order .

4              Under Virginia law, which applies to the claims of

5    the Freddie Mac common and junior preferred shareholders, if

6    you decide to award damages to those Plaintiffs in any

7    amount, you may award prejudgment interest at the rate of

8    6 percent per year and fix a date from which interest is to

9    begin.  The decision of whether to award prejudgment

10   interest is in your discretion.

11             In deciding whether or not to award prejudgment

12   interest, Virginia law requires that you weigh two factors:

13   on the one hand, whether Plaintiffs sustained any loss in

14   not receiving the amount of money that you may have awarded

15   as damages at the time Plaintiffs were entitled to receive

16   it and, on the other hand, whether there was a bona fide

17   legal dispute between the parties, that is, whether or not

18   there was a legitimate or good-faith controversy between the

19   parties, that Defendants had a right to litigate.

20             If you decide to award prejudgment interest, it's

21   within your discretion to choose the date from which that

22   interest should begin.

23             That date can be any date between the date that

24   the injury, if any, to the Freddie Mac junior preferred and

25   common shareholders occurred and the date of trial.  You are

1    not being asked to determine any award of prejudgment

2    interest for junior preferred shareholders of Fannie Mae

3    because such interest, if any, will be assessed by the Court

4    as a matter of Delaware law on any damages you may award.

5             Before I excuse you to begin your deliberations, I

6    want to discuss a few final matters with you.

7             During your deliberations, you must consider the

8    instructions as a whole.  All of the instructions are

9    important.  You must not ignore or treat any single

10   instruction or part of the instructions differently than the

11   other instructions.

12            When you retire to the jury room to begin your

13   deliberations, you should first select a foreperson to

14   preside over your deliberations and to be your spokesperson

15   here in court.  Consider selecting a foreperson who will

16   encourage civility and mutual respect, who will invite each

17   juror to speak up regarding his or her views about the

18   evidence and who will promote full and fair consideration of

19   the evidence.

20            The verdict must represent the considered judgment

21   of each juror.  In order to return a verdict, your verdict

22   must be unanimous; that is, each juror must agree to the

23   verdict.

24            Each of you has a duty to consult with the other

25   jurors in an attempt to reach a unanimous verdict.  You

1   should seriously consider the views of your fellow jurors,

2   just as you expect them seriously to consider your views,

3   and you should not hesitate to change an opinion if you are

4   convinced by other jurors.  However, you must decide the

5   case for yourself and you should not surrender your honest

6   beliefs about the effect or weight of the evidence merely to

7   return a verdict or solely because of other jurors'

8   opinions.

9        Remember that you are not advocates, but neutral

10   judges of the facts.  You will make an important

11   contribution to the cause of justice if you arrive at a just

12   verdict in this case.

13        Therefore, during your deliberations, your purpose

14   should not be to support your own opinion, but to determine

15   the facts.

16        If it becomes necessary during your deliberations

17   to communicate with me, you may send a note, signed by your

18   foreperson or by any one or more members of the jury.  If

19   you have a note, the foreperson should knock on the

20   courtroom door and the clerk will get the note and give it

21   to me.  If you are divided on any matter, do not reveal in

22   your note or otherwise how the jury is divided.

23        After consulting with the attorneys, I will

24   respond either in writing or we'll reconvene here in the

25   courtroom.

The Court's Instructions to the Jury

1     The response may not be immediate, because I can't

2     have any contact with the jury on anything touching on the

3     case unless I consult with the attorneys first.  If I

4     respond to a note, I go over what I'm going to say back to

5     the note.  And I'll either respond in writing or call you in

6     the courtroom.  But I don't do anything with the jury

7     without telling the lawyers what I'm going to say first and

8     letting them object or not object to any communication I

9     have with the jury from this point until you reach your

10    verdict.

11     When you have reached your verdict, the foreperson

12    should fill out and sign the verdict form, which I'll give

13    you when you retire to begin your deliberations.  Send me a

14    note signed by the foreperson telling me you've reached a

15    verdict.  Don't tell me in the note what the verdict is.

16    I'll call you in the courtroom and have the verdict passed

17    to the courtroom deputy.

18     I'd like to tell you how the procedure works in

19    the courtroom.  Let me go over the verdict form.  I'm going

20    to send you all a copy of the instructions and the verdict

21    form.  The verdict form is -- repeats the questions you saw.

22    I think a couple of the lawyers showed you some version of

23    the verdict form.

24     But Question 1 on the verdict form is:  Did the

25    Plaintiffs prove by a preponderance of the evidence that

1    FHFA, in its role as the conservator of Fannie Mae and

2    Freddie Mac, acted arbitrarily or unreasonably in entering

3    into the net worth sweep, thereby violating the reasonable

4    expectations of holders of Fannie Mae junior preferred

5    stock, Freddie Mac junior preferred stock and/or Freddie Mac

6    common stock?

7         There's a place to say yes or no as to each of

8    those.

9         If your question [sic] is yes to any of those

10   groups, then you go to the second question.  If your

11   question is no to all three groups, then that's your

12   verdict.  And under the instructions, you would just sign it

13   and return it.

14        If your question is a yes to any of those groups,

15   then the Question 2 is:  Did the Plaintiffs prove by a

16   preponderance of the evidence that one of those -- that

17   either the Fannie Mae junior preferred shareholders, the

18   Freddie Mac junior preferred shareholders and/or the Freddie

19   Mac common shareholders sustained harm as a result of the

20   net worth sweep?

21        And then depending on your answer to that,

22   Question 3 and Question 3 would be the amount of damages

23   each of those groups suffered.

24        Question 4 is then:  Do you award prejudgment

25   interest?

The Court's Instructions to the Jury

1          5:  On what date do you find prejudgment interest

2    should begin?

3          So hopefully the form is all self-explanatory once

4    you get through the questions.  The questions are in order.

5    If I get a note from the jury, I'd respond either in writing

6    or orally here in open court, as I said.

7          There may be some delay because I have to consult

8    with counsel before I respond.

9          Let me tell you how it works if I get a note

10   saying you have a verdict:  We reconvene in the courtroom.

11   The verdict is read in the courtroom by the courtroom

12   deputy, who then says:  Is this the verdict of the jury?

13   Hopefully, you will all say yes.

14         Either side can ask for what we call polling the

15   jury.  If there's a request to poll the jury, then the

16   courtroom deputy says:  Do each of you agree with the

17   verdict as just read in open court?  And she'll say, Juror

18   No. 1?  Hopefully, Juror No. 1 says yes.  Then Juror No. 2,

19   and she just calls the number of each of you.  If all of you

20   say yes, then that's all polling the jury is.

21         If anyone says no, then I don't have a unanimous

22   verdict and I'll ask you to retire to the jury room and

23   continue your deliberations until we have a unanimous

24   verdict.  That's all.  That's all that happens when you come

25   back, anyway.  That's what's called polling the jury, just

1    so you know how it works.

2           Deliberating juries are entitled to lunch, so

3    you'll have lunch brought in here while you're deliberating.

4    I'll leave it to y'all what schedule you want to set.  You

5    can give me a note.

6           We don't have to reconvene in the courtroom for

7    you to -- if you decide you want to come back on Monday to

8    continue deliberating Monday.  We'll come back on a

9    10:00-to-5:00 sort of schedule and you'll deliberate at your

10   pace and decide how much time to fairly and impartially

11   render a just and fair verdict in this case.

12          With that, I'll see you all later.

13          Court will be in recess.

14          We'll send back the exhibits with the clerk to

15   show you how to view all the exhibits.  The parties have

16   agreed on what's in evidence.  I'll send back my written

17   copies of my instructions.

18          (Whereupon, the jury exited the courtroom at 10:49

19   a.m. and the following proceedings were had:)

20          THE COURT:  I should have asked before they left,

21   was there any objection to my reading anything?  Did I

22   misread anything I need to correct?

23          MR. STERN:  I'm sorry, your Honor?

24          THE COURT:  Did I misread anything I need to

25   correct?  You all have seen the final version.

The Court's Instructions to the Jury

```
 1              MR. STERN:  Jonathan Stern for the Defendants,

 2      your Honor.

 3              Not for the Defendants.

 4              Your Honor, just one question.

 5              THE COURT:  Yes.

 6              MR. STERN:  I frankly don't remember whether the

 7      Court has instructed this way along the way, that they

 8      should not discuss the case unless all of them are present.

 9              THE COURT:  I didn't say that.  But I will say --

10      bring --

11              THE COURTROOM DEPUTY:  I tell them when I go back

12      there.  But if you want me to bring them, I'll --

13              THE COURT:  Bring them back and let me just make

14      sure they know that.

15              I forgot to say that.  I always do say that.  And

16      I'll send back copies of the instructions and the verdict

17      form.

18              THE COURTROOM DEPUTY:  Jury panel.

19              (Whereupon, the jury entered the courtroom at

20      10:50 a.m. and the following proceedings were had:)

21              THE COURT:  You all can be seated.

22              I'm sorry.  I forgot one thing I always tell

23      juries:  You can't discuss the case unless all eight of you

24      are present.  So one rule to enforce is you can't have any

25      side discussions.  If somebody goes to the bathroom, all
```

1    discussions stop.  In somebody leaves the room, all

2    discussions stop.  When you come in in the morning, you

3    can't have any discussion until you all are here.  For

4    whatever, you know, just stopping discussion, you can't pick

5    back up unless -- everybody's got to be present.  You can't

6    have any side discussions.  All people have to be present

7    when you have any deliberations or discussions.

8              I forgot to tell you that.  It should be in my

9    regular standard instructions.  I just -- everybody needs to

10   be present for all discussions.  No side discussions.

11             Okay.  With that, good luck.  Court will be in

12   recess.  I'm sorry I forgot that.

13             (Whereupon, the jury exited the courtroom at 10:51

14   a.m. and the following proceedings were had:)

15             THE COURT:  Anything else I forgot?

16             MR. STERN:  Thank you, your Honor.

17             MR. HUME:  Thank you, your Honor.

18             (Thereupon a recess was taken, after which the

19   following proceedings were had:)

20             THE COURT:  It appears the note is from Juror

21   No. 6, who appears to be the foreperson.

22             The note asks for the text of HERA.  I assume the

23   statute -- I don't know if it's in evidence or not, but I

24   assume the statute would be something the Court could take

25   judicial notice of.  So if you all have a version that's in

1   evidence, I could reference it.  If you don't, you could

2   agree upon what version of the statute that I could send in

3   to the jury.

4          Does anyone know whether the other two reports

5   they're asking about are, in fact, in evidence?

6          MR. HUME:  Hamish Hume for the Plaintiffs.

7          My understanding, subject to correction, is that

8   one portion of HERA is in evidence.  But another portion,

9   that was also shown to Mr. DeMarco question and questioned

10  about, is not.

11         So we would submit that if they need a -- they

12  might need judicial notice on one and could be pointed to

13  the other, or judicial notice on all of them.  That's on the

14  first question.

15         On the second question, the FHFA reports are not

16  in evidence.

17         THE COURT:  Okay.

18         MR. HUME:  But the only thing they were ever used

19  for is the data relating to mortgage-backed security

20  purchases, which is in evidence through the summary witness.

21         There's one summary witness exhibit that

22  references both of these two reports.  It's Exhibit 5-P, as

23  in Peter.  And so -- and it's one page.  And it says:  Data

24  compiled from the Federal Housing Finance Agency, 2011 and

25  2012 reports to Congress.  So we think that would be

```
 1    appropriately given.

 2              I'm not aware of any other data or text from those

 3    two reports that's in evidence.  But that's what we would

 4    propose on these questions, your Honor.

 5              Thank you.

 6              THE COURT:  What were you proposing that we say

 7    about the answers to the two questions from the Plaintiffs?

 8              MR. STERN:  Your Honor, I'm sorry.  May I have a

 9    moment, your Honor?

10              THE COURT:  All right.

11              (Counsel confer privately.)

12              MR. STERN:  Your Honor, if we could have the

13    Court's indulgence, we just want to make sure we're in

14    agreement about what has and has not been admitted.

15              THE COURT:  Okay.

16              (Counsel confer privately.)

17              MR. STERN:  Your Honor, if I may, I think we have

18    agreement on what's been introduced and what's not been

19    introduced.  But we don't have full agreement on how

20    actually to respond to the note.

21              Mr. Hoffman is going to handle for us the

22    reports-to-Congress question and I'm going to handle the

23    HERA question.

24              Thank you.

25              Whenever the Court is ready.
```

 1          MR. HOFFMAN:  Thank you, your Honor.  Ian Hoffman

 2    on behalf of the Defendants.

 3          On the reports to Congress, one excerpt of the

 4    2011 report to Congress is in evidence.  That's at

 5    Plaintiffs' Exhibit 388-A, as in alpha.  PX-388-A.  That's

 6    an excerpt of the 2011 FHFA report to Congress.  It includes

 7    some MBS-related data.

 8          The 2012 excerpt report from Congress, Plaintiffs

 9    attempted to move it in and your Honor sustained the

10    objection and excluded that piece of evidence.

11          So the jury would only report -- we could

12    report -- I think we agree that we can notify the jury that

13    388-A is in evidence.

14          No?

15          MR. HUME:  No.

16          Hamish Hume for the Plaintiffs.

17          It is accurate that PX-388-A is an excerpt from

18    the 2011 report.

19          However, here's -- here's precisely what happened:

20    I attempted to ask Mr. DeMarco a question about both the

21    2011 and 2012 reports on a split screen, excerpts of the

22    same page summarizing the level of mortgage-backed security

23    purchases, with the intention of comparing through the

24    second quarter of 2012 to show they were going up.  They did

25    go up after the second quarter as well.

1          The Defendants objected to both.

2          The Court sustained the objection on the 2012

3     report, but not the 2011.

4          I then didn't ask the question because I needed

5     both to show the facts.  So I just asked generally:  Do you

6     recall that the level of mortgage-backed security purchases

7     were going up in 2012?

8          He said yes.

9          Our position is that it will be misleading to give

10    the jury just this PX-388-A when they've heard the argument

11    based on the testimony that it was going up.

12          So if we're going to give this, we would say --

13    like, this must be what they're asking about because there's

14    nothing else in those reports that ever was mentioned in the

15    trial.

16          They should also be offered a read-back of the

17    very short testimony -- it's five lines -- from -- I have

18    the transcript cite.  It's the August 9th transcript in the

19    morning, Page 34, Lines 6 to 11.

20          Because I think without that, giving them this

21    exhibit will be misleading and will suggest the evidence

22    doesn't support what we said when in fact it does.

23          THE COURT:  The exhibit itself was received?

24          MR. HUME:  It was.

25          THE COURT:  Mr. Hoffman is saying no.

 1                  MR. HUME:  The exhibit --

 2                  THE COURT:  Let me ask the clerk.

 3                  THE COURTROOM DEPUTY:  388-A is in evidence.

 4                  THE COURT:  All right.

 5                  MR. HUME:  But to understand the point that we

 6      were attempting to make, you need the other 2012 report to

 7      compare side by side.

 8                  We were unable to do that.  And therefore, I just

 9      asked the question generally from his memory:  Were

10      mortgage-backed securities purchases going up?

