**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BERKLEY INSURANCE CO., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL HOUSING FINANCE AGENCY, *et al.*, <br><br> Defendants. | Case No. 1:13-cv-1053-RCL |
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations <br><br> _____ <br><br> This document relates to: <br> ALL CASES | Case No. 1:13-mc-1288-RCL |

**DEFENDANTS' MOTION FOR DENIAL OF PREJUDGMENT INTEREST**
**FOR FANNIE MAE PREFERRED CLASS AND BERKLEY PLAINTIFFS**

Defendants Federal Housing Finance Agency ("FHFA" or "Conservator"), as Conservator for the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac," and together with Fannie Mae, the "Enterprises"), and the Enterprises hereby move for an order entering judgment for the Fannie Mae Preferred Class and Berkley Plaintiffs ("Fannie Preferred Class"), pursuant to the jury's verdict on August 14, 2023, without adding any prejudgment interest, for the reasons set forth in the accompanying Memorandum in Support.  A proposed order is being filed with this motion.

Dated: August 15, 2023                         Respectfully submitted,

                                               */s/ Asim Varma*
                                               Asim Varma (D.C. Bar # 426364)
                                               Jonathan L. Stern (D.C. Bar # 375713)
                                               David B. Bergman (D.C. Bar # 435392)
                                               Ian S. Hoffman (D.C. Bar # 983419)
                                               R. Stanton Jones (D.C. Bar # 987088)
                                               ARNOLD & PORTER KAYE SCHOLER LLP
                                               601 Massachusetts Ave. NW
                                               Washington, DC 20001
                                               Tel.: (202) 942-5000
                                               Fax: (202) 942-5999
                                               Asim.Varma@arnoldporter.com
                                               Jonathan.Stern@arnoldporter.com
                                               David.Bergman@arnoldporter.com
                                               Ian.Hoffman@arnoldporter.com
                                               Stanton.Jones@arnoldporter.com

                                               *Attorneys for Defendant Federal Housing
                                               Finance Agency*

/s/ Michael J. Ciatti
Michael J. Ciatti (D.C. Bar #467177)
KING & SPALDING LLP
1700 Pennsylvania Ave. NW
Washington, DC 20006
Tel: (202) 661-7828
Fax: (202) 626-3737
mciatti@kslaw.com

*Attorney for the Federal Home Loan
Mortgage Corp.*

/s/ Meaghan VerGow
Meaghan VerGow (D.C. Bar # 977165)
O'MELVENY & MYERS LLP
1625 Eye St. NW
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
mvergow@omm.com

*Attorney for the Federal National Mortgage
Association*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FAIRHOLME FUNDS, INC., *et al.*, | |
| Plaintiffs, | |
| v. | Civil No. 13-1053 (RCL) |
| FEDERAL HOUSING FINANCE AGENCY, *et al.*, | |
| Defendants. | |
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations | |
| _____ | Miscellaneous No. 13-1288 (RCL) |
| This document relates to: ALL CASES | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR DENIAL OF PREJUDGMENT INTEREST FOR FANNIE MAE PREFERRED CLASS AND <u>BERKLEY PLAINTIFFS</u>**

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARD .................................................................................................... 3

ARGUMENT ................................................................................................................. 4

    I.    An Award of Prejudgment Interest to the Holders of Fannie Junior
        Preferred Shares Would Not Promote the Purposes of Prejudgment
        Interest Under Delaware Law ........................................................................ 4

        A.    Under Plaintiffs' Measure of Harm, Fannie Shareholders Did Not
              Lose the "Use" of the Funds the Jury Awarded as Damages ................... 4

        B.    Because Defendants Did Not "Retain" Any Money the Jury
              Awarded as Damages, There Is No "Benefit" That Must Be
              Relinquished .......................................................................................... 7

        C.    Defendants Could Not Have "Readily Ascertained" the Damages
              Owed To the Fannie Junior Preferred Shareholders ................................. 8

    II.    Alternatively, If the Court Were to Determine Prejudgment Interest Is
        Warranted, Simple Interest Should be Used to Calculate the Award ................. 11

CONCLUSION ............................................................................................................. 12

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*APEX Fin. Options, LLC v. Gilbertson*,
   No. CV 19-0046-WCB-SRF, 2022 WL 4119759 (D. Del. Sept. 9, 2022) .............................. 11

*Bell Atl.-Delaware, Inc./Verizon Delaware, Inc. v. Saporito*,
   922 A.2d 414 (Del. 2007) ............................................................................................... 3

