## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BERKLEY INSURANCE CO., *et al.*,<br><br>                    Plaintiffs,<br><br>          v.<br><br>FEDERAL HOUSING FINANCE<br>AGENCY, *et al.*,<br><br>                    Defendants. | Case No. 1:13-cv-1053-RCL |
| In re Fannie Mae/Freddie Mac Senior<br>Preferred Stock Purchase Agreement Class<br>Action Litigations<br><br>_____<br><br>This document relates to:<br>ALL CASES | Case No. 1:13-mc-1288-RCL |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR DENIAL OF PREJUDGMENT INTEREST FOR FANNIE MAE PREFERRED CLASS AND BERKLEY PLAINTIFFS, AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR ENTRY OF JUDGMENT WITH PREJUDGMENT INTEREST

## TABLE OF CONTENTS

**Page**

**INTRODUCTION**.................................................................................................................... 1

**ARGUMENT** ........................................................................................................................... 2

I.     Prejudgment Interest Should Be Denied in the Unique Circumstances of This Case.................................................................................................................................... 2

II.    Alternatively, If Prejudgment Interest Were Awarded, the Court Would Have to Correct the Significant Methodological Errors in Plaintiffs' Calculations........................ 7

**CONCLUSION** ........................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Balooshi v. GVP Glob. Corp.*,
   C.A. No. N19C-10-215 CEB,  2022 WL 576819 (Del. Super. Ct. Feb. 25,
   2022) ................................................................................................................11

*Berkley Ins. Co. v. FHFA*,
   Nos. 13-cv-1053-RCL, 13-mc-1288-RCL, 2023 WL 3790739 (D.D.C. June 2,
   2023) ..................................................................................................................5

*Brandin v. Gottlieb*,
   No. CIV. A. 14819, 2000 WL 1005954 (Del. Ch. July 13, 2000) ...........................................10

*Brandywine Smyrna, Inc. v. Millennium Builders, LLC*,
   34 A.3d 482 (Del. 2011) .....................................................................................3, 4, 5

*CertiSign Holding, Inc. v. Kulikovsky*,
   No. CV 12055-VCS, 2018 WL 2938311 (Del. Ch. June 7, 2018) ...........................................10

*CIGNEX Datamatics, Inc. v. Lam Rsch. Corp.*,
   No. 17-cv-320, 2021 WL 212692 (D. Del. Jan. 21, 2021) ...........................................7, 9, 11

*Citadel Holding Corp. v. Roven*,
   603 A.2d 818 (Del. 1992) ......................................................................................11

*Fairholme Funds, Inc. v. FHFA*,
   Nos. 13-cv-1053-RCL, 13-mc-1288-RCL, 2022 WL 4745970 (D.D.C. Oct. 3,
   2022) ..................................................................................................................4

*Fairholme Funds, Inc. v. FHFA*,
   Nos. 13-cv-1053-RCL, 13-mc-1288-RCL, 2022 WL 11110548 (D.D.C. Oct.
   11, 2022) .............................................................................................................4

*Glidepath Ltd. v. Beumer Corp.*,
   C.A. No. 12220-VCL, 2019 WL 855660 (Del. Ch. Feb. 21, 2019) ...........................................8

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
   817 A.2d 160 (Del. 2002) ........................................................................................7

*GVP Glob. Corp. v. Balooshi*,
   285 A.3d 839 (Del. 2022) .......................................................................................11

*Hurd v. Hurd*,
   C.A. No. 4675-MG, 2018 WL 1470599 (Del. Ch. Mar. 26, 2018) ...........................................10

*Lamourine v. Mazda Motor of Am., Inc.*,
No. CIV.A.05C-08-236CLS, 2007 WL 3379328 (Del. Super. Ct. May 29,
2007), *aff'd*, 979 A.2d 1111 (Del. 2009) ........................................................................6

*Mannen v. Wilmington Tr. Co.*,
C.A. No. 8432–ML, 2015 WL 1914599 (Del. Ch. Apr. 24, 2015)........................................10

*Miller v. Trimont Global Real Estate Advisors LLC*,
587 F. Supp. 3d 170 (D. Del. 2022)........................................................................10

