## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FAIRHOLME FUNDS, INC.**, *et al.*, | |
| *Plaintiffs,* | |
| **v.** | **Case No. 1:13-cv-1053-RCL** |
| **FEDERAL HOUSING FINANCE AGENCY**, *et al.*, | |
| *Defendants.* | |
| **In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations** | **Case No. 1:13-mc-1288-RCL** |
| This Memorandum Opinion relates to: ALL CASES | |

## <u>MEMORANDUM OPINION</u>

This matter follows in the wake of the jury's award of $612.4 million in damages for a set of plaintiffs, including $299.4 million for the plaintiffs whose award is at issue in this motion, the Fannie Preferred Class and the Berkley Plaintiffs (collectively, the "Plaintiffs"). The parties now disagree on whether Plaintiffs should also receive prejudgment interest on those damages and, if so, how that interest should be calculated. The Plaintiffs are plainly entitled to prejudgment interest, and Defendants' arguments to the contrary are meritless. The more difficult question is the proper form of that interest. Upon careful consideration of Delaware law, the Court concludes that the interest rate must be simple, not compound. Even if the Delaware courts have discretion to award compound interest on a contract claim, in such cases simple interest is the norm and the

equities of this case do not support a departure from that norm.  The Court further concludes that the interest rate must be fixed, not variable.  The plain meaning of the Delaware statute setting the applicable rate is that this rate is fixed, and Plaintiffs neither challenge this reading nor provide a convincing reason to deviate from it.  The Court therefore holds that Plaintiffs are entitled to simple prejudgment interest, calculated at a fixed rate of 5% over the Federal Reserve discount rate as of the date of the breach, August 17, 2012.

For these reasons, the Court will **GRANT** in part and **DENY** in part Defendants' Motion for Denial of Prejudgment Interest.  The Court will also **GRANT** in part and **DENY** in part Plaintiffs Cross-Motion for Entry of Judgment with Prejudgment interest.

## I.     BACKGROUND

The Court assumes familiarity with the relevant factual and procedural background, detailed at length in numerous opinions. See *Berkley Ins. Co. v. Fed. Hous. Fin. Agency*, No. 1:13-cv-1053 (RCL), 1:13-mc-1288 (RCL), 2023 WL 4744155 (D.D.C. July 25, 2023); *Berkley Ins. Co. v. FHFA*, Nos. 1:13-cv-1053 (RCL), 1:13-mc-1288 (RCL), 2023 WL 3790739, at *1–2 (D.D.C. June 2, 2023); *Fairholme Funds, Inc. v. FHFA*, Nos. 1:13-cv-1053 (RCL), 1:13-mc-1288 (RCL), 2022 WL 4745970, at *1–3 (D.D.C. Sept. 23, 2022); *Fairholme Funds, Inc. v. FHFA*, Nos. 1:13-cv-1053 (RCL), 1:13-cv-1439 (RCL), 1:13-mc-1288 (RCL), 2018 WL 4680197, at *1–4 (D.D.C. Sept. 28, 2018); *Perry Capital LLC v. Lew*, 70 F. Supp. 3d 208, 214–19 (D.D.C. 2014).

On August 14, 2023, the jury found in favor of the plaintiffs, awarding $281.8 million to the Freddie Mac junior preferred shareholders, $31.2 million to the Freddie Mac common

shareholders, and $299.4 million to the plaintiffs whose award is at issue in this motion, the Fannie Mae junior preferred shareholders. Verdict Form, Berkley ECF No. 402, Class ECF No. 392.[1]

Before the Court are two motions.

After the jury returned its verdict, Defendants—the Federal Housing Finance Agency as conservator for both the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac"), as well as Fannie Mae and Freddie Mac themselves—moved for an order entering judgment pursuant to the jury verdict without adding any prejudgment interest. Defs.' Mot. for Denial of Prejudgment Interest, Berkley ECF No. 405, Class ECF No. 395 [hereinafter Defs.' Br.]. The Plaintiffs responded by filing an Opposition and Cross-Motion for an order entering judgment with prejudgment interest. *See* Pls.' Opp'n to Defs.' Mot. and Cross-Mot. for Entry of J. with Prejudgment Interest, Berkley ECF No. 406, Class ECF No. 396 [hereinafter Pls.' Br.]. The Defendants filed a Reply and Opposition. *See* Defs.' Reply in Supp. of Mot. for Denial of Prejudgment Interest and Opp'n to Pls.' Cross-Mot., Berkley ECF No. 411, Class ECF No. 400 [hereinafter Defs.' Reply]. In turn, the Plaintiffs filed their own Reply in support of their Cross-Motion. *See* Pls.' Reply in Supp. of Cross-Mot. for Entry of J. with Prejudgment Interest, Berkley ECF No. 412, Class ECF No. 401 [hereinafter Pls.' Reply]. These motions are now ripe for review.

