**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BERKLEY INSURANCE CO., et al.,<br><br>                   *Plaintiffs*,<br><br>      v.<br><br>THE FEDERAL HOUSING FINANCE AGENCY, et al.,<br><br>                   *Defendants.* | Case No. 1:13-cv-1053-RCL |
| IN RE FANNIE MAE/FREDDIE MAC SENIOR PREFERRED STOCK PURCHASE AGREEMENT CLASS ACTION LITIGATIONS<br><br>This document relates to:<br>ALL CASES | Case No. 1:13-mc-1288-RCL |

**MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' PROPOSED JUDGMENT AND PLAN OF ALLOCATION**

With this motion, Plaintiffs seek entry of Judgment (Ex. A) together with (and pursuant to the Court's Order of December 5, 2023) approval of a plan for allocating damages and the related interest (i.e., the "recovery") among Class members (Ex. B). Plaintiffs had hoped that they could have submitted the present motion as a simple consent motion. However, while Defendants have not identified any specific dispute as to the form of Judgment, they maintain two objections to the proposed Plan of Allocation. As discussed below, Defendants' objections are meritless, and Defendants lack standing to raise them. As a result, the Court should approve the proposed Plan of Allocation and enter the attached Judgment.

First, Defendants object that under the Plan of Allocation, if any of the 32 individuals who requested to opt out of the Classes (other than the W.R. Berkley Plaintiffs) hypothetically chose to

1

sell their shares between the date they submitted their request for exclusion and the date when all appeals are exhausted, then the purchasers of those shares would be able to participate in the distribution of the judgment. This argument (which even in theory could at most implicate fewer than two hundredths of a percent of the amount of the recovery) is both procedurally barred and substantively meritless. It is procedurally barred because Defendants are not in the slightest bit impacted by whether such purchasers share in the judgment and failed to raise the issue at any time before or during trial. They therefore lack standing to raise the objection and have waived any arguments related thereto. It is substantively meritless because the Class definition approved by this Court – to which Defendants stipulated – expressly holds that the Class includes those who purchase shares after the date of class certification but before the judgment becomes final and non-appealable. It also contradicts the basic legal principle (and law of the case) that the legal claims for damages in this case run with the shares.

Second, Defendants object to a *cy pres* award of any potentially undistributed funds, stating instead that any such funds should revert to Defendants. This issue is likely to be purely academic because the method of distribution proposed by Plaintiffs obviates the need for class members to submit claims, and thus makes it highly unlikely that there will be any material amount of undistributed funds. In any event, Defendants lack standing to challenge an award of undistributed funds from the overall Class award. Moreover, Plaintiffs have appropriately proposed that the *cy pres* distribution go to an affordable housing fund, and Defendants have offered no credible basis for why any limited funds that could remain should revert to them. This objection by Defendants likewise should be rejected.

**I.     Procedural Background**

On December 7, 2021, this Court entered its Memorandum Opinion Granting Plaintiffs' Motion for Class Certification [ECF No. 138] and an Order [ECF No. 139] certifying the following Classes of Fannie Mae and Freddie Mac shareholders:

> 1. All current holders of junior preferred stock in Fannie Mae as of the date of certification, or their successors in interest to the extent shares are sold after the date of certification and before any final judgment or settlement (the "Fannie Preferred Class");
>
> 2. All current holders of junior preferred stock in Freddie Mac as of the date of certification, or their successors in interest to the extent shares are sold after the date of certification and before any final judgment or settlement (the "Freddie Preferred Class"); and
>
> 3. All current holders of common stock in Freddie Mac as of the date of certification, or their successors in interest to the extent shares are sold after the date of certification and before any final judgment or settlement (the "Freddie Common Class").

ECF 139. Defendants, who did not challenge class certification, had previously stated, including in the parties' Joint Response to Court Order of November 15, 2021 [ECF No. 135], that they did not object to certification of the Classes under the proposed definitions.

