IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FAIRHOLME FUNDS, INC., ET AL.,      )
                                           )
                                           )
        Plaintiffs,       )      CV No. 13-1053
                                         )      Washington, D.C.
     vs.                 )      July 18, 2023
                                         )      2:00 p.m.
FEDERAL HOUSING FINANCE AGENCY,   )
ET AL.,                     )
                                         )
        Defendants.      )
_____)

IN RE FANNIE MAE/FREDDIE MAC     )
SENIOR PREFERRED STOCK PURCHASE  )   MC No. 13-1288
AGREEMENT CLASS ACTION LITIGATION  )
                                         )
_____)

TRANSCRIPT OF PRETRIAL CONFERENCE PROCEEDINGS
BEFORE THE HONORABLE ROYCE C. LAMBERTH
UNITED STATES SENIOR DISTRICT JUDGE

APPEARANCES:

For Berkley Plaintiffs:     John Ramer
                             Vincent John Colatriano
                             COOPER & KIRK, PLLC
                             1523 New Hampshire Avenue, NW
                             Washington, D.C. 20036
                             (202) 220-9621
                             Email: jramer@cooperkirk.com
                             Washington, D.C. 20036

APPEARANCES CONTINUED:

For Class Plaintiffs:                Hamish P.M. Hume
                                     Samuel C. Kaplan
                                     Kenya Khalelah Davis
                                     BOIES, SCHILLER & FLEXNER LLP
                                     1401 New York Avenue, NW
                                     Washington, D.C. 20005
                                     (202) 237-6131
                                     Email: hhume@bsfllp.com
                                     Email: skaplan@bsfllp.com

                                     Eric L. Zagar
                                     Lee D. Rudy
                                     Grant Goodhart
                                     KESSLER, MELTZER & CHECK LLP
                                     280 King of Prussia Road
                                     Radnor, PA 19087
                                     (610)667-7706
                                     Email: ezagar@ktmc.com
                                     Email: lrudy@ktmc.com

                                     Robert F. Kravetz
                                     Bernstein Litowitz
                                     Berger & Grossmann LLP
                                     1251 Avenue of the Americas
                                     New York, NY 10020
                                     (212) 554-1400

                                     Michael J. Barry
                                     GRANT & EISENHOFER, P.A. - DE
                                     123 JUSTISON STREET
                                     Wilmington, DE 19801
                                     (302) 622-7000
                                     Email: mbarry@gelaw.com

```
APPEARANCES CONTINUED:

For FHFA,
Fannie Mae
and Freddie Mac Defendants:    Jonathan Louis Stern
                               Ian S. Hoffman
                               Stanton Jones
                               Asim Varma
                               David Bergman
                               ARNOLD & PORTER
                               KAYE SCHOLER LLP
                               601 Massachusetts Ave, NW
                               Washington, D.C. 20001-3743
                               (202) 942-5000
                               Email:
                               jonathan.
                               stern@arnoldporter.com
                               Email: ian.hoffman
                               @arnoldporter.com


Court Reporter:                William P. Zaremba
                               Registered Merit Reporter
                               Certified Realtime Reporter
                               Official Court Reporter
                               U.S. Courthouse
                               333 Constitution Avenue, NW
                               Room 6503
                               Washington, D.C. 20001
                               (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription
```

P R O C E E D I N G S

1

2    COURTROOM DEPUTY:  All rise.  This court is in

3    session; the Honorable Royce C. Lamberth presiding.  Please

4    be seated, everyone.

5    Good afternoon, Your Honor.  This is Miscellaneous

6    Case No. 13-1288, In Re Fannie Mae/Freddie Mac Senior

7    Preferred Stock Purchase Agreement Class Action litigations.

8    Would a member of counsel for each party please

9    approach the lectern and state your appearances for the

10   record.

11   MR. HUME:  Good afternoon, Judge Lamberth.

12   It's Hamish Hume for the Class Plaintiffs.

13   Shall we have each counsel introduce themselves

14   individually?

15   THE COURT:  Yes, that would be fine.

16   MR. ZAGAR:  Good afternoon, Your Honor.

17   Eric Zagar for the plaintiffs.

18   MR. RUDY:  Hello again, Judge Lamberth.

19   Lee Rudy for the plaintiffs.

20   THE COURT:  Okay.

21   MR. RAMER:  Good afternoon, Your Honor.

22   John Ramer for the Berkley Plaintiffs.

23   MR. KRAVETZ:  Good afternoon, Your Honor.

24   Robert Kravetz on behalf of the plaintiffs.

25   MR. BARRY:  Good afternoon, Your Honor.

```
 1    Michael Barry on behalf of plaintiffs.
 2              MR. KAPLAN:  Good afternoon.  Sam Kaplan on behalf
 3    of the plaintiffs.
 4              MR. COLATRIANO:  Good afternoon, Your Honor.
 5    Vince Colatriano on behalf of the Berkley Plaintiffs.
 6              MR. GOODHART:  Good afternoon, Your Honor.
 7    Grant Goodhart on behalf of the Class Plaintiffs.
 8              MS. DAVIS:  Good afternoon, Your Honor.
 9    Kenya Davis for the Class Plaintiffs.
10              THE COURT:  They let you in again?
11              MS. DAVIS:  Yes, sir.
12              MR. STERN:  Good afternoon, Your Honor.
13    Jonathan Stern for FHFA, Fannie Mae and Freddie Mac.
14              THE COURT:  Okay.
15              MR. HOFFMAN:  Good afternoon, Your Honor.
16    Ian Hoffman also on behalf of the defendants.
17              MR. JONES:  Good afternoon, Your Honor.
18    Stanton Jones also on behalf of the defendants.
19              MS. VARMA:  Good afternoon, Your Honor.
20    Asim Varma on behalf of the defendants.
21              MR. BERGMAN:  Good afternoon.  David Bergman from
22    Arnold & Porter for defendants.
23              THE COURT:  Okay.
24              I wish I could say it's nice to see you all again,
25    but it's not.  But nevertheless I'm here, you're here, so
```

```
 1   we'll start with the plaintiffs' pending motions.
 2            I'm not ruling from the bench, but I do expect to
 3   get some rulings out in the next couple days.
 4            And whatever you all want to present orally and
 5   argue orally, you may this afternoon.  I'll hear whatever
 6   y'all want to present.
 7            Save some time for the defendants so they can make
 8   their arguments on their motions as well, and we'll get as
 9   much as we can in today.
10            MR. ZAGAR:  Thank you, Your Honor.
11            THE COURT:  You can refresh my memory on things.
12   But I'm very happy everybody cooperated in getting this
13   underway with the same law clerk I had who will do his best
14   to refresh my memory on what I did last time.
15            My mind is not gone.  My knee, however, has not
16   improved greatly.  So I'm still on my walker and will be
17   through this trial.
18            But fortunately for me, my mind is -- but I did
19   turn 80 in the meantime this weekend.  And so my wife
20   assures me that I should stop; however, I have a younger
21   judge who's told me when my mind goes, he will tell me to
22   step down.  And I have told him I will not argue and I will
23   step down when he tells me I should and I will not argue.
24   But I just talked to him again today and he told me he
25   thinks I'm fine and I did not need to step down.  So I
```

1    wanted to assure myself before I went forward today.

2            He tells me I'm still sharp, he thinks.  So

3    luckily he was somebody I hired in the

4    U.S. Attorney's Office and he followed me over here so you

5    probably know who it is.  But in any event, he's enough

6    younger that he will tell me when my time has come.

7            I love the job, I can't step down, I don't want to

8    step down.

9            Go ahead.

10           MR. ZAGAR:  Good afternoon, Your Honor.

11   Eric Zagar for the plaintiffs.

12           And happy birthday, and we're glad to have you.

13           THE COURT:  Thank you.

14           It's hard to believe I could be 80.

15           Another judge told me, why am I acting like I'm 40

16   then?  I like it.

17           MR. ZAGAR:  In terms of order of presentation,

18   unless Your Honor has a preference, as Your Honor suggested,

19   and we've conferred with defense counsel, plaintiffs will

20   present their affirmative motions first, followed by

21   defendants.

22           And I can give you the preview of the order if

23   you're interested for what we intend to do.

24           THE COURT:  Yep.

25           MR. ZAGAR:  We will have our motions in limine

1    regarding the expert up first.

2              We will then do our omnibus motions more or less

3    in order but not necessarily fully in order.

4              And then our motion on the Treasury and

5    White House documents would be our last one.

6              THE COURT:  Okay.

7              MR. ZAGAR:  In terms of time, Your Honor, we have

8    agreed with defendants to try to split it roughly evenly.

9    So I don't know if Your Honor has a particular idea of how

10   late you want to go tonight.

11             THE COURT:  5:00-ish.

12             MR. ZAGAR:  We will try to accommodate.

13             THE COURT:  5:00-ish, I hope.

14             MR. ZAGAR:  Okay.  Very good, Your Honor.

15             So unless Your Honor has any other preliminaries,

16   I'll ask Mr. Kaplan to come up and start with the expert.

17             THE COURT:  Good.

18             MR. ZAGAR:  Thank you.

19             THE COURT:  Okay, Mr. Kaplan.  Recall you very

20   well.

21             MR. KAPLAN:  Thank you, Your Honor.

22             THE COURT:  And fondly.

23             As time goes, it's more fond.

24             MR. KAPLAN:  Your Honor, I will be arguing our

25   motion with respect to Dr. Attari.

1          And as Your Honor knows, there are two components

2    to that motion.  There's the bond event study, and then

3    there's the MBS.

4          The order we plan to present it -- and this

5    actually works quite well for defense counsel too because

6    they have two people arguing it, is that I'm going to argue

7    the bond event study first, then sit down, let them go,

8    brief rebuttal, and then move on to the MBS.

9          Your Honor, with respect to the bond event study,

10   it's now clear that the defendants are offering the bond

11   event study for a purpose that it cannot reliably support.

12         That purpose is as stated, as defense counsel

13   stated in closing argument.  You know that from Dr. Attari,

14   who explained to you how his back -- bond event study

15   demonstrated that investor confidence was restored by

16   agreement to the net worth sweep.

17         The event study simply can't bear that weight,

18   Your Honor.  And the reason it can't bear that weight is

19   because we've identified at least one plausible alternative

20   cause for the .1 point decline in the bond yield spreads

21   that they rely or that Dr. Attari relies on to say that

22   investor confidence was restored.

23         And that cause is that when the Third Amendment --

24   that the Third Amendment created an expectation of

25   declining -- that there would be future declining supply in

1    the availability of these bonds, and it, therefore,

2    increased the value of the extant bonds, the bonds that were

3    already out there, including the bonds that Dr. Attari

4    analyzed.

5          The plaintiffs' principal response to --

6    defendants' principal response to this is to say, Your Honor

7    already decided -- the Court already decided that, this is

8    old news, nothing to see here.

9          But the Court did not decide that.  The Court

10   ruled that it could conceivably, and that was Your Honor's

11   word, be relevant for another purpose that they don't even

12   defend that they didn't offer it for at the last trial.

13   They offered it for the purpose that counsel stated in

14   closing argument, and it just doesn't support that purpose.

15   It's unreliable for that purpose.  The jury would be left

16   completely at sea in trying to distinguish between these

17   causes.

18          And our alternative cause, Your Honor, isn't just

19   a cause that we just made up, it's throughout the documents

20   in this case.  It's in their analyst reports; it's in FHFA's

21   own documents.  And I'll just read one, but there are many

22   cited in our brief.

23          It says, "The rationale for the tighter spread,"

24   is that, "As the enterprises wind down, there will be less

25   longer term debt issued, leaving investors to fight over

1    existing supply."  That is an alternative cause, it's a

2    confounding [sic] factor, and it is not reliably accounted

3    for by Dr. Attari.

4            And Your Honor did not conclude otherwise,

5    Your Honor concluded the opposite.  Your Honor said

6    Dr. Attari never claims he can isolate the impact of the net

7    worth sweep, much less this notion that the net worth sweep

8    increased investor confidence as opposed to just making

9    people think there would be fewer bonds in the future.

10           So the defendants, their loan explanation is to

11   say, well, he designed this study to account for this

12   because he only used longer term bonds.  That's just not an

13   answer, Your Honor.  He has no -- there is no reliable

14   methodology to enable the jury to conclude that that makes

15   any difference whatsoever.

16           The point is that there's going to be a need for

17   future bonds in the future.  The net worth sweep is creating

18   this expectation, the Third Amendment is creating this

19   expectation, and there's no reason to believe that a longer

20   term, shorter term makes a difference.  In fact, their own

21   document says, the farther out the maturity, the tighter the

22   spread.  This is PX 282, Exhibit 1G to our motion.

23           And so, Your Honor, their final response is to

24   just resort to the last refuge of somebody offering a

25   reliable opinion -- an unreliable opinion, which is to say,

```
 1   oh, that you can just cross-examine on that.  It goes to
 2   weight, it doesn't go to admissibility.
 3           And, of course, one can always cross-examine junk
 4   economics, Your Honor; one can always cross-examine an
 5   unreliable opinion.  But the whole function of Daubert is to
 6   keep unreliable opinions out in the first instance.
 7           So I'll let my friend Mr. Hoffman respond.
 8           MR. HOFFMAN:  Good afternoon, Your Honor.
 9   Ian Hoffman on behalf of the defendants.  It's a pleasure
10   and an honor to appear before the Court again.
11           Your Honor, the vast majority --
12           THE COURT:  It's nice to start that way anyway.
13           MR. HOFFMAN:  I hope it stays that way, Judge.
14           The vast majority of plaintiffs' motion,
15   Your Honor, is a rehash of the arguments that were already
16   presented to this Court.
17           THE COURT:  Everything I read was a rehash.
18           MR. HOFFMAN:  Fair enough, Your Honor.
19           I take it you mean beyond just this motion as
20   well.
21           THE COURT:  Correct.
22           MR. HOFFMAN:  But with this one in particular,
23   though, Judge --
24           THE COURT:  I tried not to say "nightmare" but
25   "rehash."
```

1          MR. HOFFMAN:   Judge, the central attack the first

2     time around is the same attack this time around; that

3     Dr. Attari fails to isolate the impact of one part of the

4     Third Amendment over the other.

5          That's the same arguments, they cite the same

6     cases, Judge, they cite most of the same documents.  All the

7     arguments in the case -- I'm sorry, exhibit examples that

8     Mr. Kaplan referred to is and was fodder for

9     cross-examination at trial.

10          The only purportedly new element that plaintiffs

11     identify this go-around is a purported representation that

12     defendants' counsel supposedly made in the course of

13     briefing before the first trial.

14          I didn't hear much of it from Mr. Kaplan this

15     morning, but the thrust of their papers, Judge, is that

16     defendants' counsel did some kind of bait-and-switch; that

17     we told the Court Dr. Attari is going to testify to X, the

18     Court issued its ruling, and then he testified to something

19     different.

20          It's just not true, Your Honor.  And I don't know

21     if I need to sort of parse through who said what when, but

22     the highlight, Judge, is that there's really two statements

23     at issue in the prior briefing and the statements are side

24     by side.

25          The first statement is the one that plaintiffs say

```
 1   was this representation that we've somehow now violated.
 2   And that representation was the straightforward one, which
 3   Your Honor also emphasized in the ruling, that Dr. Attari's
 4   opinion is that the Third Amendment as a whole caused this
 5   change in the bond prices.  And we acknowledged, as
 6   Dr. Attari acknowledged, that an event study by itself can't
 7   isolate these two different parts of the Third Amendment
 8   that were part of the same announcement.
 9           However, Judge, the very next sentence in our
10   brief states, "And Dr. Attari properly concluded that the
11   decline he observed in the bond yields following that
12   announcement supports his conclusion that the Third
13   Amendment alleviated market participants' concerns about
14   erosion of the Treasury commitment."
15           So that is what I heard Mr. Kaplan arguing, that
16   is suddenly the new thing, that Dr. Attari testified at
17   trial and that we emphasized in closing that Dr. Attari --
18   that event study supported Dr. Attari's conclusion that the
19   Third Amendment as a whole alleviated market concern.
20           There was no bait-and-switch, Judge, because
21   that's exactly what we said in the papers.  And it's not
22   just what we said in the papers, it's what Dr. Attari said
23   in his report.  Your Honor, in issuing its ruling, I note,
24   didn't cite counsel's argument for its ruling, it cited
25   Dr. Attari's report.
```

1          So his testimony at trial was consistent with his

2    report, our arguments, which just matched his report, and

3    the Court's ruling.  And the Court ruled that all of these

4    criticisms about Dr. Attari's event study are and can be the

5    subject of cross-examination.  And they were.  And that is

6    how it should play out in the coming trial as well.  There's

7    no bait-and-switch, Your Honor.

8          And as for closing argument, again -- let me back

9    up and make one other point, Judge.

10         Throughout his testimony at trial, Dr. Attari

11   consistently testified that the Third Amendment, the Third

12   Amendment caused the price decline, which is exactly what we

13   briefed.  It's also -- and he also testified that the Third

14   Amendment alleviated market concern.  That's also what we

15   argued in closing.

16         They also jump up and down in closing that my

17   partner, Mr. Stern, said at one point that the net worth

18   sweep alleviated market concern.  And they say, a-ha, that

19   somehow means that you're using Dr. Attari's opinion in an

20   event study for an improper purpose.

21         Your Honor, as an initial matter, it's a fair --

22   as an initial matter, the remedy for closing argument that

23   doesn't match the evidence is not to exclude more evidence,

24   it's to direct counsel to conform his closing to the

25   evidence.  But here it was a fair summary of the evidence

```
 1   because of Dr. Attari's testimony.

 2           The Court should deny plaintiffs' motion and allow

 3   Dr. Attari to testify as to the bond event study just as he

 4   did in the first trial.  Thank you, Your Honor.

 5           MR. KAPLAN:  Your Honor, as we said, their sole

 6   response is, nothing to see here, because Your Honor has

 7   already ruled on it.

 8           But Your Honor didn't rule on it.  If you look at

 9   Your Honor's prior opinion, Your Honor did not rule that

10   there's a reliable way to distinguish between the reduced

11   supply rationale for the decline in the yield spread and the

12   improved creditworthiness rationale that they offer.

13           And it wasn't just counsel's -- counsel didn't

14   misspeak in closing argument, he summarized exactly what

15   Dr. Attari said in his testimony.

16           And this is exactly what they're arguing.  They're

17   not just arguing it was the Third Amendment.  That wouldn't

18   even be relevant.  What they're arguing is that it was the

19   net worth sweep that restored investor confidence.  There's

20   no reliable basis for that.

21           You didn't hear a single thing from opposing

22   counsel defending the reliability of the opinion in that

23   regard.  All he said was, nothing to see here.  And there's

24   lots to see here, Your Honor, and Your Honor didn't rule on

25   it previously.
```

1          I'll move on now, Your Honor, to the MBS part of

2    our motion with respect to Dr. Attari.

3          And there are two components to this.  One is,

4    we're asking the Court to exclude Dr. Attari from opining

5    and defendants from arguing that the net worth sweep

6    reassured the MBS market, the MBS investors, and that there

7    was concern among MBS investors.

8          This goes even beyond the bond event study,

9    Your Honor, because in this instance, they offer no

10   quantitative data at all.

11         I'm going to start with the opinion that it

12   reassured -- that the net worth sweep reassured MBS

13   investors.

14         There's nothing at all to support the view that

15   the -- there's no quantitative information at all to support

16   the view that MBS investors were somehow reassured by the

17   net worth sweep.  They don't even -- they didn't even do the

18   sort of event study.

19         They do argue that it's a reasonable inference

20   from the bond event study that the MBS market also would

21   have been reassured.

22         But as we've shown, Your Honor, they can't even --

23   the bond event study cannot even reliably show that the

24   $30 billion of long term bonds were somehow reassured.  It

25   is not even remotely -- there's no reliable basis whatsoever

```
 1   that's proffered from -- jumping from that to a market

 2   that's a $30 billion, to a market that's a $5 trillion, the

 3   MBS market.

 4          Their own document, Your Honor, said that trading

 5   in MBS showed that the net worth sweep was a non-event.  So

 6   all of the evidence, Your Honor, if anything, shows the

 7   opposite.

 8          But, of course, for Daubert purposes, the

 9   principal point is that there's no reliable basis for this

10   opinion.  They just -- they referred to a couple of analyst

11   reports that really don't even say that the MBS market was

12   reassured, they just kind of parrot their theory.

13          They say that the commitment -- that the net worth

14   sweep means that the commitment won't be exhausted as

15   quickly, and that's it.  That is not a basis for saying, as

16   Mr. Stern argued Dr. Attari's opinion was in closing, that

17   the market breathed a sigh of relief.  They do nothing to

18   separately provide a basis for claiming -- for providing a

19   reliability basis for asserting that the MBS market was

20   reassured.

21          Moving to the first -- to the pre net worth sweep,

22   the notion that there was concern among the MBS market, it's

23   a similar point, Your Honor.  There's no quantitative

24   information.  All the quantitative information is on our

25   side, which shows increased bond -- increased MBS issuances
```

1    over the prior year, reports that say that this is going to

2    be a good year for MBS.  Absolutely nothing that could

3    provide a reliable basis for Dr. Attari to opine

4    specifically about MBS investors and that there was

5    widespread concern.

6              Again, all he does is refer to an analyst report,

7    frankly an analyst report that didn't even -- that even

8    pre-dated the good economic news of 2012.  And that just

9    sort of parrots their theory.  That is not a reliable basis

10   to make the kind of sweeping statements that they make on

11   page -- and that we outline on page 23 of our brief,

12   Your Honor.  So I'll let my friend Mr. Bergman respond.

13             THE COURT:  Okay.

14             MR. BERGMAN:  David Bergman for defendants,

15   Your Honor.

16             I understand plaintiffs to be primarily critiquing

17   Dr. Attari for failing to isolate the MBS market from the

18   bond market.

19             In fact, Dr. Attari did not lump them together or

20   conflate them indiscriminately.  He addressed the MBS and

21   bond markets and MBS and bond investors separately at trial.

22             He explained the different characteristics of

23   bonds and MBS.

24             He explained the Fannie and Freddie guarantees.

25             And he explained where the bonds and the MBS are

1    in the capital structure.

2            He explained the relationships among MBS bonds and

3    equity.

4            And he explained how the Treasury commitment was

5    important to each.

6            He explained how and why the MBS and bond

7    investors faced similar risks and how they shared similar

8    concerns.

9            The analyst reports reflect all of this.

10           Dr. Attari cited some analyst reports that

11   addressed expressly both MBS and debt.  Others not expressly

12   but speak broadly of market concerns and reactions to

13   potential credit downgrades and the like, all relevant to

14   both MBS and bond investors, and Dr. Attari explained that.

15           Other analyst reports address more broadly the

16   financial condition, and Dr. Attari connected the dots

17   between those reports and specific concerns of both MBS and

18   bondholders.

19           Some of the examples of analyst reports that

20   expressly identified both MBS and debtholders, some are

21   before the Third Amendment, that's the Deutsche Bank,

22   Barclays, B of A, all from the Third Amendment.

23           And then some are after the Third Amendment.

24   So as Mr. Kaplan delineated, some are explaining there was

25   concern in the market before the Third Amendment.  Others

```
 1    explain that after the Third Amendment, those concerns have

 2    been alleviated.  Those are -- again, after the Third

 3    Amendment, there's a Barclays, RBC Capital, JPMorgan,

 4    Amherst Securities, others.

 5              This is not a quantitative analysis, Mr. Kaplan is

 6    surely right about that.  But it's a qualitative analysis.

 7    And Dr. Attari testified that it is typical of the work that

 8    experts in his field do to review analyst reports from the

 9    time of events and try to study what they mean.

10              We cited similar cases that have -- we cite cases

11    that have admitted similar expert analysis.  The SEC v.

12    Ustian case was a market awareness survey.  That's very

13    similar to what Dr. Attari did here.  Not statistical.  It

14    was a survey for the same kind of purpose that Dr. Attari

15    had.

16              The Gray case, similar, a review and summary of

17    analyst reports to show contemporaneous sense of the

18    markets, is what the Court said there.

19              This is not cherry-picking.  Cherry-picking

20    implies that Dr. Attari was disregarding adverse evidence.

21    Plaintiffs haven't cited anything to the contrary, they

22    haven't pointed to any reports that say that the Third

23    Amendment hurt the credit or upset the markets.

24              And I don't hear plaintiffs alleging that

25    Barclay's, B of A, Deutsche Bank, RBC and others are
```

 1    outliers and not credible.

 2          Finally, I will say the Court addressed similar

 3    arguments from plaintiffs in connection with trial one.  Not

 4    specific to this case, but it was a challenge to a different

 5    expert, Dr. Kothari's use of public information, including

 6    analyst reports, made the same kind of arguments that the

 7    plaintiffs are making here.

 8          The Court denied that motion in limine, said that

 9    an expert can provide specialized context for understanding

10    how to connect the dots, placing context especially where

11    testimony concerns matters that are arguably beyond the

12    average juror's comprehension.

13          Your Honor, that reasoning applies here.  It was

14    correct then and it is correct now.  Thank you.

15          THE COURT:  Where did I do that?

16          MR. BERGMAN:  I'm sorry, Your Honor, that was in

17    connection with the October 2022 motion in limine decision

18    in trial one.

19          THE COURT:  Okay.

20          MR. BERGMAN:  I have a Westlaw cite if Your Honor

21    needs it.

22          THE COURT:  That's all right.

23          MR. BERGMAN:  Thank you.  Thank you.

24          MR. KAPLAN:  Your Honor, I'll just to be very

25    clear about what this motion is about.  I will be appearing

1    before you later to talk about our separate motion on

2    analyst reports.

3              But this motion is about the specific opinion that

4    the net worth sweep reassured mortgage-backed security

5    holders, and that there was concern among mortgage-backed

6    security holders.

7              And what we didn't hear at all from Mr. Bergman

8    was any rebuttal of that point.  He attacked a strawman that

9    said -- or said we were making an argument that Dr. Attari

10   never talks about those two groups of investors separately.

11   That is not our argument, Your Honor.

12             And our argument is not that Dr. Attari should be

13   prohibited from talking about MBS investors, talking about

14   bond investors and/or be prohibited from offering his

15   opinions in toto or anything like that.

16             It is very specific to the fact that there is no

17   reliable basis for him to say that mortgage-backed

18   securities holders were reassured that they saw -- that they

19   were concerned about this risk or that -- and that the net

20   worth sweep reassured them.

21             It doesn't even -- Mr. Bergman says this is a

22   qualitative analysis.  That's another way of saying,

23   Your Honor, that it takes a few snippets from a couple of

24   analyst reports and throws them down as the basis for his

25   opinion.

 1          There is nothing here to suggest -- and, again,

 2     all the quantitative evidence is to the contrary.  There's

 3     nothing to suggest a reliable basis for those two specific

 4     opinions with respect to MBS investors that we are seeking

 5     to exclude with this motion.  Thank you, Your Honor.

 6          THE COURT:  All right.

 7          MR. RAMER:  Good afternoon.  John Ramer on behalf

 8     of plaintiffs.

 9          We're going to be turning to plaintiffs' omnibus

10     MIL now.  And I'm going to be starting with MIL No. 4, which

11     concerns the deposition testimony of former Freddie Mac CEO

12     Mr. Layton regarding an alleged meeting he had with

13     representatives from the major mortgage securities dealer,

14     Credit Suisse.

15          And according to Mr. Layton, representatives from

16     Credit Suisse told him that they had concerns about the

17     possibility of an erosion to the Treasury commitment should

18     a borrowing cap under the PSPAs be implemented going into

19     2013.

20          And as Your Honor certainly recalls, this issue

21     arose at trial one.  And Your Honor permitted defendants to

22     introduce these Credit Suisse statements based on two

23     assertions made by defendants:  The first was that

24     defendants were not offering the Credit Suisse statements

25     for the truth of the matter asserted, but, rather, for the

1    effect on Mr. Layton.  And the second was that there was

2    some evidence that Mr. Layton relayed the concerns of

3    Credit Suisse to FHFA.  As it turned out, however, neither

4    assertion held up at trial one.

5           For starters, at closing, defendants were arguing,

6    as we've already heard today, that part of Mr. DeMarco's

7    motivation for adopting the net worth sweep was due to

8    alleged market concern regarding the potential erosion of

9    the Treasury commitment should the borrowing cap take

10   effect.

11          And during closing, counsel displayed a slide

12   quoting Mr. Layton's deposition testimony to, in defense

13   counsel's words, confirm and corroborate Mr. DeMarco's

14   testimony regarding that fact.

15          Defense counsel then read from the slide with

16   Mr. Layton's deposition testimony and then stopped and said

17   to the jury, "Here is the most important part of this."

18   Defense counsel then proceeded to read the Credit Suisse

19   statements and said to the jury, "So this is the investors

20   themselves saying that summer that they had a concern."  And

21   defense counsel underscored the point saying, "That's how

22   you know, members of the jury, that the circular draw and

23   the problem of erosion is not just a plot by Mr. DeMarco or

24   a figment of his imagination."  This is Mr. Layton.  "This

25   is Credit Suisse.  This is the entire market expressing

1    these concerns."

2           In other words, according to defense counsel, the

3    jury didn't need to take Mr. DeMarco's word for it because

4    Credit Suisse thought the exact same thing.  And I think

5    then the defendants transparently offered the Credit Suisse

6    statements for the truth of the matter asserted.

7           And on the second point with respect to whether

8    Mr. Layton relayed Credit Suisse's concerns to FHFA,

9    throughout the entirety of trial one, defendants offered

10   zero evidence that the Credit Suisse statements were ever

11   relayed to FHFA.

12          And now still all they offer is a document with

13   some vague reference to investors in meeting agenda talking

14   points, yet Mr. DeMarco never mentioned Credit Suisse, no

15   one from FHFA mentioned Credit Suisse.

16          And I think perhaps most telling was Mr. Layton's

17   response during his deposition when he was asked if he could

18   remember whether anyone from FHFA -- yeah, whether anyone

19   from FHFA was at the Credit Suisse meeting.  And he said no.

20          But then notice what he did not say.  He did not

21   say, no, but I told Ed DeMarco the following day; nor did he

22   say, no, but during our weekly meetings, I, of course,

23   relayed what Credit Suisse said to me.

24          Instead, he said, no, I was told that

25   Credit Suisse was, "making the rounds in Washington, and so

1    I was left with the impression that Credit Suisse met with

2    FHFA."  So Mr. Layton didn't even suggest that he told

3    anyone at FHFA about Credit Suisse.

4         And I'll just close with one final point,

5    Your Honor, which is, at trial one, Your Honor correctly

6    precluded defendants from offering hearsay statements

7    contained in securities analyst reports.

8         And defendants were making the exact same argument

9    that they're making here, which is that they weren't

10   offering the statements for the truth of the matter

11   asserted, they were offering them to show the effect on

12   FHFA's decision-making.

13        And Your Honor correctly rejected that argument,

14   because there was no evidence that anyone at FHFA actually

15   relied on the specific statements that defendants intended

16   to offer.

17        And the exact same is true here.  There's no

18   evidence that anyone at FHFA considered or relied upon the

19   specific Credit Suisse statements made to Mr. Layton, and so

20   we think the results should be the same and defendants

21   should be precluded from offering the Credit Suisse

22   statements.

23        MR. BERGMAN:  Your Honor, David Bergman again for

24   defendants.

25        This is the same objection, same argument that we

1    all heard in trial one.

2         Mr. Layton's testimony was not offered for the

3    truth of the matter, it was not offered to try to show that

4    the Treasury commitment would, in fact, be eroded.  It

5    wasn't even offered to say that Credit Suisse had a genuine

6    belief of that.  It was offered for the purpose of showing

7    that Credit Suisse said this.  And Mr. Layton was, as

8    Your Honor ruled, a key person, he heard it, and it affected

9    his thinking.

10        Mr. Layton may not have -- he did not testify at

11   trial that he told this to Mr. DeMarco.  He wasn't asked

12   that.  Mr. Layton was a good deponent and he answered the

13   questions he was asked.

14        But he did testify that he had weekly meetings

15   with Mr. DeMarco.  He did testify that it was his belief

16   that Mr. DeMarco was aware of this and may have met with

17   Credit Suisse.

18        And as I say, Mr. Layton was CEO of Freddie Mac;

19   weekly meetings with Mr. DeMarco.  There's also an agenda

20   for a meeting among Mr. Layton, Mr. DeMarco, and Treasury

21   from June 26th, 2012, approximately the time that he fixed

22   his -- the Credit Suisse meeting, and that agenda includes

23   discussion of market concern over erosion of the Treasury

24   commitment.

25        Dr. Dharan, plaintiffs' expert, has conceded that

1    FHFA was monitoring analysts and market commentators and

2    market participants.  And Mr. DeMarco testified he was aware

3    generally of market concerns and concerned about them.

4            In this context, especially where plaintiffs have

5    argued that the concern about erosion of the Treasury

6    commitment is a mere pretext, it is important and really

7    probative to be able to show that market -- key market

8    participants like Credit Suisse were expressing these

9    concerns to key players like Mr. Layton.  So this is

10   appropriate evidence offered for a non-hearsay purpose and

11   ask that, as in trial one, Your Honor permit use of that

12   testimony.  Thank you.

13           MR. RAMER:  Just some -- a couple of brief points,

14   Your Honor.

15           First, I don't think there's -- you can reasonably

16   read the transcript or have reasonably sat in the courtroom

17   and not think that the defendants were offering the

18   Credit Suisse statements for the truth of the matter

19   asserted the way they were presented to the jury.  And the

20   way they were presented to the jury was, here is how you

21   know this is true; Credit Suisse thought it, too.

22           And with respect to whether this was ever passed

23   on to FHFA, defendants really just fall back to this idea

24   that, oh, well, they were aware of concerns generally.  But

25   that's not the relevant standard, Your Honor, that's not the

 1   correct legal standard that Your Honor adopted with respect

 2   to the securities analyst reports, which is that the

 3   specific reports had to be considered by FHFA.  And you can

 4   search the testimony of folks from FHFA; there's zero

 5   mention of Credit Suisse at trial one.

 6            And then the last point is, Mr. Bergman stressed

 7   how important it is to defendants to prove this point.  That

 8   doesn't allow them to bring the hearsay in; it's got to be

 9   admissible evidence.  And the point -- that is why it is so

10   prejudicial to have defense be able to invoke the imprimatur

11   of Credit Suisse to the jury to support their argument for

12   why Mr. DeMarco adopted the net worth sweep.

13            MR. KAPLAN:  Your Honor, Sam Kaplan arguing the

14   MIL on analyst reports.

15            Your Honor, there are two issues here that were --

16   six analyst reports that were -- played some role at trial.

17   Two were admitted and four were -- they were allowed to be

18   displayed to the jury through Dr. Attari's testimony, and

19   those, of course, present different issues, and so I will

20   address them separately.

21            THE COURT:  Okay.

22            MR. KAPLAN:  I'll begin with the two that were

23   admitted into evidence.

24            And let's start with Your Honor's ruling on

25   analyst reports, which neither party challenges.

1          It says:  "Defendants may not offer the securities

2   analyst reports unless they can show that any specific

3   report factored into FHFA's decision-making process."

4          Now, on the first two, I will note that the

5   defendants correctly note that they haven't yet tried to

6   introduce these reports at this trial, they haven't laid the

7   foundation.  But they have argued that the foundation that

8   they laid at the prior trial would be enough, and that is

9   wrong, and let me explain why.

10          They have to show that it factored into FHFA's

11   decision-making process, the specific report did.  One of

12   them is a March 14th, 2012, report that was forwarded to

13   Mr. DeMarco from -- by Mario Giulietti with the comment:

14   "A reasonable summary, I am noting, as your appearance in

15   New York is listed right before this piece."

16          What he is saying there, Your Honor, is that the

17   only reason he's forwarding this report to Mr. DeMarco is

18   because a page on top of the analyst report says that

19   Mr. DeMarco will soon be appearing at a Deutsche Bank

20   conference.

21          And sure enough, if you look at that analyst

22   report, on top of it is an itinerary or a schedule for the

23   conference.  There is zero evidence that that report figured

24   into the decision-making process on the net worth sweep.  It

25   was from March 2012.  Mr. DeMarco never said he relied on it

1    in any way, shape, or form, never even said he read it.  For

2    all we know, he looked at the first page and said, hey,

3    there's my name and threw it in the trash.  We just don't

4    know.  And so that is not adequate foundation under

5    Your Honor's ruling.

6            The other report, you can tell right off the bat

7    that there's not adequate foundation for factoring into the

8    decision-making process, because it was at -- it's attached

9    to a meeting notice that post-dated Mr. DeMarco's having

10   made the decision on the net worth sweep.  It didn't

11   actually post-date the net worth sweep itself which was --

12   or at least its announcement, which was on August 17th, but

13   it was on August 15th, and Mr. DeMarco had made his decision

14   before then.  And there's no, again, testimony from

15   Mr. DeMarco that he relied on it.

16           And I will note, Your Honor, that though

17   Your Honor did admit these at the prior trial, Your Honor

18   never ruled on the basis of -- that it met Your Honor's

19   prior standard.  There was a lot of -- the analyst reports

20   caused a bit of confusion at the last trial.  And when these

21   came in, it was actually right before Dr. Attari's testimony

22   and about what reports he could rely on.

23           And Your Honor said, "The objections will be

24   overruled, there are proper bases for the opinion, and the

25   documents are admissible as part of the expert's opinion and

1   in support of his opinion.  All right.  As soon as the jury

2   is ready, then we will proceed."  But Your Honor never

3   applied Your Honor's prior standard to those two reports.

4          Now, what ended up happening was the defendants

5   treated it as if two had been admitted for all purposes and

6   the rest could just be disclosed as would be permitted under

7   Rule 703.  But Your Honor's never ruled applying that prior

8   standard to those two reports.  And once Your Honor does,

9   they can't be admitted under that standard.

10          So that leaves the question about whether it is

11   proper for Dr. Attari to disclose these analyst reports and

12   then for the defendants to talk about them in closing, to

13   disclose their content in the closing argument.

14          And, Your Honor, again, this is a narrow question,

15   because we're not -- we're not saying that Dr. Attari can't

16   rely on the analyst reports, but what we are saying is that

17   they have not met the specific standard under Rule 703 for

18   disclosing facts and data that would otherwise be

19   inadmissible.  That standard is highly demanding, it is:

20   "Facts or data would otherwise be inadmissible.  The

21   proponent of the opinion may disclose them to the jury only

22   if their probative effect in helping the jury evaluate the

23   opinion substantially outweighs their prejudicial effect."

24   "Substantially outweighs their prejudicial effect."

25          And, Your Honor, they don't even try to meet that

1   standard in opposing our motion.  I don't even think they

2   mention it.  And they can't meet that standard with these

3   analyst reports.

4          We know what the prejudicial effect is of these

5   analyst reports.  They're rank hearsay, and there's an

6   extreme risk that the jury is going to read -- just read the

7   analyst reports, hear what they said, and just view them as

8   another expert testifying in this trial, but one that we

9   cannot cross-examine, one that we cannot cross-examine about

10  the 2012 profits, the strong economic fundamentals, the

11  payment in kind, the deferred tax assets.  All of the types

12  of issues that are at issue in this case, these witnesses

13  are -- these are effectively witnesses who will be absent

14  from this case that we cannot cross-examine.  And so that's

15  the prejudicial effect.

16         And what's the probative value?  It's just

17  repeating what Dr. Attari's opinion is.  Dr. Attari's

18  opinion is this was reasonable for Mr. DeMarco to do this

19  for the reasons that Mr. DeMarco said.

20         And we're not saying he can't offer that opinion.

21  But what we are saying is he can't bring in his buddies

22  for -- I'm not saying they're really buddies, but his --

23  these analyst reports as sort of quasi-experts that we can't

24  cross-examine.

25         His opinion can be evaluated without looking at

```
1    them.  And under any circumstances, the probative value of

2    the -- I'm sorry, his opinion can be evaluated without

3    analyst reports.  And he can even say, I relied on analyst

4    reports, I relied on this, I relied on that.

5              But what we're talking about is reading these

6    analyst reports into the record, reading them to the jury,

7    effectively giving a book report on analyst reports.  He can

8    talk about all those things Mr. Bergman said that he talked

9    about, the difference between bond investors and

10   mortgage-backed securities investors, all of these things.

11   But he cannot -- they cannot meet the demanding standard of

12   Rule 703 for getting these analyst reports -- for having him

13   read those analyst reports to the jury effectively.  An

14   expert opinion is more than -- is not a vehicle, it's not a

15   conduit for hearsay.  Thank you, Your Honor.

16             MR. BERGMAN:  Your Honor, David Bergman again.

17             With respect to the two documents, DX412 and DX529

18   that were admitted, and our understanding is the Court did

19   admit them in trial one, they certainly were -- to my

20   knowledge, everyone understood they were admitted and they

21   were presented to the jury as available to the jury.

22             THE COURT:  What were the numbers again?

23             MR. BERGMAN:  DX412 and DX529.

24             And they were properly admitted because it was

25   apparent that they were considered by Mr. DeMarco.
```

1          DX412, as Mr. Kaplan said, is sent from

2     Mr. Ugoletti to Mr. DeMarco by email.  It's also identified

3     in Mr. Ugoletti's declaration that was admitted into

4     evidence in trial one.

5          And Mr. Ugoletti said, "FHFA considered market

6     analyst reports, watched and looked out for them, considered

7     them when making its decisions," and then identified

8     specifically two reports, one of which is a Deutsche Bank

9     report.

10         The second is the DX529.  That's in August 15, so

11    a couple days before the Third Amendment is signed.

12    Mr. Kaplan says, well, surely, Mr. DeMarco had made up his

13    mind.  But until that document is signed, anybody can walk

14    away; this is true in any contract.

15         And so Mr. DeMarco had testified very clearly that

16    he had a holistic approach, he considered a lot of different

17    information.  Specifically, he considered analyst reports.

18    He got emails from his staff.  He met with people.  And so

19    those two documents, I believe the Court got it exactly

20    right.  They have Mr. DeMarco's fingerprints on them,

21    Your Honor, and they are appropriately admitted for

22    substantive evidence.

23         With respect to the four documents that plaintiffs

24    have identified as documents that Dr. Attari relied upon and

25    the Court permitted him to disclose to the jury, again, the

1    Court was exactly correct, Mr. -- Dr. Attari's analysis was

2    reliable for the reasons that I described earlier in

3    connection with the first motion in limine.

4         Rule 703 permits disclosure to the jury, whereas

5    here the evidence is more probative than prejudicial.  That

6    is clearly the case here.

7         Dr. Dharan testified that there were no real

8    market concerns.  Dr. Attari says there were market

9    concerns.

10        How is a jury to resolve that if it can't assess

11   the basis for those opinions?  And we cited cases in our

12   opposition page 30 that have said, it's fair to disclose to

13   the jury where it is more probative than prejudicial.  It's

14   obviously Hornbook law.  But that's the case here.

15        And, again, Your Honor, relevant to this would be

16   the Court's earlier motion in limine decision with respect

17   to Dr. Kothari.  And I now do have a cite, so maybe I'll

18   save the Court ten seconds.  It's 2002 WL 13937460 at Star

19   3.

20        Thank you, Your Honor.

21        THE COURT:  What was the cite again?

22        Can you give me the cite again?

23        MR. BERGMAN:  Oh, sorry, Your Honor yes.

24        2002 WL 13937460 at Star 3.  Thank you.

25        THE COURT:  Mr. Kaplan.

1          MR. KAPLAN:  Thank you, Your Honor.

2          Your Honor, as to DX412 and DX529, first,

3  hopefully it was clear, those documents were admitted, we

4  were not saying they did anything wrong --

5          THE COURT:  Right.

6          MR. KAPLAN:  -- by relying on them in closing.

7  Our only point was that, in the way they were admitted,

8  Your Honor did not end up applying your prior standard to

9  those documents.

10          As for Mr. DeMarco relying on them, one rhetorical

11  question that I would ask is, why didn't he testify about

12  them if he relied on them.  He testified for a really long

13  time.  He didn't -- but he didn't mention those documents as

14  something that he relied on.

15          They also could have called Mr. Ugoletti, but they

16  didn't call Mr. Ugoletti.

17          They're trying to rely on these documents on their

18  face to say he relied on them, and they can't do that.  They

19  don't say on their face that Mr. DeMarco relied on them.

20          Moving to the reports, first of all, I would note

21  that my friend, Mr. Bergman, he didn't even articulate the

22  standard accurately in his argument.  And he omitted the

23  word "substantially," that it's got to be substantially more

24  probative than prejudicial to disclose this.

25          This is a highly demanding standard.  But they

1    don't -- they also don't show that it's more prejudicial

2    than probative [sic].

3            Counsel asks how is -- counsel asks rhetorically:

4    How could he possibly prove his opinion without relying on

5    the analyst reports?  The answer, Your Honor, is by talking

6    about his opinion with reference to the things that

7    Mr. DeMarco actually relied on, and saying it was reasonable

8    in light of those things.  Nothing that we have done or that

9    we have argued would prevent him from doing that.  If you

10   combine our arguments, what we're saying is that he can't

11   offer an unreliable event study to do it, and he can't just

12   be a conduit for reading things into the record that we

13   cannot cross-examine.

14           And by the way, Your Honor, one other reason that

15   that they're not that probative is that the analyst reports

16   don't have access.  It's not just -- the fact that we can't

17   cross-examine them is important, but the analyst reports

18   also don't even have access to the things that Mr. DeMarco

19   had access to or at least all of it.

20           This is another reason that they're really not

21   that probative of anything.  They're just paragraphs that

22   say something they like that is -- that resembles their

23   theory of the case.  And they use it to bolster, well, if

24   that analyst said Deutsche Bank guy said it, then that makes

25   two of them, Mr. -- Dr. Attari said it and the Deutsche Bank

1   guy.  And that's just not permitted under Rule 703,

2   Your Honor.  Thank you.

3              THE COURT:  All right.

4              MR. ZAGAR:  Eric Zagar for the plaintiffs,

5   Your Honor.

6              I will be addressing plaintiffs' motions in limine

7   No. 6 and 7, which are our motions to exclude the

8   forward-looking statements in Fannie Mae and Freddie Mac's

9   SEC filings, and to exclude Ross Kari, the former CFO of

10  Freddie Mac, his testimony about those statements.

11             This is not something that Your Honor ruled on in

12  the first trial, this is a new one.

13             We have moved to exclude the statements and --

14  excuse me, the forward-looking statements in the SEC filings

15  and the testimony about them on the grounds of hearsay.

16             And defendants don't dispute that the statements

17  would be hearsay unless they qualify for one or more

18  exceptions.  They point to two that they say they're

19  qualified for.

20             Their principal argument is that the

21  forward-looking statements in the SEC filings qualify as

22  business records under Rule 803(6).

23             But they have a serious problem, which is that

24  they can't lay the foundation that they need to qualify for

25  business records.

1          Subsection A, Rule 803(6)(A), requires evidence

2     that the record, in this case, the forward-looking

3     statements, was made at or near the time by or from

4     information transmitted by someone with knowledge.

5          There is no evidence of that whatsoever.  There is

6     no testimony from anyone about who made these statements,

7     what knowledge said person or persons had, nor what

8     information they relied on, nor who transmitted it to them.

9          It's not even clear, frankly, whether these

10    statements originated with someone at Fannie and Freddie or

11    someone at the FHFA, because Mr. Satriano, the chief

12    accountant, acknowledged that the FHFA had final authority

13    to approve or disapprove and make changes to the SEC filings

14    before they are filed.  So there is literally no evidence of

15    the origin, the process, anything about where these

16    statements came from, how they came to be, or who made them.

17              THE COURT:  Which motion is this now?

18              MR. ZAGAR:  This is plaintiffs' omnibus No. 6

19    and 7.

20              THE COURT:  What's the ECF number?  Do you have

21    that handy?

22              MR. ZAGAR:  It's Berkeley ECF No. 307.

23              THE COURT:  3-0?

24              MR. ZAGAR:  307.

25              THE COURT:  Okay.

1              Okay.  Go ahead.

2              MR. ZAGAR:  Okay.  Thank you, Your Honor.

3              So Subsection A, there is literally no evidence on

4    it whatsoever, so they can't meet that requirement.

5              They further have a problem that, under Subsection

6    D of Rule 803(6), which says that all of these conditions,

7    A, B, and C must be shown by the testimony of the custodian

8    or another qualified witness or by certification.

9              The only potential witness who even might even be

10   plausible to satisfy the requirements of Subsection D would

11   be Mr. Satriano, the chief accountant of FHFA.  But he is

12   clearly not the custodian of Fannie and Freddie's records,

13   and he is also not a qualified witness.

14             The case law makes it very clear that a qualified

15   witness must be able to testify about the recordkeeping

16   system of the organization at issue and must be able to

17   vouch that the requirements of Subsections A, B, and C were

18   met.

19             Mr. Satriano is not qualified.  He certainly has

20   some general knowledge about how Fannie and Freddie compile

21   their SEC filings.  But he was in no position to vouch that

22   the requirements were met.

23             There's no indication that he even has any

24   personal knowledge of the necessary information, such as all

25   the information for Subsection A about who made the

1 statements, what information they relied on, et cetera.

2       He offered no testimony about his knowledge of

3 that or even indicated that he had any such knowledge.

4       Without a witness and without being able to lay

5 the foundation through that witness, they simply don't

6 qualify for the business records exception.

7       Their secondary, and, I would say, far-distant

8 second argument, is that even if it's not admissible under

9 Rule 803(6) as a business record, it qualifies under the

10 residual exception of Rule 807, and that just is clearly not

11 the case.

12       If it doesn't qualify under Rule 803(6), there's

13 simply no way that they could get it in under Rule 807,

14 which requires "sufficient guarantees of trustworthiness."

15 The whole problem is they don't have sufficient guarantees

16 of trustworthiness, and that's why it's not admissible as a

17 business record or anything else.

18       So, Your Honor, both the statements in the SEC

19 filings and Mr. Kari's testimony about those statements,

20 they're hearsay, there's no exception, they should be

21 excluded.

22       MR. HOFFMAN:  Your Honor, Ian Hoffman once again

23 on behalf of the defendants.

24       As the Court knows, Your Honor, SEC filings are

25 incredibly reliable documents by their very nature.  Because

1   of the legal duties underlying their preparation and the

2   potential consequences of misstatements, they're prepared

3   with --

4           THE COURT:  You can be prosecuted.

5           MR. HOFFMAN:  Exactly, they can be prosecuted,

6   Your Honor.

7           And that's, ironically, a situation with another

8   motion which I didn't hear addressed yet but we can address

9   at the appropriate time.

10          But, yes, because the signers, Your Honor, can be

11  prosecuted there, they have all the hallmarks of reliability

12  and indicias of reliability, and there's more than enough

13  foundation here to meet both the business records exception

14  and the Residual Exception.

15          Your Honor, the SEC filings are paradigmatic

16  examples of business records.  Courts regularly find that

17  they're admissible under Rule 803(6) as outlined by the

18  various cases cited in our briefs.

19          It sounds like now plaintiffs might be making a

20  distinction between some parts of the SEC filings can be

21  admissible under the business record sections like the

22  numbers but not other parts of SEC filings, the

23  forward-looking statements.  They cite no cases or authority

24  for any such distinction, and all the cases that we cite in

25  our briefs admit those SEC filings in their entirety and not

1   segmenting out certain portions or not.

2          Here, Your Honor, the SEC filings easily meet all

3   four elements of Rule 803(6).

4          It appears there's no dispute as to two elements,

5   that is, 803(6)(B) and 803(6)(C).  And as Your Honor knows,

6   those are elements that are -- the record has to be kept in

7   the course of regularly conducted activity of the business,

8   and making the record was a regular practice of that

9   activity.

10          Your Honor, SEC filings by their very nature are

11   regular, they're maintained by the business, they're

12   publicly available for shareholders and the rest of the

13   public on the SEC's website, as well as Fannie and Freddie's

14   website, and they happen quarterly.  So for B and C, there

15   isn't any dispute and I didn't hear argument or see any

16   briefing on that either.

17          So that only leaves elements A, 803(6)(A), and

18   (D).  Here, there is ample evidence for both.

19          The SEC filings were made at the time by someone

20   with knowledge.  They were signed by the CFOs, Your Honor,

21   the CFOs of both companies.

22          Plaintiffs say there is no evidence in the record,

23   Your Honor.  But there is not only evidence in the record,

24   there was trial testimony on this very point.

25          And if Your Honor would allow just to put this

1    issue absolutely to bed, I will hand up some trial

2    transcript excerpts and a deposition transcript excerpt.

3              I've provided a copy to plaintiffs as well,

4    Your Honor.

5              And I've highlighted in those portions,

6    Your Honor, the relevant pieces for Your Honor and -- the

7    Court's reference at the appropriate time.

8              But first I'll say -- I'll address -- there's

9    three witnesses at issue here, three witnesses who all

10   testified about SEC filings.  And not just about the

11   truthfulness of what's in those filings but their knowledge

12   about them.

13             You heard from Mr. Satriano at trial, FHFA's chief

14   accountant.  And he testified, "We look at the financial

15   disclosures.  That's the things -- those are the kinds of

16   documents we spent a lot of time reviewing and commenting on

17   to ensure completeness and transparency."

18             He testified that "The Fannie and Freddie

19   management have the obligation to draft them in the first

20   instance and they undergo a robust review there."  This was

21   his testimony.  "And then they go to Mr. Satriano for

22   review.  They do their own robust review and sign off on

23   them through FHA's own process.  And then the CFOs of Fannie

24   and Freddie themselves sign off on them, and sign off on

25   them under potential criminal prosecution for false and

1  knowingly false statements."

2        Here, Your Honor, Ross Kari testified at trial,

3  albeit through an actor, through a deposition readout,

4  Your Honor.  But he testified at trial, "I was responsible

5  for managing the process that was focusing on ensuring the

6  accuracy of the financial statements.  It's the 10-Ks" --

7  and he defined what he meant by financial statements.  "It's

8  the 10-Ks and 10-Qs, and it's also the earnings release."

9  He plainly has knowledge, and he has knowledge required by

10 law, Judge, to sign this.

11       Ms. McFarland, in her deposition, said, she was

12 "familiar with our financial results."  This is in all the

13 materials that I handed up, Your Honor.  And she said she

14 "Reviewed the SEC filings to get comfortable and ultimately

15 sign off on those financials."

16       All this testimony, Your Honor, readily proves

17 that the filings were made both by someone with knowledge at

18 the company, the CFOs overseeing their teams, as well as by

19 Mr. Satriano with his knowledge of the company and his

20 team's knowledge of all of it.  That's element A.

21       Element D, Your Honor, follows the same course:

22 Are the elements of the exception shown by a custodian or

23 another qualified witness.

24       Here, there are three custodians or qualified

25 witnesses:  Mr. Satriano, Mr. Kari, and Ms. McFarland.

1          Mr. Kari and Ms. McFarland signed these documents.

2    So their testimony, Judge, about their knowledge of what's

3    in there and their review of them and their signing them is

4    more than enough to lay this foundation.

5          And if Your Honor recalls, in addition to giving

6    testimony, Judge, that they were familiar with the contents,

7    they also gave testimony that they were accurate.  They

8    walked through them; they said, that's my signature, and it

9    was accurate at the time.

10         That Mr. Satriano works for FHFA and not Fannie

11   and Freddie doesn't mean he's not a qualified witness,

12   Judge.  This Court has recognized that a qualified witness

13   is "interpreted broadly, and a witness can be qualified to

14   lay the foundation even if the records were created by

15   another entity."

16         I have a copy of the case, Your Honor, but I can

17   give you the cite.  It's *United States v. Al-Imam*.  That's

18   A-l-I-m-a-m.  The case is 382 F.Supp.3d 51 at pincite 59.

19   That's just standing for the principle, Your Honor, that --

20   qualified witness under 803(6)(D) can be broad, it doesn't

21   have to be the person who made the record.  All it has to be

22   is someone who's familiar as to how it was created.

23         Your Honor, I don't have to remind you that FHFA

24   is the conservator of Fannie and Freddie, and Mr. Satriano

25   is deeply familiar with the processes as to what goes on at

1    Fannie and Freddie, as well as at FHFA.  He's clearly

2    qualified.  And so, Your Honor, each of the elements is met

3    here from the mouth of the signers themselves.

4            Your Honor, these documents are also, I'll submit,

5    paradigmatic examples to meet the rigorous standard under

6    the residual exception to the hearsay rule.

7            As the cases we cite in our brief indicate,

8    including the *Pattison* case, they are eligible for the

9    Residual Exception.

10           Plaintiffs in their brief say the 807 is reserved

11   for documents that are very important and very reliable.

12           And, Your Honor, I think that is a good

13   characterization of Fannie Mae and Freddie Mac's SEC

14   filings.  They are both very important and very reliable.

15           And because of all of the "guarantees of

16   trustworthiness," as the *Pattison* case points out, that are

17   embedded here in the process of the filings, it's more than

18   enough to meet the Residual Exception here.  There's a clear

19   legal duty to prepare accurate SEC filings, and false

20   statements can result in civil and criminal penalties,

21   Your Honor.  That's more than enough here.

22           THE COURT:  All right.

23           MR. HOFFMAN:  Your Honor, brief indulgence.  Let

24   me see if my counsel, make sure I didn't miss something.

25           Thank you.  That's all for now.

1          MR. ZAGAR:  I'll try to be brief, Your Honor.

2          In terms of the statements potentially giving rise

3    to liability, they qualify for the safe harbor for

4    forward-looking statements.  The whole point in safe harbor

5    is that you can't be held liable if you give adequate

6    cautionary language.  And there's no dispute that Fannie and

7    Freddie did, so that's a non-issue.

8          In terms of the statements' so-called reliability,

9    again, let me be specific about the statements we're talking

10   about.  They're the statements like following:  Our

11   expectation that although we may experience period-to-period

12   volatility in earnings and comprehensive income, we will not

13   generate net income or comprehensive income in excess of our

14   annual dividend obligations to Treasury over the long term.

15         Our expectation that over time our dividend

16   obligation to Treasury will increasingly drive our future

17   draws under the Senior Preferred Stock Purchase Agreement.

18   Our expectation that sometime in future corridors, we will

19   be able to generate comprehensive income sufficient to cover

20   at least a portion.

21         So this is all about expectations of the future,

22   not financial statements based on audited numbers or even

23   reviewed numbers.  That's not what we're talking about here.

24   We're talking about the forward-looking statements of

25   expectation about what we think is going to happen in the

1   future.

2           And the rule is not about who signed off on the

3   statements.  The rule is about who made the statements.

4           I don't hear Mr. Hoffman saying that Mr. Satriano

5   or Ms. McFarland or Mr. Kari sat down at the keyboard and

6   typed out these statements from their own mind.  Yes, they

7   obviously reviewed them.  But whether they are the maker of

8   the statement, of every statement in a multi-hundred-page

9   document, there's no evidence of that.

10          And finally, when Mr. Hoffman says the statements

11  are reliable, they're in an SEC statement, they must be

12  reliable, well, the very first page of one of the 10-Qs

13  says -- this is Fannie Mae's 10-Q filed on August 8th of

14  2012.  Very first page:  "This report contains

15  forward-looking statements that are based on management's

16  current expectations and that are subject to significant

17  uncertainties and changes in circumstances."  So they say

18  right upfront these statements are not necessarily reliable,

19  we're making predictions about the future, we might not be

20  correct.

21          So the so-called inherent reliability of these

22  statements, because they happen to be in an SEC filing, is

23  actually quite the reverse.  They are inherently unreliable

24  because they're just predictions about the future that they

25  acknowledge, this kind of cautionary language, that they

1    might not turn out to be true.

2          So the fact that people reviewed them at a high

3    level doesn't tell you anything about what the origin of

4    these statements is, and it certainly doesn't tell you

5    anything about the truth of these statements, which is what

6    they're trying to use it for.  They should be excluded as

7    hearsay.

8          THE COURT:  All right.

9          MR. HOFFMAN:  Your Honor, if I may be heard

10   briefly.

11         Mr. Zagar addressed a motion that I didn't hear

12   him address actually in his opening so I didn't respond to

13   it so I'd like to respond to that and just a couple discrete

14   points just directly in response to what he said just now.

15         So this issue about forward-looking statements, it

16   was the subject of an entire sort of subsection of their

17   motion, and I believe it was just repeated in shorthand here

18   by Mr. Zagar.

19         In their opening brief, plaintiffs argued at

20   length that false statements in SEC filings cannot expose

21   anyone, forward-looking statements in SEC filings cannot

22   expose anyone to civil or criminal liability so long as

23   they're forward looking and they have these caveats.  And

24   the basis for that argument is the so-called safe harbor

25   provision in the law.

1          Plaintiffs are simply wrong on the point, and they

2     don't even contest as much in their reply.  The safe harbor

3     provision, Your Honor, comes from the PSLRA.  As Your Honor

4     well knows, that is the private-label securities reform act.

5          Private, it applies to one species of civil claims

6     brought by private parties.  It does not apply to any

7     government causes of action, including any criminal action

8     here.  So the notion, which, again, I think was just

9     repeated by Mr. Zagar, that forward-looking statements

10    cannot be the basis for civil liability, let alone a

11    criminal conviction because of the safe harbor provision of

12    the private act is wrong, and we cite a bunch of cases

13    describing why that's wrong, and plaintiffs don't dispute

14    that in their reply.

15         Now, they retreat to making a slightly different

16    argument that, well, you might have to prove scienter for

17    some claims, and -- well, actually, they say you have to

18    prove scienter for all civil claims, I believe, or civil

19    fraud and criminal.

20         That's also not true.  There are government

21    enforcement actions that can be brought.  And I know

22    Your Honor probably doesn't need to get into the nuance

23    here, but there are government civil enforcement actions

24    that can be brought for essentially negligent misstatements

25    in SEC filings.  And so scienter is not required across the

1   board either.  It might be required for some sort of

2   subspecies.

3            But if you look at the briefing as to what my

4   partner said in closing argument, it is perfectly consistent

5   with the law, and should, of course, be permitted to say the

6   same in trial, too.

7            Now, Your Honor, briefly --

8            THE COURT:  I think I locked up a couple of people

9   for that myself.  So I think I --

10           MR. HOFFMAN:  Fair enough, Your Honor.

11           And I don't think the safe harbor provision was a

12   valid defense.

13           THE COURT:  It didn't protect them.

14           And I think -- I don't think I got reversed on

15   this, but we'll see.  I can't remember every reversal.

16           MR. HOFFMAN:  Your Honor, there was a lot said

17   about forward-looking statements and how those are

18   unreliable, even though they appear in the SEC filings.

19           Your Honor, as my evidence professor in law school

20   would say, that goes to the weight of the evidence,

21   Your Honor, not its admissibility.  Simple enough.

22           They can tell the jury to give those less weight

23   because of the caveats and the uncertainty of the future, as

24   they just explained, but that does not affect its

25   admissibility, particularly in light of the foundation that

```
1    is laid.  And they also, again, don't cite any authority for
2    this distinction they're making between the numbers versus
3    the forward-looking statements in the filing.
4            Finally, Your Honor, plaintiffs -- I'm not sure I
5    totally follow the argument, but they seem to be making the
6    argument that even though the chief financial officers of
7    Fannie and Freddie signed these, and they signed these in
8    the law -- to be clear, Your Honor, the law requires the
9    signatories to sign them based on the officer's knowledge.
10   That is a quote from the statute.  And just for the Court's
11   reference, it's 15 U.S. Code 7241.
12           So even without any testimony, Judge, there's
13   ample evidence that the chief financial officers had
14   knowledge of what was in those filings, because they signed
15   them, and the law requires that the signature be based on
16   the officer's knowledge.  But even beyond that, Your Honor,
17   there is specific testimony in this case that the chief
18   financial officers were familiar with the contents.
19           The suggestion that the chief financial officer is
20   not sufficient, the chief accountant who oversees -- the
21   chief accountant at FHFA who oversees the process is not
22   sufficient but that we need to go hunt around to find who at
23   Fannie Mae and Freddie Mac actually typed those words,
24   I think is the suggestion, and cross-examine them about it,
25   that there's no basis for that whatsoever, Your Honor.
```

1   These documents are incredibly reliable, the foundation is

2   well laid, and they should be admitted into evidence.

3   Thank you, Your Honor.

4              MR. GOODHART:  Good afternoon, Your Honor.

5   Frank Goodhart for the Class Plaintiffs.

6              I'll be presenting argument on plaintiffs' omnibus

7   motion in limines numbers --

8              THE COURT:  I'm sorry, I can't quite hear you.

9              MR. GOODHART:  I'll be presenting argument on

10  plaintiffs' omnibus motions in limine Nos. 2 and 8, as well

11  as responding to defendants' omnibus motion in limine No. 1,

12  which we believe are kind of overlapping similar issues that

13  make sense to address at the same time.

14             So through plaintiffs' motions in limine No. 2 and

15  8, plaintiffs are seeking to exclude the irrelevant

16  deposition testimony of certain former GSE executives and

17  FHFA employee:  Ms. Naa Awaa Tagoe, Mr. Timothy Mayopoulos,

18  and Mr. Ross Kari.  And this deposition testimony concerns

19  the executives' reactions to and opinions regarding the

20  Third Amendment and its purpose.

21             Now, there's no dispute between the parties in

22  this action that these executives did not participate in any

23  discussions or take part in the process that led to the

24  adoption of the Third Amendment.  These witnesses all

25  testified as much that they were not involved, and each of

```
 1    them learned after the fact that -- learned of the Amendment
 2    after it had already been agreed to.  And in the case of
 3    Ms. Tagoe, she learned after it had been announced.
 4            So because they were not involved and have no
 5    personal knowledge of that process, for the reason, the
 6    motivation or purposes behind why the Third Amendment was
 7    agreed to, their testimony as to what its purpose is is in
 8    violation of Federal Rule of Evidence 602's requirement that
 9    a plaintiff -- or that a witness has to have personal
10    knowledge of something to testify to it, and any testimony
11    as to their opinions of the net worth sweep and its effects
12    are improper lay opinion testimony as well.
13            So what I'd like to do, Your Honor, is go through
14    the testimony that we're talking about, and we'll start with
15    Ms. Tagoe's testimony.
16            And I have some handouts that might be helpful to
17    Your Honor as we go through this.
18            So this handles also Exhibit 2A to plaintiffs'
19    omnibus brief.
20            So Ms. Tagoe was asked at her deposition at pages
21    252, lines 15, to 253, line 3:  "What was your reaction when
22    you heard about it?"  "It" referring to the net worth sweep.
23            And she said:  "You know, I don't remember my
24    initial reaction.  I will say that in the period leading up
25    to that, we had been putting out these projections where we
```

1    were, you know, signaling that, in some scenarios, the

2    enterprises, you know, that projected Treasury draws, you

3    know, were in part because of that of the dividend, and so,

4    you know, I could understand how the net worth sweep

5    replacing that dividend rate would address that issue."

6              So, first, Your Honor, I'd point out that

7    Ms. Tagoe explicitly says she does not remember her reaction

8    to the net worth sweep.

9              So defendants argue in their opposition that these

10   officials have personal knowledge of their own reactions for

11   purposes of Rule 602.  But Ms. Tagoe says that she does not

12   remember her reaction, so that's not true for her case.

13             And really, she's not giving her reaction in this

14   testimony.  What she's doing is she's giving a justification

15   for it and speculating as to what the purpose of the Third

16   Amendment was.

17             She said:  "I could understand how the net worth

18   sweep would address the issue of projected draws being the

19   result of the 10 percent dividend in certain scenarios."

20             So this testimony is not based on Ms. Tagoe's

21   personal knowledge of what the net worth sweep was supposed

22   to address because she has no personal knowledge because she

23   was not involved in that decision.  What she only offers is

24   after-the-fact belief or inferences as to what it was meant

25   to address.

1          And also, her opinion that the Third Amendment was

2    meant to address this is improper opinion testimony and is

3    not rationally based on any perception because she never

4    perceived any discussion by those who made the decision

5    concerning what they were trying to address.

6          Now, defendants' opposition, Your Honor, argues,

7    well, Ms. Tagoe oversaw FHFA's GSE modeling division, so she

8    had personal knowledge of FHFA's projections.  And they say

9    that, well, she's connecting the Third Amendment to those

10   projections that she has knowledge of.

11         But, Your Honor, connecting is just a fancy word

12   for speculating, because in her testimony, she's not really

13   talking about her projections, she's explicitly claiming

14   that she believes the Third Amendment was meant to address

15   this issue and the projections that she perceived.  So she

16   has no knowledge of whether that's true or not.

17         And before I move on, there's one other point

18   I want to raise with respect to Ms. Tagoe.  And this is not

19   referenced in our briefing on this particular motion in

20   limine.  But as Your Honor may be aware, the parties have

21   separately submitted a joint submission on objections to

22   deposition designations, and we've also separately

23   identified identical sets of agreed-to deposition

24   designations in our pretrial statements.

25         And in there, the parties acknowledge that certain

1    designations are still pending Your Honor's ruling on

2    certain motions in limine.  And the parties have reserved

3    all rights to further object to those deposition

4    designations depending on how Your Honor rules on these

5    motions in limine.

6            So I guess I'm previewing that if Your Honor rules

7    that Ms. Tagoe is allowed to offer this sort of testimony

8    about her after-the-fact suppositions regarding what the

9    purpose of the net worth sweep was to address, this is one

10   of the designations that plaintiffs believe is separately

11   objectionable under Rule 32.  And that's because this is a

12   stand-alone designation that comes well over 100 pages in

13   the deposition transcript, after anything that plaintiffs

14   have designated.  And so it doesn't relate to anything we

15   designated, so it's not proper to force plaintiffs to play

16   it in their case.

17           But plaintiffs would separately object to

18   defendants playing it in their case-in-chief, because

19   Ms. Tagoe is a current FHFA employee and she's otherwise

20   available for trial.  So if Your Honor rules that Ms. Tagoe

21   can offer this testimony and FHFA wants to offer it, they

22   have to call her live to do so.  So I just wanted to preview

23   that Rule 32 objection because I think it's relevant to the

24   overall question of, if this testimony is admissible, how it

25   can properly come in.

1    So next, Your Honor, I would like to talk about

2  Mr. Mayopoulos, and I have a separate handout for him as

3  well.

4    So Mr. Mayopoulos was asked at his deposition, at

5  page 146, lines 9 to 13:  "Do you remember what your first

6  reaction was when you heard about the Third Amendment?"  And

7  he says:  "I don't remember what my reaction was."

8    His testimony then continues at page 147, 3 to 5

9  of the transcript.  He said:  "I think I understood at least

10  some of the issues that people were trying to address by the

11  Amendment."

12    And then he further went on.  Starting at pages

13  148, line 1 through 12, he says:  "I think it was trying to

14  preserve as much of the amount of the Treasury commitment

15  under the PSPA as possible, and trying to reduce the

16  possibility that future draws might -- especially future

17  draws for dividend payments, might diminish the amount that

18  was available under the PSPA enterprises.  So that had been

19  a discussion of some concern to people -- that was something

20  that, if there was going to be an amendment to the PSPA,

21  that was something that people were talking about trying to

22  address."

23    So just like Ms. Tagoe, Mr. Mayopoulos is

24  explicitly speculating as to what the reasons for approving

25  the Third Amendment were.  But, again, he has no personal,

1    firsthand knowledge of that because he was not involved.

2              And he explicitly says what he thinks the Third

3    Amendment was "trying to do," and he says he bases that

4    belief on "what people were talking about trying to do."

5              So he's speculating as to intent when he's not in

6    the room, Your Honor, and he's basing that speculation on

7    what some undefined people were talking about trying to do.

8    So it's speculation based on hearsay ladened into this

9    testimony, Your Honor.

10             Now, defendants' opposition claims, well,

11   Mr. Mayopoulos was the CEO of Fannie Mae.  And he did big,

12   important things like sign SEC filings and meet with FHFA

13   officials on-site.  But to be clear, none of those meetings

14   were about the Third Amendment, Your Honor.  And none of

15   that changes that he was not involved in the conversation

16   leading to the Third Amendment.

17             And just like Ms. Tagoe, Mr. Mayopoulos testifies

18   verbatim:  "I don't remember what my reaction was."  So,

19   again, defendants say he has personal knowledge of what his

20   reaction was.  That's not what he's saying.

21             THE COURT:  I really don't like that kind of

22   nit-picking of testimony.

23             He's the CEO, and because he says I don't remember

24   my exact reaction, you're saying he can't testify about it?

25             MR. GOODHART:  Well, what I'm saying --

1              THE COURT:  That's crazy.

2              MR. GOODHART:  Well, what, respectfully, I'm

3    trying to --

4              THE COURT:  I'm sorry.  I'll try to let you get

5    through the argument, but that is -- it's really a

6    preposterous argument to pick those words out of a CEO's

7    testimony and say, because of that remark, I'm going to not

8    let him testify about the whole subject.

9              MR. GOODHART:  Well, it's not just that he didn't

10   remember, it's that he wasn't involved in the decision,

11   Your Honor.

12             THE COURT:  He was involved.  He's the CEO.  How

13   could he not be involved?  He was involved.

14             MR. GOODHART:  No, Mr. Mayopoulos testifies he was

15   not involved in the decision to implement the Third

16   Amendment.  He didn't learn about it even until after the

17   decision.

18             THE COURT:  I understand.

19             But I guarantee you the CEO knew what was going

20   on.  He wasn't some bystander off the street the way you're

21   making it sound.

22             MR. GOODHART:  He was certainly not a bystander.

23             THE COURT:  You know he knew what was going on.

24             I know he knew what was going on.

25             MR. GOODHART:  Your Honor, we're not claiming he

1    was a bystander.  I agree with Your Honor, he was no

2    bystander.  But he wasn't in the room is the point that

3    we're trying to make.

4             THE COURT:  That's a preposterous argument.

5             I'll try to resist.  Go ahead.

6             MR. GOODHART:  I'd like to now move on to

7    defendants' -- or Ms. McFarland's testimony that defendants

8    are seeking to exclude in their omnibus motion in limine

9    No. 1.

10            So plaintiffs' position is that this testimony is

11   substantively similar to the testimony of Ms. Tagoe,

12   Mr. Mayopoulos, or Mr. Kari that I just discussed.

13            And the point that plaintiffs are trying to make

14   through their response to this motion is that all this

15   testimony should be treated the same.  So what I'd like to

16   do is hand up -- hand out the testimony that this motion

17   focuses on so Your Honor can see it.

18            So looking at page 44, starting at line 17,

19   Your Honor, Ms. McFarland was similarly asked:  "What was

20   your reaction to the Third Amendment?"  And she provided the

21   following response -- which it starts at line [sic] 44, line

22   25, because the parties have agreed to cut some irrelevant

23   testimony in the middle there.

24            She says:  "I had shortly before that had a

25   meeting with Treasury whereby we reviewed our forecasts, I

1    had expressed a view that I believed we were now in

2    sustainable profitability, that we would be able to deliver

3    sustainable profits" --

4              THE COURT:  Well, she had something for everybody

5    at this trial.  I mean, I don't know what --

6              MR. GOODHART:  She knows a lot, Your Honor.

7              She says:  "I even mentioned the possibility that

8    it could get to a point in the not-so-distant future where

9    the factors might exist whereby the allowance on the

10   deferred tax asset would be released.  We were not there

11   yet, but, you know, you could see positive things

12   occurring."

13             Now, that portion of her response, Your Honor, is

14   not objected to.  But she continues, and this following

15   portion is what defendants are objecting to, but it's all

16   part of one full response.

17             And she goes on:  "So when the Amendment went into

18   place, part of my reaction was they did that in response" --

19             THE COURT:  What page are you on there?

20             MR. GOODHART:  I'm sorry, I couldn't hear.

21             THE COURT:  What page are you on?

22             MR. GOODHART:  Oh, I'm sorry.

23             This is -- this should be cross-over from page 44

24   into 45.

25             THE COURT:  All right.

1          MR. GOODHART:  Do you see it?

2          45, starting line 11.

3          So she says:  "When the Amendment went into place,

4   part of my reaction was that they did that in response to my

5   communication of our forecast and the implication of those

6   forecasts; that it was probably desired not to allow capital

7   to build up within the enterprises and not allow the

8   enterprises to recapitalize themselves."

9          So defendants move to exclude this second portion

10  of her response.  And they make the same arguments to

11  exclude this testimony that plaintiffs made in their motion

12  in limine No. 2 and No. 8; that, one, Ms. McFarland doesn't

13  have the personal knowledge of what the reasons for entering

14  into the Third Amendment were because she was not involved;

15  and, two, that the testimony is just speculation as to why

16  it was adopted.  So these are the same points that

17  plaintiffs are trying to make with respect to the deposition

18  testimony of Mr. Mayopoulos, Ms. Tagoe, and Mr. Kari.

19          And the same opposition arguments that defendants

20  raise in their opp to defendants -- or plaintiffs' motion in

21  limine apply equal to this testimony with respect to

22  Ms. McFarland.  She's the chief financial officer of

23  Fannie Mae; she has intimate personal knowledge of

24  Fannie Mae's financial condition, and that impacted her

25  reaction to the Third Amendment.

1          And Ms. McFarland explicitly connects her reaction

2    to her earlier meetings with Treasury and FHFA discussing

3    Fannie Mae's financing -- finances.  Thus, you know, her

4    reaction could be said to be rationally based on her

5    personal knowledge of that meeting.

6          And just as defendants argue that Ms. Tagoe's

7    reaction was connected to her knowledge of FHFA's

8    projections or Mr. Mayopoulos's reaction was based on his

9    knowledge of finances of Fannie Mae, Ms. McFarland's

10   reaction was based on her personal knowledge of that

11   meeting.

12         So truthfully, plaintiffs believe that all of this

13   testimony, where former executives of the GSEs and FHFA, in

14   the form -- although Ms. Tagoe is still an employee -- it

15   should all be treated the same.

16         So our view is that if Your Honor is inclined to

17   allow the testimony of Ms. Tagoe --

18         THE COURT:  The CEO.  Then let her in too.

19         MR. GOODHART:  Then it should all be treated as a

20   piece, because it's similar of testimony of executives

21   basing their thoughts on their knowledge basically.

22         THE COURT:  She was an executive.

23         MR. GOODHART:  She was the chief financial

24   officer.

25         THE COURT:  Hard to believe.

1          MR. GOODHART:  So finally, Your Honor, I just want

2    to quickly address two arguments that defendants have made

3    in their opposition.

4          First, with respect to the testimony of Ms. Tagoe

5    and Mr. Mayopoulos and Mr. Kari, defendants argue that, you

6    know, plaintiffs put this testimony at issue in this case.

7    Somehow, because at the first trial, plaintiffs criticize

8    Mr. DeMarco for his failure to consult with GSE executives

9    or FHFA executives prior to entering into the Amendment,

10   we've put what they think about it at issue.

11         Now, I'll point out that, you know, apparently

12   defendants only believe we put Ms. Tagoe, Mr. Mayopoulos,

13   and Mr. Kari's opinions at issue, but we haven't put

14   Ms. McFarland's testimony at issue.

15         But regardless, that misses the point, which is --

16         THE COURT:  I got your point.  I got it.

17         MR. GOODHART:  -- the fact -- yeah.  Understood,

18   Your Honor.

19         And lastly, I just want to very quickly --

20         THE COURT:  That one's a point worth making,

21   because I remember her vividly.

22         MR. GOODHART:  Quickly, defendants -- and

23   I believe defendants understand our position here.

24         But just so Your Honor is aware, defendants make

25   sort of a goose/gander argument on pages 15 to 17 of their

1    opposition, saying that plaintiffs are seeking to rely on

2    this reaction-type testimony but preclude defendants from

3    doing so, and that is absolutely not what we're trying to

4    do.

5            The Benson and McFarland testimony that they cite

6    on their pages 15 to 17 of their opp, we believe it should

7    all by treated the same.  So we designated as a reservation

8    of rights, depending on how these MILs turned out.  But

9    either it's all in or it's all out is the way the plaintiffs

10   see it.  Thank you, Your Honor.

11           THE COURT:  Thanks.

12           MR. HOFFMAN:  Your Honor, Ian Hoffman once again

13   on behalf defendants.

14           THE COURT:  I know you like what I said about her,

15   but how about the others?

16           MR. HOFFMAN:  Well, Your Honor, I'd like to start

17   with -- I think you said just a moment ago, that is a point

18   worth making.  I'll start with that point, Your Honor, I'll

19   start with Ms. McFarland.

20           And I'll start with counsel's argument that this

21   is all -- if one kind of reaction testimony comes in, then

22   it should all come in, because I think this is important to

23   address.

24           The issue with Ms. McFarland is not her reaction

25   testimony.  The issue with Ms. McFarland's testimony here is

1    that, in the course of a long-winded answer, Judge, she

2    strays directly into the kind of speculation that Your Honor

3    ruled before the first trial is not admissible.

4         Your Honor threw out her deposition transcript.

5    She speculated as to why she thought Treasury and FHFA would

6    have gone into it, and you ruled before the first trial that

7    that was impermissible.  This is one series of lines snuck

8    into a larger answer that does the exact same thing.

9         And, Your Honor, I just put up here on the ELMO

10   the -- or whatever they're called these days -- the

11   projector here, Judge -- and my own work product is there,

12   Judge, but it says, "Not objected to" on the top, and

13   "speculation" below.

14        The top portion, Your Honor, is Ms. McFarland's

15   answer to the question:  "What was your reaction to the

16   Third Amendment?"

17        THE COURT:  Right.

18        MR. HOFFMAN:  Her testimony is that:  "My reaction

19   was it" -- and I can turn it over, but generally it was:

20   "It made me recall that I had told them something."

21        And so she testifies what she claims she told

22   FH -- I'm sorry, what she claims she told Treasury, and

23   that's an important distinction.

24        THE COURT:  Right.

25        MR. HOFFMAN:  Now, you get to the next paragraph,

1   Judge, at line 11 of Ms. McFarland's testimony --

2   　　　　　THE COURT:  Right.

3   　　　　　MR. HOFFMAN:  -- she says, "So when it went into

4   place, part of my reaction was that they did it in response

5   to my communication of the forecasts.  And it was probably a

6   desire" -- again, a desire by Treasury and FHFA, or one or

7   both -- "not to allow capital to build up within the

8   enterprises and not allow them to recapitalize themselves."

9   　　　　　That goes too far, Judge.

10  　　　　　THE COURT:  Right.

11  　　　　　MR. HOFFMAN:  We agree that all of these

12  high-level executives' reactions to the Third Amendment can

13  come in, and we can argue about their weight to the jury.

14  And that is what is here on page 45, lines 1 to 10.

15  　　　　　But page 45, lines 11 to 16, is something wholly

16  different, Judge.

17  　　　　　And just to remind Your Honor, this was the

18  Court's ruling before the first trial:

19  　　　　　"The testimony" -- and this is other testimony by

20  Ms. McFarland saying almost exactly the same thing and

21  almost exactly the same words.  The Court ruled:  "This

22  testimony goes into detail why Ms. McFarland believed that

23  Treasury would not want a buildup of capital in the GSEs."

24  　　　　　THE COURT:  Right.

25  　　　　　MR. HOFFMAN:  Your Honor, I point back, line 15,

1    buildup of capital -- I think Your Honor understands it.

2              THE COURT:  Right.

3              MR. HOFFMAN:  It's the same thing that the Court

4    has excluded.

5              That -- and all we're objecting to in our

6    defendants' omnibus 1 is these lines 11 to 16.  The reaction

7    testimony we are not objecting to.

8              And, Your Honor, I sense the Court's -- that it

9    understands these issues, and I think our briefs well lay

10   out our positions on this reaction testimony issue.

11             Ms. Tagoe, Mr. Mayopoulos, the CEO, and Mr. Kari,

12   the CFO of Freddie Mac, extremely high-level individuals,

13   not bystanders on the street, as Your Honor acknowledged.

14             Their testimony is not about the process that went

15   into negotiating the Third Amendment.  And their testimony,

16   other than Ms. McFarland's piece right here, is not about

17   what was going on in the minds of the decision-makers.

18             These same witnesses are the subject of

19   plaintiffs' opening and closing arguments that go directly

20   to Mr. DeMarco's process.  They beat him up throughout

21   trial.  And they don't walk back that they're not going to

22   beat him up throughout trial for, why didn't you consult

23   people like Ms. Tagoe?  And they will say that that is a

24   reflection of the unreasonableness of FHFA's decision.

25             Now, when Ms. Tagoe is asked her reaction to the

1    Third Amendment, they want to block what her views on it

2    are.  That is highly probative to the very issue about:  Was

3    Mr. DeMarco's process sufficient or not?

4            The only response plaintiffs have in their reply

5    brief is very superficial, Judge.  And I was surprised when

6    I read it, because all it says is, while Mr. DeMarco may

7    have benefited from people like Ms. Tagoe's views, the jury

8    will not benefit from hearing Ms. Tagoe's views about the

9    Third Amendment.  I'm paraphrasing a little bit,

10   I don't have it in front of me, but look at their reply to

11   see.  And that is preposterous, Judge.  That is precisely

12   why the jury needs to hear her reaction to the Third

13   Amendment.

14           Same for Mr. Mayopoulos, same for Mr. Kari,

15   Your Honor.  Each of them are testifying about what was in

16   their own personal knowledge, and their testimony is highly

17   relevant to the issues in the case.

18           Unless Your Honor has questions, I'll rest.

19           MR. GOODHART:  Briefly, Your Honor.

20           So, Your Honor, I'd like to start where

21   Mr. Hoffman just left off, which is the argument essentially

22   that we put their views at issue because we criticize

23   Mr. DeMarco for not seeking their input in entering into the

24   decision.

25           And basically the argument that they're trying to

1   make is that, well, this is what they would have said had

2   they been asked, and therefore that's why it's relevant.

3          But the fact is, is they were not asked.  So the

4   jury is not going to benefit by hearing about why somebody

5   entered -- somebody else, DeMarco, entered into the Third

6   Amendment by hearing a reason from somebody who was not

7   asked.  So they're basically trying to offer, well, this is

8   what they would have said had they been asked, and it

9   supports our defense in this case.

10          But, Your Honor, it's just not relevant to say,

11  well, this is what they would have said under some different

12  scenario.  And a good case for Your Honor on that point is

13  the *Athride v. Aetna Cas. and Sur.* case, which is cited at

14  page 7, 8 of plaintiffs' opening brief.  It's 474 F.Supp.2d

15  102.  It's a D.D.C. case from 2007, Your Honor.

16          Now, also, I heard Mr. Hoffman talking about

17  Ms. McFarland's testimony is different here because she's

18  not just talking about her reaction, she's talking about

19  speculating why Treasury entered into the net worth sweep.

20          And to me it sounds like what they're trying to do

21  is have their cake and eat it too here, because that's

22  precisely what Mr. Mayopoulos is testifying to with the

23  deposition testimony that we were seeking to preclude in our

24  omnibus motion.  He literally says what he thinks they were

25  trying to do.

1          And as unbelievable as it may seem, Your Honor,

2     the testimony of this case is that Mr. Mayopoulos, the CEO

3     of Fannie Mae, and Don Layton, the CEO of Freddie Mac, they

4     testified that they were not involved in the decision and

5     found out after the decision had been made two days before

6     announcement.  So it's what Ms. McFarland is doing, it's no

7     different from what Mr. Mayopoulos is doing.  And what

8     plaintiffs are seeking here is just consistency with how

9     this evidence is treated.

10          There's an independent reason also why if

11    Your Honor is inclined to admit the testimony of

12    Mr. Mayopoulos, Ms. Tagoe and Mr. Kari, that Ms. McFarland

13    should be treated the same way as well.  And that's because

14    her testimony, Your Honor -- or at least the portion that

15    defendants are seeking to preclude -- is independently

16    probative of a major factual dispute in this case, which is

17    whether Ms. McFarland informed Treasury and FHFA prior to

18    the Third Amendment that Fannie Mae and Freddie Mac were on

19    a path of sustained profitability and could reverse --

20    potentially reverse the evaluation allowance against the DTA

21    in the not-so-distant future.  Those are her words.

22          And the reason that the portion of the testimony

23    that defendants are trying to preclude is independently

24    probative of that incredibly important factual issue is that

25    she says it was part of her reaction.  The fact that she

 1   learned about the net worth sweep and one of her first

 2   thoughts was, oh, part of my reaction was this is in

 3   response to what I just told them.  That's probative of the

 4   facts that she did, in fact, tell them before the net worth

 5   sweep was agreed to.

 6           And, you know, essentially at trial, the first

 7   trial, defendants, through the testimony of Nicholas

 8   Satriano, an accountant at FHFA, they basically denied that

 9   that happened.

10           Mr. Satriano offered testimony that he disputed

11   that anybody at FHFA was ever aware prior to the Third

12   Amendment that -- and Fannie Mae had been considering a

13   potential reversal of the DTA valuation allowance.  That's

14   what FHFA represented, Nicholas Satriano testified to.  And

15   this is evidence by Ms. McFarland that, no, I told them

16   before that, and that was why it was part of her reaction.

17   Thank you, Your Honor.

18           THE COURT:  We'll take ten minutes for the

19   court reporter before he strangles me.

20           Is that fair?

21           COURTROOM DEPUTY:  All rise.  This Court stands in

22   recess.

23           (Recess from 3:50 p.m. to 4:05 p.m.)

24           COURTROOM DEPUTY:  All rise.

25           Please be seated, everyone, and come to order.

1              THE COURT:  Okay.

2              MR. RUDY:  Good afternoon, Your Honor.  It's Lee

3    Rudy for the plaintiffs.

4              Just to tell you where we are in our program, that

5    plaintiffs have three more pieces of their affirmative

6    motion that we will be arguing, me and two more, and then

7    we'll be passing the podium to the defense.

8              THE COURT:  Okay.

9              MR. RUDY:  I'll try to be brief in light of the

10   hour.

11             THE COURT:  Right.

12             MR. RUDY:  I'm presenting argument on our motion

13   for clarification regarding the scope of the shareholder

14   testimony, shareholder expectations testimony.

15             THE COURT:  Right.

16             MR. RUDY:  I want to just first say upfront, this

17   is not a motion for reconsideration, this is a motion for

18   clarification.

19             I wish that we didn't spend as much time on the

20   telephone during the last trial, Your Honor, debating the

21   contours of the ruling of what was admissible and what was

22   not, but this motion seeks to obviate some of those

23   conferences.

24             THE COURT:  Right.

25             MR. RUDY:  So we think that the defendants'

1    objections, Your Honor, are inconsistent with Your Honor's

2    ruling from the last trial, and we want to get things

3    buttoned down as much as we can.

4         THE COURT:  Okay.

5         MR. RUDY:  I have a brief -- a handout that sort

6    of lays out the contested testimony that I'll hand up if

7    that's okay.

8         THE COURT:  Yeah.

9         MR. RUDY:  So if you see on the first page at the

10   top -- I can put it -- on the top, first you start on the

11   top left with your order about what was --

12        THE COURT:  Right.

13        MR. RUDY:  -- permissible.

14        And first I'll just note that, of course, that you

15   did write that these were examples, this was not like the

16   full contours of what was admissible.

17        But I'll just tell you that the pieces of evidence

18   that are contested today all fall within the two examples of

19   shareholders testifying that their dividend rights were

20   taken away, and shareholders talking about why they brought

21   this lawsuit.

22        THE COURT:  Right.

23        MR. RUDY:  That's all that we think that -- the

24   four pieces of evidence I'm going to talk about all fairly

25   fall within the contours of those two examples.

1          THE COURT:  Of what I already ruled.

2          MR. RUDY:  That's what you ruled -- that's what

3    you ruled last time.

4          And then you have to the top right of this piece

5    of paper, Mr. Stern's closing -- argument during his closing

6    argument.

7          As you may recall, that after Mr. Stern closed,

8    there was an objection that you ruled on that Mr. Stern had

9    said, you didn't hear any of the shareholders say this,

10   that, and the other.  And we said, well, we weren't allowed

11   to say this, that, and the other.  And so Mr. Stern, in

12   responding to that, gave the paragraph that I've cited up in

13   the top right.

14         So he -- and it's nothing controversial.  He's

15   basically agreeing with Your Honor's motion in limine and

16   what was admissible in that quoted paragraph.

17         So now if I could just turn to the pieces of

18   testimony that I think are at issue.

19         The first is No. 1 on the first page here.

20         The first is No. 1, which is from Mr. Linekin.

21   This was not objected to.  So this is a piece of testimony

22   that Mr. Linekin gave.

23         And I'll just quote.  It says, you know:

24   "I should say, what they said they were going to do was

25   conserve and preserve the assets.  And then they went in the

1    opposite direction.  They took every dollar of cash flow,

2    every dollar of profits from 2012 into perpetuity."  So just

3    to clarify, that testimony was not objected to.

4         But then if you look at No. 2 and No. 3, which are

5    deposition snippets from Mr. Cacciapelle, one of the class

6    representatives, who testified via deposition, we think that

7    those -- which defendants do object to -- fall squarely

8    within Your Honor's order, within what Mr. Stern said was

9    permissible, and within the scope of what Mr. Linekin also

10   testified about.

11        So I'll just -- you see No. 2.  He's saying, you

12   know, both No. 2 and No. 3, Mr. Cacciapelle is explaining

13   why he brought the lawsuit.  And he said he brought it

14   because the net worth sweep took his dividends away.

15        Now, defendants are arguing that these passages

16   are objectionable because they used the words "expected" and

17   "surprised."  And those words, they say, make this testimony

18   impermissible about Mr. Cacciapelle's subjective

19   expectations.

20        Now, our briefs point out that, of course, the

21   questions that Mr. Cacciapelle is asked used those words.

22   They ask him, well, what do you believe and why were you

23   surprised?

24        But we don't think, in any event, that those magic

25   words should prevent the jury from hearing Mr. Cacciapelle's

1   otherwise admissible testimony.

2           So we think that -- No. 2 and No. 3, we think,

3   fall squarely within what Your Honor ruled was acceptable.

4   It's about, he brought the lawsuit because he lost his

5   dividends.

6           But just to be, you know, accommodating, I

7   suppose, we've proposed these couple of redactions that

8   would take out the words "expected" and "surprised" and take

9   out this sort of flourish that he puts at the end, it

10  sounded too totalitarian to me; took that out as well.

11          So what remains there of No. 2 and No. 3, we think

12  is fairly -- is squarely within what Your Honor ruled last

13  time and that their objection to it should be overruled.

14          Turning the page to No. 4.  So this is Michelle

15  Miller's testimony; she was another one of the class

16  representatives.

17          And she testified she felt harmed because there

18  were "no more dividends and the price had kind of remained

19  stagnant."

20          And the defendants objected at trial.  You may

21  recall there was a lot of back and forth.  We were on the

22  phone for what felt like hours but it was probably just

23  minutes.

24          But we were on the phone for a while debating

25  this, Your Honor, because what defendants said is, "The lost

1    dividends theory is out of the case."  So essentially

2    Ms. Miller was not allowed to say that she felt harmed

3    because she lost her dividends.

4            Again, we just went through Your Honor's opening

5    ruling that losing your dividends is one of the key examples

6    you give of what she can say.

7            And also pointing out that, you know, what

8    Ms. Miller said is actually exactly what Your Honor ruled at

9    summary judgment which is on the right column there.  So

10   your ruling on summary judgment about what our damages

11   theory is, that's how Your Honor wrote our appropriate

12   damages theory.  You described it as -- you said the Third

13   Amendment, by eliminating any possibility of future

14   dividends for non-Treasury shareholders, deprived their

15   shares of much of their value.

16           If you look back again at what Ms. Miller said, it

17   tracks perfectly.  She basically parroted Your Honor's

18   motions for summary judgment ruling as to why she felt

19   harmed.  So we think that that's squarely admissible,

20   Your Honor.

21           And then finally, turning the page, talking

22   about -- oh, and I should say on that one, the defendants

23   argue that you ruled on that and that that is a motion for

24   reconsideration, and that's just wrong.  We quoted to you

25   the colloquy back and forth.  What Your Honor ruled at the

1   time was that if I wanted to persist in asking that

2   question, you would give a curative instruction.  And I

3   said, Your Honor, I'll back away from it.

4           So I just wanted to -- I didn't want to have an

5   argument with the Court in the middle of the trial --

6           THE COURT:  Right.

7           MR. RUDY:  -- so I just rephrased the question.

8           But this next trial, I do intend to ask her the

9   same question.  And I think that the answer she gave should

10  be admitted because she's just saying, I lost my dividends

11  and my stock price suffered, which I think are perfectly

12  within everything that Your Honor has previously ruled.

13          The final passage, the third page, Ms. Miller

14  testified, you see on the left side No. 5, there was no

15  objection when I asked her:  "To be clear, are you here

16  suing about anything that happened in 2008, '9, '10 or '11?"

17  And she said:  "No."  And that was not objected to.

18          Now, Mr. Cacciapelle wants to offer very similar

19  testimony that the defendants do object to, which is on the

20  right in passage No. 6.  And that says basically, like -- so

21  he was asked:  "Did you have any objection to the

22  conservatorship?"  He said:  "No, I could understand the

23  government wanted something to keep people assured and quiet

24  people down.  I kind of understood that.  And there would be

25  some losses.  I understood that.  But it didn't seem to work

1    out that they should be losing forever."

2          So, you know, in summary, that's the way he put

3    it.  But basically he's saying, I have no objection to

4    conservatorship.  And then the last sentence, "but it didn't

5    seem to work out they should be losing forever," is, again,

6    a reference to losing his dividends which he's previously

7    testified to.

8          So the four pieces of contested testimony, I think

9    they're all squarely admissible under Your Honor's prior

10   ruling, and we just wanted to clarify that they would be

11   admissible for this next trial.

12         And the final point I would just note is that

13   Your Honor gave jury instructions, both at the end of the

14   trial and before the class representatives testified, and

15   those jury instructions made very clear that, you're going

16   to hear from individuals who are going to tell you what they

17   in their minds think.  But I'm reminding you that what

18   controls in this case is objective -- the objective

19   expectations of shareholders, not subjective expectations.

20   And jurors are presumed to follow that instruction, so

21   there's really no prejudice to allowing them to give this

22   testimony.  So that's all I have, Your Honor.

23         MR. HOFFMAN:  Good afternoon, Your Honor.

24   Ian Hoffman once again on behalf of the defendants.

25         Your Honor, in its prior ruling before the first

1    trial, the Court gave very clear direction and clear

2    boundaries for shareholder testimony.

3              And, Your Honor, I'm just going to put on the

4    projector what I believe will look familiar to the Court.

5              This is the Court's opinion from August 21st,

6    2022, right before trial started.  And the Court correctly

7    recognized that the inquiry here is an objective one.  And

8    so the Court ruled:  "It's hard to see how plaintiffs'

9    subjective expectations could be relevant to that inquiry."

10             And then at the bottom of the page, Your Honor,

11   there on the projector, you wrote here:  "Any individual

12   shareholder's subjective expectations are totally irrelevant

13   to the objective inquiry of whether the net worth sweep

14   violated a generic, reasonable shareholder's expectation,"

15   Your Honor.  Each of the objected to portions of testimony,

16   Your Honor, run headlong into the Court's ruling.

17             Your Honor, just to take one step back, and

18   I think Your Honor knows this but I'll just state it again

19   for the record to be clear, before the first trial,

20   defendants objected to any shareholder testimony in light of

21   the objective inquiry and the potential for confusion as to

22   what these individuals would say and are they a

23   representative sample and are their views peculiar or not

24   peculiar and the like.

25             And, Your Honor, with all due respect, you know,

1   we lost that issue, at least in part, and we still maintain

2   that there should be no shareholder testimony.  But we

3   respect the Court's ruling and we're not seeking to revisit

4   that here.

5        Plaintiffs contend that they're just seeking

6   clarification as to how this should apply so that we don't

7   spend as much time on the phones in the second trial.

8        But, Your Honor, I would submit that we're not

9   going to spend as much time on the phone on these issues in

10  the second trial, Judge, because Your Honor's rulings on

11  much of this same testimony should govern the second trial

12  and don't need to be revisited so we don't need to go to the

13  phones, Judge.  And I'll tell you -- I'll point out in a

14  moment specifically what those are.

15       But the Court's opinion here, October 21st, 2022,

16  opinion, is clear what is in and what is out.  And it is in

17  substance -- and with all due respect to plaintiffs'

18  counsel, this is, in substance, a reconsideration motion.

19       Indeed, much of what Mr. Rudy just walked the

20  Court through, the shareholders literally say the words, "I

21  expected X, Y, and Z."  And in their reply, perhaps

22  begrudgingly recognizing that, Your Honor, they've proposed

23  to strike the words "I expected," but otherwise leave the

24  rest of the testimony, Your Honor.  But that is superficial

25  and it's window dressing and it doesn't solve the problem;

1    that this is subjective expectations testimony.

2         Your Honor, I'm not going to spend time focusing

3    on deposition and trial testimony that we did not object to,

4    because we have precious little time here.

5         But even just looking at the handout here from

6    Mr. Rudy, the heading of No. 2 for Mr. Cacciapelle, he gives

7    testimony that says:  "I bought a security from someone who

8    is receiving an 8-plus percent dividend, and I expected --

9    I was expecting the same treatment, getting the same thing";

10   in other words, I expected to get more dividends.  And it

11   appears the Amendment has pretty much taken that away.  That

12   is inadmissible.  And striking the words "I expected"

13   doesn't make it admissible.

14        Your Honor, the second piece of testimony is -- or

15   at least the second one I'll address, Your Honor, forgive me

16   if the numbering jumps around here, but is from Mrs. Miller.

17   And this is one that Mr. Rudy pointed out.  And I'll just

18   try to keep it simple for everyone, I'll put it on the

19   screen so we all know we're talking about the same thing.

20        So this is the Q&A here, the underlined portion

21   from the first trial.  Mr. Rudy elicited from Ms. Miller:

22   "And in what way do you feel like you were harmed?"  Answer:

23   "There were no more dividends and the price had kind of

24   remained stagnant."  And I quickly objected, Your Honor.

25   And I don't believe the whole back and forth is on this

1    page, and I don't think Mr. Rudy was representing that it

2    was.

3           But the outcome of this, Your Honor, was that you

4    sustained my objection.  You also granted my motion to

5    strike this testimony from the record.

6           And I believe in plaintiffs' reply brief, there

7    was a line about how there was no -- nothing stricken, just

8    to keep the record totally clear and give you -- this is,

9    perhaps, a little -- this, perhaps, is a little hard to

10   read.

11          But, Your Honor, on this page of the deposition

12   transcript, which I have somewhere, but I'll find the page

13   number in a moment.

14          The Court directed -- the Court up top granted my

15   motion to strike that very testimony that Mr. Rudy is asking

16   the Court to allow this go-around, and you told the jury the

17   last answer is going to be stricken.

18          And one of the reasons that Your Honor explained,

19   and Mr. Rudy alluded to this, was that because it pertains

20   to lost dividends and she thought she was harmed because she

21   wasn't going to get any more dividends.

22          And I think the words that you cautioned Mr. Rudy

23   with were that we're not going to get in a donnybrook over

24   dividends.  And if you want me to instruct the jury that

25   lost dividends theory is out of the case, I can do so, and

1    I think that plaintiffs elected to pass.

2              So we're here again just going through the same

3    arguments, Judge.  And plaintiffs have said they're going to

4    elicit the same question and answer that you struck and told

5    the jury is stricken.  There's no basis for that, Judge.

6    These -- your court order was clear and the shareholders can

7    give what testimony they can give within those parameters.

8              Again, each of -- and if you look back,

9    Your Honor -- and, again, we lay this all out in our papers,

10   but many of the portions of deposition testimony that

11   plaintiffs are seeking to introduce here also suffers from

12   that same infirmity that Ms. Miller's testimony suffered

13   from.  She said:  "Well, I didn't get dividends anymore."

14             And plaintiffs at trial, after striking that

15   testimony and sustaining my objection, rephrased the

16   question in a leading manner to say:  "Do you believe you

17   were harmed because the value of the shares went down?"

18   And Ms. Miller said:  "Yes."

19             Now, in the very same moment here, plaintiffs are

20   seeking to introduce testimony from Mr. Cacciapelle, which

21   is, in sum and substance, the same thing.  I thought I was

22   going to be getting dividends, and I stopped getting

23   dividends.

24             And so just redlining the words "I was expecting"

25   out of that doesn't solve the problem, A, because it's still

1    about his expectations, and, B, that claim is out of the

2    case and it would merit the same kind of clarifying

3    instruction to the jury that plaintiffs are not claiming and

4    don't have a legal basis to lost dividends.  And so I don't

5    think that that testimony is in either.

6           There's a suggestion, an argument, I should say,

7    Your Honor, that defendants opened the door to this somehow

8    as to what my partner argued in closing for defendants and

9    some of the statements he made in the colloquy with the

10   judge.

11          And in terms of the first part of the colloquy

12   with Your Honor, Mr. Stern merely repeated the categories

13   that Your Honor had already identified as to what's in.

14   He said:  "Your Honor, I recognize that they can testify

15   about A, B, and C," and A, B, and C are literally lifted

16   from your court order.  And so there's not some major

17   concession there, it's literally parroting back the words of

18   the order.

19          But in terms of the statement that not a single

20   one of those shareholders testified that the circular draws

21   weren't a problem, we still think that's inbound, it's a

22   fair summary of the evidence of what came in or not.  But as

23   we noted in a footnote in our brief, Your Honor, if

24   Your Honor feels that that's out of bounds, we're willing to

25   forego making that particular species of statement.  Again,

1    it's just that:  "No shareholder witness testified that

2    circular draws were not a problem in the summer of 2012."

3    We're willing to let that go if it will smooth this over;

4    but, otherwise, all this testimony is out under the Court's

5    prior opinion.

6            MR. RUDY:  Your Honor, in light of the hour and

7    I think this is well-briefed, I'll waive reply.

8            THE COURT:  All right.  Let's go to the next

9    subject then.

10           MR. BARRY:  Good afternoon, Your Honor.

11   Michael Barry for Class Plaintiffs.

12           I'm going to be addressing what is identified as

13   MIL No. 5 in plaintiffs' omnibus motion.

14           THE COURT:  Yeah.

15           MR. BARRY:  This motion contests plaintiffs

16   counterdesignations of certain provisions of Ms. McFarland's

17   testimony relating to three news articles that are written

18   in the *Wall Street Journal*, *Reuters*, and *The Washington Post*

19   after -- from August 8th and 9th, 2012.

20           Now, in the prior proceeding, this Court did

21   overrule our objection to the admission of these

22   designations as hearsay, and I'll address those in a moment,

23   but the Court did not address the relevancy of these

24   designations.

25           So, first, those designations should be excluded

1    as irrelevant under Rule 401.  The testimony and the

2    underlying articles that are cited as exhibits should be

3    inadmissible as double hearsay under Rule 801, 802, and 805.

4    And finally, they're unduly prejudicial because the jury is

5    likely to consider them for the truth, even to the extent

6    that defendants are disavowing that.

7            First, let's start with the relevancy.

8    Ms. McFarland's testimony regarding the articles and the

9    underlying articles themselves and having them read to her

10   in the form of questions is irrelevant.  A, it's not

11   relevant to investor expectations and the defendants don't

12   claim otherwise.

13           Under the law of the case, the date of

14   contracting, for the purposes of the implied covenant claim,

15   is December 24th, 2009.  So whatever quotes and articles

16   were published in August 8th and 9th, 2012, is simply

17   irrelevant to investors' expectations.

18           So what's it relevant to?

19           It's also not relevant to whether Mr. DeMarco's

20   decision to implement the Third Amendment was arbitrary and

21   reasonable.

22           Mr. DeMarco did not read the news articles when he

23   made the decision to enter into the net worth sweep of the

24   Third Amendment.

25           Mr. DeMarco testified that he relied on what the

1    companies put in their filings and other analysts and

2    analyst reports, and only specifically remembered one from

3    Moody's.

4              Nowhere did Mr. DeMarco testify that he read the

5    articles.  Nowhere did Mr. DeMarco testify that he relied on

6    the opinion of Ms. McFarland regarding Fannie Mae's

7    financial condition or its ability to fund the dividend.

8              Because Mr. DeMarco did not testify that he relied

9    on the articles, they are not relevant to his decision to

10   enter into the Third Amendment.

11             Now, defendants argue, as far as relevance goes,

12   that "Her statements concerning Fannie Mae's ability to meet

13   the dividend -- its dividend obligation on the eve of the

14   Third Amendment when she was CEO -- CFO are relevant to the

15   center issue in this case:  Whether FHFA acted reasonably in

16   agreeing to the Third Amendment, given the possibility that

17   Fannie Mae could not meet its dividend obligations without

18   additional circular draws on the Treasury commitment."

19             And they highlight that by saying Ms. McFarland

20   testified that, as Fannie Mae's CFO, she had access to

21   specialized nonpublic information about the company,

22   including the best projections of anyone who was trying to

23   forecast Fannie's future profitability.

24             Well, first, none of her opinion testimony or the

25   articles underlying that testimony are relevant to

1   Mr. McFar -- Mr. DeMarco's decision to enter into the net

2   worth sweep.  Her opinions are only relevant to the extent

3   they were --

4            THE COURT:  I thought they were trying to impeach

5   her, weren't they?

6            MR. BARRY:  Pardon me?

7            THE COURT:  I thought they were impeaching her.

8            MR. BARRY:  No, they're not impeaching her at all.

9   As a matter of fact, we'll get to those in a minute

10  because --

11           THE COURT:  Well, I thought that's what they were

12  doing, though.

13           MR. BARRY:  No, they're not -- as a matter of

14  fact, let me hand up the testimony.

15           THE COURT:  Okay.

16           MR. BARRY:  I'm going to hand you what's been

17  previously provided to defendants as Exhibit 5B, as in boy,

18  to our opening MIL.

19           THE COURT:  This is her testimony?

20           MR. BARRY:  This is her testimony.

21           And we'll get to the testimony.

22           But first off, let me explain.

23           THE COURT:  My recollection may be faulty.  I just

24  remember her being coy.

25           MR. BARRY:  And that's fine.  And we'll get to

1    that in a minute.

2              THE COURT:  I shouldn't have said that, should I?

3              MR. BARRY:  The first point I want to make is the

4    relevance -- her opinions as to the expectation of Fannie to

5    meet the dividend obligation without -- is only relevant if

6    it was communicated to Mr. DeMarco, and it wasn't.

7              THE COURT:  Oh, it's relevant because it's

8    communicated to the jury.

9              MR. BARRY:  Pardon me?

10             THE COURT:  It was communicated to the jury.

11             MR. BARRY:  It was communicated to the jury but --

12             THE COURT:  So it's relevant because she's sitting

13   here telling the jury they're in great shape and they're

14   going to have this back in no time.  That's what she's

15   telling the jury.

16             MR. BARRY:  She did tell the jury.

17             And then the --

18             THE COURT:  I didn't believe her for a minute.

19             MR. BARRY:  And in the articles, she's asked to

20   confirm whether or not she said certain statements in

21   interviews with the *Wall Street Journal*, the *New York* -- the

22   *Wall Street Journal*, *Washington Post*, and *Reuters*.

23             But significantly and more significantly,

24   defendants have proffered no justification because it has

25   nothing to do with what the FHFA did.  The only reason they

1  want to introduce this is because who said it:

2  Ms. McFarland.

3          THE COURT:  Yeah, because she said that to the

4  jury.

5          MR. BARRY:  Because --

6          THE COURT:  That's why they want to use it.

7          MR. BARRY:  They want to use it because she has a

8  specialized knowledge.  She knows more than anybody else.

9          THE COURT:  That's what she said.  Yeah, she knows

10  more than anybody.

11          MR. BARRY:  And that conceded that they want to

12  introduce it for the truth of the matter asserted.

13          THE COURT:  No, they want to impeach her.  That's

14  a valid use, isn't it?

15          MR. BARRY:  They want to impeach her for what?

16  She didn't say she disputed -- let's look at the articles;

17  let's look at the testimony, please.

18          First off, the news articles are clearly hearsay,

19  there's no question about that.  News articles are hearsay,

20  *Hutira versus Islamic Republic of Iran*, 211 F.Supp.2d 115;

21  *Atkins versus Fischer*, 232 F.R.D. 116.

22          Defendants don't argue that the articles

23  themselves constitute hearsay.  Their sole justification is

24  that they're supposedly not being introduced for their

25  truth.

1          Now, the three designations at issue are passages

2     where the questioner simply read portions of articles to

3     Ms. McFarland that purported to quote her and then asked if

4     those statements were true at the time she purportedly made

5     those statements.

6          First, even if the introduction of testimony of

7     reading the articles themselves falls within somehow that it

8     doesn't constitute hearsay, reading the quotes within the

9     articles is secondary hearsay, they'd have to come up with a

10    subsequent justification for doing that, and the defendants

11    have offered no such justification.

12         In the *Wall Street Journal* article, which starts

13    on 198, 11 to 17, the questioner just jumps in and reads the

14    quote and asks Ms. McFarland if that quote was correct when

15    she allegedly made it.  There was no effort to refresh her

16    recollection, she did not deny making it, nor did she deny

17    speaking with the press.  So there was no basis for

18    introducing that underlying quote from the article.

19         The same goes for *Reuters*.  The *Reuters* passage

20    starts on page 201 to 220 -- -13, and continues through 202

21    to 13.

22         In the first part of that passage, the questioner

23    just starts reading from portions of the article that

24    paraphrase what Ms. McFarland allegedly said; they don't

25    purport to be quoting her.

1          But then the questioner does get around to the

2     quote, and, again, just reads the quote, and asks

3     Ms. McFarland if that was true when made.  Again, no effort

4     to lay a foundation as to where the quote came from in the

5     article or whether it was necessary and appropriate to

6     impeach her on it.

7          Third, the passage from *The Washington Post*, which

8     begins on page 203, 23, and continues through 205, at least

9     the questioner there does ask if Ms. McFarland remembers

10    speaking with *The Post*, and she says she doesn't remember.

11         But then she doesn't -- he doesn't refresh her

12    recollection with the item.  She simply says:  "I don't know

13    if you got it from a press report, but I don't remember

14    speaking with anyone there."

15         The only reason they're trying to introduce these

16    quotes is to try to prove that, as of August 7th and 8th of

17    2012, Ms. McFarland, in fact, believed that the statements

18    attributed to her in those articles were true.  That's why

19    the questioner entered every examination regarding the

20    document with:  "Did you believe it was true when you said

21    it?"

22         In the prior proceeding now, this Court did

23    overrule the objection, but we believe on an improper basis.

24    This Court said:  "Defendants are not offering those for the

25    truth of the matter in the articles.  They're offering it to

1   facilitate her testimony at the deposition regarding those

2   were her beliefs at the time, and, therefore, it's not

3   hearsay."

4        Defendants make the same argument again here.

5   They argue:  "Likewise, the articles themselves are not

6   being offered for any purpose other than to establish the

7   statements were made and published by the respective media

8   outlet."

9        First, the fact that the statements were made and

10  published by the media outlets have no bearing on

11  Mr. DeMarco's decision to enter into the net worth sweep

12  because she wasn't consulted and she didn't know about it.

13       Second, if the articles themselves are not being

14  offered for any purpose other than to establish that they

15  were made, why is it relevant that those statements were

16  made?  Ms. McFarland never denied making those statements.

17       From the defendant's perspective, the fact that

18  the statements were made is not what's important, it's who

19  made them.  She was Fannie Mae's CFO at the time and they're

20  arguing that she has to be -- that her testimony -- that her

21  testimony that -- the quote that was quoted in the article

22  should be believed because she was the CFO and she had

23  specialized knowledge.  That's introducing it for the truth

24  of the matter asserted, not for impeachment purposes.

25  There's no relevance as to -- no independent relevance as to

1   the timing of the statement or the fact that it was made.

2           Finally, to the extent that they're trying to say

3   that they're going to -- I'm going to impeach it because

4   it's an adoptive admission, you can't do that with your own

5   party witness.  The Rules of Evidence, Rule 801(d)(2)(D),

6   only applies to admissions of an opposing party.

7   Ms. McFarland is not an opposing party of the FHFA and the

8   defendants here.  So as a result to the extent they want to

9   introduce such testimony as an adoptive admission, that's

10  not appropriate either.

11          Finally, to the extent that the Court -- it's

12  otherwise somehow potentially admissible, the writ --

13  because they've articulated a non-hearsay purpose, it is

14  very likely, almost impossibly unlikely, that the jury will

15  listen to it for any reason other than the truth of the

16  matter asserted, which is her statements to *Reuters* and the

17  *Wall Street Journal* and *The Washington Post* supposedly at

18  the time about whether or not Fannie Mae had the ability to

19  fund its dividends without further drawing down the Treasury

20  commitment.

21          Her testimony that they're relying on to say that

22  she was the CFO, the only reason they're introducing it is

23  for the truth.  And to the extent that they're arguing,

24  well, it's just opining, the jury is going to hear it and

25  will believe it -- will mistakenly believe it for the truth

1    of the matter asserted.

2            So whatever it's -- there's significant unfair

3    prejudice, that the risk of it being improperly taken by the

4    jury outweighs whatever probative value there would be by

5    introducing it for the defendants.

6            Unless the Court has any questions --

7            THE COURT:  No.

8            MR. HOFFMAN:  Ian Hoffman once again, Your Honor,

9    for the defendants.

10           I will try to keep this brief, both because I'm --

11   I don't want to hog all the fun for my colleagues but also

12   we're also running late in the day.

13           I'm also going to be brief on this one,

14   Your Honor, because, as plaintiffs just acknowledged, this

15   issue came up in the first trial, you ruled on it.  You

16   ruled that her testimony and the associated documents are

17   not barred by hearsay because her -- what is coming in is

18   her testimony.  The questions are:  "Did you say this at the

19   time?" -- I'll then read the article.  Question:  "Did you

20   say this at the time?"  "Yes."  "Was it true at the time?"

21   "Yes."

22           The statements are coming in for the non- -- the

23   statements that are being read are coming in for the

24   non-hearsay purpose.  And her testimony where she says "yes"

25   is coming in for the truth because it's as if she's sitting

 1   on the stand, Your Honor, even though it was from a

 2   deposition transcript.

 3           The Court's ruling was exactly right.  This is the

 4   Court's words:  "Defendants are not offering those for the

 5   truth of the matter asserted in the articles, they're

 6   offering it to facilitate her testimony at the deposition,

 7   that those were her beliefs at the time.  It's not hearsay,

 8   therefore."

 9           That was exactly right, Judge.  It was right then

10   and it's right now.  I think that plaintiffs are saying this

11   was essentially clear error and they don't identify any

12   error as such.

13           As for relevance, Your Honor, I think you hit the

14   nail on the head.  First, it's independently relevant for

15   all the reasons we have laid out in our papers.  This is all

16   about the financial condition of Fannie Mae in the summer of

17   2012.  It's also relevant for impeachment.

18           As Your Honor correctly noted, Ms. McFarland took

19   the stand, and I believe Your Honor's words were, she told

20   the jury that Fannie is in great shape, in great shape, and

21   so she was -- they were in such great shape, she was

22   surprised by the Third Amendment, and she thought, it must

23   mean that Treasury wanted to take all this extra money away

24   from them, which the implication is it was beyond the

25   10 percent dividend.

1       And so the opposing counsel at the time of her

2 deposition confronted her with all of these contemporaneous

3 statements that she made back in August of 2012, saying,

4 they're not in great shape and they don't expect to earn

5 enough money in excess of the 10 percent dividend, which, by

6 implication and even expressly as the SEC filings show that

7 she signed, means circular draws would continue.  That that

8 testimony is irrelevant in this case is implausible, I'll

9 keep it at that.

10       In light of the time, Your Honor, I will rest the

11 remainder of our arguments on our briefs.  Thank you.

12       THE COURT:  All right.  Any other issues?

13       MR. RUDY:  Your Honor, in the interest of time,

14 we'll waive rebuttal.

15       MR. HUME:  Hamish Hume for the Class Plaintiffs.

16       Judge Lamberth, we have one more motion;

17 however -- and that I'm going to argue, and it is important

18 to us, it's about five exhibits; however, it is not that

19 important to have it resolved sooner rather than later.

20       THE COURT:  Okay.

21       MR. HUME:  Whereas the defendants have a series of

22 MILs that we're optimistic are going to be denied but that

23 are very important to have resolved well in advance -- as

24 much in advance of the opening as possible.

25       THE COURT:  Okay.

1          MR. HUME:  So partly to be gracious and partly out

2     of selfish reasons, as long as I can get a chance to argue

3     this motion maybe Monday or Tuesday at a gap, we could wait

4     on that and see if we could get to defendants.

5          THE COURT:  All right.

6          MR. HUME:  Thank you.

7          MR. STERN:  Your Honor, that's fine.

8          We can at least get -- I'm sorry.

9          Jonathan Stern for the defendants, if I may,

10    Your Honor.

11          THE COURT:  Yes.

12          MR. STERN:  That proposal is fine, Your Honor.

13    Let's see how far we get skipping the motion to which

14    Mr. Hume referred.  If somehow we speed through them in time

15    for the Court to take argument on everything, that's fine;

16    otherwise, we are fine with deferring if that pleases the

17    Court.

18          THE COURT:  That's fine.

19          Let's start with the first defense motion you'll

20    want to get done.

21          MR. JONES:  Thank you, Your Honor.  Stanton Jones

22    for the defendants.

23          The first motion that we'd like to take up today

24    is our motion to revise jury instructions.

25          And I first have a report on our request to revise

1   the trial one jury instruction regarding Virginia

2   prejudgment interest.

3            THE COURT:  Right.

4            MR. JONES:  We had requested a change to this

5   based on settled Virginia law.

6            Within the last 24 hours, the parties have -- are

7   discussing a possible agreement to resolve that request that

8   we made, that aspect of our motion on the jury instructions.

9   And I believe it's fair to say that we're at least

10  reasonably close to reaching an agreement that would resolve

11  that one.

12           So if it's acceptable to Your Honor, we would

13  propose to have Your Honor withhold a decision on the

14  Virginia pre judgment interest issue --

15           THE COURT:  That's fine.

16           MR. JONES:  -- and allow the parties -- we'll

17  report back if we need court intervention on it.

18           THE COURT:  Okay.

19           MR. JONES:  I did want to take up today our

20  request to revise the trial one jury instructions regarding

21  the explanation of an unreasonable action in the context of

22  whether FHFA's decision to enter into the Third Amendment

23  was arbitrary or unreasonable, and I'd like to make three

24  points about the instruction explaining an unreasonable

25  action.

1          First, as Your Honor will recall at the first

2    trial, the jury --

3          THE COURT:  What motion number is that?

4          MR. JONES:  Sorry.  This is ECF 303.  It's

5    defendants' omnibus motion to revise jury instructions.

6          THE COURT:  Okay.

7          MR. JONES:  And the memo of law is in the same ECF

8    filing behind the cover motion.

9          And this is Roman numeral I, starting on page 1,

10   defendants' motion to revise jury instructions No. 1,

11   explaining an unreasonable action.

12         THE COURT:  Okay.  303.  Okay.

13         MR. JONES:  Okay.

14         So as Your Honor will recall, at the first trial,

15   the jury sent out a note during its deliberations, and the

16   note expressed confusion about the jury instruction that

17   attempted to explain "an unreasonable action."  The jury's

18   note requested, "more plain language, layman's terms, and

19   less legalese."

20         And this was an aspect of the instructions that

21   the plaintiffs had proposed, the defendants had proposed a

22   different version, Your Honor adopted the plaintiffs'

23   version.

24         And when we looked back at it, we believe that the

25   jury's expression of confusion was reasonable, was fair.

1    There are aspects of the instruction -- of the prior

2    instruction's explanation of an unreasonable action that,

3    I think, are unclear, potentially confusing, and that don't

4    adequately explain the connection between the reasonableness

5    of FHFA's decision and the reasonable expectations of the

6    shareholders.  So that's the first point.  There was

7    confusion.  That was fair.

8           The second point is that defendants, in response

9    to that jury note, at least in part in response to that jury

10   note, have proposed a modest set of changes to this

11   instruction that are designed to add clarity.

12          Plaintiffs, for their part, have opposed any

13   change at all and want to give the same instruction that

14   jurors apparently struggled with at the first trial.

15   Defendants, by contrast, have proposed a modest set of

16   changes.  That's the second point.

17          The third point is that we have, I think, four

18   proposed changes and they're all consistent with this

19   Court's prior rulings in the case, as well as other relevant

20   case law, and they do -- these changes that we have proposed

21   will give the jury more and better guidance to help them

22   understand this really central inquiry in the case:  Whether

23   FHFA's decision was arbitrary or unreasonable.

24          So the first change that we proposed was to strike

25   some language that we think was confusing.  There were

1    references to what's expected and to some unspecified notion

2    of fairness.  We've proposed to strike those.  They make the

3    instruction longer and harder to understand.

4           Second, we've proposed adding just a couple of

5    basic clarifying points in layman's terms, trying to avoid

6    legalese.  One of those is that there can be multiple

7    options or choices that are reasonable under the facts and

8    circumstances.  And that's consistent with extensive case

9    law that we've cited in multiple legal contexts, making the

10   point that, in evaluating the reasonableness of a particular

11   action or decision doesn't necessarily have to be the best

12   option or just one option, there can be multiple options

13   that are reasonable.  It's a basic point that a layperson

14   could use to help understand the inquiry.

15          THE COURT:  I think that's true.  That's one of

16   the problems with this going to a jury rather than a court

17   is a court understands the distinction of "reasonable"

18   versus "ideal."  And it's harder, in this kind of a concept,

19   to get that concept across, that "reasonable" means there

20   could be various things that would be reasonable.  So

21   I don't disagree that that may be one of the problems the

22   first jury had.

23          MR. JONES:  Exactly.

24          And the specific language we have proposed to add

25   to try our best to get that point to the jury is, "There can

1    be multiple, reasonable options in a given set of facts and

2    circumstances."

3           THE COURT:  See, I think that's hard -- a hard

4    concept for a jury to deal with.  They think that things

5    should be black or white, because normally at a criminal

6    case, they are, we tell them it's black or white.

7           MR. JONES:  Sure.  Totally understand and agree.

8    As I say, this was our best effort to convey the point in an

9    understandable way, whereas the prior jury instructions

10   don't include this concept at all, so this is an addition by

11   us that we think is warranted.

12          The second straightforward point that we want to

13   add is at the end of that paragraph in the instructions.

14   And it's to convey the notion that in evaluating the

15   reasonableness of the decision or action, the jury can

16   consider the decision-maker's objectives.

17          If the jury's task is to decide whether there was

18   an appropriate justification for the decision or action, the

19   jury can consider, well, what was the decision-maker trying

20   to achieve and does that constitute an adequate or

21   appropriate justification for the decision or action that

22   was made?

23          Again, it's a point that we have tried to convey

24   in as clear, straightforward, non-legalese language here

25   that we can.  It's a point that was completely missing from

1    the trial one jury instructions, and we think would help

2    address the confusion that was expressed previously.

3         The third change that we've added is slightly

4    different in kind.  There's a paragraph in this portion of

5    the instructions that just characterizes the plaintiffs'

6    position on unreasonableness.  It begins:  "In this case,

7    plaintiffs allege that FHFA," and it goes on to say "acted

8    unreasonably."

9         In the prior jury instructions, there was no

10   statement there of the defendants' position, so we've just

11   added a short paragraph, it's one sentence, that simply

12   states defendants' position about the reasonableness of the

13   action to go right after plaintiffs' statement of the

14   unreasonableness.

15        And then the last change that we've made, it

16   appears in a few places, but it's the same point in each

17   place, which is, just to be very specific in telling the

18   jury that the reasonable expectations of shareholders under

19   the shareholder contract are measured as of December 24th,

20   2009, which was the date of the Second Amendment to the

21   PSPAs.  And that's what Your Honor ruled was the relevant

22   "time of contracting" for purposes of measuring

23   shareholders' reasonable expectations under their contract.

24   We just put that date in to make it explicit that that's the

25   jury's task.

1          So those are the four changes that we had proposed

2     to try to improve this instruction over what was presented

3     to the jury last time.  We think that both individually and

4     together as a whole, these changes help eliminate the

5     confusion that the jury expressed last time and also help

6     explain more clearly the connection between the

7     reasonableness of FHFA's action and the reasonable

8     expectations of shareholders at the time of contracting.

9          THE COURT:  All right.

10          MR. JONES:  So that is all the argument I have for

11     the motion on the jury instructions, so I will allow the

12     other side to --

13          THE COURT:  On 303.  All right.

14          MR. JONES:  Yep.

15          MR. KRAVETZ:  Good afternoon again, Your Honor.

16     Robert Kravetz on behalf of the Class Plaintiffs.

17          As Mr. Jones indicated, we are confident that

18     we'll reach an agreement as to pre judgment interest.

19          I would say despite the number of motions today,

20     we've had an extremely collaborative and professional

21     relationship with defendants, which is really refreshing for

22     a case of this magnitude.

23          I'll touch briefly on nominal damages.

24          Defendants didn't mention it, we'll rest on our

25     papers at this time, Your Honor.  We think that that

1    instruction is dependent on the evidence and argument that

2    will come in at trial.

3           We've previewed why we think that that instruction

4    will not be appropriate, so we don't think it's ripe for a

5    decision at this time but that Your Honor could defer until

6    we get further in the trial.

7           THE COURT:  Okay.

8           MR. KRAVETZ:  In terms of the reasonableness

9    instruction, we do not see a basis to modify the instruction

10   regarding the implied covenant, which we believe to be

11   consistent with applicable law.

12          I would start with the decision-maker's

13   objectives.

14          The defense requests to introduce an instruction

15   that the jury may "consider the decision-maker's objectives

16   and obligations."

17          Here we think the defendants misunderstand our

18   position a bit, Your Honor.  It's not that the existing

19   facts and circumstances at the time of the decision are

20   irrelevant, which is not what we argued, the net worth sweep

21   occurred in August of 2012, so, of course, the jury will and

22   must consider that conduct.

23          But the defendants' proposed language simply does

24   not flesh out the concept of evaluating facts and

25   circumstances as they claim; rather, the language posed by

1    the defendant disregards [sic] that reasonableness must be

2    assessed as against shareholder expectations, not solely

3    against defendants' objectives or obligations, and is thus

4    directly contrary to Delaware law and the law of the case.

5         And we cite in our papers, Your Honor, the

6    Delaware Supreme Court's decision in *Gerber*.  And defendants

7    really -- we view the changes that defendants are suggesting

8    with respect to the instructions is much closer to a

9    tort-based standard.  A tort-based standard is going to

10   focus on what happened at the time of the wrong.

11        But as the Delaware Supreme Court has made clear,

12   "an implied covenant claimed by contrast looks to the past,

13   it is not a free-floating duty unattached to the underlying

14   legal documents.  It does not ask what duty the law should

15   impose on the parties given the relationship at the time of

16   the wrong, but, rather, what the parties would have agreed

17   to themselves had they considered the issue in their

18   original bargaining positions at the time of contracting."

19        And the Delaware Court in *Gerber* also touched on

20   the concept of fair dealing in light of the counterparties'

21   expectations, stating that the commitment to act fairly

22   under the implied covenant must be consistent with the terms

23   of the parties' agreement and purpose, and, once again, said

24   that the same retrospective focus applies equally to the

25   exercise of discretionary rights; that is, what is arbitrary

1    or unreasonable or conversely reasonable depends on the

2    parties' original contractual expectations, not the

3    free-floating duty that I mentioned earlier.

4            THE COURT:  That's a Delaware Chancery Court or

5    what?

6            MR. KRAVETZ:  That's Delaware Supreme Court,

7    Your Honor.  It's *Gerber versus Enterprise Holdings, LLC.*

8    And the cite is 67 A.3d 400.  And the pincite would be 418

9    to 419.

10           We believe that the defendants' formulation of

11   generalized objection -- objectives, obligations, and

12   circumstances ignores that the claims at issue require a

13   retrospective analysis with a reasonableness of the conduct

14   at the time of the breach is measured as against

15   expectations.

16           In terms of the second request that I'll cover,

17   Your Honor, we also do not see a basis to instruct the jury

18   that there "can be multiple, reasonable alternatives in a

19   given set of facts or circumstances."

20           First, the question here, Your Honor, is whether

21   the conduct actually taken by the defendants frustrated the

22   benefit of the bargain and breached the implied covenant.

23   What matters is whether the chosen option violated the

24   counterparties' reasonable expectations.

25           And it's not necessarily true in this specific

1    context in this specific claim that there can be multiple

2    reasonable options in the implied covenant setting.  Often

3    it's a binary choice whether a party acted in accordance

4    with contractual expectations or they breached.

5           And it's notable that the cases that the

6    defendants cited in their brief were cases that occurred

7    outside of the implied covenant context, where, in a tort

8    context, you may be able to get the instruction that there

9    could be multiple reasonable alternatives.

10          THE COURT:  Right.

11          MR. KRAVETZ:  And certainly here, defendants have

12   not pointed factually to the existence of any options that

13   Mr. DeMarco considered that may have addressed the circular

14   draw problem without violating shareholder expectations.

15          Second, at the last trial, plaintiffs pointed to

16   the existence of additional alternatives in a different

17   context.

18          We argue that if preserving --

19          THE COURT:  That's why I said the government

20   doesn't act this way on their own.

21          MR. KRAVETZ:  Yes.

22          THE COURT:  It still boggles me.

23          MR. KRAVETZ:  And we argue that if preserving the

24   Treasury commitment was what the defendants really cared

25   about, there were ways to address it without violating

1   shareholder expectations, and so that evidence and

2   argument --

3              THE COURT:  Oh, I don't know about that.

4              MR. HUME:  -- went to defendants' intent and

5   motive, and was not to address any circular draw issues but,

6   instead, to wind down Fannie and Freddie.

7              So referencing alternatives in that context does

8   not change the relevant inquiry.  In fact, it underscores

9   that the test is whether the defendants' specific conduct

10  violated shareholder expectations which is captured by the

11  existing instructions consistent with the law.

12             Next, Your Honor, defendants are requesting to

13  delete the clause "beyond what can be expected or beyond the

14  limits of fairness."

15             We walked through very specific examples in our

16  papers as to why that language is amply supported under the

17  applicable case law, and I won't re-tread that here.

18             But it's also clear that when Your Honor provided

19  that example from the next sentence in the instruction, that

20  the Court's explanation of what made the arbitrary or

21  unreasonable conduct, most of the formulation of which

22  defendants do not challenge, must be assessed in light of

23  the parties' objectively reasonable expectations under the

24  contract.

25             THE COURT:  Well, that's what we're applying is

1   contract law.

2            MR. KRAVETZ:  That's right, Your Honor.

3            THE COURT:  And that's what the Delaware case

4   would be talking about.

5            MR. KRAVETZ:  That's correct, Your Honor.

6            And, finally, in terms of including defendants'

7   response, you know, in all jury trials, the Court provides a

8   summary of the claim or the summary of the crime at issue.

9   That's because that's a specific question that the jury must

10  decide.

11           The Court did so here with a neutral description

12  of the claim.  We don't see any supporting case law or model

13  instruction that there should be a response to that.

14  There's no affirmative defense here for the jury to decide.

15  And we do think that the instruction simply includes

16  argument that is captured by other instructions that the

17  defendants should make to the jury.

18           So for those reasons, we think that the Court's

19  original instructions were correct, consistent with

20  applicable law, and should not be modified for the re-trial.

21  Thank you.

22           THE COURT:  Can you believe the defendants agree

23  with me on something -- I mean, the plaintiffs?  I know the

24  defendants would.

25           Okay.  What's the next one?

1          MR. JONES:  Thank you, Your Honor.

2          Could I just make one point on this one before we

3     move?  I have the next one too, so I'll be staying up here.

4          Just quickly on the instructions issue.

5          On the *Gerber* case from the Delaware Supreme

6     Court, 2013 --

7          THE COURT:  Right.

8          MR. JONES:  -- it says that the inquiry looks to

9     the past to determine the parties' expectations at the time

10    of contracting.

11         THE COURT:  Parties.

12         MR. JONES:  The parties, both parties, plural, not

13    possessive.

14         That's looking back to December 24th, 2009.

15         But the ultimate inquiry for the jury under

16    Delaware law is still whether FHFA, the decision-maker,

17    acted arbitrarily or unreasonably --

18         THE COURT:  Right.

19         MR. JONES:  -- in August 2012, which is when they

20    made the decision.

21         THE COURT:  Right.

22         MR. JONES:  Now, these are, Your Honor, as I think

23    Your Honor alluded, these are complicated concepts,

24    connecting whether FHFA acted arbitrarily or unreasonably

25    based on the existing facts and circumstances in August 2012

1   and thereby violated the parties' reasonable expectations in

2   December 2009.  Our changes to the jury instructions on

3   reasonableness are designed to help the jury understand that

4   connection.  And I think that they do a better job of

5   explaining that connection than the trial one jury

6   instructions which the jurors --

7            THE COURT:  Which the jury had some trouble with,

8   I agree.

9            MR. JONES:  They had some trouble with.

10           And, again, and the plaintiffs, for their part,

11  have proposed no changes.  If they have their way, then

12  we will just give the jury the same problematic instruction,

13  whereas I think our instructions improve on the prior

14  instruction and are completely consistent with the *Gerber*

15  case and all other relevant case law.  So that's all on the

16  jury instructions issue.

17           THE COURT:  Okay.

18           MR. JONES:  The next motion that defendants would

19  like to present is our motion to revisit the Court's

20  evidentiary ruling admitting the Stegman memo.  This is

21  PX205.  The ECF number of this motion, if you want to just

22  get there, Your Honor, is -- it's ECF 291 on, I believe, the

23  Class docket.

24           THE COURT:  Okay.  Go ahead.

25           MR. JONES:  So I think we have taken plaintiffs to

1   task a couple of times today for re-treading old ground.

2   I will admit that we are going back to the well on this one.

3        The Stegman memo, PX205, which plaintiffs have

4   said is the most important document in this lawsuit, should

5   be excluded as inadmissible hearsay.

6        THE COURT:  Which number?

7        MR. JONES:  So the ECF filing of our motion here

8   is ECF 291 on the Class docket.

9        THE COURT:  Right.

10       But what's the most important document?

11       MR. JONES:  PX, Plaintiff's Exhibit 205.

12       THE COURT:  Okay.

13       MR. JONES:  It's been referred to as the Stegman

14   memo.

15       And Your Honor heard extensive argument about it

16   previously.

17       I can put a copy of the Stegman memo on the ELMO

18   just so we know exactly what we're taking about.

19       So the Stegman memo, PX205, is a document that the

20   parties disputed its admissibility --

21       THE COURT:  Right.

22       MR. JONES:  -- before and during the last trial.

23       The Court previously found that this Stegman memo

24   is a public record.  And while the defendants respectfully

25   disagree with that ruling and preserve their objection on

1     that issue for appeal.

2             Even as a public record, Your Honor, this memo is

3     still inadmissible because it contains embedded hearsay to

4     which no exception applies.  And we believe that that issue

5     of the admissibility of the embedded hearsay was not

6     directly addressed the last time.

7             And there are two key points that are now

8     undisputed.

9             First, the Stegman memo, it is undisputed,

10    contains two layers of hearsay.  The first layer is

11    Mr. Stegman authoring this memo out of court.  So the memo

12    itself, the writing of the memo by Mr. Stegman, is the first

13    layer of hearsay.  That is what Your Honor ruled was a

14    public record.

15            The second layer of hearsay, however, is

16    then-Secretary Geithner's out-of-court oral statements to

17    Mr. Stegman describing Secretary Geithner's meeting of a day

18    earlier with Mr. DeMarco.

19            And you can see in the first sentence of the memo,

20    Mr. Stegman writes, "The Secretary provided an overview of

21    his," meaning Ms. Miller's, "and your previous" --

22    I'm sorry, his and your, meaning the Secretary's and

23    Ms. Miller's, "previous day's meeting with Ed DeMarco.  This

24    is the essence of the discussion that took place."

25            So on its face, this document, start to finish, is

1    Mr. Stegman writing the memo out of court, that's the first

2    layer of hearsay.  But then the entire memo is just

3    Mr. Stegman relating what Secretary Geithner told

4    Mr. Stegman about the meeting with DeMarco.  And so that's

5    the second layer of hearsay.  So it's undisputed that there

6    are two layers of hearsay.

7            The second key point that's now undisputed,

8    different from the first trial, is that this memo is

9    inadmissible unless both of those layers of hearsay are

10   subject to some exception or exemption.

11           Plaintiffs previously argued at the first trial,

12   in fact, it was their only argument for admission of this

13   document, that the public-records exception under 803(8) is

14   a multilayer hearsay exception, meaning, at least in their

15   argument, that because it's a public record, it doesn't

16   matter how many layers of hearsay it is.  Public record --

17   their view of the law, based on a Seventh Circuit case

18   called *Amoco Cadiz*, was that all -- any and all layers of

19   hearsay in a public record come in because it's a public

20   record, okay?

21           We argued in our motion and explained that that's

22   just an incorrect statement of the law.  It's not the law in

23   the Seventh Circuit, it's contrary to decisions of the

24   D.C. Circuit and other courts in this district and around

25   the country.

1          In their response brief, plaintiffs abandoned the

2     argument that they made, which, again, was their only

3     argument for admissibility of the embedded hearsay at the

4     first trial.

5          They have abandoned the multilayer hearsay

6     already.  They don't even cite the *Amoco Cadiz* case.  And

7     they do not refute our argument in our opening motion that

8     that prior argument they made was just an incorrect

9     statement of the law.

10         So it is now undisputed that this memo is

11    inadmissible, it is out unless the embedded hearsay from

12    Secretary Geithner here is covered by some hearsay

13    exception.  And plaintiffs have failed to establish any

14    exception for the embedded hearsay.  They invoke -- they

15    invoke the public-records exception and the Residual

16    Exception, but neither one applies and we think the briefing

17    makes that very clear.

18         On public records, it is not entirely clear to us

19    from plaintiffs' brief what they are arguing about public

20    records.  But in any event, they don't establish that the

21    exception applies to the embedded hearsay.

22         They don't identify a single case indicating that

23    Rule 805, which says that each layer of hearsay needs an

24    exception, they don't cite a single case indicating that 805

25    does not apply when the embedded hearsay in a public record

1    is from another agency official, which appears to be at

2    least part of what they're arguing.  There's no case law

3    that supports that view.  And the cases that we cited, our

4    motion actually refute that view, and we explain that in our

5    reply brief.

6           And the plaintiffs' assertion that Secretary

7    Geithner's embedded hearsay in this memo is itself a public

8    record is both conclusory, it's set forth in a single

9    sentence in their motion without elaboration, and it's just

10   incorrect.  There's no basis to conclude that whatever

11   Secretary Geithner told Mr. Stegman, apparently in some oral

12   conversation that they had, is a public record within the

13   meaning of Rule 803(8).

14          The Residual Exception does not apply here either.

15   The case law, as Your Honor is well-aware, establishes that

16   the Residual Exception is extremely narrow and rarely

17   applies.  It has been applied to things like SEC filings,

18   where the authors and signatories, there are very serious

19   consequences for misstatements; there are extraordinary

20   bases for reliability and importance.

21          But this is just an internal memo between two

22   Treasury officials, where one of them is describing a

23   conversation he had with the Secretary.  It doesn't come

24   close to having sufficient guarantees of trustworthiness.

25   And in any event, even if it did, there are more -- this

1   document is not more probative than any other evidence

2   plaintiffs could try to admit.

3          They want to admit this document because of what

4   Secretary Geithner reportedly or supposedly told Mr. Stegman

5   that Mr. Stegman is writing here about what Mr. DeMarco said

6   at a meeting.  But Mr. DeMarco, of course, is testifying

7   live.  The plaintiffs can just ask him about what he did or

8   didn't say at the meeting.  And, in fact, they did that at

9   the first trial, and he gave answers to the best of his

10   recollection.

11          So, Your Honor, as I say, we understand Your Honor

12   has already ruled that the document itself, that the first

13   layer of hearsay, Mr. Stegman authoring this memo out of

14   court, is subject to the public records exception, but that

15   does not relieve the plaintiffs of their obligation under

16   Rule 805 to establish some exception for the embedded

17   hearsay, the second layer of hearsay in this memo from

18   Secretary Geithner, and the plaintiffs have not established

19   the applicability of any such exception for the embedded

20   hearsay.

21          THE COURT:  Now, since I squarely ruled on this at

22   the first trial, is it your position that I have to -- you

23   have to meet the standard for a motion to reconsider for me

24   to now consider this?

25          MR. JONES:  So, Your Honor --

1          THE COURT:  And what is the standard then?

2          MR. JONES:  So we think that we meet the standard

3    for reconsideration.

4          I would also say that there are changed facts and

5    circumstances, because the plaintiffs have now abandoned the

6    only argument that they made for admissibility of the

7    embedded hearsay at the first trial.

8          But it is also true, Your Honor, that although you

9    admitted this document, Your Honor never --

10         THE COURT:  Over objection.

11         MR. JONES:  Over objection, correct.

12         There was never a clear statement about why the

13    embedded hearsay was admitted.  So it's not totally clear

14    from the record that that issue was squarely resolved,

15    although it was indirectly decided against us because you

16    admitted the document.

17         THE COURT:  I don't remember exactly what I said

18    on the record.  I know why I admitted it, but I don't know

19    what the record reflects.

20         What is the test then for my reconsidering it?

21         MR. JONES:  So the test for reconsideration would

22    be essentially a law of the case standard.  Changed facts or

23    circumstances would warrant revisiting a decision, as would

24    a clear error of law.

25         THE COURT:  That I made a clear error?

1          MR. JONES:  Respectfully, Your Honor, we think

2     that this is a situation where the law is clear that the

3     embedded hearsay in this document must satisfy some hearsay

4     exception to be admissible because the public records

5     exception --

6          THE COURT:  The D.C. Circuit has never said that.

7          MR. JONES:  The D.C. Circuit decisions support the

8     proposition that embedded --

9          THE COURT:  No, they --

10         MR. JONES:  -- hearsay in a public --

11         THE COURT:  They didn't say that.  They ducked it.

12         MR. JONES:  The question of whether?

13         THE COURT:  Whether the embedded has to have an

14    exception.

15         MR. JONES:  So --

16         THE COURT:  Has to meet an exception.

17         I don't think they said it.

18         Tell me the case where they said it.

19         MR. JONES:  So there are certainly decisions from

20    other courts in this district.

21         THE COURT:  Oh, that doesn't mean a thing.

22         MR. JONES:  Fair enough.

23         There are decisions of other -- of multiple other

24    circuits:  The Eleventh Circuit, the First Circuit.

25         THE COURT:  Well, that's like the Seventh.  That

1    doesn't mean anything either.

2            MR. JONES:  The First Circuit said that "Decisions

3    in this and other Circuits squarely hold that hearsay

4    statements by third persons are not admissible under this

5    exception merely because they appear within public records,"

6    meaning the public-records exception.

7            I don't believe that the -- oh, I'm sorry.  The

8    D.C. Circuit case that we think is the closest statement of

9    the law here is called *Hackley v. Roudebush*.

10           THE COURT:  What's the name?

11           MR. JONES:  It's from 1975.

12           It's 520 F.2d 108.

13           THE COURT:  Okay.

14           MR. JONES:  And the D.C. Circuit said, "There will

15   often be a double- or triple-hearsay problem.  See Rule

16   805."

17           THE COURT:  Right.

18           MR. JONES:  Even though the document at issue

19   itself may be admissible under Rule 803(6) or (8)(b), and

20   803(8)(b) is the public records exception.

21           So the D.C. Circuit comes pretty close.

22           There's another case we cited from the

23   D.C. Circuit, *Czekalski v. Peters*.  It's 475 F.3d 360,

24   Footnote 2.

25           This was in response to an argument that an OIG

1  report, which is a public record, an argument that that

2  report contained embedded hearsay statements.

3          The D.C. Circuit held that those embedded hearsay

4  statements in the public record would be admissible as

5  admissions by a party opponent.

6          So the D.C. Circuit was looking for and found

7  another exception that covered embedded hearsay in a public

8  record.

9          THE COURT:  So they didn't have to resolve the

10  issue.

11          MR. JONES:  They didn't address the issue,

12  although it would have been unnecessary to even mention the

13  party admission exception.

14          THE COURT:  Well, the reverse of that is they

15  didn't need to decide the issue.

16          MR. JONES:  Fair enough.

17          I would just conclude by saying that the

18  plaintiffs don't say --

19          THE COURT:  I might give them a chance.

20          MR. JONES:  The plaintiffs haven't identified a

21  single case from any court anywhere that supports the notion

22  that it's a multilayer exception.  Thank you, Your Honor.

23          THE COURT:  That's a nice point.

24          Defense want to bother -- I mean, plaintiffs want

25  to bother?

1          MR. ZAGAR:  I hate to take the time, Your Honor,

2     but they've kind of given me no choice.

3          Let's start with standard.  Your Honor put your

4     finger on it.  They made this argument pretrial.  Your Honor

5     disagreed, overruled it.  They made the argument during

6     trial.  Your Honor disagreed, overruled it.  It's the same

7     thing for the third time.

8          THE COURT:  Right.

9          MR. ZAGAR:  I acknowledge our side has done some

10     of the same.

11          We don't expect Your Honor to change your mind.

12     I don't think defendants really expect Your Honor to change

13     your mind, and you shouldn't and here's why.

14          THE COURT:  I'll look at it.

15          MR. ZAGAR:  The very first thing that Mr. Jones

16     said is there's no dispute that there's two layers of

17     hearsay and that we need to make exceptions.  I hate to

18     burst his bubble:  There's very much in dispute about that.

19          They talk about the embedded hearsay and the

20     second layer of hearsay.  There is no embedded hearsay.  Our

21     argument all along has been, there is no embedded hearsay,

22     the whole thing is a public record, and that's why it's

23     admissible, and let me explain why.

24          Your Honor held that the document, this document

25     on the screen, was admissible as a public record.  And they

1  call it the Stegman memo, I understand why, because it says:

2  From Michael Stegman.

3        But remember, this is the public-records

4  exception.  So this is not a public record of Mr. Stegman,

5  it's not a public record of Treasury Secretary Geithner,

6  it's a public record of the Treasury Department.

7        A memo like this created by the Treasury

8  Department for the Treasury Department based on information

9  provided by the Treasury Department to the Treasury

10 Department does not contain any hearsay, it's all the

11 Treasury Department.  That's the whole point of the

12 public-records exception.

13       Defendants' argument, and this will sound

14 familiar, is essentially that this memo, that Your Honor has

15 held constitutes public record, contains hearsay.  There's

16 this embedded hearsay, because Secretary Geithner, Secretary

17 of the Treasury, conveyed to Mr. Stegman, a senior Treasury

18 official, the information, and Mr. Stegman typed up the memo

19 instead of the Treasury Secretary Geithner typing up the

20 memo himself.  That's essentially their argument.  And as my

21 friend, Mr. Hoffman, will agree me, the application of the

22 rule does not turn on who did the typing.

23       The whole point of the rule -- and remember, the

24 rule has two parts.  It has to be a record of the agency's

25 activity, and subpart B of the rule, it has to be

1    trustworthy.  Defendants have to fail to show that the

2    source of the information was untrustworthy.  It has to meet

3    both parts.  Your Honor held twice that it did meet both

4    parts.

5            The whole point of the rule against hearsay is to

6    exclude statements that are not trustworthy.  That's why the

7    rule against hearsay exists.  The whole point of the

8    exceptions to the rule against hearsay, including this one,

9    the public records exception, is to admit statements that

10   look like they're hearsay but they are trustworthy for some

11   other reason.

12           As Your Honor held, this memo falls into that

13   second category.  It looks like it would be hearsay because

14   it's an out-of-court statement offered for the truth, but

15   there are other reasons why we know it's trustworthy enough

16   to admit.  That's the whole point of the public-records

17   exception.  That's how it works.

18           So what defendants essentially want to do -- and

19   they admit -- they say in their brief, "We admit that

20   Secretary Geithner's a trustworthy source of information";

21   they almost use those exacts words.  But they want to say,

22   but notwithstanding that the rule itself says it's -- the

23   burden is on us, the defendants, to show that he's not

24   trustworthy, it still is not admissible because of some

25   other rule because it's embedded here.  It doesn't make any

1    sense, Your Honor.  They're splitting metaphysical hairs

2    between the memo and the contents of the memo.

3          Well, it's hard to wrap your brain around it, that

4    if Your Honor has held that it's a memo, that, like, what

5    the words on the page say are admissible as a public record

6    but they say, well, no, because it was -- it went from the

7    Secretary to Mr. Stegman and Mr. Stegman wrote the memo.

8          It's like so what?  That's the whole point of

9    Subsection B, is if it's trustworthy because it came from a

10   trustworthy source like the Treasury Secretary, who has a

11   public duty to be honest in his communications and we assume

12   that he fulfills that duty unless there's evidence

13   otherwise, which there isn't, that's the whole point of

14   Subsection B is, if it's trustworthy enough, we don't care

15   that it was conveyed from Secretary Geithner to someone

16   else.

17         And the cases they cite, including the

18   D.C. Circuit case they cited, those deal with cases where

19   the memo or the report or whatever the document is is

20   quoting some other person.  It's quoting a witness, it's

21   quoting -- you know, a lot of cases are about police

22   records, a police report where officer so-and-so interviewed

23   witness so-and-so and witness so-and-so said X.  Yeah,

24   that's hearsay, but that's not what this is.

25         So the idea that we just pretend that the Treasury

1    Department doesn't communicate with each other and then

2    write things down because that would be hearsay, that just

3    doesn't make any sense, it would defeat the entire purpose

4    of the rule.

5            Your Honor got it right the first time, Your Honor

6    got it right the second time, you don't need to do it again.

7    You'll get it right the third time, I'm highly confident.

8            Just one more small point.

9            As if it weren't trustworthy enough, which it

10   clearly is, there's another document that we'd introduce

11   that is very, very similar to this.  It's a memo, again,

12   from Mr. Stegman -- actually this one is in the form of an

13   email -- talking about a pre-meeting.  So this was -- the

14   actual document, PX205, is about a meeting on June 24th,

15   2012.  Some of the folks from Treasury had a pre-meeting

16   with Mr. DeMarco and Mr. Ugoletti a few days before that.

17   And this is Exhibit AA to our motion; the label is PX584.

18           And it uses very, very similar language.  It

19   says -- it refers to Mr. DeMarco, Ed, said at the beginning

20   about his lack of sense of urgency about needing to adjust

21   the PSPAs.

22           So we now have another document from another

23   meeting, and this one, also a public record, exactly the

24   same thing.  It's a record, in this case an email, between a

25   couple of different Treasury people, saying, here's what

1    happened at the meeting and here I'm writing down what

2    happened at the meeting.  It uses almost the same language

3    as PX205 about a lack of urgency that Mr. DeMarco expressed.

4           I don't think you need any more trustworthiness,

5    but now you have two documents that basically say the same

6    thing.  How much more trustworthiness could a person want?

7    It should be admissible, there's just no question about it.

8           Their argument would basically write the rule --

9    write the public-records exception out of the rule, because

10   essentially what they're arguing is, again, contrary to case

11   law, well, if Mr. Stegman had been at the meeting and just

12   wrote down his recollections, that would be okay because

13   he'd have personal knowledge.

14          But the case law, and we cited it and they don't

15   dispute it, five, six, seven cases saying the person who

16   writes the memo does not need to have personal knowledge

17   because of this presumption that public officials will do

18   their jobs honestly.  That's the whole reason the rule

19   exists.

20          So the fact that sometime before this memo was

21   written there was -- and this is the other point.  It says

22   that the Secretary conveyed the information -- or, excuse

23   me, provided an overview or -- provided a summary, something

24   to that effect.  Was that oral?  Was it written?  Was it

25   oral and written?  We don't know.  But the whole point is it

1    doesn't matter.  It came from a reliable source, a

2    trustworthy source, it was written down in a public record.

3    That's the end of the inquiry.  Your Honor got it right, you

4    don't need to go any further.  We're good.  Thank you,

5    Your Honor

6              THE COURT:  Accidents happen.

7              All right.  What's the next thing the defendants

8    want to do?

9              MS. VARMA:  Your Honor, Asim Varma for the

10   defendants.

11             I'm very cognizant of the fact that we're past

12   5:00-ish.

13             THE COURT:  Uh-huh.

14             MS. VARMA:  I have three motions that defendants

15   have made that still need to be argued.

16             THE COURT:  Okay.

17             MS. VARMA:  They are very significant motions, and

18   I think --

19             THE COURT:  Can we to them Tuesday if we do jury

20   selection Monday?

21             MS. VARMA:  I think they would be a helpful to

22   have --

23             THE COURT:  Before trial?

24             MS. VARMA:  Yes, before trial, because I expect

25   that they will be relevant to openings.

1           THE COURT:  To opening statements?

2           MS. VARMA:  Yes.

3           THE COURT:  When do you all want to try to do that

4    then?

5           MS. VARMA:  Well, what would work for the Court?

6           THE COURT:  Let's do this off the record.

7           (Discussion held of the record.)

8           THE COURT:  Back on the record.

9           We'll recess and try and finish this off at 10:00

10   in the morning and complete it by noon.

11          I do have some January 6th sentencings I've got to

12   get in tomorrow.

13          MS. VARMA:  Understood, Your Honor.

14          MR. HUME:  Your Honor, may I make just one quick

15   note for the record so we can then pick it back up tomorrow,

16   maybe two quick things?

17          THE COURT:  And some of the things that don't have

18   to be done before openings we'll try to get to Tuesday by

19   noon then.

20          MR. HUME:  That would be great, Your Honor.

21          This is Hamish Hume for the record.

22          We raised two things with defendants, I think,

23   yesterday, that have not been briefed, we don't think

24   they'll need briefing.

25          One is, one of our experts, Professor Thakor,

```
1    Anjan Thakor, only addresses the periodic commitment fee
2    issue.  We view that as a defense, and, therefore, we
3    think -- last time he appeared in the case-in-chief and then
4    again in rebuttal.  We think he can just appear in rebuttal.
5    And their expert has talked about periodic Amendment fees,
6    so he would appear to rebut that.
7             But we do want to be sure we're not taking a
8    risk -- we think that's correct.  We don't want them to
9    object after they rest their case and not be able to present
10   him.
11            So we've asked if they agree, I don't know if
12   they're ready to say now, we can deal it with tomorrow, but
13   I wanted to make sure it was noted for the record because I
14   need to tell him for his own schedule that the plan is he's
15   going to be only in rebuttal.
16            THE COURT:  Okay.  We can take that up tomorrow.
17            MR. HUME:  Okay.
18            And then the second thing is, there's a very minor
19   tweak to the verdict form where it asks if the Third
20   Amendment violated the implied covenant.  We think it should
21   be the net worth sweep.  We have raised that with
22   defendants.  We will give them a chance to respond to that
23   tomorrow.
24            THE COURT:  Okay.
25            MR. STERN:  Your Honor, very briefly.
```

1          Mr. Hume is, of course, correct, they did do us

2    the courtesy of notifying us of about these issues.

3          But so long as we're on the record just so the

4    Court knows, we may have an issue with reserving Dr. Thakor

5    for rebuttal, and we may have an issue with the verdict

6    form.  But we'll caucus and try to resolve.  If we can't,

7    we'll let the Court know.

8          THE COURT:  I'll see you in the morning at 10:00.

9          COURTROOM DEPUTY:  All rise.

10         This Court stands in recess.

11         (Proceedings concluded at 5:29 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

        I, William P. Zaremba, RMR, CRR, certify that
the foregoing is a correct transcript from the record of
proceedings in the above-titled matter.


Date:__July 21, 2023_____     

                    William P. Zaremba, RMR, CRR

COURTROOM
DEPUTY: [4]   4/2 76/21
76/24 139/9
MR. BARRY: [18]   4/25
91/10 91/15 94/6 94/8
94/13 94/16 94/20
94/25 95/3 95/9 95/11
95/16 95/19 96/5 96/7
96/11 96/15
MR. BERGMAN: [9]
5/21 19/14 22/16 22/20
22/23 27/23 35/16
35/23 37/23
MR. COLATRIANO: [1]
5/4
MR. GOODHART: [20]
5/6 56/4 56/9 62/25
63/2 63/9 63/14 63/22
63/25 64/6 65/6 65/20
65/22 66/1 67/19 67/23
68/1 68/17 68/22 73/19
MR. HOFFMAN: [22]
5/15 12/8 12/13 12/18
12/22 13/1 43/22 44/5
49/23 52/9 54/10 54/16
69/12 69/16 70/18
70/25 71/3 71/11 71/25
72/3 84/23 101/8
MR. HUME: [9]   4/11
103/15 103/21 104/1
104/6 116/4 137/14
137/20 138/17
MR. JONES: [42]   5/17
104/21 105/4 105/16
105/19 106/4 106/7
106/13 108/23 109/7
111/10 111/14 118/1
118/8 118/12 118/19
118/22 119/9 119/18
119/25 120/7 120/11
120/13 120/22 125/25
126/2 126/11 126/21
127/1 127/7 127/10
127/12 127/15 127/19
127/22 128/2 128/11
128/14 128/18 129/11
129/16 129/20
MR. KAPLAN: [5]   5/2
8/21 8/24 16/5 22/24
30/13 30/22 38/1 38/6
MR. KRAVETZ: [9]
4/23 111/15 112/8
114/6 115/11 115/21
115/23 117/2 117/5
MR. RAMER: [3]   4/21
24/7 29/13
MR. RUDY: [14]   4/18
77/2 77/9 77/12 77/16
77/25 78/5 78/9 78/13
78/23 79/2 83/7 91/6
103/13
MR. STERN: [4]   5/12
104/7 104/12 138/25
MR. ZAGAR: [18]   4/16
6/10 7/10 7/17 7/25 8/7
8/12 8/14 8/18 40/4
41/18 41/22 41/24 42/2

130/15
MS. DAVIS: [2]   5/8
5/11
MS. VARMA: [9]   5/19
136/9 136/14 136/17
136/21 136/24 137/2
137/5 137/13
THE COURT: [163]

**$**
$30 [2]   17/24 18/2
$30 billion [1]   17/24
$5 [1]   18/2

**'**
'10 [1]   83/16
'11 [1]   83/16
'9 [1]   83/16

**-**
-13 [1]   97/20

**.**
.1 [1]   9/20

**1**
10 [3]   58/19 71/14
103/5
10 percent [1]   102/25
10-Ks [2]   47/6 47/8
10-Q [1]   51/13
10-Qs [2]   47/8 51/12
100 [1]   60/12
10020 [1]   2/14
102 [1]   74/15
1053 [1]   1/4
108 [1]   128/12
10:00 [2]   137/9 139/8
11 [5]   66/2 71/1 71/15
72/6 97/13
115 [1]   96/20
116 [1]   96/21
12 [1]   61/13
123 [1]   2/16
1251 [1]   2/13
1288 [2]   1/10 4/6
13 [3]   61/5 97/20 97/21
13-1053 [1]   1/4
13-1288 [2]   1/10 4/6
13937460 [2]   37/18
37/24
1400 [1]   2/14
1401 [1]   2/4
146 [1]   61/5
147 [1]   61/8
148 [1]   61/13
14th [1]   31/12
15 [6]   36/10 55/11
57/21 68/25 69/6 71/25
1523 [1]   1/17
15th [1]   32/13
16 [2]   71/15 72/6
17 [4]   64/18 68/25 69/6
97/13
17th [1]   32/12
18 [1]   1/5
19087 [1]   2/9
1975 [1]   128/11

1981 [1]   27/15
19801 [1]   2/17
1G [1]   11/22

**2**
20001 [1]   3/14
20001-3743 [1]   3/7
20005 [1]   2/4
2002 [2]   37/18 37/24
20036 [2]   1/18 1/19
2007 [1]   74/15
2008 [1]   83/16
2009 [4]   92/15 110/20
118/14 119/2
201 [1]   97/20
2012 [17]   19/8 28/21
31/12 31/25 34/10
51/14 80/2 91/2 91/19
92/16 98/17 102/17
103/3 112/21 118/19
118/25 134/15
2013 [2]   24/19 118/6
202 [5]   1/18 2/5 3/7
3/15 97/20
2022 [3]   22/17 85/6
86/15
2023 [2]   1/5 140/7
203 [1]   98/8
205 [2]   98/8 120/11
21 [1]   140/7
211 F.Supp.2d [1]
96/20
212 [1]   2/14
21st [2]   85/5 86/15
220 [1]   97/20
220-9621 [1]   1/18
23 [2]   19/11 98/8
232 [1]   96/21
237-6131 [1]   2/5
24 [1]   105/6
24th [4]   92/15 110/19
118/14 134/14
25 [1]   64/22
252 [1]   57/21
253 [1]   57/21
26th [1]   28/21
280 [1]   2/9
282 [1]   11/22
291 [2]   119/22 120/8
2:00 [1]   1/6
2A [1]   57/18

**3**
3-0 [1]   41/23
30 [1]   37/12
302 [1]   2/17
303 [3]   106/4 106/12
111/13
307 [2]   41/22 41/24
32 [2]   60/11 60/23
3249 [1]   3/15
333 [1]   3/13
354-3249 [1]   3/15
360 [1]   128/23
3743 [1]   3/7
382 [1]   48/18
3:50 [1]   76/23

40 [1]   7/15
400 [1]   114/8
401 [1]   92/1
418 [1]   114/8
419 [1]   114/9
44 [3]   64/18 64/21
65/23
45 [4]   65/24 66/2 71/14
71/15
474 [1]   74/14
475 [1]   128/23
4:05 [1]   76/23

**5**
5000 [1]   3/7
51 [1]   48/18
520 [1]   128/12
554-1400 [1]   2/14
59 [1]   48/18
5:00-ish [3]   8/11 8/13
136/12
5:29 [1]   139/11
5B [1]   94/17

**6**
601 [1]   3/6
602 [1]   58/11
602's [1]   57/8
610 [1]   2/10
6131 [1]   2/5
622-7000 [1]   2/17
6503 [1]   3/14
667-7706 [1]   2/10
67 [1]   114/8
6th [1]   137/11

**7**
7000 [1]   2/17
703 [5]   33/7 33/17
35/12 37/4 40/1
7241 [1]   55/11
7706 [1]   2/10
7th [1]   98/16

**8**
8-plus [1]   87/8
80 [2]   6/19 7/14
801 [2]   92/3 100/5
802 [1]   92/3
803 [15]   40/22 41/1
42/6 43/9 43/12 44/17
45/3 45/5 45/5 45/17
48/20 122/13 124/13
128/19 128/20
805 [5]   92/3 123/23
123/24 125/16 128/16
807 [3]   43/10 43/13
49/10
8th [4]   51/13 91/19
92/16 98/16

**9**
942-5000 [1]   3/7
9621 [1]   1/18
9th [2]   91/19 92/16

A.3d [1]   114/8
AA [1]   134/17
abandoned [3]   123/1
123/5 126/5
ability [3]   93/7 93/12
100/18
able [9]   29/7 30/10
42/15 42/16 43/4 50/19
65/2 115/8 138/9
about [123]   14/13 15/4
19/4 21/6 22/25 22/25
23/1 23/3 23/10 23/13
23/13 23/19 24/16 27/3
29/3 29/5 32/22 33/10
33/12 34/9 35/5 35/8
35/9 38/11 39/6 40/10
40/15 41/6 41/15 42/15
42/20 42/25 43/2 43/19
46/10 46/10 46/12 48/2
50/9 50/10 50/21 50/23
50/24 50/25 51/2 51/3
51/19 51/24 52/3 52/5
52/15 54/17 55/24
57/14 57/22 59/13 60/8
61/1 61/6 61/21 62/4
62/7 62/14 62/24 63/8
63/16 68/10 69/14
69/15 71/13 72/14
72/16 73/2 73/8 73/15
74/4 74/16 74/18 74/18
76/1 78/11 78/20 78/24
80/10 80/18 81/4 82/10
82/22 83/16 87/19 88/7
90/1 90/15 93/21 96/19
99/12 100/18 102/16
103/18 105/24 106/16
110/12 115/25 116/3
117/4 120/15 120/18
122/4 123/19 125/5
125/7 126/12 130/18
130/19 133/21 134/13
134/14 134/20 134/20
135/3 135/7 138/5
139/2
above [1]   140/4
above-titled [1]   140/4
absent [1]   34/13
absolutely [3]   19/2
46/1 69/3
acceptable [2]   81/3
105/12
access [4]   39/16 39/18
39/19 93/20
Accidents [1]   136/6
accommodate [1]   8/12
accommodating [1]
81/6
accordance [1]   115/3
according [2]   24/15
26/2
account [1]   11/11
accountant [6]   41/12
42/11 46/14 55/20
55/21 76/8
accounted [1]   11/2
accuracy [1]   47/6
accurate [3]   48/7 48/9

**A**

**accurate...** [1] 49/19
**accurately** [1] 38/22
**achieve** [1] 109/20
**acknowledge** [3] 51/25
59/25 130/9
**acknowledged** [5]
14/5 14/6 41/12 72/11
101/14
**across** [2] 53/25
108/19
**act** [4] 53/4 53/12
113/21 115/20
**acted** [5] 93/15 110/7
115/3 118/17 118/24
**acting** [1] 7/15
**action** [16] 1/10 4/7
53/7 53/7 56/22 105/21
105/25 106/11 106/17
107/2 108/11 109/15
109/18 109/21 110/13
111/7
**actions** [2] 53/21 53/23
**activity** [3] 45/7 45/9
131/25
**actor** [1] 47/3
**actual** [1] 134/14
**actually** [13] 9/5 27/14
32/11 32/21 39/7 51/23
52/12 53/17 55/23 82/8
114/21 124/4 134/12
**add** [3] 107/11 108/24
109/13
**added** [2] 110/3 110/11
**adding** [1] 108/4
**addition** [2] 48/5
109/10
**additional** [2] 93/18
115/16
**address** [25] 20/15
30/20 44/8 46/8 52/12
56/13 58/5 58/18 58/22
58/25 59/2 59/5 59/14
60/9 61/10 61/22 68/2
69/23 87/15 91/22
91/23 110/2 115/25
116/5 129/11
**addressed** [7] 19/20
20/11 22/2 44/8 52/11
115/13 121/6
**addresses** [1] 138/1
**addressing** [2] 40/6
91/12
**adequate** [4] 32/4 32/7
50/5 109/20
**adequately** [1] 107/4
**adjust** [1] 134/20
**admissibility** [7] 12/2
54/21 54/25 120/20
121/5 123/3 126/6
**admissible** [26] 30/9
32/25 43/8 43/16 44/17
44/21 60/24 70/3 77/21
78/16 79/16 81/1 82/19
84/9 84/11 87/13
100/12 127/4 128/4
128/19 129/4 130/23
130/25 132/24 133/5

**admission** [5] 91/21
100/4 100/9 122/12
129/13
**admissions** [2] 100/6
129/5
**admit** [11] 32/17 35/19
44/25 75/11 120/2
125/2 125/3 132/9
132/16 132/19 132/19
**admitted** [18] 21/11
30/17 30/23 33/5 33/9
35/18 35/20 35/24 36/3
36/21 38/3 38/7 56/2
83/10 126/9 126/13
126/16 126/18
**admitting** [1] 119/20
**adopted** [4] 30/1 30/12
66/16 106/22
**adopting** [1] 25/7
**adoption** [1] 56/24
**adoptive** [2] 100/4
100/9
**advance** [2] 103/23
103/24
**adverse** [1] 21/20
**Aetna** [1] 74/13
**affect** [1] 54/24
**affected** [1] 28/8
**affirmative** [3] 7/20
77/5 117/14
**after** [16] 20/23 21/1
21/2 57/1 57/2 57/3
58/24 60/8 60/13 63/16
75/5 79/7 89/14 91/19
110/13 138/9
**afternoon** [24] 4/5 4/11
4/16 4/21 4/23 4/25 5/2
5/4 5/6 5/8 5/12 5/15
5/17 5/19 5/21 6/5 7/10
12/8 24/7 56/4 77/2
84/23 91/10 111/15
**again** [48] 4/18 5/10
5/24 6/24 12/10 15/8
19/6 21/2 24/1 27/23
32/14 33/14 35/16
35/22 36/25 37/15
37/21 37/22 43/22 50/9
53/8 55/1 61/25 62/19
69/12 71/6 82/4 82/16
84/5 84/24 85/18 89/2
89/8 89/9 90/25 98/2
98/3 99/4 101/8 109/23
111/15 113/23 119/10
123/2 134/6 134/11
135/10 138/4
**against** [8] 75/20 113/2
113/3 114/14 126/15
132/5 132/7 132/8
**agency** [2] 1/6 124/1
**agency's** [1] 131/24
**agenda** [3] 26/13 28/19
28/22
**ago** [1] 69/17
**agree** [7] 64/1 71/11
109/7 117/22 119/8
131/21 138/11
**agreed** [7] 8/8 57/2

**agreed-to** [1] 59/23
**agreeing** [2] 79/15
93/16
**agreement** [8] 1/10 4/7
9/16 50/17 105/7
105/10 111/18 113/23
**ahead** [4] 7/9 42/1 64/5
119/24
**aided** [1] 3/16
**AL** [3] 1/3 1/7 48/17
**Al-Imam** [1] 48/17
**albeit** [1] 47/3
**all** [99] 4/2 5/24 6/4
13/6 15/3 16/23 17/10
17/14 17/15 18/6 18/24
19/6 20/9 20/13 20/22
22/22 23/7 24/2 24/6
26/12 28/1 32/2 33/1
33/5 34/11 35/8 35/10
38/20 39/19 40/3 42/6
42/24 44/11 44/24 45/2
46/9 47/12 47/16 47/20
48/21 49/15 49/22
49/25 50/21 52/8 53/18
56/24 60/3 64/14 65/15
65/25 67/12 67/15
67/19 69/9 69/6 69/9
69/21 69/22 71/11 72/5
73/6 76/21 76/24 78/18
78/23 78/24 84/9 84/22
85/25 86/17 87/19 89/9
91/4 91/8 94/8 101/11
102/15 102/15 102/23
103/2 103/12 104/5
107/13 107/18 109/10
111/9 111/10 111/13
117/7 119/15 119/15
122/18 122/18 130/21
131/10 136/7 137/3
139/9
**All right** [3] 24/6 33/1
52/8
**allege** [1] 110/7
**alleged** [2] 24/12 25/8
**allegedly** [2] 97/15
97/24
**alleging** [1] 21/24
**alleviated** [5] 14/13
14/19 15/14 15/18 21/2
**allow** [11] 16/2 30/8
45/25 66/6 66/7 67/17
71/7 71/8 88/16 105/16
111/11
**allowance** [3] 65/9
75/20 76/13
**allowed** [4] 30/17 60/7
79/10 82/2
**allowing** [1] 84/21
**alluded** [2] 88/19
118/23
**almost** [5] 71/20 71/21
100/14 132/21 135/2
**alone** [2] 53/10 60/12
**along** [1] 130/21
**already** [11] 10/3 10/7
10/7 12/15 16/7 25/6

125/12
**also** [40] 5/16 5/18
14/3 15/13 15/13 15/14
15/16 17/20 28/19 36/2
38/15 39/1 39/18 42/13
47/8 48/7 49/4 53/20
55/1 57/18 59/1 59/22
74/16 75/10 80/9 82/7
88/4 89/11 92/19
101/11 101/12 101/13
102/17 111/5 113/19
114/17 116/18 126/4
126/8 134/23
**alternative** [3] 9/19
10/18 11/1
**alternatives** [4] 114/18
115/9 115/16 116/7
**although** [5] 50/11
67/14 126/8 126/15
129/12
**always** [2] 12/3 12/4
**am** [2] 7/15 31/14
**amendment** [63] 9/23
9/24 11/18 13/4 14/4
14/7 14/13 14/19 15/11
15/12 15/14 16/17
20/21 20/22 20/23
20/25 21/1 21/3 21/23
36/11 56/20 56/24 57/1
57/6 58/16 59/1 59/9
59/14 61/6 61/11 61/20
61/25 62/3 62/14 62/16
63/16 64/20 65/17 66/3
66/14 66/25 68/9 70/16
71/12 72/15 73/1 73/9
73/13 74/6 75/18 76/12
82/13 87/11 92/20
92/24 93/10 93/14
93/16 102/22 105/22
110/20 138/5 138/20
**Americas** [1] 2/13
**Amherst** [1] 21/4
**Amoco** [2] 122/18
123/6
**among** [5] 17/7 18/22
20/2 23/5 28/20
**amount** [2] 61/14
61/17
**ample** [2] 45/18 55/13
**amply** [1] 116/16
**analysis** [6] 21/5 21/6
21/11 23/22 37/1
114/13
**analyst** [41] 10/20
18/10 19/6 19/7 20/9
20/10 20/15 20/19 21/8
21/17 22/6 23/2 23/24
27/7 30/2 30/14 30/16
30/25 31/2 31/18 31/21
32/19 33/11 33/16 34/3
34/5 34/7 34/23 35/3
35/3 35/6 36/7 37/15
35/13 36/6 36/17 39/5
39/15 39/17 39/24 93/2
**analysts** [2] 29/1 93/1
**analyzed** [1] 10/4
**Anjan** [1] 138/1

**announced** [1] 57/3
**announcement** [4]
14/8 14/12 32/12 75/6
**annual** [1] 50/14
**another** [16] 7/15
10/11 23/22 34/8 39/20
42/8 44/7 47/23 48/15
81/15 124/1 128/22
129/7 134/10 134/22
134/22
**answer** [9] 11/13 39/5
70/1 70/8 70/15 83/9
87/22 88/17 89/4
**answered** [1] 28/12
**answers** [51] 125/9
**any** [51] 7/5 8/15 11/15
21/22 23/8 31/2 32/1
35/1 36/14 42/23 43/3
44/24 45/15 45/15 53/6
53/7 55/1 55/12 56/22
57/10 59/3 59/4 79/9
80/24 82/13 83/21
85/11 85/20 88/21 99/6
99/14 100/15 101/6
102/11 103/12 107/12
115/12 116/5 117/12
122/18 123/13 123/20
124/25 125/1 125/19
129/21 131/10 132/25
134/3 135/4 136/4
**anybody** [4] 36/13
76/11 96/8 96/10
**anymore** [1] 89/13
**anyone** [10] 26/18
26/18 27/3 27/14 27/18
41/6 52/21 52/22 93/22
98/14
**anything** [13] 18/6
21/21 23/15 38/4 39/21
41/15 43/17 52/3 52/5
60/13 60/14 83/16
128/1
**anyway** [1] 12/12
**anywhere** [1] 129/21
**apparent** [1] 35/25
**apparently** [2] 68/11
107/14 124/11
**appeal** [1] 121/1
**appear** [5] 12/10 54/18
128/5 138/4 138/6
**appearance** [1] 31/14
**appearances** [4] 1/15
1/21 2/19 4/9
**appeared** [1] 138/3
**appearing** [2] 22/25
31/19
**appears** [4] 45/4 87/11
110/16 124/1
**applicability** [1] 125/19
**applicable** [3] 112/11
116/17 117/20
**application** [1] 131/21
**applied** [2] 33/3 124/17
**applies** [8] 22/13 53/5
100/6 113/24 121/4
123/16 123/21 124/17
**apply** [5] 53/6 66/21
86/6 123/25 124/14

143

**A**

applying [3] 33/7 38/8 116/25
approach [2] 4/9 36/16
appropriate [9] 29/10 44/9 46/7 82/11 98/5 100/10 109/18 109/21 112/4
appropriately [1] 36/21
approve [1] 41/13
approving [1] 61/24
approximately [1] 28/21
arbitrarily [2] 118/17 118/24
arbitrary [5] 92/20 105/23 107/23 113/25 116/20
are [148]
arguably [1] 22/11
argue [17] 6/5 6/22 6/23 9/6 17/19 58/9 67/6 68/5 71/13 82/23 93/11 96/22 99/5 103/17 104/2 115/18 115/23
argued [11] 15/15 18/16 29/5 31/7 39/9 52/19 90/8 112/20 122/11 122/21 136/15
argues [1] 59/6
arguing [16] 8/24 9/6 14/15 16/16 16/17 16/18 17/5 25/5 30/13 77/6 80/15 99/20 100/23 123/19 124/2 135/10
argument [59] 9/13 10/14 14/24 15/8 15/22 16/14 23/9 23/11 23/12 27/8 27/13 27/25 30/11 33/13 38/22 40/20 43/8 45/15 52/3 53/16 54/4 55/5 55/6 56/6 56/9 63/5 63/6 64/4 68/25 69/20 73/21 73/25 77/12 79/5 79/6 83/5 90/6 99/4 104/15 111/10 112/1 116/2 117/16 120/15 122/12 122/15 123/2 123/3 123/7 123/8 126/6 128/25 129/1 130/4 130/5 130/21 131/13 131/20 135/8
arguments [14] 6/8 12/15 13/5 13/7 15/2 22/3 22/6 39/10 66/10 66/19 68/2 72/19 89/3 103/11
ARNOLD [2] 3/5 5/22
arnoldporter.com [2] 3/9 3/10
arose [1] 24/21
around [9] 13/2 13/2 13/11 55/22 87/16 88/16 98/1 122/24 133/3

articulate [6] [7] [2] 97/23 98/5 99/21 101/19
articles [22] 91/17 92/2 92/8 92/9 92/15 92/22 93/5 93/9 93/25 95/19 96/16 96/18 96/19 96/22 97/2 97/7 97/9 98/18 98/25 99/5 99/13 102/5
articulate [1] 38/21
articulated [1] 100/13
as [170]
Asim [3] 3/4 5/20 136/9
Asim Varma [1] 5/20
ask [8] 8/16 29/11 38/11 80/22 83/8 98/9 113/14 125/7
asked [17] 26/17 28/11 28/13 57/20 61/4 64/19 72/25 74/2 74/3 74/7 74/8 80/21 83/15 83/21 95/19 97/3 138/11
asking [3] 17/4 83/1 88/15
asks [5] 39/3 39/3 97/14 98/2 138/19
aspect [2] 105/8 106/20
aspects [1] 107/1
asserted [9] 24/25 26/6 27/11 29/19 96/12 99/24 100/16 101/1 102/5
asserting [1] 18/19
assertion [2] 25/4 124/6
assertions [1] 24/23
assess [1] 37/10
assessed [2] 113/2 116/22
asset [1] 65/10
assets [2] 34/11 79/25
associated [1] 101/16
assume [1] 133/11
assure [1] 7/1
assured [1] 83/23
assures [1] 6/20
Athride [1] 74/13
Atkins [1] 96/21
attached [1] 32/8
attack [2] 13/1 13/2
attacked [1] 23/8
Attari [35] 8/25 9/13 9/21 10/3 11/3 11/6 13/3 13/17 14/6 14/10 14/16 14/17 14/22 15/10 16/3 16/15 17/2 17/4 19/3 19/17 19/19 20/10 20/14 20/16 21/7 21/13 21/14 21/20 23/9 23/12 33/11 33/15 36/24 37/8 39/25
Attari's [12] 14/3 14/18 14/25 15/4 15/19 16/1 18/16 30/18 32/21 34/17 34/17 37/1
attempted [1] 106/17

attorney's [1] [1] [426]
attributed [1] 98/18
audited [1] 50/22
August [12] 32/12 32/13 36/10 51/13 85/5 91/19 92/16 98/16 103/3 112/21 118/19 118/25
authoring [2] 121/11 125/13
authority [3] 41/12 44/23 55/1
authors [1] 124/18
availability [1] 10/1
available [4] 35/21 45/12 60/20 61/18
Ave [1] 3/6
Avenue [4] 1/17 2/4 2/13 3/13
average [1] 22/12
avoid [1] 108/5
Awaa [1] 56/17
aware [7] 28/16 29/2 29/24 59/20 68/24 76/11 124/15
awareness [1] 21/12
away [6] 36/14 78/20 80/14 83/3 87/11 102/23

**B**

back [21] 9/14 15/8 29/23 71/25 72/21 81/21 82/16 82/25 83/3 85/17 87/25 89/8 90/17 95/14 103/3 105/17 106/24 118/14 120/2 137/8 137/15
backed [4] 23/4 23/5 23/17 35/10
bait [3] 13/16 14/20 15/7
Bank [6] 20/21 21/25 31/19 36/8 39/24 39/25
Barclay's [1] 21/25
Barclays [2] 20/22 21/3
bargain [1] 114/22
bargaining [1] 113/18
barred [1] 101/17
Barry [3] 2/15 5/1 91/11
based [17] 24/22 50/22 51/15 55/9 55/15 58/20 59/3 62/8 67/4 67/8 67/10 105/5 113/9 113/9 118/25 122/17 131/8
bases [3] 32/24 62/3 124/20
basic [2] 108/5 108/13
basically [10] 67/21 73/25 74/7 76/8 79/15 82/17 83/20 84/3 135/5 135/8
basing [2] 62/6 67/21
basis [23] 16/20 17/25 18/9 18/15 18/18 18/19

Varma's [1] 5/23
24/3 32/18 37/11 52/24 53/10 55/25 89/5 90/4 97/17 98/23 112/9 114/17 124/10
bat [1] 32/6
be [176]
bear [2] 9/17 9/18
bearing [1] 99/10
beat [2] 72/20 72/22
because [99] 9/5 9/19 11/12 14/20 16/1 16/6 17/9 26/3 27/14 31/18 32/8 33/15 35/24 41/11 43/25 44/10 49/15 51/22 51/24 53/11 54/23 55/14 57/4 58/3 58/22 58/22 59/3 59/12 60/11 60/18 60/23 62/1 62/23 63/7 64/22 66/14 67/20 68/7 68/21 69/22 73/6 73/22 74/17 74/21 75/13 80/14 80/16 81/4 81/17 81/25 82/3 83/10 86/10 87/4 88/19 88/20 89/17 89/25 92/4 93/8 94/10 95/7 95/12 95/24 96/1 96/3 96/5 96/7 99/12 99/22 100/3 100/13 101/10 101/14 101/17 101/25 109/5 117/9 121/3 122/15 122/19 125/3 126/5 126/15 127/4 128/5 131/1 131/16 132/13 132/24 132/25 133/6 133/9 134/2 135/9 135/12 135/17 136/24 137/18
bed [1] 46/1
been [18] 17/21 21/2 33/5 57/2 57/3 57/25 61/18 74/2 74/8 75/5 76/12 94/16 120/13 124/17 129/12 130/21 135/11 137/23
before [32] 1/13 7/1 12/10 13/13 20/21 20/25 23/1 31/15 32/14 32/21 36/11 41/14 59/17 64/24 70/3 70/6 71/18 75/5 76/4 76/16 76/19 84/14 84/25 85/6 85/19 118/2 120/22 134/16 135/20 136/23 136/24 137/18
begin [1] 30/22
beginning [1] 134/19
begins [2] 98/8 110/6
begrudgingly [1] 86/22
behalf [14] 4/24 5/1 5/2 5/5 5/7 5/16 5/18 5/20 12/9 24/7 43/23 69/13 84/24 111/16
behind [2] 57/6 106/8
being [8] 43/4 58/18 94/24 96/24 99/6 99/13

103/3 101/23
belief [4] 28/6 28/15 58/24 62/4
beliefs [2] 99/2 102/7
believe [31] 7/14 11/19 36/19 52/17 53/18 56/12 60/10 67/12 67/25 68/12 68/23 69/6 80/22 85/4 87/25 88/6 89/16 95/18 98/20 98/23 100/25 100/25 102/19 105/9 106/24 112/10 114/10 117/22 119/22 121/4 128/7
believed [4] 65/1 71/22 98/17 99/22
believes [1] 59/14
below [1] 70/13
bench [1] 6/2
benefit [3] 73/8 74/4 114/22
benefited [1] 73/7
Benson [1] 69/5
Berger [1] 2/13
Bergman [11] 3/5 5/21 19/12 19/14 23/7 23/21 27/23 30/6 35/8 35/16 38/21
Berkeley [1] 41/22
Berkley [3] 1/16 4/22 5/5
Bernstein [1] 2/12
best [6] 6/13 93/22 108/11 108/25 109/8 125/9
better [2] 107/21 119/4
between [12] 10/16 16/10 20/17 35/9 44/20 55/2 56/21 107/4 111/6 124/21 133/2 134/24
beyond [7] 12/19 17/8 22/11 55/16 102/24 116/13 116/13
big [1] 62/11
billion [2] 17/24 18/2
binary [1] 115/3
birthday [1] 7/12
bit [3] 32/20 73/9 112/18
black [2] 109/5 109/6
block [1] 73/1
board [1] 54/1
boggles [1] 115/22
BOIES [1] 2/3
bolster [1] 39/23
bond [20] 9/2 9/7 9/9 9/10 9/14 9/20 14/5 14/11 16/3 17/8 17/20 17/23 18/25 19/18 19/21 19/21 20/6 20/14 23/14 35/9
bondholders [1] 20/18
bonds [11] 10/1 10/2 10/2 10/3 11/9 11/12 11/17 17/24 19/23 19/25 20/2
book [1] 35/7
borrowing [2] 24/18

**B**

borrowing... [1] 25/9
**both [20]** 20/11 20/14
20/17 20/20 43/18
44/13 45/18 45/21
47/17 49/14 71/7 80/12
84/13 101/10 111/3
118/12 122/9 124/8
132/3 132/3
**bother [2]** 129/24
129/25
**bottom [1]** 85/10
**bought [1]** 87/7
**boundaries [1]** 85/2
**bounds [1]** 90/24
**boy [1]** 94/17
**brain [1]** 133/3
**breach [1]** 114/14
**breached [2]** 114/22
115/4
**breathed [1]** 18/17
**brief [24]** 9/8 10/22
14/10 19/11 29/13 49/7
49/10 49/23 50/1 52/19
57/19 73/5 74/14 77/9
78/5 88/6 90/23 101/10
101/13 115/6 123/1
123/19 124/5 132/19
**briefed [3]** 15/13 91/7
137/23
**briefing [7]** 13/13
13/23 45/16 54/3 59/19
123/16 137/24
**briefly [5]** 52/10 54/7
73/19 111/23 138/25
**briefs [5]** 44/18 44/25
72/9 80/20 103/11
**bring [2]** 30/8 34/21
**broad [1]** 48/20
**broadly [3]** 20/12
20/15 48/13
**brought [7]** 53/6 53/21
53/24 78/20 80/13
80/13 81/4
**bsfllp.com [2]** 2/5 2/6
**bubble [1]** 130/18
**buddies [2]** 34/21
34/22
**build [2]** 66/7 71/7
**buildup [2]** 71/23 72/1
**bunch [1]** 53/12
**burden [1]** 132/23
**burst [1]** 130/18
**business [10]** 40/22
40/25 43/6 43/9 43/17
44/13 44/16 44/21 45/7
45/11
**buttoned [1]** 78/3
**bystander [4]** 63/20
63/22 64/1 64/2
**bystanders [1]** 72/13

**C**

**Cacciapelle [6]** 80/5
80/12 80/21 83/18 87/6
89/20
**Cacciapelle's [2]** 80/18
80/25

cake [1] 74/21
**call [3]** 38/16 60/22
131/1
**called [7]** 38/15 50/8
51/21 52/24 70/10
122/18 128/9
**came [8]** 32/21 41/16
41/16 90/22 98/4
101/15 133/9 136/1
**can [65]** 6/7 6/9 6/11
7/22 11/6 12/1 12/3
12/4 15/4 22/9 29/15
30/3 31/2 32/6 34/25
35/2 35/3 35/7 36/13
37/22 44/4 44/5 44/8
44/10 44/20 48/13
48/16 48/20 49/20
53/21 53/24 54/22
60/21 60/25 64/17
70/19 71/12 71/13 78/3
78/10 82/6 88/25 89/6
89/7 90/14 104/2 104/8
108/6 108/12 108/25
109/15 109/19 109/25
114/18 115/1 116/13
117/22 120/17 121/19
125/7 136/19 137/15
138/4 138/12 138/16
**can't [24]** 7/7 9/17 9/18
14/6 17/22 33/9 33/15
34/2 34/20 34/21 34/23
37/10 38/18 39/10
39/11 39/16 40/24 42/4
50/5 54/15 56/8 62/24
100/4 139/6
**cannot [11]** 9/11 17/23
34/9 34/9 34/14 35/11
35/11 39/13 52/20
52/21 53/10
**cap [2]** 24/18 25/9
**capital [6]** 20/1 21/3
66/6 71/7 71/23 72/1
**captured [2]** 116/10
117/16
**care [1]** 133/14
**cared [1]** 115/24
**Cas [1]** 74/13
**case [69]** 4/6 10/20
13/7 21/12 21/16 22/4
34/12 34/14 37/6 37/14
39/23 41/2 42/14 43/11
48/16 48/18 49/8 49/16
55/17 57/2 58/12 60/16
60/18 68/6 73/7 74/9
74/12 74/13 74/15 75/2
75/16 82/1 84/18 88/25
90/2 92/13 93/15 103/8
107/19 107/20 107/22
108/8 109/6 110/6
111/22 113/4 116/17
117/3 117/12 118/5
119/15 119/15 122/17
123/6 123/22 123/24
124/2 124/15 126/22
127/18 128/8 128/22
129/21 133/18 134/24
135/10 135/14 138/3

cases [16] 13/6 21/10
21/10 37/11 44/18
44/23 44/24 49/7 53/12
115/5 115/6 124/3
133/17 133/18 133/21
135/15
**cash [1]** 80/1
**categories [1]** 90/12
**category [1]** 132/13
**caucus [1]** 139/6
**cause [5]** 9/20 9/23
10/18 10/19 11/1
**caused [2]** 14/4 15/12
32/20
**causes [2]** 10/17 53/7
**cautionary [2]** 50/6
51/25
**cautioned [1]** 88/22
**caveats [2]** 52/23
54/23
**center [1]** 93/15
**central [2]** 13/1 107/22
**CEO [11]** 24/11 28/18
62/11 62/23 63/12
63/19 67/18 72/11 75/2
75/3 93/14
**CEO's [1]** 63/6
**certain [7]** 45/1 56/16
58/19 59/25 60/2 91/16
95/20
**certainly [7]** 24/20
35/19 42/19 52/4 63/22
115/11 127/19
**certification [1]** 42/8
**Certified [1]** 3/12
**certify [1]** 140/2
**cetera [1]** 43/1
**CFO [7]** 40/9 72/12
93/14 93/20 99/19
99/22 100/22
**CFOs [4]** 45/20 45/21
46/23 47/18
**challenge [2]** 22/4
116/22
**challenges [1]** 30/25
**chance [3]** 104/2
129/19 138/22
**Chancery [1]** 114/4
**change [9]** 14/5 105/4
107/13 107/24 110/3
110/15 116/8 130/11
130/12
**changed [2]** 126/4
126/22
**changes [12]** 41/13
51/17 62/15 107/10
107/16 107/18 107/20
111/1 111/4 113/7
119/2 119/11
**characteristics [1]**
19/22
**characterization [1]**
49/13
**characterizes [1]**
110/5
**CHECK [1]** 2/8
**cherry [2]** 21/19 21/19

cherry-picking [1]
21/19 21/19
**chief [13]** 41/11 42/11
46/13 55/6 55/13 55/17
55/19 55/20 55/21
60/18 66/22 67/23
138/3
**choice [2]** 115/3 130/2
**choices [1]** 108/7
**chosen [1]** 114/23
**Circuit [15]** 122/17
122/23 122/24 127/6
127/7 127/24 127/24
128/2 128/8 128/14
128/21 128/23 129/3
129/6 133/18
**circuits [2]** 127/24
128/3
**circular [7]** 25/22
90/20 91/2 93/18 103/7
115/13 116/5
**circumstances [11]**
35/1 51/17 108/8 109/2
112/19 112/25 114/12
114/19 118/25 126/5
126/23
**cite [20]** 13/5 13/6
14/24 21/10 22/20
37/17 37/21 37/22
44/23 44/24 48/17 49/7
53/12 55/1 69/5 113/5
114/8 123/6 123/24
133/17
**cited [16]** 10/22 14/24
20/10 21/10 21/21
37/11 44/18 74/13
79/12 92/2 108/9 115/6
124/3 128/22 133/18
135/14
**civil [7]** 49/20 52/22
53/5 53/10 53/18 53/18
53/23
**claim [7]** 90/1 92/12
92/14 112/25 115/1
117/8 117/12
**claimed [1]** 113/12
**claiming [4]** 18/18
59/13 63/25 90/3
**claims [8]** 11/6 53/5
53/17 53/18 62/10
70/21 70/22 114/12
**clarification [3]** 77/13
77/18 86/6
**clarify [2]** 80/3 84/10
**clarifying [1]** 90/2
108/5
**clarity [1]** 107/11
**class [15]** 1/10 2/2 4/7
4/12 5/7 5/9 56/5 80/5
81/15 84/14 91/11
103/15 111/16 119/23
120/8
**clause [1]** 116/13
**clear [27]** 9/10 22/25
38/3 41/9 42/14 49/18
55/8 62/13 83/15 84/15
85/1 85/1 85/19 86/16
88/8 89/6 102/11

clearly [8] 36/15 37/6
42/12 43/10 49/1 96/18
111/6 134/10
**clerk [1]** 6/13
**close [4]** 27/4 105/10
124/24 128/21
**closed [1]** 79/7
**closer [1]** 113/8
**closest [1]** 128/8
**closing [20]** 9/13 10/14
14/17 15/8 15/15 15/16
15/22 15/24 16/14
18/16 25/5 25/11 33/12
33/13 38/6 54/4 72/19
79/5 79/5 90/8
**Code [1]** 55/11
**cognizant [1]** 136/11
**Colatriano [2]** 1/16 5/5
**collaborative [1]**
111/20
**colleagues [1]** 101/11
**colloquy [2]** 82/25 90/9
90/11
**COLUMBIA [1]** 1/1
**column [1]** 82/9
**combine [1]** 39/10
**come [10]** 7/6 8/16
60/25 69/22 71/13
76/25 97/9 112/2
122/19 124/23
**comes [4]** 53/3 60/12
69/21 128/21
**comfortable [1]** 47/14
**coming [5]** 15/6 101/17
101/22 101/23 101/25
**comment [1]** 31/13
**commentators [1]** 29/1
**commenting [1]** 46/16
**commitment [15]**
14/14 18/13 18/14 20/4
24/17 25/9 28/4 28/24
29/6 61/14 93/18
100/20 113/21 115/24
138/1
**communicate [1]**
134/1
**communicated [4]**
95/6 95/8 95/10 95/11
**communication [2]**
66/5 71/5
**communications [1]**
133/11
**companies [2]** 45/21
93/1
**company [3]** 47/18
47/19 93/21
**compile [1]** 42/20
**complete [1]** 137/10
**completely [3]** 10/16
109/25 119/14
**completeness [1]**
46/17
**complicated [1]**
118/23

**C**

components [2] 9/1
17/3
comprehension [1]
22/12
comprehensive [3]
50/12 50/13 50/19
computer [1] 3/16
computer-aided [1]
3/16
conceded [2] 28/25
96/11
conceivably [1] 10/10
concept [6] 108/18
108/19 109/4 109/10
112/24 113/20
concepts [1] 118/23
concern [13] 14/19
15/14 15/18 17/7 18/22
19/5 20/25 23/5 25/8
25/20 28/23 29/5 61/19
concerned [2] 23/19
29/3
concerning [2] 59/5
93/12
concerns [17] 14/13
20/8 20/12 20/17 21/1
22/11 24/11 24/16 25/2
26/1 26/8 29/3 29/9
29/24 37/8 37/9 56/18
concession [1] 90/17
conclude [4] 11/4
11/14 124/10 129/17
concluded [3] 11/5
14/10 139/11
conclusion [2] 14/12
14/18
conclusory [1] 124/8
condition [4] 20/16
66/24 93/7 102/16
conditions [1] 42/6
conduct [5] 112/22
114/13 114/21 116/9
116/21
conducted [1] 45/7
conduit [2] 35/15
39/12
conference [3] 1/13
31/20 31/23
conferences [1] 77/23
conferred [1] 7/19
confidence [4] 9/15
9/22 11/8 16/19
confident [2] 111/17
134/7
confirm [2] 25/13
95/20
conflate [1] 19/20
conform [1] 15/24
confounding [1] 11/2
confronted [1] 103/2
confusing [2] 107/3
107/25
confusion [7] 32/20
85/21 106/16 106/25
107/7 110/2 111/5
connect [1] 22/10
connected [2] 20/16

connecting [3] 59/9
59/11 118/24
connection [7] 22/3
22/17 37/3 107/4 111/6
119/4 119/5
connects [1] 67/1
consequences [2]
44/2 124/19
conservator [1] 48/24
conservatorship [2]
83/22 84/4
conserve [1] 79/25
consider [6] 92/5
109/16 109/19 112/15
112/22 125/24
considered [9] 27/18
30/3 35/25 36/5 36/6
36/16 36/17 113/17
115/13
considering [1] 76/12
consistency [1] 75/8
consistent [9] 15/1
54/4 107/18 108/8
112/11 113/22 116/11
117/19 119/14
consistently [1] 15/11
constitute [3] 96/23
97/8 109/20
constitutes [1] 131/15
Constitution [1] 3/13
consult [2] 68/8 72/22
consulted [1] 99/12
contain [1] 131/10
contained [2] 27/7
129/2
contains [4] 51/14
121/3 121/10 131/15
contemporaneous [2]
21/17 103/2
contend [1] 86/5
content [1] 33/13
contents [3] 48/6
55/18 133/2
contest [1] 53/2
contested [3] 78/6
78/18 84/8
contests [1] 91/15
context [9] 22/9 22/10
29/4 105/21 115/1
115/7 115/8 115/17
116/7
contexts [1] 108/9
continue [1] 103/7
CONTINUED [2] 2/1
3/1
continues [1] 61/8
65/14 97/20 98/8
contours [3] 77/21
78/16 78/25
contract [5] 36/14
110/19 110/23 116/24
117/1
contracting [5] 92/14
110/22 111/8 113/18
118/10
contractual [1] 114/2
115/4

contrary [5] 112/10
113/4 122/23 135/10
contrast [2] 107/15
113/12
controls [1] 84/18
controversial [1] 79/14
conversation [3] 62/15
124/12 124/23
conversely [1] 114/1
convey [3] 109/8
109/14 109/23
conveyed [3] 131/17
133/15 135/22
conviction [1] 53/11
COOPER [1] 1/17
cooperated [1] 6/12
cooperkirk.com [1]
1/19
copy [3] 46/3 48/16
120/17
correct [13] 12/21
22/14 22/14 30/1 37/1
51/20 97/14 117/5
117/19 126/11 138/8
139/1 140/3
correctly [5] 27/5
27/13 31/5 85/6 102/18
corridors [1] 50/18
corroborate [1] 25/13
could [30] 5/24 7/14
10/10 19/2 26/17 32/22
33/6 38/15 39/4 43/13
58/4 58/17 63/13 65/8
65/11 67/4 75/19 79/17
83/22 85/9 93/17 104/3
104/4 108/14 108/20
112/5 115/9 118/2
125/2 135/6
couldn't [1] 65/20
counsel [21] 4/8 4/13
7/19 9/5 9/12 10/13
13/12 13/16 15/24
16/13 16/22 25/11
25/15 25/18 25/21 26/2
39/3 39/3 49/24 86/18
103/1
counsel's [4] 14/24
16/13 25/13 69/20
counterdesignations
[1] 91/16
counterparties' [2]
113/20 114/24
country [1] 122/25
couple [11] 6/3 18/10
23/23 29/13 36/11
52/13 54/8 81/7 108/4
120/1 134/25
course [14] 12/3 13/12
18/8 26/22 30/19 45/7
47/21 54/5 70/1 78/14
80/20 112/21 125/6
139/1
court [68] 1/1 3/11
3/12 4/2 10/7 10/9 10/9
12/10 12/16 13/17
13/18 15/3 16/2 17/4
21/18 22/2 22/8 35/18
36/19 36/25 37/1 37/18

Cocisms [1] 15/4
criticize [2] 68/7 73/22
critiquing [1] 19/16
cross [13] 12/1 12/3
12/4 13/9 15/5 34/9
34/9 34/14 34/24 39/13
39/17 55/24 65/23
cross-examination [2]
13/9 15/5
cross-examine [10]
12/1 12/3 12/4 34/9
34/9 34/14 34/24 39/13
39/17 55/24
cross-over [1] 65/23
CRR [2] 140/2 140/8
curative [1] 83/2
current [2] 51/16 60/19
custodian [2] 42/7
42/12 47/22
custodians [1] 47/24
cut [1] 64/22
CV [1] 1/4
Czekalski [1] 128/23

**D**

D.C [6] 1/5 1/18 1/19
2/4 3/7 3/14
D.C. [10] 122/24 127/6
127/7 128/8 128/14
128/21 128/23 129/3
129/6 133/18
D.C. Circuit [10]
122/24 127/6 127/7
128/8 128/14 128/21
128/23 129/3 129/6
133/18
D.D.C [1] 74/15
damages [3] 82/10
82/12 111/23
data [3] 17/10 33/18
33/20
date [5] 32/11 92/13
110/20 110/24 140/7
dated [2] 19/8 32/9
Daubert [2] 12/5 18/8
David [5] 3/5 5/21
19/14 27/23 35/16
Davis [2] 2/3 5/9
day [3] 26/21 101/12
121/17
day's [1] 121/23
days [6] 6/3 36/11
70/10 75/5 134/16
DE [2] 2/16 2/17
deal [3] 109/4 133/18
138/12
dealer [1] 24/13
dealing [1] 113/20
debating [2] 77/20
81/24
debt [2] 10/25 20/11
debtholders [1] 20/20
December [4] 92/15
110/19 118/14 119/2
decide [5] 10/9 109/17
117/10 117/14 129/15
decided [3] 10/7 10/7
126/15

**D**

**decision [42]** 22/17 27/12 31/3 31/11 31/24 32/8 32/10 32/13 37/16 58/23 59/4 63/10 63/15 63/17 72/17 72/24 73/24 75/4 75/5 92/20 92/23 93/9 94/1 99/11 105/13 105/22 107/5 107/23 108/11 109/15 109/16 109/18 109/19 109/21 112/5 112/12 112/15 112/19 113/6 118/16 118/20 126/23
**decision-maker [2]** 109/19 118/16
**decision-maker's [3]** 109/16 112/12 112/15
**decision-makers [1]** 72/17
**decision-making [5]** 27/12 31/3 31/11 31/24 32/8
**decisions [6]** 36/7 122/23 127/7 127/19 127/23 128/2
**declaration [1]** 36/3
**decline [4]** 9/20 14/11 15/12 16/11
**declining [2]** 9/25 9/25
**deeply [1]** 48/25
**defeat [1]** 134/3
**defend [1]** 10/12
**defendant [1]** 113/1
**defendant's [1]** 99/17
**defendants [109]** 1/8 3/3 5/16 5/18 5/20 5/22 6/7 7/21 8/8 9/10 11/10 12/9 17/5 19/14 24/21 24/23 24/24 25/5 26/5 26/9 27/6 27/8 27/15 27/20 27/24 29/17 29/23 30/7 31/1 31/5 33/4 33/12 40/16 43/23 58/9 60/18 62/19 64/7 65/15 66/9 66/19 66/20 67/6 68/2 68/5 68/12 68/22 68/23 68/24 69/2 69/13 75/15 75/23 76/7 80/7 80/15 81/20 81/25 82/22 83/19 84/24 85/20 90/7 90/8 92/6 92/11 93/11 94/17 98/24 99/4 100/8 101/5 101/9 102/4 103/21 104/4 104/9 104/22 106/21 107/8 107/15 111/21 111/24 112/17 113/6 113/7 114/21 115/6 115/11 115/24 116/12 116/22 117/17 117/22 117/24 119/18 120/24 130/12 132/1 132/18 132/23 136/7 136/10 136/14 137/22 138/22
**defendants' [20]** 10/6

62/10 64/7 72/6 77/25 106/5 106/10 110/10 110/12 112/23 113/3 114/10 116/4 116/9 117/6 131/13
**defending [1]** 16/22
**defense [17]** 7/19 9/5 9/12 25/12 25/15 25/18 25/21 26/2 30/10 54/12 74/9 77/7 104/19 112/14 117/14 129/24 138/2
**defer [1]** 112/5
**deferred [2]** 34/11 65/10
**deferring [1]** 104/16
**defined [1]** 47/7
**Delaware [9]** 113/4 113/6 113/11 113/19 114/4 114/6 117/3 118/5 118/16
**delete [1]** 116/13
**deliberations [1]** 106/15
**delineated [1]** 20/24
**deliver [1]** 65/2
**demanding [3]** 33/19 35/11 38/25
**DeMarco [45]** 25/23 26/14 26/21 28/11 28/15 28/16 28/19 28/20 29/2 30/12 31/13 31/17 31/19 31/25 32/13 32/15 34/18 34/19 35/25 36/2 36/12 36/15 38/10 38/19 39/7 39/18 68/8 73/6 73/23 74/5 92/22 92/25 93/4 93/5 93/8 95/6 115/13 121/18 121/23 122/4 125/5 125/6 134/16 134/19 135/3
**DeMarco's [10]** 25/6 25/13 26/3 32/9 36/20 72/20 73/3 92/19 94/1 99/11
**demonstrated [1]** 9/15
**denied [4]** 22/8 76/8 99/16 103/22
**deny [3]** 16/2 97/16 97/16
**Department [7]** 131/6 131/8 131/8 131/9 131/10 131/11 134/1
**dependent [1]** 112/1
**depending [1]** 60/4 69/8
**depends [1]** 114/1
**deponent [1]** 28/12
**deposition [27]** 24/11 25/12 25/16 26/17 46/2 47/3 47/11 56/16 56/18 57/20 59/22 59/23 60/3 60/13 61/4 66/17 70/4 74/23 80/5 80/6 87/3 88/11 89/10 99/1 102/2 102/6 103/2

**described [2]** 37/2 82/12
**describing [3]** 53/13 121/17 124/22
**description [1]** 117/11
**designated [3]** 60/14 60/15 69/7
**designation [1]** 60/12
**designations [9]** 59/22 59/24 60/1 60/4 60/10 91/22 91/24 91/25 97/1
**designed [3]** 11/11 107/11 119/3
**desire [2]** 71/6 71/6
**desired [1]** 66/6
**despite [1]** 111/19
**detail [1]** 71/22
**determine [1]** 118/9
**Deutsche [6]** 20/21 21/25 31/19 36/8 39/24 39/25
**Dharan [2]** 28/25 37/7
**did [54]** 6/14 6/18 6/25 10/9 11/4 13/16 16/4 16/9 19/19 21/13 22/15 26/20 26/20 26/21 28/10 28/14 28/15 31/11 32/17 35/18 38/4 38/8 50/7 56/22 62/11 65/18 66/4 71/4 76/4 78/15 83/21 87/3 91/20 91/23 92/22 93/4 93/5 93/8 95/16 95/25 97/16 97/16 98/20 98/22 101/18 101/19 105/19 117/11 124/25 125/7 125/8 131/22 132/3 139/1
**didn't [42]** 10/12 13/14 14/24 16/8 16/13 16/21 16/24 17/17 19/7 23/7 26/3 27/2 32/10 38/11 38/13 38/13 38/16 38/21 44/8 45/15 49/24 52/11 52/12 54/13 63/9 63/16 72/22 77/19 79/9 83/4 83/25 84/4 89/13 95/18 96/16 99/12 111/24 125/8 127/11 129/9 129/11 136/4
**difference [3]** 11/15 11/20 35/9
**different [16]** 13/19 14/7 19/22 22/4 30/19 36/16 53/15 71/16 74/11 74/17 75/7 106/22 110/4 115/16 122/8 134/25
**diminish [1]** 61/17
**direct [1]** 15/24
**directed [1]** 88/14
**direction [2]** 80/1 85/1
**directly [5]** 52/14 70/2 72/19 113/4 121/6
**disagree [2]** 108/21 120/25
**disagreed [2]** 130/5

**disapprove [1]** 41/13
**disavowing [1]** 92/6
**disclose [6]** 33/11 33/13 33/21 36/25 37/12 38/24
**disclosed [1]** 33/6
**disclosing [1]** 33/18
**disclosure [1]** 37/4
**disclosures [1]** 46/15
**discrete [1]** 52/13
**discretionary [1]** 113/25
**discussed [1]** 64/12
**discussing [2]** 67/2 105/7
**discussion [5]** 28/23 59/4 61/19 121/24 137/7
**discussions [1]** 56/23
**displayed [2]** 25/11 30/18
**dispute [10]** 40/16 45/4 45/15 50/6 53/13 56/21 75/16 130/16 130/18 135/15
**disputed [3]** 76/10 96/16 120/20
**disregarding [1]** 21/20
**disregards [1]** 113/1
**distant [1]** 43/7 65/8 75/21
**distinction [5]** 44/20 44/24 55/2 70/23 108/17
**distinguish [2]** 10/16 16/10
**district [5]** 1/1 1/1 1/14 122/24 127/20
**dividend [15]** 50/14 50/15 58/3 58/5 58/19 61/17 78/19 87/8 93/7 93/13 93/13 93/17 95/5 102/25 103/5
**dividends [20]** 80/14 81/5 81/18 82/1 82/3 82/5 82/14 83/10 84/6 87/10 87/23 88/20 88/21 88/24 88/25 89/13 89/22 89/23 90/4 100/19
**division [1]** 59/7
**do [54]** 6/2 6/13 7/23 8/2 17/17 17/19 18/17 21/8 22/15 34/18 37/17 38/18 39/11 41/20 46/22 57/13 60/22 61/5 62/3 62/4 62/7 64/16 66/1 69/4 74/20 74/25 79/24 80/7 80/22 83/8 83/19 87/22 88/25 89/16 95/25 100/4 107/20 112/9 114/17 116/22 117/15 119/4 123/7 132/18 134/6 135/17 136/8 136/19 137/3 137/3 137/6 137/11 138/7 139/1

**do you [1]** 137/3
**do you believe [2]** 80/22 89/16
**Do you have [1]** 41/20
**Do you remember [1]** 61/5
**Do you see [1]** 66/1
**docket [2]** 119/23 120/8
**document [24]** 11/21 18/4 26/12 36/13 51/9 98/20 120/4 120/10 120/19 121/25 122/13 125/1 125/3 125/12 126/9 126/16 127/3 128/18 130/24 130/24 133/19 134/10 134/14 134/22
**documents [22]** 8/5 10/19 10/21 13/6 32/25 35/17 36/19 36/23 36/24 38/3 38/9 38/13 38/17 43/25 46/16 48/1 49/4 49/11 56/1 101/16 113/14 135/5
**does [19]** 19/6 33/8 53/6 54/24 58/7 58/11 70/8 98/1 98/9 109/20 112/23 113/14 116/7 123/25 124/14 125/15 131/10 131/22 135/16
**doesn't [30]** 10/14 12/2 15/23 23/21 30/8 43/12 48/11 48/20 52/3 52/4 53/22 60/14 66/12 86/25 87/13 89/25 97/8 98/10 98/11 98/11 108/11 115/20 122/15 124/23 127/21 128/1 132/25 134/1 134/3 136/1
**doing [7]** 39/9 58/14 69/3 75/6 75/7 94/12 97/10
**dollar [2]** 80/1 80/2
**Don [1]** 75/3
**don't [77]** 7/7 8/9 10/11 13/20 17/17 18/11 21/24 29/15 32/3 33/25 34/1 38/19 39/1 39/1 39/16 39/18 40/16 43/5 43/15 48/23 51/4 53/2 53/13 54/11 54/14 55/1 57/23 61/7 62/18 62/21 62/23 65/5 72/21 73/10 80/24 86/6 86/12 86/12 87/25 88/1 90/4 90/4 92/11 96/22 97/24 98/12 98/13 101/11 102/11 103/4 107/3 108/21 109/10 112/4 116/3 117/12 123/6 123/20 123/22 123/24 126/17 126/18 127/17 128/7 129/18 130/11 130/12 133/14 134/6 134/5 135/14 135/25 136/4 137/17 137/23

**D**

don't... [2] 138/8 138/11
done [4] 39/8 104/20 130/9 137/18
donnybrook [1] 88/23
door [1] 90/7
dots [2] 20/16 22/10
double [2] 92/3 128/15
down [19] 6/22 6/23 6/25 7/7 7/8 9/7 10/24 15/16 23/24 51/5 78/3 83/24 89/17 100/19 116/6 134/2 135/1 135/12 136/2
downgrades [1] 20/13
Dr [1] 34/17
Dr. [51] 8/25 9/13 9/21 10/3 11/3 11/6 13/3 13/17 14/3 14/6 14/10 14/16 14/17 14/18 14/22 14/25 15/4 15/10 15/19 16/1 16/3 16/15 17/2 17/4 18/16 19/3 19/17 19/19 20/10 20/14 20/16 21/7 21/13 21/14 21/20 22/5 23/9 23/12 28/25 30/18 32/21 33/11 33/15 34/17 36/24 37/1 37/7 37/8 37/17 39/25 139/4
Dr. Attari [35] 8/25 9/13 9/21 10/3 11/3 11/6 13/3 13/17 14/6 14/10 14/16 14/17 14/22 15/10 16/3 16/15 17/2 17/4 19/3 19/17 19/19 20/10 20/14 20/16 21/13 21/14 21/20 23/9 23/12 33/11 33/15 36/24 37/8 39/25
Dr. Attari's [11] 14/3 14/18 14/25 15/4 15/19 16/1 16/3 18/16 30/18 32/21 34/17 37/1
Dr. Dharan [2] 28/25 37/7
Dr. Kothari [1] 37/17
Dr. Kothari's [1] 22/5
Dr. Thakor [1] 139/4
draft [1] 46/19
draw [3] 25/22 115/14 116/5
drawing [1] 100/19
draws [9] 50/17 58/2 58/18 61/16 61/17 90/20 91/2 93/18 103/7
dressing [1] 86/25
drive [1] 50/16
DTA [2] 75/20 76/13
ducked [1] 127/11
due [3] 25/7 85/25 86/17
during [8] 25/11 26/17 26/22 77/20 79/5 106/15 120/22 130/5
duties [1] 44/1
duty [6] 49/19 113/13 133/12
DX412 [4] 35/17 35/23 36/1 38/2
DX529 [4] 35/17 35/23 36/10 38/2

**E**

each [11] 4/8 4/13 20/5 49/2 56/25 73/15 85/15 89/8 110/16 123/23 134/1
earlier [5] 37/2 37/16 67/2 114/3 121/18
earn [1] 103/4
earnings [2] 47/8 50/12
easily [1] 45/2
eat [1] 74/21
ECF [8] 41/20 41/22 106/4 106/7 119/21 119/22 120/7 120/8
economic [2] 19/8 34/10
economics [1] 12/4
Ed [3] 26/21 121/23 134/19
effect [9] 25/1 25/10 27/11 33/22 33/23 33/24 34/4 34/15 135/24
effectively [3] 34/13 35/7 35/13
effects [1] 57/11
effort [3] 97/15 98/3 109/8
EISENHOFER [1] 2/16
either [7] 45/16 54/1 69/9 90/5 100/10 124/14 128/1
elaboration [1] 124/9
elected [1] 89/1
element [3] 13/10 47/20 47/21
elements [6] 45/3 45/4 45/6 45/17 47/22 49/2
Eleventh [1] 127/24
Eleventh Circuit [1] 127/24
elicit [1] 89/4
elicited [1] 87/21
eligible [1] 49/8
eliminate [1] 111/4
eliminating [1] 82/13
ELMO [2] 70/9 120/17
else [4] 43/17 74/5 96/8 133/16
email [1] 1/19 2/5 2/6 2/10 2/11 2/18 3/8 3/9 36/2 134/13 134/24
emails [1] 36/18
embedded [24] 49/17 121/3 121/5 123/3 123/11 123/14 123/21 123/25 124/7 125/16 125/19 126/7 126/13 127/3 127/8 127/13 129/2 129/3 129/7 131/16 132/25
emphasized [2] 14/3 14/17
employee [3] 56/17 60/19 67/14
enable [1] 11/14
end [5] 38/8 81/9 84/13 109/13 136/3
ended [1] 33/4
enforcement [2] 53/21 53/23
enough [16] 7/5 12/18 31/8 31/21 44/12 48/4 49/18 49/21 54/10 54/21 103/5 127/22 129/16 132/15 133/14 134/9
ensure [1] 46/17
ensuring [1] 47/5
enter [5] 92/23 93/10 94/1 99/11 105/22
entered [4] 74/5 74/5 74/19 98/19
entering [3] 66/13 68/9 73/23
Enterprise [1] 114/7
enterprises [6] 10/24 58/2 61/18 66/7 66/8 71/8
entire [4] 25/25 52/16 122/2 134/3
entirely [1] 123/18
entirety [2] 26/9 44/25
entity [1] 48/15
equal [1] 66/21
equally [1] 113/24
equity [1] 20/3
Eric [4] 2/7 4/17 7/11 40/4
Eric Zagar [2] 4/17 7/11
eroded [1] 28/4
erosion [6] 14/14 24/17 25/8 25/23 28/23 29/5
error [4] 102/11 102/12 126/24 126/25
especially [3] 22/10 29/4 61/16
essence [1] 121/24
essentially [10] 53/24 73/21 76/6 82/1 102/11 126/22 131/14 131/20 132/18 135/10
establish [5] 99/6 99/14 123/13 123/20 125/16
established [1] 125/18
establishes [1] 124/15
et [3] 1/3 1/7 43/1
et cetera [1] 43/1
evaluate [1] 33/22
evaluated [2] 34/25 35/2
evaluating [3] 108/10 109/14 112/24
evaluation [1] 75/20
even [45] 10/11 16/18 17/8 17/17 17/17 17/22 17/23 17/25 18/11 19/7 19/7 23/21 27/2 28/5 32/1 33/25 34/1 35/3 38/21 39/18 41/9 42/9 42/9 42/23 43/3 43/8 48/14 50/22 53/2 54/18 55/6 55/12 55/16 63/16 65/7 87/5 92/5 97/6 102/1 103/6 121/2 123/6 124/25 128/18 129/12
evenly [1] 8/8
event [21] 7/5 9/2 9/7 9/9 9/11 9/14 9/17 14/6 14/18 15/4 15/20 16/3 17/8 17/18 17/20 17/23 18/5 39/11 80/24 123/20 124/25
events [1] 21/9
ever [3] 26/10 29/22 76/11
every [5] 51/8 54/15 80/1 80/2 98/19
everybody [2] 6/12 65/4
everyone [4] 4/4 35/20 76/25 87/18
everything [2] 12/17 83/12 104/15
evidence [41] 15/23 15/23 15/25 15/25 18/6 21/20 24/2 25/2 26/10 27/14 27/18 29/10 30/9 30/23 31/23 36/4 36/22 37/5 41/1 41/5 41/14 42/3 45/18 45/22 45/23 51/9 54/19 54/20 55/13 56/2 57/8 75/9 76/15 78/17 78/24 90/22 100/5 112/1 116/1 125/1 133/12
evidentiary [1] 119/20
exact [5] 26/4 27/8 27/17 62/24 70/8
exactly [16] 14/21 15/12 16/14 16/16 36/19 37/1 44/5 71/20 71/21 82/8 102/3 102/9 108/23 120/18 126/17 134/23
exacts [1] 132/21
examination [3] 13/9 15/5 98/19
examine [10] 12/1 12/3 12/4 34/9 34/9 34/14 34/24 39/13 39/17 55/24
example [1] 116/19
examples [9] 13/7 20/19 44/16 49/5 78/15 78/18 78/25 82/5 116/15
exception [39] 43/6 43/10 43/20 44/13 44/14 47/22 49/6 49/9 121/4 122/10 122/13 122/14 123/13 123/14 123/15 123/16 123/21 123/24 124/14 124/16 125/14 125/16 125/19 127/4 127/5 127/14 127/16 128/5 128/6 128/20 129/7 129/13 129/22 131/4 131/12 132/9 132/17 135/9
exceptions [3] 40/18 130/17 132/8
excerpt [1] 46/2
excerpts [1] 46/2
excess [2] 50/13 103/5
exclude [11] 15/23 17/4 24/5 40/7 40/9 40/13 56/15 64/8 66/9 66/11 132/6
excluded [5] 43/21 52/6 72/4 91/25 120/5
excuse [2] 40/14 135/22
executive [1] 67/22
executives [6] 56/16 56/22 67/13 67/20 68/8 68/9
executives' [2] 56/19 71/12
exemption [1] 122/10
exercise [1] 113/25
exhausted [1] 18/14
exhibit [6] 11/22 13/7 57/18 94/17 120/11 134/17
exhibits [2] 92/2 103/18
exist [1] 65/9
existence [2] 115/12 115/16
existing [4] 11/1 112/18 116/11 118/25
exists [2] 132/7 135/19
expect [5] 6/2 103/4 130/11 130/12 136/24
expectation [9] 9/24 11/18 11/19 50/11 50/15 50/18 50/25 85/14 95/4
expectations [28] 50/21 51/16 77/14 80/19 84/19 84/19 85/9 85/12 87/1 90/1 92/11 92/17 107/5 110/18 110/23 111/8 113/2 113/21 114/2 114/15 114/24 115/4 115/14 116/1 116/10 116/23 118/9 119/1
expected [9] 80/16 81/8 86/21 86/23 87/8 87/10 87/12 108/1 116/13
expecting [2] 87/9 89/24
experience [1] 50/11
expert [9] 8/1 8/16

**E**

**expert...** [7] 21/11 22/5 22/9 28/25 34/8 35/14 138/5
**expert's** [1] 32/25
**experts** [3] 21/8 34/23 137/25
**explain** [8] 21/1 31/9 94/22 106/17 107/4 111/6 124/4 130/23
**explained** [11] 9/14 19/22 19/24 19/25 20/2 20/4 20/6 20/14 54/24 88/18 122/21
**explaining** [5] 20/24 80/12 105/24 106/11 119/5
**explanation** [4] 11/10 105/21 107/2 116/20
**explicit** [1] 110/24
**explicitly** [5] 58/7 59/13 61/24 62/2 67/1
**expose** [2] 52/20 52/22
**expressed** [5] 65/1 106/16 110/2 111/5 135/3
**expressing** [2] 25/25 29/8
**expression** [1] 106/25
**expressly** [4] 20/11 20/11 20/20 103/6
**extant** [1] 10/2
**extensive** [2] 108/8 120/15
**extent** [6] 92/5 94/2 100/2 100/8 100/11 100/23
**extra** [1] 102/23
**extraordinary** [1] 124/19
**extreme** [1] 34/6
**extremely** [3] 72/12 111/20 124/16
**ezagar** [1] 2/10

**F**

**F.2d** [1] 128/12
**F.3d** [1] 128/23
**F.R.D** [1] 96/21
**F.Supp.2d** [2] 74/14 96/20
**F.Supp.3d** [1] 48/18
**face** [3] 38/18 38/19 121/25
**faced** [1] 20/7
**facilitate** [2] 99/1 102/6
**fact** [25] 11/20 19/19 23/16 25/14 28/4 39/16 52/2 57/1 58/24 60/8 68/17 74/3 75/25 76/4 94/9 94/14 98/17 99/9 99/17 100/1 116/8 122/12 125/8 135/20 136/11
**factor** [1] 11/2
**factored** [2] 31/3 31/10
**factoring** [1] 32/7
**factors** [1] 65/9

76/4 108/7 109/1 112/19 112/24 114/19 118/25 126/4 126/22
**factual** [2] 75/16 75/24
**factually** [1] 115/12
**fail** [1] 132/1
**failed** [1] 123/13
**failing** [1] 19/17
**fails** [1] 13/3
**failure** [1] 68/8
**fair** [13] 12/18 15/21 15/25 37/12 54/10 76/20 90/22 105/9 106/25 107/7 113/20 127/22 129/16
**FAIRHOLME** [1] 1/3
**fairly** [1] 78/24 81/12 113/21
**fairness** [2] 108/2 116/14
**fall** [5] 29/23 78/18 78/25 80/7 81/3
**falls** [2] 97/7 132/12
**false** [4] 46/25 47/1 49/19 52/20
**familiar** [7] 47/12 48/6 48/22 48/25 55/18 85/4 131/14
**fancy** [1] 59/11
**FANNIE** [38] 1/9 3/2 4/6 5/13 19/24 40/8 41/10 42/12 42/20 45/13 46/18 46/23 48/10 48/24 49/1 49/13 50/6 51/13 55/7 55/23 62/11 66/23 66/24 67/3 67/9 75/3 75/18 76/12 93/6 93/12 93/17 93/20 95/4 99/19 100/18 102/16 102/20 116/5
**Fannie Mae** [13] 3/2 5/13 40/8 49/13 62/11 66/23 67/9 75/3 75/18 76/12 93/17 100/18 102/16
**Fannie Mae's** [7] 51/13 66/24 67/3 93/6 93/12 93/20 99/19
**Fannie Mae/Freddie** [1] 4/6
**Fannie's** [1] 93/23
**far** [4] 43/7 71/9 93/11 104/13
**far-distant** [1] 43/7
**farther** [1] 11/21
**faulty** [1] 94/23
**FEDERAL** [2] 1/6 57/8
**fee** [1] 138/1
**feel** [1] 87/22
**feels** [1] 90/24
**fees** [1] 138/5
**felt** [4] 81/17 81/22 82/2 82/18
**few** [3] 23/23 110/16 134/16
**fewer** [1] 11/9
**FH** [1] 70/22

**FHFA** [43] 3/2 5/13 25/3 26/8 26/11 26/15 26/18 26/19 27/2 27/3 27/14 27/18 29/1 29/23 30/3 30/4 36/5 41/11 41/12 42/11 48/10 48/23 49/1 55/21 56/17 60/19 60/21 62/12 67/2 67/13 68/9 70/5 71/6 75/17 76/8 76/11 76/14 93/15 95/25 100/7 110/7 118/16 118/24
**FHFA's** [13] 10/20 27/12 31/3 31/10 46/13 59/7 59/8 67/7 72/24 105/22 107/5 107/23 111/7
**field** [1] 21/8
**fight** [1] 10/25
**figment** [1] 25/24
**figured** [1] 31/23
**filed** [2] 41/14 51/13
**filing** [4] 51/22 55/3 106/8 120/7
**filings** [30] 40/9 40/14 40/21 41/13 42/21 43/19 43/24 44/15 44/20 44/22 44/25 45/2 45/10 45/19 46/10 46/11 47/14 47/17 49/14 49/17 49/19 52/20 52/21 53/25 54/18 55/14 62/12 93/1 103/6 124/17
**final** [5] 11/23 27/4 41/12 83/13 84/12
**finally** [9] 22/2 51/10 55/4 68/1 82/21 92/4 100/2 100/11 117/6
**FINANCE** [1] 1/6
**finances** [2] 67/3 67/9
**financial** [15] 20/16 46/14 47/6 47/7 47/12 50/22 55/6 55/13 55/18 55/19 66/22 66/24 67/23 93/7 102/16
**financials** [1] 47/15
**financing** [1] 67/3
**find** [3] 44/16 55/22 88/12
**fine** [9] 4/15 6/25 94/25 104/7 104/12 104/15 104/16 104/18 105/15
**finger** [1] 130/4
**fingerprints** [1] 36/20
**finish** [2] 121/25 137/9
**first** [79] 7/20 8/1 9/7 12/6 13/1 13/13 13/25 16/4 18/21 24/23 29/15 31/4 32/2 37/3 38/2 38/20 40/12 46/8 46/19 51/12 51/14 58/6 61/5 68/4 68/7 70/3 70/6 71/18 76/1 76/6 77/16 78/9 78/10 78/14 79/19 79/19 79/20 84/25 85/19 87/21 90/11

95/3 96/18 97/6 97/22 99/9 101/15 102/14 104/19 104/23 104/25 106/1 106/1 106/14 107/6 107/14 107/24 108/22 114/20 121/9 121/10 121/12 121/19 122/1 122/8 122/11 123/4 125/9 125/12 125/22 126/7 127/24 128/2 130/15 134/5
**First Circuit** [2] 127/24 128/2
**firsthand** [1] 62/1
**Fischer** [1] 96/21
**five** [2] 103/18 135/15
**fixed** [1] 28/21
**flesh** [1] 112/24
**FLEXNER** [1] 2/3
**floating** [2] 113/13 114/3
**flourish** [1] 81/9
**flow** [1] 80/1
**focus** [2] 113/10 113/24
**focuses** [1] 64/17
**focusing** [2] 47/5 87/2
**fodder** [1] 13/8
**folks** [2] 30/4 134/15
**follow** [2] 55/5 84/20
**followed** [2] 7/4 7/20
**following** [5] 14/11 26/21 50/10 64/21 65/14
**follows** [1] 47/21
**fond** [1] 8/23
**fondly** [1] 8/22
**footnote** [2] 90/23 128/24
**force** [1] 60/15
**forecast** [2] 66/5 93/23
**forecasts** [3] 64/25 66/6 71/5
**forego** [1] 90/25
**foregoing** [1] 140/3
**forever** [1] 84/1 84/5
**forgive** [1] 87/15
**form** [6] 32/1 67/14 92/10 134/12 138/19 139/6
**former** [4] 24/11 40/9 56/16 67/13
**formulation** [2] 114/10 116/21
**forth** [4] 81/21 82/25 87/25 124/8
**fortunately** [1] 6/18
**forward** [15] 7/1 40/8 40/14 40/21 41/2 44/23 50/4 50/24 51/15 52/15 52/21 52/23 53/9 54/17 55/3
**forward-looking** [13] 40/8 40/14 40/21 41/2 44/23 50/4 50/24 51/15 52/15 52/21 53/9 54/17 55/3

forwarded [1] 31/12
**forwarding** [1] 31/17
**found** [5] 75/5 120/23 129/6
**foundation** [12] 31/7 31/7 32/4 32/7 40/24 43/5 44/13 48/4 48/14 54/25 56/1 98/4
**four** [7] 30/17 36/23 45/3 78/24 84/8 107/17 111/1
**Frank** [1] 56/5
**Frank Goodhart** [1] 56/5
**frankly** [2] 19/7 41/9
**fraud** [1] 53/19
**FREDDIE** [24] 1/9 3/3 4/6 5/13 19/24 24/11 28/18 40/8 40/10 41/10 42/20 46/18 46/24 48/11 48/24 49/1 49/13 50/7 55/7 55/23 72/12 75/3 75/18 116/6
**Freddie's** [2] 42/12 45/13
**free** [2] 113/13 114/3
**free-floating** [2] 113/13 114/3
**friend** [4] 12/7 19/12 38/21 131/21
**front** [1] 73/10
**frustrated** [1] 114/21
**fulfills** [1] 133/12
**full** [2] 65/16 78/16
**fully** [1] 8/3
**fun** [1] 101/11
**function** [1] 12/5
**fund** [2] 93/7 100/19
**fundamentals** [1] 34/10
**FUNDS** [1] 1/3
**further** [6] 42/5 60/3 61/12 100/19 112/6 136/4
**future** [17] 9/25 11/9 11/17 11/17 50/16 50/18 50/21 51/1 51/19 51/24 54/23 61/16 61/16 65/8 75/21 82/13 93/23

**G**

**gander** [1] 68/25
**gap** [1] 104/3
**gave** [7] 48/7 79/12 79/22 83/9 84/13 85/1 125/9
**Geithner** [9] 122/3 123/12 124/11 125/4 125/18 131/5 131/16 131/19 133/15
**Geithner's** [4] 121/16 121/17 124/7 132/20
**gelaw.com** [1] 2/18
**general** [1] 42/20
**generalized** [1] 114/11
**generally** [3] 29/3 29/24 70/19

**generate [2]** 50/13 50/19
**generic [1]** 85/14
**genuine [1]** 28/5
**Gerber [5]** 113/6 113/19 114/7 118/5 119/14
**get [30]** 6/3 6/8 43/13 47/14 53/22 63/4 65/8 70/25 78/2 87/10 88/21 88/23 89/13 94/9 94/21 94/25 98/1 104/2 104/4 104/8 104/13 104/20 108/19 108/25 112/6 115/8 119/22 134/7 137/12 137/18
**getting [5]** 6/12 35/12 87/9 89/22 89/22
**Giulietti [1]** 31/13
**give [16]** 7/22 37/22 48/17 50/5 54/22 82/6 83/2 84/21 88/8 89/7 89/7 107/13 107/21 119/12 129/19 138/22
**given [5]** 93/16 109/1 113/15 114/19 130/2
**gives [1]** 87/6
**giving [5]** 35/7 48/5 50/2 58/13 58/14
**glad [1]** 7/12
**go [19]** 7/9 8/10 9/7 12/2 13/11 42/1 46/21 55/22 57/13 57/17 64/5 72/19 86/12 88/16 91/3 91/8 110/13 119/24 136/4
**Go ahead [2]** 7/9 42/1 64/5
**go-around [2]** 13/11 88/16
**goes [12]** 6/21 8/23 12/1 17/8 48/25 54/20 65/17 71/9 71/22 93/11 97/19 110/7
**going [44]** 9/6 11/16 13/17 17/11 19/1 24/9 24/10 24/18 34/6 50/25 61/20 63/7 63/19 63/23 63/24 72/17 72/21 74/4 78/24 79/24 84/15 84/16 85/3 86/9 87/2 88/17 88/21 88/23 89/2 89/3 89/22 91/12 94/16 95/14 100/3 100/3 100/24 101/13 103/17 103/22 108/16 113/9 120/2 138/15
**gone [2]** 6/15 70/6
**good [31]** 4/5 4/11 4/16 4/21 4/23 4/25 5/2 5/4 5/6 5/8 5/12 5/15 5/17 5/19 5/21 7/10 8/14 8/17 12/8 19/2 19/8 24/7 28/12 49/12 56/4 74/12 77/2 84/23 91/10 111/15 136/4
**Goodhart [3]** 2/8 5/7

**goose [1]** 68/25
**goose/gander [1]** 68/25
**got [12]** 30/8 36/18 36/19 38/23 54/14 68/16 68/16 98/13 134/5 134/6 136/3 137/11
**govern [1]** 86/11
**government [5]** 53/7 53/20 53/23 83/23 115/19
**gracious [1]** 104/1
**Grant [3]** 2/8 2/16 5/7
**Grant Goodhart [1]** 5/7
**granted [4]** 8/8 48/14
**Gray [1]** 21/16
**great [6]** 95/13 102/20 102/20 102/21 103/4 137/20
**greatly [1]** 6/16
**Grossmann [1]** 2/13
**ground [1]** 120/1
**grounds [1]** 40/15
**groups [1]** 23/10
**GSE [3]** 56/16 59/7 68/8
**GSEs [1]** 67/13 71/23
**guarantee [1]** 63/19
**guarantees [5]** 19/24 43/14 43/15 49/15 124/24
**guess [1]** 60/6
**guidance [1]** 107/21
**guy [2]** 39/24 40/1

**H**

**ha [1]** 15/18
**Hackley [1]** 128/9
**had [52]** 6/13 21/15 24/12 24/16 25/20 28/5 28/14 30/3 32/13 33/5 36/12 36/15 36/16 39/19 41/7 41/12 43/3 55/13 57/2 57/3 57/25 59/8 61/18 64/24 64/24 65/1 65/4 70/20 74/1 74/8 75/5 76/12 79/8 81/18 87/23 90/13 93/20 99/22 100/18 105/4 106/21 106/21 108/22 111/1 111/20 113/17 119/7 119/9 124/12 124/23 134/15 135/11
**hairs [1]** 133/1
**hallmarks [1]** 44/11
**Hamish [4]** 2/2 4/12 103/15 137/21
**Hampshire [1]** 1/17
**hand [6]** 46/1 64/16 64/16 78/6 94/14 94/16
**handed [1]** 47/13
**handles [1]** 57/18
**handout [3]** 61/2 78/5 87/5

**handy [1]** 41/21
**happen [4]** 45/14 50/25 51/22 136/6
**happened [5]** 76/9 83/16 133/10 135/1 135/2
**happening [1]** 33/4
**happy [2]** 6/12 7/12
**harbor [6]** 50/3 50/4 52/24 53/2 53/11 54/11
**hard [7]** 7/14 67/25 85/8 88/9 109/3 109/3 133/3
**harder [2]** 108/3 108/18
**harmed [6]** 81/17 82/2 82/19 87/22 88/20 89/17
**has [46]** 6/15 7/6 7/18 8/9 8/15 11/13 16/6 28/25 42/19 42/23 45/6 47/9 47/9 48/12 48/21 57/9 58/22 59/10 59/16 61/25 62/19 66/23 72/4 73/18 83/12 87/11 95/24 96/7 99/20 101/6 113/11 124/17 125/12 127/13 127/13 127/16 130/9 130/21 131/14 131/24 131/24 131/25 132/2 133/4 133/10 138/5
**hate [2]** 130/1 130/17
**have [127]** 4/13 6/20 6/22 7/12 7/25 8/7 9/6 17/21 21/1 21/10 21/11 22/20 28/10 28/16 29/4 29/16 30/10 31/7 31/10 33/17 36/20 36/24 37/12 37/17 38/15 39/8 39/9 39/16 39/18 40/13 40/23 41/20 42/5 43/15 44/11 46/19 48/16 48/21 48/23 52/23 53/16 53/17 57/4 57/9 57/16 58/10 59/20 60/2 60/14 60/22 61/2 64/22 66/13 68/2 70/6 73/4 73/7 73/10 74/1 74/8 74/11 74/21 77/5 78/5 79/4 83/4 83/21 84/3 84/22 87/4 88/12 89/3 90/4 95/2 95/14 95/24 97/9 97/11 99/10 102/15 103/16 103/19 103/21 103/23 104/25 105/6 105/13 107/10 107/12 107/15 107/17 107/20 108/11 108/24 109/23 111/10 113/16 115/11 115/13 115/13 118/3 119/11 119/11 119/25 120/3 123/5 123/13 125/18 125/22 125/23 126/5 127/13 129/9 129/12 132/11 134/22 135/5 135/13 135/16

**handbook [1]** 44/26

**I**

**I've [16]** 7/5 31/17 48/11 49/1 62/5 62/5 62/6 62/20 62/23 63/12 79/14 80/11 84/3 84/6 132/23 138/14
**head [1]** 102/14
**heading [1]** 87/6
**headlong [1]** 85/16
**hear [16]** 6/5 13/14 16/21 21/24 23/7 34/7 44/8 45/15 51/4 52/11 56/8 65/20 73/12 79/9 84/16 100/24
**heard [10]** 14/15 25/6 28/1 28/8 46/13 52/9 57/22 61/6 74/16 120/15
**hearing [4]** 73/8 74/4 74/6 80/25
**hearsay [74]** 27/6 29/10 30/8 34/5 35/15 40/15 40/17 43/20 49/6 52/7 62/8 91/22 92/3 96/18 96/19 96/23 97/8 97/9 99/3 100/13 101/17 101/24 102/7 120/5 121/3 121/5 121/10 121/13 121/15 122/2 122/5 122/6 122/9 122/14 122/16 122/19 123/3 123/5 123/11 123/12 123/14 123/21 123/23 123/25 124/7 125/13 125/17 125/17 125/20 126/7 126/13 127/3 127/3 127/10 128/13 128/15 129/2 129/3 129/7 130/17 130/19 130/20 130/20 130/21 131/10 131/15 131/16 132/5 132/7 132/8 132/10 132/13 133/24 134/2
**held [9]** 25/4 50/5 129/3 130/24 131/15 132/3 132/12 133/4 137/7
**Hello [1]** 4/18
**help [6]** 107/21 108/14 110/1 111/4 111/5 119/3
**helpful [2]** 57/16 136/21
**helping [1]** 33/22
**her [72]** 47/11 57/20

**haven't [6]** 21/21 21/22 31/5 31/6 68/13 129/20
**having [4]** 32/9 35/12 92/9 124/24
**he [151]**
**He didn't [1]** 38/13
**he said [8]** 16/23 26/19 26/24 52/14 61/9 80/13 83/22 90/14
**he'd [1]** 135/13
**he's [16]** 7/5 31/17 48/11 49/1 62/5 62/5 62/6 62/20 62/23 63/12 79/14 80/11 84/3 84/6 132/23 138/14
**head [1]** 102/14
**heading [1]** 87/6
**here [74]** 5/25 5/25 7/4 10/8 15/25 16/6 16/23 16/24 21/13 22/7 22/13 24/1 25/17 27/9 27/17 29/20 30/15 37/5 37/6 37/14 44/13 45/2 45/18 46/9 47/2 47/24 49/3 49/17 49/18 49/21 50/23 52/17 53/8 53/23 68/23 69/25 70/9 70/11 71/14 72/16 74/17 74/21 75/8 79/19 83/15 85/7 85/11 86/4 86/15 87/4 87/5 87/16 87/20 89/2 89/11 89/19 95/13 99/4 100/8 109/24 112/17 114/20 115/11 116/17 117/11 117/14 118/3 120/7 123/12 124/14 125/5 128/9 132/25 135/1
**here's [2]** 130/13 134/25
**hey [1]** 32/2
**hhume [1]** 2/5
**high [3]** 52/2 71/12 72/12
**high-level [2]** 71/12 72/12
**highlight [2]** 13/22 93/19
**highlighted [1]** 46/5
**highly [5]** 33/19 38/25 73/2 73/16 134/7
**him [6]** 6/22 6/24 23/17 24/16 35/12 36/25 39/9 52/12 61/2 63/8 72/20 72/22 80/22 125/7 138/10 138/14
**himself [1]** 131/20
**hired [1]** 7/3
**his [54]** 6/13 9/14 14/12 14/23 15/1 15/1 15/2 15/10 15/24 16/15 21/8 23/14 23/24 25/24 26/17 28/9 28/15 28/22 32/13 33/1 34/21 34/22 34/25 35/2 36/12 36/18 38/22 39/4 39/6 40/10

**H**

**his...** [24] 43/2 46/21 47/19 47/19 52/12 61/4 61/8 62/19 67/8 68/8 79/5 80/14 81/4 84/6 90/1 93/9 121/21 121/22 125/9 130/18 133/11 134/20 135/12 138/14
**hit** [1] 102/13
**Hoffman** [13] 3/3 5/16 12/7 12/9 43/22 51/4 51/10 69/12 73/21 74/16 84/24 101/8 131/21
**hog** [1] 101/11
**hold** [1] 128/3
**holders** [3] 23/5 23/6 23/18
**Holdings** [1] 114/7
**holistic** [1] 36/16
**honest** [1] 133/11
**honestly** [1] 135/18
**honor** [302]
**Honor's** [16] 10/10 16/9 30/24 32/5 32/18 33/3 33/7 60/1 78/1 79/15 80/8 82/4 82/17 84/9 86/10 102/19
**HONORABLE** [2] 1/13 4/3
**hope** [2] 8/13 12/13
**hopefully** [1] 38/3
**Hornbook** [1] 37/14
**hour** [2] 77/10 91/6
**hours** [2] 81/22 105/6
**House** [1] 8/5
**HOUSING** [1] 1/6
**how** [33] 8/19 14/14 15/6 20/4 20/6 20/7 22/10 25/21 29/20 30/7 37/10 39/3 39/4 41/16 42/20 48/22 54/17 58/4 58/17 60/4 60/24 63/12 69/8 69/15 75/8 82/11 85/8 86/6 88/7 104/13 122/16 132/17 135/6
**however** [7] 6/15 6/20 14/9 25/3 103/17 103/18 121/15
**huh** [1] 136/13
**Hume** [6] 2/2 4/12 103/15 104/14 137/21 139/1
**hundred** [1] 51/8
**hunt** [1] 55/22
**hurt** [1] 21/23
**Hutira** [1] 96/20

**I**

**I am** [1] 31/14
**I believe** [7] 36/19 53/18 68/23 85/4 88/6 105/9 119/22
**I can** [6] 7/22 48/16 70/19 78/10 88/25 104/2
**I can't** [2] 7/7 56/8

**I could** [3] 8/16 22/3 105/19
**I didn't** [5] 44/8 45/15 52/11 52/12 89/13
**I don't** [17] 21/24 29/15 34/1 51/4 54/11 54/14 61/7 62/18 62/23 87/25 98/13 108/21 126/17 127/17 128/7 130/12 135/4
**I don't have** [2] 48/23 73/10
**I guess** [1] 60/6
**I have** [13] 6/20 6/22 22/20 48/16 57/16 61/2 78/5 84/22 88/12 111/10 118/3 125/22 136/14
**I hope** [2] 8/13 12/13
**I just** [7] 6/24 60/22 64/12 68/19 70/9 94/23 118/2
**I know** [4] 63/24 69/14 117/23 126/18
**I mean** [2] 117/23 129/24
**I say** [3] 28/18 109/8 125/11
**I should** [4] 6/23 79/24 82/22 90/6
**I think** [32] 26/4 26/16 49/12 53/8 54/8 54/14 55/24 60/23 61/9 61/13 69/22 72/1 72/9 79/18 83/9 83/11 84/8 85/18 88/22 89/1 91/7 102/10 102/13 107/3 107/17 108/15 109/3 118/22 119/4 136/18 136/21 137/22
**I thought** [4] 89/21 94/4 94/7 94/11
**I told** [2] 26/21 76/15
**I understand** [3] 19/16 63/18 131/1
**I want** [2] 59/18 77/16
**I was** [4] 26/24 47/4 87/9 89/21
**I went** [1] 7/1
**I will** [14] 6/22 6/22 6/23 22/2 22/25 30/19 31/4 32/16 40/6 46/1 57/24 101/10 111/11 120/2
**I'd** [8] 52/13 57/13 58/6 64/6 64/15 69/16 73/20 105/23
**I'll** [46] 6/5 8/16 10/21 12/7 17/1 19/12 22/24 27/4 30/22 37/17 46/8 46/8 49/4 50/1 56/6 56/9 63/4 64/5 68/11 69/18 69/18 69/20 73/18 77/9 78/6 78/14 78/17 79/23 80/11 83/3 85/18 86/13 86/13 87/15 87/17 87/18 88/12 91/7 91/22

**I'll look** [1] 130/14
**I'm** [42] 5/25 6/2 6/12 6/16 6/25 7/2 7/15 9/6 13/7 17/11 22/16 24/10 34/22 35/2 55/4 56/8 60/6 62/25 63/2 63/4 63/7 65/20 65/22 70/22 73/9 77/12 78/24 84/17 85/3 87/2 91/12 94/16 100/3 101/10 101/13 103/17 104/8 121/22 128/7 134/7 135/1 136/11
**I'm going** [7] 9/6 24/10 63/7 91/12 94/16 100/3 103/17
**I'm not** [3] 6/2 34/22 87/2
**I'm not sure** [1] 55/4
**I'm sorry** [10] 13/7 22/16 35/2 56/8 63/4 65/20 70/22 104/8 121/22 128/7
**I've** [4] 46/3 46/5 79/12 137/11
**Ian** [7] 3/3 5/16 12/9 43/22 69/12 84/24 101/8
**Ian Hoffman** [3] 5/16 12/9 84/24
**ian.hoffman** [1] 3/9
**idea** [3] 8/9 29/23 133/25
**ideal** [1] 108/18
**identical** [1] 59/23
**identified** [9] 9/19 20/20 36/2 36/7 36/24 59/23 90/13 91/12 129/20
**identify** [3] 13/11 102/11 123/22
**ignores** [1] 114/12
**imagination** [1] 25/24
**Imam** [1] 48/17
**impact** [2] 11/6 13/3
**impacted** [1] 66/24
**impeach** [5] 94/4 96/13 96/15 98/6 100/3
**impeaching** [2] 94/7 94/8
**impeachment** [2] 99/24 102/17
**impermissible** [2] 70/7 80/18
**implausible** [1] 103/8
**implement** [2] 63/15 92/20
**implemented** [1] 24/18
**implication** [3] 66/5 102/24 103/6
**implied** [8] 92/14 112/10 113/12 113/22 114/22 115/2 115/7 138/20
**implies** [1] 21/20

**important** [17] 20/5 25/17 29/6 30/7 39/17 49/11 49/14 62/12 69/22 70/23 75/24 99/18 103/17 103/19 103/23 120/4 120/10
**impose** [1] 113/15
**impossibly** [1] 100/14
**impression** [1] 27/1
**imprimatur** [1] 30/10
**improper** [4] 15/20 57/12 59/2 98/23
**improperly** [1] 101/3
**improve** [2] 111/2 119/13
**improved** [2] 6/16 16/12
**inadmissible** [8] 33/19 33/20 87/12 92/3 120/5 121/3 122/9 123/11
**inbound** [1] 90/21
**INC** [1] 1/3
**inclined** [2] 67/16 75/11
**include** [1] 109/10
**includes** [2] 28/22 117/15
**including** [8] 10/3 22/5 49/8 53/7 93/22 117/6 132/8 133/17
**income** [4] 50/12 50/13 50/13 50/19
**inconsistent** [1] 78/1
**incorrect** [3] 122/22 123/8 124/10
**increased** [4] 10/2 11/8 18/25 18/25
**increasingly** [1] 50/16
**incredibly** [3] 43/25 56/1 75/24
**Indeed** [1] 86/19
**independent** [2] 75/10 99/25
**independently** [3] 75/15 75/23 102/14
**indicate** [1] 49/7
**indicated** [2] 43/3 111/17
**indicating** [2] 123/22 123/24
**indication** [1] 42/23
**indicias** [1] 44/12
**indirectly** [1] 126/15
**indiscriminately** [1] 19/20
**individual** [1] 85/11
**individually** [2] 4/14 111/3
**individuals** [3] 72/12 84/16 85/22
**indulgence** [1] 49/23
**inference** [1] 17/19
**inferences** [1] 54/24
**infirmity** [1] 89/12
**information** [16] 17/15 18/24 18/24 22/5 36/17 41/4 41/8 42/24 42/25

**importance** [1] 50/20
**imports** [1] 131/8
**imposed** [1] 93/21 131/8
**131/18 132/2 132/20 135/22
**informed** [1] 75/17
**inherent** [1] 51/21
**inherently** [1] 51/23
**initial** [3] 15/21 15/22 57/24
**input** [1] 73/23
**inquiry** [10] 85/7 85/9 85/13 85/21 107/22 108/14 116/8 118/8 118/15 136/3
**instance** [3] 12/6 17/9 46/20
**instead** [2] 26/24 116/6 131/19
**instruct** [1] 88/24 114/17
**instruction** [22] 83/2 84/20 90/3 105/1 105/24 106/16 107/1 107/11 107/13 108/3 111/2 112/1 112/3 112/9 112/9 112/14 115/8 116/19 117/13 117/15 119/12 119/14 119/16
**instruction's** [1] 107/2
**instructions** [23] 84/13 84/15 104/24 105/8 105/20 106/5 106/10 106/20 109/9 109/13 110/1 110/5 110/9 111/11 113/8 116/11 117/16 117/19 118/4 119/2 119/6 119/13 119/16
**intend** [2] 7/23 83/8
**intended** [1] 27/15
**intent** [2] 62/5 116/4
**interest** [4] 103/13 105/2 105/14 111/18
**interested** [1] 7/23
**internal** [1] 124/21
**interpreted** [1] 48/13
**intervention** [1] 105/17
**interviewed** [1] 133/22
**interviews** [1] 95/21
**intimate** [1] 66/23
**introduce** [11] 4/13 24/22 31/6 89/11 89/20 96/1 96/12 98/15 100/9 112/14 134/10
**introduced** [1] 96/24
**introducing** [4] 97/18 99/23 100/22 101/5
**introduction** [1] 97/6
**investor** [5] 9/15 9/22 11/8 16/19 92/11
**investors** [17] 10/25 17/6 17/7 17/13 17/16 19/4 19/21 20/7 20/14 23/10 23/13 23/14 24/4 25/19 26/13 35/9 35/10
**investors'** [1] 92/17
**invoke** [3] 30/10 123/14 123/15
**involved** [12] 56/25

**I**

involved... [11] 57/4
58/23 62/1 62/15 63/10
63/12 63/13 63/13
63/15 66/14 75/4
**Iran [1]** 96/20
**ironically [1]** 44/7
**irrelevant [8]** 56/15
64/22 85/12 92/1 92/10
92/17 103/8 112/20
**is [460]**
**ish [3]** 8/11 8/13
136/12
**Islamic [1]** 96/20
**isn't [4]** 10/18 45/15
96/14 133/13
**isolate [4]** 11/6 13/3
14/7 19/17
**issuances [1]** 18/25
**issue [42]** 13/23 24/20
34/12 42/16 46/1 46/9
50/7 52/15 58/5 58/18
59/15 68/6 68/10 68/13
68/14 69/24 69/25
72/10 73/2 73/22 75/24
79/18 86/1 93/15 97/1
101/15 105/14 113/17
114/12 117/8 118/4
119/16 121/1 121/4
126/14 128/18 129/10
129/11 129/15 138/2
139/4 139/5
**issued [2]** 10/25 13/18
**issues [11]** 30/15
30/19 34/12 56/12
61/10 72/9 73/17 86/9
103/12 116/5 139/2
**issuing [1]** 14/23
**it [303]**
**it would be [1]** 132/13
**it's [136]** 4/12 5/24
5/25 7/14 8/23 9/10
10/15 10/19 10/20
10/20 11/1 12/9 12/12
13/20 14/21 14/22
15/13 15/21 15/24
17/19 18/22 21/6 30/8
32/8 34/16 35/14 36/2
37/12 37/13 37/18
38/23 39/1 39/16 41/9
41/22 43/8 43/16 47/6
47/7 47/8 48/17 49/17
55/11 60/15 60/23 62/8
63/5 63/9 63/10 65/15
67/20 69/9 69/9 72/3
74/2 74/10 74/14 74/15
75/6 75/6 77/2 79/14
81/4 85/8 86/25 89/25
90/17 90/21 91/1 92/10
92/19 95/7 95/7 95/12
99/2 99/18 100/4
100/11 100/24 101/2
101/25 102/7 102/10
102/14 102/17 103/18
105/9 105/12 106/4
108/13 108/18 109/6
109/14 109/23 109/25
110/11 110/16 112/4

115/3 115/5 116/18
119/22 120/13 122/5
122/15 122/19 122/22
122/23 124/8 124/9
126/13 128/11 128/12
128/23 129/22 130/6
130/22 131/5 131/6
131/10 132/14 132/15
132/22 132/25 133/3
133/4 133/8 133/9
133/14 133/20 133/20
134/11 134/24
**It's Hamish [1]** 4/12
**item [1]** 98/12
**itinerary [1]** 31/22
**its [18]** 13/18 14/23
14/24 32/12 36/7 54/21
54/24 56/20 57/7 57/11
84/25 93/7 93/13 93/17
100/19 106/15 120/20
121/25
**itself [7]** 14/6 32/11
112/12 124/7 125/12
128/19 132/22

**J**

**January [1]** 137/11
**job [2]** 7/7 119/4
**jobs [1]** 135/18
**John [4]** 1/16 1/16 4/22
24/7
**John Ramer [1]** 4/22
**joint [1]** 59/21
**jonathan [4]** 3/3 3/8
5/13 104/9
**Jonathan Stern [1]**
5/13
**Jones [5]** 3/4 5/18
104/21 111/17 130/15
**Journal [5]** 91/18
95/21 95/22 97/12
100/17
**JPMorgan [1]** 21/3
**jramer [1]** 1/19
**judge [34]** 1/14 4/11
4/18 6/21 7/15 12/13
12/23 13/1 13/6 13/15
13/22 14/9 14/20 15/9
47/10 48/2 48/6 48/12
55/12 70/1 70/11 70/12
71/1 71/9 71/16 73/5
73/11 86/10 86/13 89/3
89/5 90/10 102/9
103/16
**Judge Lamberth [2]**
4/18 103/16
**judgment [5]** 82/9
82/10 82/18 105/14
111/18
**July [2]** 1/5 140/7
**jump [1]** 15/16
**jumping [1]** 18/1
**jumps [2]** 87/16 97/13
**June [2]** 28/21 134/14
**junk [1]** 12/3
**juror's [1]** 22/12
**jurors [3]** 84/20 107/14

**jury [86]** 10/15 11/14
25/17 25/19 25/22 26/3
29/19 29/20 30/11
30/18 33/1 33/21 33/22
34/6 35/6 35/13 35/21
35/21 36/25 37/4 37/10
37/13 54/22 71/13 73/7
73/12 74/4 80/25 84/13
84/15 88/16 88/24 89/5
90/3 92/4 95/8 95/10
95/11 95/13 95/15
95/16 96/4 100/14
100/24 101/4 102/20
104/24 105/1 105/8
105/20 106/2 106/5
106/10 106/15 106/16
107/9 107/9 107/21
108/16 108/22 108/25
109/4 109/9 109/15
109/19 110/1 110/9
110/18 111/3 111/5
111/11 112/15 112/21
114/17 117/7 117/9
117/14 117/17 118/15
119/2 119/3 119/5
119/7 119/12 119/16
136/19
**jury's [4]** 106/17
106/25 109/17 110/25
**just [124]** 6/24 10/14
10/18 10/19 10/21 11/8
11/12 11/24 12/1 12/19
13/20 14/22 15/2 16/3
16/13 16/17 18/10
18/12 19/8 22/24 25/23
27/4 29/13 29/23 32/3
33/6 34/6 34/7 34/16
39/11 39/16 39/21 40/1
43/10 45/25 46/10
48/19 51/24 52/13
52/14 52/14 52/17 53/8
54/24 55/10 59/11
60/22 61/23 62/17 63/9
64/12 66/15 67/6 68/1
68/19 68/24 69/17 70/9
71/17 73/21 74/10
74/18 75/8 76/3 77/4
77/16 78/14 78/17
79/17 79/23 80/2 80/11
81/6 81/22 82/4 82/24
83/4 83/7 83/10 84/10
84/12 85/3 85/17 85/18
86/5 86/19 87/5 87/17
88/7 89/2 89/24 91/1
94/23 97/13 97/23 98/2
100/24 101/14 108/4
108/12 110/5 110/10
110/17 110/24 118/2
118/4 119/12 119/21
120/18 122/2 122/22
123/8 124/9 124/21
125/7 129/17 133/25
134/2 134/8 135/7
135/11 137/14 138/4
139/3
**justification [7]** 58/14
95/24 96/23 97/10

**JUSTISON [1]** 2/16

**K**

**Kaplan [13]** 2/2 5/2
8/16 8/19 13/8 13/14
14/15 20/24 21/5 30/13
36/1 36/12 37/25
**Kari [12]** 40/9 47/2
47/25 48/1 51/5 56/18
64/12 66/18 68/5 72/11
73/14 75/12
**Kari's [2]** 43/19 68/13
**KAYE [1]** 3/6
**keep [6]** 12/6 83/23
87/18 88/8 101/10
103/9
**Kenya [2]** 2/3 5/9
**Kenya Davis [1]** 5/9
**kept [1]** 45/6
**KESSLER [1]** 2/8
**key [6]** 28/8 29/7 29/9
82/5 121/7 122/7
**keyboard [1]** 51/5
**Khalelah [1]** 2/3
**kind [8]** 13/16 18/12
19/10 21/14 22/6 34/11
51/25 56/12 62/21
69/21 70/2 81/18 83/24
87/23 90/2 108/18
110/4 130/2
**kinds [1]** 46/15
**King [1]** 2/9
**KIRK [1]** 1/17
**knee [1]** 6/15
**knew [3]** 63/19 63/23
63/24
**know [44]** 7/5 8/9 9/13
13/20 25/22 29/21 32/2
32/4 34/4 53/21 57/23
58/1 58/2 58/3 58/4
63/23 63/24 65/5 65/11
67/3 68/6 68/11 69/14
76/6 79/23 80/12 81/6
82/7 84/2 85/25 87/19
98/12 99/12 116/3
117/7 117/23 120/18
126/18 126/18 132/15
133/21 135/25 138/11
139/7
**knowingly [1]** 47/1
**knowledge [40]** 35/20
41/4 41/7 42/20 42/24
43/2 43/3 45/20 46/11
47/9 47/9 47/17 47/19
47/20 48/2 55/9 55/14
55/16 57/5 57/10 58/10
58/21 58/22 59/8 59/10
59/16 62/1 62/19 66/13
66/23 67/5 67/7 67/9
67/10 67/21 73/16 96/8
99/23 135/13 135/16
**knows [9]** 9/1 43/24
45/5 53/4 65/6 85/18
96/8 96/9 139/4
**Kothari [1]** 37/17
**Kothari's [1]** 22/5
**Kravetz [3]** 2/12 4/24

**Ks [2]** 47/6 47/8
**ktmc.com [2]** 2/10 2/11

**L**

**label [2]** 53/4 134/17
**lack [2]** 134/20 135/3
**ladened [1]** 62/8
**laid [5]** 31/6 31/8 55/1
56/2 102/15
**LAMBERTH [5]** 1/13
4/3 4/11 4/18 103/16
**language [11]** 50/6
51/25 106/18 107/25
108/24 109/24 112/23
112/25 116/16 134/18
135/2
**larger [1]** 70/8
**last [20]** 6/14 8/5 10/12
11/24 30/6 32/20 77/20
78/2 79/3 81/12 84/4
88/17 105/6 110/15
111/3 111/5 115/15
120/22 121/6 138/3
**lastly [1]** 68/19
**late [2]** 8/10 101/12
**later [2]** 23/1 103/19
**law [38]** 6/13 37/14
42/14 47/10 52/25 54/5
54/19 55/8 55/8 55/15
92/13 105/5 106/7
107/20 108/9 112/11
113/4 113/4 113/14
116/11 116/17 117/1
117/12 117/20 118/16
119/15 122/17 122/22
122/22 123/9 124/2
124/15 126/22 126/24
127/2 128/9 135/11
135/14
**lawsuit [4]** 78/21 80/13
81/4 120/4
**lay [8]** 40/24 43/4 48/4
48/14 57/12 72/9 89/9
98/4
**layer [9]** 121/10 121/13
121/15 122/2 122/5
123/23 125/13 125/17
130/20
**layers [6]** 121/10 122/6
122/9 122/16 122/18
130/16
**layman's [2]** 106/18
108/5
**layperson [1]** 108/13
**lays [1]** 78/6
**Layton [15]** 24/12
24/15 25/1 25/2 25/24
26/8 27/2 27/19 28/7
28/10 28/12 28/18
28/20 29/9 75/3
**Layton's [4]** 25/12
25/16 26/16 28/2
**leading [3]** 57/24 62/16
89/16
**learn [1]** 63/16
**learned [4]** 57/1 57/1
57/3 76/1

**L**

**least [14]** 9/19 32/12 39/19 50/20 61/9 75/14 86/1 87/15 98/8 104/8 105/9 107/9 122/14 124/2
**leave [1]** 86/23
**leaves [2]** 33/10 45/17
**leaving [1]** 10/25
**lectern [1]** 4/9
**led [1]** 56/23
**Lee [3]** 2/7 4/19 77/2
**Lee Rudy for [1]** 4/19
**left [5]** 10/15 27/1 73/21 78/11 83/14
**legal [6]** 30/1 44/1 49/19 90/4 108/9 113/14
**legalese [1]** 106/19 108/6 109/24
**length [1]** 52/20
**less [5]** 8/2 10/24 11/7 54/22 106/19
**let [17]** 5/10 9/7 12/7 15/8 19/12 31/9 49/23 50/9 53/10 63/4 63/8 67/18 91/3 94/14 94/22 130/23 139/7
**let's [9]** 30/24 91/8 92/7 96/16 96/17 104/13 104/19 130/3 137/6
**level [3]** 52/3 71/12 72/12
**liability [3]** 50/3 52/22 53/10
**liable [1]** 50/5
**lifted [1]** 90/15
**light [8]** 39/8 54/25 77/9 85/20 91/6 103/10 113/20 116/22
**like [41]** 7/15 7/16 20/13 23/15 29/8 29/9 39/22 44/19 44/21 50/10 52/13 57/13 61/1 61/23 62/12 62/17 62/21 64/6 64/15 69/14 69/16 72/23 73/7 73/20 74/20 78/15 81/22 83/20 85/24 87/22 104/23 105/23 119/19 124/17 127/25 131/7 132/10 132/13 133/4 133/8 133/10
**likely [2]** 92/5 100/14
**Likewise [1]** 99/5
**limine [16]** 7/25 22/8 22/17 37/3 37/16 40/6 56/10 56/11 56/14 59/20 60/2 60/5 64/8 66/12 66/21 79/15
**limines [1]** 56/7
**limits [1]** 116/14
**line [9]** 57/21 61/13 64/18 64/21 64/21 66/2 71/1 71/25 88/7
**Linekin [3]** 79/20 79/22 80/9

**lines [6]** 57/21 65/9 70/7 71/14 71/15 72/6 105/8 109/22 110/15 113/11 116/20 118/20 123/2 123/8 126/6 126/25 130/4 130/5 136/15
**MAE [16]** 1/9 3/2 4/6 5/13 40/8 49/13 55/23 62/11 66/23 67/9 75/3 75/18 76/12 93/17 100/18 102/16
**Mae's [7]** 51/13 66/24 67/3 93/6 93/12 93/20 99/19
**MAE/FREDDIE [1]** 1/9
**magic [1]** 80/24
**magnitude [1]** 111/22
**maintain [1]** 86/1
**maintained [1]** 45/11
**major [3]** 24/13 75/16 90/16
**majority [2]** 12/11 12/14
**make [27]** 6/7 15/9 19/10 19/10 41/13 49/24 56/13 64/3 64/13 66/10 66/17 68/24 74/1 80/17 87/13 95/3 99/4 105/23 108/2 110/24 117/17 118/2 130/17 132/25 134/3 137/14 138/13
**maker [3]** 51/7 109/19 118/16
**maker's [3]** 109/16 112/12 112/15
**makers [1]** 72/17
**makes [5]** 11/14 11/20 39/24 42/14 123/17
**making [25]** 11/8 22/7 23/9 26/25 27/8 27/9 27/12 31/3 31/11 31/24 32/8 36/7 44/19 45/8 51/19 53/15 55/2 55/5 63/21 68/20 69/18 90/25 97/16 99/16 108/9
**management [1]** 46/19
**management's [1]** 51/15
**managing [1]** 47/5
**manner [1]** 89/16
**many [3]** 10/21 89/10 122/16
**March [2]** 31/12 31/25
**Mario [1]** 31/13
**market [29]** 14/13 14/19 15/14 15/18 17/6 17/20 18/1 18/2 18/3 18/11 18/17 18/19 18/22 19/17 19/18 20/12 20/25 21/12 25/8 25/25 28/23 29/1 29/2 29/3 29/7 29/7 36/5 37/8 37/8
**markets [3]** 19/21 21/18 21/23
**Massachusetts [1]** 3/6

**match [1]** 15/2
**matched [1]** 15/2
**materials [1]** 47/13
**matter [18]** 15/21 15/22 24/25 26/6 27/10 28/3 29/18 94/9 94/13 96/12 98/25 99/24 100/16 101/1 102/5 122/16 136/1 140/4
**matters [2]** 22/11 114/23
**maturity [1]** 11/21
**may [22]** 6/5 28/10 28/16 31/1 33/21 50/11 52/9 59/20 73/6 75/1 79/7 81/20 94/23 104/9 108/21 112/15 115/8 115/13 128/19 137/14 139/4 139/5
**maybe [3]** 37/17 104/3 137/16
**Mayopoulos [17]** 56/17 61/2 61/4 61/23 62/11 62/17 63/14 64/12 66/18 68/5 68/12 72/11 73/14 74/22 75/2 75/7 75/12
**Mayopoulos's [1]** 67/8
**mbarry [1]** 2/18
**MBS [30]** 9/3 9/8 17/1 17/6 17/6 17/7 17/12 17/16 17/20 18/3 18/5 18/11 18/19 18/22 18/25 19/2 19/4 19/17 19/20 19/21 19/23 19/25 20/2 20/6 20/11 20/14 20/17 20/20 23/13 24/4
**MC [1]** 1/10
**McFar [1]** 94/1
**McFarland [29]** 47/11 47/25 48/1 51/5 64/19 66/12 66/22 67/1 69/5 69/19 69/24 71/20 71/22 75/6 75/12 75/17 76/15 93/6 93/19 96/2 97/3 97/14 97/24 98/3 98/9 98/17 99/16 100/7 102/18
**McFarland's [10]** 64/7 67/9 68/14 69/25 70/14 71/1 72/16 74/17 91/16 92/8
**me [37]** 6/18 6/20 6/21 6/21 6/23 6/24 7/2 7/4 7/6 7/15 15/8 26/23 31/9 37/22 40/14 49/24 50/9 70/20 73/10 74/20 76/19 77/6 81/10 87/15 88/24 94/6 94/14 94/22 95/9 115/22 117/23 125/23 127/18 130/2 130/23 131/21 135/23
**mean [9]** 12/19 21/9 48/11 65/5 102/23 117/23 127/21 128/1 129/24
**meaning [5]** 121/21

**means [4]** 15/19 18/14 103/7 108/19
**meant [4]** 47/7 58/24 59/2 59/14
**meantime [1]** 6/19
**measured [2]** 110/19 114/14
**measuring [1]** 110/22
**mechanical [1]** 3/16
**media [1]** 99/7 99/10
**meet [17]** 33/25 34/2 35/11 42/4 44/13 45/2 49/5 49/18 62/12 93/12 93/17 95/5 125/23 126/2 127/16 132/2 132/3
**meeting [21]** 24/12 26/13 26/19 28/20 28/22 32/9 64/25 67/5 67/11 121/17 121/23 122/4 125/6 125/8 134/13 134/14 134/15 134/23 135/1 135/2 135/11
**meetings [5]** 26/22 28/14 28/19 62/13 67/2
**MELTZER [1]** 2/8
**member [1]** 4/8
**members [1]** 25/22
**memo [35]** 106/7 119/20 120/3 120/14 120/17 120/19 120/23 121/2 121/9 121/11 121/11 121/12 121/19 122/1 122/2 122/8 123/10 124/7 124/21 125/13 125/17 131/1 131/7 131/14 131/18 131/20 132/12 133/2 133/2 133/4 133/7 133/19 134/11 135/16 135/20
**memory [2]** 6/11 6/14
**mention [5]** 30/5 34/2 38/13 111/24 129/12
**mentioned [4]** 26/14 26/15 65/7 114/3
**mere [1]** 29/6
**merely [2]** 90/12 128/5
**merit [2]** 3/11 90/2
**met [8]** 27/1 28/16 32/18 33/17 36/18 42/18 42/22 49/2
**metaphysical [1]** 133/11
**methodology [1]** 11/14
**Michael [4]** 2/15 5/1 91/11 131/2
**Michael Barry [2]** 5/1 91/11
**Michelle [1]** 81/14
**middle [2]** 64/23 83/5
**might [11]** 42/9 44/19 51/19 52/1 53/16 54/1 57/16 61/16 61/17 65/9 129/19
**MIL [5]** 24/10 24/10

**M**

**MAC [11]** 1/9 3/3 4/6 5/13 24/11 28/18 40/10 55/23 72/12 75/3 75/18
**Mac's [2]** 40/8 49/13
**made [48]** 10/19 13/12 22/6 24/23 27/19 32/10 32/13 36/12 41/3 41/6 41/16 42/25 45/19 47/17 48/21 51/3 59/4 66/11 68/2 70/20 75/5 84/15 90/9 92/23 97/4 97/15 98/3 99/7 99/9 99/15 99/16 99/18

**M**

MIL... [3]  30/14 91/13
94/18
**Miller [7]**  82/2 82/8
82/16 83/13 87/16
87/21 89/18
**Miller's [4]**  81/15 89/12
121/21 121/23
**MILs [2]**  69/8 103/22
**mind [7]**  6/15 6/18 6/21
36/13 51/6 130/11
130/13
**minds [2]**  72/17 84/17
**minor [1]**  138/18
**minute [3]**  94/9 95/1
95/18
**minutes [2]**  76/18
81/23
**Miscellaneous [1]**  4/5
**miss [1]**  49/24
**misses [1]**  68/15
**missing [1]**  109/25
**misspeak [1]**  16/14
**misstatements [3]**
44/2 53/24 124/19
**mistakenly [1]**  100/25
**misunderstand [1]**
112/17
**model [1]**  117/12
**modeling [1]**  59/7
**modest [2]**  107/10
107/15
**modified [1]**  117/20
**modify [1]**  112/9
**moment [5]**  69/17
86/14 88/13 89/19
91/22
**Monday [2]**  104/3
136/20
**money [2]**  102/23
103/5
**monitoring [1]**  29/1
**Moody's [1]**  93/3
**more [32]**  8/2 8/23
15/23 20/15 35/14 37/5
37/13 38/23 39/1 40/17
44/12 48/4 49/17 49/21
77/5 77/6 81/18 87/10
87/23 88/21 95/23 96/8
96/10 103/16 106/18
107/21 111/6 124/25
125/1 134/8 135/4
135/6
**morning [3]**  13/15
137/10 139/8
**mortgage [5]**  23/4 23/5
23/17 24/13 35/10
**mortgage-backed [4]**
23/4 23/5 23/17 35/10
**most [6]**  13/6 25/17
26/16 116/21 120/4
120/10
**motion [64]**  8/4 8/25
9/2 11/22 12/14 12/19
16/2 17/2 22/8 22/17
22/25 23/1 23/3 24/5
34/1 37/3 37/16 41/17
44/8 52/11 52/17 56/7

64/16 66/11 66/20
74/24 77/6 77/12 77/17
77/17 77/22 79/15
82/23 86/18 88/4 88/15
91/13 91/15 103/16
104/3 104/13 104/19
104/23 104/24 105/8
106/3 106/5 106/8
106/10 111/11 119/18
119/19 119/21 120/7
122/21 123/7 124/4
124/9 125/23 134/17
**motions [15]**  6/1 6/8
7/20 7/25 8/2 40/6 40/7
56/10 56/14 60/2 60/5
82/18 111/19 136/14
136/17
**motivation [2]**  25/7
57/6
**motive [1]**  116/5
**mouth [1]**  49/3
**move [6]**  9/8 17/1
59/17 64/6 66/9 118/3
**moved [1]**  40/13
**Moving [2]**  18/21 38/20
**Mr [2]**  37/1 39/25
**Mr. [191]**
**Mr. Bergman [6]**  19/12
23/7 23/21 30/6 35/8
38/21
**Mr. Cacciapelle [6]**
80/5 80/12 80/21 83/18
87/6 89/20
**Mr. Cacciapelle's [2]**
80/18 80/25
**Mr. DeMarco [41]**
25/23 26/14 28/11
28/15 28/16 28/19
28/20 29/2 30/12 31/13
31/17 31/19 31/25
32/13 32/15 34/18
34/19 35/25 36/2 36/12
36/15 38/10 38/19 39/7
39/18 68/8 73/6 73/23
92/22 92/25 93/4 93/5
93/8 95/6 115/13
121/18 125/5 125/6
134/16 134/19 135/5
**Mr. DeMarco's [10]**
25/6 25/13 26/3 32/9
36/20 72/20 73/3 92/19
94/1 99/11
**Mr. Hoffman [6]**  12/7
51/4 51/10 73/21 74/16
131/21
**Mr. Hume [2]**  104/14
139/1
**Mr. Jones [2]**  111/17
130/15
**Mr. Kaplan [10]**  8/16
8/19 13/8 13/14 14/15
20/24 21/5 36/1 36/12
37/25
**Mr. Kari [9]**  47/25 48/1
51/5 64/12 66/18 68/5
72/11 73/14 75/12
**Mr. Kari's [2]**  43/19

**Mr. Layton [14]**  24/12
24/15 25/1 25/2 25/24
26/8 27/2 27/19 28/7
28/10 28/12 28/18
28/20 29/9
**Mr. Layton's [4]**  25/12
25/16 26/16 28/2
**Mr. Linekin [3]**  79/20
79/22 80/9
**Mr. Mayopoulos [16]**
61/2 61/4 61/23 62/11
62/17 63/14 64/12
66/18 68/5 68/12 72/11
73/14 74/22 75/2 75/7
75/12
**Mr. Mayopoulos's [1]**
67/8
**Mr. McFar [1]**  94/1
**Mr. Ross [1]**  56/18
**Mr. Rudy [8]**  86/19
87/6 87/17 87/21 88/1
88/15 88/19 88/22
**Mr. Satriano [11]**  41/11
42/11 42/19 46/13
46/21 47/19 47/25
48/10 48/24 51/4 76/10
**Mr. Stegman [18]**
121/11 121/12 121/17
121/20 122/1 122/3
122/4 124/11 125/4
125/5 125/13 131/4
131/17 131/18 133/7
133/7 134/12 135/11
**Mr. Stern [7]**  15/17
18/16 79/7 79/8 79/11
80/8 90/12
**Mr. Stern's [1]**  79/5
**Mr. Timothy [1]**  56/7
**Mr. Ugoletti [5]**  36/2
36/5 38/15 38/16
134/16
**Mr. Ugoletti's [1]**  36/3
**Mr. Zagar [3]**  52/11
52/18 53/9
**Mrs. [1]**  87/16
**Mrs. Miller [1]**  87/16
**Ms. [74]**  47/11 47/25
48/1 51/5 56/17 57/3
57/15 57/20 58/7 58/11
58/20 59/7 59/18 60/7
60/19 60/20 61/23
62/17 64/7 64/11 64/19
66/12 66/18 66/22 67/1
67/6 67/9 67/14 67/17
68/4 68/12 68/14 69/19
69/24 69/25 70/14 71/1
71/20 71/22 72/11
72/16 72/23 72/25 73/7
73/8 74/17 75/6 75/12
75/12 75/17 76/15 82/2
82/8 82/16 83/13 87/21
89/12 89/18 91/16 92/8
93/6 93/19 96/2 97/3
97/14 97/24 98/3 98/9
98/17 99/16 100/7
102/18 121/21 121/23
**Ms. McFarland [28]**

64/19 66/12 66/22 67/1
69/19 69/24 71/20
71/22 75/6 75/12 75/17
76/15 93/6 93/19 96/2
97/3 97/14 97/24 98/3
98/9 98/17 99/16 100/7
102/18
**Ms. McFarland's [10]**
64/7 67/9 68/14 69/25
70/14 71/1 72/16 74/17
91/16 92/8
**Ms. Miller [5]**  82/2 82/8
82/16 83/13 87/21
**Ms. Miller's [3]**  89/12
121/21 121/23
**Ms. Naa [1]**  56/17
**Ms. Tagoe [21]**  57/3
57/20 58/7 58/11 59/7
59/18 60/7 60/19 60/20
61/23 62/17 64/11
66/18 67/14 67/17 68/4
68/12 72/11 72/23
72/25 75/12
**Ms. Tagoe's [5]**  57/15
58/20 67/6 73/7 73/8
**much [18]**  6/9 11/7
13/14 53/2 56/25 61/14
77/19 78/3 82/15 86/7
86/9 86/11 86/19 87/11
103/24 113/8 130/18
135/6
**multi [1]**  51/8
**multi-hundred-page
[1]**  51/8
**multilayer [1]**  122/14
123/5 129/22
**multiple [8]**  108/6
108/9 108/12 109/1
114/18 115/1 115/9
127/23
**must [11]**  42/7 42/15
42/16 51/11 102/22
112/22 113/1 113/22
116/22 117/9 127/3
**my [42]**  6/11 6/14 6/15
6/15 6/16 6/18 6/19
6/21 7/6 12/7 15/16
19/12 32/3 35/19 38/21
48/8 49/24 54/3 54/19
57/23 61/7 62/18 62/24
65/18 66/4 66/4 70/11
70/18 71/4 71/5 76/2
83/10 83/11 88/4 88/4
88/14 89/15 90/8 94/23
101/11 126/20 131/20
**myself [2]**  7/1 54/9

**N**

**Naa [1]**  56/17
**nail [1]**  102/14
**name [2]**  32/3 128/10
**narrow [2]**  33/14
124/16
**nature [2]**  43/25 45/10
**near [1]**  41/3
**necessarily [4]**  8/3
51/18 108/11 114/25

necessary [2]  42/24
98/5
**need [19]**  6/25 11/16
13/21 26/3 40/24 53/22
55/22 86/12 86/12
105/17 129/15 130/17
134/6 135/4 135/16
136/4 136/15 137/24
138/14
**needing [1]**  134/20
**needs [3]**  22/21 73/12
123/23
**negligent [1]**  53/24
**negotiating [1]**  72/15
**neither [3]**  25/3 30/25
123/16
**net [37]**  9/16 11/6 11/7
11/17 15/17 16/19 17/5
17/12 17/17 18/5 18/13
18/21 23/4 23/19 25/7
30/12 31/24 32/10
32/11 50/13 57/11
57/22 58/4 58/8 58/17
58/21 60/9 74/19 76/1
76/4 80/14 85/13 92/23
94/1 99/11 112/20
138/21
**neutral [1]**  117/11
**never [13]**  11/6 23/10
26/14 31/25 32/1 32/18
33/2 33/7 59/3 99/16
126/9 126/12 127/6
**nevertheless [1]**  5/25
**new [8]**  1/17 2/4 2/14
13/10 14/16 31/15
40/12 95/21
**New York [2]**  31/15
95/21
**news [6]**  10/8 19/8
91/17 92/22 96/18
96/19
**next [13]**  6/3 14/9 61/1
70/25 83/8 84/11 91/8
116/12 116/19 117/25
118/3 119/18 136/7
**nice [3]**  5/24 12/12
129/23
**Nicholas [2]**  76/7
76/14
**nightmare [1]**  12/24
**nit [1]**  62/22
**nit-picking [1]**  62/22
**no [111]**  1/4 1/10 4/6
11/13 11/13 11/19
14/20 15/7 16/20 17/9
17/15 17/25 18/9 18/23
23/16 24/10 26/14
26/19 26/21 26/22
26/24 27/14 27/17
32/14 37/7 40/7 41/5
41/6 41/14 41/18 41/22
42/3 42/21 42/23 43/2
43/13 43/20 44/23 45/4
45/22 50/6 51/9 55/25
56/11 56/14 56/21 57/4
58/22 59/16 61/25
63/14 64/1 66/12 66/12
75/6 76/15 79/19 79/20

**N**

no... [53] 80/4 80/4
80/11 80/12 80/12 81/2
81/2 81/11 81/11 81/14
81/18 83/14 83/14
83/17 83/20 83/22 84/3
84/21 86/2 87/6 87/23
88/7 89/5 91/1 91/13
94/8 94/13 95/14 95/24
96/13 96/19 97/11
97/15 97/17 98/4 99/10
99/25 99/25 101/7
106/10 110/9 117/14
119/11 121/4 124/2
124/10 127/9 130/2
130/16 130/20 130/21
133/6 135/7
No. [1] 64/9
No. 1 [1] 64/9
nominal [1] 111/23
non [8] 18/5 29/10 50/7
82/14 100/13 101/22
101/24 109/24
non-event [1] 18/5
non-hearsay [3] 29/10
100/13 101/24
non-issue [1] 50/7
non-legalese [1]
109/24
non-Treasury [1]
82/14
none [3] 62/13 62/14
93/24
nonpublic [1] 93/21
noon [2] 137/10 137/19
normally [1] 109/5
Nos [1] 56/10
not [224]
not-so-distant [2] 65/8
75/21
notable [1] 115/5
note [13] 14/23 31/4
31/5 32/16 38/20 78/14
84/12 106/15 106/16
106/18 107/9 107/10
137/15
noted [3] 90/23 102/18
138/13
nothing [12] 10/8 16/6
16/23 17/14 18/17 19/2
24/1 24/3 39/8 79/14
88/7 95/25
notice [2] 26/20 32/9
notifying [1] 139/2
noting [1] 31/14
notion [6] 11/7 18/22
53/8 108/1 109/14
129/21
notwithstanding [1]
132/22
now [45] 9/10 14/1
17/1 22/14 24/10 26/12
31/4 33/4 37/17 41/17
44/19 49/25 52/14
53/15 54/7 56/21 59/6
62/10 64/6 65/1 65/13
68/11 70/25 72/25
74/16 79/17 80/15

91/20 93/11 97/1 98/22
102/10 118/22 121/7
122/7 123/10 125/21
125/24 126/5 134/22
135/5 138/12
Nowhere [2] 93/4 93/5
nuance [1] 53/22
number [6] 41/20
88/13 106/3 111/19
119/21 120/6
numbering [1] 87/16
numbers [6] 35/22
44/22 50/22 50/23 55/2
56/7
numeral [1] 106/9
NW [4] 1/17 2/4 3/6
3/13
NY [1] 2/14

**O**

object [6] 60/3 60/17
80/7 83/19 87/3 138/9
objected [9] 65/14
70/12 79/21 80/3 81/20
83/17 85/15 85/20
87/24
objecting [3] 65/15
72/5 72/7
objection [15] 27/25
60/23 79/8 81/13 83/15
83/21 84/3 88/4 89/15
91/21 98/23 114/11
120/25 126/10 126/11
objectionable [2]
60/11 80/16
objections [3] 32/23
59/21 78/1
objective [5] 84/18
84/18 85/7 85/13 85/21
objectively [1] 116/23
objectives [5] 109/16
112/13 112/15 113/3
114/11
obligation [5] 46/19
50/16 93/13 95/5
125/15
obligations [5] 50/14
93/17 112/16 113/3
114/11
observed [1] 14/11
obviate [1] 77/22
obviously [2] 37/14
51/7
occurred [2] 112/21
115/6
occurring [1] 65/12
October [2] 22/17
86/15
off [12] 32/6 46/22
46/24 46/24 47/15 51/2
63/20 73/21 94/22
96/18 137/6 137/9
offer [13] 10/12 16/12
17/9 26/12 27/16 31/1
34/20 39/11 60/7 60/21
60/21 74/7 83/18
offered [14] 10/13 26/5

26/9 28/5 28/11 28/23
28/6 29/10 43/2 76/10
97/11 99/6 99/14
132/14
offering [13] 9/10
11/24 23/14 24/24 27/6
27/10 27/11 27/21
29/17 98/24 98/25
102/4 102/6
offers [1] 58/23
Office [1] 7/4
officer [4] 55/19 66/22
67/24 133/22
officer's [2] 55/9 55/16
officers [3] 55/6 55/13
55/18
official [3] 3/12 124/1
131/18
officials [4] 58/10
62/13 124/22 135/17
often [2] 115/2 128/15
oh [10] 12/1 29/24
37/23 65/22 76/2 82/22
95/7 116/3 127/21
128/7
OIG [1] 128/25
okay [36] 4/20 5/14
5/23 8/6 8/14 8/19
19/13 22/19 30/21
41/25 42/1 42/2 77/1
77/8 78/4 78/7 94/15
103/20 103/25 105/18
106/6 106/12 106/12
106/13 112/7 117/25
119/17 119/24 120/12
122/20 128/13 135/12
136/16 138/16 138/17
138/24
old [2] 10/8 120/1
omitted [1] 38/22
omnibus [12] 8/2 24/9
41/18 56/6 56/10 56/11
57/19 64/8 72/6 74/24
91/13 106/5
once [6] 33/8 43/22
69/12 84/24 101/8
113/23
one [80] 8/5 9/19 10/21
12/3 12/4 12/22 13/3
13/25 14/2 15/9 15/17
17/3 22/23 22/18 24/21
25/4 26/9 26/15 27/4
27/5 28/1 29/11 30/5
31/11 34/8 34/9 35/19
36/4 36/8 38/10 39/14
40/12 40/17 51/12 53/5
59/17 60/9 65/16 66/12
69/21 70/7 71/6 76/1
80/5 81/15 82/5 82/22
85/7 85/17 87/15 87/17
88/18 90/20 93/2
101/13 103/16 105/1
105/11 105/20 108/6
108/12 108/15 108/21
110/1 110/11 117/25
118/2 118/2 118/3
119/5 120/2 123/16
124/22 132/8 134/8

137/25 137/25
one's [1] 68/20
only [23] 11/12 13/10
31/17 33/21 38/7 42/9
45/17 45/23 58/23
68/12 73/4 93/2 94/2
95/5 95/25 98/15 100/6
100/22 122/12 123/2
126/6 138/1 138/15
opened [1] 90/7
opening [5] 52/12
52/19 72/19 74/14 82/4
94/18 103/24 123/7
137/1
openings [2] 136/25
137/18
opine [1] 19/3
opining [1] 17/4
100/24
opinion [34] 11/25
11/25 12/5 14/4 15/19
16/9 16/22 17/11 18/10
18/16 23/3 23/25 32/24
32/25 33/1 33/21 33/23
34/17 34/18 34/20
34/25 35/2 35/14 39/4
39/6 57/12 59/1 59/2
85/5 86/15 86/16 91/5
93/6 93/24
opinions [9] 12/6
23/15 24/4 37/11 56/19
57/11 68/13 94/2 95/4
opp [2] 66/20 69/6
opponent [1] 129/5
opposed [2] 11/8
107/12
opposing [5] 16/21
34/1 100/6 100/7 103/1
opposite [3] 11/5 18/7
80/1
opposition [7] 37/12
58/9 59/6 62/10 66/19
68/3 69/1
optimistic [1] 103/22
option [3] 108/12
108/12 114/23
options [5] 108/7
108/12 109/1 115/2
115/12
oral [4] 121/16 124/11
135/24 135/25
orally [2] 6/4 6/5
order [11] 7/17 7/22
8/3 8/3 9/4 76/25 78/11
80/8 89/6 90/16 90/18
organization [1] 42/16
origin [2] 41/15 52/3
original [3] 113/18
114/2 117/19
originated [1] 41/10
other [35] 8/15 13/4
15/9 20/15 26/2 32/6
39/14 44/22 59/17
71/19 72/16 79/10
79/11 87/10 93/1 99/6
99/14 100/15 103/12
107/19 111/12 117/16

137/25 137/25
one's [1] 68/20

137/25 137/25
others [5] 20/11 20/25
21/4 21/25 69/15
otherwise [11] 11/4
33/18 33/20 60/19 81/1
86/23 91/4 92/12
100/12 104/16 133/13
our [79] 7/25 8/2 8/4
8/5 8/24 10/18 10/22
11/22 14/9 15/2 17/2
18/24 19/11 23/1 23/11
23/12 26/22 34/1 35/18
37/11 38/7 39/10 40/7
44/18 44/25 47/12 49/7
50/10 50/13 50/15
50/15 50/16 50/18
59/19 59/24 64/25 66/5
67/16 68/23 72/5 72/9
72/10 74/9 74/23 77/4
77/12 80/20 82/10
82/11 89/9 90/23 91/21
94/18 102/15 103/11
103/11 104/24 104/25
105/8 105/19 108/25
109/8 111/24 112/17
113/5 116/15 119/2
119/13 119/19 120/7
122/21 123/7 123/7
124/3 124/4 130/9
130/20 134/17 137/25
out [50] 6/3 10/3 11/21
12/6 15/6 25/3 36/6
45/1 49/16 51/6 52/1
57/25 58/6 63/6 64/16
68/11 69/8 69/9 70/4
72/10 75/5 78/6 80/20
81/8 81/9 81/10 82/1
82/7 84/1 84/5 86/13
86/16 87/17 88/25 89/9
89/25 90/1 90/24 91/4
102/15 104/1 106/15
112/24 121/11 121/16
122/1 123/11 125/13
132/14 135/9
outcome [1] 88/3
outlet [1] 99/8
outlets [1] 99/10
outliers [1] 22/1
outline [1] 19/11
outlined [1] 44/17
outside [1] 115/7
outweighs [3] 33/23
33/24 101/4
over [15] 7/4 10/25
13/4 19/1 28/23 50/14
50/15 60/12 65/23
70/19 88/23 91/3 111/2
126/10 126/11
overall [1] 60/24
overlapping [1] 56/12
overrule [2] 91/21
98/23
overruled [4] 32/24
81/13 130/5 130/6

**oversaw** [1] 59/7
**overseeing** [1] 47/18
**oversees** [2] 55/20 55/21
**overview** [2] 121/20 135/23
**own** [12] 10/21 11/20 18/4 46/22 46/23 51/6 58/10 70/11 73/16 100/4 115/20 138/14

**P**

**P.A** [1] 2/16
**p.m** [5] 1/6 2/2 76/23 76/23 139/11
**PA** [1] 2/9
**page** [30] 19/11 19/11 31/18 32/2 37/12 51/8 51/12 51/14 61/5 61/8 64/18 65/19 65/21 65/23 71/14 71/15 74/14 78/9 79/19 81/14 82/21 83/13 85/10 88/1 88/11 88/12 97/20 98/8 106/9 135/5
**pages** [5] 57/20 60/12 61/12 68/25 69/6
**paper** [1] 79/5
**papers** [8] 13/15 14/21 14/22 89/9 102/15 111/25 113/5 116/16
**paradigmatic** [2] 44/15 49/5
**paragraph** [6] 70/25 79/12 79/16 109/13 110/4 110/11
**paragraphs** [1] 39/21
**parameters** [1] 89/7
**paraphrase** [1] 97/24
**paraphrasing** [1] 73/9
**Pardon** [2] 94/6 95/9
**parrot** [1] 18/12
**parroted** [1] 82/17
**parroting** [1] 90/17
**parrots** [1] 19/9
**parse** [1] 13/21
**part** [22] 13/3 14/8 17/1 25/6 25/12 32/25 56/23 58/3 65/16 65/18 66/4 71/4 75/25 76/2 76/16 86/1 90/11 97/22 107/9 107/12 119/10 124/2
**participants** [2] 29/2 29/8
**participants'** [1] 14/13
**participate** [1] 56/22
**particular** [5] 8/9 12/22 59/19 90/25 108/10
**particularly** [1] 54/25
**parties** [14] 53/6 56/21 59/20 59/25 60/2 64/22 105/6 105/16 113/15 113/16 118/11 118/12 118/12 120/20
**parties'** [5] 113/23 114/2 116/23 118/9 119/1

**partner** [3] 15/17 54/4 90/8
**parts** [6] 14/7 44/20 44/22 131/24 132/3 132/4
**party** [8] 4/8 30/25 100/5 100/6 100/7 115/3 129/5 129/13
**pass** [1] 89/1
**passage** [5] 83/13 83/20 97/19 97/22 98/7
**passages** [2] 80/15 97/1
**passed** [1] 29/22
**passing** [1] 77/7
**past** [3] 113/12 118/9 136/11
**path** [1] 75/19
**Pattison** [2] 49/8 49/16
**payment** [1] 34/11
**payments** [1] 61/17
**peculiar** [2] 85/23 85/24
**penalties** [1] 49/20
**pending** [2] 6/1 60/1
**people** [15] 9/6 11/9 36/18 52/2 54/8 61/10 61/19 61/21 62/4 62/7 72/23 73/7 83/23 83/24 134/25
**perceived** [2] 59/4 59/15
**percent** [4] 58/19 87/8 102/25 103/5
**perception** [1] 59/3
**perfectly** [3] 54/4 82/17 83/11
**perhaps** [4] 26/16 86/21 88/9 88/9
**period** [3] 50/11 50/11 57/24
**periodic** [2] 138/1 138/5
**permissible** [2] 78/13 80/9
**permit** [1] 29/11
**permits** [1] 37/4
**permitted** [5] 24/21 33/6 36/25 40/1 54/5
**perpetuity** [1] 80/2
**persist** [1] 83/1
**person** [6] 28/8 41/7 48/21 133/20 135/6 135/15
**personal** [16] 42/24 57/5 57/9 58/10 58/21 58/22 59/8 61/25 62/19 66/13 66/23 67/5 67/10 73/16 135/13 135/16
**persons** [2] 41/7 128/4
**perspective** [1] 99/17
**pertains** [1] 88/19
**Peters** [1] 128/23
**phone** [3] 81/22 81/24 86/9
**phones** [2] 86/7 86/13
**pick** [2] 63/6 137/15

62/22
**piece** [6] 31/15 67/20 72/16 79/4 79/21 87/14
**pieces** [6] 46/6 77/5 78/17 78/24 79/17 84/8
**pincite** [2] 48/18 114/8
**place** [5] 65/18 66/3 71/4 110/17 121/24
**places** [1] 110/16
**placing** [1] 22/10
**plain** [1] 106/18
**plainly** [1] 47/9
**plaintiff** [1] 57/9
**Plaintiff's** [1] 120/11
**Plaintiff's Exhibit** [1] 120/11
**plaintiffs** [84] 1/4 1/16 2/2 4/12 4/17 4/19 4/22 4/24 5/1 5/3 5/5 5/7 5/9 7/11 7/19 13/10 13/25 19/16 21/21 21/24 22/3 22/7 24/8 29/4 36/23 40/4 44/19 45/22 46/3 49/10 52/19 53/1 53/13 55/4 56/5 56/15 60/10 60/13 60/15 60/17 64/13 66/11 66/17 67/12 68/6 68/7 69/1 69/9 73/4 75/8 77/3 77/5 86/5 89/1 89/3 89/11 89/14 89/19 90/3 91/11 91/15 101/14 102/10 103/15 106/21 107/12 110/7 111/16 115/15 117/23 119/10 119/25 120/3 122/11 123/1 123/13 125/2 125/7 125/15 125/18 126/5 129/18 129/20 129/24
**plaintiffs'** [25] 6/1 10/5 12/14 16/2 24/9 28/25 40/6 41/18 56/6 56/10 56/14 57/18 64/10 66/20 72/19 74/14 85/8 86/17 88/6 91/13 106/22 110/5 110/13 123/19 124/6
**plan** [2] 9/4 138/14
**plausible** [2] 9/19 42/10
**play** [2] 15/6 60/15
**played** [1] 30/16
**players** [1] 29/9
**playing** [1] 60/18
**please** [4] 4/3 4/8 76/25 96/17
**pleases** [1] 104/16
**pleasure** [1] 12/9
**PLLC** [1] 1/17
**plot** [1] 25/23
**plural** [1] 118/12
**plus** [1] 87/8
**podium** [1] 77/7
**point** [60] 9/20 11/16 15/9 15/17 18/9 18/23 23/8 25/21 26/7 27/4

40/18 45/24 50/4 53/1 58/6 59/17 64/2 64/13 65/8 68/11 68/15 68/16 68/20 69/17 69/18 71/25 74/12 80/20 84/12 86/13 95/3 107/6 107/8 107/16 107/17 108/10 108/13 108/25 109/8 109/12 109/23 109/25 110/16 118/2 122/7 129/23 131/11 131/23 132/5 132/7 132/16 133/8 133/13 134/8 135/21 135/25
**pointed** [4] 21/22 87/17 115/12 115/15
**pointing** [1] 82/7
**points** [8] 26/14 29/13 49/16 52/14 66/16 105/24 108/5 121/7
**police** [2] 133/21 133/22
**PORTER** [2] 3/5 5/22
**portion** [9] 50/20 65/13 65/15 66/9 70/14 75/14 75/22 87/20 110/4
**portions** [6] 45/1 46/5 85/15 89/10 97/2 97/23
**posed** [1] 112/25
**position** [8] 42/21 64/10 68/23 110/6 110/10 110/12 112/18 125/22
**positions** [2] 72/10 113/18
**positive** [1] 65/11
**possessive** [1] 118/13
**possibility** [5] 24/17 61/16 65/7 82/13 93/16
**possible** [3] 61/15 103/24 105/7
**possibly** [1] 39/4
**post** [7] 32/9 32/11 91/18 95/22 98/7 98/10 100/17
**post-date** [1] 32/11
**post-dated** [1] 32/9
**potential** [7] 20/13 25/8 42/9 44/2 46/25 76/13 85/21
**potentially** [4] 50/2 75/20 100/12 107/3
**practice** [1] 45/8
**pre** [6] 18/21 19/8 105/14 111/18 134/13 134/15
**pre-dated** [1] 19/8
**pre-meeting** [2] 134/13 134/15
**precious** [1] 87/4
**precisely** [2] 73/11 74/22
**preclude** [4] 69/2 74/23 75/15 75/23
**precluded** [2] 27/6 27/21
**predictions** [1] 51/19

**preference** [1] 7/18
**PREFERRED** [3] 1/10 4/7 50/17
**prejudgment** [1] 105/2
**prejudice** [2] 84/21 101/3
**prejudicial** [10] 30/10 33/23 33/24 34/4 34/15 37/5 37/13 38/24 39/1 92/4
**preliminaries** [1] 8/15
**preparation** [1] 44/1
**prepare** [1] 49/19
**prepared** [1] 44/2
**preposterous** [3] 63/6 64/4 73/11
**present** [7] 6/4 6/6 7/20 9/4 30/19 119/19 138/9
**presentation** [1] 7/17
**presented** [5] 12/16 29/19 29/20 35/1 111/2
**presenting** [3] 56/6 56/9 77/12
**preserve** [3] 61/14 79/25 120/25
**preserving** [2] 115/18 115/23
**presiding** [1] 4/3
**press** [2] 97/17 98/13
**presumed** [1] 84/20
**presumption** [1] 135/17
**pretend** [1] 133/25
**pretext** [1] 29/6
**pretrial** [3] 1/13 59/24 130/4
**pretty** [2] 87/11 128/21
**prevent** [2] 39/9 80/25
**preview** [2] 7/22 60/22
**previewed** [1] 112/3
**previewing** [1] 60/6
**previous** [2] 121/21 121/23
**previously** [8] 16/25 83/12 84/6 94/17 110/2 120/16 120/23 122/11
**price** [4] 15/12 81/18 83/11 87/23
**prices** [1] 14/5
**primarily** [1] 19/16
**principal** [4] 10/5 10/6 18/9 40/20
**principle** [1] 48/19
**prior** [23] 13/23 16/9 19/1 31/8 32/17 32/19 33/3 33/7 38/8 68/9 75/17 76/11 84/9 84/25 91/5 91/20 98/22 107/1 107/19 109/9 110/9 119/13 123/8
**private** [4] 53/4 53/5 53/6 53/12
**private-label** [1] 53/4
**probably** [5] 7/5 53/22 66/6 71/5 81/22

**P**

**probative [16]** 29/7
33/22 34/16 35/1 37/5
37/13 38/24 39/2 39/15
39/21 73/2 75/16 75/24
76/3 101/4 125/1
**problem [10]** 25/23
40/23 42/5 43/15 86/25
89/25 90/21 91/2
115/14 128/15
**problematic [1]** 119/12
**problems [2]** 108/16
108/21
**proceed [1]** 33/2
**proceeded [1]** 25/18
**proceeding [2]** 91/20
98/22
**proceedings [4]** 1/13
3/16 139/11 140/4
**process [14]** 31/3
31/11 31/24 32/8 41/15
46/23 47/5 49/17 55/21
56/23 57/5 72/14 72/20
73/3
**processes [1]** 48/25
**produced [1]** 3/16
**product [1]** 70/11
**professional [1]**
111/20
**professor [2]** 54/19
137/25
**proffered [2]** 18/1
95/24
**profitability [3]** 65/2
75/19 93/23
**profits [3]** 34/10 65/3
80/2
**program [1]** 77/4
**prohibited [2]** 23/13
23/14
**projected [2]** 58/2
58/18
**projections [7]** 57/25
59/8 59/10 59/13 59/15
67/8 93/22
**projector [3]** 70/11
85/4 85/11
**proper [3]** 32/24 33/11
60/15
**properly [3]** 14/10
35/24 60/25
**proponent [1]** 33/21
**proposal [1]** 104/12
**propose [1]** 105/13
**proposed [15]** 81/7
86/22 106/21 106/21
107/10 107/15 107/18
107/20 107/24 108/2
108/4 108/24 111/1
112/23 119/11
**proposition [1]** 127/8
**prosecuted [3]** 44/4
44/5 44/11
**prosecution [1]** 46/25
**protect [1]** 54/13
**prove [5]** 30/7 39/4
53/16 53/18 98/16
**proves [1]** 47/16

22/9
**provided [8]** 46/3
64/20 94/17 116/18
121/20 131/9 135/23
135/23
**provides [1]** 117/7
**providing [1]** 18/18
**provision [2]** 52/25
53/3 53/11 54/11
**provisions [1]** 91/16
**Prussia [1]** 2/9
**PSLRA [1]** 53/3
**PSPA [3]** 61/15 61/18
61/20
**PSPAs [3]** 24/18
110/21 134/21
**public [41]** 22/5 45/13
120/24 121/2 121/14
122/13 122/15 122/16
122/19 122/19 123/15
123/18 123/19 123/25
124/7 124/12 125/14
127/4 127/10 128/5
128/6 128/20 129/1
129/4 129/7 130/22
130/25 131/3 131/4
131/5 131/6 131/12
131/15 132/9 132/16
133/5 133/11 134/23
135/9 135/17 136/2
**public-records [7]**
122/13 123/15 128/6
131/3 131/12 132/16
135/9
**publicly [1]** 45/12
**published [3]** 92/16
99/7 99/10
**PURCHASE [3]** 1/10
4/7 50/17
**purport [1]** 97/25
**purported [2]** 13/11
97/3
**purportedly [2]** 13/10
97/4
**purpose [20]** 9/11 9/12
10/11 10/13 10/14
10/15 15/20 21/14 28/6
29/10 56/20 57/7 58/15
60/9 99/6 99/14 100/13
101/24 113/23 134/3
**purposes [7]** 18/8 33/5
57/6 58/11 92/14 99/24
110/22
**put [15]** 45/25 68/6
68/10 68/12 68/13 70/9
73/22 78/10 84/2 85/3
87/18 93/1 110/24
120/17 130/3
**puts [1]** 81/9
**putting [1]** 57/25
**PX [2]** 11/22 120/11
**PX205 [5]** 119/21 120/3
120/19 134/14 135/3
**PX584 [1]** 134/17

**Q**

**Qs [2]** 47/8 51/12

qualified [12] 11/10
42/8 42/13 42/14 42/19
47/23 47/24 48/11
48/12 48/13 48/20 49/2
**qualifies [1]** 43/9
**qualify [6]** 40/17 40/21
40/24 43/6 43/12 50/3
**qualitative [2]** 21/6
23/22
**quantitative [6]** 17/10
17/15 18/23 18/24 21/5
24/2
**quarterly [1]** 45/14
**quasi [1]** 34/23
**quasi-experts [1]**
34/23
**question [16]** 33/10
33/14 38/11 60/24
70/15 83/2 83/7 83/9
89/4 89/16 96/19
101/19 114/20 117/9
127/12 135/7
**questioner [6]** 97/2
97/13 97/22 98/1 98/9
98/19
**questions [6]** 28/13
73/18 80/21 92/10
101/6 101/18
**quick [2]** 137/14
137/16
**quickly [6]** 18/15 68/2
68/19 68/22 87/24
118/4
**quiet [1]** 83/23
**quite [3]** 9/5 51/23 56/8
**quote [10]** 55/10 79/23
97/3 97/14 97/14 97/18
98/2 98/2 98/4 99/21
**quoted [3]** 79/16 82/24
99/21
**quotes [3]** 92/15 97/8
98/16
**quoting [5]** 25/12
97/25 133/20 133/20
133/21

**R**

**Radnor [1]** 2/9
**raise [3]** 59/18 66/20
**raised [2]** 137/22
138/21
**Ramer [3]** 1/16 4/22
24/7
**rank [1]** 34/5
**rarely [1]** 124/16
**rate [1]** 58/5
**rather [5]** 24/25 103/19
108/16 112/25 113/16
**rationale [3]** 10/23
16/11 16/12
**rationally [2]** 59/3 67/4
**RBC [2]** 21/3 21/25
**re [3]** 1/9 4/6 116/17
117/20 120/1
**re-tread [1]** 116/17
**re-treading [1]** 120/1
**re-trial [1]** 117/20
**reach [1]** 111/18

**reaction [33]** 57/21
57/24 58/7 58/12 58/13
61/6 61/7 62/18 62/20
62/24 64/20 65/18 66/4
66/25 67/1 67/4 67/7
67/8 67/10 69/2 69/21
69/24 70/15 70/18 71/4
72/6 72/10 72/25 73/12
74/18 75/25 76/2 76/16
**reaction-type [1]** 69/2
**reactions [2]** 20/12
56/19 58/10 71/12
**read [17]** 10/21 12/17
25/15 25/18 29/16 32/1
34/6 34/6 35/13 73/6
88/10 92/9 92/22 93/4
97/2 101/19 101/23
**readily [1]** 47/16
**reading [6]** 35/5 35/6
39/12 97/7 97/8 97/23
**readout [1]** 47/3
**reads [2]** 97/13 98/2
**ready [2]** 33/2 138/12
**real [1]** 37/7
**really [17]** 13/22 18/11
29/6 29/23 34/22 38/12
39/20 58/13 59/12
62/21 63/5 84/21
107/22 111/21 113/7
115/24 130/12
**Realtime [1]** 3/12
**reason [15]** 9/18 11/19
31/17 39/14 39/20 57/5
74/6 75/10 75/22 95/25
98/15 100/15 100/22
132/11 135/18
**reasonable [24]** 17/19
31/14 34/18 39/7 85/14
92/21 106/25 107/5
108/7 108/13 108/17
108/19 108/20 109/1
110/18 110/23 111/7
114/1 114/18 114/24
115/2 115/9 116/23
119/1
**reasonableness [9]**
107/4 108/10 109/15
110/12 111/7 112/8
113/1 114/13 119/3
**reasonably [4]** 29/15
29/16 93/15 105/10
**reasoning [1]** 22/13
**reasons [9]** 34/19 37/2
61/24 66/13 88/18
102/15 104/2 117/18
132/15
**reassured [11]** 17/6
17/12 17/12 17/16
17/21 17/24 18/12
18/20 23/4 23/18 23/20
**rebut [1]** 138/6
**rebuttal [7]** 9/8 23/8
103/14 138/4 138/4
138/15 139/5
**recall [6]** 8/19 70/20
79/7 81/21 106/1
106/14

**recalls [2]** 24/20 48/5
**recapitalize [2]** 66/8
71/8
**receiving [1]** 87/8
**recess [4]** 76/22 76/23
137/9 139/10
**recognize [1]** 90/14
**recognized [2]** 48/12
85/7
**recognizing [1]** 86/22
**recollection [4]** 94/23
97/16 98/12 125/10
**recollections [1]**
135/12
**reconsider [1]** 125/23
**reconsideration [5]**
77/17 82/24 86/18
126/3 126/21
**reconsidering [1]**
126/20
**record [50]** 4/10 35/6
39/12 41/2 43/9 43/17
44/21 45/6 45/8 45/22
45/23 48/21 85/19 88/5
88/8 120/24 121/2
121/14 122/15 122/16
122/19 122/20 123/25
124/8 124/12 126/14
126/18 126/19 129/1
129/4 129/8 130/22
130/25 131/4 131/5
131/6 131/15 131/24
133/5 134/23 134/24
136/2 137/6 137/7
137/8 137/15 137/21
138/13 139/3 140/3
**recorded [1]** 3/16
**recordkeeping [1]**
42/15
**records [22]** 40/22
40/25 42/12 43/6 44/13
44/16 48/14 122/13
123/15 123/18 123/20
125/14 127/4 128/5
128/6 128/20 131/3
131/12 132/9 132/16
133/22 135/9
**redactions [1]** 81/7
**redlining [1]** 89/24
**reduce [1]** 61/15
**reduced [1]** 16/10
**refer [1]** 19/6
**reference [5]** 26/13
39/6 46/7 55/11 84/6
**referenced [1]** 59/19
**references [1]** 108/1
**referencing [1]** 116/7
**referred [4]** 13/8 18/10
104/14 120/13
**referring [1]** 57/22
**refers [1]** 134/19
**reflect [1]** 20/9
**reflection [1]** 72/24
**reflects [1]** 126/19
**reform [1]** 53/4
**refresh [4]** 6/11 6/14
97/15 98/11
**refreshing [1]** 111/21

**refuge [1]** 11/24
**refute [2]** 123/7 124/4
**regard [1]** 16/23
**regarding [14]** 8/1
24/12 25/8 25/14 56/19
60/8 77/13 92/8 93/6
98/19 99/1 105/1
105/20 112/10
**regardless [1]** 68/15
**Registered [1]** 3/11
**regular [2]** 45/8 45/11
**regularly [2]** 44/16
45/7
**rehash [3]** 12/15 12/17
12/25
**rejected [1]** 27/13
**relate [1]** 60/14
**relating [2]** 91/17
122/3
**relationship [2]** 111/21
113/15
**relationships [1]** 20/2
**relayed [4]** 25/2 26/8
26/11 26/23
**release [1]** 47/8
**released [1]** 65/10
**relevance [5]** 93/11
95/4 99/25 99/25
102/13
**relevancy [2]** 91/23
92/7
**relevant [29]** 10/11
16/18 20/13 29/25
37/15 46/6 60/23 73/17
74/2 74/10 85/9 92/11
92/18 92/19 93/9 93/14
93/25 94/2 95/5 95/7
95/12 99/15 102/14
102/17 107/19 110/24
116/8 119/15 136/25
**reliability [7]** 16/22
18/19 44/11 44/12 50/8
51/21 124/20
**reliable [19]** 11/13
11/25 16/10 16/20
17/25 18/9 19/3 19/9
23/17 24/3 37/2 43/25
49/11 49/14 51/11
51/12 51/18 56/1 136/1
**reliably [3]** 9/11 11/2
17/23
**relied [18]** 27/15 27/18
31/25 32/15 35/3 35/4
35/4 36/24 38/12 38/14
38/18 38/19 39/7 41/8
43/1 92/25 93/5 93/8
**relief [1]** 18/17
**relies [1]** 9/21
**relieve [1]** 125/15
**rely [5]** 9/21 32/22
33/16 38/17 69/1
**relying [4]** 38/6 38/10
39/4 100/21
**remainder [1]** 103/11
**remained [1]** 81/18
87/24
**remains [1]** 81/11

**remedy [1]** 15/22
**remember [17]** 26/18
54/15 57/23 58/7 58/12
61/5 61/7 62/18 62/23
63/10 68/21 94/24
98/10 98/13 126/17
131/3 131/23
**remembered [1]** 93/2
**remembers [1]** 98/9
**remind [2]** 48/23 71/17
**reminding [1]** 84/17
**remotely [1]** 17/25
**repeated [3]** 52/17
53/9 90/12
**repeating [1]** 34/17
**rephrased [2]** 83/7
89/15
**replacing [1]** 58/5
**reply [8]** 53/2 53/14
73/4 73/10 86/21 88/6
91/7 124/5
**report [24]** 14/23 14/25
15/2 15/2 19/6 19/7
31/3 31/11 31/12 31/17
31/18 31/22 31/23 32/6
35/7 36/9 51/14 98/13
104/25 105/17 129/1
129/2 133/19 133/22
**reportedly [1]** 125/4
**reporter [5]** 3/11 3/11
3/12 3/12 76/19
**reports [46]** 10/20
18/11 19/1 20/9 20/10
20/15 20/17 20/19 21/8
21/17 21/22 22/6 23/2
23/24 27/7 30/2 30/3
30/14 30/16 30/25 31/2
31/6 32/19 32/22 33/3
33/8 33/11 33/16 34/3
34/5 34/7 34/23 35/3
35/4 35/6 35/7 35/12
35/13 36/6 36/8 36/17
38/20 39/5 39/15 39/17
93/2
**representation [3]**
13/11 14/1 14/2
**representative [1]**
85/23
**representatives [5]**
24/13 24/15 80/6 81/16
84/14
**represented [1]** 76/14
**representing [1]** 88/1
**Republic [1]** 96/20
**request [4]** 104/25
105/7 105/20 114/16
**requested [2]** 105/4
106/18
**requesting [1]** 116/12
**requests [1]** 112/14
**require [1]** 114/12
**required [2]** 47/9 53/25
54/1
**requirement [2]** 42/4
57/8
**requirements [3]** 42/10
42/17 42/22

55/8 55/15
**resembles [1]** 39/22
**reservation [1]** 69/7
**reserved [2]** 49/10 60/2
**reserving [1]** 139/4
**residual [8]** 43/10
44/14 49/6 49/9 49/18
123/15 124/14 124/16
**resist [1]** 64/5
**resolve [5]** 37/10 105/7
105/10 129/9 139/6
**resolved [3]** 103/19
103/23 126/14
**resort [1]** 11/24
**respect [18]** 8/25 9/9
17/2 24/4 26/7 29/22
30/1 35/17 36/23 37/16
59/18 66/17 66/21 68/4
85/25 86/3 86/17 113/8
**respectfully [3]** 63/2
120/24 127/1
**respective [1]** 99/7
**respond [5]** 12/7 19/12
52/12 52/13 138/22
**responding [2]** 56/11
79/12
**response [22]** 10/5
10/6 11/23 16/6 26/17
52/14 64/14 64/21
65/13 65/16 65/18 66/4
66/10 71/4 73/4 76/3
107/8 107/9 117/7
117/13 123/1 128/25
**responsible [1]** 47/4
**rest [7]** 33/6 45/12
73/18 86/24 103/10
111/24 138/9
**restored [3]** 9/15 9/22
16/19
**result [3]** 49/20 58/19
100/8
**results [2]** 27/20 47/12
**retreat [1]** 53/15
**retrospective [2]**
113/24 114/13
**Reuters [5]** 91/18
95/22 97/19 97/19
100/16
**reversal [2]** 54/15
76/13
**reverse [4]** 51/23 75/19
75/20 129/14
**reversed [1]** 54/14
**review [6]** 21/8 21/16
46/20 46/22 46/22 48/3
**reviewed [5]** 47/14
50/23 51/7 52/2 64/25
**reviewing [1]** 46/16
**revise [5]** 104/24
104/25 105/20 106/5
106/10
**revisit [2]** 86/3 119/19
**revisited [1]** 86/12
**revisiting [1]** 126/23
**rhetorical [1]** 38/10
**rhetorically [1]** 39/3
**right [57]** 21/6 22/22

33/1 36/20 38/5 40/3
49/22 51/18 52/8 65/25
70/17 70/24 71/2 71/10
71/24 72/2 72/16 77/11
77/15 77/24 78/12
78/22 79/4 79/13 82/9
83/6 83/20 85/6 91/8
102/3 102/9 102/9
102/10 103/12 104/5
105/3 110/13 111/9
111/13 115/10 117/2
118/7 118/18 118/21
120/9 120/21 128/17
130/8 134/5 134/6
134/7 136/13 136/7
**rights [4]** 60/3 69/8
78/19 113/25
**rigorous [1]** 49/5
**ripe [1]** 112/4
**rise [5]** 4/2 50/2 76/21
76/24 139/9
**risk [4]** 23/19 34/6
101/3 138/8
**risks [1]** 20/7
**RMR [2]** 140/2 140/8
**Road [1]** 2/9
**Robert [3]** 2/12 4/24
111/16
**Robert Kravetz [1]**
4/24
**robust [2]** 46/20 46/22
**role [1]** 30/16
**Roman [1]** 106/9
**room [3]** 3/14 62/6
64/2
**Ross [3]** 40/9 47/2
56/18
**Roudebush [1]** 128/9
**roughly [1]** 8/8
**rounds [1]** 26/25
**ROYCE [2]** 1/13 4/3
**Rudy [11]** 2/7 4/19
77/3 86/19 87/6 87/17
87/21 88/1 88/15 88/19
88/22
**rule [45]** 16/8 16/9
16/24 33/7 33/17 35/12
37/4 40/1 40/22 41/1
42/6 43/9 43/10 43/12
43/13 44/17 45/3 49/6
51/2 51/3 57/8 58/11
60/11 60/23 92/1 92/3
100/5 123/23 124/13
125/16 128/15 128/19
131/22 131/23 131/24
131/25 132/5 132/7
132/8 132/22 132/25
134/4 135/8 135/9
135/18
**Rule 801 [1]** 100/5
**ruled [27]** 10/10 10/13
16/7 28/8 32/18 33/7
40/11 70/3 70/6 71/21
79/1 79/2 79/3 79/8
81/3 81/12 82/8 82/23
82/25 83/12 85/8
101/15 101/16 110/21

**rules [4]** 60/4 60/6
60/20 100/5
**ruling [22]** 6/2 13/18
14/3 14/23 14/24 15/3
30/24 32/5 60/1 71/18
77/21 78/2 82/5 82/10
82/18 84/10 84/25
85/16 86/3 102/3
119/20 120/25
**rulings [3]** 6/3 86/10
107/19
**run [1]** 85/16
**running [1]** 101/12

**S**

**safe [6]** 50/3 50/4
52/24 53/2 53/11 54/11
**said [86]** 11/5 13/21
14/21 14/22 14/22
15/17 16/5 16/15 16/23
18/4 21/18 22/8 23/9
23/9 25/16 25/19 26/19
26/23 26/24 28/7 31/25
32/1 32/2 32/23 34/7
34/19 35/8 36/1 36/5
37/12 39/24 39/24
39/25 41/7 47/11 47/13
48/8 52/14 54/4 54/16
57/23 58/17 61/9 67/4
69/14 69/17 74/1 74/8
74/11 79/9 79/10 79/24
80/8 80/13 81/25 82/8
82/12 82/16 83/3 83/17
83/22 89/3 89/13 89/18
90/14 95/2 95/20 96/1
96/3 96/9 97/24 98/20
98/24 113/23 115/19
127/6 127/17 127/18
128/2 128/14 130/16
133/23 134/19
**Sam [2]** 5/2 30/13
**same [54]** 6/13 13/2
13/5 13/5 13/6 14/8
21/14 22/6 26/4 27/8
27/17 27/20 27/25
27/25 47/21 54/6 56/13
64/15 66/10 66/16
66/19 67/15 69/7 70/8
71/20 71/21 72/3 72/18
73/14 73/14 75/13 83/9
86/11 87/9 87/9 87/19
89/2 89/4 89/12 89/19
89/21 90/2 97/19 99/4
106/7 107/13 110/16
113/24 119/12 130/6
130/10 134/24 135/2
135/5
**sample [1]** 85/23
**Samuel [1]** 2/2
**sat [2]** 29/16 51/5
**satisfy [2]** 42/10 127/3
**Satriano [13]** 41/11
42/11 42/19 46/13
46/21 47/19 47/25
48/10 48/24 51/4 76/8
76/10 76/14

S

**save [2]** 6/7 37/18
**saw [1]** 23/18
**say [70]** 5/24 9/21 10/6
11/11 11/25 12/24
13/25 15/18 18/11
18/13 19/1 21/22 22/2
23/17 26/20 26/21
26/22 28/5 28/18 35/3
38/18 38/19 39/22
40/18 43/7 45/22 46/8
49/10 51/17 53/17 54/5
54/20 57/24 59/8 62/19
63/7 72/23 74/10 77/16
79/9 79/11 79/24 80/17
82/2 82/6 82/22 85/22
86/20 89/16 90/6 96/16
100/2 100/21 101/18
101/20 105/9 109/8
110/7 111/19 125/8
125/11 126/4 127/11
129/18 132/19 132/21
133/5 133/6 135/5
138/12
**saying [28]** 18/15
23/22 25/20 25/21
31/16 33/15 33/16
34/20 34/21 34/22 38/4
39/7 39/10 51/4 62/20
62/24 62/25 69/1 71/20
80/11 83/10 84/3 93/19
102/10 103/3 129/17
134/25 135/15
**says [37]** 10/23 11/21
23/21 31/1 31/18 36/12
37/8 42/6 51/10 51/13
58/7 58/11 61/7 61/13
62/2 62/3 62/23 64/24
65/7 66/3 70/12 71/3
73/6 74/24 75/25 79/23
83/20 87/7 98/10 98/12
101/24 118/8 123/23
131/1 132/22 134/19
135/21
**scenario [1]** 74/12
**scenarios [2]** 58/1
58/19
**schedule [2]** 31/22
138/14
**SCHILLER [1]** 2/3
**SCHOLER [1]** 3/6
**school [1]** 54/19
**scienter [3]** 53/16
53/18 53/25
**scope [2]** 77/13 80/9
**screen [2]** 87/19
130/25
**sea [1]** 10/16
**search [1]** 30/4
**seated [2]** 4/4 76/25
**SEC [28]** 21/11 40/9
40/14 40/21 41/13
42/21 43/18 43/24
44/15 44/20 44/22
44/25 45/2 45/10 45/19
46/10 47/14 49/13
49/19 51/11 51/22
52/20 52/21 53/25

124/17
**SEC's [1]** 45/13
**second [26]** 25/1 26/7
36/10 43/8 66/9 86/7
86/10 86/11 87/14
87/15 99/13 107/8
107/16 108/4 109/12
110/20 114/16 115/15
121/15 122/5 122/7
125/17 130/20 132/13
134/6 138/18
**secondary [2]** 43/7
97/9
**seconds [1]** 37/18
**Secretary [19]** 121/16
121/17 121/20 122/3
123/12 124/6 124/11
124/23 125/4 125/18
131/5 131/16 131/16
131/19 132/20 133/7
133/10 133/15 135/22
**Secretary's [1]** 121/22
**sections [1]** 44/21
**securities [8]** 21/4
23/18 24/13 27/7 30/2
31/1 35/10 53/4
**security [3]** 23/4 23/6
87/7
**see [26]** 5/24 10/8 16/6
16/23 16/24 45/15
49/24 54/15 64/17
65/11 66/1 69/10 73/11
78/9 80/11 83/14 85/8
104/4 104/13 109/3
112/9 114/17 117/12
121/19 128/15 139/8
**seeking [12]** 24/4
56/15 64/8 69/1 73/23
74/23 75/8 75/15 86/3
86/5 89/11 89/20
**seeks [1]** 77/22
**seem [4]** 55/5 75/1
83/25 84/5
**segmenting [1]** 45/1
**selection [1]** 136/20
**selfish [1]** 104/2
**senior [5]** 1/10 1/14 4/6
50/17 131/17
**sense [6]** 21/7 56/13
72/8 133/1 134/3
134/20
**sent [2]** 36/1 106/15
**sentence [2]** 14/9 84/4
110/11 116/19 121/19
124/9
**sentencings [1]**
137/11
**separate [2]** 23/1 61/2
**separately [8]** 18/18
19/21 23/10 30/20
59/21 59/22 60/10
60/17
**series [2]** 70/7 103/21
**serious [2]** 40/23
124/18
**session [1]** 4/3
**set [5]** 107/10 107/15

**sets [1]** 59/23
**setting [1]** 115/2
**settled [1]** 105/5
**seven [1]** 135/15
**Seventh [3]** 122/17
122/23 127/25
**Shall [1]** 4/13
**shape [6]** 32/1 95/13
102/20 102/20 102/21
103/4
**shared [1]** 20/7
**shareholder [11]** 77/13
77/14 85/2 85/20 86/2
91/1 110/19 113/2
115/14 116/1 116/10
**shareholder's [2]**
85/12 85/14
**shareholders [12]**
45/12 78/19 78/20 79/9
82/14 84/19 86/20 89/6
90/20 107/6 110/18
111/8
**shareholders' [1]**
110/23
**shares [2]** 82/15 89/17
**sharp [1]** 7/2
**she [88]** 47/11 47/13
47/13 57/3 57/23 58/7
58/11 58/17 58/22
58/22 58/23 59/3 59/7
59/10 59/14 59/15
59/15 64/20 64/24 65/4
65/6 65/7 65/14 65/17
66/3 66/14 66/23 67/22
67/23 70/1 70/5 70/5
70/21 70/21 70/21
70/22 70/22 71/3 75/25
75/25 76/4 81/15 81/17
81/17 82/2 82/3 82/6
82/17 82/18 83/9 83/17
88/20 88/20 88/20
89/13 93/14 93/20
95/16 95/20 96/3 96/7
96/8 96/9 96/9 96/16
96/16 97/4 97/15 97/16
97/16 98/10 98/10
98/11 98/12 99/12
99/12 99/19 99/20
99/22 99/22 100/22
101/24 102/19 102/21
102/21 102/22 103/3
103/7
**she's [15]** 58/13 58/14
58/14 59/9 59/12 59/13
60/19 66/22 74/17
74/18 83/10 95/12
95/14 95/19 101/25
**short [1]** 110/11
**shorter [1]** 11/20
**shorthand [1]** 52/17
**shortly [1]** 64/24
**should [43]** 6/20 6/23
15/6 16/2 23/12 24/17
25/9 27/20 27/21 43/20
52/6 54/5 56/2 64/15
65/23 67/15 67/19 69/6
69/22 75/13 79/24

84/1 84/5 86/2 86/6
86/11 90/6 91/25 92/2
95/2 99/22 109/5
113/14 117/13 117/17
117/20 120/4 135/7
138/20
**shouldn't [2]** 95/2
130/13
**show [11]** 17/23 21/17
27/11 28/3 29/7 31/2
31/10 39/1 103/6 132/1
132/23
**showed [1]** 18/5
**showing [1]** 28/6
**shown [3]** 17/22 42/7
47/22
**shows [2]** 18/6 18/25
**sic [4]** 11/2 39/2 64/21
113/1
**side [6]** 13/23 13/24
18/25 83/14 111/12
130/9
**sigh [1]** 18/17
**sign [7]** 46/22 46/24
46/24 47/10 47/15 55/9
62/12
**signaling [1]** 58/1
**signatories [2]** 55/9
124/18
**signature [2]** 48/8
55/15
**signed [9]** 36/11 36/13
45/20 48/1 51/2 55/7
55/7 55/14 103/7
**signers [2]** 44/10 49/3
**significant [3]** 51/16
101/2 136/17
**significantly [2]** 95/23
95/23
**signing [1]** 48/3
**similar [14]** 18/23 20/7
20/7 21/10 21/11 21/13
21/16 22/2 56/12 64/11
67/20 83/18 134/11
134/18
**similarly [1]** 64/19
**simple [2]** 54/21 87/18
**simply [10]** 9/17 43/5
43/13 53/1 92/16 97/2
98/12 110/11 112/23
117/15
**since [1]** 125/21
**single [6]** 16/21 90/19
123/22 123/24 124/8
129/21
**sir [1]** 5/11
**sit [1]** 9/7
**site [1]** 62/13
**sitting [2]** 95/12 101/25
**situation [2]** 44/7
128/7
**six [2]** 30/16 135/15
**skaplan [1]** 2/6
**skipping [1]** 104/13
**slide [2]** 25/11 25/15
**slightly [2]** 53/15 110/3
**small [1]** 134/8

**smooth [1]** 91/3
**snippets [2]** 23/23 80/5
**snuck [1]** 70/7
**so [198]**
**So as [1]** 20/24
**So he's [1]** 62/5
**So I think [2]** 54/9
119/25
**So it's [1]** 75/6
**So just [1]** 80/2
**So this handles [1]**
57/18
**so this is [5]** 25/19
29/9 81/14 109/10
131/4
**So this issue [1]** 52/15
**So this testimony [1]**
58/20
**so-called [3]** 50/8
51/21 52/24
**sole [2]** 16/5 96/23
**solely [1]** 113/2
**solve [2]** 86/25 89/25
**some [45]** 6/3 6/7
13/16 20/10 20/19
20/20 20/23 20/24 25/2
26/13 29/13 30/16
42/20 44/20 46/1 53/17
54/1 57/16 58/1 61/10
61/19 62/7 63/20 64/22
74/11 77/22 83/25 90/9
90/16 107/25 108/1
119/7 119/9 122/10
123/12 124/11 125/16
127/3 130/9 132/10
132/24 133/20 134/15
137/11 137/17
**somebody [5]** 7/3
11/24 74/4 74/5 74/6
**somehow [9]** 14/1
15/19 17/16 17/24 68/7
90/7 97/7 100/12
104/14
**someone [8]** 41/4
41/10 41/11 45/19
47/17 48/22 87/7
133/15
**something [14]** 13/18
38/14 39/22 40/11
49/24 57/10 61/19
61/21 65/4 70/20 71/15
83/23 117/23 135/23
**sometime [2]** 50/18
135/20
**somewhere [1]** 88/12
**soon [2]** 31/19 33/1
**sooner [1]** 103/19
**sorry [13]** 13/7 22/16
35/2 37/23 56/8 63/4
65/20 65/22 70/22
104/8 106/4 121/22
128/7
**sort [10]** 13/21 17/18
19/9 34/23 52/16 54/1
60/7 68/25 78/5 81/9
**sound [2]** 63/21 131/13
**sounded [1]** 81/10
**sounds [2]** 44/19 74/20

**S**

**source [5]** 132/2 132/20 133/10 136/1 136/2
**speak [1]** 20/12
**speaking [3]** 97/17 98/10 98/14
**specialized [4]** 22/9 93/21 96/8 99/23
**species [2]** 53/5 90/25
**specific [20]** 20/17 22/4 23/3 23/16 24/3 27/15 27/19 30/3 31/2 31/11 33/17 50/9 55/17 108/24 110/17 114/25 115/1 116/9 116/15 117/9
**specifically [5]** 19/4 36/8 36/17 86/14 93/2
**speculated [1]** 70/5
**speculating [5]** 58/15 59/12 61/24 62/5 74/19
**speculation [5]** 62/6 62/8 66/15 70/2 70/13
**speed [1]** 104/14
**spend [4]** 77/19 86/7 86/9 87/2
**spent [1]** 46/16
**split [1]** 8/8
**splitting [1]** 133/1
**spread [3]** 10/23 11/22 16/11
**spreads [1]** 9/20
**squarely [8]** 80/7 81/3 81/12 82/19 84/9 125/21 126/14 128/3
**staff [1]** 36/18
**stagnant [2]** 81/19 87/24
**stand [3]** 60/12 102/1 102/19
**stand-alone [1]** 60/12
**standard [22]** 29/25 30/1 32/19 33/3 33/8 33/9 33/17 33/19 34/1 34/2 35/11 38/8 38/22 38/25 49/5 113/9 113/9 125/23 126/1 126/2 126/22 130/3
**standing [1]** 48/19
**stands [2]** 76/21 139/10
**Stanton [3]** 3/4 5/18 104/21
**Stanton Jones [1]** 5/18
**Star [2]** 37/18 37/24
**start [17]** 6/1 8/16 12/12 17/11 30/24 57/14 69/16 69/18 69/19 69/20 73/20 78/10 92/7 104/19 112/12 121/25 130/3
**started [1]** 85/6
**starters [1]** 25/5
**starting [5]** 24/10 61/12 64/18 66/2 106/9
**starts [4]** 64/21 97/12

**state [2]** 4/9 85/18
**stated [3]** 9/12 9/13 10/13
**statement [14]** 13/25 51/8 51/8 51/11 90/19 90/25 100/1 110/10 110/13 122/22 123/9 126/12 128/8 132/14
**statements [76]** 13/22 13/23 19/10 24/22 24/24 25/19 26/6 26/10 27/6 27/10 27/15 27/19 27/22 29/18 40/8 40/10 40/13 40/14 40/16 40/21 41/3 41/6 41/10 41/16 43/1 43/18 43/19 44/23 47/1 47/6 47/7 49/20 50/2 50/4 50/9 50/10 50/22 50/24 51/3 51/3 51/6 51/10 51/15 51/18 51/22 52/4 52/5 52/15 52/20 52/21 53/9 54/17 55/3 59/24 90/9 93/12 95/20 97/4 97/5 98/17 99/7 99/9 99/15 99/16 99/18 100/16 101/22 101/23 103/3 121/16 128/4 129/2 129/4 132/6 132/9 137/1
**statements' [1]** 50/8
**states [5]** 1/1 1/14 14/10 48/17 110/12
**stating [1]** 113/21
**statistical [1]** 21/13
**statute [1]** 55/10
**staying [1]** 118/3
**stays [1]** 12/13
**Stegman [27]** 119/20 120/3 120/13 120/17 120/19 120/23 121/9 121/11 121/12 121/17 121/20 122/1 122/3 122/4 124/11 125/4 125/5 125/13 131/1 131/2 131/4 131/17 131/18 133/7 133/7 134/12 135/11
**stenography [1]** 3/16
**step [6]** 6/22 6/23 6/25 7/7 7/8 85/17
**stern [11]** 3/3 3/9 5/13 15/17 18/16 79/7 79/18 79/11 80/8 90/12 104/9
**Stern's [1]** 79/5
**still [13]** 6/16 7/2 26/12 60/1 67/14 86/1 89/25 90/21 115/22 118/16 121/3 132/24 136/15
**stock [4]** 1/10 4/7 50/17 83/11
**stop [1]** 6/20
**stopped [2]** 25/16 89/22
**straightforward [3]** 14/2 109/12 109/24
**strangles [1]** 76/19

**strays [1]** 70/2
**street [8]** 2/16 63/20 72/13 91/18 95/21 95/22 97/12 100/17
**stressed [1]** 30/6
**stricken [3]** 88/7 88/17 89/5
**strike [5]** 86/23 88/5 88/15 107/24 108/2
**striking [2]** 87/12 89/14
**strong [1]** 34/10
**struck [1]** 89/4
**structure [1]** 20/1
**struggled [1]** 107/14
**study [18]** 9/2 9/7 9/9 9/11 9/14 9/17 11/11 14/6 14/18 15/4 15/20 16/3 17/8 17/18 17/20 17/23 21/9 39/11
**subject [6]** 15/5 51/16 52/16 63/8 72/18 91/9 122/10 125/14
**subjective [5]** 80/18 84/19 85/9 85/12 87/1
**submission [1]** 59/21
**submit [2]** 49/4 86/8
**submitted [1]** 59/21
**subpart [1]** 131/25
**subsection [8]** 41/1 42/3 42/5 42/10 42/25 52/16 133/9 133/14
**Subsections [1]** 42/17
**subsequent [1]** 97/10
**subspecies [1]** 54/2
**substance [3]** 86/17 86/18 89/21
**substantially [4]** 33/23 33/24 38/23 38/23
**substantive [1]** 36/22
**substantively [1]** 64/11
**such [8]** 42/24 44/3 44/24 97/11 100/9 102/12 102/21 125/19
**suddenly [1]** 14/16
**suffered [2]** 83/11 89/12
**suffers [1]** 89/11
**sufficient [7]** 43/14 43/15 50/19 55/20 55/22 73/3 124/24
**suggest [2]** 24/1 24/3 27/2
**suggested [1]** 7/18
**suggesting [1]** 113/7
**suggestion [3]** 55/19 55/24 90/6
**suing [1]** 83/16
**Suisse [28]** 24/14 24/16 24/22 24/24 25/3 25/18 25/25 26/4 26/5 26/10 26/14 26/15 26/19 26/23 26/25 27/1 27/3 27/19 27/21 28/5 28/7 28/17 28/22 29/8 29/18 29/21 30/5 30/11

**sum [1]** 89/21
**summarized [1]** 16/14
**summary [11]** 15/25 21/16 31/14 82/9 82/10 82/18 84/2 90/22 117/8 117/8 135/23
**summer [3]** 25/20 91/2 102/16
**superficial [2]** 73/5 86/24
**supply [3]** 9/25 11/1 16/11
**support [7]** 9/11 10/14 17/14 17/15 30/11 33/1 127/7
**supported [2]** 14/18 116/16
**supporting [1]** 117/12
**supports [4]** 14/12 74/9 124/3 129/21
**suppose [1]** 81/7
**supposed [1]** 58/21
**supposedly [4]** 33/12 96/24 100/17 125/4
**suppositions [1]** 60/8
**Supreme [4]** 113/6 113/11 114/6 118/5
**Supreme Court [2]** 113/11 114/6
**Supreme Court's [1]** 113/6
**Sur [1]** 74/13
**sure [6]** 31/21 49/24 55/4 109/7 138/7 138/13
**surely [2]** 21/6 36/12
**surprised [5]** 73/5 80/17 80/23 81/8 102/22
**survey [2]** 21/12 21/14
**sustainable [2]** 65/2 65/3
**sustained [2]** 75/19 88/4
**sustaining [1]** 89/15
**sweep [36]** 9/16 11/7 11/7 11/17 15/18 16/19 17/5 17/12 17/17 18/5 18/14 18/21 23/4 23/20 25/7 30/12 31/24 32/10 32/11 57/11 57/22 58/4 58/8 58/18 58/21 60/9 74/19 76/1 76/5 80/14 85/13 92/23 94/2 99/11 112/20 138/21
**sweeping [1]** 19/10
**switch [3]** 13/16 14/20 15/7
**system [1]** 42/16

**T**

**Tagoe [22]** 56/17 57/3 57/20 58/7 58/11 59/7 59/18 60/7 60/19 60/20 61/23 62/17 64/11 66/18 67/14 67/17 68/4 68/12 72/11 72/23

**Tagoe's [5]** 57/15 58/20 67/6 73/7 78/8
**take [14]** 12/19 25/9 26/3 56/23 76/18 81/8 81/8 85/17 102/23 104/15 104/23 105/19 130/1 138/16
**taken [5]** 78/20 87/11 101/3 114/21 119/25
**takes [1]** 22/23
**taking [2]** 120/18 138/7
**talk [6]** 23/1 33/12 35/8 61/1 78/24 130/19
**talked [2]** 6/24 35/8 138/5
**talking [21]** 23/13 23/13 26/13 35/5 39/5 50/9 50/23 50/24 57/14 59/13 61/21 62/4 62/7 74/16 74/18 74/18 78/20 82/21 87/19 117/4 134/13
**talks [1]** 23/10
**task [3]** 109/17 110/25 120/1
**tax [2]** 34/11 65/10
**team's [1]** 47/20
**teams [1]** 47/18
**telephone [1]** 77/20
**tell [15]** 6/21 7/6 32/6 52/3 52/4 54/22 76/4 77/4 78/17 84/16 86/13 95/16 109/6 127/18 138/14
**telling [4]** 26/16 95/13 95/15 110/17
**tells [2]** 6/23 7/2
**ten [2]** 37/18 76/18
**term [6]** 10/25 11/12 11/20 11/20 17/24 50/14
**terms [12]** 7/17 8/7 50/2 50/8 90/11 90/19 106/18 108/5 112/8 113/22 114/16 117/6
**test [3]** 116/9 126/20 126/21
**testified [27]** 13/18 14/16 15/11 15/13 21/7 29/2 36/15 37/7 38/12 46/10 46/14 46/18 47/2 47/4 56/25 75/4 76/14 80/6 80/10 81/7 83/14 84/7 84/14 90/20 91/1 92/25 93/20
**testifies [3]** 62/17 63/14 70/21
**testify [14]** 13/17 16/3 28/10 28/14 28/15 38/11 42/15 57/10 62/24 63/8 90/14 93/4 93/5 93/8
**testifying [5]** 34/8 73/15 74/22 78/19 125/6
**testimony [138]** 15/1 15/10 16/1 16/15 22/11

testimony... [133]
24/11 25/12 25/14
25/16 28/2 29/12 30/4
30/18 32/14 32/21
40/10 40/15 41/6 42/7
43/2 43/19 45/24 46/21
47/16 48/2 48/6 48/7
55/12 55/17 56/16
56/18 57/7 57/10 57/12
57/14 57/15 58/14
58/20 59/2 59/12 60/7
60/21 60/24 61/8 62/9
62/22 63/7 64/7 64/10
64/11 64/15 64/16
64/23 66/11 66/15
66/18 66/21 67/13
67/17 67/20 68/4 68/6
68/14 69/2 69/5 69/21
69/25 69/25 70/18 71/1
71/19 71/19 71/22 72/7
72/10 72/14 72/15
73/16 74/17 74/23 75/2
75/11 75/14 75/22 76/7
76/10 77/14 77/14 78/6
79/18 79/21 80/3 80/17
81/1 81/15 83/19 84/8
84/22 85/2 85/15 85/20
86/2 86/11 86/24 87/1
87/3 87/7 87/14 88/5
88/15 89/7 89/10 89/12
89/15 89/20 90/5 91/4
91/17 92/1 92/8 93/24
93/25 94/14 94/19
94/20 94/21 96/17 97/6
99/1 99/20 99/21 100/9
100/21 101/16 101/18
101/24 102/6 103/8
Thakor [3] 137/25
138/1 139/4
than [19] 35/14 37/5
37/13 38/24 39/2 44/12
48/4 49/17 49/21 72/16
96/8 96/10 99/6 99/14
100/15 103/19 108/16
119/5 125/1
Thank [27] 6/10 7/13
8/18 8/21 16/4 22/14
22/23 22/23 24/5 29/12
35/15 37/20 37/24 38/1
40/2 42/2 49/25 56/3
69/10 76/17 103/11
104/6 104/21 117/21
118/1 129/22 136/4
Thank you [21] 6/10
7/13 8/18 16/4 22/14
22/23 24/5 29/12 35/15
37/20 37/24 40/2 42/2
49/25 56/3 69/10
103/11 104/6 104/21
117/21 129/22
Thanks [1] 69/11
that [893]
that's [106] 11/12 13/5
14/21 15/14 18/1 18/2
18/2 18/15 20/21 21/12
22/22 23/22 25/21
29/25 29/25 34/14

44/7 46/15 47/20 48/8
48/17 48/19 49/21
49/25 50/7 50/23 53/13
53/20 58/12 59/16
60/11 62/20 63/1 64/4
70/23 74/2 74/21 75/13
76/3 76/13 78/7 78/23
79/2 79/2 82/11 82/19
82/24 84/2 84/22 90/21
90/24 94/11 94/25
95/14 96/6 96/9 96/13
98/18 99/23 100/9
104/7 104/15 104/18
105/15 107/6 107/16
108/8 108/15 108/15
109/3 110/21 110/24
114/4 114/6 115/19
116/25 117/2 117/3
117/5 117/9 117/9
118/14 119/15 122/1
122/4 122/7 122/21
127/25 129/23 130/22
131/11 131/20 132/6
132/16 132/17 133/8
133/13 133/24 133/24
135/18 136/3 138/8
their [98] 6/8 6/8 7/20
10/20 11/10 11/20
11/23 13/15 16/5 18/4
18/12 19/9 30/11 33/13
33/22 33/23 33/24
38/17 38/19 39/22
40/20 42/21 43/7 43/25
44/1 44/25 45/10 46/11
46/22 47/18 48/2 48/2
48/3 48/3 49/10 51/6
52/16 52/19 53/2 53/14
57/7 57/11 58/9 58/10
60/16 60/18 64/8 64/14
66/11 66/20 67/21
67/21 68/3 68/25 69/6
69/6 71/13 72/14 72/15
73/4 73/10 73/16 73/16
73/22 73/23 74/21 77/5
78/19 81/13 82/14
82/15 84/17 85/23
86/21 93/1 96/23 96/24
107/12 110/23 113/17
115/6 115/20 119/10
119/11 120/25 122/12
122/14 122/17 123/1
123/2 124/9 125/15
131/20 132/19 135/8
135/18 138/5 138/9
them [64] 9/7 19/19
19/20 23/20 23/24
27/11 29/3 30/8 30/20
31/12 33/12 33/21 34/7
35/1 35/6 35/19 36/6
36/7 36/20 38/6 38/10
38/12 38/12 38/18
38/19 39/17 39/25
40/15 41/8 41/16 46/12
46/19 46/23 46/24
46/25 48/3 48/3 48/8
51/7 52/2 54/13 55/9
55/15 55/24 57/1 70/20

76/15 84/21 92/5 92/9
99/19 102/24 104/14
107/21 109/6 124/22
129/19 136/19 138/8
138/22
themselves [12] 4/13
25/20 46/24 49/3 66/8
71/8 92/9 96/23 97/7
99/5 99/13 113/17
then [53] 7/16 8/2 8/4
9/2 9/7 9/8 13/18 20/23
22/14 25/15 25/16
25/18 26/5 26/20 30/6
32/14 33/2 33/12 36/7
39/24 46/21 46/23 61/8
61/12 67/18 67/19
69/21 77/6 79/4 79/25
80/4 82/21 84/4 85/10
91/9 95/17 97/3 98/1
98/11 101/19 102/9
110/15 119/11 121/16
122/2 126/1 126/20
134/1 137/4 137/15
137/19 138/3 138/18
then-Secretary [1]
121/16
theory [7] 18/12 19/9
39/23 82/1 82/11 82/12
88/25
there [98] 9/1 9/25 10/3
10/21 10/24 11/9 11/13
14/20 17/3 17/6 18/22
19/4 20/24 21/18 23/5
23/16 24/1 25/1 27/14
30/15 31/16 31/23
32/19 32/24 37/7 37/8
41/5 41/5 41/14 42/3
44/11 45/14 45/18
45/22 45/23 45/24
46/20 47/24 48/3 53/20
53/23 54/16 55/17
59/25 61/20 64/23
65/10 65/19 70/11 79/8
81/11 81/17 81/21 82/9
83/14 83/24 85/11 86/2
87/23 88/6 88/7 90/17
97/15 97/17 98/9 98/14
101/4 107/1 107/6
107/25 108/6 108/12
108/19 108/25 109/17
110/9 110/10 114/18
115/1 115/8 115/25
117/13 119/22 121/7
122/5 124/18 124/19
124/25 126/4 126/12
127/19 127/23 128/14
130/20 130/21 132/15
133/13 135/21
there's [58] 9/2 9/3
11/16 11/19 13/22 15/6
16/10 16/19 16/23
17/14 17/15 17/25 18/9
18/23 21/3 24/2 27/17
28/19 29/15 30/4 32/3
32/7 32/14 34/5 42/23
43/12 43/20 44/12 45/4
46/8 49/18 50/6 51/9

59/17 75/10 84/21 89/5
90/6 90/16 96/19 99/25
101/2 110/4 117/14
124/2 124/10 128/22
130/16 130/16 130/18
131/15 133/12 134/10
135/7 138/18
thereby [1] 119/1
therefore [5] 10/1 74/2
99/2 102/8 138/2
these [62] 10/1 10/16
14/7 15/3 24/22 26/1
29/8 31/6 32/17 32/20
33/11 34/2 34/4 34/12
34/13 34/23 35/5 35/10
35/12 38/17 41/6 41/9
41/15 42/6 48/1 49/4
51/6 51/18 51/21 52/4
52/5 52/23 55/7 55/7
56/1 56/22 56/24 57/25
58/9 60/4 66/16 69/8
70/10 71/11 72/6 72/9
72/18 78/15 80/15 81/7
85/22 86/9 89/6 91/21
91/23 98/15 103/2
107/20 111/4 118/22
118/23 139/2
they [235]
they'd [1] 97/9
they'll [1] 137/24
they're [52] 16/16
16/16 16/18 27/9 34/5
34/22 38/17 39/15
39/20 39/21 40/18
43/20 44/2 44/17 45/11
45/11 50/10 51/11
51/24 52/6 52/23 55/2
70/10 72/21 73/25 74/7
74/20 84/9 86/5 89/3
92/4 94/8 94/13 95/13
95/13 96/24 98/15
98/25 99/19 100/2
100/3 100/21 100/22
100/23 102/5 103/4
107/18 124/2 132/10
133/1 135/10 138/12
they've [3] 86/22
100/13 130/2
thing [17] 14/6 16/21
26/4 70/8 71/20 72/3
87/9 87/19 89/21
127/21 130/7 130/15
130/22 134/24 135/6
136/7 138/18
things [18] 6/11 35/8
35/10 39/6 39/8 39/12
39/18 46/15 62/12
65/11 78/2 108/20
109/4 124/17 134/2
137/16 137/17 137/22
think [80] 11/9 26/4
26/16 27/20 29/15
29/17 34/1 49/12 50/25
53/8 54/8 54/9 54/11
54/14 54/14 55/24
60/23 61/9 61/13 68/10
69/17 69/22 72/1 72/9

80/24 81/2 81/2 81/11
82/19 83/9 83/11 84/8
84/17 85/18 88/1 88/22
89/1 90/5 90/21 91/7
102/10 102/13 107/3
107/17 107/25 108/15
109/3 109/4 109/11
110/1 111/3 111/25
112/3 112/4 112/17
117/15 117/18 118/22
119/4 119/13 119/25
123/16 126/2 127/1
127/17 128/8 130/12
135/4 136/18 136/21
137/22 137/23 138/3
138/4 138/8 138/20
thinking [1] 28/9
thinks [4] 6/25 7/2 62/2
74/24
third [61] 9/23 9/24
11/18 13/4 14/4 14/7
14/12 14/19 15/11
15/11 15/13 16/17
20/21 20/22 20/23
20/25 21/1 21/2 21/22
36/11 56/20 56/24 57/6
58/15 59/1 59/9 59/14
61/6 61/25 62/2 62/14
62/16 63/15 64/20
66/14 66/25 70/16
71/12 72/15 73/1 73/9
73/12 74/5 75/18 76/11
82/12 83/13 92/20
92/24 93/10 93/14
93/16 98/7 102/22
105/22 107/17 110/3
128/4 130/7 134/7
138/19
this [272]
those [65] 20/17 21/1
21/2 23/10 24/3 30/19
33/3 33/8 35/8 35/13
36/19 37/11 38/3 38/9
38/13 39/8 40/10 43/19
44/25 45/6 46/5 46/11
46/15 47/15 54/17
54/22 55/14 55/23 59/4
59/9 60/3 62/13 63/6
66/5 75/21 77/22 78/25
80/7 80/17 80/21 80/24
84/15 86/14 89/7 90/20
91/22 91/25 94/9 97/4
97/5 98/18 98/24 99/1
99/15 99/16 102/4
102/7 108/2 108/6
111/1 117/18 122/9
129/3 132/21 133/18
though [7] 12/23 32/16
54/18 55/6 94/12 102/1
128/18
thought [9] 26/4 29/21
70/5 88/20 89/21 94/4
94/7 94/11 102/22
thoughts [2] 67/21
76/2
three [8] 46/9 46/9
47/24 77/5 91/17 97/1

**three... [2]** 105/23
136/14

**threw [2]** 32/3 70/4
**through [22]** 6/17
13/21 30/18 43/5 46/23
47/3 47/3 48/8 56/14
57/13 57/17 61/13 63/5
64/14 76/7 82/4 86/20
89/2 97/20 98/8 104/14
116/15
**throughout [5]** 10/19
15/10 26/9 72/20 72/22
**throws [1]** 23/24
**thrust [1]** 13/15
**thus [2]** 67/3 113/3
**tighter [2]** 10/23 11/21
**time [58]** 6/7 6/14 7/6
8/7 8/23 13/2 13/2 21/9
28/21 38/13 41/3 44/9
45/19 46/7 46/16 48/9
50/15 56/13 77/19 79/3
81/13 83/1 86/7 86/9
87/2 87/4 95/14 97/4
99/2 99/19 100/18
101/19 101/20 101/20
102/7 103/1 103/10
103/13 104/14 110/22
111/3 111/5 111/8
111/25 112/5 112/19
113/10 113/15 113/18
114/14 118/9 121/6
130/1 130/7 134/5
134/6 134/7 138/3
**times [1]** 120/1
**timing [1]** 100/1
**Timothy [1]** 56/17
**titled [1]** 140/4
**today [9]** 6/9 6/24 7/1
25/6 78/18 104/23
105/19 111/19 120/1
**together [2]** 19/19
111/4
**told [21]** 6/21 6/22 6/24
7/15 13/17 14/16 26/21
26/24 27/2 28/11 70/20
70/21 70/22 76/3 76/15
88/16 89/4 102/19
122/3 124/11 125/4
**tomorrow [5]** 137/12
137/15 138/12 138/16
138/23
**tonight [1]** 8/10
**too [8]** 9/5 29/21 54/6
67/18 71/9 74/21 81/10
118/3
**took [5]** 80/1 80/14
81/10 102/18 121/24
**top [10]** 31/18 31/22
70/12 70/14 78/10
78/10 78/11 79/4 79/13
88/14
**tort [3]** 113/9 113/9
115/7
**tort-based [2]** 113/9
113/9
**totalitarian [1]** 81/10
**totally [5]** 55/5 85/12

**toto [1]** 23/15
**touch [1]** 111/23
**touched [1]** 113/19
**tracks [1]** 82/17
**trading [1]** 18/4
**transcript [11]** 1/13
3/16 29/16 46/2 46/2
60/13 61/9 70/4 88/12
102/2 140/3
**transcription [1]** 3/16
**transmitted [2]** 41/4
41/8
**transparency [1]** 46/17
**transparently [1]** 26/5
**trash [1]** 32/3
**tread [1]** 116/17
**treading [1]** 120/1
**Treasury [41]** 8/4
14/14 20/4 24/17 25/9
28/4 28/20 28/23 29/5
50/14 50/16 58/2 61/14
64/25 67/2 70/5 70/22
71/6 71/23 74/19 75/17
82/14 93/18 100/19
102/23 115/24 124/22
131/5 131/6 131/7
131/8 131/9 131/9
131/11 131/17 131/17
131/19 133/10 133/25
134/15 134/25
**treated [7]** 33/5 64/15
67/15 67/19 69/7 75/9
75/13
**treatment [1]** 87/9
**trial [83]** 6/17 10/12
13/9 13/13 14/17 15/1
15/6 15/10 16/4 19/21
22/3 22/18 24/21 25/4
26/9 27/5 28/1 28/11
29/11 30/5 30/16 31/6
31/8 32/17 32/20 34/8
35/19 36/4 40/12 45/24
46/1 46/13 47/2 47/4
54/6 60/20 65/5 68/7
70/3 70/6 71/18 72/21
72/22 76/6 76/7 77/20
78/2 81/20 83/5 83/8
84/11 84/14 85/1 85/6
85/19 86/7 86/10 86/11
87/3 87/21 89/14
101/15 105/1 105/20
106/2 106/14 107/14
110/1 112/2 112/6
115/15 117/20 119/5
120/22 122/8 122/11
123/4 125/9 125/22
126/7 130/6 136/23
136/24
**trial one [7]** 22/18 25/4
27/5 28/1 29/11 30/5
35/19
**trials [1]** 117/7
**tried [3]** 12/24 31/5
109/23
**trillion [1]** 18/2
**triple [1]** 128/15
**triple-hearsay [1]**

**trouble [1]** 119/7 119/9
**true [16]** 13/20 27/17
29/21 36/14 52/1 53/20
58/12 59/16 97/4 98/3
98/18 98/20 101/20
108/15 114/25 126/8
**trustworthiness [6]**
43/14 43/16 49/16
124/24 135/4 135/6
**trustworthy [11]** 132/1
132/6 132/10 132/15
132/20 132/24 133/9
133/10 133/14 134/9
136/2
**truth [17]** 24/25 26/6
27/10 28/3 29/18 52/5
92/5 96/12 96/25 98/25
99/23 100/15 100/23
100/25 101/25 102/5
132/14
**truthfully [1]** 67/12
**truthfulness [1]** 46/11
**try [19]** 8/8 8/12 21/9
28/3 33/25 50/1 63/4
64/5 77/9 87/18 98/16
101/10 108/25 111/2
125/2 137/3 137/9
137/18 139/6
**trying [27]** 10/16 38/17
52/6 59/5 61/10 61/13
61/15 61/21 62/3 62/4
62/7 63/3 64/3 64/13
66/17 69/3 73/25 74/7
74/20 74/25 75/23
93/22 94/4 98/15 100/2
108/5 109/19
**Tuesday [3]** 104/3
136/19 137/18
**turn [5]** 6/19 52/1
70/19 79/17 131/22
**turned [2]** 25/3 69/8
**turning [3]** 24/9 81/14
82/21
**tweak [1]** 138/19
**twice [1]** 132/3
**two [36]** 9/1 9/6 13/22
14/7 17/3 23/10 24/3
24/22 30/15 30/17
30/22 31/4 33/3 33/5
33/8 35/17 36/8 36/19
39/25 40/18 45/4 66/15
68/2 75/5 77/6 78/18
78/25 121/7 121/10
122/6 124/21 130/16
131/24 135/5 137/16
137/22
**type [1]** 69/2
**typed [3]** 51/6 55/23
131/18
**types [1]** 34/11
**typical [1]** 21/7
**typing [2]** 131/19
131/22

**U**

**U.S [2]** 3/13 55/11
**U.S. [1]** 7/4

**[1]** 7/4
**Ugoletti [5]** 36/2 36/5
38/15 38/16 134/16
**Ugoletti's [1]** 36/3
**Uh [1]** 136/13
**Uh-huh [1]** 136/13
**ultimate [1]** 118/15
**ultimately [1]** 47/14
**unattached [1]** 113/13
**unbelievable [1]** 75/1
**uncertainties [1]** 51/17
**uncertainty [1]** 54/23
**unclear [1]** 107/3
**undefined [1]** 62/7
**under [39]** 24/18 32/4
33/6 33/9 33/17 35/1
40/1 40/22 42/5 43/8
43/9 43/12 43/13 44/17
44/21 46/25 48/20 49/5
50/17 60/11 61/15
61/18 74/11 84/9 91/4
92/1 92/3 92/13 108/7
110/18 110/23 113/22
116/16 116/23 118/15
122/13 125/15 128/4
128/19
**undergo [1]** 46/20
**underlined [1]** 87/20
**underlying [6]** 44/1
92/2 92/9 93/25 97/18
113/13
**underscored [1]** 25/21
**underscores [1]** 116/8
**understand [13]** 19/16
58/4 58/17 63/18 68/23
83/22 107/22 108/3
108/14 109/7 119/3
125/11 131/1
**understandable [1]**
109/9
**understanding [2]**
22/9 35/18
**understands [3]** 72/1
72/9 108/17
**understood [6]** 35/20
61/9 68/17 83/24 83/25
137/13
**underway [1]** 6/13
**undisputed [5]** 121/8
121/9 122/5 122/7
123/10
**unduly [1]** 92/4
**unfair [1]** 101/2
**UNITED [3]** 1/1 1/14
48/17
**United States [1]**
48/17
**unless [9]** 7/18 8/15
31/2 40/17 73/18 101/6
122/9 123/11 133/12
**unlikely [1]** 100/14
**unnecessary [1]**
129/12
**unreasonable [9]**
105/21 105/23 105/24
106/11 106/17 107/2
106/14 116/21 116/24

**unreasonableness [3]**
72/24 110/6 110/14
**unreasonably [3]**
110/8 118/17 118/24
**unreliable [7]** 10/15
11/25 12/5 12/6 39/11
51/23 54/18
**unspecified [1]** 108/1
**until [3]** 36/13 63/16
112/5
**untrustworthy [1]**
132/2
**up [32]** 8/1 8/16 10/19
15/9 15/16 25/4 33/4
36/12 38/8 46/1 47/13
54/8 57/24 64/16 66/7
70/9 71/7 72/20 72/22
78/6 79/12 88/14 94/14
97/9 101/15 104/23
105/19 118/3 131/18
131/19 137/15 138/16
**upfront [2]** 51/18 77/16
**upon [2]** 27/18 36/24
**upset [1]** 21/23
**urgency [2]** 134/20
135/3
**us [7]** 103/18 109/11
123/18 126/15 132/23
139/1 139/2
**use [9]** 22/5 29/11
39/23 52/6 96/6 96/7
96/14 108/14 132/21
**used [3]** 11/12 80/16
80/21
**uses [2]** 134/18 135/2
**using [1]** 15/19
**Ustian [1]** 21/12

**V**

**vague [1]** 26/13
**valid [2]** 54/12 96/14
**valuation [1]** 76/13
**value [6]** 10/2 34/16
35/1 82/15 89/17 101/4
**various [2]** 44/18
108/20
**Varma [3]** 3/4 5/20
136/9
**vast [2]** 12/11 12/14
**vehicle [1]** 35/14
**verbatim [1]** 62/18
**verdict [2]** 138/19
139/5
**version [2]** 106/22
106/23
**versus [5]** 55/2 96/20
96/21 108/18 114/7
**very [42]** 6/12 8/14
8/19 14/9 21/12 22/24
23/16 36/15 42/14
43/25 45/10 45/24
49/11 49/11 49/14
49/14 51/12 51/14
68/19 73/2 73/5 83/8
84/15 85/1 88/15 89/19
100/14 103/23 110/17
116/15 123/17 124/18
130/15 130/18 134/1

**V**

**very... [7]** 134/11
134/18 134/18 136/11
136/17 138/18 138/25
**via [1]** 80/6
**view [10]** 17/14 17/16
34/7 65/1 67/16 113/7
122/17 124/3 124/4
138/2
**views [5]** 73/1 73/7
73/8 73/22 85/23
**Vince [1]** 5/5
**Vince Colatriano [1]**
5/5
**Vincent [1]** 1/16
**violated [6]** 14/1 85/14
114/23 116/10 119/1
138/20
**violating [2]** 115/14
115/25
**violation [1]** 57/8
**Virginia [3]** 105/1
105/5 105/14
**vividly [1]** 68/21
**volatility [1]** 50/12
**vouch [2]** 42/17 42/21
**vs [1]** 1/5

**W**

**wait [1]** 104/3
**waive [2]** 91/7 103/14
**walk [2]** 36/13 72/21
**walked [3]** 48/8 86/19
116/15
**walker [1]** 6/16
**Wall [5]** 91/18 95/21
95/22 97/12 100/17
**want [37]** 6/4 6/6 7/7
8/10 59/18 68/1 68/19
71/23 73/1 77/16 78/2
83/4 88/24 95/3 96/1
96/6 96/7 96/11 96/13
96/15 100/8 101/11
104/20 105/19 107/13
109/12 119/21 125/3
129/24 129/24 132/18
132/21 135/6 136/8
137/3 138/7 138/8
**wanted [8]** 7/1 60/22
83/1 83/4 83/23 84/10
102/23 138/13
**wants [2]** 60/21 83/18
**warrant [1]** 126/23
**warranted [1]** 109/11
**was [255]**
**Washington [11]** 1/5
1/18 1/19 2/4 3/7 3/14
26/25 91/18 95/22 98/7
100/17
**wasn't [9]** 16/13 28/5
28/11 63/10 63/20 64/2
88/21 95/6 99/12
**watched [1]** 36/6
**way [18]** 12/12 12/13
16/10 23/22 29/19
29/20 32/1 38/7 39/14
43/13 63/20 69/9 75/13
84/2 87/22 109/9

**ways [1]** 115/25
**we [197]**
**we believe [6]** 56/12
69/6 98/23 106/24
114/10 121/4
**we don't [1]** 137/23
**we will [8]** 7/25 8/2
8/12 33/2 50/18 77/6
119/12 138/22
**we'd [2]** 104/23 134/10
**we'll [17]** 6/1 6/8 54/15
57/14 76/18 77/7 94/9
94/21 94/25 103/14
105/16 111/18 111/24
137/9 137/18 139/6
139/7
**we're [33]** 7/12 17/4
24/9 33/15 33/15 34/20
35/5 39/10 50/9 50/23
50/24 51/19 57/14
63/25 64/3 69/3 72/5
86/3 86/8 87/19 88/23
89/2 90/24 91/3 101/12
103/22 105/9 116/25
120/18 136/4 136/11
138/7 139/3
**we've [17]** 7/19 9/19
14/1 17/22 25/6 59/22
68/10 81/7 108/2 108/4
108/9 110/3 110/10
110/15 111/20 112/3
138/11
**website [2]** 45/13
45/14
**weekend [1]** 6/19
**weekly [3]** 26/22 28/14
28/19
**weight [6]** 9/17 9/18
12/2 54/20 54/22 71/13
**well [55]** 6/8 8/20 9/5
11/11 12/20 15/6 29/24
36/12 39/23 45/13 46/3
47/18 49/1 51/12 53/4
53/16 53/17 56/2 56/10
57/12 59/7 59/9 60/12
61/3 62/10 62/25 63/2
63/9 65/4 69/16 72/9
74/1 74/7 74/11 75/13
79/10 80/22 81/10
89/13 91/7 93/24 94/11
100/24 103/23 107/19
109/19 116/25 120/2
124/15 127/25 129/14
133/3 133/6 135/11
137/5
**well-aware [1]** 124/15
**well-briefed [1]** 91/7
**went [11]** 7/1 61/12
65/17 66/3 71/3 72/14
79/25 82/4 89/17 116/4
133/6
**were [97]** 10/2 12/15
14/8 15/5 17/16 17/24
23/9 23/18 23/19 24/24
25/5 26/10 27/8 27/11
29/8 29/17 29/19 29/20
29/24 30/15 30/16

30/22 35/18 35/19
35/20 35/21 35/22
35/24 35/25 37/7 37/8
38/3 38/4 38/7 42/17
42/22 45/19 45/20
47/17 48/6 48/7 48/14
55/18 56/25 57/4 58/1
58/3 59/5 61/10 61/21
61/25 62/4 62/7 62/14
65/1 65/10 66/14 74/3
74/23 74/24 75/4 75/18
78/15 78/19 79/24
80/22 81/18 81/21
81/24 87/22 87/23
88/23 89/17 91/2 92/16
94/3 94/4 94/7 94/11
97/4 98/18 99/2 99/7
99/9 99/15 99/15 99/18
102/7 102/19 102/21
107/25 115/6 115/25
117/19
**weren't [5]** 27/9 79/10
90/21 94/5 134/9
**Westlaw [1]** 22/20
**what [175]**
**what's [13]** 34/16
41/20 46/11 48/2 90/13
92/18 94/16 99/18
108/1 117/25 120/10
128/10 136/7
**whatever [8]** 6/4 6/5
70/10 92/15 101/2
101/4 124/10 133/19
**whatsoever [5]** 11/15
17/25 41/5 42/4 55/25
**when [28]** 6/21 6/23
7/6 9/23 13/21 26/17
32/20 36/7 51/10 57/21
61/6 62/5 65/17 66/3
71/3 72/25 73/5 83/15
92/22 93/14 97/14 98/3
98/20 106/24 116/18
118/19 123/25 137/3
**where [22]** 19/25 22/10
22/15 29/4 37/13 41/15
57/25 65/8 67/13 73/20
77/4 97/2 98/4 101/24
115/7 124/18 124/22
127/2 127/18 133/18
133/22 138/19
**whereas [4]** 37/4
103/21 109/9 119/13
**whereby [2]** 64/25 65/9
**whether [26]** 26/7
26/18 26/18 29/22
33/10 41/9 51/7 59/16
75/17 85/13 92/19
93/15 95/20 98/5
100/18 105/22 107/22
109/17 114/20 114/23
115/3 116/9 118/16
118/24 127/12 127/13
**which [61]** 11/25 14/2
15/2 15/12 18/25 24/10
27/5 27/9 30/2 30/25
32/11 32/12 36/8 40/7
40/23 41/17 42/6 43/14

42/21 68/15 73/21
74/13 75/16 79/20 80/4
80/7 82/9 83/11 83/19
84/6 88/12 89/20 97/12
98/7 100/16 102/24
103/5 104/13 110/17
110/20 111/21 112/10
112/20 116/10 116/21
118/19 119/6 119/7
120/3 120/6 121/4
123/2 123/23 124/1
129/1 133/13 134/9
**while [3]** 73/6 81/24
120/24
**white [3]** 8/5 109/5
109/6
**White House [1]** 8/5
**who [28]** 6/13 7/5 9/14
13/21 34/13 41/6 41/8
41/16 42/9 42/25 46/9
48/21 51/2 51/3 55/20
55/21 55/22 59/4 74/6
80/6 84/16 87/7 93/22
96/1 99/18 131/22
133/10 135/15
**who's [2]** 6/21 48/22
**whole [18]** 12/5 14/4
14/19 43/15 50/4 63/8
87/25 111/4 130/22
131/11 131/23 132/5
132/7 132/16 133/8
133/13 135/18 135/25
**wholly [1]** 71/15
**why [37]** 7/15 20/6
30/9 30/12 31/9 38/11
43/16 53/13 57/6 66/15
70/5 71/22 72/22 73/12
74/2 74/4 74/19 75/10
76/16 78/20 80/13
80/22 82/18 96/6 98/18
99/15 112/3 115/19
116/16 126/12 126/18
130/13 130/22 130/23
131/1 132/6 132/15
**widespread [1]** 19/5
**wife [1]** 6/19
**will [53]** 6/13 6/16 6/21
6/22 6/22 6/23 7/6 7/19
7/25 8/2 8/12 8/24
10/24 22/22 22/25 30/19
31/4 31/19 32/16 32/23
33/2 34/13 40/6 46/1
50/12 50/16 50/18
57/24 72/23 73/8 77/6
85/4 91/3 100/14
100/25 100/25 101/10
103/10 106/1 106/14
107/21 111/11 112/2
112/4 112/21 119/12
120/2 128/14 131/13
131/21 135/17 136/25
138/22
**William [3]** 3/11 140/2
140/8
**willing [2]** 90/24 91/3
**Wilmington [1]** 2/17
**wind [2]** 10/24 116/6

**winded [1]** 70/1
**window [1]** 86/25
**wish [2]** 5/24 77/19
**withhold [1]** 105/13
**within [16]** 66/7 71/7
78/18 78/25 80/8 80/8
80/9 81/3 81/12 83/12
89/7 97/7 97/8 105/6
124/12 128/5
**without [12]** 34/25
35/2 39/4 43/4 43/4
55/12 93/17 95/5
100/19 115/14 115/25
124/9
**witness [17]** 42/8 42/9
42/13 42/15 43/4 43/5
47/23 48/11 48/12
48/13 48/20 57/9 91/1
100/5 133/20 133/23
133/23
**witnesses [7]** 34/12
34/13 46/9 46/9 47/25
56/24 72/18
**WL [2]** 37/18 37/24
**won't [2]** 18/14 116/17
**word [4]** 10/11 26/3
38/23 59/11
**words [22]** 25/13 26/2
55/23 63/6 71/21 75/21
80/16 80/17 80/21
80/25 81/8 86/20 86/23
87/10 87/12 88/22
89/24 90/17 102/4
102/19 132/21 133/5
**work [5]** 21/7 70/11
83/25 84/5 137/5
**works [1]** 9/5 48/10
132/17
**worth [38]** 9/16 11/7
11/7 11/17 15/17 16/19
17/5 17/12 17/17 18/5
18/13 18/21 23/4 23/20
25/7 30/12 31/24 32/10
32/11 57/11 57/22 58/4
58/8 58/17 58/21 60/9
68/20 69/18 74/19 76/1
76/4 80/14 85/13 92/23
94/2 99/11 112/20
138/21
**would [69]** 4/8 4/15 8/5
9/25 10/15 11/9 17/20
28/4 31/8 33/6 33/18
33/20 37/15 38/11
38/20 39/9 40/17 42/10
43/7 45/25 54/20 58/5
58/18 60/17 61/1 65/2
65/10 70/5 71/23 74/1
74/8 74/11 81/8 83/2
83/24 84/10 84/12
85/22 86/8 90/2 101/4
103/7 105/10 105/12
108/20 110/1 111/19
112/12 113/16 114/8
117/4 117/24 119/18
126/4 126/21 126/23
126/23 129/4 129/12
129/17 132/13 134/2
134/3 135/8 135/12

**W**

**would... [4]** 136/21
137/5 137/20 138/6
**wouldn't [1]** 16/17
**wrap [1]** 133/3
**writ [1]** 100/12
**write [4]** 78/15 134/2
135/8 135/9
**writes [2]** 121/20
135/16
**writing [4]** 121/12
122/1 125/5 135/1
**written [5]** 91/17
135/21 135/24 135/25
136/2
**wrong [8]** 31/9 38/4
53/1 53/12 53/13 82/24
113/10 113/16
**wrote [4]** 82/11 85/11
133/7 135/12

**Y**

**y'all [1]** 6/6
**yeah [7]** 26/18 68/17
78/8 91/14 96/3 96/9
133/23
**year [2]** 19/1 19/2
**Yep [2]** 7/24 111/14
**yes [13]** 4/15 5/11
37/23 44/10 51/6 89/18
101/20 101/21 101/24
104/11 115/21 136/24
137/2
**yesterday [1]** 137/23
**yet [4]** 26/14 31/5 44/8
65/11
**yield [2]** 9/20 16/11
**yields [1]** 14/11
**York [4]** 2/4 2/14 31/15
95/21
**you [164]**
**you'll [2]** 104/19 134/7
**you're [6]** 5/25 7/23
15/19 62/24 63/20
84/15
**younger [2]** 6/20 7/6
**your [338]**
**Your Honor [294]**
**Your Honor's [16]**
10/10 16/9 30/24 32/5
32/18 33/3 33/7 60/1
78/1 79/15 80/8 82/4
82/17 84/9 86/10
102/19

**Z**

**Zagar [7]** 2/7 4/17 7/11
40/4 52/11 52/18 53/9
**Zaremba [3]** 3/11
140/2 140/8
**zero [3]** 26/10 30/4
31/23