

# Discussion of a Proposed Single Agency Security

## ASF WHITE PAPER SERIES

## JULY 2, 2012



American SECURITIZATION FORUM®

Protected Information To Be Disclosed Only In Accordance With Protective Order      FHFA00047894

# Table of Contents

I.   Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  Current TBA Market Inefficiencies . . . . . . . . . . . . . . . . . . . . . . 1

III. Standardization and Fungibility of Agency Securities . . . . . . . . . . . . 3

IV.  Characteristics of a Single Agency Security . . . . . . . . . . . . . . . . . 3

       Pooling, Delivery and Remittance Requirements . . . . . . . . . . . . . . 3

       Underwriting and Servicing of Mortgage Loans . . . . . . . . . . . . . . 4

       Disclosure and Reporting . . . . . . . . . . . . . . . . . . . . . . . . . 5

       Guarantee Fee Pricing . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       Nature of the Guarantee . . . . . . . . . . . . . . . . . . . . . . . . . 6

       Existing Securities . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       TBA Deliverability . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

V.   Potential Benefits of a Single Agency Security . . . . . . . . . . . . . . . 9

Exhibit 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11



American
SECURITIZATION
FORUM.

One World Financial Center, 30th Floor ■ New York, NY 10281-0006 ■ 212.412.7100
Columbia Center ■ 1152 15th Street, N.W., Suite 100 ■ Washington, D.C. 20005-1706 ■ 202.400.3600
www.americansecuritization.com

© American Securitization Forum, Inc. July 2012. All rights reserved.

Protected Information To Be Disclosed Only In Accordance With Protective Order       FHFA00047895

# I. Overview

The American Securitization Forum ("ASF")[1] releases this white paper in response to the Strategic Plan[2] issued by the Federal Housing Finance Agency ("FHFA"), which, among other things, proposes to build a new infrastructure for Fannie Mae and Freddie Mac (the "GSEs"). We understand that FHFA and the GSEs currently are taking steps to implement this Plan, including the development of a single securitization platform that would "allow for a single mortgage-backed security."[3] We believe that secondary mortgage market participants must play an integral role in the implementation of any such security, and that FHFA should also consider the pricing inefficiencies that currently exist in the market for Fannie Mae Mortgage-Backed Securities ("MBS") and Freddie Mac Participation Certificates ("PCs"). We offer this white paper as a resource to FHFA that outlines our originator, investor and dealer member views on a unified agency security (the "Single Agency Security") that could be substituted for Fannie Mae MBS and Freddie Mac PCs. While this paper outlines many areas of agreement among our members on how FHFA should proceed if it endeavors to create a Single Agency Security, there are also differences of opinion that should be carefully considered. As an overarching principle, however, all parties support the continued availability of a deep and liquid to-be-announced ("TBA") market for agency securities and ask that FHFA avoid any actions that would inhibit such market.

This white paper is not meant to address broader GSE reform that may be considered and enacted by Congress over the long-term (although the ideas expressed herein would not hinder such reform either). Rather, it is meant to provide industry views on the single security goals outlined in FHFA's Strategic Plan and to set forth steps to minimize, or even eliminate, some of the pricing inefficiencies that currently exist in the market. We believe that all of the ideas set forth in this paper can be implemented without amendments to the GSEs' charters, and thus can be acted upon by FHFA without any additional Congressional action.

# II. Current TBA Market Inefficiencies

The current trading markets for Fannie Mae MBS and Freddie Mac PCs are distinct, in part because each GSE has different operational and underwriting requirements for pools of loans and different payment dates for securities. The secondary mortgage marketplace values Freddie Mac and Fannie Mae securities differently, despite FHFA's conservatorship of both entities, which has resulted in the U.S. government currently providing unlimited support to both entities. Some market observers have attributed the difference in market pricing to the fact that Freddie Mac PCs prepay faster than comparable Fannie Mae MBS, likely in part because of

---

1   The American Securitization Forum is a broad-based professional forum through which participants in the U.S. securitization market advocate their common interests on important legal, regulatory and market practice issues. ASF members include over 330 firms, including issuers, investors, servicers, financial intermediaries, rating agencies, financial guarantors, legal and accounting firms, and other professional organizations involved in securitization transactions. ASF also provides information, education and training on a range of securitization market issues and topics through industry conferences, seminars and similar initiatives. For more information about ASF, its members and activities, please go to www.americansecuritization.com.

2   *See* "A Strategic Plan for Enterprise Conservatorships," February 21, 2012 (the "Strategic Plan"), at http://www.fhfa.gov/webfiles/23344/StrategicPlanConservatorshipsFINAL.pdf, which was incorporated into FHFA's broader "Strategic Plan: Fiscal Years 2013-2017" on May 14, 2012.

3   Strategic Plan at 13.

Protected Information To Be Disclosed Only In Accordance With Protective Order          FHFA00047896

differences in underwriting and operational guidelines between the two entities. Other market participants suggest that Freddie Mac PCs prepay faster than Fannie Mae MBS because Freddie Mac often offers lower guarantee fees to attract business, although to some extent, such a concession is necessary to normalize the pricing discrepancy between the securities. In any event, Freddie Mac PCs also enjoy less liquidity as compared to similar Fannie Mae MBS, and the spread between the two has widened sharply since the Fall of 2011.[4] This widening has resulted, at least in part, in a decrease in Freddie Mac's market share, which has, in turn, further compounded the negative pricing implications. For many years, approximately 60% of new conforming mortgage originations were sold to Fannie Mae, with the remaining 40% sold to Freddie Mac. In November 2011, Freddie Mac's share of new MBS fell to 30%, and, in December 2011, to 19%.[5] In 2011 as a whole, Freddie Mac issuance dropped to 34%, which is its lowest share since Fannie Mae and Freddie Mac began issuing in the same year.[6] For most of 2012, Freddie Mac's share of purchases has continued to be below the historical market share of 40%.[7]

Freddie Mac pools historically have traded at a discount to Fannie Mae pools, and Freddie Mac traditionally has made up for this discount by providing loan sellers a lower guarantee fee or other concessions.[8] For example, Freddie Mac often will offer a "market adjustment payment" to lenders to normalize the pricing differential. As noted above, large originators shifted their sales from Freddie Mac to Fannie Mae in the Fall of 2011. As they did, the trading price of Freddie Mac pools experienced a significant decline. This shift has resulted in less volume for Freddie Mac PCs, which has further amplified the liquidity concession already inherent in such securities. Whatever the cause of the different market perceptions of Fannie Mae and Freddie Mac, these inefficiencies exist despite taxpayer support through FHFA's conservatorship of both entities. As noted by the FHFA, even though Freddie Mac's credit is bolstered by the same taxpayer support as Fannie Mae enjoys, "Freddie Mac has often charged lower guarantee fees to compensate lenders for the lower pricing of its MBS, relative to Fannie Mae's, in the capital markets."[9] Because these incentives decrease revenue to Freddie Mac relative to Fannie Mae, they effectively act as a further government subsidy under the conservatorship.

The conservatorship arose through enactment of the Housing and Economic Recovery Act of 2008 ("HERA"), which created FHFA and granted the FHFA Director power to appoint FHFA as conservator of the GSEs.[10] HERA requires FHFA to take actions appropriate to "preserve and conserve [the GSEs'] assets," which has been interpreted as a directive effectively to minimize taxpayer losses.[11] HERA also requires the FHFA Director to ensure that the operations and activities of the GSEs foster "liquid, efficient, competitive, and resilient national housing finance markets…." We believe that taking steps to eliminate current GSE market

---

4   For example, the spread between 30-year, 4.5% Fannie Mae MBS and Freddie Mac PCs was approximately 30 cents on October 31, 2011 and approximately 48 cents on June 12, 2012. For a look at the change in spread over time, please see Exhibit 1.

5   The Outlook in MBS and Securitized Products, Deutsche Bank Securities, Inc., January 11, 2012, at 10.

6   Calculation based on data compiled by SIFMA.

7   Freddie Mac's share of new issuance was 35%, 42%, 31%, 38% and 28% for January, February, March, April and May, respectively.

8   See http://www.fhfa.gov/webfiles/22642/2011GFeeReportFinal.pdf at 17.

9   Id.

10  Housing and Economic Recovery Act of 2008, Public Law 110–289—July 30, 2008.

11  Strategic Plan at 7.

2

Protected Information To Be Disclosed Only In Accordance With Protective Order          FHFA00047897

**000214**

inefficiencies, including standardizing terms among Fannie Mae and Freddie Mac securities and creating a Single Agency Security, is consistent with these statutory mandates.

# III. Standardization and Fungibility of Agency Securities

A key driver of liquidity in the agency market is fungibility of each GSE's securities. In order for a Single Agency Security proposal to be effective, fungibility must extend across the Single Agency Securities, regardless whether they were issued by Fannie Mae or Freddie Mac. For this to occur, both perceptions about and features of Fannie Mae MBS and Freddie Mac PCs, which contribute to the current pricing differential, must be eliminated. Our members agree that achieving this goal would require a standardization of the operational guidelines that influence market perception and price of the securities. There is a consensus view among our members that the following items would have to be standardized for the securities to be fungible: (i) loan delivery and pooling requirements; (ii) remittance requirements; (iii) underwriting guidelines and refinance programs; (iv) servicing standards and loan repurchase policies; and (v) disclosure policies. Each of these elements could be achieved in the near-term, by leveraging guidelines and standards that already exist or are currently being developed. However, there are two items that will impact fungibility about which our originator and investor members disagree: (x) guarantee fee pricing for Single Agency Securities and (y) identification of the GSE guaranteeing such securities. These items, including the differing views of our members, are described in greater detail below.

# IV. Characteristics of a Single Agency Security

## Pooling, Delivery and Remittance Requirements

Although the difference in market share and volume contribute to the pricing differences between Fannie Mae MBS and Freddie Mac PCs, other factors contribute as well. That is, even if the market share for the two GSEs were identical, the pooling, delivery and remittance requirements for Fannie Mae MBS and Freddie Mac PCs still would result in varying bond valuations and different collateral allocations by originators. For example, Fannie Mae and Freddie Mac securities have different payment dates, causing different payment delays, which affect pricing.[12] We propose that Single Agency Securities adopt a single remittance and payment date structure to eliminate any current pricing implications. We believe it would be most feasible to move all of the payment dates to the 25th of the month, matching Fannie Mae's current payment date structure.

More complicated, perhaps, is deciding how to handle the actual delivery of assets to the GSEs once the Single Agency Security program begins. Recognizing the complexity of this issue, the 2012 Conservatorship Scorecard requires that each GSE "[i]n collaboration with FHFA and the other [GSE], develop and finalize a plan by December 31, 2012 for the design and build of a single securitization platform that can serve both

---

12 Freddie Mac Gold and ARM PCs feature a payment delay of 45 and 75 days, respectively, from the time interest begins to accrue and the time the investor receives a payment. Fannie Mae MBS feature a payment delay of 55 days from the time interest begins to accrue and the time the investor receives a payment.

3

Protected Information To Be Disclosed Only In Accordance With Protective Order      FHFA00047898

[GSEs] and a post-conservatorship market with multiple future issuers."[13] Although it is possible that the "single securitization platform" could be one of the existing GSE platforms, FHFA is planning to build an entirely new platform that would use newer technology than either GSE uses today. In fact, FHFA notes that any new platform "should have open architecture that will permit multiple future issuers of mortgage-backed securities to access the platform and it should be flexible enough to permit a wide array of securities and mortgage structures."[14] The Scorecard requires the plan to be completed by December 31, 2012, but implementing the plan could take years, particularly if an entirely new platform is envisioned.

Although it would be possible to design a system whereby originators could continue to deliver assets to either GSE, which would pool those assets under the same requirements into a Single Agency Security, it would likely take a significant amount of time for one GSE to conform to the other's pooling requirements or for both GSEs to develop a new system from the ground up as described in the Strategic Plan. Instead, a near-term solution that would ensure standardization involves originators being directed to deliver all assets to the GSEs through the channels they currently use to deliver assets to Fannie Mae. Fannie Mae MBS have greater volume and liquidity, and market participants believe their current pooling and delivery requirements are satisfactory. Fannie Mae would accept Fannie Mae assets as principal, and Freddie Mac assets on behalf of Freddie Mac. Internally, the assets could be "credited" to one GSE versus the other, or subdivided between the two, but the security issued in exchange for the assets would be a Single Agency Security. This arrangement would involve Freddie Mac outsourcing its loan delivery mechanism to Fannie Mae, which we believe can be done pursuant to an FHFA directive. We are not advocating the merger of the two companies, which may require Congressional action. Finally, regardless of the delivery system employed, the GSEs should maintain the option of single-issuer and specified pool deliveries in addition to the ability to form mega/giant pools.

## Underwriting and Servicing of Mortgage Loans

Fannie Mae and Freddie Mac have separate guidelines and underwriting systems for the origination and servicing of mortgage loans. The differences are not significant from the point of view of private market originators and servicers, but they do create certain difficulties for ensuring that collateral is fungible. To resolve current differences in underwriting, we suggest that FHFA develop a uniform set of guidelines that would be applicable to each GSE for all collateral underlying a Single Agency Security. Standardizing underwriting guidelines used by the GSEs would resolve the different perceptions that currently exist with respect to each GSE's collateral.[15] To resolve current differences in servicing, we suggest that both GSEs adopt the universal servicing standards currently being considered by regulators. We also note that the Scorecard requires the GSEs to collaborate with one another and FHFA on a specific proposal for standard GSE trust documentation,

---

13  2012 Conservatorship Scorecard, Federal Housing Finance Agency, March 9, 2012 (the "Scorecard"). *See* http://www.fhfa.gov/webfiles/23438/ExecComp3912F.pdf.

14  Strategic Plan at 13.

15  The GSEs have automated underwriting systems that originators use to underwrite most loans pooled with the GSEs. Fannie Mae's system is known as Desktop Underwriter®, or DU, and Freddie Mac's is known as Loan Prospector®, or LP. In addition to adopting a single set of underwriting guidelines, we believe it would be most efficient to shift automated underwriting to a single system.

4

Protected Information To Be Disclosed Only In Accordance With Protective Order          FHFA00047899

including a "model pooling and servicing agreement," by December 31, 2012. We believe that adopting standardized documentation for the GSEs will go a long way toward eliminating differences that result in market inefficiencies. As the Federal Reserve Bank of New York observed, "standardization of documentation, structuring and mortgage underwriting criteria within the TBA-eligible universe are likely important to help maintain fungibility across securities."[16] Furthermore, such a document could standardize repurchase policies across GSEs, which have a direct impact on the prepayment speeds of agency securities.

It is also critical that streamlined and other refinance programs, including government programs, be standardized across GSEs, so that one GSE cannot employ a refinance program that results in more, or fewer, refinances. For the most part, refinance programs used by the GSEs tend to favor the entity that originally guaranteed the loan, such that a direct link exists between the aggregate volume of refinancings that a GSE undertakes and the prepayment performance of its securities. For this reason, if Freddie Mac employs a more flexible streamlined refinance program (or government program such as HARP) than Fannie Mae, the prepayment speed on the loans underlying Freddie Mac securities will likely increase relative to those underlying Fannie Mae securities.

## Disclosure and Reporting

Investors should have access to robust disclosure and reporting on the Single Agency Securities, which will increase the information about the actual characteristics of the assets and seek to replace existing assumptions that are based upon the GSE issuing the security. The GSEs already are developing templates for enhanced loan-level disclosures for MBS that incorporate market standards and are consistent with maintaining liquidity in the TBA market. The Scorecard requires the template to be submitted to FHFA by June 30, 2012,[17] which should be sufficient in terms of timing. In addition, our members strongly believe that enhanced loan-level information also should be made available by the GSEs on existing securities, so that market participants can better understand those securities and how the standardization of terms outlined in this paper may impact price and performance of Single Agency Securities.

## Guarantee Fee Pricing

Our members disagree on how guarantee fee pricing should be calculated in a Single Agency Security regime.

Our originator members believe that they should continue to "face" Fannie Mae and Freddie Mac separately. For example, each GSE would still have its own requirements and processes for pricing and liquidity, loan seller approvals and delivery of audited financials. They would be able to adjust guarantee fees based upon their separate perception of a seller's financial wherewithal to fulfill any ongoing obligations, including repurchase obligations, as well as their perception of the credit quality of the mortgage loans to be pooled. Originators believe that competition between Fannie Mae and Freddie Mac will result in market-

---

16 Federal Reserve Bank of New York, Staff Report no. 468 (August 2010), at 23.

17 Scorecard at 2.

5

Protected Information To Be Disclosed Only In Accordance With Protective Order     FHFA00047900

driven guarantee fee pricing, which will ultimately result in a more efficient secondary mortgage market and better pricing to consumers. Unlike the other guidelines being standardized in this paper, originators do not believe that there is a strong link between guarantee fee pricing and prepayment experience. As such, the GSEs would continue to compete with one another without hindering the fungibility achieved by the Single Agency Security. To protect this ability to compete, if delivery were to be accomplished through Fannie Mae for both companies, originators suggest creating internal firewalls to ensure that the guarantee fee pricing would remain confidential. For example, Fannie Mae could separate those who accept delivery of the assets and credit those assets, and the fees associated with them, to the individual GSEs, from those who participate in the pooling and issuance portion of the business. In addition, processes likely would need to be implemented to ensure that delivery is appropriately made through Fannie Mae while business decisions continue to be made by each GSE separately.

Our investor members believe that the originators' goal of fungibility of Single Agency Securities will not be achievable as long as the GSEs are permitted to price the guarantee fee separately. Allowing competition between Fannie Mae and Freddie Mac will ultimately result in different prepayment speeds on the loans, as originators may be inclined to deliver loans, including refinances, to the GSE with cheaper fees. Uniform guarantee fee pricing imposed by FHFA on the GSEs would promote consistent performance of the securities, which is essential if a true Single Agency Security is being considered. It is our understanding that a uniform pricing scheme would not cause antitrust concerns, as the GSEs would merely be following a directive imposed by their primary regulator, FHFA.

## Nature of the Guarantee

Our members disagree on whether the GSE issuing and guaranteeing the security should be identified.

As noted by FHFA, the GSEs' ongoing operations are entirely dependent on taxpayer support provided through the Senior Preferred Stock Purchase Agreements (each, an "SPSPA") entered into with the Treasury Department at the same time the conservatorship began.[18] Under the agreement, the Treasury Department has pledged an unlimited amount of support until the end of 2012 and a capped amount thereafter.[19] No one knows for sure whether further support will be needed, and if so, whether the Treasury Department will provide it. As long as unlimited support is provided to both Fannie Mae and Freddie Mac, the market will not distinguish the credit quality of either Fannie Mae MBS or Freddie Mac PCs in any meaningful way.

To ensure that the market remains indifferent to credit quality regardless of the status of conservatorship at any time, and to ensure fungibility of Single Agency Securities, our originator members propose a system of cross-indemnity in which each GSE jointly and severally guarantees payment of the newly created Single Agency Security or, in the alternative, each GSE would guarantee the other's security in second priority (i.e.,

---

18 Strategic Plan at 5 and *see* http://www.fhfa.gov/Default.aspx?Page=364.

19 On any date after December 31, 2012, Treasury's funding commitment to each GSE will be limited to $200 billion plus the cumulative amount of quarterly deficiency amounts for 2010-2012, less any surplus as of December 31, 2012, and less the aggregate amount of funding provided under the commitment prior to such date. *See* the SPSPAs, as amended, of each GSE. In their Form 10-Q filings for 1Q2012, Fannie Mae and Freddie Mac have estimated the available funding after 2012 to be $124.8 billion and $149.3 billion, respectively.

Protected Information To Be Disclosed Only In Accordance With Protective Order          FHFA00047901

each would pay claims if the other defaults).[20] In either case, originators believe it is essential that the Single Agency Security not be identified as primarily issued or guaranteed by either GSE, as such an identification would eliminate the efficiencies otherwise gained by creating the Single Agency Security. As explained above, investors currently make assumptions about each security based on the GSE that has issued it, which has resulted in significant pricing concessions for Freddie Mac PCs. Originators believe that attaching a Fannie Mae or Freddie Mac identifier to the Single Agency Security, or otherwise disclosing a particular GSE's involvement, will likely perpetuate the current pricing inefficiencies in the market. Originators believe that removing these designations would be consistent with the homogeneity of a Single Agency Security. Then, originators believe, pricing differences among Single Agency Securities with the same terms would be driven only by the specific characteristics of the collateral shown through transparent disclosure and reporting.

Our investor members believe that standardizing the applicable requirements of Fannie Mae and Freddie Mac issuance will likely move the prices of the two securities closer. However, they cannot endorse issuing Single Agency Securities without identifying the GSE that has issued and guaranteed the Single Agency Security, given that the agencies are different companies, and subject to distinct credit risks. Our investor members appreciate the originators' attempt to create a homogenous credit, but the current state of the GSEs requires investors to treat them as separate credits. Investors keep a close eye on the financial position of both GSEs, assuming that unlimited Treasury support will end after this year, leaving only specified amounts of support. Without further unlimited support having been pledged, investors need to make calculated decisions on how much exposure they can have to each GSE. Investors believe that a joint and several guarantee, or any other form of cross indemnification, could make the GSEs' credit situation even worse, as it would ultimately concentrate the risk associated with investing in GSE securities. For example, if government support ends and one of the GSEs is pushed to insolvency, the stronger GSE will also be at risk given that it has secondarily guaranteed all the obligations of the weaker GSE. Investors also note that they are subject to investor guidelines that have strict limits on the amount of Fannie Mae MBS and Freddie Mac PCs that can be purchased. Even if these restrictions could be changed, which would likely be burdensome and impractical, the concentrated risk created by cross indemnification could result in a reduced appetite for GSE securities.[21] For all of these reasons, our investor members believe that any Single Agency Security should include an identifier that indicates the GSE that issued and guaranteed the security. An identifier would enable investors to monitor their credit exposure to each GSE and price the securities differently should the circumstances warrant it.

## Existing Securities

How existing Fannie Mae MBS and Freddie Mac PCs will be affected by the development of the Single Agency Security is of critical importance to our investor members. Simply leaving all the existing securities outstanding without any change or option for exchange would create liquidity issues for those existing securities,

---

20 Originators note that these are just two potential avenues to creating homogenous credit, and any other alternative meeting the same goal should also be considered if it proves to be more practical.

21 Some accounts may have guidelines that are more flexible, permitting the purchase of securities that are "added to a benchmark," although this kind of flexibility is not universal.

7

Protected Information To Be Disclosed Only In Accordance With Protective Order          FHFA00047902

which will be exacerbated as they payoff over time and volume decreases. Moreover, it is possible that leaving the existing securities in place could lead to negative pricing implications for existing securities or the Single Agency Security to the extent either is considered superior by the market. Ultimately, the transition from existing securities to Single Agency Securities must be carefully planned, and FHFA should leverage industry expertise throughout the process to avoid actions that could have negative implications for market liquidity.

One possible approach is a voluntary tender offer or voluntary exchange by the GSEs through which existing securities can be replaced and exchanged for new securities. Because existing securities are likely to be less liquid if not exchanged, there may be sufficient incentive for investors to make an exchange. However, investors' decisions on when to make an exchange may vary and will depend on a number of factors, including the current interest rate environment, accounting and tax implications for converted securities, and yield targets. For this reason, the period within which an exchange can occur should not be finite and the terms of the exchange should be determined upon a precise formula that varies with movements in the market over time. Further, if the Single Agency Security ultimately includes a remittance date that is later than an investor's existing security (for example, moving remittance from the 15th to the 25th), such investor will lose the benefit of receiving its payments earlier in the month (i.e., the investor would lose "float" in the exchange). These concerns will have to be weighed along with other pricing considerations, such as a potential uptick in liquidity resulting from exchanging a Freddie Mac PC for a Single Agency Security.

Although our members disagree on whether an identifier should be included in new-issue Single Agency Securities (see *Nature of the Guarantee* above), our members agree that existing securities that are converted to Single Agency Securities should continue to be identified as either issued by Fannie Mae or Freddie Mac. Even though the conversion will ultimately standardize, among other things, the remittance date, servicing and disclosure relating to existing securities, the loans underlying such securities were underwritten and pooled under the existing regime for one GSE or the other, which will likely impact prepayment performance. Accordingly, investors believe that the identity of the original issuer of existing securities, Fannie Mae or Freddie Mac, is critical information, and existing securities converted into Single Agency Securities will need an identifier so that the market can continue to analyze these securities accurately.

Market participants agree that if conversion is permitted, it must not be required. There could be adverse tax or accounting consequences upon conversion for investors who hold existing GSE securities in managed accounts, funds or agency CMOs.[22] Agency CMOs, moreover, are complex instruments that in many cases have been structured to meet specific investor preferences, which could be upset by, for example, changing the payment date. Accordingly, any conversion that investors in existing GSE securities are granted must be voluntary.

## TBA Deliverability

Our members disagree on how the TBA market should function in a Single Agency Security regime.

Our originator members propose that if standardization between Freddie Mac and Fannie Mae securities

---

22 A CMO, short for "collateralized mortgage obligation," is a structured MBS that distributes payments and prepayments of mortgage principal across a number of different tranches in a prescribed order.

8

Protected Information To Be Disclosed Only In Accordance With Protective Order          FHFA00047903

is achieved, then separate Fannie Mae and Freddie Mac TBA deliveries should be eliminated and new issue Single Agency Securities should be accepted as TBA for Fannie Mae and Freddie Mac forward commitments. The Single Agency Security would have a new "ticker" on Bloomberg and would not be identified with either GSE. In this system, by mitigating the performance differences between Fannie Mae and Freddie Mac, investors should be indifferent to whether Fannie Mae or Freddie Mac is primarily responsible for the guarantee of timely payment of principal and interest on the securities. Any interest in the details of a security's performance should be based upon the loan-level information made available, rather than the identity of any GSE.

Our investor members understand that a primary reason to create a Single Agency Security regime is to unify the current TBA markets into one in which a single, fungible security can be delivered. However, as discussed in *Nature of the Guarantee* above, the GSEs are currently not a homogenous credit, and investors will continue to view them differently. Accordingly, in order to create a truly fungible Single Agency Security and allow delivery into a unified market, all of the investor concerns outlined in this paper would have to be adequately addressed. Unless that occurs, investors believe that the current bifurcated TBA market with separate Fannie Mae and Freddie Mac deliveries would have to continue. Investors believe this to be a prudent course in which market participants could study the pricing impacts associated with standardizing terms among Single Agency Securities over time, and better determine if a Single Agency Security with no identifiers, and thus one TBA delivery, could be implemented.

All of our members agree that development of a Single Agency Security should not eliminate the ability of sellers to create "specified pools" that involve selecting certain assets for pooling. Sellers have this ability today: it generally reduces the liquidity of the resulting security, but it enables sellers to create a customized investment experience, if desired, and may result in better execution.

## V. Potential Benefits of a Single Agency Security

Implemented correctly, a Single Agency Security could benefit all participants in the mortgage market, including borrowers, originators, investors and the U.S. government, which owns the controlling stake in the GSEs.

Eliminating market inefficiencies through a Single Agency Security should result in lower mortgage interest rates for borrowers. As a study by the Federal Reserve Bank of New York observed, a liquid TBA market "helps mortgage lenders manage risk, since it allows them to "lock in" sale prices for new loans as or even before those mortgages are originated. Ultimately, these benefits are passed on to mortgage borrowers in the form of lower and more stable interest rates."[23] Greater liquidity in the TBA market, therefore, should inure to the benefit of consumers. As the FHFA indicated in the Strategic Plan, "[e]nsuring, indeed enhancing, liquidity for mortgage-backed securities will be a central objective [of the single-security concept]."

The move toward the Single Agency Security will reduce costs to the American taxpayer. Many mortgage originators choose to deliver mortgages to Fannie Mae rather than Freddie Mac because the pricing of Fannie Mae MBS will result in better execution. The pricing differential can be substantial. For example, if Freddie

---

23 Federal Reserve Bank of New York, Staff Report no. 468 (August 2010), at 1.

9

Protected Information To Be Disclosed Only In Accordance With Protective Order          FHFA00047904

Mac 4.5s and 3.5s trade at a price that is 48 cents and 23 cents,[24] respectively, lower than Fannie Mae pools, an originator who delivers to Freddie Mac loses (on price alone) $4.8 million and $2.3 million, respectively, for every $1 billion of origination sold. As noted above, Freddie Mac has attempted to compensate for this, historically, by offering lower guarantee fees and other concessions. As the pricing differential widens, Freddie Mac may be forced to offer even lower guarantee fees and deeper concessions, or see a further reduction in market share. Lower guarantee fees mean less revenue for the company, and because the U.S. Treasury owns a substantial majority of the GSEs' equity, this reduced revenue may cost the government money. A Single Agency Security program seeks to alleviate the need for Freddie Mac to charge a lower guarantee fee or offer unwarranted concessions as compared to Fannie Mae. In addition, the move will enable the GSEs to reduce duplication and inefficiencies through a streamlined delivery process, which should reduce waste and result in a cost savings that can be passed along to the U.S. Treasury, saving the American taxpayer money.

------------------------------------------------

Should you have any questions or desire any clarification concerning the matters addressed in this paper, please do not hesitate to contact Tom Deutsch, ASF Executive Director, at 212.412.7107 or at tdeutsch@americansecuritization.com or Evan Siegert, ASF Managing Director, Senior Counsel, at 212.412.7109 or at esiegert@americansecuritization.com.

