APPEAL,CLOSED,TYPE–C

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: <u>1:13–cv–01053–RCL</u>
### *Internal Use Only*

FAIRHOLME FUNDS, INC. et al v. FEDERAL HOUSING
FINANCE AGENCY, et al
Assigned to: Judge Royce C. Lamberth
 Case in other court:  USCA, 14–05254
Cause: 05:702 Administrative Procedure Act

Date Filed: 07/10/2013
Date Terminated: 10/10/2014
Jury Demand: None
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**FAIRHOLME FUNDS, INC**
*on behalf of its series, The Fairholme
Fund*

represented by **Peter A. Patterson**
COOPER & KIRK, PLLC
1523 New Hampshire Ave, NW
Washington, DC 20036
(202) 220–9600
Fax: (202) 220–9601
Email: ppatterson@cooperkirk.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian W. Barnes**
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
202–220–9600
Email: bbarnes@cooperkirk.com
*ATTORNEY TO BE NOTICED*

**David Henry Thompson**
COOPER & KIRK, PLLC
1523 New Hampshire Ave, NW
Washington, DC 20036
(202) 220–9600
Fax: (202) 220–9601
Email: dthompson@cooperkirk.com
*ATTORNEY TO BE NOTICED*

**Howard C. Nielson , Jr.**
U.S. DISTRICT COURT FOR THE
DISTRICT OF UTAH
351 South West Temple
Salt lake City, UT 84101
(801) 524–6730
Email: nielson.howard@gmail.com
*TERMINATED: 05/29/2019*

Vincent John Colatriano
COOPER & KIRK, PLLC
1523 New Hampshire Ave, NW
Washington, DC 20036
(202) 220–9600
Fax: (202) 220–9601
Email: vcolatriano@cooperkirk.com
*ATTORNEY TO BE NOTICED*

Charles Justin Cooper
COOPER & KIRK, PLLC
1523 New Hampshire Ave, NW
Washington, DC 20036
(202) 220–9660
Fax: (202) 220–9601
Email: ccooper@cooperkirk.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**FAIRHOLME FUND**                    represented by   **Peter A. Patterson**
*a series of Fairholme Funds, Inc.*                    (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Brian W. Barnes**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

                                                       **David Henry Thompson**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Howard C. Nielson , Jr.**
                                                       (See above for address)
                                                       *TERMINATED: 05/29/2019*

                                                       **Vincent John Colatriano**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Charles Justin Cooper**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

**Plaintiff**

**BERKLEY INSURANCE COMPANY**         represented by   **Peter A. Patterson**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Brian W. Barnes**

(See above for address)
*ATTORNEY TO BE NOTICED*

**David Henry Thompson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Howard C. Nielson , Jr.**
(See above for address)
*TERMINATED: 05/29/2019*

**John Ramer**
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
202–220–9621
Email: jramer@cooperkirk.com
*ATTORNEY TO BE NOTICED*

**Michael Weitzner**
COOPER KIRK, PLLC
1523 New Hampshire Avenue NW
Washington, DC 20016
202–220–9669
Email: mweitzner@cooperkirk.com
*ATTORNEY TO BE NOTICED*

**Vincent John Colatriano**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Charles Justin Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ACADIA INSURANCE COMPANY**          represented by  **Peter A. Patterson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian W. Barnes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Henry Thompson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Howard C. Nielson , Jr.**
(See above for address)
*TERMINATED: 05/29/2019*

**John Ramer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vincent John Colatriano**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Charles Justin Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

ADMIRAL INDEMNITY COMPANY          represented by   **Peter A. Patterson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian W. Barnes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Henry Thompson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Howard C. Nielson , Jr.**
(See above for address)
*TERMINATED: 05/29/2019*

**John Ramer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vincent John Colatriano**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Charles Justin Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

ADMIRAL INSURANCE COMPANY          represented by   **Peter A. Patterson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian W. Barnes**
(See above for address)

*ATTORNEY TO BE NOTICED*

**David Henry Thompson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Howard C. Nielson , Jr.**
(See above for address)
*TERMINATED: 05/29/2019*

**John Ramer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vincent John Colatriano**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Charles Justin Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**BERKLEY REGIONAL INSURANCE COMPANY**

represented by **Peter A. Patterson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian W. Barnes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Henry Thompson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Howard C. Nielson , Jr.**
(See above for address)
*TERMINATED: 05/29/2019*

**John Ramer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Weitzner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vincent John Colatriano**
(See above for address)
*ATTORNEY TO BE NOTICED*

Charles Justin Cooper
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**CAROLINA CASUALTY INSURANCE COMPANY**

represented by **Peter A. Patterson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian W. Barnes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Henry Thompson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Howard C. Nielson , Jr.**
(See above for address)
*TERMINATED: 05/29/2019*

**John Ramer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vincent John Colatriano**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Charles Justin Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY**

represented by **Peter A. Patterson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian W. Barnes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Henry Thompson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Howard C. Nielson , Jr.**
(See above for address)
*TERMINATED: 05/29/2019*

6

**John Ramer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vincent John Colatriano**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Charles Justin Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**NAUTILUS INSURANCE COMPANY**                    represented by    **Peter A. Patterson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian W. Barnes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Henry Thompson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Howard C. Nielson , Jr.**
(See above for address)
*TERMINATED: 05/29/2019*

**John Ramer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vincent John Colatriano**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Charles Justin Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**PREFERRED EMPLOYERS INSURANCE COMPANY**                    represented by    **Peter A. Patterson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian W. Barnes**
(See above for address)

*ATTORNEY TO BE NOTICED*

**David Henry Thompson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Howard C. Nielson , Jr.**
(See above for address)
*TERMINATED: 05/29/2019*

**John Ramer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Vincent John Colatriano**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Charles Justin Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

<u>Defendant</u>

**FEDERAL HOUSING FINANCE AGENCY**
*in its capacity as Conservator of the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation*

represented by **Asim Varma**
ARNOLD & PORTER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942–5180
Fax: (202) 942–5999
Email: asim.varma@arnoldporter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Block Bergman**
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
202–942–5474
Email: david.bergman@aporter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Howard Neil Cayne**
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942–5656

Fax: (202) 942–5999
Email: howard.cayne@arnoldporter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ian S. Hoffman**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave, NW
Washington, DC 20001
202–942–6406
Fax: 202–942–5999
Email: ian.hoffman@arnoldporter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Louis Stern**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave, NW
Washington D.C., DC 20001–3743
202–942–5000
Email: jonathan.stern@arnoldporter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Stanton Jones**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave, NW
Washington, DC 20001
(202) 942–5563
Fax: (202) 942–5999
Email: stanton.jones@arnoldporter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**EDWARD DEMARCO**                    represented by    **Asim Varma**
*in his official capacity as Acting Director*                    (See above for address)
*of the Federal Housing Finance Agency*                    *LEAD ATTORNEY*
                                                                          *ATTORNEY TO BE NOTICED*

**David Block Bergman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Howard Neil Cayne**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ian S. Hoffman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **DEPARTMENT OF THE TREASURY** | represented by | **Caroline J. Anderson**<br>U.S. DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530<br>(202) 353–6417<br>Fax: (202) 616–2645<br>Email: caroline.j.anderson@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Joel L. McElvain**
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, DC 20006
(202) 626–2929
Fax: (202) 626–3737
Email: jmcelvain@democracyforward.org
*TERMINATED: 08/30/2017*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Charlie Merritt**
U.S. DEPARTMENT OF JUSTICE –
RICHMOND
Civil Division
919 East Main Street
Suite 1900
Richmond, VA 23219
(202) 616–8098
Fax: (804) 819–7417
Email: robert.c.merritt@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Thomas Zimpleman**
NATURAL RESOURCES DEFENSE
COUNCIL
1152 15th St. NW
Suite 300
Washington, DC 20005
202–513–6244
Email: tzimpleman@nrdc.org
*ATTORNEY TO BE NOTICED*

**Defendant**

**MELVIN L. WATT**
*in his official capacity as Director of the*
*Federal Housing Finance Agency*

represented by **Howard Neil Cayne**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**FEDERAL NATIONAL MORTGAGE
ASSOCIATION**

represented by **Meaghan McLaine VerGow**
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383–5300
Fax: (202) 383–5414
Email: mvergow@omm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**FEDERAL HOME LOAN
MORTGAGE CORPORATION**

represented by **Graciela Maria Rodriguez**
KING & SPALDING, LLP
1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, DC 20006
(202) 626–5508
Fax: (202) 626–3737
Email: gmrodriguez@kslaw.com
*ATTORNEY TO BE NOTICED*

**Michael Joseph Ciatti**
KING & SPALDING
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
(202)661–7828
Email: mciatti@kslaw.com
*ATTORNEY TO BE NOTICED*

**Taylor T. Lankford**
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, DC 20006
703–499–0246
Fax: (202) 626–3737
Email: tlankford@kslaw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/10/2013 | 1 | COMPLAINT against All Defendants ( Filing fee $ 400 receipt number 0090–3393808) filed by ADMIRAL INSURANCE COMPANY, PREFERRED |

| | | EMPLOYERS INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, CAROLINA CASUALTY INSURANCE COMPANY, ACADIA INSURANCE COMPANY, FAIRHOLME FUNDS, INC., NAUTILUS INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit Rule 7.1 Corporate Disclosure Statement, # 3 Summons, # 4 Exhibit Notice of Related Cases)(Cooper, Charles). (Entered: 07/10/2013) |
|---|---|---|
| 07/10/2013 | 2 | NOTICE OF RELATED CASE by All Plaintiffs. Case related to Case No. 13−1025. (Cooper, Charles) (Entered: 07/10/2013) |
| 07/10/2013 | 3 | LCvR 7.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, Fairholme Fund, Fairholme Funds, Inc., MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY (Cooper, Charles) (Entered: 07/10/2013) |
| 07/11/2013 | 4 | NOTICE of Appearance by David Henry Thompson on behalf of All Plaintiffs (Thompson, David) (Entered: 07/11/2013) |
| 07/12/2013 | 5 | NOTICE of Appearance by Vincent J. Colatriano on behalf of All Plaintiffs (Colatriano, Vincent) (Entered: 07/12/2013) |
| 07/12/2013 | 6 | ELECTRONIC SUMMONS (5) Issued as to EDWARD DEMARCO, DEPARTMENT OF TREASURY, FEDERAL HOUSING FINANCE AGENCY, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Summons)(sth, ) (Entered: 07/12/2013) |
| 07/19/2013 | 7 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. DEPARTMENT OF TREASURY served on 7/15/2013 (Cooper, Charles) Modified on 7/22/2013 (rdj). (Entered: 07/19/2013) |
| 07/19/2013 | 8 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. DEPARTMENT OF TREASURY served on 7/15/2013 (Cooper, Charles) Modified on 7/22/2013 (rdj). (Entered: 07/19/2013) |
| 07/19/2013 | 9 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. DEPARTMENT OF TREASURY served on 7/15/2013 (Cooper, Charles) Modified on 7/22/2013 (rdj). (Entered: 07/19/2013) |
| 07/19/2013 | 10 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 7/16/2013. Answer due for ALL FEDERAL DEFENDANTS by 9/14/2013. (Cooper, Charles) (Entered: 07/19/2013) |
| 07/19/2013 | 11 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 07/16/2013. (Cooper, Charles) (Entered: 07/19/2013) |
| 07/31/2013 | 12 | NOTICE of Appearance by Joel L. McElvain on behalf of DEPARTMENT OF TREASURY (McElvain, Joel) (Entered: 07/31/2013) |

| 07/31/2013 | 13 | NOTICE of Appearance by Thomas David Zimpleman on behalf of DEPARTMENT OF TREASURY (Zimpleman, Thomas) (Entered: 07/31/2013) |
|---|---|---|
| 08/12/2013 | 14 | NOTICE of Appearance by Peter A. Patterson on behalf of All Plaintiffs (Patterson, Peter) (Entered: 08/12/2013) |
| 08/26/2013 | 15 | NOTICE of Appearance by Asim Varma on behalf of EDWARD DEMARCO, FEDERAL HOUSING FINANCE AGENCY (Varma, Asim) (Entered: 08/26/2013) |
| 08/26/2013 | 16 | NOTICE of Appearance by Howard Neil Cayne on behalf of EDWARD DEMARCO, FEDERAL HOUSING FINANCE AGENCY (Cayne, Howard) (Entered: 08/26/2013) |
| 08/26/2013 | 17 | NOTICE of Appearance by David Block Bergman on behalf of EDWARD DEMARCO, FEDERAL HOUSING FINANCE AGENCY (Bergman, David) (Entered: 08/26/2013) |
| 09/09/2013 | 18 | STIPULATION *as to Briefing Schedule* by DEPARTMENT OF TREASURY. (Attachments: # 1 Text of Proposed Order)(McElvain, Joel) (Entered: 09/09/2013) |
| 09/10/2013 | | MINUTE ORDER: It is hereby ORDERED that all deadlines in this case shall be STAYED until further notice while the Court reviews all of the pending motions in all of the related pending cases. Signed by Judge Robert L. Wilkins on 9/10/2013. (tcb) (Entered: 09/10/2013) |
| 09/23/2013 | | MINUTE ORDER: All briefing (including responses to pending motions) and obligations to answer, or otherwise respond to complaints, are hereby stayed until further notice of the court. Signed by Judge Robert L. Wilkins on 9/23/2013. (tcb). (Entered: 09/23/2013) |
| 10/09/2013 | 19 | PRELIMINARY CASE MANAGEMENT ORDER No. 1IN THE FANNIE MAE/FREDDIE MAC SENIOR PREFERRED STOCK PURCHASEAGREEMENT LITIGATIONS; On July 7, 2013, an investment manager filed a complaint in this court against a number of parties, including the Department of the Treasury (Treasury) and the Federal Housing Finance Agency (FHFA), in its capacity as the conservator for the Federal National Mortgage Association (Fannie Mae) and the Federal Home Loan Mortgage Corporation (Freddie Mac). Perry Capital LLC v. Lew, 13–cv–1025. All parties shall appear for a status hearing in this matter on November 12, 2013 at 2:00 pm to discuss the issues specified in this Order. Other than this Joint Status Report, all briefing (including responses to pending motions) and obligations to answer, or otherwise respond to complaints, are still stayed until further notice of the Court. (SEE ORDER FOR FULL DETAILS). Signed by Judge Robert L. Wilkins on 10/9/2013. (tcb) (Entered: 10/09/2013) |
| 11/06/2013 | 20 | STATUS REPORT by FAIRHOLME FUND, FAIRHOLME FUNDS, INC. (Attachments: # 1 Exhibit A – Stipulation and Proposed Order re: Consolidation, # 2 Exhibit B – Proposed Order re: Joint Status Report)(Cooper, Charles) (Entered: 11/06/2013) |
| 11/12/2013 | | Minute Entry for proceedings held before Judge Robert L. Wilkins: Status Conference held and concluded on 11/12/2013. Plaintiff's Motion to Appoint Counsel; Heard and the Court to grant. Parties to submit a Word version of the proposed order to the Court. Motions Hearing set for 6/23/2014 at 9:30 AM in Courtroom 27A before Judge Robert L. Wilkins. (Court Reporter Patty Gels) (tcb). (Entered: 11/12/2013) |

| 11/13/2013 | | Set/Reset Hearings: Motion Hearing set for 6/23/2014 at 9:30 AM in Courtroom 27A before Judge Robert L. Wilkins. (tcb) (Entered: 11/13/2013) |
|---|---|---|
| 11/18/2013 | 21 | ORDER REGARDING BRIEFING SCHEDULE IN ALL CASES: Upon consideration of the Joint Status Report submitted on November 6, 2013 and pursuant to the Federal Rule of Civil Procedure 42, it is hereby ORDERED that the above captioned cases proceed according to the following schedule: Interim co–lead class counsel file a consolidated class action complaint due by 12/3/2013. Defendants file the administrative record due by 12/17/2013.. Defendants file dispositive motions due by 1/17/2014. Plaintiffs file oppositions to defendants motions and cross–motions due by 2/19/2014. Defendants file replies in support of their motions and oppositions to plaintiffs cross motions due by 4/2/2014. Plaintiffs file replies in support of their cross motions due by 5/2/2014. Hearing on defendants dispositive motions and plaintiffs cross–motions set for 6/23/2014 at 9:30 AM in Courtroom 27A before Judge Robert L. Wilkins.(SEE ORDER FOR FULL DETAILS). Signed by Judge Robert L. Wilkins on 11/18/2013. (tcb) (Entered: 11/18/2013) |
| 12/06/2013 | 22 | STATUS REPORT by FAIRHOLME FUND, FAIRHOLME FUNDS, INC. (Cooper, Charles) (Entered: 12/06/2013) |
| 12/17/2013 | 23 | ADMINISTRATIVE RECORD by DEPARTMENT OF TREASURY. (Attachments: # 1 Exhibit Administrative Record part 1, # 2 Exhibit Administrative Record part 2, # 3 Exhibit Administrative Record part 3, # 4 Exhibit Administrative Record part 4, # 5 Exhibit Administrative Record part 5, # 6 Exhibit Administrative Record part 6, # 7 Exhibit Administrative Record part 7, # 8 Exhibit Administrative Record part 8, # 9 Exhibit Administrative Record part 9, # 10 Exhibit Administrative Record part 10, # 11 Exhibit Administrative Record part 11, # 12 Exhibit Administrative Record part 12, # 13 Exhibit Administrative Record part 13, # 14 Exhibit Administrative Record part 14)(McElvain, Joel) (Entered: 12/17/2013) |
| 12/17/2013 | 24 | NOTICE *OF FILING DOCUMENT COMPILATION REGARDING THIRD AMENDMENT TO SENIOR PREFERRED STOCK PURCHASE AGREEMENTS* by EDWARD DEMARCO, FEDERAL HOUSING FINANCE AGENCY (Attachments: # 1 Index, # 2 Exhibit Part 1, # 3 Exhibit Part 2, # 4 Exhibit Part 3, # 5 Exhibit Part 4, # 6 Exhibit Part 5, # 7 Exhibit Part 6, # 8 Exhibit Part 7, # 9 Exhibit Part 8, # 10 Exhibit Part 9, # 11 Exhibit Part 10, # 12 Exhibit Part 11, # 13 Exhibit Part 12, # 14 Exhibit Part 13, # 15 Exhibit Part 14, # 16 Exhibit Part 15, # 17 Exhibit Part 16, # 18 Exhibit Part 17)(Varma, Asim) (Entered: 12/17/2013) |
| 12/19/2013 | 25 | ERRATA *with Respect to Administrative Record* by DEPARTMENT OF TREASURY. (Attachments: # 1 Exhibit Freddie Mac 2010 Form 10–K (0640–1063), # 2 Exhibit Freddie Mac First Quarter 2011 Form 10–Q (1231–1461), # 3 Exhibit Freddie Mac Second Quarter 2011 Form 10–Q (1647–1892), # 4 Exhibit Freddie Mac Third Quarter 2011 Form 10–Q (2114–2357), # 5 Exhibit Freddie Mac 2011 Form 10–K (2765–3247), # 6 Exhibit Freddie Mac First Quarter 2012 Form 10–Q (3532–3774))(McElvain, Joel) (Entered: 12/19/2013) |
| 01/06/2014 | | MINUTE ORDER: It is hereby ORDERED that Defendants briefs in support of their dispositive motion in the three non–consolidated actions (Perry Capital LLC v. Lew, et al., No. 13–cv–1025 (RLW), Fairholme Funds, Inc., et al. v. Federal Housing Finance Agency, et al., No. 13–cv–1053 (RLW), and Arrowood Indemnity Co., et al. v. Federal National Mortgage Association, et al., No. 13–cv–1439 (RLW)) shall not exceed 130 pages. It is further ORDERED that Plaintiffs briefs in support of their opposition to Defendants dispositive motion and in support of any cross–motion for |

| | | |
|---|---|---|
| | | summary judgment shall not exceed 150 pages. Should Plaintiffs conclude, after reviewing Defendants filings and conferring in good faith, that an adequate response requires more than 150 pages, Plaintiffs counsel shall promptly inform the Court and file an appropriate motion. These page limits are inclusive of any supplemental briefs to be filed by the parties. Signed by Judge Robert L. Wilkins on 1/6/2014. (tcb) (Entered: 01/06/2014) |
| 01/08/2014 | 26 | Unopposed MOTION for Leave to File Excess Pages by DEPARTMENT OF TREASURY (McElvain, Joel) (Entered: 01/08/2014) |
| 01/09/2014 | | MINUTE ORDER: Defendant's 26 Unopposed MOTION for Leave to File Excess Pages is hereby GRANTED. Counsel for Defendants is admonished to comply with the local rules in the future and submit a proposed order with ALL motions pursuant to Local Rule 7(c). Signed by Judge Robert L. Wilkins on 1/9/2014. (tcb) (Entered: 01/09/2014) |
| 01/17/2014 | 27 | MOTION to Dismiss *or, in the Alternative, for Summary Judgment* by DEPARTMENT OF TREASURY (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(McElvain, Joel). Added MOTION for Summary Judgment on 1/21/2014 (znmw, ). (Entered: 01/17/2014) |
| 01/17/2014 | 28 | MOTION to Dismiss *All Claims and, in the Alternative, for Summary Judgment as to Plaintiffs Arbitrary and Capricious Claims and Memorandum in Support* by FEDERAL HOUSING FINANCE AGENCY (Attachments: # 1 Text of Proposed Order)(Cayne, Howard). Added MOTION for Summary Judgment on 1/21/2014 (znmw, ). (Entered: 01/17/2014) |
| 01/17/2014 | 29 | MOTION to Take Judicial Notice by EDWARD DEMARCO, FEDERAL HOUSING FINANCE AGENCY (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Text of Proposed Order)(Cayne, Howard) (Entered: 01/17/2014) |
| 01/22/2014 | | Case reassigned by consent to Judge Royce C. Lamberth. Judge Robert L. Wilkins has been elevated to U.S. Court of Appeals for D.C. and is no longer assigned to the case. (gt, ) (Entered: 01/22/2014) |
| 01/30/2014 | 30 | STIPULATION *To Conform Briefing Schedule on Defendants' Motion for Judicial Notice to Briefing Schedule Established for Defendants' Dispositive Motions* by FAIRHOLME FUND, FAIRHOLME FUNDS, INC. (Thompson, David) (Entered: 01/30/2014) |
| 02/12/2014 | 31 | MOTION for Supplementation of the Administrative Records, for Limited Discovery, for Suspension of Briefing on Defendants' Dispositive Motions, and for a Status Conference by FAIRHOLME FUND, FAIRHOLME FUNDS, INC (Attachments: # 1 Text of Proposed Order)(Cooper, Charles). Added MOTION for Discovery, MOTION for Hearing, MOTION for Leave to File Supplement on 2/13/2014 (znmw, ). (Entered: 02/12/2014) |
| 02/12/2014 | 32 | MEMORANDUM re 31 MOTION for Supplementation of the Administrative Records, for Limited Discovery, for Suspension of Briefing on Defendants' Dispositive Motions, and for a Status Conference filed by FAIRHOLME FUNDS, INC, FAIRHOLME FUND by FAIRHOLME FUND, FAIRHOLME FUNDS, INC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4 (Declaration of Vincent J. Colatriano))(Cooper, Charles) (Entered: 02/12/2014) |

| 03/04/2014 | 33 | Memorandum in opposition to re 31 MOTION for Suspension of Briefing on Defendants' Dispositive Motions MOTION for Discovery MOTION for Hearing MOTION for Leave to File filed by DEPARTMENT OF TREASURY. (McElvain, Joel) (Entered: 03/04/2014) |
| --- | --- | --- |
| 03/04/2014 | 34 | Memorandum in opposition to re 31 MOTION for Suspension of Briefing on Defendants' Dispositive Motions MOTION for Discovery MOTION for Hearing MOTION for Leave to File filed by EDWARD DEMARCO, FEDERAL HOUSING FINANCE AGENCY. (Cayne, Howard) (Entered: 03/04/2014) |
| 03/05/2014 | 35 | NOTICE *of Filing of Discovery Order Issued by United States Court of Federal Claims* by FAIRHOLME FUND, FAIRHOLME FUNDS, INC (Attachments: # 1 Exhibit A)(Cooper, Charles) (Entered: 03/05/2014) |
| 03/13/2014 | 36 | REPLY to opposition to motion re 31 MOTION for Suspension of Briefing on Defendants' Dispositive Motions MOTION for Discovery MOTION for Hearing MOTION for Leave to File filed by FAIRHOLME FUND, FAIRHOLME FUNDS, INC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Cooper, Charles) (Entered: 03/13/2014) |
| 03/18/2014 | 37 | Memorandum in opposition to re 29 MOTION to Take Judicial Notice filed by FAIRHOLME FUND, FAIRHOLME FUNDS, INC. (Attachments: # 1 Exhibit Order [Proposed By Plaintiffs] On Defendants' Motion For Judicial Notice)(Thompson, David) (Entered: 03/18/2014) |
| 03/21/2014 | 38 | Memorandum in opposition to re 28 MOTION to Dismiss *All Claims and, in the Alternative, for Summary Judgment as to Plaintiffs Arbitrary and Capricious Claims and Memorandum in Support* MOTION for Summary Judgment filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Cooper, Charles) Modified on 3/24/2014 (jf, ). (Entered: 03/21/2014) |
| 03/21/2014 | 39 | SUPPLEMENTAL MEMORANDUM to re 28 MOTION to Dismiss *All Claims and, in the Alternative, for Summary Judgment as to Plaintiffs Arbitrary and Capricious Claims and Memorandum in Support* MOTION for Summary Judgment, 27 MOTION to Dismiss *or, in the Alternative, for Summary Judgment* MOTION for Summary Judgment −− *Plaintiffs' Suppl. Memorandum on APA, Fiduciary Duty, and Contract Claims* filed by FAIRHOLME FUND, FAIRHOLME FUNDS, INC. (Attachments: # 1 Exhibit 1)(Cooper, Charles) (Entered: 03/21/2014) |
| 03/21/2014 | 40 | Cross MOTION for Summary Judgment by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (See Docket Entry 38 to view document) (jf, ) (Entered: 03/24/2014) |
| 04/10/2014 | 41 | |

| | | |
|---|---|---|
| | | NOTICE *of Filing of Discovery Order Issued by United States Court of Federal Claims* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY (Attachments: # 1 Exhibit A)(Cooper, Charles) (Entered: 04/10/2014) |
| 05/02/2014 | 42 | STIPULATION *Regarding Enlargement of Page Limits* by DEPARTMENT OF TREASURY. (McElvain, Joel) (Entered: 05/02/2014) |
| 05/02/2014 | 43 | REPLY to opposition to motion re 27 MOTION to Dismiss or, in the Alternative, for Summary Judgment filed by DEPARTMENT OF TREASURY. (McElvain, Joel) Modified on 5/5/2014 to correct docket link (jf, ). (Entered: 05/02/2014) |
| 05/02/2014 | 44 | Memorandum in opposition to re 40 MOTION for Summary Judgment filed by DEPARTMENT OF TREASURY. (McElvain, Joel) (Entered: 05/02/2014) |
| 05/02/2014 | 45 | REPLY to opposition to motion re 28 MOTION to Dismiss *All Claims and, in the Alternative, for Summary Judgment as to Plaintiffs Arbitrary and Capricious Claims and Memorandum in Support* MOTION for Summary Judgment filed by EDWARD DEMARCO, FEDERAL HOUSING FINANCE AGENCY. (Cayne, Howard) (Entered: 05/02/2014) |
| 05/02/2014 | 46 | Memorandum in opposition to re 40 MOTION for Summary Judgment filed by EDWARD DEMARCO, FEDERAL HOUSING FINANCE AGENCY. (Cayne, Howard) (Entered: 05/02/2014) |
| 05/02/2014 | 47 | REPLY to opposition to motion re 29 MOTION to Take Judicial Notice filed by EDWARD DEMARCO, FEDERAL HOUSING FINANCE AGENCY. (Cayne, Howard) (Entered: 05/02/2014) |
| 05/05/2014 | 48 | NOTICE OF RELATED CASE by DEPARTMENT OF TREASURY. Case related to Case No. 4:14–cv–42 (S.D. Iowa). (McElvain, Joel) (Entered: 05/05/2014) |
| 05/05/2014 | 49 | NOTICE OF RELATED CASE by EDWARD DEMARCO, FEDERAL HOUSING FINANCE AGENCY. Case related to Case No. 4:14–cv–0042 (S.D. Iowa). (Varma, Asim) (Entered: 05/05/2014) |
| 06/02/2014 | 50 | STIPULATION *Regarding Enlargement of Page Limits* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Cooper, Charles) (Entered: 06/02/2014) |
| 06/02/2014 | 51 | REPLY to opposition to motion re 40 MOTION for Summary Judgment *on Administrative Procedure Act Claims* filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME |

| | | |
|---|---|---|
| | | FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Cooper, Charles) (Entered: 06/02/2014) |
| 06/05/2014 | | MINUTE ORDER postponing the motions hearing set by the 11/12/2013 Minute Entry until further order of the Court. Signed by Judge Royce C. Lamberth on June 5, 2014. (lcrcl5) (Entered: 06/05/2014) |
| 08/12/2014 | 52 | NOTICE of Appearance by Howard C. Nielson, Jr on behalf of All Plaintiffs (Nielson, Howard) (Entered: 08/12/2014) |
| 08/26/2014 | 53 | NOTICE OF SUPPLEMENTAL AUTHORITY by EDWARD DEMARCO, FEDERAL HOUSING FINANCE AGENCY (Attachments: # 1 Exhibit A (S.D. Iowa Order))(Cayne, Howard) (Entered: 08/26/2014) |
| 09/03/2014 | 54 | REPONSE re 53 NOTICE OF SUPPLEMENTAL AUTHORITY filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Exhibit Transcript of July 10, 2014 Hearing in S.D. Iowa)(Cooper, Charles) Modified on 9/4/2014 to correct event(rdj). (Entered: 09/03/2014) |
| 09/30/2014 | 55 | ORDER on DEFENDANTS' MOTION FOR JUDICIAL NOTICE granting in part and denying in part (33) Motion to Take Judicial Notice in case 1:13–cv–01025–RCL; granting in part and denying in part (29) Motion to Take Judicial Notice in case 1:13–cv–01053–RCL; granting in part and denying in part (37) Motion to Take Judicial Notice in case 1:13–cv–01439–RCL; granting in part and denying in part (21) Motion to Take Judicial Notice in case 1:13–mc–01288–RCL. Signed by Judge Royce C. Lamberth on 9/30/2014. (tg, ) (Entered: 09/30/2014) |
| 09/30/2014 | 56 | MEMORANDUM OPINION. Signed by Judge Royce C. Lamberth on 9/30/2014. (tg, ) (Entered: 09/30/2014) |
| 09/30/2014 | 57 | ORDER GRANTING the defendants' motions to dismiss and DENYING the plaintiffs' cross–motion for summary judgment. Signed by Judge Royce C. Lamberth on 9/30/2014. (tg, ) (Entered: 09/30/2014) |
| 09/30/2014 | 58 | ORDER denying 31 Motion for supplementation of the administrative record, limited discovery, suspension of briefing on thedefendants' dispositive motions, and a status conference as moot due to the dismissal of this case pursuant to the Court's Order 57 issued this date. Signed by Judge Royce C. Lamberth on 9/30/2014. (ztg, ) (Entered: 09/30/2014) |
| 10/10/2014 | 59 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 57 Order, 56 Memorandum & Opinion, 58 Order on Motion for Miscellaneous Relief, Order on Motion for Discovery, Order on Motion for Hearing, Order on Motion for Leave to File,,,, by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS |

| | | |
|---|---|---|
| | | INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. Filing fee $ 505, receipt number 0090–3867937. Fee Status: Fee Paid. Parties have been notified. (Cooper, Charles) (Entered: 10/10/2014) |
| 10/10/2014 | 60 | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid this date re 59 Notice of Appeal to DC Circuit Court,. (rdj) (Entered: 10/10/2014) |
| 10/17/2014 | | USCA Case Number 14–5254 for 59 Notice of Appeal to DC Circuit Court,, filed by BERKLEY REGIONAL INSURANCE COMPANY, FAIRHOLME FUNDS, INC, ACADIA INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND. (kb) (Entered: 10/17/2014) |
| 07/24/2017 | 61 | MANDATE of USCA as to (54 in 1:13–cv–01025–RCL) Notice of Appeal to DC Circuit Court, filed by PERRY CAPITAL LLC, (49 in 1:13–mc–01288–RCL) Notice of Appeal to DC Circuit Court filed by JOSEPH CACCIAPELLE, (61 in 1:13–cv–01439–RCL) Notice of Appeal to DC Circuit Court, filed by ARROWOOD SURPLUS LINES INSURANCE COMPANY, ARROWOOD INDEMNITY COMPANY, FINANCIAL STRUCTURES LIMITED, (59 in 1:13–cv–01053–RCL) Notice of Appeal to DC Circuit Court, filed by BERKLEY REGIONAL INSURANCE COMPANY, FAIRHOLME FUNDS, INC, ACADIA INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND. USCA Case Number 14–5243 Consolidated with 14–5254, 14–5260, 14–5262. (Attachments: # 1 order filed July 17, 2017)(zrdj) (Entered: 07/27/2017) |
| 08/30/2017 | 62 | NOTICE of Appearance by Caroline J. Anderson on behalf of DEPARTMENT OF TREASURY (Anderson, Caroline) (Entered: 08/30/2017) |
| 08/30/2017 | 63 | NOTICE OF WITHDRAWAL OF APPEARANCE as to DEPARTMENT OF TREASURY. Attorney Joel L. McElvain terminated. (McElvain, Joel) (Entered: 08/30/2017) |
| 09/14/2017 | 64 | NOTICE of Appearance by Robert Charles Merritt on behalf of DEPARTMENT OF TREASURY (Merritt, Robert) (Entered: 09/14/2017) |
| 10/04/2017 | 65 | STIPULATION *By All Parties Regarding Schedule On Remand* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Text of Proposed Order)(Cooper, Charles) (Entered: 10/04/2017) |
| 11/01/2017 | 66 | MOTION for Leave to File *Amended Complaint* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL |

| | | |
|---|---|---|
| | | INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY (Attachments: # 1 Plaintiffs' Proposed Amended Complaint, # 2 Text of Proposed Order)(Cooper, Charles) (Entered: 11/01/2017) |
| 11/09/2017 | 67 | STIPULATION re 66 MOTION for Leave to File *Amended Complaint* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Proposed Amended Complaint)(Cooper, Charles) (Entered: 11/09/2017) |
| 01/10/2018 | 68 | MOTION to Dismiss *Amended Complaints* by EDWARD DEMARCO, FEDERAL HOUSING FINANCE AGENCY (Attachments: # 1 Exhibit A (Fannie Mae Charter), # 2 Exhibit B (Freddie Mac Charter), # 3 Exhibit C (Fannie Preferred Stock), # 4 Exhibit D (Freddie Preferred Stock), # 5 Exhibit E (Freddie Common Stock), # 6 Exhibit F (PSPAs), # 7 Exhibit G (Treasury Preferred Stock), # 8 Text of Proposed Order)(Cayne, Howard) (Entered: 01/10/2018) |
| 01/19/2018 | 69 | STIPULATION by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Text of Proposed Order)(Cooper, Charles) (Entered: 01/19/2018) |
| 02/01/2018 | 70 | SCHEDULING ORDER approving Stipulation filed 10/4/2017, nunc pro tunc. Signed by Judge Royce C. Lamberth on 1/30/18. (lsj) (Entered: 02/01/2018) |
| 02/01/2018 | 71 | ORDER granting amended joint stipulation and proposed scheduling Order. Response to Dispositive Motions due by 2/16/2018. Reply to Dispositive Motions due by 3/16/2018. Signed by Judge Royce C. Lamberth on 1/30/18. (lsj) (Entered: 02/01/2018) |
| 02/01/2018 | 72 | ORDER approving 67 in Civil Case 13–CV–1053 (RCL), nunc pro tunc. Signed by Judge Royce C. Lamberth on 1/30/18. (lsj) (Entered: 02/01/2018) |
| 02/01/2018 | 73 | ORDER granting 66 Motion for Leave to File. Signed by Judge Royce C. Lamberth on 1/30/18. (lsj) (Entered: 02/01/2018) |
| 02/01/2018 | 74 | AMENDED COMPLAINT against DEPARTMENT OF TREASURY, FEDERAL HOUSING FINANCE AGENCY, MELVIN L. WATT, FEDERAL NATIONAL MORTGAGE ASSOCIATION, FEDERAL HOME LOAN MORTGAGE CORPORATION filed by ADMIRAL INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, CAROLINA CASUALTY INSURANCE COMPANY, ACADIA INSURANCE COMPANY, |

| | | |
|---|---|---|
| | | FAIRHOLME FUNDS, INC, NAUTILUS INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY.(zrdj) (Entered: 02/05/2018) |
| 02/01/2018 | 75 | AMENDED COMPLAINT against FEDERAL HOME LOAN MORTGAGE CORPORATION, FEDERAL HOUSING FINANCE AGENCY, FEDERAL NATIONAL MORTGAGE ASSOCIATION, MELVIN L. WATT filed by PREFERRED EMPLOYERS INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, ACADIA INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY.(zrdj) (Entered: 02/05/2018) |
| 02/16/2018 | 76 | Memorandum in opposition to re 68 MOTION to Dismiss *Amended Complaints* filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Text of Proposed Order)(Cooper, Charles) (Entered: 02/16/2018) |
| 03/02/2018 | 77 | STIPULATION by FEDERAL HOME LOAN MORTGAGE CORPORATION, FEDERAL HOUSING FINANCE AGENCY, FEDERAL NATIONAL MORTGAGE ASSOCIATION, MELVIN L. WATT. (Attachments: # 1 Text of Proposed Order)(Cayne, Howard) (Entered: 03/02/2018) |
| 03/23/2018 | 78 | REPLY to opposition to motion re 68 MOTION to Dismiss *Amended Complaints* filed by EDWARD DEMARCO, FEDERAL HOUSING FINANCE AGENCY. (Cayne, Howard) (Entered: 03/23/2018) |
| 04/13/2018 | 79 | MOTION for Leave to File *Surreply* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY (Attachments: # 1 Plaintiffs' Proposed Surreply, # 2 Text of Proposed Order)(Cooper, Charles) (Entered: 04/13/2018) |
| 04/13/2018 | 80 | Memorandum in opposition to re 79 MOTION for Leave to File *Surreply* filed by FEDERAL HOUSING FINANCE AGENCY. (Cayne, Howard) (Entered: 04/13/2018) |
| 05/31/2018 | 81 | NOTICE OF RELATED CASE by FEDERAL HOUSING FINANCE AGENCY, MELVIN L. WATT. Case related to Case No. 1:18−cv−1142. (Attachments: # 1 Notice of Related Cases)(Cayne, Howard) (Entered: 05/31/2018) |
| 09/28/2018 | 82 | MEMORANDUM OPINION. Signed by Judge Royce C. Lamberth on 9/28/2018. (lcrcl2) (Entered: 09/28/2018) |
| 09/28/2018 | 83 | ORDER granting in part and denying in part 68 Motion to Dismiss; granting 79 Motion for Leave to File. Signed by Judge Royce C. Lamberth on 9/28/18. (lcrcl2) |

| | | |
|---|---|---|
| | | (Entered: 09/28/2018) |
| 09/28/2018 | 84 | SURREPLY to re 68 MOTION to Dismiss *Amended Complaints* filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (jf) (Entered: 10/04/2018) |
| 10/10/2018 | 85 | STIPULATION *Extending Defendants' Time to File Answers to the Complaints* by FEDERAL HOUSING FINANCE AGENCY, MELVIN L. WATT. (Attachments: # 1 Text of Proposed Order)(Cayne, Howard) (Entered: 10/10/2018) |
| 10/12/2018 | 86 | ORDER approving the Stipulation Extending Defendants' Time to File Answers to the Complaints. Defendants' must file answers to the Amended Complaints by December 11, 2018. Signed by Judge Royce C. Lamberth on 10/12/18. (lcrcl2) (Entered: 10/12/2018) |
| 10/12/2018 | | Set/Reset Deadlines: Answer due by 12/11/2018. (znbn) (Entered: 10/15/2018) |
| 10/15/2018 | 87 | MOTION for Reconsideration re 82 Memorandum & Opinion, 83 Order on Motion to Dismiss, Order on Motion for Leave to File by FEDERAL HOME LOAN MORTGAGE CORPORATION, FEDERAL HOUSING FINANCE AGENCY, FEDERAL NATIONAL MORTGAGE ASSOCIATION, MELVIN L. WATT (Attachments: # 1 Text of Proposed Order)(Cayne, Howard) (Entered: 10/15/2018) |
| 10/22/2018 | 88 | STIPULATION *Extending Briefing Deadlines for Motion for Reconsideration* by FEDERAL HOUSING FINANCE AGENCY, MELVIN L. WATT. (Attachments: # 1 Text of Proposed Order)(Cayne, Howard) (Entered: 10/22/2018) |
| 10/29/2018 | 89 | MEET AND CONFER STATEMENT. (Attachments: # 1 Text of Proposed Order Proposed Scheduling Order)(Cooper, Charles) (Entered: 10/29/2018) |
| 11/05/2018 | 90 | RESPONSE re 87 MOTION for Reconsideration re 82 Memorandum & Opinion, 83 Order on Motion to Dismiss, Order on Motion for Leave to File filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Text of Proposed Order)(Cooper, Charles) (Entered: 11/05/2018) |
| 11/19/2018 | 91 | REPLY to opposition to motion re 87 MOTION for Reconsideration re 82 Memorandum & Opinion, 83 Order on Motion to Dismiss, Order on Motion for Leave to File filed by FEDERAL HOME LOAN MORTGAGE CORPORATION, FEDERAL HOUSING FINANCE AGENCY, FEDERAL NATIONAL MORTGAGE ASSOCIATION, MELVIN L. WATT. (Attachments: # 1 Exhibit A (Fairholme Plaintiffs' Initial Disclosures), # 2 Exhibit B (Arrowood Plaintiffs' Initial Disclosures), # 3 Exhibit C (Class Plaintiffs' Initial Disclosures))(Cayne, Howard) (Entered: 11/19/2018) |
| 12/10/2018 | 92 | |

| | | |
|---|---|---|
| | | STIPULATION *for Extension of Time and Proposed Order* by EDWARD DEMARCO, DEPARTMENT OF THE TREASURY, FEDERAL HOME LOAN MORTGAGE CORPORATION, FEDERAL HOUSING FINANCE AGENCY, FEDERAL NATIONAL MORTGAGE ASSOCIATION, JACOB J. LEW, STEVEN T. MNUCHIN, MELVIN L. WATT, EDWARD DEMARCO, FEDERAL HOUSING FINANCE AGENCY, MELVIN L. WATT, EDWARD DEMARCO, DEPARTMENT OF THE TREASURY, DEPARTMENT OF THE TREASURY, FEDERAL HOME LOAN MORTGAGE CORPORATION, FEDERAL HOME LOAN MORTGAGE CORPORATION, FEDERAL HOME LOAN MORTGAGE CORPORATION, FEDERAL HOUSING FINANCE ADMINISTRATION, FEDERAL HOUSING FINANCE ADMINISTRATION, FEDERAL HOUSING FINANCE AGENCY, FEDERAL HOUSING FINANCE AGENCY, FEDERAL HOUSING FINANCE AGENCY, FEDERAL HOUSING FINANCE AGENCY, FEDERAL HOUSING FINANCE AGENCY, FEDERAL NATIONAL MORTGAGE ASSOCIATION, FEDERAL NATIONAL MORTGAGE ASSOCIATION, FEDERAL NATIONAL MORTGAGE ASSOCIATION, FEDERAL NATIONAL MORTGAGE ASSOCIATION, FEDERAL NATIONAL MORTGAGE ASSOCIATION, JACOB J. LEW, UNITED STATES DEPARTMENT OF THE TREASURY, UNITED STATES DEPARTMENT OF THE TREASURY. (Attachments: # 1 Text of Proposed Order Proposed Order)(Cayne, Howard) (Entered: 12/10/2018) |
| 12/13/2018 | 93 | ORDER extending nunc pro tunc the briefing deadlines for defendants' motion for partial reconsideration. Signed by Judge Royce C. Lamberth on 12/12/2018. (lcrcl3) (Entered: 12/13/2018) |
| 12/13/2018 | 94 | ORDER extending defendants' time to answer to 12/17/18. Signed by Judge Royce C. Lamberth on 12/12/2018. (lcrcl3) (Entered: 12/13/2018) |
| 12/17/2018 | 95 | *Defendants'* ANSWER to 74 Amended Complaint,, 75 Amended Complaint, , ANSWER to 74 Amended Complaint,, 75 Amended Complaint, by EDWARD DEMARCO, DEPARTMENT OF THE TREASURY, FEDERAL HOME LOAN MORTGAGE CORPORATION, FEDERAL HOUSING FINANCE AGENCY, FEDERAL NATIONAL MORTGAGE ASSOCIATION, MELVIN L. WATT.(Cayne, Howard) (Entered: 12/17/2018) |
| 12/22/2018 | 96 | ORDER adopting Stipulation Extending Briefing Deadlines, nunc pro tunc. Signed by Judge Royce C. Lamberth on 12/22/2018. (lcrcl1) Modified on 12/26/2018 (zlsj). (Entered: 12/22/2018) |
| 03/25/2019 | 97 | STIPULATION *for Entry of Protective Order* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Exhibit A – Proposed Protective Order)(Cooper, Charles) (Entered: 03/25/2019) |
| 04/10/2019 | 98 | PROTECTIVE ORDER setting forth procedures for handling confidential material; allowing designated material to be filed under seal. Signed by Judge Royce C. Lamberth on 4/8/19. (lsj) (Entered: 04/10/2019) |
| 05/16/2019 | 99 | |

| | | ORDER denying (87) Motion for Reconsideration in case 1:13–cv–01053–RCL; denying (95) Motion for Reconsideration in case 1:13–cv–01439–RCL; denying (89) Motion for Reconsideration in case 1:13–mc–01288–RCL. Signed by Judge Royce C. Lamberth on 5/16/2019. (lcrcl2) (Entered: 05/16/2019) |
|---|---|---|
| 05/23/2019 | 100 | SCHEDULING ORDER: Fact Discovery due by 7/15/2019. Motion for Class Certification due by 8/31/2019. Responses for Class Certification due by 10/14/2019. Replies for Class Certification due by 11/26/2019. Plaintiff Rule 26(a)(2) due by 8/14/2019. Defendant Rule 26(a)(2) due by 10/14/2019. Summary Judgment motions due by 12/13/2019. Jury Trial to begin on 10/19/2020 at 10:00 AM in Courtroom 15 before Judge Royce C. Lamberth. Signed by Judge Royce C. Lamberth on 5/22/19. (lsj) (Entered: 05/23/2019) |
| 05/29/2019 | 101 | NOTICE OF WITHDRAWAL OF APPEARANCE as to ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. Attorney Howard C. Nielson, Jr terminated. (Nielson, Howard) (Entered: 05/29/2019) |
| 05/30/2019 | 102 | ERRATA *Notice of Withdrawal of Appearance* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY 101 Notice of Withdrawal of Appearance, filed by BERKLEY REGIONAL INSURANCE COMPANY, FAIRHOLME FUNDS, INC, ACADIA INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND. (Nielson, Howard) (Entered: 05/30/2019) |
| 07/12/2019 | 103 | MOTION to Compel *Compliance with Subpoena to the U.S. Treasury* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY (Attachments: # 1 Memorandum in Support, # 2 Exhibit Attachment A, # 3 Exhibit Attachment B, # 4 Exhibit Attachment C, # 5 Exhibit Attachment D, # 6 Exhibit Attachment E, # 7 Exhibit Attachment F, # 8 Text of Proposed Order)(Cooper, Charles) (Entered: 07/12/2019) |
| 07/22/2019 | 104 | Unopposed MOTION for Extension of Time to File Response/Reply as to 103 MOTION to Compel *Compliance with Subpoena to the U.S. Treasury* by DEPARTMENT OF THE TREASURY (Attachments: # 1 Text of Proposed Order)(Merritt, R.) (Entered: 07/22/2019) |

| 07/23/2019 | 105 | ORDER granting 104 Motion for Extension of Time to File. The government's response is due by 8/2/2019. Signed by Judge Royce C. Lamberth on 07/22/19. (lcrcl3) (Entered: 07/23/2019) |
|---|---|---|
| 07/24/2019 | | Set/Reset Deadlines: Responses due by 8/2/2019 (lsj) (Entered: 07/24/2019) |
| 08/02/2019 | 106 | Memorandum in opposition to re 103 MOTION to Compel *Compliance with Subpoena to the U.S. Treasury* filed by DEPARTMENT OF THE TREASURY. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Merritt, R.) (Entered: 08/02/2019) |
| 08/06/2019 | 107 | Unopposed MOTION for Extension of Time to File Response/Reply as to 103 MOTION to Compel *Compliance with Subpoena to the U.S. Treasury* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY (Attachments: # 1 Text of Proposed Order Proposed Order)(Cooper, Charles) (Entered: 08/06/2019) |
| 08/07/2019 | 108 | ORDER granting 107 Motion for Extension of Time. Plaintiffs must file their reply in support of their motion to compel by 8/16/2019. Signed by Judge Royce C. Lamberth on 08/07/2019. (lcrcl3) (Entered: 08/07/2019) |
| 08/07/2019 | 109 | AMENDED SCHEDULING ORDER. SEE ORDER FOR FULL DETAILS. Signed by Judge Royce C. Lamberth on 08/07/2019. (lcrcl3) (Entered: 08/07/2019) |
| 08/16/2019 | 110 | REPLY to opposition to motion re 103 MOTION to Compel *Compliance with Subpoena to the U.S. Treasury* filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Exhibit Attachment A: Defs.' Reply in Support of Mot. for Protective Order, # 2 Exhibit Attachment B: Excerpt from Status Conference Transcript, # 3 Exhibit Attachment C: Status Conference Transcript, # 4 Exhibit Attachment D: Email re. Letter to DOJ)(Cooper, Charles) (Entered: 08/16/2019) |
| 10/28/2019 | | ENTERED IN ERROR.....MINUTE ORDER: The parties shall submit a further Status Report no later than 11/14/2019. Signed by Judge Royce C. Lamberth on 10/28/2019. (lcrcl3) Modified on 10/28/2019 (zlsj). (Entered: 10/28/2019) |
| 11/08/2019 | 111 | ORDER granting 103 Motion to Compel. Signed by Judge Royce C. Lamberth on 11/08/2019. (lcrcl3) (Entered: 11/08/2019) |
| 11/08/2019 | 112 | MEMORANDUM OPINION. Signed by Judge Royce C. Lamberth on 11/08/2019. (lcrcl3) (Entered: 11/08/2019) |
| 12/18/2019 | 113 | Joint MOTION to Amend/Correct 109 Order on Motion to Amend/Correct, Set/Reset Deadlines/Hearings by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY |

| | | |
|---|---|---|
| | | INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY (Attachments: # 1 Text of Proposed Order)(Cooper, Charles) (Entered: 12/18/2019) |
| 12/23/2019 | 114 | ORDER granting and adopting dates set forth in (113) Motion to Amend/Correct in case 1:13–cv–01053–RCL; granting (109) Motion to Amend/Correct in case 1:13–cv–01439–RCL; granting (114) Motion to Amend/Correct in case 1:13–mc–01288–RCL. SEE ORDER FOR FULL DETAILS. Signed by Judge Royce C. Lamberth on 12/23/19. (lsj) (Entered: 12/23/2019) |
| 03/17/2020 | 115 | Consent MOTION to Modify *Protective Order* by DEPARTMENT OF THE TREASURY (Attachments: # 1 Proposed Modified Protective Order)(Merritt, R.) (Entered: 03/17/2020) |
| 03/18/2020 | 116 | ORDER granting 115 Motion to Modify Protective Order. Signed by Judge Royce C. Lamberth on 03/18/2020. (lcrcl3) (Entered: 03/18/2020) |
| 05/08/2020 | 117 | Joint MOTION to Adjourn Second Amended Scheduling Order Deadlines by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY (Attachments: # 1 Text of Proposed Order Proposed Order)(Cooper, Charles) Modified on 5/11/2020 (zjf). (Entered: 05/08/2020) |
| 05/09/2020 | 118 | ORDER granting 117 Motion for Scheduling Order. The deadlines in the Second Amended Scheduling Order are hereby adjourned pending further order of this Court. The parties are directed to submit proposed amended deadlines no later than 06/30/2020. Signed by Judge Royce C. Lamberth on 05/09/2020. (lcrcl3) (Entered: 05/09/2020) |
| 06/30/2020 | 119 | Joint MOTION to Amend/Correct 118 Order on Motion for Scheduling Order, *Joint Motion to Amend Scheduling Order* by FEDERAL HOME LOAN MORTGAGE CORPORATION, FEDERAL HOUSING FINANCE AGENCY, FEDERAL NATIONAL MORTGAGE ASSOCIATION (Attachments: # 1 Text of Proposed Order)(Cayne, Howard) (Entered: 06/30/2020) |
| 07/01/2020 | 120 | ORDER granting 119 Motion to Amend Scheduling Order. Signed by Judge Royce C. Lamberth on 07/01/2020. (lcrcl3) (Entered: 07/01/2020) |
| 07/01/2020 | | Set/Reset Deadlines/Hearings: Motion for Amended Pleadings due by 2/19/2021. Fact Discovery due by 1/22/2021. Motions for Class due by 4/16/2021. Responses to Class Motion due by 6/18/2021 and Replies due by 7/16/2021. Plaintiff Rule 26(a)(2) due by 4/16/2021. Defendant Rule 26(a)(2) due by 5/21/2021. Summary Judgment motions due by 8/20/2021. Response to Motion for Summary Judgment due by 10/22/2021. Reply to Motion for Summary Judgment due by 11/5/2021. Bench to commence 5/16/2022 at 10:00 AM in Courtroom 15 before Judge Royce C. Lamberth. (lsj) (Entered: 07/01/2020) |
| 01/13/2021 | 121 | |

| | | |
|---|---|---|
| | | Joint MOTION to Amend/Correct 120 Order on Motion to Amend/Correct *Scheduling Order* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY (Attachments: # 1 Text of Proposed Order Fourth Amended Scheduling Order)(Cooper, Charles) (Entered: 01/13/2021) |
| 01/19/2021 | 122 | ORDER granting (121) Motion to Amend/Correct in case 1:13–cv–01053–RCL; granting (116) Motion to Amend/Correct in case 1:13–cv–01439–RCL; granting (121) Motion to Modify in case 1:13–mc–01288–RCL. Set/Reset Deadlines. Signed by Judge Royce C. Lamberth on 01/19/2021. (lcrcl2) (Entered: 01/19/2021) |
| 03/26/2021 | 123 | Joint MOTION to Continue *Joint Motion to Adjourn Fourth Amended Scheduling Order Deadlines* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Text of Proposed Order)(Cooper, Charles) (Entered: 03/26/2021) |
| 03/29/2021 | 124 | ORDER granting in part and denying in part 123 Motion to Continue. Signed by Judge Royce C. Lamberth on 3/29/2021. (lcrcl2) (Entered: 03/29/2021) |
| 05/18/2021 | 125 | WITHDRAWN PURSUANT TO DE 141 WITHDRAWL OF MOTION.....SEALED MOTION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY (Attachments: # 1 Certificate of Service, # 2 Memorandum in Support, # 3 Appendix, # 4 Text of Proposed Order)(Cooper, Charles) (Additional attachment(s) added on 5/24/2021: # 5 Exhibit H, # 6 Certificate of Service) (zjf). Modified on 8/3/2021 (zjf). (Entered: 05/18/2021) |
| 05/25/2021 | 126 | Joint MOTION for Hearing *Status Conference* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Cooper, Charles) Modified event on 5/28/2021 (znmw). (Entered: 05/25/2021) |
| 05/26/2021 | 127 | Consent MOTION for Extension of Time to File Response/Reply as to 125 SEALED MOTION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME |

| | | |
|---|---|---|
| | | FUNDS, INC, MIDWEST EMPL by DEPARTMENT OF THE TREASURY. (Attachments: # 1 Text of Proposed Order)(Merritt, R.) (Entered: 05/26/2021) |
| 06/07/2021 | | MINUTE ORDER granting 126 Motion for Hearing; Set/Reset Hearings:Status Conference set for 6/15/2021 at 02:00 PM. The hearing shall proceed by videoconference for the parties. Public access will be available by teleconference line (Toll Free Number: 888–636–3807 / Access Code: 6967853). Signed by Judge Royce C. Lamberth on 06/07/2021. (lcrcl2) (Entered: 06/07/2021) |
| 06/07/2021 | 128 | ORDER granting 127 Motion for Extension of Time to File Response/Reply to 125 SEALED MOTION; Set/Reset Deadlines: Response due by 6/22/2021. Signed by Judge Royce C. Lamberth on 06/07/2021. (lcrcl2) (Entered: 06/07/2021) |
| 06/11/2021 | 129 | NOTICE of Appearance by Meaghan VerGow on behalf of FEDERAL NATIONAL MORTGAGE ASSOCIATION (VerGow, Meaghan) (Entered: 06/11/2021) |
| 06/14/2021 | 130 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Brian W. Barnes, Filing fee $ 100, receipt number ADCDC–8527174. Fee Status: Fee Paid. by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Declaration of Brian W. Barnes, # 2 Text of Proposed Order)(Cooper, Charles) (Entered: 06/14/2021) |
| 06/15/2021 | 131 | NOTICE of Appearance by Graciela Maria Rodriguez on behalf of FEDERAL HOME LOAN MORTGAGE CORPORATION (Rodriguez, Graciela) (Entered: 06/15/2021) |
| 06/15/2021 | 132 | NOTICE of Appearance by Michael Joseph Ciatti on behalf of FEDERAL HOME LOAN MORTGAGE CORPORATION (Ciatti, Michael) (Entered: 06/15/2021) |
| 06/15/2021 | 133 | NOTICE of Appearance by Taylor T. Lankford on behalf of FEDERAL HOME LOAN MORTGAGE CORPORATION (Lankford, Taylor) (Entered: 06/15/2021) |
| 06/15/2021 | | Minute Entry for video Status Conference held before Judge Royce C. Lamberth on 6/15/2021. Forthcoming Order. (Court Reporter: Lisa Griffith) (lsj) (Entered: 06/15/2021) |
| 06/15/2021 | 134 | ORDER granting 130 Motion for Leave to Appear Pro Hac Vice **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for instr uctions**. Signed by Judge Royce C. Lamberth on 06/15/2021. (lcrcl2) (Entered: 06/15/2021) |
| 06/16/2021 | 135 | NOTICE of Appearance by Brian W. Barnes on behalf of ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY (Barnes, Brian) (Entered: 06/16/2021) |
| 06/16/2021 | 136 | |

| | | AMENDED SCHEDULING ORDER: SEE ORDER FOR DETAILS. Signed by Judge Royce C. Lamberth on 06/16/2021. (lcrcl2) (Entered: 06/16/2021) |
|---|---|---|
| 06/18/2021 | 137 | Consent MOTION for Extension of Time to File Response/Reply as to 125 SEALED MOTION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPL *(2nd)* by DEPARTMENT OF THE TREASURY. (Attachments: # 1 Text of Proposed Order)(Merritt, R.) (Entered: 06/18/2021) |
| 06/29/2021 | 138 | ORDER granting 137 Motion for Extension of Time to File Response to 125 SEALED MOTION; Set/Reset Deadlines: Response due by 7/13/2021. Signed by Judge Royce C. Lamberth on 06/29/2021. (lcrcl2) (Entered: 06/29/2021) |
| 07/09/2021 | 139 | Consent MOTION for Extension of Time to File Response/Reply as to 125 SEALED MOTION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPL by DEPARTMENT OF THE TREASURY. (Attachments: # 1 Text of Proposed Order)(Merritt, R.) (Entered: 07/09/2021) |
| 07/13/2021 | 140 | ORDER granting 139 Consent MOTION for Extension of Time to File Response/Reply to 125 SEALED MOTION; Set/Reset Deadlines: Response due by 8/3/2021. Signed by Judge Royce C. Lamberth on 7/13/2021. (lcrcl2) (Entered: 07/13/2021) |
| 08/02/2021 | 141 | WITHDRAWAL of Motion by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY re 125 SEALED MOTION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPL filed by BERKLEY REGIONAL INSURANCE COMPANY, FAIRHOLME FUNDS, INC, ACADIA INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND . (Cooper, Charles) (Entered: 08/02/2021) |
| 12/02/2021 | 142 | Joint MOTION to Amend/Correct 136 Scheduling Order *Joint Motion to Revise Expert Discovery and Summary Judgment Deadlines* by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Text of Proposed Order)(Varma, Asim) (Entered: 12/02/2021) |
| 12/07/2021 | 143 | ORDER granting (142) Motion to Amend/Correct in case 1:13–cv–01053–RCL; granting (136) Motion to Amend/Correct in case 1:13–mc–01288–RCL. See |

| | | |
|---|---|---|
| | | Scheduling Order for details. Signed by Judge Royce C. Lamberth on 12/7/2021. (lcrcl2) (Entered: 12/07/2021) |
| 03/21/2022 | 144 | NOTICE of Appearance by Ian S. Hoffman on behalf of EDWARD DEMARCO, FEDERAL HOUSING FINANCE AGENCY (Hoffman, Ian) (Entered: 03/21/2022) |
| 03/21/2022 | 145 | SEALED MOTION filed by EDWARD DEMARCO, FEDERAL HOUSING FINANCE AGENCY (Attachments: # 1 Statement of Undisputed Material Facts, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Exhibit T, # 22 Exhibit U, # 23 Exhibit V, # 24 Exhibit W, # 25 Exhibit X, # 26 Exhibit Y, # 27 Exhibit Z, # 28 Exhibit AA, # 29 Exhibit BB, # 30 Exhibit CC, # 31 Exhibit DD, # 32 Exhibit EE, # 33 Exhibit FF, # 34 Exhibit GG, # 35 Exhibit HH, # 36 Exhibit II, # 37 Exhibit JJ, # 38 Exhibit KK, # 39 Exhibit LL, # 40 Exhibit MM, # 41 Exhibit NN, # 42 Exhibit OO, # 43 Exhibit PP, # 44 Exhibit QQ, # 45 Text of Proposed Order)(Cayne, Howard) (Entered: 03/21/2022) |
| 03/21/2022 | 146 | MOTION for Partial Summary Judgment by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Cooper, Charles) (Entered: 03/21/2022) |
| 03/21/2022 | 147 | SEALED DOCUMENT filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY re 146 MOTION for Partial Summary Judgment (This document is SEALED and only available to authorized persons.), SEALED MOTION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY (Attachments: # 1 Statement of Facts Statement of Undisputed Material Facts, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit 20, # 22 Exhibit 21, # 23 Exhibit 22, # 24 Exhibit 23, # 25 Exhibit 24, # 26 Exhibit 25, # 27 Exhibit 26, # 28 Exhibit 27, # 29 Exhibit 28, # 30 Exhibit 29, # 31 Exhibit 30, # 32 Text of Proposed Order)(Cooper, Charles) (Entered: 03/21/2022) |
| 04/14/2022 | 148 | MOTION for Summary Judgment by EDWARD DEMARCO, FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Statement of Undisputed Material Facts, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit |

| | | |
|---|---|---|
| | | E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Exhibit T, # 22 Exhibit U, # 23 Exhibit V, # 24 Exhibit W, # 25 Exhibit X, # 26 Exhibit Y, # 27 Exhibit Z, # 28 Exhibit AA, # 29 Exhibit BB, # 30 Exhibit CC, # 31 Exhibit DD, # 32 Exhibit EE, # 33 Exhibit FF, # 34 Exhibit GG, # 35 Exhibit HH, # 36 Exhibit II, # 37 Exhibit JJ, # 38 Exhibit KK, # 39 Exhibit LL, # 40 Exhibit MM, # 41 Exhibit NN, # 42 Exhibit OO, # 43 Exhibit PP, # 44 Exhibit QQ, # 45 Text of Proposed Order)(Cayne, Howard) (Entered: 04/14/2022) |
| 04/15/2022 | 149 | REDACTED DOCUMENT– Redacted Memorandum and Exhibits in support of Motion for Partial Summary Judgment to 146 MOTION for Partial Summary Judgment , 147 SEALED MOTION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPL by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Statement of Facts, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit 20, # 22 Exhibit 21, # 23 Exhibit 22, # 24 Exhibit 23, # 25 Exhibit 24, # 26 Exhibit 25, # 27 Exhibit 26, # 28 Exhibit 27, # 29 Exhibit 28, # 30 Exhibit 29, # 31 Exhibit 30)(Cooper, Charles) (Entered: 04/15/2022) |
| 04/15/2022 | 150 | SEALED OPPOSITION filed by EDWARD DEMARCO, DEPARTMENT OF THE TREASURY, FEDERAL HOME LOAN MORTGAGE CORPORATION, FEDERAL HOUSING FINANCE AGENCY, FEDERAL NATIONAL MORTGAGE ASSOCIATION, MELVIN L. WATT. re 146 MOTION for Partial Summary Judgment (Attachments: # 1 Defendants' Counter–Statement of Facts, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Text of Proposed Order)(Cayne, Howard) (Entered: 04/15/2022) |
| 04/15/2022 | 151 | SEALED OPPOSITION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. re 145 SEALED MOTION filed by EDWARD DEMARCO, FEDERAL HOUSING FINANCE AGENCY (Attachments: # 1 Statement of Facts Plaintiffs' Response to Defendants' Statement of Material Undisputed Facts, # 2 Statement of Facts Plaintiffs' Statement of Additional Material Undisputed Facts, # 3 Exhibit 100, # 4 Exhibit 101, # 5 Exhibit 102, # 6 Exhibit 103, |

| | | |
|---|---|---|
| | | # 7 Exhibit 104, # 8 Exhibit 105, # 9 Exhibit 106, # 10 Exhibit 107, # 11 Exhibit 108, # 12 Exhibit 109, # 13 Exhibit 110, # 14 Exhibit 111, # 15 Exhibit 112, # 16 Exhibit 113, # 17 Exhibit 114, # 18 Exhibit 115, # 19 Exhibit 116, # 20 Exhibit 117, # 21 Exhibit 118, # 22 Exhibit 119, # 23 Exhibit 120, # 24 Exhibit 121, # 25 Exhibit 122, # 26 Exhibit 123, # 27 Exhibit 124, # 28 Exhibit 125, # 29 Exhibit 126, # 30 Exhibit 127, # 31 Exhibit 128, # 32 Exhibit 129, # 33 Exhibit 130, # 34 Exhibit 131, # 35 Exhibit 132, # 36 Exhibit 133, # 37 Exhibit 134, # 38 Exhibit 135, # 39 Exhibit 136, # 40 Exhibit 137, # 41 Exhibit 138, # 42 Exhibit 139, # 43 Exhibit 140, # 44 Exhibit 141, # 45 Exhibit 142, # 46 Exhibit 143, # 47 Exhibit 144, # 48 Exhibit 145, # 49 Exhibit 146, # 50 Exhibit 147, # 51 Exhibit 148, # 52 Exhibit 149, # 53 Exhibit 150, # 54 Exhibit 151, # 55 Exhibit 152, # 56 Exhibit 153, # 57 Exhibit 154, # 58 Exhibit 155, # 59 Exhibit 156, # 60 Exhibit 157, # 61 Exhibit 158, # 62 Exhibit 159, # 63 Exhibit 160, # 64 Exhibit 161, # 65 Exhibit 162, # 66 Exhibit 163, # 67 Exhibit 164, # 68 Exhibit 165, # 69 Exhibit 166, # 70 Exhibit 167, # 71 Exhibit 168, # 72 Exhibit 169, # 73 Exhibit 170, # 74 Exhibit 171, # 75 Exhibit 172, # 76 Exhibit 173, # 77 Exhibit 174, # 78 Exhibit 175, # 79 Exhibit 176, # 80 Exhibit 177, # 81 Exhibit 178)(Cooper, Charles) (Entered: 04/15/2022) |
| 04/28/2022 | 152 | Joint MOTION to Amend/Correct 143 Order on Motion to Amend/Correct,, Set/Reset Deadlines *(JOINT MOTION TO AMEND SCHEDULING ORDER)* by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Text of Proposed Order)(Varma, Asim) (Entered: 04/28/2022) |
| 04/28/2022 | 153 | NOTICE *REGARDING LENGTH OF JURY TRIAL* by FEDERAL HOUSING FINANCE AGENCY (Attachments: # 1 Exhibit A)(Cayne, Howard) (Entered: 04/28/2022) |
| 05/03/2022 | 154 | TRANSCRIPT OF PROCEEDINGS before Judge Royce C. Lamberth held on 6–15–2021; Page Numbers: 1–17. Date of Issuance:5–3–2022. Court Reporter/Transcriber Lisa Griffith, Telephone number (202) 354–3247, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/24/2022. Redacted Transcript Deadline set for 6/3/2022. Release of Transcript Restriction set for 8/1/2022.(Griffith, Lisa) (Entered: 05/03/2022) |
| 05/05/2022 | 155 | MOTION to Sever, MOTION to Stay FAIRHOLME PLAINTIFFS' CLAIMS AND ORDER JURY TRIAL FOR THE BERKLEY PLAINTIFFS IF PARALLEL CLASS ACTION IS TRIED BEFORE A JURY by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE |

| | | |
|---|---|---|
| | | COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Cooper, Charles). Added MOTION to Stay on 5/5/2022 (zjf). (Entered: 05/05/2022) |
| 05/06/2022 | 156 | SEALED REPLY TO OPPOSITION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY re 146 MOTION for Partial Summary Judgment (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 1)(Cooper, Charles) (Entered: 05/06/2022) |
| 05/06/2022 | 157 | SEALED REPLY TO OPPOSITION filed by FEDERAL HOUSING FINANCE AGENCY re 148 MOTION for Summary Judgment (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Defendants Response to Plaintiffs Additional Statement of Facts, # 2 Exhibit RR, # 3 Exhibit SS, # 4 Exhibit TT, # 5 Exhibit UU, # 6 Exhibit VV, # 7 Exhibit WW, # 8 Exhibit XX, # 9 Exhibit YY)(Cayne, Howard) (Entered: 05/06/2022) |
| 05/19/2022 | 158 | RESPONSE re 155 MOTION to Sever MOTION to Stay *(DEFENDANTS' RESPONSE AND PARTIAL OPPOSITION TO PLAINTIFFS' MOTION TO SEVER AND STAY THE FAIRHOLME PLAINTIFFS' CLAIMS AND TO ORDER A JURY TRIAL FOR THE BERKLEY PLAINTIFFS)* filed by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Text of Proposed Order)(Cayne, Howard) (Entered: 05/19/2022) |
| 05/19/2022 | 159 | SEALED MOTION filed by FEDERAL HOUSING FINANCE AGENCY (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Text of Proposed Order)(Cayne, Howard) (Entered: 05/19/2022) |
| 05/19/2022 | 160 | SEALED MOTION filed by FEDERAL HOUSING FINANCE AGENCY (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Text of Proposed Order)(Cayne, Howard) (Entered: 05/19/2022) |
| 05/19/2022 | 161 | SEALED MOTION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY (Attachments: # 1 Text of Proposed Order Proposed Order, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H)(Cooper, Charles) (Entered: 05/19/2022) |
| 05/19/2022 | 162 | SEALED MOTION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, |

| | | |
|---|---|---|
| | | FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY (Attachments: # 1 Text of Proposed Order Proposed Order, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F)(Cooper, Charles) (Entered: 05/19/2022) |
| 05/26/2022 | 163 | REPLY to opposition re 155 MOTION to Sever, MOTION to Stay filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Cooper, Charles) Modified on 5/27/2022 to correct docket link(zjf). (Entered: 05/26/2022) |
| 05/31/2022 | 164 | ORDER granting 155 Motion to Sever and granting 155 Motion to Stay. Signed by Judge Royce C. Lamberth on 5/31/2022. (lcrcl3) (Entered: 05/31/2022) |
| 05/31/2022 | 165 | ORDER: The trial set for 7/11/2022 is hereby VACATED. The jury trial is reset for 9/19/2022 at 10:00 AM in Courtroom 15– In Person before Judge Royce C. Lamberth. See Order for more details. Signed by Judge Royce C. Lamberth on 5/31/2022. (lcrcl3) (lckm) (Entered: 05/31/2022) |
| 06/09/2022 | 166 | Joint MOTION to Reset Trial Date & Amend/Correct Scheduling Order by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Text of Proposed Order)(Varma, Asim) (Entered: 06/09/2022) |
| 06/13/2022 | 167 | ORDER granting 166 Motion to Amend/Correct. Pretrial Statements due by 8/19/2022. Jury Trial set for 10/17/2022 at 10:00 AM in Courtroom 15– In Person before Judge Royce C. Lamberth. See Order for more details. Signed by Judge Royce C. Lamberth on 06/13/2022. (lcrcl3) (Entered: 06/13/2022) |
| 06/17/2022 | 168 | SEALED OPPOSITION filed by FEDERAL HOUSING FINANCE AGENCY. re 161 SEALED MOTION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPL (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Text of Proposed Order Proposed Order)(Varma, Asim) (Entered: 06/17/2022) |
| 06/17/2022 | 169 | SEALED OPPOSITION filed by FEDERAL HOUSING FINANCE AGENCY. re 162 SEALED MOTION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPL (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Text of Proposed Order Proposed Order)(Varma, Asim) (Entered: 06/17/2022) |
| 06/17/2022 | 170 | SEALED OPPOSITION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY |

| | | INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. re 160 SEALED MOTION filed by FEDERAL HOUSING FINANCE AGENCY (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I)(Cooper, Charles) (Entered: 06/17/2022) |
| --- | --- | --- |
| 06/17/2022 | 171 | SEALED OPPOSITION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. re 159 SEALED MOTION filed by FEDERAL HOUSING FINANCE AGENCY (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I)(Cooper, Charles) (Entered: 06/17/2022) |
| 07/01/2022 | 172 | SEALED REPLY TO OPPOSITION filed by FEDERAL HOUSING FINANCE AGENCY re 159 SEALED MOTION filed by FEDERAL HOUSING FINANCE AGENCY (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit E)(Varma, Asim) (Entered: 07/01/2022) |
| 07/01/2022 | 173 | SEALED REPLY TO OPPOSITION filed by FEDERAL HOUSING FINANCE AGENCY re 160 SEALED MOTION filed by FEDERAL HOUSING FINANCE AGENCY (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 1)(Varma, Asim) (Entered: 07/01/2022) |
| 07/01/2022 | 174 | SEALED REPLY TO OPPOSITION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY re 161 SEALED MOTION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPL (This document is SEALED and only available to authorized persons.)(Cooper, Charles) (Entered: 07/01/2022) |
| 07/01/2022 | 175 | SEALED REPLY TO OPPOSITION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY re 162 SEALED MOTION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPL (This document is SEALED and only available to authorized |

| | | persons.)(Cooper, Charles) (Entered: 07/01/2022) |
|---|---|---|
| 08/08/2022 | 176 | SEALED MOTION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY (Attachments: # 1 Exhibit A, # 2 Exhibit A–1, # 3 Exhibit A–2, # 4 Exhibit A–3, # 5 Exhibit A–4, # 6 Exhibit A–5, # 7 Exhibit A–6, # 8 Exhibit A–7, # 9 Exhibit A–8, # 10 Exhibit A–9, # 11 Exhibit A–10, # 12 Exhibit A–11, # 13 Exhibit A–12, # 14 Exhibit A–13, # 15 Exhibit A–14, # 16 Exhibit A–15, # 17 Exhibit A–16, # 18 Exhibit A–17, # 19 Exhibit A–18, # 20 Exhibit A–19, # 21 Exhibit A–20, # 22 Exhibit A–21, # 23 Exhibit B, # 24 Exhibit C, # 25 Exhibit D, # 26 Exhibit E, # 27 Exhibit F, # 28 Exhibit G, # 29 Exhibit H, # 30 Exhibit I, # 31 Exhibit J, # 32 Text of Proposed Order, # 33 Certificate of Service)(Cooper, Charles) (Entered: 08/08/2022) |
| 08/12/2022 | 177 | Unopposed MOTION for Extension of Time to *Extend the Briefing Schedule on Plaintiffs' Motion in Limine* by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Text of Proposed Order)(Varma, Asim) (Entered: 08/12/2022) |
| 08/19/2022 | 178 | PRETRIAL STATEMENT by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Exhibit A–1 – Plaintiffs' Trial Exhibit List, # 2 Exhibit A–2 – Plaintiffs' Summary Witness List Backup Documents, # 3 Exhibit B – Joint Proposed Trial Juror Questionnaire, # 4 Exhibit C – Plaintiffs' Proposed Jury Instructions, # 5 Exhibit D – Plaintiffs' Proposed Verdict Form)(Cooper, Charles) (Entered: 08/19/2022) |
| 08/19/2022 | 179 | PRETRIAL STATEMENT by FEDERAL HOME LOAN MORTGAGE CORPORATION, FEDERAL HOUSING FINANCE AGENCY, FEDERAL NATIONAL MORTGAGE ASSOCIATION. (Attachments: # 1 Exhibit A –– Defendants Trial Exhibit List, # 2 Exhibit B –– Defendants Deposition Designations, # 3 Exhibit C –– Defendants Proposed Fact Stipulations, # 4 Exhibit D –– Proposed Juror Questionnaire, # 5 Exhibit E –– Defendants Proposed Preliminary Jury Instructions, # 6 Exhibit F –– Defendants Proposed Final Jury Instructions, # 7 Exhibit G –– Defendants Proposed Verdict Form)(Varma, Asim) (Entered: 08/19/2022) |
| 08/22/2022 | 180 | NOTICE *OF FILING AMENDED TRIAL EXHIBIT LIST* by FEDERAL HOME LOAN MORTGAGE CORPORATION, FEDERAL HOUSING FINANCE AGENCY, FEDERAL NATIONAL MORTGAGE ASSOCIATION re 179 Pretrial Statement,, (Attachments: # 1 Exhibit A – Defendants' Trial Exhibit List (amended as of August 21, 2022))(Varma, Asim) (Entered: 08/22/2022) |
| 08/24/2022 | 181 | SEALED OPPOSITION filed by FEDERAL HOUSING FINANCE AGENCY. re 176 Sealed Motion,,,, (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Text of Proposed Order)(Varma, Asim) (Entered: 08/24/2022) |
| 08/26/2022 | 182 | |

| | | |
|---|---|---|
| | | MOTION in Limine *Plaintiffs' Omnibus Motion in Limine* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Text of Proposed Order)(Cooper, Charles) (Entered: 08/26/2022) |
| 08/26/2022 | 183 | SEALED MOTION filed by FEDERAL HOUSING FINANCE AGENCY (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Text of Proposed Order)(Varma, Asim) (Entered: 08/26/2022) |
| 08/26/2022 | 184 | SEALED MOTION filed by FEDERAL HOUSING FINANCE AGENCY (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit PX–0092, # 5 Exhibit PX–0094, # 6 Exhibit PX–0114, # 7 Exhibit PX–0139, # 8 Exhibit PX–0146, # 9 Exhibit PX–0170, # 10 Exhibit PX–0205, # 11 Exhibit PX–0210, # 12 Exhibit PX–0221, # 13 Exhibit PX–0226, # 14 Exhibit PX–0227, # 15 Exhibit PX–0233, # 16 Exhibit PX–0249, # 17 Exhibit PX–0255, # 18 Exhibit PX–0258, # 19 Exhibit PX–0270, # 20 Exhibit PX–0271, # 21 Exhibit PX–0273, # 22 Exhibit PX–0274, # 23 Text of Proposed Order)(Varma, Asim) (Entered: 08/26/2022) |
| 08/30/2022 | 185 | Joint MOTION to Issue Jury Questionnaire in Advance of Voir Dire by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Exhibit A)(Cooper, Charles) (Entered: 08/30/2022) |
| 09/02/2022 | 186 | SEALED REPLY TO OPPOSITION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY re 176 Sealed Motion,,,, (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Certificate of Service)(Cooper, Charles) (Entered: 09/02/2022) |
| 09/02/2022 | 187 | MOTION in Limine *TO EXCLUDE EVIDENCE AND TESTIMONY BY PLAINTIFFS' PROPOSED SUMMARY WITNESS SUSAN HARTMAN* by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Text of Proposed Order)(Varma, Asim) (Entered: 09/02/2022) |
| 09/02/2022 | 188 | SEALED DOCUMENT filed by FEDERAL HOUSING FINANCE AGENCY re 187 MOTION in Limine *TO EXCLUDE EVIDENCE AND TESTIMONY BY PLAINTIFFS' PROPOSED SUMMARY WITNESS SUSAN HARTMAN* (This document is SEALED and only available to authorized persons.)(Varma, Asim) (Entered: 09/02/2022) |

| 09/13/2022 | 189 | SEALED OPPOSITION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. re 184 Sealed Motion,, (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Cooper, Charles) (Entered: 09/13/2022) |
|---|---|---|
| 09/13/2022 | 190 | RESPONSE re 182 MOTION in Limine *Plaintiffs' Omnibus Motion in Limine* filed by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit DX0364, # 8 Exhibit DX0380, # 9 Exhibit DX0381, # 10 Exhibit DX0549, # 11 Exhibit PX0351, # 12 Text of Proposed Order)(Varma, Asim) (Entered: 09/13/2022) |
| 09/13/2022 | 191 | SEALED DOCUMENT filed by FEDERAL HOUSING FINANCE AGENCY re 190 Response to motion, (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit B, # 2 Exhibit C, # 3 Exhibit D, # 4 Exhibit E, # 5 Exhibit F, # 6 Exhibit DX0380, # 7 Exhibit DX0381)(Varma, Asim) (Entered: 09/14/2022) |
| 09/14/2022 | 192 | SEALED OPPOSITION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. re 183 Sealed Motion (Attachments: # 1 Exhibit A)(Cooper, Charles) (Entered: 09/14/2022) |
| 09/16/2022 | 193 | SEALED OPPOSITION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. re 187 Motion in Limine, (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Certificate of Service)(Cooper, Charles) (Entered: 09/16/2022) |
| 09/23/2022 | 194 | SEALED MEMORANDUM OPINION re Defendants' Motion 145 for Summary Judgment and Plaintiffs' Motion for 146 for Partial Summary Judgment in 13–CV–1053; Defendants' Motion 143 for Summary Judgment and Plaintiffs' Motion 144 for Partial Summary Judgment in 13–MC–1288. (This document is SEALED and only available to authorized persons.) Signed by Judge Royce C. Lamberth on 12/23/2022.(zlsj) (Entered: 09/23/2022) |
| 09/23/2022 | 195 | ORDER granting in part and denying in part Sealed Motion 145 ; denying Motion 146 for Partial Summary Judgment; granting in part and denying in part Motion 148 for Summary Judgment: For the reasons set forth in the accompanying Memorandum Opinion 194 , it is hereby ORDERED that defendants' motion for summary judgment is GRANTED in part and DENIED in part, and plaintiffs' motion for partial summary judgment is DENIED. The parties are ORDERED to meet and confer and jointly |

| | | |
|---|---|---|
| | | identify which, if any, parts of the Memorandum Opinion should remain sealed within five days. See Order for details. Signed by Judge Royce C. Lamberth on 09/23/2022. (lcrcl3) (Entered: 09/23/2022) |
| 09/23/2022 | 196 | SEALED REPLY TO OPPOSITION filed by FEDERAL HOUSING FINANCE AGENCY re 184 Sealed Motion,, (This document is SEALED and only available to authorized persons.)(Varma, Asim) (Entered: 09/23/2022) |
| 09/23/2022 | 197 | REPLY to opposition to motion re 187 MOTION in Limine *TO EXCLUDE EVIDENCE AND TESTIMONY BY PLAINTIFFS' PROPOSED SUMMARY WITNESS SUSAN HARTMAN* filed by FEDERAL HOUSING FINANCE AGENCY. (Varma, Asim) (Entered: 09/23/2022) |
| 09/23/2022 | 198 | REPLY to opposition to motion re 183 SEALED MOTION filed by FEDERAL HOUSING FINANCE AGENCY filed by FEDERAL HOUSING FINANCE AGENCY. (Varma, Asim) (Entered: 09/23/2022) |
| 09/23/2022 | 199 | REPLY to opposition to motion re 182 MOTION in Limine *Plaintiffs' Omnibus Motion in Limine* filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Cooper, Charles) (Entered: 09/23/2022) |
| 09/23/2022 | 200 | SEALED DOCUMENT filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY re 199 Reply to opposition to Motion, (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit B)(Cooper, Charles) (Entered: 09/23/2022) |
| 09/28/2022 | 201 | SEALED MOTION filed by JOSEPH CACCIAPELLE (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Hume, Hamish) (Entered: 09/28/2022) |
| 09/28/2022 | 202 | SEALED MOTION filed by JOSEPH CACCIAPELLE(Hume, Hamish) (Entered: 09/28/2022) |
| 09/28/2022 | 203 | SEALED MOTION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Cooper, Charles) (Entered: 09/28/2022) |
| 09/28/2022 | 204 | SEALED MOTION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY(Cooper, Charles) (Entered: |

| | | |
|---|---|---|
| | | 09/28/2022) |
| 09/30/2022 | | MINUTE ORDER: Defendants are hereby ORDERED to file their responses to plaintiffs' motions 203 , 204 by 10/06/2022. Signed by Judge Royce C. Lamberth on 09/30/2022. (lcrcl3) (Entered: 09/30/2022) |
| 09/30/2022 | 205 | NOTICE by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY re 195 Order on Sealed Motion,,, Order on Motion for Partial Summary Judgment,,, Order on Motion for Summary Judgment,, (Cooper, Charles) (Entered: 09/30/2022) |
| 10/03/2022 | 206 | UNSEALED MEMORANDUM OPINION. Unsealed by Judge Royce C. Lamberth on 10/03/2022 (lcrcl3) (Entered: 10/03/2022) |
| 10/05/2022 | 207 | ORDER denying Motion 185 to Issue a Jury Questionnaire in Advance of Voir Dire and scheduling pretrial conference: It is hereby ORDERED that the joint motion to issue a jury questionnaire is DENIED. It is further ORDERED that the pretrial conference is set for 10:00 a.m. on Wednesday, October 12, 2022 in Courtroom 15 (in person) before Judge Royce C. Lamberth. See Order for details. Signed by Judge Royce C. Lamberth on 10/05/2022. (lcrcl3) (Entered: 10/05/2022) |
| 10/06/2022 | | MINUTE ORDER: Due to counsel's unavailability, it is hereby ORDERED that the pretrial conference is CONTINUED to 10/12/2022 at 1:00 p.m. in Courtroom 15 (in person) before Judge Royce C. Lamberth. Signed by Judge Royce C. Lamberth on 10/06/2022. (lcrcl3) (Entered: 10/06/2022) |
| 10/06/2022 | | Set/Reset Hearings: Pretrial Conference set for 10/12/2022 at 1:00 PM in Courtroom 15 (in person) before Judge Royce C. Lamberth. (lsj) (Entered: 10/06/2022) |
| 10/06/2022 | 208 | SEALED OPPOSITION filed by FEDERAL HOUSING FINANCE AGENCY. re 202 Sealed Motion (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Varma, Asim) (Entered: 10/06/2022) |
| 10/06/2022 | 209 | MOTION in Limine *TO COMPEL ONE APPEARANCE OF DEFENDANTS' PRINCIPAL FACT WITNESS EDWARD DEMARCO IN DEFENDANTS' CASE–IN–CHIEF* by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Varma, Asim) (Entered: 10/06/2022) |
| 10/06/2022 | 210 | SEALED OPPOSITION filed by FEDERAL HOUSING FINANCE AGENCY. re 201 Sealed Motion (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Text of Proposed Order)(Varma, Asim) (Entered: 10/06/2022) |
| 10/07/2022 | 211 | NOTICE of Appearance by Robert Stanton Jones on behalf of FEDERAL HOUSING FINANCE AGENCY (Jones, Robert) (Entered: 10/07/2022) |
| 10/07/2022 | 212 | NOTICE of Appearance by Jonathan Louis Stern on behalf of FEDERAL HOUSING FINANCE AGENCY (Stern, Jonathan) (Entered: 10/07/2022) |
| 10/07/2022 | 213 | Unopposed MOTION for Leave to File *SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE THE OPINIONS OF PROFESSOR S.P. KOTHARI [dkt. 162]* by FEDERAL HOUSING FINANCE AGENCY. (Varma, Asim) (Entered: 10/07/2022) |

| 10/10/2022 | 214 | RESPONSE re 213 Unopposed MOTION for Leave to File *SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE THE OPINIONS OF PROFESSOR S.P. KOTHARI [dkt. 162]* filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Cooper, Charles) (Entered: 10/10/2022) |
|---|---|---|
| 10/10/2022 | 215 | Memorandum in opposition to re 209 Motion in Limine, filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Cooper, Charles) (Entered: 10/10/2022) |
| 10/10/2022 | 216 | REPLY to opposition to motion re 203 SEALED MOTION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUT filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Cooper, Charles) (Entered: 10/10/2022) |
| 10/11/2022 | 217 | SEALED MEMORANDUM OPINION re Motions 203 195 204 196 . (This document is SEALED and only available to authorized persons.) Signed by Judge Royce C. Lamberth on 10/11/22.(zlsj) (Entered: 10/11/2022) |
| 10/11/2022 | 218 | ORDER denying 203 Sealed Motion (duplicate filed at 201 ); denying 204 Sealed Motion (duplicate filed at 202 ): For the reasons stated in the accompanying 217 Memorandum Opinion, it is hereby ORDERED that plaintiffs' motion for leave to amend their pretrial statement, serve a supplemental expert report, and adjust the trial schedule is DENIED; and that plaintiffs' motion for clarification and/or partial reconsideration is DENIED. See Order for details. Signed by Judge Royce C. Lamberth on 10/11/2022. (lcrcl3) (Entered: 10/11/2022) |
| 10/11/2022 | 219 | REPLY to opposition to motion re 209 MOTION in Limine *TO COMPEL ONE APPEARANCE OF DEFENDANTS' PRINCIPAL FACT WITNESS EDWARD DEMARCO IN DEFENDANTS' CASE–IN–CHIEF* filed by FEDERAL HOUSING FINANCE AGENCY. (Varma, Asim) (Entered: 10/11/2022) |
| 10/12/2022 | 220 | Proposed Voir Dire by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Cooper, Charles) |

| | | |
|---|---|---|
| | | (Entered: 10/12/2022) |
| 10/12/2022 | | Minute Entry for Final Pretrial Conference held before Judge Royce C. Lamberth on 10/12/2022. Oral arguments submitted on pending motions. Motions taken under advisement; forthcoming Order. Jury Trial to commence on October 17, 2022 at 10:00 AM in Courtroom 15. (Court Reporter: Lisa Bankins) (lsj) (Entered: 10/13/2022) |
| 10/13/2022 | 221 | SEALED MEMORANDUM OPINION (This document is SEALED and only available to authorized persons.)Signed by Judge Royce C. Lamberth on 10/13/22.(zlsj) (Entered: 10/13/2022) |
| 10/13/2022 | 222 | ORDER denying 159 Sealed Motion; granting 160 Sealed Motion; granting in part and denying in part 161 Sealed Motion; denying 162 Sealed Motion; denying 176 Sealed Motion; granting in part and denying in part 182 Motion in Limine; granting in part and denying in part 183 Sealed Motion; denying 184 Sealed Motion; granting in part and denying in part 187 Motion in Limine; denying 209 Motion in Limine; granting 213 Motion for Leave to File. See Order for details. Signed by Judge Royce C. Lamberth on 10/13/2022. (lcrcl3) (Entered: 10/13/2022) |
| 10/14/2022 | 223 | Proposed Jury Instructions by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Varma, Asim) (Entered: 10/14/2022) |
| 10/14/2022 | | MINUTE ORDER: It is hereby ORDERED that a status conference is set for 10/14/2022 at 3:30 p.m. by VTC before Judge Royce C. Lamberth. Signed by Judge Royce C. Lamberth on 10/14/2022. (lcrcl3) (Entered: 10/14/2022) |
| 10/14/2022 | | Set/Reset Hearings: Status Conference set for 10/14/2022 at 03:30 PM in Telephonic/VTC before Judge Royce C. Lamberth. (lcrcl3) (Entered: 10/14/2022) |
| 10/14/2022 | | Minute Entry for video Status Conference held before Judge Royce C. Lamberth on 10/14/2022. (Court Reporter: Lorraine Herman) (lsj) (Entered: 10/14/2022) |
| 10/16/2022 | 224 | NOTICE *of Joint Submission of Objections to Deposition Designations* by FEDERAL HOUSING FINANCE AGENCY (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Varma, Asim) (Entered: 10/16/2022) |
| 10/16/2022 | 225 | SEALED DOCUMENT filed by FEDERAL HOUSING FINANCE AGENCY re 224 Notice (Other) (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Errata E)(Varma, Asim) (Entered: 10/16/2022) |
| 10/17/2022 | 226 | Joint MOTION to Dismiss FHFA Director Sandra L. Thompson, in Her Official Capacity, as a Defendant by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Cooper, Charles) (Entered: 10/17/2022) |
| 10/17/2022 | | Minute Entry for Jury Selection held before Judge Royce C. Lamberth on 10/17/2022. Jury Selection commenced and concluded with ten jurors selected, but not sworn. Jury Trial to commence on 10/18/2022 at 9:30 AM in Courtroom 15 (in |

| | | |
|---|---|---|
| | | person) before Judge Royce C. Lamberth. (Court Reporters: Sara Wick (AM) and Lorraine Herman (PM)) (lsj) (Entered: 10/17/2022) |
| 10/18/2022 | | MINUTE ORDER: The Court having impaneled the jury in this action, it is hereby ORDERED that during trial and deliberations, all meals for said jury shall be paid by the Clerk of the Court for the U.S. District Court for the District of Columbia. Approved by Judge Royce C. Lamberth on 10/18/2022. (lsj) (Entered: 10/18/2022) |
| 10/18/2022 | 228 | ORDER granting Motion 226 to Dismiss Defendant Sandra L. Thompson: It is hereby ORDERED that the parties' joint motion is GRANTED, and Sandra L. Thompson is DISMISSED WITHOUT PREJUDICE as a defendant in this matter. See Order for details. Signed by Judge Royce C. Lamberth on 10/18/2022. (lcrcl3) (Entered: 10/18/2022) |
| 10/18/2022 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 10/18/2022. Juror 0291 released from any further consideration in this case. Jury sworn and trial commences with nine jurors. Plaintiffs' Witness: Susan Hartman. Jury Trial to continue on 10/19/2022 at 10:00 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. (Court Reporters: Lisa Moreira (AM) and Sara Wick (PM)) (lsj) Modified on 10/19/2022 (lsj). (Entered: 10/18/2022) |
| 10/19/2022 | 229 | UNSEALED MEMORANDUM AND OPINION re Motions 203 195 204 196 , filed on 10/11/2022. SO ORDERED by Judge Royce C. Lamberth on 10/18/2022. (zlsj) (Entered: 10/19/2022) |
| 10/19/2022 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 10/19/2022. Plaintiffs' Witnesses: Susan Hartman (resumed from 10/18/2022), Michelle Miller, Timothy Cassell, Joseph Cacciapalle (via video deposition), Edward Linekin and James Lockhart (via video deposition). Jury Trial to continue on 10/20/2022 at 10:00 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. (Court Reporters: Lorraine Herman (AM) and Lisa Moreira (PM)) (lsj) (Entered: 10/19/2022) |
| 10/20/2022 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 10/20/2022. Plaintiffs Witnesses: Mario Ugoletti (via video deposition) and Edward DeMarco (evidence also entered as a defense witness). Jury Trial to continue on 10/21/2022 at 10:00 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth.). (Court Reporters: Sara Wick (AM) and Lorraine Herman (PM)) (lsj) Modified on 10/21/2022 (lsj). (Entered: 10/20/2022) |
| 10/21/2022 | 230 | UNSEALED MEMORANDUM AND OPINION re SEALED MEMORANDUM OPINION 221 filed in 13–CV–1053 AND 222 in 13–MC–1288 signed by Judge Royce C. Lamberth on 10/13/2022.. Unsealed by Judge Royce C. Lamberth on 10/20/2022. (lsj) (Entered: 10/21/2022) |
| 10/21/2022 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 10/21/2022. Plaintiffs' Witnesses: Edward DeMarco (resumed from 10/20/2022) and Naa Awaa Tagoe (via video deposition). Jury Trial to continue on 10/24/2022 at 10:00 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. (Court Reporters Lisa Moreira (AM) and Sara Wick (PM)) (lsj) (Entered: 10/21/2022) |
| 10/24/2022 | 231 | SEALED MOTION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, |

| | | |
|---|---|---|
| | | PREFERRED EMPLOYERS INSURANCE COMPANY (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Cooper, Charles) (Entered: 10/24/2022) |
| 10/24/2022 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 10/24/2022. Plaintiffs' Witnesses: Naa Waa Tagoe (via video deposition, resumed from 10/21/2022) and Bala Dharan. Jury Trial to continue on 10/25/2022 at 10:00 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. (Court Reporters: Lorraine Herman (AM) and Lisa Moreira (PM)) (lsj) (Entered: 10/24/2022) |
| 10/25/2022 | 232 | SEALED DOCUMENT filed by FEDERAL HOUSING FINANCE AGENCY re 231 SEALED MOTION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUT (This document is SEALED and only available to authorized persons.)(Varma, Asim) (Entered: 10/25/2022) |
| 10/25/2022 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 10/25/2022. Plaintiffs' Witnesses: Balan Dharan (resumed from 10/24/2022), Susan McFarland (deposition read into the record), Timothy Mayopoulos (via video deposition), David Benson (via video deposition), Mukarram Attari (via video deposition), Joseph Mason and Anjan Thakor. Jury Trial to continue on 10/26/2022 at 10:00 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. (Court Reporters Sara Wick (AM) and Lorraine Herman (PM)) (lsj) (Entered: 10/25/2022) |
| 10/26/2022 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 10/26/2022. Plaintiffs' Witness: Anjan Thakor (resumed from 10/25/2022). Plaintiffs rest and Defendants proceed with presentation of evidence. Defendants' Witnesses: Donald Layton (via video deposition) and Ross Kari (deposition read into the record). Defendants' Oral Motion for Rule 50 for Judgment as a Matter of Law, argued and DENIED for reasons stated on the record. Jury Trial to continue on 10/27/2022 at 9:30 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. (Court Reporters: Lisa Moreira (AM) and Sara Wick (PM)) (lsj) (Entered: 10/26/2022) |
| 10/27/2022 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 10/27/2022. Defendants' Witness: Mukarram Attari. Juror 0778 released from any further consideration in this case and trial proceeds with remaining eight jurors. Jury Trial to continue on 10/28/2022 at 10:00 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. (Court Reporters: Lorraine Herman (AM) and Lisa Moreira (PM)) (lsj) (Entered: 10/27/2022) |
| 10/28/2022 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 10/28/2022. Defendants' Witnesses: Mukarram Attari (resumed from 10/27/2022) and Nicholas Satriano. Defendants rest and Plaintiffs present rebuttal case. Plaintiffs' Rebuttal Witness: Bala Dharan. Jury Trial to continue on 10/31/2022 at 9:30 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. (Court Reporters: Sara Wick (AM) and Lisa Moreira (PM)) (lsj) Modified on 10/31/2022 (lsj). (Entered: 10/28/2022) |
| 10/28/2022 | 233 | MOTION in Limine *to Preclude Plaintiffs from Arguing Damages Unsupported by Record Evidence During Closing Arguments* by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Text of Proposed Order)(Varma, Asim) (Entered: 10/28/2022) |
| 10/30/2022 | 234 | |

| | | |
|---|---|---|
| | | NOTICE *Joint Submission of Deposition Designations As Played During Trial* by FEDERAL HOUSING FINANCE AGENCY (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(Varma, Asim) (Entered: 10/30/2022) |
| 10/30/2022 | 235 | Proposed Jury Instructions by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Stern, Jonathan) (Entered: 10/30/2022) |
| 10/30/2022 | 236 | SEALED DOCUMENT filed by FEDERAL HOUSING FINANCE AGENCY(This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Varma, Asim) (Entered: 10/30/2022) |
| 10/31/2022 | 237 | Memorandum in opposition to re 233 Motion in Limine *to Preclude Plaintiffs from Arguing Damages Unsupported by Record Evidence During Closing Arguments* filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Cooper, Charles) (Entered: 10/31/2022) |
| 10/31/2022 | 238 | REPLY to opposition to motion re 233 MOTION in Limine *to Preclude Plaintiffs from Arguing Damages Unsupported by Record Evidence During Closing Arguments* filed by FEDERAL HOUSING FINANCE AGENCY. (Varma, Asim) (Entered: 10/31/2022) |
| 10/31/2022 | 239 | SEALED MOTION filed by FEDERAL HOUSING FINANCE AGENCY(Varma, Asim) (Entered: 10/31/2022) |
| 10/31/2022 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 10/31/2022. Plaintiffs' Rebuttal Witnesses: Bala Dharan (continued from 10/28/2022) and Anjan Thakor. Plaintiffs rest rebuttal case. Plaintiff's Motion 239 to take Judicial Motion (filed in 13–MC–1288) is DENIED, for reasons stated on the record. Defendants' Motion 233 239 in Limine to Preclude Plaintiffs from Arguing Damages Unsupported by Record Evidence During Closing Arguments is DENIED, for reasons stated on the record. Defendants' Renewed Motion for Rule 50 for Judgment as a Matter of Law is DENIED, for reasons stated on the record. Closing arguments commenced and to continue on 11/1/2022 at 10:00 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. (Court Reporters: Lorraine Herman (AM) and Sara Wick (PM)) (lsj) (Entered: 10/31/2022) |
| 11/01/2022 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 11/1/2022. Closing arguments resumed and concluded. Jurors received jury charge instructions. Jury deliberations commenced and continued to 11/2/2022 at 10:00 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. (Courts Reporter: Lorraine Herman (AM) and Sara Wick (PM)) (lsj) (Entered: 11/01/2022) |
| 11/01/2022 | 240 | Final Jury Instructions. Signed by Judge Royce C. Lamberth on 11/1/2022.(lsj) (Entered: 11/01/2022) |
| 11/01/2022 | 241 | Plaintiffs' Final Trial Exhibit List. (lsj) (Entered: 11/01/2022) |
| 11/01/2022 | 242 | Defendants' Final Trial Exhibit List. (lsj) (Entered: 11/01/2022) |
| 11/01/2022 | 243 | ATTORNEYS' ACKNOWLEDGMENT OF TRIAL EXHIBITS. (lsj) (Entered: 11/01/2022) |

| 11/02/2022 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 11/2/2022. Plaintiffs' Unopposed Oral Motion to Declare a Mistrial is DENIED, for reasons stated on the record. Jury deliberations resumed and to continue on 11/3/2022 at 10:00 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. (Court Reporter: Sara Wick) (lsj) (Entered: 11/02/2022) |
| --- | --- | --- |
| 11/02/2022 | 244 | Jury Note #1 received on 11/2/2022. (lsj) (Entered: 11/02/2022) |
| 11/02/2022 | 245 | Jury Note #2 received on 11/2/2022. (lsj) (Entered: 11/02/2022) |
| 11/02/2022 | 246 | Court's Response to Jury Note #2 received on 11/2/2022 ( 245 filed in 13−cv−01053 (RCL) and 255 filed in 13−mc−01288 (RCL)). Signed by Judge Royce C. Lamberth on 11/2/2022. (lsj) (Entered: 11/02/2022) |
| 11/02/2022 | 247 | **Signature Page of Foreperson** on Jury Note #1 received on 11/2/2022. (Access to the PDF Document is restricted pursuant to the E−Government Act. Access is limited to Counsel of Record and the Court.) (zlsj) (Entered: 11/02/2022) |
| 11/02/2022 | 248 | **Signature Page of Foreperson** on Jury Note #2 received on 11/2/2022. (Access to the PDF Document is restricted pursuant to the E−Government Act. Access is limited to Counsel of Record and the Court.) (zlsj) (Entered: 11/02/2022) |
| 11/03/2022 | 249 | NOTICE of Appearance by Michael Weitzner on behalf of BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY (Weitzner, Michael) (Entered: 11/03/2022) |
| 11/03/2022 | 250 | Jury Note #3 received on 11/3/2022. (lsj) (Entered: 11/03/2022) |
| 11/03/2022 | 251 | Court's Response to Jury Note #3 received on 11/3/2022 ( 250 filed in 13−cv−01053 (RCL) and 259 filed in 13−mc−01288 (RCL)). Signed by Judge Royce C. Lamberth on 11/3/2022. (lsj) (Entered: 11/03/2022) |
| 11/03/2022 | 252 | **Signature Page of Foreperson** on Jury Note #3 received on 11/3/2022. (Access to the PDF Document is restricted pursuant to the E−Government Act. Access is limited to Counsel of Record and the Court.) (zlsj) (Entered: 11/03/2022) |
| 11/03/2022 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 11/3/2022. Jury deliberations resumed and to continue on 11/4/2022 at 10:00 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. (Court Reporter: Lisa Moreira) (lsj) (Entered: 11/03/2022) |
| 11/04/2022 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 11/4/2022. Jury deliberations resumed and to continue on 11/7/2022 at 9:30 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. (Court Reporter: Tammy Nestor) (lsj) (Entered: 11/04/2022) |
| 11/04/2022 | 253 | Jury Note #4 received on 11/4/2022. (lsj) (Entered: 11/04/2022) |
| 11/04/2022 | 254 | **Signature Page of Foreperson** on Jury Note #4 received on 11/4/2022. (Access to the PDF Document is restricted pursuant to the E−Government Act. Access is limited to Counsel of Record and the Court.) (zlsj) (Entered: 11/04/2022) |
| 11/04/2022 | 255 | Parties' Proposed Response to Jury Note #4 received on 11/4/2022. (lsj) (Entered: 11/04/2022) |
| 11/04/2022 | 256 | Court's Response to Jury Note #4 received on 11/4/2022 ( 253 filed in 13−cv−01053 (RCL) and 262 filed in 13−mc−01288 (RCL)). Signed by Judge Royce C. Lamberth |

| | | |
|---|---|---|
| | | on 11/4/2022. (lsj) (Entered: 11/04/2022) |
| 11/07/2022 | 257 | Jury Note #5 received on 11/4/2022. (lsj) (Entered: 11/07/2022) |
| 11/07/2022 | 258 | **Signature Page of Foreperson** on Jury Note #5 received on 11/4/2022. (Access to the PDF Document is restricted pursuant to the E−Government Act. Access is limited to Counsel of Record and the Court.). (zlsj) (Entered: 11/07/2022) |
| 11/07/2022 | 259 | Court's Response to Jury Note #5 received on 11/4/2022 ( 266 filed in 13−mc−01288 (RCL) and 257 filed in 13−cv−01053 (RCL)). Signed by Judge Royce C. Lamberth on 11/7/2022. (lsj) (Entered: 11/07/2022) |
| 11/07/2022 | 260 | Jury Note #6 received on 11/7/2022. (lsj) (Entered: 11/07/2022) |
| 11/07/2022 | 261 | **Signature Page of Foreperson** on Jury Note on #6 received on 11/7/2022. (Access to the PDF Document is restricted pursuant to the E−Government Act. Access is limited to Counsel of Record and the Court.). (zlsj) (Entered: 11/07/2022) |
| 11/07/2022 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 11/7/2022. Jury deliberations resumed and concluded. Plaintiffs' Renewed Oral Motion for a Mistrial is DENIED, for reasons stated on the record. Plaintiffs' Second Renewed Motion for a Mistrial is GRANTED, for reasons stated on the record. Hung jury as to all counts and a mistrial is declared by the Court. Jury panel is discharged from any further consideration in this matter. Forthcoming Order. (Court Reporter: Sara Wick) (lsj) (Entered: 11/07/2022) |
| 11/30/2022 | 262 | ORDER granting 177 Motion for Extension of Time; denying 231 Sealed Motion; denying 233 Motion in Limine; denying 239 Sealed Motion. See Order for details. Signed by Judge Royce C. Lamberth on 11/30/2022. (lcrcl3) (Entered: 11/30/2022) |
| 12/27/2022 | 263 | TRANSCRIPT OF JURY TRIAL, MORNING SESSION, before Judge Royce C. Lamberth, held on 10/17/2022. Page Numbers: 1−58. Date of Issuance: 12/27/2022. Court Reporter: Sara Wick, telephone number 202−354−3284. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter reference d above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 1/17/2023. Redacted Transcript Deadline set for 1/27/2023. Release of Transcript Restriction set for 3/27/2023.(Wick, Sara) (Entered: 12/27/2022) |
| 12/27/2022 | 264 | TRANSCRIPT OF JURY TRIAL PROCEEDINGS, AFTERNOON SESSION, before Judge Royce C. Lamberth, held on October 17, 2022. Page Numbers: 59−222. Date of Issuance: December 27, 2022. Court Reporter: Lorraine T. Herman. |

| | | |
|---|---|---|
| | | Telephone number: 202–354–3196. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/17/2023. Redacted Transcript Deadline set for 1/27/2023. Release of Transcript Restriction set for 3/27/2023.(Herman, Lorraine) (Entered: 12/27/2022) |
| 12/27/2022 | <u>265</u> | TRANSCRIPT OF JURY TRIAL – MORNING SESSION before Judge Royce C. Lamberth held on October 18, 2022; Page Numbers: 223–316. Date of Issuance:December 27, 2022. Court Reporter/Transcriber Lisa A. Moreira, RDR, CRR, Telephone number (202) 354–3187, Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or p urchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/17/2023. Redacted Transcript Deadline set for 1/27/2023. Release of Transcript Restriction set for 3/27/2023.(Moreira, Lisa) (Entered: 12/27/2022) |
| 12/27/2022 | <u>266</u> | TRANSCRIPT OF JURY TRIAL, AFTERNOON SESSION, before Judge Royce C. Lamberth held on 10/18/2022. Page Numbers: 317–422. Date of Issuance: 12/27/2022. Court Reporter: Sara Wick, telephone number 202–354–3287. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter refe renced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court |

| | | |
|---|---|---|
| | | reporter. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |
| | | Redaction Request due 1/17/2023. Redacted Transcript Deadline set for 1/27/2023. Release of Transcript Restriction set for 3/27/2023.(Wick, Sara) (Entered: 12/27/2022) |
| 12/28/2022 | 267 | TRANSCRIPT OF JURY TRIAL – AFTERNOON SESSION before Judge Royce C. Lamberth held on October 19, 2022; Page Numbers: 545−626. Date of Issuance:December 28, 2022. Court Reporter/Transcriber Lisa A. Moreira, RDR, CRR, Telephone number (202) 354−3187, Transcripts may be ordered by submitting the Transcript Order Form |
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |
| | | Redaction Request due 1/18/2023. Redacted Transcript Deadline set for 1/28/2023. Release of Transcript Restriction set for 3/28/2023.(Moreira, Lisa) (Entered: 12/28/2022) |
| 12/28/2022 | 268 | TRANSCRIPT OF JURY TRIAL, MORNING SESSION, before Judge Royce C. Lamberth held on 10/20/2022. Page Numbers: 627−718. Date of Issuance: 12/28/2022. Court Reporter: Sara Wick, telephone number 202−354−3284. Transcripts may be ordered by submitting the Transcript Order Form |
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter refere nced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our |

| | | |
|---|---|---|
| | | website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/18/2023. Redacted Transcript Deadline set for 1/28/2023. Release of Transcript Restriction set for 3/28/2023.(Wick, Sara) (Entered: 12/28/2022) |
| 12/28/2022 | 269 | TRANSCRIPT OF JURY TRIAL PROCEEDINGS, MORNING SESSION, before Judge Royce C. Lamberth. Held on October 19, 2022. Page Numbers: 423–544. Date of Issuance: December 28, 2022. Court Reporter: Lorraine Herman. Telephone number: 202–354–3196. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/18/2023. Redacted Transcript Deadline set for 1/28/2023. Release of Transcript Restriction set for 3/28/2023.(Herman, Lorraine) (Entered: 12/28/2022) |
| 12/28/2022 | 270 | TRANSCRIPT OF PROCEEDINGS, AFTERNOON SESSION, before Judge Royce C. Lamberth, held on October 20, 2022. Page Numbers: 719–866. Date of Issuance: December 28, 2022. Court Reporter: Lorraine Herman. Telephone number: 202–354–3196. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/18/2023. Redacted Transcript Deadline set for 1/28/2023. Release of Transcript Restriction set for 3/28/2023.(Herman, Lorraine) (Entered: 12/28/2022) |
| 12/28/2022 | 271 | TRANSCRIPT OF JURY TRIAL – MORNING SESSION before Judge Royce C. Lamberth held on October 21, 2022; Page Numbers: 867–983. Date of |

| | | |
|---|---|---|
| | | Issuance:December 28, 2022. Court Reporter/Transcriber Lisa A. Moreira, RDR, CRR, Telephone number (202) 354–3187, Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or p urchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/18/2023. Redacted Transcript Deadline set for 1/28/2023. Release of Transcript Restriction set for 3/28/2023.(Moreira, Lisa) (Entered: 12/28/2022) |
| 12/29/2022 | <u>272</u> | TRANSCRIPT OF JURY TRIAL, AFTERNOON SESSION, before Judge Royce C. Lamberth held on 10/21/2022. Page Numbers: 984–1084. Date of Issuance: 12/29/2022. Court Reporter: Sara Wick, telephone number 202–354–3284. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter ref erenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/19/2023. Redacted Transcript Deadline set for 1/29/2023. Release of Transcript Restriction set for 3/29/2023.(Wick, Sara) (Entered: 12/29/2022) |
| 12/29/2022 | <u>273</u> | TRANSCRIPT OF JURY TRIAL PROCEEDINGS, MORNING SESSION, before Judge Rudolph Contreras, held on October 24, 2022. Page Numbers: 1085–1235. Date of Issuance: December 29, 2022. Court Reporter: Lorraine Herman. Telephone number: 202–354–3196. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or pu rchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript |

| | | |
|---|---|---|
| | | formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/19/2023. Redacted Transcript Deadline set for 1/29/2023. Release of Transcript Restriction set for 3/29/2023.(Herman, Lorraine) (Entered: 12/29/2022) |
| 12/29/2022 | <u>274</u> | TRANSCRIPT OF JURY TRIAL – AFTERNOON SESSION before Judge Royce C. Lamberth held on October 24, 2022; Page Numbers: 1236−1364. Date of Issuance:December 29, 2022. Court Reporter/Transcriber Lisa A. Moreira, RDR, CRR, Telephone number (202) 354−3187, Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/19/2023. Redacted Transcript Deadline set for 1/29/2023. Release of Transcript Restriction set for 3/29/2023.(Moreira, Lisa) (Entered: 12/29/2022) |
| 12/29/2022 | <u>275</u> | TRANSCRIPT OF JURY TRIAL, MORNING SESSION, before Judge Royce C. Lamberth held on 10/25/2022. Page Numbers: 1365−1481. Date of Issuance: 12/29/2022. Court Reporter: Sara Wick, telephone number 202−354−3287. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter refer enced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, |

| | | |
|---|---|---|
| | | which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/19/2023. Redacted Transcript Deadline set for 1/29/2023. Release of Transcript Restriction set for 3/29/2023.(Wick, Sara) (Entered: 12/29/2022) |
| 12/29/2022 | 276 | TRANSCRIPT OF JURY TRIAL PROCEEDINGS, AFTERNOON SESSION, before Judge Royce C. Lamberth, held on October 25, 2022. Page Numbers: 1482–1610. Date of Issuance: December 29, 2022. Court Reporter: Lorraine Herman. Telephone number: 202–354–3196. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or pu rchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/19/2023. Redacted Transcript Deadline set for 1/29/2023. Release of Transcript Restriction set for 3/29/2023.(Herman, Lorraine) (Entered: 12/29/2022) |
| 12/29/2022 | 277 | TRANSCRIPT OF JURY TRIAL – MORNING SESSION before Judge Royce C. Lamberth held on October 26, 2022; Page Numbers: 1611–1720. Date of Issuance:December 29, 2022. Court Reporter/Transcriber Lisa A. Moreira, RDR, CRR, Telephone number (202) 354–3187, Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/19/2023. Redacted Transcript Deadline set for 1/29/2023. Release of Transcript Restriction set for 3/29/2023.(Moreira, Lisa) (Entered: 12/29/2022) |

| 12/29/2022 | 278 | TRANSCRIPT OF JURY TRIAL, AFTERNOON SESSION, before Judge Royce C. Lamberth held on 10/26/2022. Page Numbers: 1721–1858. Date of Issuance:12/29/2022. Court Reporter: Sara Wick, telephone number 202–354–3284. Transcripts may be ordered by submitting the <u>Transcript Order Form</u> |
|---|---|---|
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter refer enced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |
| | | Redaction Request due 1/19/2023. Redacted Transcript Deadline set for 1/29/2023. Release of Transcript Restriction set for 3/29/2023.(Wick, Sara) (Entered: 12/29/2022) |
| 12/29/2022 | 279 | TRANSCRIPT OF JURY TRIAL PROCEEDINGS, MORNING SESSION, before Judge Royce C. Lamberth, held on October 27, 2022. Page Numbers: 1859–2015. Date of Issuance: December 29, 2022. Court Reporter: Lorraine Herman. Telephone number: 202–354–3196. Transcripts may be ordered by submitting the <u>Transcript Order Form</u> |
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |
| | | Redaction Request due 1/19/2023. Redacted Transcript Deadline set for 1/29/2023. Release of Transcript Restriction set for 3/29/2023.(Herman, Lorraine) Modified trial date on 1/3/2023 (znmw). (Entered: 12/29/2022) |
| 12/29/2022 | 280 | TRANSCRIPT OF JURY TRIAL – AFTERNOON SESSION before Judge Royce C. Lamberth held on October 27, 2022; Page Numbers: 2018–2169. Date of Issuance:December 29, 2022. Court Reporter/Transcriber Lisa A. Moreira, RDR, CRR, Telephone number (202) 354–3187, Transcripts may be ordered by submitting the <u>Transcript Order Form</u> |
| | | For the first 90 days after this filing date, the transcript may be viewed at the |

| | | |
|---|---|---|
| | | courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/19/2023. Redacted Transcript Deadline set for 1/29/2023. Release of Transcript Restriction set for 3/29/2023.(Moreira, Lisa) (Entered: 12/29/2022) |
| 12/29/2022 | 281 | TRANSCRIPT OF JURY TRIAL, MORNING SESSION, before Judge Royce C. Lamberth held on 10/28/2022. Page Numbers: 2170−2346. Date of Issuance: 12/29/2022. Court Reporter: Sara Wick, telephone number 202−354−3284. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter refer enced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/19/2023. Redacted Transcript Deadline set for 1/29/2023. Release of Transcript Restriction set for 3/29/2023.(Wick, Sara) (Entered: 12/29/2022) |
| 12/29/2022 | 282 | TRANSCRIPT OF JURY TRIAL − AFTERNOON SESSION before Judge Royce C. Lamberth held on October 28, 2022; Page Numbers: 2347−2370. Date of Issuance:December 29, 2022. Court Reporter/Transcriber Lisa A. Moreira, RDR, CRR, Telephone number (202) 354−3187, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal |

| | | |
|---|---|---|
| | | identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/19/2023. Redacted Transcript Deadline set for 1/29/2023. Release of Transcript Restriction set for 3/29/2023.(Moreira, Lisa) (Entered: 12/29/2022) |
| 12/29/2022 | 283 | TRANSCRIPT OF JURY TRIAL PROCEEDINGS, MORNING SESSION, before Judge Royce C. Lamberth, held on October 31, 2022. Page Numbers: 2371–2511. Date of issuance: December 29, 2022. Court Reporter: Lorraine Herman. Telephone number: 202–354–3196. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or p urchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/19/2023. Redacted Transcript Deadline set for 1/29/2023. Release of Transcript Restriction set for 3/29/2023.(Herman, Lorraine) (Entered: 12/29/2022) |
| 12/30/2022 | 284 | TRANSCRIPT OF JURY TRIAL, AFTERNOON SESSION, before Judge Royce C. Lamberth held on 10/31/2022. Page Numbers: 2512–2630. Date of Issuance: 12/30/2022. Court Reporter: Sara Wick, telephone number 202–354–3284. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter r eferenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/20/2023. Redacted Transcript Deadline set for 1/30/2023. Release of Transcript Restriction set for 3/30/2023.(Wick, Sara) (Entered: |

| | | 12/30/2022) |
|---|---|---|
| 01/09/2023 | 285 | TRANSCRIPT OF JURY TRIAL, AFTERNOON SESSION, before Judge Royce C. Lamberth held on 11/01/2022. Page Numbers: 2804–2808. Date of Issuance: 01/09/2023. Court Reporter: Sara Wick, telephone number 202–354–3284. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter ref erenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/30/2023. Redacted Transcript Deadline set for 2/9/2023. Release of Transcript Restriction set for 4/9/2023.(Wick, Sara) (Entered: 01/09/2023) |
| 01/09/2023 | 286 | TRANSCRIPT OF JURY TRIAL before Judge Royce C. Lamberth held on 11/02/2022. Page Numbers: 2809–2844. Date of Issuance: 01/09/2023. Court Reporter: Sara Wick, telephone number 202–354–3284. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. Aft er 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/30/2023. Redacted Transcript Deadline set for 2/9/2023. Release of Transcript Restriction set for 4/9/2023.(Wick, Sara) (Entered: 01/09/2023) |
| 01/09/2023 | 287 | TRANSCRIPT OF JURY TRIAL before Judge Royce C. Lamberth held on 11/07/2022. Page Numbers: 2873–2889. Date of Issuance: 01/09/2023. Court Reporter: Sara Wick, telephone number 202–354–3284. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. Afte r 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court |

| | | |
|---|---|---|
| | | reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/30/2023. Redacted Transcript Deadline set for 2/9/2023. Release of Transcript Restriction set for 4/9/2023.(Wick, Sara) (Entered: 01/09/2023) |
| 01/12/2023 | 288 | TRANSCRIPT OF PROCEEDINGS – MORNING SESSION, before Judge Royce C. Lamberth, held on November 1, 2022. Page Numbers: 2631–2803. Date of Issuance: January 12, 2023. Court Reporter: Lorraine Herman: Telephone number: 202–354–3196. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased f rom the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 2/2/2023. Redacted Transcript Deadline set for 2/12/2023. Release of Transcript Restriction set for 4/12/2023.(Herman, Lorraine) (Entered: 01/12/2023) |
| 01/13/2023 | 289 | TRANSCRIPT OF JURY TRIAL before Judge Royce C. Lamberth held on November 3, 2022; Page Numbers: 2845–2858. Date of Issuance:January 13, 2023. Court Reporter/Transcriber Lisa A. Moreira, RDR, CRR, Telephone number (202) 354–3187, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |

| | | |
|---|---|---|
| | | Redaction Request due 2/3/2023. Redacted Transcript Deadline set for 2/13/2023. Release of Transcript Restriction set for 4/13/2023.(Moreira, Lisa) (Entered: 01/13/2023) |
| 02/07/2023 | | MINUTE ORDER: After consultation with the parties regarding availability, it is hereby ORDERED that a jury trial is set to begin on 07/24/2023 at 10:00 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. Signed by Judge Royce C. Lamberth on 02/07/2023. (lcrcl3) (Entered: 02/07/2023) |
| 02/17/2023 | 290 | Joint MOTION for Scheduling Order by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Text of Proposed Order)(Cooper, Charles) (Entered: 02/17/2023) |
| 02/17/2023 | 291 | MOTION for Leave to Serve Supplemental Expert Reports by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Exhibit 1 – Supplemental Expert Report of Bala Dharan, # 2 Exhibit 2 – Supplemental Expert Report of Joseph Mason, # 3 Text of Proposed Order)(Cooper, Charles) (Entered: 02/17/2023) |
| 03/10/2023 | 292 | ORDER granting Motion 290 for Scheduling Order. See Order for details. Signed by Judge Royce C. Lamberth on 03/09/2023. (lcrcl3) (Entered: 03/10/2023) |
| 03/10/2023 | 293 | Memorandum in opposition to re 291 Motion for Miscellaneous Relief,, *Motion for Leave to Serve Supplemental Expert Reports* filed by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit A)(Varma, Asim) (Entered: 03/10/2023) |
| 03/13/2023 | | RESOLVED...NOTICE of Provisional/Government Not Certified Status re 293 Memorandum in opposition to re 291 Motion for Miscellaneous Relief,, *Motion for Leave to Serve Supplemental Expert Reports* filed by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit A)(Varma, Asim). Your attorney renewal/government certification has not been received. As a result, your membership with the U.S. District & Bankruptcy Courts for the District of Columbia is not in good standing, and you are not permitted to file. Pursuant to Local Civil Rule 83.9, you must immediately correct your membership status by following the appropriate instructions on this page of our website: https://www.dcd.uscourts.gov/attorney–renewal. Please be advised that the presiding judge in this case has been notified that you are currently not in good standing to file in this court. Renewal Due by 3/20/2023. (zbaj) Modified on 3/16/2023 (zbaj). (Entered: 03/13/2023) |
| 03/21/2023 | 294 | REPLY to opposition to motion re 291 MOTION for Leave to Serve Supplemental Expert Reports filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY |

| | | INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Cooper, Charles) (Entered: 03/21/2023) |
|---|---|---|
| 04/12/2023 | 295 | Joint MOTION to Issue Jury Questionnaire in Advance of Voir Dire by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit A)(Varma, Asim) (Entered: 04/12/2023) |
| 05/02/2023 | 296 | MOTION for Leave to Present Evidence and Argument Concerning Reliance Damages at Trial by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Text of Proposed Order)(Cooper, Charles) (Entered: 05/02/2023) |
| 05/02/2023 | 297 | NOTICE of Appearance by John Ramer on behalf of ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY (Ramer, John) (Entered: 05/02/2023) |
| 05/16/2023 | 298 | Memorandum in opposition to re 296 Motion for Miscellaneous Relief, *(MOTION FOR LEAVE TO PRESENT EVIDENCE AND ARGUMENT CONCERNING RELIANCE DAMAGES AT TRIAL)* filed by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Text of Proposed Order)(Varma, Asim) (Entered: 05/16/2023) |
| 05/23/2023 | 299 | REPLY to opposition to motion re 296 MOTION for Leave to Present Evidence and Argument Concerning Reliance Damages at Trial filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Cooper, Charles) (Entered: 05/23/2023) |
| 05/26/2023 | 300 | Joint MOTION to Modify *the Scheduling Order [dkt. 292]* by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Text of Proposed Order)(Varma, Asim) (Entered: 05/26/2023) |
| 05/26/2023 | 301 | ORDER granting Motion 300 to Modify: It is hereby ORDERED that the motion is GRANTED and the parties shall file any motions to amend the jury instructions or verdict form or to address deposition designation rulings from Trial 1 by 06/09/2023. Signed by Judge Royce C. Lamberth on 05/26/2023. (lcrcl3) (Entered: 05/26/2023) |
| 05/26/2023 | | Set/Reset Deadlines: Motions to amend the jury instructions or verdict form or to address deposition designation rulings from Trial 1 by 6/9/2023. (smc) (Entered: 05/26/2023) |

| | | |
|---|---|---|
| 05/26/2023 | 302 | Joint MOTION to Modify *the Scheduling Order [dkt. 292]* by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Text of Proposed Order)(Varma, Asim) (Entered: 05/26/2023) |
| 05/26/2023 | 303 | MOTION in Limine *(DEFENDANTS' OMNIBUS MOTION IN LIMINE)* by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Text of Proposed Order)(Varma, Asim) (Entered: 05/26/2023) |
| 05/26/2023 | 304 | MOTION in Limine *(Defendants' Motion to Revisit the Court's Evidentiary Ruling Admitting Plaintiffs' Exhibit 205 (The Stegman Memo) into Evidence over Defendants' Hearsay Objection)* by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Varma, Asim) (Entered: 05/26/2023) |
| 05/26/2023 | 305 | WITHDRAWN PURSUANT TO NOTICE FILED 6/14/2023.....SEALED MOTION filed by FEDERAL HOUSING FINANCE AGENCY (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Text of Proposed Order)(Varma, Asim) Modified on 6/15/2023 (znmw). (Entered: 05/26/2023) |
| 05/26/2023 | 306 | SEALED MOTION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY (Attachments: # 1 Exhibit 1–A, # 2 Exhibit 1–B, # 3 Exhibit 1–C, # 4 Exhibit 1–D, # 5 Exhibit 1–E, # 6 Exhibit 1–F, # 7 Exhibit 1–G, # 8 Exhibit 1–H, # 9 Exhibit 1–I, # 10 Exhibit 1–J, # 11 Exhibit 1–K, # 12 Exhibit 1–L, # 13 Exhibit 1–M, # 14 Exhibit 1–N, # 15 Exhibit 1–O, # 16 Exhibit 1–P, # 17 Exhibit 1–Q, # 18 Exhibit 1–R, # 19 Exhibit 2–A, # 20 Exhibit 2–B, # 21 Exhibit 2–C, # 22 Exhibit 2–D, # 23 Exhibit 2–E, # 24 Exhibit 2–F, # 25 Exhibit 2–G, # 26 Exhibit 2–H, # 27 Exhibit 2–I, # 28 Exhibit 2–J, # 29 Text of Proposed Order)(Cooper, Charles) (Entered: 05/26/2023) |
| 05/26/2023 | 307 | SEALED MOTION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY (Attachments: # 1 Exhibit 1–A, # 2 Exhibit 1–B, # 3 Exhibit 1–C, # 4 Exhibit 2–A, # 5 Exhibit 2–B, # 6 Exhibit 2–C, # 7 Exhibit 3–A, # 8 Exhibit 3–B, # 9 Exhibit 3–C, # 10 Exhibit 3–D, # 11 Exhibit 4–A, # 12 Exhibit 4–B, # 13 Exhibit 4–C, # 14 Exhibit 5–A, # 15 Exhibit 5–B, # 16 Exhibit 5–C, # 17 Exhibit 5–D, # 18 Exhibit 6–A, # 19 Exhibit 6–B, # 20 Exhibit 6–C, # 21 Exhibit 6–D, # 22 Exhibit 6–E, # 23 Exhibit 6–F, # 24 Exhibit 6–G, # 25 Exhibit 6–H, # 26 Exhibit 6–I, # 27 Text of Proposed Order)(Cooper, Charles) (Entered: 05/26/2023) |
| 05/26/2023 | 308 | MOTION in Limine *For Admission Of PX 550, PX 226, PX 562, PX 274, and PX 279* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA |

| | | |
|---|---|---|
| | | CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit T, # 20 Exhibit U, # 21 Exhibit V, # 22 Exhibit W, # 23 Exhibit X, # 24 Exhibit Y, # 25 Exhibit Z, # 26 Exhibit AA, # 27 Text of Proposed Order)(Cooper, Charles) (Entered: 05/26/2023) |
| 05/31/2023 | 309 | ORDER granting Motion 302 to Modify Scheduling Order: It is hereby ORDERED that the motion is GRANTED and the parties shall file the two specific motions in limine referenced therein by 06/09/2023, with oppositions due 06/23/2023, and replies due 06/30/2023. Signed by Judge Royce C. Lamberth on 05/31/2023. (lcrcl3) (Entered: 05/31/2023) |
| 05/31/2023 | | Set/Reset Deadlines: Motion in Limine due by 6/9/2023. Response due by 6/23/2023. Reply due by 6/30/2023. (smc) (Entered: 06/01/2023) |
| 06/02/2023 | 310 | MEMORANDUM OPINION re Motion 291 to Serve Supplemental Expert Reports, Motion 296 to Present Evidence and Arguments Concerning Reliance Damages. Signed by Judge Royce C. Lamberth on 06/02/2023. (lcrcl3) (Entered: 06/02/2023) |
| 06/02/2023 | 311 | ORDER denying Motion 291 to Serve Supplemental Expert Reports; denying Motion 295 to Issue a Jury Questionnaire in Advance of Voir Dire; denying Motion 296 to Present Evidence and Arguments Concerning Reliance Damages: For the reasons stated in the accompanying Memorandum Opinion 310 , it is hereby ORDERED that the motions to serve supplemental expert reports and to present evidence and arguments concerning reliance damages are both DENIED. It is further ORDERED that the motion to issue a jury questionnaire is DENIED. Signed by Judge Royce C. Lamberth on 06/02/2023. (lcrcl3) (Entered: 06/02/2023) |
| 06/09/2023 | 312 | MOTION and Memorandum in Support to Revise Jury Instructions by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Text of Proposed Order)(Varma, Asim) (Entered: 06/09/2023) |
| 06/09/2023 | 313 | MOTION in Limine *to Preclude Defendants from Using Certain Deposition Testimony* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Exhibit 2, # 2 Exhibit 3, # 3 Exhibit 4, # 4 Certificate of Service)(Cooper, Charles) (Entered: 06/09/2023) |
| 06/09/2023 | 314 | SEALED DOCUMENT filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY re 313 MOTION in Limine *to Preclude Defendants from Using Certain Deposition Testimony* (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Certificate of Service)(Cooper, Charles) (Entered: 06/09/2023) |

| 06/14/2023 | 315 | SEALED OPPOSITION filed by FEDERAL HOUSING FINANCE AGENCY. re 306 Sealed Motion,,, (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Text of Proposed Order)(Varma, Asim) (Entered: 06/14/2023) |
|---|---|---|
| 06/14/2023 | 316 | SEALED OPPOSITION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. re 303 Motion in Limine (Attachments: # 1 Exhibit 1–A, # 2 Exhibit 1–B, # 3 Exhibit 1–C, # 4 Exhibit 2–A, # 5 Exhibit 2–B, # 6 Exhibit 2–C, # 7 Exhibit 2–D, # 8 Exhibit 2–E, # 9 Exhibit 2–F, # 10 Exhibit 2–G, # 11 Exhibit 2–H, # 12 Exhibit 2–I, # 13 Exhibit 2–J, # 14 Exhibit 3–A, # 15 Exhibit 3–B, # 16 Exhibit 4–A, # 17 Exhibit 4–B, # 18 Exhibit 4–C, # 19 Exhibit 4–D, # 20 Exhibit 4–E, # 21 Exhibit 4–F, # 22 Exhibit 4–G, # 23 Exhibit 4–H, # 24 Exhibit 4–I, # 25 Exhibit 4–J, # 26 Exhibit 4–K, # 27 Exhibit 4–L, # 28 Exhibit 4–M, # 29 Exhibit 4–N, # 30 Exhibit 4–O, # 31 Exhibit 4–P, # 32 Exhibit 4–Q, # 33 Exhibit 4–R, # 34 Exhibit 4–S, # 35 Exhibit 4–T, # 36 Exhibit 4–U, # 37 Exhibit 4–V, # 38 Exhibit 4–W, # 39 Text of Proposed Order)(Cooper, Charles) (Entered: 06/14/2023) |
| 06/14/2023 | 317 | SEALED OPPOSITION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. re 304 Motion in Limine, (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Text of Proposed Order)(Cooper, Charles) (Entered: 06/14/2023) |
| 06/14/2023 | 318 | Memorandum in opposition to re 308 Motion in Limine,,, *Defendants' Memorandum in Opposition to Plaintiffs' Motion In Limine for Admission of PX 550, PX 226, PX 562, PX 274 and PX 279* filed by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Text of Proposed Order)(Varma, Asim) (Entered: 06/14/2023) |
| 06/14/2023 | 319 | NOTICE OF WITHDRAWAL OF MOTION by FEDERAL HOUSING FINANCE AGENCY re 305 SEALED MOTION filed by FEDERAL HOUSING FINANCE AGENCY (Varma, Asim) (Entered: 06/14/2023) |
| 06/14/2023 | 320 | SEALED OPPOSITION filed by FEDERAL HOUSING FINANCE AGENCY. re 307 Sealed Motion,,, (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Text of Proposed Order)(Varma, Asim) (Entered: 06/14/2023) |
| 06/23/2023 | 321 | Memorandum in opposition to re 313 Motion in Limine, filed by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Varma, Asim) (Entered: 06/23/2023) |
| 06/23/2023 | 322 | REPLY to opposition to motion re 304 MOTION in Limine *(Defendants' Motion to Revisit the Court's Evidentiary Ruling Admitting Plaintiffs' Exhibit 205 (The Stegman* |

| | | |
|---|---|---|
| | | *Memo) into Evidence over Defendants' Hearsay Objection)* filed by FEDERAL HOUSING FINANCE AGENCY. (Varma, Asim) (Entered: 06/23/2023) |
| 06/23/2023 | 323 | REPLY to opposition to motion re 303 MOTION in Limine *(DEFENDANTS' OMNIBUS MOTION IN LIMINE)* filed by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit A)(Varma, Asim) (Entered: 06/23/2023) |
| 06/23/2023 | 324 | REPLY to opposition to motion re 307 SEALED MOTION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUT filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Exhibit 3–E, # 2 Certificate of Service)(Cooper, Charles) (Entered: 06/23/2023) |
| 06/23/2023 | 325 | RESPONSE re 312 MOTION and Memorandum in Support to Revise Jury Instructions filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Text of Proposed Order, # 2 Certificate of Service)(Cooper, Charles) (Entered: 06/23/2023) |
| 06/23/2023 | 326 | SEALED REPLY TO OPPOSITION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY re 306 Sealed Motion,,, (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 1–A, # 2 Exhibit 2–A, # 3 Certificate of Service)(Cooper, Charles) (Entered: 06/23/2023) |
| 06/23/2023 | 327 | REPLY to opposition to motion re 308 MOTION in Limine *For Admission Of PX 550, PX 226, PX 562, PX 274, and PX 279* filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Cooper, Charles) (Entered: 06/23/2023) |
| 06/30/2023 | 328 | NOTICE *Joint Submission of Objections to Deposition Designations* by FEDERAL HOUSING FINANCE AGENCY (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Varma, Asim) (Entered: 06/30/2023) |
| 06/30/2023 | 329 | PRETRIAL STATEMENT by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit |

| | | |
|---|---|---|
| | | E–1, # 6 Exhibit E–2, # 7 Exhibit F)(Varma, Asim) (Entered: 06/30/2023) |
| 06/30/2023 | 330 | REPLY to opposition to motion re 312 MOTION and Memorandum in Support to Revise Jury Instructions filed by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit A)(Varma, Asim) (Entered: 06/30/2023) |
| 06/30/2023 | 331 | REPLY to opposition to motion re 313 MOTION in Limine *to Preclude Defendants from Using Certain Deposition Testimony* filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Cooper, Charles) (Entered: 06/30/2023) |
| 06/30/2023 | 332 | PRETRIAL STATEMENT by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Exhibit A–1, # 2 Exhibit A–2, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E–1, # 7 Exhibit E–2, # 8 Exhibit F)(Cooper, Charles) (Entered: 06/30/2023) |
| 07/06/2023 | | NOTICE of Hearing: Pretrial Conference set for 7/18/2023 at 2:00 PM in Courtroom 15– In Person before Judge Royce C. Lamberth. (zsmc) (Entered: 07/06/2023) |
| 07/10/2023 | 333 | MOTION in Limine *NO. 5: TO EXCLUDE EVIDENCE FEATURING POST HOC STATEMENTS BY FORMER FHFA DIRECTORS MELVIN WATT AND MARK CALABRIA* by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Text of Proposed Order)(Varma, Asim) (Entered: 07/10/2023) |
| 07/14/2023 | 334 | RESPONSE re 333 MOTION in Limine *NO. 5: TO EXCLUDE EVIDENCE FEATURING POST HOC STATEMENTS BY FORMER FHFA DIRECTORS MELVIN WATT AND MARK CALABRIA* filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Cooper, Charles) (Entered: 07/14/2023) |
| 07/17/2023 | 335 | REPLY to opposition to motion re 333 MOTION in Limine *NO. 5: TO EXCLUDE EVIDENCE FEATURING POST HOC STATEMENTS BY FORMER FHFA DIRECTORS MELVIN WATT AND MARK CALABRIA* filed by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit A)(Varma, Asim) (Entered: 07/17/2023) |
| 07/19/2023 | | Minute Entry for Final Pretrial Conference held on 7/19/2023 before Judge Royce C. Lamberth: Order forthcoming from Chambers. Court Reporter: Nancy Meyer. (smc) (Entered: 07/19/2023) |

| 07/21/2023 | 336 | SEALED MEMORANDUM OPINION (This document is SEALED and only available to authorized persons.) Signed by Judge Royce C. Lamberth on 7/21/2023.(smc) (Entered: 07/21/2023) |
|---|---|---|
| 07/21/2023 | 337 | ORDER granting in part and denying in part 303 Motion in Limine; denying 304 Motion in Limine; granting in part and denying in part 306 Sealed Motion; granting in part and denying in part 307 Sealed Motion; granting in part and denying in part 308 Motion in Limine; granting in part and denying in part 312 Motion ; denying 313 Motion in Limine. See Order and accompanying Memorandum Opinion 336 for details. Signed by Judge Royce C. Lamberth on 07/21/2023. (lcrcl3) (Entered: 07/21/2023) |
| 07/21/2023 | 338 | MOTION to Amend *Plaintiffs' Motion to Revise Juror Voir Dire Questionnaire* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Exhibit A)(Cooper, Charles) Modified event on 7/24/2023 (znmw). (Entered: 07/21/2023) |
| 07/21/2023 | | MINUTE ORDER denying Motion 338 to Revise Voir Dire Questions: The parties having had an opportunity to submit proposed voir dire questions and to discuss voir dire questions at the pretrial conference, and the parties having failed to do so at either juncture, it is hereby ORDERED that the motion is DENIED and the Court will ask the same questions it asked at the first trial. Signed by Judge Royce C. Lamberth on 07/21/2023. (lcrcl3) (Entered: 07/21/2023) |
| 07/24/2023 | 339 | MOTION in Limine *to Admit Enterprise SEC Filings* by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Text of Proposed Order)(Varma, Asim) (Entered: 07/24/2023) |
| 07/24/2023 | 340 | RESPONSE re 339 MOTION in Limine *to Admit Enterprise SEC Filings* filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Text of Proposed Order)(Cooper, Charles) (Entered: 07/24/2023) |
| 07/24/2023 | | Minute Entry for Jury Selection held before Judge Royce C. Lamberth on 7/24/2023. Jury Selection commenced and continued to 7/25/2023 at 10:30 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. Court Reporters: Lorraine Herman (AM) and Lisa Edwards (PM). (smc) (Entered: 07/24/2023) |
| 07/24/2023 | 341 | MOTION to Modify *Verdict Form* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Text of Proposed Order)(Cooper, Charles) (Entered: 07/24/2023) |

| 07/25/2023 | 342 | REPLY to opposition to motion re 339 MOTION in Limine *to Admit Enterprise SEC Filings* filed by FEDERAL HOUSING FINANCE AGENCY. (Varma, Asim) (Entered: 07/25/2023) |
|---|---|---|
| 07/25/2023 | 343 | UNSEALED MEMORANDUM OPINION. Unsealed by Judge Royce C. Lamberth on 7/25/2023. (smc) (Entered: 07/25/2023) |
| 07/25/2023 | | Minute Entry for Jury Selection held before Judge Royce C. Lamberth on 7/25/2023. Jury Selection resumed and concluded with eight jurors selected and sworn. Jury Trial to commence on 7/26/2023 at 10:00 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. Court Reporters: Nancy Meyer (AM) and Lorraine Herman (PM). (smc) (Entered: 07/25/2023) |
| 07/26/2023 | 345 | NOTICE *of Joint Statement of Undisputed Facts* by FEDERAL HOUSING FINANCE AGENCY (Attachments: # 1 Exhibit A – Joint Statement of Undisputed Facts)(Varma, Asim) (Entered: 07/26/2023) |
| 07/26/2023 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 7/26/2023. Jury trial commenced and continued to 7/27/2023 at 10:30 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. Plaintiffs' Witnesses: Jill Belack and James Lockhart, III (by video deposition). Court Reporters: Lisa Edwards (AM) and Nancy Meyer (PM). (smc) (Entered: 07/26/2023) |
| 07/26/2023 | | MINUTE ORDER: The Court having impaneled the jury in this action, it is hereby ORDERED that during trial and deliberations all meals for said jury shall be paid by the Clerk of the Court for the U.S. District Court for the District of Columbia. Approved by Judge Royce C. Lamberth on 7/25/2023. (smc) (Entered: 07/31/2023) |
| 07/27/2023 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 7/27/2023. Jury trial resumed and continued to 7/28/2023 at 10:00 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. Plaintiffs' Witnesses: Susan Hartman, Edward Linekin, Joe Cacciapalle (by video deposition), Mukarram Attari (by video deposition) and Joe Mason. Court Reporters: Lorraine Herman (AM) and Lisa Edwards (PM). (zsmc) (Entered: 07/27/2023) |
| 07/28/2023 | 346 | MOTION in Limine *Plaintiffs' Motion Requesting an Order Overruling Defendants' Improper Objections Concerning Dr. Joseph Mason's Testimony on July 27, 2023* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Exhibit 1, # 2 Text of Proposed Order)(Cooper, Charles) (Entered: 07/28/2023) |
| 07/28/2023 | | MINUTE ORDER denying Motion in Limine 346 : For the reasons stated in open court on the morning of 07/28/2023, it is hereby ORDERED that the motion is DENIED. Signed by Judge Royce C. Lamberth on 07/28/2023. (lcrcl3) (Entered: 07/28/2023) |
| 07/28/2023 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 7/28/2023: Jury trial resumed and continued to 7/31/2023 at 10:00 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. Plaintiffs' Witnesses: Joe Mason, Anjan Thakor, Susan McFarland (deposition read into the record), Mario Ugoletti (by video deposition) and David Benson (by video deposition). Court Reporters: Nancy Meyer |

| | | |
|---|---|---|
| | | (AM) Lorraine Herman (PM). (smc) (Entered: 07/28/2023) |
| 07/28/2023 | 347 | RESPONSE re 341 MOTION to Modify *Verdict Form* filed by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit A, # 2 Proposed Order)(Varma, Asim) (Entered: 07/28/2023) |
| 07/28/2023 | 348 | MOTION to Clarify *The Court's Decision Regarding the Admissibility of Dr. Attari's Testimony* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Cooper, Charles) (Entered: 07/28/2023) |
| 07/29/2023 | 349 | MOTION For a Final Jury Instruction Regarding the 10% Cash Dividend Requirement by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Proposed Order)(Varma, Asim) (Entered: 07/29/2023) |
| 07/30/2023 | 350 | RESPONSE re 348 MOTION to Clarify *The Court's Decision Regarding the Admissibility of Dr. Attari's Testimony* filed by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Proposed Order)(Varma, Asim) (Entered: 07/30/2023) |
| 07/31/2023 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 7/31/2023. Jury trial resumed and continued to 8/1/2023 at 10:30 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. Plaintiffs' Witnesses: Tim Mayopolous (by video deposition) and Dr. Bala Dharan. Court Reporters: Lisa Edwards (AM) and Nancy Meyer (PM). (smc) (Entered: 07/31/2023) |
| 08/01/2023 | 351 | SEALED OPPOSITION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. re 349 Motion for Miscellaneous Relief (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N)(Cooper, Charles) (Entered: 08/01/2023) |
| 08/01/2023 | 352 | REPLY to opposition to motion re 348 MOTION to Clarify *The Court's Decision Regarding the Admissibility of Dr. Attari's Testimony* filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Cooper, Charles) (Entered: 08/01/2023) |
| 08/01/2023 | 353 | SEALED CROSS MOTION to Preclude Further Argument filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, PREFERRED EMPLOYERS |

| | | |
|---|---|---|
| | | INSURANCE COMPANY. (This document is SEALED and only available to authorized persons.) (See Docket Entry 351 to view document.) (znmw) (Entered: 08/01/2023) |
| 08/01/2023 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 8/1/2023: Plaintiffs' Witnesses: Dr. Bala Dharan (resumed from 7/31/2023) and Jill Belack. Plaintiffs rest and Defendants proceed with presentation of evidence. Defendants' Witnesses: James Lockhart, III (by video deposition), Tim Mayopolous (by video deposition) and Ross Kari (deposition read into the record). Defendants' Oral Rule 50 Motion for Judgment as a Matter of Law, argued and DENIED for reasons stated on the record. Jury Trial to continue on 8/2/2023 at 10:00 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. Court Reporters: Lorraine Herman (AM) and Lisa Edwards (PM) (smc) (Entered: 08/01/2023) |
| 08/01/2023 | 354 | ORDER denying Motion 348 to Clarify: It is ORDERED that the motion is DENIED and Dr. Attari may testify about the bond study. Signed by Judge Royce C. Lamberth on 08/01/2023. (lcrcl3) (Entered: 08/01/2023) |
| 08/01/2023 | 355 | REPLY to opposition to motion re 349 MOTION For a Final Jury Instruction Regarding the 10% Cash Dividend Requirement *and Opposition to Plaintiffs' Cross–Motion to Preclude Further Argument that "Payment in Kind" Was Not An Available Option* filed by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Varma, Asim) (Entered: 08/01/2023) |
| 08/02/2023 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 8/2/2023. Jury trial resumed and continued to 8/4/2023 at 10:00 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. Defendants' Witness: Nick Satriano. Court Reporters: Nancy Meyer (AM) and Lorraine Herman (PM). (smc) (Entered: 08/02/2023) |
| 08/03/2023 | 356 | REPLY to opposition to motion re 353 SEALED MOTION filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAU filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Cooper, Charles) (Entered: 08/03/2023) |
| 08/03/2023 | 357 | MOTION For a Curative Instruction Regarding Plaintiffs' Statement to the Jury That a Document was "Never Produced in This Case" by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Proposed Order)(Varma, Asim) (Entered: 08/03/2023) |
| 08/04/2023 | 358 | NOTICE *REGARDING DEFENDANTS' MOTION TO REVISE THE JURY INSTRUCTION REGARDING VIRGINIA PREJUDGMENT INTEREST* by FEDERAL HOUSING FINANCE AGENCY (Varma, Asim) (Entered: 08/04/2023) |
| 08/04/2023 | 359 | MOTION in Limine *to Preclude Defendants From Making Any Price Recovery Arguments in Their Closing Argument* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE |

| | | |
|---|---|---|
| | | COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Text of Proposed Order)(Cooper, Charles) (Entered: 08/04/2023) |
| 08/04/2023 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 8/4/2023. Jury trial resumed and continued to 8/7/2023 at 10:00 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. Defendants' Witnesses: Don Layton (by video deposition) and Dr. Mukarram Attari. Court Reporters: Lorraine Herman (AM) and Lisa Edwards (PM). (smc) (Entered: 08/04/2023) |
| 08/04/2023 | 360 | MEMORANDUM ORDER denying Motion 349 for Final Jury Instruction; granting in part and denying in part Sealed Motion 353 : It is ORDERED that defendants' motion is DENIED and plaintiffs' cross−motion is GRANTED in part and DENIED in part. The Court will not give defendants' proposed instruction. Defendants may not argue that payment in kind was not a "legally available option," but they may describe it as a penalty and discuss its risks. See Memorandum Order for details. Signed by Judge Royce C. Lamberth on 08/04/2023. (lcrcl3) (Entered: 08/04/2023) |
| 08/06/2023 | 361 | RESPONSE re 357 MOTION For a Curative Instruction Regarding Plaintiffs' Statement to the Jury That a Document was "Never Produced in This Case" filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Text of Proposed Order)(Cooper, Charles) (Entered: 08/06/2023) |
| 08/06/2023 | 362 | MOTION Plaintiffs' Motion for a Curative Instruction by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Text of Proposed Order)(Cooper, Charles) (Entered: 08/06/2023) |
| 08/07/2023 | 363 | REPLY to opposition to motion re 341 MOTION to Modify *Verdict Form* filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Exhibit A)(Cooper, Charles) (Entered: 08/07/2023) |
| 08/07/2023 | 364 | REPLY to opposition to motion re 357 MOTION For a Curative Instruction Regarding Plaintiffs' Statement to the Jury That a Document was "Never Produced in This Case" filed by FEDERAL HOUSING FINANCE AGENCY. (Varma, Asim) (Entered: 08/07/2023) |
| 08/07/2023 | | |

| | | |
|---|---|---|
| | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 8/7/2023: Jury trial resumed and continued to 8/8/2023 at 10:00 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. Defendants' Witnesses: Dr. Mukarram Attari and Edward Demarco. Court Reporters: Nancy Meyer (AM) and Lisa Edwards (PM). (smc) (Entered: 08/07/2023) |
| 08/08/2023 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 8/8/2023. Jury trial resumed and continued to 8/9/2023 at 10:00 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. Defendants' Witness: Edward Demarco. Court Reporters: Lisa Edwards (AM) and Nancy Meyer (PM). (smc) (Entered: 08/08/2023) |
| 08/09/2023 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 8/9/2023: Defendants' Witness: Edward Demarco. Defendants' Renewed Motion for Rule 50 for Judgment as a Matter of Law is DENIED. Defendants rest and Plaintiffs present rebuttal case. Plaintiffs' Rebuttal Witnesses: Anjan Thakor and Bala Dharan. Jury Trial (closing arguments) set for 8/10/2023 at 10:30 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. Court Reporters: Lisa Edwards (AM) and Nancy Meyer (PM). (smc) (Entered: 08/09/2023) |
| 08/10/2023 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 8/10/2023. Jury trial resumed and continued to 8/11/2023 at 10:00 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. Court Reporters: Lorraine Herman (AM) and Nancy Meyer (PM). (smc) (Entered: 08/10/2023) |
| 08/10/2023 | 365 | NOTICE *of Joint Submission of Deposition Designations as Played During Trial* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(Cooper, Charles) (Entered: 08/10/2023) |
| 08/11/2023 | | Minute Entry for Jury Trial held before Judge Royce C. Lamberth on 8/11/2023: Jurors received jury charge instructions. Jury deliberations commenced and continued to 8/14/2023 at 10:00 AM in Courtroom 15 (in person) before Judge Royce C. Lamberth. Courts Reporter: Lisa Edwards. (smc) (Entered: 08/11/2023) |
| 08/13/2023 | 366 | TRANSCRIPT OF JURY TRIAL PROCEEDINGS – DAY 1 – MORNING SESSION, before Judge Royce C. Lamberth. Page Numbers: 1–89. Date of Issuance: August 13, 2023. Court Reporter: Lorraine Herman. Email: lorraine_herman@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form <br><br> For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be |

| | | |
|---|---|---|
| | | made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(Herman, Lorraine) (Entered: 08/13/2023) |
| 08/13/2023 | 367 | TRANSCRIPT OF JURY TRIAL (DAY 1 – AFTERNOON SESSION) before Judge Royce C. Lamberth held on July 24, 2023; Page Numbers: 90–238. Date of Issuance: August 13, 2023. Court Reporter/Transcriber Lisa Edwards. Telephone number (202) 354–3269. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(zlfe) (Entered: 08/13/2023) |
| 08/13/2023 | 368 | TRANSCRIPT OF JURY TRIAL PROCEEDINGS – DAY #2 (morning session) – before the Honorable Royce C. Lamberth held on 07/25/2023. Page Numbers: 239–338. Date of Issuance: 08/13/2023. Stenographic Court Reporter: Nancy J. Meyer. Telephone Number: 202–354–3118. Email: nancymeyercourtreporter@gmail.com. Transcripts may be ordered by going to www.dcd.uscourts.gov (left–hand side under Transcript Requests). For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats (multi–page, condensed, CD, or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(Meyer, Nancy J.) (Entered: 08/13/2023) |
| 08/13/2023 | 369 | TRANSCRIPT OF JURY TRIAL PROCEEDINGS – AFTERNOON SESSION, before Judge Royce C. Lamberth, held on July 25, 2023. Page Numbers: 339–400. |

| | | |
|---|---|---|
| | | Date of Issuance: August 13, 2023. Court Reporter: Lorraine Herman. Email:Lorraine_Herman@dcd.uscourts.gov. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(Herman, Lorraine) (Entered: 08/13/2023) |
| 08/13/2023 | <u>370</u> | TRANSCRIPT OF JURY TRIAL (DAY 3 – MORNING SESSION) before Judge Royce C. Lamberth held on July 26, 2023; Page Numbers: 401−492. Date of Issuance: August 13, 2023. Court Reporter/Transcriber Lisa Edwards. Telephone number (202) 354−3269. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(zlfe) (Entered: 08/13/2023) |
| 08/13/2023 | <u>371</u> | TRANSCRIPT OF JURY TRIAL PROCEEDINGS – DAY #3 (afternoon session) – before the Honorable Royce C. Lamberth held on 07/26/2023. Page Numbers: 493−614. Date of Issuance: 08/13/2023. Stenographic Court Reporter: Nancy J. Meyer. Telephone Number: 202−354−3118. Email: nancymeyercourtreporter@gmail.com. Transcripts may be ordered by going to www.dcd.uscourts.gov (left−hand side under Transcript Requests). For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats (multi−page, |

| | | |
|---|---|---|
| | | condensed, CD, or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(Meyer, Nancy J.) (Entered: 08/13/2023) |
| 08/13/2023 | 372 | TRANSCRIPT OF JURY TRIAL PROCEEDINGS – DAY 4 – MORNING SESSION – before Judge Royce C. Lamberth, held on July 27, 2023. Page Numbers: 615–699. Date of Issuance: August 13, 2023. Court Reporter: Lorraine Herman. Email:Lorraine_Herman@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(Herman, Lorraine) (Entered: 08/13/2023) |
| 08/13/2023 | 373 | TRANSCRIPT OF JURY TRIAL (DAY 4 – AFTERNOON SESSION) before Judge Royce C. Lamberth held on July 27, 2023; Page Numbers: 700–836. Date of Issuance: August 13, 2023. Court Reporter/Transcriber Lisa Edwards. Telephone number (202) 354–3269. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, |

| | | |
|---|---|---|
| | | which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(zlfe) (Entered: 08/13/2023) |
| 08/13/2023 | 374 | TRANSCRIPT OF JURY TRIAL PROCEEDINGS – DAY #5 (morning session) – before the Honorable Royce C. Lamberth held on 07/28/2023. Page Numbers: 837–926. Date of Issuance: 08/13/2023. Stenographic Court Reporter: Nancy J. Meyer. Telephone Number: 202–354–3118. Email: nancymeyercourtreporter@gmail.com. Transcripts may be ordered by going to www.dcd.uscourts.gov (left–hand side under Transcript Requests). For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats (multi–page, condensed, CD, or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(Meyer, Nancy J.) (Entered: 08/13/2023) |
| 08/13/2023 | 375 | TRANSCRIPT OF JURY TRIAL PROCEEDINGS – DAY 5 – AFTERNOON SESSION – before Judge Royce C. Lamberth, held on July 28, 2023. Page Numbers: 927–1077. Date of Issuance: August 13, 2023. Court Reporter: Lorraine Herman. Email:Lorraine_Herman@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(Herman, Lorraine) (Entered: 08/13/2023) |
| 08/13/2023 | 376 | TRANSCRIPT OF JURY TRIAL (DAY 6 – MORNING SESSION) before Judge Royce C. Lamberth held on July 31, 2023; Page Numbers: 1078–1151. Date of |

| | | |
|---|---|---|
| | | Issuance: August 13, 2023. Court Reporter/Transcriber Lisa Edwards. Telephone number (202) 354−3269. Transcripts may be ordered by submitting the Transcript Order Form |
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |
| | | Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(zlfe) (Entered: 08/13/2023) |
| 08/13/2023 | 377 | TRANSCRIPT OF JURY TRIAL PROCEEDINGS − DAY #6 (afternoon session) − before the Honorable Royce C. Lamberth held on 07/31/2023. Page Numbers: 1152−1305. Date of Issuance: 08/13/2023. Stenographic Court Reporter: Nancy J. Meyer. Telephone Number: 202−354−3118. Email: nancymeyercourtreporter@gmail.com. Transcripts may be ordered by going to www.dcd.uscourts.gov (left−hand side under Transcript Requests). For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats (multi−page, condensed, CD, or ASCII) may be purchased from the court reporter. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |
| | | Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(Meyer, Nancy J.) (Entered: 08/13/2023) |
| 08/13/2023 | 378 | TRANSCRIPT OF JURY TRIAL PROCEEDINGS − DAY 7 − MORNING SESSION − before Judge Royce C. Lamberth, held on August 1, 2023. Page Numbers: 1306−1423. Date of Issuance: August 13, 2023. Court Reporter: Lorraine Herman. Email:Lorraine_Herman@dcd.uscourt.gov. Transcripts may be ordered by submitting the Transcript Order Form |
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court |

| | | |
|---|---|---|
| | | reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(Herman, Lorraine) (Entered: 08/13/2023) |
| 08/13/2023 | 379 | TRANSCRIPT OF JURY TRIAL (DAY 7 – AFTERNOON SESSION) before Judge Royce C. Lamberth held on August 1, 2023; Page Numbers: 1424–1545. Date of Issuance: August 13, 2023. Court Reporter/Transcriber Lisa Edwards. Telephone number (202) 354–3269. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(zlfe) (Entered: 08/13/2023) |
| 08/13/2023 | 380 | TRANSCRIPT OF JURY TRIAL PROCEEDINGS – DAY #8 (morning session) – before the Honorable Royce C. Lamberth held on 08/02/2023. Page Numbers: 1548–1647. Date of Issuance: 08/13/2023. Stenographic Court Reporter: Nancy J. Meyer. Telephone Number: 202–354–3118. Email: nancymeyercourtreporter@gmail.com. Transcripts may be ordered by going to www.dcd.uscourts.gov (left–hand side under Transcript Requests). For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats (multi–page, condensed, CD, or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |

| | | |
|---|---|---|
| | | Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(Meyer, Nancy J.) (Entered: 08/13/2023) |
| 08/13/2023 | 381 | TRANSCRIPT OF JURY TRIAL PROCEEDINGS – DAY 8 – AFTERNOON SESSION – before Judge Royce C. Lamberth, held on August 2. 2023. Page Numbers: 1648–1822. Date of Issuance: August 13, 2023. Court Reporter: Lorraine Herman. Email:Lorraine_Herman@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(Herman, Lorraine) (Entered: 08/13/2023) |
| 08/13/2023 | 382 | TRANSCRIPT OF JURY TRIAL PROCEEDINGS – DAY 9 – MORNING SESSION – before Judge Royce C. Lamberth, held on August 4, 2023. Page Numbers: 1823–1907. Date of Issuance: August 13, 2023. Court Reporter: Lorraine Herman. Email:Lorraine_Herman@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(Herman, Lorraine) (Entered: 08/13/2023) |
| 08/13/2023 | 383 | TRANSCRIPT OF JURY TRIAL (DAY 9 – AFTERNOON SESSION) before Judge Royce C. Lamberth held on August 4, 2023; Page Numbers: 1908–2045. Date of Issuance: August 13, 2023. Court Reporter/Transcriber Lisa Edwards. Telephone |

| | | |
|---|---|---|
| | | number (202) 354–3269. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(zlfe) (Entered: 08/13/2023) |
| 08/13/2023 | <u>384</u> | TRANSCRIPT OF JURY TRIAL PROCEEDINGS – DAY 10 (morning session) – before the Honorable Royce C. Lamberth held on 08/07/2023. Page Numbers: 2046–2149. Date of Issuance: 08/13/2023. Stenographic Court Reporter: Nancy J. Meyer. Telephone Number: 202–354–3118. Email: nancymeyercourtreporter@gmail.com. Transcripts may be ordered by going to www.dcd.uscourts.gov (left–hand side under Transcript Requests). For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats (multi–page, condensed, CD, or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(Meyer, Nancy J.) (Entered: 08/13/2023) |
| 08/13/2023 | <u>385</u> | TRANSCRIPT OF JURY TRIAL (DAY 10 – AFTERNOON SESSION) before Judge Royce C. Lamberth held on August 7, 2023; Page Numbers: 2150–2248. Date of Issuance:August 13, 2023. Court Reporter/Transcriber Lisa Edwards. Telephone number (202) 354–3269. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter. |

| | | |
|---|---|---|
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(zlfe) (Entered: 08/13/2023) |
| 08/13/2023 | 386 | TRANSCRIPT OF JURY TRIAL (DAY 11 − MORNING SESSION) before Judge Royce C. Lamberth held on August 8, 2023; Page Numbers: 2249−2358. Date of Issuance: August 13, 2023. Court Reporter/Transcriber Lisa Edwards. Telephone number (202) 354−3269. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(zlfe) (Entered: 08/13/2023) |
| 08/13/2023 | 387 | TRANSCRIPT OF JURY TRIAL PROCEEDINGS − DAY 11 (afternoon session) − before the Honorable Royce C. Lamberth held on 08/08/2023. Page Numbers: 2359−2507. Date of Issuance: 08/13/2023. Stenographic Court Reporter: Nancy J. Meyer. Telephone Number: 202−354−3118. Email: nancymeyercourtreporter@gmail.com. Transcripts may be ordered by going to www.dcd.uscourts.gov (left−hand side under Transcript Requests). For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats (multi−page, condensed, CD, or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(Meyer, Nancy J.) (Entered: |

| | | 08/13/2023) |
|---|---|---|
| 08/13/2023 | 388 | TRANSCRIPT OF JURY TRIAL (DAY 12 – MORNING SESSION) before Judge Royce C. Lamberth held on August 9, 2023; Page Numbers: 2508–2622. Date of Issuance: August 13, 2023. Court Reporter/Transcriber Lisa Edwards. Telephone number (202) 354–3269. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(zlfe) (Entered: 08/13/2023) |
| 08/13/2023 | 389 | TRANSCRIPT OF JURY TRIAL PROCEEDINGS – DAY 12 (afternoon session) – before the Honorable Royce C. Lamberth held on 08/09/2023. Page Numbers: 2623–2768. Date of Issuance: 08/13/2023. Stenographic Court Reporter: Nancy J. Meyer. Telephone Number: 202–354–3118. Email: nancymeyercourtreporter@gmail.com. Transcripts may be ordered by going to www.dcd.uscourts.gov (left–hand side under Transcript Requests). For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats (multi–page, condensed, CD, or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(Meyer, Nancy J.) (Entered: 08/13/2023) |
| 08/13/2023 | 390 | TRANSCRIPT OF JURY TRIAL PROCEEDINGS – DAY 13 – MORNING SESSION – before Judge Royce C. Lamberth, held on August 10, 2023. Page Numbers: 2769–2860. Date of Issuance: August 13, 2023. Court Reporter: Lorraine Herman. Email:Lorraine_Herman@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form |

| | | |
|---|---|---|
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(Herman, Lorraine) (Entered: 08/13/2023) |
| 08/13/2023 | <u>391</u> | TRANSCRIPT OF JURY TRIAL PROCEEDINGS – DAY 13 (afternoon session) – before the Honorable Royce C. Lamberth held on 08/10/2023. Page Numbers: 2861–2993. Date of Issuance: 08/13/2023. Stenographic Court Reporter: Nancy J. Meyer. Telephone Number: 202–354–3118. Email: nancymeyercourtreporter@gmail.com. Transcripts may be ordered by going to www.dcd.uscourts.gov (left–hand side under Transcript Requests). For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats (multi–page, condensed, CD, or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(Meyer, Nancy) (Entered: 08/13/2023) |
| 08/13/2023 | <u>392</u> | TRANSCRIPT OF JURY TRIAL (DAY 14) before Judge Royce C. Lamberth held on August 11, 2023; Page Numbers: 2994–3059. Date of Issuance: August 13, 2023. Court Reporter/Transcriber Lisa Edwards. Telephone number (202) 354–3269. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal |

| | | |
|---|---|---|
| | | identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2023. Redacted Transcript Deadline set for 9/13/2023. Release of Transcript Restriction set for 11/11/2023.(zlfe) (Entered: 08/13/2023) |
| 08/14/2023 | 393 | FINAL JURY INSTRUCTIONS. Signed by Judge Royce C. Lamberth on 8/11/2023. (smc) (Entered: 08/14/2023) |
| 08/14/2023 | 394 | Plaintiffs' Final Trial Exhibit List. (smc) (Entered: 08/14/2023) |
| 08/14/2023 | 395 | Defendants' Final Trial Exhibit List. (smc) (Entered: 08/14/2023) |
| 08/14/2023 | 396 | ATTORNEYS' ACKNOWLEDGMENT OF TRIAL EXHIBITS. (smc) (Entered: 08/14/2023) |
| 08/14/2023 | 397 | Jury Note #1 received on 8/11/2023. (smc) (Entered: 08/14/2023) |
| 08/14/2023 | 398 | **Signature Page of Foreperson**<br><br>on Jury Note #1 received on 8/11/2023. (Access to the PDF Document is restricted pursuant to the E–Government Act. Access is limited to Counsel of Record and the Court.). (smc) (Entered: 08/14/2023) |
| 08/14/2023 | 399 | Court's Response to Jury Note #1. Signed by Judge Royce C. Lamberth on 8/11/2023. (smc) (Entered: 08/14/2023) |
| 08/14/2023 | | Minute Entry for Jury Trial held on 8/14/2023 before Judge Royce C. Lamberth: Jury deliberations resumed and concluded. Jury Verdict in favor of Plaintiffs against Defendants. Jury panel is discharged from any further consideration in this matter. Oral motion by Defendants' to defer entering Judgment, heard and GRANTED. Court Reporter: Lisa Edwards. (smc) (Entered: 08/14/2023) |
| 08/14/2023 | 400 | Jury Note #2 received on 8/14/2023. (smc) (Entered: 08/14/2023) |
| 08/14/2023 | 401 | **Signature Page of Foreperson**<br><br>on Jury Note #2 received 8/14/2023. (Access to the PDF Document is restricted pursuant to the E–Government Act. Access is limited to Counsel of Record and the Court.). (smc) (Entered: 08/14/2023) |
| 08/14/2023 | 402 | Verdict Form. (smc) (Entered: 08/14/2023) |
| 08/14/2023 | 403 | **Signature Page of Foreperson**<br><br>on Verdict Form. (Access to the PDF Document is restricted pursuant to the E–Government Act. Access is limited to Counsel of Record and the Court.). (smc) (Entered: 08/14/2023) |
| 08/14/2023 | 404 | TRANSCRIPT OF JURY TRIAL (DAY 15) before Judge Royce C. Lamberth held on August 14, 2023; Page Numbers: 3060–3069. Date of Issuance: August 14, 2023. Court Reporter/Transcriber Lisa Edwards. Telephone number (202) 354–3269. Transcripts may be ordered by submitting the Transcript Order Form |

| | | |
|---|---|---|
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/4/2023. Redacted Transcript Deadline set for 9/14/2023. Release of Transcript Restriction set for 11/12/2023.(zlfe) (Entered: 08/14/2023) |
| 08/15/2023 | 405 | MOTION for Denial of Prejudgment Interest for Fannie Mae Preferred Class and Berkley Plaintiffs by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Text of Proposed Order)(Varma, Asim) (Entered: 08/15/2023) |
| 08/24/2023 | 406 | RESPONSE re 405 MOTION for Denial of Prejudgment Interest for Fannie Mae Preferred Class and Berkley Plaintiffs filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Declaration of Joseph R. Mason, # 2 Text of Proposed Order)(Cooper, Charles) (Entered: 08/24/2023) |
| 08/24/2023 | 407 | Cross MOTION for Judgment with Prejudgment Interest by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, FAIRHOLME FUND, FAIRHOLME FUNDS, INC, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (See Docket Entry 406 to view document). (znmw) (Entered: 08/24/2023) |
| 08/29/2023 | 408 | Consent MOTION for Extension of Time *BY DEFENDANTS TO EXTEND THE BRIEFING SCHEDULE ON MOTIONS REGARDING PREJUDGMENT INTEREST* by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Text of Proposed Order)(Varma, Asim) Modified event title on 8/30/2023 (znmw). (Entered: 08/29/2023) |
| 08/31/2023 | 409 | ORDER granting Motion 408 for Extension of Time: It is ORDERED that the motion is GRANTED. Defendants' combined reply and opposition due 09/06/2023. Plaintiffs' reply due 09/18/2023. Signed by Judge Royce C. Lamberth on 08/31/2023. (lcrcl3) (Entered: 08/31/2023) |
| 09/06/2023 | 410 | ENTERD IN ERROR.....REPLY to opposition to motion re 405 MOTION for Denial of Prejudgment Interest for Fannie Mae Preferred Class and Berkley Plaintiffs *and Opposition to Plaintiffs' Cross–Motion for Entry of Judgment with Prejudgment Interest* filed by FEDERAL HOUSING FINANCE AGENCY. (Varma, Asim) |

| | | Modified on 9/7/2023; refiled as Docket Entry 411 . (znmw). (Entered: 09/06/2023) |
|---|---|---|
| 09/06/2023 | 411 | REPLY to opposition to motion re 405 MOTION for Denial of Prejudgment Interest for Fannie Mae Preferred Class and Berkley Plaintiffs *and Opposition to Plaintiffs' Cross−Motion for Entry of Judgment with Prejudgment Interest (CORRECTED REPLY)* filed by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit A – (Dr. Attari Declaration), # 2 Text of Proposed Order)(Varma, Asim) (Entered: 09/06/2023) |
| 09/18/2023 | 412 | REPLY to opposition to motion re 405 MOTION for Denial of Prejudgment Interest for Fannie Mae Preferred Class and Berkley Plaintiffs , 407 MOTION for Judgment *Plaintiffs Reply in Support of Cross−Motion for Entry of Judgment with Prejudgment Interest* filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Cooper, Charles) (Entered: 09/18/2023) |
| 10/24/2023 | 413 | ORDER granting in part and denying in part Motion 405 for Denial of Prejudgment Interest for Fannie Mae Preferred Class and Berkley Plaintiffs; granting in part and denying in part Cross−Motion 407 for Judgment with Prejudgment Interest for Fannie Mae Preferred Class and Berkley Plaintiffs: For the reasons stated in the accompanying Memorandum Opinion, it is hereby ORDERED that the Motion for Denial of Prejudgment Interest is GRANTED in part and DENIED in part, and it is further ORDERED that the Cross−Motion for Judgment with Prejudgment Interest is GRANTED in part and DENIED in part. It is further ORDERED that within 14 days, the parties shall submit a joint statement setting forth their calculation of prejudgment interest using the criteria set forth in the Order, along with a proposed order of final judgment. See Order for details. Signed by Judge Royce C. Lamberth on 10/24/2023. (lcrcl3) Modified to correct Chambers error on 10/24/2023 (zsmc). (Entered: 10/24/2023) |
| 10/24/2023 | 414 | MEMORANDUM OPINION re: Motion 405 for Denial of Prejudgment Interest for Fannie Mae Preferred Class and Berkley Plaintiffs and Cross−Motion 407 for Judgment with Prejudgment Interest for Fannie Mae Preferred Class and Berkley Plaintiffs. Signed by Judge Royce C. Lamberth on 10/24/2023. (lcrcl3) (Entered: 10/24/2023) |
| 11/01/2023 | 415 | Joint MOTION for Extension of Time to File *Joint Statement Setting Forth Calculation of Prejudgment Interest and Proposed Order of Final Judgement.* by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Text of Proposed Order)(Varma, Asim) (Entered: 11/01/2023) |
| 11/03/2023 | 416 | ORDER granting Motion 415 for Extension of Time to File: It is hereby ORDERED that the Motion for Extension of Time to File is GRANTED. The parties shall submit a joint statement setting forth their calculation of prejudgment interest and a proposed order of final judgment by 11/14/2023. Signed by Judge Royce C. Lamberth on 11/3/2023. (lcrcl3) (Entered: 11/03/2023) |
| 11/17/2023 | 417 | Joint MOTION for Entry of Final Judgment by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, |

| | | |
|---|---|---|
| | | MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Exhibit A, # 2 Exhibit D, # 3 Exhibit E, # 4 Exhibit F, # 5 Exhibit G, # 6 Exhibit H)(Cooper, Charles) (Entered: 11/17/2023) |
| 12/05/2023 | 418 | ORDER denying Motion 417 for Entry of Final Judgment: It is hereby ORDERED that Plaintiffs' motion to enter final judgment is DENIED at this time. It is further ORDERED that the parties shall meet and confer regarding Plaintiffs' plan of allocation. It is further ORDERED that by 12/21/2023, the parties shall submit either a joint report or separate reports, which if necessary shall propose a scheduling order for briefing any disputes. Signed by Judge Royce C. Lamberth on 12/05/2023. (lcrcl3) (Entered: 12/05/2023) |
| 12/21/2023 | 419 | NOTICE *Joint Submission Regarding Plaintiffs' Proposed Plan of Allocation and a Schedule for Briefing Any Disputes* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY re 409 Order on Motion for Extension of Time to,, Set/Reset Deadlines, (Attachments: # 1 Text of Proposed Order)(Cooper, Charles) (Entered: 12/21/2023) |
| 12/22/2023 | 420 | SCHEDULING ORDER: See Order for details. Signed by Judge Royce C. Lamberth on 12/22/2023. (lcrcl3) (Entered: 12/22/2023) |
| 01/17/2024 | 421 | Joint MOTION for Extension of Time to File *Joint Motion for Extension to Briefing Schedule* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Text of Proposed Order)(Cooper, Charles) (Entered: 01/17/2024) |
| 01/18/2024 | 422 | ORDER granting Motion 421 for Extension of Time to File: It is hereby ORDERED that the motion is GRANTED. Plaintiffs shall file their motion for approval of their Proposed Plan of Allocation and for entry of their Proposed Final Judgment on or before 01/22/2024. Defendants shall file any opposition to the motion by 02/05/2024. Plaintiffs shall file any reply in support of the motion by 02/12/2024. Signed by Judge Royce C. Lamberth on 01/18/2024. (lcrcl3) (Entered: 01/18/2024) |
| 01/22/2024 | 423 | MOTION for Entry of Final Judgment by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Cooper, Charles) (Entered: 01/22/2024) |
| 02/05/2024 | 424 | Memorandum in opposition to re 423 Motion for Entry of Final Judgment, filed by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Text of Proposed Order)(Varma, Asim) (Entered: |

| | | 02/05/2024) |
|---|---|---|
| 02/12/2024 | 425 | REPLY to opposition to motion re 423 MOTION for Entry of Final Judgment *Plaintiffs' Reply in Support of Motion for Entry of Proposed Judgment and Plan of Allocation* filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Exhibit A)(Cooper, Charles) (Entered: 02/12/2024) |
| 02/15/2024 | 426 | TRANSCRIPT OF PRETRIAL CONFERENCE PROCEEDINGS before Judge Royce C. Lamberth held on July 18, 2023; Page Numbers: 1–163. Date of Issuance: February 15, 2024. Court Reporter/Transcriber: William Zaremba; Telephone number: (202) 354–3249. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, PDF or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 3/7/2024. Redacted Transcript Deadline set for 3/17/2024. Release of Transcript Restriction set for 5/15/2024.(Zaremba, William) (Entered: 02/15/2024) |
| 03/20/2024 | 427 | MEMORANDUM ORDER granting Motion 23 for Entry of Final Judgment: For the reasons stated in the Memorandum Order, it is hereby ORDERED that plaintiffs' Motion for Entry of Final Judgment is GRANTED. Signed by Judge Royce C. Lamberth on 03/20/2024. (lcrcl3) (Entered: 03/20/2024) |
| 03/20/2024 | 428 | JUDGMENT. Signed by Judge Royce C. Lamberth on 03/20/2024. (Attachments: # 1 Plan of Allocation) (lcrcl3) (Entered: 03/20/2024) |
| 04/12/2024 | 429 | Unopposed MOTION for Leave to File Excess Pages *DEFENDANTS' UNOPPOSED MOTION FOR AN ENLARGEMENT OF THE PAGE LIMITATION FOR THEIR RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW* by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Text of Proposed Order)(Stern, Jonathan) (Entered: 04/12/2024) |
| 04/17/2024 | 430 | MOTION for Judgment as a Matter of Law by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G – Placeholder., # 8 Exhibit H – Placeholder., # 9 Exhibit I, # 10 Text of Proposed Order)(Varma, Asim) (Entered: 04/17/2024) |

| 04/17/2024 | 431 | SEALED DOCUMENT filed by FEDERAL HOUSING FINANCE AGENCY re 430 MOTION for Judgment as a Matter of Law (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit H)(Varma, Asim) (Entered: 04/17/2024) |
| --- | --- | --- |
| 04/23/2024 | 432 | ORDER granting Motion 429 for Leave to File Excess Pages: It is hereby ORDERED that defendants' Unopposed Motion for an Enlargement of the Page Limitation of Their Renewed Motion for Judgment as a Matter of Law is GRANTED nunc pro tunc. Defendants' motion may not exceed fifty–five pages in length. Signed by Judge Royce C. Lamberth on 04/23/2024. (lcrcl3) (Main Document 432 replaced on 4/24/2024) (zsmc). (Entered: 04/23/2024) |
| 04/25/2024 | 433 | Joint MOTION for Scheduling Order *and Unopposed Motion for Enlargement of the Page Limitation for Opposition Brief* by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Text of Proposed Order)(Cooper, Charles). Added MOTION for Leave to File Excess Pages on 4/25/2024 (zdp). (Entered: 04/25/2024) |
| 05/14/2024 | 434 | ORDER granting Motion 433 for Scheduling Order; granting Motion 433 for Leave to File Excess Pages: It is hereby ORDERED that plaintiffs' opposition brief to defendants' Motion 430 for Judgment as a Matter of Law is due by 06/07/2024. Defendants' reply brief is due by 07/16/2024. It is further ORDERED that plaintiffs' opposition brief shall not exceed fifty–five (55) pages in length. Signed by Judge Royce C. Lamberth on 05/14/2024. (lcrcl3) (Entered: 05/14/2024) |
| 06/07/2024 | 435 | RESPONSE re 430 MOTION for Judgment as a Matter of Law filed by ACADIA INSURANCE COMPANY, ADMIRAL INDEMNITY COMPANY, ADMIRAL INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, BERKLEY REGIONAL INSURANCE COMPANY, CAROLINA CASUALTY INSURANCE COMPANY, MIDWEST EMPLOYERS CASUALTY INSURANCE COMPANY, NAUTILUS INSURANCE COMPANY, PREFERRED EMPLOYERS INSURANCE COMPANY. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C – Part 1, # 4 Exhibit C – Part 2, # 5 Exhibit C – Part 3, # 6 Exhibit C – Part 4, # 7 Exhibit D, # 8 Exhibit E)(Cooper, Charles) (Entered: 06/07/2024) |
| 07/16/2024 | 436 | REPLY to opposition to motion re 430 MOTION for Judgment as a Matter of Law filed by FEDERAL HOUSING FINANCE AGENCY. (Attachments: # 1 Exhibit J)(Varma, Asim) (Entered: 07/16/2024) |
| 09/20/2024 | 437 | TRANSCRIPT OF PROCEEDINGS before Judge Royce C. Lamberth held on 11/4/22; Page Numbers: 2499–2517. Court Reporter/Transcriber Tammy Nestor, tammy_nestor@dcd.uscourts.gov, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter. |

| | | |
|---|---|---|
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 10/11/2024. Redacted Transcript Deadline set for 10/21/2024. Release of Transcript Restriction set for 12/19/2024.(Nestor, Tammy) (Entered: 09/20/2024) |
| 09/20/2024 | <u>438</u> | TRANSCRIPT OF PROCEEDINGS before Judge Royce C. Lamberth held on 11/4/22 CORRECTED TRANSCRIPT; Page Numbers: 2859−2872. Court Reporter/Transcriber Tammy Nestor, tammy_nestor@dcd.uscourts.gov, Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 10/11/2024. Redacted Transcript Deadline set for 10/21/2024. Release of Transcript Restriction set for 12/19/2024.(Nestor, Tammy) (Entered: 09/20/2024) |
| 03/14/2025 | <u>439</u> | MEMORANDUM OPINION. Signed by Judge Royce C. Lamberth on 3/14/2025. (lcrcl3) (Entered: 03/14/2025) |
| 03/14/2025 | <u>440</u> | ORDER denying (430) Motion for Judgment as a Matter of Law in case 1:13−cv−01053−RCL; denying (423) Motion for Judgment as a Matter of Law in case 1:13−mc−01288−RCL. See Order and accompanying Memorandum Opinion for details. Signed by Judge Royce C. Lamberth on 3/14/2025. (lcrcl3) (Entered: 03/14/2025) |
| 04/11/2025 | <u>441</u> | NOTICE OF APPEAL TO DC CIRCUIT COURT by FEDERAL HOUSING FINANCE AGENCY. Filing fee $ 605, receipt number CDCDC−11611204. Fee Status: Fee Paid. Parties have been notified. (Varma, Asim) (Entered: 04/11/2025) |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BERKLEY INSURANCE CO., *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>FEDERAL HOUSING FINANCE<br>AGENCY, *et al.*,<br><br>        Defendants. | Case No. 1:13-cv-1053 (RCL) |
| In re Fannie Mae / Freddie Mac Senior Pre-<br>ferred Stock Purchase Agreement Class<br>Action Litigations<br><br>_____<br><br>This document relates to:<br>ALL CASES | Case No. 1:13-mc-01288 (RCL) |

## NOTICE OF APPEAL

Pursuant to Fed. R. App. P. 3(c)(1) and 4(a), notice is hereby given that all defendants in the above-named cases appeal to the United States Court of Appeals for the District of Columbia Circuit. Defendants appeal the final judgment entered on March 20, 2024 (13-cv-1053, ECF No. 428; 13-mc-01288, ECF No. 421), all errors of law, the Orders denying Defendants' Rule 50(b) Motion for Judgment as a Matter of Law dated March 14, 2025 (13-cv-1053, ECF Nos. 439, 440; 13-mc-01288, ECF Nos. 430, 431), and all earlier, merged judgments and orders, including, but not limited to, the Orders granting in part and denying in part Defendants' Motion to Dismiss following remand (13-cv-1053, ECF Nos. 82, 83; 13-mc-01288, ECF Nos. 84, 85); the Orders denying Defendants' Motion for Reconsideration of the Order on the Motion to Dismiss following

remand (13-cv-1053, ECF No. 99; 13-mc-01288, ECF No. 104); the Orders granting in part and

denying in part Defendants' Motion for Summary Judgment (13-cv-1053, ECF Nos. 195, 206; 13-

mc-01288, ECF Nos. 189, 198); the bench Orders denying Defendants' Motions under Rule 50(a)

and to decertify the classes in the first trial (Trial Tr. Oct. 31, 2022, Morning, 2449:3-2450-6, 13-

cv-1053, ECF No. 283); the bench Order denying Defendants' Motion under Rule 50(a) in the

second trial (Trial Tr. Aug. 1, 2023, Afternoon, 1512:15, 13-cv-1053, ECF No. 379, 13-mc-01288,

ECF No. 369); the Orders granting Plaintiffs' Motion for Entry of Final Judgment (13-cv-1053,

ECF No. 427; 13-mc-01288, ECF No. 420); and the Order Governing Plan of Allocation (13-cv-

1053, ECF No. 428-1; 13-mc-01288, ECF No. 421-1).


Dated: April 11, 2025                    Respectfully submitted,

                                          _/s/ Asim Varma_____
                                         Asim Varma (D.C. Bar # 426364)
                                         Jonathan L. Stern (D.C. Bar # 375713)
                                         David B. Bergman (D.C. Bar # 435392)
                                         Ian S. Hoffman (D.C. Bar # 983419)
                                         R. Stanton Jones (D.C. Bar # 987088)
                                         ARNOLD & PORTER KAYE SCHOLER LLP
                                         601 Massachusetts Ave. NW
                                         Washington, DC 20001
                                         (202) 942-5000
                                         Asim.Varma@arnoldporter.com
                                         Jonathan.Stern@arnoldporter.com
                                         David.Bergman@arnoldporter.com
                                         Ian.Hoffman@arnoldporter.com
                                         Stanton.Jones@arnoldporter.com

                                         *Attorneys for Defendant Federal Housing
                                         Finance Agency*

 /s/ Michael J. Ciatti
Michael J. Ciatti (D.C. Bar # 467177)
KING & SPALDING LLP
1700 Pennsylvania Ave. N.W.
Washington, DC 20006
Tel: (202) 661-7828
Fax: (202) 626-3737
mciatti@kslaw.com

*Attorney for the Federal Home Loan
Mortgage Corporation*

 /s/ Meaghan VerGow
Meaghan VerGow (D.C. Bar # 977165)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
mvergow@omm.com

*Attorney for the Federal National Mortgage
Association*

3

**CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2025, the foregoing document and all attachments were filed with the Clerk of the Court, using the CM/ECF system, causing them to be served on all parties.

Dated: April 11, 2025                                            _/s/ Asim Varma_____
                                                                                Asim Varma

4

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BERKLEY INSURANCE CO.**, *et al.*, | |
| *Plaintiffs,* | |
| **v.** | Case No. 1:13-cv-1053-RCL |
| **FEDERAL HOUSING FINANCE AGENCY**, *et al.*, | |
| *Defendants.* | |
| **In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations** | Case No. 1:13-mc-1288-RCL |
| This Order relates to: ALL CASES | |

## ORDER

Final judgment in this matter was entered on March 20, 2024. *See* Berkley ECF No. 428, Class ECF No. 421.[1] For the reasons contained in the accompanying Memorandum Opinion, Defendants' subsequent Motion for Judgment as a Matter of Law [Berkley ECF No. 430, Class ECF No. 423] is hereby **DENIED**.

**IT IS SO ORDERED.**

Date: 3-14-25

Royce C. Lamberth
United States District Judge

---

[1] "Berkley ECF No." refers to the docket in No. 1:13-cv-1053, and "Class ECF No." refers to the docket in No. 1:13-mc-1288.

1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BERKLEY INSURANCE CO.**, *et al.*, <br><br> *Plaintiffs,* <br><br> **v.** <br><br> **FEDERAL HOUSING FINANCE AGENCY**, *et al.*, <br><br> *Defendants.* | **Case No. 1:13-cv-1053-RCL** |
| **In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations** | **Case No. 1:13-mc-1288-RCL** |
| This Memorandum Opinion relates to: ALL CASES | |

## <u>MEMORANDUM OPINION</u>

This matter, born out of the 2008 financial crisis, has now reached its final stage before this Court. In broad strokes, it comprises both a class action (brought by the "Class Plaintiffs") and a set of individual lawsuits (brought by the "Berkley Plaintiffs") against the Federal Housing Finance Agency ("FHFA"), the Federal National Mortgage Association ("Fannie Mae"), and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively, "Defendants"). Plaintiffs are holders of common stock of Freddie Mac and junior preferred stock of Fannie Mae and Freddie Mac. Plaintiffs filed suit in 2013 to challenge the so-called "Net Worth Sweep," arising from an amendment to the agreement between the United States Department of the Treasury and the FHFA in the FHFA's capacity as conservator for Fannie Mae and Freddie Mac.

1

By 2022, when this case went to trial for the first time, Plaintiffs' sole remaining claim was for breach of the implied covenant of good faith and fair dealing based on the Net Worth Sweep, which allegedly harmed Plaintiffs by reducing the value of their preferred shares in Fannie Mae and Freddie Mac, and their common shares in Freddie Mac  On August 14, 2023, a jury returned a verdict in favor of Plaintiffs, awarding a total of $612.4 million.  Defendants have moved for Judgment as a Matter of Law under Rule 50(b) of the Federal Rules of Civil Procedure, asking the Court set aside the jury's verdict and enter judgment in Defendants' favor.  For the reasons contained herein, the Court will **DENY** Defendants' Motion.

**BACKGROUND**

### A.  Factual History

The Court assumes familiarity with the relevant factual and procedural background, detailed at length in numerous opinions.  *See Berkley Ins. Co. v. FHFA*, Nos. 1:13-cv-1053-RCL, 1:13-mc-1288-RCL, 2023 WL 3790739, at *1–2 (D.D.C. June 2, 2023); *Fairholme Funds, Inc. v. FHFA*, Nos. 1:13-cv-1053-RCL, 1:13-mc-1288-RCL, 2022 WL 4745970, at *1–3 (D.D.C. Sept. 23, 2022) (hereinafter "Mot. Summ. J. Op."); *In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigs.*, Nos. 1:13-cv-1053-RCL, 1:13-mc-1288-RCL, 2021 WL 5799379, at *1–3 (D.D.C. Dec. 7, 2021) (hereinafter "Class Cert. Op."); *Fairholme Funds, Inc. v. FHFA*, Nos. 1:13-cv-1053-RCL, 1:13-cv-1439-RCL, 2018 WL 4680197, at *1–4 (D.D.C. Sept. 28, 2018) (hereinafter "Mot. to Dismiss Op."); *Perry Capital LLC v. Lew* ("Perry I"), 70 F. Supp. 3d 208, 214–19 (D.D.C. 2014); *Perry Capital LLC v. Mnuchin* ("Perry II"), 864 F.3d 591, 633–34 (D.C. Cir. 2017).  The Court will reproduce only those facts necessary to resolve the pending motion.

During the 2008 financial crisis, Congress passed the Housing and Economic Recovery Act ("HERA"), which established the FHFA and designated it as Conservator of the government-

2

sponsored entities Fannie Mae and Freddie Mac (hereinafter the "GSEs").  The FHFA and the United States Department of the Treasury (hereinafter "Treasury") then entered into a series of agreements called Senior Preferred Stock Purchase Agreements ("PSPAs").  Under these agreements, the FHFA authorized Treasury to infuse the GSEs with capital by purchasing their securities, and the GSEs were prohibited from paying dividends to non-Treasury shareholders without Treasury's permission.  Treasury and the FHFA amended the PSPAs on three occasions. One of the provisions of the Third Amendment—the Net Worth Sweep, adopted on August 17, 2012—is the focus of this lawsuit.

Under the Net Worth Sweep, each GSE was required to pay Treasury the difference between its net worth and a predetermined capital reserve each year, with that capital reserve decreasing until it reached zero in 2018.  The Net Worth Sweep remains in place to the present day.  Thus, the Third Amendment eliminated any future possibility for any non-Treasury stockholder—including Plaintiffs here—to receive dividends from the GSEs, because the GSEs owed their net worth to Treasury and would not take on further debt to pay dividends to other shareholders.  *See* Mot. Summ. J. Op. at *3.  On the day the Third Amendment was announced, the market valuation of the GSEs shares declined by $1.6 billion.

In 2013, in response to the Net Worth Sweep, two lawsuits were initiated in this Court: a class-action lawsuit and an individual lawsuit.  Compl., *Fairholme Funds, Inc., et al. v. FHFA*, No. 13-cv-1053 (D.D.C. July 10, 2013), Berkley ECF No. 1; Compl., *In Re Fannie Mae/Freddie Max Senior Preferred Stock Purchase Agreements Class Action Litigs.*, No. 13-mc-1288 (D.D.C. Nov. 18, 2013), Class ECF No. 1.[1]  The class-action lawsuit was brought by a class of private

---

[1] For purposes of this Memorandum Opinion, "Berkley ECF No." refers to the docket in No. 1:13-cv-1053 (the individual lawsuit), and "Class ECF No." refers to the docket in No. 1:13-mc-1288 (the class-action lawsuit).

individual institutional investors who own either preferred or common stock in Fannie Mae or Freddie Mac (Class Plaintiffs), and the individual lawsuit was brought by an institutional investor owning junior preferred stock in Fannie Mae and Freddie Mac and by various insurance companies (Berkley Plaintiffs). After many years of narrowing the dispute, which the Court briefly explains *infra*, only one claim—which is substantially identical between the two sets of Plaintiffs—remains: that Defendants, by agreeing to the Net Worth Sweep in the Third Amendment, breached the implied covenant of good faith and fair dealing. Specifically, agreeing to the Net Worth Sweep harmed Plaintiffs by eliminating any possibility that any GSE shareholders, other than Treasury, would receive dividends in the future, thereby depriving Plaintiffs' shares of much of their value.

## B. Procedural History

The initial complaint in each lawsuit alleged various claims for violations of the Administrative Procedure Act, breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty. This Court dismissed the initial complaints in their entirety for failure to state a claim on September 30, 2014. *See Perry I*, 70 F. Supp. 3d at 246. On appeal, the D.C. Circuit affirmed in part, but remanded certain parts of Plaintiffs' breach of contract and implied covenant claims. *See Perry II*, 864 F.3d at 633–34.

### 1. Defendants' Motion to Dismiss

On remand, the Plaintiffs in each case filed an amended complaint and Defendants moved to dismiss in both. On September 28, 2018, the Court held that both sets of Plaintiffs stated a claim for breach of the implied covenant of good faith and fair dealing. Mot. to Dismiss Op. at *7–12. Specifically, the Court found that Plaintiffs pleaded sufficient facts to make out a cognizable claim that the Third Amendment violated their reasonable expectations that their rights to dividends and liquidation preferences would not be extinguished. *Id.* The Court also held that HERA's "best

interests" provision, which provides that the FHFA as Conservator may take any action authorized under the Act "which [it] determines is in the best interests of the [GSEs] or the [FHFA]," does not foreclose Plaintiffs' implied covenant claims. *Id.* The Court thereafter denied Defendants' motion for reconsideration. Reconsideration Order, Berkeley ECF No. 99, Class ECF No. 105.

### 2. Class Certification

On August 12, 2021, the Class Plaintiffs filed their motion to certify this action as a class action. Class ECF No. 132. The parties stipulated to certification of three classes on October 14, 2021, *see* Class ECF No. 133, and on December 7, 2021, the Court granted the Class Plaintiffs' motion for class certification after a "rigorous analysis" of the factual bases for class certification. *See* Class Cert. Op. at *3; Order Certifying Class, Class ECF No. 139. The following three classes were certified:

1. All current holders of junior preferred stock in Fannie Mae as of the date of certification, or their successors in interest to the extent shares are sold after the date of certification and before any final judgment or settlement (the "Fannie Preferred Class");
2. All current holders of junior preferred stock in Freddie Mac as of the date of certification, or their successors in interest to the extent shares are sold after the date of certification and before any final judgment or settlement (the "Freddie Preferred Class"); and
3. All current holders of common stock in Freddie Mac as of the date of certification, or their successors in interest to the extent shares are sold after the date of certification and before any final judgment or settlement (the "Freddie Common Class").

Order Certifying Class, Class ECF No. 139.

### 3. Summary Judgment Decision

On September 23, 2022, the Court resolved the parties' cross motions for summary judgment in each case. The Court ruled that Plaintiffs were not permitted to seek damages based on a theory of lost dividends or based on a theory of restitution, but that Plaintiffs *were* entitled to seek damages based on a "lost-value" theory: that the Net Worth Sweep caused Plaintiffs' shares

to be worth less than they otherwise would be worth.  Mot. Summ. J. Op. at *9–11.  The Court also rejected, for the second time, Defendants' argument that the implied covenant did not apply because the HERA "best interests" provision left no "gap" to be filled by the implied covenant. *Id.* at *6–7.  Finally, the Court rejected Defendants' argument that the Supreme Court's decision in *Collins v. Yellen*, 594 U.S. 220 (2021), foreclosed Plaintiffs' implied covenant claim.  *Id.* at *5.

### 4.  Trial

The Court presided over two trials in this case: the first from October 18 to November 7, 2022, and the second from July 26 to August 14, 2023.

At the first trial, Defendants made an oral Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(a) at the close of Plaintiffs' case, which the Court heard and denied.  Trial Tr. Oct. 26, 2022, 1818:18–19, 1830:2.[2]  At the close of all evidence, Defendants then filed a written Motion to Decertify the Class, incorporating some of the arguments from their Rule 50(a) Motion, which the Court also denied.  Mot., Class ECF No. 249; Trial Tr. Oct. 31, 2022, 2449:3–2450:6.  The first trial ended in a mistrial because of a deadlocked jury.  Min. Entry Nov. 7, 2022.

At the second trial, Defendants made an oral Rule 50(a) Motion for Judgment as a Matter of Law at the close of Plaintiffs' case.  Trial Tr. Aug. 1, 2023, 1500:4-1512:14.  Defendants made the same arguments from the first trial, now raised again in the instant Motion: that there is no "gap" in the shareholder contracts for the implied covenant to fill; that *Collins* forecloses Plaintiffs' implied covenant claim as a matter of law; that Plaintiffs failed to prove harm or damages with reasonable certainty; and that post-Third Amendment purchasers were not harmed by the share-

---

[2] Defendants then filed a written Rule 50(a) Motion "[s]trictly for appellate preservation purposes" but "understand[ing] the Court's ruling was a denial."  Trial Tr. Oct. 31, 2022, 2376:15–22, Berkley ECF No. 283.

price drop and thus lack standing.  Trial Tr. Aug. 1, 2023, 1500:4-1510:16.  The Court heard and denied the motion on all four grounds.  Trial Tr. Aug. 1, 2023, 1512:15.

The jury found in favor of Plaintiffs, determining that the Fannie Mae Preferred Class was entitled to damages of $299.4 million; the Freddie Mac Preferred Class was entitled to $281.8 million; and the Freddie Mac Common Class was entitled to $31.2 million, for a total verdict of $612.4 million awarded to Plaintiffs.  Verdict Form, Berkeley ECF No. 402, Class ECF No. 392. The Court entered final judgment on March 20, 2024.  Judgment, Berkley ECF No. 428, Class ECF No. 421.

On April 17, 2024, Defendants filed a Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b).  Mot. J. as a Matter of L. ("Defs.' Mot."), Berkley ECF No. 430, Class ECF No. 423.  Plaintiffs filed an Opposition on June 7, 2024.  Resp. to Mot. for J. as a Matter of L. ("Opp'n"), Berkley ECF No. 435, Class ECF No. 428.  Defendants filed a Reply on July 16, 2024.  Reply to Opp'n to Mot. ("Reply"), Berkley ECF No. 436, Class ECF No. 429. This motion is therefore ripe for this Court's review.

## LEGAL STANDARDS

### A.  Rule 50(b) Motion for Judgment as a Matter of Law

After a jury trial, a court may grant a motion for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure only if it finds that "a reasonable jury would not have had a legally sufficient evidentiary basis to find for the party on that issue[.]"  Fed. R. Civ. P. 50(a)(1).  Judgment as a matter of law is only proper, "considering the evidence in the light most favorable to the [non-movants] and making all reasonable inferences in their favor," if the Court concludes that there is no legally sufficient evidentiary basis for a reasonable jury to have found in their favor under controlling law.  *Hendry v. Pelland*, 73 F.3d 397 (D.C. Cir. 1996); *see Fox v. District of Columbi*a, 990 F. Supp. 13, 19 (D.D.C. 1997).  The jury's verdict must stand "unless

the evidence, together with all inferences that can be reasonably drawn therefrom, is so one-sided [in favor of the moving party] that reasonable persons could not disagree on the verdict," *Milone v. Wash. Metro. Area Transit Auth.*, 91 F.3d 229, 231 (D.C. Cir. 1996), that is, unless the nonmovant's evidence is so insufficient that a reasonable finder of fact "could not possibly find for the nonmovant." 9 Moore's Federal Practice § 50.60[1] at 50–87 (3d ed. 2002); *accord Muldrow ex rel. Estate of Muldrow v. Re–Direct, Inc.*, 493 F.3d 160, 165 (D.C. Cir. 2007).

Even if the Court finds the evidence that led to the jury verdict unpersuasive, or that it would have reached a different result if it were sitting as the fact-finder, that is not a basis for overturning the jury's verdict and granting judgment as a matter of law. *Huthnance v. Dist. Of Columbia*, 793 F. Supp. 2d 183, 197 (D.D.C. 2011), *aff'd*, 722 F.3d 371 (D.C. Cir. 2013). The Court may not grant the motion unless "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." *Me, Inc. v. Taylor*, 157 F.3d 139, 142 (2d Cir. 1998). In short, the Court "do[es] not . . . lightly disturb a jury verdict." *Radtke v. Lifecare Mgmt. Partners*, 795 F.3d 159, 163 (D.C. Cir. 2015) (ellipsis in original) (quoting *Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 165 (D.C. Cir. 2007)).

Finally, because a post-trial Rule 50(b) motion is a renewal of a Rule 50(a) motion for judgment as a matter of law, the post-trial motion is limited to those grounds that were specifically raised in the prior motion. *Thomas v. Mineta*, 310 F. Supp. 2d 198, 204 (D.D.C. 2004) (citing *Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir. 2001)); *see also Whelan v. Abell*, 48 F.3d 1247, 1251 (D.C. Cir. 1995) (holding that a movant who omits a theory from his Rule 50(a) motion waives the theory as the basis for a Rule 50(b) motion).

8

## DISCUSSION

### A. Law of the Case

This matter has a long procedural history: initial dismissal, a trip up to the D.C. Circuit, remand, class certification, summary judgment, and two trials. Naturally, this elongated posture has resulted in significant case law—and now, at the final stage in this protracted litigation, nearly every argument raised in Defendants' motion can be disposed of by the law of the case doctrine.

This doctrine "refers to a family of rules embodying the general concept that a court involved in later phases of a lawsuit should not re-open questions decided . . . by that court or a higher one in earlier phases." *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 697 (D.C. Cir. 2022) (quoting *Crocker v. Piedmont Aviation*, Inc. 49 F.3d 735, 739 (D.C. Cir. 1995) (internal quotation marks omitted)). Colloquially speaking, the doctrine dictates that "the same issue presented a second time in the same case in the same court should lead to the same result." *Id.* (quoting *Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999) (internal quotation marks and citation omitted). This prudential doctrine "promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (citation omitted).

To apply the law of the case here, the Court must first clear up a threshold dispute between the parties: Defendants argue that law of the case doctrine cannot apply at the Rule 50(b) stage. Reply at 2–3. Defendants cite several out-of-Circuit cases for this proposition, which this Court is not bound by—but in any event, Defendants misinterpret these cases. Defendants first pull from *In re Cattrell*, in which a bankruptcy court observed that a Rule 50(b) motion would be the "emptiest of technicalities" if law of the case applied. No. 19-33823-dwh13, 2021 WL 1100068 (Bankr. D. Or. Mar. 22, 2021) at *6. However, Defendants conveniently failed to include the rest of the quotation: that a Rule 50(b) motion would be the "emptiest of technicalities if the law of the

9

case applied *to interlocutory rulings*." *Id.* Specifically, the court explained that it would be nonsensical to treat the denial of a Rule 50(a) motion as law of the case at the Rule 50(b) stage because, by definition, a Rule 50(b) motion is a "renewed" motion that mirrors the exact same arguments from a Rule 50(a) motion. *Id.* There is no indication that the *In re Cattrell* court would extend its reasoning as far as Defendants suggest, barring the application of every one of a court's prior determinations once the case reaches the Rule 50(b) stage. The other case cited by Defendants, *Rupolo v. Oshkosh Truck Corp.*, is similarly cabined, only finding that the denial of a Rule 50(a) motion should not constitute law of the case in deciding a Rule 50(b) motion. No. 05-cv-2978 (SLT/RER), 2013 WL 5520756, at *17 (E.D.N.Y. Sept. 30, 2013).

Indeed, there are multiple examples of courts in this District applying the law of the case to deny a Rule 50(b) motion. *See, e.g.*, *Campbell v. D.C.*, No. 12-cv-1769 (RC), 2016 WL 3023977 (D.D.C. May 25, 2016) (denying Rule 50(b) motion by observing that the defendant "merely restates unsuccessful arguments it made in previous motions"), *aff'd*, 894 F.3d 281 (D.C. Cir. 2018); *Freeman v. Giuliani*, 732 F. Supp. 3d 30, 45–46 (D.D.C. 2024) (denying Rule 50(b) motion because it "reargues" issues from the motion to dismiss stage, and the defendant had not "raised grounds to reach a different conclusion after trial to merit judgment as a matter of law") (internal citations and quotations omitted); *see id.* at 46 ("Rule 50(b) is not meant 'to rehash decisions that were made pre-trial, but to determine whether the jury verdict was supported by the evidence presented at trial.'") (quoting *Martin v. Howard Univ.*, No. 99-cv-1175 (TFH), 2006 WL 2850656, at *5 (D.D.C. Oct. 4, 2006). Therefore, the Court will apply the law of the case here where appropriate.

"The application of the law of the case doctrine is a two-step process that requires determining (1) whether the 'same issue presented a second time in the same case in the same court

[would] lead to the same result' and (2) 'whether there are prudential reasons to ignore the applicable law-of-the-case.'" *United States v. Johnson*, No. 2-mj-222 (ZMF), 2023 WL 3220477, at *2 (D.D.C. May 3, 2023) (quoting *Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999)). Prudential reasons may include "intervening legal changes to the applicable laws at issue," *id.*, or a finding that the previous decision was "clearly erroneous and would work a manifest injustice," *id.* (quoting *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir 1996)). For each of the issues Defendants raise in their motion, the Court will determine if law of the case disposes of the challenge, as Plaintiffs contend; where it does not, the Court will evaluate the arguments on their merits.

## B. Defendants' Challenges Against All Plaintiffs

The first portion of Defendants' Motion presents arguments for judgment as a matter of law against all Plaintiffs, and the latter portion presents arguments as to only a subset of Plaintiffs: those who purchased stock in the GSEs *after* the Third Amendment was announced. Defs.' Mot. at 19, 44. The Court will first address the challenges that Defendants bring as to all Plaintiffs, and once those arguments are addressed, the Court will proceed to analyze Defendants' challenges as to the post-Third Amendment purchasers, which Defendants believe should prevail "at a minimum" even if their arguments as to the broader plaintiff population fail. Defs.' Mot. at 44.

### i. Challenge 1: "Gap" in Shareholder Contracts for the Implied Covenant

Defendants argue that "the shareholder contracts, by incorporating HERA's 'best interests' provision, already specify the scope of FHFA's contractual discretion and thus contain no 'gap' for the implied covenant to fill." Defs.' Mot. at 19. But this argument was fully briefed, argued, and decided on summary judgment, as even Defendants observe: "this Court held that, notwithstanding HERA's 'best interests' provision, the shareholder contracts contain a gap for the

11

implied covenant to come into play, because 'whether a certain act falls within FHFA's statutorily authorized discretion and whether FHFA may incur monetary damages for exercising that discretion in a manner inconsistent with its independent contractual obligations are two separate inquiries.'" Defs.' Mot. at 23 (quoting Mot. Summ. J. Op. at *7).[3]  The justification for invoking the law of the case doctrine to adhere to an underlying summary judgment ruling is particularly strong because, "[w]ere it otherwise, motions for summary judgment could not perform their function of simplifying and narrowing disputed issues." *Sloan v. Urb. Title Servs., Inc.*, 770 F. Supp. 2d 216, 224 (D.D.C. 2011) (internal citations and quotations omitted).

There have been no intervening legal changes since this holding that would counsel a different result, and Defendants allege none.   Indeed, Defendants simply rehash the same arguments that this Court has already considered and rejected, which is not proper fodder for a Rule 50(b) motion.  *Freeman*, 732 F. Supp. 3d at 46 ("Rule 50(b) is not meant 'to rehash decisions that were made pre-trial.'") (quoting *Martin*, 2006 WL 2850656, at *5).  Abiding by the law of the case, the Court will not revisit this holding.

    *ii.*   *Challenge 2:* Collins

Defendants' second argument is that "even if the implied covenant applied" to the shareholder contracts, "the Supreme Court's decision in *Collins* forecloses Plaintiffs' claim." Defs.' Mot. at 19.  Specifically, Defendants argue that "*Collins* conclusively establishes that FHFA acted reasonably in agreeing to the Third Amendment, and that the Conservator's business decision to enter the Third Amendment for the public's benefit is not subject to judicial review." Defs.' Mot. at 24.

---

[3] The Court notes that it also landed this way at the motion to dismiss stage, explaining that Defendants' argument that the implied covenant does not apply is "directly contrary to the D.C. Circuit's opinion [in Perry II]."  *See* Mot. to Dismiss Op. at *12–13 ("Defendants cannot simply say that since HERA permits the conservator to act in its own best interests, the FHFA can do whatever it wants and Plaintiffs could not expect otherwise.").

This is, again, the exact argument that Defendants raised at summary judgment and that the Court rejected. As Defendants observe in their Motion, the Court explained that "[a]t issue in *Collins* was whether FHFA could reasonably have determined that adopting the Third Amendment was in the *best interests* of the *regulated entity* or the *Agency*, and thus acted within its statutory authority as conservator of the GSEs in so doing." Mot. Summ. J. Op. at *5 (internal citations and quotations omitted, emphasis in original); Defs.' Mot. at 28. But here, "the issue is whether FHFA violated the reasonable *expectations* of the *parties* by adopting the Third Amendment." Mot. Summ. J. Op. at *5 (internal citations and quotations omitted, emphasis in original). That distinction applies with the same force now. There are no intervening legal changes since the Court's summary judgment holding and there is no indication that this holding works a "manifest injustice." A Rule 50(b) motion is not a vehicle to re-litigate legal issues decided pretrial. *Martin*, 2006 WL 2850656, at *4. If Defendants wish to re-open this purely legal challenge, they must do so with the D.C. Circuit. Here, the Court abides by the law of the case.

### iii. *Challenge 3: Anticipatory Breach*

Defendants' next argument is that Plaintiffs' implied covenant claim is, in essence, a non-cognizable claim for anticipatory breach of a unilateral contract.[4] Defs.' Mot. at 19. However, the Court has reviewed the transcripts and cannot identify the portion of Defendants' Rule 50(a) Motion that raises this anticipatory breach argument. *See* Trial Tr. Aug. 1, 2023, 1500:4–1510:17. Because a post-trial Rule 50(b) motion the is limited to those grounds that were specifically raised in the Rule 50(a) motion, the Court will not address this issue now. *Thomas v. Mineta*, 310 F.

---

[4] The shareholder contracts are unilateral because the shareholders already performed their obligation by purchasing the shares and owe no further obligation to the GSEs, and anticipatory breach claims traditionally do not apply to unilateral contracts or "bilateral contracts that have become unilateral by full performance on one side." Mot. to Dismiss Op. at *5–6 (citation omitted).

Supp. 2d 198, 204 (D.D.C. 2004) (citing *Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir. 2001).[5]

      *iv.*     *Challenge 4: Proof of Damages with Reasonable Certainty at Trial*

Defendants' final argument as to all Plaintiffs is that "Plaintiffs failed at trial to prove harm or damages with reasonable certainty, as Delaware and Virginia law require." Defs.' Mot. at 19. To resolve this challenge, the Court will recap the evolution of Plaintiffs' damages theory before addressing the evidentiary support for it at trial.[6]

At summary judgment the Court concluded that, because an event study by one of Defendants' experts showed a sharp decline in stock prices after the Third Amendment's announcement, there was a "lingering dispute of material fact as to whether the Third Amendment and its elimination of possible future dividends harmed plaintiffs by depriving them of much of the value of their shares." Mot. Summ. J. Op. at *11. Therefore, the Court allowed Plaintiffs to proceed to trial on this "lost-value" theory: "that the Third Amendment, by eliminating any possibility of future dividends for non-Treasury shareholders, deprived plaintiffs' shares of much of their value, even if such dividends were not reasonably certain to occur in the foreseeable

---

[5] And in any event, at the risk of sounding like a broken record, this exact issue was already decided by the Court, twice—at the motion to dismiss stage and in denying Defendants' motion for reconsideration thereafter. The Court identified a distinction between the Plaintiffs' anticipatory breach of contract claims, which were dismissed, from Plaintiffs' implied covenant claims, which were allowed to proceed: anticipatory breach of contract claims "seek to hold defendants presently accountable for a *future* breach of an express provision," while implied covenant claims "seek to hold defendants presently accountable for a *present* breach," because the implied covenant is an "ongoing obligation" for which "performance is always due." Reconsideration Order at 3. Therefore, "[t]he anticipatory breach claim and the implied covenant claims are not identical." Reconsideration Order at 4. Defendants provide no basis for the Court to change course at this final stage in the litigation, other than repeating that "[r]espectfully, the Court should reconsider." Defs.' Mot. at 32

[6] Plaintiffs urge the Court to rely on the law of the case here too, because "at the close of evidence at both trials, the Court correctly rejected arguments about the evidentiary support for Plaintiffs' damages claims that are recycled again here." Opp'n at 29–30. However, as explained *supra*, it would be nonsensical to treat the denial of a Rule 50(a) motion as law of the case in resolving a Rule 50(b) motion, which is by definition a "renewed" motion. The Court will therefore, viewing the evidence and all inferences therefrom in the light most favorable to Plaintiffs, determine whether no reasonable jury could have a legally sufficient evidentiary basis to find for Plaintiffs. *See* Fed. R. Civ. P. 50(a)(1), (b).

future." *Id.* However, the Court granted summary judgment to the Defendants regarding Plaintiffs' "lost dividends" theory—that "the Third Amendment deprived plaintiffs of dividends that they would have eventually received"—because there was insufficient evidence that the GSEs would have resumed paying Plaintiffs' dividends without the Third Amendment.[7] *Id.* at *9. The Court also rejected Plaintiffs' request for restitution because such relief is barred under HERA and under relevant equitable principles. *Id.* at *11.

Here, Defendants argue that Plaintiffs, in trying to prove the lost-value theory at trial, "failed to introduce evidence (1) attempting to show that current shareholders are worse off today than they would be absent the Third Amendment; (2) attempting to account for the substantial increases in share prices that occurred shortly after the Third Amendment; or (3) showing that the one-day decline in share prices on August 17, 2012 was attributable solely to the Net Worth Sweep, as opposed to other terms of the Third Amendment." Defs.' Mot. at 36. The Court will review each argument in turn, looking at the evidence presented at trial to determine whether a reasonable jury could have found that Plaintiffs proved damages under the "lost-value" theory with reasonable certainty. To reiterate the Rule 50(b) standard, the Court may not assess the credibility of testimony or weigh the evidence—"this Court's role is confined to verifying that the jury's verdict was one that a reasonable jury could have reached." *Bowie v. Maddox*, 540 F. Supp. 2d 204, 208 (D.D.C. 2008) (Lamberth, J.).

---

[7] This Court's summary judgment opinion fleshes out the reasoning behind the denial of the Plaintiffs' lost-dividends theory. In short: "[E]ven without the Third Amendment, the GSEs would not have been able to resume paying plaintiffs dividends without first paying down Treasury's Liquidation Preference . . . Thus, in order to find it reasonably certain that the Third Amendment actually deprived plaintiffs of future dividends, a jury would have to find it reasonably certain that, among other things, Treasury and FHFA eventually would have amended the PSPAs to allow a paydown of the Liquidation Preference." Mot. Summ. J. Op. at *9. The Court concluded that there was insufficient evidence in the record to support such a finding from a jury.

1.  <u>Harm to Current Shareholders</u>

Defendants' first challenge regarding damages is that there is no evidence to show that current shareholders are worse off today due to the Third Amendment; that "[a] one-day decline in share prices over eleven years ago, standing alone, does not demonstrate harm to current shareholders." Defs.' Mot. at 37–38. But, as Plaintiffs correctly observe, "Defendants are once again confusing the evidence that proves the *existence* of harm [to current shareholders] with the evidence that proves a reasonable *estimate* of that harm." Opp'n at 30 (emphasis added). Specifically, "[t]he one-day stock drop was the evidence used to provide a reasonable *estimate* of the measure of that harm. But it was far from the only evidence as to the *existence* of that harm." Opp'n at 31 (emphasis added). Indeed, Plaintiffs provided ample evidence for the jury to conclude that the Net Worth Sweep is causing harm to shareholders today. Opp'n at 30–31 (citing portions of trial transcripts). The Court reproduces a sampling of that evidence here:

- Plaintiffs' expert, Dr. Bala Dharan, testified that the Net Worth Sweep transferred 100 percent of the net worth of the GSEs to Treasury as dividends. Trial Tr. July 31, 2023, 1121:11–16.

- Plaintiffs' expert, Professor Anjan Thaknor, testified that before the Third Amendment, the GSEs were already paying a 10% annual dividend of $18.9 billion to Treasury, but "because of the [N]et [W]orth [S]weep, the GSEs ended up paying $150.2 billion—not in total—but in excess of the 10 percent dividend." Trial Tr. July 28, 2023, 880:23–881:5; 912:10–13. That difference is $111 billion.

- On cross-examination, Defendant Edward Demarco, Acting Director of FHFA, agreed with Plaintiffs' counsel that the GSEs "would have been way better with this $111

16

billion on their books" in the event they needed protection from any economic downturn.  Trial Tr. Aug. 8, 2023, 2394:22–2395:22.

- Plaintiffs' expert, Professor Joseph Mason, testified that, by transferring all profits from the GSEs to Treasury, the Net Worth Sweep made it such that "[a]ll those profits would not be available to the companies to reinvest in new operations or distribute to shareholders as dividends now or anytime in the future."  Trial Tr. July 27, 2023, 765:6–11.

- In response to Plaintiffs' counsel's question, "does the $1.6 billion[8] in damages from the Net Worth Sweep still persist today," Professor Mason responded "yes." Defendants' objection was overruled.  Trial Tr. July 27, 2023, 767:2–7.

In short, Defendants are wrong to assert that the only evidence of harm from the Net Worth Sweep was the one-day drop in stock price on the date it was announced.  The Court is satisfied that a reasonable jury could conclude, based on the evidence presented at trial, that current shareholders are harmed by the Net Worth Sweep.

## 2.  The Relevance of Post-Third Amendment Share Price Increases

Defendants' next challenge regarding damages is that Plaintiffs failed to account for the increases in share prices that occurred in the weeks following the August 17, 2012 price drop. Defs.' Mot. at 39.  But the jury was free to conclude that those rebound share prices were irrelevant in the ultimate finding of harm to current shareholders.  "That positive developments at the GSEs caused price increases is in no way inconsistent with this fundamental fact: the Net Worth Sweep causes permanent and ongoing harm to private shareholders by making it impossible for them to

---

[8] To reiterate, the market value of the GSE shares declined by a total of $1.6 billion on the day the Third Amendment was announced.

ever receive anything from the Companies, and by giving everything to Treasury." Opp'n at 32–33. The Net Worth Sweep is "a fundamental and permanent change to the capital structure of the company," permanently alienating shareholders from the profits of the GSEs, which remains in place to this day. Opp'n at 34. That is the entire point of Plaintiffs' "lost-value" theory that this Court allowed to proceed to trial. The factual significance of the post-Third Amendment share price increases was properly turned over to the jury to determine, and the Court will not disturb the jury's conclusion—that current shareholders experience harm from the Net Worth Sweep, despite the share price increase in the weeks following its announcement.

       3.   <u>Net Worth Sweep as the Sole Cause of the One-Day Decline in Share Prices</u>

Defendants third challenge regarding damages is that Plaintiffs "introduced no evidence to exclude an alternative cause of the share-price drop." Defs.' Mot. at 42. As context, the Third Amendment had two provisions: 1) the Net Worth Sweep, and 2) acceleration of the reduction of the mortgage portfolios (which is a "fancy way of saying that [the GSEs] were going to shrink a part of their business faster than they had been shrinking it before").[9] Trial Tr. July 27, 2023, 793:6–10. Defendants argue that Plaintiffs failed to isolate the effect of the Net Worth Sweep from the acceleration of the portfolio reduction, and therefore failed to eliminate the possibility that this other provision may have contributed to the stock price drop.

But the jury was presented with evidence to resolve this question. Plaintiffs elicited testimony from Dr. Mason in which he stated that, in his opinion, there was no reason to believe that anything besides the Net Worth Sweep could have caused the August 17, 2012 stock price drop. Trial Tr. July 27, 2923, 769:12–20. That is because, in his words, "the overriding effect

---

[9] The acceleration of reduction provision of the Third Amendment "start[ed] reducing [the GSEs] retained portfolios by 15 percent rather than 10 percent until they ultimately hit a floor of [$] 250 billion for each enterprise." Trial Tr. July 27, 2023, 793:2–5.

here comes from Treasury taking all the money generated by [the GSEs]" – i.e., the Net Worth Sweep. *Id.* at 769:22–24.

Defendants' challenge to that is as follows: Because Dr. Mason relied on the event study of Defendants' expert Dr. Attari, and that event study did not distinguish between the impact of the Net Worth Sweep and the acceleration of the portfolio reduction, Dr. Mason's testimony offers no basis for the jury to conclude that the Net Worth Sweep alone caused the stock price drop. Defs.' Mot. at 42–43. But as Plaintiffs correctly observe, Dr. Mason did not rely solely on Dr. Attari's event study—Dr. Mason "reviewed a wealth of materials, including financial filings by Fannie Mae and Freddie Mac, FHFA reports, documents produced in this case, emails, deposition testimony, [and] court documents" in forming his opinion as to the impact of the Net Worth Sweep. Trial Tr. July 27, 2023, 753:1–5. And *even if* Dr. Mason had only relied on Dr. Attari's event study in reaching his conclusion, *and* the study had failed to disaggregate a potentially confounding factor, that choice would go to the weight of Dr. Mason's opinion, which is for the jury to resolve. Opp'n at 39 (collecting cases).

The jury resolved this question in favor of Plaintiffs, and that conclusion was not unreasonable. On top of the evidence sampled *supra*, the jury heard two different experts testify that the Net Worth sweep was "unprecedented" in U.S. financial history. Trial. Tr. 1123:10, 898:13. As compared to the unprecedented Net Worth Sweep, a reasonable jury could conclude that "a slight change in the pace of retained portfolio reduction was not a significant financial event." Opp'n at 38. Thus, the Court will leave the jury's verdict undisturbed.

### C. Defendants' "Standing" Challenge Against Post-Third Amendment Purchasers

Defendants include a Hail Mary challenge: that "at a minimum," the Court should find that all Plaintiffs who bought shares after the Third Amendment lack standing because they suffered

no injury from the share price drop. Defs.' Mot. at 43. Plaintiffs rebuff this challenge as "another meritless attempt to attack the definition of the certified class" that "comes in the poorly packaged guise of a purported 'standing' argument." Opp'n at 40. The Court agrees with Plaintiffs: having heard this argument several times before from Defendants via various procedural vehicles, the Court will abide by the law of the case.

The Court first explained at the Motion to Dismiss stage that the rights related to dividends and liquidation preferences travel with the shares to subsequent purchasers. Mot. to Dismiss Op. at *8. This informed the certification of the classes, which included current shareholders who have owned their shares continuously since before the Third Amendment; and current shareholders who bought their shares after the Third Amendment. Class Cert. Op. at *1; *see id.* at *8 ("[B]ecause the '[r]ights associated with dividends and liquidation preferences inhere in the security,' the Court need not further divide the classes for those who purchased their shares after the Third Amendment.") (quoting Mot. to Dismiss Op. at *8)).[10]

During the first trial, Defendants filed a Motion to Decertify the Class. Class ECF No. 249; *see* Trial Tr. Oct. 31, 2022, 2377:2–4 (stating that the Motion to Decertify followed a "line of argument that was raised in the context of the Rule 50(a) [motion]").[11] The Court denied this motion from the bench because it "misunderstand[s] the theory of harm" that this Court allowed to proceed to trial—namely, the lost-value theory. *See* Trial Tr. Oct. 31, 2022, 2499:10–12; Mot. Summ. J. Op. at *11. As the Court explained in denying Defendants' Motion to Decertify, "[t]he

---

[10] The Court also held the same when resolving the parties' motions in limine before the first trial. *See Fairholme Funds, Inc. v. FHFA*, 636 F. Supp. 3d 144, 158 (D.D.C. 2022) ("Because 'the contractual rights [plaintiffs] seek to enforce . . . inhere in the security, traveling to each subsequent acquirer,' the time that any plaintiff purchased GSE shares is irrelevant . . . . ." (quoting Mot. to Dismiss Op. at *8)).

[11] Specifically, during first trial, the Defendants made a Rule 50(a) Motion and stated that their arguments also served as a "basis for decertifying the classes" because the classes "now consist of . . . the entire universe of people who own shares today that they purchased after the Third Amendment, who suffered no harm." Trial Tr. Oct. 26, 2022, 1823:20–23. Defendants then followed up with their written Motion to Decertify the Class.

drop in the stock price is not itself the alleged injury.  The alleged injury is that the Net Worth

Sweep effectively eliminated the dividend rights that came with the shares as they were originally

issued."  *See* Trial Tr. Oct. 31, 2022, 2499:14–17.  The Court further explained:

> "[W]hen someone buys a share in a company, they're purchasing a bundle of rights.
> And Plaintiffs are arguing here that the Net Worth Sweep removed one of the most
> valuable sticks from that bundle.  That's a type of claim that travels with the shares
> . . . The drop in stock prices is just a measure of damages[.]"

*Id.* at 2449:18–2450:1.

Now, Defendants argue that the Court should "reconsider its rulings" that the claims travel

with the shares.  Defs.' Mot. at 46.  The new twist that Defendants offer is to label this issue as a

standing problem for lack of injury, presumably because standing is a jurisdictional issue that

cannot be waived and can be raised at any point.  *Steffan v. Perry*, 41 F.3d 677, 697 n.20 (D.C.

Cir. 1994) (en banc).  But this challenge offers nothing new in its substance.  It is virtually

indistinguishable from the challenges that this Court has already resolved at multiple points

throughout this litigation, both pre-trial and during trial.  The Court adheres to the law of the case:

that claims challenging the Net Worth Sweep as a breach of the implied covenant in the shareholder

certificates run with the shares, and thus are injuries experienced by all current shareholders,

including post-Third Amendment purchasers.  Therefore, Plaintiffs have identified an injury that

satisfies the requirement for Article III standing.

Defendants have now exhausted all procedural vehicles at their disposal before this Court.

The Court stands by its prior rulings, and to the extent Defendants questioned the sufficiency of

the evidence at trial, the Court is satisfied that a reasonable jury could come to the verdict that was

rendered here.

## CONCLUSION

For the foregoing reasons, the Court will **DENY** Defendants' Motion for Judgment as a Matter of Law [Berkley ECF No. 430, Class ECF No. 423]. The jury's verdict will stand.

A separate Order consistent with this Memorandum Opinion shall issue.

Date: _____

Royce C. Lamberth
United States District Judge

22

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BERKLEY INSURANCE, Co., *et al.*,<br><br>              Plaintiffs,<br><br>     v.<br><br>FEDERAL HOUSING FINANCE<br>AGENCY, *et al.*,<br><br>              Defendants. | Case No. 1:13-cv-1053 (RCL) |
| In Re Fannie Mae / Freddie Mac Senior<br>Preferred Stock Purchase Agreement Class<br>Action Litigations<br><br><br>This document relates to:<br>*ALL CASES* | Case No. 1:13-mc-01288 (RCL) |

## <u>FINAL JUDGMENT</u>

This action came before the Court for a trial by jury. The issues having been tried and the jury having rendered its verdict on August 14, 2023,

IT IS ORDERED AND ADJUDGED that judgment is hereby entered in favor of Lead Plaintiffs/Class Representatives Joseph Cacciapalle, Michelle M. Miller, Timothy J. Cassell, and Barry P. Borodkin in Case No. 1:13-mc-01288 (RCL) (hereinafter "Class Plaintiffs"), on behalf of themselves and the following Classes that were certified by the Court in its Order of December 7, 2021:

(1) All holders of junior preferred stock in the Federal National Mortgage Association (known as "Fannie Mae") as of December 7, 2021, or their successors in interest to the

extent shares were sold after that date and before any final judgment[1] (the "Fannie Mae Preferred Class");

(2) All holders of junior preferred stock in the Federal Home Loan Mortgage Corporation (known as "Freddie Mac") as of December 7, 2021, or their successors in interest to the extent shares were sold after that date and before any final judgment (the "Freddie Mac Preferred Class"); and

(3) All holders of common stock in Freddie Mac as of December 7, 2021, or their successors in interest to the extent shares were sold after that date and before any final judgment (the "Freddie Mac Common Class").

IT IS FURTHER ORDERED AND ADJUDGED that judgment is also hereby entered in favor of Plaintiffs Berkley Insurance Company, Acadia Insurance Company, Admiral Insurance Company, Berkley Regional Insurance Company, Carolina Casualty Insurance Company, Midwest Employers Casualty, Nautilus Insurance Company and Preferred Employers Insurance Company in Case No. 1:13-cv-1053 (RCL) (hereinafter "WR Berkley Plaintiffs"), who will recover out of the overall judgment amounts listed for the Classes below. The portion of the judgment awarded to the WR Berkley Plaintiffs shall be based on their having opted out of the Classes with respect to certain holdings of Fannie Mae preferred shares and Freddie Mac preferred shares owned as of the date of their April 22, 2022 exclusion letter through to the date of this

---

[1] "Final judgment" for purposes of each the definitions of the Classes means the judgment of the Court after (1) any and all appeals to the U.S. Court of Appeals for the D.C. Circuit (the "Court of Appeals") have been adjudicated, or the time for appeal to the Court of Appeals has expired with no appeal having been taken, (2) any and all petitions for writ of certiorari to the U.S. Supreme Court (the "Supreme Court") have been adjudicated, or the time for filing petitions for writ of certiorari has expired with no petition having been filed, and (3) if any petition for writ of certiorari is granted, any and all appeals to the Supreme Court have been adjudicated. *See* ECF No. 140-1 at 6 (Class Notice Stipulation).

judgment, and proven at trial through PX-0462; provided that (a) the distribution of this allocable award to the WR Berkley Plaintiffs shall be dependent on the WR Berkley Plaintiffs still owning the shares identified in PX-0462 as of the date of the final, non-appealable judgment in this case, and (b) that allocable award as to the WR Berkley Plaintiffs shall be determined according to the same methodology used by the Court to determine the share of the judgment allocable to the various members of the Classes, except that no deduction shall be made from the WR Berkley Plaintiffs' share for any award of attorneys' fees or non-taxable costs to Class Counsel;

IT IS FURTHER ORDERED AND ADJUDGED that the judgment amount for each of the Classes shall be reduced by the sum of damages and interest attributable to "Specified Shares," as defined by the Plan of Allocation, incorporated herein.

IT IS FURTHER ORDERED AND ADJUDGED that the Court approves the Plan of Allocation filed by Class Counsel on January 22, 2024, subject to the Court's retaining jurisdiction to resolve any objections by class members to that Plan of Allocation following the issuance of appropriate notice to the classes of that plan;

IT IS FURTHER ORDERED AND ADJUDGED that said judgment shall be in the following amounts:

(1) $299,400,000.00 in favor of the Fannie Mae Preferred Class, plus $ 199,650,000.00

in prejudgment interest;

(2) $281,800,000.00 in favor of the Freddie Mac Preferred Class;

(3) $31,200,000.00 in favor of the Freddie Mac Common Class,

for a total judgment in the amount of $ 812,050,000.00;

IT IS FURTHER ORDERED AND ADJUDGED that post-judgment interest shall accrue separately and additionally on the principal, prejudgment interest, and costs and expenses

3

awarded to each separate Class in this Judgment from the date of entry of this judgment until paid in full, at the rate established under 28 U.S.C. § 1961, with post-judgment interest computed daily to the date of payment and compounded annually;

IT IS FURTHER ORDERED AND ADJUDGED that taxable costs in this action shall be awarded to Plaintiffs and their counsel in accordance with Federal Rule of Civil Procedure 54(d)(1) and Local Rule of Civil Procedure 54.1, except that the deadline for the submission of the request for such taxable costs shall be the later of 30 days after the date this Judgment is entered or 30 days after the date this Court resolves any motion under Federal Rules of Civil Procedure 50, 59, or 60;

IT IS FURTHER ORDERED AND ADJUDGED that:

(1) Judgment in favor of the Fannie Mae Preferred Class shall hereby be entered jointly and severally against Defendants Fannie Mae and the Federal Housing Finance Agency (often referred to as "FHFA" or "the Conservator"), in its role as Conservator of the company known as Fannie Mae;

(2) Judgment in favor of the Freddie Mac Preferred Class shall hereby be entered jointly and severally against Defendants Freddie Mac and FHFA, in its role as Conservator of the company known as Freddie Mac;

(3) Judgment in favor of the Freddie Mac Common Class shall hereby be entered in jointly and severally against Defendants Freddie Mac and FHFA, in its role as Conservator of the company known as Freddie Mac;

IT IS FURTHER ORDERED AND ADJUDGED that the Court shall retain jurisdiction to award attorneys' fees and nontaxable costs and expenses in this action, out of the final judgment amounts, to counsel for Lead Plaintiffs/Class Representatives. In accordance with Federal Rules of Civil Procedure 54(d)(2) and 23(h), the Court extends the deadline for Lead Plaintiffs/Class Representatives and their counsel to make a motion for such attorneys' fees and costs beyond the

date that is 14 days from the date of this Judgment, with such deadline being the later of 45 days

after the date this Judgment is entered or 30 days after the date this Court resolves any motion filed

under Federal Rule of Civil Procedure 50, 59, or 60, unless set at a different time through

subsequent order of this Court.

This is a final appealable order, subject to the possibility that the Court may exercise its

discretion under Federal Rule of Civil Procedure 58(e) to order that the anticipated motion for

attorneys' fees and nontaxable expenses under Federal Rules of Civil Procedure 54(d)(2) and 23(h)

shall be treated as a timely motion under Rule 59 for purposes of establishing the deadline for filing

notices of appeal under Federal Rule of Appellate Procedure 4(a)(4).

SO ORDERED.

DATED this 20th day of _____ march _____, 2024.

Royce C. Lamberth
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

<table>
<tr>
<td>In Re Fannie Mae / Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations</td>
<td>Case No. 1:13-mc-01288 (RCL)</td>
</tr>
</table>

## <u>ORDER GOVERNING PLAN OF ALLOCATION</u>

Before the Court is Plaintiffs' proposed Plan of Allocation.    The Court being fully advised in the premises, and for good cause shown, the Court hereby ORDERS as follows:

**I.     Definitions.  For the purposes of this Order:**

a.     "Fannie Mae" means the Federal National Mortgage Association.

b.     "Freddie Mac" means the Federal Home Loan Mortgage Corporation.

c.     "Fannie Preferred Class" means all current holders of junior preferred stock in Fannie Mae listed in Appendix A hereto as of December 7, 2021, or their successors in interest to the extent shares are sold after December 7, 2021, and before the date of the Final Non- appealable Judgment.

d.     "Freddie Preferred Class" means all current holders of junior preferred stock in Freddie Mac listed in Appendix B hereto as of December 7, 2021, or their successors in interest to the extent shares are sold after December 7, 2021, and before the date of the Final Non- appealable Judgment.

e.     "Freddie Common Class" means all current holders of common stock in Freddie Mac as of December 7, 2021, or their successors in interest to the extent shares are sold after December 7, 2021, and before the date of the Final Non-appealable Judgment.

f.     "Final Non-appealable Judgment" means the judgment of the Court after (1) any and all appeals to the U.S. Court of Appeals for the D.C. Circuit (the "Court of Appeals") have

been adjudicated, or the time for appeal to the Court of Appeals has expired with no appeal having been taken, (2) any and all petitions for writ of certiorari to the U.S. Supreme Court (the "Supreme Court") have been adjudicated, or the time for filing petitions for writ of certiorari has expired with no petition having been filed, and (3) if any petition for writ of certiorari is granted, any and all appeals to the Supreme Court have been adjudicated.

g.      "Stated Value" means the dollar amount identified in the Certificate of Designation of each series of Fannie Mae Junior Preferred Stock as the "stated value" of the shares in that series.  For example, the Stated Value of shares of Fannie Mae Series T Junior Preferred Stock is $25.

h.      "Redemption Price" means the dollar amount identified in the Certificate of Designation of each series of Freddie Mac Junior Preferred Stock as the "redemption price" or "redemption value" of the shares in that series.  For example, the Redemption Price of shares of Freddie Mac Series B Junior Preferred Stock is $50 per share.

i.      "Classes" means, collectively, the Fannie Preferred Class, the Freddie Preferred Class, and the Freddie Common Class.

j.      "Class Counsel" means the law firms appointed by the Court to represent the Classes in this action:  Boies Schiller Flexner LLP; Kessler Topaz Meltzer & Check, LLP; Bernstein Litowitz Berger & Grossmann LLP; and Grant & Eisenhofer P.A.

k.      "Total Plaintiffs' Award" means the sum of all damages and interest awarded during the trial of the claims in this matter and post-trial proceedings, and allowed after Defendants' appeal (or after the expiration of time allowed for filing such appeal, if no appeal is filed within that time), inclusive of attorneys' fees, non-taxable litigation expenses, and pre- and post-judgment interest

as have been or may be awarded to Plaintiffs, and inclusive of any interest earned through such investments as the Court may direct following Defendants' payment of the judgment.

l.    "Distribution Administrator" means A.B. Data, the administrator proposed by Plaintiffs to be appointed by the Court pursuant to this Order to recommend for the Court's approval the final allocation of the Net Class Award to Class members, to administer the distribution of the Net Class Award to the Class members, and to perform such incidental and additional duties as are set forth in this Order or as the Court may subsequently direct.

m.    "Net Class Award" means the Total Plaintiffs' Award less: (i) service awards, if any, to the representative Plaintiffs; (ii) attorneys' fees and litigation expenses awarded to Class Counsel; (iii) compensation and expenses paid or reimbursed to the Distribution Administrator; (v) any additional administrative expenses that may be charged against the Total Plaintiffs' Award at the Court's direction; and (vi) the Net Berkley Award.

n.    "Fannie Preferred Net Class Award" means the portion of the Net Class Award to be allocated to the Fannie Preferred Class.

o.    "Freddie Preferred Net Class Award" means the portion of the Net Class Award to be allocated to the Freddie Preferred Class.

p.    "Freddie Common Net Class Award" means the portion of the Net Class Award to be allocated to the Freddie Common Class.

q.    "Net Berkley Award" means the portion of the Total Plaintiffs' Award to be allocated to the WR Berkley Plaintiffs.

r.    "Opt-out" means a shareholder, other than one or more of the WR Berkley Plaintiffs, that submitted a timely, complete, and accurate request for exclusion from the relevant Class(es)

in accordance with the instructions set forth in the Notice of Class Action, and which included an identification of Specified Shares.

s.     "Specified Shares" means the shares of Fannie Mae Junior Preferred Stock, Freddie Mac Junior Preferred Stock, and/or Freddie Mac Common Stock identified in the "Exclusion Report" dated May 13, 2022 (filed as Ex. D in ECF No. 153, Case No. 1:13-mc-01288-RCL) in which an identified Opt-out provided a valid exclusion request by identifying the series and number of shares owned.  A list of valid Specified Shares is set forth in Appendix C hereto.

t.     "Held Specified Shares" means Specified Shares still held by Opt-outs at the time of distribution.

u.     "WR Berkley Plaintiffs" means Berkley Insurance Company, Acadia Insurance Company, Admiral Insurance Company, Berkley Regional Insurance Company, Carolina Casualty Insurance Company, Midwest Employers Casualty, Nautilus Insurance Company and Preferred Employers Insurance Company.

## II.     Allocation Plan and Distribution Procedures

### A.     Appointment of Distribution Administrator

1.     The Court hereby appoints A.B. Data as the Distribution Administrator.  A.B. Data is currently serving as the Notice Administrator for the Classes upon prior order of this Court (ECF 141) and previously sent the Class Notice to potential members of the Class.  As a result, there are significant efficiencies from A.B. Data serving in the role of Distribution Administrator.

### B.     Duties of Distribution Administrator

2.     The Distribution Administrator shall be responsible for finalizing with Class Counsel a final allocation plan ("Allocation Plan") and a final distribution method ("Distribution Method") of the Net Class Award to the members of the Classes and the Net Berkley Award to the WR Berkley Plaintiffs.  The Allocation Plan and Distribution Method shall be developed in a

4

manner that implements the guidelines and principles set forth in this Order, under supervision from the Court and Class Counsel, and that is subject to ultimate approval by the Court after notice is provided to the Classes and members of the Classes are given an opportunity to object.

3.     The Distribution Administrator is authorized to make reasonable expenditures to secure the resources and assistance reasonably necessary to the performance of its duties.  Such expenses, and reasonable compensation for the work performed by the Distribution Administrator, will be paid and reimbursed from the Judgment Fund periodically.

**C.     Procedures and Principles for the Allocation Plan**

4.     The Allocation Plan shall allocate the Net Class Award to members of the Classes on a proportional basis.  Within each Class, each Class member's proportional share of the Net Class Award for that Class will reflect a reasonable allocation.

     a.     For the Fannie Preferred Class, and subject to the provisions below, that reasonable allocation will be based on the proportion of the aggregate Stated Value of all the issued shares in the Fannie Preferred Class listed in Appendix A that is represented by each Fannie Mae junior preferred share held by Class members.

     b.     For the Freddie Preferred Class, and subject to the provisions below, that reasonable allocation will be based on the proportion of the aggregate Redemption Price of all the issued shares in the Freddie Preferred Class listed in Appendix B that is represented by each Freddie Mac junior preferred share held by Class members.

     c.     For the Freddie Common Class, and subject to the provisions below, that reasonable allocation will be based on the proportion of the total number of outstanding Freddie Mac common shares that is represented by each Freddie Mac common share held by Class members.

     d.     For each of the following, as discussed below, the number of Held Specified Shares shall not be included in the calculation of the total number of shares in each Class.

5.     In order to implement the foregoing principles, and subject to the input and recommendations of the Distribution Administrator and Class Counsel, the Distribution Administrator shall consult appropriate records, data, and such other sources as the Distribution Administrator may reasonably determine to be suitable and reliable for the purposes of

     a.     determining an aggregate Stated Value of all the issued shares in the Fannie Preferred Class (the "Fannie Preferred Class Value") by aggregating the Stated Values of all the issued shares listed in Appendix A, adjusted as necessary and appropriate to account for the aggregate Stated Value of Held Specified Shares of Fannie Preferred and the aggregate Stated Value of Fannie Preferred shares held by WR Berkley Plaintiffs; and

     b.     determining an aggregate Redemption Price of all the issued shares in the Freddie Preferred Class (the "Freddie Preferred Class Value") by aggregating the Redemption Prices of all the issued shares listed in Appendix B, adjusted as necessary and appropriate to account for the aggregate Redemption Price of Held Specified Shares of Freddie Preferred and the aggregate Redemption Price of Freddie Preferred shares held by WR Berkley Plaintiffs; and

     c.     determining the number of issued shares in the Freddie Common Class, adjusted as necessary and appropriate to account for Held Specified Shares of Freddie Common and Freddie Common shares held by WR Berkley Plaintiffs.

6.     As discussed in more detail below, a sample distribution to a member of the Fannie Preferred Class is represented by this formula:

6

*Fannie Preferred Class Member Distribution*

$= (Fannie\ Preferred\ Net\ Class\ Award)$

$\times \dfrac{Number\ of\ Fannie\ Preferred\ Shares\ Held \times Stated\ Value\ per\ Share}{Fannie\ Preferred\ Class\ Value - (Held\ Specified\ Shares\ of\ Fannie\ Preferred\ \ x\ Stated\ Value\ per\ Share)}$

7.    In other words, the Distribution Administrator shall compute the share of the Fannie Preferred Net Class Award to be allocated to each share of Fannie Mae Junior Preferred Stock held by members of the Fannie Preferred Class, which shall bear the same ratio to the Fannie Preferred Net Class Award as each share bears to the Fannie Preferred Class Value.

8.    As discussed in more detail below, a sample distribution to a member of the Freddie Preferred Class is represented by this formula:

*Freddie Preferred Class Member Distribution*

$= (Freddie\ Preferred\ Net\ Class\ Award)$

$\times \dfrac{Number\ of\ Freddie\ Preferred\ Shares\ Held \times Redemption\ Price\ per\ Share}{Freddie\ Preferred\ Class\ Value - (Held\ Specified\ Shares\ of\ Freddie\ Preferred\ x\ Redemption\ Price\ per\ Share)}$

9.    In other words, the Distribution Administrator shall compute the share of the Freddie Preferred Net Class Award to be allocated to each share of Freddie Mac Junior Preferred Stock held by members of the Fannie Preferred Class, which shall bear the same ratio to the Freddie Preferred Net Class Award as each share bears to the Freddie Preferred Class Value.

10.    As discussed in more detail below, a sample distribution to a member of the Freddie Common Class is represented by this formula:

*Freddie Common Class Member Distribution*

$= (Freddie\ Common\ Net\ Class\ Award)$

$\times \dfrac{Number\ of\ Freddie\ Common\ Shares\ Held}{Freddie\ Common\ Shares\ Issued - Held\ Specified\ Shares\ of\ Freddie\ Common}$

11.     In other words, the Distribution Administrator shall allocate the Freddie Common Net Class Award pro rata to the shares in the Freddie Common Class.

**D.     Procedures for Payment of the Net Class Award**

12.     Prior to disbursement of any funds to any Class members, the Court will establish procedures for approval of the Allocation Plan, including, but not limited to, procedures for notifying Class members of the Allocation Plan and providing them an opportunity to object thereto.

13.     The Distribution Administrator shall propose, and the Court shall approve, a final Distribution Method that reflects the following principle:  the Distribution Administrator shall consult appropriate records, data, and such other sources as the Distribution Administrator may reasonably determine to be suitable and reliable for the purposes of:

a.     determining the portion of the Net Class Award to be disbursed to each broker that holds shares of Fannie Mae Junior Preferred Stock, Freddie Mac Junior Preferred Stock, and/or Freddie Mac Common Stock on behalf of its account holders as of the record date for disbursement to be determined by the Distribution Administrator and approved by the Court (the "Record Date") (each a "Broker Disbursement"), and the portion of each Broker Disbursement to be disbursed to each Class member based on their respective holdings as of the Record Date;

b.     determining the portion of the Net Class Award, if any, to be disbursed directly to each registered shareholder of record that holds shares of Fannie Mae Junior Preferred Stock, Freddie Mac Junior Preferred Stock, and/or Freddie Mac Common Stock as of the Record Date (each a "Direct Disbursement"); and

c.    identifying the Opt-outs and the number of Specified Shares each Opt-out holds as of the Record Date.

14.    The Distribution Administrator shall propose a Distribution Method pursuant to which:

a.    the Net Class Award will be disbursed to Class Members via Broker Disbursements and Direct Disbursements;

b.    Opt-outs who hold Specified Shares as of the Record Date will be excluded from disbursement with regard to the Specified Shares they hold as of the Record Date; and

c.    to the extent that as of the Record Date any Opt-outs hold shares in addition to their Specified Shares ("Additional Shares"), such Opt-outs will not be excluded from disbursement with regard to the Additional Shares.[1]

15.    Given the Allocation Plan and Distribution Method, Plaintiffs expect there will not be any unclaimed or undistributed funds in this case. The Court shall defer decision on the disposition of undistributed funds until such time as the amount of undistributed funds, if any, has been determined.

16.    In implementing the Allocation Plan and Distribution Method, the Distribution Administrator shall issue the Net Berkley Award to the WR Berkley Plaintiffs based on the shares they held on the date of their opt-out notice, as proven in trial in PX-0462, in accordance with the procedures and principles described herein with respect to the Net Class Award except that the

---

[1] For the avoidance of doubt, to the extent that as of the Record Date an Opt-out owns Additional Shares, those Additional Shares shall be eligible for disbursements to the same extent as any other shares held by members of the Classes as of the Record Date.

portion of the Total Plaintiffs' award allocable to the WR Berkley Plaintiffs shall not be reduced

by any of the amounts referenced in the definition of Net Class Award.


DATED: ___3/20/24___


_____
Hon. Royce C. Lamberth, U.S.D.J.

10

## Appendix A:  Fannie Mae Junior Preferred Stock

8.25% Non-Cumulative Preferred Stock, Series T (OTCBB: FNMAT)
Fixed-to-Floating Rate Non-Cumulative Preferred Stock, Series S (OTCBB: FNMAS)
7.625% Non-Cumulative Preferred Stock, Series R (OTCBB: FNMAJ)
6.75% Non-Cumulative Preferred Stock, Series Q (OTCBB: FNMAI)
Variable Rate Non-Cumulative Preferred Stock, Series P (OTCBB: FNMAH)
Variable Rate Non-Cumulative Preferred Stock, Series O (OTCBB: FNMFN)
5.375% Non-Cumulative Convertible Series 2004-1 Preferred Stock (OTCBB: FNMFO)
5.50% Non-Cumulative Preferred Stock, Series N (OTCBB: FNMAK)
4.75% Non-Cumulative Preferred Stock, Series M (OTCBB: FNMAL)
5.125% Non-Cumulative Preferred Stock, Series L (OTCBB: FNMAN)
5.375% Non-Cumulative Preferred Stock, Series I (OTCBB: FNMAG)
5.81% Non-Cumulative Preferred Stock, Series H (OTCBB: FNMAM)
Variable Rate Non-Cumulative Preferred Stock, Series G (OTCBB: FNMAO)
Variable Rate Non-Cumulative Preferred Stock, Series F (OTCBB: FNMAP)
5.10% Non-Cumulative Preferred Stock, Series E (OTCBB: FNMFM)
5.25% Non-Cumulative Preferred Stock, Series D (OTCBB: FDDXD)

**Appendix B:  Freddie Mac Junior Preferred Stock**

Variable Rate, Non-Cumulative Preferred Stock, Series I (OTCQB: FMCCI)
5% Non-Cumulative Preferred Stock, Series KK (OTCQB: FMCKK)
Variable Rate, Non-Cumulative Preferred Stock, Series G (OTCQB: FMCCG)
5.1% Non-Cumulative Preferred Stock, Series H (OTCQB: FMCCH)
5.79% Non-Cumulative Preferred Stock, Series K (OTCQB: FMCCK)
Variable Rate, Non-Cumulative Preferred Stock, Series L (OTCQB: FMCCL)
Variable Rate, Non-Cumulative Preferred Stock, Series M (OTCQB: FMCCM)
Variable Rate, Non-Cumulative Preferred Stock, Series N (OTCQB: FMCCN)
5.81% Non-Cumulative Preferred Stock, Series O (OTCQB: FMCCO)
6% Non-Cumulative Preferred Stock, Series P (OTCQB: FMCCP)
Variable Rate, Non-Cumulative Preferred Stock, Series J (OTCQB: FMCCJ)
5.7% Non-Cumulative Preferred Stock, Series KP (OTCQB: FMCKP)
Variable Rate, Non-Cumulative Perpetual Preferred Stock, Series S (OTCQB: FMCCS)
6.42% Non-Cumulative Perpetual Preferred Stock, Series T (OTCQB: FMCCT)
5.9% Non-Cumulative Perpetual Preferred Stock, Series KO (OTCQB: FMCKO)
5.57% Non-Cumulative Perpetual Preferred Stock, Series KM (OTCQB: FMCKM)
5.66% Non-Cumulative Perpetual Preferred Stock, Series KN (OTCQB: FMCKN)
6.02% Non-Cumulative Perpetual Preferred Stock, Series KL (OTCQB: FMCKL)
6.55% Non-Cumulative Perpetual Preferred Stock, Series KI (OTCQB: FMCKI)
Fixed-to-Floating Rate Non-Cumulative Perpetual Preferred Stock, Series KJ (OTCQB: FMCKJ)
5.1% Non-Cumulative Preferred Stock (OTC: FREJO)
5.3% Non-Cumulative Preferred Stock (OTC: FREJP)
5.81% Non-Cumulative Preferred Stock (OTC: FREGP)
5.81% Non-Cumulative Preferred Stock (OTC: FREJN)

**Appendix C - List of Valid Opt-Outs (Green)**
*In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations*
**Exclusion Report**

| Exclusion ID # | Name | Postmark Date | Fannie Mae Junior Preferred Stock | Freddie Mac Junior Preferred Stock | Freddie Mac Common Stock | Ineligible Stock | Requests To Be Exclude From | Exclusion Type |
|---|---|---|---|---|---|---|---|---|
| | D    M M    r | | 7 Shares (Not Specified) | | 9 Shares | | | M |
| | d r R M | | | | 48 Shares | | | M |
| | d r r | | | | 1,194 Shares | | | M |
| | d    rr | | 25,000 FNMAT 5,000 FNMAH 32,040 FNMAH 10,000 FNMAT 3,500 FNMAT 20,060 FNMAS | 5,000 FMCKJ 2,082 FMCKL 1,075 FMCCS 590 FMCCS | | M | | M |
| | M r | | 200 FNMAT | 400 FMCKJ | | | | M |
| | M    R R    r R | | Not Provided | Not Provided | Not Provided | | d | M |
| | M    d R R R | | Not Provided | Not Provided | Not Provided | | d | M |
| | R r R d | | Not Provided | Not Provided | Not Provided | | d | M |
| | d r R M | | | Not Provided | 50 Shares | | | M |
| | D d M r    r | | Not Provided | Not Provided | Not Provided | | d | M |
| | M    r    r | | | | 5,100 Shares | M | | M |
| | | | | | 500 Shares | M | | M |
| | r    d | | | | 4,490 Shares | M | | M |
| | R r    r | | | 200 FMCKJ, SRS57 | | M | | M |
| | rr | | Not Provided | Not Provided | Not Provided | | | M |
| | M M    r r M M | | | | 2,136 Shares | | | M |
| | dr    rr | | | | 110,000 Shares | M r | | M |

**Appendix C - List of Valid Opt-Outs (Green)**
*In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations*
**Exclusion Report**

| Exclusion ID # | Name | Postmark Date | Fannie Mae Junior Preferred Stock | Freddie Mac Junior Preferred Stock | Freddie Mac Common Stock | Ineligible Stock | Requests To Be Exclude From | Exclusion Type |
|---|---|---|---|---|---|---|---|---|
| | | | N/A | N/A | N/A | M r | | M |
| | r | | 1,750 FNMAS 5,000 FNMAT 525 FNMFN 1,050 FNMAH 3,000 FNMAK 540 FNMAM 5,250 FNMAP | 575 FMCCI 650 FMCCM 1,050 FMCKO 1,075 FMCKI 565 FMCCL 7,500 FMCKM 5,500 FMCKN | | | | M |
| | M    R | | 6,750 FNMAS | | | M r | | M |
| | r | | 12,000 FNMAS 1,580 FNMAG 1,000 FNMAL 1,350 FNMAK 4,980 FNMAM 400 FNMAN | 10,000 FMCKJ 2,100 FMCKM | 2,000 Shares | M r | | M |
| | M    r  d | | 2,028 FNMAH 3,000 FNMAS 2,640 FNMAY | 1,175 FMCKL 1,125 FMCJK | | | | M |
| | M r | | 1 FNMAK | 1 FMCKK | 20,500 Shares | M r | | M |
| | r      r | | 7,977,023 Series O 230,000 Series R 1,000 Series S | | | r    M r    M r | | M |
| | | | Not Provided | Not Provided | Not Provided | | d | M |
| | | | 16,173 Shares (Not Specified) | 3,592 Shares (Not Specified) | | | d | M |
| | r | | Fannie Mae shares through an IRA with Fidelity Investments | | | | d | M |
| | r      r | | Not Provided | Not Provided | Not Provided | | d | M |
| | r      D      r | | 3,680 FNMAS | | 8,286 Shares | M | d | M |
| | r | | 200 Shares (Not Specified) | 200 Shares (Not Specified) | | | | M |
| | r      D  r  d r | | Not Provided | Not Provided | Not Provided | | | M |
| | d    r | | | | | | | M |

**Appendix C - List of Valid Opt-Outs (Green)**
*In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations*
**Exclusion Report**

| Exclusion ID # | Name | Postmark Date | Fannie Mae Junior Preferred Stock | Freddie Mac Junior Preferred Stock | Freddie Mac Common Stock | Ineligible Stock | Requests To Be Exclude From | Exclusion Type |
|---|---|---|---|---|---|---|---|---|
| | d  r   d | | | | | | | M |
| | d  r    r | | | | | | | M |
| | r   R       r | | | | | | | M |
| | r            r | | | | | | | M |
| | M d         r<br>    r | | | | | | | M |
| |           r | | | | | | | M |
| | r  rr d      r<br>    r | | | | | | | M |
| | Phillip M Brauckmann | 4/7/2022 | 200 FNMAT | 400 FMCKJ | N/A | - | All Classes | MAIL |
| | M       r    r | | | | 5,100 Shares | M | | M |
| | | | | | | d r        M r<br><br>d r        M r<br>r  r | | M |
| | r     d    r | | | 501 FMCKJ | | | | M |
| | M      R | | 6,750 FNMAS | | | M<br>       r | | M |
| |        r | | 1,750 FNMAS<br>5,000 FNMAT<br>525 FNMFN<br>1,050 FNMAH<br>3,000 FNMAK<br>540 FNMAM<br>5,250 FNMAP | 575 FMCCI<br>650 FMCCM<br>1,050 FMCKO<br>1,075 FMCKI<br>565 FMCCL<br>7,500 FMCKM<br>5,500 FMCKN | | | | M |
| | dr    rr   r | | | | 110,000 Shares | M<br>       r | | M |
| | | | | | | M<br>       r | | M |

**Appendix C - List of Valid Opt-Outs (Green)**
*In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations*
**Exclusion Report**

| Exclusion ID # | Name | Postmark Date | Fannie Mae Junior Preferred Stock | Freddie Mac Junior Preferred Stock | Freddie Mac Common Stock | Ineligible Stock | Requests To Be Exclude From | Exclusion Type |
|---|---|---|---|---|---|---|---|---|
| | Michael Carmody | | 2,028 FNMAH 3,000 FNMAS 2,640 FNMAY | 1,175 FMCKL 1,125 FMCJK | | | | M |
| | M r | | 1 FNMAK | 1 FMCKK | 20,500 Shares | M r | | M |
| | Alvin Wilson Jr. | | 12,000 FNMAS 1,580 FNMAG 1,000 FNMAL 1,350 FNMAK 4,980 FNMAM 400 FNMAN | 10,000 FMCKJ 2,100 FMCKM | 2,000 Shares | M r | | M |
| | Doug and Mary Wickham | | Not Provided | Not Provided | Not Provided | - | | M |
| | Sara Rivera | 4/21/2022 | N/A | N/A | 100 Shares | 100 FNMA | All Classes | MAIL |
| | James & Ruthanne Mcvey | | N/A | N/A | Joint Shares: 900 Shares James McVey: 11,080 Shares Ruthanee McVey: 1,100 Shares | FNMA: Joint Shares: 900 Shares James McVey: 11,270 Shares Ruthanee McVey: 1,100 Shares | All Classes | MAIL |
| | r          r | | 7,977,023 Series O 230,000 Series R 1,000 Series S | | | r     M r     M r | | MAIL |
| | Robert Yew | 4/18/2022 | 2 FNMAS | N/A | 14,000 Shares | - | All Classes | MAIL |
| | d      r | | | | | | | MAIL |
| | d  r  d | | | | | | | MAIL |
| | d  r     r | | | | | | | MAIL |
| | r   R       r | | | | | | | MAIL |
| | r             r | | | | | | | MAIL |

**Appendix C - List of Valid Opt-Outs (Green)**
*In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations*
**Exclusion Report**

| | Exclusion ID # | Name | Postmark Date | Fannie Mae Junior Preferred Stock | Freddie Mac Junior Preferred Stock | Freddie Mac Common Stock | Ineligible Stock | Requests To Be Exclude From | Exclusion Type |
|---|---|---|---|---|---|---|---|---|---|
| | | M d       r  r | | | | | | | MAIL |
| | | r | | | | | | | MAIL |
| | | r   rr d      r  r | | | | | | | MAIL |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FAIRHOLME FUNDS, INC.**, *et al.*, | |
| *Plaintiffs*, | |
| **v.** | **Case No. 1:13-cv-1053-RCL** |
| **FEDERAL HOUSING FINANCE AGENCY**, *et al.*, | |
| *Defendants*. | |
| **In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations** | **Case No. 1:13-mc-1288-RCL** |
| This Order relates to: ALL CASES | |

## MEMORANDUM AND ORDER

More than a decade after plaintiffs filed the first complaint in this case, it is ready for final judgment. In August of 2023, a jury found for plaintiffs and awarded damages. In October, the Court ruled that plaintiffs were entitled to prejudgment interest. But the Court has refrained from entering a final, appealable judgment until it has approved plaintiffs' plan for allocating damages.

Plaintiffs have now submitted a proposed plan of allocation and have moved for the Court to approve its plan and enter judgment.[1] *See* Pls.' Mot., Berkley ECF No. 423; Class ECF No. 415. For the foregoing reasons, the Court will **GRANT** plaintiffs' motion. However, it will accept

---

[1] For purposes of this Order, "Berkley ECF No." refers to the docket in No. 1:13-cv-1053, and "Class ECF No." refers to the docket in No. 1:13-mc-1288.

one of defendants' objections and will modify the judgment to slightly reduce the damages to be distributed by the amount of the jury's damages award attributable to shares held by the few opt-outs other than the Berkley Plaintiffs. And it will reserve decision on the disposition of unclaimed funds, as it is unclear whether any funds will actually be left undistributed.

## I.    BACKGROUND

The Court assumes familiarity with the relevant factual and procedural background, detailed at length in numerous opinions. *See Berkley Ins. Co. v. Fed. Hous. Fin. Agency*, No. 1:13-cv-1053 RCL, 1:13-mc-1288 (RCL), 2023 WL 4744155 (D.D.C. July 25, 2023); *Berkley Ins. Co. v. FHFA*, Nos. 1:13-cv-1053 (RCL), 1:13-mc-1288 (RCL), 2023 WL 3790739, at *1–2 (D.D.C. June 2, 2023); *Fairholme Funds, Inc. v. FHFA*, Nos. 1:13-cv-1053 (RCL), 1:13-mc-1288 (RCL), 2022 WL 4745970, at *1–3 (D.D.C. Sept. 23, 2022); *Fairholme Funds, Inc. v. FHFA*, Nos. 1:13-cv-1439 (RCL), 1:13-mc-1288 (RCL), 2018 WL 4680197, at *1–4 (D.D.C. Sept. 28, 2018); *Perry Capital LLC v. Lew*, 70 F. Supp. 3d 208, 214–19 (D.D.C. 2014).

In brief, this case comprises both a class action (brought by the "Class Plaintiffs") and a set of individual lawsuits (brought by the "Berkley Plaintiffs") against defendants including the Federal Housing Finance Agency ("FHFA"), the Federal National Mortgage Association ("Fannie Mae"), and the Federal Home Loan Mortgage Corporation ("Freddie Mac"). The plaintiffs are holders of common stock of Freddie Mac and junior preferred stock of Fannie Mae and Freddie Mac. Plaintiffs filed suit in 2013 to challenge the "Net Worth Sweep" resulting from an amendment to the Senior Preferred Stock Purchase Agreements between FHFA, in its capacity as conservator for Fannie Mae and Freddie Mac, and the United States Department of the Treasury. By the time the case reached the jury, plaintiffs' sole remaining claim was for breach of the implied covenant of good faith and fair dealing based on the Net Worth Sweep, which allegedly caused

plaintiffs damages in the form of loss of value of Fannie Mae preferred shares, Freddie Mac preferred shares, and Freddie Mac common shares.

On August 14, 2023, the jury found in favor of the plaintiffs, awarding $281.8 million to the Freddie Mac junior preferred shareholders, $31.2 million to the Freddie Mac common shareholders, and $299.4 million to the Fannie Mae junior preferred shareholders. Verdict Form, Berkley ECF No. 402, Class ECF No. 392. On October 24, 2023, the Court ruled that the Fannie Mae junior preferred shareholder plaintiffs were entitled to prejudgment interest, and awarded simple interest on the $299.4 million damage award, accruing from the date August 17, 2012 until the date on which judgment is entered, at a fixed rate of 5% over the Federal Reserve discount rate as of August 17, 2012. *Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*, No. 1:13-cv-1053 (RCL), 1:13-mc-1288 (RCL), 2023 WL 7002665, at *1, 9 (D.D.C. Oct. 24, 2023).

On November 17, the parties filed a joint statement setting forth their calculation of prejudgment interest and explaining their disagreement about whether the Court could issue a final, appealable judgment before approving the plan of allocation. *See* Berkley ECF No. 417, Class ECF No. 408. The Court concluded that it could not issue a final, appealable judgment until it had approved a plan of allocation. *See* Berkley ECF No. 418; Class ECF No. 409. The Court therefore ordered the parties to submit a written report outlining plaintiffs' plan of allocation and proposing a briefing schedule in the event the parties had concerns for which they sought resolution by the Court. *Id.* Once the parties had filed their joint submission, the Court imposed a briefing schedule. *See* Berkley ECF No. 420; Class ECF No. 412.

On January 22, 2024, plaintiffs submitted their proposed plan of allocation and proposed judgment and moved for the Court to approve their plan of allocation and enter judgment. *See* Pls.' Mot., Berkley ECF No. 423; Class ECF No. 415. Defendants filed an opposition. *See* Defs.'

Opp'n, Berkley ECF No. 424, Class ECF No. 417.  They challenge three aspects of plaintiffs'
proposals.  First, defendants argue that the proposed judgment would distribute the jury's entire
damages award without reducing the damages to account for the small number of shareholders
(other than the Berkley Plaintiffs) who opted out of the class.  *Id.* at 1.  Second, defendants contend
that the proposed plan of allocation would improperly authorize distribution to holders of shares
that were previously owned by shareholders who had opted out of the class.  *Id.* at 1–2.  Third,
defendants challenge the legality of plaintiffs' proposed method of distributing unclaimed funds—
cy pres distribution to an affordable housing charity—and instead assert that any unclaimed funds
should revert to defendants.  *Id.* at 3.  Plaintiffs filed a reply.  *See* Pls.' Reply, Berkley ECF No.
425, Class ECF No. 418.

> Plaintiffs' motion is now ripe for review.

## II.    LEGAL STANDARDS

> In the class action context, a plan of allocation, also known as a distribution plan, typically
establishes who is eligible to receive damages, how individual payments will be allocated among
the eligible class members, and what to do with any unclaimed funds.  *See* 2 Joseph M.
McLaughlin, McLaughlin on Class Actions § 6:23 (20th ed.); *Cook v. Rockwell Int'l Corp.*, 618
F.3d 1127, 1138 (10th Cir. 2010).  Any plan of allocation must be approved by the court.  "As
with settlement agreements, courts consider whether distribution plans are fair, reasonable, and
adequate."  *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d 94,
107 (D.D.C. 2013) (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99-ms-276
(TFH), 2003 WL 22037741, at *7 (D.D.C. June 16, 2003)).  In evaluating a proposed plan of
allocation, the district court will consider whether it will equitably distribute the settlement
proceeds or damages award.  *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 179, 181 (2d
Cir. 1987) ("District courts enjoy broad supervisory powers over the administration of class-action

4

settlements to allocate the proceeds among the claiming class members . . . equitably.") (internal quotation marks and citation omitted) (alteration in original); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011) (en banc) (same); *see also* 2 McLaughlin, supra, § 6:23 ("The objective in developing a plan [of allocation] is equitable distribution of finite settlement proceeds.").

## III.    DISCUSSION

The Court will consider in turn each of defendants' challenges to plaintiffs' proposed judgment and plan of allocation. It agrees with defendants that the judgment must be revised to deduct the portion of the damages award attributable to the small number of opted-out shareholders from the total amount to be distributed. However, defendants' argument that the plan should not allocate damages to persons holding shares that were previously held by opted-out shareholders fails because it is irreconcilable with the definition of the class. Finally, the Court will for now refrain from deciding on the method of distribution for unclaimed funds, since it is not yet clear any funds will be left unclaimed.

### A.    The Court Will Modify the Proposed Judgment to Deduct the Portion of the Damages Award Attributable to Opted-Out Shareholders From the Total Amount To Be Distributed

The Court will modify the judgment to slightly reduce the damages paid to class members and the Berkley Plaintiffs by the amount of the jury's damages award attributable to shares held by opt-outs other than the Berkley Plaintiffs.[2]

---

[2] Plaintiffs argue that defendants' argument should be rejected because defendants "lack any cognizable interest in challenging how the award is distributed among Class members" and therefore lack standing to raise this argument. *See* Pls.' Mot. 10. This invocation of standing is puzzling. Standing doctrine "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs have cited no authority for the notion that a *defendant* must meet the requirements of Article III standing to object to aspects of a plaintiff's plan of allocation. The two cases invoked by plaintiffs involve the standing to object of third parties, rather than defendants. *See In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353, 1361 (9th Cir. 1979); *In re Holocaust Victim Assets Litig.*, 314 F. Supp.2d 155, 168 (E.D.N.Y. 2004). It would be curious if the Court, in exercising its duty to evaluate whether plaintiffs' proposal would equitably distribute the damages award, could not consider legal arguments of defendants. At any rate, because defendants argue that

The defendants object that plaintiffs' proposed judgment calls for the payment of the entire amount of damages awarded by the jury to the class members and Berkley Plaintiffs, even though the jury award reflects damages to both those plaintiffs and opt-outs.  *See* Defs.' Opp'n 5–9. Defendants argue, and plaintiffs do not dispute, that "[a]t trial, Plaintiffs presented evidence, and the jury found damages, based on losses experienced by *all* shareholders—100% of the relevant [Fannie Mae and Freddie Mac] shares, including shares held by opt outs."  *Id.* at 6; Pls.' Reply 2. The jury verdict thus includes money owed to the opt outs.  But the proposal calls for the entire damages award to be distributed.  According to defendants, they thus "would be forced to pay class members for harm that the jury found was suffered by opt-outs," which would violate the Rules Enabling Act.  Defs.' Opp'n 5.

The Court agrees that the proposal would improperly require defendants to overpay the class members.  To be sure, the difference is minute.  According to plaintiffs, only thirty-two individual shareholders opted out, other than the Berkley Plaintiffs who are of course entitled to damages.  Pls.' Mot. 11–12; *see also* Pls.' Mot., Ex. B, App. C, Berkley ECF No. 423-2, Class ECF No. 415-2 (listing the thirty-two opt-outs).  So, the damages award of approximately $810 million would be reduced by an estimated $200,000.  Pls.' Mot. 11–12.  Nonetheless, Federal Rule of Civil Procedure 23's "requirements must be interpreted in keeping . . . with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right.'"  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (quoting 28 U.S.C. § 2072(b)). Overcompensating the class would violate the Rules Enabling Act by "alter[ing] defendants'

---

plaintiffs' proposal would cause them to pay more in damages than they should, they have asserted a "classic pocketbook injury." *See Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631, 636 (2023).

Plaintiffs also argue that defendants waived this challenge by not raising it before or during trial. *See* Pls.' Mot. 11– 12; Pls.' Reply 2–3. But defendants could not have raised an objection to plaintiffs' proposed judgment before plaintiffs had unveiled it in the first place.

substantive right to pay damages reflective of their actual liability." *See McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008). The amount of aggregate damages must instead "roughly reflect the aggregate amount owed to class members." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58–59 (2d Cir. 2010).

True, courts applying these principles have typically dealt with greater disconnects between proposed damages and actual liability. *See, e.g.*, *McLaughlin*, 522 F.3d at 231 (rejecting as violative of the Rules Enabling Act an aggregate determination of damages that was "likely to result in an astronomical damages figure that does not accurately reflect the number of plaintiffs actually injured by defendants and that bears little or no relationship to the amount of economic harm actually caused by defendants."). But there is no exception in the Rules Enabling Act permitting modification of substantive rights so long as the infringement is not too much in the grand scheme of things. Since approximately $200,000 of the total damages award has nothing to do with defendants' actual liability to the class members and Berkley Plaintiffs, the Court cannot include that sum in the judgment without abridging defendants' substantive rights.

Perhaps sensing their overreach, plaintiffs have suggested a remedy of reducing the judgment by the amount attributable to opt-outs. *See* Pls.' Mot. 12 n.4. The Court will adopt this suggestion and will modify the proposed judgment by including the language put forward by plaintiffs, and not disputed by defendants: "IT IS FURTHER ORDERED AND ADJUDGED that the judgment amount for each of the Classes shall be reduced by the sum of damages and interest attributable to "Specified Shares," as defined by the Plan of Allocation, incorporated herein." *See id.*; Defs.' Opp'n. 7 (encouraging the Court to correct the proposed plan in the manner suggested by plaintiffs).

**B.  Defendants' Objection That the Proposed Plan Would Improperly Pay Damages to Holders of Shares Previously Owned by Shareholders Who Opted Out of the Classes Is Meritless**

The Court rejects defendants' argument that plaintiffs' proposed plan would improperly award damages to holders of shares whose previous owners opted out of the class, because this contention is flatly inconsistent with the definition of the class adopted by the Court.

Defendants fault plaintiffs' proposed plan for permitting damages to be paid to holders of shares whose previous owners opted out of the class.  *See* Defs.' Opp'n 9–17.  According to the defendants, this would violate common law principles because it would mean that when the opted-out shareholder sold their shares to another person, they effectively assigned to the buyer a right the opted-out seller did not actually possess—the right to participate in class recovery.  *See id.* at 11–13.  The plan of allocation therefore "must include a mechanism for identifying and excluding from payment all opted-out shares, thereby limiting distributions only to class members."  *Id.* at 10.  Any argument by plaintiffs that the subsequent shareholders are not limited to the rights of the previous, opted-out shareholders,  defendants argue, is estopped because plaintiffs have previously argued in other contexts that the claims travel with the share.  *See id.* at 14–15.

Yet defendants' theory runs aground on the definitions of the classes adopted by the Court. When the Court granted plaintiffs' motion for class certification, it certified the following classes:

1.  All current holders of junior preferred stock in Fannie Mae as of the date of certification, or their successors in interest to the extent shares are sold after the date of certification and before any final judgment or settlement (the "Fannie Preferred Class");

2.  All current holders of junior preferred stock in Freddie Mac as of the date of certification, or their successors in interest to the extent shares are sold after the date of certification and before any final judgment or settlement (the "Freddie Preferred Class"); and

3.  All current holders of common stock in Freddie Mac as of the date of certification, or their successors in interest to the extent shares are sold after

8

the date of certification and before any final judgment or settlement (the "Freddie Common Class").

Order, Class ECF No. 139.  Under the plain meaning of these definitions, a person can be a class member if they held the relevant share on the date of certification.  Or they can be a class member if they are a successor in interest to such a person and hold a share after certification but before final judgment.  The definitions do not differentiate between successors in interest to those who remained part of the class and successors in interest to those who opted out.  Not only does the Order contain no caveat excluding the latter category, but the Court-approved notice to class members lacks any hint of such an exception.  *See* Notice of Class Action, Class ECF No. 140-1. By imposing such an exception, defendants seek to rewrite the class definitions.

More fundamentally, defendants err in speaking of "shares that were validly opted out of the classes."  *See* Defs.' Opp'n 1, 6.  The classes are defined in terms of *shareholders*, not *shares*. So, *shareholders* could opt out; *shares* could not.  *See* Notice of Class Action 6 (informing potential class members that they could "remove [themselves] from or 'opt out' of the Class(es)"). Plaintiffs' plan is not deficient for not recognizing a non-existent category of tainted shares that exclude their owners from the class.  Similarly, defendants' argument that "if the claim travels with the shares, then the opt-out election must do so as well," Defs.' Opp'n 12, relies on the faulty premise that class membership is a feature of the share that may or may not be transferred to a successor in interest.  *See id.* (asserting that "an opt-out has no right to participate in the class recovery, and thus they cannot assign a right to participate in the class recovery.").  But under the Court's Order granting class certification, a purchaser's qualification for class membership is not based on any transferred right, but instead triggered by their identity as a successor in interest to someone who held shares as of the date of certification.  That a person purchased a share from someone who had previously opted out of the class is simply irrelevant.

9

The Court therefore concludes that the proposed plan properly includes shareholders who are successors in interest to previous owners who opted out of the class.

## C. The Court Will Reserve Decision on the Disposition of Unclaimed Funds

Since it is unclear whether any funds will in fact be left unclaimed, the Court will reserve decision on whether unclaimed funds should revert to defendants or be distributed through cy pres.

Plaintiffs contend that because the plan of allocation provides for disbursement to brokers and registered shareholders of record, "it is probable that the amount of undistributed funds will be minimal to non-existent." Pls.' Reply 15–16 (citing Plan of Allocation (POA) ¶ 13, Berkley ECF No. 423–2, Class ECF No. 415-2); *see also* Pls.' Mot. 9 (same); POA ¶ 15 ("Given the Allocation Plan and Distribution Method, Plaintiffs expect there will not be any unclaimed or undistributed funds in this case."). Although plaintiffs urge the Court to nonetheless decide whether unclaimed funds should revert to defendants or be subject to a cy pres decree, they "do not object to reserving decision as to the appropriateness of a cy pres award until after the distribution process." Pls.' Reply 20.

At this time, there is no need for the Court to decide whether cy pres is a legally valid remedy, whether the equities favor cy pres or reversion, and whether there is an adequate nexus between the proposed cy pres beneficiary and this case. "[P]recedent and prudence counsel" courts "to avoid unnecessary dicta." *Louisiana Env't Action Network v. Browner*, 87 F.3d 1379, 1385 (D.C. Cir. 1996). The Court will therefore refrain from plunging into this thicket unless and until it must. It will instead modify ¶ 15 of the proposed plan of allocation to replace the sentence about cy pres with the following: "The Court shall defer decision on the disposition of undistributed funds until such time as the amount of undistributed funds, if any, has been determined." *See* Pls.' Reply 20.

## IV.    CONCLUSION

For the foregoing reasons, plaintiffs' motion for entry of final judgment in **GRANTED**.  A

Final Judgment will be filed contemporaneously with this Order.  A Plan of Allocation consistent

with this Order will be attached to the Final Judgment.[3]

Date:    3/20/24

Royce C. Lamberth
United States District Judge

---

[3] The Court is able to enter final judgment because the Plan of Allocation "provides a thorough framework for determining each individual class member's damages."  *See Cook*, 618 F.3d at 1138.  However, executing the judgment will require additional steps.  *See* POA ¶ 12 ("Prior to disbursement of any funds to any Class members, the Court will establish procedures for approval of the Allocation Plan, including, but not limited to, procedures for notifying Class members of the Allocation Plan and providing them an opportunity to object thereto.").  And the Court has reserved decision on the disposition of unclaimed funds.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FAIRHOLME FUNDS, INC.**, *et al.*, | |
| *Plaintiffs,* | |
| **v.** | Case No. 1:13-cv-1053-RCL |
| **FEDERAL HOUSING FINANCE AGENCY**, *et al.*, | |
| *Defendants.* | |
| **In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations** | Case No. 1:13-mc-1288-RCL |
| This Memorandum Opinion relates to: ALL CASES | <u>CLASS ACTION</u> |

<u>*** ~~FILED UNDER SEAL~~***</u>

unsealed October 3, 2022
/s/ RCL

## <u>MEMORANDUM OPINION</u>

Before the Court are the parties' cross-motions for summary judgment. *See* Defs.' Motion for S.J., Fairholme ECF No. 145, Class ECF No. 143; Pls.' Mot. for Partial S.J., Fairholme ECF No. 146, Class ECF No. 144.[1] Defendants the Federal Housing Finance Agency ("FHFA") as conservator for Fannie Mae and Freddie Mac, FHFA Acting Director Sandra L. Thompson, Fannie Mae, and Freddie Mac move for summary judgment on plaintiffs' remaining claims in both of the above-captioned cases. Plaintiffs Fairholme Funds, Inc., Fairholme Fund, Berkeley Insurance Company, Acadia Insurance Company, Admiral Indemnity Company, Admiral Insurance

---

[1] The summary judgment filings in both cases are identical. For ease of reference, the Court cites the ECF number under which the same document is filed in each case, using the citation "Fairholme ECF No." for No. 1:13-cv-1053-RCL and "Class ECF No." for No. 1:13-mc-1288-RCL.

Company, Berkeley Regional Insurance Company, Carolina Casualty Insurance Company, Midwest Employers Casualty Insurance Company, Nautilus Insurance Company, and Preferred Employers Insurance Company in No. 1:13-cv-1053-RCL and the class-action Plaintiffs in No. 1:13-mc-1288-RCL move for partial summary judgment on the enforceability of a single contractual provision in both cases. Upon consideration, defendants' motion is **GRANTED** in part and **DENIED** in part, and plaintiffs' motion is **DENIED**.

## I.    BACKGROUND

The Court has explained the factual background of this matter extensively in prior opinions. *See Fairholme Funds, Inc. v. Federal Housing Finance Agency*, No. 1:13-cv-1053-RCL, 2018 WL 4680197, at *1–4 (D.D.C. Sept. 28, 2018); *Perry Capital LLC v. Lew* ("*Perry I*"), 70 F. Supp. 3d 208, 214-19 (D.D.C. 2014). The Court will therefore set out the facts here only as necessary to resolve the cross-motions for summary judgment, drawing on the parties' statements and counter-statements of material fact and other materials in the summary judgment record. *See generally* Defs.' Statement of Undisputed Material Facts ("DSUMF"), Fairholme ECF No. 145-1, Class ECF No. 143-1; Pls.' Resp. to Defs.' Statement of Undisputed Material Facts ("PRDSUMF"), Fairholme ECF No. 151-1, Class ECF No. 147-1; Pls.' Statement of Add'l Material Facts ("PSAMF"), Fairholme ECF No. 151-2, Class ECF No. 147-2; Defs.' Resp. to Pls.' Statement of Add'l Material Facts ("DRPSAMF"), Fairholme ECF No. 157-1, Class ECF No. 152-1; Pls.' Statement of Undisputed Material Facts, Fairholme ECF No. 147-1, Class ECF No. 144-1 (D.D.C. Mar. 21, 2022); Defs.' Counter-Statement of Facts, Fairholme ECF No. 150-1, Class ECF No. 146-1.

This matter is brought before the Court by a class-action lawsuit and an individual lawsuit. The class-action lawsuit was brought by a class of private individual institutional investors who own either preferred or common stock in Fannie Mae or Freddie Mac. Second Am. Consolidated

2

Class Action Compl. ¶¶ 18-33, Class ECF No. 71. The individual lawsuit was brought by an institutional investor owning junior preferred stock in Fannie Mae and Freddie Mac and by various insurance companies. First Am. Compl. ¶¶ 5-20, Fairholme ECF No. 75.Following this Court's most recent opinion, *see Fairholme Funds*, 2018 WL 4680197, a single, substantially identical claim remains in both cases.

Fannie Mae and Freddie Mac are government-sponsored entities ("GSEs") created by Congress to, among other goals, "promote access to mortgage credit throughout the Nation . . . by increasing the liquidity of mortgage investments and improving the distribution of investment capital available for residential mortgage financing." 12 U.S.C. § 1716(4). Although the GSEs are government-sponsored, Congress has converted them by statute to publicly traded companies. *See* Housing and Urban Development Act, Pub. L. No. 90-448, § 802, 82 Stat. 536–538 (1968); Financial Institutions Reform, Recovery and Enforcement Act, Pub. L. No. 101-73, § 731, 103 Stat. 432–433 (1989). The GSEs have issued both common stock and non-cumulative preferred stock over the years, but neither has issued any further publicly traded stock since 2008. DSUMF ¶ 2; PRDSUMF ¶ 2.

The GSEs suffered substantial losses following the onset of the 2008 financial crisis, including a loss of $108 billion in 2008 alone. DSUMF ¶ 4; PRDSUMF ¶ 4. In response, Congress enacted the Housing and Economic Recovery Act ("HERA"), Pub. L. No. 110-289, 122 Stat. 2654 (2008), which, among other things, created the FHFA and authorized it to act as a conservator or receiver for both of the GSEs "for the purpose of reorganizing, rehabilitating, or winding up the[ir] affairs." 12 U.S.C. § 4617(a)(2). The FHFA placed both GSEs into conservatorship on September 6, 2008. DSUMF ¶ 6; PRDSUMF ¶ 6.

3

Almost immediately after the conservatorship began, the GSEs entered into Senior Preferred Stock Purchase Agreements ("PSPAs") with the U.S. Department of the Treasury ("Treasury"), with Treasury committing to invest up to $100 billion in each of the GSEs ("the Treasury Commitment"). DSUMF ¶ 6; PRDSUMF ¶ 6; *see* PSPA, Ex. E to Defs.' Mot. for S.J., Fairholme ECF No. 145-6, Class ECF No. 143-6. The PSPAs set out the general terms of the agreements between the GSEs and Treasury, with more specific terms set out in the Certificates of Designation of Terms of Variable Preference Senior Preferred Stock ("Treasury Stock Certificates") for each GSE. DSUMF ¶ 7; PRDSUMF ¶ 7; *see* Treasury Stock Certificate, Ex. F to Defs.' Mot. for S.J., Fairholme ECF No. 145-7, Class ECF No. 143-7.

As relevant here, the PSPAs and the Treasury Stock Certificates provided that, as consideration for investing in the GSEs, Treasury was entitled to (1) a $1 billion senior liquidation preference ("the Liquidation Preference")—a priority right before all other stockholders to receive distributions from assets in the event of a liquidation, PSPA § 3.1; (2) an increase in that Liquidation Preference equal to every dollar that the GSEs draw on the Treasury Commitment, *id.* § 3.3; (3) an annual dividend equal to 10 percent of the Liquidation Preference if paid in cash, Treasury Stock Certificate § 2(a)–(c); (4) warrants allowing Treasury to purchase up to 79.9 percent of the GSEs' common stock at a nominal price, PSPA §§ 1, 3.1; and (5) periodic commitment fees ("PCFs") to be agreed upon at a later date, *id.* § 3.2(b). The Treasury Stock Certificates also provided that the GSEs, "[p]rior to the termination of the Commitment . . . may pay down the Liquidation Preference of all outstanding shares of [Treasury's] Senior Preferred Stock pro rata, at any time, out of funds legally available therefor, but only to the extent of (i) accrued and unpaid dividends previously added to the Liquidation Preference pursuant to Section 8 [of the Treasury Stock Certificate] and not repaid by any prior pay down of Liquidation

4

Preference and (ii) Periodic Commitment Fees previously added to the Liquidation Preference pursuant to Section 8 [] and not repaid by any prior pay down of Liquidation Preference." Treasury Stock Certificate § 3(a).[2] The parties do not dispute that because of that provision, the GSEs were contractually prohibited from paying down the Liquidation Preference except under the conditions provided. DSUMF ¶ 8; PRDSUMF ¶ 8. Furthermore, the PSPAs prohibited the GSEs from making "any other distribution," including paying dividends to non-Treasury shareholders, without Treasury's permission. PSPA § 5.1.

Treasury and FHFA twice agreed to amend the PSPAs before the amendment at issue in this case. The First Amendment doubled Treasury's Commitment to $200 billion for each of the GSEs, while the Second Amendment provided that Treasury would invest as much as the GSEs needed until December 31, 2012, before reinstating the $200 billion cap on the Treasury Commitment. DSUMF ¶ 11; PRDSUMF ¶ 11. In the course of negotiating the first two amendments to the PSPAs, FHFA sent a letter to Treasury proposing a "simple revision to each [Treasury Stock] Certificate, easing the impediments to optional paydown" to correct the original Treasury Stock Certificates' "unintended consequence of dissuading the companies from repurchasing preferred shares when they are able," Letter from A. Pollard to S. Albrecht (Feb. 25, 2009), Ex. I to Defs.' Mot. for S.J., Fairholme ECF No. 145-10, Class ECF No. 143-10. However, Treasury declined to adopt that proposed revision, DSUMF ¶ 10; PRDSUMF ¶ 10.

By early 2012, the GSEs had turned a corner and begun to record net profits. PSAMF ¶ 37; DRPSAMF ¶ 37. Nevertheless, the GSEs found themselves in a circular problem of having to draw further on the Treasury Commitment to pay its required dividends to Treasury, and so on August

---

[2] The same section provided less restrictive terms for paying down the Liquidation Preference *after* the termination of Treasury's Commitment. *See* Treasury Stock Certificate § 3(a).

17, 2012, Treasury and FHFA adopted the Third Amendment to the PSPAs, the subject of the parties' present dispute. DSUMF ¶ 17; PRDSUMF ¶ 17. The Third Amendment replaced the fixed 10 percent dividend each GSE would pay to Treasury with a process known as the "Net Worth Sweep," whereby each GSE would be required to pay Treasury the difference between its net worth and a predetermined capital reserve each year, with that capital reserve decreasing until it reached zero in 2018. DSUMF ¶ 17; PRDSUMF ¶ 17; *see* Third Amendment § 2, Ex. FF to Defs.' Mot. for S.J., Fairholme ECF No. 145-33, Class ECF No. 143-33. The Third Amendment thus eliminated the circular-draw problem, but it also eliminated any future possibility for any non-Treasury stockholder, including plaintiffs, to receive dividends from the GSEs, because the GSEs owed their net worth to Treasury and would not take on further debt to pay dividends to other shareholders. Importantly, the Third Amendment did not alter the Treasury Stock Certificates' restrictions on paying down the Liquidation Preference. *See id.* § 3(a). Treasury and FHFA amended the PSPAs three times after the Third Amendment, no amendment eased the existing restrictions on paydown of the Liquidation Preference. DSUMF ¶ 10; PRDSUMF ¶ 10.

## II.    PROCEDURAL HISTORY

Plaintiffs filed their respective suits challenging the Third Amendment in 2013. The initial complaint in each suit alleged various claims for violations of the Administrative Procedure Act, breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty, seeking damages as well as injunctive relief. The Court dismissed the initial complaints in their entirety for failure to state a claim on September 30, 2014. *See Perry I*, 70 F. Supp. 3d at 246. On appeal, the D.C. Circuit affirmed in part, remanding certain of plaintiffs' breach of contract and implied covenant claims. *See Perry Capital LLC v. Mnuchin* ("*Perry II*"), 864 F.3d 591, 633–34 (D.C. Cir. 2017). Plaintiffs then filed an amended complaint in each case, each of which defendants moved to dismiss. On September 28, 2018, the Court granted in part and

denied in part defendants' motion to dismiss in each case, holding that plaintiffs failed to state a claim for breach of contract but allowing the implied covenant claim in each case to proceed. *See Fairholme Funds*, 2018 WL 4680197, at *17.

Earlier this year, defendants moved for summary judgment in both cases, and plaintiffs moved for partial summary judgment in both cases on the issue of whether the provisions of the PSPAs entitling Treasury to PCFs are legally enforceable. A trial is set for October of this year.

## III.    LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court evaluating a summary judgment motion must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Arthridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 629 (D.C. Cir. 2010). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B. The Implied Covenant of Good Faith and Fair Dealing

Under Delaware and Virginia law, which govern the claims of the Fannie Mae and Freddie Mac shareholders, respectively, *see Fairholme Funds*, 2018 WL 4680197, at *2, an implied covenant of good faith and fair dealing "attaches to every contract," *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 442 (Del. 2005); *see also Historic Green Springs, Inc. v. Brandy Farm, Ltd.*, 32 Va. Cir. 98, 1993 WL 13029827, at *3 (Va. Cir. 1993). The difference between an ordinary breach of contract claim and an implied covenant claim is that while the former turns on the express terms of the contract, the latter involves a "cautious enterprise" whereby the court

"infer[s] contractual terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated." *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010) (internal quotation marks and citation omitted). A breach of the implied covenant occurs where one party "'act[s] arbitrarily or unreasonably,'" which is to say that it "violate[s] the reasonable expectations of the parties" at the time of contracting, *Perry II*, 864 F.3d at 631 (first alteration in original; second alteration added) (quoting *Nemec*, 991 A.2d at 1126, and citing *Historic Green Springs*, 1993 WL 13029827, at *3).

Otherwise, "[t]he elements of an implied covenant claim remain those of a breach of contract claim: 'a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff.'" *ASB Allegiance Real Estate Fund. v. Scion Breckenridge Managing Member, LLC*, 50 A.3d 434, 444 (Del. Ch. 2012) (quoting *Fitzgerald v. Cantor*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998)), *rev'd on other grounds*, 68 A.3d 665 (Del. 2013); *see also Charles E. Brauer Co., Inc. v. NationsBank of Virginia, N.A.*, 251 Va. 28, 33 (1996) ("The breach of the implied duty [of good faith and fair dealing] gives rise only to a cause of action for breach of contract."). In both Delaware and Virginia, the last element—damages resulting from the breach—must be proven "with reasonable certainty." *SIGA Technologies, Inc. v. PharmAthene, Inc.*, 132 A.3d 1108, 1111 (Del. 2015); *see also MCR Federal, LLC v. JB&A, Inc.*, 294 Va. 446, 462 (2017).

## IV.    ANALYSIS

### A.  Defendants' Motions for Summary Judgment

Defendants make four arguments in support of summary judgment: (1) that the Supreme Court's decision in *Collins v. Yellen*, 141 S. Ct. 1761 (2021) definitively establishes that FHFA acted reasonably and therefore could not have breached the implied covenant of good faith and fair dealing; (2) that the contracts between plaintiffs and defendants incorporate HERA, which

authorized the execution of the Third Amendment, and thus left no relevant "gaps" for the implied covenant of good faith and fair dealing to fill; (3) that plaintiffs will not be able to prove the fact or amount of damages; and (4) that plaintiffs' alternative request for "restitution" is barred by HERA and as a windfall impermissible under equitable principles governing that remedy.

For the reasons explained below, the Court is not persuaded by the first two arguments, but defendants are entitled to summary judgment on the third issue in part and the fourth in full. Although a reasonable jury could conclude from the record with reasonable certainty that the Third Amendment injured plaintiffs by depriving their shares of much of their value, a reasonable jury could not conclude from the record with reasonable certainty that the Third Amendment in fact deprived plaintiffs of dividends that they otherwise would have received. Furthermore, plaintiffs may not pursue their proposed alternative remedy, because the type of "restitution" they request includes rescission, an equitable remedy barred by HERA.

### 1. *Collins* Does Not Govern Plaintiffs' Claim

Defendants' first argument for summary judgment is that the Supreme Court's decision in *Collins* definitively establishes that FHFA acted reasonably and therefore could not have breached the implied covenant of good faith and fair dealing. That argument falls wide of the mark. Defendants both misconstrue the relevant standard, by taking the Supreme Court's use of the word "reasonable" in *Collins* out of context, and fail to make any alternative argument as to why they might be entitled to judgment as a matter of law under the correct standard.

The Supreme Court used the word "reasonable" in *Collins* in the course of analyzing whether FHFA exceeded its statutory authority under HERA by enacting the Third Amendment. The plaintiffs in that case sought, among other relief, an injunction that would effectively undo the Third Amendment. *Collins*, 141 S. Ct. at 1775. The Supreme Court held that such an injunction

would violate a provision of HERA providing that "no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver." 12 U.S.C. § 4617(f). The Court noted that HERA authorizes FHFA, in its capacity as conservator of the GSEs, to act "in the best interests of the regulated entity or the Agency." *Id.* § 4617(b)(2)(J)(ii). The Court reasoned that because of that statutory authorization, "when the FHFA acts as a conservator, it may aim to rehabilitate the regulated entity in a way that, while not in the best interests of the regulated entity, is beneficial to the Agency and, by extension, the public it serves." *Collins*, 141 S. Ct. at 1776. Because "the FHFA could have reasonably concluded that [the Third Amendment] was in the best interests of members of the public who rely on a stable secondary mortgage market," the Court explained, HERA "authorized the Agency to choose this option." *Id.* at 1777. And because the FHFA was acting within the scope of its authority as conservator, HERA barred the plaintiffs' claim for injunctive relief. *Id.* at 1778.

These cases involve a different type of reasonableness analysis. A party to a contract violates the implied covenant of good faith and fair dealing if it "act[s] arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected." *Nemec*, 991 A.2d at 1125. The question is not whether defendants acted reasonably *in the abstract*—rather, "[w]hen conducting this analysis, [a court] must assess the parties' reasonable expectations at the time of contracting." *Id.* at 1126; *see also Perry II*, 864 at 631 ("We remand [the implied covenant] claim . . . for the district court to evaluate it under the correct legal standard, namely, whether the Third Amendment violated the reasonable expectations of the parties.").

In other words, *Collins* does not resolve the issue here, because although reasonableness factors into both analyses, it is reasonableness with respect to different matters. At issue in *Collins* was whether FHFA could reasonably have determined that adopting the Third Amendment was

"in the *best interests* of the *regulated entity* or the *Agency*," 12 U.S.C. § 4617(b)(2)(J)(ii) (emphasis added), and thus acted within its statutory authority as conservator of the GSEs in so doing. Here, in contrast, the issue is whether FHFA "violated the reasonable *expectations* of the *parties*" by adopting the Third Amendment. *Perry II*, 864 F.3d at 631 (emphasis added).

Defendants miss the difference between the relevant inquiries because they misapprehend the applicable legal standard for implied covenant claims. Defendants argue that "[a] breach of implied covenant claim involves a two-pronged inquiry: (1) whether the defendant acted arbitrarily and unreasonably, *and* (2) whether the defendant acted in a way that was not reasonably expected by the plaintiff." Defs.' Mot. for S.J. at 12 n.1 (emphasis in original). On defendants' understanding, the Court need not reach the question of whether FHFA violated plaintiffs' reasonable expectations so long as FHFA acted reasonably *in the abstract*. That simply is not a correct reading of Delaware or Virginia law.

Whether defendants acted reasonably and whether they violated plaintiffs' reasonable expectations are not two separate prongs; rather, the former is determined *in reference* to the latter. Defendants cite one Delaware Superior Court case stating that "[i]f [the plaintiff] succeeds in demonstrating that its reasonable expectations under the [contract] have been thwarted, in order to benefit from the implied covenant of good faith and fair dealing, [the plaintiff] *next* must prove that Defendants have acted arbitrarily or unreasonably." *TWA Res. v. Complete Production Servs., Inc.*, No. N11C-08-100-MMJ, 2013 WL 1304457, at *11 (Del. Super. Mar. 28, 2013) (emphasis added) (citing *Nemec*, 991 A.2d at 1126). But that unreported trial-court opinion appears to mischaracterize governing Delaware law. The Delaware Supreme Court has stated plainly that "what is 'arbitrary' or 'unreasonable'—or conversely 'reasonable'—depends on the parties' original contractual expectations." *Gerber v. Ent. Pords. Holdings, LLC*, 67 A.3d 400, 419 (Del.

11

2013) (quoting *ASB Allegiance*, 50 A.3d at 442), *overruled on other grounds by Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808 (Del. 2013); *see also Nemec*, 991 A.2d at 1126 (emphasis added) ("[Courts] will only imply contract terms when the party asserting the implied covenant proves that the other party has acted arbitrarily or unreasonably, *thereby* frustrating the fruits of the bargain that the asserting party reasonably expected."). While the Virginia Supreme Court has not so clearly laid out a standard for evaluating implied covenant claims, courts applying Virginia law have favorably cited the Second Restatement's definition of the implied covenant and its comment stating that "[g]ood faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Restatement (Second) of Contracts § 205 & cmt. a (1981); *see SunTrust Mortg., Inc. v. Mortgages Unlimited, Inc.*, 2012 WL 1942056, at *3 (E.D. Va. May 29, 2013); *Howie v. Atl. Home Inspection, Inc.*, 62 Va. Cir. 164, 2003 WL 23162330, at *4–5 (Va. Cir. Ct. 2003). Moreover, defendants cite no Virginia authority for their bifurcated test.

Defendants make no argument at this stage concerning plaintiffs' reasonable expectations. Accordingly, their reliance on *Collins* does not help them to meet their burden as movants for summary judgment of showing that they are entitled to judgment as a matter of law.

## 2. The Contract Itself Did Not Specifically Authorize the Third Amendment

Defendants next argue that a claim for breach of the implied covenant of good faith and fair duty cannot lie because this Court has held that plaintiffs' shareholder contracts incorporate HERA, which the Supreme Court held in *Collins* "authorized" the Third Amendment, leaving no "gaps" for the implied covenant to fill. *See Nemec*, 991 A.2d at 1125–26. That argument, like the previous one, fails because defendants misread Delaware and Virginia law.

12

It is true that in Delaware, "one generally cannot base a claim for breach of the implied covenant on conduct authorized by the agreement." *Nemec*, 991 A.2d at 1125–26 (alteration removed) (quoting *Dunlap*, 878 A.2d at 441). Similarly, "in Virginia, when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights." *Ward's Equipment, Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 385 (1997). And it is true that this Court held in a previous opinion that "certain changes to federal law—*i.e.*, those affecting governance of the GSEs and their relationships with their shareholders—amend or inform the investor contract." *Fairholme Funds*, 2018 WL 4680197, at *9.

But whether a certain act falls within FHFA's statutorily authorized discretion and whether FHFA may incur monetary damages for exercising that discretion in a manner inconsistent with its independent contractual obligations are two separate inquiries. HERA makes that much clear by authorizing FHFA, in its capacity as conservator of the GSEs, to repudiate contracts, 12 U.S.C. § 4617(d)(1), while also providing for the assessment of damages when FHFA does so, *id.* § 4617(d)(3); *see also Perry II*, 864 F.3d at 630 (citing repudiation provision for proposition that "the Companies' contractual obligations otherwise remain in force"). As this Court previously explained when evaluating a similar argument at the motion to dismiss stage, "Defendants cannot simply say that since HERA permits the conservator to act in its own best interests, the FHFA can do whatever it wants and Plaintiffs could not expect otherwise. The question is whether Defendants exercised their discretion arbitrarily or unreasonably in a way that frustrated Plaintiffs' expectations under the contract." *Fairholme Funds*, 2018 WL 4680197, at *13.

Because HERA only authorizes the *discretion* through which FHFA agreed to the Third Amendment, rather than the Third Amendment itself, the prohibition of implied covenant claims

13

based on contractually authorized conduct does not bar plaintiffs' claims and does not entitle defendants to summary judgment.

### 3. Some Disputed Issues of Material Fact Remain as to Damages

Next, defendants argue that they are entitled to summary judgment because a reasonable jury could not conclude from the summary judgment record that the Third Amendment caused plaintiffs harm, a key element of plaintiffs' implied covenant claim. Defendants argue that in order to accept either plaintiffs' theory of harm or their proposed measure of damages, a jury would have to rely on inferences that the record does not reasonably support. The Court agrees in part.

As an initial matter, an impermissibly speculative *measure* of damages does not necessarily preclude a finding of *harm* for purposes of liability, as both Delaware and Virginia law distinguish between the degree of certainty required to establish each. *See SIGA Technologies*, 132 A.3d at 1111 (emphasis in original) (footnotes and citations omitted) ("[W]hen a contract is breached, expectation damages can be established as long as the plaintiff can prove the *fact* of damages with reasonable certainty. The *amount* of damages can be an estimate."); *MCR Federal*, 294 Va. at 462 (2017) (internal quotation marks and citation omitted) ("When it is certain that substantial damages have been caused by the breach of a contract, and the uncertainty is not whether there have been any damages, but only an uncertainty as to their true amount, then there can rarely be any good reason for refusing all damages due to the breach merely because of that uncertainty.").

Accordingly, the Court begins with the question of whether a reasonable jury could conclude from the summary judgment record that the Third Amendment caused plaintiffs any harm. In both Delaware and Virginia, plaintiffs seeking to establish liability on a contract must prove the fact of harm resulting from the alleged breach "with reasonable certainty." *SIGA Technologies*, 132 A.3d at 1111; *see also MCR Federal*, 294 Va. at 461–62. In other words, though

14

the evidentiary burden is only a preponderance of the evidence, "speculation and conjecture" as to whether the plaintiff suffered any substantial amount of harm "cannot form the basis for recovery." *Condominium Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condominium, Inc.*, 281 Va. 561, 577 (internal quotation marks omitted) (quoting *Shepherd v. Davis*, 265 Va. 108, 125 (2003)); *see also Kronenberg v. Katz*, 872 A.2d 568, 609 (Del. Ch. 2004) (quoting *Laskowski v. Wallis*, 205 A.2d 825, 826 (Del.1964)) ("Under Delaware law, plaintiffs . . . cannot recover damages that are 'merely speculative or conjectural.'").

To be sure, Delaware and Virginia law do not necessarily bar liability on a theory of harm that relies on contingencies other than the alleged breach, but the plaintiff must be able to prove to a reasonable factfinder that such contingencies were reasonably certain to occur. For example, in *BTG Int'l, Inc. v. Wellstate Therapeutics Corp.*, No. 12562-VCL, 2017 WL 4151172 (Del. Ch. Sept. 19, 2017), the Delaware Chancery Court noted that Delaware "[c]ourts will award damages for a renewal term" of a contract whose renewal was forgone because of the alleged breach "when a plaintiff can prove that the contract would have been renewed with reasonable certainty," but nevertheless determined that such an award of damages was inappropriate in the case before it because the initial contract did not expire until eight years after the alleged breach, and "[p]redicting how [the parties] would approach the renewal right eight years in the future would be, at best, an educated guess." *Id.* at *20. And in *TechDyn Sys. Corp. v. Whittaker Corp.*, 245 Va. 291 (1993), the Virginia Supreme Court affirmed a trial court's decision to exclude as speculative evidence of lost profits that depended on the assumption that the plaintiff "would have been the successful bidder on" other contracting projects. *Id.* at 299. In other words, under both Delaware and Virginia law, neither the overall theory of harm nor the contingencies upon which it depends may be speculative or conjectural; both must be reasonably certain to have occurred.

15

The Court must therefore evaluate whether the summary judgment record contains evidence from which a reasonable jury could conclude that the harms plaintiffs allege, and any contingencies upon which those harms depend, occurred without relying on mere speculation and conjecture. At this stage, plaintiffs appear to offer two different theories of harm that they contend they can prove with reasonable certainty. First, and primarily, they argue that the Third Amendment deprived them of future dividends that they otherwise would have received. Second, and in the alternative, they argue—and defendants do not directly dispute on the merits—that by eliminating any possibility of future dividends, the Third Amendment at least caused their shares to decline significantly in value. The Court will refer to those theories as "the lost-dividends theory" and "the lost-value theory," respectively.[3] For the reasons that follow, the Court concludes that defendants are entitled to summary judgment on the lost-dividends theory but that a genuine dispute of material fact precludes summary judgment on the lost-value theory.

(i) *No genuine dispute remains as to the lost-dividends theory.*

Before applying the legal principles outlined above to plaintiffs' lost-dividends theory—that the Third Amendment deprived plaintiffs of dividends that they would have eventually received—it is important to note three propositions that neither party disputes. First, before the Third Amendment, the PSPAs and Treasury Stock Certificates prohibited the GSEs from paying down Treasury's Liquidation Preference absent certain conditions that have never in fact occurred, and the Third Amendment did not change that. *See* PRDSUMF ¶ 8.[4] Second, and as a result, any

---

[3] One might hypothesize that a decline in stock price caused by the Third Amendment would reflect a corresponding decline in probability-adjusted expectations regarding future dividends, and thus that these two theories of harm are closely related. But plaintiffs apparently do not believe that the post–Third-Amendment decline in stock price captured the entire value of the possible future dividends extinguished by the Net Worth Sweep. *See* Pls.' Opp'n to Defs.' Mot. for S.J. at 36, Fairholme ECF No. 151, Class ECF No. 147 ("[E]ven [the decline in stock price] establishes the existence of damages, although it significantly understates them.").

[4] Plaintiffs "[d]ispute[]" that proposition only insofar as they maintain that "[t]he PSPAs can be *amended* to permit Fannie Mae and Freddie Mac to pay down the Treasury liquidation preference." *Id.* (emphasis added).

16

significant paydown would only be possible through a further amendment to the PSPAs. *See id.* Third, even without the Third Amendment, the GSEs would not have been able to resume paying plaintiffs dividends without first paying down Treasury's Liquidation Preference, which in the real world they have yet to do. *See* Pls.' Opp'n to Defs.' Mot. for S.J. ("Pls.' Opp'n") at 26–37, Fairholme ECF No. 151, Class ECF No. 147. Thus, in order to find it reasonably certain that the Third Amendment actually deprived plaintiffs of future dividends, a jury would have to find it reasonably certain that, among other things, Treasury and FHFA eventually would have amended the PSPAs to allow a paydown of the Liquidation Preference.

Defendants argue that they are entitled to summary judgment on the fact of damages under plaintiffs' lost-dividends theory because there is insufficient evidence in the record from which a reasonable factfinder could conclude with reasonable certainty that Treasury and FHFA would have amended the PSPAs to allow such a paydown. The Court agrees.

There certainly is no *direct* evidence in the record that Treasury and FHFA planned to amend the PSPAs to allow a paydown if they did not implement the Net Worth Sweep. Defendants have adduced evidence that early in negotiations leading to the first two amendments, FHFA proposed a revision that at least would have eased restrictions on paydown and Treasury rejected that proposal. *See* Letter from A. Pollard to S. Albrecht (Feb. 25, 2009); DSUMF ¶ 10; PRDSUMF ¶ 10. Plaintiffs can point to no evidence that Treasury had any actual plans to reverse that position around the time it agreed to the Third Amendment. Plaintiffs must therefore rely on circumstantial evidence to prove a key assumption underlying the lost-dividends theory.

Plaintiffs argue that a reasonable jury could infer that Treasury would have allowed a paydown for four reasons cited in the report of their expert, Dr. Joseph R. Mason: First, the federal government has historically allowed prompt repayment of emergency financial assistance it has

17

given to companies in times of financial crisis; second, allowing a paydown would have served the conservatorship's goal of returning the GSEs to stability and normal operations; third, a paydown would serve Treasury's financial interests by resulting in the prompt return of the money it loaned to the GSEs and maximizing the value of its stock warrants; and fourth, continuing to prohibit a paydown would have been politically unpopular because the GSEs would have built up substantial capital while still owing taxpayers billions of dollars. *See* Pls.' Opp'n at 31–33; Corrected Expert Report of Joseph R. Mason ("Mason Report") ¶ 43, Ex. MM to Defs.' Mot. for S.J., Fairholme ECF No. 145-40, Class ECF No. 143-40. In sum, plaintiffs essentially argue that they could convince a reasonable jury that but for the Third Amendment, Treasury and FHFA would have had every financial and political incentive to bargain for a paydown and that doing so would be consistent with historical practice. Then, plaintiffs contend, the jury could reasonably infer that Treasury and FHFA would have acted on those incentives.

The flaw in plaintiffs' argument is that it requires the jury simply to *guess* how Treasury and FHFA would have balanced their obligations to different stakeholders and responded to financial and political incentives in a counterfactual world. For example, it is conceivable that Treasury would have considered it more financially advantageous in the medium or long term to keep the GSEs on the hook for substantial payments based on the large Liquidation Preference— or even to wind them down by some means other than the Net Worth Sweep—than to take advantage of large capital surpluses in the short term by allowing prompt repayment. It also is uncertain how strong the political will would have been to see the GSEs repay taxpayers by paying down the Liquidation Preference rather than continuing to pay Treasury dividends and PCFs. Moreover, even if Treasury and FHFA found it mutually beneficial to negotiate an amendment easing restrictions on paydown of the Liquidation Preference, it is difficult to say whether they

ultimately would be able to reach an agreement and whether the specific terms of that agreement in fact would result in a paydown in the foreseeable future that would be substantial enough for the GSEs to resume paying dividends to plaintiffs.

To be sure, it might be a "reasonable inference," in the sense of the summary judgment standard, to infer from the incentives at play that it would have been *rational* for Treasury and FHFA to agree to a paydown of the Liquidation Preference, eventually, in some way, shape, or form. But, as explained above, Delaware and Virginia law both require *reasonable certainty* as to the fact of damages; and a reasonable inference that it would be *rational* for one to take a course of action does not alone support a further inference that it is *reasonably certain* one would take that course of action. That Treasury and FHFA would have amended the PSPAs to allow a paydown rather than responding to their incentives in some other manner would be, "at best, an educated guess" that assumes the occurrence of contingencies for which there is no specific support in the record. *Cf. BTG Int'l*, 2018 WL 4151172, at *20.

Nor does the federal government's past practice of generally allowing recipients of financial assistance to repay their debts support an inference of reasonable certainty that Treasury would have allowed the GSEs to pay down the Liquidation Preference in the foreseeable future. Plaintiffs cite *M & G Polymers, LLC v. Carestream Health, Inc.*, No. 07C-11-242-PLA, 2010 WL 1611042 (Del. Super. Apr. 21, 2010) for the proposition that courts often allow theories of harm to proceed to trial where past practice would allow a factfinder to determine with reasonable certainty that a key contingency would have occurred, but that case is inapposite here. The court in that case concluded that expert testimony opining that the plaintiff and defendant likely would have renewed their contract for one period was not merely speculative. *Id.* at *39–40. Key to the court's reasoning was uncontroverted evidence that "both [parties] have a history of renewing"

similar contracts for at least one period. *Id.* at *40 (quoting *M & G Polymers, LLC v. Carestream Health, Inc.*, No. 07C-11-242-PLA, 2009 WL 353466, at *9 (Del. Super. Aug. 5, 2009)). In other words, both parties to the contract had a demonstrated history of doing something uncomplicated and not inconsistent with the contract's terms—renewing it—in precisely the same way it was theorized they would have done again but for the breach. Here, in contrast, plaintiffs and their expert base their conclusion that Treasury would have amended the PSPAs, which prohibited a substantial paydown, to allow such a paydown, on federal agencies' general historical practice of minimizing the amount of time spent as conservators of private companies and Treasury's post-2008 practice of allowing a redemption of stock it had purchased in non–government-sponsored companies like AIG, without any evidence of whether Treasury previously had agreements with those companies prohibiting such a redemption. *See* Mason Report, App. C, ¶¶ 1–14. Moreover, plaintiffs cannot point to *any* historical practices by the other party to the PSPAs—FHFA—which did not even exist prior to HERA.[5]

Even taking into account the general historical practices plaintiffs cite, a jury would be left to guess as to whether Treasury would have behaved similarly under materially different circumstances and made the affirmative decision to amend a contract that did not allow the paydown that plaintiffs' primary theory of harm assumes—and whether FHFA, which has no prior history with similar financial arrangements, even would have pushed the issue. Even a good guess would require an inherently speculative logical leap that could not result in the reasonable certainty that Delaware and Virginia law require as to damages. The Court therefore concludes that defendants are entitled to summary judgment on plaintiffs' lost-dividends theory of harm.

---

[5] Plaintiffs also cite *LG Display Co., Ltd. V. AU Optronics Corp.*, 722 F. Supp. 2d 466 (D. Del. 2010), but that is a patent case applying a test that the Federal Circuit has approved for determining a "reasonable royalty" for a patent license based on, among other things, industry practice, *see id.* at 471–72, and thus is of little relevance to determining damages based on the parties' past practice in a Delaware-and-Virginia–law contract case.

*(ii) A genuine dispute remains as to the lost-value theory.*

However, in their opposition to defendants' motions for summary judgment, plaintiffs suggest an alternative theory of harm: that the Third Amendment, by eliminating any possibility of future dividends for non-Treasury shareholders, deprived plaintiffs' shares of much of their value, even if such dividends were not reasonably certain to occur in the foreseeable future. Specifically, plaintiffs argue that an event study by one of defendants' experts showing a sharp decline in stock prices after the Third Amendment's announcement "refutes the claim that this action caused no harm." Pls.' Opp'n at 35.[6] The Court agrees that on that lost-value theory, disputed issues of material fact preclude summary judgment as to the fact of harm.

Defendants do not dispute on the merits the proposition that a decline in share value caused by the elimination of possible future dividends would constitute a cognizable harm under Delaware or Virginia law. Instead, they argue in conclusory fashion that "[p]laintiffs cannot avoid summary judgment based on a theory of harm that their own expert rejected," Defs.' Reply to Pls.' Opp'n ("Defs.' Reply") at 18, Fairholme ECF No.157-3, Class ECF No. 152-3, a reference to Dr. Mason's argument that the decline in stock price underestimates the value of possible future dividends, *see* Expert Reply Report of Joseph R. Mason ("Mason Reply Report") ¶ 85, Fairholme ECF No. 145-42, Class ECF No. 143-42; Depo. of Joseph R. Mason at 51:1–22, 55:6–22, 79:20–81:13, Ex. SS to Defs.' Reply, Fairholme ECF No. 157-3, Class ECF No. 152-3. But defendants cite no authority for the proposition that relying on expert testimony for one assertion estops a party from making an argument inconsistent with another assertion in that expert's testimony. Such an estoppel

---

[6] The parties do not cite the event study itself, referring instead to PSAMF ¶ 97, which draws conclusions about damage calculations from it but does not appear to describe or cite it. Neither party, however, disputes its basic content, and other materials in the summary judgment record, cited below, show a robust dispute between the parties' experts over the relevance of the drop in stock price.

argument makes especially little sense here, as it is clear that plaintiffs' expert considered the drop in stock price an *underestimate* of the harm plaintiffs suffered rather than a non-harm entirely.

There is no reason to preclude plaintiffs from relying on the lost-value theory in the alternative to defeat total summary judgment. The Court therefore concludes that defendants are not entitled to summary judgment *in full* on the question of damages, there being a lingering dispute of material fact as to whether the Third Amendment and its elimination of possible future dividends harmed plaintiffs by depriving them of much of the value of their shares. Since defendants do not specifically dispute that plaintiffs can prove the amount of damages resulting from that alleged harm, the Court has no occasion to consider that separate question at this time.

### 4. Plaintiffs' Proposed Alternative Remedy Is Barred

Finally, defendants argue that plaintiffs' alternative request for "restitution" is barred as a matter of law, both by HERA and as an impermissible windfall under equitable principles governing that remedy. The "alternative request" to which defendants refer comes in two passages in Dr. Mason's expert report proposing "restitution" as an "alternative measure of damages." Mason Report ¶ 15; *see also id.* ¶¶ 94–95. The Court agrees that HERA bars the alternative remedy that plaintiffs seek and accordingly does not reach defendants' further argument that that remedy would grant plaintiffs an impermissible windfall.

According to defendants, plaintiffs' alternative request for "restitution" would violate a provision of HERA found at 12 U.S.C. § 4617(f), which states that, "[e]xcept as provided in this section or at the request of the Director, no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver." The D.C. Circuit has described that clause as "draw[ing] a sharp line in the sand against litigative interference— through judicial injunctions, declaratory judgments, or other equitable relief—with FHFA's

22

statutorily permitted actions as conservator or receiver." *Perry II*, 864 F.3d at 606. Defendants argue that "restitution," as plaintiffs use that word, is a form of "other equitable relief" that the statute bars. By "equitable relief," this Court understands the D.C. Circuit to mean remedies other than a money judgment or enforcement thereof. That is apparent from its grouping of "other equitable relief" with "judicial injunctions," *id.*, and from the text of the statute, which speaks of remedies that "restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver," 12 U.S.C. § 4617(f). Thus, the Court must determine what type of alternative remedy plaintiffs propose and whether it requires only the payment of a money judgment or something more.

Despite Dr. Mason's use of the word "restitution," the remedy he describes is more precisely characterized as "rescission." Courts often use the word "restitution" to mean at least three different things—the first an independent cause of action and the others alternative remedies for breach of contract. *See* Restatement (Third) of Restitution & Unjust Enrichment, Intro. Note to Pt. 2, Ch. 4 (2011). In his report, Dr. Mason explains that the proposed alternative remedy of "restitution" would "requir[e] the Defendants to disgorge the net benefits they have received under the contracts" and plaintiffs to "give up [their] right to the shares," resulting in an "unwinding [of] the [shareholder] contracts in their entirety." Mason Report ¶¶ 94–95. That describes a use of the word "restitution" that the Restatement calls "rescission," an alternative remedy for breach of contract which "requires a mutual restoration and accounting in which each party (a) restores property received from the other, to the extent such restoration is feasible, (b) accounts for additional benefits obtained at the expense of the other party as a result of the transaction and its subsequent avoidance, as necessary to prevent unjust enrichment, and (c) compensates the other for loss from related expenditure as justice may require." Restatement (Third) of Restitution &

23

Unjust Enrichment § 54(2). And indeed, Dr. Mason himself notes that his proposed alternative remedy is called "'rescission' in some courts." Mason Report ¶ 94.

Although Dr. Mason describes that remedy as "an alternative measure of damages," *id.* ¶ 15, it is actually a form of equitable relief barred by § 4617(f). The Supreme Courts of Delaware and Virginia, whose laws govern plaintiffs' claims, have both described rescission as an equitable remedy. *See Devine v. Buki*, 289 Va. 162, 172–73 (2015) (describing rescission as an "equitable remedy"); *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P*, 817 A.2d 160, 176–78 (Del. 2002) (describing "rescission" and "rescissory damages" as "equitable remedies"). And that classification fits the way the D.C. Circuit used the phrase "equitable relief" in *Perry II*, 864 F.3d at 606. Rescission here would require more than a money judgment. It would terminate plaintiffs' shareholder contracts, extinguishing their ownership rights and forcing a reorientation of the GSEs' capital structure. And because that remedy would be for an action that FHFA took within the scope of its authority as conservator—adopting the Third Amendment—it would violate § 4617(f).

Plaintiffs argue that "monetary restitution" is a legal remedy rather than an equitable one, but the four principal cases they cite for that proposition do not support their position. One describes as legal (in *dictum*) a remedy that it calls "unjust enrichment" or "restitution" but the Restatement calls "performance-based damages," whereby the nonbreaching party simply recovers the value it bestowed on the breaching party without any further need to unwind an ongoing contractual relationship. *Dickerson v. Villages of Five Points Property Owners Ass'n, Inc.*, No. 2020-0420-PWG, 2020 WL 7251512, at *5 (Del. Ch. Dec. 9, 2020); *see* Restatement (Third) of Restitution & Unjust Enrichment § 38. Two others concern money judgments as a remedy for the *cause of action* known as restitution. *Clark v. Teeven Holding Co., Inc.*, 625 A.2d

869, 878 (Del. Ch. 1992); *Belcher v. Kirkwood*, 238 Va. 430, 432–33 (1989). The last case describes a "claim for return of the payments" as "one cognizable at law" but a "request for rescission [as] solely for equitable relief." *Primrose Dev. Corp. v. Benchmark Acquisition Fund I Ltd. P'ship*, 45 Va. Cir. 461, 1998 WL 972200, at *2–3 (Va. Cir. 1998). None of those cases stand for the proposition that the remedy of *rescission* is, or can be, legal rather than equitable, and all of them discuss remedies that *solely* involve a money judgment.[7] Here, in contrast, Dr. Mason proposes a wholesale unwinding of the shareholder contracts, with plaintiffs giving up their rights as shareholders. That is an equitable remedy that, as explained above, includes more than just a money judgment.

Properly understood, the alternative remedy of rescission that Dr. Mason proposes asks the Court to "affect the exercise of powers or functions of the Agency as a conservator or a receiver" in violation of HERA. 12 U.S.C. § 4617(f). Accordingly, defendants are entitled to summary judgment on the unavailability of that remedy.[8]

## B. Plaintiffs' Motions for Partial Summary Judgment

Plaintiffs in both cases also move for partial summary judgment on a narrow issue: whether the provision of the PSPAs entitling Treasury to PCFs would have been enforceable in a world without the Third Amendment. Plaintiffs argue that those provisions are unenforceable as a matter

---

[7] The Restatement takes the position that "[r]escission as a remedy for breach of contract is not available against a defendant whose defaulted obligation is exclusively an obligation to pay money." Restatement (Third) of Restitution & Unjust Enrichment § 37(2).

[8] The Court further notes that even if HERA did not bar rescission as a remedy for the alleged breach of the implied covenant of good faith and fair dealing, under both Delaware and Virginia law, "the remedy of equitable rescission [for a contract claim] is only available when the underlying breach . . . is 'substantial' or 'material.'" *Young-Allen v. Bank of America, N.A.*, 298 Va. 462, 469 (2020); *see also Segovia v. Equities First Holdings, LLC*, C.A. No. 06C-09-149-JRS, 2008 WL 2251218, at *23 (Del. Super. May 30, 2008) (emphasis added) ("The concept of cancelling contracts upon a *material breach* is well-settled in Delaware law."). "A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Horton v. Horton*, 254 Va. 111, 115 (1997). While defendants do not raise that issue in their summary judgment motion, and thus the Court will not grant summary judgment on that ground, plaintiffs also do not explain how they intend to prove at trial that the alleged breach here was material.

of New York law, which governs them, and under federal statutes setting out the GSEs' charters; or, in the alternative, that no PCF could have been assessed before 2016 because of the expiration of a contractual deadline for setting a periodic commitment fee for the period between 2011 and 2015. Thus, plaintiffs contend, no disputed issue of material fact remains as to whether, in their but-for world, the GSEs would have paid Treasury PCFs, at least before 2016. Plaintiffs argue that the alleged unenforceability of the PCF provisions affects both liability, because it informs what plaintiffs' reasonable expectations were at the time of the Third Amendment,[9] and damages, because it affects the GSEs' projected profitability in the but-for world.

Defendants raise a host of counterarguments, both procedural and substantive, in opposition to plaintiffs' motion. Most importantly, they argue that without evidence suggesting that the PCFs *would not* have been assessed as a matter of fact, a determination in 2022 that they *should not* have been assessed as a matter of law would not itself be material to determining plaintiffs' reasonable expectations at the time of the Third Amendment or the profits the GSEs could have been expected to reap but for the Net Worth Sweep. The Court agrees.

Plaintiffs are not necessarily wrong to suggest that the assessment of PCFs or lack thereof would have affected their reasonable expectations of what FHFA might "bargain away" in negotiations over an amendment to the PSPAs, and they are doubtless correct that it would have affected the GSEs' ability to pay future dividends in a world without the Net Worth Sweep. But whether plaintiffs reasonably could have expected the GSEs to pay PCFs to Treasury and whether the GSEs in fact would have done so—and thus burdened their future ability to pay dividends to

---

[9] This Court has previously held that the relevant time of "contracting" for purposes of evaluating plaintiffs' implied covenant claim is the time immediately before the enactment of the Third Amendment. *See Fairholme Funds*, 2018 WL 4680197, at *8–9.

26

non-Treasury shareholders—are factual questions conceptually distinct from the legal question of whether the GSEs could have been *required* to do so.

With respect to liability, plaintiffs argue that "[a]n interpretation of the [PSPAs] that is at odds with governing law is per se unreasonable," and thus, "[i]f the PCF was legally unenforceable, the only reasonable shareholder expectation, as a matter of law, was that the PCF would never be paid," Pls.' Reply to Defs.' Opp'n to Pls.' Mot. for Partial S.J. at 3, Fairholme ECF No. 156, Class ECF No. 151, but that argument is unpersuasive for two reasons. First, plaintiffs do not cite any authority, whether from Delaware, Virginia, or elsewhere, to support it. Second, it makes no logical sense. It does not follow from a third party's legal conclusion—even a correct one—that a contractual provision is unenforceable that the parties to the contract will not perform according to the terms of that provision. The logical link that is missing is evidence that some person would have challenged the provision, or that one of the parties to the contract would have declined to perform. And plaintiffs point to no evidence, much less undisputed evidence, that anyone at FHFA or Treasury considered the PCF provisions unenforceable or had any plans not to comply with their terms, nor that any person planned to challenge them in court. Plaintiffs therefore have not demonstrated that no genuinely disputed issue of material fact remains as to whether they reasonably could have expected the GSEs to pay PCFs to Treasury.

With respect to damages, plaintiffs argue that if the PCF provisions are unenforceable, the jury can assume for purposes of calculating expectation damages that the GSEs would not have paid PCFs to Treasury in a world without the Net Worth Sweep. But again, that does not follow, because plaintiffs point to no evidence suggesting that the GSEs in fact would not have done so.

Plaintiffs therefore have not demonstrated that no genuinely disputed issue of material fact remains as to whether the GSEs would have paid PCFs to Treasury but for the Net Worth Sweep.[10]

Because plaintiffs have not met their burden as the moving party of demonstrating that no genuine dispute of material fact remains as to the issues raised in their motion, they are not entitled to partial summary judgment regarding the enforceability of the PCF provisions. The Court has no occasion to consider on the merits whether the provisions are enforceable.

## V.    CONCLUSION

In accordance with the above analysis,

1) In No. 1:13-cv-1053-RCL, Defendants' Motion [145] for Summary Judgment will be **GRANTED** with respect to the lost-dividends theory of harm and plaintiffs' proposed alternative remedy of rescission and **DENIED** in all other respects, and Plaintiffs' Motion [146] for Partial Summary Judgment will be **DENIED**.

2) In No. 1:13-mc-1288-RCL, Defendants' Motion [143] for Summary Judgment will be **GRANTED** with respect to the lost-dividends theory of harm and plaintiffs' proposed alternative remedy of rescission and **DENIED** in all other respects, and Plaintiffs' Motion [144] for Partial Summary Judgment will be **DENIED**.

Separate orders in each case consistent with this Memorandum Opinion shall issue this date.

Date: September 23, 2022                                    /s/ Royce C. Lamberth
                                                           Royce C. Lamberth
                                                           United States District Judge

---

[10] The Court further notes that given its determination that defendants are entitled to summary judgment on plaintiffs' lost-dividends theory of harm, it is now less clear what effect PCFs would have on damage calculations.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FAIRHOLME FUNDS, INC.**, *et al.*,

    *Plaintiffs,*

**v.**

**FEDERAL HOUSING FINANCE**
**AGENCY**, *et al.*,

    *Defendants*.

Case No. 1:13-cv-1053-RCL

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion:

Defendants' Motion [145] for Summary Judgment (redacted version at [148]) is **GRANTED** insofar as no genuine dispute remains on the fact of harm on the theory that plaintiffs were denied dividends that they otherwise were reasonably certain to receive, and insofar as plaintiffs' proposed alternative remedy of rescission and restitution is barred as a matter of law; and **DENIED** insofar as a genuine dispute of material fact remains on the fact of harm on the theory that plaintiffs' shares lost of much of their value, and in all other respects.

Plaintiffs' Motion [146] for Partial Summary Judgment is **DENIED**.

The Memorandum Opinion was filed under seal because it references documents the parties filed under seal. It is hereby **ORDERED** that the parties meet and confer and jointly identify which, if any, parts of the Memorandum Opinion should remain sealed within five days.

**IT IS SO ORDERED.**

Date: September 23, 2022

                                    /s/ Royce C. Lamberth
                                    Royce C. Lamberth
                                    United States District Judge

1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FAIRHOLME FUNDS, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 13-1053 (RCL) |
| | ) | |
| FEDERAL HOUSING FINANCE | ) | |
| AGENCY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| ARROWOOD INDEMNITY COMPANY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 13-1439 (RCL) |
| | ) | |
| FEDERAL NATIONAL MORTGAGE ASSOCATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations | ) ) ) | Miscellaneous No. 13-1288 (RCL) |
| | ) | |
| This Order relates to: ALL CASES | ) ) | <u>CLASS ACTION</u> |
| | ) | |

# ORDER

Defendants move for partial reconsideration of the Court's Memorandum Opinion and Orders entered on September 28, 2018, in each of the above-captioned cases.[1]  They argue that the Court's rationale for dismissing plaintiffs' breach-of-contract claims calls for the dismissal of plaintiffs' implied covenant claims as well.  Defs' Mot. Partial Recons. 1.  The Court disagrees and **DENIES** the motion.

In its opinion, the Court dismissed plaintiffs' claims that the Third Amendment breached plaintiffs' express contractual rights to receive a liquidation preference.  *Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*, 13-cv-1053, 13-cv-1439, 13-mc-1288, 2018 WL 4680197, at *7 (D.D.C. Sep. 28, 2018).  The claims sounded in anticipatory breach, *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 633 (D.C. Cir. 2017), but ran afoul of a limitation to that doctrine, which precludes recovery for anticipatory breach for unilateral contracts.  *Fairholme*, 2018 WL 4680197, at *6–7. By entering into the Third Amendment, plaintiffs argued defendants had effectively repudiated their contractual obligations with regards to the liquidation preference by rendering performance in the future impossible.  *Id.* at *6.  But because "the only remining performance [on plaintiffs' contracts] is payment of the preference by Fannie Mae or Freddie Mac upon liquidation (if it ever occurs)," the Court found the parties' contract unilateral, meaning the limitation to anticipatory breach kicked in.  *Id.*  Thus, the breach-of-contract claims as to liquidation preferences could not move forward.  *Id.* at *7.

Separately, the Court held that plaintiffs' claims for breach of the implied covenant of good faith and fair dealing relating to dividends and liquidation preferences could proceed.  *Id.* at *7. Specifically, the Court found that plaintiffs "plausibly allege[d] that they could not have

---

[1] Defendants' motion can be found at ECF No. 87 in 13-cv-1053, ECF No. 95 in 13-cv-1439, and ECF No. 89 in 13-mc-1288.

reasonably expected their rights to dividends and liquidation preferences to be extinguished by the Third Amendment." *Id.* at *14.

Defendants argue that the Court's breach-of-contract and implied covenant holdings were inconsistent. Defs' Mot. Partial Recons. 2. In their view, the implied covenant is "nothing more than a species of breach-of-contract claim, and the same limitations on anticipatory breach apply whether the alleged breach is of an express contractual obligation or the implied covenant duties that attach to and supplement those express terms." *Id.*

But defendants misunderstand the differing focus of plaintiffs' claims. Anticipatory breach is "a doctrine of accelerated ripeness." *Perry Capital*, 864 F.3d at 632–33 (quoting *Homeland Training Ctr., LLC v. Summit Point Auto. Research Ctr.*, 594 F.3d 285, 294 (4th Cir. 2010)). It allows a promisee, in certain situations, to sue for breach of a contractual provision before performance by the other party is actually due. *Id.* The implied covenant, on the other hand, is an ongoing obligation; performance is always due. For the length of the contractual relationship, the implied covenant requires a party "'to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits' of the bargain." *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (quoting *Wilgus v. Salt Pond Inv. Co.*, 498 A.2d 151, 159 (Del. Ch. 1985)).

Plaintiffs' implied covenant claims do not seek to hold defendants presently accountable for a future breach of an express provision. Rather, plaintiffs seek to hold defendants presently accountable for a present breach of an implied promise inherent in every contract—that both parties will operate in good faith and not violate their co-contracting party's reasonable expectations. Plaintiffs allege that defendants acted arbitrarily and unreasonably by entering into the Third Amendment and agreeing to provide Treasury a quarterly dividend equal to 100% of

each company's net worth without receiving any increased funding commitment from the government. They allege that the Third Amendment had the effect of preventing plaintiffs from receiving the fruits of their bargain: their rights to dividends and liquidation preferences. This alleged breach was not a repudiation of a future obligation. It was a present breach of the implied covenant. The rights to share in Fannie Mae and Freddie Mac's profits or assets through dividends or liquidation preferences, respectively, were priced into the parties' bargained-for exchange. And thus, the Third Amendment "immediately harmed [the plaintiffs] by diminishing value in their shares." *See Perry*, 864 F.3d at 632.

The anticipatory breach claim and the implied covenant claims are not identical. One alleges a breach of an express provision on which performance is not yet due and the other alleges a breach of an implied provision that must be adhered to throughout the life of the contract. The limitation on anticipatory breach does not apply to the alleged breaches of the implied covenant because those breaches are not anticipatory. Defendants' motion is **DENIED**.

**IT IS SO ORDERED.**

Date: 5/16/19

Royce C. Lamberth
ROYCE C. LAMBERTH
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FAIRHOLME FUNDS, INC., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil No. 13-1053 (RCL) |
| ) | |
| FEDERAL HOUSING FINANCE ) | |
| AGENCY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### Order

Now before the Court is a motion to dismiss [ECF No. 68] filed by the defendants Federal Housing Finance Agency, as Conservator for the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac," and together with Fannie Mae, the "GSEs,"); and the GSEs (collectively, "Defendants"). For the reasons set forth in the accompanying memorandum opinion, the Court **GRANTS** Defendants' motion with respect to Counts I, II, IV, V, and VI and **DENIES** Defendants' motion with respect to Count III.

In coming to its decision, the Court considered plaintiffs' sur-reply filed in the above-captioned actions. Accordingly, the motions for leave to file sur-reply [ECF No. 79] will be **GRANTED**.

It is so **ORDERED**.

9/28/18
Date

ROYCE C. LAMBERTH
United States District Judge

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FAIRHOLME FUNDS, INC., *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil No. 13-1053 (RCL) |
| FEDERAL HOUSING FINANCE AGENCY, *et al.*, | ) | |
| Defendants. | ) | |

|  |  |  |
|---|---|---|
| ARROWOOD INDEMNITY COMPANY, *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil No. 13-1439 (RCL) |
| FEDERAL NATIONAL MORTGAGE ASSOCATION, *et al.*, | ) | |
| Defendants. | ) | |

|  |  |  |
|---|---|---|
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations | ) | Miscellaneous No. 13-1288 (RCL) |
| This Memorandum Opinion relates to: ALL CASES | ) | <u>CLASS ACTION</u> |

## MEMORANDUM OPINION

Before the Court is a motion to dismiss filed by the defendants Federal Housing Finance

Agency ("FHFA"), as Conservator for the Federal National Mortgage Association ("Fannie Mae")

and the Federal Home Loan Mortgage Corporation ("Freddie Mac," and together with Fannie Mae,

the "GSEs,"); Melvin L. Watt, in his official capacity as Director of FHFA; and the GSEs

(collectively, "Defendants").  The motion applies to all three of the above-captioned cases [ECF

No. 68 for Civil No. 13-1053; ECF No. 77 for Civil No. 13-1439; ECF No. 66 for Miscellaneous

No. 13-1288].  Upon consideration, Defendants' motion is **GRANTED IN PART** and **DENIED**

**IN PART**.  Additionally, because the Court considered the various plaintiffs' sur-replies in coming

to this decision, the motions for leave to file sur-reply [ECF No. 79 for Civil No. 13-1053, ECF

No. 87 for Civil No. 13-1439, and ECF No. 78 for Miscellaneous No. 13-1288] will be

**GRANTED**.

## I.    BACKGROUND[1]

This matter is brought before the Court by a class action law suit and two individual

lawsuits.  Following this Court's prior opinion, *see generally Perry Capital LLC v. Lew*, 70 F.

Supp. 3d 208 (D.D.C. 2014) ("*Perry I*"), and the D.C. Circuit's opinion, *see generally Perry*

*Capital LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017) ("*Perry II*"), these lawsuits contain

substantially identical claims.[2]  The class action law suit was brought by a purported class of

private individual and institutional investors (the "Class Plaintiffs") who own either preferred or

common stock in the Fannie Mae or Freddie Mac.  Second Am. Consolidated Class Action Compl.

at ¶¶ 18-33, *In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class*

---

[1] The recited facts are taken from plaintiffs' complaints, which for the purpose of the motions to dismiss, the court accepts as true and from sources from which the Court may properly take judicial notice.
[2] Due to the similarity of the claims, this opinion will refer to the Class Plaintiffs and the institutional investors collectively, as "Plaintiffs".

*Action Litigs.*, Misc. No. 13-1288 (D.D.C. Feb. 1, 2018), ECF No. 71 ("Class SAC"). The individual lawsuits were brought by separate institutional investors owning junior preferred stock in the GSEs. First Am. Compl. at ¶¶ 5-20, *Fairholme Funds, Inc. v. FHFA*, Civ. No. 13-1053 (D.D.C. Feb. 1, 2018), ECF No. 75 ("Fairholme FAC"); First Am. Compl. at ¶¶ 6-18, *Arrowood Indem. Co. v. Fannie Mae*, Civ. No. 13-1439 (D.D.C. Feb. 1, 2018), ECF No. 83 ("Arrowood FAC").

### A. The GSEs

Fannie Mae and Freddie Mac are government-sponsored enterprises, born from statutory charters issued by Congress. *See* Federal National Mortgage Association Charter Act, 12 U.S.C. §§ 1716-1723; Federal Home Loan Mortgage Corporation Act, 12 U.S.C. §§ 1451-1459. Congress created the GSEs in order to, among other goals, "promote access to mortgage credit throughout the Nation . . . by increasing the liquidity of mortgage investments and improving the distribution of investment capital available for residential mortgage financing." 12 U.S.C. § 1716(3). The GSEs accomplish this objective by purchasing mortgages from lenders, thereby relieving the lenders of default risk and clearing up funds to be used to make more loans. To finance these purchases, the GSEs pool the many mortgage loans they purchase into various mortgage-backed securities and sell these securities to investors.

Fannie Mae and Freddie Mac are considered government-*sponsored*, rather than government-*owned*, because both congressionally chartered entities were eventually converted, by statute, into publicly traded corporations. In 1968, Congress made Fannie Mae a publicly traded, stockholder-owned corporation. Housing and Urban Development Act, Pub. L. No. 90-448, § 802, 82 Stat. 536-538 (1968). And in 1989, Freddie Mac followed suit. Financial Institutions Reform, Recovery and Enforcement Act, Pub. L. No. 101-73, § 731, 103 Stat. 432-433 (1989). To provide

guidance to the GSEs on corporate governance issues not specifically addressed by federal law, the Office of Federal Housing Enterprise Oversight directed the GSEs to follow a chosen state's corporate laws as a gap-filling measure. *See* 67 Fed. Reg. 38361 (Jun. 4, 2002). The GSEs hence enacted bylaws in which they elected to follow a chosen state's law—Delaware law for Fannie Mae and Virginia law for Freddie Mac.

Since their founding, the GSEs have been major players in the United States' housing market. In the lead up to 2008, the GSEs' mortgage portfolios had a combined value of $5 trillion and accounted for nearly half of the United States' mortgage market.

## B. The 2008 Recession, the Creating of the FHFA, and the Beginning of Conservatorship

In 2008, the United States' mortgage and housing markets went into crisis, leading in part to a severe recession. Despite the GSEs' comparatively strong financial position amidst the crisis, Congress worried that a potential default by Fannie or Freddie would imperil the already fragile national economy. In response to these concerns, Congress enacted the Housing and Economic Recovery Act ("HERA" or "the Act"). HERA established the FHFA, granting it broad authority to ensure the GSEs remained stable. The Act denominated the GSEs as "regulated entit[ies]" subject to the direct "supervision" of FHFA, 12 U.S.C. § 4511(b)(1), and the "general regulatory authority" of FHFA's director (the "Director"). *Id.* § 4511(b)(1), (2). The Director was charged by HERA with "over see[ing] the prudential operations" of the GSEs and "ensur[ing] that" they "operate[] in a safe and sound manner," "consistent with the public interest." *Id.* § 4513(a)(1)(A), (B)(i), (B)(v).

Additionally, HERA authorized the Director to appoint FHFA as either conservator or receiver for the GSEs "for the purpose of reorganizing, rehabilitating, or winding up the[ir] affairs." 12 U.S.C. § 4617(a)(2). If appointed as conservator, the Act granted the FHFA broad

4

powers and authority over the GSEs. The Act provided that the FHFA "shall, as conservator or receiver, . . . immediately succeed to . . . all rights, titles, powers, and privileges of the regulated entity and of any stockholder, officer, or director of such regulated entity with respect to the regulated entity and the assets of the regulated entity." *Id.* § 4617(b)(2)(B)(i), (iv). It also gave the FHFA general powers to take actions "necessary to put the [GSEs] in a sound and solvent condition" and "appropriate to carry on the business of the [GSEs] and preserve and conserve the assets and property of the [GSEs]." *Id.* § 4617(b)(2)(D)(i), (ii). And the Act further provides that the FHFA, as conservator, may take any action authorized under the act "which [it] determines is in the best interests of the [GSEs] or the [FHFA]." *Id.* § 4617(b)(2)(J)(ii).

On September 6, 2008, FHFA placed the GSEs into conservatorship, assuming the powers granted to the conservator by the Act. According to statements by the Director, conservatorship was "designed to stabilize a troubled institution with the objective of returning the entities to normal business operations." Class SAC at ¶ 40 (relying on Press Release, Federal Housing Finance Agency, Statement of FHFA Director James B. Lockhart at News Conference Announcing Conservatorship of Fannie Mae and Freddie Mac (Sept. 7, 2008)). And that the "FHFA [would] act as the conservator to operate the GSEs until they [were] stabilized." *Id.* Once the FHFA determined that the GSEs were in a safe and solvent condition, the Director would issue an order terminating conservatorship.

Despite the conservatorship, the common and preferred stock remained outstanding. In its Form 8-K filing just days after the beginning of conservatorship, Freddie Mac stated, "The holders of Freddie Mac's existing common and preferred stock . . . will retain all their rights in the financial worth of those instruments, as such worth is determined by the market." Class SAC at ¶ 42 (relying on Federal Home Loan Mortgage Corporation, Current Report (Form 8-K) (Sept. 11, 2008)).

5

### C. The GSEs Enter into a Senior Preferred Stock Purchase Agreement ("PSPA") with Treasury

A day after its appointment as conservator, the FHFA struck a deal with the Treasury Department ("Treasury"), entering into the PSPAs. The state of the market limited access to private capital markets for Freddie and Fannie. To shore up the GSEs' financial positions, Treasury agreed to invest billions of dollars in the GSEs in exchange for one million senior preferred shares ("Government Preferred Stock") in each company. These shares had a principal value equal to the amount invested by Treasury in each company, plus $1 billion to reflect a commitment fee with respect to each GSE. The shares also entitled Treasury to:

- a senior preferred dividend each quarter in an amount equal to 10% of the outstanding principal value of the Government Preferred Stock if the dividend was paid in cash;

- a stock dividend, if the senior preferred dividend was not paid in cash, in the form of additional Government Preferred Stock with a face value equal to 12% of the outstanding principal value of the Government Preferred Stock;

- a priority right above all other stockholders, whether preferred or otherwise, to receive distributions from assets if the GSEs were dissolved;

- warrants allowing Treasury to purchase up to 79.9% of the GSEs' common stock; and

- the possibility of periodic commitment fees over and above dividends.

Additionally, the PSPAs included a variety of covenants. Most relevantly, the GSEs would have to receive Treasury's approval before declaring or paying any dividend or distribution. However, this covenant only applied during conservatorship.

6

Initially, Treasury's commitment to invest capital was capped at $100 billion per company. But it was determined that this would not be enough to meet the GSEs' funding needs. The PSPAs were amended twice. First, in May 2009, Treasury agreed to expand the funding commitment to $200 billion for each company. Seven months, later the PSPAs were amended again, raising the cap to an adjustable figure determined by an agreed-upon formula. As of June 30, 2012, the GSEs together had drawn $187.5 billion from Treasury's funding commitment.

### D. The Return to Profitability

When appointed as conservator, the FHFA did not expect the GSEs to be profitable. Expecting large losses in the coming years, FHFA directed the GSEs to book substantial loss reserves—recording anticipated mortgage loan losses before they were actually incurred—and required the GSEs to eliminate from their balance sheets the value of deferred tax assets that would only be of use if the GSEs became profitable. This accounting decision caused a strain on the GSEs' balance sheets, necessitating (in part) an increased draw from the Treasury's commitment. It even led to the payment of some circular dividend payments, where the GSEs drew on Treasury's funding commitment to pay Treasury its senior preferred dividend.

By 2012, though, it became clear that FHFA had overestimated the Companies' likely losses and underestimated the possibility of a return to profitability. More than $234 billion had been set aside by the GSEs to absorb loan losses, whereas losses of just over $125 billion were actually realized.

Additionally, the housing market had rebounded and the companies were well-positioned to begin generating profits for the foreseeable future. The GSEs, FHFA, and Treasury learned the GSEs were expected to be sufficiently profitable in the coming years to pay the 10% dividend on the Government Preferred Stock without the necessity of drawing from Treasury. It was believed

7

that the period between 2012 and 2020 would be the "golden years of GSE earnings." *See* Class SAC ¶ 54; Arrowood ¶ 53; Fairholme FAC ¶ 56. In fact, the GSEs were forecasted to be so consistently profitable that they could repay Treasury its initial investment within the following eight years.

### E. The Enactment of the Third Amendment

Despite this positive outlook, FHFA and Treasury agreed to amend the PSPAs for a third time (the "Third Amendment"). The Third Amendment changed the government's senior preferred dividend from 10% of the outstanding principal value of the Government Preferred Stock to a quarterly dividend equal to 100% of each company's net worth that exceeded a capital buffer of $3 billion, with that buffer decreasing annually down to zero by 2018 (the "Net Worth Sweep"). And, since the PSPAs provided that in the event of a liquidation of the GSEs, the government would receive a liquidation preference that included the amount of any prior unpaid dividend, the Third Amendment guaranteed that even if the GSEs were liquidated, Treasury would receive the full amount of the GSEs' net worth in that liquidation.

The GSEs received no new investment in exchange for the change in dividend structure. The reason given publicly for the Third Amendment was to end the practice of circular dividends paid to Treasury from funds drawn from Treasury's commitment to the GSEs. As of February 2018, Treasury has received over $276 billion in dividends from the companies—$88 billion more than Treasury's total investment in both companies.

## II.  PROCEDURAL HISTORY

In 2013, Plaintiffs filed suit challenging the Third Amendment. They alleged that, in adopting the Third Amendment, FHFA and the GSEs breached the terms governing dividends, liquidation preferences, and voting rights in the stock certificates for Freddie's Common Stock

and for both Fannie's and Freddie's Preferred Stock. Additionally, they alleged that those defendants breached the implied covenant of good faith and fair dealing in those certificates. The Plaintiffs also alleged that FHFA and Treasury breached state-law fiduciary duties owed by a corporation's management and controlling shareholder, respectively. The Plaintiffs asked the Court to declare their lawsuit a "proper derivative action" and to award damages as well as injunctive and declaratory relief.

The Court dismissed Plaintiffs' claims entirely for failure to state a claim, along with different claims by institutional investors under HERA and the Administrative Procedure Act ("APA") seeking only equitable relief. *See generally Perry I*, 70 F. Supp. 3d 208. On appeal, the D.C. Circuit affirmed in part and reversed in part, remanding some of Plaintiffs' claims. *See generally Perry II*, 864 F.3d 591.

Having amended their respective complaints, all plaintiffs bring claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and violations of Delaware and Virginia statutory law governing dividends.[3] *See* Class SAC; Fairholme FAC; Arrowood FAC. Additionally, the Class Plaintiffs bring derivative claims against FHFA for breach of fiduciary duties. And the individual plaintiffs bring APA claims. Again, Defendants move to dismiss Plaintiffs' claims. And once again, this Court must decide whether Plaintiffs have stated a claim upon which relief may be granted.

## III.     LEGAL STANDARD

A motion to dismiss is appropriate when the complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The Court does not "require heightened fact

---

[3] In its complaint, Arrowood named FHFA Director Watt, in his official capacity, as a defendant on claims seeking money damages. Arrowood has since withdrawn those claims. Ind. Pls.' Resp.to Defs.' Mot. to Dismiss the Am. Compl. at 19, n. 6.

pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[T]he complaint is construed liberally in the plaintiffs' favor, and [the Court] grant[s] plaintiffs the benefit of all inferences that can be derived from the facts alleged. However, the [C]ourt need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (internal quotation marks and citation omitted).

## IV.    ANALYSIS

### A.    Plaintiffs' Breach of Contract Claims Fail on the Merits

In each case, the respective plaintiffs assert the Third Amendment breached Plaintiffs' contractual rights to receive a liquidation preference. *See* Class SAC Counts I-III; Fairholme FAC Count II; Arrowwood FAC Count III. While this Court previously dismissed these claims as unripe, *see Perry I*, 70 F. Supp. 3d at 234–26, the D.C. Circuit reversed that decision, holding that the "claims for breach of contract with respect to liquidation preferences are better understood as claims for anticipatory breach[.]" *Perry II*, 864 F.3d at 633. Under this doctrine, "a voluntary affirmative act which renders the obligor unable . . . to perform" is a repudiation, RESTATEMENT (SECOND) OF CONTRACTS § 250(b), that "ripens into a breach prior to the time for performance . . . . if the promisee elects to treat it as such" by, for instance, suing for damages. *Franconia Assocs. v. United States*, 536 U.S. 129, 143, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002) (internal quotation marks omitted); RESTATEMENT (SECOND) OF CONTRACTS §§ 253(1), 256 cmt. c; *accord Lenders Fin. Corp. v. Talton*, 249 Va. 182, 189, 455 S.E.2d 232, 236 (Va. 1995); *W. Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC, C.A.* No. 2742-VCN, 2009 WL 458779, at *5 & n.37 (Del. Ch. Feb. 23, 2009). As the Circuit explained, "anticipatory breach is 'a doctrine of accelerated

10

ripeness' because it 'gives the plaintiff the option to have the law treat the promise to breach [or the act rendering performance impossible] as a breach itself.'" *Perry II*, 864 F.3d at 633–34 (quoting *Homeland Training Ctr, LLC v. Summit Point Auto. Research Ctr.*, 594 F.3d 285, 294 (4th Cir. 2010)). The Circuit, therefore, reversed this Court's decision, holding the Plaintiffs' breach of contract claims ripe for decision. *Id.* at 634.

In making this determination, the D.C. Circuit made clear that it was not addressing the merits of the breach of contract claim. *Id.* ("Our holding that the claims are ripe sheds no light on the merits of those claims . . . ."). Instead, that court held that "[w]hether the class plaintiffs stated claims for breach of contract . . . is best addressed by the district court in the first instance." *Id.* After evaluating the merits of the claim, and for the reasons set forth below, the Court finds that Plaintiffs fail to state a claim for anticipatory breach of their contractual rights to receive a liquidation preference. As such, Defendants' motion will be granted as to these counts in the respective cases.

As Defendants point out in their briefs, the doctrine of anticipatory breach is not limitless. *See* Defs.' Mot. To Dismiss at 15–17. As this Court recently explained, *see Glenn v. Fay*, 281 F. Supp. 3d 130, 139 (D.D.C. 2017), the doctrine traditionally does not apply to unilateral contracts, especially when the only remaining performance is the payment of money. *Smyth v. United States*, 302 U.S. 329, 356, 58 S.Ct. 248, 82 L.Ed. 294 (1937) ("[T]he rule of law is settled that the doctrine of anticipatory breach has in general no application to unilateral contracts, and particularly to such contracts for the payment of money only."). And, importantly for the purposes of this opinion, the limitation also applies to "bilateral contracts that have become unilateral by full performance on one side." 23 WILLISTON ON CONTRACTS § 63:60 (quoting *Phelps v. Herro*, 215 Md. 223, 137 A.2d 159 (1957)); *see also* 23 WILLISTON ON CONTRACTS § 63:61 ("[W]hen a bilateral contract

11

has become a unilateral obligation by full performance on one side, anticipatory repudiation of that obligation does not permit the immediate filing of an action."). In other words, "if the payee has completely performed his side of the contract and is just awaiting payment, he can't declare a breach and sue for immediate payment just because he has reason (even compelling reason) to doubt that the other party will pay when due." *Cent. States, Se. & Sw. Areas Pension Fund v. Basic Am. Indus., Inc.*, 252 F.3d 911, 915 (7th Cir. 2001).

Admittedly, as pointed out by Plaintiffs, the limitation is not without criticism. RESTATEMENT (SECOND) OF CONTRACTS § 253, comment d. The Seventh Circuit, for example, characterized the rule as "dubious" and remarked that the rationale for the limitation "eludes [] understanding." *Cent. States*, 252 F.3d at 915. Various commentators have expressed similar sentiments. *See, e.g.*, 4 CORBIN ON CONTRACTS 872-73 (1951) ("[A] plaintiff should not be deprived of his remedy in damages for an anticipatory repudiation merely because the promised performance is similar in character to the performance that is required by the judicial remedy that is commonly given for all kinds of breaches of contract."); *Doctrine of Anticipatory Breach as Applicable to a Contract which the Complaining Party Has Fully Performed*, 105 A.L.R. 460 (1936) ("From his own examination of the cases the writer is unable to state upon what substantial reason the limitation in question may be said to rest.").

But it is not the role of this Court to evaluate the soundness of the limitation. Rather, the Court must determine whether the limitation exists under the laws of the states of Delaware (Fannie Mae) and Virginia (Freddie Mac). The Court finds that it does. The Virginia Supreme Court has plainly held "[t]here is no cause of action for the anticipatory repudiation of [unilateral] contracts." *Fairfax-Falls Church Cmty. Servs. Bd. V. Herren*, 230 Va. 390, 395, 337 S.E.2d 741 (1985). Delaware courts have not been as explicit; but a decision from the Chancery Court cites with

approval a commentator acknowledging the limitation. *Meso Scale Diagnostics, LLC v. Roche Diagnostics GmbH*, 62 A.3d 62, 78 n. 102 ("An anticipatory breach of contract occurs when an obligor repudiates a duty before the time for the obligor's performance, and the aggrieved party elects, *before completion of his or her performance*, to consider the obligor's repudiation to be a present breach.") (quoting 1 C. CORMAN, LIMITATION OF ACTIONS § 7.2.1, p. 488 (1991)) (emphasis added).

Plaintiffs' attempts to downplay the significance of these cases amount to claims that these statements were merely dicta or assertions the limitation surely does not apply without limitation. *See* Ind. Pls.' Resp.to Defs.' Mot. to Dismiss the Am. Compl. at 15. But Plaintiffs cite no authority from the relevant jurisdictions renouncing the rule or narrowing it in any way. Instead, both jurisdictions generally follow the Restatement, which states "an obligor's repudiation alone . . . gives rise to no claim for damages at all if he has already received all the agreed exchange for it." RESTATEMENT (SECOND) OF CONTRACTS § 253, comment c. And Plaintiffs have not directed the Court to any caselaw in either relevant jurisdiction that even implies disagreement with this comment to the Restatement. Having found no authority to the contrary, there is no basis for this Court to determine that the limitation does not exist under both Delaware and Virginia law. Therefore, the viability of Plaintiffs' breach of contract claims depends on whether or not the limitation applies. This Court finds that it does.

As noted by the D.C. Circuit, Plaintiffs' claims for breach of contract with respect to liquidation preferences sound in anticipatory breach. *Perry II*, 864 F.3d at 633. Plaintiffs claim Defendants effectively repudiated their contractual obligations with regards to the liquidation preference by rendering performance impossible. *Id.* at 633 n. 26. Typically, this amounts to a claim for anticipatory breach. But here, Plaintiffs' contract with the GSEs with respect to

13

liquidation preferences is a unilateral contract.  Plaintiffs completed their end of the bargain by purchasing preferred shares in the GSEs.  With respect to the liquidation preference, the only remaining performance is payment of the preference by Fannie Mae or Freddie Mac upon liquidation (if it ever occurs).  This clearly implicates the limitation.  And therefore, Plaintiffs "can't declare a breach and sue for immediate payment just because [they have] reason (even compelling reason) to doubt that the other party will pay when due." *Basic Am. Indus.*, 252 F.3d at 915.  Plaintiffs fail to state a claim for breach of contract.

Plaintiffs' claim that "[t]his Court is not free to issue any such ruling" is mistaken.  Class Opp'n to Defs.' Mot. To Dismiss at 15.  The Court is not dismissing the breach of contract claims as unripe.  Ripeness is a doctrine of justiciability.  And the limitation relates to the merits of a claim for anticipatory breach—it helps define the cause of action itself.  The overlapping of issues in determining whether the claim is ripe and whether the limitation applies does not make them the same.  "The ripeness doctrine generally deals with when a federal court can or should decide a case." *Perry II*, 864 F.3d at 633.  In its opinion, the D.C. Circuit held that the Court may hear a claim for anticipatory breach, but left to this Court to determine whether there is actually a claim to be heard.  *Id.* at 634.  Because Plaintiffs' claim falls within the exception to the anticipatory breach doctrine, Plaintiffs have failed to state a valid claim.

### B.  Plaintiffs State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

Each complaint asserts the Third Amendment breached the implied covenant of good faith and fair dealing based on Plaintiffs' right to receive liquidation preferences and dividends.  *See* Class SAC Counts IV-VI; Fairholme FAC Count III; Arrowood FAC Count III.  The Court previously dismissed these claims, holding that the absence of a contractual right to dividends and the nonoccurrence of a liquidation precluded recovery on these theories.  *See Perry Capital*, 70 F.

14

Supp. 3d at 233-39. However, the D.C. Circuit reversed this decision, directing the Court "to evaluate [the implied covenant claims] under the correct legal standard, namely, whether the Third Amendment violated the reasonable expectations of the parties." *Perry II*, 864 F.3d at 631. Having assessed these claims accordingly, the Court finds that Plaintiffs effectively state a claim for breaches of the implied covenant.

### i. The Implied Covenant of Good Faith and Fair Dealing

In both Delaware and Virginia, every contract contains an implied covenant of good faith and fair dealing. *Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017); *Va. Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 541-42 (4th Cir. 1998). Applying the implied covenant is a "cautious enterprise," though, whereby courts "infer[] contractual terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated." *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010). It is not a "vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist." *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 385 (1997); *see also Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005) (noting the implied covenant does not create a "free-floating duty . . . unattached to the underlying legal document"). Parties are free to enter into good and bad contracts, and the law enforces both. In fact, "good faith" in this context simply entails "faithfulness to the scope, purpose, and terms of the parties' contract." *Gerber v. Enters. Prods. Holdings, LLC*, 67 A.3d 400, 419 (Del. 2013), *overruled on other grounds by Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808 (Del. 2013). Similarly, "fair dealing" does not imply equitable behavior, but rather, actions consonant "with the terms of the parties' agreement and its purpose." *Id.* Courts "will only imply contract terms when the party asserting the implied covenant proves that the other

15

party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected." *Nemec*, 991 A.2d at 1126.

The implied covenant generally applies only if the contract is silent as to the subject at issue. If the contract directly addresses the matter at hand, "[e]xisting contract terms control . . . such that implied good faith cannot be used to circumvent the parties' bargain." *Dunlap*, 878 A.2d at 441; *see also Ward's Equip.*, 254 Va. at 385 ("[W]hen parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights."). But if the contract is silent on the issue, the Court must consider whether implied contractual terms fill the gap. *MHS Capital LLC v. Goggin*, C.A. No. 2017-0449-SG, 2018 WL 2149718, at *12 (Del. Ch. May 10, 2018). To do this, the implied covenant asks "what the parties would have agreed to themselves had they considered the issue in their original bargaining positions at the time of contracting." *Gerber v. Enters. Prods. Holdings, LLC*, 67 A.3d 400, 418-19 (Del. 2013), *overruled on other grounds by Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808 (Del. 2013). As noted by the D.C. Circuit, *Perry II*, 864 F.3d at 631, this analysis hinges on the parties' "reasonable expectations at the time of contracting." *Nemec*, 991 A.2d at 1126; *see also SunTrust Mortg. Inc. v. Morts. Unlimited, Inc.*, No. 3:11CV861-HEH, 2012 WL 1942056, at *3 (E.D. Va. May 29, 2012) (noting that, under Virginia law, the implied covenant includes "consistency with the justified expectation of the other party to a contract") (internal quotations omitted).

### ii.   The Time of Contracting

Timing is a large point of contention in this case. While all the parties acknowledge that the determinative factor for the implied covenant claims is the reasonable expectations of the parties *at the time of contracting*, they disagree over when that is in this case.

16

The Plaintiffs, for example, argue that the time of contracting is the time the securities were issued—a time predating HERA and the FHFA's appointment as conservator. *See* Class Resp. at 33; Fairholm & Arrowood Resp. at 31. They say that the contractual rights they seek to enforce—namely, to dividends and liquidation preferences—inhere in the security, traveling to each subsequent acquirer. Class Pls.' Resp. at 34.

Defendants, on the other hand, believe Plaintiffs' implied covenant claims must be considered in light of the stockholder contract as it existed at the time of the alleged breach—*i.e.*, at the time of the Third Amendment in August 2012. Defs.' Mot. at 28. This is because, according to Defendants, the parties' reasonable expectations were updated with each amendment to the broad, flexible contract, including the enactment of HERA. *Id.*

The Court agrees with Plaintiffs in theory, but it is ultimately Defendants whose position wins out. Plaintiffs are correct that the original bargaining took place when the GSEs issued the shares, irrespective of whether the securities changed hands after that. Further, the bargained-for rights related to dividends and liquidation preferences traveled with the shares to subsequent purchasers. Under both Delaware and Virginia statutory law, "a purchaser of a certificated or uncertificated security acquires all rights in the security that the transferor had or had power to transfer[.]" Del. Code tit. 6, § 8-302; Va. Code § 8.8A-302. "All rights in the security" as used in the statutes "means rights in the security itself as opposed to personal rights." *E.g., Schultz v. Ginsburg*, 965 A.2d 661, 667 n.12 (Del. 2009). In other words, "[w]hen a share of stock is sold, the property rights associated with the shares, including any claim for breach of those rights and the ability to benefit for any recovery or other remedy, travel with the shares." *In re Activision Blizzard, Inc. S'holder Litig.*, 124 A.3d 1025, 1049–51 (Del. Ch. 2015). Rights associated with dividends and liquidation preferences inhere in the security.

17

Plaintiffs are also correct that "[a]n implied covenant claim . . . looks to the past" at "what the parties would have agreed to themselves had they considered the issue in their original bargaining positions at the time of contracting." *Gerber*, 67 A.3d at 418. Accordingly, Courts do not ask "what duty the law should impose on the parties given their relationship at the time of the wrong, but rather what the parties would have agreed to themselves had they considered the issue in their original bargaining positions at the time of contracting." *ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC*, 50 A.3d 434, 440-42 (Del. Ch. 2012), *aff'd in part, rev'd in part on other grounds*, 68 A.3d 665 (Del. 2013).

Defendants are correct, however, that investor contracts with corporations are different. *See* Defs.' Mot. at 26; Defs.' Reply at 22. Corporations are creatures of the state. *See, e.g.*, *Goldman v. Postal Telegraph*, 52 F. Supp. 763, 769 (D. Del. 1942). Because of this fact, an investor's contract with the corporation includes not only documents such as the stock certificate, certificate of designations, the corporate charter, and bylaws, but also the corporate law under which the corporation is formed and regulated. *See, e.g.*, *Boilermakers Local 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 939 (Del. Ch. 2013); *Middleburg Training Ctr., Inc. v. Firestone*, 477 F. Supp. 2d 719, 725 (E.D. Va. 2007); *see also STAAR Surgical Co. v. Waggoner*, 588 a.2d 1130, 1136 (Del. 1991) ("[I]t is a basic concept that the General Corporation Law is a part of the certificate of incorporation of every Delaware company.").

These investor contracts are, "by design, flexible and subject to change." *Boilermakers*, 73 A.3d at 939; *see also Loew's Theatres, Inc. v. Commercial Credit Co.*, 243 A.2d 78, 81 (Del. Ch. 1968) (stating "the contract rights of the stockholders . . . do not rest upon an unchangeable base . . ."). Changes to these contracts may come in the form of standard amendments to organic corporate documents. But they may also come in the form of changes in law affecting the nature

18

of the corporation, its governance, and its relationship with shareholders. *See Goldman v. Postal Telegraph*, 52 F. Supp. 763, 769 (D. Del. 1943) (noting that "since the corporation is the creature of the state, and since the corporation law is part of the corporate charter . . . it is self-evident that the state has the right to reserve to itself . . . the power to change the contract between the corporation and its stockholders . . ."); *see also Bove v. Cmty. Hotel Corp.*, 249 A.2d 89, 96 (R.I. 1969) (stating that legislative enactments concerning the "relationship between the stockholder and the corporation or between the stockholders *inter sese*" may "alter or amend the charters of corporations"). For a typical corporation, this would mean changes to state laws. But for the GSEs, which were chartered by Congress and subject to extensive federal regulation, certain changes to federal law—*i.e.*, those affecting the governance of the GSEs and their relationships with their shareholders—amend or inform the investor contract.

For an investor contract, the *time of contracting* for the purposes of the implied covenant inquiry must be the time of the most recent change in contract—whether by amendment or change in law. This must be the case because otherwise, conduct consistent with an amendment to a shareholder's contract or consistent with background corporate law could violate the reasonable expectations at the time of the issuance, supporting an implied covenant claim. Such would frustrate the corporate form's flexibility by making amendments practically impossible and changes to background law of no effect.

Even if the Court were to credit Plaintiffs' position that the reasonable expectations must be evaluated at the time of issuance, the analysis would come out the same. An investor in a corporation—let alone a corporation as highly regulated as Fannie and Freddie—reasonably expects that the shareholder contractor may be amended. An investor also knows that there may be a change in law affecting her relationship with the corporation and that her original contract

19

with the corporation does not trump such a change. And an investor reasonably expects that the corporation will act in accordance with any such amendment or change in law. Put differently, corporate conduct consistent with the law or the amended shareholder contract is not arbitrary or unreasonable behavior, such that it would give rise to an implied covenant claim.

In light of these principles, the Court will look to HERA and the FHFA's appointment as conservator in evaluating the reasonable expectations of the parties. As instructed by the D.C. Circuit, the Court will consider:

> (1) Section 4617(b)(2)(J)(ii) (authorizing the FHFA to act "in the best interests of the [Companies] or the Agency"), (2) Provision 5.1 of the Stock Agreements, J.A. 2451, 2465 (permitting the Companies to declare dividends and make other distributions only with Treasury's consent), and (3) pertinent statements by the FHFA, e.g., J.A. 217 ¶ 8, referencing Statement of FHFA Director James B. Lockhart at News Conference Announcing Conservatorship of Fannie Mae and Freddie Mac (Sept. 7, 2008) (The "FHFA has placed Fannie Mae and Freddie Mac into conservatorship. [Conservatorship] is a statutory process designed to stabilize a troubled institution with the objective of returning the entities to normal business operations. FHFA will act as the conservator to operate the [GSEs] until they are stabilized.").

*Perry II*, 864 F.3d at 631. Additionally, the Court will examine the express provisions of Plaintiffs' stock certificates, as well as the nature of the GSEs as highly regulated entities in determining the reasonable expectations of the parties.

### iii. Plaintiffs Plead Sufficient Facts to Support a Finding that their Reasonable Expectations were Violated by the Third Amendment

Defendants argue any finding that the Third Amendment violated the Plaintiffs' reasonable expectations is precluded by (1) the express provisions of the stock certificates, (2) the highly-regulated nature of the GSEs, (3) HERA, and (4) the PSPAs. Defs.' Mot. at 21-30. Additionally, Defendants do not believe any statements by the FHFA's Director affect this foregone conclusion. And Defendants assert all of this can be resolved at the motion to dismiss stage. The Court

20

disagrees. Treating the complaint's factual allegations as true and giving the benefit of all reasonable inferences, Plaintiffs state a claim for breach of the implied covenant relating to dividends and liquidation preferences.

### 1. The Express Provisions of Plaintiffs' Stock Certificates

None of the provisions of Plaintiffs' respective stock certificates preclude an implied covenant claim based on Plaintiffs' rights to dividends and liquidation preferences. More pointedly, nothing in the certificates would allow the Plaintiffs reasonably to expect the Net Worth Sweep.

Defendants point to the provision in the certificates permitting the GSEs to issue more senior stock without the consent of more junior holders, even if the issuances "materially and adversely affect" the interests of the junior stockholders. Defs.' Mot. Ex. C. §§ 7(b), 8 (Fannie Preferred); *see* Ex. D §§ 8, 9(h)(ii) (Freddie Preferred); Ex. E §§ 9, 10(h)(ii) (Freddie Common). They note that the effect of more senior issuances could be to diminish the likelihood of Plaintiffs receiving dividends or liquidation preferences. Specifically, Defendants argue in light of this provision of the certificate that "Plaintiffs cannot credibly allege that . . . had the [GSEs] and its stockholders thought to negotiate with respect to *amendments* to existing senior stock certificates, the [GSEs] would have agreed to treat amendments differently than issuance of new stock certificates." Defs.' Mot. at 22 (emphasis in original). But the Court finds Defendants' argument unpersuasive. An issuance of securities is typically accompanied by investment and junior shareholders reasonably expect the company to receive value in exchange for providing senior shareholders with enhanced disbursement rights. But the Third Amendment was unaccompanied by any increased funding commitment. *See* Class SAC ¶ 60; *see also Perry I*, 70 F. Supp. 3d at 224 (noting that Treasury did not grant the GSEs additional funding commitments); *Robinson v.*

21

*Fed. Hous. Fin. Agency*, 876 F.3d 220, 234 (6th Cir. 2017) (observing that Treasury "did not commit any additional funds to the [GSEs]"). It is the GSEs' alleged relinquishment of value in exchange for no new investment that the Plaintiffs claim they could not reasonably expect. And so, Defendants' "new issuance" analogy falls flat.

Defendants also retread the argument that Plaintiffs could not expect dividends when they agreed to provide the GSEs' Boards (and thus, FHFA) with "sole discretion" to declare dividends. But as noted by the D.C. Circuit, "[a] party to a contract providing for such discretion violates the implied covenant if it 'act[s] arbitrarily or unreasonably.'" *Perry II*, 864 F.3d at 631 (quoting *Nemec*, 991 A.2d at 1126); *see also Va. Vermiculite, Ltd. v. W.R. Grace & Co.—Conn.*, 156 F.3d 535 , 542 (4th Cir. 1998). So while Plaintiffs could reasonably expect the GSEs to exercise discretion as it relates to dividends, they could not expect the GSEs to extinguish the possibility of dividends arbitrarily or unreasonably. This is what Plaintiffs allege. Class SAC ¶¶ 150, 157, 164; Fairholme FAC ¶ 148; Arrowood FAC ¶ 142. And at this stage of the litigation, the claim that Defendants' discretion was not reasonable is plausibly supported by the factual averments from the various plaintiffs' complaints, including that:

- at the time the Third Amendment was enacted, the GSEs, FHFA, and Treasury understood that the GSEs were about to achieve sustained profitability, Class SAC ¶¶ 51-56; Fairholme FAC ¶¶ 55-67; Arrowood FAC ¶¶ 51-63,

- the GSEs and FHFA knew this profitability would permit the GSEs to pay the 10% dividend without the necessity of drawing from the Treasury, Class SAC ¶¶ 52-53; Fairholme FAC ¶¶ 69-70; Arrowood FAC ¶¶ 65-66,

- the Third Amendment permitted the Treasury to reap enormous benefits in exchange for no new investment, Class SAC ¶ 60; *see also Perry I*, 70 F. Supp. 3d at 224; *Robinson v. Fed. Hous. Fin. Agency*, 876 F.3d at 234, and

- the Third Amendment guaranteed that Plaintiffs would never receive dividends or liquidation distributions, *e.g.*, Class SAC ¶¶ 12-14; Fairholme FAC; Arrowood FAC.

The Court finds nothing in the Plaintiffs' stock certificates suggesting they could have reasonably expected the Net Worth Sweep.

### 2. The Highly-Regulated Nature of the GSEs

Next, Defendants claim that "[b]ecause of the highly-regulated nature of the [GSEs], Plaintiffs could not as a matter of law have had reasonable expectations that were violated by the Third Amendment." Defs.' Mot. at 24. In support of this theory, Defendants primarily rely on the portion of this Court's prior opinion dismissing the Class Plaintiffs' regulatory taking claim.[4] *See* Defs.' Mot. at 24; Defs.' Reply at 21-22. There—as part of the *Penn Central* analysis—the Court held that Plaintiffs were not "deprived of any *reasonable* investment-backed expectations" because "plaintiff shareholders understood the risks intrinsic to investments in entities as closely regulated as the GSEs[.]" *Perry I*, 70 F. Supp. 3d at 245. Specifically, the Court pointed to the history of the GSEs "under the watchful eye of regulatory agencies" and even noted that "[t]he tradeoff when investing in government-sponsored entities that receive meaningfully different benefits than private corporations is increased regulation and the prospect of a government takeover." *Id.* at 244 n. 56. This is not the knock-out punch for which Defendants hope.

---

[4] This ruling was not challenged on appeal. *See Perry II*, 864 F.3d at 603 n. 6.

The takings "reasonable investment-backed expectations" inquiry and the implied covenant "reasonable expectations" inquiry sound alike in nomenclature but differ in focus and application.

In the regulatory takings context, whether a government action interferes with reasonable investment-back expectations is a factor to consider to determine whether the action has gone beyond "regulation" and effects a "taking". *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984). The focus of the analysis is on a property owner's expectations as they relate to *the government*. If the property owner knows she does business in a highly regulated industry, it is more difficult for her to claim an entitlement to compensation. *See, e.g., Burlington N. R.R. Co. v. United Transp. Union*, 822 F. Supp. 797, 802 (D.D.C. 1991) ("As a general matter, in an area as heavily regulated as the railroads and in which Congress has repeatedly demonstrated its willingness to legislate solutions to labor disputes, any expectancy would seem unreasonable if not naïve."). She chose to do business in an industry subject to extensive regulation. And she should thus not be surprised when *the government* enacts a policy or takes an action affecting her property rights.

For implied covenant claims, the focus is not on what a party reasonably expects of the government, but what she reasonably expects of her co-contracting party. *See Nemec*, 991 A.2d at 1126 ("We will only imply contract terms when the party asserting the implied covenant proves that *the other party* has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected.") (emphasis added); *Sun Trust Mortg., Inc. v. Mortgs. Unlimited, Inc.*, No. 3:11-CV-861-HEH, 2012 WL 1942056, at *3 (E.D. Va. May 29, 2012) (stating that the implied covenant "prohibits *a party* from acting arbitrarily, unreasonably, and in bad faith") (emphasis added). The analysis centers on each contracting party's expectation

24

that her counterparty will refrain from conduct "frustrat[ing] the 'overarching purpose' of the contract" or conduct "prevent[ing] the other party to the contract from receiving the fruits of the bargain." *Dunlap*, 878 A.2d at 442 (internal quotations omitted). This is not to say that the highly-regulated nature of a company is irrelevant to the inquiry. On the contrary, it may well inform how a shareholder expects the corporation to behave under their contract. But the focus is on the corporation's behavior, not the government's regulations.

Here, of course, the analysis is complicated by the fact that it can be difficult to tell where the government ends and the GSEs begin. Obviously, the FHFA is a federal agency. But when it acts as conservator, the FHFA "steps into [the GSEs] shoes, shedding its government character and also becoming a private party." *Meridian Invs., Inc. v. Fed. Home Loan Mortg. Corp.*, 855 F.3d 573, 579 (4th Cir. 2017); *Collins v. Mnuchin*, No. 17-20364, 2018 WL 3430826, at *8 (5th Cir. July 16, 2018). And "the FHFA's adoption of the Third Amendment . . . was taken on behalf of the [GSEs]." *Perry II*, 864 F.3d at 631. Thus, the complained-of conduct by the FHFA is that of the GSEs, not the government.

The Court stands by its takings holding and sees no contradiction in holding that the highly-regulated nature of the GSEs does not preclude an implied covenant claim. When investing in companies as closely regulated as the GSEs, Plaintiffs should have been aware of the risks that *the government* may take action effecting their property rights. But it does not follow that the Plaintiffs could reasonably expect that the GSEs themselves—through the FHFA—would give away all of Plaintiffs' residual rights to dividends and liquidation surplus in exchange for no investment and no meaningful consideration at a time when the GSEs were highly profitable.

       3.   HERA, the PSPAs, and Statements by the FHFA Director

As discussed in Part III.B.ii, *supra*, the Court will consider the events surrounding the placement of the GSEs into conservatorship in evaluating the reasonable expectations of the parties. Defendants rely heavily on the language of both HERA and the PSPAs to demonstrate that Plaintiffs could reasonably expect the Net Worth Sweep. While some of Defendants' argument is compelling, none of it permits the Court to grant dismissal of Plaintiffs' implied covenant claims at this stage.

a.  HERA does not require dismissal of Plaintiffs' implied covenant claims

HERA undoubtedly impacted the Plaintiffs' reasonable expectations in relation to their shareholder contracts. As noted in Part I, it gave the FHFA's Director regulatory authority over the GSEs, 12 U.S.C. § 4511(b)(1), and authorized the Director to appoint FHFA as either conservator or receiver of the GSEs. *Id.* § 4617(a)(2). If the Director did choose to appoint the agency as conservator, HERA vests the FHFA with broad authority and discretion over the operation of the GSEs. *Perry II*, 864 F.3d at 600.

As part of this authority, HERA empowers the FHFA to take actions consistent with the statute, "which the Agency determines is in the best interests of the regulated entity or the Agency." 12 U.S.C. § 4617(b)(2)(J)(ii). Defendants see this as a death knell for Plaintiffs' implied covenant claims. They argue that because HERA gives "the Conservator [] broad authority and discretion to act in the best interests of the [GSEs] or the Agency," Defs.' Reply at 26, "the implied covenant does not apply" and even if it did, it precludes any reasonable expectation that the Net Worth Sweep would not occur. *E.g.*, *id.* at 20. The Court disagrees.

Defendants' claim the implied covenant does not apply is directly contrary to the D.C. Circuit's opinion. Defendants are correct that the "best interests" provision grants the FHFA broad discretion as conservator. But the agency may not act with impunity. "A party to a contract

26

providing for such discretion violates the implied covenant if it 'act[s] arbitrarily or unreasonably.'" *Perry II*, 864 F.3d at 631 (quoting *Nemec*, 991 A.2d at 1126); *see also Historic Green Springs, Inc. v. Brandy Farm, Ltd.*, 32 Va. Cir. 98, 1993 WL 13029827, at *3 (Va. Cir. 1993) (stating that "where discretion is lodged in one of two parties to a contract . . . such discretion must, of course, be exercised in good faith"). Defendants cannot simply say that since HERA permits the conservator to act in its own best interests, the FHFA can do whatever it wants and Plaintiffs could not expect otherwise. The question is whether Defendants exercised their discretion arbitrarily or unreasonably in a way that frustrated Plaintiffs' expectations under the contract. Plaintiffs plausibly allege that they have.

Throughout this litigation, Defendants proffered reason for entering into the Third Amendment was to end the "circularity" or "downward spiral" caused by the GSEs' drawing on Treasury funding to pay dividends to Treasury. *See, e.g.*, [No. 13-1288 ECF No. 20 at 3, 23-24, 56, 65-66, 69-70]. But Plaintiffs claim that this was merely pretextual. Plaintiffs allege that—at the time of the Third Amendment—the FHFA and the GSEs knew:

- the GSEs would "be generating large revenues over the coming years, thereby enabling them to pay the 10% annual dividend well into the future" (Class SAC ¶ 53; Arrowood FAC ¶ 64; Fairholme FAC ¶ 69);

- the GSEs' profits would be "in excess of current 10% dividend paid to Treasury" (Class SAC ¶ 53; Arrowood FAC ¶ 67; Fairholme FAC ¶ 71);

- 2012 through 2020 would be the "golden years of GSE earnings" (Class SAC ¶ 54; Arrowood FAC ¶ 53; Fairholme FAC ¶ 56); and

- by 2020, cumulative dividends paid by the GSEs to Treasury would exceed Treasury's total investment (Class SAC ¶ 54).

27

The pleaded facts not only show that the GSEs would not need to draw on Treasury's funds to pay dividends, but also that the GSEs could repay Treasury for its investment under the pre-Third Amendment dividend structure. Such facts could support a finding that Defendants exercised their discretion arbitrarily or unreasonably.

Moreover, other provisions of HERA actually advance Plaintiffs' position that they could not reasonably expect the Net Worth Sweep. For example, while HERA gave the Treasury temporary authority to purchase new shares in the GSEs,[5] Treasury was required to consider "[t]he [GSEs'] plan[s] for the orderly resumption of private market funding or capital market access" and "[t]he need to maintain the [GSEs'] status[es] as a private shareholder-owned company." 12 U.S.C. §§ 1719(g)(1)(C), 1455(l)(1)(C). These provisions signal to shareholders a Congressional expectation that the GSEs would work back towards normalcy, and lend support to Plaintiffs who claim they could not reasonably expect the Net Worth Sweep (which essentially permanently closed off access to capital markets) at a time when the GSEs were entering a period of profitability.

b.   The PSPAs and the Statements by the FHFA

The original PSPAs were entered into on September 7, 2008—the same day the GSEs entered into conservatorship. *See, e.g.*, Arrowood FAC ¶¶ 30, 34. They included a provision giving Treasury the authority to prevent the GSEs from declaring dividends during conservatorship. *See* Defs.' Mot. Ex. F § 5.1. Defendants argue—in light of this provision—that Plaintiffs could not reasonably expect to receive dividends and could therefore not be surprised by the Net Worth Sweep. Defs. Mot. at 29-30.

---

[5] This authority expired on December 31, 2009, well before the enactment of the Third Amendment. 12 U.S.C. §§ 1719(g)(4), 1455(l)(4).

28

The Net Worth Sweep—however—is fundamentally different than Treasury's right to veto capital distributions. For one thing, if Treasury withheld approval for a dividend to Plaintiffs under the original terms of the PSPAs, that available cash on hand would not simply be handed out to Treasury. One would expect that cash to increase the value of Plaintiffs' underlying securities either by way of reinvestment into the company or reduction of debt. The Net Worth Sweep does exactly the opposite. It decreases the value of all securities other than the PSPAs by eliminating the possibility of profits accruing in any way to their benefit.

Furthermore, Treasury's authority to prevent distributions existed only *during conservatorship*. And Plaintiffs believed conservatorship would be temporary. At the time of the enactment of the PSPAs, the FHFA stated, "Upon the Director's determination that the Conservator's plan to restore the [GSEs] to a safe and solvent condition has been completed successfully, the Director will issue an order terminating the conservatorship[s]." Class SAC ¶ 40 (quoting *FHFA Fact Sheet, Questions and Answers on Conservatorship* 2); Fairholme FAC ¶ 34; Arrowood FAC ¶ 30. In fact, the FHFA Director described the conservatorship as "a statutory process designed to stabilize a troubled institution with the objective of returning the entities to normal business operations." Fairholme FAC ¶ 31; Arrowood FAC ¶ 27. These statements are important to the implied covenant analysis. They inform what Plaintiffs reasonably believed at the time the GSEs entered into conservatorship and the PSPAs with Treasury. And at the nascent of a sustained period of profitability, Plaintiffs would have reasonably expected the GSEs to be moving out of conservatorship, not doubling down by executing the Net Worth Sweep.

*    *    *

Motions to dismiss pleadings are not favored; they are to be granted sparingly and with caution. At this stage in the proceedings, Plaintiffs plausibly allege that they could not have

29

reasonably expected their rights to dividends and liquidation preferences to be extinguished by the Third Amendment. Accordingly, Defendants' motion with respect to Plaintiffs' implied covenant claims will be denied. Those claims will move forward.

### C. Plaintiffs' Claims for Breaches of Fiduciary Duties are Preempted by HERA

Plaintiffs claim that the FHFA—as conservator—breached state law fiduciary duties owed to shareholders by executing the Third Amendment. *See* Class SAC Counts VII-VIII and XI-XII; Fairholme FAC Count IV; Arrowood FAC Count IV. This Court previously dismissed various shareholder derivative claims, confirming that the power to bring such suits rests solely in the FHFA. *Perry I*, 70 F. Supp. 3d at 230. The D.C. Circuit affirmed this ruling while holding that HERA's Succession Clause does not bar "direct" stockholder claims. *Perry II*, 864 F.3d at 627.

Counts XI and XII from the Class Plaintiffs' complaint are revivals of their derivative fiduciary duty claims to preserve these issues for appeal. Those counts will be dismissed.

The remaining claims before the Court represent Plaintiffs' second chance—an attempt to plead direct claims for breach of fiduciary duties. As an initial matter, all such claims against Freddie Mac (Class SAC Count VIII, Arrowood FAC Count IV (as related to Freddie Mac), and Fairholme FAC Count IV (as related to Freddie Mac)) must be dismissed as Virginia does not recognize a direct shareholder claim for breach of fiduciary duty. Irrespective of this, all of these claims against both Freddie and Fannie must be dismissed because any direct claim for breach of fiduciary duty is preempted by HERA.

As previously discussed, Freddie Mac has elected to follow Virginia law for corporate governance issues not addressed by federal law or Freddie's charter. In Virginia, "corporate shareholders cannot bring individual, direct suits against officers or directors for breach of fiduciary duty, but instead shareholders must seek their remedy derivatively on behalf of the

corporation." *Remora Invs., LLC v. Orr*, 277 Va. 316, 323, 673 S.E.2d 845 (2009) (citing *Simmons v. Miller*, 261 Va. 561, 576, 544 S.E.2d 66 (2001)); *see also Pagliara v. Fed. Home Loan Mortg. Corp.*, 203 F. Supp. 3d 678, 690 (E.D. Va. 2016) (stating "shareholders may assert claims of fiduciary breach against corporate directors only through derivative suits"). Since the opinion in *Perry II* foreclosed the possibility of derivative suits against Defendants, 864 F.3d at 625, Plaintiffs cannot state a claim for breach of fiduciary against Freddie Mac.[6]

Even if that were not the case, the Court finds that *all* the direct claims for breach of fiduciary duty must be dismissed as they are preempted by HERA. State law is preempted to the extent of any conflict with a federal statute. *Hillman v. Maretta*, 569 U.S. 483, 490, 133 S.Ct. 1943, 186 L.Ed.2d 43 (2013). "Such a conflict occurs when compliance with both federal and state regulations is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (internal citations and quotations omitted). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects[.]" *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373, 120 S.Ct. 2288, 147 L.Ed.2d 352.

Directors of a corporation owe two fiduciary duties to stockholders—care and loyalty. *In re Orchard Enters., Inc. Stockholder Litig.*, 88 A.3d 1, 33 (Del. Ch. 2014) (citing *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006)); *Bank of Am. v. Musselman*, 222 F. Supp. 2d 792, 796 n. 5 (E.D. Va. 2002). Here, Plaintiffs allege the enactment of the Third Amendment amounted to a breach of the duty of loyalty. *See* Class SAC Counts VII-VIII and XI-

---

[6] Plaintiffs ask this Court to make an *Erie* guess that the next time the Virginia Supreme Court is confronted with this issue, it would adopt the standard from the Delaware case *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, which allows direct claims for breach of fiduciary duties. In support, Plaintiffs note that in *Remora Investments*, the court specifically stated it "need not decide whether to adopt the analysis employed by the Delaware Supreme Court in *Tooley*." 277 Va. at 324. The Court declines Plaintiffs' invitation. The Court does not find sufficient indication that the Virginia Supreme Court would change the law. Moreover, even if Plaintiffs could state a direct claim for breach of fiduciary duty in Virginia, in this case, such a claim is preempted by HERA.

XII; Fairholme FAC Count IV; Arrowood FAC Count IV. "Essentially, the duty of loyalty mandates that the best interest of the corporation and its shareholders take precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993).

Problematic for Plaintiffs is the fact that HERA specifically permits the FHFA—on behalf of the GSEs—to "take any action [within its statutory powers] which the Agency determines is in the best interests of the regulated entity *or the Agency*." 12 U.S.C. § 4617(b)(2)(J)(ii) (emphasis added). As pointed out by the D.C. Circuit, "[HERA] refers only to the best interests of FHFA and the [GSEs]—and *not* those of the [GSEs'] shareholders or creditors." *Perry II*, 864 F.3d at 608. The Circuit described this as a "deliberate choice" by Congress "to permit FHFA to act in its own governmental interests[.]" *Id.* It stands to reason then how Plaintiffs can complain about self-dealing when the statute authorizes exactly that. So state and federal law clearly conflict and the state law fiduciary claims are preempted.

Plaintiffs attempt to get around preemption by claiming that they do not seek to force the FHFA to promote the interests of the GSEs' shareholders over the GSEs or the FHFA, "only that, in addition to considering the interests of Treasury and the [GSEs], Defendants were required by state law to consider, in good faith, the interests of private shareholders." Class Resp. at 50. They essentially ask the Court to amend HERA so it reads the FHFA may "take any action [within its statutory powers] which the Agency determines is in the best interests of the regulated entity or the Agency, *as long as it takes into account the interests of the GSEs' shareholders*." To do this, the Court must contravene Congress' "deliberate choice."

In Section 4617(a)(7), HERA makes clear that "[w]hen acting as conservator . . . the [FHFA] shall not be subject to the direction or supervision of . . . any State in the exercise of the

32

rights, powers, and privileges of the [FHFA]." 12 U.S.C. § 4617(a)(7). To impose state fiduciary duty law on the FHFA would be just such direction, obstructing the "extraordinarily broad flexibility" endowed to the agency by HERA. *See Perry II*, 864 F.3d at 606. "[T]he purpose of § 4617(a)(7) 'is to provide a preemption defense for FHFA in its role as conservator.' In other words, § 4617(a)(7) specifically functions to remove obstacles to FHFA's exercise of conservator powers—i.e. to preserve FHFA's interests, not those of GSE shareholders." *Saxton v. Fed. Hous. Fin. Agency*, 245 F. Supp. 3d 1063, 1077 (N.D. Iowa 2017) (quoting *Robinson v. Fed. Hous. Fin. Agency*, 223 F. Supp. 3d 659, 668 (E.D. Ky. 2016)) (citation omitted). Fiduciary duties, especially the duty of loyalty, represent such an obstacle. Plaintiffs breach of fiduciary duty claims are preempted by HERA and must be dismissed.

### D. Plaintiffs Fail to State a Claim that the Treasury Stock Certificates, as Amended by the Third Amendment, Violate Delaware or Virginia Statutes

On remand, Plaintiffs assert new claims that the form of dividend prescribed by the Third Amendment violates Delaware and Virginia statutes. Class SAC Counts IX-X; Fairholme FAC Counts V-VI; Arrowood FAC Counts VII-VIII. As an initial matter, any claim for injunctive relief on these counts is dismissed. Upon review, the claims for damages will be dismissed as well.

Plaintiffs allege Fannie Mae's enactment of the Third Amendment violates Section 151(c) of the Delaware General Corporation Law, which states:

> The holders of preferred or special stock of any class or of any series thereof shall be entitled to receive dividends *at such rates*, on such conditions and at such times as shall be stated in the certificate of incorporation or in the resolution or resolutions providing for the issue of such stock adopted by the board of directors as hereinabove provided, payable *in preference to*, or *in such relation to*, the dividends payable on any other class or classes or of any other series of stock, and cumulative or noncumulative as shall be so stated and expressed.

33

8 Del. C. § 151(c) (emphasis added). Specifically, Plaintiffs claim the Third Amendment is neither paid at a "rate" nor paid "in preference to" or "in relation to" other classes or series of stock, thus, violating the statute.

Similarly, Plaintiffs argue that by adopting the Third Amendment Freddie Mac violated Virginia law, which states that a corporation may authorize "one or more classes or series of shares that . . . have preference over any other class or series of shares with respect to distributions[.]" Va. Code § 13.1-638(C)(4). Plaintiffs claim that while this statute permits corporations to establish a dividend preference, it does not permit corporation to establish a preference that operates to preclude all other classes from ever receiving dividends.

Both of these theories fail. First, the GSEs' federal statutory charters specifically grant the GSEs authority to: (1) issue preferred stock "on such terms and conditions as the board of directors shall prescribe," 12 U.S.C. §§ 1718(a), 1455(f); and (2) make dividend payments to GSE stockholders in the manner "as may be declared by the board of directors." *Id* §§ 1718(c)(1), 1452(b)(1). And the GSEs follow Delaware or Virginia law only to the extent not inconsistent with the GSEs' charters or other federal law. 67 Fed. Reg. 38361 (June 4, 2002); *see also Edwards v. Deloitte & Touche, LLP*, No. 16-21221-CIV, 2017 WL 1291994, at *6 (S.D. Fla. Jan. 18, 2017).

Second, even if the Court were to apply these state statutes, Plaintiffs fail to cite a single case or other authority supporting their claims. The Treasury Stock Certificates state the Treasury's preferred stock ranks senior to all other classes of stock as to dividends, and that Treasury's dividend is calculated every quarter based on the GSEs' quarterly performance. *See* Defs.' Mot. Ex. G §§ 2, 3, 8. Without any case law in support of their theory, the Court sees no basis to hold that this is not a "preference", not "in relation to" other classes, or not paid at a "rate."

34

Plaintiffs fail to state a claim that the Treasury Stock Certificates, as amended by the Third Amendment, violate Delaware or Virginia statutes.

### E. Plaintiffs Remaining Claims are Dismissed

Finally, in light of the D.C. Circuit's opinion in *Perry II*, all APA claims (Fairholme FAC Count I, Arrowood FAC Counts I-III) and all requests seeking injunctive or declaratory relief are dismissed.

## V.     CONCLUSION

In accordance with the above analysis,

1) In Civil No. 13-1053, Defendants' motion [ECF No. 68] will be **GRANTED** with respect to Counts I, II, IV, V, and VI and **DENIED** with respect to Count III.

2) In Civil No. 13-1439, Defendants' motion [ECF No. 77] will be **GRANTED** with respect to Counts I, IV, VI, VII, VIII and **DENIED** with respect to Count V.

3) In Miscellaneous Action No. 13-1288, Defendants' motion [ECF No. 66] will be **GRANTED** with respect to Counts I, II, III, VII, VIII, IX, X, XI, and XII and **DENIED** with respect to Counts IV, V, and VI.

In coming to its decision, the Court considered the various sur-replies filed in the above-captioned actions. Accordingly, the motions for leave to file sur-reply [ECF No. 79 for Civil No. 13-1053, ECF No. 87 for Civil No. 13-1439, and ECF No. 78 for Miscellaneous No. 13-1288] will be **GRANTED**.

Separate orders in each case consistent with this Memorandum Opinion shall issue this date.

9/28/18
Date

ROYCE C. LAMBERTH
United States District Judge

35