11                  He said yes.

12                  THE COURT:  I see.

13                  MR. HUME:  I think the jury should at least be

14      made aware there was testimony about the subject matter.

15                  THE COURT:  The time to object to 388-A going to

16      the jury was before now.  So if 388-A was received and no

17      objection was made to it going to the jury, then it is with

18      the jury, and the answer to their question is 388-A is

19      before the jury.

20                  All right.  What's the other question?

21                  MR. HOFFMAN:  Your Honor, I just wanted to clarify

22      the record.

23                  When Mr. Hume spoke earlier, there was a

24      discussion of Plaintiffs' Exhibit 5-P.  5-P is not in

25      evidence.

```
 1                    THE COURT:  Okay.

 2                    MR. HOFFMAN:  Yes.  So to answer the jury's

 3       question on the 2011, an excerpt of the 2011 report is in at

 4       388-A.  I don't know if the Court wishes to say the 2012

 5       report is not in evidence or just to leave it be.

 6                    THE COURT:  So a portion of the 2012 report is

 7       388-A?

 8                    MR. HOFFMAN:  No, your Honor.  I'm sorry.

 9                    A portion of the 2011 report --

10                    THE COURT:  Is in 388-A?

11                    MR. HOFFMAN:  That's correct.  No part of the 2012

12       report is in evidence.

13                    THE COURT:  Okay.

14                    MR. HOFFMAN:  Thank you, your Honor.

15                    THE COURT:  So that's an accurate answer to the

16       question?

17                    MR. HOFFMAN:  That's right.

18                    We would -- I think your Honor has already ruled.

19       But we would propose any read-back as unnecessary and not

20       responsive to the question.

21                    THE COURT:  And then who's going to talk about

22       HERA?

23                    MR. STERN:  I am, your Honor.  For the Defendants,

24       Jonathan Stern.

25                    Your Honor, the easy part is this:  The jurors
```

1    have asked:  Is the official text of HERA in evidence?  Can

2    you tell us the exhibit number?

3            Some of the official text of HERA is in evidence.

4    And the parties are in agreement that the parts of HERA that

5    are in evidence are DX-11 --

6            THE COURT:  PX?

7            MR. STERN:  D as in David.  DX-11.

8            THE COURT:  Okay.

9            MR. STERN:  And DX-58.

10           THE COURT:  Okay.

11           MR. STERN:  Your Honor, we have a further request

12   with respect to the Court's response to this question.

13           And if the Court will bear with me, I need to

14   connect some dots.

15           The preface is, your Honor, that as the Court is

16   aware, it was a centerpiece of our presentation, including

17   my opening statement and closing argument, which of course

18   the jury is free to accept or reject.  But it was a

19   principal theme of the Defendants that HERA is authorized to

20   act in the best interests of the public.

21           The Court alluded to that in a prefatory phrase in

22   its instructions at Page 9.  And I can hand up another copy,

23   your Honor, if it would be helpful.

24           The Court said -- I'm -- in pertinent part:  Your

25   assessment of Plaintiffs' reasonable expectations -- the

1    Court is talking about assessment of the Plaintiffs'

2    reasonable expectations.  And then in pertinent part, Page

3    9, the second sentence of the last paragraph on the page:

4    In making that assessment, you may consider the terms of the

5    Housing and Economic Recovery Act, or HERA.

6          The Court has instructed the jury in making this

7    factual determination they can consider the terms of the

8    statute.

9          At the same time, the Court has told them that

10   they are the judges -- I'm paraphrasing, your Honor -- they

11   were the judges of the facts.  But it's the Court who

12   instructs on the law.

13         And the law, the text of HERA, reads -- the

14   pertinent text of HERA reads at 12 USC 4617(b)(2)(5) -- and

15   I learned from Mr. Hume -- romanette (ii).  And the text is:

16   The agency may, as conservator or receiver, take any action

17   authorized by this section which the agency determines is in

18   the best interest of the regulated entity or the agency.

19         As the Court's instructions at least implicitly

20   acknowledge, the Supreme Court has interpreted that

21   language.  And in *Collins*, 141 Supreme Court 1761 at 1776,

22   the Supreme Court said in pertinent part that an FHFA

23   conservatorship, however, differs from a typical

24   conservatorship in a key respect.

25         And then it goes on to say, when the FHFA -- and

1    I'm quoting.  Quote:  "When the FHFA acts as a conservator,

2    it may aim to rehabilitate the regulated entity in a way

3    that, while not in the best interests of the regulated

4    entity, is beneficial to the agency and, by extension, the

5    public it serves."

6            And it is that gloss on the actual statutory

7    language that does not refer to the best interests of the

8    public which is the source of the Court's instruction as a

9    grammatical part of that sentence that FHFA authorizes --

10   I'm sorry -- that HERA authorizes FHFA to act in the best

11   interests of the public.

12           Our concern, your Honor, is if we just give them

13   the statute, they look at that provision and they say:  Wait

14   a minute.  Stern told us about 100 times that HERA

15   authorizes FHFA to act in the best interests of the public,

16   but that's not what it says.

17           So we would ask the Court either to give an

18   instruction that's essentially the language in that sentence

19   of HERA, thus -- I can hand it up or write it down -- again:

20   Thus, when the FHFA acts as a conservator, it may aim to

21   rehabilitate the regulated entity in a way that, while not

22   in the best interests of the regulated entity, is beneficial

23   to the agency and by extension the public it serves.  That

24   would be our first choice.

25           Our second choice, your Honor, would be that the

1   Court refer the jury specifically to the Court's statement

2   that FHFA is authorized to act in the best interests of the

3   public.

4          I understand, your Honor, that this goes a bit

5   beyond the question that's being asked.  But we're in an odd

6   or at least not-typical scenario where the jury is being

7   instructed that as part of its job it is to interpret a

8   statute, which is not something ordinarily within the realm

9   of the jury's province.

10          THE COURT:  Well, the wording you're worried

11   about, is that in Defendants' 11 or Defendants' 58?

12          MR. STERN:  Yes.  May I pass up the statute?

13          THE COURT:  No.

14          MR. STERN:  The wording I'm worried about is in

15   Defendants' 58, where it talks about FHFA's authority; and

16   it only refers to the best interests of the regulated entity

17   or the agency, but not the best interests of the public.

18          But we know that the Supreme Court has dictated

19   that that language includes the best interests of the

20   public, as the Court has included within its instruction.

21          So we'd ask either that the Court read the *Collins*

22   sentence or that in answering this question, the Court

23   remind the jury that the Court determines the law and the

24   Court has found or instructs the jury that HERA is

25   authorized -- that HERA authorized FHFA to act in the best

1    interests of the public, which is already in the Court's

2    instruction at Page 9.  But it's in a prefatory part of the

3    sentence rather than as a declarative assertion.

4              Nothing further on that, your Honor.

5              MR. HUME:  Your Honor, Hamish Hume from the

6    Plaintiffs.

7              We object to now trying to change the instructions

8    and have the Court give any instructions about --

9              THE COURT:  The objection is sustained.

10             The answer will be that portions of HERA are in

11   Defendants' 11 and Defendants' 58.  And that's what you want

12   to limit it to?

13             MR. HUME:  Yes, your Honor.

14             THE COURT:  All right.

15             MR. STERN:  Your Honor, I apologize.  I don't mean

16   to -- Mr. Hume objected to giving a new instruction.  Our

17   alternative request is simply that the Court refer the jury

18   to the instruction that it has already given so that --

19             THE COURT:  I understand.  And that's denied.

20             I'll answer the question.

21             MR. HUME:  Yes, your Honor.

22             There's another point on the --

23             THE COURT:  You do not object to answering the

24   question?

25             MR. HUME:  We do not object -- we -- the question

 1    about HERA, it's incomplete, what's in evidence.  And there

 2    was a provision in HERA shown to the jury, shown to

 3    Mr. DeMarco, that -- and I don't actually know Defendants'

 4    position on this -- of which the Court can take judicial

 5    notice.

 6             It's -- is it 12 USC?  It's 12 USC 1719,

 7    Subparagraph (g).

 8             That is the provision that was shown to the jury

 9    and Mr. DeMarco.  There was testimony on it.  And for

10    completeness, we think they should be given judicial notice

11    of that.

12             We have a printout of just that provision, which

13    we can hand up to the Court.

14             (Tenders document to the Court.)

15             Subsection -- that was -- it's Subsection

16    (1)(C) -- (g)(1)(C) on the second page.  It identifies the

17    considerations that the Treasury secretary should take into

18    account in exercising the authority in the paragraph.  That

19    includes the need to maintain the corporation's status as a

20    private shareholder company.

21             That's in (g)(1)(C) on the second page of this

22    document.  (C) is entitled Considerations.  After that, it

23    says:  To protect the taxpayers, the secretary of the

24    Treasury shall take into consideration the following in

25    connection with exercising the authority contained in this

```
1    paragraph.

2                THE COURT:  All right.

3                MR. HUME:  And that includes six different

4    considerations, the fifth of which is the need, romanette

5    (v), the need to maintain the corporation's status as a

6    private shareholder-owned company.

7                That is part of HERA, and it was shown to the jury

8    and shown to Mr. DeMarco.  And we think because it refers to

9    the authority exercised in the paragraph, they need the

10   whole paragraph to see that it deals with giving the

11   secretary of the Treasury temporary authority to buy

12   securities in Fannie Mae and Freddie Mac.

13               THE COURT:  That request is denied.

14               So the response to the note will be --

15               MR. HUME:  Your Honor, I'm told it may be in

16   evidence.

17               THE COURT:  I'm sorry?

18               MR. KRAVETZ:  DX-1, your Honor.  We believe that

19   provision is in evidence.  1719, your Honor.

20               MR. HUME:  It's in evidence as DX-1.

21               THE COURT:  What is in DX-1?

22               MR. HUME:  DX-1 is apparently the entirety of

23   HERA.

24               MR. HOFFMAN:  No.

25               MR. HUME:  No.  The entirety of the provision.
```

```
1                    THE COURT:  DX-1?

2                    MR. HUME:  Mr. Hoffman will make sure the record

3        is clear on this.

4                    MR. HOFFMAN:  Your Honor, Ian Hoffman for the

5        Defendants.

6                    And I apologize, your Honor, for all the

7        back-and-forth on this.

8                    Defendants' Exhibit No. 1 is in evidence.  It's

9        the entire Fannie Mae charter.  The provision that I believe

10       Plaintiffs have just handed up is included within DX-1,

11       which is a larger provision of the United States Code.

12                   And HERA amended the Fannie Mae charter in the way

13       that was shown to Mr. DeMarco -- and we can double-check

14       this to confirm, and we should -- but I believe the

15       provision that they just handed up to you is included in

16       DX-1 somewhere within there.

17                   THE COURT:  So when they asked for the text of

18       HERA --

19                   MR. KRAVETZ:  Your Honor, Robert Kravetz.

20                   For the record, it is in DX-1.  And it is on Page

21       14 of 36 of that document, your Honor, going from 13 of 36

22       to 14 of 36.

23                   THE COURT:  What I'm talking about is HERA.

24                   MR. KRAVETZ:  Yes, your Honor.  That provision of

25       HERA is contained within DX-1.  DX-1 is 36 pages.
```

1            MR. HOFFMAN:  Your Honor, Ian Hoffman again for

2    the Defendants.

3            Part of the issue here is that HERA was a broad

4    package that amended various parts of the United States

5    Code.

6            Throughout the trial, we have referred to HERA as

7    I think primarily -- the Defendants at least have referred

8    to it as primarily referring to 12 United States Code 4617,

9    which is DX-58.

10            DX-1 is the Fannie Mae charter, which is the broad

11    statute.  HERA amended part of the charter, and that part is

12    within DX-1.

13            I wouldn't refer to DX-1 as HERA.  It's the Fannie

14    Mae charter.  But HERA amended a piece of DX-1.

15            So I think that what they're asking for is part of

16    DX-1, but I think when the jury asks for HERA, what the

17    parties have referred to as HERA is at DX-58.  But I don't

18    know what Plaintiffs' position is on this in particular, but

19    the part they've handed up is part of the broader set of

20    DX-1, which is Fannie Mae's charter, the portion of which

21    was amended by HERA.

22            MR. HUME:  The whole reason HERA is relevant to

23    this contract case is because it amends the charter.  And

24    that is what DX-1 shows.

25            And Page 14 has the precise provision that we are

1        talking about from HERA.  It's part of DX-1.  And it's from

2        HERA.

3              So it is part of HERA that is in evidence.  It's

4        the text of HERA.  It's the text of HERA that is in DX-1 on

5        Page 14 in particular.  That is the provision we care about.

6        But they should be told to look at all of DX-1.

7              I'm also told, your Honor, that the provision

8        we're talking about that talks about the Treasury

9        considerations is cited in your motion-to-dismiss decision

10        as part of the amendment of the contract that happens

11        through HERA through the change in the charter.  It's

12        referenced in the Court's decision and it is part of DX-1 or

13        it's in DX-1.  I think that has to be shown to the jury or

14        given to them in response to these questions.

15              I think we have a proposal from the Defendants on

16        how to deal with this.

17              MR. HOFFMAN:  Your Honor, I believe we have an

18        agreement here.  Portions of HERA are in the record at DX-1,

19        DX-11 and DX-58.

20              THE COURT:  All right.  So the first would be:

21        You asked whether the text of HERA is in evidence and, if

22        so, what the exhibit number is.

23              Portions of HERA are in evidence at -- the exhibit

24        numbers are DX-1, 11 and 58.

25              MR. HOFFMAN:  Yes, your Honor.

1          THE COURT:  All right.  Second:  You asked whether

2      the 2011 and 2012 FHFA reports to Congress are in evidence

3      and, if so, what the exhibit numbers are.

4          One excerpt from the 2011 report is in evidence.

5      The exhibit number is PX-388-A.  No other portion of either

6      report is in evidence.

7          MR. HUME:  Your Honor, that is -- Hamish Hume for

8      the Plaintiffs.

9          That is our understanding of the Court's ruling.

10     For the record, again, we object to that answer because it

11     is going to be misleading and confusing to the jury.

12         THE COURT:  Those objections are noted for the

13     record.

14         You can bring in the jury.

15         The jury, I understand, is ready to go.  So I'm

16     going to read that to them and dismiss them.

17         THE COURTROOM DEPUTY:  Jury panel.

18         (Whereupon, the jury entered the courtroom at 5:05

19     p.m. and the following proceedings were had:)

20         THE COURT:  You may be seated.

21         Ladies and gentlemen, I have your note from 3:46

22     p.m.  I've been consulting with counsel and I had just

23     completed my response.  I'll send in the written response

24     Monday morning.  But I wanted to tell you my response now

25     and then let you all go for the weekend.

1          First, you asked whether the text of HERA is in

2     evidence and, if so, what the exhibit number is.

3          Only portions of HERA are in evidence.  And the

4     exhibit numbers are Defendants' Exhibits 1, 11 and 58.  So

5     I'll have that in a written note for you on Monday when you

6     all come in.