*Blackwell v. McElwee-Courbis*,
   No. CIV. A.83C-AU-20, 1989 WL 112586 (Del. Super. Ct. Sept. 22, 1989) ........................... 3

*Brandin v. Gotlieb*,
   No. CIV. A. 14819, 2000 WL 1005954 (Del. Ch. July 13, 2000) .......................................... 11

*Brandywine Smyrna, Inc. v. Millennium Builders, LLC*,
   34 A.3d 482 (Del. 2011) ................................................................................. 3, 4, 5, 7, 8

*Brookfield Asset Mgmt., Inc. v. Rosson*,
   261 A.3d 1251 (Del. 2021) ............................................................................................. 5

*Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC*,
   859 A.2d 989 (Del. 2004) ............................................................................................. 12

*Canyon Country Store v. Bracey*,
   781 P.2d 414 (Utah 1989) ............................................................................................. 8

*Chrysler Corp. (Delaware) v. Chaplake Holdings, Ltd.*,
   822 A.2d 1024 (Del. 2003) ............................................................................................. 3

*Citadel Holding Corp. v. Roven*,
   603 A.2d 818 (Del. 1992) .......................................................................................... 3, 4

*CleanOne Commc'ns v. Chiang*,
   432 F. App'x 770 (10th Cir. 2011) .................................................................................. 6

*Continental Ins. Co. v. City of Virginia Beach*,
   908 F. Supp. 341 (E.D. Va. 1995) .................................................................................. 9

*Easaw v. Newport*,
   253 F. Supp. 3d 22 (D.D.C. 2017) ................................................................................. 12

*Erie R.R. Co. v. Tompkins*,
   304 U.S. 64 (1938) ...................................................................................................... 12

ii

*Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*,
    No. 1:13-CV-1053-RCL, 2022 WL 4745970 (D.D.C. Oct. 3, 2022) ...................................... 4, 5

*Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*,
    No. CV 13-1053 (RCL), 2018 WL 4680197 (D.D.C. Sept. 28, 2018)....................................... 3

*Fresh Del Monte Produce N.V. v. Eastbrook Caribe A.V.V.*,
    836 N.Y.S.2d 160 (N.Y. App. Div. 2007) ............................................................................... 5

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
    817 A.2d 160 (Del. 2002) ..................................................................................................... 11

*Heritage Disposal & Storage, L.L.C. v. VSE Corp.*,
    1:15-cv-1484, 2017 WL 361547 (E.D. Va. Jan. 24, 2017)....................................................... 9

*Hewitt v. Hutter*,
    432 F. Supp. 795 (W.D. Va. 1977) *aff'd*, 574 F.2d 182 (4th Cir. 1978) ................................... 9

*Ivan Allen Co. v. United States*,
    422 U.S. 617 (1975)............................................................................................................... 6

*Kokins v. Teleflex, Inc.*,
    621 F.3d 1290 (10th Cir. 2010) ........................................................................................... 12

*Kunstek v. Alpha-X Corp.*,
    No. CIV.A.80C-MY-121, 1986 WL 5875 (Del. Super. Ct. May 15, 1986)............................. 8

*Lum v. Nationwide Mut. Ins. Co.*,
    No. C.A. 78C-MY-55, 1982 WL 1585 (Del. Super. Ct. Apr. 27, 1982), *aff'd sub*
    *nom. Lum, Lum, Lum v. Nationwide Mut. Ins. Co.,* 461 A.2d 693 (Del. 1983)......... 2, 3, 8 9, 11

*Moore Bros. Co. v. Brown & Root, Inc.*,
    207 F.3d 717 (4th Cir. 2000) ................................................................................................. 9

*Morgan v. Carpenter*,
    No. C.A. 9324-ML, 2014 WL 7192476 (Del. Ch. Dec. 18, 2014)........................................... 12

*Moskowitz v. Mayor & Council of Wilmington*,
    391 A.2d 209 (Del. 1978) ....................................................................................................... 4

*Murphy Marine Services of Del., Inc. v. GT USA Wilmington, LLC*,
    No. CV 2018-0664-LWW, 2022 WL 4296495 (Del. Ch. Sept. 19, 2022).............................. 11

*Nutt v. GAF Corp.*,
    No. CIV.A. 80C-FE-8, 1987 WL 12419 (Del. Super. Ct. May 21, 1987)............................. 8-9

*Pro Axess, Inc. v. Orlux Distrib., Inc.*,
    428 F.3d 1270 (10th Cir. 2005) .............................................................................................. 6

*Rexnord Indus., LLC v. RHI Holdings, Inc.*,
  No. CIV.A. 07C-10-057RRC, 2009 WL 377180 (Del. Super. Ct. Feb. 13, 2009).................. 11