*Moose Agricultural LLC v. Layn USA, Inc.*,
No. 1:20-cv-02508, 2022 WL 18456164 (D. Colo. Nov. 7, 2022)....................................8, 10

*Moskowitz v. Mayor & Council of Wilmington*,
391 A.2d 209 (Del. 1978) ........................................................................11

*O'Leary v. eTechInvestments Ltd.*,
C.A. No. N15C- 03-106 MMJ, 2017 Del. Super. LEXIS 1143 (Del. Super. Ct.
May 25, 2017)........................................................................10

*ONTI, Inc. v. Integra Bank*,
751 A.2d 904 (Del. Ch. 1999)........................................................................8

*Partner Reinsurance Co. Ltd. v. RPM Mortg., Inc.*,
604 F. Supp. 3d 121 (S.D.N.Y. 2022)........................................................................9

*Permint v. Kia Motors Am., Inc.*,
No. CV N17C-02-236 VLM, 2022 WL 2443009 (Del. Super. Ct. June 23,
2022) ........................................................................6

*Polychain Cap. LP v. Pantera Venture Fund II LP*,
C.A. No. 2021-0670-PAF, 2022 WL 2467778 (Del. Ch. July 6, 2022) ................................10

*ReCor Med., Inc. v. Warnking*,
C.A. No. 7387-VCN, 2015 WL 535626 (Del. Ch. Jan. 30, 2015)........................................10

*Rexnord Indus., LLC v. RHI Holdings, Inc.*,
No. 07C-10-057 (RRC), 2009 WL 377180 (Del. Super. Ct. Feb. 13, 2009)........................7, 9

*Rollins Envtl. Servs., Inc. v. WSMW Indus., Inc.*,
426 A.2d 1363 (Del. Super. Ct. 1980) ........................................................................11

*Schneider Nat'l Carriers, Inc. v. Kuntz*,
C.A. No. N21C-10-157-PAF, 2022 WL 1222738 (Del. Super. Ct. Apr. 25,
2022) ........................................................................10

*Sugarland Indus., Inc. v. Thomas*,
420 A.2d 142 (Del. 1980) ........................................................................6

*Swier v. McLeod*,
    139 A.3d 844 (Del. 2016) ...................................................................................................6

*TranSched Sys. Ltd. v. Versyss Transit Sols., LLC*,
    C.A. No. 07C–08–286 WCC, 2012 WL 1415466 (Del. Super. Ct. Mar. 29,
    2012) ...................................................................................................................................11

*Valeant Pharms. Int'l v. Jerney*,
    921 A.2d 732 (Del. Ch. 2007) ...........................................................................................10

*Wells Fargo Equip. Fin., Inc. v. State Farm Fire & Cas. Co.*,
    823 F. Supp. 2d 364 (E.D. Va. 2011) ..................................................................................6

*Williams Cos. v. Energy Transfer LP*,
    C.A. No. 12168-VCG, 2022 WL 3650176 (Del. Ch. Aug. 25, 2022) ....................................8

**Statutes**

6 Del. C. § 2301 .....................................................................................................................2, 11

## INTRODUCTION

The Court should deny prejudgment interest to Fannie Mae junior preferred shareholders. Awarding prejudgment interest on damages related to a one-day decline of the market value of Fannie Mae shares in August 2012 would be contrary to the core purposes of prejudgment interest under Delaware law.  Plaintiffs' opposition and cross-motion fails to grapple with the particular nature of Plaintiffs' damages theory, which is based on unrealized losses from a one-day stock-price drop.  Plaintiffs accordingly fail to refute that an award of prejudgment interest would be squarely at odds with the requisite purposes to compensate a plaintiff for the lost use of its money and to force a defendant to relinquish the benefits it received from retaining that money in the interim.  Here, Fannie Mae junior preferred shareholders did not "lose" the "use" of the $299.4 million in damages awarded by the jury, and Defendants did not "retain" any "benefit" from that drop in share value.  Prejudgment interest is also unwarranted because the damages here were far from "readily ascertainable."  Indeed, Plaintiffs did not disclose the "lost-value" theory that they presented at trial until they served their expert Dr. Mason's reply report in March 2022—nearly ten years after the alleged breach—and even then, damages of $299.4 million were unknown.  Although Delaware courts commonly award prejudgment interest in ordinary breach-of-contract cases, this was not an ordinary case, and Plaintiffs' damages theory in no way resembled the sorts of damages theories in those other cases, where the purposes of prejudgment interest under Delaware law were clearly and directly served.  Under the unique circumstances of this case, prejudgment interest is inappropriate.