## II.   LEGAL STANDARDS

Both issues presented are controlled by Delaware law. This Court has previously ruled that Delaware law governs the claims of the Fannie Mae shareholders, Unsealed Mem. Op. 7, Berkley ECF No. 206, Class ECF No. 198, at 7, because Fannie Mae "enacted bylaws in which

---

[1] For purposes of this Memorandum Opinion, "Berkley ECF No." refers to the docket in No. 1:13-cv-1053, and "Class ECF No." refers to the docket in No. 1:13-mc-1288.

[it] elected to follow" Delaware law, *Fairholme Funds*, 2018 WL 4680197, at *2.  And the parties

agree that Delaware law applies to the issues concerning prejudgment interest.  *See* Pls.' Br. at 1;

Defs.' Br. at 3.

As Delaware law governs, the Court must "ascertain and apply the state law."  *Huddleston*

*v. Dwyer*, 322 U.S. 232, 236 (1944).  Although federal jurisdiction in this case is not based on

diversity of citizenship,[2] because the Court is applying state law, it must nonetheless be guided by

the principles of *Erie Railroad Company v. Tompkins*, 304 U.S. 64 (1938) and its progeny.  *See*

19 Wright & Miller, Fed. Prac. & Proc. Juris. § 4520 (3d ed. Apr. 2023); *Maternally Yours v. Your*

*Maternity Shop*, 234 F.2d 538, 541 n.1 (2d Cir. 1956) ("[I]t is the source of the right sued upon,

and not the ground on which federal jurisdiction over the case is founded, which determines the

governing law . . . . Thus, the Erie doctrine applies, whatever the ground for federal jurisdiction,

to any issue or claim which has its source in state law.").

Under *Erie*, this Court must decide issues of Delaware law as would the Delaware Supreme

Court.  *See Metz v. BAE Systems Technology Solutions & Services Inc.*, 774 F.3d 18, 22 (D.C. Cir.

2014) (holding that a federal court sitting in diversity in the District of Columbia has a "duty . . .

to achieve the same outcome we believe would result if the District of Columbia Court of Appeals

considered this case.") (quoting *Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C.

Cir. 2006)).  And this Court stands in the shoes of the Delaware courts in deciding on any equitable

remedies.  *See LaShawn A. by Moore v. Barry*, 144 F.3d 847, 853 (D.C. Cir. 1998) (holding that

"a federal court enforcing a state-created right becomes, 'in effect, only another court of the State'

and cannot employ a remedy that is not available in state court.") (quoting *Guaranty Trust Co. v.*

---

[2] The Court has federal question jurisdiction.  *See Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 599, 603–04, 628 (D.C. Cir. 2017).

*York*, 326 U.S. 99, 108–09 (1945)); *see also* 19 Wright & Miller, Fed. Prac. & Proc. Juris. § 4513 (3d ed. Apr. 2023) ("[A]s a general rule, when forum state law defines the underlying substantive right, state law also governs the availability of . . . equitable remedies."); *Rosenak v. Poller*, 290 F.2d 748, 750 (D.C. Cir. 1961) (holding that because state law governed the obligations of the parties under the contract, state law also governed the equitable remedy of accounting). If a federal court applying state law granted an equitable remedy unavailable in state court, it would violate the *Erie* "policy" of ensuring "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State Court." *See Guar. Tr. Co.*, 326 U.S. at 109.

In this case, an important feature of Delaware law is Delaware's preservation of the ancient English practice of maintaining separate primary trial courts for matters of law and equity: the Superior Court and the Court of Chancery. The "Superior Court's jurisdiction relates to all civil causes at 'common law'" while "the Court of Chancery's jurisdiction [is] to hear and determine all matters and causes in equity." *Monroe Park v. Metro. Life Ins. Co.*, 457 A.2d 734, 738 (Del. 1983) (first citing Del. Const. art. IV, § 7 and then citing Del. Const. art. IV, § 10 and Del. Code tit. 10, § 341).

## III.   DISCUSSION

The parties disagree about whether the Court should award prejudgment interest to the Plaintiffs. *See* Pls.' Br. at 1; Defs.' Br. at 1. Should the Court do so, the parties also dispute the proper type of interest. Plaintiffs contend that the interest should be compounded quarterly, Pls.' Br. at 9, and set at a variable rate, Pls.' Reply at 9. *See* Pls.' Br. at 12 (requesting prejudgment interest "compounded quarterly based on the federal funds rate as it changed each quarter from [August 17, 2012] through [August 23, 2023, the date Plaintiffs' brief was filed], which amounts

to $277.9 million to date").[3]  Defendants argue that the interest should be simple, Defs.' Br. at 11,

and set at a fixed rate, Defs.' Reply at 11.  *See* Defs.' Reply at 12 (requesting "simple interest at a

fixed rate of 5.13% from August 17, 2012 through August 23, 2023 yield[ing] total prejudgment

interest of $169.3 million").  Applying Delaware law, the Court concludes that Plaintiffs are

entitled to prejudgment interest, albeit in the form of simple interest accruing at a fixed rate.