On January 24, 2022, this Court entered the Order Regarding Form, Content, and Method for Providing Notice of Class Action Pursuant to Rule 23(c)(2)(B) [ECF No. 141]. The Notice, as approved by the Court, provided, among other things, that:

> Each of the Classes is comprised of holders of the stock as of December 7, 2021, or their successors in interest to the extent shares are sold after December 7, 2021 and before any final judgment or settlement.
> …
>
> **You must maintain ownership in the underlying security through the date of final judgment or settlement to remain a member of the Classes. If you sell your shares of Fannie Mae or Freddie Mac preferred stock or Freddie Mac common stock before that time, you will no longer be a member of the Classes. Any recovery on behalf of the Classes will be distributed only to those who are shareholders are the time of the final judgment or settlement.**

3

[ECF 153, Ex. A at 4-5 (emphasis in original)]

The Notice further provided that any class member who wished to opt out was required to identify the number of shares held by that class member. [*Id.* at 5].

In accordance with that Order, and as detailed in the Declaration of Jack Ewashko Regarding (A) Mailing of Notice of Class Action; (B) Publication of Summary Notice; and (C) Report on Requests for Exclusion Received [ECF No. 153], Plaintiffs' claims administrator, A.B. Data, disseminated to potential Class Members and Nominees a total of 146,017 copies of the Notice as approved by the Court (*id.* at ¶8).

On August 14, 2023, the jury returned a verdict in favor of Plaintiffs, finding that (a) Plaintiffs proved by a preponderance of the evidence that FHFA, in its role as Conservator of Fannie Mae and Freddie Mac, acted arbitrarily or unreasonably in entering into the Net Worth Sweep, thereby violating the reasonable expectations of holders of Fannie Mae junior preferred stock, Freddie Mac junior preferred stock, and Freddie Mac common stock; and (b) Plaintiffs proved by a preponderance of the evidence that the Fannie Mae junior preferred shareholders, the Freddie Mac junior preferred shareholders, and the Freddie Mac common shareholders sustained harm as a result of the Net Worth Sweep. The jury awarded damages as follows:

- Fannie Mae junior preferred shareholders: $299.4M
- Freddie Mac junior preferred shareholders $281.8M
- Freddie Mac common shareholders $31.2M

[ECF No. 392]

On October 24, 2023, this Court entered its Order granting Plaintiffs' motion for prejudgment interest with respect to the Fannie Mae Junior Preferred Class. [ECF No. 402].

On November 17, 2023, the Parties filed their Joint Statement Setting Forth the Parties' Calculation of Prejudgment Interest, Proposed Order of Judgment and Ongoing Disputes Concerning the Finality of Terms of the Proposed Judgment. [ECF No. 408]. In that submission, among other things, Defendants set forth their position that any final judgment to be entered by the Court must include a plan of allocation (*id*. at ¶8), and they identified a "division of authority regarding whether a judgment in a class action for damages is final and appealable absent a court-approved plan for what to do with any funds that remain after distribution of damages to individual class members based on the plan of allocation (often referred to as 'unclaimed funds'). *Id*. at ¶9.

On December 5, 2023, this Court entered its Order "conclud[ing] that a judgment in this case cannot be final and appealable unless the Court has approved a plan of allocation" [ECF No. 409], and ordering the Parties to meet and confer regarding a proposed plan of allocation and to file a status report on or before December 21, 2023.

In accordance with the Court's Order, on December 19, 2023, Plaintiffs provided Defendants with a proposed plan of allocation and proposed form of judgment. On December 21, 2023, the parties filed a joint status report regarding their meet and confer efforts. [ECF No. 411]. The Parties thereafter continued discussions regarding the form of a plan of allocation and judgment in meetings and correspondence on December 29, 2023, and January 10, 12, 16, 19, and 22, 2024.

## II.  The Proposed Judgment and Plan of Allocation Should be Approved

### A.  The Proposed Form of Judgment Should Be Approved

Plaintiffs respectfully submit that the Court can and should enter Judgment in this case in the form set forth as Exhibit A to this submission. During the meet-and-confer process, Defendants did not identify any specific language in the proposed Judgment to which they object (although

5

they noted that they may request modification to the language to account for shareholders who filed valid exclusion requests).