------------------------------------------------

24 Trading prices on June 12, 2012.

10

Protected Information To Be Disclosed Only In Accordance With Protective Order   FHFA00047905

# EXHIBIT 1

**Spread between 30-year, 4.5% Fannie Mae MBS and Freddie Mac PCs** (in cents)





One World Financial Center, 30th Floor ■ New York, NY 10281-0006 ■ 212.412.7100
Columbia Center ■ 1152 15th Street, N.W., Suite 100 ■ Washington, D.C. 20005-1706 ■ 202.400.3600
www.americansecuritization.com

11

Protected Information To Be Disclosed Only In Accordance With Protective Order        FHFA00047906

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order

DRAFT – VERIFICATION & REVIEW IN PROGRESS

# 2012 FHFA Scorecard
## May Assessment

**Board of Directors**

**Susan McFarland**
**Anne Gehring**

**July 19, 2012**



FHFA0004 7907

# Executive Summary of Key Updates, Issues and Risks

## DRAFT – VERIFICATION & REVIEW IN PROGRESS

### Commentary

**May 2012 Key Updates**

- The May 2012 update is based on the corporate priorities and resource planning recommendation to execute 24 projects in 2012

- All started projects are on track as of May 31, 2012; no new projects started in May

- The following projects have not started:

  – Strategic plan for future non-performing assets disposition - beyond pilot transaction – (Further FHFA guidance needed regarding the project deliverables)

  – Deliver timeline for continued growth in risk sharing in 2013 – (Plans and timeline dependent upon joint FNM/FRE Credit Risk Transfer initiative)

  – Expand pilot programs and establish ongoing sales program, as agreed to with FHFA, during 2012 – (Contingent upon the initial pilot roll out in Q3)

- Estimated total cost of projects in 2012 is ~$76 million*

**Issues & Risks**

- Resource constraints continue to be analyzed in an effort to ensure each area is able to operate at optimal capacity

- Scope refinement and timely guidance from FHFA is needed to achieve the defined deliverables

- Established a governance process for the review and approval of incremental funding requests as well as a reporting structure

- Managing and prioritizing the financial "asks" associated with projects that were not included in the 2012 administrative expense budget

* Includes funding requests currently under review in accordance with the FHFA Governance Process; excludes projects not started or projects for which costs are yet to be determined

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order



FannieMae

FHFA0004790B

000225

# DRAFT – VERIFICATION & REVIEW IN PROGRESS

## Prioritization Recommendation

### Prioritization Efforts

- Based on evaluation of all enterprise competing demands and resource constraints, the following recommendations were provided to FHFA in June 2012:
  - For 2012, revise the scope to Freddie Mac only:
    – Disposition of a pool of NPA by 9/30
    – Risk sharing transaction by 9/30
    – Risk sharing transaction beyond traditional MI's
    – Funding to facilitate REO Sales Program by 6/30
  - Delay proposal of a model PSA to 2013
  - Accounting Alignment project will be focused on forward looking matters only for 2013
  - For 2012, revise the scope of 5 FHFA scorecard projects to Fannie Mae only
  - Began operating in accordance with the Recommendation in May 2012

To identify additional opportunities to release capacity, the following parameters were considered:
- Level of effort
- Percent complete
- Internal vs. external control of scope/timing
- Strategic necessity
- Opportunity created to impact other projects or regulatory requests and allow for the release of capacity

### Assessment

| | # of projects |
|---|---|
| Current FHFA Ask | 29 |
| FRE Only | (4) |
| Postpone to 2013 | (1) |
| Recommendation | 24 |

← Level of Effort

Bottlenecks (# of impacted areas)* →

| | 4 | 3 | 2 | 1 | 0 | Total |
|---|---|---|---|---|---|---|
| High | 1 | 1 (1) | 6 (1) | N/A | 2 | 7 |
| Med | 1 (1) | 1 (1) | 2 | 0 | 2 | 4 |
| Low | N/A | (1) | 2 | 2 | 11 | 12 |
| Total | 1 | 0 | 10 | 2 | 11 | 24 |

### Slowing down, re-scoping or postponing projects could provide material relief to the bottleneck areas and release capacity

Confidential – Restricted

* 4 impacted bottleneck areas include - Loan Operations, Loan Accounting, Data Operations and Modeling and Analytics



FannieMae

FHFA0004 7909

# Financial Summary by Portfolio

DRAFT – VERIFICATION & REVIEW IN PROGRESS

## Portfolio Financials** *(dollars in millions)*



| | % spend | Total Projects Cost |
|---|---|---|
| Portfolio 1 | 3% / 75% / 21% | ~$32 |
| Portfolio 2 | 7% / 93% | ~$6 |
| Portfolio 3 | 100% | ~$3 |
| Portfolio 4 | 100% | ~$35 |
| | | ~$76 *** |

Base Budget ~$39M
Operating Plan/BAU ~$25M
Incremental Cost ~$12M

### Financial Update

**Base Budget**
- Overall 17 current projects are to be funded partially or fully through base budget
- 1 base budget project was re-scoped to Freddie Mac only

**Operating Plan/BAU Budget**
- In portfolio 1, 2 projects are to be funded through the Operating Plan and 1 project is to be funded through BAU1 Operating Plan budget project was re-scoped to Freddie Mac only

**Incremental Cost**
- 4* projects need partial or full incremental funding
- 1 project needing incremental funding was re-scoped to Freddie Mac only

**Other**
- Funding option for 2 projects is yet to be determined

**Four projects require incremental funding of ~$12M; financial needs are subject to change as projects progress and we better understand deliverables**



Confidential – Restricted

*2 projects are funded partially through base budgets
** Excludes 5 projects stopped/postponed and 4 projects not started or for which spend is yet to be determined
*** Includes funding requests currently under review in accordance with the FHFA Governance Process

Protected Information To Be Disclosed Only In Accordance With Protective Order

3

FannieMae

FHFA00047910

# 1. Build new infrastructure (30%)

## DRAFT – VERIFICATION & REVIEW IN PROGRESS

Overall Status: OT

| Weighting | 2012 Objectives | Targets / Measures | Status | May Assessment | Status |
|---|---|---|---|---|---|

Status legend: ▨ - On Track   ▨ - At Risk   ▨ - Late   ☐ - Not Started   ■ - Complete

**15%**

**Continued progress on, or completion of, mortgage market enhancement activities already underway**

* Loan-level Disclosure in MBS

* Enterprise will develop a template for enhanced loan level disclosures for single-family MBS which incorporates market standards and is consistent with maintaining TBA liquidity. Template to be submitted to FHFA by June 30, 2012.

**(EM)** * In collaboration with Freddie Mac, documented our objectives of a jointly submitted template, which has been agreed to by FHFA ●

* Uniform Mortgage Data Program

* Meet articulated UMDP timetables as follows **(Op Plan – ULDD):**
  –UAD electronic appraisal submission requirement by March 19, 2012.
  –ULDD format loan delivery data by July 23, 2012.

**(AB)** * UAD appraisal data now flowing through UCDP to Fannie Mae & Freddie Mac. ULDD Phase 1 successfully implemented into production as of April 23, 2012 ●

–Notify market of optional ULDD data points, including those necessary to improve disclosure and/or for other business uses in 2012

**(ZO)** * Completed ULDD joint workgroup and prioritized list of critical data points; completed initial draft of the customer outreach survey and identification of initial list of lenders and vendors ●

–Delivery of new ULDD data point in compliance with SEC Rule 15Ga-1 by November 30, 2012

**(EM)** * Final sign off of the Program Scope Document has been completed ●

* Notify market of servicing data standard, including data necessary to improve disclosure, and agree on timetable for data collection to begin in 2013 by December 31, 2012.

**(ZO)** * UMSD joint workgroup presented options at the May UMDP Governance meeting and put forward a recommendation. The recommendation was subsequently approved by FHFA ●

Legend: ☐ Operating Plan   ◯ Initials of executive sponsor   ☐ Policy decision and strategic analysis

Confidential – Restricted

4

Protected Information To Be Disclosed Only In Accordance With Protective Order

FannieMae

FHFA0004791

000228

# 1. Build new infrastructure (30%)

**DRAFT – VERIFICATION & REVIEW IN PROGRESS**

**Overall Status:** OT

| Weighting | 2012 Objectives | Targets / Measures | Status | May Assessment | Status |
|---|---|---|---|---|---|
| | * Uniform Mortgage Data Program (cont'd) | * Develop plans that leverage UAD and ULDD for enhanced risk management by December 31, 2012. | AB | * Draft plan to leverage UAD/UCDP completed. ULDD Data Stakeholder kick-off meeting completed | ● |
| | | * Cooperate with FHA implementation of portal to accept electronic appraisals. | ZO | * FHA is pursuing contracting options including a sole source justification to receive a transfer of GSE IP for use with a Veros technology solution | ● |
| 10% | * Seller-Servicer Contract Harmonization | * Appropriate resource allocation to seller-servicer contract harmonization and commitment to targeted timetables as outlined in FHFA directive | ZO | * All workstreams are on track. FHFA has revised the timeline for agreement to new Rep & Warrant model and plans to issue an implementation directive in June. Acting Director DeMarco reviewed the draft term sheet and supports a 36-month sunset period for the new Rep & Warrant Model | ● |
| | **Securitization Platform** | * In collaboration with FHFA and the other Enterprise, develop and finalize a plan by December 31, 2012 for the design and build of a single securitization platform that can serve both Enterprises and a post-conservatorship market with multiple future issuers. **(Op Plan – Securitization)** | DB | * Held a call with Pat Lawler on May 1st to discuss alternatives to implement a single security structure and to walk through the analysis of options for eliminating the MBS-PC spread<br>* Deliverable to be determined by FHFA on a quarter by quarter basis<br>**Guidance from FHFA required to further define the requirements of this 2012 objective** | ● |
| 5% | **Pooling and Servicing Agreements** | * Propose a model pooling and servicing agreement (PSA), collaborate with other Enterprise and FHFA on a specific proposal. Enterprise and FHFA on a specific proposal, seek public comment, and produce final recommendations for standard Enterprise trust documentation by December 31, 2012 | DB | * Based upon prioritization recommendation, project has been postponed to 2013 | N/A |

**Status:** ▨ - On Track   ▨ - At Risk   ■ - Late   ░ - Not Started   ■ - Complete

Legend:
- ▢ Operating Plan
- Policy decision and strategic analysis
- ◯ Initials of executive sponsor

Confidential – Restricted

**FannieMae**

FHFA00047912

000229

# DRAFT – VERIFICATION & REVIEW IN PROGRESS

## 2. Contract the Enterprises' dominant presence in the marketplace while simplifying and shrinking certain operations (30%)

Overall Status: **OT**

| Weighting | 2012 Objectives | Targets / Measures | Status | May Assessment | Status |
|---|---|---|---|---|---|

**Status legend:** ▓ - On Track   ▓ - At Risk   ▓ - Late   ░ - Not Started   ▓ - Complete

**10%**

**2012 Objectives:**

* Multifamily line of business

* Investment assets/ Non-performing loans

**Work with FHFA to evaluate options for meeting conservatorship goals, including shifting mortgage credit risk to private investors, via assessment of:**

* Investment assets/ Non-performing loans

**Targets / Measures:**

* Undertake a market analysis by December 31, 2012, of the viability of multifamily business operations without government guarantees. Review the likely viability of these models operating on a stand-alone basis after attracting private capital and adjusting pricing if needed. **(JH)**

* Make preparations for the competitive disposition of a pool of nonperforming assets by September 30, 2012. **(DB)**

* Perform analysis of investments portfolio as described in the strategic plan by the fourth quarter of 2012.
* Review options with board of directors and FHFA and make appropriate recommendations for future actions.
* Implement plan agreed to by board and FHFA. **(DB)**

**May Assessment:**

* Retained McKinsey to conduct further analysis and test models; retained E&Y to help on divestiture plan and governance; narrowing search to identify Investment Bank to analyze private capital alternatives, economists and rating agencies to provide external validations. Assessment of end of state models to be reviewed with BoD in July

* Based upon prioritization recommendation, the scope of the project has been revised to Freddie Mac only

* No May deliverables; project not started

**Status:** ● | N/A | ○

**Guidance from FHFA required to further define the requirements of this 2012 objective**

☐ Policy decision and strategic analysis
☐ Operating Plan
⬤ Initials of executive sponsor

Confidential – Restricted

6



FHFA0004-7913

000230

# 2. Contract the Enterprises' dominant presence in the marketplace while simplifying and shrinking certain operations *(cont'd)*

## DRAFT – VERIFICATION & REVIEW IN PROGRESS

Overall Status: **OT**

| Weighting | 2012 Objectives | Targets / Measures | Status | May Assessment | Status |
|---|---|---|---|---|---|
| **10%** | **Risk Sharing** | * Initiate risk sharing transactions by September 30, 2012. **(Op Plan – Credit Risk Transfer)** | AB | * Based upon prioritization recommendation, the scope of the project has been revised to Freddie Mac only | N/A |
| | | * Execute new risk sharing transactions beyond the traditional charter required mortgage insurance coverage | AB | * Based upon prioritization recommendation, the scope of the project has been revised to Freddie Mac only | N/A |
| | | * Deliver timeline and related Plan schedule for continued growth in risk sharing through 2013. | AB | * No deliverables for Q2; project expected to start in Q3 **Working with Patrick Lawler at FHFA to define final deliverable** | ○ |
| **10%** | **Pricing** | * Single-family Guarantee Fee Pricing Increases | AB | * Marginal increases have occurred as contracts expire. Selling Guide update provides the ability to change price for all customers beginning in Q4 2012. National price increase proposal to be presented to FHFA to increase prices by an avg. 5bps across the acquisition book **Working with Patrick Lawler at FHFA to define final deliverable** | ● |
| | | * Develop and begin implementing plan to increase guarantee fee pricing to more closely approximate the private sector. | AB | * Completed national price increase proposal that levels pricing between large and small lenders, to be presented to FHFA in June 2012 | ● |
| | | * Set uniform pricing across loan sellers to extent practicable. | AB | * FHFA revised target date for announcement of state-level pricing changes from Aug 31, 2012 to July 1. Fannie Mae has highlighted to FHFA concern with meeting the aggressive date | ● |
| | | * Work with FHFA to develop appropriate risk-based pricing by state. State-level pricing grid to be completed by August 31, 2012. | | **Working with Patrick Lawler at FHFA to define final deliverable** | |
| | | * Set plan to price for state law effects on mortgage credit losses given default | | | |

Status legend: ▨ - On Track   ▧ - At Risk   ▦ - Late   ☐ - Not Started   ■ - Complete

Policy decision and strategic analysis
☐ Operating Plan
⬤ Initials of executive sponsor

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order

**Fannie Mae**

FHFA00047914

# DRAFT – VERIFICATION & REVIEW IN PROGRESS

# 3. Maintain foreclosure prevention activities and credit availability for new and refinanced mortgages (20%)

Overall Status: **OT**

Status legend: [hatched] - On Track | [hatched] - At Risk | [black] - Late | [light] - Not Started | [black] - Complete

| Weighting | 2012 Objectives | Targets / Measures | May Assessment | Status |
|---|---|---|---|---|
| 10% | **Loss Mitigation through continued implementation and enhancement of SAI** | * Enhance transparency of servicer requirements around foreclosure timelines and compensatory fees and publish applicable announcements by September 30, 2012. | (TE) * FHFA approved the adjustments to the 2011 fees. Adjustments are expected to be invoiced in June 2012. FHFA approved changes for the 2012 fee structure along with other enhancement to the program | ● |
| | Short Sales | * Enhance short sales programs that include efforts to identify program obstacles that impact utilization by June 30, 2012. Applicable lender announcements to foreclosure alternatives by September 30, 2012. | (TE) * Continued to develop recommended strategies around Short Sales program | ● |
| | **Deeds in Lieu and Deeds-for-Lease** | * Design, develop, or enhance deed in lieu and deed-for-lease programs that include efforts to identify and resolve program obstacles that impact utilization by September 30, 2012. Applicable lender announcements to foreclosure alternatives by December 31, 2012. | (TE) * Continued to develop recommended strategies around Deeds in Lieu and Deeds-for-Lease programs while coordinating with both Freddie Mac and FHFA | ● |
| | REO Sales | * Implement, as needed, loans to facilitate real estate owned (REO) sales program by June 30, 2012. | (TE) * No actions required by Fannie Mae; confirmed with FHFA that this project is FRE only | N/A |
| | | * Initiate disposition pilot, either through financing or bulk sales, by September 30, 2012. | * On track to obtain bids for potential REO joint venture deal by the June deadline | ● |
| | | * Expand pilot programs and establish ongoing sales program, as agreed to with FHFA, during 2012. | * Project not started, pending rollout of initial pilot in Q3 2012 | ● |
| | | * Expand financing for small investors in REO properties by June 30, 2012. | (AB) * Working with three lenders to pilot expansion of small investor unit cap from 10 to 20 | ● |

Legend:
☐ Policy decision and strategic analysis
☐ Operating Plan
● Initials of executive sponsor

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order

**FannieMae**

8

FHFA0004-7915

000232

# 4. Manage Efficiently in Support of Conservatorship Goals (20%) Overall Status: OT

## DRAFT – VERIFICATION & REVIEW IN PROGRESS

| Weighting | 2012 Objectives | Targets / Measures | | May Assessment | Status |
|---|---|---|---|---|---|
| 20% | Conservatorship / Board Priorities | | | | |

**Status:** ░ - On Track   ▨ - At Risk   ■ - Late   ░ - Not Started   ■ - Complete

Targets / Measures:
* Prioritize and manage Enterprise operations in support of conservatorship goals and board directions.
* Adapt to evolving conservatorship requirements.
* Collaborate fully with FHFA and, when requested, the other Enterprise.
* Actively seek and consider public input on conservatorship-related projects, as requested *(TM)*
* Effectively identify, communicate, and remediate situations that create risk for the conservatorships or avoidable taxpayer losses.
* Ensure corporate governance procedures are maintained, including timely reporting to the board and adhering to board mandates and expectations. *(TM)*
* Take steps to mitigate key person dependencies and maintain appropriate internal controls and risk management governance. *(SM)*
* Work closely with FHFA toward concluding litigation associated with private label securities and whole loan repurchase claims, as appropriate
* Achieve milestones agreed to within the year with regard to accounting alignment.

May Assessment:
* Approved new Board governance structure for oversight of corporate goals and charter for new SI committee (approved by Board and FHFA)
* Provided FHFA with timely deliverables and collaboration on analysis of principal forgiveness and the development
* Presented Human Capital Contingency Plan to Board
* Attended MBA/SIFMA discussion to obtain industry input on GSE securities with FHFA
* Provided FHFA with proposal on Retained Attorney Network (RAN) restructuring, as requested
* Enterprise risk and legal teams continue to support FHFA in both PLS lawsuits and PLS subpoenas
* FNMA and FRE have biweekly and targeted meetings to discuss accounting alignment on new transactions

Confidential – Restricted

Policy decision and strategic analysis
Operating Plan
Initials of executive sponsor

9

Protected Information To Be Disclosed Only In Accordance With Protective Order

FannieMae
FHFA0004-7916

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order

# Appendix

# Project Summaries and Templates

DRAFT – VERIFICATION & REVIEW IN PROGRESS

10



FannieMae

FHFA00047917

Confidential – Restricted

# 1. Build – all started projects on track as of May 31, 2012 . . .

**DRAFT – VERIFICATION & REVIEW IN PROGRESS**

*Status as of May 31, 2012 – All Dollars in Millions*

**Overall Status:** OT

*Portfolio Status Update*

| Status | |
|---|---|
| ▪ On Track | ☐ At Risk | ▪ Late | ☐ Not Started | ▪ Complete |

**Objectives and Key Portfolio Updates**

**Continued progress on, or completion of, mortgage market enhancement activities already underway**

**Loan Level Disclosure in MBS**
- In collaboration with Freddie Mac, documented our objectives of a jointly submitted template, which has been agreed to by FHFA

**Uniform Mortgage Data Program**
- UAD appraisal data now flowing through UCDP to Fannie Mae & Freddie Mac. ULDD Phase 1 successfully implemented into production as of April 23, 2012
- Completed ULDD joint workgroup prioritized list of critical data points, completed initial draft of the customer outreach survey and identification of initial list of lenders and vendors
- Final sign off of the Program Scope Document has been completed
- UMSD joint workgroup presented options at the May UMDP Governance meeting and put forward a recommendation. The recommendation was subsequently approved by FHFA
- Draft plan to leverage UAD/UCDP completed. ULDD Data Stakeholder kick-off meeting completed
- FHFA is pursuing contracting options including a sole source justification to receive a transfer of GSE IP for use with a Veros technology solution

**Seller-Servicer Contract Harmonization**
- All workstreams are on track; FHFA has revised the timeline for agreement to new Rep & Warrant model and plans to issue an implementation directive in June. Acting Director DeMarco reviewed the draft term sheet and supports a 36-month sunset period for the new Rep & Warrant Model

**Securitization Platform**
- Held a call with Pat Lawler on May 1st to discuss alternatives to implement a single security structure and to walk through the analysis of options for eliminating the MBS-PC spread

**Pooling and Servicing Agreement**
- Project postponed to 2013

**Financials Summary**

| | Current | Prior |
|---|---|---|
| Projected Spend | ~$26M* | ~$20M* |
| Estimate to Finish | | |

*Excludes the project that is postponed to 2013

**Key Portfolio Issues and risks**

| Description | Current Status | Resolution / Mitigation |
|---|---|---|
| Risk: Guidance needed from FHFA with respect to one 2012 objective | Discussions in progress | Open |
| Issue: N/A | N/A | N/A |

| | |
|---|---|
| Original # of Projects | 10 |
| # of projects postponed/rescoped | (1) |
| **Revised # of projects** | **9** |
| Portfolio Weight | **30%** |

**FHFA has agreed to a jointly submitted GSE template on Loan Level Disclosure; discussions continue with FHFA to gain further clarity on Securitization Platform; PSA project has been postponed until 2013**

Protected Information To Be Disclosed Only In Accordance With Protective Order



FHFA00047918

000235

Confidential – Restricted

# 1. Build new infrastructure

**DRAFT – VERIFICATION & REVIEW IN PROGRESS**

*Objective : Loan-level Disclosure in MBS*

Overall Status: ☐ OT

| Executive Sponsor | Ed Watson |
|---|---|
| **Project Lead** | Debra Thompson/Laura Simms |

| FHFA Target / Measure |
|---|
| - Enterprise will develop a template for enhanced loan level disclosures for single-family MBS which incorporates market standards and is consistent with maintaining TBA liquidity.  Template to be submitted to FHFA by June 30, 2012 |

| Final Project Deliverable(s) |
|---|
| - Final document that serves as a template which includes SF fixed rate and ARM MBS for at issuance and on-going disclosure |

| Key Project Updates(s) |
|---|
| This is a non-development project, i.e. no systems work.  The template will be a document.  Feedback has been provided from Securitization Workstream and Capital Markets, as well as from Credit Suisse and JPMorgan.  Numerous working sessions have been held with Freddie Mac to derive a single template. Approximately 65% of over 400 potential data attributes have been reviewed and decisioned. Main focus has been to analyze "at issuance" data elements to support ULDDS's second phase requirements.  In collaboration with Freddie Mac, documented our objectives of a jointly submitted template which has been agreed to by FHFA |

**Status** *Status as of May, 31, 2012 - Dollars in Millions*

Status ☐ - On Track   ☐ - At Risk   ☐ - Late   ☐ - Not Started   ■ - Complete

| Project Financials Summary | | |
|---|---|---|
| Projected Spend | Started On | Q1 2012 |
| $0.09* | | |
| Estimate to Finish | Complete By | Jun-12 |
| $0.01* | | |
| *Funded through base budgets | | |

| Key Project Deliverables (By Quarter) | | |
|---|---|---|
| **Deliverable** | **Due Date** | **Status** |
| - First draft complete | Q1 2012 | C |
| - Internal Fannie Mae review with Capital Markets team | | |
| - Internal reviews with Mortgage Ops and Securitization, external reviews dealers/investors | Q2 2012 | |
| - 6/30 Deliver final template to FHFA | | OT |

| Key Project Issues and Risks | | |
|---|---|---|
| | **Description** | **Due Date** | **Resolution / Mitigation** |
| Risk: Not getting timely feedback or getting conflicting feedback from stakeholders | May 2012 | Feedback received from internal stakeholders and external stakeholders |
| Risk: If we have to develop a single template with Freddie Mac, it will impact our timeframe | Jun 2012 | Developed a memo with FRE to document our objectives of a joint single disclosure template which was agreed to by FHFA |
| Issue: None identified | N/A | N/A |

Protected Information To Be Disclosed Only In Accordance With Protective Order

**FannieMae**

FHFA00047919

000236

Confidential – Restricted

# DRAFT – VERIFICATION & REVIEW IN PROGRESS

## 1. Build new infrastructure

*Objective : Uniform Mortgage Data Program*

**Overall Status:** OT

| Executive Sponsor | Project Lead |
|---|---|
| Andrew BonSalle | Marianne Sullivan |

### FHFA Target / Measure
- Meet articulated UMDP timetables as follows **(Op Plan – UAD/UCDP & ULDD)**:
- UAD electronic appraisal data via UCDP by March 19, 2012
- ULDD/Phase 1 required loan delivery data by July 23, 2012

### Final Project Deliverable(s)
- Collection of UAD appraisal data
- Collection of ULDD/Phase 1 required data

### Key Project Update(s)

**Project aligns with Operating Plan Project. Please refer to Op Plan reporting package for detailed information**

Collection of UAD appraisal data : Completed on 3/19/2012: UAD appraisal data now flowing through UCDP to Fannie Mae & Freddie Mac. As of June 1, 2012, we have collected over 2 million electronic appraisals

Collection of ULDD/Phase 1 data: On track.
- ULDD/Phase 1 successfully implemented into production as of 4/23
- On track for full lender adoption by 7/23
- 73% of weekly deliveries came through the new system (7% the previous week)
- 73% of lenders have accessed the new loan delivery system
- 40% have entered data
- 30% have successfully submitted loans for acquisition & funding

### Status
*Status as of May 31, 2012 - Dollars in Millions*

Legend: ▨ - On Track   ▢ - At Risk   ■ - Late   ▢ - Not Started   ■ - Complete

### Project Financials Summary

| Projected Spend* | Started On | Q1 2012 |
|---|---|---|
| $9.41* | | |
| Estimate to Finish* | Complete By | Sep-12 |
| $6.51* | | |

*Funded through Operating Plan

### Key Project Deliverables (By Quarter)

| Deliverable | Due Date | Status |
|---|---|---|
| UAD/UCDP Mandate effective 3/19 | Q1 2012 | C |
| ULDD/Phase 1 in production 4/23 (Fannie Mae rollout) | Q2 2012 | C |
| ULDD/Phase 1 mandate effective 7/23 (Lender adoption) | Q3 2012 | OT |

### Key Project Issues and Risks

| Description | Due Date | Resolution / Mitigation |
|---|---|---|
| Risk: None Identified | N/A | N/A |
| Issues: None identified | N/A | N/A |



Protected Information To Be Disclosed Only In Accordance With Protective Order

FHFA00047920

000237

Confidential – Restricted

# 1. Build new infrastructure

## Objective: *Uniform Mortgage Data Program*

**DRAFT – VERIFICATION & REVIEW IN PROGRESS**

**Overall Status:** OT

| Executive Sponsor | Zach Oppenheimer | Project Lead | Stephen Pawlowski |
|---|---|---|---|

### FHFA Target / Measure

- Notify market of optional ULDD data points, including those necessary to improve disclosure and for other business uses in 2012 **(Extension of Op Plan - ULDD)**

### Key Project Update(s)

- Continued internal working sessions with the Disclosure and Securitization teams with a focus on Reg AB and disclosure data
- Completed ULDD joint workgroup prioritized list of approximately 95 data points – including 'deferred optional', 'optional', and several 'new' business critical data points
- Completed initial draft of the customer outreach survey and identification of initial list of lenders and vendors ('Customer outreach survey, 'Go/No Go' check point on June 12)
- Continue refining the deliverable based plan for Phase 2

### Final Project Deliverable(s)

- Finalize and publish ULDD data specification for Phase II
- Develop high level implementation plan for ULDD Phase II

### Project Financials Summary

*Status as of May 31, 2012 - Dollars in Millions*

| Status | | |
|---|---|---|
| | On-Track | At-Risk |
| | Late | Complete |

| Projected Spend | Estimate to Finish | Status On | Completed By |
|---|---|---|---|
| $0.85* | $0.61* | Jan-12 | On-Going (Multi Phases) |

*85% funded through base budget, 35% through incremental cost*

### Key Project Deliverables *(By Quarter)*

| Deliverable | Due Date | Status |
|---|---|---|
| Initiate internal analysis phase at each GSE | Q1 2012 | C |
| Initiate GSE joint working group | Q2 2012 | OT |
| Develop scope | | |
| External vendor & lender feedback | | |
| Draft ULDD Spec for Phase II | Q3 2012 | NS |
| Publish/Communicate ULDD Spec for Phase II | Q4 2012 | NS |

### Key Project Issues and Risks

| Description | Due Date | Resolution / Mitigation |
|---|---|---|
| Risk: Disclosure Template Publication Risk. Dependency on timeliness of Disclosure Template publication. Slippage can impact Phase II timeline | Jun 2012 | Monitor progress of the Disclosure team on the development of the Disclosure Template |
| Risk: Customer Implementation Risk. Even with a one year runway, customers may have conflicts with their own priorities and mandates and may find it difficult to meet our deadlines | Jul 2012 | Reach out to customers with the planned Lender Outreach Survey to understand customer areas of concern |
| Risk: Multiple Version Risk. Our systems will need to support multiple version simultaneously, supporting Phase 1, Phase 1B and Phase II | Jul 2012 | Work closely with the development / project teams to make sure that the systems can handle multiple versions going forward |
| Risk: Phase I Implementation risk. Resources may be needed to support the Mandate implementation date of 7/23/2012, potentially impacting Phase II schedule. Additionally, there may be fallout that could impact the scope of Phase II (as in cleanup items to be included in Phase II) | Aug 2012 | Work closely with the Mortgage Ops to maintain status on the Customer Transition Phase. Negotiate a drop dead date for items to be introduced as part of Phase II and stick with it. Recommend sometime sometime early to middle August to allow two or three weeks after the Mandate date |