7          Second, you asked whether the 2011 and 2012 FHFA

8     reports to Congress are in evidence and, if so, what the

9     exhibit numbers are.

10          One excerpt from the 2011 report is in evidence,

11     and the exhibit number is PX-388-A.

12          No other portion of either report is in evidence.

13          So with that, I'll have that note for you ready to

14     sign and I'll have it for you Monday morning when you

15     return.

16          And I've consulted with counsel and we've examined

17     the record.  That's the answer to the questions you all

18     posed.

19          Thank you very much for your deliberations today.

20     Don't talk about the case.  Once all eight of you are back

21     together Monday, you can resume your deliberations.

22          Have a nice weekend.  I'll see you all on Monday.

23          (Whereupon, the jury exited the courtroom at 5:07

24     p.m. and the following proceedings were had:)

25          THE COURT:  Have a nice weekend.

1                    MR. HOFFMAN:  Thank you, your Honor.

2                    I'll sign and date this.

3                    MR. STERN:  Thank you, your Honor.

4                    (Proceedings concluded.)

1                          **<u>CERTIFICATE</u>**

2

3                    I, LISA EDWARDS, RDR, CRR, do hereby

4      certify that the foregoing constitutes a true and accurate

5      transcript of my stenographic notes, and is a full, true,

6      and complete transcript of the proceedings produced to the

7      best of my ability.

8

9

10                   Dated this 11th day of August, 2023.

11

12               <u>/s/ Lisa Edwards, RDR, CRR</u>
                 Official Court Reporter
13               United States District Court for the
                   District of Columbia
14               333 Constitution Avenue, Northwest
                 Washington, D.C. 20001
15               (202) 354-3269

16

17

18

19

20

21

22

23

24

25

## /

**/s** [1] - 56:12

## 1

**1** [5] - 31:24, 33:18, 50:8, 54:4
**1)(C** [1] - 48:16
**100** [1] - 45:14
**10020** [1] - 2:5
**10:00-to-5:00** [1] - 34:9
**10:02** [2] - 1:7, 4:8
**10:49** [1] - 34:18
**10:50** [1] - 35:20
**10:51** [1] - 36:13
**11** [6] - 1:7, 40:19, 46:11, 47:11, 52:24, 54:4
**11th** [1] - 56:10
**12** [4] - 44:14, 48:6, 51:8
**1251** [1] - 2:4
**13** [1] - 50:21
**13-1053** [2] - 1:4, 4:2
**13-1288** [2] - 1:10, 4:2
**14** [5] - 1:13, 50:21, 50:22, 51:25, 52:5
**1401** [1] - 1:22
**141** [1] - 44:21
**1523** [1] - 1:18
**1719** [2] - 48:6, 49:19
**1761** [1] - 44:21
**1776** [1] - 44:21
**19087** [1] - 1:25

## 2

**2** [2] - 32:15, 33:18
**20001** [3] - 2:9, 2:13, 56:14
**20005** [1] - 1:22
**20036** [1] - 1:18
**2008** [1] - 24:11
**2009** [4] - 23:14, 23:25, 24:25, 25:4
**2011** [13] - 37:24, 39:4, 39:6, 39:18, 39:21, 40:3, 42:3, 42:9, 53:2, 53:4, 54:7, 54:10
**2012** [13] - 23:12, 37:25, 39:8, 39:21, 39:24, 40:2, 40:7, 41:6, 42:4, 42:6, 42:11, 53:2, 54:7

## 2017...

**2017** [1] - 27:8
**2019** [1] - 27:8
**202** [2] - 2:14, 56:15
**2021** [1] - 27:8
**2023** [2] - 1:7, 56:10
**24** [2] - 23:14, 24:25
**24th** [2] - 23:25, 25:4
**280** [1] - 1:25

## 3

**3** [2] - 32:22
**333** [2] - 2:12, 56:14
**34** [1] - 40:19
**354-3269** [2] - 2:14, 56:15
**36** [4] - 50:21, 50:22, 50:25
**388-A** [9] - 39:5, 39:13, 41:3, 41:15, 41:16, 41:18, 42:4, 42:7, 42:10
**3:46** [1] - 53:21

## 4

**4** [2] - 3:3, 32:24
**4617** [1] - 51:8
**4617(b)(2)(5** [1] - 44:14

## 5

**5** [1] - 33:1
**5-P** [3] - 37:22, 41:24
**58** [5] - 46:11, 46:15, 47:11, 52:24, 54:4
**5:05** [1] - 53:18
**5:07** [1] - 54:23

## 6

**6** [3] - 28:8, 36:21, 40:19
**601** [1] - 2:9
**6706** [1] - 2:13

## 8

**8** [1] - 22:7

## 9

**9** [5] - 22:8, 24:1, 43:22, 44:3, 47:2
**9th** [1] - 40:18

## A

**a.m** [5] - 1:7, 4:8, 34:19, 35:20, 36:14
**ability** [1] - 56:7
**absolute** [1] - 9:7
**accept** [4] - 4:16, 10:4, 16:24, 43:18
**account** [1] - 48:18
**accountant** [1] - 13:2
**accurate** [2] - 39:17, 42:15, 56:4
**accurately** [1] - 13:23
**acknowledge** [1] - 44:20
**act** [7] - 20:9, 24:12, 43:20, 45:10, 45:15, 46:2, 46:25
**Act** [3] - 21:11, 24:5, 44:5
**acted** [2] - 25:7, 32:2
**acting** [1] - 20:11
**Action** [3] - 1:3, 4:1, 4:4
**action** [8] - 18:2, 18:5, 18:7, 19:1, 22:18, 25:9, 25:12, 44:16
**ACTION** [1] - 1:11
**actions** [3] - 21:24, 22:4, 23:18
**actors** [1] - 11:21
**acts** [7] - 19:16, 19:18, 20:10, 20:13, 21:21, 45:1, 45:20
**actual** [5] - 22:8, 24:20, 27:3, 27:20, 45:6
**ADAM** [1] - 2:2
**add** [1] - 21:17
**addition** [5] - 10:22, 17:13, 20:7, 22:24, 24:19
**adequately** [1] - 18:13
**admissibility** [2] - 12:23, 13:12
**admissible** [1] - 12:6
**admit** [1] - 10:9
**admitted** [5] - 7:1, 7:3, 10:23, 11:3, 38:14
**adoption** [1] - 19:20
**adversary** [1] - 9:24
**advocates** [1] - 30:9
**affect** [1] - 21:9
**affection** [1] - 14:11
**affects** [1] - 14:1

## AGENCY...

**AGENCY** [1] - 1:6
**agency** [10] - 19:9, 19:10, 19:15, 19:16, 44:16, 44:17, 44:18, 45:4, 45:23, 46:17
**Agency** [1] - 37:24
**agent** [2] - 20:10, 20:12
**agents** [1] - 20:9
**agree** [6] - 10:3, 20:22, 29:22, 33:16, 37:2, 39:12
**agreed** [1] - 34:16
**agreeing** [4] - 23:3, 23:11, 23:18, 25:23
**AGREEMENT** [1] - 1:11
**agreement** [8] - 10:2, 21:7, 21:19, 38:14, 38:18, 38:19, 43:4, 52:18
**Agreement** [1] - 4:4
**agreements** [3] - 24:6, 24:8, 27:8
**aid** [1] - 10:19
**aim** [2] - 45:2, 45:20
**al** [2] - 1:3, 1:7
**allege** [3] - 22:9, 23:2, 26:14
**alleged** [4] - 22:25, 25:20, 26:4, 26:5
**alleging** [2] - 22:24, 25:18
**allowed** [1] - 18:10
**allows** [1] - 16:21
**alluded** [1] - 43:21
**alone** [2] - 4:25, 13:19
**alpha** [1] - 39:5
**alternative** [1] - 47:17
**amend** [1] - 21:11
**amended** [6] - 27:9, 50:12, 51:4, 51:11, 51:14, 51:21
**amendment** [5] - 23:4, 25:3, 27:6, 27:11, 52:10
**amendments** [1] - 24:7
**amends** [1] - 51:23
**Americas** [1] - 2:4
**amount** [7] - 25:13, 26:5, 26:11, 26:25, 28:7, 28:14, 32:22
**animosity** [1] - 14:7
**Anjan** [1] - 16:19
**answer** [9] - 12:9, 32:21, 41:18, 42:2, 42:15, 47:10, 47:20,

## (column 4 continued)

53:10, 54:17
**answering** [2] - 46:22, 47:23
**answers** [2] - 11:11, 38:7
**anyway** [1] - 33:25
**apologize** [2] - 47:15, 50:6
**apparent** [1] - 13:5
**aPPEARANCES** [1] - 1:16
**APPEARANCES** [1] - 2:1
**appeared** [1] - 13:17
**applies** [2] - 19:3, 28:4
**apply** [1] - 4:17
**appropriate** [1] - 21:25
**appropriately** [1] - 38:1
**arbitrarily** [5] - 21:22, 23:19, 24:16, 25:7, 32:2
**arbitrary** [2] - 21:24, 22:11
**area** [1] - 12:15
**argue** [2] - 25:22, 25:24
**argument** [2] - 40:10, 43:17
**arguments** [2] - 4:13, 7:5
**ARNOLD** [1] - 2:8
**arrive** [1] - 30:11
**arriving** [1] - 9:14
**ASIM** [1] - 2:6
**asserting** [1] - 21:23
**assertion** [1] - 47:3
**assess** [1] - 22:11
**assessed** [1] - 29:3
**assessment** [5] - 23:23, 24:2, 43:25, 44:1, 44:4
**asset** [1] - 13:4
**assume** [6] - 8:2, 8:3, 8:12, 19:2, 36:22, 36:24
**Attari** [1] - 16:20
**attempt** [1] - 29:25
**attempted** [2] - 39:9, 39:20
**attempting** [1] - 41:6
**attorney** [5] - 4:22, 12:3, 12:5, 12:22
**attorneys** [2] - 30:23, 31:3
**August** [4] - 1:7, 23:12, 40:18, 56:10
**authority** [8] - 20:12,

24:14, 24:16, 46:15,
48:18, 48:25, 49:9,
49:11
**authorized** [6] -
24:12, 43:19, 44:17,
46:2, 46:25
**authorizes** [3] - 45:9,
45:10, 45:15
**automatically** [1] -
25:14
**available** [2] - 24:24,
25:2
**Avenue** [6] - 1:18,
1:22, 2:4, 2:9, 2:12,
56:14
**avoid** [3] - 10:12,
12:1, 14:16
**award** [15] - 25:12,
26:6, 27:13, 27:14,
27:18, 28:1, 28:3,
28:6, 28:7, 28:9,
28:11, 28:20, 29:1,
29:4, 32:24
**awarded** [2] - 25:13,
28:14
**aware** [3] - 38:2,
41:14, 43:16

## B

**back-and-forth** [1] -
50:7
**backed** [4] - 37:19,
39:22, 40:6, 41:10
**Bala** [1] - 16:19
**balanced** [1] - 9:11
**bargain** [1] - 21:23
**Barry** [1] - 18:6
**base** [2] - 5:8, 27:14
**based** [9] - 14:17,
16:25, 22:11, 22:15,
23:10, 23:24, 24:23,
25:14, 40:11
**basis** [2] - 8:15,
27:21
**bathroom** [1] - 35:25
**bear** [2] - 26:23,
43:13
**bearing** [2] - 9:21,
14:4
**became** [3] - 13:5,
23:21, 25:2
**becomes** [1] - 30:16
**BEFORE** [1] - 1:13
**begin** [6] - 28:9,
28:22, 29:5, 29:12,
31:13, 33:2
**beginning** [1] - 24:10
**behalf** [6] - 18:3,

18:8, 19:21, 19:25,
20:4, 39:2
**belief** [1] - 9:4
**beliefs** [2] - 14:17,
30:6
**believes** [1] - 12:5
**beneficial** [2] - 45:4,
45:22
**benefit** [1] - 9:23
**BERGER** [1] - 2:3
**BERGMAN** [1] - 2:7
**Berkley** [5] - 18:24,
19:3, 19:5, 25:11,
25:13
**BERKLEY** [1] - 1:17
**BERNSTEIN** [1] - 2:3
**best** [14] - 24:12,
43:20, 44:18, 45:3,
45:7, 45:10, 45:15,
45:22, 46:2, 46:16,
46:17, 46:19, 46:25,
56:7
**between** [6] - 17:11,
20:20, 24:6, 28:17,
28:18, 28:23
**beyond** [3] - 9:6,
22:5, 46:5
**bias** [2] - 6:25, 14:16
**bit** [1] - 46:4
**blinds** [1] - 8:4
**BOIES** [1] - 1:21
**bona** [1] - 28:16
**Borodkin** [1] - 18:7
**bottom** [1] - 22:7
**bound** [2] - 16:24,
19:5
**BOZMAN** [1] - 2:3
**breach** [9] - 20:2,
20:6, 22:25, 23:15,
25:19, 25:20, 26:4,
26:9, 26:12
**breached** [5] - 19:25,
20:4, 23:4, 25:22,
26:19
**bring** [5] - 18:7,
35:10, 35:12, 35:13,
53:14
**broad** [2] - 51:3,
51:10
**broader** [1] - 51:19
**brought** [3] - 18:2,
18:24, 34:3
**burden** [4] - 8:23,
8:24, 9:16, 26:23
**buy** [1] - 49:11
**BY** [1] - 2:10
**bylaws** [1] - 21:4

## C

**Cacciapalle** [1] -
18:6
**CAITLIN** [1] - 2:3
**calculated** [2] -
26:11, 27:19
**cannot** [2] - 8:9
**capacity** [1] - 14:3
**care** [1] - 52:5
**carried** [1] - 9:16
**case** [41] - 4:13, 6:3,
6:6, 6:17, 6:22, 7:2,
9:15, 11:2, 11:5,
11:20, 12:4, 13:4,
13:10, 14:7, 14:8,
16:18, 17:7, 17:10,
18:1, 18:15, 18:24,
19:7, 20:7, 20:20,
23:2, 23:16, 23:24,
24:21, 25:22, 26:14,
27:14, 27:18, 27:25,
30:5, 30:12, 31:3,
34:11, 35:8, 35:23,
51:23, 54:20
**Case** [2] - 1:10, 4:2
**cases** [2] - 9:7, 22:21
**cash** [1] - 27:6
**Cassell** [1] - 18:6
**caused** [4] - 23:1,
25:20, 26:4, 26:22
**causes** [1] - 6:20
**centerpiece** [1] -
43:16
**certain** [4] - 6:11,
10:3, 10:7, 10:9
**certainly** [1] - 6:12
**certainty** [3] - 9:7,
26:24, 27:1
**certificate** [2] - 21:2,
21:3
**CERTIFICATE** [1] -
56:1
**certificates** [1] - 24:3
**certify** [1] - 56:4
**change** [5] - 20:23,
21:7, 30:3, 47:7,
52:11
**changes** [1] - 21:8
**chart** [2] - 11:3, 11:6
**charter** [9] - 21:3,
50:9, 50:12, 51:10,
51:11, 51:14, 51:20,
51:23, 52:11
**charts** [6] - 10:8,
10:10, 10:15, 10:17,
10:23, 10:24
**CHECK** [1] - 1:24
**check** [1] - 50:13