*Reybold Venture Grp. XI-A, LLC v. Atl. Meridian Crossing, LLC*,
  No. CIV.A. 08C-02-0481 R, 2009 WL 143107 (Del. Super. Ct. Jan. 20, 2009)..................... 12

*S.E.C. v. Sargent*,
  329 F.3d 34 (1st Cir. 2003)................................................................................................. 7

*Summa Corp. v. Trans World Airlines, Inc.*,
  540 A.2d 403 (Del. 1988) ................................................................................................. 11

*Tech. & Supply Mgmt., LLC v. Johnson Controls Bldg. Automation Sys., LLC*,
  1:16-cv-303, 2017 WL 3219281 (E.D. Va. July 28, 2017) ....................................... 9

*Wells Fargo Equip. Fin., Inc. v. State Farm Fire & Cas. Co.*,
  823 F. Supp. 2d 364 (E.D. Va. 2011) .............................................................5-6, 9

**Statutes**

Del. Code Ann. Tit. 6, § 2301 (West) ...................................................................... 2, 11, 12

# INTRODUCTION

Just as the jury declined to award prejudgment interest to Plaintiffs with respect to the Freddie junior preferred and common shareholders' damages, the Court should not award prejudgment interest on the damages awarded to Fannie junior preferred shareholders.[1]  In Delaware as in Virginia, the principles that guide the decision whether to award prejudgment interest uniformly disfavor such an award in this case.

Under Delaware law, a court may award prejudgment interest on damages in a breach of contract case to compensate plaintiffs for the lost use of their money and to force defendants to relinquish the benefits they received from retaining that money in the interim.  Neither of those objectives would be served here.  Plaintiffs' damages theory was based on the drop in the value of Fannie junior preferred shares on August 17, 2012, and under that theory the current holders of Fannie junior preferred shares have not lost the "use" of any money at all.  At most, *some* holders—individuals who have held their shares continuously since before the Third Amendment— experienced a drop in share value as a result of the Third Amendment.  But any such losses are unrealized, and thus do not amount to the lost "use" of funds that prejudgment interest is designed to remedy.  Under Delaware law, as under Virginia law pursuant to which the jury declined to award prejudgment interest, the fact that Plaintiffs were not deprived of money they were entitled to receive disfavors prejudgment interest.  Moreover, the drop in the price of Fannie junior preferred shares on August 17, 2012 is not a benefit that Defendants have enjoyed (or could have relinquished).  That "benefit," such as it is, has been enjoyed by other investors in

---

[1] Because the Berkley Plaintiffs' damages follow the damages awarded to the Fannie Preferred Class, this motion equally applies to all Plaintiffs' damages.

the shares—including members of the Class who purchased their shares after the Third

Amendment at a lower price.

Those considerations alone require denial of prejudgment interest.  But Delaware

imposes an additional insurmountable limitation.  In Delaware, prejudgment interest may be

awarded only when damages are so readily ascertainable that the defendant could have simply

opted to pay the plaintiff immediately, before any litigation.  *Lum v. Nationwide Mut. Ins. Co.*,

No. C.A. 78C-MY-55, 1982 WL 1585, at *5 (Del. Super. Ct. Apr. 27, 1982), *aff'd sub nom.*

*Lum, Lum, Lum v. Nationwide Mut. Ins. Co., 461 A.2d 693 (Del. 1983)).  This principle parallels

Virginia law—in which the jury must weigh the existence of a bona fide legal dispute—under

which this jury declined to award prejudgment interest.  The proper measure of damages in this

case was hotly contested, and the damages theory Plaintiffs ultimately asserted against all

Defendants was identified only shortly before the last trial.  It was similarly unknown before

rulings in this litigation which shareholders were alleged to have been injured—current holders

of shares, or the holders of shares at the time of the Third Amendment.  And the jury ultimately

determined that Plaintiffs' damages were lower than they had claimed.  Defendants therefore

could not have known before the litigation how much to pay as "damages," or to whom.  This

further consideration likewise requires the denial of prejudgment interest here.

If the Court were to determine that a prejudgment interest award to Fannie junior

preferred shareholders is warranted, then it would be appropriate to award only simple interest at

a rate of 5% over the Federal Reserve discount rate at the time from which interest is due.  Del.

Code Ann. Tit. 6, § 2301 (West).  Delaware courts of law favor simple interest over compound

interest, particularly for pure contract claims, and there would be no basis for the Court to depart

from that practice here.  For the reasons discussed within, however, no award of prejudgment

interest is appropriate at all in this case, and thus Defendants respectfully move the Court to enter judgment without it.