Alternatively, if prejudgment interest is awarded to Fannie Mae junior preferred shareholders, Plaintiffs' calculations do not comply with longstanding Delaware practice and vastly overstate the amount of prejudgment interest in two key respects.  First, Plaintiffs err in applying compound interest rather than simple interest.  The overwhelming weight of Delaware

authority has long construed the governing statute, 6 Del. C. § 2301, to provide for simple interest rather than compound interest, particularly in contract cases like this one.  According to Dr. Mason, applying simple interest alone reduces the claimed prejudgment interest from $277.9 million to $198.1 million.  *See* Mason Decl. ¶¶ 5-6, Class ECF No. 396-1.

Second, Plaintiffs also err in applying a variable interest rate rather than a fixed rate.  On its face, the governing statute fixes the rate of prejudgment interest "as of the time from which interest is due," 6 Del. C. § 2301, and Delaware courts have overwhelmingly construed this plain text to require fixing the rate as of the date prejudgment interest begins to accrue.  As set forth in the declaration of Defendants' expert Dr. Attari, applying a fixed rate of 5% plus the Effective Federal Funds Rate as of August 17, 2012 (which are the rate and accrual date used by Plaintiffs and Dr. Mason) further reduces the claimed prejudgment interest to $169.3 million.  *See* Decl. of Mukarram Attari, Ph.D., ¶ 4 (Sept. 6, 2023) ("Attari Decl.") (attached hereto as **Exhibit A**).

The Court should deny prejudgment interest to Fannie Mae junior preferred shareholders, or alternatively correct the errors in Plaintiffs' methodology and award simple prejudgment interest fixed at 5% above the Effective Federal Funds Rate as of the date on which interest began to accrue.

## ARGUMENT

## I.   Prejudgment Interest Should Be Denied in the Unique Circumstances of This Case

Fannie Mae junior preferred shareholders should not be awarded prejudgment interest because in this particular case such an award would be contrary to the well-settled purposes of prejudgment interest under Delaware law, and because the damages awarded by the jury were far from "readily ascertainable" at the time of the alleged breach.

Plaintiffs do not deny that, under Delaware law, prejudgment interest is designed to serve two purposes: "first, it compensates the plaintiff for the loss of the use of his or her money; and

second, it forces the defendant to relinquish any benefit that it has received by retaining the plaintiff's money in the interim." *Brandywine Smyrna, Inc. v. Millennium Builders, LLC*, 34 A.3d 482, 486 (Del. 2011).  An award of prejudgment interest on the jury's damages award here is neither necessary nor appropriate to serve those purposes, and Plaintiffs fail to show otherwise.

*First*, members of the Fannie Mae junior preferred class (and the Berkley Plaintiffs) have not been "deprived of the use of that $299.4 million for 11 years," as Plaintiffs wrongly contend. Pls.' Br. at 4.  Even assuming the jury accepted some part of Plaintiffs' damages theory, a shareholder's unrealized loss from a one-day decline in the market value of their Fannie Mae shares could not have been "used" by the shareholder in any sense of the word.  *See* Defs.' Br. at 4-7.  A prejudgment interest award is particularly inappropriate here because many class members purchased their shares *after* the Third Amendment and therefore already *benefitted* from the depressed stock price.  *Id.* at 6-7.