**A.  Plaintiffs Are Entitled to an Award of Prejudgment Interest**

The Plaintiffs are entitled to prejudgment interest because Delaware law establishes such

an entitlement and Defendants' arguments for making an exception in this case are without merit.

Prejudgment interest "is awarded in Delaware as a matter of right and not of judicial

discretion." *Brandywine Smyrna, Inc. v. Millennium Builders, LLC*, 34 A.3d 482, 485 (Del. 2011)

(quoting *Moskowitz v. Mayor and Council of Wilmington*, 391 A.2d 209, 210 (Del. 1978)).  The

Delaware Supreme Court has so held for over half a century.  *See Wilmington Tr., Nat'l Ass'n v.

Sun Life Assurance Co. of Can.*, 294 A.3d 1062, 1078 (Del. 2023); *Chrysler Corp. (Del.) v.

Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1037 (Del. 2003); *Citadel Holding Corp. v. Roven*, 603

A.2d 818, 826 (Del. 1992); *Metro. Mut. Fire Ins. Co. v. Carmen Holding Co.*, 220 A.2d 778, 781

(Del. 1966).  The Defendants acknowledge that "prejudgment interest is typically awarded 'as a

matter of right,'" Defs.' Br. 3 (quoting *Citadel*, 603 A.2d at 826), but contend that the general rule

does not apply in this case for two reasons.[4]  Neither argument is persuasive.

The Defendants' first argument is that "[t]he principles underlying prejudgment interest in

Delaware are not implicated here." *Id.* at 4.  According to the Defendants, the purposes of awarding

---

[3] Although Plaintiffs refer to August 17, *2023*, this is clearly an unintentional mistake, as Defendants' breach occurred on August 17, *2012*.  *See* Pls.' Br. at 3.

[4] To be sure, under Delaware law there are limits to the availability of prejudgment interest.  *See Bell Atl.-Delaware, Inc./Verizon Delaware, Inc. v. Saporito*, 922 A.2d 414, 414 (Del. 2007) (unpublished disposition) ("[T]he right to pre-judgment interest is not unqualified.").  However, the Defendants concede that none of those limitations are relevant to this case. *See* Defs.' Br. at 3 n.2.

prejudgment interests are (1) to "compensate[] the plaintiff for the loss of the use of his or her money"; and (2) to "force[] the defendant to relinquish any benefit that it has received by retaining the plaintiff's money in the interim." *Id.* at 3 (quoting *Brandywine Smyrna,* 34 A.3d at 486).  The Defendants see the sole measure of harm as the decline in the value of Fannie junior preferred shares on August 17, 2012 (the "Stock Price Drop").  *See* Defs.' Br. 1, 4–5.  Here, Defendants contend, the Plaintiffs "were not deprived of the 'use' of their money" because those who held shares before the Stock Price Drop suffered only an unrealized loss and those who purchased their shares afterward "were not deprived of any value" because they "bought their shares at the depressed prices" following the drop.  *Id.* at 5–7.  Nor, the argument goes, did Defendants receive any benefit from the Stock Price Drop because "they did not somehow control or hold the delta between the share price on August 16, 2012 and August 17, 2012 in their coffers."  *Id.* at 7–8.

This argument fails because it is founded on the false premise that prejudgment interest is to be assessed based on the loss of value from the Stock Price Drop rather than the jury's damages award.  Delaware courts have consistently held that prejudgment interest is assessed against the money damages awarded.  *See, e.g., Valeant Pharms. Int'l v. Jerney*, 921 A.2d 732, 755 (Del. Ch. 2007) ("Delaware law is settled that '[a] successful plaintiff is entitled to interest on money damages as a matter of right from the date liability accrues.'") (quoting *Summa Corp. v. Trans World Airlines, Inc.*, 540 A.2d 403, 409 (Del. 1988)); *Brandywine Smyrna*, 34 A.3d at 487 (holding that the plaintiff was "entitled to prejudgment interest on the consequential damages that were awarded by reason of [the defendant's] breach of contract").