As shown in that form, the Judgment would approve Plaintiffs' Plan of Allocation "subject to the Court's retaining jurisdiction to resolve any objections by class members to that Plan of Allocation following the issuance of appropriate notice to the classes of that plan." *See* Ex. A at 4. The Judgment would be a final and appealable order, subject to this Court's decision to exercise its discretion under Federal Rule of Civil Procedure 58(e) to treat the anticipated motion by Class Counsel for an award of attorneys' fees and non-taxable expenses as having the same effect on the deadline for appeals as a motion filed under Federal Rule of Civil Procedure 59. *See* FRCP 58(e).

The Judgment also provides for the award of prejudgment interest. Exhibit C, attached, sets forth the calculation of prejudgment interest through March 31, 2024. The parties do not dispute these calculations.

The attached Plan of Allocation spells out in more detail the post-judgment mechanics for the above methodologies, the treatment of the W.R. Berkley Plaintiffs, and the treatment of shareholders who asked to be excluded from the Classes outs other than the W.R. Berkley Plaintiffs (addressed *infra*). As in *Cook v. Rockwell Intern Corp.*, 618 F.3d 1127 (10th Cir. 2010), those considerations would be subject to further refinement and implementation by a Distribution Administrator, subject to notice to the Classes and final approval by the Court.

### B. The Plan of Allocation Provides a Framework and Basic Formula for Determining Damages, Consistent with Defendants' Prior Objections

In Defendants' prior opposition to entry of judgment, they cited the decision of the U.S. Court of Appeals for the Tenth Circuit in *Strey v. Hunt Int'l Res. Corp.*, 696 F.2d 87, 88 (10th Cir. 1982), for the proposition that "a judgment in a class action for damages is not final and appealable absent a court-approved plan for allocating damages among class members (often referred to as a

6

"plan of allocation"). [ECF 408 ¶8]. In *Strey*, the Tenth Circuit held that a proposed judgment was not an appealable final order because the Court had not yet established "both the formula that will determine the division of damages among class members and the principles that will guide the disposition of any unclaimed funds." *Strey*, 696 F.2d at 88. In *Cook,* another decision cited by Defendants, the Tenth Circuit determined that a plan of allocation that provided a "framework" and a "basic formula for determining individual damages" was "sufficient" to comply with *Strey* and "to constitute an appealable judgment under Rule 54(b)," even if class members could later challenge the "ultimate allocation of damages to them." 618 F.3d at 1137-38.

The attached Plan of Allocation satisfies each of these purported requirements and is modeled on the plan that the district court in *Cook* approved, which is attached hereto as Exhibit D. *See* Ex. C (*Rockwell Int'l Corp. et. al.*, Case No. 90-cv-00181-JLK (D. Colo.) (ECF 2264)). Consistent with *Cook*, Plaintiffs' proposed Plan of Allocation responds to Defendants' prior objection by providing a "thorough framework" and "basic formula" to determine the award of damages for each Class of shareholders. *Cook*, 618 F.3d at 1138. *See* Ex. B. As set forth below, the Plan of Allocation also describes procedures regarding any undistributed funds (of which Plaintiffs expect there to be little or none in light of the distribution methodology described below), and it ensures that the individual shareholders who validly sought exclusion from the Classes other than the W.R. Berkley Plaintiffs will not participate in the judgment.

The Plan of Allocation sets forth specific distribution formulas that fairly apportion the recovery for each of the Classes. As to the Fannie Mae and Freddie Mac Preferred Shares, the allocation methodology provides that the appointed Distribution Administrator will determine an aggregate Stated Value[1] or Redemption Price of all Preferred Shares by aggregating the value of

---

[1] All capitalized terms are defined in the proposed Plan of Allocation.