Issues: None identified

| N/A | N/A |
|---|---|

Protected Information To Be Disclosed Only In Accordance With Protective Order


FannieMae

FHFA0004-7921

PX-0213 - p. 61 of 120

000238

Confidential – Restricted

# 1. Build new infrastructure

*Objective : Uniform Mortgage Data Program*

**DRAFT – VERIFICATION & REVIEW IN PROGRESS**

**Overall Status :** OT

| Executive Sponsor | Project Lead |
|---|---|
| Ed Watson | Debra Thompson/Laura Simmons |

**FHFA Target / Measure**

- Delivery of new ULDD data point in compliance with SEC Rule 15Ga-1 by November 30, 2012. Funding for 2013 is for system support to run the Repurchase Disclosure Application with the new data and post to Edgar by 02/15/2013

**Final Project Deliverable(s)**

- Ability to capture, and store the name of the entity funding the applicable loan, as recorded on the note

**Status** as of May 31, 2012 - Dollars in Millions

Status : On Track / At Risk / Late / Not Started / Complete

**Project Financials Summary**

| Projected Spend | Started On |
|---|---|
| $2.7* | Q1 2012 |

| Estimate to Finish | Complete By |
|---|---|
| $2.3* | 11/30/2012 |

*Funded through BAU budgets

**Key Project Update(s)**

Final sign off of the Program Scope Document was completed. Four systems, Loan Delivery (LD), Delivery, ADW and Repurchase Disclosures will be enhanced to capture "funder". Three of the systems projects have been initiated. The business requirements for LD have been finalized. Business requirements for Delivery and ADW will be completed in June. The Repurchase Disclosure project will be initiated in June. The project is on track

**Key Project Deliverables (By Quarter)**

| Deliverable | Due Date | Status |
|---|---|---|
| - Project initiated | Q1 2012 | C |
| - Development and test planning | Q2 2012 | OT |
| - Finalize project milestones | | |
| - UAT and lender testing conducted | Q3 2012 | NS |
| - 8/1 Lenders must start collecting Funder information | | |
| - UAT and lender testing complete | Q4 2012 | NS |
| - 11/26 Lenders mandated to begin delivering in Funder via ULDD | | |

**Key Project Issues and Risks**

| Description | Due Date | Resolution / Mitigation |
|---|---|---|
| Risk: Data center moves in Q3 could impact development and testing | Q3 | Working with TIO |
| Issue: None identified | N/A | N/A |

Protected Information To Be Disclosed Only In Accordance With Protective Order

**FannieMae**

FHFA00047922

000239

Confidential – Restricted

# 1. Build new infrastructure

**Objective : Uniform Mortgage Data Program**

**DRAFT – VERIFICATION & REVIEW IN PROGRESS**

**Overall Status:** OT

| Executive Sponsor | Project Lead |
|---|---|
| Zach Oppenheimer | Stephen Pawlowski |

**FHFA Target / Measure**

- Notify market of servicing data standard, including data necessary to improve disclosure, and agree on timetable for data collection to begin in 2013 by December 31, 2012

**Final Project Deliverable(s)**

- New MISMO XML-based data specification published for servicing data
- Plan for future implementation of release 1

**Status**

*Status as of May 31, 2012 - Dollars in Millions*

Legend: On Time | At Risk | Late | Complete

**Project Financials Summary**

| Projected Spend | Estimate to Finish | Started On: | Completed By: |
|---|---|---|---|
| $0.64* | $0.59* | Mar-12 | On-Going (Multi Phases) |

*51% funded through base budgets, 49% through incremental cost

**Key Project Deliverables (By Quarter)**

| Deliverables | Due Date | Status |
|---|---|---|
| Obtain FHFA Directive | Q1 2012 | C |
| Initiate internal analysis phase at each GSE | Q1 2012 | OT |
| Initiate GSE joint working group | Q2 2012 | OT |
| Develop scope & draft implementation roadmap | Q3 2012 | NS |
| External vendor & lender feedback | | |
| Ongoing joint planning & analysis | | |
| Finalize marketing & legal reviews of data specification | Q4 2012 | NS |
| Publish servicing data specification | | |
| Industry communication | | |

**Key Project Update(s)**

- Held several UMSD workgroup meetings to develop approach and options
- Developed a bottoms up estimate for each option and continued to perform independent dataset identification, analysis, and assessment of current legacy servicing data set
- Held a conference call with LPS (servicing data vendor) to review and validate our approach and obtain their feedback
- UMSD joint workgroup presented options at 5/31 UMDP Governance meeting and put forward a recommendation
  1) Create a high-level template to share with industry and publish the servicing data specification based on function with a phased approach
  2) Focus on the SMDU data set for the first phase
  3) By end of year message to market about UMSD multiple phased approach and implementation of Phase 1
  4) Develop and publish a detailed specification by mid-January 2013 for the first phase
- Recommendation approved by FHFA- will ask FHFA to modify the scorecard to reflect this approach
- Began identifying master set of critical Fannie Mae servicing data points that should be considered in the MISMO Servicing Data Standard
- Develop data dictionary to assist in identifying overlaps between legacy system datasets and gaps in the MISMO Servicing Data Standard

**Key Project Issues and Risks**

| | Description | Due Date | Resolution / Mitigation |
|---|---|---|---|
| Risk: Anticipate transitioning to servicing data standard will have a significant customer impact and there may be industry resistance to implement another data standard when customers are focused on ULDD and UAD standards | | Jun 2012 | Mitigation: Engage with customers, servicer providers, and vendor systems earlier on in the process to validate our approach, understand their data collection challenges, timeline to convert to a new servicing XML file format |
| Issue: SMDU data is not mapped to MISMO servicing model and will need to be reworked into the UMSD which may extend our timeline | | Jun 2012 | Resolution: Currently working the SMDU project team to determine the level of data complexity and how long it may take us to map SMDU to the MISMO servicing model |
| Issue: The servicing dataset is cross functional and spans across multiple business areas and processes both internal to the GSEs and with Servicers and Vendors making our analysis more complex | | Jun 2012 | Resolution: Analysis is underway to identify the various servicing data sources, systems, and SMEs representing the business function |



FannieMae

Confidential – Restricted

# 1. Build new infrastructure

*Objective : Uniform Mortgage Data Program*

**DRAFT – VERIFICATION & REVIEW IN PROGRESS**

**Overall Status:** OT

| Executive Sponsor | Andrew BonSalle | Project Lead | Marianne Sullivan |
|---|---|---|---|

**FHFA Target / Measure**

- Develop plans that leverage UAD and ULDD for enhanced risk management by December 31, 2012

**Key Project Update(s)**

UAD Plan: Draft plan to leverage UAD/UCDP completed.   Team finalizing the plan, coordinating with the Operating Plan Team, and establishing workstreams and project plans

ULDD Plan: ULDD Data Stakeholder Kick-Off meeting completed.   Stakeholder engagement in process to gather data usage project details and assemble the over arching plan.  Specific plans to be defined, reviewed and prioritized by Q3

Final plans for both UAD & ULDD are due by Q4

**Key Project Issues and Risks**

| Description | Due Date | Resolution / Mitigation |
|---|---|---|
| Risk: None identified | N/A | N/A |
| Issue: None identified | N/A | N/A |

**Final Project Deliverable(s)**

- Develop an implementation plan for UAD and ULDD data that defines how this new data can be validated, leveraged to reduce loan repurchase exposure, incorporated into credit portfolio analytics.   Define specific initiatives we would need to undertake optimize the benefits of capturing this valuable data

*Status as of May 31, 2012 - Dollars in Millions*

**Status**  ▨ - On Track   ▨ - At Risk   ☐ - Late   ☐ - Not Started   ■ - Complete

**Project Financials Summary**

*\*Funded through base budgets*

| Projected Spend | Estimate to Finish | Started On | Complete By |
|---|---|---|---|
| $0.04* | $0.03* | Q1 2012 | Dec-12 |

**Key Project Deliverables (By Quarter)**

| Deliverable | Due Date | Status |
|---|---|---|
| - UAD/UCDP Risk Mgmt draft plan (Collateral Risk Mgmt) | Q1 2012 | C |
| - ULDD Risk Mgmt draft plan | Q3 2012 | OT |
| - UAD/UCDP & ULDD Risk Mgmt final plan | Q4 2012 | NS |

Protected Information To Be Disclosed Only In Accordance With Protective Order

17

**Fannie Mae**

FHFA00047924

000241

Confidential – Restricted

# 1. Build new infrastructure

*Objective: Uniform Mortgage Data Program*

## DRAFT – VERIFICATION & REVIEW IN PROGRESS

**Overall Status:** OT

| Executive Sponsor | Zach Oppenheimer | Project Lead | Stephen Pawlowski |
|---|---|---|---|

### FHFA Target / Measure
- Cooperate with FHA implementation of portal to accept electronic appraisals

### Key Project Updates
- FHFA is pursuing contracting options including a sole source justification to receive a transfer of GSE IP for use with a Veros technology solution
- Worked with FHFA to define the level of GSE participation in the FHA initiative; Fannie and Freddie have agreed to general solution approach and presented to FHA
- Fannie Mae legal consulted with FHFA, FHA, and Freddie Mac counsel regarding contracting options that will not subject Fannie Mae to Federal Acquisition Regulations (FAR)
- GSEs agreed to and drafted project scope assumptions, to include transfer of GSE IP to FHA at no cost. The GSEs prepared a redacted version of the in-party agreement with Veros, and a summary of GSE IP developed under the contract to share with FHA once an NDA is executed by FHA
- FHA issued a request for information to FHFA, and FHFA responded sharing the materials listed above
- FHA announced a request for a new executive sponsor and project lead

### Key Project Issues and Risks

### Final Project Deliverable(s)
- FHA has put together a roadmap for developing and implementing a portal to receive electronic appraisals

*Status as of May 31, 2012 - Dollars in Millions*

### Project Financials Summary

| | | Status |
|---|---|---|
| Projected Spend | $0.06* | On Track / At Risk / Late / Not Started / Complete |
| Estimate to Entity | $0.06* | |
| Started On | Nov-11 | |
| Contract End | Dec-12 | |

\* Funded through base budgets

### Key Project Deliverables (by Quarter)

| Deliverable | Due Date | Status |
|---|---|---|
| Ongoing support provided to FHA and Veros to implement the selected option for FHA to receive electronic UAD data | Ongoing | OT |
| Transfer of GSE IP to FHA | TBD | NS |

### Key Project Issues and Risks

| Description | Due Date | Resolution / Mitigation |
|---|---|---|
| Risk: FHFA requires transfer of IP in such as way as to subject Fannie Mae to FAR | Jun-12 | Actively working with counsel at all organizations to avoid this case offered to provide IP at no cost to FHA despite GSE investment |
| Risk: If FHA fails to secure approval for a sole source contract, or if contract negotiation with Veros takes a long time, meeting a 2012 implementation is at risk | Sep-12 | Weekly calls with FHFA to provide information and assistance |
| Risk: Current project structure assumes negligible GSE resource support after the IP transfer and initial project meetings with FHA. More resources could be required to ensure a successful effort in 2012 | Jun-12 | Weekly calls with FHFA to understand current project status. Will know more once FHA solidifies their contracting approach and confirms technical solution is in line with GSE proposal |
| Risk: Current project and resource assumptions are based on an FHA contract with Veros. If FHA secures a different vendor, additional GSE resources will be required | Sep-12 | Weekly calls with FHFA to understand current project status. Will know more once FHA solidifies their contracting approach and confirms technical solution is in line with GSE proposal |
| Risk: FHA has not signed the proposed NDA with FM/FRE or issued a request for information to FHFA under HUD's confidentiality MOU with FHFA (the alternate approach that FHA was considering), so no documents have been shared with FHA. If FHA doesn't move forward with the NDA or MOU soon, sufficient progress may not be made by year end | Jun-12 | Closed. FHA elected to pursue the "Request for Information" process over the NDA. They have issued their first request for information and have received the first set of documentation. They are reviewing documentation now |
| Issues: None identified | N/A | N/A |



Confidential – Restricted

# 1. Build new infrastructure

## DRAFT – VERIFICATION & REVIEW IN PROGRESS

*Objective : Seller-Servicer Contract Harmonization*

**Overall Status:** | OT |

### Executive Sponsor

| Zach Oppenheimer |

### FHFA Target / Measure

- Appropriate resource allocation to seller-servicer contract harmonization and commitment to targeted timetables as outlined in FHFA directive

### Project Lead

| Anthony Reed |

### Key Project Update(s)

Overall, all work is on track to meet the directive timelines. Specific workstream details are noted below.

- **Workstream 1 – Selling Reps & Warrants.** FHFA has revised the timeline for agreement to May 30th and plans to issue an implementation directive based on the draft term sheet June 8th. Acting Director DeMarco reviewed the draft termsheet and supports a 36-month sunset period for the new Rep & Warrant model.

- **Workstream 2 – Servicing Reps & Warrants; Servicing Transfers & Terminations.** Workstream 2 is focused on providing consistent practices for repurchases, remedies, compensatory fees and timelines related to servicing breaches; servicing management; and workstream 5 is focused on clear and uniform processes for servicing transfers and terminations. The teams in these areas continue to make progress driving toward a mid-July targeted agreement date.

- **Workstream 3 – Seller/Servicer Delivery Commitments.** A draft scope is being refined in the joint working group. The internal team is preparing the matrix provided by FHFA to indentify current and proposed areas of evaluation for the "Lender in Good Standing" concept.

- **Workstream 6 – Pricing Flexibility.** A Selling Guide Announcement was issued May 1. This announcement gives FNM the ability to change any pricing at any time, effectively removing the 90 day notice requirement. It will be effective for any new masters on or after May 1, amendments to existing masters on or after May 1 at our discretion, and for everyone on October 1

- **Workstream 7 & 8 - Adjudicated Fraud Information Management & Sanctions.** No significant updates or changes in this workstream. Treasury Policy is expected to provide a draft of the FinCEN Anti-Money Laundering Rule to Treasury Legal at the end of June.

### Final Project Deliverable(s)

- The appropriate allocation of resources and commitment to targeted timetables

### Project Financials Summary

**Status as of May 31, 2012 - Dollars in Millions**

| Status | | |
|---|---|---|
| Project Start | | Jan 2012 |
| Estimate to Finish | TBD | 12/31/2012 |

Legend: On Track · At Risk · Left · Not Started · Complete

### Key Project Deliverables (By Quarter)

| Deliverable | Due Date | Status |
|---|---|---|
| Various workstreams have been identified; implementation phase begins in Q2 | | |
| - Agreement: Revised Selling Rep & Warrant model | Q1 2012 | O |
| - Begin implementing the revised Selling Rep & Warrant model * | Q2 2012 | G |
| - Agreement: Performing Loan Servicing - standards, remedies and enforcement, and transfers/terminations | | |
| - Agreement: Lender Performance Standards - for GSE access | | |
| - Agreement: Pricing Flexibility | Q3 2012 | G |
| - Agreement: Adjudicated Fraud – Information management and sanctions | | |
| * Internal implementation milestone versus industry effective date | | |
| - Begin implementing Performing Loan Servicing standards, remedies and enforcement, and transfers/ terminations * | | |
| - Begin implementing Lender Performance Standards * | | |
| - Begin implementing Pricing Flexibility * | Q4 2012 | NS |
| - Begin implementing Adjudicated Fraud policies * | | |
| * Internal implementation milestones versus industry effective date | | |

### Key Project Issues and Risks

| Issues: None identified | | |
|---|---|---|

| | Description | Due Date |
|---|---|---|
| **Risk:** The timelines for the implementation of workstream 1 revised Selling Reps & Warrants model remain aggressive | | Q3 |
| | Program leadership is working closely with FHFA and FNM management to prioritize resources appropriately to ensure the completion of critical program components | N/A |

**Resolution / Mitigation**

19

**FannieMae**

FHFA0004-7926

000243

Confidential – Restricted

# 1. Build new infrastructure

*Objective : Securitization Platform*

## DRAFT – VERIFICATION & REVIEW IN PROGRESS

**Overall Status:** | OT |

| Executive Sponsor | David Benson | Project Lead | Timothy Yanoti |
|---|---|---|---|

### FHFA Target / Measure

- In collaboration with FHFA and the other Enterprise, develop and finalize a plan by December 31, 2012 for the design and build of a single securitization platform that can serve both Enterprises and a post-conservatorship market with multiple future issues **(Op Plan – Securitization)**

### Final Project Deliverable(s)

- Guidance from FHFA required to further define the requirements of this 2012 objective
- Operating Plan objective (below) to be followed until further guidance received
- Deliverable to be determined on a quarter by quarter basis
- Prototype new platform that integrates core securitization capabilities without Enterprise linkages

### Key Project Update(s)

- Presented to Acting Director DeMarco a range of options for implementing a single security structure. Also provided an update on progress toward building a securitization utility
- The prototype work for SF, single class, MBS, fixed, arm and majors, began in January 2012
- Held a call with Pat Lawler on May 1st to walk through these alternatives and analysis of options for eliminating the MBS-PC spread
- On May 8, Tim Yanoti and Andrew Bon Salle represented Fannie Mae at single security industry meeting hosted by MBA/SIFMA

**Status as of May 31, 2012 – Dollars in Millions**

| Status | | On Track | At Risk | Late | Not Started | Complete |
|---|---|---|---|---|---|---|

### Project Financial Summary

| Projected Spend | Estimate to Finish |
|---|---|
| $12.41** | $8.91** |

** Funded through Operating Plan

### Key Project Deliverables (By Quarter)

| Deliverable | Started On | Due By | Status |
|---|---|---|---|
| | Jan-12 | TBD | C |

- Scheduled discussions with FHFA to discuss project requirements | | Q1 2012 | C
- Prototype Business Capabilities: SF single class MBS: Fixed Rate, ARM, Major
- Formal test of three pools end-to-end
- Deliver preliminary plans/ideas for future alternatives to FHFA
- Meet with FHFA to discuss. | | Q2 2012 | OT
- Prototype Business Capabilities to be performed testing to be performed
- Increase single class test pools
- Add multiclass test pools | | Q3 2012 | NS

### Key Project Issues and Risks

| Description | Due Date | Resolution / Mitigation |
|---|---|---|
| Risk: Future business model direction, from FHFA, impacts requirements and business processes for both the Securitization Utility and customers | TBD | The Securitization Utility is building a modular platform based on industry standards that is compatible with multiple business models. On-going FHFA communication and collaboration |
| Risk: On-going SME availability, constraints due to competing demands from the large number of tactical initiatives, strategic initiatives and operational requirements | TBD | Prioritization of initiatives and leveraging external SME |
| Risk: Guidance for final deliverable is still outstanding from FHFA Issues: None Identified | N/A | N/A |

Protected Information To Be Disclosed Only In Accordance With Protective Order

**Fannie Mae**

FHFA00047927

000244

# 1. Build new infrastructure

**DRAFT – VERIFICATION & REVIEW IN PROGRESS**

**Objective : Pooling and Servicing Agreements**

**Overall Status:** NS

| Executive Sponsor | Project Lead |
|---|---|
| David Benson | Timothy Yanoti |

## FHFA Target / Measure

- Propose a model pooling and servicing agreement (PSA), collaborate with other Enterprise and FHFA on a specific proposal, seek public comment, and produce final recommendations for standard Enterprise trust documentation by December 31, 2012

## Key Project Update(s)

- Met with FHFA during the week of April 2nd to clarify the intent of this objective
- FHFA acknowledged the need to provide further guidance to Fannie Mae
- Met with Pat Lawler from FHFA in April to seek further guidance and a follow-up meeting is scheduled for May

## Key Project Issues and Risks

| Description | Due Date | Resolution / Mitigation |
|---|---|---|
| Risk: Goals require further clarification from FHFA | TBD | TBD |
| Issue: TBD | TBD | TBD |

## Final Project Deliverable(s)

- Issue proposal for model PSA for public comment for standard Enterprise trust documentation

## Project Financials Summary

*Status as of April 30, 2012 - Dollars in Millions*

| | Projected Spend | Estimate to Finish |
|---|---|---|
| | TBD | TBD |
| | TBD | TBD |

Legend: On Track · At Risk · Late · Not Started · Complete

*Postponed until 2013*

## Key Project Deliverables (By Quarter)

| Deliverable | Due Date | Status |
|---|---|---|
| - Scheduled discussions with FHFA to discuss project requirements; project not started in Q1 | Q1 2012 | C |
| - Independently develop and propose a model PSA agreement | Q2 2012 | NS |
| - Collaborate with FHFA and Freddie Mac in the development of a joint proposal for a model PSA | Q3 2012 | NS |
| - Issue proposal for public comment and produce final recommendations for standard documentation | Q4 2012 | NS |


**FannieMae**

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order

21

FHFA0004-7928

000245

Confidential – Restricted

# 2. Contract – All started projects on track as of May 31, 2012 . . .

**DRAFT – VERIFICATION & REVIEW IN PROGRESS**

*Portfolio Status Update*

**Status**
- On Track
- At Risk
- Late
- Not Started
- Complete

**Overall Status:** OT

*Status as of May 31, 2012 – All Dollars in Millions*

**Objectives and Key Portfolio Updates**

**Work with FHFA to evaluate options for meeting conservatorship goals, including shifting mortgage credit risk to private investors, via assessment of:**

**Multifamily line of business**
- Retained McKinsey to conduct further analysis and test models; retained E&Y to help on divestiture plan and governance; narrowing search to identify investment bank to analyze private capital alternatives and economists and rating agencies to provide external validations. Assessment of end of state models to be reviewed with BoD in July

**Make preparations for the competitive disposition of a pool of non-performing assets**
- Project revised to Freddie Mac only

**Strategic Plan for disposal of non-performing loans***
- No May deliverables; project not started

**Risk Sharing**
- Initiate and Execute new risk sharing transaction projects revised to Freddie Mac only
- No deliverables for Q2; dependent on the execution of new risk sharing transactions

**Pricing**
- Marginal increases have occurred as contracts expire; Selling Guide update provides the ability to change price for all customers beginning in Q4 2012; National price increase proposal to be presented to FHFA to increase prices by an avg. 5bps across the acquisition book
- Completed national price increase proposal that levels pricing between large and small lenders, to be presented to FHFA in June 2012
- FHFA revised target date for announcement of state-level pricing changes from Aug 31, 2012 to July 1, Fannie Mae has highlighted to FHFA concern with meeting the aggressive date

*Ongoing discussions with FHFA to further define the requirements of these objective

**Financials Summary**

| | | |
|---|---|---|
| Projected Spend | ~$6M* | |
| Estimate to Finish | ~$5M* | |

*Excludes projects that are not started/rescoped

**Key Portfolio issues and risks**

| Description | Due Date | Resolution / Mitigation |
|---|---|---|
| Aggressive FHFA deadline with respect to risk-based pricing by state project | Discussions ongoing | Open |
| Issue: N/A | N/A | N/A |

| | |
|---|---|
| Original # of Projects | 9 |
| # of projects postponed/rescoped | (3) |
| **Revised # of projects** | **6** |
| **Portfolio Weight** | **30%** |

**3 Projects in this portfolio have been revised to Freddie Mac only; unclear FHFA expectation for state-level pricing project; all other projects remain on track**



**FannieMae**

Protected Information To Be Disclosed Only In Accordance With Protective Order

FHFA0004 7929

000246

Confidential – Restricted

# DRAFT – VERIFICATION & REVIEW IN PROGRESS

# 2. Contract the Enterprises' dominant presence in the marketplace

**Objective : *Multifamily line of business***

Overall Status : **OT**

## Executive Sponsor

| Executive Sponsor | Jeff Hayward | Project Lead | Jon Gross |
|---|---|---|---|

## FHFA Target / Measure

- Undertake a market analysis by December 31, 2012 of the viability of multifamily business operations without government guarantees. Review the likely viability of these models operating on a stand-alone basis after attracting private capital and adjusting pricing if needed

## Final Project Deliverable(s)

- Delivery of an analysis pertaining to the viability of a future Multifamily business model incorporating feedback from internal and external stakeholders

## Key Project Update(s)

Next phases of activity are underway and include:

(1) Retained McKinsey to expand and pressure test the Phase I model and to conduct further detailed analysis;

(2) Narrowing search to identify Investment Bank to assist in analyzing private capital alternatives. Future RFP may be issued. Credit Suisse will assist in analyzing the Phase I model capital assumptions, warehouse line of credit assumptions, and gfee assumptions.

(3) Retained Ernst & Young to help develop a divestiture plan and governance structure, analyses ongoing

(4) Narrowing search to identify economist to provide external validation

(5) Researching rating agencies to provide external validation

Assessment of end state models and cost/benefit analysis of potential alternatives to be reviewed at Board of Directors meeting in July

### Status

*Status as of May 31, 2012 - Dollars in Millions*

Legend: ▮ On Track  ▯ At Risk  ▮ Late  ▯ Not Started  ▮ Complete

### Project Financials Summary

| Projected Spend | Estimate to Finish |
|---|---|
| $5.9* | $4.9* |

*Funded through Incremental Cost

### Key Project Deliverables (By Quarter)

| Deliverable | Due Date | Status |
|---|---|---|
| - Establish Working Group - Plan, scope and begin analysis of viable business options | Q1 2012 | C |
| - Prepare initial analysis of viable business options for a standalone Multifamily business model - Seek feedback from FNM BoD in May 2012 | Q2 2012 | OT |
| - Expand analysis to focus on Multifamily products identified by FHFA - Conclude analytics on model types' financial viability and ability to meet policy objectives for multifamily products - Perform detailed assessment of options to capitalize new Multifamily entity - Develop plan to prepare for Multifamily divestiture - Seek feedback from external stakeholders (i.e. lenders, rating agencies, economists' view) | Q3 2012 | NS |
| - Incorporate feedback from all stakeholders  and finalize analysis to be provided to FHFA by 12/31 - Complete detailed divestiture plan | Q4 2012 | NS |

## Key Project Issues and Risks

| Issue | Description | Due Date | Resolution / Mitigation | |
|---|---|---|---|---|
| Issue: None identified | | N/A | N/A | N/A |
| | Risk: Additional funds needed to support market analysis, capitalization, divestiture, and external validation. ~$1M in costs incurred to date have been absorbed by Multifamily base budget | N/A | N/A | N/A |

Protected Information To Be Disclosed Only In Accordance With Protective Order

**FannieMae**

FHFA00047930

000247

Confidential – Restricted

# DRAFT – VERIFICATION & REVIEW IN PROGRESS

## 2. Contract the Enterprises' dominant presence in the marketplace

**Objective : Investment assets**

Overall Status: OT

### Executive Sponsor
David Benson

### Project Lead
Mark Winer

### FHFA Target / Measure
- Make preparations for the competitive disposition of a pool of nonperforming assets by September 30, 2012

### Key Project Updates:
- Process flow diagram completed
- Project plan baseline created
- Project kick-off – April 24, 2012
- Workstreams defined with owners and leads
- FHFA was provided project details – May 3, 2012
- Advisor solicitations sent May 1 and response proposals received – May 9, 2012

### Final Project Deliverable(s):
- Announce transaction to the market by September 30, 2012

### Project Financials Summary
Status as of April 30, 2012 – Dollars in Millions

| Status | | |
|---|---|---|
| ◼ On Track | ◻ At Risk | |
| ◼ Late | ◻ Not Started | ◼ Complete |

| | | |
|---|---|---|
| Project Cost | $4.83* | Started On | May-12 |
| Estimate at Completion (EAC) | $4.83* | Complete By | Nov-12 |

*Revised scope to Freddie Mac only*

### Key Project Deliverables (By Quarter)

| Deliverable | Due Date | Status |
|---|---|---|
| In order to achieve competitive disposition of an NPL pool by the end of Q3 2012, four concurrent workstreams have been established in... | Q1 2012 | C |
| Plan for disposition of non-performing assets | Q2 2012 | OT |
| Prepare a pilot transaction for the competitive disposition of NPA and announce transaction to the market | Q3 2012 | OT |

### Key Project Issues and Risks

| Description | Due Date | Resolution / Mitigation |
|---|---|---|
| Risk: Agreement from FHFA on involvement | TBD | We proposed the nature and level of involvement for the deal and we are seeking their agreement |
| Risk: Third party reliance – we are dependent on a number of external parties for various tasks in the process | TBD | TBD |
| Issue: Procurement process – traditional procurement process durations will likely negatively impact the plan given the number of vendor services and short timeline of project, i.e., Broker Price Opinion, due diligence, service provider, and compliance | TBD | Engaged Procurement on the issue – we are pursuing an expedited process with them |
| Issue: Task durations are estimates – some tasks on the critical path have estimated durations. Actual estimates could impact the timeline | TBD | Workstreams have been asked to finalize estimates. Items not finalized by next week will be tracked as separate risks by the project |
| Issue: HFS designation timing – there is uncertainty around when to apply HFS designation on HFI loans – defining latest point that is required | TBD | Accounting Operations is obtaining clarification on when HFS designation needs to occur |
| Issue: FHFA understanding of manual process – the process will be repeatable but is not automated | TBD | TBD |



FannieMae

Protected Information To Be Disclosed Only In Accordance With Protective Order

FHFA0004-7931

000248

Confidential – Restricted

# 2. Contract the Enterprises' dominant presence in the marketplace

**DRAFT – VERIFICATION & REVIEW IN PROGRESS**

*Objective : Investment assets*

Overall Status: **NS**

## Executive Sponsor

David Benson | Project Lead | Mark Winer

## FHFA Target / Measure

- Perform analysis of investment portfolio as described in the strategic plan by the fourth quarter of 2012 and:
- Review options with board of directors and FHFA and make appropriate recommendations for future actions
- Implement plan agreed to by board and FHFA

## Key Project Update(s)

No updates; project not started; require further clarification from FHFA

## Final Project Deliverable(s)

- Deliver analysis of investment portfolio, including options and recommendations

## Status

Status as of May 31, 2012 - Dollars in Millions

| On Track | At Risk | Late | Not Started | Complete |

## Project Financials Summary

| | |
|---|---|
| Projected Spend | TBD |
| Estimate to Finish | TBD |
| Started On | TBD |
| Complete By | Dec-12 |