**chief** [1] - 13:2
**choice** [2] - 45:24,
45:25
**choose** [1] - 28:21
**circumstance** [1] -
22:6
**circumstances** [6] -
14:4, 22:1, 22:3,
22:18, 22:23, 23:12
**circumstantial** [6] -
7:22, 7:23, 7:25, 8:14,
8:18, 8:21
**cite** [1] - 40:18
**cited** [1] - 52:9
**Civil** [2] - 1:3, 4:1
**civility** [1] - 29:16
**claim** [3] - 8:23, 8:25,
9:22
**claimed** [1] - 27:12
**claims** [5] - 18:4,
18:12, 18:25, 28:4
**clarification** [1] -
6:12
**clarify** [1] - 41:21
**Class** [1] - 4:4
**CLASS** [3] - 1:11,
1:19, 2:2
**class** [18] - 18:2,
18:5, 18:7, 18:11,
18:12, 18:18, 18:19,
18:21, 18:22, 19:1,
19:3, 19:5, 23:16,
25:9, 25:12, 25:17,
26:8
**classes** [3] - 18:8,
18:14, 18:15
**clear** [1] - 50:3
**clerk** [3] - 30:20,
34:14, 41:2
**client** [1] - 12:22
**closing** [1] - 43:17
**Code** [3] - 50:11,
51:5, 51:8
**COLATRIANO** [1] -
1:17
**Collins** [2] - 44:21,
46:21
**color** [1] - 14:17
**Columbia** [2] - 2:12,
56:13
**COLUMBIA** [1] - 1:1
**combination** [1] -
8:11
**comment** [1] - 6:4
**common** [11] - 8:16,
9:19, 17:21, 18:20,
18:21, 18:23, 25:16,
28:5, 28:25, 32:6,
32:19
**communicate** [1] -

30:17
**communication** [1] -
31:8
**companies** [1] -
20:16
**company** [2] - 48:20,
49:6
**company's** [1] -
20:21
**compare** [1] - 41:7
**comparing** [1] -
39:23
**compensate** [1] -
26:6
**compensation** [1] -
27:19
**compiled** [1] - 37:24
**complete** [1] - 56:6
**completed** [1] -
53:23
**completely** [1] - 17:4
**completeness** [1] -
48:10
**concern** [1] - 45:12
**concerned** [1] - 5:5
**conclude** [3] - 6:4,
8:13, 17:23
**concluded** [1] - 55:4
**conclusions** [1] -
9:18
**condition** [1] - 7:21
**conduct** [4] - 19:22,
19:23, 27:15, 27:17
**confer** [2] - 38:11,
38:16
**conference** [1] -
12:23
**conferences** [2] -
12:12, 12:17
**confirm** [1] - 50:14
**conflict** [1] - 17:10
**conflicting** [1] - 17:9
**conflicts** [1] - 5:13
**confusing** [1] - 53:11
**Congress** [8] -
37:25, 38:22, 39:3,
39:4, 39:6, 39:8, 53:2,
54:8
**connect** [1] - 43:14
**connection** [1] -
48:25
**conscious** [1] -
14:16
**conservator** [7] -
19:16, 19:18, 19:21,
32:1, 44:16, 45:1,
45:20
**conservatorship** [3]
- 24:11, 44:23, 44:24
**consider** [30] - 5:1,

7:1, 9:14, 9:21, 10:15, 10:18, 13:25, 14:2, 14:5, 14:12, 14:14, 15:15, 15:21, 15:24, 16:3, 16:6, 17:6, 17:14, 22:16, 24:3, 25:4, 25:6, 27:10, 29:7, 29:15, 30:1, 30:2, 44:4, 44:7

**consideration** [8] - 4:20, 11:15, 15:2, 19:12, 19:13, 21:25, 29:18, 48:24

**considerations** [3] - 48:17, 49:4, 52:9

**Considerations** [1] - 48:22

**considered** [2] - 27:23, 29:20

**consist** [1] - 18:15

**consisted** [1] - 11:23

**consisting** [1] - 18:22

**consists** [1] - 7:2

**constitutes** [1] - 56:4

**Constitution** [2] - 2:12, 56:14

**consult** [3] - 29:24, 31:3, 33:7

**consulted** [1] - 54:16

**consulting** [2] - 30:23, 53:22

**CONT'D** [1] - 2:1

**contact** [1] - 31:2

**contain** [1] - 21:14

**contained** [4] - 16:8, 20:25, 48:25, 50:25

**continue** [2] - 33:23, 34:8

**contract** [9] - 21:1, 21:17, 21:20, 22:13, 22:16, 24:18, 25:6, 51:23, 52:10

**contracting** [2] - 22:20, 23:11

**contracts** [15] - 20:16, 20:17, 20:18, 20:19, 20:22, 20:24, 20:25, 21:6, 21:8, 21:12, 21:13, 21:14, 21:18, 23:21, 23:24

**contradicted** [1] - 14:15

**contribution** [1] - 30:11

**control** [1] - 7:11

**controversy** [1] - 28:18

**convenience** [1] - 11:1

**conveniently** [1] - 10:14

**convinced** [1] - 30:4

**COOPER** [1] - 1:17

**copies** [2] - 34:17, 35:16

**copy** [2] - 31:20, 43:22

**corporate** [2] - 21:3, 21:4

**corporation** [5] - 20:8, 20:10, 20:14, 21:1, 21:5

**corporation's** [2] - 48:19, 49:5

**corporations** [1] - 20:8

**correct** [3] - 34:22, 34:25, 42:11

**correction** [1] - 37:7

**correctly** [1] - 11:4

**counsel** [6] - 12:11, 33:8, 38:11, 38:16, 53:22, 54:16

**couple** [1] - 31:22

**course** [1] - 43:17

**COURT** [49] - 1:1, 4:5, 4:9, 4:12, 34:20, 34:24, 35:5, 35:9, 35:13, 35:21, 36:15, 36:20, 37:17, 38:6, 38:10, 38:15, 40:23, 40:25, 41:2, 41:4, 41:12, 41:15, 42:1, 42:6, 42:10, 42:13, 42:15, 42:21, 43:6, 43:8, 43:10, 46:10, 46:13, 47:9, 47:14, 47:19, 47:23, 49:2, 49:13, 49:17, 49:21, 50:1, 50:17, 50:23, 52:20, 53:1, 53:12, 53:20, 54:25

**court** [11] - 10:6, 10:14, 11:10, 11:18, 15:14, 15:18, 29:15, 33:6, 33:17, 34:13, 36:11

**Court** [38] - 2:11, 2:11, 6:21, 12:12, 12:24, 18:10, 29:3, 35:7, 36:24, 38:25, 40:2, 42:4, 43:13, 43:15, 43:21, 43:24, 44:1, 44:6, 44:9, 44:11, 44:20, 44:21, 44:22, 45:17, 46:1, 46:18, 46:20, 46:21, 46:22, 46:23, 46:24, 47:8, 47:17, 48:4,

48:13, 48:14, 56:12, 56:13

**Court's** [9] - 3:3, 38:13, 43:12, 44:19, 45:8, 46:1, 47:1, 52:12, 53:9

**courthouse** [3] - 8:1, 8:2, 8:4

**COURTROOM** [6] - 4:1, 4:6, 35:11, 35:18, 41:3, 53:17

**courtroom** [19] - 4:7, 8:4, 8:9, 30:20, 30:25, 31:6, 31:16, 31:17, 31:19, 33:10, 33:11, 33:16, 34:6, 34:18, 35:19, 36:13, 53:18, 54:23

**covenant** [14] - 20:1, 20:4, 21:14, 21:15, 21:21, 22:10, 22:25, 23:5, 23:15, 24:15, 25:19, 25:23, 26:10, 26:20

**COVID** [1] - 12:14

**credibility** [10] - 5:12, 13:14, 13:18, 13:21, 14:1, 14:5, 14:19, 15:15, 16:4, 16:7

**credible** [1] - 6:15

**criminal** [1] - 9:6

**crisis** [1] - 6:20

**cross** [1] - 13:1

**cross-examination** [1] - 13:1

**CRR** [3] - 2:10, 56:3, 56:12

**current** [4] - 14:23, 18:16, 18:18, 18:20

## D

**D.C** [6] - 1:6, 1:18, 1:22, 2:9, 2:13, 56:14

**damaged** [1] - 27:3

**damages** [19] - 25:12, 25:13, 26:6, 26:11, 26:13, 26:21, 26:24, 26:25, 27:2, 27:12, 27:13, 27:23, 28:1, 28:2, 28:3, 28:6, 28:15, 29:4, 32:22

**data** [4] - 37:19, 37:23, 38:2, 39:7

**date** [9] - 25:3, 28:8, 28:21, 28:23, 28:25, 33:1, 55:2

**Dated** [1] - 56:10

**David** [1] - 43:7

**DAVID** [1] - 2:7

**DAVIS** [1] - 1:20

**DAY** [1] - 1:13

**deal** [1] - 52:16

**dealing** [11] - 20:1, 20:5, 21:15, 21:16, 21:21, 22:10, 23:5, 23:16, 24:15, 25:20, 26:10

**deals** [1] - 49:10

**December** [4] - 23:14, 23:25, 24:25, 25:4

**decide** [13] - 4:18, 5:14, 8:21, 15:3, 15:10, 17:11, 17:12, 26:5, 28:6, 28:20, 30:4, 34:7, 34:10

**decided** [1] - 10:9

**deciding** [3] - 13:16, 14:9, 28:11

**decision** [6] - 6:2, 22:14, 22:17, 28:9, 52:9, 52:12

**decision-maker** [1] - 22:17

**decisions** [1] - 21:24, 22:4

**declarative** [1] - 47:3

**deemed** [2] - 19:22, 20:16

**DEFENDANTS** [1] - 2:6

**Defendants** [19] - 1:8, 9:13, 11:25, 19:7, 20:7, 23:9, 26:19, 27:15, 28:19, 35:1, 35:3, 39:2, 40:1, 42:23, 43:19, 50:5, 51:2, 51:7, 52:15

**Defendants'** [8] - 46:11, 46:15, 47:11, 48:3, 50:8, 54:4

**deferred** [1] - 13:3

**Delaware** [1] - 29:4

**delay** [1] - 33:7

**deliberate** [2] - 5:2, 34:9

**deliberating** [3] - 34:2, 34:3, 34:8

**deliberations** [12] - 7:11, 29:5, 29:7, 29:13, 29:14, 30:13, 30:16, 31:13, 33:23, 36:7, 54:19, 54:21

**DeMarco** [4] - 37:9, 39:20, 48:3, 48:9, 49:8, 50:13

**demeanor** [1] - 14:2

**denied** [2] - 47:19, 49:13

**deposition** [6] - 11:7, 11:12, 11:13, 11:14, 11:17, 12:1

**depositions** [2] - 11:20, 11:22

**depriving** [1] - 23:7

**deputy** [3] - 31:17, 33:12, 33:16

**DEPUTY** [6] - 4:1, 4:6, 35:11, 35:18, 41:3, 53:17

**described** [1] - 13:23

**describes** [1] - 7:9

**deserves** [4] - 15:1, 15:6, 17:8, 17:18

**designated** [2] - 11:23, 11:24

**designation** [1] - 24:3

**designations** [1] - 21:3

**desire** [1] - 27:15

**determination** [4] - 14:19, 17:25, 26:7, 44:7

**determine** [8] - 4:17, 5:12, 5:15, 5:19, 13:19, 27:11, 29:1, 30:14

**determined** [3] - 5:15, 16:11, 18:11

**determines** [2] - 44:17, 46:23

**determining** [2] - 5:17, 9:15

**Dharan** [1] - 16:19

**dictated** [1] - 46:18

**differ** [1] - 20:17

**different** [2] - 4:23, 49:3

**differently** [3] - 7:10, 15:18, 29:10

**differs** [1] - 44:23

**direct** [6] - 7:16, 7:19, 8:10, 8:19, 8:20

**discovery** [1] - 13:8

**discretion** [2] - 28:10, 28:21

**discuss** [3] - 29:6, 35:8, 35:23

**discussion** [3] - 36:3, 36:4, 41:24

**discussions** [7] - 35:25, 36:1, 36:2, 36:6, 36:7, 36:10

**dismiss** [2] - 52:9, 53:16

**dispute** [2] - 10:3,

28:17
**disputed** [1] - 7:24
**disregard** [4] - 5:3, 11:5, 13:9, 17:4
**distinction** [2] - 8:20, 22:8
**District** [3] - 2:11, 2:12, 56:13
**DISTRICT** [3] - 1:1, 1:1, 1:14
**district** [1] - 56:13
**divided** [2] - 30:21, 30:22
**dividend** [3] - 25:25, 26:15, 26:18
**dividends** [2] - 23:7, 27:6
**document** [8] - 12:7, 12:8, 12:9, 21:1, 48:14, 48:22, 50:21
**documents** [4] - 10:11, 10:13, 13:10, 21:2
**door** [1] - 30:20
**dots** [1] - 43:14
**double** [1] - 50:13
**double-check** [1] - 50:13
**doubt** [1] - 9:6
**down** [1] - 45:19
**draw** [4] - 5:13, 5:14, 6:9, 9:17
**drawn** [1] - 8:4
**dripping** [1] - 8:7
**DTA** [1] - 13:4
**during** [15] - 6:1, 6:5, 7:11, 7:13, 11:12, 11:19, 13:1, 13:6, 13:8, 15:12, 27:4, 29:7, 30:13, 30:16
**duties** [1] - 20:13
**duty** [8] - 4:15, 4:16, 4:18, 5:8, 6:24, 12:3, 12:11, 29:24
**DX-1** [24] - 49:18, 49:20, 49:21, 49:22, 50:1, 50:10, 50:16, 50:20, 50:25, 51:10, 51:12, 51:13, 51:14, 51:16, 51:20, 51:24, 52:1, 52:4, 52:6, 52:12, 52:13, 52:18, 52:24
**DX-11** [3] - 43:5, 43:7, 52:19
**DX-58** [4] - 43:9, 51:9, 51:17, 52:19

# E

**easy** [1] - 42:25
**Economic** [3] - 21:10, 24:5, 44:5
**economic** [1] - 16:21
**education** [2] - 16:23, 17:1
**EDWARDS** [2] - 2:10, 56:3
**Edwards** [1] - 56:12
**effect** [3] - 13:13, 13:15, 30:6
**effective** [1] - 25:3
**effectively** [2] - 25:25, 26:17
**eight** [2] - 35:23, 54:20
**either** [12] - 8:20, 16:12, 16:13, 30:24, 31:5, 32:17, 33:5, 33:14, 45:17, 46:21, 53:5, 54:12
**element** [3] - 8:25, 9:2, 9:5
**eliminating** [3] - 23:5, 25:25, 26:1
**employed** [1] - 14:25
**employee** [4] - 14:25, 15:5, 20:10, 20:13
**employees** [2] - 14:24, 20:9
**encourage** [1] - 29:16
**ended** [1] - 26:17
**enforce** [1] - 35:24
**engage** [1] - 27:16
**ensure** [1] - 12:19
**entered** [4] - 4:7, 8:8, 35:19, 53:18
**entering** [4] - 19:22, 19:24, 20:3, 32:2
**enterprises** [1] - 27:5
**entire** [1] - 50:9
**entirety** [2] - 49:22, 49:25
**entities** [3] - 19:8, 19:10, 24:9
**entitled** [11] - 9:23, 14:22, 19:11, 19:13, 26:10, 26:20, 27:24, 27:25, 28:15, 34:2, 48:22
**entity** [6] - 44:18, 45:2, 45:4, 45:21, 45:22, 46:16
**equal** [2] - 19:12,