## LEGAL STANDARD

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing against Fannie Mae is governed by Delaware law.  Class ECF No. 188 at 7 (citing *Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*, No. CV 13-1053 (RCL), 2018 WL 4680197, at *2 (D.D.C. Sept. 28, 2018)).  While prejudgment interest is typically awarded "as a matter of right," *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 826 (Del. 1992), Delaware law specifies that an award of prejudgment interest serves two purposes: "first, it compensates the plaintiff for the loss of the use of his or her money; and second, it forces the defendant to relinquish any benefit that it has received by retaining the plaintiff's money in the interim."  *Brandywine Smyrna, Inc. v. Millennium Builders, LLC*, 34 A.3d 482, 486 (Del. 2011).

Consistent with those purposes, Delaware courts have carved out certain exceptions to the availability of prejudgment interest.  As relevant here, prejudgment interest is awarded only where "the amount of damages owed by the defendant is so readily ascertainable . . . that the defendant could have opted to simply pay the plaintiff immediately, rather than force him or her to obtain judicial relief through litigation." *Lum*, 1982 WL 1585, at *5.[2]  Where prejudgment interest is deemed appropriate, the general rule is that it "accumulates from the date payment was

---

[2] Delaware Courts have also recognized other situations, not applicable here, in which prejudgment interest may be subject to limitation.  *See, e.g.*, *Bell Atl.-Del., Inc./Verizon Del., Inc. v. Saporito*, 922 A.2d 414, at *3 (Del. 2007) (affirming trial court decision to disallow prejudgment interest where plaintiff caused "substantial delay"); *Blackwell v. McElwee-Courbis*, No. CIV.A. 83C-AU-20, 1989 WL 112586, at *1 (Del. Super. Ct. Sept. 22, 1989) ("[P]re-judgment interest is not permissible in cases of emotional distress or bodily injury."); *cf. Chrysler Corp. (Del.) v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1037 (Del. 2003) (recognizing that a party must "affirmatively request" prejudgment interest in pleadings or at trial).

due the plaintiff," *Moskowitz v. Mayor & Council of Wilmington*, 391 A.2d 209, 210 (Del. 1978),

which is "ordinarily a question of law," *Citadel Holding Corp.*, 603 A.2d at 826.

## ARGUMENT

I.     **An Award of Prejudgment Interest to the Holders of Fannie Junior Preferred
       Shares Would Not Promote the Purposes of Prejudgment Interest Under Delaware
       Law**

The Court should not increase the jury's $299.4 million damages award to the Fannie

junior preferred shareholders by adding prejudgment interest.  The principles underlying

prejudgment interest in Delaware are not implicated here, where holders of the Fannie junior

preferred shares have not been deprived the use of their funds and Fannie Mae has not received

any interim benefit from the funds that the jury's verdict now requires it to pay in damages.

Prejudgment interest would therefore result in an undue windfall to Plaintiffs.  The Court should

decline to award it.

A.     **Under Plaintiffs' Measure of Harm, Fannie Shareholders Did Not Lose the
       "Use" of the Funds the Jury Awarded as Damages**

The first purpose of prejudgment interest is to "compensate[] the plaintiff for the loss of

the use of his or her money."  *Brandywine Smyrna*, 34 A.3d at 486.  That purpose would not be

served by awarding Fannie junior preferred shareholders prejudgment interest, for multiple

reasons.

First, the alleged injury on which this case was tried was "whether the Third Amendment

and its elimination of possible future dividends harmed plaintiffs by depriving them of much of

the value of their shares."  *Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*, No. 1:13-CV-1053-

RCL, 2022 WL 4745970, at *11 (D.D.C. Oct. 3, 2022); *see* Pls.' Pretrial Statement at 8 (Class

ECF No. 321, Berkley ECF No. 332); Defs.' Pretrial Statement at 5 (Class ECF No. 318, Berkley

ECF No. 329).  As the Court previously recognized, the only measure of that harm that the

parties' expert disclosures permitted was the stock price drop immediately following the Third

Amendment. *Fairholme Funds*, 2022 WL 4745970, at *11. That was the sole damages theory

Plaintiffs' expert proffered at trial. Trial Tr. (7/28/2023, Morning Session) at 18:22–25; *see* Pls.'

Pretrial Statement at 13 (Class ECF No. 321, Berkley ECF No. 332).