*Second*, other than repeating that the jury awarded damages of a sum certain, Plaintiffs do not and cannot identify how Defendants supposedly benefitted from retaining the damages amount.  Plaintiffs cite *Brandywine Smyrna*, Pls.' Br. at 4, in which a construction contractor failed to pay damages suffered by a car dealership related to property damage, loss of car sales, and loss of parts and service resulting from the contractor's conduct.  *Brandywine Smyrna*, 34 A.3d at 486.  In that case, the Delaware Supreme Court held that prejudgment interest was appropriate on damages awarded on the dealership's contract claims and on the interest expenses the dealership paid on money borrowed to repair the property damage, *id.* at 485-486, and rightly so: the defendant contractor's breach required the plaintiff dealership to reach into its own pockets to cover the damage.  In contrast, here, current Fannie junior preferred shareholders realized no out-of-pocket loss due to the one-day stock-price drop on August 17, 2012.  And

whereas the contractor in *Brandywine Smyrna* benefited from retaining the money it should have used to reimburse the dealership, Defendants' alleged breach of the implied covenant of good faith and fair dealing here did not result in their receiving or retaining any funds belonging to Fannie Mae shareholders.  Plaintiffs do not (because they cannot) point to any actual benefit that Fannie Mae or FHFA received from the one-day decline in the market value of Fannie Mae junior preferred shares following the Third Amendment.  And they cannot identify how Fannie Mae or FHFA retained any funds that would have constituted a "benefit" that prejudgment interest would "force [Fannie Mae] to relinquish."  *Id.*  *Brandywine Smyrna* therefore only reinforces the differences between this case and the sort of conventional breach-of-contract case in which prejudgment interest is typically awarded.

*Third*, in arguing that prejudgment interest should be awarded because damages were readily ascertainable, Plaintiffs assert that "the damages at issue in this case were ascertainable on the date of Defendants' breach" and "the exact dollar value of harm was therefore known and knowable[.]"  Pls.' Br. at 8.  Not so.  Plaintiffs did not disclose their "lost-value" theory of harm tied to the one-day stock-price drop until they served Dr. Mason's reply report in March 2022—nearly ten years after the alleged breach.  *See* Expert Reply Report of Joseph R. Mason ¶ 88, Class ECF No. 143-42.  Before then, it was neither "known" nor "knowable" that Plaintiffs were even seeking damages based on the stock-price drop.  To the contrary, Dr. Mason's initial report had estimated dramatically higher damages based on Plaintiffs' entirely separate "lost-dividends" and "rescission" theories—both of which this Court rejected.  *See Fairholme Funds, Inc. v. FHFA*, Nos. 13-cv-1053, 13-mc-1288, 2022 WL 4745970, at *10-12 (D.D.C. Oct. 3, 2022) (analyzing Dr. Mason's initial report and granting summary judgment in favor of Defendants as to Plaintiffs' "lost-dividends" and "rescission" theories); *Fairholme Funds, Inc. v. FHFA*, Nos.

13-cv-1053-RCL, 13-mc-1288-RCL, 2022 WL 11110548, at*3-4 (D.D.C. Oct. 11, 2022) (rejecting Plaintiffs' effort to repurpose Dr. Mason's initial expert report to seek reliance damages); *Berkley Ins. Co. v. FHFA*, Nos. 13-cv-1053-RCL, 13-mc-1288-RCL, 2023 WL 3790739, at *1-2, 5 (D.D.C. June 2, 2023) (reciting history of Plaintiffs' damages theories and again rejecting Plaintiffs' attempt to seek reliance damages).  Further, neither Fannie Mae nor FHFA could possibly have known about damages of $299.4 million before the jury verdict. Beyond this uncertainty over the amount of damages, even class membership was not defined until late in the litigation, making it impossible to pay damages to an undefined and uncertified class.  *See* Defs.' Br. at 10.

Denying prejudgment interest for the reasons described above is consistent with the jury's denial of prejudgment interest to Freddie Mac shareholders.  Under Delaware law, as under Virginia law, the fact that Plaintiffs were not deprived of money they were entitled to receive disfavors the purpose of prejudgment interest.  Specifically, consistent with Virginia law, the Court instructed the jury to consider "whether Plaintiffs sustained *any loss* in not receiving the amount of money that you may have awarded as damages at the time Plaintiffs were entitled to receive it[.]"  Final Jury Instructions, Class ECF No. 383 at 11 (emphasis added).  That is similar to the first purpose of prejudgment interest under Delaware law, which is to "compensate[] the plaintiff for the loss of the use of his or her money."  *Brandywine Smyrna*, 34 A.3d at 486.  On the verdict form, the jury answered "no" on the question of prejudgment interest to Freddie Mac shareholders, indicating that they did not sustain "any loss" in not receiving the damages amount earlier.  Class ECF No. 392 at 3.  Similarly, the principle under Delaware law disfavoring prejudgment interest where the amount of damages owed to the plaintiff was not ascertainable aligns with the rule of Virginia law requiring juries to consider