Under Delaware law, then, the relevant figure is the $299.4 million awarded by the jury. It is *this* amount that the Plaintiffs were unable to use, this amount the Defendants benefited from, because of Defendants' failure to make Plaintiffs whole at the time of the breach.  Indeed, the main

case on which Defendants rely for their purposivist argument, *Brandywine Smyrna*, explained that "full compensation requires an allowance for the detention of the compensation awarded and interest is used as a basis for measuring that allowance." *Brandywine Smyrna*, 34 A.3d at 486 (quoting *Moskowitz*, 391 A.2d at 210).

The Defendants' second argument is that prejudgment interest would be inappropriate when damages were not readily ascertainable at the time of the breach, as is allegedly the case here. Defs.' Br. at 8. The Defendants dust off a forty-year-old Superior Court case, *Lum v. Nationwide Mutual Insurance Company*, and its progeny. *See Lum v. Nationwide Mut. Ins. Co.*, No. C.A. 78C-MY-55, 1982 WL 1585, at *5 (Del. Super. Ct. Apr. 27, 1982) ("Pre-judgment interest should only be awarded in those cases in which the amount of damages owed by the defendant is so readily ascertainable-as it is, for example, in many contractual disputes-that the defendant could have opted to simply pay the plaintiff immediately, rather than force him or her to obtain judicial relief through litigation."), *aff'd sub nom. Lum, Lum, Lum v. Nationwide Mut. Ins. Co.*, 461 A.2d 693 (Del. 1983)).

However, Defendant's theory has been expressly repudiated by the Delaware Supreme Court. In *Brandywine Smyrna*, the Court rejected the "overbroad assertion" that a plaintiff "is not entitled to prejudgment interest because their damage award was not calculable until trial and under Delaware common law, prejudgment interest is awarded only when damages are quantifiable prior to judgment." 34 A.3d at 486–87. The Court instead approved and affirmed of a Superior Court ruling stating that:

> Simply because the precise amount of the damage was not ultimately fixed until the award was rendered, does not diminish its pecuniary nature. Applying such logic would result in never finding pre-judgment interest is allowable, because the exact value of any given case is not determined until the finder of fact returns a verdict.

*Brandywine Smyrna*, 34 A.3d at 87 (quoting *Janas v. Biedrzycki*, No. C.A. 97C-08-060 THG, 2000 WL 33114354, at *5 (Del. Super. Ct. Oct. 26, 2000)).  The Defendants' second argument is thus contrary to clearly established Delaware law, as determined by that state's highest court.  Because Delaware law establishes an entitlement to prejudgment interest and both of Defendants' arguments for deviating from this rule lack merit, the Court concludes that the Plaintiffs are entitled to prejudgment interest.

### B.  The Prejudgment Interest Rate Must Be Simple and Fixed

Having established that the Plaintiffs are entitled to prejudgment interest, the next question is what form that interest shall take.   In making this decision, this Court is "in effect, only another court of" Delaware.  *See Guar. Tr.*, 326 U.S. at 108.  It will therefore grant the remedy that a Delaware court would grant.  *See LaShawn A. by Moore*, 144 F.3d at 853.  The Court concludes that the interest rate must be simple, not compound, because even if the Delaware courts have discretion to award compound interest on a contract claim, simple interest is the norm and the equities do not favor making an exception in this case.  And the interest rate must be fixed, not variable.  The plain meaning of the statute setting the applicable rate is that this rate is fixed; Plaintiffs do not challenge this reading and cite only a single Superior Court case granting a variable rate.

#### 1.  The Interest Rate Must Be Simple, Not Compound

A simple interest rate is appropriate here.  Even if the Delaware courts have discretion to award compound interest in a contract action such as this case, Plaintiffs' arguments for breaking from the norm of simple interest are unpersuasive.  In particular, this case does not involve especially financially sophisticated parties and Plaintiffs have not offered evidence of specific

alternative investments they would have made.  In addition, many of the cases involving compound interest that Plaintiffs invoke are readily distinguishable.

As a preliminary matter, because Delaware law controls the availability of the remedy, the Court must consider whether the availability of remedies differs between the Court of Chancery and the Superior Court.  Since this claim is for breach of contract, if brought in Delaware it would be before the Superior Court.  *See Morgan v. Carpenter*, No. C.A. 9324-ML, 2014 WL 7192476, at *4 (Del. Ch. Dec. 18, 2014) (noting that a "breach of contract claim seeking monetary damages . . . falls squarely within the jurisdiction of the Superior Court")  (citing *Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 998 (Del. 2004)); *see also* Del. Const. art. IV, § 7 (providing that the Superior Court has "jurisdiction of all causes of a civil nature . . . at common law").  So this Court must adhere to the norms of the Superior Court.