all preferred shares set forth in Appendix A or Appendix B of the Plan of Allocation, adjusted to account for the value of Held Specified Shares of Fannie Mae and Freddie Mac Preferred. The Distribution Administrator will thereafter apply a formula based on the number of preferred shares held by members of the Preferred Classes to make a proportional distribution tied to the Stated Value or Redemption Price of each Series of preferred shares. The formula for the distribution of Preferred Shares is as follows, as each of these terms is defined in the proposed Plan of Allocation:

$$\textit{Fannie Mae/Freddie Mac Preferred Class Member Distribution}$$
$$= (\textit{Preferred Net Class Award})$$
$$\times \left( \frac{\textit{Number of Preferred Shares Held} \times \textit{Stated Value/Redemption Price per Share}}{\textit{Preferred Class Value} - (\textit{Held Specified Shares} \times \textit{Stated Value/Redemption Price per Share})} \right)$$

Members of the Freddie Mac common stock class shall receive distributions based on the number of such common shares they own as a percentage of all shares held by members of the Freddie Common Class—that is, on a pro rata basis. The appointed Distribution Administrator will determine the number of shares issued in the Freddie Common Class, adjusted to account for Held Specified Shares of Freddie Mac Common. The formula for the distribution of Freddie Mac common shares is as follows:

$$\textit{Freddie Common Class Member Distribution}$$
$$= \textit{Freddie Common Net Class Award}$$
$$\times \frac{\textit{Number of Freddie Common Shares Held}}{\textit{Freddie Commmon Shares Issued} - \textit{Held Specified Shares of Freddie Common}}$$

8

To disburse damage payments to specific Class members, the Distribution Administrator shall first determine the portion of the Net Class Award to be distributed to each broker that holds shares of Fannie Mae Preferred Stock, Freddie Mac Preferred Stock, and Freddie Mac Common Stock as of the Record Date of the disbursement determined by the Distribution Administrator and approved by the Court following the Final Non-appealable Judgment Date.  The Distribution Administrator shall provide the portion of each Broker Disbursement to be disbursed to each Class member via Broker Disbursements and Direct Disbursements based on their respective holdings as of the Record Date, ensuring that individual shareholders who requested exclusion from the Classes will not receive a disbursement with regard to the Held Specified Shares.

Given this specific distribution method, Plaintiffs do not expect there will be any undistributed funds in this case.  To the extent any undistributed funds remain, and consistent with the plan of allocation in *Cook*, Plaintiffs respectfully request that any such funds be distributed via a *cy pres* award for the benefit of an affordable housing fund, consistent with the mission of Fannie Mae and Freddie Mac, for such subsequent distribution as the Court may later direct.  *See infra* at 17-19.

The Plan of Allocation also provides that Class members will receive notice and the opportunity to object to the distribution of the Judgment.  While the Federal Rules of Civil Procedure do not expressly address the need for notice to the class of a plan of allocation of a final judgment and an opportunity for class members to object to such a plan of allocation, Plaintiffs believe it is both prudent and fair to provide Class members with such notice and opportunity to be heard.

The Tenth Circuit decisions in *Strey* and *Cook*, relied upon by Defendants in their prior opposition to entry of judgment, do not require notice to Class members and the resolution of any

Class member objections before the Court may enter an appealable judgment under Rule 54(b). Rather, those cases provide for entry of an appealable judgment once there is a general "framework" or "basic formula for determining individual damages." *See Cook*, 618 F.3d at 1138. As *Cook* itself recognized, class members may later "challenge the ultimate allocation of damages to them." *Id.* Defendants have not identified any objections in the meet and confer to these procedures.

### III. Defendants' Objections to the Plan of Allocation Are Meritless

During the Court-ordered meet-and-confer process, Defendants identified two primary objections regarding the proposed Plan of Allocation. First, they object to the fact that the Plan of Allocation leaves open the possibility that purchasers of shares from individuals who sought exclusion from the Classes and did not sue could hypothetically participate in the recovery. Second, they object to a *cy pres* award for undistributed funds even if, as Plaintiffs have proposed, that fund is designed to advance the cause of affordable housing. Both objections are meritless.