## Key Project Deliverables (By Quarter)

| Deliverable | Due Date | Status |
|---|---|---|
| - No Q1 deliverables | Q1 2012 | N/A |
| - Identify scope and clarify objectives with FHFA | Q2 2012 | NS |
| - Complete analysis of investment portfolio | Q3 2012 | NS |
| - Deliver analysis to the Board of Directors and FHFA for review | Q4 2012 | NS |

## Key Project Issues and Risks

| | Description | Due Date | Resolution / Mitigation |
|---|---|---|---|
| Risks: | - Objectives which require further clarification from FHFA<br>- Additional headcount beyond original budget<br>- Without further clarification, opportunity for on-time project completion reduced each month | TBD | TBD |
| Issue: None identified | | TBD | TBD |

Protected Information To Be Disclosed Only In Accordance With Protective Order

**FannieMae**

FHFA00047932

000249

Confidential – Restricted

# 2. Contract the Enterprises' dominant presence in the marketplace

**DRAFT – VERIFICATION & REVIEW IN PROGRESS**

**Objective : Risk Sharing**

**Overall Status:** | OT

| Executive Sponsor | Project Lead |
|---|---|
| Andrew BonSalle | Laurel Davis |

**FHFA Target / Measure**

- Initiate risk sharing transactions by September 30, 2012 **(Op Plan – Credit Risk Transfer)**

## Key Project Update(s)

- On 5/16 the CRT Team requested additional funding for the balance of the 2012 calendar year with the Op Plan Governance Committee. Incremental funding of $1.5 M was as approved and the CRT team will return for additional funding by the end of June 2012 once timing and the schedule direction from FHFA is further finalized
- Decision has been made and announced that a fixed loss severity calculation will be used for the determination of loss amount
- On 5/24 FHFA, Treasury and FRE has been reached regarding several critical path items including the loss payment calculation methodology, credit event triggers and portions of the capital structure including alignment requirements
- On 5/29 Management Committee approved the FNM historical data release, which will likely result in 2Q 2012 further analysis. This will likely delay the FRE transaction, which will likely result in a 4Q MM transaction if FHFA does not change the current proposed deal sequence. Per the different scenario we may be not likely be approved to execute a transaction until after the performance of the FNM transaction has been evaluated
- A new External Joint Workstream among FNM, FRE, FHFA and Treasury was created, focusing specifically on the AT-Issuance Deal Disclosure Documents, which will allow FNM to begin the FRE document creation process. This will ensure that FNM business interests are protected and legal concerns addressed

## Status

- Risk sharing transaction tested and available

### Status *As of May 31, 2012 — Dollars in Millions*

| 2012 YTD Spend | 2012 Finish | | | | |
|---|---|---|---|---|---|
| | Through Operating Plan | | | | |
| | $3.0* | | | | |
| | $2.26* | | | | |
| | On Track | At Risk | Late | Not Started | Complete |

## Key Project Deliverables (By Quarter)

| Deliverable | Due Date | Status |
|---|---|---|
| Initial transaction structure type identified | Q1 2012 | C |
| - Finalize all material aspects of Credit Risk Transfer deal structure and obtain FHFA approval for the materials aspects. Develop requirements and design solution | Q2 2012 | OT |
| - Transaction structure tested and available | 9/30/12 | NS |

## Key Project Issues and Risks

| Issue: None identified | | | |
|---|---|---|---|

| | Description | Due Date | Resolution / Mitigation |
|---|---|---|---|
| Strategic Risk | Headline risk associated with level of premiums paid by FNM relative to guarantee fees received. REMIC eligibility and synthetic structures | Sep 2012 | Monitor political environment and prepare external communications response in conjunction with FHFA |
| Timing | Timing of any Fannie Mae CRT transaction is dependent upon FRE meeting their related transaction schedule | Jul 2012 | Ensure FRE releases historical data or be prepared to release own historical data |
| Regulatory Risk | Changes to existing or new regulations such as Dodd Frank Rule 193 on Reps & Warrants and disclosures, synthetic securities being disallowed, as well as the SEC Conflict of Interest Rule | Sep 2012 | Validate compliance on requirements and review with FHFA. Policy Team to keep current on Dodd Frank and other regulations. A FHFA/Treasury Meeting with SEC took place and the outcome was generally positive |
| | | N/A | N/A |



**Fannie Mae**

*Revised scope to Freddie Mac only*

Confidential – Restricted

DRAFT – VERIFICATION & REVIEW IN PROGRESS

# 2. Contract the Enterprises' dominant presence in the marketplace

**Objective : Risk Sharing**

Overall Status: | OT |

| Executive Sponsor | Andrew BonSalle | Project Lead | Rob Schaefer |
|---|---|---|---|

**FHFA Target / Measure**

- Execute new risk sharing transactions beyond the traditional charter required mortgage insurance coverage

**Key Project Update(s)**

- Initial engagement with FHFA kicked off in May. Confirmed goals and began to vet execution options and potential counterparties
- o Aim of MI transaction would be to support the reduction of GSE footprint in US mortgage finance
- o FHFA is considering range of options to transfer risk to private market including MI transaction
- o Associated benefit of MI transaction is potential attraction of capital investment in MIs
- o Secondary benefit is to gain market pricing discovery

Developing, at FHFA's request, a strategic MI counterparty summary integrating the strategy for credit risk transfer transactions. Strategy to include perspective on using MI transfer to help support payment of claims on legacy obligations

Initial discussions underway with Essent including traditional coverage types as structures that would accelerate payment of benefits compared to traditional

On track to have structure options evaluated and existing capabilities confirmed by end of June, and then develop a recommendation for preferred structure and preferred counterparties

**Final Project Deliverable(s)**

- Execute risk-share transaction as directed by FHFA

**Status** as of May '12

**Project Financials Summary**
*Dollars in Millions*

| | Started On | Complete By |
|---|---|---|
| Budgeted through base budgets | $0.13* | Q1 2012 |
| | $0.10* | Q4 2012 |

Status legend: On Track · At Risk · Late · Not Started · Complete

*Revised scope to Freddie Mac only*

**Key Project Issues and Risks**

| Description | Due Date | Resolution / Mitigation | |
|---|---|---|---|
| Risk: FHFA approval may or may not detail alignment with Freddie Mac | TBD | TBD | |
| Risk: Counterparty concerns may lead us to not pursue any discretionary business with MIs | Jun-12 | TBD | |
| Risk: Goals require further guidance from FHFA | TBD | TBD | |
| Risk: System and operational constraints may limit our ability to execute our preferred MI structure in 2012. | Jul 2012 | If needed, we can execute an MI transaction similar to those already done; traditional primary MI or pool insurance | |

**Project Deliverables (By Quarter)**

| Deliverable | Due Date | Status |
|---|---|---|
| - Structure options evaluated, existing capabilities confirmed | Q2 2012 | OT |
| - Counterparties engaged, transaction terms developed | Q3 2012 | OT |
| - Ready to execute as directed by FHFA | Q4 2012 | NS |

Protected Information To Be Disclosed Only In Accordance With Protective Order



FannieMae

FHFA0004-7934

PX-0213 - p. 74 of 120

000251

Confidential – Restricted

# 2. Contract the Enterprises' dominant presence in the marketplace

DRAFT – VERIFICATION & REVIEW IN PROGRESS

*Objective : Risk Sharing*

Overall Status: | NS |

| Executive Sponsor | Project Lead |
|---|---|
| Andrew BonSalle | Laurel Davis |

**FHFA Target / Measure**

- Deliver timeline and related Plan schedule for continued growth in risk sharing through 2013

**Final Project Deliverable(s)**

- Deliver risk sharing plan including timeline, for 2013

**Status**

*Status as of May 31, 2012 - Dollars in Millions*

On Track ☐  · At Risk ■  · Late ☐  · Not Started ☐  · Complete ■

**Project Financials Summary**

| Projected Spend | Estimate to Finish | Started On | Complete By |
|---|---|---|---|
| Funded through base budgets* | | Q3 2012 | |
| Funded through base budgets* | | | Q4 2012 |

*Projects is yet to be started and therefore costs are to be determined

**Key Project Deliverables (By Quarter)**

| Deliverable | Due Date | Status |
|---|---|---|
| - N/A | Q1 2012 | N/A |
| - No Q2 deliverable; dependency on joint (FHFA/FRE/FNM) initiative to implement GSE Credit-Linked Note transaction capability by Q3 | Q2 2012 | N/A |
| - Begin plan development for 2013 with FHFA | Q3 2012 | NS |
| - Complete plan for 2013 subject to FHFA direction/concurrence | Q4 2012 | NS |

**Key Project Update(s)**

Plans and timelines for program-level direction for risk sharing in 2013 will be tied to the joint workstream on Credit Risk Transfer which is ongoing with FHFA and Freddie Mac.

**Key Project Issues and Risks**

| Description | Due Date | Resolution / Mitigation |
|---|---|---|
| Risk: Dependent on FHFA to clarify 2013 goals | N/A | N/A |
| Issue: None identified | N/A | N/A |

Protected Information To Be Disclosed Only In Accordance With Protective Order



FannieMae

FHFA00047935

000252

Confidential – Restricted

# 2. Contract the Enterprises' dominant presence in the marketplace

**DRAFT – VERIFICATION & REVIEW IN PROGRESS**

**Objective :** *Single-family Guarantee Fee Pricing Increase*

**Overall Status:** OT

## FHFA Target / Measure

- Develop and begin implementing plan to increase guarantee fee pricing to more closely approximate the private sector

| Executive Sponsor | Project Lead |
|---|---|
| Andrew BonSalle | Adam Glassner |

## Final Project Deliverable(s)

- Deliver G-fee increase plan and confirm implementation with FHFA

## Key Project Update(s)

Marginal increases have occurred as contracts expire. Selling Guide announcement published on May 1, 2012 that gives Fannie Mae the ability to change price at any time with no notice. The Selling Guide update provides the ability to change price for all customers at the same time beginning in Q4 2012. Uniform pricing framework will provide guidepost for necessary actions and impacts.

- National price increase proposal to be presented to FHFA to increase prices by an average of 5 basis points across the acquisition book.
- Process to implement price increases through one-way contract amendments to lenders complete. Account team training to begin in June, 2012.

## Project Financials Summary

**Status** ■ On Track ■ At Risk □ Late ■ Not Started □ Complete

**Status as of May 31, 2012**

| | | |
|---|---|---|
| **Projected Spend** | **Started On** | **Completed By** |
| $0.16* | Q1 2012 | TBD |
| **Estimate to Finish** | | |
| $0.10* | | |

*Funded through base budgets

## Key Project Deliverables (By Quarter)

| Deliverable | Due Date | Status |
|---|---|---|
| - Through 2011 and early 2012, incremental changes have been made at individual customer level | Q1 2012 | C |
| - Develop written plan to implement further increases based on market conditions, while evaluating impacts to liquidity | Q2 2012 | OT |
| - Continue to monitor and evaluate market opportunities; assess Uniform Pricing routines and their overall impacts; include Risk Sharing pricing discovery into the routines | Q3 2012 | NS |
| - Complete linkage to Uniform Pricing routines and utilize new framework to evaluate opportunities for increases; continue to incorporate on-going Risk Sharing information into routines | Q4 2012 | NS |

## Key Project Issues and Risks

| Description | Due Date | Resolution / Mitigation |
|---|---|---|
| Risk: Market dynamics and Freddie Mac share | TBD | Attempt to schedule regular meetings with FHFA and Freddie Mac to discuss options |
| Risk: Goals need further guidance from FHFA | TBD | TBD |
| Issue: Market factors have caused Fannie Mae to achieve outsized share and our contracts do not permit us to change price with the same timing; any material changes in price would need to be coordinated with Freddie Mac to have an impact on the market and charged fees in total | N/A | N/A |

Protected Information To Be Disclosed Only In Accordance With Protective Order


FannieMae

FHFA0004 7936

**PX-0213 - p. 76 of 120**

**000253**

Confidential – Restricted

# DRAFT – VERIFICATION & REVIEW IN PROGRESS

## 2. Contract the Enterprises' dominant presence in the marketplace

*Objective : Set plan to process for state law effects on mortgage credit losses given default*

Overall Status:  | OT |

| Executive Sponsor | Andrew BonSalle | Project Lead | Adam Glassner |
|---|---|---|---|

**FHFA Target / Measure**

- Set uniform pricing across loan sellers to extent practicable

**Final Project Deliverable(s)**

- Framework to justify differentiation in pricing among lenders

**Key Project Update(s)**

Prepayment factor complete; weekly meetings to update and complete other various factors including Lender Performance Adjustment and Counterparty Exposure Adjustment. Success is dependent on return on capital (ROC) framework being built out, which relies heavily on the models and Finance's input.

- Completed national price increase proposal that levels pricing between large and small lenders. To be presented to FHFA by June 8, 2012.

**Status** *as of May 31, 2012*     ■ On Track  □ At Risk  ■ Late  ■ Complete

**Project Financials Summary**
*Dollars in Millions*

| Projected Spend | $0.16* |
|---|---|
| Estimate to Finish | $0.10* |

*Funded through base budgets

**Key Project Deliverables (By Quarter)**

| Deliverable | Due Date | Status |
|---|---|---|
| - Establish framework for Uniform pricing; identify and vet complete factor set | Q1 2012 | C |
| - Analyze factors and establish datasets, reports and outputs used for the uniform framework | Q2 2012 | OT |
| - Test data results versus current pricing at various lender levels to establish baseline potential impacts; identify key areas for near-term actions and establish routines for relaying information to lenders; create governance routines | Q3 2012 | NS |
| - Fully implement framework; evaluate market opportunities and assess impacts to liquidity for execution; fully execute lender information routines and execute governance routines | Q4 2012 | NS |

**Key Project Issues and Risks**

| Description | Due Date | Resolution / Mitigation | Status |
|---|---|---|---|
| Risk: Potential issues with alignment with Freddie Mac | TBD | TBD | |
| Risk: Goals need further guidance from FHFA | TBD | TBD | |
| Issue: FHFA desires uniform framework for customers to be the same at both Freddie Mac and Fannie Mae; no meetings have taken place to discuss approach | TBD | TBD | |

Protected Information To Be Disclosed Only In Accordance With Protective Order



FannieMae

FHFA00047937

000254

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order

# 2. Contract the Enterprises' dominant presence in the marketplace

**DRAFT – VERIFICATION & REVIEW IN PROGRESS**

*Objective : Set plan to process for state law effects on mortgage credit losses given default*

Overall Status: | OT |

## Executive Sponsor

Andrew BonSalle | **Project Lead** | Adam Glassner

## FHFA Target / Measure

- Work with FHFA to develop appropriate risk-based pricing by state. State-level pricing grid to be completed by August 31, 2012

## Final Project Deliverable(s)

- Deliver state-based pricing to address state specific costs driven by laws and regulations

## Status

Status as of May 31, 2012 - Dollars in Millions

| On Track | At Risk | Late | Not Started | Complete |

## Key Project Update(s)

Work nearly complete to align servicing requirements and modeled prices to each other

- FHFA revised target date for announcement of state-level pricing changes from August 31, 2012 to July 1, 2012. However, the July 1, 2012 date is aspirational and it is now unclear on FHFA's expectation for the content of the July 1 announcement

- Fannie Mae has highlighted concerns on meeting the aggressive announcement date to FHFA

- Operational implementation is dependent on final approval of pricing by FHFA

## Project Financials Summary

| Projected Spend | $0.15* |
| Estimate to Finish | $0.03* |

*Funded through base budgets

## Key Project Deliverables (By Quarter)

| Deliverable | Due Date | Status |
|---|---|---|
| - Finalize factors and framework | Q1 2012 | C |
| - Implement framework and establish monitoring and governance routines | Q2 2012 | OT |
| - Monitor existing inputs and execute governance; evaluate additional factors for inclusion as markets shift | Q3 2012 | NS |
| - Continue monitoring and governance routines | Q4 2012 | NS |

## Key Project Issues and Risks

| Description | Due Date | Resolution / Mitigation |
|---|---|---|
| Risk: Potential issues with alignment with Freddie Mac | Jul 2012 | Regular meetings scheduled with FHFA, and Freddie Mac to discuss alignment of pricing proposals |
| Issue: None identified | N/A | N/A |

*FannieMae*

FHFA0004793B

31

000255

Confidential – Restricted

# 3. Maintain- all started projects on track as of May 31, 2012 . . .

DRAFT – VERIFICATION & REVIEW IN PROGRESS

**Portfolio Status Update**

Status

☐ - On Track ☐ - At Risk ▨ - Late ☐ - Not Started ▨ - Complete

**Overall Status:** OT

*Status as of May 31, 2012 – All Dollars in Millions*

## Objectives and Key Portfolio Updates

**Loss Mitigation through continued implementation and enhancement of SAI**

- FHFA approved the adjustments to the 2011 fees. Adjustments are expected to be invoiced in June 2012; FHFA approved changes for the 2012 fee structure along with other enhancements to the program

**Short Sales**

- Continued to develop recommended strategies around Short Sales program

**Deeds in Lieu and Deeds-for-Lease**

- Continued to develop recommended strategies around Deeds in Lieu and Deeds-for-Lease programs while coordinating with both Freddie Mac and FHFA

**REO Sales**

- Implementing loans to facilitate REO sales program project has been revised to Freddie only
- On track to obtain bids for potential REO joint venture deal by the June deadline
- Project not started, pending rollout of initial pilot in Q3 2012
- Working with three lenders to pilot expansion of small investor unit cap from 10 to 20 (Guild, Prospect and Umpqua Bank)

| Financials Summary | |
|---|---|
| Projected Spend | ~$3* |
| Estimate to Finish | ~$1* |

\* Excludes projects that are not started/rescoped

| Key Portfolio Issues and risks | | | |
|---|---|---|---|
| Description | Due Date | Resolution/ Mitigation | |
| Risk: Feedback and approval needed from FHFA with respect to objectives within this portfolio | Subsequent discussions with FHFA have been scheduled | Open | |
| Issue: N/A | N/A | N/A | |

| | |
|---|---|
| Original # of Projects | 7 |
| # of projects postponed/rescoped | (1) |
| Revised # of projects | 6 |
| Portfolio Weight | 20% |

FHFA approved 2011 fee adjustment and changes to 2012 fee structure; continue to develop strategies around Short Sale and DIL and DFL programs; on track to receive bids for REO joint venture; one project revised to Freddie only

Protected Information To Be Disclosed Only In Accordance With Protective Order

**FannieMae**

FHFA0004793

000256

Confidential – Restricted

# DRAFT – VERIFICATION & REVIEW IN PROGRESS

## 3. Maintain foreclosure prevention activities and credit availability

*Objective : Loss Mitigation through continued implementation and enhancement of SAI*

Overall Status: OT

| Executive Sponsor | Project Lead |
|---|---|
| Terry Edwards | Leslie Peeler |

### FHFA Target / Measure

- Enhance transparency of servicer requirements around foreclosure timelines and compensatory fees and publish applicable announcements by September 30, 2012

### Final Project Deliverable(s)

- Publish new fee structure to servicers by 9/30 that enhances transparency of servicer requirements around foreclosure timelines and compensatory fees

### Status

Status

On Track · At Risk · Late · Not Started · Complete

*Status as of May 31, 2012 - Dollars in Millions*

### Project Financials Summary

| | | Started On | Q1 2012 |
|---|---|---|---|
| Projected Spend | $0.06* | | |
| Estimate to Finish | $0.01* | Complete By | Sep-12 |

*Funded through base budgets

### Key Project Update(s)

FHFA approved the adjustments to the 2011 fees. Adjustments are expected to be invoiced in June 2012

FHFA approved changes for the 2012 fee structure along with other enhancements to the program. Year to date activity is expected to be invoiced in July 2012

Work on the associated communications has started and is expect to be completed prior to the publication of the invoices. The communications are being designed to announce the changes and to increase the transparency of servicer requirements around foreclosure timelines and compensatory fees

### Key Project Deliverables (By Quarter)

| Deliverable | Due Date | Status |
|---|---|---|
| - Review & establish proposal for revised 2011 fees | Q1 2012 | C |
| - Establish proposal for changes to fee structure | | |
| - Submit to FHFA the final fee structure for their approval | Q2 2012 | OT |
| - Work with FHFA on any required alignment with FRE | | |
| - Publish new fee structure in an announcement to servicers by 9/30 | Q3 2012 | OT |

### Key Project Issues and Risks

| Description | Due Date | Resolution / Mitigation |
|---|---|---|
| Risk: Subject to FHFA timely approval | TBD | TBD |
| Issue: None identified | N/A | N/A |

33

Protected Information To Be Disclosed Only In Accordance With Protective Order

FannieMae

FHFA00047940

000257

Confidential – Restricted

# 3. Maintain foreclosure prevention activities and credit availability

**DRAFT – VERIFICATION & REVIEW IN PROGRESS**

*Objective : Short Sales*

Overall Status: | OT

| Executive Sponsor | Project Lead |
|---|---|
| Terry Edwards | Bill Cleary |

## FHFA Target / Measure

- Enhance short sales programs that include efforts to identify program obstacles that impact utilization by June 30, 2012. Applicable lender announcements by September 30, 2012

## Key Project Update(s)

**Eligibility:**
- FHFA sent proposed grid for eligibility and contributions representing their position; they are open to potential changes from discussions with MI companies and servicers. Meeting with servicers occurred on 5/22 & with MI's by 5/30

**Solicitation:**
- FNM recommends that servicers solicit borrowers for a DIL/SS by day 75
- Plan to begin discussion with FHFA/FRE week of 6/11

**Document Simplification:**
- Evaluating if method for determining non-eligibility criteria the same between GSE's

**Evaluation:**
- Determining consistent requirements across delinquent loans, finalizing thresholds and alignment on relocation incentive terms

**MI Delegation:**
- Signed MI delegation agreement
- Finalizing alignment approach on MI delegation agreements with FHFA/FRE

**Fraud:**
- Aligned with FRE on all fraud items including arms-length transactions and resale restrictions

**List Price Guidance:**
- Discussing with FHFA/FRE if servicers should provide listing price guidance to a borrower and/or broker based on a GSE-provided valuation and when should it be ordered. FRE is resistant to list price guidance and has proposed ordering only after borrower is approved for short sale. FNM is proposing to order BPO earlier in the process

**PMO:**
- Drafted Road to 6/30 proposal outlining meeting agendas and timeline to meet 6/30 short sale alignment date

## Key Project Issues and Risks

| | Description | Due Date |
|---|---|---|
| **Risk:** | All MI companies not agreeing to streamlined full delegation agreement | Jun 2012 |
| **Issue:** | Eligibility (Imminent Default) – No agreement on how current borrowers will be evaluated | May 2012 |

## Final Project Deliverable(s)

- Funds applicable guide announcements or directives to servicers by 9/30 that enhance short sales programs which include efforts to identify program obstacles that impact utilization

## Project Financials Summary

*Status as of May 31, 2012 - Dollars in Millions*

| Projected Spend | Estimate to Finish | At Risk |
|---|---|---|
| $0.53* | $0.27* | |

* Funded through base budgets

| Status: | | |
|---|---|---|
| On Track | At Risk | Late | Complete |

## Key Project Deliverables (By Quarter)

| Deliverable | Feedback/Alignment | Due Date | Status |
|---|---|---|---|
| - Subordinate Lien Policy<br>- Streamlined Documentation | | Q1 2012 | C |
| Continue to develop recommended strategies around SS's:<br>- Eligibility<br>- Solicitation<br>- Documentation Simplification<br>- Subordinate Liens<br>- MI Delegation<br>- and other initiatives | | Q1 2012 | OT |
| Timelines: Issued updated guidance in April | | | |
| - Publish applicable guide announcements or directives to servicers by 9/30 | | Q3 2012 | OT |
| - Publish new fee structure to servicers by 9/30 | 6/01 Update: FNM team proposed to FHFA, since FNM already has signed delegation agreements with each of the MI companies, that FRE uses these agreements, changing only the company name (i.e. no change in agreement language) and execute these agreements with the MI companies on their behalf. FHFA is considering this proposal | Q2 2012 | OT |
| | **Closed:** FHFA presented proposal to FNM/FRE on alignment around eligibility. Currently reviewing FHFA guidance and determining follow-up questions | | N/A |

Protected Information To Be Disclosed Only In Accordance With Protective Order

**FannieMae**

FHFA0004-7941

000258

Confidential – Restricted

# 3. Maintain foreclosure prevention activities and credit availability

*Objective : Deeds in Lieu and Deeds-for-Lease*

**DRAFT – VERIFICATION & REVIEW IN PROGRESS**

Overall Status: OT

| Executive Sponsor | Terry Edwards | Project Lead | Bill Cleary |
|---|---|---|---|

**FHFA Target / Measure:**
- Design, develop, or enhance deed in lieu and deed-for-lease programs that include efforts to identify and resolve program obstacles that impact utilization by September 30, 2012. Applicable lender announcements to foreclosure alternatives by December 31, 2012.

**Final Project Deliverable(s):**
- Publish applicable guide announcements or directives to servicers by 12/31 that design, develop, or enhance deed in lieu and deed-for-lease programs which include efforts to identify and resolve program obstacles that impact utilization

**Status:**   *Status as of May 31, 2012 - Dollars in Millions*

**Key Project Update(s):**

**Eligibility:**
- FHFA sent proposed grid for eligibility and contributions representing their position; they are open to potential changes from discussions with MI companies and servicers. Meeting with servicers, FHFA & FRE occurred on 5/22

**Solicitation:**
- FNM recommends that servicers solicit borrowers for a DIL by day 75
- Plan to begin discussion with FHFA/FRE week of 6/11

**Document Simplification:**
- Evaluating a method for determining non-eligibility criteria the same between GSE's

**Evaluation:**
- Determining consistent requirements across delinquent loans; finalizing thresholds and alignment on relocation incentive terms

**MI Delegation:**
- Signed US delegation agreement
- Finalizing alignment approach on MI delegation agreements with FHFA/FRE

**PMO:**
- Meeting tentatively scheduled for 6/19 with FHFA/FRE to begin walking FRE through our approach for DIL

**Project Financial Summary:**

| Projected Spend | Estimate to Finish | Started On | Complete By |
|---|---|---|---|
| $0.20* | $0.20* | Q1 2012 | Q4 2012 |

*Funded through base budgets

**Key Project Deliverables (By Quarter):**

| Deliverable | Due Date | Status |
|---|---|---|
| Continue to develop recommended strategies around DILs & D4L: | | |
| - Subordinate Lien Policy | Q1 2012 | C |
| - Streamlined Documentation | | |
|   - Eligibility | | |
|   - Solicitation | | |
|   - Documentation Simplification | | |
|   - Subordinate Liens | | |
|   - MI Delegation | Q2 2012 | OT |
|   - and other initiatives | | |
| - Agree on recommendation strategies 9/30 | Q3 2012 | OT |
| - Publish applicable guide announcements or directives to servicers by 12/31 | Q4 2012 | OT |

**Key Project Issues and Risks:**

| Description | Owner | Due Date | Resolution / Mitigation | |
|---|---|---|---|---|
| Risk: All MI companies not agreeing to streamlined full delegation agreement | | Jun 2012 | 6/01: Update: FNM team proposed to FHFA, since FNM already has signed delegation agreements with each of the MI companies, that FRE uses these agreements, changing only the company name (i.e. no change in agreement language) and execute these agreements with the MI companies on their behalf. FHFA is considering this proposal | N/A | N/A |
| Issue: None identified | | | | |

Protected Information To Be Disclosed Only In Accordance With Protective Order

FannieMae

FHFA00047942

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order

# DRAFT – VERIFICATION & REVIEW IN PROGRESS

## 3. Maintain foreclosure prevention activities and credit availability

**Objective : REO Sales**

Overall Status: NS



| Executive Sponsor | Project Lead |
|---|---|
| Terry Edwards | TBD |

**FHFA Target / Measure**

- Implement, as needed, loans to facilitate real estate owned (REO) sales program by June 30, 2012

**Final Project Deliverable(s)**

- Guidance from FHFA required to further define the requirements of this 2012 objective

**Key Project Update(s)**

N/A

**Status**

Status as of May 2012; Dollars in Millions

On Track · At Risk · Late · Not Started · Complete

**Project Financials Summary**

| | Project Spend | Estimate to Finish | Started On | Complete By |
|---|---|---|---|---|
| | N/A | N/A | N/A | N/A |
| | N/A | N/A | N/A | N/A |

**Key Project Deliverables (By Quarter)**

| Deliverable | Due Date | Status |
|---|---|---|
| - No action required in Q1 2012 by Fannie Mae | Q1 2012 | N/A |
| - Understanding is that this a goal for FRE. No current actions being taken by FNM | Q2 2012 | NS |

**Key Project Issues and Risks**

| | Description | Due Date | Resolution / Mitigation |
|---|---|---|---|
| Risk: N/A | | N/A | N/A |
| Issue: N/A | | N/A | N/A |

*Revised scope to Freddie Mac only*


FannieMae

Confidential – Restricted

# 3. Maintain foreclosure prevention activities and credit availability

**DRAFT – VERIFICATION & REVIEW IN PROGRESS**

**Objective : REO Sales**

**Overall Status:** OT

| Executive Sponsor | Project Lead |
|---|---|
| Terry Edwards | Ed Neill/Jay Ryan/P.J. McCarthy |

## FHFA Target / Measure

- Initiate disposition pilot, either through financing or bulk sales, by September 30, 2012

## Final Project Deliverable(s)

- Executable REO Joint Venture transaction dependant on FHFA approval

## Status

Status as of May 31, 2012 - Dollars in Millions

On Track □ | At Risk □ | Late ■ | Not Started ■ | Complete ■

## Key Project Deliverables (By Quarter)

| Deliverable | Due Date | Status |
|---|---|---|
| - Working with FHFA and Treasury to structure REO Joint Venture deal | Q1 2012 | C |
| Obtain bids for potential REO Joint Venture deal | Q2 2012 | OT |
| - Execute REO Joint Venture transaction dependant on FHFA approval | Q3 2012 | NS |

## Project Financials Summary

| Projected Spend | |
|---|---|
| Estimate to Finish | $1.75* |
| | $0.53* |

*Reflects impact to Base Admin expenses; there is also an est. impact to Credit related expenses (FPE) of $5M

| | Complete By |
|---|---|
| | Dec-11 |
| | Jul-12 |

## Key Project Updates(s)

Initiate calls for Fannie Mae to test market pricing for joint venture interests or outright sale of various pools of REO Tenant in Place properties (numbering approximately 2,300) in Las Vegas, Phoenix, various communities in Florida, Chicago, Riverside and Los Angeles and Atlanta. The market pricing will be compared to current execution levels in the Retail sales channels and transactions which produce better overall economics and will move forward subject to FHFA and Treasury approval. Various transfer restrictions on the pools will facilitate longer term rentals. We consider the initiative complementary to our existing retail sales efforts

2/01/12 - FHFA Program Announcement
2/27/12 - Sale Announcement
3/14/12 - Data Room opened
4/11/12 - Bidder Qualification Applications Received
6/11/12 - Bids due
7/23/12 - Current targeted Closing Date

## Key Project Issues and Risks

| | Description | Due Date | Resolution / Mitigation |
|---|---|---|---|
| Risk: | Pricing below retail benchmark | Q2 2012 | If bids come in below 2011 TIP Net Execution by MSA then FM will choose not to execute unless directed to do so by FHFA |
| Issue: | None identified | N/A | N/A |

Protected Information To Be Disclosed Only In Accordance With Protective Order

**FannieMae**

FHFA00047944

000261

Confidential – Restricted

# DRAFT – VERIFICATION & REVIEW IN PROGRESS

## 3. Maintain foreclosure prevention activities and credit availability

**Objective : REO Sales**

Overall Status:  NS

| Executive Sponsor | Project Lead |
|---|---|
| Terry Edwards | Ed Neill/Jay Ryan/P.J. McCarthy |

**FHFA Target / Measure**

- Expand pilot programs and establish ongoing sales program, as agreed to with FHFA, during 2012

**Final Project Deliverable(s)**

- Complete expansion of sales programs as agreed to with FHFA

**Status**   ▨ - On Track   ☐ - At Risk   ◪ - Late   ▧ - Not Started   ■ - Complete

*Status as of May 31, 2012 - Dollars in Millions*

**Project Financials Summary**

| Projected Spend | Not Started* |
|---|---|
| Estimate to Finish | Not Started |

*Project is yet to be started and therefore cost are to be determined

**Key Project Update(s)**

Pending roll-out of initial pilot in Q3-12

**Key Project Deliverables (By Quarter)**

| Deliverable | Due Date | Status |
|---|---|---|
| - Pending roll-out of initial pilot in Q3 2012 | Q3 2012 | NS |
| - Expand pilot programs & establish ongoing sales program as agreed to with FHFA | Q3 2012 | NS |
| - Complete expansion of sales programs as agreed to with FHFA | Q4 2012 | NS |

**Key Project Issues and Risks**

| Description | Due Date | Resolution / Mitigation |
|---|---|---|
| Risk: Dependent on the timely execution of initial pilot program | TBD | TBD |
| Issue: None identified | N/A | N/A |

38

**FannieMae**

FHFA00047945

PX-0213 - p. 85 of 120

000262

Confidential – Restricted

DRAFT – VERIFICATION & REVIEW IN PROGRESS

# 3. Maintain foreclosure prevention activities and credit availability

**Objective : REO Sales**

Overall Status: OT

| Executive Sponsor | Andrew Bon Salle | Project Lead | John Forlines |
|---|---|---|---|

### FHFA Target / Measure

- Expand financing for small investors in REO properties by June 30, 2012

### Final Project Deliverable(s)

- Recommendation to FHFA on an expansion of financing for small investors

### Key Project Update(s)

- Currently working to implement the initiative with three lenders (Guild, Prospect, Umpqua Bank)

- Fannie Mae has allowed more flexible terms for up to 10 properties on a variance basis for lenders if they had the expertise and willingness. However, most investors in the market that purchase over 5 properties are generally limited liability companies (LLC)

- Guild has agreed to terms and the variance is now part of their contract

- The final variance terms have been sent to Prospect and Umpqua

We expect to execute before month end.