26:21
**ESQ** [15] - 1:17, 1:19, 1:20, 1:20, 1:21, 1:23, 1:24, 2:2, 2:2, 2:3, 2:6, 2:6, 2:7, 2:7, 2:8
**essentially** [1] - 45:18
**establish** [2] - 9:2, 23:15
**established** [2] - 6:19, 8:16
**estimate** [1] - 27:3
**et** [2] - 1:3, 1:7
**evaluate** [1] - 16:7
**evaluating** [3] - 10:19, 13:21, 22:14
**evenly** [1] - 9:11
**evidence** [118] - 4:12, 4:19, 5:11, 5:16, 5:20, 5:22, 7:1, 7:2, 7:3, 7:6, 7:7, 7:8, 7:9, 7:14, 7:15, 7:16, 7:19, 7:22, 7:23, 7:25, 8:10, 8:14, 8:18, 8:19, 8:21, 8:22, 9:1, 9:3, 9:8, 9:11, 9:15, 9:21, 9:23, 9:25, 10:5, 10:10, 10:16, 10:19, 10:20, 10:24, 10:25, 11:1, 11:4, 11:5, 12:5, 12:10, 12:19, 12:23, 13:12, 13:14, 13:15, 14:10, 14:15, 15:4, 15:7, 15:21, 15:25, 16:8, 16:10, 16:14, 17:1, 17:3, 17:6, 17:7, 17:19, 19:2, 23:17, 25:1, 25:4, 25:6, 26:3, 27:4, 29:18, 29:19, 30:6, 31:25, 32:16, 34:16, 36:23, 37:1, 37:5, 37:8, 37:16, 37:20, 38:3, 39:4, 39:10, 39:13, 40:21, 41:3, 41:25, 42:5, 42:12, 43:1, 43:3, 43:5, 48:1, 49:16, 49:19, 49:20, 50:8, 52:3, 52:21, 52:23, 53:2, 53:4, 53:6, 54:2, 54:3, 54:8, 54:10, 54:12
**examination** [3] - 6:5, 13:1, 13:6
**examined** [1] - 54:16
**example** [3] - 7:25, 14:1, 21:8
**excerpt** [7] - 39:3, 39:6, 39:8, 39:17, 42:3, 53:4, 54:10

**excerpts** [3] - 11:19, 11:21, 39:21
**excluded** [1] - 39:10
**exclusive** [3] - 5:11, 5:23, 6:23
**excuse** [1] - 29:5
**exercise** [1] - 24:14
**exercised** [2] - 24:16, 49:9
**exercising** [2] - 48:18, 48:25
**exhibit** [14] - 7:20, 37:21, 40:21, 40:23, 41:1, 43:2, 52:22, 52:23, 53:3, 53:5, 54:2, 54:4, 54:9, 54:11
**Exhibit** [4] - 37:22, 39:5, 41:24, 50:8
**exhibits** [6] - 7:3, 10:7, 16:13, 16:15, 34:14, 34:15
**Exhibits** [1] - 54:4
**exist** [1] - 20:23
**existence** [2] - 7:20, 8:16
**existing** [1] - 22:1
**exited** [3] - 34:18, 36:13, 54:23
**expect** [1] - 30:2
**expectation** [1] - 26:13
**expectations** [12] - 22:12, 22:15, 23:10, 23:20, 23:24, 23:25, 24:17, 25:5, 25:8, 32:4, 43:25, 44:2
**expected** [7] - 21:23, 22:5, 22:20, 22:23, 23:14, 24:21, 24:23
**expedite** [1] - 6:12
**experience** [4] - 8:15, 9:19, 16:23, 17:1
**expert** [2] - 16:21, 17:9
**explaining** [1] - 24:10
**explanatory** [1] - 33:3
**express** [2] - 6:18, 21:16
**expressly** [2] - 6:21, 13:12
**extension** [2] - 45:4, 45:23
**extent** [3] - 10:16, 13:20, 25:1

# F

**fact** [19] - 5:21, 6:10, 7:20, 7:24, 8:11, 8:16, 8:17, 10:4, 13:7, 14:24, 16:8, 16:17, 17:12, 19:9, 22:6, 22:10, 27:22, 37:5, 40:22
**factors** [1] - 28:12
**facts** [29] - 4:17, 5:11, 5:15, 5:19, 5:24, 6:19, 6:23, 6:24, 7:3, 7:24, 8:11, 9:17, 10:3, 10:4, 10:25, 11:4, 13:16, 14:3, 14:4, 18:1, 22:1, 22:3, 22:18, 23:12, 30:10, 30:15, 40:5, 44:11
**factual** [1] - 44:7
**fair** [17] - 11:15, 19:13, 20:1, 20:5, 21:15, 21:21, 22:2, 22:10, 23:5, 23:16, 24:15, 25:19, 26:10, 27:19, 29:18, 34:11
**FAIRHOLME** [1] - 1:3
**fairly** [3] - 14:21, 17:8, 34:10
**faith** [12] - 20:1, 20:5, 21:14, 21:15, 21:21, 22:10, 23:5, 23:16, 24:15, 25:19, 26:10, 28:18
**faithful** [1] - 21:18
**Fannie** [22] - 4:3, 18:8, 18:17, 18:22, 19:16, 19:18, 19:25, 20:2, 20:8, 24:8, 25:15, 29:2, 32:1, 32:4, 32:17, 49:12, 50:9, 50:12, 51:10, 51:13, 51:20
**FANNIE** [2] - 1:10, 2:6
**favor** [2] - 6:7, 6:17
**favoring** [1] - 6:7
**favors** [1] - 9:23
**federal** [1] - 19:15
**FEDERAL** [1] - 1:6
**Federal** [1] - 37:24
**fellow** [1] - 30:1
**felt** [1] - 7:18
**few** [2] - 8:7, 29:6
**FHFA** [29] - 2:6, 13:2, 19:15, 19:18, 20:1, 20:5, 23:2, 23:11, 23:12, 24:7, 24:10,

24:12, 24:13, 25:7,
25:22, 32:1, 37:15,
39:6, 44:22, 44:25,
45:1, 45:9, 45:10,
45:15, 45:20, 46:2,
46:25, 53:2, 54:7
 **FHFA's** [7] - 19:20,
19:21, 19:24, 20:3,
23:18, 24:13, 46:15
 **fide** [1] - 28:16
 **fifth** [1] - 49:4
 **figures** [1] - 11:4
 **fill** [1] - 31:12
 **final** [3] - 4:13, 29:6,
34:25
 **FINANCE** [1] - 1:6
 **Finance** [1] - 37:24
 **financial** [4] - 6:20,
23:1, 25:21, 26:5
 **finder** [1] - 22:10
 **first** [9] - 20:19, 24:7,
29:13, 31:3, 31:7,
37:14, 45:24, 52:20,
54:1
 **five** [1] - 40:17
 **fix** [1] - 28:8
 **FLEXNER** [1] - 1:21
 **follow** [1] - 4:24
 **following** [9] - 4:8,
18:16, 34:19, 35:20,
36:14, 36:19, 48:24,
53:19, 54:24
 **FOR** [4] - 1:1, 1:17,
1:19, 2:6
 **foregoing** [1] - 56:4
 **foreperson** [7] -
29:13, 29:15, 30:18,
30:19, 31:11, 31:14,
36:21
 **forgot** [5] - 35:15,
35:22, 36:8, 36:12,
36:15
 **form** [11] - 7:19,
10:8, 27:6, 31:12,
31:19, 31:21, 31:23,
31:24, 33:3, 35:17
 **formed** [1] - 21:5
 **former** [1] - 14:23
 **forth** [1] - 50:7
 **four** [1] - 18:10
 **frankly** [1] - 35:6
 **FREDDIE** [1] - 2:7
 **Freddie** [21] - 18:8,
18:19, 18:20, 18:21,
19:17, 19:19, 20:4,
20:5, 20:8, 24:8,
25:15, 25:16, 28:5,
28:24, 32:2, 32:5,
32:18, 49:12
 **free** [1] - 43:18

 **friendship** [1] - 14:7
 **fruits** [1] - 21:22
 **frustrating** [1] -
21:22
 **fulfill** [1] - 12:19
 **full** [3] - 29:18,
38:19, 56:5
 **functions** [1] - 5:18
 **FUNDS** [1] - 1:3
 **future** [2] - 23:7,
27:16

## G

 **g)** [1] - 48:7
 **g)(1)(C** [2] - 48:16,
48:21
 **gender** [2] - 14:18,
14:19
 **general** [4] - 8:19,
20:10, 20:15, 21:24
 **generally** [2] - 40:5,
41:9
 **gentlemen** [2] - 4:10,
53:21
 **given** [7] - 8:20,
17:24, 28:2, 38:1,
47:18, 48:10, 52:14
 **gloss** [1] - 45:6
 **good-faith** [1] -
28:18
 **GOODHART** [1] -
1:24
 **governance** [1] -
21:9
 **government** [10] -
14:24, 14:25, 15:5,
19:8, 19:10, 19:15,
19:16, 24:9
 **government-
sponsored** [3] - 19:8,
19:10, 24:9
 **grammatical** [1] -
45:9
 **GRANT** [1] - 1:24
 **greater** [3] - 15:2,
16:14, 19:11
 **GROSSMAN** [1] - 2:4
 **group** [1] - 18:3
 **groups** [4] - 32:10,
32:11, 32:14, 32:23
 **GSEs** [6] - 19:20,
19:21, 19:23, 21:9,
24:9, 24:13
 **guesswork** [1] - 9:20
 **guidance** [1] - 28:2
 **guided** [1] - 22:4

## H

 **Hamish** [4] - 37:6,
39:16, 47:5, 53:7
 **HAMISH** [1] - 1:19
 **Hampshire** [1] - 1:18
 **hand** [5] - 28:13,
28:16, 43:22, 45:19,
48:13
 **handed** [3] - 50:10,
50:15, 51:19
 **handle** [2] - 38:21,
38:22
 **harm** [5] - 23:1,
25:21, 26:5, 26:6,
32:19
 **harmed** [1] - 25:24,
26:9
 **heard** [12] - 4:12,
7:9, 7:19, 10:17,
11:12, 11:19, 14:23,
15:7, 16:18, 17:9,
27:4, 40:10
 **hearing** [2] - 12:16,
12:24
 **held** [1] - 26:2
 **help** [2] - 7:6, 11:1
 **helpful** [1] - 43:23
 **HERA** [49] - 21:11,
24:5, 24:12, 36:22,
37:8, 38:23, 42:22,
43:1, 43:3, 43:4,
43:19, 44:5, 44:13,
44:14, 45:10, 45:14,
45:19, 46:24, 46:25,
47:10, 48:1, 48:2,
49:7, 49:23, 50:12,
50:18, 50:23, 50:25,
51:3, 51:6, 51:11,
51:13, 51:14, 51:16,
51:17, 51:21, 51:22,
52:1, 52:2, 52:3, 52:4,
52:11, 52:18, 52:21,
52:23, 54:1, 54:3
 **hereby** [1] - 56:3
 **hesitate** [1] - 30:3
 **Hoffman** [6] - 38:21,
39:1, 40:25, 50:2,
50:4, 51:1
 **HOFFMAN** [14] - 2:6,
39:1, 41:21, 42:2,
42:8, 42:11, 42:14,
42:17, 49:24, 50:4,
51:1, 52:17, 52:25,
55:1
 **holders** [4] - 18:18,
18:20, 18:22, 32:4
 **holdings** [1] - 25:14
 **honest** [1] - 30:5

 **Honor** [45] - 34:23,
35:2, 35:4, 36:16,
36:17, 38:4, 38:8,
38:9, 38:12, 38:17,
39:1, 39:9, 41:21,
42:8, 42:14, 42:18,
42:23, 42:25, 43:11,
43:15, 43:23, 44:10,
45:12, 45:25, 46:4,
47:4, 47:5, 47:13,
47:15, 47:21, 49:15,
49:18, 49:19, 50:4,
50:6, 50:19, 50:21,
50:24, 51:1, 52:7,
52:17, 52:25, 53:7,
55:1, 55:3
 **HONORABLE** [1] -
1:13
 **hopefully** [3] - 33:3,
33:13, 33:18
 **hostility** [1] - 14:10
 **Housing** [4] - 21:10,
24:5, 37:24, 44:5
 **HOUSING** [1] - 1:6
 **housing** [1] - 6:20
 **Hume** [7] - 37:6,
39:16, 41:23, 44:15,
47:5, 47:16, 53:7
 **HUME** [1] - 1:19,
36:17, 37:6, 37:18,
39:15, 40:24, 41:1,
41:5, 41:13, 47:5,
47:13, 47:21, 47:25,
49:3, 49:15, 49:20,
49:22, 49:25, 50:2,
51:22, 53:7
 **hypothetical** [2] -
24:22, 24:24

## I

 **Ian** [3] - 39:1, 50:4,
51:1
 **IAN** [1] - 2:6
 **identified** [1] - 16:20
 **identifies** [1] - 48:16
 **identity** [1] - 14:18
 **ignore** [3] - 5:3, 12:7,
29:9
 **ii)** [1] - 44:15
 **imaginary** [1] - 24:22
 **immediate** [1] - 31:1
 **impartial** [1] - 11:15
 **impartially** [1] -
34:10
 **implausibility** [1] -
14:13
 **implicitly** [1] - 44:19
 **implied** [14] - 19:25,