While the stock drop was determined to be a permissible measure of damages on

Plaintiffs' lost value theory, it cannot similarly be the basis for prejudgment interest award. The

Plaintiff holders of Fannie Mae junior preferred shares, *see* Class ECF No. 139 at 1, fall into two

groups: (1) the continuous shareholders, who held their shares before the Third Amendment, and

(2) new shareholders, who purchased their shares after the Third Amendment. At a fundamental

level, the drop in share value deprived neither group of the "use" of its money as required by

Delaware law. *See Brandywine Smyrna*, 34 A.3d at 486.

Continuous shareholders' funds remain locked up in shares they hold to this day. Any

stock price fluctuations did not impact the amount of money continuous shareholders had in their

pockets. They were not deprived of the "use" of their money because they chose to continue to

hold their shares—thus, any "loss" they experienced was, and remains, unrealized. *Cf.*

*Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1259 (Del. 2021) (an increase in the

share price of a stock represented an "unrealized profit" for the entity holding the stock); *see,*

*e.g.*, *Fresh Del Monte Produce N.V. v. Eastbrook Caribe A.V.V.*, 836 N.Y.S.2d 160, 164–65

(N.Y. App. Div. 2007) (finding in a breach of contract case that the phrase "decline in value"

should not encompass unrealized losses because it could result in a "windfall award of 'damages'

where none have been sustained"). The decision to hold a tradeable security does not constitute

a deprivation of the "use" of funds that prejudgment interest is meant to cure. *See Brandywine*

*Smyrna*, 34 A.3d at 486; *accord Wells Fargo Equip. Fin., Inc. v. State Farm Fire & Cas. Co.*,

823 F. Supp. 2d 364, 366 & n.1 (E.D. Va. 2011) (explaining in deciding whether to award prejudgment interest, the factfinder must weigh two competing rationales and the rationale that supports granting prejudgment interest "is a notion that the party, denied use of money to which it is rightfully entitled, should be compensated for that loss, and full compensation includes interest").[3]

The same can be said (and then some) of new shareholders, many of whom bought their shares at the depressed prices of August 17, 2012. *See* Trial Tr. (7/27/2023, Afternoon Session) at 65:20–66:1 (Q: "What is the significance in – to you of the article observing that Fannie and Freddie's stock fell on heavy trading?"  A: "The significance to me is that there were a lot of traders involved in establishing the price movement this day.  So this wasn't driven by just a few large traders or something like that.").  Prejudgment interest would constitute a substantial windfall to those individuals, who in many cases have enjoyed unrealized *gains* in their investment.  To be sure, on the flip side are those individuals who sold their shares that day at a loss.[4]  But those individuals are excluded from the Fannie Preferred Class, and while the Court

---

[3] Equating a reduction in share price to a loss of the "use" of funds upon which prejudgment interest may be calculated would be incongruous with the treatment of unrealized gains in other contexts.  *See, e.g.*, *Ivan Allen Co. v. United States*, 422 U.S. 617, 620 (1975) (finding that an increase in the price of a security is "unrealized for federal income tax purposes"); *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1283–84 (10th Cir. 2005) (affirming a denial of prejudgment interest in breach of contract case on mathematically uncertain "unrealized gross profits" damages that plaintiff did not precisely plead); *CleanOne Commc'ns v. Chiang*, 432 F. App'x 770, 774–75 (10th Cir. 2011) (affirming denial of prejudgment interest on uncertain future "lost profits").

[4] Notably, not all individuals who sold their shares in the wake of the Third Amendment suffered trading losses.  For example, on August 17, 2012, Fannie junior preferred shares were trading *above* where they were on the date of the Second Amendment, when shareholder expectations were set for purposes of Plaintiffs' implied covenant claim, and on the first trading day thereafter.  *See* PX-0497-2 (reflecting market capitalization of Fannie junior preferred shares of $565 million on 12/24/09, $655 million on 12/28/09, and $690 million on 8/17/12).

has held that their claims traveled with the outgoing shares,[5] the post-Third Amendment purchasers who bought those discounted shares were not deprived of any value, let alone the "use" of any funds. That the post-Third Amendment purchasers are now entitled to damages does not obviate the prerequisite for prejudgment interest that they have suffered a "loss of the *use* of [their] money." *Brandywine Smyrna*, 34 A.3d at 486 (emphasis added). Not a single holder of Fannie junior preferred shares lost the "use" of money here, making an award of prejudgment interest inappropriate.

### B. Because Defendants Did Not "Retain" Any Money the Jury Awarded as Damages, There Is No "Benefit" That Must Be Relinquished

The second purpose of prejudgment interest is to "force[] the defendant to relinquish any benefit that it has received by retaining the plaintiff's money in the interim." *Id*. at 486. That objective is inapplicable here.