whether there was a bona fide legal dispute, *Wells Fargo Equip. Fin., Inc. v. State Farm Fire & Cas. Co.*, 823 F. Supp. 2d 364, 366 & n.1 (E.D. Va. 2011), which the jury considered here in denying prejudgment interest. *See* Final Jury Instructions, Class ECF No. 383 at 11.

Contrary to Plaintiffs' assertion that prejudgment interest is always automatic, Delaware courts have recognized that prejudgment interest "is not an *unqualified* right in Delaware," and that courts "have a significant amount of discretion when awarding prejudgment interest." *Lamourine v. Mazda Motor of Am., Inc.*, No. CIV.A.05C-08-236CLS, 2007 WL 3379328, at *4 (Del. Super. Ct. May 29, 2007), *aff'd*, 979 A.2d 1111 (Del. 2009) (emphasis added); *see also Permit v. Kia Motors Am., Inc.*, No. CV N17C-02-236 VLM, 2022 WL 2443009, at *2 (Del. Super. Ct. June 23, 2022); Defs.' Br. at n.2 (describing exceptions or limitations to prejudgment interest under Delaware law). The Delaware Supreme Court has recognized that courts should use their judgment in evaluating whether the purposes of prejudgment interest would be served in a particular case. *See, e.g.*, *Swier v. McLeod*, 139 A.3d 844 (Del. 2016) (acknowledging that Superior Court's pending decision "will require exercise of judicial discretion in deciding whether, and in what amount, to award pre-judgment interest to [plaintiff]"); *Sugarland Indus., Inc. v. Thomas*, 420 A.2d 142, 152 (Del. 1980) (holding that "the Chancellor did not abuse his discretion in denying petitioners pre-judgment interest ….").

As explained, the purposes of prejudgment interest would not be served here. Fannie Mae junior preferred shareholders did not lose the use of any unrealized stock-price losses, and Defendants did not retain a benefit from the stock-price drop, nor could they conceivably have ascertained the amount of damages until recently. The Court should deny prejudgment interest.

## II.   Alternatively, If Prejudgment Interest Were Awarded, the Court Would Have to Correct the Significant Methodological Errors in Plaintiffs' Calculations

Plaintiffs' prejudgment-interest calculations are legally erroneous and vastly overstated in two key respects.  Specifically, Plaintiffs err in applying compound interest rather than simple interest, and they err in applying a variable rate rather than a fixed rate.  Any prejudgment-interest award would have to correct those errors, which would, at a minimum, reduce the claimed prejudgment interest from $277.9 million to $169.3 million (as of August 23, 2023).

*First*, any award of prejudgment interest should apply simple interest, not quarterly compound interest as used by Plaintiffs.  As the Delaware Supreme Court has explained, while it is within the discretion of Delaware courts to apply compound interest where the equities support it, Delaware courts have "traditionally disfavored compound interest[.]"  *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 173 (Del. 2002).  Compounding prejudgment interest is particularly disfavored in the context of "a pure contract claim."  *Rexnord Indus., LLC v. RHI Holdings, Inc.*, No. 07C-10-057 (RRC), 2009 WL 377180, at *10 (Del. Super. Ct. Feb. 13, 2009) (awarding simple interest and refusing to exercise discretion to "award compound interest in order to serve equitable principles" when no such equitable principles were present); *see also CIGNEX Datamatics, Inc. v. Lam Rsch. Corp.*, No. 17-cv-320, 2021 WL 212692, at *2 (D. Del. Jan. 21, 2021) (likewise awarding simple interest and "declin[ing] to exercise its discretion to award compounded prejudgment interest" in light of "principles of equity").