As previously discussed, under Delaware law, "[a] successful plaintiff is entitled to interest on money damages as a matter of right from the date liability accrues."  *Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 867 (Del. Ch. 2022) (quoting *Summa*, 540 A.2d at 409).   "Generally, the legal rate of interest has been used as 'the benchmark for pre-judgment interest.'"  *Preferred Inv. Servs., Inc. v. T & H Bail Bonds, Inc.*, No. CV 5886VCP, 2013 WL 3934992, at *28 (Del. Ch. July 24, 2013) (quoting *Summa*, 540 A.2d at 409), *aff'd sub nom. Preferred Inv. Servs., Inc. v. T & H Bail Bond, Inc.*, 108 A.3d 1225 (Del. 2015).   "In cases at law," including breach-of-contract disputes when the contract does not supply an interest rate, "the Superior Court awards judgment interest at the 'legal rate' defined by" Del. Code tit. 6. § 2301(a).  *Noranda Aluminum Holding Corp. v. XL Ins. Am., Inc.*, 269 A.3d 974, 975, 978 (Del. 2021).

The legal rate is defined by Section 2301(a) as "5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due." Del. Code tit. 6 § 2301(a).  The

legal interest rate established in Section 2301(a) has "long been construed as providing for a simple interest calculation." *Rexnord Indus., LLC v. RHI Holdings, Inc.*, No. CIV.A. 07C-10-057 RRC, 2009 WL 377180, at *10 (Del. Super. Ct. Feb. 13, 2009) (quoting *Brandin v. Gottlieb*, No. CIV. A. 14819, 2000 WL 1005954, at *29 (Del. Ch. July 13, 2000)). "'[A] court of equity,' however, 'has broad discretion, subject to principles of fairness, in fixing the rate [of pre-judgment interest] to be applied.'" *Energy Transfer, LP v. Williams Cos.*, No. 391, 2022, 2023 WL 6561767, at *22 (Del. Oct. 10, 2023) (alteration in original) (quoting *Summa*, 540 A.2d at 409).

Whether the Delaware Superior Court has discretion to award compound interest on a contract claim, however, is unclear. The Delaware Supreme Court has recognized the discretion of the *Court of Chancery*, as a court of equity, to award compounding interest based on its broader authority to choose a rate of interest different from the statutory rate. *Id*. It might seem that awarding compound interest is an equitable remedy, in which case the Superior Court would lack authority to do so. *See, e.g.*, *Reylek v. Albence*, No. K22M-07-010 NEP, 2023 WL 142522, at *3 (Del. Super. Ct. Jan. 10, 2023) ("As a general matter, the Superior Court 'is without jurisdiction to entertain equitable actions or provide equitable remedies.'") (quoting *Wells Fargo Bank, NA v. Strong*, No. CV 8538-MA, 2014 WL 6478788, at *3 (Del. Ch. Nov. 19, 2014)); *see also Juras v. Bd. of Pension Trustess*, No. CIV. A. 92A-03-2, 1992 WL 357864, at *2 (Del. Super. Ct. Oct. 15, 1992) (observing that the Superior Court "must deal only with the law not equity"), *aff'd sub nom. Juras v. Bd. of Pension Trs.*, 625 A.2d 279 (Del. 1993).

That said, recent decisions of the Delaware Superior Court are divided on whether that court has this discretion.[5] *Compare Schneider Nat'l Carriers, Inc. v. Kuntz*, No. CV N21C-10-

---

[5] Although Plaintiffs claim "the prevailing norm" is to award compound rather than simple interest, they mostly cite either Court of Chancery cases or federal district court cases not involving a breach of contract. *See* Pls.' Reply at 8.

157 PAF, 2022 WL 1222738, at *32 (Del. Super. Ct. Apr. 25, 2022) (awarding compound interest

on a breach-of-contract claim), *with LCT Cap., LLC v. NGL Energy Partners LP*, No. N15C-08-

109 JJC CCLD, 2023 WL 4102666, at *8 (Del. Super. Ct. June 20, 2023) (holding that the Superior

Court lacks discretion to award compound interest), *and Rexnord Indus.*, 2009 WL 377180, at *10

("[W]hile the Court of Chancery may deviate from Del. Code tit. 6 § 2301 and award compound

interest in order to serve equitable principles, simple interest is appropriate for a pure contract

claim, such as the one before this Court.").  In addition, "[o]ther decisions of [the Superior Court]

have declined to award compound interest but have nevertheless assumed the discretion to do so

in special circumstances."  *LCT Cap.*, 2023 WL 4102666, at *8 (citing *Pro. Investigating &

Consulting Agency, Inc. v. Hewlett-Packard Co.*, No. CV 12C–06–196 MMJ CCLD, 2015 WL

1417329, at *11 (Del. Super. Ct. Mar. 23, 2015) and *O'Riley v. Rogers*, No. S08C-07-020 RFS,

2013 WL 4506971, at *1 (Del. Super. Ct. Aug. 14, 2013)).

  But this Court need not predict how the Delaware Supreme Court would rule on whether

the Superior Court may award compound interest, because even if the Superior Court does have

such authority, this Court would still award simple interest.  "Delaware courts have traditionally

disfavored compound interest."  *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817

A.2d 160, 173 (Del. 2002)).  Indeed, in the Superior Court, "simple interest is the norm."  *Ainslie

v. Cantor Fitzgerald LP*, No. CV 9436-VCZ, 2023 WL 2784802, at *2 (Del. Ch. Apr. 5, 2023).