#### A. The Court Should Reject Defendants' Objection Concerning Purchases of Shares Sold by Opt-Outs

##### 1. Defendants Lack Standing to Challenge Whether the Purchasers of Shares Sold by Opt-Outs May Participate In the Judgment

As an initial matter, Defendants' objection should be rejected because Defendants lack standing to raise it. Defendants lack any cognizable interest in challenging how the award is distributed among Class members, much less in seeking to hold up the entry of judgment based on an issue of allocation that could at most affect less than two-hundredths of one percent of the total award.[2] During the meet-and-confer process, Defendants initially asserted that the jury's award

---

[2] Even this *de minimis* figure vastly overstates the impact of this issue, as it represents the maximum possible value implicated if each and every individual shareholder who validly sought exclusion from the Classes (other than Berkley) sold 100% of their shares prior to judgment.

should be reduced by an amount that would otherwise be distributed to shares owned by stockholders who had filed a valid request to be excluded from the Classes. From Plaintiffs' perspective, this was not an issue of allocation but rather an effort by Defendants to reduce the size of the judgment, and thus was not appropriately raised at this stage because Defendants had failed to raise the issue either before or at trial, and therefore it was waived. *See also In re Urethane Antitrust Litig.*, 2013 WL 3879264, at *3 (D. Kansas July 26, 2013) ("The Court further notes that Dow failed to argue at trial that the jury could not find aggregate damages or that a separate trial was required for an adjudication of individual members' damages. Moreover, these arguments are not new merely because a judgment has now been entered or because they are now made in the context of opposing plaintiffs' plan for allocation.").

Nonetheless, because the value of a prompt entry of judgment (and the post-judgment interest that would begin to accrue thereupon) vastly exceeds the minuscule value allocable to the Specified Shares identified by the non-Berkley Opt-outs, and as a means of achieving compromise and avoiding further delay, Plaintiffs offered to have the Plan of Allocation reduce the overall damages award by the aggregate value of shares of Fannie Mae Junior Preferred Stock, Freddie Mac Junior Preferred Stock, and/or Freddie Mac Common Stock identified in the "Exclusion Report" dated May 13, 2022 (filed as Ex. D in ECF No. 153, Case No. 1:13-mc-01288-RCL) by Opt-outs who provided valid exclusion requests by identifying the series and number of shares owned. Apart from the W.R. Berkley Plaintiffs, who will participate in the judgment, only 32 individual shareholders provided a valid exclusion request (see Ex. B at Appendix C), which Plaintiffs estimate to amount to a total value of less than $200,000 out of the current damages

11

award of approximately $810 million, including prejudgment interest (or approximately 0.025% of the total damages award).[3]

Defendants, however, have persisted in objecting to the Plan of Allocation. As Plaintiffs understand their position as of the date of this filing, Defendants now object that under the Plan of Allocation, there is a possibility that if a person who requested to opt out later sold the shares identified in that person's exclusion request, then the purchaser of those shares could participate in the judgment.[4]

Defendants lack standing to raise this argument. Only class members have standing to object to a plan of allocation because they are the only parties who have a cognizable and protectable interest in how the funds are distributed. *See In re Equity Funding Corp. of Am. Sec. Litig*., 603 F.2d 1353, 1360 (9th Cir. 1979) ("because it was not a member of the plaintiff classes, Chemical Bank lacks standing to object to, or to appeal from the Plan of Allocation or its approval by the court below"); *In re Holocaust Victim Assets Litig*., 314 F. Supp.2d 155, 168 (E.D.N.Y. 2004) ("Even if DRA could identify three individual Holocaust survivors as clients, that alone would not confer standing upon them to challenge the Plan of Allocation. These survivors would have to show membership in one of the five plaintiff subclasses.").

---

[3] Defendants have not challenged this estimate.

[4] Despite believing it inappropriate to do so (and as a topic more properly the subject of a remittitur motion than an objection to the Plan of Allocation), if it would resolve Defendants' other objections, or if the Court believed otherwise appropriate, Plaintiffs stand by their offer to make the very small reduction in the judgment by the aggregate amount allocable to the shares identified in the valid exclusion requests. That could be accomplished merely by adding language to the form of judgment attached to this motion along the following lines: "IT IS FURTHER ORDERED AND ADJUDGED that the judgment amount for each of the Classes shall be reduced by the sum of damages and interest attributable to "Specified Shares," as defined by the Plan of Allocation, incorporated herein." Plaintiffs could provide that alternative form of judgment if the Court requests.