- GMAC, PHH and Wells each declined to consider a pilot at this point given the one off nature and the complexity of underwriting an LLC

- We may also grant variances permitting up to 20 financed properties without layering on the LLC

### Project Financials Summary

*Status as of May 31, 2012 - Dollars in Millions*

| | Status |
|---|---|
| Projected Spend | $0.03* |
| Estimate to Finish | $0.02* |

*Funded through base budgets

Status: ☐ - On Track  ☐ - At Risk  ■ - Late  ☐ - Not Started  ☐ - Complete

### Key Project Deliverables (By Quarter)

| Deliverable | Started On | Complete By | Status |
|---|---|---|---|
| - Working to pilot expansion of small investor unit cap from 10 to 20 | Q1 2012 | Jun-12 | C |
| - Add agreed variance terms to lender contracts by June 30, 2012 | Q1 2012 | | C |
| | Q2 2012 | | OT |
| | Q3 2012 | | N/A |
| | Q4 2012 | | N/A |

### Key Project Issues and Risks

| Description | Due Date | Resolution / Mitigation |
|---|---|---|
| Risk: 1) LLC structures can be complex and potentially "hide" other members of the LLC which could present enforcement issues upon foreclosure. 2) By increasing the number of financed properties from 10 to 20, we increase concentration risk with individual borrowers | Q2, 2012 | 1) No changes to LLC without lender's written consent. Lender must confirm and rep and warrant that the LLC is valid and in good standing. 2) Variance requires borrowers with experience managing properties, includes reserve requirements, and requires lower loan to value ratios |
| Issue: None identified | N/A | N/A |

Protected Information To Be Disclosed Only In Accordance With Protective Order



FannieMae

FHFA00047946

000263

# 4. Manage efficiently- all projects on track as of May 31, 2012 . . .

*Portfolio Status Update*

DRAFT – VERIFICATION & REVIEW IN PROGRESS

**Status**   ■ - On Track   ▨ - At Risk   ■ - Late   □ - Not Started   ■ - Complete

**Overall Status:**   OT

*Status as of May 31, 2012 – All Dollars in Millions*

## Objectives and Key Portfolio Updates

**Conservatorship/Board Priorities**

- Approved new Board governance structure for oversight of corporate goals and charter for new SI committee (approved by Board and FHFA)
- Engaged with FHFA on prioritization of strategic initiatives
- Provided FHFA with timely deliverables and collaboration on analysis of principal forgiveness and the development
- Presented Human Capital Contingency Plan to Board
- Attended MBA/SIFMA discussion to obtain industry input on GSE securities with FHFA
- Provided FHFA with proposal on RAN restructuring, as requested
- Enterprise risk and legal teams continue to support FHFA in both PLS lawsuits and PLS subpoenas
- FNMA and FRE have biweekly and targeted meetings to discuss accounting alignment on new transactions

## Financials Summary

| | |
|---|---|
| Projected Spend | ~$35M* |
| Estimate to Finish | ~$29M* |

*\* Excludes 1 project with soft goals and with no costs associated with it to date*

## Key Portfolio Issues and risks

| Description | Due Date | Resolution / Mitigation |
|---|---|---|
| **Risk:**<br>- Risks inherent in large multi-jurisdictional litigation<br>- Unplanned initiatives (such as the 180 day charge off guidance) will impact the resources that are available to work on this Goal | N/A | N/A |
| Issue: N/A | N/A | N/A |

**Portfolio Weight**   20%

**Number of Projects**   3

Revised the scope of accounting alignment to focus on forward looking matters only; ongoing risks in this portfolio include the uncertainties related to large multi-jurisdictional litigation and available resources for the new projects

Confidential – Restricted



FannieMae

FHFA00047947

PX-0213 - p. 87 of 120

000264

**DRAFT – VERIFICATION & REVIEW IN PROGRESS**

# 4. Manage Efficiently in Support of Conservatorship Goals

**Objective : Conservatorship/Board Priorities**

Overall Status: **OT**

| Executive Sponsor | Tim Mayopoulos | Project Lead | TBD |
|---|---|---|---|

## FHFA Target / Measure

- Prioritize and manage Enterprise operations in support of conservatorship goals and board directions
- Adapt to evolving conservatorship requirements
- Collaborate fully with FHFA and, when requested, the other Enterprise
- Actively seek and consider public input on conservatorship-related projects, as requested
- Effectively identify, communicate, and remediate situations that create risk for the conservatorships or avoidable taxpayer losses
- Ensure corporate governance procedures are maintained, including timely reporting to the board and adhering to board mandates and expectations
- Take steps to mitigate key person dependencies and maintain appropriate internal controls and risk management governance

## Final Project Deliverable(s)

- Provide monthly assessments to Board and quarterly assessments to FHFA of our activities in support of this objective

## Status

*Status as of May 31, 2012 - Dollars in Millions*

| | On Track | At Risk | Late | Not Started | Complete |
|---|---|---|---|---|---|

### Project Financials Summary

| Projected Spend | N/A* | Started On | Jan 2012 |
|---|---|---|---|
| Estimate to Finish | N/A* | Complete By | Dec-12 |

*Soft goals, no costs associated to date

## Key Project Update(s)

May Assessment:
- Approved new Board governance structure for oversight of corporate goals and charter for new Strategic Initiatives committee (approved by Board and FHFA)
- Engaged with FHFA on prioritization of strategic initiatives
- Provided FHFA with timely deliverables and collaboration on analysis of principal forgiveness and the development of alternatives to assist borrowers
- Presented Human Capital Contingency Plan to Board
- Attended MBA/SIFMA discussion to obtain industry input on GSE securities with FHFA
- Provided FHFA with our proposal on RAN (Retained Attorney Network) restructuring, as requested
- Engaged FHFA on Loan-Level Data Disclosure and Credit Risk Transfer initiative
- Engaged FHFA on new policy directive pertaining to Credit Asset Classification & Charge Offs (180-Day Rule)

### Key Project Deliverables (By Quarter)

| Deliverable | Due Date | Status |
|---|---|---|
| No defined deliverables | N/A | |

### Key Project Issues and Risks

| Description | Due Date | Resolution / Mitigation | Status |
|---|---|---|---|
| Risk: None Identified | N/A | N/A | |
| Issue: None Identified | N/A | N/A | |

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order

**FannieMae**

FHFA00047948

000265

Confidential – Restricted

# DRAFT – VERIFICATION & REVIEW IN PROGRESS

# 4. Manage Efficiently in Support of Conservatorship Goals

Overall Status:  OT

**Objective : Conservatorship/Board Priorities**

| Executive Sponsor | Project Lead |
|---|---|
| Tim Mayopoulos | Jonathan Griffith (Legal), Ben Perlman (Risk) |

### FHFA Target / Measure

- Work closely with FHFA toward concluding litigation associated with private label securities and whole loan repurchase claims, as appropriate

### Final Project Deliverable(s)

- Enterprise risk and legal teams will continue to support FHFA's private label securities litigation and subpoenas daily through conducting reviews of the underlying loans of the securities, providing bond-by-bond performance information and analysis, and giving general advice and recommendations, as appropriate

| Status | |
|---|---|

Status as of May 31, 2012

⬛ On Track   ⬜ At Risk   ⬛ Late   ⬛ Not Started   ⬛ Complete

### Project Financials Summary

*Status as of May 31, 2012 - Dollars in Millions*

| Projected Spend | $34.7 | Started On | Jan-12 |
|---|---|---|---|
| Estimate to Finish* | $28.6 | Complete By | Dec-12 |

*Funded through base budgets

### Key Project Deliverables (By Quarter)

| Deliverable | Due Date | Status |
|---|---|---|
| Due to the ongoing nature of litigation (which is subject to control by various courts), the project deliverables cannot be predicted at this time, other than the fact that the Fannie Mae teams will continue to support FHFA's PLS lawsuits and subpoenas as much as possible | Ongoing | OT |

### Key Project Update(s)

Enterprise risk and legal teams continue to support the following FHFA actions:

**PLS Lawsuits**

- *UBS/SDNY cases* - On May 4, 2012, Judge Cote in the Southern District of New York (SDNY) denied the UBS defendants' motion to dismiss federal and state securities law claims and granted their motion to dismiss negligent misrepresentation claims. Discovery in the UBS and other cases pending in the SDNY has commenced and is ongoing.
- *RBS* - case is in Connecticut Federal Court and defendants have filed their motion to dismiss.
- *Countrywide* - case in California Federal Court from New York. The Defendants filed their motion to dismiss on June 8, 2012.

**PLS Subpoenas**

- *FHFA* filed the first motion to compel against First Horizon in December 2011 in DC Federal Court. The judge transferred the case to the SDNY court to coordinate with PLS lawsuits.

### Key Project Issues and Risks

| Description | Due Date | Resolution / Mitigation |
|---|---|---|
| Risk: There are many risks and issues inherent in large multi-jurisdictional litigation | TBD | TBD |
| Issue: There are many risks and issues inherent in large multi-jurisdictional litigation | TBD | TBD |



FannieMae

FHFA0047949

Protected Information To Be Disclosed Only In Accordance With Protective Order

000266

Confidential – Restricted

# 4. Manage Efficiently in Support of Conservatorship Goals

**DRAFT – VERIFICATION & REVIEW IN PROGRESS**

*Objective : Conservatorship/Board Priorities*

Overall Status: | OT |

| **Executive Sponsor** | Susan McFarland | **Project Lead** | Kirk Silva |
|---|---|---|---|

**FHFA Target / Measure**

- Achieve milestones agreed to within the year with regard to accounting alignment

**Final Project Deliverable(s)**

- 10-K filing for 2012 that has alignment of targeted disclosures

**Status** — Status as of May 31, 2012 : | On Track | At Risk | Late | Not Started | Complete |

**Project Financials Summary** — Dollars in Millions

| | |
|---|---|
| Projected Spend | $0* |
| Started On: | Q1 2012 |
| Estimate to Finish | $0* |
| Complete By: | Dec-12 |

*Funded through base budgets

**Key Project Update(s)**

1) FHFA plans to issue a directive on this topic. Expect to receive it shortly
2) FNMA & FRE have established a joint working group
3) FNMA & FRE have biweekly and targeted meetings to discuss accounting alignment on new transactions

**Key Project Deliverables (By Quarter)**

| Deliverables | Due Date | Status |
|---|---|---|
| - Align HARP accounting, G-Fee, Tax accounting, and the accounting for the new Fair Value Standard | Q1 2012 | C |
| - Establish Joint Working Group with FRE | | |
| - Establish a charter for the Working Group | | |
| - Align policies for new transactions and the adoption of new accounting guidance | Q2 2012 | OT |
| - Identify and prioritize those disclosures that should be adjusted to achieve alignment in 2012 10-K | Q3 2012 | NS |
| - Align policies for new transactions and the adoption of new accounting guidance | | |
| - Implement changes necessary to align disclosures | Q4 2012 | NS |
| - Align policies for new transactions and the adoption of new accounting guidance | | |

**Key Project Issues and Risks**

| Description | Due Date | Resolution / Mitigation |
|---|---|---|
| Risk: Unplanned initiatives (such as the 180 day charge off guidance) will impact the resources that are available to work on this Goal | TBD | We are assessing the impact of the 180 day initiative on this goal and other initiatives and will communicate to both FHFA and senior management the anticipated impact on this project |
| Issue: None identified | N/A | N/A |

43

Protected Information To Be Disclosed Only In Accordance With Protective Order



FHFA0004 7950

000267

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order

# May 2012 Financial Update
## Forecast Only

### Management Committee

### July 9, 2012

### DRAFT



**FannieMae**

FHFA00047951

# Table of Contents

DRAFT

| Description | Page |
|---|---|
| Executive Summary | 2 |
| Consolidated Financial Results | 3 – 12 |
| Net Revenues | 13 – 16 |
| Credit | 17 – 22 |
| Appendix | 23 – 29 |

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order

1



FHFA00047952

000269

Confidential – Restricted

DRAFT

## Executive Summary

- Q2 comprehensive income projected at $6.2B which is double Q1 comprehensive income of $3.1B and is primarily driven by the quarter's credit-related benefit, slightly offset by fair value losses due to the declining interest rate environment

- Full year 2012 projection continues to be favorable to Plan, primarily driven by lower credit-related expenses resulting from an improved book profile, higher national house prices and REO values, as well as the low interest rate environment impact on the individually impaired reserve. 2012 comprehensive income is expected to be sufficient to cover the dividend obligations for the full year

- Current five year forecast is for the years 2012-2016. Cumulative forecasted comprehensive income is $56.6B, which is $12.3B higher than the May BOD forecast for that period due to an improved credit outlook

Protected Information To Be Disclosed Only In Accordance With Protective Order

FannieMae

FHFA00047953

000270

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order

# Consolidated Financials

3

DRAFT



FHFA00047954

000271

# Improved credit environment drives projected FY 2012 comprehensive income favorable to Plan and prior year . . .

($'s in billions)

| | Current Projection[1] | 2012 Plan | Full Year 2012 — Variance Fav / (Unfav) | Prior Year | Variance Fav / (Unfav) |
|---|---|---|---|---|---|
| Net revenues.......................... | $ 22.1 | $ 20.3 | $ 1.8 | $ 20.4 | $ 1.6 |
| Fair value (losses) / gains, net.. | (1.5) | 0.4 | (2.0) | (6.6) | 5.1 |
| Charge-offs.......................... | (17.5) | (19.8) | 2.3 | (17.4) | (0.1) |
| Foreclosed property expenses.. | (1.5) | (2.2) | 0.7 | (1.9) | 0.4 |
| Credit losses........................ | (19.0) | (22.1) | 3.0 | (19.3) | 0.3 |
| Reduction in allowance........... | 11.7 | 4.0 | 7.7 | (11.7) | 23.4 |
| SOP 03-3............................. | 1.7 | 2.2 | (0.5) | 2.5 | (0.8) |
| Credit-related expenses........... | (5.5) | (15.9) | 10.3 | (27.5) | 22.0 |
| Administrative expenses........... | (2.5) | (2.5) | 0.0 | (2.4) | (0.1) |
| Other expenses...................... | (1.3) | (1.5) | 0.2 | (0.9) | (0.4) |
| **Total expenses and other losses.** | **(10.9)** | **(19.4)** | **8.5** | **(37.4)** | **26.5** |
| Income / (loss) before federal income taxes | 11.2 | 1.0 | 10.3 | (16.9) | 28.2 |
| Taxes and non-controlling interests | (0.0) | (0.0) | 0.0 | 0.1 | (0.1) |
| **Net income / (loss) attributable to Fannie Mae** | **$ 11.2** | **$ 0.9** | **$ 10.3** | **$ (16.8)** | **$ 28.1** |
| Accumulated other comprehensive income change..... | 0.4 | 0.5 | (0.1) | 0.4 | (0.0) |
| **Comprehensive income / (loss) attributable to Fannie Mae** | **$ 11.6** | **$ 1.5** | **$ 10.2** | **$ (16.4)** | **$ 28.0** |
| Cumulative infusion received, plus new draw..... | $ 116.1 | $ 126.2 | $ 10.1 | $ 116.1 | $ - |
| Dividends............................. | $ (11.6) | $ (11.8) | $ 0.2 | $ (9.6) | $ (2.0) |

Numbers may not foot due to rounding

[1] July 2012 Board Forecast reflects actual results through May and mark-to-market activity through June 06, 2012

## Forecast vs. Plan:

- **Net revenues $1.8B favorable** . . . lower funding costs, partially offset by lower income from mortgage portfolio. The impact of 10 bps price increase is expected to be $150M in 2012

- **Fair value gains / (losses)** . . . **$2.0B unfavorable** . . . losses on risk management derivatives as interest rates declined in April and May

- **Credit-related expenses $10.3B favorable** . . . lower severity and fewer delinquencies driven by improved REO values and actual home prices, along with better prepayment expectations due to low interest rate environment

## Forecast vs. Prior Year:

- **Net revenues $1.6B favorable** . . . lower funding costs and lower non-accrued interest resulting from fewer SDQ loans, partially offset by lower interest income from mortgage portfolio

- **Fair value gains / (losses), net $5.1B favorable** . . . prior year results driven by derivatives losses due to decreasing rates in Q3 2011

- **Credit-related expenses $22.0B favorable** . . . no additional allowance required in 2012 as a result of fewer delinquencies. Allowance projected to have peaked in Q4 2011

> **Current projection favorable to Plan primarily due to actual trends realized year to date in credit-related expenses**

Confidential – Restricted

4

Protected Information To Be Disclosed Only In Accordance With Protective Order


FannieMae

FHFA00047955

DRAFT

# Q2 comprehensive income is projected to be $6.2B, double Q1 results . . .

($'s in billions)

| | April Results | May Results | June Projection[1] | Q2 Current Projection[1] | Variance to Plan Fav/(Unfav) | Variance to Prior Qtr Fav/(Unfav) |
|---|---|---|---|---|---|---|
| Net revenues | $ 2.1 | $ 1.9 | $ 1.8 | $ 5.8 | $ 0.6 | $ 0.3 |
| Fair value (losses) / gains | (1.1) | (1.3) | 0.3 | (2.1) | (2.2) | (2.4) |
| Charge-offs | (1.2) | (1.3) | (1.4) | (4.0) | 0.8 | 0.6 |
| Foreclosed property expenses | (0.1) | (0.0) | (0.2) | (0.2) | 0.4 | 0.2 |
| Credit losses | (1.3) | (1.4) | (1.6) | (4.2) | 1.2 | 0.9 |
| Reduction / (build) in allowance | 1.7 | 4.3 | 1.4 | 7.3 | 6.0 | 5.0 |
| SOP 03-3 | 0.1 | 0.1 | 0.1 | 0.4 | (0.1) | 0.0 |
| Credit-related benefit / (expenses) | 0.5 | 3.0 | (0.1) | 3.5 | 7.1 | 5.8 |
| Other expenses | (0.2) | (0.2) | (0.4) | (0.9) | 0.1 | (0.1) |
| Total (expenses) / income and other (loss) / gains | $ (0.7) | $ 1.5 | $ (0.2) | $ 0.5 | $ 5.0 | $ 3.4 |
| Income before federal income taxes | 1.3 | 3.4 | 1.6 | 6.4 | 5.6 | 3.6 |
| Taxes and noncontrolling interests | (0.0) | 0.0 | (0.0) | 0.0 | (0.0) | (0.0) |
| Net income attributable to Fannie Mae | $ 1.3 | $ 3.4 | $ 1.6 | $ 6.4 | $ 5.6 | $ 3.6 |
| Accumulated other comprehensive income change | 0.1 | (0.1) | (0.1) | (0.2) | (0.3) | (0.5) |
| Comprehensive income attributable to Fannie Mae | $ 1.4 | $ 3.3 | $ 1.5 | $ 6.2 | $ 5.3 | $ 3.1 |
| Cumulative infusion received, plus new draw | N/A | N/A | N/A | 116.1 | (5.0) | 0.0 |
| Dividends | $ 0 | $ 0 | (2.9) | (2.9) | (0.0) | (0.1) |

[1] July 2012 Board Forecast reflects actual results through May and mark-to-market activity through June 6, 2012

Numbers may not foot due to rounding

**Estimated Impact to Q2**

| | |
|---|---|
| Fair value losses | ($161M) |
| AOCI change | $112M |
| Net worth impact | ($49M) |

**Activity**

Mark to market update for June 7, 2012 to June 29, 2012 indicates fair value losses on derivatives as a result of decreasing interest rates, partially offset by gains on HFT and AFS securities due to tightening spreads

**Recent Trends**

**Upcoming Actions**

Nothing identified at this time

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order

FannieMae

FHFA00047956

000273

# Lower credit-related expenses projected to eliminate the need to draw in 2012. . . .

DRAFT

($'s in billions)

## 2012 Comprehensive Income / (Loss) & Dividend Payment



| Cumulative Treasury Draw | | | | |
|---|---|---|---|---|
| | Q1 2012 | Q2 2012 | Q3 2012 | Q4 2012 |
| July BOD[1] | $116.1 | $116.1 | $116.1 | $116.1 |
| 2012 Plan | $115.9 | $119.2 | $121.2 | $123.4 |

July BOD Comprehensive Income in Excess of Dividend Payments

July BOD - Comprehensive Income / (Loss)[1]

July BOD - Comprehensive Income / (Loss)

2012 Plan - Comprehensive Income / (Loss)

July BOD - Dividend Payments to Treasury

2012 Plan - Dividend Payments to Treasury

Q4 comprehensive loss is offset by a $3.8B starting equity position which is sufficient to cover Q4 dividend obligation

[1] July 2012 Board Forecast reflects actual results through May and mark-to-market through June 6, 2012

**Commentary:**

- **Q1 Actuals** . . . comprehensive income of $3.1B was sufficient to cover the quarter's dividend obligation of $2.8B
- **Q2 and Q3 Projections** . . . comprehensive income driven  by a larger than expected allowance reduction earlier in 2012 than anticipated
- **Q4 Projection** . . . comprehensive loss is reflective of the expected impact of seasonal house prices and delinquency trends on the allowance build/reduction as home price growth is slowest, and delinquency transitions tend to be highest towards year end

**Current projection foresees comprehensive income through remainder of 2012 sufficient to cover Q2 to Q4 dividend obligations**

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order

 FannieMae

FHFA00047957

PX-0213 - p. 97 of 120

000274

DRAFT

# FY 2012 comprehensive income projection improved by $4.9B to $11.6B . . .

($'s in billions)

### 2012 Comprehensive Income Walk by Activity



| | |
|---|---|
| May '12 BOD | $6.7 |
| Net Revenue | 0.4 |
| Fair Value | 1.4 |
| Credit-Related Expenses | 5.7 |
| AOCI | 0.0 |
| Other | 0.3 |
| Jul '12 BOD | $11.6 |

### 2012 Comprehensive Income / (Loss) by Quarter

| | Q1 | Q2 | Q3 | Q4 |
|---|---|---|---|---|
| May 2012 BOD | 3.1 | 2.4 | 0.7 | (0.9) |
| July 2012 BOD | 3.1 | 6.2 | 3.2 | 0.6 |

——— July 2012 BOD   ——— May 2012 BOD

Numbers may not foot due to rounding

## Commentary:

- Net revenues $0.4B favorable . . . lower funding costs due to decreased interest rates

- Fair value $1.4B unfavorable . . . losses on derivatives as a result of declining interest rates

- Credit-related expenses $5.7B favorable . . . improved severity as a result of better REO values and national house prices, along with better book profile driving lower collective and individually impaired reserves. The total allowance is still projected to have reached its highest levels in Q4 2011

- Comprehensive income favorable through Q3 . . . year to date improvement in realized national house prices and REO values as well as fewer delinquencies caused the allowance to decline sooner in 2012 and to a lower balance than anticipated in the prior forecast

- Q4 projected comprehensive loss . . . the expected seasonal impact of house prices and delinquency trends on the allowance build/reduction results in a net loss

## Full year 2012 improvement largely due to the larger than anticipated reduction in the allowance experienced year to date

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order

7

Fannie Mae

FHFA00047958

000275

# FY 2012 comprehensive income forecast continues to trend upwards . . .

($'s in billions)

DRAFT

## 2012 Comprehensive Income / (Loss) Walk by Forecast



**Comprehensive Income ($)**

| Sep '11 BOD | Nov '11 BOD[1] | Jan '12 BOD | Mar '12 BOD | May '12 BOD | Jul '12 BOD | Jul '12 BOD |
|---|---|---|---|---|---|---|
| ($1.9) | 2.9 | 0.5 | 3.0 | 2.2 | 4.9 | $11.6 |
| | 1.0 | 1.5 | 4.5 | 6.7 | 11.6 | |

> Greater allowance reduction resulting from lower severity and delinquencies

> Lower severity resulting from improved REO values drove reduction in the collective (FAS 5) reserve

> Greater allowance reduction resulting from lower severities and fewer delinquencies

[1] Nov '11 BOD does not include a full run of the Single-Family credit forecast and primarily reflects an update for actual results through September 2011

Numbers may not foot due to rounding.