20:4, 21:14, 21:15,
21:20, 22:9, 22:25,
23:4, 23:15, 24:15,
25:19, 25:23, 26:9,
26:20
 **important** [3] -
12:18, 29:9, 30:10
 **IN** [1] - 1:10
 **inaccurate** [1] - 13:5
 **INC** [1] - 1:3
 **included** [3] - 46:20,
50:10, 50:15
 **includes** [5] - 21:2,
39:6, 46:19, 48:19,
49:3
 **including** [5] - 6:19,
20:15, 21:13, 24:20,
43:16
 **incomplete** [1] - 48:1
 **inconsistency** [2] -
15:15, 16:3
 **inconsistent** [8] -
15:9, 15:12, 15:14,
15:18, 15:20, 15:23,
16:2, 16:5
 **inconvenience** [1] -
10:12
 **increases** [1] - 27:7
 **indeed** [1] - 16:16
 **indicate** [2] - 5:24,
13:13
 **indicated** [1] - 13:11
 **indication** [1] - 6:1
 **individual** [1] - 19:14
 **individuals** [3] -
18:10, 18:25, 20:9
 **indulgence** [1] -
38:13
 **infer** [2] - 6:4, 8:15
 **inference** [1] - 6:9
 **inferences** [1] - 5:14
 **influence** [1] - 6:16
 **inform** [1] - 21:11
 **information** [3] -
12:18, 24:24, 25:2
 **injuries** [1] - 27:20
 **injury** [1] - 28:24
 **instead** [1] - 24:22
 **instruct** [2] - 4:15,
6:9
 **instructed** [4] -
27:22, 35:7, 44:6,
46:7
 **instruction** [8] -
4:25, 29:10, 45:8,
45:18, 46:20, 47:2,
47:16, 47:18
 **Instructions** [1] - 3:3
 **instructions** [20] -
4:16, 4:23, 4:24, 5:1,

5:4, 5:21, 28:1, 29:8, 29:10, 29:11, 31:20, 32:12, 34:17, 35:16, 36:9, 43:22, 44:19, 47:7, 47:8

**instructs** [2] - 44:12, 46:24
**intended** [3] - 6:11, 6:13, 7:6
**intention** [1] - 39:23
**interest** [12] - 14:6, 28:7, 28:8, 28:10, 28:12, 28:20, 28:22, 29:2, 29:3, 32:25, 33:1, 44:18
**interests** [12] - 24:13, 43:20, 45:3, 45:7, 45:11, 45:15, 45:22, 46:2, 46:16, 46:17, 46:19, 47:1
**interpret** [1] - 46:7
**interpreted** [1] - 44:20
**introduced** [2] - 38:18, 38:19
**invade** [1] - 5:17
**invite** [1] - 29:16
**involved** [1] - 14:8
**issue** [9] - 5:21, 9:9, 9:10, 9:11, 9:13, 13:4, 16:11, 20:19, 51:3
**issues** [2] - 5:17, 16:21
**itself** [2] - 10:21, 40:23

**J**

**JESSICA** [1] - 1:21
**job** [1] - 46:7
**JONATHAN** [1] - 2:7
**Jonathan** [2] - 35:1, 42:24
**JONES** [1] - 2:8
**Joseph** [2] - 16:19, 18:5
**JUDGE** [1] - 1:14
**judged** [1] - 17:5
**judges** [8] - 5:11, 5:23, 6:23, 13:14, 13:18, 30:10, 44:10, 44:11
**judging** [3] - 13:21, 15:15, 16:4
**judgment** [4] - 13:25, 14:21, 17:21, 29:20
**judicial** [5] - 36:25, 37:12, 37:13, 48:4, 48:10

**junior** [9] - 18:16, 18:18, 28:5, 28:24, 29:2, 32:4, 32:5, 32:17, 32:18
**juries** [2] - 34:2, 35:23
**juror** [3] - 29:17, 29:21, 29:22
**Juror** [4] - 33:17, 33:18, 36:20
**jurors** [5] - 5:18, 29:25, 30:1, 30:4, 42:25
**jurors'** [1] - 30:7
**JURY** [2] - 1:12, 4:11
**Jury** [1] - 3:3
**jury** [53] - 4:5, 4:6, 4:7, 5:2, 5:10, 10:9, 11:3, 12:16, 12:24, 29:12, 30:18, 30:22, 31:2, 31:6, 31:9, 33:5, 33:12, 33:15, 33:20, 33:22, 33:25, 34:18, 35:18, 35:19, 36:13, 37:3, 39:11, 39:12, 40:10, 41:13, 41:16, 41:17, 41:18, 41:19, 43:18, 44:6, 46:1, 46:6, 46:23, 46:24, 47:17, 48:2, 48:8, 49:7, 51:16, 52:13, 53:11, 53:14, 53:15, 53:17, 53:18, 54:23
**jury's** [2] - 42:2, 46:9
**justice** [1] - 30:11
**justification** [1] - 22:6
**justified** [1] - 9:18

**K**

**KAPLAN** [1] - 1:20
**KAYE** [1] - 2:8
**keep** [3] - 12:18, 22:21, 24:19
**KENYA** [1] - 1:20
**KESSLER** [1] - 1:24
**key** [1] - 44:24
**KHALELAH** [1] - 1:20
**kind** [1] - 20:18
**kinds** [1] - 20:24
**King** [1] - 1:25
**KIRK** [1] - 1:17
**knock** [1] - 30:19
**knowledge** [1] - 16:23
**known** [2] - 23:12, 24:24

**Kravetz** [1] - 50:19
**KRAVETZ** [4] - 2:2, 49:18, 50:19, 50:24

**L**

**lacking** [1] - 22:6
**ladies** [2] - 4:10, 53:21
**LAMBERTH** [1] - 1:13
**language** [4] - 44:21, 45:7, 45:18, 46:19
**larger** [2] - 18:3, 50:11
**last** [1] - 44:3
**law** [24] - 4:16, 4:19, 4:21, 5:1, 5:7, 5:9, 8:19, 12:12, 12:20, 12:25, 15:17, 16:21, 19:13, 20:13, 20:15, 21:4, 21:8, 28:4, 28:12, 29:4, 44:12, 44:13, 46:23
**lawsuit** [1] - 18:2
**lawyers** [7] - 4:13, 7:5, 7:7, 10:22, 11:9, 31:7, 31:22
**learned** [1] - 44:15
**least** [4] - 41:13, 44:19, 46:6, 51:7
**leave** [2] - 34:4, 42:5
**leaves** [1] - 36:1
**LEE** [1] - 1:23
**left** [1] - 34:20
**legal** [4] - 4:21, 4:22, 18:4, 28:17
**legitimate** [1] - 28:18
**less** [6] - 8:18, 9:25, 15:11, 15:1, 23:22, 26:18
**lesser** [2] - 15:2, 19:11
**letter** [1] - 27:8
**letting** [1] - 31:8
**level** [2] - 39:22, 40:6
**liable** [2] - 20:2, 20:6
**light** [4] - 9:19, 12:14, 17:19, 22:2
**likely** [2] - 9:4, 9:9
**likewise** [1] - 5:3
**limit** [1] - 47:12
**lines** [1] - 40:17
**Lines** [1] - 40:19
**liquidation** [1] - 27:7
**Lisa** [1] - 56:12
**LISA** [5] - 2:10, 56:3
**litigants** [1] - 19:12
**litigate** [1] - 28:19

**LITIGATION** [1] - 1:11
**Litigations** [1] - 4:4
**LITOWITZ** [1] - 2:3
**LLP** [3] - 1:21, 1:24, 2:4
**logical** [1] - 8:12
**look** [4] - 8:5, 8:9, 45:13, 52:6
**loss** [2] - 26:21, 28:13
**LOUIS** [1] - 2:7
**luck** [1] - 36:11
**lunch** [2] - 34:2, 34:3

**M**

**MAC** [2] - 1:10, 2:7
**Mac** [20] - 4:3, 18:8, 18:19, 18:20, 19:17, 19:19, 20:4, 20:5, 20:8, 24:8, 25:15, 25:16, 28:5, 28:24, 32:2, 32:5, 32:18, 32:19, 49:12
**Mae** [19] - 18:8, 18:17, 18:23, 19:17, 19:18, 19:25, 20:2, 20:8, 24:8, 25:15, 29:2, 32:1, 32:4, 32:17, 49:12, 50:9, 50:12, 51:10, 51:14
**MAE** [1] - 2:6
**Mae's** [1] - 51:20
**MAE/FREDDIE** [1] - 1:10
**Mae/Freddie** [1] - 4:3
**maintain** [2] - 48:19, 49:5
**maker** [1] - 22:17
**manner** [2] - 22:19, 23:13
**Mason** [1] - 16:19
**Massachusetts** [1] - 2:9
**mathematical** [2] - 9:7, 27:1
**matter** [3] - 29:4, 30:21, 41:14
**matters** [5] - 4:21, 6:12, 13:24, 16:22, 29:6
**MBS** [1] - 39:7
**MBS-related** [1] - 39:7
**MC** [1] - 1:10
**mean** [5] - 5:24, 6:17, 14:25, 19:11, 47:15

**meaning** [1] - 21:19
**means** [4] - 8:24, 13:21, 26:24, 27:14
**measure** [3] - 26:23, 27:23, 28:1
**MELTZER** [1] - 1:24
**members** [5] - 5:10, 18:12, 19:3, 19:4, 30:18
**memory** [2] - 7:10, 41:9
**mentioned** [2] - 25:18, 40:14
**mere** [2] - 19:9, 27:1
**merely** [1] - 30:6
**merits** [1] - 6:6
**Michelle** [1] - 18:6
**might** [1] - 37:12
**Miller** [1] - 18:6
**mind** [3] - 9:4, 22:21, 24:19
**minute** [1] - 45:14
**minutes** [1] - 8:7
**Miscellaneous** [1] - 4:2
**misleading** [3] - 40:9, 40:21, 53:11
**misread** [2] - 34:22, 34:24
**moment** [1] - 38:9
**Monday** [7] - 34:7, 34:8, 53:24, 54:5, 54:14, 54:21, 54:22
**monetary** [2] - 27:14, 27:18
**money** [1] - 28:14
**morning** [7] - 4:10, 4:11, 8:2, 36:2, 40:19, 53:24, 54:14
**mortgage** [4] - 37:19, 39:22, 40:6, 41:10
**mortgage-backed** [4] - 37:19, 39:22, 40:6, 41:10
**motion** [1] - 52:9
**motion-to-dismiss** [1] - 52:9
**motive** [1] - 14:6, 17:16
**move** [1] - 39:9
**MR** [51] - 34:23, 35:1, 35:6, 36:16, 36:17, 37:6, 37:18, 38:8, 38:12, 38:17, 39:1, 39:15, 40:24, 41:1, 41:5, 41:13, 41:21, 42:2, 42:8, 42:11, 42:14, 42:17, 42:23, 43:7, 43:9, 43:11,

46:12, 46:14, 47:5,
47:13, 47:15, 47:21,
47:25, 49:3, 49:15,
49:18, 49:20, 49:22,
49:24, 49:25, 50:2,
50:4, 50:19, 50:24,
51:1, 51:22, 52:17,
52:25, 53:7, 55:1,
55:3
  **MUGLER** [1] - 1:21
  **Mukarram** [1] - 16:20
  **must** [29] - 4:21,
4:24, 5:19, 7:12, 8:25,
9:3, 9:10, 9:13, 10:4,
13:16, 14:16, 15:3,
22:11, 22:25, 23:17,
23:24, 24:2, 25:20,
26:5, 26:7, 27:2,
27:18, 29:7, 29:9,
29:20, 29:22, 30:4,
40:13
  **mutual** [1] - 29:16

## N

  **named** [1] - 18:11
  **national** [1] - 14:18
  **nature** [1] - 24:8
  **necessarily** [2] -
15:1, 16:15
  **necessary** [2] -
12:18, 30:16
  **need** [12] - 9:5,
26:25, 34:22, 34:24,
37:11, 37:12, 41:6,
43:13, 48:19, 49:4,
49:5, 49:9
  **needed** [1] - 40:4
  **needs** [1] - 36:9
  **negotiated** [1] -
20:20
  **net** [15] - 19:20,
19:22, 19:25, 20:3,
23:3, 23:9, 23:18,
25:23, 25:24, 26:2,
26:16, 26:22, 27:7,
32:3, 32:20
  **neutral** [1] - 30:9
  **never** [1] - 13:4
  **new** [2] - 21:17,
47:16
  **New** [4] - 1:18, 1:22,
2:5
  **nice** [3] - 8:3, 54:22,
54:25
  **nonexistence** [1] -
8:17
  **Northwest** [5] - 1:18,
1:22, 2:9, 2:12, 56:14

  **not-typical** [1] - 46:6
  **note** [19] - 14:10,
30:17, 30:19, 30:20,
30:22, 31:4, 31:5,
31:14, 31:15, 33:5,
33:9, 34:5, 36:20,
36:22, 38:20, 49:14,
53:21, 54:5, 54:13
  **noted** [1] - 53:12
  **notes** [2] - 7:13, 56:5
  **nothing** [3] - 6:16,
40:14, 47:4
  **notice** [5] - 36:25,
37:12, 37:13, 48:5,
48:10
  **notify** [1] - 39:12
  **number** [9] - 16:11,
16:12, 16:14, 33:19,
43:2, 52:22, 53:5,
54:2, 54:11
  **numbers** [5] - 25:16,
52:24, 53:3, 54:4,
54:9

## O

  **oath** [5] - 11:8,
15:20, 15:21, 15:24,
16:3
  **object** [8] - 12:4,
31:8, 41:15, 47:7,
47:23, 47:25, 53:10
  **objected** [3] - 12:22,
40:1, 47:16
  **objection** [7] - 12:6,
12:8, 34:21, 39:10,
40:2, 41:17, 47:9
  **objections** [1] -
53:12
  **objectively** [3] -
22:12, 22:15, 23:20
  **objectives** [1] -
22:17
  **obligation** [1] - 21:18
  **obligations** [1] -
22:17
  **observe** [1] - 14:3
  **observed** [1] - 13:23
  **occasion** [1] - 6:10
  **occurred** [3] - 26:4,
26:13, 28:25
  **odd** [1] - 46:5
  **OF** [2] - 1:1, 1:12
  **offered** [2] - 25:1,
40:16
  **offers** [1] - 12:4
  **Official** [1] - 2:11
  **official** [3] - 43:1,
43:3, 56:12

  **often** [1] - 7:25
  **once** [4] - 11:25,
12:2, 33:3, 54:20
  **one** [26] - 5:17, 6:7,
7:15, 8:16, 10:1,
10:14, 14:11, 15:11,
15:17, 18:3, 22:22,
23:18, 28:13, 30:18,
32:16, 35:4, 35:22,
35:24, 37:8, 37:12,
37:21, 37:23, 39:3,
53:4, 54:10
  **open** [2] - 33:6,
33:17
  **opening** [1] - 43:17
  **opinion** [20] - 5:6,
5:24, 6:6, 6:8, 6:18,
6:22, 13:13, 16:18,
16:22, 17:3, 17:4,
17:5, 17:6, 17:15,
17:20, 17:22, 17:24,
30:3, 30:14
  **opinions** [6] - 6:13,
16:25, 17:2, 17:14,
30:8
  **option** [1] - 22:22
  **orally** [1] - 33:6
  **order** [5] - 5:18,
10:11, 28:3, 29:21,
33:4
  **ordinarily** [1] - 46:8
  **ordinary** [1] - 17:13
  **orientation** [1] -
14:18
  **origin** [1] - 14:18
  **originally** [1] - 15:22
  **otherwise** [2] - 19:4,
30:22
  **ought** [1] - 5:7
  **outcome** [1] - 14:7
  **outside** [2] - 8:5, 8:9
  **outweighed** [1] -
17:3
  **overruled** [1] - 12:8
  **own** [6] - 5:19, 7:12,
7:18, 17:20, 20:17,
30:14
  **owned** [1] - 49:6