Unlike a traditional breach of contract case where the breaching party may retain funds or goods of value, Defendants' alleged breach of the implied covenant of good faith and fair dealing did not result in their receiving or retaining any Fannie Preferred Class members' funds. The funds at issue are the one-day drop in stock price in the secondary market of Fannie preferred shares following the Third Amendment. Defendants received no benefit from that stock drop— they did not somehow control or hold the delta between the share price on August 16, 2012 and August 17, 2012 in their coffers. *See, e.g.*, *S.E.C. v. Sargent*, 329 F.3d 34, 40–41 (1st Cir. 2003) (finding it proper to decline prejudgment interest where a person did not profit from the challenged action or have access to any of the "ill-gotten profits"). To the contrary, only

---

[5] Defendants incorporate by reference, and expressly preserve, their prior arguments pursuant to Fed. R. Civ. P. 50(a) that Plaintiffs' stock-price-drop claims do not travel with the shares. *See* Trial Tr. (8/1/2023, Afternoon Session) at 77:4–87:17; Trial Tr. (8/9/2023, Morning Session) at 93:18–21; Trial Tr. (8/10/2023, Morning Session) at 3:6–11; *see also* Defs' Mot. For a Judgment as a Matter of Law (Oct. 31, 2022) (Class ECF No. 248, Berkley ECF No. 239).

shareholders could have benefited from the stock drop, and only a certain kind: the post-Third

Amendment buyers, who bought their shares at the depressed prices on August 17, 2012.

Because Defendants received no benefit from the stock drop nor retained any funds, they

experienced no "benefit" that prejudgment interest would "force [them] to relinquish."

*Brandywine Smyrna*, 34 A.3d at 486.

### C.    Defendants Could Not Have "Readily Ascertained" the Damages Owed To the Fannie Junior Preferred Shareholders

Prejudgment interest is also inappropriate unless the amount of damages owed to the

plaintiff was "so readily ascertainable" that defendant could have simply paid the defendant

immediately, as opposed to requiring the plaintiff to obtain relief through the legal process.  *Lum*,

1982 WL 1585, at *5.  In *Lum*, estate administrators sought to recover no-fault and uninsured

motorist benefits, as well as prejudgment interest, from the decedent's insurance carrier.  *Id*. at

*1, *5.  The compensation the estate ultimately recovered encompassed the decedent's lost

future earnings.  *Id.* at *3.  The Superior Court agreed with the insurance company that

prejudgment interest would be improper in such circumstances:

> Pre-judgment interest should only be awarded in those cases in which the amount
> of damages owed by the defendant is so readily ascertainable-as it is, for example,
> in many contractual disputes-that the defendant could have opted to simply pay the
> plaintiff immediately, rather than force him or her to obtain judicial relief through
> litigation. *It would be unfair, however, and contrary to the reason for awarding
> interest, to compel a defendant to pay pre-judgment interest on an obligation whose
> amount could not reasonably have been determined prior to the judgment.*
> *Id.* at *5 (emphasis added).

The court thus declined to award prejudgment interest, given that the insurance company could

"not have reasonably been expected to ascertain the extent of its obligations to plaintiffs" based

on a complex projected future earnings analysis.  *Id.*; *accord Kunstek v. Alpha-X Corp.*, No.

CIV.A.80C-MY-121, 1986 WL 5875, at *1 (Del. Super. Ct. May 15, 1986); *see also Nutt v. GAF

Corp.*, No. CIV.A. 80C-FE-8, 1987 WL 12419, at *1 (Del. Super. Ct. May 21, 1987) (concluding

"prejudgment interest is not allowed" in cases involving complex computations of economic loss

relating to death).[6]  This principle aligns with the rule of Virginia law requiring juries to

consider whether the parties had a bona fide legal dispute.  *See Wells Fargo Equip. Fin., Inc.*,

823 F. Supp. 2d at 366–67.[7]

Prejudgment interest is inappropriate here as it was in *Lum*.  There is nothing in the

record supporting the notion that Defendants could have determined what, if anything, was owed

to the Fannie junior preferred shareholders on August 17, 2012.  *Lum*, 1982 WL 1585, at *5.

Needless to say, the legal issues in this case were extraordinarily complex and evolved over time;

neither the identities of those who were potentially harmed under Plaintiffs' legal theories, nor

the amount of damages they were claiming, nor the amount of damages they would ultimately be

---

[6] Delaware is not unique in this respect.  In Utah the purpose of prejudgment interest—like in Delaware—is to "compensate a plaintiff for actual loss or to prevent a defendant's unjust enrichment."  *Canyon Country Store v. Bracey*, 781 P.2d 414, 422 (Utah 1989).  Under that framework, Utah courts do not award prejudgment interest where the amount of loss is not "ascertainable with mathematical accuracy."  *See id.* (finding prejudgment interest inappropriate on speculative "lost profits" calculation by jury, where there was "no unjust gain by the [defendants]" and there was a significant "amount of uncertainty involved in determining an actual loss").