There is no basis to deviate from Delaware's established tradition of simple interest.  As explained above, any award of prejudgment interest here would not serve—and, indeed, would contradict—the core purposes of such an award.  *See supra* Part I.  But if the Court determines that prejudgment interest should be awarded, the Court should adhere to Delaware law and not increase the amount of interest by compounding it.

Plaintiffs urge the Court to disregard the prevailing norm of simple interest on the theory that "Fannie Preferred shareholders entered in sophisticated financial contracts with Fannie Mae[.]" Pls.' Br. at 10. But simply purchasing shares of Fannie Mae junior preferred stock on the secondary market is nothing like the kinds of sophisticated contractual arrangements that have led some courts to exercise their discretion in favor of compound interest. Indeed, the cases cited by Plaintiffs illustrate how far the chasm is between "complex modern financial contracts" and the purchase of a publicly traded stock on the secondary market.[1]

Attempting to justify their request for compound interest, Plaintiffs speculate about how Fannie Mae shareholders might have "used" their portion of the damages award from August 18, 2012, onward. Without citing any legal authority, Plaintiffs point to the 11-year return on the S&P 500, as if that were a proxy for gains that Fannie Mae shareholders could have earned had they chosen to sell their Fannie Mae shares and invest in an S&P index fund at the time of the one-day decline in their share values on August 17, 2012. Pls.' Br. at 10; *see also* Mason Decl. ¶ 7 (similar). Even putting aside the problem that class members (and the Berkley Plaintiffs) did not sell their shares and accordingly have not realized any losses, courts have rejected such arguments seeking to enlarge prejudgment interest awards on account of general economic growth. In *CIGNEX Datamatics*, the Delaware district court rejected the plaintiff's argument

---

[1]     *Cf. Moose Agricultural LLC v. Layn USA, Inc.*, No. 1:20-cv-02508, 2022 WL 18456164, at *5 (D. Colo. Nov. 7, 2022) (explaining how parties are "'sophisticated commercial entities' who engaged in a contract for large-scale growing and sale of hemp"); *ONTI, Inc. v. Integra Bank*, 751 A.2d 904, 926 n.88 (Del. Ch. 1999) (noting "relative financial sophistication of the parties" in joint venture owning numerous cancer treatment centers); *Glidepath Ltd. v. Beumer Corp.*, C.A. No. 12220-VCL, 2019 WL 855660, at *26 (Del. Ch. Feb. 21, 2019) (involving two-stage sale of airport baggage-handling company that was "significant player in the US market"); *Williams Cos. v. Energy Transfer LP*, C.A. No. 12168-VCG, 2022 WL 3650176, at *6 (Del. Ch. Aug. 25, 2022) (involving failed merger where liable party did not promptly pay "$410 million breakup fee" that was "out-of-pocket cost").

that growth in the Dow Jones Industrial Average over time favored an award of compound interest, instead granting "the more conventionally awarded simple interest." 2021 WL 212692, at *2 (citing *Rexnord Indus., LLC*, 2009 WL 377180, at *10 (noting that "simple interest is appropriate for a pure contract claim")). In doing so, the court noted that "the record is devoid of any evidence as to the impact of [plaintiff's] inability to use the money owed by [defendant] or the extent of the benefit obtained by [defendant] in retaining that money." *Id.*; *see also Partner Reinsurance Co. Ltd. v. RPM Mortg., Inc.*, 604 F. Supp. 3d 121, 203-04 (S.D.N.Y. 2022) (declining to award compound interest where plaintiff had "not introduced evidence concretely reflecting the impact on it of its lack of access to the money it would have received" and noting it was a "'pure contract claim' . . . for which simple interest suffices" (internal citation omitted)). The same is true here.

Plaintiffs are also wrong that an award of simple interest would "undercompensate" Fannie Mae junior preferred shareholders for the time value of the money the jury awarded them in damages. Pls.' Br. at 11. If anything, a prejudgment interest award here would overcompensate Fannie Mae shareholders. After hearing the evidence, the jury concluded that prejudgment interest was not necessary to fully compensate Freddie Mac shareholders, and there is no basis for a different conclusion with respect to Fannie Mae shareholders. As noted above, the only damages theory presented at trial sought unrealized losses based on a one-day stock-price drop. Furthermore, for shareholders who purchased their shares after the Third Amendment (and thus already benefitted from the stock-price drop), prejudgment interest would be a windfall.