And "[p]rejudgment interest on a pure contract claim is usually simple interest, not compound

interest."  *Rexnord Indus.*, 2009 WL 377180, at *9.

  Considering the nature of this case, Plaintiffs' arguments for compound interest are

unpersuasive.  "Delaware courts consider equitable principles—such as the financial

sophistication of the parties involved, the impact of the deprivation on plaintiff, and the need for

defendant to disgorge inequitably obtained profits—when deciding whether to award compound interest." *Moose Agric. v. Layn USA*, 639 F. Supp. 3d 1150, 1156 (D. Colo. 2022); *see, e.g.*, *Edgewater Growth Cap. Partners L.P. v. H.I.G. Cap., Inc.*, 68 A.3d 197, 238 (Del. Ch. 2013) (finding it appropriate "to award compound interest" given "the sophistication of the financial parties involved" and the non-prevailing party's use of "litigation to avoid paying").

Plaintiffs argue that "the Fannie Preferred shareholders entered into sophisticated financial contracts with Fannie Mae, and simple interest is inappropriate in a dispute over such contracts." Pls.' Br. at 10. The sophistication of the parties is relevant because in complex financial contracts, compound interest is typical. *See Williams Cos. v. Energy Transfer LP*, CV 12168-VCG, 2022 WL 3650176, at *6 (Del. Ch. Aug. 25, 2022) (stating that "compound interest more accurately reflects the 'fundamental economic reality' that '[c]ompound interest is "the standard form of interest in the financial market."'") (quoting *ONTI, Inc. v. Integra Bank*, 751 A.2d 904, 926 & n.88 (Del. Ch. 1999), as revised (July 1, 1999), *aff'd sub nom. Energy Transfer*, 2023 WL 6561767.

But as Defendants point out, Defs.' Reply at 8, the examples of compound interest awards cited by the Plaintiffs involved a much greater degree of sophistication than simply buying publicly traded stock on the secondary market, which is what occurred in this case. *See Moose Agric.*, 639 F. Supp. at 1156 (sophisticated commercial entities who contracted "for large-scale growing and sale of hemp"); *ONTI*, 751 A.2d at 906, 926 (joint venture between numerous companies); *Glidepath Ltd. v. Beumer Corp.*, C.A. No. 12220-VCL, 2019 WL 855660, at *1–2 (Del. Ch. Feb. 21, 2019) (two-stage sale of company that was "significant player in the US market"); *Williams Cos.*, 2022 WL 3650176, at *1 (merger of "large entities represented by sophisticated counsel"). Therefore, the sophistication of the parties does not favor compound interest in this case.

Plaintiffs also contend that "limiting the award to simple interest would undercompensate Plaintiffs for the time value of the money that the jury found Defendants have owed the Fannie Preferred shareholders since August 17, 2012."  Pls.' Br. at 11.  It is true that "compound interest is a more accurate means of measuring the time value of money."  *ReCor Med., Inc. v. Warnking*, No. CV 7387-VCN, 2015 WL 535626, at *1 (Del. Ch. Jan. 30, 2015).  But if that were enough to justify compound interest, it would be awarded in *every* case.

And the argument has relatively little force in a case, such as this one, where the prevailing party has not alleged specific alternative investments that would have occurred had the money been paid at the time of the breach.  *Compare Moose Agric.*, 639 F. Supp. 3d at 1157 (awarding compound interest in part because the prevailing parties "submitted evidence that they planned to use the contractual payments to compensate their hemp farmers and to pay off loans incurred to purchase specialized hemp farming equipment"), *with CIGNEX Datamatics, Inc. v. Lam Rsch. Corp.*, No. CV 17-320 (MN), 2021 WL 212692, at *2 (D. Del. Jan. 21, 2021) (declining to award compound interest when the prevailing party merely asserted an increase in the Dow Jones Industrial Average over time and "offer[ed] no argument as to what [it] would have done with the amounts owed" during that time).  Similarly, in *Moose Agriculture* the court held that the non-prevailing party having "invested 80 million dollars" in another venture "during the time that payment was being withheld from plaintiffs" was "further justification for an award of compound interest that would facilitate disgorgement of the inequitable benefit." 639 F. Supp. 3d at 1157.  But Plaintiffs here do not submit evidence of either specific alternative investments they would have made or investments Defendants made with funds owed to Plaintiffs.  Although the Plaintiffs invoke the return on the S&P 500 for this time period, alluding to general economic growth does not suffice.  *See CIGNEX Datamatics,* 2021 WL 212692, at *2 (rejecting plaintiff's argument that