Standing is a threshold issue, and Defendants have cited no authority where a court has permitted a defendant to challenge an issue in the plan of allocation that did not impact defendants' overall liability. The sole decision referenced by Defendants during the meet-and-confer process, *Krakauer v. Dish Network, LLC*, 2017 WL 3206324, at *6 (M.D.N.C. July 27, 2017), is inapposite. In *Krakauer*, the claims administration process was designed in a way that affected the defendant's overall liability—a situation that is not present here. Specifically, in *Krakauer*, the claims involved statutory damages of $1,200 per incident, and rather than awarding aggregate damages of $1,200 times the number of proved violations, the trial court approved a claims administration process that required putative claimants to prove that they were members of the injured class. Thus, the total amount for which the defendant would be liable depended on the outcome of the claims administration process, and Defendants' right to participate in the claims administration process hinged entirely on that feature.

Here, by contrast, the Plan of Allocation does not affect the overall size of the judgment, only how it will be allocated. It therefore will have no impact whatsoever on Defendants, who will be required to pay the same amount regardless of how the funds are allocated among the members of the Classes. The jury awarded $299.4 million to the Fannie Mae preferred class (to which prejudgment interest will be assessed in accordance with Delaware law), $281 million to the Freddie Mac preferred class, and $31.2 million to the Freddie Mac common class. Defendants will be required to pay those amounts, plus post-judgment interest assessed until the judgment is satisfied, no matter how the funds are ultimately distributed among the members of the Classes. Because neither the distribution administration process nor the particular issue identified by Defendants will impact their overall financial liability, Defendants lack standing to lodge any objection to the Plan of Allocation or to participate in the distribution administration process in

any way. *See also In re Urethane Antitrust Litig.*, 2013 WL 3879264, at *3 (D. Kansas July 26, 2013) (citing multiple cases) (finding that given the jury's award of aggregate damages, which could not and would not change regardless of the claims administration process, Defendants had "no interest in the particular manner in which the total damages found by the jury are distributed among class members").

### 2. Defendants' Objection Ignores the Class Definition To Which They Stipulated, Is Otherwise Meritless, and Would Pointlessly Increase Administrative Costs at the Expense of the Class

Defendants' objection also contradicts the class definitions to which they previously stipulated. The agreed-upon class definitions specifically provided for the participation of the "successors in interest" to those who held shares as of the date of certification where those shares are "sold after the date of certification and before any final judgment or settlement." The definitions did not make any exception for successors in interest to shareholders who sold shares after seeking exclusion from the Classes—a decision that was necessarily made and executed after the date of class certification. If Defendants wanted to exclude purchasers of shares that were held by such individuals, they should have objected to the definitions at the class certification stage. They did not do so, nor did they attempt to raise the issue at trial, and therefore Defendants have waived any argument they might have had on the issue. As in *Urethane*, Defendants' belated arguments "are not new merely . . . because they are now made in the context of opposing plaintiffs' plan for allocation." *Id.* at *1.

Defendants' argument also is at odds with the basic principle of Delaware and Virginia law that "the bargained-for rights related to dividends and liquidation preferences traveled with the shares to subsequent purchasers." *Fairholme Funds, Inc. v. FHFA*, No. CV 13-1053 (RCL), 2018 WL 4680197, at *8 (D.D.C. Sept 28, 2018). "Under both Delaware and Virginia statutory law, "a

14

purchaser of a certificated or uncertificated security acquires all rights in the security that the transferor had or had power to transfer[.]" Del. Code tit. 6, § 8-302; Va. Code § 8.8A-302." *Id.* Thus:

> "All rights in the security" as used in the statutes "means rights in the security itself as opposed to personal rights." *E.g., Schultz v. Ginsburg*, 965 A.2d 661, 667 n.12 (Del. 2009). In other words, "[w]hen a share of stock is sold, the property rights associated with the shares, including any claim for breach of those rights and the ability to benefit for any recovery or other remedy, travel with the shares." *In re Activision Blizzard, Inc. S'holder Litig.*, 124 A.3d 1025, 1049-51 (Del. Ch. 2015).