---

**Current 2012 projection reflects further improvements since Plan primarily driven by actual results in first half of the year**

Confidential – Restricted

8

Protected Information To Be Disclosed Only In Accordance With Protective Order

 **FannieMae**

FHFA00047959

DRAFT

# Allowance reduction drives full year 2012 and 2013 comprehensive income . . .

($s in billions)

| | Full Year 2012¹ | | | | Full Year 2013¹ | | | |
|---|---|---|---|---|---|---|---|---|
| | Q1 | Q2 | Q3 | Q4 | Q1 | Q2 | Q3 | Q4 |
| Net interest income - portfolio and other | $ 3.7 | $ 3.9 | $ 3.5 | $ 3.3 | $ 3.2 | $ 3.4 | $ 3.2 | $ 3.1 |
| Net interest income - MBS guaranty fee | 1.5 | 1.5 | 1.6 | 1.7 | 1.7 | 1.5 | 1.6 | 1.7 |
| Net interest income | 5.2 | 5.5 | 5.2 | 5.0 | 4.9 | 4.9 | 4.9 | 4.8 |
| Guaranty fees | 0.1 | 0.1 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Fee and other income | 0.3 | 0.3 | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 |
| **Net revenues** | $ 5.6 | $ 5.8 | $ 5.4 | $ 5.2 | $ 5.1 | $ 5.2 | $ 5.1 | $ 5.0 |
| Fair value gains / (losses), net | 0.3 | (2.1) | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 |
| Credit losses | (5.1) | (4.2) | (4.5) | (5.2) | (4.6) | (5.0) | (5.1) | (4.4) |
| Reduction / (build) in allowance | 2.3 | 7.3 | 2.6 | 0.5 | 1.7 | 2.0 | 2.4 | 1.4 |
| SOP 03-3 | 0.4 | 0.4 | 0.5 | 0.4 | 0.5 | 0.5 | 0.5 | 0.4 |
| Credit-related (expenses) / benefit | $ (2.3) | $ 3.5 | $ (1.4) | $ (5.3) | $ (2.4) | $ (2.5) | $ (2.2) | $ (2.6) |
| Administrative expenses | (0.6) | (0.6) | (0.6) | (0.7) | (0.6) | (0.6) | (0.6) | (0.6) |
| Other expenses | (0.2) | (0.3) | (0.4) | (0.4) | (0.3) | (0.4) | (0.4) | (0.4) |
| **Total (expenses) / income and other (losses) / gains** | $ (2.9) | $ 0.5 | $ (2.3) | $ (6.2) | $ (3.2) | $ (3.3) | $ (3.0) | $ (3.5) |
| Income / (loss) before federal income taxes | 2.7 | 6.4 | 3.1 | (1.0) | 2.0 | 1.8 | 2.1 | 1.5 |
| Taxes and non-controlling interests | 0.0 | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) |
| **Net income / (loss) attributable to Fannie Mae** | $ 2.7 | $ 6.4 | $ 3.1 | $ (1.0) | $ 2.0 | $ 1.8 | $ 2.1 | $ 1.5 |
| Accumulated other comprehensive income charge | 0.4 | (0.2) | 0.1 | 0.1 | 0.0 | 0.0 | 0.0 | 0.0 |
| **Comprehensive income / (loss) attributable to Fannie Mae** | $ 3.1 | $ 6.2 | $ 3.2 | $ (0.9) | $ 2.0 | $ 1.8 | $ 2.1 | $ 1.6 |
| Cumulative infusion received, plus new draw | $ 116.1 | $ 116.1 | $ 116.1 | $ 116.1 | $ 117.1 | $ 118.2 | $ 119.0 | $ 120.5 |
| Dividends | (2.8) | (2.9) | (2.9) | (2.9) | (2.9) | (3.0) | (3.0) | (3.0) |
| Ending net worth | $ 0.3 | $ 3.5 | $ 3.8 | $ 0.0 | $ (0.9) | $ 0.0 | $ (1.1) | $ (1.4) |

¹ July 2012 Board Forecast reflects actual results through May and mark-to-market activity through June 06, 2012

Numbers may not foot due to rounding

**Quarterly trend:**

- **Net revenues** . . . trend downward throughout 2012 and 2013 resulting from lower portfolio income due to liquidation of the portfolio. The benefit to NII from lower funding costs is slightly diminished quarter-over-quarter as the cost of debt increases approximately 20 bps from Q1 2012 to Q4 2013. FY 2012 impact of TCCA-mandated 10 bps guaranty fee price increase is $150M and FY 2013 impact is $570M (both offset in other expenses)

- **Fair value gains / (losses)** . . . $2.1B loss in Q2 based on mark-to-market through June 6, 2012. The remainder of the forecast is for mark-to-market gains as sold options expire

- **Credit-related expenses** . . . credit losses are expected to be relatively stable from 2012 to 2013 as delays in foreclosures are pushing out defaults into later years. The quarterly allowance decreases slightly from 2012 to 2013, as 2012 year to date trends are not expected to continue into 2013. The home price trough is expected to occur in Q1 2013 which is then followed by a period of slow home price growth

**Earnings in 2012 projected to be sufficient to cover 2012 dividend obligation, however this is not expected to recur in any of the quarters in 2013**

Confidential – Restricted


FannieMae

FHFA00047960

PX-0213 - p. 100 of 120

000277

DRAFT

# 2013 trends are a continuation of those projected for the remainder of 2012 . . .

## Portfolio and Other



| Portfolio and Other | Q1 '12 | Q2 '12 | Q3 '12 | Q4 '12 | Q1 '13 | Q2 '13 | Q3 '13 | Q4 '13 | FY'12 | FY'13 | Variance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| NIM - Portfolio and Other (bps)[1] | 190 | 199 | 192 | 190 | 200 | 199 | 196 | | 198 | 196 | (2) |
| Gross Mortgage Portfolio ($) | 692 | 668 | 644 | 625 | 606 | 584 | 564 | 548 | 625 | 548 | (77) |
| % Distressed Assets of Total Portfolio | 37% | 38% | 39% | 40% | 41% | 42% | 43% | 43% | 40% | 43% | 3% |

## Guaranty Book

| Guaranty Book | Q1 '12 | Q2 '12 | Q3 '12 | Q4 '12 | Q1 '13 | Q2 '13 | Q3 '13 | Q4 '13 | FY'12 | FY'13 | Variance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SF Avg Charge Fee on Acq (bps) | 39 | 41 | 41 | 40 | 40 | 41 | 41 | | 37 | 41 | 3.2 |
| SF Guaranty Book of Business ($) | 2,858 | 2,914 | 2,903 | 2,849 | 2,826 | 2,803 | 2,802 | 2,809 | 2,849 | 2,809 | (40) |

## SF Credit

| SF Credit | Q1 '12 | Q2 '12 | Q3 '12 | Q4 '12 | Q1 '13 | Q2 '13 | Q3 '13 | Q4 '13 | FY'12 | FY'13 | Variance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Average SF SDQ # | 672 | 630 | 616 | 603 | 586 | 542 | 515 | 503 | 630 | 537 | (94) |
| SF Trial Mods # | 43 | 41 | 38 | 40 | 36 | 36 | 34 | 30 | 119 | 155 | 36 |
| Total SF Defaults # | 70 | 67 | 72 | 75 | 66 | 74 | 77 | 65 | 214 | 279 | 66 |
| SF Net Sales / UPB | 57.4% | 60.4% | 62.0% | 61.9% | 60.1% | 59.2% | 60.2% | 61.8% | 60.4% | 60.3% | 0% |
| SF REO Inv # | 114 | 110 | 114 | 123 | 118 | 123 | 129 | 125 | 123 | 118 | (5) |

## Commentary:

- **SF net sales / UPB** . . . trailing indicator that follows home price forecast that bottomed in Q1 2013; subsequent periods are expected to increase in conjunction with increasing home prices
- **Total SF defaults** . . . quarterly variations in activity follow seasonality observed in historical periods
- **SF defaults** . . . quarterly variations in activity follow seasonality observed in historical periods

[1]Includes mortgage and non-mortgage assets, FNM debt, and non-accrued interest.

Quarterly indicators consistent with longer-term trends, except in quarters impacted by seasonality

FannieMae

FHFA00047961

# The Company is projected to achieve sustainable profitability beginning 2012 . . .

DRAFT

($'s in billions)

| | July 2012 Board Forecast | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | 2012 [1] | 2013 | 2014 | 2015 | 2016 | Cumulative 2012-2016 |
| Net revenues | $ 22.1 | $ 20.5 | $ 19.8 | $ 19.3 | $ 18.4 | $ 100.0 |
| Fair value (losses) / gains, net | (1.5) | 0.5 | 0.5 | 0.5 | 0.4 | 0.3 |
| Credit losses | (19.0) | (19.0) | (17.7) | (13.3) | (9.5) | (78.5) |
| Reduction / (build) in allowance | 11.7 | 7.5 | 11.0 | 9.0 | 7.7 | 47.1 |
| SOP 03-3 | 1.7 | 1.9 | 1.6 | 1.1 | 0.8 | 7.1 |
| Credit-related expenses | (5.5) | (9.6) | (5.1) | (3.2) | (1.0) | (24.4) |
| Administrative expenses | (2.5) | (2.5) | (2.5) | (2.3) | (2.1) | (11.8) |
| Other expenses | (1.3) | (1.5) | (1.7) | (1.9) | (2.0) | (8.3) |
| Total expenses and other losses | $ (10.9) | $ (13.0) | $ (8.8) | $ (6.9) | $ (4.6) | $ (44.2) |
| Income before federal income taxes | 11.2 | 7.4 | 11.0 | 12.4 | 13.8 | 55.8 |
| Taxes and non-controlling interests | (0.0) | (0.0) | 0.0 | (0.0) | (0.0) | (0.0) |
| Net income attributable to Fannie Mae | $ 11.2 | $ 7.4 | $ 11.0 | $ 12.4 | $ 13.8 | $ 55.8 |
| Accumulated other comprehensive income change | 0.4 | 0.1 | 0.1 | 0.1 | 0.1 | 0.7 |
| Comprehensive income attributable to Fannie Mae | $ 11.6 | $ 7.5 | $ 11.0 | $ 12.5 | $ 13.9 | $ 56.6 |
| Cumulative infusion received, plus new draw | $ 116.1 | $ 120.4 | $ 121.5 | $ 121.5 | $ 121.5 | $ 121.5 |
| Dividends | (11.6) | (11.6) | (12.1) | (12.2) | (12.2) | (60.0) |
| **Other Metrics:** | | | | | | |
| Ending allowance | $ 65.2 | $ 57.7 | $ 46.6 | $ 37.6 | $ 29.9 | $ 29.9 |
| Guaranty book of business | $ 3,042 | $ 2,991 | $ 2,945 | $ 2,923 | $ 2,916 | $ 2,916 |
| Mortgage securities | $ 256 | $ 217 | $ 186 | $ 161 | $ 131 | $ 131 |
| Mortgage loans | $ 369 | $ 331 | $ 295 | $ 264 | $ 238 | $ 238 |
| Gross mortgage portfolio | $ 625 | $ 548 | $ 481 | $ 424 | $ 369 | $ 369 |

[1] July 2012 Board Forecast reflects actual results through May 2012 and mark-to-market activity through June 06, 2012

Numbers may not foot due to rounding

**Commentary:**
- **Net revenues in 2013 lower than 2012** . . . decreasing portfolio drives down overall revenues
- **Credit-related expenses in 2013 higher than 2012** . . . allowance declines at a slower rate in 2013 than 2012 as 2012 year to date trends are not expected to continue

> **Five year forecast is expected to be a period of slow home price growth with sustained lower severity**

Confidential – Restricted

11

Protected Information To Be Disclosed Only In Accordance With Protective Order

FannieMae

FHFA00047962

DRAFT

# 5 year forecast increased by $12.3B primarily driven by lower credit-related expenses . . .

($'s in billions)



**Cumulative 2012- 2016 Comprehensive Income Walk by Activity**

| May '12 BOD | Net Revenue | Fair Value | Credit-Related Expenses | AOCI | Other | Jul '12 BOD |
|---|---|---|---|---|---|---|
| $44.3 | 2.1 | (1.3) | 11.2 | (0.0) | 0.3 | $56.6 |

## Commentary:

- **Net revenues $2.1B favorable** . . . variance due to lower funding costs as a result of decreased interest rates, in addition to lower non-accrued interest

- **Fair value $1.3B unfavorable** . . . increased expense from risk management activity resulting from lower hedging requirements

- **Credit-related expenses $11.2B favorable** . . . improvement in credit losses of $12B due to lower severity with better REO values and REO execution, as well as a higher percentage of pre-foreclosure sales and lower defaults with an improved book profile

- **Comprehensive income through 2016 favorable** . . . primarily driven by reduction in credit-related expenses



**Cumulative 2012- 2016 Comprehensive Income by Year**

| | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|
| May '12 BOD | 6.7 | 7.5 | 11.0 | 12.5 | 13.9 |
| Jul '12 BOD | 3.3 | 9.6 | 11.0 | 12.4 | 12.3 |

— May '12 BOD   — Jul '12 BOD

Numbers may not foot due to rounding.

## Improvement in the five year forecast primarily due to lower severities and fewer defaults

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order

 FannieMae

FHFA00047963

PX-0213 - p. 103 of 120

000280

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order

13

# Net Revenues

DRAFT



FHFA00047964

000281

DRAFT

# FY 2012 net revenue of $22.1B trending better than Plan . . .

($'s in billions)

| | Current Projection [1] | | Full Year 2012 Plan | | Variance Fav / (Unfav) | | Prior Year | | Variance Fav / (Unfav) |
|---|---|---|---|---|---|---|---|---|---|
| Net interest income - portfolio and other | $ | 14.5 | $ | 13.4 | $ | 1.1 | $ | 13.8 | $ | 0.7 |
| Net interest income - MBS guaranty fee | | 6.3 | | 6.0 | | 0.3 | | 5.5 | | 0.8 |
| **Net interest income** | $ | 20.8 | $ | 19.5 | $ | 1.4 | $ | 19.3 | $ | 1.5 |
| Guaranty fees | | 0.2 | | 0.2 | | 0.0 | | 0.2 | | (0.0) |
| Fee and other income | | 1.1 | | 0.7 | | 0.4 | | 0.9 | | 0.1 |
| **Net revenues** | $ | 22.1 | $ | 20.3 | $ | 1.8 | $ | 20.4 | $ | 1.6 |
| | | | | | | | | | | |
| Avg NIM - portfolio and other (bps) | | 198 | | 182 | | 16 | | 171 | | 28 |
| Gross mortgage portfolio, ending ($B) | | 625 | | 634 | | (9) | | 708 | | (84) |
| % distressed assets, ending | | 40% | | 38% | | 2% | | 36% | | -4% |
| % short-term debt, ending | | 14% | | 13% | | 0% | | 21% | | -7% |
| SF weighted avg charge fee on new acq (bps) [2] | | 36 | | 32 | | 4 | | 29 | | 8 |
| MF weighted avg charge fee on new acq (bps) | | 75 | | 65 | | 10 | | 79 | | (3) |

[1] July 2012 Board Forecast reflects actuals through May 2012
[2] Includes HARP, RP Flex and government acquisitions, UPB weighted. Includes TCCA impact of 10 bps price increase

Numbers may not foot due to rounding.

## Commentary:

- **Net interest income – portfolio and other $1.1B higher than Plan . . .** lower funding costs resulting from higher short-term debt mix than Plan and lower interest rates, partially offset by lower portfolio income
- **Net interest income – portfolio and other $0.7B higher than prior year . . .** lower funding costs and lower non-accrued interest resulting from fewer SDQ loans, partially offset by lower income from mortgage portfolio as a result of the portfolio liquidation
- **Net interest income – MBS guaranty fee $0.8B higher than prior year . . .** higher effective guaranty fees as older vintages are replaced by new business with higher charge fee and higher amortization income from up-front cash associated with risk-based pricing. FY 2012 impact of 10 bps increase mandated by the Temporary Payroll Tax Cut Continuation Act is estimated at $150M

## Lower funding costs, offset by decreasing portfolio, drive full year favorability to Plan and prior year

Confidential – Restricted

FannieMae

FHFA00047965

000282

# Net revenues forecast to decline year over year . . .

DRAFT

($'s in billions)

| | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|
| **Total Net Revenue** | 20.4 | 22.1 | 20.5 | 19.8 | 19.3 | 18.4 |

NII: Portfolio & Other — 13.8 / 5.5 (2011); 14.5 / 6.2 / 0.2 (2012); 12.5 / 8.4 / 0.6 (2013); 11.3 / 6.6 / 0.9 (2014); 10.3 / 6.9 / 1.2 (2015); 8.9 / 7.2 / 1.4 (2016)

NII: MBS Guaranty fee — TCCA Impact[1] — Fee and Other Income

| **NII: Portfolio & Other** | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|
| Avg net interest margin - portfolio and other (bps) | 171 | 198 | 196 | 201 | 206 | 200 |
| Gross mortgage portfolio, ending ($B) | 708 | 625 | 548 | 481 | 424 | 369 |
| Distressed assets, ending ($B) | 258 | 250 | 238 | 216 | 195 | 178 |
| % Distressed assets, ending | 36% | 40% | 43% | 45% | 46% | 48% |
| % Short-term debt, ending | 21% | 14% | 14% | 14% | 14% | 14% |
| **NII: MBS Guaranty Fee** | | | | | | |
| SF weighted avg charge fee on new acq (bps)[2] | 29 | 36 | 41 | 42 | 43 | 43 |
| MF weighted avg charge fee on new acq (bps) | 79 | 75 | 60 | 60 | 60 | 60 |

[1] Temporary Payroll Tax Cut Continuation Act (TCCA) requires that all single/family loans acquired between 4/1/2012 and 12/31/2021 include a 10 bps increase in guaranty fee

[2] Includes HARP, RP Flex, and government acquisitions. UPB weighted; Includes TCCA impact of 10 bps price increase

Numbers may not foot due to rounding.

**Commentary:**

- **NII: Portfolio & Other . . .** decline driven by portfolio liquidation in accordance with portfolio cap, in addition to the increased percentage of distressed assets resulting from the liquidation of performing assets and the repurchase of non-performing loans

- **NII: MBS Guaranty Fee . . .** increase as a result of higher effective guaranty fees as the legacy book is replaced by new business at higher charge fee and higher amortization income from up-front cash associated with risk based pricing. SF average charge fee reflects increase due to the 10 bps Treasury increase

**Total net revenues are decreasing net of 10 bps guaranty fee increase primarily driven by lower income from portfolio liquidation**

Confidential – Restricted



FannieMae

FHFA00047966

DRAFT

# Total guaranty book remains stable at $3.0T year over year . . .

($'s in billions)



### Guaranty Fee in NII by Vintage

| | FY11 | FY12 | FY13 | FY14 | FY15 | FY16 |
|---|---|---|---|---|---|---|
| Total | $5.5 | $6.3 | $7.0 | $7.5 | $8.0 | $8.6 |

### Guaranty Book of Business

| | FY11 | FY12 | FY13 | FY14 | FY15 | FY16 |
|---|---|---|---|---|---|---|
| Single-Family | $2,842 | $2,849 | $2,809 | $2,772 | $2,759 | $2,761 |
| Multifamily | $195 | $198 | $199 | $204 | $206 | $210 |
| Total | $3,038 | $3,047 | $3,008 | $2,976 | $2,966 | $2,971 |

SF Pre-2009
SF 2009+[1,2]
TCCA[1]
MF

[1] Temporary Payroll Tax Cut Continuation Act (TCCA) requires that all single-family loans acquired betw een 4/1/2012 and 12/31/2021 include a 10 bps increase in guaranty fee
[2] Includes HARP and Refi Plus

---

**Commentary:**

- **SF Guaranty fees** . . . higher charge fees on new acquisitions after 2008 contribute to the increase in guaranty fees; in addition, all remaining upfront cash fees on pre-2009 loans were recognized on 1/1/10 as a result of consolidation accounting

- **MF Guaranty fees** . . . increase in fees driven by higher charge fee on new business as overall book remains flat at $200B

> **SF 2009+ vintage continues to contribute a larger portion to overall guaranty fees reflecting higher average charge fees on new acquisitions**

Confidential – Restricted


FannieMae

FHFA00047967

**PX-0213 - p. 107 of 120**

**000284**

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order

# Credit

DRAFT



FHFA00047968

17

DRAFT

# Single-Family 2012 credit-related expenses projected to be $10.1B favorable to Plan . . .

($'s in billions & #'s in thousands)

| Single-Family Credit-Related Expenses: | Current Projection[1] | Full Year 2012 Plan | Variance Fav / (Unfav) | Prior Year[2] | Variance Fav / (Unfav) |
|---|---|---|---|---|---|
| Charge-offs | $ (17.2) | $ (19.5) | $ 2.3 | $ (17.0) | $ (0.2) |
| Foreclosed property expenses | (1.5) | (2.2) | 0.7 | (1.9) | 0.4 |
| Credit losses[2] | (18.7) | (21.6) | 3.0 | (18.9) | 0.2 |
| Reduction / (build) in allowance | 11.4 | 3.8 | 7.6 | (10.8) | 22.2 |
| SOP 03-3 | 1.7 | 2.2 | (0.5) | 2.5 | (0.8) |
| **Total credit-related expenses** | **$ (5.5)** | **$ (15.6)** | **$ 10.1** | **$ (27.2)** | **$ 21.7** |
| Ending SDQ loans (#) | 597 | 622 | 25 | 691 | 94 |
| Total initiated trial modifications (#) | 179 | 164 | (15) | 217 | 37 |
| Completed modifications (HAMP and non-HAMP) (#) | 154 | 121 | (33) | 214 | 60 |
| Total defaults (#) | 284 | 296 | 12 | 291 | 7 |
| Credit loss severity (%) | 41% | 42% | 1% | 39% | (2%) |
| Ending REO inventory (#) | 123 | 134 | 11 | 119 | (4) |
| Ending REO inventory ($) | 11 | 11 | 0 | 10 | (1) |
| **Single-Family Ending Allowance:** | | | | | |
| FAS 5 ending allowance | $ 21.3 | $ 26.9 | $ 5.5 | $ 28.1 | $ 6.7 |
| FAS 114 ending allowance | 42.5 | 44.8 | 2.3 | 47.2 | 4.7 |
| **Total ending allowance** | **$ 63.8** | **$ 71.7** | **$ 7.8** | **$ 75.3** | **$ 11.4** |

[1] Reflects the July 2012 Board Forecast and includes actual results through May 2012

[2] Prior year actual results exclude the impact of the write-off of HSA reserves in Q4 2011

Numbers may not foot due to rounding

**Commentary:**

- **Charge-offs $2.3B favorable to Plan . . .** fewer defaults and improved severity due to better REO values and REO sales execution experienced year to date
- **Reduction in allowance $7.6B favorable to Plan . . .** both reserves benefit from higher REO values and an improved book profile reflecting higher realized home prices and fewer delinquencies. The reduction in individually impaired reserve (FAS 114) is further enhanced by impact of higher prepayment expectations resulting from the low interest rate environment
- **Reduction / (build) in allowance $22.2B favorable to prior year . . .** improvement due to lower severities and fewer delinquencies

> **Favorability in 2012 current projection is primarily reflective of the allowance decreasing sooner and faster than originally anticipated**

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order



FannieMae

FHFA00047969

000286

Confidential – Restricted

DRAFT

# 2016 Single-Family credit-related expenses down $26.4B from 2011 . . .

($'s in billions & #'s in thousands)



| | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|
| **Total Credit-Related Expenses** | $27.2 | $5.5 | $9.6 | $5.1 | $3.2 | $0.8 |
| FAS 5 Ending Allowance | $ 28.1 | $ 21.3 | $ 18.0 | $ 14.2 | $ 11.1 | $ 7.8 |
| FAS 114 Ending Allowance | 47.2 | 42.5 | 38.5 | 31.4 | 25.7 | 21.3 |
| **Total Ending Allowance ($)** | $ 75.3 | $ 63.8 | $ 56.5 | $ 45.6 | $ 36.8 | $ 29.1 |
| Ending SDQ Loan (#) | 691 | 597 | 501 | 385 | 295 | 229 |
| Ending SDQ Rate (%) | 3.9% | 3.4% | 2.8% | 2.2% | 1.7% | 1.3% |
| Total Initiated Modifications (#) | 217 | 179 | 149 | 71 | 46 | 36 |
| Completed Modifications (#)[2] | 214 | 154 | 136 | 77 | 43 | 33 |
| Total Defaults (#) | 291 | 284 | 282 | 284 | 243 | 196 |
| Credit Loss Severity (%) | 39% | 41% | 40% | 37% | 33% | 30% |
| Ending REO Inventory (#) | 119 | 123 | 125 | 127 | 113 | 94 |
| Ending REO Inventory ($) | $ 10 | $ 11 | $ 13 | $ 14 | $ 13 | $ 12 |

[1] Includes actual results through May
[2] Completed modification numbers include actuals through May 2012

Numbers may not foot due to rounding

**Credit Losses**
**Build / (Reduction) in Allowance**
**SOP 03-3**

## Commentary:

- **Credit losses . . .** Credit losses remain steady through 2014 as delays in foreclosures have caused more of the defaults to be pushed out to later years in the forecast period. Defaults of the loans originated prior to 2009 comprise 92% of total defaults over the five year forecast period 2012-2016 and drive approximately 91% of credit losses during that period

- **Allowance . . .** projected to decrease from Q4 2011 peak and reduce to $64B by year-end 2012; remains elevated at year-end 2016 due high volume loans in the individually impaired reserve

**Continuously declining delinquencies along with improving home prices and severities cause credit-related expenses to decline year over year**

Protected Information To Be Disclosed Only In Accordance With Protective Order

 FannieMae

FHFA00047970

PX-0213 - p. 110 of 120

000287

# Single-Family credit activities are expected to reduce credit losses . . .

DRAFT

## Credit Loss Reduction (2009 - 2016)

| | Actual[1] | Forecast 2009-2015 | | Prior Forecast | 2016 | 2009-2016 |
|---|---|---|---|---|---|---|
| Modifications | $24.1 | $8.2 | $32.2 | $32.6 | ($0.6) | $31.6 |
| Preferred Loss Mitigation Strategies (PLMS) | 1.3 | 1.3 | 2.6 | 6.2 | 0.8 | 3.4 |
| Make-Whole Receipts[2] (Pursuing recoveries) | 10.9 | 7.0 | 17.9 | 18.5 | 0.7 | 18.7 |
| **Total** | **$36.3** | **$16.5** | **$52.7** | **$57.3** | **$0.9** | **$53.7** |

**Note:** Based on June 2012 Corporate Forecast. Data is approximate and may change based on market conditions and other factors. Above may not foot due to rounding. Above reductions are already reflected in the current forecast.

[1]Actuals represent 2009 – April 2012 activity.

[2]Actuals represent make-whole receipts. Forecast figure reflects receipts as well as make-whole equivalents for forecasted repurchase requests

## Commentary:
- **2009-2015 change from prior forecast:**
  - Forecast loss reduction driven by completed modifications is slightly lower . . . reflecting reduced probability of default
  - Forecast loss reduction driven by PLMS is significantly lower . . . continued improvement in REO values negatively affects the marginal effectiveness of PLMS
- **Extension of forecast through 2016:**
  - Forecast loss reduction driven by completed modifications is further reduced . . . as the benefits from the incremental modification counts in 2016 are offset by additional failed modifications from the older vintages
  - Forecast loss reduction driven by PLMS and Make-Whole receipts are higher . . . driven primarily by the additional volumes

**Lower credit loss reduction primarily due to the continuing improvement in REO values**

Confidential – Restricted


FannieMae

FHFA00047971

**PX-0213 - p. 111 of 120**

**000288**

DRAFT

# Multifamily 2012 credit forecast shows improvement from Plan . . .

($'s in millions)

|  | Full Year 2012 | | | | |
|  | Current Projection[1] | Plan | Variance Fav / (Unfav) | Prior Year | Variance Fav / (Unfav) |
|---|---|---|---|---|---|
| **Multifamily Credit-Related Expenses:** | | | | | |
| Charge-offs | $ (321) | $ (358) | $ 37 | $ (374) | $ 53 |
| Foreclosed property expenses | (11) | (50) | 39 | (16) | 5 |
| Credit losses | (331) | (408) | 77 | (390) | 58 |
| Reduction in allowance | 324 | 205 | 119 | 102 | 222 |
| SOP 03-3 | 2 | - | 2 | 8 | (6) |
| Total credit-related expenses | $ (5) | $ (203) | $ 197 | $ (280) | $ 275 |
| **Multifamily Credit Metrics:** | | | | | |
| FAS 5 ending allowance | $ 781 | $ 690 | $ (91) | $ 922 | $ 141 |
| FAS 114 ending allowance | 569 | 719 | 150 | 750 | 181 |
| Total ending allowance | $ 1,350 | $ 1,409 | $ 59 | $ 1,672 | $ 322 |
| Average SDQ rate (%) | 0.36% | 0.50% | 0.14% | 0.57% | 0.21% |
| Total loss severity (%) | 41% | 44% | 3% | 41% | 0% |
| Annualized credit loss ratio (bps) | 17 | 21 | 4 | 20 | 3 |
| Ending REO inventory (#) | 228 | 281 | 53 | 262 | 34 |

[1] Reflects the July 2012 Board Forecast reflects and includes actual results through May 2012

Numbers may not foot due to rounding

**Commentary:**

- While local economic weaknesses continue to exist in areas of the multifamily sector, FY 2012 credit performance is projected to be better than Plan as improving market conditions and fewer delinquencies result in lower credit losses and higher allowance reduction

## Allowance reduction accelerated in 2012 behind increased charge-offs in Q1

Confidential – Restricted



FannieMae

DRAFT

# Multifamily credit performance expected to improve through forecast horizon . . .

($ s in millions)

| | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|
| Total Credit-Related Expenses | $280 | $5 | $46 | $55 | $11 | $125 |
| Credit Losses | 390 | 331 | 235 | 214 | 166 | 167 |
| Build / (Reduction) in Allowance | (102) | (324) | (189) | (189) | (195) | (2) |
| SOP 03-3 | (8) | | | | | |
| FAS 5 Ending Allowance | $ 922 | $ 781 | $ 666 | $ 657 | $ 584 | $ 539 |
| FAS 114 Ending Allowance | 750 | 569 | 495 | 345 | 263 | 266 |
| Total Ending Allowance ($) | $ 1,672 | $ 1,350 | $ 1,161 | $ 1,002 | $ 847 | $ 805 |
| Average SDQ Rate (%) | 0.57% | 0.36% | 0.30% | 0.17% | 0.13% | 0.13% |
| Total Net Loss Severity (%) | 41% | 41% | 40% | 36% | 32% | 30% |
| Annualized Credit Loss Ratio (bps) | 20 | 17 | 12 | 10 | 8 | 8 |
| Ending REO Inventory (#) | 262 | 228 | 197 | 176 | 145 | 122 |



Numbers may not foot due to rounding.