## P

  **P.M** [1] - 1:19
  **p.m** [3] - 53:19,
53:22, 54:24
  **pace** [1] - 34:10
  **package** [1] - 51:4
  **page** [5] - 37:23,
39:22, 44:3, 48:16,
48:21

  **Page** [11] - 3:3, 22:7,
24:1, 40:19, 43:22,
44:2, 47:2, 50:20,
51:25, 52:5
  **pages** [1] - 50:25
  **panel** [2] - 4:6,
35:18, 53:17
  **paragraph** [5] - 44:3,
48:18, 49:1, 49:9,
49:10
  **paraphrasing** [1] -
44:10
  **part** [23] - 6:13,
17:23, 23:3, 29:10,
42:11, 42:25, 43:24,
44:2, 44:22, 45:9,
46:7, 47:2, 49:7, 51:3,
51:11, 51:15, 51:19,
52:1, 52:3, 52:10,
52:12
  **partially** [1] - 17:4
  **particular** [3] -
16:11, 51:18, 52:5
  **parties** [15] - 4:14,
7:4, 10:3, 10:7, 14:12,
16:20, 19:9, 20:20,
21:7, 25:1, 28:17,
28:19, 34:15, 43:4,
51:17
  **parties'** [4] - 21:19,
22:12, 22:15, 23:10
  **parts** [2] - 43:4, 51:4
  **party** [17] - 6:17,
6:25, 8:23, 9:3, 9:5,
9:16, 9:22, 9:24, 11:9,
13:9, 19:14, 21:20,
21:23, 22:19, 26:9,
27:24
  **pass** [2] - 5:11, 46:12
  **passed** [1] - 31:16
  **Pennsylvania** [1] -
1:25
  **people** [3] - 18:4,
36:6
  **per** [1] - 28:8
  **percent** [1] - 28:8
  **percentage** [1] -
25:16
  **perform** [1] - 6:24
  **permit** [1] - 17:19
  **permitted** [1] - 9:17
  **person** [2] - 8:8, 11:7
  **persons** [1] - 14:8
  **pertinent** [4] - 43:24,
44:2, 44:14, 44:22
  **Peter** [1] - 37:23
  **phrase** [1] - 43:21
  **pick** [1] - 36:4
  **piece** [2] - 39:10,
51:14

  **pieces** [1] - 12:1
  **place** [3] - 10:10,
26:11, 32:7
  **placed** [1] - 11:8
  **plaintiff** [1] - 22:24
  **Plaintiff** [1] - 25:18
  **Plaintiffs** [43] - 1:4,
6:2, 8:24, 9:9, 9:10,
9:12, 11:24, 18:3,
18:5, 18:24, 19:1,
19:4, 19:5, 20:16,
22:9, 23:2, 23:17,
24:21, 25:10, 25:11,
25:13, 25:14, 25:22,
26:6, 26:8, 26:14,
26:20, 26:23, 26:25,
27:20, 27:25, 28:6,
28:13, 28:15, 31:25,
32:15, 37:6, 38:7,
39:8, 39:16, 47:6,
50:10, 53:8
  **PLAINTIFFS** [3] -
1:17, 1:20, 2:2
  **Plaintiffs'** [11] -
21:13, 23:8, 23:21,
23:23, 24:4, 24:17,
39:5, 41:24, 43:25,
44:1, 51:18
  **plastic** [1] - 12:15
  **plausibility** [1] -
14:12
  **played** [1] - 11:21
  **PLLC** [1] - 1:17
  **point** [5] - 4:15,
16:15, 31:9, 41:5,
47:22
  **pointed** [1] - 37:12
  **poll** [1] - 33:15
  **polling** [3] - 33:14,
33:20, 33:25
  **PORTER** [1] - 2:8
  **portion** [8] - 5:3,
37:8, 42:6, 42:9,
51:20, 53:5, 54:12
  **portions** [5] - 11:22,
47:10, 52:18, 52:23,
54:3
  **posed** [1] - 54:18
  **position** [4] - 26:12,
40:9, 48:4, 51:18
  **possess** [1] - 16:22
  **possibility** [1] - 23:6
  **PowerPoint** [1] -
13:3
  **precise** [1] - 51:25
  **precisely** [1] - 39:19
  **preface** [1] - 43:15
  **prefatory** [2] - 43:21,
47:2
  **preference** [1] - 27:8

**preferred** [14] - 18:16, 18:17, 18:18, 18:19, 24:6, 25:15, 28:5, 28:24, 29:2, 32:4, 32:5, 32:17, 32:18
**Preferred** [1] - 4:3
**PREFERRED** [1] - 1:10
**prejudgment** [7] - 28:7, 28:9, 28:11, 28:20, 29:1, 32:24, 33:1
**prejudice** [2] - 6:25, 12:21
**prepared** [1] - 10:17
**preponderance** [6] - 8:25, 9:22, 23:17, 26:3, 31:25, 32:16
**present** [7] - 7:20, 11:10, 35:8, 35:24, 36:5, 36:6, 36:10
**presentation** [3] - 13:3, 13:7, 43:16
**presented** [5] - 10:7, 10:14, 11:13, 11:25, 12:20
**presenting** [2] - 12:1, 16:14
**preside** [2] - 4:18, 29:14
**pretrial** [1] - 13:8
**prevent** [1] - 27:15
**previously** [1] - 15:7
**primarily** [2] - 51:7, 51:8
**principal** [1] - 43:19
**principle** [1] - 4:23
**printout** [1] - 48:12
**private** [3] - 23:13, 48:20, 49:6
**privately** [2] - 38:11, 38:16
**procedure** [1] - 31:18
**Proceedings** [1] - 55:4
**proceedings** [8] - 4:8, 34:19, 35:20, 36:14, 36:19, 53:19, 54:24, 56:6
**process** [1] - 13:8
**produce** [1] - 13:9
**produced** [5] - 9:22, 9:24, 10:1, 13:4, 56:6
**produces** [1] - 9:3
**Professors** [1] - 16:19
**promote** [1] - 29:18
**proof** [6] - 7:24, 8:24,

9:6, 9:16, 10:20, 10:25
**proper** [1] - 27:23
**properly** [3] - 7:15, 12:5, 12:20
**proposal** [1] - 52:15
**propose** [2] - 38:4, 42:19
**proposing** [1] - 38:6
**protect** [1] - 48:23
**prove** [14] - 7:24, 8:25, 9:5, 9:9, 9:12, 16:15, 16:17, 23:17, 25:20, 26:22, 26:25, 27:2, 31:25, 32:15
**proved** [2] - 7:20, 10:5
**proven** [2] - 6:3, 9:18
**provide** [1] - 27:19
**province** [2] - 5:18, 46:9
**proving** [2] - 8:24, 26:23
**provision** [13] - 45:13, 48:2, 48:8, 48:12, 49:19, 49:25, 50:9, 50:11, 50:15, 50:24, 51:25, 52:5, 52:7
**Prussia** [1] - 1:25
**PSPAs** [4] - 23:4, 24:6, 25:3, 27:9
**public** [12] - 24:9, 24:13, 43:20, 45:5, 45:8, 45:11, 45:15, 45:23, 46:3, 46:17, 46:20, 47:1
**punish** [1] - 27:15
**punitive** [1] - 27:13
**Purchase** [1] - 4:3
**purchase** [1] - 24:6
**PURCHASE** [1] - 1:10
**purchased** [1] - 26:15
**purchases** [4] - 37:20, 39:23, 40:6, 41:10
**purchasing** [1] - 20:21
**purpose** [2] - 21:19, 30:13
**purposes** [1] - 12:17
**PX** [1] - 43:6
**PX-388-A** [5] - 39:5, 39:17, 40:10, 53:5, 54:11

**Q**

**quality** [1] - 16:13
**quantity** [1] - 16:14
**quarter** [2] - 39:24, 39:25
**questioned** [1] - 37:9
**questions** [13] - 6:10, 6:11, 7:7, 11:10, 11:11, 17:12, 31:21, 33:4, 38:4, 38:7, 52:14, 54:17
**quote** [1] - 45:1
**quoting** [1] - 45:1

**R**

**race** [1] - 14:17
**Radnor** [1] - 1:25
**raining** [2] - 8:10, 8:13
**rate** [1] - 28:7
**rather** [3] - 20:21, 21:18, 47:3
**RDR** [3] - 2:10, 56:3, 56:12
**RE** [1] - 1:10
**Re** [1] - 4:2
**reach** [2] - 29:25, 31:9
**reached** [2] - 31:11, 31:14
**reaching** [1] - 7:15
**read** [8] - 11:13, 11:21, 33:11, 33:17, 40:16, 42:19, 46:21, 53:16
**read-back** [2] - 40:16, 42:19
**reading** [1] - 34:21
**reads** [2] - 44:13, 44:14
**ready** [3] - 38:25, 53:15, 54:13
**realm** [1] - 46:8
**reason** [4] - 8:15, 17:21, 22:5, 51:22
**reasonable** [20] - 5:14, 8:12, 9:6, 9:18, 22:12, 22:14, 22:15, 23:10, 23:20, 23:23, 23:25, 24:17, 24:23, 24:25, 25:5, 26:24, 27:3, 32:3, 43:25, 44:2
**reasonably** [4] - 21:23, 22:19, 22:22, 23:13

**reasons** [4] - 17:2, 17:15, 17:23, 17:25
**recalled** [1] - 13:23
**receive** [3] - 14:22, 23:7, 28:15
**received** [2] - 40:23, 41:16
**receiver** [1] - 44:16
**receiving** [1] - 28:14
**recess** [3] - 34:13, 36:12, 36:18
**recollect** [1] - 14:3
**recollection** [2] - 5:20, 7:12
**reconvene** [3] - 30:24, 33:10, 34:6
**record** [7] - 41:22, 50:2, 50:20, 52:18, 53:10, 53:13, 54:17
**records** [1] - 11:10
**recover** [1] - 26:20
**Recovery** [3] - 21:11, 24:5, 44:5
**recross** [1] - 13:6
**recross-examination** [1] - 13:6
**redirect** [1] - 13:6
**refer** [4] - 45:7, 46:1, 47:17, 51:13
**reference** [1] - 37:1
**referenced** [1] - 52:12
**references** [1] - 37:22
**referred** [3] - 51:6, 51:7, 51:17
**referring** [1] - 51:8
**refers** [2] - 46:16, 49:8
**reflect** [1] - 11:4
**regard** [2] - 22:1, 25:7
**regarding** [2] - 27:4, 29:17
**regardless** [2] - 5:6, 9:22
**regular** [1] - 36:9
**regulated** [7] - 21:5, 44:18, 45:2, 45:3, 45:21, 45:22, 46:16
**rehabilitate** [2] - 45:2, 45:21
**reject** [2] - 17:22, 43:18
**related** [3] - 4:2, 13:3, 39:7
**relating** [1] - 37:19
**relationships** [1] - 21:9
**relative** [1] - 16:10

**relevant** [3] - 4:19, 6:8, 51:22
**reliable** [1] - 10:21
**religious** [1] - 14:17
**rely** [4] - 5:19, 7:12, 9:20, 27:1
**remember** [3] - 7:10, 30:9, 35:6
**remind** [1] - 46:23
**render** [3] - 6:14, 6:22, 34:11
**repeated** [1] - 27:16
**repeats** [1] - 31:21
**report** [17] - 39:4, 39:6, 39:8, 39:11, 39:12, 39:18, 40:3, 41:6, 42:3, 42:5, 42:6, 42:9, 42:12, 53:4, 53:6, 54:10, 54:12
**REPORTED** [1] - 2:10
**reporter** [1] - 11:10
**Reporter** [2] - 2:11, 56:12
**reports** [11] - 37:4, 37:15, 37:22, 37:25, 38:3, 38:22, 39:3, 39:21, 40:14, 53:2, 54:8
**reports-to-Congress** [1] - 38:22
**represent** [4] - 10:11, 10:13, 18:13, 29:20
**representatives** [2] - 18:7, 18:11
**request** [5] - 12:12, 33:15, 43:11, 47:17, 49:13
**required** [1] - 13:10
**requires** [1] - 28:12
**resolve** [2] - 5:12, 17:10
**respect** [6] - 6:20, 15:17, 26:7, 29:16, 43:12, 44:24
**respective** [1] - 18:13
**respond** [7] - 23:9, 30:24, 31:4, 31:5, 33:5, 33:8, 38:20
**responded** [1] - 22:17
**responding** [1] - 23:11
**response** [7] - 31:1, 43:12, 49:14, 52:14, 53:23, 53:24
**responsibility** [1] - 12:19

**responsive** [1] - 42:20
**rests** [1] - 18:1
**result** [3] - 23:21, 26:16, 32:19
**results** [1] - 19:6
**resume** [1] - 54:21
**retire** [4] - 5:2, 29:12, 31:13, 33:22
**return** [4] - 29:21, 30:7, 32:13, 54:15
**reveal** [1] - 30:21
**reviewing** [1] - 15:3
**rigged** [1] - 12:14
**rights** [3] - 25:25, 26:16, 26:18
**Road** [1] - 1:25
**Robert** [1] - 50:19
**ROBERT** [1] - 2:2
**role** [2] - 19:19, 32:1
**romanette** [2] - 44:15, 49:4
**Room** [1] - 2:13
**room** [6] - 5:2, 10:9, 11:3, 29:12, 33:22, 36:1
**ROYCE** [1] - 1:13
**RUDY** [1] - 1:23
**rule** [3] - 5:6, 8:19, 35:24
**ruled** [1] - 42:18
**ruling** [2] - 12:25, 53:9
**rulings** [3] - 5:25, 12:12, 13:11

## S

**SAMUEL** [1] - 1:20
**Satriano** [2] - 13:1, 13:6
**save** [1] - 10:11
**saw** [1] - 31:21
**scenario** [1] - 46:6
**schedule** [2] - 34:4, 34:9
**SCHILLER** [1] - 1:21
**SCHOLER** [1] - 2:8
**scope** [2] - 20:11, 20:12
**screen** [1] - 39:21
**seated** [3] - 4:9, 35:21, 53:20
**second** [12] - 20:24, 25:3, 32:10, 37:15, 39:24, 39:25, 44:3, 45:25, 48:16, 48:21, 53:1, 54:7
**secretary** [3] - 48:17,