[7] *See also Moore Bros. Co. v. Brown & Root, Inc*., 207 F.3d 717, 727 (4th Cir. 2000) (affirming denial of prejudgment interest where "legitimate controversy existed" in contractual dispute); *Continental Ins. Co. v. City of Virginia Beach*, 908 F. Supp. 341, 349 (E.D. Va. 1995) (denying prejudgment interest in a breach-of-contract case because "the problems arose over the interpretation of a contract, prejudgment interest is high, and both parties acted in good faith"); *Hewitt v. Hutter*, 432 F. Supp. 795, 800 (W.D. Va. 1977) (denying prejudgment interest where "the court was required to resolve some difficult issues regarding the validity of a contract," and "the arguments advanced by the defendants were not entirely without merit"), *aff'd*, 574 F.2d 182 (4th Cir. 1978); *Tech. & Supply Mgmt., LLC v. Johnson Controls Bldg. Automation Sys., LLC*, 1:16-cv-303, 2017 WL 3219281, at *20 (E.D. Va. July 28, 2017) (denying prejudgment interest where successful contract claim "was subject to a substantial and bona fide dispute"); *Heritage Disposal & Storage, L.L.C. v. VSE Corp.*, 1:15-cv-1484, 2017 WL 361547, at *14 (E.D. Va. Jan. 24, 2017) (denying prejudgment interest where successful contract claim "was the subject to a good faith dispute").

awarded, were ascertainable when the suit was filed in 2013 (much less when the Third

Amendment was executed in 2012).

The theory and amount of damages Plaintiffs proffered at trial were unknown (and were

hotly contested in pre-trial proceedings) until the Court's summary judgment decision on

September 23, 2022, which limited Plaintiffs to a fraction of the damages they had been

pursuing—a decision Plaintiffs repeatedly and unsuccessfully tried to unwind in the months that

followed.  *See* Mem. Op. (6/2/2023) at 3–4 (Class ECF No. 298, Berkley ECF No. 310).[8]  And

the proposed definition of the Fannie Preferred Class was likewise unknown until late in the

litigation, rendering any immediate payment to as-yet-undefined Class members virtually

impossible.  *Compare* Am. Class Compl. (Class ECF No. 4), ¶ 117 (pleading class allegations on

behalf of "all persons and entities who *held* shares of Fannie Mae Preferred Stock and who were

damaged thereby" (emphasis added)), *with* Second Am. Class Compl. (Class ECF No. 71) ¶ 98

(pleading class allegations in February 2018 on behalf of "all persons and entities who held

shares of Fannie Mae Preferred Stock on August 17, 2012 and who were damaged thereby, and

their successors in interest (meaning *current shareholders*)" (emphasis added)), *and* Order (Class

ECF No. 139), at 1 (certifying class in December 2021 of "current holders of junior preferred

stock in Fannie Mae as of the date of certification, or their successors in interest to the extent

shares are sold after the date of certification and before any final judgment or settlement").  The

jury's ultimate damages award only reinforces that the legal process here was necessary to

determine what Plaintiffs' actual damages were.

---

[8] At trial, even Dr. Mason acknowledged that the event study on which his damages calculation was based did not distinguish between the Net Worth Sweep—the sole component of the Third Amendment that Plaintiffs challenged at trial—and the accelerated reduction of the Enterprises' retained mortgage portfolios.  *See* Trial Tr. (7/27/2023, Afternoon Session) at 95:1–96:8.

It would run counter to the purposes of prejudgment interest to require Defendants, who could not have immediately ascertained following the Third Amendment what they owed and to whom, to pay a substantial sum of prejudgment interest.  *See Lum*, 1982 WL 1585, at *5.

## II.   Alternatively, If the Court Were to Determine Prejudgment Interest Is Warranted, Simple Interest Should be Used to Calculate the Award

"Delaware courts have traditionally disfavored compound interest," *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 173 (Del. 2002), and recognize that "simple interest is appropriate for a pure contract claim," *Rexnord Indus., LLC v. RHI Holdings, Inc.*, No. CIV.A. 07C-10-057RRC, 2009 WL 377180, at *10 (Del. Super. Ct. Feb. 13, 2009). Accordingly, any award of prejudgment interest here would have to be awarded as simple interest, not compound.