The examples Plaintiffs cite where compound interest has been awarded involved starkly different circumstances from this case. [2]  Many of those cases involved breaches of fiduciary obligations, not breach of contract.  Others involve awards that were uncontested—for example, through a default judgment—or where the liable party obfuscated the alleged wrong for years. Such examples stand in contrast to the dispute here, where prejudgment interest is vigorously contested, there has been no breach of fiduciary duty or comparable misconduct, and where an award would not serve the purposes prejudgment interest is designed to serve.

Thus, to the extent the Court determines prejudgment interest is appropriate at all, the Court should apply simple interest in accordance with longstanding Delaware precedent.

---

[2]     *Cf. Mannen v. Wilmington Tr. Co.*, C.A. No. 8432–ML, 2015 WL 1914599, at *36 (Del. Ch. Apr. 24, 2015) (involving defendant who "engaged in fiduciary misconduct" and "succeeded in masking his wrongdoing for two decades by taking advantage of his dependent brother and his brother's four minor children"); *Polychain Cap. LP v. Pantera Venture Fund II LP*, C.A. No. 2021-0670-PAF, 2022 WL 2467778, at *12 (Del. Ch. July 6, 2022) (granting award where it was unopposed by liable party); *O'Leary v. eTechInvestments Ltd.*, C.A. No. N15C- 03-106 MMJ, 2017 Del. Super. LEXIS 1143, at *1 (Del. Super. Ct. May 25, 2017) (granting award where it was unopposed as part of default judgment); *Schneider Nat'l Carriers, Inc. v. Kuntz*, C.A. No. N21C-10-157-PAF, 2022 WL 1222738, at *3, *32 (Del. Super. Ct. Apr. 25, 2022) (involving damages set at $40,000,000 for breach of specific provision under stock purchase agreement); *Miller v. Trimont Global Real Estate Advisors LLC*, 587 F. Supp. 3d 170, 188, 200-01 (D. Del. 2022) (detailing how liable party "acted in bad faith" in multiple ways); *Moose Agricultural LLC*, 2022 WL 18456164, at *6 (explaining how "the record contains evidence of the inequitable impact of defendants' withholding payment" and "plaintiffs here submitted evidence that they planned to use the contractual payments to compensate their hemp farmers and to pay off loans"); *CertiSign Holding, Inc. v. Kulikovsky*, No. CV 12055-VCS, 2018 WL 2938311, at *2 (Del. Ch. June 7, 2018) (involving claim for breach of fiduciary duty, not breach of contract); *Valeant Pharms. Int'l v. Jerney*, 921 A.2d 732, 756 (Del. Ch. 2007) (involving claim for breach of fiduciary duty, not breach of contract); *Hurd v. Hurd*, C.A. No. 4675-MG, 2018 WL 1470599, at *5 n.27 (Del. Ch. Mar. 26, 2018) (involving claim for breach of fiduciary duty, not breach of contract); *Brandin v. Gottlieb*, No. CIV. A. 14819, 2000 WL 1005954, at *29 (Del. Ch. July 13, 2000) (involving defendant whose "multiple breaches of his contractual duties to [plaintiff] were undertaken in his capacity as her fiduciary, were invariably to his personal financial or familial benefit and to [plaintiff's] detriment, and could easily be recast as breaches of his duty of loyalty"); *ReCor Med., Inc. v. Warnking*, C.A. No. 7387-VCN, 2015 WL 535626, at *1 (Del. Ch. Jan. 30, 2015) (involving an award for attorneys' fees and expenses).

*Second*, if the Court decides to award prejudgment interest, it should fix the rate of interest from the date on which prejudgment interest begins to accrue, rather than applying a variable rate. The date on which interest begins to accrue—*i.e.*, "the date payment was due to the plaintiff," *Moskowitz v. Mayor & Council of Wilmington*, 391 A.2d 209, 210 (Del. 1978)—is a question of law within the province of the Court. *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 826 (Del. 1992). Plaintiffs calculate prejudgment interest using a rate of 5% plus the Effective Federal Funds Rate on each day since August 17, 2012. This methodology is wrong as a matter of law because the rate of interest must be fixed, not variable.