14

growth in the Dow Jones Industrial Average justified compound rather than simple interest).  The record therefore does not "contain[] evidence of the inequitable impact of defendants' withholding payment."  *See Moose Agric.*, 639 F. Supp. 3d at 1157.

Finally, while Plaintiffs' plentiful citations to Delaware cases awarding compound interest seem impressive at first glance, upon closer review many of those cases are readily distinguishable from this one.  *See* Defs.' Reply at 10 & n.2.  For instance, many of Plaintiffs' cases involve not a breach of contract, but instead a breach of fiduciary duty.  *See CertiSign Holding, Inc. v. Kulikovsky*, No. CV 12055-VCS, 2018 WL 2938311, at *2 (Del. Ch. June 7, 2018); *Valeant Pharms. Int'l*, 921 A.2d at 736, 756; *Hurd v. Hurd*, C.A. No. 4675-MG, 2018 WL 1470599, at *5 n.27 (Del. Ch. Mar. 26, 2018); *Brandin*, 2000 WL 1005954, at *29 (involving a defendant whose "multiple breaches of his contractual duties to [plaintiff] were undertaken in his capacity as her fiduciary . . . and could easily be recast as breaches of his duty of loyalty").  Similarly, bad faith may support compound interest, but here there is no allegation that the Defendants acted in bad faith.  *See Miller v. Trimont Glob. Real Est. Advisors LLC*, 587 F. Supp. 3d 170, 188, 194, 200 (D. Del. 2022).  In other cases, the award of compound interest was unopposed.  *See Polychain Cap. LP v. Pantera Venture Fund II LP*, No. CV 2021-0670-PAF, 2022 WL 2467778, at *12 (Del. Ch. July 6, 2022) (awarding compound prejudgment interest when uncontested by the liable party); *O'Leary v. eTechInvestments Ltd.*, C.A. No. N15C- 03-106 MMJ, 2017 Del. Super. LEXIS 1143, at *1 (Del. Super. Ct. May 25, 2017) (awarding compound prejudgment interest as part of default judgment).  Ultimately, this is a pure breach-of-contract case and Plaintiffs have not advanced compelling reasons to depart from the norm for such cases of simple interest.

### 2.   The Interest Rate Must Be Fixed, Not Variable

Next, the interest rate in this case must be fixed rather than variable.  The plain language of Section 2301(a) indicates that the governing rate is fixed, and Plaintiffs neither challenge this reading nor provide authority for an alternative approach other than a single relevant case.

In Delaware, "[i]f the plain statutory text admits only one reading," the court must "apply it."  *Noranda Aluminum Holding Corp.*, 269 A.3d at 977–78.  The governing Delaware statute establishes a statutory interest rate of "5% over the Federal Reserve discount rate including any surcharge *as of the time from which interest is due*."  Del. Code 6 tit. § 2301(a) (emphasis added). As Defendants argue, the plain meaning of Section 2301(a) appears to be that the legal interest rate is fixed, not variable.  *See* Defs.' Reply. at 11; *CIGNEX Datamatics*, 2021 WL 212692, at *2 (noting "that the language of [Del. Code tit. 6. § 2301(a)] suggests that the rate should be fixed based on the time that the liability for interest begins to run"); *Well Thrive Ltd. v. SemiLEDs Corp.*, No. CV 17-794 (MN), 2021 WL 1318131, at *2 (D. Del. 2021) (same).

Plaintiffs do not challenge the Defendants' argument about the plain meaning of the text, nor do they offer an interpretation of the statute that would permit a variable rate.  Instead, they simply assert that "Delaware courts . . . have often awarded interest at a fluctuating rate."  Pls. Reply at 9.  However, of the eight cases they cite, seven are from the Court of Chancery and only one is from the Superior Court.  *Id.*; *see McGlothlin v. Petrunich Oral & Maxillofacial Surgery*, No. N20C-08-186, 2023 WL 5747520, at *8-9 (Del. Super. Ct. Sept. 6, 2023).  No doubt, the Court of Chancery has discretion to award interest at a variable rate.  As a "court of equity," it "has broad discretion, subject to principles of fairness, in fixing the rate [of pre-judgment interest] to be applied."  *Energy Transfer*, 2023 WL 6561767, at *22 (alteration in original) (quoting *Summa*,

540 A.2d at 409). This includes "the discretion to select a rate of interest higher than the statutory rate" of Section 2301(a). *Id.* (quoting *Gotham Partners.*, 817 A.2d at 173).