*Id.* That is because "[r]ights associated with dividends and liquidation preferences inhere in the security." *Id.*

Defendants purport to rely on this principle to argue that an individual stockholder's decision to opt out under Rule 23 prevents subsequent purchasers of those shares from participating in any distribution, but Defendants have cited no authority for this proposition even generally, much less in the context of this case, where the class definition specifically protects the right to recover of successors in interest who purchase shares between the date of certification and the date of the final, non-appealable judgment.

Finally, Defendants' objection should be rejected because it conflicts with the "[t]he goal of any distribution method," which "is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 William B. Rubenstein, *Newberg on Class Actions* § 12:15 (5th ed.) (Westlaw 2018). A plan of allocation suffices if it has "a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Fed. Nat'l Mortg. Ass'n Sec., Deriv., & "ERISA" Litig.*, 4 F. Supp. 3d 94, 108 (D.D.C. 2013) (citation omitted). "As numerous courts have held, a plan of allocation need not be perfect." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y.

2011); *In re Cendant Corp. Sec. Litig.,* 109 F. Supp. 2d 235, 272 (D.N.J. 2000) (the applicable standard is whether a plan of allocation "on the whole" is reasonable).

Here, the harm to the Classes from further delaying entry of judgment would vastly outweigh any asserted benefit from sustaining Defendants' waived and baseless objection to the Plan of Allocation.[5]  As stated herein, crediting the objection would provide no legitimate benefit to Defendants because they have no cognizable legal interest in how the aggregate Class funds are allocated.  Any benefit to Defendants would come solely in the illegitimate form of increased delay and imposing undue costs on the Classes.

For the same reasons, sustaining Defendants' objection would harm the Classes.  Delay of judgment is itself a harm both because it delays any eventual recovery and because post-judgment interest – which will be at a higher rate than the pre-judgment interest rate and will apply to all three Classes, not just the Fannie preferred class – will not begin to accrue until judgment is entered.  *See, e.g., In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *9 (S.D.N.Y. April 26, 2016) (a "principal goal of a plan of distribution must be the equitable and timely distribution" of funds "without burdening the process in a way that will unduly waste the fund").

Accordingly, the Court should disregard Defendants' objection, which they have no standing to raise, have waived by failing to raise previously, and which has no merit to begin with, and enter an Order approving the proposed Judgment and Plan of Allocation.

### 3. The Plan of Allocation Appropriately Provides for a *Cy Pres* Award.

Finally, Defendants object to the proposal in the Plan of Allocation to allocate any potentially undistributed funds from the portion of the aggregate damages awarded to the Classes

---

[5] By way of comparison, the total amount at issue relating to the 32 individual shareholders who sought exclusion equates to approximately four days of prejudgment interest.

to *cy pres* beneficiaries, asserting instead that any undistributed funds (which Plaintiffs expect to be minimal, and likely non-existent) should revert to Defendants.

As with the distribution of the aggregate damages award to Class members, Defendants lack standing to challenge the *cy pres* distribution. "Where the only question is how to distribute the damages, the interests affected are not the defendant's but rather those of the silent class members." *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1306-07 (9th Cir. 1990) (holding that the defendants lacked standing to challenge the distribution of unclaimed funds where the judgment involves an aggregate damages award for the Class).

Further, having failed to object at trial to the verdict form that required the jury to determine the total aggregate "amount of damages," ECF 392 at 2, Defendants have no basis to seek reversion of any undistributed funds, the final determination of which should be left until the expiration of the distribution period. *See, e.g., Urethane*, 2013 WL 3879264, at *3 (citing *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 2013 WL 2476587 (D. Kan. June 7, 2013) (determining whether to distribute unclaimed funds to participating class members or to order a *cy pres* distribution)).