## Commentary:

- **Credit losses** . . . expected to decline in out years as we see fewer new delinquencies

- **MF allowance** . . . (approx. 0.8% of book) remains lower than commercial competitors due to better overall credit performance

- **Both FAS 5 and FAS 114 allowance expected to decrease through 2015** . . . while FAS 114 allowance declined approx. $180M in Q1, reduction is expected to slow due to fewer exits and continued anticipation of loan modifications at below market terms in the coming years (troubled debt restructuring, TDR)

---

**Improvement expected through forecast horizon, though future individually impaired loans may slow allowance reductions in later years**

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order

**FannieMae**

FHFA00047973

**PX-0213 - p. 113 of 120**

**000290**

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order

23

# Appendix

DRAFT



FHFA00047974

DRAFT

# Macro Economic Assumptions [1]

## Home Price Forecast (HPF)



Both July '12 BOD and May '12 BOD reflect March HPF

## Unemployment



- 2011
- July '12 BOD
- May '12 BOD
- Jan '12 BOD

## Current Coupon Yield



- July '12 BOD
- May '12 BOD
- Jan '12 BOD

## Additional Assumptions:

- **Fair value gains / (losses)** . . . no assumption as to future market movements and associated fair value impact are included in the current forecast

- **Credit-related expenses** . . . includes periodic make-whole, mortgage insurance, and servicing payments; no settlements are included in the current forecast

- **Guaranty fee** . . . increases per normal business activities are incorporated in the current forecast. The current forecast includes the 10 bps increase to fund extended payroll tax cut

- **Gross mortgage portfolio** . . . no asset sales will be required to keep portfolio under the Treasury mandated cap

1. Jul '12 BOD: May 2012 Fannie Mae economic forecast
   May '12 BOD: March 2012 Fannie Mae economic forecast
   Jan '12 BOD: November 2011 Fannie Mae economic forecast

Confidential — Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order

24

 FannieMae

FHFA00047975

000292

# Single-Family Credit Sensitivities to Current Forecast

DRAFT

| Current Forecast of Single-Family Credit-Related Expenses | Assumption | | Sensitivity Impact to Net Worth ($B) | |
|---|---|---|---|---|
| | 2012 - 2016 Current Forecast | Sensitivity[1] | 2012 | 2012 - 2016 |
| NSO: Modification Effectiveness | 41% | increase to 46% | ($5.5) | ($24.2) |
| NSO: Modification Volumes | 372K | 10% increase | $0.6[2] | $3.9[2] |
| REO Sales Execution Ratio | 100% | 2% increase | $0.0 | $0.6 |
| PLMS Sales Execution Ratio | 68% | 5% increase | $0.2 | $1.9 |
| NUC Recovery Rates | 75% | increase to 85% | $1.7 | $2.8 |
| REO Acquisition Volumes | 875K | 10% decrease through Q2 2013, corresponding increase in outer | N/A | $1.9 |
| Average REO Default Expense per Loan | $13K | 10% increase | $0.2 | $0.2 |
| Home Price Index: June 2012 Home Price Scenario[3] | -24% | peak-to-trough of -21% with trough in Q1 2012 | ($0.1) | $5.0 to $7.0 |
| Home Price Index: Severe Home Price Scenario | -24% | down 5 scenario, peak-to-trough of -31% with trough in Q1 2015 | ($4.6) | ($41.1) |

[1] Sensitivity assumes existing and forecasted modifications from 2009 to 2016
[2] Reflects impact to credit losses, which may differ from impact to net worth
[3] The sensitivity is for the June 2012 HPF only and all other July 2012 BOD forecast assumptions are held constant. The provided range is an estimate that is not calculated through the standard production process.

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order

25

FannieMae

FHFA00047976

# Net Revenue / Fair Value Sensitivities to Current Forecast

DRAFT

| | Sensitivity Impact to Net Worth ($B) | |
|---|---|---|
| | **2012** | **2012 - 2016** |
| Current Forecast of Net Revenues | $22.1 | $100.0 |
| Down 100 bps Rate Shock on Net Interest Income | 0.4 | $7.4 |
| Higher non-accrued interest due to faster transition to SDQ for significantly underwater loans one month earlier | ($0.5) | ($1.2) |
| Current Forecast of Fair Value Gains / (Losses) | ($1.5) | $0.3 |
| Instantaneous Down 100 bps Rate Movement on Fair Value | ($2.0) | ($2.0) |
| Instantaneous Up 100 bps Spread Movement on Fair Value | ($2.4) | ($2.4) |

**Exogenous Factors**

Borrower Behavior:

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order

 FannieMae

FHFA00047977

000294

# Detailed Current 5 Year Forecast

DRAFT

($'s in billions)

| | July 2012 Board Forecast | | | | | Cumulative |
| --- | --- | --- | --- | --- | --- | --- |
| | 2012¹ | 2013 | 2014 | 2015 | 2016 | 2012-2016¹ |
| **Statement of Operations:** | | | | | | |
| Net interest income - portfolio and other | $ 14.5 | $ 12.5 | $ 11.3 | $ 10.3 | $ 8.9 | $ 57.5 |
| Net interest income - MBS guaranty fee | 6.3 | 7.0 | 7.5 | 8.0 | 8.6 | 37.4 |
| Net interest income | 20.8 | 19.5 | 18.8 | 18.4 | 17.5 | 95.0 |
| Guaranty fee income | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | 0.9 |
| Fee and other income | 1.1 | 0.8 | 0.7 | 0.8 | 0.8 | 4.1 |
| Net revenues | $ 22.1 | $ 20.5 | $ 19.8 | $ 19.3 | $ 18.4 | $ 100.0 |
| Investment gains, net | 0.2 | - | - | - | - | 0.2 |
| Net other-than-temporary impairments | (0.4) | - | - | - | - | (0.4) |
| Fair value (losses) / gains, net | (1.5) | 0.5 | 0.5 | 0.5 | 0.4 | 0.3 |
| Income from partnership investments | 0.0 | 0.0 | 0.1 | 0.0 | 0.1 | 0.3 |
| Administrative expenses | (2.5) | (2.5) | (2.5) | (2.3) | (2.1) | (11.8) |
| Charge-offs | (17.5) | (17.2) | (16.0) | (11.9) | (8.5) | (71.2) |
| Foreclosed property expenses | (1.5) | (1.8) | (1.7) | (1.4) | (0.9) | (7.3) |
| Reduction in allowance | 1.7 | 7.5 | 11.0 | 9.0 | 7.7 | 47.1 |
| SOP 03-3 | 1.7 | 1.9 | 1.6 | 1.1 | 0.8 | 7.1 |
| Credit-related expenses | (5.5) | (9.6) | (5.1) | (3.2) | (1.0) | (24.4) |
| Other expenses | (1.1) | (1.5) | (1.8) | (1.9) | (2.0) | (8.3) |
| Total expenses and other losses | (10.9) | (13.0) | (8.8) | (6.9) | (4.6) | (44.2) |
| Income before federal income taxes | 11.2 | 7.4 | 11.0 | 12.4 | 13.8 | 55.8 |
| (Provision) / benefit for federal income taxes | 0.0 | 0.0 | 0.0 | (0.0) | (0.0) | (0.0) |
| Net income attributable to noncontrolling interests | (0.0) | (0.0) | - | - | - | (0.0) |
| Net (loss) / income attributable to noncontrolling interests | (0.0) | (0.0) | - | (0.0) | - | (0.0) |
| Net income attributable to Fannie Mae | $ 11.2 | $ 7.4 | $ 11.0 | $ 12.4 | $ 13.8 | $ 55.8 |
| Accumulated other comprehensive income change | 0.4 | 0.1 | 0.1 | 0.1 | 0.1 | 0.7 |
| Comprehensive income attributable to Fannie Mae | $ 11.6 | $ 7.5 | $ 11.0 | $ 12.5 | $ 13.9 | $ 56.6 |
| **Net Worth Roll-Forward:** | | | | | | |
| Beginning net worth | $ (4.6) | $ 0.0 | $ (1.4) | $ (0.3) | $ 0.2 | $ (4.6) |
| Net income attributable to Fannie Mae | 11.2 | 7.4 | 11.0 | 12.4 | 13.8 | 55.8 |
| Accumulated other comprehensive income change | 0.4 | 0.1 | 0.1 | 0.1 | 0.1 | 0.7 |
| Preferred infusion | 4.6 | 2.8 | 2.2 | 0.3 | - | 9.9 |
| Dividends | (11.6) | (11.8) | (12.1) | (12.2) | (12.2) | (60.0) |
| Other equity | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) |
| Ending net worth | $ 0.0 | $ (1.4) | $ (0.3) | $ 0.2 | $ 1.9 | $ 1.9 |
| **Other Metrics:** | | | | | | |
| Cumulative infusion received, plus new draw | $ 116.1 | $ 120.4 | $ 121.5 | $ 121.5 | $ 121.5 | $ 121.5 |
| Ending allowance | $ 65.2 | $ 57.7 | $ 46.6 | $ 37.6 | $ 29.9 | $ 29.9 |

¹ July 2012 Board Forecast reflects actual results through May 2012 and mark-to-market activity through June 06, 2012

Numbers may not foot due to rounding.

Confidential – Restricted

Protected Information To Be Disclosed Only In Accordance With Protective Order

27

FannieMae

FHFA00047978

Confidential – Restricted

DRAFT

# Cumulative 2011-2015 Forecast-Over-Forecast Comparison

($'s in billions)

| | July 2012 Board Forecast | | | | | | May 2012 Board Forecast | | | | | | Linked Variance | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2012¹ | 2013 | 2014 | 2015 | 2016 | Cumulative 2012-2016¹ | 2012² | 2013 | 2014 | 2015 | 2016 | Cumulative 2012-2016² | 2013 | 2014 | 2015 | 2016 |
| **Statement of Operations:** | | | | | | | | | | | | | | | | |
| Net interest income - portfolio and other | $ 14.5 | $ 12.5 | $ 11.3 | $ 10.3 | $ 8.9 | $ 57.5 | $ 14.2 | $ 12.2 | $ 11.0 | $ 9.6 | $ 8.2 | $ 55.3 | 3% | 3% | 7% | 8% |
| Net interest income - MBS guaranty fee | 6.3 | 7.0 | 7.5 | 8.0 | 8.6 | 37.4 | 6.2 | 6.6 | 7.3 | 8.1 | 8.9 | 37.3 | 3% | 3% | -1% | -3% |
| Net interest income | 20.8 | 19.5 | 18.8 | 18.4 | 17.5 | 95.0 | 20.5 | 18.9 | 18.3 | 17.7 | 17.2 | 92.6 | 3% | 3% | 4% | 2% |
| Guaranty fee income | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | 0.9 | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | 1.1 | -12% | -17% | -21% | -25% |
| Fee and other income | 1.1 | 0.8 | 0.7 | 0.8 | 0.8 | 4.1 | 1.0 | 0.8 | 0.8 | 0.8 | 0.8 | 4.2 | -8% | -7% | -9% | -9% |
| **Net revenues** | 22.1 | 20.5 | 19.8 | 19.3 | 18.4 | 100.0 | 21.6 | 20.0 | 19.3 | 18.8 | 18.2 | 97.9 | 2% | 2% | 3% | 1% |
| Investment gains, net | 0.2 | - | - | - | - | 0.2 | 0.1 | - | - | - | - | 0.1 | n/a | n/a | n/a | n/a |
| Net other-temporary impairments | (0.4) | - | - | - | - | (0.4) | (0.4) | - | - | - | - | (0.4) | n/a | n/a | n/a | n/a |
| Fair value losses / gains, net | (1.5) | 0.5 | 0.5 | 0.5 | 0.4 | 0.3 | (0.3) | 0.5 | 0.4 | 0.4 | 0.3 | 1.6 | 3% | 6% | 7% | 13% |
| Income / (losses) from partnership investments | 0.0 | 0.0 | 0.1 | 0.1 | 0.1 | 0.3 | 0.0 | 0.1 | 0.1 | 0.1 | 0.1 | 0.5 | 0% | 0% | 0% | -7% |
| Administrative expenses | (2.5) | (2.5) | (2.5) | (2.3) | (2.1) | (11.8) | (2.5) | (2.5) | (2.5) | (2.2) | (2.2) | (11.9) | 0% | 0% | 6% | 5% |
| Charge-offs | (17.5) | (17.2) | (16.0) | (11.9) | (8.5) | (71.2) | (20.4) | (17.5) | (13.1) | (9.7) | (79.7) | -16% | -9% | -9% | -12% |
| Foreclosed property expenses | (1.5) | (1.8) | (1.7) | (1.4) | (0.9) | (7.3) | (2.6) | (2.7) | (2.1) | (1.6) | (1.1) | -37% | -35% | -34% | -41% |
| Reduction in allowance | 11.7 | 7.5 | 11.0 | 9.0 | 7.7 | 47.1 | 7.9 | 7.7 | 12.3 | 11.5 | 8.5 | 48.0 | -3% | -11% | -22% | -4% |
| SOP 03-3 | 0.0 | - | 0.1 | 0.1 | 0.1 | 0.3 | 1.9 | - | 0.4 | 0.4 | 0.3 | 1.6 | 0% | 6% | 0% | 0% |
| Credit-related expenses | (5.5) | (9.6) | (5.1) | (3.2) | (1.0) | (24.4) | (13.4) | (6.2) | (2.6) | (0.7) | (35.6) | -28% | -18% | 21% | 55% |
| Other expenses | (1.1) | (1.5) | (1.8) | (1.9) | (2.1) | (8.3) | (1.3) | (1.7) | (1.9) | (2.1) | (2.1) | (9.3) | -9% | -4% | -4% | -4% |
| **Total expenses and other losses** | (10.9) | (13.0) | (8.8) | (6.9) | (4.6) | (44.2) | (15.4) | (8.8) | (6.4) | (6.0) | (54.4) | -22% | -11% | 8% | -22% |
| Income before federal income taxes | 11.2 | 7.4 | 11.0 | 11.4 | 13.8 | 55.8 | 6.2 | 9.5 | 12.4 | 12.2 | 43.5 | 132% | 19% | 6% | 13% |
| (Provision) / benefit for federal income taxes | 0.0 | - | - | (0.0) | (0.0) | 56.8 | 6.2 | 0.0 | 0.0 | 0.0 | 43.5 | -482% | 50% | -75% | 1300% |
| Net (loss) / income attributable to noncontrolling interests | (0.0) | (0.0) | - | - | - | (0.0) | (0.0) | (0.0) | - | (0.0) | (0.0) | (0.0) | 0% | n/a | n/a | n/a |
| **Net income attributable to Fannie Mae** | 11.2 | 7.4 | 11.0 | 11.4 | 13.8 | 55.8 | 6.2 | 9.5 | 12.4 | 12.2 | 43.5 | 132% | 19% | 6% | 13% |
| Accumulated other comprehensive income change | 0.4 | 0.1 | 0.1 | 0.1 | 0.1 | 0.7 | 0.5 | 0.1 | 0.1 | 0.1 | 0.1 | 0.7 | 14% | 8% | 8% | 14% |
| **Comprehensive income attributable to Fannie Mae** | 11.6 | 7.5 | 11.0 | 11.0 | 13.9 | 56.6 | 6.7 | 9.6 | 12.4 | 12.3 | 44.3 | 14% | 19% | 8% | 13% |
| **Net Worth Roll-Forward:** | | | | | | | | | | | | | | | | |
| Beginning net worth | (4.6) | 0.0 | (1.4) | (0.3) | 0.2 | (4.6) | (4.6) | (2.4) | (2.7) | (1.2) | (0.2) | (4.6) | -101% | -48% | -191% | -77% |
| Net income attributable to Fannie Mae | 11.2 | 7.4 | 11.0 | 12.4 | 13.8 | 55.8 | 6.2 | 9.5 | 12.4 | 12.4 | 12.2 | 43.5 | 132% | 19% | 6% | 13% |
| Accumulated other comprehensive income change | 0.4 | 0.1 | 0.1 | 0.1 | 0.1 | 0.7 | 0.5 | 0.0 | 0.0 | 0.0 | 0.7 | 14% | 18% | 14% | -13% |
| Preferred infusion | 4.6 | 7.4 | 2.2 | 12.4 | 13.8 | 9.9 | 6.2 | 5.1 | 1.9 | 1.1 | 24.0 | -8% | -57% | -73% | -100% |
| Dividends | (11.6) | (11.8) | (12.1) | (12.2) | (12.2) | (60.0) | (11.6) | (12.3) | (13.1) | (13.5) | (13.6) | (64.1) | -4% | -8% | -9% | -10% |
| Other equity | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | N/A | N/A | N/A | N/A | |
| **Ending net worth** | 0.0 | (1.4) | (0.3) | 0.2 | 1.9 | 1.9 | (2.4) | (2.7) | (1.2) | (0.2) | (0.4) | (0.4) | -48% | -77% | -191% | -625% |
| **Other Metrics:** | | | | | | | | | | | | | | | | |
| Cumulative infusion received, plus new draw | 116.1 | 120.4 | 121.5 | 121.5 | 121.5 | 121.5 | 121.1 | 130.2 | 133.7 | 134.8 | 136.1 | 134.8 | -8% | -8% | -9% | -11% |
| Ending allowance | 65.2 | 57.7 | 46.6 | 37.6 | 29.9 | 37.6 | 69.1 | 61.3 | 49.0 | 37.5 | 29.0 | 37.5 | -8% | -5% | -10% | 3% |

¹ Updated for actual results through May 2012 and mark-to-market activity through June 06, 2012
² Updated for actual results through March 2012 and mark-to-market activity through April 11, 2012

Numbers may not foot due to rounding.

Protected Information To Be Disclosed Only In Accordance With Protective Order

28



FannieMae

FHFA00047979

000296

# Forecast Development: Net Income / (Loss) and Credit-Related Expenses

DRAFT

Confidential – Restricted

($'s in billions)

## Forecast Development - Net Income / (Loss)

| Date of Estimation (Select BOD Meetings) | FY 2011 | FY 2012 | FY 2013 | FY 2014 | FY2015 | FY2016 | Cumulative 2011-2015 | Cumulative 2012-2016 |
|---|---|---|---|---|---|---|---|---|
| January 2009 | $(1.1) | $ 3.5 | $ 2.6 | N/A | N/A | N/A | N/A | N/A |
| May 2009 | $(4.0) | $ 19.9 | $ 21.8 | N/A | N/A | N/A | N/A | N/A |
| September 2009 | $(11.2) | $ 7.9 | $ 16.8 | N/A | N/A | N/A | N/A | N/A |
| November 2009 | $ 2.0 | $ 9.7 | $ 14.2 | $ 10.7 | N/A | N/A | N/A | N/A |
| January 2010 | $ 7.9 | $ 1.4 | $ 8.5 | $ 9.8 | N/A | N/A | N/A | N/A |
| May 2010 | $ 10.4 | $(1.1) | $ 14.1 | $ 14.9 | N/A | N/A | N/A | N/A |
| October 2010 | $(15.9) | $(1.5) | $ 8.7 | $ 8.4 | $ 8.7 | N/A | N/A | N/A |
| January 2011 | $ 21.6 | $(5.3) | $ 7.7 | $ 7.7 | $ 7.7 | N/A | N/A | N/A |
| March 2011 | $ 20.0 | $ 5.4 | $ 7.0 | $ 7.0 | $ 7.0 | N/A | N/A | N/A |
| May 2011 | $ 24.7 | $ 5.7 | $ 5.1 | $ 8.4 | $ 8.7 | N/A | N/A | N/A |
| July 2011 | $ 25.9 | $ 5.1 | $ 4.7 | $ 7.4 | $ 9.1 | N/A | N/A | N/A |
| September 2011 | $ 21.1 | $ 2.3 | $ 2.6 | $ 8.3 | $ 10.1 | N/A | $ 7.4 | N/A |
| November 2011 | $ 17.7 | $ 0.6 | $ 4.0 | $ 9.3 | $ 11.1 | N/A | $ 2.2 | N/A |
| January 2012 | $ 16.0 | $ 0.9 | $ 5.2 | $ 12.6 | $ 13.2 | N/A | $ 9.8 | N/A |
| March 2012 | $ 16.9 | $ 3.7 | $ 5.2 | $ 11.6 | $ 13.7 | N/A | $ 8.2 | N/A |
| May 2012 | $ 16.9 | $ 6.2 | $ 3.2 | $ 9.5 | $ 12.4 | $ 12.2 | $ 14.4 | $ 43.5 |
| July 2012 | $ 16.9 | $ 11.2 | $ 7.4 | $ 11.0 | $ 13.8 | $ 13.8 | $ 25.1 | $ 55.8 |

## Forecast Development - Total Credit-Related Expenses

| Date of Estimation (Select BOD Meetings) | FY 2011 | FY 2012 | FY 2013 | FY 2014 | FY2015 | FY2016 | Cumulative 2011-2015 | Cumulative 2012-2016 |
|---|---|---|---|---|---|---|---|---|
| January 2009 | $(8.4) | $(0.8) | $(0.3) | N/A | N/A | N/A | N/A | N/A |
| May 2009 | $(16.1) | $ 8.3 | $ 10.0 | N/A | N/A | N/A | N/A | N/A |
| September 2009 | $(17.2) | $ 10.6 | $ 9.4 | N/A | N/A | N/A | N/A | N/A |
| November 2009 | $(9.1) | $ 0.9 | $ 7.7 | $ 3.0 | N/A | N/A | N/A | N/A |
| January 2010 | $(18.0) | $ 3.7 | $ 3.4 | $ 1.8 | N/A | N/A | N/A | N/A |
| May 2010 | $ 22.6 | $(1.6) | $ 2.0 | $ 4.3 | N/A | N/A | N/A | N/A |
| October 2010 | $(28.1) | $(13.4) | $ 4.0 | $ 3.2 | $ 3.4 | N/A | N/A | N/A |
| January 2011 | $(33.6) | $(17.7) | $ 4.0 | $ 1.3 | $ 2.8 | N/A | N/A | N/A |
| March 2011 | $(33.3) | $(17.7) | $ 7.0 | $ 4.3 | $ 2.0 | N/A | N/A | N/A |
| May 2011 | $(37.2) | $(18.3) | $ 4.0 | $ 2.7 | $ 2.0 | N/A | $ 67.2 | N/A |
| July 2011 | $(37.5) | $(17.1) | $ 7.0 | $ 2.7 | $ 2.7 | N/A | $ 73.1 | N/A |
| September 2011 | $(32.0) | $(16.0) | $ 4.7 | $ 4.8 | $ 2.7 | N/A | $ 68.8 | N/A |
| November 2011 | $(29.7) | $(15.9) | $ 11.7 | $ 5.8 | $ 3.4 | N/A | $ 66.8 | N/A |
| January 2012 | $(23.1) | $(12.4) | $ 9.6 | $ 2.6 | $ 1.0 | N/A | $ 57.2 | N/A |
| March 2012 | $(27.5) | $(15.9) | $ 11.2 | $ 1.0 | $ 0.8 | N/A | $ 56.0 | N/A |
| May 2012 | $(27.5) | $(11.2) | $ 13.4 | $ 6.2 | $ 2.6 | $ 2.1 | $ 61.0 | $ 35.6 |
| July 2012 | $(27.5) | $(5.5) | $ 9.6 | $ 5.1 | $ 3.2 | $ 1.0 | $ 50.9 | $ 24.4 |

Numbers may not foot due to rounding

The tables to the left reflect annual projections of the Expected Case forecasts presented to the Board of Directors through July 2012.

[1] Increase in cumulative net loss and credit-related expenses primarily driven by worsening home price forecast during 2009 (-21% to -27% peak-to-trough).

[2] Improvement in expected home price path to -21% peak-to-trough resulted in lower projected SDQs and defaults.

[3] Other factors contributing to variations in the forecasts include (1) refinement of HAMP estimates, (2) impact of consolidation accounting, (3) updates to non-accrued interest projections and (4) changing book profile.

[4] Increase in credit-related expenses primarily driven by deterioration in home price expectations and an increase in modification volumes, partially offset by higher net interest income driven by a decline in rates and a shift to less long term debt issuance.

[5] Driven by continued foreclosure delays (aging delinquencies) and changes in the home price forecast, partially offset by higher modification volumes.

[6] Driven by lower funding costs on long and short term debt due to a significant overall decline in rates.

[7] Driven by reduced default volumes due to better expected performance of underwater and modified loans, in addition to reduced MI haircut due to lower projected MI claims.

Protected Information To Be Disclosed Only In Accordance With Protective Order



FannieMae

FHFA00047980

000297

DRAFT

As of 7/06 – 6pm

# Strategic Planning Session

## Board of Directors

## David Benson

## July 19, 2012

EXHIBIT

7



Confidential – Restricted

DRAFT

# Executive summary

- Policy makers continue to debate housing finance reform, but the final outcome remains uncertain.

- Discussions center on the two fundamental issues that we discussed in last year's strategic session:
  - The nature of a government guarantee, if any, and
  - The institutional framework that would succeed the current GSE-based structure.

- In the interim, FHFA, as conservator, and the Treasury, through the Senior Preferred Stock Purchase Agreements (SPSPAs), are responsible for making progress on the path towards the future of the housing finance system.

- In order to transition the market to many of the proposed potential future states, new industry standards and operational capabilities will need to be developed and implemented.  These are key goals of the FHFA Strategic Plan for the GSEs in conservatorship.

- Public support for these and other goals of the conservatorship can be fostered as GSE profitability improves.  We expect to see a trend where dividend payments will exceed capital draws into the future.

- The alignment of conservator and Treasury objectives can be enabled and be made more transparent by updating the terms of the SPSPAs.

**FannieMae**

**000299**

**DRAFT**

# Agenda

- **Status of Housing Finance Reform**

- **Strategic Goal: Building a New "Infrastructure"**

- **Strategic Enabler: Stakeholder and Public Support**

- **Conclusion**

- **Appendix**

Confidential – Restricted

2

**000300**

# Housing finance proposals: The end-state remains uncertain



**1** **Will some form of government guarantee likely be utilized in the future state conventional secondary market?**
- Alternatively, would bank portfolios and private label securities be the only potential execution channels?

**2** **If a government guarantee is made available, which business model and institutional structure would be deployed?**
- Specialized firms that provide credit risk insurance only and access the government guarantee through a separate securitization utility?
- Integrated firms that underwrite and manage credit risk as well as issue proprietary securities?

> **Policy makers continue to debate the fundamental questions that we discussed at last year's Board strategy session.**

Confidential – Restricted

FannieMae

000301

# Prospects for private capital



| Impediments to the return of private capital to the market |
|---|

- Regulatory reform (Dodd-Frank, QRM, etc.)
- Basel III
- Rating agency standards
- Pooling and Servicing Agreement (PSA) contractual terms

- Investor demand
- "Eminent domain"
- Level of GSE guaranty fee pricing
- Bank portfolio demand (both jumbo and conforming)

---

## Private capital has not returned to the non-agency market.



**Net Change in Bank Portfolio Holdings ($B)**

Banks have been divesting their portfolio holdings

| Net Change in Portfolios | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 |
|---|---|---|---|---|---|---|---|---|---|
| | $204 | $393 | $290 | $204 | $140 | -$176 | -$203 | -$75 | -$77 |



**Jumbo Originations and Securitizations ($B)**

PLS issuance has been minimal

| | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 |
|---|---|---|---|---|---|---|---|---|---|
| Non-Conforming Jumbo Originations | $650 | $515 | $570 | $480 | $348 | $98 | $97 | $104 | $118 |
| Jumbo PLS Securitizations | $271 | $294 | $449 | $409 | $336 | $7.6 | $6.4 | $0.48 | $0.67 |

**Some form of government guarantee for the conventional market appears to be needed for the foreseeable future.**

Confidential – Restricted

4

000302

**FannieMae**

**DRAFT**

# Potential business models: Functional view

| Potential Business Models | **Guarantor / Insurer**<br><br>Underwriting & Pricing \| Credit Loss Mitigation | **Aggregator**<br><br>Whole Loan Conduit | **Securitizer**<br><br>Issue Security \| Bond Administration<br>Master Servicing \| Disclosures |
|---|---|---|---|
| **Who** | ▪ Private mortgage insurers<br>▪ Banks / Originators<br>▪ GSE successors<br>▪ FHA<br>▪ FHLB | ▪ Guarantors<br>▪ Securitizers<br>▪ Independents | ▪ GSE successors<br>▪ GNMA or other government entity<br>▪ Independent / private entity<br>▪ FHLB |
| **Competitive Differentiators** | ▪ Regulatory capital requirements<br>▪ Risk/Return assessment<br>▪ Diversification opportunities | ▪ Warehouse funding<br>▪ Lender network<br>▪ Hedging capabilities | ▪ Scale, efficiency, and cost<br>▪ Liquidity of security<br>▪ Operational risk management |
| **Difficult Issues to Tackle** | ▪ Availability of capital<br>▪ Taxpayer protection<br>▪ Availability of credit during market downturn<br>▪ Correlated risk among issuers<br>▪ Regulatory constraints | ▪ Availability of warehouse funding in a downturn<br>▪ Needs of small to medium sized lenders | ▪ Technology and operational processes<br>▪ Legacy securities<br>▪ Government guarantees<br>▪ PSAs |

**GSE functions could conceivably be disaggregated and performed by different entities.**



DRAFT

# Agenda

- **Status of Housing Finance Reform**

- **Strategic Goal: Building a New "Infrastructure"**

- **Strategic Enabler: Stakeholder and Public Support**

- **Conclusion**

- **Appendix**

Confidential – Restricted

6



**000304**

**DRAFT**

# FHFA Strategic Plan calls for building a new infrastructure without full knowledge of the final end state

| Guarantor Initiatives | | Securitization Initiatives | |
|---|---|---|---|
| ▪ Reps & warrants<br>▪ Underwriting standards<br>▪ Pricing | ▪ Servicing standards<br>▪ Appraisal<br>▪ MERS 2.0 | ▪ Back office functions<br>▪ Disclosures<br>▪ PSAs | ▪ TBA "single" security<br>▪ Non-guaranteed securities<br>▪ Multiple issuers |

**Public Statements**

*"The Strategic Plan provides an outline for the next chapter of conservatorship, one that focuses in earnest on building a secondary mortgage market infrastructure that will live beyond the Enterprises. The steps envisioned in the Strategic Plan are consistent with various approaches to housing finance reform."* – Edward DeMarco (February 2012)

*"The first [FHFA] strategic goal – building for the future – recognizes that the country lacks the infrastructure for trillions of dollars in mortgage securitization in the absence of Fannie Mae and Freddie Mac. So the goal here is to have Fannie Mae and Freddie Mac start building that infrastructure so that it can continue to function even if they do not."* – National Association of Realtors (May 2012)

*"FHFA should follow a phased approach for the Strategic Plan where the initial stage prioritizes the alignment of the operations of the GSEs. Aligning the operations of the GSEs will set the stage for the second phase of the Strategic Plan and the longer-term future of the GSEs and mortgage finance more broadly."* – Securities Industry and Financial Markets Association (SIFMA) (June 2012)

*"Implemented correctly, a Single Agency Security could benefit all participants in the mortgage market, including borrowers, originators, investors and the U.S. government, which owns the controlling stake in the GSEs."* – American Securitization Forum (July 2012)

**The FHFA has proposed a multi-year agenda for the GSEs that will evolve business practices and enable potential future state alternatives.**

**FannieMae**

**PX-0216 - p. 8 of 28**

**000305**

DRAFT

# Integration of “guarantor” and “securitization” functions

Functions **independent** of Securitization (grey) | Securitization Utility (green outline)

Functions **affected** by Securitization (blue)

### Lender Management
- Prospect & Onboard Lenders
- Manage Relationships
- Provide Technology Solutions
- Provide Customer Service

### Credit Price & Guaranty
- Define Underwriting & Eligibility
- Price Credit Risk / Guaranty Fees
- Manage Portfolio Credit Risk

### Loan Information Exchange
- Set Industry Standards
- Generate All-in Price
- Manage Commitments
- Acquire Loan and Collateral Data

### Loan Aggregation / Warehouse
- Purchase Loans
- Manage Loans
- Transform / Pool Loans
- Sell Pools / Loans

### Securitization Utility
- Issue Security
- Administer Bond
- Perform Master Servicing
- Generate Disclosures

### Loss Mitigation
- Oversee Servicers
- Manage / Sell REO
- Manage Loan Reviews & Repurchases

### Infrastructure
- Technology
- Accounting
- Risk Mgmt. (Market & Counterparty)
- MBS & Treasury

**Through conservatorship, and perhaps beyond, the guarantor and securitization functions of the GSEs will need to operate seamlessly in order to sustain the secondary market.**

DRAFT

# Agenda

- **Status of Housing Finance Reform**

- **Strategic Goal: Building a New "Infrastructure"**

- **Strategic Enabler: Stakeholder and Public Support**

- **Conclusion**

- **Appendix**

# FHFA strategic goals: Promoting stakeholder and public support

- The FHFA Strategic Plan primarily consists of goals that support market recovery, minimizes taxpayer losses, and builds for the future of housing finance.