48:23, 49:11
**section** [1] - 44:17
**sections** [2] - 11:23, 11:24
**securities** [2] - 41:10, 49:12
**security** [3] - 37:19, 39:22, 40:6
**see** [5] - 8:9, 34:12, 41:12, 49:10, 54:22
**seek** [1] - 27:2
**select** [1] - 29:13
**selecting** [1] - 29:15
**self** [1] - 33:3
**self-explanatory** [1] - 33:3
**send** [8] - 30:17, 31:13, 31:20, 34:14, 34:16, 35:16, 37:2, 53:23
**sending** [2] - 10:8, 11:2
**SENIOR** [2] - 1:10, 1:14
**Senior** [1] - 4:3
**senior** [1] - 24:5
**sense** [4] - 8:16, 9:19, 17:21, 20:21
**senses** [1] - 7:18
**sentence** [5] - 44:3, 45:9, 45:18, 46:22, 47:3
**separately** [2] - 18:25, 26:7
**seriously** [2] - 30:1, 30:2
**serves** [2] - 45:5, 45:23
**set** [2] - 34:4, 51:19
**several** [1] - 20:18
**sexual** [1] - 14:18
**shall** [1] - 48:24
**shareholder** [12] - 20:17, 20:19, 20:25, 21:6, 21:12, 21:13, 23:20, 24:20, 24:23, 24:25, 48:20, 49:6
**shareholder's** [1] - 21:1
**shareholder-owned** [1] - 49:6
**shareholders** [14] - 18:9, 18:16, 20:15, 20:22, 21:10, 23:6, 23:13, 27:12, 28:5, 28:25, 29:2, 32:17, 32:18, 32:19
**shareholders'** [2] - 23:19, 25:5
**shares** [12] - 23:8,

23:21, 24:4, 25:15, 25:16, 25:17, 26:1, 26:2, 26:15, 26:17, 26:21
**shining** [1] - 8:3
**shoes** [1] - 19:19
**short** [1] - 40:17
**show** [6] - 9:3, 12:21, 22:25, 34:15, 39:24, 40:5
**showed** [1] - 31:22
**shown** [10] - 10:22, 11:5, 37:9, 48:2, 48:8, 49:7, 49:8, 50:13, 52:13
**shows** [1] - 51:24
**sic** [1] - 32:9
**side** [13] - 6:7, 10:1, 12:3, 12:4, 16:12, 16:13, 33:14, 35:25, 36:6, 36:10, 41:7
**sidebar** [3] - 12:13, 12:15, 12:17
**sidebars** [1] - 12:13
**sign** [4] - 31:12, 32:12, 54:14, 55:2
**signed** [2] - 30:17, 31:14
**significant** [1] - 16:23
**similarly** [2] - 7:7, 20:2
**simple** [1] - 7:25
**simply** [1] - 47:17
**single** [4] - 4:25, 16:16, 20:25, 29:9
**sitting** [1] - 8:6
**six** [1] - 49:3
**sole** [4] - 5:10, 5:23, 13:14, 13:18
**solely** [3] - 18:1, 27:19, 30:7
**solid** [1] - 22:2
**someone** [1] - 8:6
**sometimes** [1] - 26:13
**somewhere** [1] - 50:16
**sorry** [7] - 34:23, 35:22, 36:12, 38:8, 42:8, 45:10, 49:17
**sort** [1] - 34:9
**sound** [1] - 17:2
**soundness** [1] - 17:14
**source** [1] - 45:8
**specific** [1] - 21:7
**specifically** [2] - 14:10, 46:1
**speculation** [2] -

9:20, 27:2
**spelled** [1] - 21:16
**split** [1] - 39:21
**spokesperson** [1] - 29:14
**sponsored** [3] - 19:8, 19:10, 24:9
**stand** [1] - 14:3
**standard** [2] - 9:6, 36:9
**STANTON** [1] - 2:8
**state** [2] - 4:23, 5:6
**statement** [14] - 13:2, 13:5, 15:13, 15:19, 15:20, 15:21, 15:23, 16:1, 16:2, 16:6, 16:7, 16:9, 43:17, 46:1
**statements** [9] - 7:5, 15:8, 15:10, 15:17, 20:11, 20:14, 24:10, 25:2
**STATES** [2] - 1:1, 1:14
**States** [5] - 2:11, 50:11, 51:4, 51:8, 56:13
**stating** [1] - 5:1
**status** [2] - 48:19, 49:5
**statute** [8] - 36:23, 36:24, 37:2, 44:8, 45:13, 46:8, 46:12, 51:11
**statutory** [2] - 24:14, 45:6
**stenographic** [1] - 56:5
**steps** [1] - 19:19
**STERN** [16] - 2:7, 34:23, 35:1, 35:6, 36:16, 38:8, 38:12, 38:17, 42:23, 43:7, 43:9, 43:11, 46:12, 46:14, 47:15, 55:3
**Stern** [3] - 35:1, 42:24, 45:14
**still** [1] - 24:14
**stipulate** [1] - 10:4
**stipulated** [2] - 7:4, 10:4
**stipulation** [1] - 10:2
**stock** [11] - 18:17, 18:18, 18:20, 18:23, 20:17, 20:22, 21:2, 24:6, 32:5, 32:6
**Stock** [1] - 4:3
**STOCK** [1] - 1:10
**stop** [2] - 36:1, 36:2
**stopping** [1] - 36:4

**subject** [2] - 37:7, 41:14
**subjectively** [1] - 24:21
**submit** [1] - 37:11
**Subparagraph** [1] - 48:7
**subsection** [1] - 48:15
**Subsection** [1] - 48:15
**substantial** [1] - 22:2
**substitute** [1] - 17:20
**suffered** [2] - 27:3, 32:23
**sufficient** [1] - 17:1
**suggest** [4] - 6:13, 6:16, 6:18, 40:21
**suggesting** [2] - 13:2, 27:24
**suggestion** [1] - 13:9
**summaries** [6] - 10:8, 10:10, 10:15, 10:18, 10:23, 10:24
**summarized** [1] - 10:20
**summarizing** [1] - 39:22
**summary** [5] - 10:17, 11:3, 11:6, 37:20, 37:21
**sun** [1] - 8:3
**support** [3] - 17:24, 30:14, 40:22
**supported** [2] - 14:15, 22:2
**supporting** [1] - 17:2
**supposed** [1] - 26:15
**Supreme** [4] - 44:20, 44:21, 44:22, 46:18
**surrender** [1] - 30:5
**sustained** [7] - 12:6, 27:21, 28:13, 32:19, 39:9, 40:2, 47:9
**swears** [1] - 11:8
**sweep** [15] - 19:21, 19:22, 19:25, 20:3, 23:3, 23:9, 23:18, 25:23, 25:24, 26:2, 26:16, 26:22, 27:7, 32:3, 32:20
**sworn** [2] - 5:8, 7:2

## T

**talks** [2] - 46:15, 52:8
**tax** [1] - 13:3
**taxpayers** [1] - 48:23
**telephone** [1] - 12:14

**temporary** [1] - 49:11
**tenders** [1] - 48:14
**tends** [1] - 7:23
**tenets** [1] - 21:17
**terms** [7] - 20:22, 20:23, 21:6, 21:16, 24:4, 44:4, 44:7
**testified** [2] - 13:22, 13:24
**testifies** [2] - 7:17, 16:5
**testify** [2] - 10:18, 11:18
**testifying** [2] - 16:12, 17:16
**testimony** [35] - 4:19, 5:13, 7:2, 7:13, 7:16, 10:19, 11:7, 11:12, 11:14, 11:16, 11:17, 12:4, 13:17, 14:13, 14:14, 14:20, 14:23, 15:1, 15:4, 15:9, 15:12, 15:14, 15:18, 16:16, 16:18, 16:22, 17:5, 17:9, 17:17, 17:20, 17:22, 40:11, 40:17, 41:14, 48:9
**text** [13] - 24:3, 36:22, 38:2, 43:1, 43:3, 44:13, 44:14, 44:15, 50:17, 52:4, 52:21, 54:1
**Thakor** [1] - 16:19
**THE** [61] - 1:1, 1:13, 1:17, 1:19, 2:2, 2:6, 4:1, 4:5, 4:6, 4:9, 4:11, 4:12, 34:20, 34:24, 35:5, 35:9, 35:11, 35:13, 35:18, 35:21, 36:15, 36:20, 37:17, 38:6, 38:10, 38:15, 40:23, 40:25, 41:2, 41:3, 41:4, 41:12, 41:15, 42:1, 42:6, 42:10, 42:13, 42:15, 42:21, 43:6, 43:8, 43:10, 46:10, 46:13, 47:9, 47:14, 47:19, 47:23, 49:2, 49:13, 49:17, 49:21, 50:1, 50:17, 50:23, 52:20, 53:1, 53:12, 53:17, 53:20, 54:25
**theme** [1] - 43:19
**themselves** [1] - 10:25
**thereby** [4] - 21:22, 23:7, 26:1, 32:3

**therefore** [2] - 30:13, 41:8
**Thereupon** [1] - 36:18
**they've** [2] - 40:10, 51:19
**third** [4] - 21:6, 23:3, 27:6, 27:11
**three** [2] - 18:8, 32:11
**throughout** [1] - 51:6
**Timothy** [1] - 18:6
**today** [1] - 54:19
**together** [3] - 11:25, 18:5, 54:21
**top** [1] - 22:7
**TOPAZ** [1] - 1:24
**touched** [1] - 7:18
**touching** [1] - 31:2
**toward** [1] - 14:11
**towards** [1] - 14:7
**traditional** [1] - 20:21
**training** [2] - 16:23, 17:1
**TRANSCRIPT** [1] - 1:12
**transcript** [5] - 11:13, 40:18, 56:5, 56:6
**transferred** [2] - 27:5, 27:10
**Treasury** [9] - 23:4, 23:6, 24:7, 27:5, 27:11, 48:17, 48:24, 49:11, 52:8
**Treasury's** [1] - 27:7
**treat** [3] - 10:5, 12:9, 29:9
**treats** [1] - 15:17
**trial** [15] - 4:18, 6:1, 6:5, 7:13, 11:8, 11:12, 11:19, 15:9, 15:12, 19:2, 19:6, 27:4, 28:25, 40:15, 51:6
**TRIAL** [1] - 1:12
**true** [7] - 9:5, 9:9, 15:22, 16:1, 56:4, 56:5
**truth** [5] - 11:9, 14:6, 16:6, 16:8, 16:17
**truthfully** [1] - 13:22
**trying** [1] - 47:7
**turned** [1] - 13:7
**two** [10] - 7:14, 19:7, 20:7, 23:21, 24:7, 28:12, 37:4, 37:22, 38:3, 38:7
**type** [2] - 7:15, 7:22
**types** [2] - 7:14,

20:19
**typical** [3] - 18:12, 44:23, 46:6

## U

**ultimately** [1] - 14:20
**umbrella** [2] - 8:7, 8:8
**unable** [1] - 41:8
**unanimous** [4] - 29:22, 29:25, 33:21, 33:23
**unconscious** [1] - 14:16
**under** [21] - 4:19, 11:8, 12:20, 15:20, 15:21, 15:23, 16:3, 20:13, 20:15, 21:4, 22:12, 22:16, 22:23, 23:20, 23:24, 24:18, 25:5, 27:6, 27:8, 28:4, 32:12
**underlying** [2] - 10:11, 10:20
**United** [4] - 50:11, 51:4, 51:8, 56:13
**united** [1] - 2:11
**UNITED** [2] - 1:1, 1:14
**unless** [6] - 13:12, 19:4, 31:3, 35:8, 35:23, 36:5
**unlike** [1] - 20:24
**unnecessary** [2] - 10:12, 42:19
**unreasonable** [2] - 22:3, 22:11
**unreasonably** [5] - 21:22, 23:19, 24:17, 25:7, 32:2
**unsound** [1] - 17:24
**unsworn** [1] - 15:25
**up** [16] - 12:14, 26:17, 29:17, 36:5, 39:24, 39:25, 40:7, 40:11, 41:10, 43:22, 45:19, 46:12, 48:13, 50:10, 50:15, 51:19
**USC** [3] - 44:14, 48:6

## V

**valuable** [2] - 23:22, 26:18
**value** [6] - 8:18, 23:8, 26:1, 26:21, 27:5, 27:10
**various** [3] - 11:20,

16:21, 51:4
**VARMA** [1] - 2:6
**verdict** [36] - 5:8, 5:25, 6:14, 6:22, 7:15, 9:14, 25:9, 25:10, 27:24, 29:20, 29:21, 29:23, 29:25, 30:7, 30:12, 31:10, 31:11, 31:12, 31:15, 31:16, 31:19, 31:20, 31:21, 31:23, 31:24, 32:12, 33:10, 33:11, 33:12, 33:17, 33:22, 33:24, 34:11, 35:16
**version** [4] - 31:22, 34:25, 36:25, 37:2
**via** [1] - 11:21
**video** [1] - 11:21
**videotape** [1] - 11:14
**view** [2] - 5:9, 34:15
**views** [4] - 6:1, 29:17, 30:1, 30:2
**VINCENT** [1] - 1:17
**violate** [1] - 5:8
**violated** [3] - 23:19, 24:14, 24:17
**violates** [1] - 21:20
**violating** [1] - 32:3
**violation** [2] - 22:9, 22:24
**Virginia** [2] - 28:4, 28:12
**virtue** [1] - 7:17
**voluminous** [1] - 10:13
**vs** [1] - 1:5

## W

**wait** [1] - 45:13
**walked** [1] - 8:6
**warn** [1] - 27:16
**Washington** [6] - 1:6, 1:18, 1:22, 2:9, 2:13, 56:14
**ways** [1] - 20:18
**weekend** [3] - 53:25, 54:22, 54:25
**weigh** [2] - 13:16, 28:12
**weight** [15] - 5:16, 8:20, 8:22, 9:25, 11:16, 13:13, 13:15, 14:21, 15:2, 15:5, 16:10, 17:8, 17:18, 30:6
**wet** [2] - 8:7, 8:8
**whole** [5] - 5:2, 17:23, 29:8, 49:10,

51:22
**WIERZBOWSKI** [1] - 2:2
**wisdom** [1] - 5:6
**wishes** [1] - 42:4
**witness** [29] - 6:6, 7:17, 10:17, 11:8, 11:17, 13:20, 13:22, 13:23, 13:24, 14:1, 14:2, 14:5, 14:9, 14:11, 14:13, 14:21, 14:24, 15:3, 15:7, 15:16, 15:22, 15:25, 16:5, 16:16, 17:23, 17:25, 37:20, 37:21
**witness's** [13] - 12:9, 13:21, 14:2, 14:3, 14:14, 14:17, 15:9, 15:12, 15:14, 16:4, 16:7, 17:15, 17:20
**witnesses** [19] - 5:12, 6:11, 6:14, 6:15, 6:18, 7:3, 10:22, 11:20, 13:15, 13:17, 13:18, 16:12, 16:15, 16:21, 16:22, 17:10, 17:11, 17:13, 17:18
**witnesses'** [1] - 16:24
**wording** [2] - 46:10, 46:14
**words** [1] - 13:19
**works** [3] - 31:18, 33:9, 34:1
**worried** [2] - 46:10, 46:14
**worth** [15] - 19:20, 19:22, 19:25, 20:3, 23:3, 23:9, 23:18, 25:23, 25:24, 26:2, 26:16, 26:22, 27:7, 32:3, 32:20
**WR** [5] - 18:24, 19:3, 19:5, 25:10, 25:13
**write** [1] - 45:19
**writing** [3] - 30:24, 31:5, 33:5
**written** [3] - 34:16, 53:23, 54:5

## Y

**y'all** [1] - 34:4
**year** [1] - 28:8
**York** [3] - 1:22, 2:5
**yourself** [1] - 30:5