In Delaware, courts "generally look[] to the legal rate of interest, as set forth in 6 Del. C. § 2301, as the 'benchmark' for the appropriate rate of pre- and post-judgment interest." *Murphy Marine Services of Del., Inc. v. GT USA Wilmington, LLC*, No. CV 2018-0664-LWW, 2022 WL 4296495, at *24 (Del. Ch. Sept. 19, 2022) (citing *Summa Corp. v. Trans World Airlines, Inc.*, 540 A.2d 403, 409 (Del. 1988)).  That statute has "long been construed as providing for a simple interest calculation." *Rexnord Indus.*, 2009 WL 377180, at *9–10 (quoting *Brandin v. Gotlieb*, No. CIV. A. 14819, 2000 WL 1005954, at *29 (Del. Ch. July 13, 2000)).  Under Section 2301, "the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due."  Del. Code Ann. tit. 6, § 2301 (West). While courts of equity have broad discretion to fix the applicable interest rate, *Summa Corp.*, 540 A.2d at 409, a court of law may not deviate from Section 2301 and therefore may award only simple interest, *see APEX Fin. Options, LLC v. Gilbertson*, No. CV 19-0046-WCB-SRF, 2022 WL 4119759, at *2 (D. Del. Sept. 9, 2022) ("The statutory rate of interest governs unless the

11

court determines that a different rate is warranted by the equities." (quotation omitted)); *Reybold Venture Grp. XI-A, LLC v. Atl. Meridian Crossing, LLC*, No. CIV.A. 08C-02-0481 R, 2009 WL 143107, at *2 (Del. Super. Ct. Jan. 20, 2009) ("[T]his Court's jurisdiction lies in matters of law, as opposed to the Court of Chancery's jurisdiction, which lies in matters of equity").  A claim for breach of contract that seeks only monetary damages, such as Plaintiffs' implied covenant claim here, is "squarely within the jurisdiction of  [Delaware's] Superior Court," and is beyond the jurisdiction of Delaware's Court of Chancery.  *Morgan v. Carpenter*, No. C.A. 9324-ML, 2014 WL 7192476, at *4 (Del. Ch. Dec. 18, 2014) (citing *Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 998 (Del. 2004)).

Because federal courts are required to place themselves in the position of a court of the state whose law governs the dispute, this Court is bound by the availability of remedies as if the case had been brought in Delaware.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see, e.g.*, *Easaw v. Newport*, 253 F. Supp. 3d 22, 34 (D.D.C. 2017) ("'To properly discern the content of state law,' courts 'must defer to the most recent decisions of the state's highest court.'" (quoting *Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1295 (10th Cir. 2010))).  Standing in the Superior Court's shoes, if the Court awards prejudgment interest to the Fannie Preferred Class (and for the reasons stated above, it should not), such an award would be governed by Section 2301, and is therefore limited to simple interest at 5% over the Federal Reserve discount rate as of the date from which interest began to accrue.

## CONCLUSION

For the foregoing reasons, the Court should deny an award of prejudgment interest to the Fannie Preferred Class.  Alternatively, if the Court determines in its discretion that prejudgment interest for the Fannie Preferred Class is warranted, the Court should award simple interest at a

rate of 5% above the Federal Reserve discount rate that existed at the time the Court determines interest began to accrue.

Dated: August 15, 2023                    Respectfully submitted,

/s/ Asim Varma
Asim Varma (D.C. Bar # 426364)
Jonathan L. Stern (D.C. Bar # 375713)
David B. Bergman (D.C. Bar # 435392)
Ian S. Hoffman (D.C. Bar # 983419)
R. Stanton Jones (D.C. Bar # 987088)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Tel.: (202) 942-5000
Fax: (202) 942-5999
Asim.Varma@arnoldporter.com
Jonathan.Stern@arnoldporter.com
David.Bergman@arnoldporter.com
Ian.Hoffman@arnoldporter.com
Stanton.Jones@arnoldporter.com

*Attorneys for Defendant Federal Housing Finance Agency*

/s/ Michael J. Ciatti
Michael J. Ciatti (D.C. Bar #467177)
KING & SPALDING LLP
1700 Pennsylvania Ave. NW
Washington, DC 20006
Tel: (202) 661-7828
Fax: (202) 626-3737
mciatti@kslaw.com

*Attorney for the Federal Home Loan Mortgage Corp.*

/s/ Meaghan VerGow
Meaghan VerGow (D.C. Bar # 977165)
O'MELVENY & MYERS LLP
1625 Eye St. NW
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
mvergow@omm.com

*Attorney for the Federal National Mortgage Association*