By its plain terms, the governing Delaware statute fixes the rate of interest "as of the time from which interest is due." 6 Del. C. § 2301. Courts consistently construe this statute according to its plain meaning, "finding that the language of the statute suggests that the rate should be fixed based on the time that the liability for interest begins to run[.]" *CIGNEX Datamatics*, 2021 WL 212692, at *2; *see also, e.g.*, *Balooshi v. GVP Glob. Corp.*, C.A. No. N19C-10-215 CEB, 2022 WL 576819, at *14 (Del. Super. Ct. Feb. 25, 2022), *aff'd*, 285 A.3d 839 (Del. 2022) ("This legal rate is simple and fixed."); *TranSched Sys. Ltd. v. Versyss Transit Sols., LLC*, C.A. No. 07C–08–286 WCC, 2012 WL 1415466, at *6 (Del. Super. Ct. Mar. 29, 2012) ("This interest rate remains fixed."); *Rollins Envtl. Servs., Inc. v. WSMW Indus., Inc.*, 426 A.2d 1363, 1367 (Del. Super. Ct. 1980) (calculating the rate of interest "as of the date of commencement of interest liability and it remains fixed at that rate"). Plaintiffs cite no authority for using a variable interest rate that changes over time rather than a fixed rate as of the date that prejudgment interest began to run.

Plaintiffs' legally erroneous arithmetic overstates the claimed prejudgment interest by tens of millions of dollars. On August 17, 2012, the Effective Federal Funds Rate—*i.e.*, the

benchmark used by Plaintiffs and Dr. Mason to calculate their claimed prejudgment interest—was 13 basis points.  Attari Decl. ¶ 6.  Accordingly, assuming *arguendo* that prejudgment interest began to accrue under the Effective Federal Funds Rate as of August 17, 2012, the rate should be fixed at 5.13%.  Applying simple interest at a fixed rate of 5.13% from August 17, 2012 through August 23, 2023 yields total prejudgment interest of $169.3 million.  *Id.* ¶ 4.

Thus, if prejudgment interest is awarded to Fannie Mae junior preferred shareholders (and it should not be), the Court should apply simple interest at a fixed rate of 5.13%.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion, deny Plaintiffs' cross-motion, and enter judgment pursuant to the jury's August 14, 2023 verdict without any award of prejudgment interest.  Alternatively, the Court should calculate prejudgment interest to Fannie Mae junior preferred shareholders using simple interest at a fixed rate of 5.13%.

Dated: September 6, 2023

Respectfully submitted,

*/s/ Asim Varma*

Asim Varma (D.C. Bar # 426364)
Jonathan L. Stern (D.C. Bar # 375713)
David B. Bergman (D.C. Bar # 435392)
Ian S. Hoffman (D.C. Bar # 983419)
R. Stanton Jones (D.C. Bar # 987088)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Tel.: (202) 942-5000
Fax: (202) 942-5999
Asim.Varma@arnoldporter.com
Jonathan.Stern@arnoldporter.com
David.Bergman@arnoldporter.com
Ian.Hoffman@arnoldporter.com
Stanton.Jones@arnoldporter.com

*Attorneys for Defendant Federal Housing
Finance Agency*

*/s/ Michael J. Ciatti*

Michael J. Ciatti (D.C. Bar # 467177)
KING & SPALDING LLP
1700 Pennsylvania Ave. NW
Washington, DC 20006
Tel.: (202) 661-7828
Fax: (202) 626-3737
mciatti@kslaw.com

*Attorney for the Federal Home Loan
Mortgage Corp.*

*/s/ Meaghan VerGow*

Meaghan VerGow (D.C. Bar # 977165)
O'MELVENY & MYERS LLP
1625 Eye St. NW
Washington, DC 20006
Tel.: (202) 383-5300
Fax: (202) 383-5414
mvergow@omm.com

*Attorney for the Federal National Mortgage
Association*