But the Superior Court, as a court of law, ordinarily lacks authority to order an equitable remedy. *See Reylek* 2023 WL 142522, at *3 ("As a general matter, the Superior Court 'is without jurisdiction to entertain equitable actions or provide equitable remedies.'") (quoting *Wells Fargo Bank*, 2014 WL 6478788, at *3); *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 125–26 (Del. Ch. 2017) (noting that "to the extent a case" in the Superior Court "warrants an equitable remedy," either the Superior Court must transfer the case to the Court of Chancery or the Delaware Chief Justice must designate the Superior Court judge to serve as a vice chancellor *pro hac vice*). Departing from the plain meaning of Section 2301(a) is an equitable remedy. *See Gentile v. Rossette*, No. CIV.A. 20213-VCN, 2010 WL 3582453, at *2 (Del. Ch. Sept. 10, 2010) ("[D]eparting from a legal rate of interest fixed at the time of the wrongdoing" under Section 2301(a) in favor of a variable rate because doing so would be "fair"); *Brandin*, 2000 WL 1005954, at *29 ("As a general matter, it makes sense for the Court of Chancery to apply the statutory rate where the damage case before it is identical to a claim that could have been brought in Superior Court were there no need for this court to decide other equitable issues.").

Were this case in the Delaware court system, therefore, the Superior Court would be unable to depart from the statute by awarding interest at a variable rate. Indeed, the one Superior Court case cited by Plaintiffs, *McGlothlin*, appears to be an outlier, given that court's general practice of awarding interest at a fixed rate. *See* 2023 WL 5747520, at *8-9; *but see CIGNEX Datamatics*, 2021 WL 212692, at *2 (observing that "a number of Delaware courts have found that the interest rate under § 2301 is fixed"); *Balooshi v. GVP Glob. Corp.*, C.A. No. N19C-10-215 CEB, 2022 WL 576819, at *14 (Del. Super. Ct. Feb. 25, 2022) ("This legal rate [i.e., Section 2301(a)] is simple

and fixed."), *aff'd*, 285 A.3d 839 (Del. 2022); *Houghton v. Shapira*, No. CV N11C-06-092 MJB, 2013 WL 3349956, at *5 (Del. Super. Ct. June 27, 2013) ("The interest rate remains fixed."), *aff'd and remanded sub nom. Shapira v. Christiana Care Health Servs., Inc.*, 99 A.3d 217 (Del. 2014); *TranSched Sys. Ltd. v. Versyss Transit Sols., LLC*, C.A. No. 07C–08–286 WCC, 2012 WL 1415466, at *6 (Del. Super. Ct. Mar. 29, 2012) ("This interest rate remains fixed.").

Since the Superior Court could not award interest at a variable rate, this Court may not either. *See LaShawn A. by Moore*, 144 F.3d at 853. The Court would otherwise run afoul of *Erie*'s policy that the outcome of litigation should be "substantially the same" whether the case be brought in federal or state court. *See Guar. Tr. Co.*, 326 U.S. at 109. Therefore, in light of the plain language of Section 2301(a), and the paucity of authority for plaintiffs' position, the Court must award interest at a fixed rate.

***

In sum, the Court will award simple interest on the damage award of $299.4 million, accruing from the date August 17, 2012[6] until the date on which judgment is entered[7] at a fixed rate of 5% over the Federal Reserve discount rate as of August 17, 2012. The Court will order the parties to submit final damages calculations in accordance with this Opinion.

## IV.    CONCLUSION

For the foregoing reasons, the Court will **GRANT** in part and **DENY** in part Defendants' motion for denial of prejudgment interest, and it will **GRANT** in part and **DENY** in part Plaintiffs' cross-motion for entry of judgment with prejudgment interest.

---

[6] In a breach-of-contract case, "pre-judgment interest is computed from the date of the breach." *Balooshi*, 2022 WL 576819, at *14 (citing *Citadel*, 603 A.2d at 826). In this case, the parties agree the date of the breach was August 17, 2012. *See* Pls.' Br. 12; Defs.' Reply 12.

[7] Pre-judgment interest accrues until the date on which judgment is entered. *See Moskowitz*, 391 A.2d at 210 (holding that "the plaintiff is entitled to recover interest from the City for a period preceding the entry of judgment").

A separate Order consistent with this Memorandum Opinion shall issue.

Date: _____10/24/23_____

Royce C. Lamberth
United States District Judge