A *cy pres* award is appropriate under the circumstances here because Plaintiffs estimate that the amount of undistributed funds, if any, will be minimal, and almost certainly "too small to make individual distributions [to Class members] economically viable." *See* American Law Institute, *Principles of the Law of Aggregate Litigation*, § 3.07 (2010) (cited favorably by *Keepseagle v. Vilsack*, 118 F. Supp. 3d 98 (D.D.C. 2015)). To the extent the Court determines that the allocation of undistributed funds, if any, to a *cy pres* fund is appropriate, this Court's precedent permits the distribution to *cy pres* beneficiaries of funds remaining after distribution to class members. *See, e.g., In re Living Social Marketing and Sales Practice Litig.*, 298 F.R.D. 1,

13 (D.D.C. 2013); *In re Dep't of Veterans Affairs Data Theft Litig.*, 653 F. Supp. 2d 58, 59-60 (D.D.C. 2009).

Plaintiffs propose an award of any undistributed funds to an affordable housing fund, consistent with the stated missions of FHFA, Fannie Mae, and Freddie Mac, which may be determined in or around of the time of final distribution.[6] An allocation to such recipient(s) would be consistent with the purpose of a *cy pres* award. *See, e.g. In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92 (D.N.J. 2012) (*cy pres* award to nonprofit organizations focusing on the education of large and small entities was warranted in the settlement of class actions involving federal and state antitrust claims, and alleged RICO violations); *In re Motorsports Merchandise Antitrust Litig.*, 160 F. Supp. 2d 1392, 1394-1395 (N.D. Ga. 2001) (citing cases). It also tracks the plan of allocation in *Cook*. *See* Ex. C at ¶14 of the plan of allocation.[7] Defendants have noted that they will likely object to a *cy pres* award (because they contend that any undistributed funds should revert to them), but Defendants have not objected in theory to a *cy pres* award to an affordable housing fund should the Court agree that a *cy pres* award is appropriate.

---

[6] Although any *cy pres* recipient(s) need not be set until entry of Judgment, Plaintiffs have proposed specific affordable housing funds to Defendants, who have indicated that they are reviewing the proposed funds and will be available to meet and confer on any recipient(s) should the Court order a *cy pres* award.

[7] The language of the *cy pres* section in the *Cook* plan of allocation stated as follows:

> 14. That portion of the Net Class Award allocable to properties in the Non-Prospective Damages Subclass, as computed pursuant to paragraph 11, supra, shall be assigned to a cy pres fund, for such subsequent distribution as the Court may later direct. In aid of such distribution, the Court will direct plaintiffs, at or near the time that approval is sought for the Proposed Allocation, to identify options and recommendations for disbursing the cy pres fund in a manner consistent with cy pres principles, as set forth at pages 55-57 of this Court's Memorandum Opinion and Order on Pending Motions dated May 20, 2008 (Doc. 2261).

*Id.s*

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request prompt approval of the Judgment in the form attached hereto as Exhibit A, as well as the Plan of Allocation attached hereto as Exhibit B.

Dated: January 22, 2024

Respectfully submitted,

*/s/ Charles J. Cooper*
Charles J. Cooper (Bar No. 24870)
David H. Thompson (Bar No. 450503)
Vincent J. Colatriano (Bar No. 429562)
Peter A. Patterson (Bar No. 998668)
Brian W. Barnes (*Pro Hac Vice*)
**COOPER & KIRK, PLLC**
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Counsel for Berkley Plaintiffs, et al.*

*/s/Eric L. Zagar*
Eric L. Zagar (*Pro Hac Vice*)
**KESSLER TOPAZ
  MELTZER & CHECK, LLP**
280 King of Prussia Rd.
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
ezagar@ktmc.com

Hamish P.M. Hume (Bar No. 449914)
Samuel C. Kaplan (Bar No. 463350)
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave. NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
hhume@bsfllp.com
skaplan@bsfllp.com

Michael J. Barry (*Pro Hac Vice*)
**GRANT & EISENHOFER, P.A.**
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
mbarry@gelaw.com

Adam Wierzbowski (*Pro Hac Vice*)
**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
adam@blbglaw.com

*Co-Lead Counsel for the Class*