- In addition, some goals have the objective of bringing private capital into the market but may have their biggest short-term impact on promoting stakeholder and public support.

  Examples of these include:

  – Sale of non-performing loans

  – Credit risk transfer

  – REO-to-rental pilot

**Initiatives that appeal to key constituencies can help to achieve broader support for the goals of the conservatorship**

**DRAFT**

# GSE profitability trends: An opportunity

- The current terms of the SPSPAs do not permit the GSEs to repay taxpayers through retained earnings.

- The Treasury department has recently publicized the payment of dividends from recipients of government support as recovery amounts.

  - *"Treasury currently has a net investment of $151B in Fannie Mae and Freddie Mac, which is expected to be reduced over time as those firms generate positive earnings."* – The US Department of the Treasury, "The Financial Crisis Response In Charts" (April 2012)

  - *"It is important to emphasize that Treasury has already recovered $5.5B [of which ~$2.9B are dividends], or almost one-third, of our investment in Ally. And the company has played a critical and necessary role in the successful rescue of the American automobile industry."* – Timothy Massad, Assistant Secretary for Financial Stability at the US Department of the Treasury (May 2012)

- The FHFA has taken a negative view on the prospects for the GSEs to repay the government.

  - *"The Enterprises' losses are of such magnitude that the companies cannot repay taxpayers in any foreseeable scenario."* – FHFA Strategic Plan (Feb. 2012)

> **A more transparent and consistent message from FHFA and Treasury may help to gain public support for the goals of the conservatorship.**



# Key modeling assumptions (2012 – 2022)

| | | Combined GSEs | Comments |
|---|---|---|---|
| **Mortgage Market** | Single-Family (SF) market share of total originations | **Minimal market share decline 60% → 55%** | **Current differences in guaranty fee pricing between GSEs are eliminated in future** |
| | SF mortgage debt growth | **Gradual recovery in origination market leads to average growth of 3.5%** | |
| **Revenue** | SF Guaranty Fee [1] | **Effective guaranty fee approaches 35 bps as a result of annual pricing increases and liquidation of older vintages** | **10 bps proceeds from the TCCA do not accrue to the entities [2]** |
| | Net Spread on Interest Earning Assets | **Net interest margin (NIM) contracts from ~200 bps toward ~100 bps as higher yielding mortgage assets run-off and funding cost increases** | **Freddie has higher NIM as a result of its significantly lower distressed loan population** |
| **Expense** | SF Credit Loss Ratio | **Credit expense declines as legacy assets liquidate 65 bps → 10 bps** | **$2.4B → $2.0B (Fannie) $1.5B → $1.2B (Freddie) (~ 7 bps/year)** |
| | Administrative Expenses | **Assumed decline in project spend and credit loss management; future growth based on book size** | |
| | Taxes | **No taxes due to Deferred Tax Asset (DTA) utilization** | |
| | Dividends to US Treasury on SPSPA | **10%** | |

[1] SF charged guaranty fee projections are as of the July corporate forecast and exclusive of price increases not yet approved; effective guaranty fee of 35 bps is net of the 10 bps Temporary Payroll Tax Cut Continuation Act (TCCA) of 2011 fee remitted to the government

[2] TCCA is a 10 bps fee that applies to all SF vintages from April 2012 through December 2021 and was created by Congress to primarily extend payroll tax cuts

Confidential – Restricted

12



000310

DRAFT

# Strategic enabler: Profitable GSEs



**Cumulative "Repayment" for Both GSEs**

*$ in Billions*

Legend:
- Cumulative Dividend Payments
- Cumulative Infusion

| | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Net "Repayment" to Government ($B) | ($30) | ($120) | ($134) | ($152) | ($134) | ($117) | ($100) | ($81) | ($62) | ($42) | ($23) | ($3) | $16 | $35 | $54 |
| Residual Equity ($B) | - | - | - | - | $3 | $4 | $7 | $9 | $14 | $18 | $20 | $22 | $23 | $23 | $25 |

**The cumulative dividends from both GSEs exceed government investment by 2020 in baseline scenario.**



PX-0216 - p. 14 of 28

000311

DRAFT

# Annual view of net "repayment" to the US Government

**Fannie Mae**

($ in billions)

| | 2008-2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Comprehensive Income* | | 11.2 | 7.4 | 11.0 | 12.4 | 13.8 | 12.9 | 12.2 | 11.6 | 11.2 | 10.9 | 11.2 |
| *Preferred Dividend Payment* | 19.8 | 11.6 | 11.8 | 12.1 | 12.2 | 12.2 | 12.1 | 12.1 | 12.1 | 12.1 | 12.2 | 12.2 |
| *Residual Equity* | 0.0 | 0.0 | 0.0 | 0.0 | 0.2 | 1.8 | 2.5 | 2.5 | 2.0 | 1.0 | 0.0 | 0.0 |
| Cumulative Dividends | 19.8 | 31.4 | 43.2 | 55.3 | 67.6 | 79.8 | 92.0 | 104.1 | 116.3 | 128.4 | 140.6 | 152.8 |
| Cumulative Infusion | (116.1) | (116.1) | (119.0) | (121.2) | (121.5) | (121.5) | (121.5) | (121.5) | (121.5) | (121.5) | (121.7) | (122.7) |
| Net "Repayment" to Gov't | *(96.3)* | *(84.7)* | *(75.8)* | *(65.9)* | *(53.9)* | *(41.7)* | *(29.5)* | *(17.4)* | *(5.2)* | *6.9* | *18.9* | *30.1* |
| SPSPA Funding Cap | 240.9 | 240.9 | 240.9 | 240.9 | 240.9 | 240.9 | 240.9 | 240.9 | 240.9 | 240.9 | 240.9 | 240.9 |
| Remaining Funding under SPSPA | 124.8 | 124.8 | 122.0 | 119.7 | 119.5 | 119.5 | 119.5 | 119.5 | 119.5 | 119.5 | 119.3 | 118.3 |

**Combined GSE "repayment" could occur in 2020**

**Freddie Mac**

($ in billions)

| | 2008-2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Comprehensive Income* | | 7.3 | 8.1 | 8.9 | 9.4 | 9.8 | 10.2 | 9.8 | 9.4 | 9.1 | 8.9 | 9.0 |
| *Preferred Dividend Payment* | 16.3 | 7.2 | 7.2 | 7.2 | 7.2 | 7.2 | 7.2 | 7.2 | 7.2 | 7.2 | 7.2 | 7.2 |
| *Residual Equity* | 0.0 | 3.1 | 4.5 | 6.6 | 9.2 | 12.2 | 15.2 | 17.7 | 19.9 | 21.8 | 23.4 | 25.2 |
| Cumulative Dividends | 16.3 | 23.5 | 30.8 | 38.0 | 45.2 | 52.5 | 59.7 | 66.9 | 74.1 | 81.4 | 88.6 | 95.8 |
| Cumulative Infusion | (72.2) | (72.3) | (72.3) | (72.3) | (72.3) | (72.3) | (72.3) | (72.3) | (72.3) | (72.3) | (72.3) | (72.3) |
| Net "Repayment" to Gov't | *(55.9)* | *(48.8)* | *(41.6)* | *(34.3)* | *(27.1)* | *(19.9)* | *(12.6)* | *(5.4)* | *1.8* | *9.1* | *16.3* | *23.5* |
| SPSPA Funding Cap | 220.5 | 220.6 | 220.6 | 220.6 | 220.6 | 220.6 | 220.6 | 220.6 | 220.6 | 220.6 | 220.6 | 220.6 |
| Remaining Funding under SPSPA | 148.3 | 148.3 | 148.3 | 148.3 | 148.3 | 148.3 | 148.3 | 148.3 | 148.3 | 148.3 | 148.3 | 148.3 |

**Our approach is analogous to analyses by Moody's, OMB, and Millstein.**

Note: Numbers may not foot due to rounding

Confidential – Restricted

14

FannieMae

000312

DRAFT

# Government divestment of GSEs: Incomplete by necessity

### *End-state exposure*



- Given the nature of the guaranty on existing GSE MBS and debt, the government will not be able to fully privatize the legacy book.

- At a minimum, a catastrophic guaranty will need to be offered on the legacy book.

**How the government decides to end the conservatorship will shape perception of the ultimate cost of government support.**

Confidential – Restricted

15



000313

**DRAFT**

# Senior Preferred Stock Purchase Agreements: Built to last?

| Original Objectives | Key Assumptions & Issues |
|---|---|

**Explicit**
- Provide stability to the financial market
- Prevent disruptions in the availability of mortgage finance
- Protect taxpayers

**Implicit**
- Avoid mandatory triggers for receivership to allow GSEs to fulfill their financial obligations
- Provide Congress with a short period of time to determine the nature of government involvement in the housing market
- Require the GSE charters to be revisited
- Create framework for Treasury to influence GSE matters separate from FHFA's legislated authority
- Construct penal terms for use of the funding facility to discourage future use

The conservatorship would be temporary; important political and practical issues would be resolved in a reasonable amount of time.

Since 2008, GSE reform has not been enacted. Timing of this reform remains uncertain.

The funding facility was necessary to bolster debt and MBS investor confidence.

Significant funding was required and the SPSPAs needed to be amended to increase Treasury's commitment in May and December of 2009.



**September 7, 2008** – SPSPAs signed by FHFA on behalf of GSEs

**May 6, 2009** – Amendments made to double the Treasury commitment to each Enterprise, increase the maximum size of each Enterprise's retained mortgage portfolio, and allow each Enterprise to increase its indebtedness

| 2008 | 2009 | 2010 | 2011 | 2012 | 2013+ |
|---|---|---|---|---|---|

**September 26, 2008** – Amendment made to clarify third-party beneficiary rights and ensure market confidence in Treasury's support of GSEs

**December 24, 2009** – Amendments made to provide additional financial support for GSEs through the end of 2012 and to change the limits on their retained mortgage portfolios

**The SPSPAs were designed for a reasonably short conservatorship.**

Source: FHFA
Confidential – Restricted

16



**PX-0216 - p. 17 of 28**

**000314**

**DRAFT**

# SPSPA: An opportunity to fortify the transition to a new housing finance system

**Objectives**

- Facilitate recovery of government financial support

- Sustain debt and MBS investor confidence

- Increase transparency and bolster public support

- Align GSE actions with desired policy objectives

- Provide a path to replace government support with private capital

- Align the interests of the conservator with Treasury

**Thoughtful amendments or changes to the SPSPA can serve to make the conservatorship more successful.**

Confidential – Restricted

17

**FannieMae**

**000315**

DRAFT

# Agenda

- **Status of Housing Finance Reform**

- **Strategic Goal: Building a New "Infrastructure"**

- **Strategic Enabler: Stakeholder and Public Support**

- **Conclusion**

- **Appendix**

FannieMae

**000316**

DRAFT

# Closing thoughts

- It may take several years to accomplish the goals, including "building a new infrastructure," embedded in the FHFA Strategic Plan.

- While Congress debates the future of housing finance, the GSE conservatorships will need to be effective in improving and transitioning the market into the future.

- Profitability of the GSEs may help FHFA and Treasury gain support for the goals of the conservatorship.

- However, the contractual terms of the SPSPAs should be reexamined as the needs of the conservatorships have changed over the past four years.

FannieMae

000317

**DRAFT**

# Agenda

- **Status of Housing Finance Reform**

- **Strategic Goal: Building a New "Infrastructure"**

- **Strategic Enabler: Stakeholder and Public Support**

- **Conclusion**

- **Appendix**

Confidential – Restricted

20

**FannieMae**

**000318**

DRAFT

# Appendix

- **FHFA Strategic Plan Observations**

- **Government Support Phases**

- **Public Quotes on "Repayment"**

- **Fannie Mae / Freddie Mac P&L**

- **TCCA Proceeds**

- **Single Agency Security**

**FannieMae**

**000319**

# FHFA Strategic Plan: Observations

- *The FHFA strategy paper and the Enterprise goals scorecard are consistent with the Administration's white paper on housing finance reform as well as various Congressional proposals.*

- *We believe the intent is to make progress on de facto GSE reform, effectively beginning a transition period, while the legislative process continues down its uncertain and potentially time-consuming path.*

- *Although many options for GSE reform remain open, the additional guidance is clearly designed to enable significant change from the historical GSE business model and to facilitate fundamental restructuring of the GSEs.*

### On the role of the company in today's market…

"…..the country would be without a secondary market for non-government-insured mortgages without the Enterprises."

"In the absence of other comparable market infrastructure, minimizing future taxpayer losses and ensuring market liquidity and stability requires preserving the Enterprises as working companies."

### On fundamental change to the GSE securitization model…

"FHFA will determine how Fannie Mae and Freddie Mac can work together to build a single securitization platform that would replace their current separate proprietary systems."

"In the intermediate term, a single platform would allow for a single mortgage-backed security."

"….this platform could become a type of public utility (in effect) that would outlast the Enterprises as we know them today…."

### On the future of the corporate entity…

"…the goal is not to rebuild Fannie Mae and Freddie Mac but rather to leverage the experience and human capital expertise at these firms to build a new infrastructure for the future."

"This plan does not anticipate Fannie Mae and Freddie Mac continuing as they existed before conservatorship."

"The Enterprises' losses are of such magnitude that the companies cannot repay taxpayers in any foreseeable scenario."

Source: BOD Operating Plan Update (March 2012)
Confidential – Restricted



000320

# What others are saying regarding "repayment" of Treasury's support

- "*Taxpayers Could Recover All Investments in Fannie and Freddie.*"
  - Jim Millstein, Chairman and CEO, Millstein and Company (Presentation to the Woodrow Wilson International Center for Scholars – May 22, 2012)

- "*Fannie Mae and Freddie Mac should continue to function, whether in or out of conservatorship, and honor the guarantees of the agencies at least until such time as necessary to repay substantially all their current government debts.*"
  - National Association of Federal Credit Unions (Letter from President and CEO Fred Becker to Chairman Johnson and Ranking Member Shelby, Senate Banking Committee – March 14, 2011)

- "*Although the 2012 Plan suggests that taxpayer assistance accumulated by the enterprises may be too great to repay in a short period of time, the CMLA believes that they can and should repay taxpayers fully through creative and thoughtful planning.*"
  - Community Mortgage Lenders of America (Letter from Chairman Mark McDougald to Secretaries Geithner and Donovan; Chairman Johnson and Ranking Member Shelby, Senate Banking Committee; Chairman Bachus and Ranking Member Frank, House Financial Services Committee; and FHFA Director DeMarco – May 30, 2012)

Confidential – Restricted

**FannieMae**

**000321**

# Fannie Mae Income Statement 2011 – 2022

| Income Statement GAAP ($B) | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Actuals | | | | | | | | | | | |
| Net Interest Income - Portfolio & Other | 13.8 | 14.5 | 12.5 | 11.3 | 10.3 | 8.9 | 7.1 | 5.6 | 4.8 | 4.1 | 3.5 | 3.0 |
| Net Interest Income - MBS Guaranty Fee | 5.5 | 6.3 | 7.0 | 7.5 | 8.0 | 8.6 | 9.0 | 9.9 | 10.8 | 11.6 | 12.7 | 14.0 |
| Net Interest Income | 19.3 | 20.8 | 19.5 | 18.8 | 18.4 | 17.5 | 16.2 | 15.5 | 15.5 | 15.7 | 16.2 | 17.0 |
| Guaranty Fee Income | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | 0.3 | 0.3 | 0.3 | 0.4 | 0.4 | 0.4 |
| Total Fee & Other Income | 0.9 | 1.1 | 0.8 | 0.7 | 0.8 | 0.8 | 0.9 | 0.9 | 1.0 | 1.0 | 1.1 | 1.1 |
| Net Revenues | 20.4 | 22.1 | 20.5 | 19.8 | 19.3 | 18.4 | 17.3 | 16.7 | 16.8 | 17.1 | 17.7 | 18.5 |
| | | | | | | | | | | | | |
| Total FV Adj, OTTI, Inv Gains/(Losses) | (6.4) | (1.8) | 0.5 | 0.5 | 0.5 | 0.4 | 0.3 | 0.3 | 0.2 | 0.1 | 0.1 | - |
| | | | | | | | | | | | | |
| Charge Offs | (17.4) | (17.5) | (17.2) | (16.0) | (11.9) | (8.5) | (7.0) | (5.4) | (4.3) | (3.6) | (3.2) | (3.0) |
| Reduction/(Build) in Allowance | (10.7) | 11.7 | 7.5 | 11.0 | 9.0 | 7.7 | 6.6 | 5.3 | 3.8 | 2.7 | 1.8 | 1.1 |
| SOP03-03 Charges, Net | 2.5 | 1.7 | 1.9 | 1.6 | 1.1 | 0.8 | 0.5 | 0.3 | 0.2 | 0.1 | 0.1 | 0.0 |
| Foreclosed Property Expense | (1.9) | (1.5) | (1.8) | (1.7) | (1.4) | (0.9) | (0.6) | (0.4) | (0.3) | (0.2) | (0.2) | (0.2) |
| Total Credit Related Expenses | (27.5) | (5.5) | (9.6) | (5.1) | (3.2) | (1.0) | (0.5) | (0.3) | (0.6) | (1.0) | (1.5) | (2.0) |
| | | | | | | | | | | | | |
| Total administrative expenses | (2.4) | (2.5) | (2.5) | (2.5) | (2.3) | (2.1) | (2.0) | (2.0) | (2.0) | (2.0) | (2.0) | (2.0) |
| TCCA Pass Through | - | (0.2) | (0.6) | (0.9) | (1.2) | (1.4) | (1.7) | (1.9) | (2.1) | (2.3) | (2.6) | (2.5) |
| Other Expenses/Losses | (1.2) | (1.0) | (1.0) | (0.9) | (0.7) | (0.6) | (0.6) | (0.7) | (0.7) | (0.7) | (0.7) | (0.7) |
| Total Non-Credit Related Expenses | (3.5) | (3.6) | (3.9) | (4.1) | (4.2) | (4.1) | (4.3) | (4.5) | (4.7) | (5.0) | (5.3) | (5.3) |
| | | | | | | | | | | | | |
| Income Before Taxes & Extra. Items | (16.9) | 11.2 | 7.4 | 11.0 | 12.4 | 13.8 | 12.9 | 12.2 | 11.6 | 11.2 | 10.9 | 11.2 |
| Taxes | (0.1) | 0.0 | (0.0) | (0.0) | 0.0 | 0.0 | (0.0) | 0.0 | (0.0) | (0.0) | (0.0) | (0.0) |
| Net Income | (16.9) | 11.2 | 7.4 | 11.0 | 12.4 | 13.8 | 12.9 | 12.2 | 11.6 | 11.2 | 10.9 | 11.2 |
| Other Comprehensive Income (Loss) | 0.4 | 0.4 | 0.1 | 0.1 | 0.1 | 0.1 | - | - | - | - | - | - |
| Total Comprehensive Income (Loss) | (16.4) | 11.6 | 7.5 | 11.0 | 12.5 | 13.9 | 12.9 | 12.2 | 11.6 | 11.2 | 10.9 | 11.2 |
| | | | | | | | | | | | | |
| Treasury Preferred Dividends | (9.6) | (11.6) | (11.8) | (12.1) | (12.2) | (12.2) | (12.1) | (12.1) | (12.1) | (12.1) | (12.2) | (12.2) |
| Net Income (Loss) to Common Equity | (26.5) | (0.4) | (4.3) | (1.2) | 0.1 | 1.6 | 0.7 | 0.0 | (0.5) | (1.0) | (1.2) | (1.0) |

Note: 2012-2016 figures from Fannie Mae July corporate forecast.

Confidential – Restricted

FannieMae

000322



DRAFT

# Freddie Mac Income Statement 2011 – 2022

| Income Statement GAAP ($B) | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | *Actuals* | | | | | | | | | | | |
| Net Interest Income - Portfolio & Other | 16.2 | 14.2 | 10.7 | 8.5 | 7.2 | 6.1 | 5.6 | 4.5 | 4.0 | 3.6 | 3.2 | 2.9 |
| Net Interest Income - MBS Guaranty Fee | 3.1 | 3.4 | 3.8 | 4.2 | 4.6 | 5.1 | 5.5 | 5.9 | 6.4 | 6.8 | 7.4 | 8.0 |
| Net Interest Income | 18.9 | 17.6 | 14.5 | 12.7 | 11.8 | 11.2 | 11.1 | 10.4 | 10.3 | 10.4 | 10.6 | 11.0 |
| Guaranty Fee Income | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Fee & Other Income | 1.7 | 1.8 | 1.6 | 1.5 | 1.6 | 1.6 | 1.7 | 1.7 | 1.8 | 1.9 | 2.0 | 2.1 |
| *Net Revenues* | *20.6* | *19.4* | *16.1* | *14.2* | *13.4* | *12.8* | *12.8* | *12.1* | *12.1* | *12.2* | *12.5* | *13.1* |
| | | | | | | | | | | | | |
| Total FV Adj, OTTI, Inv Gains/(Losses) | (13.0) | (0.9) | 1.0 | 0.9 | 0.9 | 0.7 | 0.6 | 0.5 | 0.4 | 0.2 | 0.1 | - |
| | | | | | | | | | | | | |
| Charge Offs | (11.2) | (10.2) | (10.1) | (9.3) | (7.0) | (5.0) | (4.3) | (3.3) | (2.6) | (2.1) | (1.9) | (1.7) |
| Reduction/(Build) in Allowance | 0.5 | 1.6 | 4.2 | 6.4 | 5.2 | 4.4 | 3.8 | 3.3 | 2.4 | 1.7 | 1.1 | 0.7 |
| SOP03-03 Charges, Net | - | - | - | - | - | - | - | - | - | - | - | - |
| Foreclosed Property Expense | (0.6) | (0.6) | (0.9) | (0.8) | (0.6) | (0.5) | (0.3) | (0.2) | (0.1) | (0.1) | (0.1) | (0.1) |
| *Total Credit Related Expenses* | *(11.3)* | *(9.1)* | *(6.7)* | *(3.8)* | *(2.5)* | *(1.1)* | *(0.7)* | *(0.2)* | *(0.4)* | *(0.6)* | *(0.8)* | *(1.1)* |
| | | | | | | | | | | | | |
| Total administrative expenses | (1.5) | (1.6) | (1.6) | (1.6) | (1.5) | (1.4) | (1.2) | (1.2) | (1.2) | (1.2) | (1.2) | (1.2) |
| TCCA Pass Through | - | (0.1) | (0.3) | (0.5) | (0.7) | (1.0) | (1.1) | (1.2) | (1.3) | (1.4) | (1.5) | (1.5) |
| Other Expenses/Losses | (0.4) | (0.4) | (0.3) | (0.3) | (0.2) | (0.2) | (0.2) | (0.2) | (0.2) | (0.2) | (0.2) | (0.3) |
| *Total Non-Credit Related Expenses* | *(1.9)* | *(2.0)* | *(2.2)* | *(2.4)* | *(2.5)* | *(2.6)* | *(2.5)* | *(2.6)* | *(2.7)* | *(2.8)* | *(3.0)* | *(2.9)* |
| | | | | | | | | | | | | |
| Income Before Taxes & Extra. Items | (5.7) | 7.3 | 8.1 | 8.9 | 9.4 | 9.8 | 10.2 | 9.8 | 9.4 | 9.1 | 8.9 | 9.0 |
| Taxes | (0.4) | (0.0) | 0.0 | (0.0) | 0.0 | 0.0 | 0.0 | 0.0 | (0.0) | (0.0) | (0.0) | (0.0) |
| *Net Income* | *(5.3)* | *7.3* | *8.1* | *8.9* | *9.4* | *9.8* | *10.2* | *9.8* | *9.4* | *9.1* | *8.9* | *9.0* |
| | | | | | | | | | | | | |
| Other Comprehensive Income (Loss) | 4.0 | - | - | - | - | - | - | - | - | - | - | - |
| *Total Comprehensive Income (Loss)* | *(1.2)* | *7.3* | *8.1* | *8.9* | *9.4* | *9.8* | *10.2* | *9.8* | *9.4* | *9.1* | *8.9* | *9.0* |
| | | | | | | | | | | | | |
| Treasury Preferred Dividends | (6.5) | (7.2) | (7.2) | (7.2) | (7.2) | (7.2) | (7.2) | (7.2) | (7.2) | (7.2) | (7.2) | (7.2) |
| *Net Income (Loss) to Common Equity* | *(11.8)* | *0.1* | *0.9* | *1.7* | *2.1* | *2.6* | *2.9* | *2.6* | *2.2* | *1.8* | *1.6* | *1.8* |

Confidential – Restricted

FannieMae

000323

DRAFT

# The Payroll Tax Cut Continuation Act (TCCA) pass-through fee generates revenue for the government



**Cumulative Proceeds from TCCA Fee for Both GSEs**

*$ in Billions*

Note: TCCA fee of 10 bps is a "tax" remitted to the US government on new SF originations beginning April 1, 2012 through 2021

- Multiple factors influence the revenue associated with the TCCA (i.e. origination volumes, prepayments, GSE market share, etc.)

- Specific language in the TCCA legislation prohibits 10 bps "tax" revenue from being considered a reimbursement
  - "*The fees charged pursuant to this section shall not be considered a reimbursement to the Federal Government for the costs or subsidy provided to [Fannie Mae and Freddie Mac].*" (12 USC 1327(b)(3))

- TCCA proceeds are dependent on and funded by the GSEs even though the proceeds cannot be counted towards "repayments"

FannieMae

DRAFT

# Single Agency Security

- TBD

Confidential – Restricted

27



**000325**

CONFIDENTIAL COMMERCIAL INFORMATION. CONFIDENTIAL TREATMENT AND FOIA EXEMPTION REQUESTED.





## Board Meeting

**July 19, 2012**
**8:00 a.m. - 1:45 p.m.**

**Fannie Mae Headquarters**
**Washington , DC**

## Agenda

Tab

Redacted for Non-Responsiveness

9:10 a.m.   III.   Strategic Planning Session (180 minutes)   B.

Redacted for Non-Responsiveness

      b.   Corporate Strategy (105 minutes) **(Benson)**   1.

Redacted for Non-Responsiveness

Redacted for Non-Responsiveness

Confidential - Restricted



Protected Information to Be Disclosed Only in Accordance With Protective Order      FM_Fairholme_CFC-00000202

CONFIDENTIAL COMMERCIAL INFORMATION. CONFIDENTIAL TREATMENT AND FOIA EXEMPTION REQUESTED.   FMBD12-001713

A

Confidential - Internal Distribution

Protected Information to Be Disclosed Only in Accordance With Protective Order          FM_Fairholme_CFC-00000203

CONFIDENTIAL COMMERCIAL INFORMATION. CONFIDENTIAL TREATMENT AND FOIA EXEMPTION REQUESTED.   FMBD12-001724



# EXECUTIVE SUMMARY

## BOARD OF DIRECTORS

## STRATEGIC UPDATE

Redacted for Non-Responsiveness

Confidential - Restricted                                                     1

Protected Information to Be Disclosed Only in Accordance With Protective Order          FM_Fairholme_CFC-00000204

CONFIDENTIAL COMMERCIAL INFORMATION. CONFIDENTIAL TREATMENT AND FOIA EXEMPTION REQUESTED    FMBD12-001725

# Redacted for Non-Responsiveness

Protected Information to Be Disclosed Only in Accordance With Protective Order        FM_Fairholme_CFC-00000205

CONFIDENTIAL COMMERCIAL INFORMATION. CONFIDENTIAL TREATMENT AND FOIA EXEMPTION REQUESTED.   FMBD12-001726

# Redacted for Non-Responsiveness

Confidential - Restricted

3

Protected Information to Be Disclosed Only in Accordance With Protective Order      FM_Fairholme_CFC-00000206